AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Rachel Biblo Block (*pro hac vice* pending)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

*Proposed Counsel to the Official Committee*
*of Unsecured Creditors of Rudolph W. Giuliani*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| **RUDOLPH W. GIULIANI** | : Case No. 23-12055 (SHL) |
| a/k/a RUDOLPH WILLIAM GIULIANI, | : |
| | : |
| **Debtor.** | : |

------------------------------------------------------------x

**OBJECTION OF THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS**
**OF RUDOLPH W. GIULIANI TO THE DEBTOR'S**
**MOTION FOR AN ORDER MODIFYING THE STAY FOR**
**THE LIMITED PURPOSES OF ALLOWING THE DEBTOR**
**TO FILE POST TRIAL MOTIONS TO MODIFY THE JUDGMENT**
**AND ON FOR A NEW TRIAL AND TO FILE A NOTICE OF APPEAL**

The Official Committee of Unsecured Creditors (the "Committee") of Rudolph W. Giuliani

a/k/a Rudolph William Giuliani ("Mr. Giuliani" or the "Debtor"), by and through its undersigned

proposed counsel, hereby submits this objection (this "Objection") to the *Debtor's Motion for an*

*Order Modifying the Stay for the Limited Purposes of Allowing the Debtor to File Post Trial*

*Motions to Modify the Judgment and on for a New Trial and to File a Notice of Appeal* [Docket

No. 25] (the "Stay Relief Motion").  In support of this Objection, the Committee respectfully states as follows.

## PRELIMINARY STATEMENT

1. By the Stay Relief Motion, the Debtor seeks emergency relief to modify the automatic stay in a way that benefits himself, while specifically targeting creditors Ms. Wandrea' ArShaye "Shaye" Moss ("Ms. Moss"), who is a member of the Committee, and her mother, Ms. Ruby Freeman ("Ms. Freeman").  Although the Committee was only appointed late last week, selected counsel two days ago and is in the process of getting up to speed, it has become clear quickly that it must review the Debtor's "emergency" request for relief with a critical eye.  Here, even a cursory review of the Stay Relief Motion demonstrates that the Debtor cannot come close to satisfying the *Sonnax*[1] factors, and the Stay Relief Motion must therefore be denied.

2. The Committee is comprised of three members:  U.S. Dominion Inc., Ms. Noelle Dunphy and Ms. Moss.  Each member of the Committee has asserted significant claims against the Debtor based on separate lawsuits, each of which is at a different stage.

3. U.S. Dominion, Inc. has commenced a $1.3 billion lawsuit against Mr. Giuliani in the United States District Court for the District of Columbia (the "District Court")[2] for defamation in connection with his false claims that the company used its voting machines to rig the 2020 presidential election.  The case has not yet gone to trial.

4. Ms. Dunphy is the plaintiff in a lawsuit against Mr. Giuliani and other related parties in the New York Supreme Court.[3]  In the lawsuit, Ms. Dunphy asserts claims arising out of her

---

[1] The applicable test in this Circuit for determining whether to modify the automatic stay is the twelve-factor test from *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2d Cir. 1990).
[2] *US Dominion, Inc., et al. v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-00213-CJN.
[3] *Dunphy vs. Giuliani, et al.*, New York Supreme Court, Index No. 650033 / 2023.

2

former employment by Mr. Giuliani as his director of business development, including claims for gender-motivated violence, battery, assault, gender discrimination and sexual harassment, hostile work environment, retaliatory discharge, breach of contract, violation of New York labor law and breach of fiduciary duty. The case has not yet gone to trial.

5.  Ms. Moss and Ms. Freeman are the plaintiffs in a lawsuit against Mr. Giuliani in the District Court related to Mr. Giuliani's relentless public defamation of them in connection with the 2020 presidential election (the "Freeman Lawsuit").[4] In the Freeman Lawsuit, Mr. Giuliani continually refused to comply with his discovery obligations and with various court orders, ultimately leading to the District Court's entry of "death penalty sanctions" against him with a default judgment for defamation, intentional infliction of emotional distress, civil conspiracy and punitive damages. On December 15, 2023, a jury awarded Ms. Freeman and her mother approximately $148 million in damages against Mr. Giuliani (the "Freeman Judgment"), and, shortly thereafter, the District Court entered the judgment. On December 20, 2023, the District Court entered an order waiving the automatic thirty-day stay of enforcement of the judgment against Mr. Giuliani.

