UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:                                                              Chapter 11

RUDOLPH W. GIULIANI                                  Case No: 23-12055
a/k/a RUDOLPH WILLIAM GIULIANI

                              Debtor
------------------------------------------------------ X

## AMENDED DECLARATION OF JOSEPH SIBLEY, ESQ. IN SUPPORT OF THE APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF CAMARA & SIBLEY, LLP AS SPECIAL COUNSEL TO THE DEBTOR EFFECTIVE DECEMBER 21, 2023

I, Joseph Sibley, Esq., hereby declare, pursuant to 28 U.S.C. § 1746, that the following statements are true and correct, to the best of my knowledge and belief after due inquiry as described herein:

1. I am a partner in the law firm of Camara & Sibley, LLP ("C&S") located at, among other places 1108 Lavaca St, Ste 110263, Austin, TX 78701.

2. I am familiar with the matters set forth herein and make this declaration in support of the application (the "Application") of Rudolph W. Giuliani, the Debtor and Debtor-in-Possession herein to retain C&S as his special counsel in this case. Specifically, the Debtor seeks to retain C&S as his special counsel to represent the Debtor in connection with the representation in Case No. 1:21-cv-03354-BAH FREEMAN et al. v. GIULIANI" ("Matter") pending the United States District Court for the District of Columbia.

### C&S'S QUALIFICATIONS

3. The Debtor seeks to retain C&S because of C&S's expertise and extensive experience and knowledge of defamation matters and First Amendment matters, which is the nature of the Matter. I will have the primary responsibility for the Debtor's matters and I have extensive

experience with defamation and First Amendment matters, having handled dozens of such matters over my career.

### PROFESSIONAL COMPENSATION

4. C&S intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of actual, necessary expenses incurred in connection with the engagement subject to the Court's approval in accordance with Section 330(a) of the Bankruptcy Code and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court. The hourly rates C&S will use in this Chapter 11 case are the same as the hourly rates C&S generally uses in similar representations, regardless of the location of the matter.

5. C&S's current hourly rates for the scope of the representation range on Debtor's matters are as follows:

| | |
|---|---|
| Partners | $600.00 |
| Associates | $400.00 |
| Paraprofessional | $200.00 |

6. It is expected that the bulk of the partner-level services on this case will be provided by myself.

7. C&S's hourly rates are set at a level designated to compensate C&S fairly for the work of its attorneys and paralegals and to cover fixed and routine expenses. Hourly rates vary with experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.

8. It is C&S's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also C&S's policy to charge its clients only the amount actually incurred by C&S in connection with such items. Examples of such expenses include overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research and photocopying.

9. C&S will charge $0.10 per page for standard duplication in its offices in accordance with S.D.N.Y. LBR 2016-1(a) and the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*. C&S does not charge its clients for incoming or outgoing facsimile transmissions. Computer-assisted legal research is used whenever the researcher determines that using it is more cost effective than using traditional (non-computer-assisted legal research) techniques.

## C&S'S DISINTERESTEDNESS AND LACK OF ADVERSE INTERST

10. C&S in connection with its proposed retention by the Debtor in this Chapter 11 case, undertook to determine whether it had any conflicts or other relationships that might cause it not to be determined or to hold or represent an interest adverse to the Debtor or his estate. Specifically, C&S obtained from the Debtor's counsel the names of individuals and entities that may be parties in interest in this Chapter 11 case or otherwise have material connections to this case (the "Potential Parties in Interest") and such parties are listed in Schedule A hereto. Schedule A includes all creditors disclosed on Debtor's schedules, and all the Debtor's affiliates disclosed on the Debtor's Schedules. C&S has searched its electronic database for its connections to the entities and persons listed in Schedule A.

11. Based on the conflicts search conducted to date and described herein, to the best of my knowledge, neither I, C&S, nor any partner, of counsel or associate thereof, insofar as I have been able to ascertain, have any connection with the Debtor (other than the legal matters I have represented him and his affiliates in), his creditors, or any other parties in interest, their respective attorneys and accountants, the Office of the United States Trustee for the Eastern District of New York (the "U.S. Trustee"), any person employed in the Office of the U.S. Trustee, and Bankruptcy Judge currently serving on the United States Bankruptcy Court for the Southern District of New York, any District Judge currently serving on the United States District Court of the Southern District of New York, or the Clerk and Deputy Clerk of the United States Bankruptcy Court for the Eastern District of New York. Please see the annexed Schedule A. Although I represent Robert Costello—who is a principle of one of debtor's creditors, Davidoff Huchter & Citron LLP in the matter of *Biden v. Giuliani, et al.,* Case 2:23-cv-08032-HDV-KS, in the United States District Court for the Central District of California, along with certain of Debtor's affiliated companies—the parties' interests are aligned and there is no reasonable belief at this point that representation of Costello (based on his principalship interest in Davidoff Huchter & Citron LLP) in the *Biden* matter creates any actual or potential conflict of interest.

