AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

*Proposed Counsel to the Official Committee*
*of Unsecured Creditors of Rudolph W. Giuliani*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:                                              :    Chapter 11
                                                    :
**RUDOLPH W. GIULIANI**                             :    Case No. 23-12055 (SHL)
a/k/a RUDOLPH WILLIAM GIULIANI,                     :
                                                    :
            **Debtor.**                             :
---------------------------------------------------------------x

**OMNIBUS OBJECTION**
**OF THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS OF RUDOLPH W. GIULIANI**
**TO (I) DEBTOR'S AMENDED APPLICATION FOR RETENTION AND**
**EMPLOYMENT OF AIDALA, BERTUNA & KAMINS, P.C. AS SPECIAL COUNSEL**
**EFFECTIVE DECEMBER 21, 2023 AND (II) APPLICATION TO EMPLOY BERGER,**
**FISCHOFF, SHUMER, WEXLER & GOODMAN, LLP AS ATTORNEY FOR THE DEBTOR**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of Rudolph W. Giuliani a/k/a Rudolph William Giuliani (the "Debtor"), by and through its undersigned proposed counsel, hereby submits this omnibus objection (this "Objection") to the *Debtor's Amended Application for Retention and Employment of Aidala, Bertuna & Kamins, P.C. as Special Counsel Effective December 21, 2023* [Docket No. 77-1]

(the "Amended ABK Application")[1] and the Debtor's *Application* to employ Berger, Fischoff, Shumer, Wexler & Goodman, LLP as attorney for the Debtor [Docket No. 90-1] (the "BFS Application"[2] and, together with the Amended ABK Application, the "Applications"). In support of this Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. By the Applications, the Debtor seeks authority to employ Aidala Bertuna & Kamins, P.C. ("ABK") as special counsel in two disciplinary proceedings and a criminal matter and Berger, Fischoff, Shumer, Wexler & Goodman, LLP ("BFS" and, together with ABK, the "Firms") as bankruptcy counsel. Historically, two separate legal defense funds identified as (x) Giuliani Defense and (y) Giuliani Freedom Fund Legal Defense T.R. Fund (the "Giuliani Freedom Fund" and, together with Giuliani Defense, the "Legal Defense Funds") have paid the Firms on the Debtor's behalf. Giuliani Defense purports to be a hybrid political action committee whose president is the Debtor's son. The Giuliani Freedom Fund is a purported Florida trust of which the Debtor is the grantor and sole beneficiary. Together, these two entities have submitted affidavits in support of the Applications indicating that they have agreed that neither Giuliani Defense nor the Giuliani Freedom Fund will seek reimbursement from the Debtor or his estate for prepetition amounts paid to the Firms.

---

[1] In support of the Amended ABK Application, the Debtor filed the *Amended Declaration of John M. Leventhal, Esq. in Support of the Application for an Order Authorizing the Retention and Employment of Aidala, Bertuna & Kamins P.C. as Special Counsel to the Debtor Effective December 21, 2023* [Docket No. 77-2] (the "Leventhal Declaration"), the *"Lar Dan" Affidavit* [Docket No. 77-4] (the "Menges ABK Affidavit") and the *Declaration of Andrew Giuliani* [Docket No. 77-5] (the "Giuliani ABK Declaration").

[2] In support of the BFS Application the Debtor filed the *Affidavit* of Gary C. Fischoff [Docket No. 90-3] (the "Fischoff Affidavit"), the *"Lar Dan" Affidavit* [Docket No. 90-5] (the "Menges BFS Affidavit" and, together with the Menges ABK Affidavit, the "Menges Affidavits") and the *Declaration of Andrew Giuliani* [Docket No. 90-6] (the "Giuliani BFS Declaration" and, together with the Giuliani ABK Declaration, the "Giuliani Declarations").