6.  The Stay Relief Motion concerns the Freeman Lawsuit. In the Stay Relief Motion, Mr. Giuliani asks this Court to ignore applicable law to enable him to use the automatic stay as a shield against Ms. Moss and Ms. Freeman but lift the stay as to himself to be used as a sword. Specifically, the Stay Relief Motion requests that this Court fashion relief that modifies the automatic stay just enough to allow Mr. Giuliani to appeal the Freeman Judgment and pursue post-judgment relief but keep the automatic stay firmly in place so as to evade his obligation to post a bond or other security in connection with an appeal and preclude Ms. Moss and Ms. Freeman from

---

[4]  *Freeman et al. v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-03354-BAH.

3

engaging in collection efforts. The relief that Mr. Giuliani seeks clearly is not permitted under the law and his purported justifications fail each of the *Sonnax* factors. Indeed, to the extent the automatic stay were to be lifted to allow Mr. Giuliani to pursue his post-judgment rights, the law would require him to post a bond or other security with respect to the judgment to extend the stay or allow Ms. Moss and Ms. Freeman to pursue their collection efforts.

7.  While Ms. Moss and Ms. Freeman undoubtedly have been materially aggrieved by Mr. Giuliani and they should be entitled to receive just compensation for the harm he has caused them, each other creditor of Mr. Giuliani with an allowed claim should likewise be entitled to receive just compensation, subject to the terms of a chapter 11 plan. Lifting the stay in its entirety as it pertains to the Freeman Lawsuit, which the Court would be bound to do if it were to allow Mr. Giuliani to pursue post-judgment relief unfettered given his apparent inability to post a bond or otherwise secure the Freeman Judgment, would also enable Ms. Moss and Ms. Freeman to jump to the head of the line in realizing upon Mr. Giuliani's assets. This outcome would be inconsistent with the basic tenet of chapter 11 requiring the equitable distribution of a debtor's assets in accordance with the priorities set forth in chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

8.  For the reasons set forth above and herein, the relief requested in the Stay Relief Motion must be denied.

## BACKGROUND

**A. General Background**

9.  On December 21, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has continued in possession of his property and is managing his business affairs as a debtor and debtor in possession pursuant to Bankruptcy Code

4

sections 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in this chapter 11 case.

10. On January 12, 2024, the Committee was appointed by the United States Trustee [Docket No. 46]. On January 16, 2024, the Committee selected Akin Gump Strauss Hauer & Feld LLP ("Akin") as its proposed counsel.[5]

**B. The Freeman Lawsuit**

11. On December 21, 2021, Ms. Moss and Ms. Freeman commenced the Freeman Lawsuit in the District Court against Mr. Giuliani and One America News Network ("OAN") and its agents.[6] After settling with OAN, Ms. Freeman and Ms. Moss filed an amended complaint against Mr. Giuliani on May 10, 2022, alleging defamation *per se*, intentional infliction of emotional distress and civil conspiracy.[7]

12. As the Freeman Lawsuit progressed, Mr. Giuliani failed to comply with his discovery obligations and generally thwarted Ms. Freeman's and Ms. Moss's procedural rights to obtain discovery.[8] Ultimately, following discovery conferences and hearings before the District Court that failed to elicit Mr. Giuliani's production of any meaningful or responsive documents, Ms. Freeman and Ms. Moss filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 37.[9]

---

[5] As will be set forth in Akin's retention application and subject to approval of this Court, in recognition of the unique and important circumstances of this chapter 11 case, Akin has agreed to serve as counsel to the Committee on a *pro bono* basis, with one contingent qualification: Akin intends to reserve the right to seek allowance, under applicable provisions of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, Local Bankruptcy Rules and orders of this Court, of all actual, reasonable and necessary fees and expenses incurred in connection with its representation of the Committee in the event that the Debtor obtains confirmation of a chapter 11 plan or other resolution of the chapter 11 case that is not supported by the Committee. In that event, it is Akin's intention that all of Akin's fees and expenses approved by the Court and paid by the Debtor's estate to Akin in connection with its engagement by the Committee be contributed to the Debtor's unsecured creditors.