12. C&S will continue to conduct periodic conflict analyses to determine whether it is performing or has performed services for any Potential Parties in Interest in this Chapter 11 case, and C&S will promptly update this Declaration to disclose any material developments regarding the Debtor, his creditors, or any other pertinent relationship that comes to C&S's attention. C&S has not received a retainer, advance or any other property

of the Debtor or other person in connection with its prior representation of the Debtor in this case.

13. To the best of my knowledge, (a) C&S is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtor's estate, and (b) C&S has no material connection to the Debtor, his creditors, or other parties in interest, except as may be disclosed in this Declaration.

14. In accordance with section 1103(b) of the Bankruptcy Code, C&S will not, while employed by the Debtor in this Chapter 11 case, represent any person or other entity having an adverse interest in connection with this Chapter 11 case,

15. To the best of my knowledge, after due inquiry, C&S:

    a. Is not an equity security holder, or an "insider" of the Debtor;

    b. Is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the Debtor; and

    c. Does not have an interest materially adverse to the interest of the Debtor's estate, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor or an investment banker, or for any other reason.

16. C&S was paid all pre-petition fees owed and is, therefore, not a creditor in this bankruptcy. C&S has worked on several matters for Debtor since February of 2021 and has been paid approximately $578,035.15 for such work, with all except an initial retainer of $20,000.00 and a subsequent payment of $10,000.00 coming from third-party legal defense funds. The attached Schedule B is list of all payments and sources received by C&S since the inception of its representation of the Debtor.

17. C&S has agreed that it will not seek payment of any legal fees or costs in connection with the *Freeman* case, directly from the Debtor. It will not file any application for an award of fees and expenses in this case. It will continue to accept payments from third party legal defense funds and to the extent they do not have sufficient funds to pay fees and expenses it will not seek payment from the Debtor.

18. Certain appellate and other deadlines are approaching in the Matter and we will need to be approved as counsel expeditiously to ensure those deadlines do not pass.

19. Accordingly, I believe C&S is "disinterested", as that term is defined in section 101(14) of the Bankruptcy Code, and, pursuant to section 327(a) of the Bankruptcy Code, is not disqualified from being retained as special counsel to the Trustee.

20. The following is provided in response to the request for additional information set forth in Paragraph D.1. of the Appendix B Guidelines.

Question: Did you agree to any variations from, or alternatives to your standard or customary billing arrangements for this engagement:

Response: No. The hourly rates Camara & Sibley, LLP will bill for this engagement are consistent with the rates that Camara & Sibley, LLP charges other comparable client, and the rate structure provided by Camara Sibley, LLP is appropriate and is not significant different from (a) the rates that Camara & Sibley, LLP charges in other non-bankruptcy representations or (b) the rates of other comparably skilled professional for similar engagements.

Question: Do any of the professional included in this engagement vary their rate based on the geographic location of the bankruptcy case:

Response: No.

Question: If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

Response: Camara & Sibley, LLP represented the client in the 12 months prepetition. In the ordinary course, Camara & Sibley, LLP reviews and adjusts its hourly rates annually. Camara & Sibley, LLP is charging the Debtor a discounted rate for this matter, which is the same it has charged since the inception of the various matters in 2021. Camara & Sibley, LLP's billing rates for 2023 for this client was $600.00 for partners, $400.00 for associates, and $200.00 for paraprofessionals. In October 2023, I agreed to suspend hourly billing on the Matter and, instead, accept a flat fee to finalize matters in the trial court on the Matter for $125,000.00.

Question: Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

Response: Camara Sibley, LLP has discussed a flat fee for the appeal (to be paid by third parties) of $50,000.00 not including out of pocket costs and $25,000.00 of this has already been paid. The client agrees with this fee/budget.

21. Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on January 30, 2024

*Joe Sibley*
_____
Joseph Sibley, Esq.