2

2.  The Applications note, and it seems likely, that these third party entities may continue to pay the Firms' fees on behalf of the Debtor on a postpetition basis. Yet, in the Applications, the Debtor provides virtually no detail about these entities, who runs them, what the sources of their funds are and how the funds have been and are managed and disbursed. Nor do the Amended ABK Application and BFS Application explain the circumstances under which the Legal Defense Funds (as defined below) would not pay the Firms' fees, thereby leaving the Firms to look to the Debtor's estate for payment. The failure to provide these necessary disclosures makes analyzing the propriety of the Firms' retentions impossible. Therefore, the Debtor falls short of his burden to demonstrate that the retention of the Firms is in the best interest of his estate and on reasonable terms and conditions and there are no conflicts as a result of the Firms' historic and future compensation arrangements with the Debtor and the Legal Defense Funds.

3.  Moreover, in light of the fact that the Firms may look to the Debtor for payment of their fees, the risk of depleting estate resources that—by the Debtor's own account—are seriously limited is too great to allow the Debtor to incur postpetition fees and expenses without any guardrails or oversight. Accordingly, the Applications should only be approved if the Firms are subject to budgets that take into account the Debtor's purported financial constraints.

## BACKGROUND

**A.    General Background**

4.  On December 21, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has continued in possession of his property and is managing his affairs as a debtor and debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in this chapter 11 case.

5.   On January 12, 2024, the Committee was appointed by the United States Trustee for the Southern District of New York [Docket No. 46]. On January 16, 2024, the Committee selected Akin Gump Strauss Hauer & Feld LLP ("Akin") as its proposed counsel.

**B.   The Amended ABK Application**

6.   On January 10, 2024, on notice of presentment, the Debtor filed the *Debtor's Application for Retention and Employment of Aidala, Bertuna & Kamins, P.C. as Special Counsel Effective December 21, 2023* [Docket No. 38-1] (the "Initial ABK Application") to employ ABK as special counsel to the Debtor in two attorney disciplinary matters pending in New York and Washington, D.C. (the "Disciplinary Matters"), as well as a criminal proceeding pending in Georgia (the "Criminal Matter" and, together with the Disciplinary Matters, the "Matters").[3]

7.   Prior to the Petition Date, ABK appears to have served as the Debtor's counsel in the Matters. Initial ABK Application ¶ 6. As the Disciplinary Matters are civil actions by governmental units to enforce their regulatory powers, and the Criminal Matter is a criminal action against the Debtor, none of the Matters are subject to the automatic stay. Initial ABK Application ¶ 6; *see also* 11 U.S.C. §§ 362(b)(1), (b)(4).

8.   On January 29, 2024, on notice of presentment, the Debtor filed the Amended ABK Application. Pursuant to the Amended ABK Application, nothing therein "prevent[s] [ABK] from being paid from third party sources that have helped from time to time [to] pay some of the Debtor's legal bills and that also waive any claim for reimbursement from the estate." Amended ABK Application ¶ 11. In addition, the Amended ABK Application also resolves certain of the

---

[3]   *State of Georgia v. Donald J. Trump, Rudolph W. Giuliani, et al.*, Superior Court of Fulton County, State of Georgia, Case No. 23SC188947.

4

deficiencies in the Initial ABK Application, on which the Committee's counsel engaged with the Debtor's counsel.[4]

9.     As noted above, however, the Amended ABK Application provides that ABK's fees may be paid by "third party sources" characterized as "third-party legal defense funds": Giuliani Defense and Giuliani Freedom Fund. Amended ABK Application ¶ 11; *see also* Menges ABK Declaration ¶ 4; Giuliani ABK Declaration ¶ 5.

10.    ABK has not proposed a budget for its postpetition work for the Debtor. Leventhal Declaration ¶ 26. Although ABK notes that it expects that its fees for the remaining work on the Disciplinary Matters will total approximately $30,000, ABK "[cannot] provide a meaningful estimate" with respect to the Criminal Matter. *Id.*

**C.    The BFS Application**

11.    On January 30, 2024, on notice of presentment, the Debtor filed the BFS Application. The BFS Application seeks authority to retain BFS as general bankruptcy counsel. *See* BFS Application ¶ 5.