[6] *Freeman et al. v. Giuliani*, No. 1:21-cv-03354-BAH [Docket No. 1].

[7] *Id.* at Docket No. 22.

[8] *See id.* at Docket No. 94, at 2.

[9] *Id.* at Docket No. 81.

5

13. In response to this development, rather than producing evidence or explaining his conduct, Mr. Giuliani submitted two personally executed, but unsworn, stipulations riddled with qualifications and reservations of rights, which purported to admit, for purposes of the Freeman Lawsuit, liability on the factual elements of Ms. Freeman's and Ms. Moss's claims and their entitlement to punitive damages.[10]

14. On August 30, 2023, the District Court ordered that default judgment be entered against Mr. Giuliani as a "death penalty" discovery sanction pursuant to Federal Rules of Civil Procedure 37(e)(2)(C) and 37(b)(2)(A)(vi), holding him civilly liable on Ms. Freeman's and Ms. Moss's claims for defamation, intentional infliction of emotional distress, civil conspiracy and punitive damages.[11]

15. Following entry of the District Court's order, the Freeman Lawsuit proceeded to trial on the issue of damages, and, on December 15, 2023, the jury returned a verdict awarding Ms. Freeman and Ms. Moss approximately $148 million in compensatory and punitive damages.[12]

16. On December 18, 2023, Ms. Freeman, Ms. Moss and Mr. Giuliani entered a Joint Stipulation Regarding Entry of Final Judgment, which set forth the parties' agreement on declaratory relief to be entered by the District Court.[13] Also on December 18, 2023, Ms. Freeman and Ms. Moss filed a motion for leave to dissolve the automatic thirty-day stay of execution on the judgment and for authority to immediately register the final judgment in any other judicial

---

[10] *Id.* at Docket Nos. 84, 91.
[11] *Freeman et al. v. Giuliani*, No. 1:21-cv-03354-BAH [Docket No. 94, at 5].
[12] *Id.* at Docket No. 135.
[13] *Id.* at Docket No. 138.

6

district.[14] Later that same day, the District Court entered the judgment in the total amount of $146,206,113.00 plus post-judgment interest.[15]

17. On December 20, 2023, the District Court granted Ms. Freeman's and Ms. Moss's motion to dissolve the stay of execution, and Mr. Giuliani filed this chapter 11 case the following day.[16]

### C. The Stay Relief Motion

18. Shortly after filing for chapter 11 protection, on January 5, 2024, Mr. Giuliani filed the Stay Relief Motion, which seeks an order

> modifying the automatic stay for the limited purpose of allowing the *Freeman* case to proceed to the extent of Giuliani filing such post judgment motions to modify the judgment and/or for a new trial and for Plaintiffs to participate in such motion if, in the discretion of Debtor's special litigation [counsel], it is deemed necessary to file a notice or notices of appeal in that proceeding and for Plaintiffs to participate in such appeal.[17]

Stay Relief Motion ¶ 9.

19. The Stay Relief Motion further provides that the requested modification of the automatic stay is for "post verdict motions and appeals" but not for Ms. Freeman or Ms. Moss "to

---

[14] *Id.* at Docket No. 139.

[15] *Id.* at Docket No. 142.

[16] *Freeman et al. v. Giuliani*, No. 1:21-cv-03354-BAH [Docket No. 144].

[17] On January 11, 2024, Mr. Giuliani filed on notice of presentment the *Debtor's Application for Retention and Employment of Camara & Sibley, LLP as Special Litigation Counsel Effective December 21, 2023* [Docket No. 38] (the "C&S Application"). While the Committee continues to evaluate the C&S Application, the Committee anticipates filing an objection thereto on account of, among other things, the failure to disclose the specific sources of funding for Camara & Sibley, LLP's ("C&S") fees and expenses. The C&S Application provides in summary fashion that C&S has been paid approximately $500,000 for legal services provided to the Debtor on approximately ten different matters since February 2021 with substantially all such amounts paid by third-party legal defense funds. C&S Application at ¶ 11. The C&S Application provides further that "C&S has conferred with these legal funds and [has] received assurances and representations that all future costs and fees will be reimbursed / paid for by the legal defense funds and C&S will look to these funds first and foremost for any fees or expenses incurred" in connection with its representation of the Debtor. *Id.* Yet, C&S reserves its rights to seek all fees and expenses from the Debtor and/or appears to otherwise indicate that the Debtor will need to seek reimbursement for C&S's fees and expenses from these undisclosed legal funds. *Id.*

7

take any steps to perfect any additional liens or otherwise proceed with further collection of the judgment except to participate in the post-judgment litigation." Stay Relief Motion ¶ 10.