12.    The Debtor "has caused" BFS to be paid a retainer of $70,000 to be applied against future fees of BFS incurred by the Debtor, of which $40,000 was paid by Giuliani Freedom Fund and $30,000 was paid by Giuliani Defense. BFS Application ¶ 9. In connection with their

---

[4] For example, prior to the Petition Date, ABK billed the Debtor a total of $881,887.94, of which $404,518.57 was paid by third party legal defense funds and $50,000 was paid by the Debtor. Leventhal Declaration ¶ 22. As of the Petition Date, $427,369.37 of ABK's fees remain outstanding. Leventhal Declaration ¶ 22. In the declaration attached to the Initial ABK Application (the "Initial Leventhal Declaration"), ABK noted that it would only seek payment of its prepetition fees through a confirmed plan of reorganization and would file a proof of claim as a general unsecured creditor. Initial Leventhal Declaration ¶ 20. The Amended ABK Application resolves this issue: if ABK is retained, then ABK will waive payment for any prepetition amounts owed by the Debtor and will not file a proof of claim for any prepetition amounts owed by the Debtor. Leventhal Declaration ¶ 23. Additionally, ABK sought authority to enter into a retainer agreement with the Debtor with respect to the Criminal Matter but did not provide any details regarding what such a retainer agreement would involve. Initial ABK Application ¶ 11; ABK Declaration ¶ 4. The Amended ABK Application no longer includes reference to a retainer. *See generally* Amended ABK Application.

5

payments to BFS, the Legal Defense Funds have waived any right to reimbursement. *Id.*; Menges BFS Affidavit ¶ 1; Giuliani BFS Declaration ¶ 1. Although BFS has discussed fees generally with the Debtor, BFS also has not proposed a budget. Fischoff Affidavit ¶ 14.

## **OBJECTION**

13. The Amended ABK Application and BFS Application should be denied because (i) in each case, the Debtor has not satisfied the applicable requirements under Bankruptcy Code section 327 to retain the subject Firm; (ii) each Firm's retention should be subject to a budget; and (iii) each Application contains conflicting or missing information that needs to be corrected or provided to understand the scope and terms of the proposed representation.

**I.   The Debtor Has Not Met the Applicable Standards in Bankruptcy Code Section 327 for Employment of ABK and BFS.**

14. In relevant part, Bankruptcy Code section 327 provides:

> (a) The trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that ***do not hold or represent an interest adverse to the estate, and that are disinterested persons***, to represent or assist the trustee in carrying out the trustee's duties under this title.[5]
>
> . . .
>
> (e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, ***if in the best interest of the estate***, ***and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed***.[6]

---

[5]  The Debtor is seeking to retain BFS pursuant to Bankruptcy Code section 327(a).

[6]  The proposed order filed with the Amended ABK Application references Bankruptcy Code section 327(a), which, according to the Debtor's counsel, is a mistake. The Committee understands that any order entered approving the Amended ABK Application will be corrected to refer to Bankruptcy Code section 327(e).

6

11 U.S.C. §§ 327(a), (e) (emphasis added).  The Debtor has failed to make the required showings under Bankruptcy Code sections 327(e) and 327(a) for the retention of ABK and BFS, respectively. The primary reason for such failures is the Debtor's refusal to provide information concerning the third party entities that have historically paid, and are likely to continue paying, ABK and BFS on behalf of the Debtor.

15. First, although compensation of a Debtor's professional by a third party does not give rise to a *per se* impermissible conflict of interest, such a payment arrangement necessarily gives rise to concerns regarding a professional's allegiance and potential conflicts.  *See In re Lar Dan Enters.*, 221 B.R. 93, 95-96 (Bankr. S.D.N.Y. 1998).  Courts confronted with this issue have employed a five-factor test to analyze whether compensation from a third party constitutes an impermissible conflict of interest:

(1) the arrangement must be fully disclosed to the debtor/client and the third party payor/insider;

(2) the debtor must expressly consent to the arrangement;

(3) the third party payor/insider must retain independent legal counsel and must understand that the attorney's duty of undivided loyalty is owed exclusively to the debtor/client;

(4) the factual and legal relationship among the third party payor/insider, the debtor, the respective attorneys, and their contractual arrangement concerning the fees, must be fully disclosed to the [c]ourt at the outset of the debtor's bankruptcy representation; [and]

(5) the debtor's attorney/applicant must demonstrate and represent, to the court's satisfaction, the absence of facts which otherwise create non disinterestedness, actual conflict, or impermissible potential for a conflict of interest.