## **OBJECTION**

### I. The Debtor Has Not Demonstrated that Cause Exists to Lift the Automatic Stay.

20. The moving party, here Mr. Giuliani, bears the burden of demonstrating that "cause" exists to lift the stay. *In re Residential Capital, LLC*, No. 12-12020 (MG) 2012 Bankr. LEXIS 3624, at *11 (Bankr. S.D.N.Y. 2012); *see* 11 U.S.C. § 362(d)(1). While "cause" as used in Bankruptcy Code section 362(d)(1) is not defined in the Bankruptcy Code, courts in this district consider the twelve factors set forth in *In re Sonnax Industries, Inc.* when determining whether cause exists to lift the automatic stay, with no one factor being dispositive. *In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2d Cir. 1990). Consideration of the applicable factors here leads to one conclusion: the Debtor has failed to meet his burden for the lifting of the stay.

- *Factor 1: Whether relief would result in a partial or complete resolution of the issues.* This factor weighs against modifying the automatic stay. Lifting the automatic stay to permit the Debtor to file motions to modify the judgment entered in the Freeman Lawsuit and/or for a new trial and to appeal the Freeman Judgment will not resolve Ms. Moss's or Ms. Freeman's claims against the Debtor. Instead, such relief would lead to the relitigating of these claims against the Debtor, leaving unresolved whether Ms. Moss's and Ms. Freeman's claims are dischargeable in the Debtor's bankruptcy case and inevitably prolonging the bankruptcy case. *See, e.g.*, *In re Containership Co.* (TCC) A/S, 466 B.R. 219 (Bankr. S.D.N.Y 2012) (finding that allowing litigation to continue outside the bankruptcy court would result in only a partial resolution of the issues because multiple proceedings were inevitable); *In re Curtis*, 40 B.R. 795, 803-04 (Bankr. D. Utah 1984) (finding that, where an issue would inevitably be litigated in both bankruptcy and state courts, allowing the state court to proceed "would result, at best, in a partial resolution of the issues.").

- *Factor 2: Whether there is any connection or interference with the bankruptcy case.* This factor weighs against modifying the automatic stay. The Freeman Lawsuit is directly connected to, and actually precipitated, the Debtor's

8

commencement of this bankruptcy case.[18] A determinative issue in this case will be whether Ms. Moss's and Ms. Freeman's claims are non-dischargeable. Until such time as that issue is decided, the Debtor should not be permitted to drain estate resources and interfere with the bankruptcy case by now choosing when and how he will participate in the Freeman Lawsuit. *See, e.g.*, *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2022 Bankr. LEXIS 3220, at *4243 (Bankr. S.D.N.Y. Nov. 14, 2022) (examining generally how the continuation of non-bankruptcy litigation during the chapter 11 case can interfere with the bankruptcy case); *In re Residential Cap, LLC*, 501 B.R. 624. 644 (Bankr. S.D.N.Y. 2013) (emphasizing that continuing litigation in non-bankruptcy courts would hinder the debtors' reorganization efforts by diverting the debtors' time and resources away from the chapter 11 cases).

- ***Factor 3: Whether the other proceeding involves the debtor as a fiduciary.*** This factor does not support granting the Stay Relief Motion because the Debtor was not a fiduciary when he committed intentional torts against Ms. Moss and Ms. Freeman. *See In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 Bankr. LEXIS 3777, at *9 (Bankr. S.D.N.Y. Aug. 16, 2012) (finding that "generally, proceedings in which the debtor is a fiduciary . . . need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors" (citation omitted)).

- ***Factor 4: Whether a specialized tribunal has been established in the foreign jurisdiction to hear the case.*** This factor weighs against modifying the automatic stay. No specialized tribunal has been established with respect to the Freeman Lawsuit.