*Id.* at 96 (citing *In re Kelton Motors Inc.*, 109 B.R. 641, 648 (Bankr. D. Vt. 1989)).

16. In the Applications, the Debtor failed to meet the fourth and fifth *Lar Dan* factors. The fourth *Lar Dan* factor, which requires that the factual and legal relationship among the third

7

party payor, the debtor, the respective attorneys and their contractual arrangement regarding payment be disclosed to the court at the outset of the bankruptcy representation plainly has not been met. *See id.* Specifically, the Giuliani Declarations and the Menges Affidavits lack detail regarding the factual and legal relationship between Giuliani Defense, Giuliani Freedom Fund, the Debtor and ABK and BFS, respectively. As noted herein, there is no way to assess these relationships, given that, other than merely naming the trustee and the president of the Giuliani Freedom Fund and Giuliani Defense, respectively, the Applications contain virtually no information about the Legal Defense Funds, despite the Committee's repeated requests for such information.[7]

17. For example, The Rudy Giuliani Freedom Fund Legal Defense Trust Fund Agreement (the "Giuliani Freedom Trust Agreement") requires that the Debtor establish a board of directors comprised of three to five individuals responsible for all decisions related to the Giuliani Freedom Fund that are not explicitly granted to the trustee of the Giuliani Freedom Fund in paragraphs 5 and 6 of the Giuliani Freedom Trust Agreement, but the Menges Declarations do not refer to a board or identify any of the directors. Giuliani Freedom Trust Agreement ¶ 16. Additionally, according to the Debtor's counsel, Giuliani Defense has no governing or formation documents at all, so nothing is known about how that entity makes funding or other decisions and who makes those decisions.[8]

---

[7] Filed contemporary herewith is the *Declaration of Rachel Biblo Block in Support of the Objection of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani to the Debtor's Amended Application for Retention and Employment of Camara & Sibley, LLP as Special Litigation Counsel Effective December 21, 2023*, which attaches as Exhibit A, Exhibit B and Exhibit C thereto emails between Akin and the Debtor's counsel requesting information concerning, among other things, the Legal Defense Funds. The Debtor's counsel did not provide the requested information.

[8] On February 14, 2024, the Debtor's counsel finally responded to the Committee's repeated requests for governing and formation documents for Giuliani Defense; however, no documents were provided because, according to the Debtor's counsel, Giuliani Defense has no governing or formation documents. There is some publicly available information reported by Giuliani Defense to the Federal Election Commission through the end of December 2023, and such information lists Giuliani Defense's bank as Wells Fargo. *See* Giuliani Defense, FEDERAL ELECTION

8

18. Moreover, neither the Giuliani Declarations nor the Menges Declarations describe whether the applicable Legal Defense Fund and the Firms have contractual payment arrangements, how the parties decided on their prepetition payment arrangements or to what extent the Legal Defense Funds will pay postpetition fees in place of the Debtor. The Applications are also unclear as to how the Firms will be paid going forward, as the Giuliani Declarations and Menges Affidavits appear to contemplate the Legal Defense Funds' paying the Firms on the Debtor's behalf postpetition, and the Amended ABK Application reserves the right of ABK to be paid by "third party sources that have helped from time to time to pay some of the Debtor's legal bills."[9] Given the Debtor's limited self-reported assets, payment of the Firms' professional fees may have to come from parties other than the Debtor, and such arrangements need to be fully disclosed. *See, e.g.*, Summary of Your Assets and Liabilities and Certain Statistical Information [Docket No. 71].

19. The fifth *Lar Dan* factor also has not been met. The fifth factor requires that the Firms demonstrate and represent the absence of facts that create non-disinterestedness, actual conflict or impermissible potential for a conflict. *In re Lar Dan Enters.*, 221 B.R. at 96. As previously noted, without disclosures that set forth who is managing, funding and working for each of the Legal Defense Funds and how and where funds are distributed, there is no way to know if an actual or potential conflict of interest exists.