- ***Factor 5: Whether the debtor's insurer has assumed full responsibility for defending it.*** This factor weighs against modifying the automatic stay. The Committee is not aware of any insurer that has assumed full responsibility for defending the Debtor in the Freeman Lawsuit. *See, e.g.*, *In re Holtkamp*, 669 F.2d 505, 508-09 (7th Cir. 1982) (finding that the bankruptcy court did not err by lifting the automatic stay and permitting the plaintiff to continue litigating a personal injury lawsuit against the debtor because the debtor's insurer assumed full responsibility for defending the debtor in that litigation such that estate resources were not jeopardized). While the Debtor has averred in the C&S Application that certain third-party legal defense funds have indicated they will pay Mr. Giuliani's fees and expenses associated with his post-judgment litigation efforts, no actual documentation supporting assumption of full responsibility has been provided, and C&S has not affirmatively waived its rights to seek reimbursement of its fees and expenses from the Debtor.

- ***Factor 6: Whether the action primarily involves third parties.*** This factor weighs against modifying the automatic stay. The Freeman Lawsuit involves no third

---

[18] Mr. Giuliani acknowledged the connection between the Freeman Lawsuit and his bankruptcy case in his *Application in Support for an Order Scheduling an Expedited Hearing* [Docket No. 26 at ¶ 5]: "[t]he outcome of the post trial motions will impact the Debtor's chapter 11 proceeding."

9

parties but solely the Debtor and two of his creditors. Courts have permitted continued litigation of claims outside the bankruptcy court where the debtor's involvement in the litigation is limited and where the litigation will not frustrate the orderly disposition of the debtor's assets. Here, modifying the automatic stay on the Debtor's terms is contrary to both considerations. *See, e.g.*, *In re Mego International, Inc.*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (finding that "[a] court may lift a stay for actions which bear little relation to the bankruptcy case. Such lack of connection with the title 11 case occurs where . . . the debtor functions only as a bailee or conduit for the goods or proceeds in question, and resolution of the issue in no way frustrates the orderly distribution of assets of the estate."). Where claims are asserted directly against a debtor, as is the case here, such that the debtor will be required to engage actively in the proceedings, courts are less likely to grant relief from the stay. *See, e.g.*, *Residential Capital, LLC*, 2012 Bankr. LEXIS 3624, at *16-17; *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 624 (Bankr. S.D.N.Y. 2009).

- *Factor 7*: **Whether litigating in another forum would prejudice other creditors.** This factor weighs against modifying the automatic stay. Here, all creditors would be prejudiced by modifying the stay because this relief would divert the estate's limited assets to matters pertaining to the Debtor's post-judgment motions and appeal in the Freeman Lawsuit. Ms. Moss and Ms. Freeman would be uniquely prejudiced because (i) the Debtor would be authorized to appeal the judgment in the Freeman Lawsuit while also evading posting the security required by the Federal Rules of Civil Procedure and (ii) Ms. Moss and Ms. Freeman would be required to participate in two simultaneous proceedings concerning the same claims. Moreover, as noted above and below, if the Court were to lift the stay in its entirety, all unsecured creditors would be prejudiced in the event Ms. Moss and Ms. Freeman were to enforce their judgment. Given the Debtor's resistance to complying with his discovery obligations and related disclosures in the Freeman Lawsuit, one can infer that the Debtor is seeking relief now in an attempt to pursue post-judgment actions and incur the related costs without giving any parties the benefit of reviewing his schedules of assets and liabilities and statement of financial affairs before he takes such actions.

- *Factor 8*: **Whether a judgment claim arising from the foreign proceedings would be subject to equitable subordination.** This factor weighs against modifying the automatic stay. Here, the priority of claims—which is related to the dischargeability of Ms. Moss's and Ms. Freeman's claims—remains unsettled.

- *Factor 9*: **Whether the movant's success in the foreign proceedings would result in a judicial lien avoidable by the debtor.** This factor is not applicable.