---

COMMISSION, https://docquery.fec.gov/cgi-bin/forms/C00847327 /1745830/ (last visited Feb. 15, 2024). It is unclear how Giuliani Defense opened two accounts at Wells Fargo without providing any governing or formation documents. See Registering as a Hybrid PAC, FEDERAL ELECTION COMMISSION, https://www.fec.gov/help-candidates-and-committees/filing-pac-reports/registering-hybrid-pac/ (last visited Feb. 15, 2024) (explaining that hybrid PACs are required to maintain two separate accounts).

[9] Amended ABK Application ¶ 11; *see also* Menges ABK Affidavit ¶ 4, Menges BFS Affidavit ¶ 5 (providing that Giuliani Freedom Fund "does not intend to provide any financing to the Debtor beyond the payment of legal fees" to ABK or BFS, as applicable, or any other retained professional), Giuliani ABK Declaration ¶ 5, Giuliani BFS Declaration ¶ 4 (providing that Giuliani Defense "does not intent to provide any financing to the Debtor beyond the payment of legal fees" to ABK or BFS, as applicable, or any other retained professional).

9

20. Accordingly, the Debtor has failed to satisfy the standards for retention of each of the Firms under Bankruptcy Code sections 327(a) and 327(e), respectively.

## II. Each Firm Should Be Subject to a Budget.

21. Bankruptcy Code section 328(a) authorizes the compensation of a professional retained under Bankruptcy Code section 327 "on any reasonable terms and conditions of employment." 11 U.S.C. § 328(a). The burden is on the party seeking to employ the professional to provide evidence of the reasonableness of the requested fees. *See, e.g.*, *In re Energy Partners, Ltd.*, 409 B.R. 211, 226 (Bankr. S.D. Tex. 2009) (indicating the party "seeking the employment of professionals under § 328(a) must establish that the terms and conditions of employment are reasonable, and evidence, not conclusory statements, is required to satisfy that burden."); *In re Affordable Med Scrubs LLC*, No. 15-33448, 2016 WL 1244771, at *2 (Bankr. N.D. Ohio Mar. 29, 2016) (finding that the "Debtor, as the moving party, bears the burden of proof by a preponderance of the evidence that the proposed terms of employment are reasonable."). Moreover, under Bankruptcy Code section 328(a), a court is required to determine the reasonableness of a professional's fees on a prospective basis prior to approving retention. *See In re Energy Partners*, 409 B.R. at 226 (explaining that "a bankruptcy court has an obligation to determine the reasonableness of terms and conditions before authorizing the employment of professionals under 328(a)." (citation omitted)).

22. Here, and particularly in light of the self-reported reality asserted by the Debtor that he has limited assets from which to pay the Firms, the Debtor has failed to meet his burden under Bankruptcy Code section 328(a). According to the Debtor's schedules of assets, he has $50 in cash on hand, $14,000 in a Citibank checking account and $351 in a Citibank savings account as of the Petition Date. Schedule A/B: Property, Part 4, Questions 16 and 17. Additionally, the Debtor has a monthly income of $46,105 and monthly expenses of $43,797. Schedule I: Income;

Schedule J: Your Expenses. Yet, in both the Leventhal Declaration and the Fischoff Affidavit, the declarant or affiant, as applicable, states that the applicable Firm had general discussions with the Debtor about fees but has not prepared a proposed budget. Leventhal Declaration ¶ 26; Fischoff Affidavit ¶ 13. In fact, in the Leventhal Declaration, Mr. Leventhal cannot even provide a "meaningful estimate" for "[t]he co-counsel work for the Georgia criminal case" and appears to contemplate the Debtor's retaining an additional counsel for that Georgia criminal case. Leventhal Declaration ¶ 26. Based on what the Debtor has thus far disclosed with respect to his assets and liabilities, the Debtor and his estate cannot support an unlimited fee arrangement with any of his retained professionals.