- *Factor 10*: **The interests of judicial economy and expeditious resolution of litigation.** This factor weighs against modifying the automatic stay. If the automatic stay were modified as requested by the Debtor, then the best, realistic case scenario for the Debtor is a new trial. Such a result would return the Freeman Lawsuit to step one, require the expenditure of significant estate resources and

10

could take years to resolve. Even once resolved, this Court would then have to determine whether Ms. Moss's and Ms. Freeman's claims are dischargeable. This scenario would result in the re-litigation of Ms. Moss's and Ms. Freeman's claims, a delay of the chapter 11 case and the necessity of further proceedings in the bankruptcy court to determine dischargeability, each of which weighs against modifying the automatic stay. *See, e.g.*, *In re Cicale*, No. 05-14462 (AJG), 2007 Bankr. LEXIS 2252, at *12 (Bankr. S.D.N.Y. June 29, 2007) (explaining that, for judicial economy to weigh in favor of modifying the automatic stay to pursue litigation, the litigation must not result in a delay of the bankruptcy case and must alleviate the need for further proceedings in the bankruptcy court); *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2022 Bankr. LEXIS 3220, at *49 (explaining that since the claim had been adjudicated, the debtor did not need to spend funds relitigating the matter).

- *Factor 11*: **Whether the parties are ready for trial in the other proceeding.** This factor weighs against modifying the automatic stay. The Freeman Judgment has already been entered against the Debtor in the Freeman Lawsuit. Here, the Debtor seeks relief to relitigate and/or appeal that judgment, which would effectively restart the litigation process, thereby draining estate resources and causing significant delay.

- *Factor 12*: **The impact of the stay on the parties and the balance of harms.** This factor weighs against modifying the automatic stay. This factor is "one of the most important" factors. *In re Motors Liquidation Co.*, No. 10-CV-4322 (JGK), 2011 U.S. Dist. LEXIS 67750, at *5 (S.D.N.Y. June 17, 2011). The partial lifting of the stay requested by the Debtor is not permitted under applicable law. Thus, if the stay is lifted in its entirety and Mr. Giuliani cannot post a bond to secure the Freeman Judgment, then Ms. Moss and Ms. Freeman would be able to begin realizing upon the Debtor's assets to the detriment of all of Mr. Giuliani's other creditors.

## II. The Relief Requested in the Stay Relief Motion Conflicts with Central Tenets of Bankruptcy Law and the Fundamental Purposes of the Automatic Stay.

21. The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws" and is intended to give the debtor "a breathing spell from his creditors." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977). But the automatic stay is not just a debtor protection—by ensuring that those creditors who are first to pursue their remedies against the debtor's property do not receive any priority of payment, the stay prevents a race to the courthouse and guarantees equal treatment of the debtor's creditors. *See id.* Moreover, courts frequently emphasize that "[a]lthough section 362 is a shield to protect the debtor to provide for a 'fresh start',

11

the automatic stay was not intended by Congress to be used as a sword." *In re Clowser*, 39 B.R. 883, 886 (Bankr. E.D. Va. 1984); *see also Sternberg v. Johnston*, 582 F.3d 1114, 1124 (9th Cir. 2009) ("The stay, then, is meant to help the debtor deal with his bankruptcy for the benefit of himself and his creditors alike. We have never said the stay should aid the debtor in pursuing his creditors. . . The stay is a shield, not a sword.").

22. Yet, everything about the relief requested in the Stay Relief Motion contradicts basic principles that are central to bankruptcy law and the automatic stay. The Stay Relief Motion seeks entirely lopsided relief: to enable the Debtor to file post-judgment motions to modify the judgment or seek a new trial, or to appeal without posting a bond, while effectively bringing Ms. Freeman and Ms. Moss along for the ride and allowing them to "participate" in any such post-judgment motions, new trials and appeals only on his terms. Stay Relief Motion ¶ 9.

23. And, to ensure there is no confusion that the Debtor intends to use the automatic stay as a sword, the Debtor clarifies that his requested relief from the automatic stay is for "post verdict motions and appeals" (without posting the bond required by the Federal Rules of Civil Procedure), *not* "to authorize the Plaintiffs to take any steps to perfect any additional liens or otherwise proceed with further collection of the judgment except to participate in the post-judgment litigation." Stay Relief Motion ¶ 10.