23. Notably, this is not a case involving a prepetition lender who can impose a budget, monitor that the debtor operates within that prescribed budget, including by tracking the burn rate of the debtor's professionals, and enforce adherence to the budget, thereby preventing the dissipation of estate assets. Without such a prepetition lender in this case, we are left with an oversight vacuum that the Committee must fill, and thus it falls upon the Committee to ensure that the Debtor is appropriately budgeting for cash uses. Accordingly, the retention of ABK and BFS on terms that lack an accompanying budget is not reasonable and should not be approved.

### III. Each Application Contains Conflicting or Missing Information that Needs to Be Clarified or Provided in Order to Understand the Scope and Terms of the Proposed Representation.

24. The Amended ABK Application includes conflicting and missing information that needs to be clarified or provided in order to understand the terms on which the Debtor is proposing to retain ABK.

- ***Bankruptcy Code section 327.*** The Amended ABK Application proposes that the Debtor retain ABK pursuant to Bankruptcy Code section 327(e), but the proposed order filed therewith approves the retention pursuant to Bankruptcy Code section 327(a). *Compare* Amended ABK Application ¶ 2 *with* Docket No. 77-6, p. 1.

11

- ***Matters on which ABK will Represent the Debtor.*** The Amended ABK Application describes the matters on which ABK proposes to represent the Debtor as "disciplinary proceedings" and "the criminal case pending in the State of Georgia" but then later defines all three proceedings as "civil actions." *See* Amended ABK Application ¶ 6. The Leventhal Declaration provides that the Debtor seeks to retain ABK "in connection with the representation in three attorney disciplinary matters." *See* Leventhal Declaration ¶ 2.

- ***Georgia Co-Counsel.*** The Leventhal Declaration provides that certain ABK partners "have been admitted Pro Hac Vice in Georgia, to serve as Debtor's attorneys along with local Georgia counsel in the criminal case" but does not explain who the local Georgia counsel is and what role that firm will play going forward in the Criminal Matter, and the Debtor has not filed an application to retain this local Georgia counsel. Leventhal Declaration ¶ 4.

- ***Billing Rates.*** The Leventhal Declaration outlines ABK's hourly rates, noting that "[a]ll attorneys involved have agreed to bill at a reduced rate of $500 per hour in the future due to the Debtor's bankruptcy filing" but then notes "[a]ny associates will bill at $250/hour." Leventhal Declaration ¶ 7.

25. The BFS Application includes additional conflicting information with respect to the Legal Defense Funds and the Debtor's control thereof. As set forth above, the BFS Application and the accompanying Fischoff Affidavit refer to the Legal Defense Funds as third parties; however, the BFS Application and the Fischoff Affidavit, include reference to the Debtor having "caused" BFS to be paid from the Legal Defense Funds. BFS Application ¶ 9; Fischoff Affidavit ¶ 12. Additional information is needed with respect to the Debtor's relationship with, and control over, the Legal Defense Funds.

26. Accordingly, for the reasons set forth herein, the Applications should be denied.

## **RESERVATION OF RIGHTS**

27. The Committee reserves all of its rights and remedies with respect to the Amended ABK Application, the BFS Application and the Debtor and all other matters related to this chapter 11 case.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Committee requests that the Court deny the relief requested in the Amended ABK Application and the BFS Application.

| | |
|---|---|
| Dated: February 15, 2024<br>New York, New York | */s/ Philip C. Dublin*<br>**AKIN GUMP STRAUSS HAUER & FELD LLP**<br>Ira S. Dizengoff<br>Philip C. Dublin<br>Abid Qureshi<br>One Bryant Park<br>New York, New York 10036<br>Tel:    (212) 872-1000<br>Fax:   (212) 872-1002<br>Email: idizengoff@akingump.com<br>            pdublin@akingump.com<br>            aqureshi@akingump.com<br><br>- and -<br><br>Rachel Biblo Block (admitted *pro hac vice*)<br>2300 N. Field St., Suite 1800<br>Dallas, Texas 75201<br>Tel:    (214) 969-2800<br>Fax:   (214) 969-4343<br>Email: rbibloblock@akingump.com<br><br>*Proposed Counsel to the Official Committee*<br>*of Unsecured Creditors of Rudolph W. Giuliani* |