24. To this point, Federal Rule of Civil Procedure 62(b) provides that, at any time after entry of a judgment, a party may obtain a stay by providing a bond or other security. Fed. R. Civ. P. 62(b). In the District Court's memorandum and order granting Ms. Freeman's and Ms. Moss's motion to dissolve the stay of execution, the District Court noted that "should this case be appealed, Giuliani can avoid any claimed prejudice and obtain a stay of enforcement 'at any time by posting

12

a full supersedeas bond pursuant to Federal Rule of Procedure 62(b).'"[19] As the District Court further noted, since "the stay operates for the appellant's benefit and deprives the appellee of the immediate benefits of his judgment, a full supersedeas bond should be the requirement in normal circumstances."[20]

25. In short, the Debtor asks this Court to bless a framework where he can proceed with the Freeman Lawsuit in the exact manner he wishes and without posting the required security—despite not having participated in any meaningful way for several years—while also pulling the strings with respect to the actions Ms. Freeman and Ms. Moss can take in response.

26. This approach is clearly flawed. First, it is unclear how this path promotes a "breathing spell" from creditors, since there is no evidence that the District Court or an appellate court would look favorably on the Debtor's willful and obstructionist behavior in the Freeman Lawsuit to date and determine to reduce the judgment or order a new trial. Moreover, pursuit of an appeal that is unlikely to succeed (and could result in claims that are nondischargeable in any event) will serve only to drain the Debtor's already-limited assets available for distribution to creditors, consequently running roughshod over another of the Bankruptcy Code's fundamental principles: maximizing the value of the estate for the benefit of all creditors. As a result, granting the one-sided relief requested in the Stay Relief Motion fails to preserve the value of the Debtor's estate, harms his creditors and conflicts with core tenets of bankruptcy law.

27. Second, the Debtor cites no authority for the proposition that he can lift the stay to file post-judgment motions and seek an appeal while simultaneously restraining Ms. Freeman and Ms. Moss from pursuing their next logical steps in the Freeman Lawsuit. The one case that the

---

[19] *Freeman et al. v. Giuliani*, No. 1:21-cv-033540-BAH [Docket No. 144], at 11-12.
[20] *Id.* at 12 (quoting *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980)).

Debtor cites as support, *In re Mildred Deli Grocery, Inc.*, is distinguishable.[21] In *Mildred Deli*, creditors sought relief from the automatic stay to continue a lawsuit that was "trial ready" when the debtor's bankruptcy case was filed, so the amount of the creditors' claim had not yet been fixed.[22] In *Mildred Deli*, unlike here, the court still had to determine if the creditors had claims and, if so, fix the amount of such claims.[23] As a result, in *Mildred Deli*, if the stay were lifted, then *both parties* would have the opportunity to argue their cases and efficiently resolve the litigation to determine the amount of the creditors' claims. Whereas, in this case, the Debtor already had an opportunity to litigate and chose not to, so he cannot now partially lift the stay to pursue whichever post-judgment path he wants, while using the automatic stay to impede Ms. Freeman and Ms. Moss from collecting on their judgment and avoid posting a bond to secure the Freeman Judgment. As a result, this Court must deny the Debtor's request for partial relief from the automatic stay.

28. The only limited stay relief that the Court can order, and which the Committee would not oppose, would be to allow the Debtor to file a notice of appeal to prevent his appeal period from lapsing and take other administrative actions designed solely to preserve his rights and maintain the status quo. He should not be permitted to proceed in the Freeman Lawsuit beyond that point.

## RESERVATION OF RIGHTS

29. The Committee reserves all of its rights and remedies with respect to the Stay Relief Motion and the Debtor and all other matters related to this chapter 11 case.

---

[21] *See In re Mildred Deli Grocery, Inc.*, No. 18-10077 (MG), 2018 Bankr. LEXIS 546 (Bankr. S.D.N.Y. Feb. 28, 2018).
[22] *Id.* at *9.
[23] *Id.* at *4, *9.

14

## **CONCLUSION**

**WHEREFORE**, for the foregoing reasons, the Debtor has failed to demonstrate that cause exists for relief from the automatic stay, and, as a result, the Committee respectfully requests that the Court deny the Stay Relief Motion.

Dated: January 18, 2024
      New York, New York

*/s/ Ira S. Dizengoff*
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Tel:    (212) 872-1000
Fax:   (212) 872-1002
Email:  idizengoff@akingump.com
          pdublin@akingump.com
          aqureshi@akingump.com

- and -

Rachel Biblo Block (*pro hac vice* pending)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Tel:    (214) 969-2800
Fax:   (214) 969-4343
Email:  rbibloblock@akingump.com

*Proposed Counsel to the Official Committee*
*of Unsecured Creditors of Rudolph W. Giuliani*