1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

RUDOLPH W. GIULIANI,                    Main Case No.

        Debtor.                         23-12055-shl

- - - - - - - - - - - - - - - - - - - -x

                United States Bankruptcy Court

                One Bowling Green

                New York, New York

                January 31, 2024

                2:08 PM

B E F O R E:

HON. SEAN H. LANE

U.S. BANKRUPTCY JUDGE

ECRO:  ALIANNA PERSAUD AND ART TAVAREZ

2

Initial case conference

Transcribed by:  Sharona Shapiro

eScribers, LLC

7227 North 16th Street, Suite #207

Phoenix, AZ 85020

(800) 257-0885

operations@escribers.net

3

1

2

3    A P P E A R A N C E S (Via Zoom):

4    BERGER, FISCHOFF, SHUMER, WEXLER & GOODMAN, LLP

5         Attorneys for Debtor

6         6901 Jericho Turnpike

7         Suite 230

8         Syosset, NY 11791

9

10   BY:   HEATH S. BERGER, ESQ.

11         GARY C. FISCHOFF, ESQ.

12

13

14   WILLKIE FARR & GALLAGHER LLP

15         Attorneys for Ms. Ruby Freeman

16         and Ms. Wandrea ArShaye Moss

17         787 Seventh Avenue

18         New York, NY 10019

19

20   BY:   ALISON R. AMBEAULT, ESQ.

21         JAMES BURBAGE, ESQ.

22         MARINE LOISON, ESQ.

23         RACHEL C. STRICKLAND, ESQ.

24

25

4

1

2   CAIN & SKARNULIS PLLC

3         Attorneys for Eric Coomer

4         303 Colorado Street

5         Suite 2850

6         Austin, TX 78701

7

8   BY:   CHARLES J. CAIN, ESQ.

9         RYAN E. CHAPPLE, ESQ.

10        BRAD KLOEWER, ESQ.

11

12

13  LAW OFFICE OF RONALD L. KUBY

14        Attorneys for Daniel Gill

15        119 W 23rd Street

16        Suite 900

17        New York, NY 10011

18

19  BY:   RONALD LAWRENCE KUBY, ESQ.

20

21

22

23

24

25

5

1

2   AKIN GUMP STRAUSS HAUER & FELD LLP

3        Proposed counsel to Official Committee of Unsecured

4           Creditors

5        2300 North Field Street

6        Suite 1800

7        Dallas, TX 75201

8

9   BY:   RACHEL BIBLO BLOCK, ESQ.

10

11

12   AKIN GUMP STRAUSS HAUER & FELD LLP

13        Proposed counsel to Official Committee of Unsecured

14           Creditors

15        One Bryant Park

16        New York, NY 10036

17

18   BY:   AMELIA DANOVITCH, ESQ.

19         IRA S. DIZENGOFF, ESQ.

20         PHILIP DUBLIN, ESQ.

21         ABID QURESHI, ESQ.

22

23

24

25

6

1

2  BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

3      Attorneys for Smartmatic

4      1313 North Market Street

5      Suite 1201

6      Wilmington, DE 19801

7

8  BY:   DANIEL BROGAN, ESQ.

9

10

11  DAVIDOFF HUTCHER & CITRON LLP

12      Attorneys for Davidoff Hutcher & Citron LLP

13      605 Third Avenue

14      New York, NY 10158

15

16  BY:   JEFFREY CITRON, ESQ.

17      ROBERT J. COSTELLO, ESQ.

18      JAMES B. GLUCKSMAN, ESQ.

19      JONATHAN S. PASTERNAK, ESQ.

20      JOSEPH N. POLITO, ESQ.

21      ROBERT L. RATTET, ESQ.

22

23

24

25

7

1

2    BUCHALTER, A PROFESSIONAL CORPORATION

3         Attorneys for US Dominion, Inc.

4         1000 Wilshire Blvd.

5         Suite 1500

6         Los Angeles, CA 90017

7

8    BY:   JOEL G. SAMUELS, ESQ.

9

10

11   OFFICE OF THE NYS ATTORNEY GENERAL

12        Attorneys for NYS Department of Taxation and Finance

13        28 Liberty Street

14        New York, NY 10005

15

16   BY:   LEO V. GAGION, ESQ.

17         ENID NAGLER STUART, ESQ.

18

19

20   WINSTON & STRAWN LLP

21        200 Park Avenue

22        New York, NY 10166

23

24   BY:   KENNETH L. PERKINS, ESQ.

25         TIMOTHY W. WALSH, ESQ.

8

1

2  U.S. DEPARTMENT OF JUSTICE

3        Attorneys for the Office of the U.S. Trustee

4        One Bowling Green

5        New York, NY 10004

6

7  BY:   ANDREA B. SCHWARTZ, ESQ.

8        ANNIE WELLS, ESQ.

9

10

11  ALSO PRESENT:

12        Rudolph W. Giuliani, Debtor

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2         (Audio begins mid-sentence)

3         THE COURT:  -- in the United States Bankruptcy Court for

4    the Southern District of New York.  And we're here this

5    afternoon for an initial case conference in the Chapter 11 case

6    of Rudolph Giuliani.

7         The initial case conference title is a bit of a misnomer,

8    since it was an extended hearing in this case earlier on, a

9    motion to lift the automatic stay.  So we're treating today as

10   a status conference.

11        So with that, we'll start, as we always do, with

12   appearances.  So let me get appearances starting with the

13   debtor.

14             MR. BERGER:  Good afternoon, Your Honor.  Heath

15   Berger, of Berger, Fischoff, Shumer, Wexler & Goodman,

16   attorneys for the debtor.

17             THE COURT:  All right.

18             MR. FISCHOFF:  Good afternoon, Judge.  Gary Fischoff

19   also for the debtor.

20             THE COURT:  All right.  Good afternoon.

21             And on behalf of the plaintiffs in the district court

22   litigation, the judgment plaintiffs who have a judgment of 148

23   million, let me get that appearance.

24             MS. STRICKLAND:  Good afternoon Rachel Strickland,

25   Strickland, Willkie Farr & Gallagher, on behalf of Ruby Freeman

**RUDOLPH W. GIULIANI**

10

1    and Shaye Moss.

2            THE COURT:  All right.  Good afternoon.

3            On behalf of the official committee of unsecured

4    creditors?

5            MR. DUBLIN:  Good afternoon, Your Honor.  Phil Dublin,

6    Akin Gump Strauss Hauer & Feld, proposed counsel to the

7    committee.

8            THE COURT:  Good afternoon.

9            On behalf of what I'll call the Herring  parties who

10   have filed a motion that has not yet been heard, let me get

11   that appearance.

12           All right.  I'm not hearing anything.  So they may be

13   here, or they may be having some technical issues.  Hard to

14   know, frankly, but happy to hear them if they join.

15           And let me get the appearance from the United States

16   Trustee's office.

17           MS. SCHWARTZ:  Good afternoon, Your Honor.  Andrea

18   Schwartz for the United States Trustee.

19           THE COURT:  All right.  And let me find out, as is

20   often the case in very large Chapter 11 cases, or significant

21   cases, there are many pages of appearances, because there are a

22   lot of people who are tuned in, many of whom don't intend to

23   speak.  So at this point, I'll turn it over to anybody else who

24   anticipates needing to speak at today's hearing to make an

25   appearance.

**RUDOLPH W. GIULIANI**

11

1        MR. SAMUELS:  Good afternoon, Your Honor.  I don't

2    know if we'll end up making an appearance, but Joel Samuels of

3    the Buchalter firm, on behalf of the Dominion parties.

4        THE COURT:  All right.  Good afternoon.

5        Anyone else?

6        MR. FISCHOFF:  Actually, this is Gary Fischoff for the

7    debtor.  I just want to point out that Mr. Giuliani is

8    appearing.  Mr. Giuliani, if you want to just click on and say

9    hello.  And obviously he'll be speaking through his attorneys,

10   but he is attending the status.

11       THE COURT:  All right.  Happy to have him here,

12   obviously.  Good afternoon.

13       With that, anyone else who would like to chime in

14   before we turn to the business of status?

15       All right.  And just since it is styled as an initial

16   case conference, we're doing this by Zoom.  We do that here in

17   court in order to keep costs down, in the interest of

18   efficiency, with the thought that, when it is appropriate and

19   necessary to be in person, we are.  Obviously that would cover

20   anything that's evidentiary.  It would also cover anything that

21   involves extended argument, because that's much easier to do in

22   person, as was demonstrated, I think, at the last hearing.

23       So with that, in the interest of talking about status,

24   I thought I would turn it over to debtor's counsel to start us

25   off, with the notion starting there and then circling the

**RUDOLPH W. GIULIANI**

12

```
 1   virtual room.

 2           So Mr. Fischoff?

 3           MR. BERGER:  Actually, Your Honor, I was going to take

 4   this.

 5           THE COURT:  Mr. Berger.

 6           MR. BERGER:  Thank you, Your Honor.  I appreciate it.

 7   Your Honor, obviously, as we were at the last hearing, I mean,

 8   all the parties, I believe, are familiar with the debtor, his

 9   history with New York City, also the events that have led up to

10   this filing.

11           Again, while filing bankruptcy is a decision that the

12   debtor did not take lightly -- it wasn't even on his radar

13   until the verdict was entered in the case -- the debtor

14   believes that this bankruptcy is the most efficient and

15   economical way to proceed forward at this time.

16           And as far as the status goes, Your Honor, the

17   petition was filed on December 21st, 2023.  The balance of the

18   schedules were filed on January 26th, 2024.  On January 5th,

19   Your Honor, 2024, the motion for relief was filed to allow the

20   debtor to file a motion for a new trial and a notice of appeal

21   of the judgment that we just talked about.

22           The hearing was held on January 12th, and orders have

23   been going back and forth between my office, Ms. Strickland's

24   office, the U.S. Trustee's office, and the creditors'

25   committee.  I believe there was a version that came through
```

**RUDOLPH W. GIULIANI**

13

1  last night.  I sent out an email, Judge, for a telephone

2  conference for Friday.  But I do believe that that order should

3  be in good shape.  I don't think there's really many points or

4  sticking points that's left at this point on that order.

5        THE COURT:  All right.  Thank you for an update on

6  that.  I had checked my inbox to make sure I hadn't missed it,

7  and I was going to ask about that.  Obviously, we spent a lot

8  of time at the last hearing going through the contours of the

9  requested relief and what made sense and I think reached a

10  general consensus on it.  And I think hopefully there was

11  enough direction and clarity on the record that the order

12  shouldn't too much of a stumbling block in terms of language.

13        But I will say, to the extent that the parties can't

14  get there, at a certain point we should get the order entered,

15  So you can submit dueling versions.  I'm not encouraging it.

16  But at the same time, if it's necessary, you can do that.

17        And I'll take a look and go back and look at the

18  transcript, and I should be able to sort through whatever the

19  dispute is.  And if for some reason I need to talk to anybody,

20  I'll have a quick status conference to do that.

21        MR. BERGER:  Thank you very much, Your Honor.  Greatly

22  appreciate the input from the Court.  And I think, based upon

23  the hearing and the Court's input, I do believe that we should

24  be able to have one order that's agreeable to all parties.

25        THE COURT:  All right.

14

1        MR. BERGER:  So my goal is hopefully we'll have that

2    worked out by the end of the week.

3        Additionally, Your Honor, retention applications have

4    been filed with the Court.  One was for the retention of the

5    law firm of Camara & Sibley.  They are the attorneys that are

6    representing Mr. Giuliani in regard to the Freeman litigation.

7        There was also a retention application for the law

8    firm of Aidala, Bertuna & Kamins.  They're representing the

9    debtor in his New York State and D.C. disciplinary proceedings.

10        And there was also the retention from my firm, Your

11   Honor.

12        The U.S. Trustee had some comments and some issues in

13   regard to the retentions.  We did file amended affidavits based

14   upon the U.S. Trustee's concerns and questions, so we hope that

15   that's resolved.

16        I do understand that Ms. Strickland does have a couple

17   of further issues.  And I'm also hoping, in our conference call

18   on Friday, when we go through the order, we can work that out

19   so we can kind of try to get everything to move smoothly, Your

20   Honor, try to avoid any kind of hearings and stuff before the

21   Court in regard to the retention applications.  So that is my

22   hope, Your Honor.

23        THE COURT:  All right.  And I would think that would

24   be one way, although it might not be the only way to address

25   one of the issues that was the subject of discussion at the

1  last hearing, which was the source of funds for the payment of

2  filing the motion that was the subject of the lift stay

3  request, and the source of those funds.

4      I wasn't sure exactly -- I know the parties were going

5  to talk about that, and the idea was to run it to ground so

6  that everybody was on the same page.  I wasn't sure exactly how

7  that was going to be accomplished.

8      Certainly to the extent that there are declarations

9  being filed in connection with retentions, that's one way to do

10  it.  There may be other ways.  And I'm happy to be guided by

11  the parties' collective wisdom on that in terms of the most

12  efficient way to put that issue to bed.

13      MR. BERGER:  Great.  Thank you very much, Your Honor.

14  Again, we greatly appreciate the Court's input and help in

15  these matters.

16      As stated before, we all know that there's no pot of

17  gold at the end of the day.  The debtor is hoping to use the

18  bankruptcy process to allow him time to resolve numerous

19  outstanding lawsuits and actions, and then put together a plan

20  of reorganization which will allow him an opportunity to move

21  forward and have these issues resolved.

22      We are definitely in the early, early stages of this

23  proceeding, Your Honor.  We've been in constant contact with

24  the U.S. Trustee's office, the creditors' committee attorney,

25  and Ms. Strickland to work out these issues.  We've had

**RUDOLPH W. GIULIANI**

16

1  numerous discussions on how we want to work things on to move

2  forward, and I think those conversations have all been very

3  constructive.  And I look forward to a continued positive

4  working relationship with all the parties.

5          As far as going forward, Your Honor, at this point, we

6  are in the process of working on an application to retain

7  Sotheby's to list Mr. Giuliani's New York City apartment.  They

8  sent us some terms.  Mr. Fischoff negotiated some terms out of

9  it.  So once we receive that, we will send it to the U.S.

10  Trustee, and all parties involved, for their thoughts and

11  opinions in regard to that retention.  But that is something,

12  Judge, we're working to try to get out as soon as possible.

13          Additionally, Judge, the 341 meeting is scheduled next

14  Wednesday, in person in the City, and all parties will be

15  appearing on that.

16          Again, Your Honor, I think this case is in its early

17  stages, so I don't want to, kind of, give a time frame to the

18  Court on when or where I think a plan of reorganization is

19  going to be.  There's obviously a lot of issues that need to be

20  resolved.

21          There's issues concerning the 148-million-dollar

22  judgment.  There's a lot of other lawsuits that are pending

23  that there is no amounts due or no verdicts or judgment

24  rendered.  So those cases will have to be worked on.  We are in

25  contact with a number of the creditors to try to see where we

**RUDOLPH W. GIULIANI**

17

1  are in order to be able to move this case forward to a

2  conclusion.

3  　　　Other than that, Your Honor, like I said, it's in the

4  early stages, and we are looking to move this case as

5  efficiently as possible.  And we appreciate, again, the Court's

6  help in this.

7  　　　THE COURT:  All right.  Thank you very much for the

8  update.  Quick question for you, which is, you've laid out a

9  couple of the specific things that are in the near term, which

10  is the 341 meeting, the retention of Sotheby's, in terms of the

11  marketing of the property.

12  　　　Do you have any sense at this point, either from the

13  debtor's point of view, or from the point of view that you've

14  arrived at after consultation with other parties, of what the

15  plan is -- small P -- not the actual plan of reorganization,

16  but what -- you know, every case of bankruptcy is different,

17  and it has different challenges and different things that need

18  to be accomplished.

19  　　　But just what -- obviously, the sale of the property

20  is one thing that's being teed up.  Is there any other thought

21  as to what the next six months might look like in terms of

22  court time and what you might need to accomplish?

23  　　　MR. BERGER:  Sure, Your Honor.  I think some of that

24  is going to be dependent on where the motion proceeds forward

25  in regard to Freemen plaintiffs, because obviously that is the

**RUDOLPH W. GIULIANI**

18

1  largest and only judgment that's out there.  So depending on

2  what happens with those motions and the appeal that's filed, I

3  think that's going to determine what our course of action is

4  going to be.

5        We've had conversations with the debtor.  We've had

6  brief conversations with the attorneys for the creditors'

7  committee.  And again, like I said, judge, we all kind of agree

8  that we're kind of in the early stages, trying to just get

9  everything laid out and do what we can.  But one of our

10  important things is to have the property sold so there is --

11  that money would be, obviously, in escrow to work towards a

12  plan down the road.

13        THE COURT:  All right.  Just to follow up on that, you

14  suggested that there may be different ways to approach that

15  motion.  I know, when we were talking at the last hearing,

16  there was a discussion about exactly what the request was to

17  lift the stay for specifically.  And then there was some back

18  and forth, including statements by -- it was either you or Mr.

19  Fischoff -- about precisely what was contemplated.  And that

20  seemed to be a pretty straightforward path.

21        But what you just said now seemed to be a bit more

22  mysterious in terms of saying where you're going to file it

23  exactly.  Has any of the thinking changed or developed further

24  as to exactly what the step would be once the order that lifts

25  the stay is entered?

1          MR. FISCHOFF:  May I address that, Your Honor?

2          THE COURT:  Sure.

3          MR. FISCHOFF:  This is Gary Fischoff.  Okay.  So the

4    order that's being circulated contemplates that the motions to

5    address the post-judgment motions will be filed and litigated.

6    But at the same time, a notice of appeal from the judgment will

7    be filed to preserve the time, but it won't be litigated

8    without further order of the Court.

9          I think, when we were in court last time, we were

10   talking that the motions would be filed and litigated, and then

11   a notice of appeal would then be filed at the conclusion of

12   those motions.  But the order now contemplates the notice of

13   appeal being filed at the same time, just not being litigated

14   until further order of the Court.

15         And if I may, I think the language of the order is,

16   kind of, everyone has agreed to.  The issue is that the order

17   was not going to be entered until it was clear that Mr. Sibley

18   would not be seeking compensation from the debtor --

19         THE COURT:  Right.

20         MR. FISCHOFF:  -- for the work on the Freeman case.

21   And we have filed his amended retention where he says, in no

22   uncertainty, he is not going to look to the debtor for payment,

23   but only to the third parties who have been paying him in the

24   past.  And the U.S. Trustee wanted an accounting of who paid

25   him how much money over the period of time.  So that took a

1   little while and delayed the filing of amended papers, because

2   we had to get this accounting done and spelled out in specific

3   dates and amount.

4           THE COURT:  Okay.

5           MR. FISCHOFF:  And so that's been done.  So we're

6   hoping that the discussions with Ms. Strickland and the

7   creditors' committee will allow the Court to either accelerate

8   the entry of the Sibley retention, so the order that we agree

9   to modify and the stay can be entered timely, or something

10  along those lines, because I know there's concern that they

11  don't want that modification order entered prior to the

12  retention order.

13          But I think, whether the retention order is entered or

14  not, it's clear that Mr. Sibley has made it clear that he is

15  not intending to seek any payments from the debtor directly.

16          THE COURT:  All right.

17          MR. FISCHOFF:  So that's the latest development.

18          THE COURT:  Thank you.  That puts a little extra meat

19  on the bones.  I appreciate that, and I appreciate the

20  subtleties of preserving appellate rights, and the one step,

21  two step, and how to handle all of that which, I'll leave to

22  you all in your considered professional judgment.

23          So I will only say this, in terms of trying to make it

24  hopefully a little easier for the parties, there are times when

25  the sequence of entering orders is significant, and so I'll be

1    guided by the parties' wisdom if they say, Judge, we want you

2    to enter this order first and that order second, in terms of

3    making it easy for the parties to have predictability.

4          So if that matters -- it may not matter at all, but if

5    it does matter to the parties, either in terms of substantive

6    rights or, frankly, even just one less thing to worry about,

7    potential collateral consequences, you'll let me know.

8          MR. FISCHOFF:  Thank you very much, Your Honor.

9          THE COURT:  All right.

10         MS. SCHWARTZ:  Your Honor, can I be heard on that

11   retention, on the retention issue, to give the Court some

12   update on that?

13         THE COURT:  Sure.

14         MS. SCHWARTZ:  Thanks.  Andrea Schwartz for the U.S.

15   Trustee.

16         Your Honor, at the last hearing, the agreement was

17   that the modification of the stay order would not be entered

18   until an order was entered approving the retention of the

19   Sibley firm.  As almost --

20         THE COURT:  I remember it slightly different.  I

21   remember that the way it was phrased is that there had to be

22   confirmation that the source of funds to pay counsel to do that

23   work was not coming from the estate.

24         I think the assumption was that's what that would look

25   like, that it naturally made sense to nest that inside of the

1  retention application.  But again, I'm not in the room where it

2  happens, where you all are discussing these things, and don't

3  have a monopoly on wisdom, so there might be other ways to do

4  it.  But it makes it makes sense to include it and that's fine.

5        MS. SCHWARTZ:  Okay.  Well, anyway, to that end, Your

6  Honor, it was only two days ago that an actual amended

7  application was filed for the Sibley firm because, as we had

8  advised the Court at the first hearing, upon receiving the

9  application, the initial application, we had substantial

10 comments with respect to disclosures and other things that

11 relate to the normal bread and butter retention issues that

12 happen every day in our court.

13       So we haven't had the opportunity yet to review the

14 revised application, the amended application that was filed.

15 And we'll have to look at that, in terms of we understood, for

16 sure, the timing issues on the modification of the stay and so

17 forth.

18       One of the things I'll just note for the Court, and I

19 think that it's something that should be addressed today, is

20 that -- well, it may or may not, depending upon what the Court

21 decides in terms of that retention order.  But I mean, I think

22 the Court's aware that oftentimes, on these retention

23 applications, there are a lot of questions that come into play

24 on disclosures relating to connections to various parties and

25 so forth.

**RUDOLPH W. GIULIANI**

23

1        We want to just let the Court know that we now have

2    that amended application.  We know that that's the, I guess I

3    would say, the number one application on retentions that has to

4    be resolved, given the other implications that relate thereto,

5    specifically with respect to whatever post-judgment actions the

6    debtor would seek to take place.

7        So we wanted to let the Court know that was just filed

8    with the Court.  And we're hoping that it addresses all of our

9    concerns, but we'll have to review that to be able to do that.

10   And if not, certainly debtor's counsel, to this date, has been

11   very cooperative with the U.S. Trustee.  They've endeavored to

12   address any concerns that we have on any issue.

13       They've also filed their schedules and statement of

14   financial affairs, although I did note and raised to the

15   debtor's counsel today that it may be one attachment might be

16   missing to that.  But at a minimum, they have filed the

17   necessary documents that we can go forward with the 341 meeting

18   that, as counsel said, is going to be held next Wednesday in

19   the courthouse at One Bowling Green at 2 o'clock.

20       So those things have been taken care of.  So I just

21   want to let the Court know that, as debtor's counsel has said,

22   they have been in regular contact with the U.S. Trustee's

23   office, and we have also been in regular contact with counsel

24   for the committee and also counsel for the Freeman plaintiffs.

25              THE COURT:  All right.  Thank you very much.

1          So let me hear from the official committee.

2          MR. DUBLIN:  Good afternoon, again, Your Honor.  Phil

3   Dublin, Aiken, proposed counsel to the creditors' committee.

4          Your Honor, there definitely have been some documents

5   that have been filed.  There have been documents that have been

6   shared with us.  Everything we get raises more and more

7   questions as it relates to the creditors' committee.

8          Just taking a little bit of a step back, before I

9   focus in on some of those things, and obviously we're not here

10  for any affirmative relief today.  As it relates to the lift

11  stay order specifically, I believe, when Your Honor has an

12  opportunity to go back through the transcript from the hearing,

13  it was stated that the lift stay order, in agreed form, or in a

14  competing form, ultimately, if that's where we end up, would

15  not be entered until an order is entered with respect to the

16  Sibley firm.

17         We did receive the amended application.  We are still

18  going through it.  Again, it raises more questions.  We do know

19  who the funds are, the defined funds that are purportedly

20  making payments on behalf of Mr. Giuliani as it relates to the

21  matters for which the Sibley firm seeks to be retained.

22         But then we have a schedule that sets forth the

23  payments that have been made, including two post-petition

24  payments, which draws some concern, at least from the

25  committee, considering that the professional has not been

1  retained yet, to be getting post-petition payments on account

2  of services to the debtor, I believe the Court still has to

3  allow those payments to be made, even if they're coming from a

4  third party, or there needs to be appropriate disclosure with

5  respect to those, to the extent they're going to be made.

6        We'll continue to work to try to address our issues on

7  the Sibley retention.  If we can get to an agreed order, if

8  we're provided additional information that we've asked for,

9  including who is behind the funds, who's providing money to the

10  funds in order for those payments to be made, hopefully we can

11  get to an agreement on that order so it can be entered before

12  or contemporaneously with the lift stay order.

13        But we're not currently at that point, and we will

14  continue to try to work constructively with debtor's counsel on

15  that issue or those issues.  And I'm sure Your Honor will hear

16  from us, or debtor's counsel, to the extent we're not able to

17  reach agreement.

18        Adding additional concern, on top of the retention

19  implications, are the schedules and statement of financial

20  affairs that have been filed.  There is significant information

21  that is missing, including all payments that were made within

22  ninety days prior to the filing.  It's just listed as a TBD,

23  which makes it difficult for us, in the first instance, to

24  understand where money went during the ninety days, and also

25  will create some difficulty with respect to being able to

**RUDOLPH W. GIULIANI**

26

1   complete a 341 meeting next week.

2          We have a number of questions about the values that

3   have been listed for the assets that Mr. Giuliani claims to

4   have.  We think some of them are significantly understated.  We

5   think some of them may be overstated.  And we're going to have

6   to dig into the details on that, either at the 341 meeting, or

7   more likely, part and parcel with a 2004 motion.

8          Whether there's a pot of gold here or not, Your Honor

9   remains to be seen.  We, again, are not comfortable with the

10  level of disclosure as it relates to the schedules and

11  statements, which of course were signed under penalty of

12  perjury.  And we are going to investigate whether there are

13  additional assets.

14         We anticipate that the committee will, in the near

15  term, engage a forensic accounting firm, or other forensic

16  professional, to assist us in that regard in investigating

17  where assets are, where assets may have gone during the period,

18  during the pendency of the case to date, as well as prior to

19  the filing.

20         Your Honor, of course, one of the gating issues will

21  be what happens with the lift stay motion or what the district

22  court judge does with the pleadings that are filed.  I would

23  like to note, I don't believe that the notice of appeal is

24  going to be filed simultaneously with what I refer to as the

25  recharacterization pleadings, because I think that would

1   probably divest the district court of jurisdiction --

2         THE COURT:  I --

3         MR. DUBLIN:  So I think --

4         THE COURT:  As a litigation geek, that thought

5   occurred to me, but my thought is to leave that to the folks

6   who are handling the case to make the calls as they see fit

7   under applicable law.  But I assume that people will look

8   carefully at that.

9         I think, in the discussion we had initially, I assumed

10  that there was a sequence, because it was the kind of thing

11  that naturally went that way because of the way perfecting an

12  appeal works.  But again, I'll leave that to you all to sort

13  through.

14        MR. DUBLIN:  And thank you, Your Honor.  And we will

15  work through that with debtor's counsel.

16        But the one thing that I -- or I'm sure I agree with

17  more than one thing that Mr. Berger said, but we are in the

18  early stages of the cases.  The committee has been around for

19  approximately two weeks.  There's a lot of work for us to do.

20  I can't put a time frame on how long these cases are going to

21  take.

22        We would hope that there is continued constructive

23  dialogue between the committee and the other stakeholders,

24  primarily the debtor.  We anticipate engaging with the debtor

25  quickly, as it relates to the dischargeability of certain of

**RUDOLPH W. GIULIANI**

28

1    the claims in this case, most importantly, or the one that's

2    liquidated as of now, the Freeman litigation, based on our

3    review, that does not appear to be dischargeable based on the

4    facts.  I think there are other causes of action; to the extent

5    that they are proven up, they likewise will not be

6    dischargeable.

7         Our objective is to find out as quickly as we can what

8    the world of the claims are that are asserted against the

9    estate and also minimize the costs of administering the estate.

10   So pursuing unnecessary litigation, or potentially unnecessary

11   litigation, as to whether an ultimate liability, whatever it

12   may be quantified as, is dischargeable or not, I hope that the

13   claimants and the debtor will be able to stipulate to those

14   issues and we can avoid those litigations.  But that is

15   something that we will endeavor to accomplish over the coming

16   weeks.

17        With that, Your Honor, again, we hope to work

18   constructively with the parties on every issue in this case.

19   I'm sure most will get resolved consensually, but I have no

20   doubt, Your Honor, that we're going to need your assistance at

21   various points over the ensuing weeks and months.

22        THE COURT:  All right.  Thank you very much.

23        So let me hear from the Freeman plaintiffs.

24        MS. STRICKLAND:  Thank you, Your Honor.  For the

25   record, Rachel Strickland, Willkie Farr & Gallagher.

**RUDOLPH W. GIULIANI**

29

1        I'm not going to repeat anything that Mr. Dublin said.

2    I agree with him.  The citation to the record, where it was

3    discussed that the order on retention would be entered prior to

4    the lift day, is page 80 of the transcript, from line 17 to 24.

5    And what I would say is that the reason that was there is

6    because --

7        THE COURT:  Oh, I'm sorry.  Let me just make it clear,

8    by my comment, I just didn't have a specific recollection of

9    exactly how it was left.  I knew it was linked.  But I also

10   note, to the extent that we're trying to make progress in a

11   case, I didn't want one thing to artificially hold up anything

12   else.  But that's fine.  That makes sense to me that we talked

13   about doing it that way, so that's fine.

14       MS. STRICKLAND:  Great, Your Honor.  No, I'm not

15   looking to do anything artificially.  I think the concerns we

16   have, in particular about the retention application, sort of

17   jumped off the page, even though it was only filed yesterday.

18       Three things I would note.  One, that law firm also

19   represents a top-twenty creditor in connection with Giuliani

20   litigation.  So it's unclear whether or not the Freeman

21   litigation will actually be pursued by that firm.  If they have

22   a conflict and can't be retained, we would have to go back to

23   the drawing board.  So I think that needs to be resolved.

24       There is an assertion that they were paid by third-

25   party defense funds.  They haven't said who those folks are or

1    where the money came from.  And there are obvious questions,

2    including the fact that one of those funds is represented by a

3    Lar Dan declaration of Andrew Giuliani, the debtor's son.  So

4    the issue of source of funds is going to be very ripe.  And

5    that's certainly a red flag.

6            And then thirdly, paragraph 17 of the Sibley

7    declaration says that the firm has agreed it won't seek payment

8    directly from the debtor.  That jumped off the page as well.

9    So I think the reason to keep the sequence as discussed at the

10   first hearing is because it ain't over til it's over.

11           And as Mr. Dublin said, there are significant

12   questions raised by the retention.  And until Your Honor hears

13   all of those things, and they've had an opportunity to be

14   probed, and an order is actually entered, we don't know whether

15   or not the gating item has been satisfied as to whether or not

16   the lift stay is appropriate, especially since, as Your Honor

17   noted at the first day hearing, Mr. Giuliani did not meet his

18   burden.  And so the basis for the lift stay was our agreement

19   subject to that condition.  So for that reason, I think the

20   sequencing needs to stay put.

21           But the form of order has not been difficult to arrive

22   at.  I agree with Mr. Berger.  I think that we have reached

23   agreement on the laundry list of items that are subject to the

24   partial lift stay, and they closely resemble what we had put in

25   our form of proposed order initially and also what was

1  discussed at that hearing.

2         THE COURT:  All right.  Thank you very much.  And with

3  that, let me throw it open to any other party who might wish to

4  be heard on the status of the case who has not yet spoken.

5         MR. SAMUELS:  Your Honor, Joel Samuels of the

6  Buchalter firm on behalf of the Dominion parties.

7         I appeared at the December 19th hearing, and there was

8  a brief colloquy on the record about the motion filed by the

9  Herring parties to clarify the scope of the automatic stay as

10  it pertained to nonbankruptcy litigation pending in the

11  district court, in which Mr. Giuliani is one of five different

12  parties who are part of that litigation.

13         I'm pleased to report that we have reached agreement

14  with counsel for the Herring parties on a stipulation and

15  proposed order to resolve that.  I've sent that to counsel for

16  the debtor last night, because the stipulation does include the

17  debtor as a signatory.  I'm waiting to hear back from the

18  debtor on that.

19         But I wanted Your Honor to be aware, A, that may be

20  why the Jackson Walker firm is not appearing, because they've

21  resolved things as far as they're concerned.  And B, I wanted

22  you to be aware that there will be forthcoming a stipulation

23  and proposed order for you to review.

24         THE COURT:  All right.  Thank you very much.  That was

25  on my list of things to discuss.  And so you've happily

32

1    answered the question before it was even asked, because we

2    hadn't heard anything from anyone about scheduling that.  And

3    so that's good to know.

4         Is it your understanding that that kind of stipulation

5    and proposed order will be put on presentment, meaning so that

6    the -- because there's obviously a lot of interested parties in

7    this case, and there's certain issues that may crop up, in a

8    variety of contexts, involving a variety of parties.  So it

9    would be, I think, important to give folks a chance to weigh

10   in.  So is that the intention?

11        MR. SAMUELS:  I think so.  I haven't thought that

12   through completely.  I think so.

13        THE COURT:  All right.  I think that would make sense

14   to do it that way so that anybody who skin in the game on those

15   kinds of issues can see how they're being handled in that case

16   and whether it has any impact on them or not.

17        Again, it may have no other impact on parties other

18   than the parties who are on the stipulation, but better safe

19   than sorry so that we don't -- once it's worked out, it's

20   worked out in a more permanent way.

21        All right.  Ms. Samuels, anything else?

22        MR. SAMUELS:  That's it.  Thank you.

23        THE COURT:  All right.  Thank you.

24        Anyone else?

25        MS. SCHWARTZ:  Your Honor, it's Andrea Schwartz from

**RUDOLPH W. GIULIANI**

33

1   the U.S. Trustee's office.

2          I just wanted to let the Court know that we received,

3   either last night or today, the last circulated order that's

4   been talked about by the parties on modification.  So we will

5   need an opportunity to review that as well.

6          THE COURT:  Yeah, it sounds like the parties are still

7   working through that.  And --

8          MS. SCHWARTZ:  Yeah.

9          THE COURT:  -- then very collegial and cooperative in

10  doing that, even if people have some significant substantive

11  disagreements about things in the case, and I appreciate that.

12  It's the way it's supposed to work.  You agree on what you can

13  agree upon, and you fight about what you need to fight about.

14  So certainly --

15         MS. SCHWARTZ:  Right.

16         THE COURT:  -- I'll be guided by the parties in

17  connection with that and wait to hear from you all once you

18  reach the end of that road, which might be an agreed-upon

19  order, or it might be that you agree to disagree.

20         So all right, anyone else who wishes to be heard?

21         All right.  It's always hard in Zoom to know exactly

22  when everybody is done chiming in.  But to the extent somebody

23  is having technical issues and needs to chime in later, that's

24  fine.  But at this point, it sounds like we've heard from

25  everybody.  And I just wanted to share a couple of thoughts,

1   not in any particular order, but things that hopefully will be

2   of use to the parties going forward.

3          We'll talk in a minute about a date for our next

4   hearing and status conferences.  Just for those of you who

5   might not otherwise know, I'm a fan of status conferences as a

6   chance to sort of get everybody up to speed, and talk about

7   issues, and potentially resolve issues, and thus keep the case

8   moving forward, keep it moving forward in an efficient way and

9   avoid unnecessary litigation, and to make sure everybody feels

10  like they understand where things are going.

11         So that's part and parcel with communication.  It

12  sounds like that's happening in this case.  People are talking

13  to one another about issues, about orders, about things that

14  they should be talking about.  That really needs to continue

15  for the case to work successfully.

16         I'm giving away a little ice in the winter here in the

17  sense that we've all seen cases that have worked well because

18  people communicate, and they still litigate what needs to be

19  litigated, and other cases where everything is a problem

20  because people are not talking to one another.

21         So I appreciate that this case right now falls into

22  the good category.  And so I appreciate everybody's efforts in

23  that regard.  And I appreciate you continuing in that same

24  fashion.

25         There was a mention of a Rule 2004.  The general

1  practice in this district -- and I fall into that category --

2  is that those things can be done on an ex parte basis to

3  chambers, except where people think there may be issues or it's

4  an interest of wider concern in a case.

5       And so sometimes I see a case where I can tell right

6  away that something like a Rule 2004 should be done, sort of,

7  on regular notice, as a regular motion, rather than an ex parte

8  basis, and then enter an order, and then people will object,

9  and we end up having a lot of duplication of efforts and not a

10  very efficient path forward.

11       So to the extent this Rule 2004 request is going to

12  come, I would say treat it like any other motion, and also talk

13  to folks ahead of time to get a sense of working out as much as

14  you can work out, again, without giving up your rights, but

15  just, again, to try to be as efficient as possible.  And I

16  think that's consistent with my chambers rules that say, if you

17  anticipate that you might get an objection, then handle it,

18  sort of, on regular notice.

19       There was a comment made about information that is

20  being disclosed in the context of schedules and the statement

21  of financial affairs, including information about transfers

22  within ninety days and all of that.  That obviously is very

23  important.  With bankruptcy, a debtor gets certain benefits,

24  such as the automatic stay, and with that comes certain

25  obligations, which is a principal; among them is financial

1   transparency.

2          So I trust that will, again, be the order of the day

3   for this case.  So I certainly urge people to get their hands

4   around that as quickly as they can in terms of getting all of

5   the financial information out there.  That's certainly what I

6   heard from debtor's counsel when we had our first hearing.  And

7   sometimes it takes a little while to get certain things

8   together, but obviously my understanding would be that all of

9   that kind of information is provided at the earliest

10   opportunity.

11          So with that, my question would be when we should next

12   get together.  We'll talk in a second about specific dates.

13   But those will be set with the understanding that, if people

14   need something else, they can always reach out to chambers to

15   get a motion on the calendar.

16          That said, in the interest of efficiency, we try to

17   gather everything in a case for a hearing date where we can, as

18   opposed to setting a lot of separate individual dates so that

19   we're here every week.  That's not a cost-effective way to run

20   a case and impose on people's time.  So certainly, again, to

21   the extent you can share information with folks before you file

22   things, including trying to work out scheduling, that's much

23   appreciated.

24          So with that speech out of the way, and thank you for

25   your patience in having me cover things that, frankly, you all

1   already know, let me talk to debtor's counsel about when you

2   think would be a sensible time to next get together.

3          MR. BERGER:  Sure, Your Honor.  I mean, I think, on a

4   status conference, I mean, the first or second week in March, I

5   think probably makes sense.  And obviously, we'll have the 341

6   meeting.  We may end up having to come into court earlier if we

7   have issues in regard to the Sibley retention, but hopefully we

8   can all work that out together.

9          But I think pushing it off to probably sometime the

10  first or second week in March, I think, will give all the

11  parties time to really sit down, go through some issues that we

12  need to, and work on a path forward on what we need to do, and

13  hopefully resolve some of the outstanding questions that some

14  of the parties have, that we can do that on our own without

15  having to expend more time and money.

16         THE COURT:  All right.  That sounds reasonable.  And

17  so I will avoid the Ides of March, but how about we go with

18  March 13th, which I believe is a Wednesday.  I don't have a

19  calendar in front of me.

20         MR. BERGER:  Yes, Your Honor.

21         THE COURT:  At 10 o'clock.  And to the extent that

22  parties are working through issues and find themselves at the

23  end of the road, and I could be of some assistance, talk to one

24  another and then reach out to chambers.  Happy to get you on a

25  on a conference call very promptly.  I usually do that within a

38

1  day or two.  And that way you can keep the -- as Judge Chapman

2  used to like to say, keep your powder dry on sending in letters

3  or filing further motions in the interest of efficiency.

4       And again, whenever I ask people to do that, you

5  always do retain the right to say, Judge, we'd like to brief

6  this, or there's some legal issue, whatever.  That's fine.  But

7  again, in the first instance, we'll try to work out as much as

8  we can using status conferences.

9       So March 13th at 10 o'clock, unless somebody has a

10 conflict that makes that impossible.

11      All right.  Not hearing anything, we'll make it March

12 13th, 10 o'clock.

13      And with that, anything else from any other party

14 before we adjourn today?

15      MR. BERGER:  Nothing on our end, Your Honor.  Again,

16 we thank the Court for its courtesies in this matter.

17      THE COURT:  All right.  Thank you all very much.  With

18 that, the Court is adjourned, and I bid you all a very good

19 afternoon.

20      MR. BERGER:  Thank you, Your Honor.

21      MR. DUBLIN:  Thank you, Your Honor.

22      MS. SCHWARTZ:  Thank you, Your Honor.

23    (Whereupon these proceedings were concluded at 2:51 PM)

24

25

39

1

2                    C E R T I F I C A T I O N

3

4   I, Sharona Shapiro, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7

8   *Sharona Shapiro*

9   _____

10  Sharona Shapiro (CET-492)

11  AAERT Certified Electronic Transcriber

12

13  eScribers

14  7227 North 16th Street, Suite #207

15  Phoenix, AZ 85020

16

17  Date:  February 6, 2024

18

19

20

21

22

23

24

25

## A

**ABID (1)**
5:21
**able (7)**
13:18,24;17:1;23:9;
25:16,25;28:13
**accelerate (1)**
20:7
**accomplish (2)**
17:22;28:15
**accomplished (2)**
15:7;17:18
**account (1)**
25:1
**accounting (3)**
19:24;20:2;26:15
**action (2)**
18:3;28:4
**actions (2)**
15:19;23:5
**actual (2)**
17:15;22:6
**Actually (4)**
11:6;12:3;29:21;
30:14
**Adding (1)**
25:18
**additional (3)**
25:8,18;26:13
**Additionally (2)**
14:3;16:13
**address (5)**
14:24;19:1,5;23:12;
25:6
**addressed (1)**
22:19
**addresses (1)**
23:8
**adjourn (1)**
38:14
**adjourned (1)**
38:18
**administering (1)**
28:9
**advised (1)**
22:8
**affairs (3)**
23:14;25:20;35:21
**affidavits (1)**
14:13
**affirmative (1)**
24:10
**afternoon (14)**
9:5,14,18,20,24;
10:2,5,8,17;11:1,4,12;
24:2;38:19
**Again (19)**
12:11;15:14;16:16;
17:5;18:7;22:1;24:2,
18;26:9;27:12;28:17;
32:17;35:14,15;36:2,

20;38:4,7,15

## against (1)
28:8
**ago (1)**
22:6
**agree (8)**
18:7;20:8;27:16;
29:2;30:22;33:12,13,
19
**agreeable (1)**
13:24
**agreed (4)**
19:16;24:13;25:7;
30:7
**agreed-upon (1)**
33:18
**agreement (6)**
21:16;25:11,17;
30:18,23;31:13
**ahead (1)**
35:13
**Aidala (1)**
14:8
**Aiken (1)**
24:3
**ain't (1)**
30:10
**AKIN (3)**
5:2,12;10:6
**allow (5)**
12:19;15:18,20;
20:7;25:3
**almost (1)**
21:19
**along (1)**
20:10
**although (2)**
14:24;23:14
**always (4)**
9:11;33:21;36:14;
38:5
**AMELIA (1)**
5:18
**amended (7)**
14:13;19:21;20:1;
22:6,14;23:2;24:17
**among (1)**
35:25
**amount (1)**
20:3
**amounts (1)**
16:23
**ANDREA (4)**
8:7;10:17;21:14;
32:25
**Andrew (1)**
30:3
**Angeles (1)**
7:6
**ANNIE (1)**
8:8
**answered (1)**
32:1

## anticipate (3)
26:14;27:24;35:17
**anticipates (1)**
10:24
**apartment (1)**
16:7
**appeal (7)**
12:20;18:2;19:6,11,
13;26:23;27:12
**appear (1)**
28:3
**appearance (5)**
9:23;10:11,15,25;
11:2
**appearances (3)**
9:12,12;10:21
**appeared (1)**
31:7
**appearing (3)**
11:8;16:15;31:20
**appellate (1)**
20:20
**applicable (1)**
27:7
**application (12)**
14:7;16:6;22:1,7,9,
9,14,14;23:2,3;24:17;
29:16
**applications (3)**
14:3,21;22:23
**appreciate (10)**
12:6;13:22;15:14;
17:5;20:19,19;33:11;
34:21,22,23
**appreciated (1)**
36:23
**approach (1)**
18:14
**appropriate (3)**
11:18;25:4;30:16
**approving (1)**
21:18
**approximately (1)**
27:19
**argument (1)**
11:21
**ARONOFF (1)**
6:2
**around (2)**
27:18;36:4
**arrive (1)**
30:21
**arrived (1)**
17:14
**artificially (2)**
29:11,15
**asserted (1)**
28:8
**assertion (1)**
29:24
**assets (4)**
26:3,13,17,17
**assist (1)**

26:16
**assistance (2)**
28:20;37:23
**assume (1)**
27:7
**assumed (1)**
27:9
**assumption (1)**
21:24
**attachment (1)**
23:15
**attending (1)**
11:10
**ATTORNEY (2)**
7:11;15:24
**Attorneys (11)**
4:3,14;6:3,12;7:3,
12;8:3;9:16;11:9;
14:5;18:6
**Audio (1)**
9:2
**Austin (1)**
4:6
**automatic (3)**
9:9;31:9;35:24
**Avenue (2)**
6:13;7:21
**avoid (4)**
14:20;28:14;34:9;
37:17
**aware (3)**
22:22;31:19,22
**away (2)**
34:16;35:6

## B

**back (7)**
12:23;13:17;18:17;
24:8,12;29:22;31:17
**balance (1)**
12:17
**Bankruptcy (6)**
9:3;12:11,14;15:18;
17:16;35:23
**based (4)**
13:22;14:13;28:2,3
**basis (3)**
30:18;35:2,8
**bed (1)**
15:12
**begins (1)**
9:2
**behalf (7)**
9:21,25;10:3,9;
11:3;24:20;31:6
**behind (1)**
25:9
**believes (1)**
12:14
**benefits (1)**
35:23
**BENESCH (1)**

6:2
**BERGER (16)**
9:14,15,15;12:3,5,
6;13:21;14:1;15:13;
17:23;27:17;30:22;
37:3,20;38:15,20
**Bertuna (1)**
14:8
**better (1)**
32:18
**BIBLO (1)**
5:9
**bid (1)**
38:18
**bit (3)**
9:7;18:21;24:8
**BLOCK (2)**
5:9;13:12
**Blvd (1)**
7:4
**board (1)**
29:23
**bones (1)**
20:19
**Bowling (2)**
8:4;23:19
**BRAD (1)**
4:10
**bread (1)**
22:11
**brief (3)**
18:6;31:8;38:5
**BROGAN (1)**
6:8
**Bryant (1)**
5:15
**BUCHALTER (3)**
7:2;11:3;31:6
**burden (1)**
30:18
**business (1)**
11:14
**butter (1)**
22:11

## C

**CA (1)**
7:6
**CAIN (2)**
4:2,8
**calendar (2)**
36:15;37:19
**call (3)**
10:9;14:17;37:25
**calls (1)**
27:6
**Camara (1)**
14:5
**came (2)**
12:25;30:1
**can (26)**
13:15,16;14:18,19;

18:9;20:9;21:10;
23:17;25:7,10,11;
28:7,14;32:15;33:12;
35:2,5,14;36:4,14,17,
21;37:8,14;38:1,8
**care (1)**
23:20
**carefully (1)**
27:8
**case (30)**
9:5,5,7,8;10:20;
11:16;12:13;16:16;
17:1,4,16;19:20;
26:18;27:6;28:1,18;
29:11;31:4;32:7,15;
33:11;34:7,12,15,21;
35:4,5;36:3,17,20
**cases (7)**
10:20,21;16:24;
27:18,20;34:17,19
**category (2)**
34:22;35:1
**causes (1)**
28:4
**certain (6)**
13:14;27:25;32:7;
35:23,24;36:7
**Certainly (7)**
15:8;23:10;30:5;
33:14;36:3,5,20
**challenges (1)**
17:17
**chambers (4)**
35:3,16;36:14;
37:24
**chance (2)**
32:9;34:6
**changed (1)**
18:23
**Chapman (1)**
38:1
**CHAPPLE (1)**
4:9
**Chapter (2)**
9:5;10:20
**CHARLES (1)**
4:8
**checked (1)**
13:6
**chime (2)**
11:13;33:23
**chiming (1)**
33:22
**circling (1)**
11:25
**circulated (2)**
19:4;33:3
**citation (1)**
29:2
**CITRON (3)**
6:11,12,16
**City (3)**
12:9;16:7,14

**claimants (1)**
28:13
**claims (3)**
26:3;28:1,8
**clarify (1)**
31:9
**clarity (1)**
13:11
**clear (4)**
19:17;20:14,14;
29:7
**click (1)**
11:8
**closely (1)**
30:24
**collateral (1)**
21:7
**collective (1)**
15:11
**collegial (1)**
33:9
**colloquy (1)**
31:8
**Colorado (1)**
4:4
**comfortable (1)**
26:9
**coming (3)**
21:23;25:3;28:15
**comment (2)**
29:8;35:19
**comments (2)**
14:12;22:10
**Committee (16)**
5:3,13;10:3,7;
12:25;15:24;18:7;
20:7;23:24;24:1,3,7,
25;26:14;27:18,23
**communicate (1)**
34:18
**communication (1)**
34:11
**compensation (1)**
19:18
**competing (1)**
24:14
**complete (1)**
26:1
**completely (1)**
32:12
**concern (4)**
20:10;24:24;25:18;
35:4
**concerned (1)**
31:21
**concerning (1)**
16:21
**concerns (4)**
14:14;23:9,12;
29:15
**concluded (1)**
38:23
**conclusion (2)**

17:2;19:11
**condition (1)**
30:19
**conference (9)**
9:5,7,10;11:16;
13:2,20;14:17;37:4,
25
**conferences (3)**
34:4,5;38:8
**confirmation (1)**
21:22
**conflict (2)**
29:22;38:10
**connection (3)**
15:9;29:19;33:17
**connections (1)**
22:24
**consensually (1)**
28:19
**consensus (1)**
13:10
**consequences (1)**
21:7
**considered (1)**
20:22
**considering (1)**
24:25
**consistent (1)**
35:16
**constant (1)**
15:23
**constructive (2)**
16:3;27:22
**constructively (2)**
25:14;28:18
**consultation (1)**
17:14
**contact (4)**
15:23;16:25;23:22,
23
**contemplated (1)**
18:19
**contemplates (2)**
19:4,12
**contemporaneously (1)**
25:12
**context (1)**
35:20
**contexts (1)**
32:8
**continue (3)**
25:6,14;34:14
**continued (2)**
16:3;27:22
**continuing (1)**
34:23
**contours (1)**
13:8
**conversations (3)**
16:2;18:5,6
**Coomer (1)**
4:3
**cooperative (2)**

23:11;33:9
**COPLAN (1)**
6:2
**CORPORATION (1)**
7:2
**cost-effective (1)**
36:19
**COSTELLO (1)**
6:17
**costs (2)**
11:17;28:9
**counsel (19)**
5:3,13;10:6;11:24;
21:22;23:10,15,18,21,
23,24;24:3;25:14,16;
27:15;31:14,15;36:6;
37:1
**couple (3)**
14:16;17:9;33:25
**course (3)**
18:3;26:11,20
**Court (66)**
9:3,3,17,20,21;10:2,
8,19;11:4,11,17;12:5;
13:5,22,25;14:4,21,
23;16:18;17:7,22;
18:13;19:2,8,9,14,19;
20:4,7,16,18;21:9,11,
13,20;22:8,12,18,20;
23:1,7,8,21,25;25:2;
26:22;27:1,2,4;28:22;
29:7;31:2,11,24;
32:13,23;33:2,6,9,16;
37:6,16,21;38:16,17,
18
**courtesies (1)**
38:16
**courthouse (1)**
23:19
**Court's (4)**
13:23;15:14;17:5;
22:22
**cover (3)**
11:19,20;36:25
**create (1)**
25:25
**creditor (1)**
29:19
**Creditors (4)**
5:4,14;10:4;16:25
**creditors' (6)**
12:24;15:24;18:6;
20:7;24:3,7
**crop (1)**
32:7
**currently (1)**
25:13

# D

**Dallas (1)**
5:7
**Dan (1)**

30:3
**Daniel (2)**
4:14;6:8
**DANOVITCH (1)**
5:18
**date (4)**
23:10;26:18;34:3;
36:17
**dates (3)**
20:3;36:12,18
**DAVIDOFF (2)**
6:11,12
**day (6)**
15:17;22:12;29:4;
30:17;36:2;38:1
**days (4)**
22:6;25:22,24;
35:22
**DC (1)**
14:9
**DE (1)**
6:6
**Debtor (25)**
8:12;9:13,16,19;
11:7;12:8,12,13,20;
14:9;15:17;18:5;
19:18,22;20:15;23:6;
25:2;27:24,24;28:13;
30:8;31:16,17,18;
35:23
**debtor's (11)**
11:24;17:13;23:10,
15,21;25:14,16;
27:15;30:3;36:6;37:1
**December (2)**
12:17;31:7
**decides (1)**
22:21
**decision (1)**
12:11
**declaration (2)**
30:3,7
**declarations (1)**
15:8
**defense (1)**
29:25
**defined (1)**
24:19
**definitely (2)**
15:22;24:4
**delayed (1)**
20:1
**demonstrated (1)**
11:22
**Department (2)**
7:12;8:2
**dependent (1)**
17:24
**depending (2)**
18:1;22:20
**details (1)**
26:6
**determine (1)**

23-12055-shl    Doc 130    Filed 02/06/24    Entered 02/28/24 09:02:11    Main Document
In the Matter of: RUDOLPH W. GIULIANI    Pg 42 of 48

January 31, 2024

18:3
**developed (1)**
18:23
**development (1)**
20:17
**dialogue (1)**
27:23
**different (6)**
17:16,17,17;18:14;
21:20;31:11
**difficult (2)**
25:23;30:21
**difficulty (1)**
25:25
**dig (1)**
26:6
**direction (1)**
13:11
**directly (2)**
20:15;30:8
**disagree (1)**
33:19
**disagreements (1)**
33:11
**dischargeability (1)**
27:25
**dischargeable (3)**
28:3,6,12
**disciplinary (1)**
14:9
**disclosed (1)**
35:20
**disclosure (2)**
25:4;26:10
**disclosures (2)**
22:10,24
**discuss (1)**
31:25
**discussed (3)**
29:3;30:9;31:1
**discussing (1)**
22:2
**discussion (3)**
14:25;18:16;27:9
**discussions (2)**
16:1;20:6
**dispute (1)**
13:19
**District (6)**
9:4;21;26:21;27:1;
31:11;35:1
**divest (1)**
27:1
**DIZENGOFF (1)**
5:19
**documents (3)**
23:17;24:4,5
**Dominion (3)**
7:3;11:3;31:6
**done (5)**
20:2,5;33:22;35:2,6
**doubt (1)**
28:20

**down (3)**
11:17;18:12;37:11
**drawing (1)**
29:23
**draws (1)**
24:24
**dry (1)**
38:2
**DUBLIN (10)**
5:20;10:5,5;24:2,3;
27:3,14;29:1;30:11;
38:21
**due (1)**
16:23
**dueling (1)**
13:15
**duplication (1)**
35:9
**during (3)**
25:24;26:17,18

## E

**earlier (2)**
9:8;37:6
**earliest (1)**
36:9
**early (6)**
15:22,22;16:16;
17:4;18:8;27:18
**easier (2)**
11:21;20:24
**easy (1)**
21:3
**economical (1)**
12:15
**efficiency (3)**
11:18;36:16;38:3
**efficient (5)**
12:14;15:12;34:8;
35:10,15
**efficiently (1)**
17:5
**efforts (2)**
34:22;35:9
**either (6)**
17:12;18:18;20:7;
21:5;26:6;33:3
**else (9)**
10:23;11:5,13;
29:12;32:21,24;
33:20;36:14;38:13
**email (1)**
13:1
**encouraging (1)**
13:15
**end (10)**
11:2;14:2;15:17;
22:5;24:14;33:18;
35:9;37:6,23;38:15
**endeavor (1)**
28:15
**endeavored (1)**

23:11
**engage (1)**
26:15
**engaging (1)**
27:24
**ENID (1)**
7:17
**enough (1)**
13:11
**ensuing (1)**
28:21
**enter (2)**
21:2;35:8
**entered (14)**
12:13;13:14;18:25;
19:17;20:9,11,13;
21:17,18;24:15,15;
25:11;29:3;30:14
**entering (1)**
20:25
**entry (1)**
20:8
**Eric (1)**
4:3
**escrow (1)**
18:11
**especially (1)**
30:16
**ESQ (23)**
4:8,9,10,19;5:9,18,
19,20,21;6:8,16,17,
18,19,20,21;7:8,16,
17,24,25;8:7,8
**estate (3)**
21:23;28:9,9
**even (6)**
12:12;21:6;25:3;
29:17;32:1;33:10
**events (1)**
12:9
**everybody (5)**
15:6;33:22,25;34:6,
9
**everybody's (1)**
34:22
**everyone (1)**
19:16
**evidentiary (1)**
11:20
**ex (2)**
35:2,7
**exactly (7)**
15:4,6;18:16,23,24;
29:9;33:21
**except (1)**
35:3
**expend (1)**
37:15
**extended (2)**
9:8;11:21
**extent (3)**
13:13;15:8;25:5,16;
28:4;29:10;33:22;

35:11;36:21;37:21
**extra (1)**
20:18

## F

**fact (1)**
30:2
**facts (1)**
28:4
**fall (1)**
35:1
**falls (1)**
34:21
**familiar (1)**
12:8
**fan (1)**
34:5
**far (2)**
12:16;16:5;31:21
**Farr (2)**
9:25;28:25
**fashion (1)**
34:24
**feels (1)**
34:9
**FELD (3)**
5:2,12;10:6
**Field (1)**
5:5
**fight (2)**
33:13,13
**file (4)**
12:20;14:13;18:22;
36:21
**filed (24)**
10:10;12:17,18,19;
14:4;15:9;18:2;19:5,
7,10,11,13,21;22:7,
14;23:7,13,16;24:5;
25:20;26:22,24;
29:17;31:8
**filing (7)**
12:10,11;15:2;20:1;
25:22;26:19;38:3
**Finance (1)**
7:12
**financial (5)**
23:14;25:19;35:21,
25;36:5
**find (3)**
10:19;28:7;37:22
**fine (5)**
22:4;29:12,13;
33:24;38:6
**firm (14)**
11:3;14:5,8,10;
21:19;22:7;24:16,21;
26:15;29:18,21;30:7;
31:6,20
**first (9)**
21:2;22:8;25:23;
30:10,17;36:6;37:4,

10;38:7
**Fischoff (15)**
9:15,18,18;11:6,6,
12:2;16:8;18:19;19:1,
3,3,20;20:5,17;21:8
**fit (1)**
27:6
**five (1)**
31:11
**flag (1)**
30:5
**focus (1)**
24:9
**folks (5)**
27:5;29:25;32:9;
35:13;36:21
**follow (1)**
18:13
**forensic (2)**
26:15,15
**form (4)**
24:13,14;30:21,25
**forth (5)**
12:23;18:18;22:17,
25;24:22
**forthcoming (1)**
31:22
**forward (13)**
12:15;15:21;16:2,3,
5;17:1,24;23:17;34:2,
8,8;35:10;37:12
**frame (1)**
16:17;27:20
**frankly (3)**
10:14;21:6;36:25
**Freeman (7)**
9:25;14:6;19:20;
23:24;28:2,23;29:20
**Freemen (1)**
17:25
**Friday (2)**
13:2;14:18
**FRIEDLANDER (1)**
6:2
**front (1)**
37:19
**funds (10)**
15:1,3;21:22;24:19,
19;25:9,10;29:25;
30:2,4
**further (5)**
14:17;18:23;19:8,
14;38:3

## G

**GAGION (1)**
7:16
**Gallagher (2)**
9:25;28:25
**game (1)**
32:14
**Gary (3)**

23-12055-shl    Doc 130    Filed 02/06/24    Entered 02/28/24 09:02:11    Main Document
In the Matter of: RUDOLPH W. GIULIANI          Pg 43 of 48

January 31, 2024

9:18;11:6;19:3
**gather (1)**
36:17
**gating (2)**
26:20;30:15
**geek (1)**
27:4
**GENERAL (3)**
7:11;13:10;34:25
**gets (1)**
35:23
**Gill (1)**
4:14
**Giuliani (11)**
8:12;9:6;11:7,8;
14:6;24:20;26:3;
29:19;30:3,17;31:11
**Giuliani's (1)**
16:7
**given (1)**
23:4
**giving (2)**
34:16;35:14
**GLUCKSMAN (1)**
6:18
**goal (1)**
14:1
**goes (1)**
12:16
**gold (2)**
15:17;26:8
**Good (16)**
9:14,18,20,24;10:2,
5,8,17;11:1,4,12;13:3;
24:2;32:3;34:22;
38:18
**Goodman (1)**
9:15
**Great (2)**
15:13;29:14
**Greatly (2)**
13:21;15:14
**Green (2)**
8:4;23:19
**ground (1)**
15:5
**guess (1)**
23:2
**guided (3)**
15:10;21:1;33:16
**GUMP (3)**
5:2,12;10:6

### H

**handle (2)**
20:21;35:17
**handled (1)**
32:15
**handling (1)**
27:6
**hands (1)**
36:3

**happen (1)**
22:12
**happening (1)**
34:12
**happens (3)**
18:2;22:2;26:21
**happily (1)**
31:25
**happy (4)**
10:14;11:11;15:10;
37:24
**Hard (2)**
10:13;33:21
**HAUER (3)**
5:2,12;10:6
**hear (6)**
10:14;24:1;25:15;
28:23;31:17;33:17
**heard (7)**
10:10;21:10;31:4;
32:2;33:20,24;36:6
**hearing (21)**
9:8;10:12,24;11:22;
12:7,22;13:8,23;15:1;
18:15;21:16;22:8;
24:12;30:10,17;31:1,
7;34:4;36:6,17;38:11
**hearings (1)**
14:20
**hears (1)**
30:12
**Heath (1)**
9:14
**held (2)**
12:22;23:18
**hello (1)**
11:9
**help (2)**
15:14;17:6
**Herring (3)**
10:9;31:9,14
**history (1)**
12:9
**hold (1)**
29:11
**Honor (47)**
9:14;10:5,17;11:1;
12:3,6,7,16,19;13:21;
14:3,11,20,22;15:13,
23;16:5,16;17:3,23;
19:1;21:8,10,16;22:6;
24:2,4,11;25:15;26:8,
20;27:14;28:17,20,
24;29:14;30:12,16;
31:5,19;32:25;37:3,
20;38:15,20,21,22
**hope (5)**
14:14,22;27:22;
28:12,17
**hopefully (7)**
13:10;14:1;20:24;
25:10;34:1;37:7,13
**hoping (3)**

14:17;15:17;20:6;
23:8
**HUTCHER (2)**
6:11,12

### I

**ice (1)**
34:16
**idea (1)**
15:5
**Ides (1)**
37:17
**impact (2)**
32:16,17
**implications (2)**
23:4;25:19
**important (3)**
18:10;32:9;35:23
**importantly (1)**
28:1
**impose (1)**
36:20
**impossible (1)**
38:10
**inbox (1)**
13:6
**Inc (1)**
7:3
**include (2)**
22:4;31:16
**including (7)**
18:18;24:23;25:9,
21;30:2;35:21;36:22
**individual (1)**
36:18
**information (7)**
25:8,20;35:19,21;
36:5,9,21
**initial (4)**
9:5,7;11:15;22:9
**initially (2)**
27:9;30:25
**input (3)**
13:22,23;15:14
**inside (1)**
21:25
**instance (2)**
25:23;38:7
**intend (1)**
10:22
**intending (1)**
20:15
**intention (1)**
32:10
**interest (5)**
11:17,23;35:4;
36:16;38:3
**interested (1)**
32:6
**into (5)**
22:23;26:6;34:21;
35:1;37:6

**investigate (1)**
26:12
**investigating (1)**
26:16
**involved (1)**
16:10
**involves (1)**
11:21
**involving (1)**
32:8
**IRA (1)**
5:19
**issue (8)**
15:12;19:16;21:11;
23:12;25:15;28:18;
30:4;38:6
**issues (24)**
10:13;14:12,17,25;
15:21,25;16:19,21;
22:11,16;25:6,15;
26:20;28:14;32:7,15;
33:23;34:7,7,13;35:3;
37:7,11,22
**item (1)**
30:15
**items (1)**
30:23

### J

**Jackson (1)**
31:20
**JAMES (1)**
6:18
**January (3)**
12:18,18,22
**JEFFREY (1)**
6:16
**JOEL (3)**
7:8;11:2;31:5
**join (1)**
10:14
**JONATHAN (1)**
6:19
**JOSEPH (1)**
6:20
**Judge (9)**
9:18;13:1;16:12,13;
18:7;21:1;26:22;38:1,
5
**judgment (8)**
9:22,22;12:21;
16:22,23;18:1;19:6;
20:22
**jumped (2)**
29:17;30:8
**jurisdiction (1)**
27:1
**JUSTICE (1)**
8:2

### K

**Kamins (1)**
14:8
**keep (6)**
11:17;30:9;34:7,8;
38:1,2
**KENNETH (1)**
7:24
**kind (9)**
14:19,20;16:17;
18:7,8;19:16;27:10;
32:4;36:9
**kinds (1)**
32:15
**KLOEWER (1)**
4:10
**knew (1)**
29:9
**KUBY (2)**
4:13,19

### L

**laid (2)**
17:8;18:9
**language (2)**
13:12;19:15
**Lar (1)**
30:3
**large (1)**
10:20
**largest (1)**
18:1
**last (11)**
11:22;12:7;13:1,8;
15:1;18:15;19:9;
21:16;31:16;33:3,3
**later (1)**
33:23
**latest (1)**
20:17
**laundry (1)**
30:23
**LAW (5)**
4:13;14:5,7;27:7;
29:18
**LAWRENCE (1)**
4:19
**lawsuits (2)**
15:19;16:22
**least (1)**
24:24
**leave (3)**
20:21;27:5,12
**led (1)**
12:9
**left (2)**
13:4;29:9
**legal (1)**
38:6
**LEO (1)**
7:16
**less (1)**
21:6

**letters (1)**
38:2
**level (1)**
26:10
**liability (1)**
28:11
**Liberty (1)**
7:13
**lift (11)**
9:9;15:2;18:17;
24:10,13;25:12;
26:21;29:4;30:16,18,
24
**lifts (1)**
18:24
**lightly (1)**
12:12
**likely (1)**
26:7
**likewise (1)**
28:5
**line (1)**
29:4
**lines (1)**
20:10
**linked (1)**
29:9
**liquidated (1)**
28:2
**list (3)**
16:7;30:23;31:25
**listed (2)**
25:22;26:3
**litigate (1)**
34:18
**litigated (5)**
19:5,7,10,13;34:19
**litigation (11)**
9:22;14:6;27:4;
28:2,10,11;29:20,21;
31:10,12;34:9
**litigations (1)**
28:14
**little (6)**
20:1,18,24;24:8;
34:16;36:7
**LLP (6)**
5:2,12;6:2,11,12;
7:20
**long (1)**
27:20
**look (8)**
13:17,17;16:3;
17:21;19:22;21:24;
22:15;27:7
**looking (2)**
17:4;29:15
**Los (1)**
7:6
**lot (9)**
10:22;13:7;16:19,
22;22:23;27:19;32:6;
35:9;36:18

**M**

**makes (6)**
22:4,4;25:23;29:12;
37:5;38:10
**making (3)**
11:2;21:3;24:20
**many (3)**
10:21,22;13:3
**March (6)**
37:4,10,17,18;38:9,
11
**Market (1)**
6:4
**marketing (1)**
17:11
**matter (3)**
21:4,5;38:16
**matters (3)**
15:15;21:4;24:21
**may (18)**
10:12,13;15:10;
18:14;19:1,15;21:4;
22:20,20;23:15;26:5,
17;28:12;31:19;32:7,
17;35:3;37:6
**mean (4)**
12:7;22:21;37:3,4
**meaning (1)**
32:5
**meat (1)**
20:18
**meet (1)**
30:17
**meeting (6)**
16:13;17:10;23:17;
26:1,6;37:6
**mention (1)**
34:25
**mid-sentence (1)**
9:2
**might (10)**
14:24;17:21,22;
22:3;23:15;31:3;
33:18,19;34:5;35:17
**million (1)**
9:23
**minimize (1)**
28:9
**minimum (1)**
23:16
**minute (1)**
34:3
**misnomer (1)**
9:7
**missed (1)**
13:6
**missing (2)**
23:16;25:21
**modification (4)**
20:11;21:17;22:16;
33:4

**modify (1)**
20:9
**money (6)**
18:11;19:25;25:9,
24;30:1;37:15
**monopoly (1)**
22:3
**months (2)**
17:21;28:21
**more (8)**
18:21;24:6,6,18;
26:7;27:17;32:20;
37:15
**Moss (1)**
10:1
**most (4)**
12:14;15:11;28:1,
19
**motion (13)**
9:9;10:10;12:19,20;
15:2;17:24;18:15;
26:7,21;31:8;35:7,12;
36:15
**motions (6)**
18:2;19:4,5,10,12;
38:3
**move (5)**
14:19;15:20;16:1;
17:1,4
**moving (2)**
34:8,8
**much (15)**
11:21;13:12,21;
15:13;17:7;19:25;
21:8;23:25;28:22;
31:2,24;35:13;36:22;
38:7,17
**mysterious (1)**
18:22

**N**

**NAGLER (1)**
7:17
**naturally (2)**
21:25;27:11
**near (2)**
17:9;26:14
**necessary (3)**
11:19;13:16;23:17
**need (10)**
13:19;16:19;17:17,
22;28:20;33:5,13;
36:14;37:12,12
**needing (1)**
10:24
**needs (6)**
25:4;29:23;30:20;
33:23;34:14,18
**negotiated (1)**
16:8
**nest (1)**
21:25

**New (11)**
4:17;5:16;6:14;
7:14,22;8:5;9:4;12:9,
20;14:9;16:7
**next (7)**
16:13;17:21;23:18;
26:1;34:3;36:11;37:2
**night (3)**
13:1;31:16;33:3
**ninety (3)**
25:22,24;35:22
**nonbankruptcy (1)**
31:10
**normal (1)**
22:11
**North (2)**
5:5;6:4
**note (5)**
22:18;23:14;26:23;
29:10,18
**noted (1)**
30:17
**notice (7)**
12:20;19:6,11,12;
26:23;35:7,18
**notion (1)**
11:25
**number (3)**
16:25;23:3;26:2
**numerous (2)**
15:18;16:1
**NY (6)**
4:17;5:16;6:14;
7:14,22;8:5
**NYS (2)**
7:11,12

**O**

**object (1)**
35:8
**objection (1)**
35:17
**objective (1)**
28:7
**obligations (1)**
35:25
**obvious (1)**
30:1
**obviously (14)**
11:9,12,19;12:7;
13:7;16:19;17:19,25;
18:11;24:9;32:6;
35:22;36:8;37:5
**occurred (1)**
27:5
**o'clock (4)**
23:19;37:21;38:9,
12
**off (4)**
11:25;29:17;30:8;
37:9
**OFFICE (10)**

4:13;7:11;8:3;
10:16;12:23,24,24;
15:24;23:23;33:1
**Official (4)**
5:3,13;10:3;24:1
**often (1)**
10:20
**oftentimes (1)**
22:22
**once (4)**
16:9;18:24;32:19;
33:17
**One (8)**
5:15;8:4;13:24;
14:4,24,25;15:9;
17:20;18:9;20:20;
21:6;22:18;23:3,15,
19;26:20;27:16,17;
28:1;29:11,18;30:2;
31:11;34:13,20;37:23
**only (6)**
14:24;18:1;19:23;
20:23;22:6;29:17
**open (1)**
31:3
**opinions (1)**
16:11
**opportunity (6)**
15:20;22:13;24:12;
30:13;33:5;36:10
**opposed (1)**
36:18
**order (43)**
11:17;13:2,4,11,14,
24;14:18;17:1;18:24;
19:4,8,12,14,15,16;
20:8,11,12,13;21:2,2,
17,18;22:21;24:11,13,
15;25:7,10,11,12;
29:3;30:14,21,25;
31:15,23;32:5;33:3,
19;34:1;35:8;36:2
**orders (3)**
12:22;20:25;34:13
**otherwise (1)**
34:5
**out (24)**
10:19;11:7;13:1;
14:2,18;15:25;16:8,
12;17:8;18:1,9;20:2;
28:7;32:19,20;35:13,
14;36:5,14,22,24;
37:8,24;38:7
**outstanding (2)**
15:19;37:13
**over (7)**
10:23;11:24;19:25;
28:15,21;30:10,10
**overstated (1)**
26:5
**own (1)**
37:14

## P

**page (4)**
15:6;29:4,17;30:8
**pages (1)**
10:21
**paid (2)**
19:24;29:24
**papers (1)**
20:1
**paragraph (1)**
30:6
**parcel (2)**
26:7;34:11
**Park (2)**
5:15;7:21
**part (3)**
26:7;31:12;34:11
**parte (2)**
35:2,7
**partial (1)**
30:24
**particular (2)**
29:16;34:1
**parties (31)**
10:9;11:3;12:8;
13:13,24;15:4;16:4,
10,14;17:14;19:23;
20:24;21:3,5;22:24;
28:18;31:6,9,12,14;
32:6,8,17,18;33:4,6,
16;34:2;37:11,14,22
**parties' (2)**
15:11;21:1
**party (4)**
25:4;29:25;31:3;
38:13
**past (1)**
19:24
**PASTERNAK (1)**
6:19
**path (3)**
18:20;35:10;37:12
**patience (1)**
36:25
**pay (1)**
21:22
**paying (1)**
19:23
**payment (3)**
15:1;19:22;30:7
**payments (8)**
20:15;24:20,23,24;
25:1,3,10,21
**penalty (1)**
26:11
**pendency (1)**
26:18
**pending (2)**
16:22;31:10
**people (11)**
10:22;27:7;33:10;

34:12,18,20;35:3,8;
36:3,13;38:4
**people's (1)**
36:20
**perfecting (1)**
27:11
**period (2)**
19:25;26:17
**perjury (1)**
26:12
**PERKINS (1)**
7:24
**permanent (1)**
32:20
**person (3)**
11:19,22;16:14
**pertained (1)**
31:10
**petition (1)**
12:17
**Phil (2)**
10:5;24:2
**PHILIP (1)**
5:20
**phrased (1)**
21:21
**place (1)**
23:6
**plaintiffs (5)**
9:21,22;17:25;
23:24;28:23
**plan (5)**
15:19;16:18;17:15,
15;18:12
**play (1)**
22:23
**pleadings (2)**
26:22,25
**pleased (1)**
31:13
**PLLC (1)**
4:2
**PM (1)**
38:23
**point (10)**
10:23;11:7;13:4,14;
16:5;17:12,13,13;
25:13;33:24
**points (3)**
13:3,4;28:21
**POLITO (1)**
6:20
**positive (1)**
16:3
**possible (3)**
16:12;17:5;35:15
**post-judgment (2)**
19:5;23:5
**post-petition (2)**
24:23;25:1
**pot (2)**
15:16;26:8
**potential (1)**

21:7
**potentially (2)**
28:10;34:7
**powder (1)**
38:2
**practice (1)**
35:1
**precisely (1)**
18:19
**predictability (1)**
21:3
**PRESENT (1)**
8:11
**presentment (1)**
32:5
**preserve (1)**
19:7
**preserving (1)**
20:20
**pretty (1)**
18:20
**primarily (1)**
27:24
**principal (1)**
35:25
**prior (4)**
20:11;25:22;26:18;
29:3
**probably (3)**
27:1;37:5,9
**probed (1)**
30:14
**problem (1)**
34:19
**proceed (1)**
12:15
**proceeding (1)**
15:23
**proceedings (2)**
14:9;38:23
**proceeds (1)**
17:24
**process (2)**
15:18;16:6
**PROFESSIONAL (4)**
7:2;20:22;24:25;
26:16
**progress (1)**
29:10
**promptly (1)**
37:25
**property (3)**
17:11,19;18:10
**Proposed (8)**
5:3,13;10:6;24:3;
30:25;31:15,23;32:5
**proven (1)**
28:5
**provided (2)**
25:8;36:9
**providing (1)**
25:9
**purportedly (1)**

24:19
**pursued (1)**
29:21
**pursuing (1)**
28:10
**pushing (1)**
37:9
**put (6)**
15:12,19;27:20;
30:20,24;32:5
**puts (1)**
20:18

## Q

**quantified (1)**
28:12
**quick (2)**
13:20;17:8
**quickly (3)**
27:25;28:7;36:4
**QURESHI (1)**
5:21

## R

**RACHEL (3)**
5:9;9:24;28:25
**radar (1)**
12:12
**raised (2)**
23:14;30:12
**raises (2)**
24:6,18
**rather (1)**
35:7
**RATTET (1)**
6:21
**reach (4)**
25:17;33:18;36:14;
37:24
**reached (3)**
13:9;30:22;31:13
**really (3)**
13:3;34:14;37:11
**reason (4)**
13:19;29:5;30:9,19
**reasonable (1)**
37:16
**receive (2)**
16:9;24:17
**received (1)**
33:2
**receiving (1)**
22:8
**recharacterization (1)**
26:25
**recollection (1)**
29:8
**record (4)**
13:11;28:25;29:2;
31:8
**red (1)**

30:5
**refer (1)**
26:24
**regard (8)**
14:6,13,21;16:11;
17:25;26:16;34:23;
37:7
**regular (5)**
23:22,23;35:7,7,18
**relate (2)**
22:11;23:4
**relates (5)**
24:7,10,20;26:10;
27:25
**relating (1)**
22:24
**relationship (1)**
16:4
**relief (3)**
12:19;13:9;24:10
**remains (1)**
26:9
**remember (2)**
21:20,21
**rendered (1)**
16:24
**reorganization (3)**
15:20;16:18;17:15
**repeat (1)**
29:1
**report (1)**
31:13
**represented (1)**
30:2
**representing (2)**
14:6,8
**represents (1)**
29:19
**request (3)**
15:3;18:16;35:11
**requested (1)**
13:9
**resemble (1)**
30:24
**resolve (4)**
15:18;31:15;34:7;
37:13
**resolved (7)**
14:15;15:21;16:20;
23:4;28:19;29:23;
31:21
**respect (5)**
22:10;23:5;24:15;
25:5,25
**retain (2)**
16:6;38:5
**retained (1)**
24:21;25:1;29:22
**retention (24)**
14:3,4,7,10,21;
16:11;17:10;19:21;
20:8,12,13;21:11,11,
18;22:1,11,21,22;

23-12055-shl    Doc 130    Filed 02/06/24    Entered 02/28/24 09:02:11    Main Document
In the Matter of: RUDOLPH W. GIULIANI                Pg 46 of 48

January 31, 2024

25:7,18;29:3,16;
30:12;37:7
**retentions (3)**
14:13;15:9;23:3
**review (5)**
22:13;23:9;28:3;
31:23;33:5
**revised (1)**
22:14
**right (32)**
9:17,20;10:2,12,19;
11:4,11,15;13:5,25;
14:23;17:7;18:13;
19:19;20:16;21:9;
23:25;28:22;31:2,24;
32:13,21,23;33:15,20,
21;34:21;35:5;37:16;
38:5,11,17
**rights (3)**
20:20;21:6;35:14
**ripe (1)**
30:4
**road (3)**
18:12;33:18;37:23
**ROBERT (2)**
6:17,21
**RONALD (2)**
4:13,19
**room (2)**
12:1;22:1
**Ruby (1)**
9:25
**Rudolph (2)**
8:12;9:6
**Rule (3)**
34:25;35:6,11
**rules (1)**
35:16
**run (2)**
15:5;36:19
**RYAN (1)**
4:9

## S

**safe (1)**
32:18
**sale (1)**
17:19
**same (5)**
13:16;15:6;19:6,13;
34:23
**SAMUELS (8)**
7:8;11:1,2;31:5,5;
32:11,21,22
**satisfied (1)**
30:15
**saying (1)**
18:22
**schedule (1)**
24:22
**scheduled (1)**
16:13

**schedules (5)**
12:18;23:13;25:19;
26:10;35:20
**scheduling (2)**
32:2;36:22
**SCHWARTZ (12)**
8:7;10:17,18;21:10,
14,14;22:5;32:25,25;
33:8,15;38:22
**scope (1)**
31:9
**second (4)**
21:2;36:12;37:4,10
**seek (3)**
20:15;23:6;30:7
**seeking (1)**
19:18
**seeks (1)**
24:21
**seemed (2)**
18:20,21
**send (1)**
16:9
**sending (1)**
38:2
**sense (9)**
13:9;17:12;21:25;
22:4;29:12;32:13;
34:17;35:13;37:5
**sensible (1)**
37:2
**sent (3)**
13:1;16:8;31:15
**separate (1)**
36:18
**sequence (3)**
20:25;27:10;30:9
**sequencing (1)**
30:20
**services (1)**
25:2
**set (1)**
36:13
**sets (1)**
24:22
**setting (1)**
36:18
**shape (1)**
13:3
**share (2)**
33:25;36:21
**shared (1)**
24:6
**Shaye (1)**
10:1
**Shumer (1)**
9:15
**Sibley (11)**
14:5;19:17;20:8,14;
21:19;22:7;24:16,21;
25:7;30:6;37:7
**signatory (1)**
31:17

**signed (1)**
26:11
**significant (5)**
10:20;20:25;25:20;
30:11;33:10
**significantly (1)**
26:4
**simultaneously (1)**
26:24
**sit (1)**
37:11
**six (1)**
17:21
**SKARNULIS (1)**
4:2
**skin (1)**
32:14
**slightly (1)**
21:20
**small (1)**
17:15
**Smartmatic (1)**
6:3
**smoothly (1)**
14:19
**sold (1)**
18:10
**somebody (2)**
33:22;38:9
**sometime (1)**
37:9
**sometimes (2)**
35:5;36:7
**son (1)**
30:3
**soon (1)**
16:12
**sorry (2)**
29:7;32:19
**sort (6)**
13:18;27:12;29:16;
34:6;35:6,18
**Sotheby's (2)**
16:7;17:10
**sounds (4)**
33:6,24;34:12;
37:16
**source (4)**
15:1,3;21:22;30:4
**Southern (1)**
9:4
**speak (2)**
10:23,24
**speaking (1)**
11:9
**specific (4)**
17:9;20:2;29:8;
36:12
**specifically (3)**
18:17;23:5;24:11
**speech (1)**
36:24
**speed (1)**

34:6
**spelled (1)**
20:2
**spent (1)**
13:7
**spoken (1)**
31:4
**stages (5)**
15:22;16:17;17:4;
18:8;27:18
**stakeholders (1)**
27:23
**start (2)**
9:11;11:24
**starting (2)**
9:12;11:25
**State (1)**
14:9
**stated (2)**
15:16;24:13
**statement (3)**
23:13;25:19;35:20
**statements (2)**
18:18;26:11
**States (3)**
9:3;10:15,18
**status (11)**
9:10;11:10,14,23;
12:16;13:20;31:4;
34:4,5;37:4;38:8
**stay (17)**
9:9;15:2;18:17,25;
20:9;21:17;22:16;
24:11,13;25:12;
26:21;30:16,18,20,24;
31:9;35:24
**step (4)**
18:24;20:20,21;
24:8
**sticking (1)**
13:4
**still (4)**
24:17;25:2;33:6;
34:18
**stipulate (1)**
28:13
**stipulation (5)**
31:14,16,22;32:4,
18
**straightforward (1)**
18:20
**STRAUSS (3)**
5:2,12;10:6
**STRAWN (1)**
7:20
**Street (2)**
4:4,15;5:5;6:4;7:13
**STRICKLAND (9)**
9:24,24,25;14:16;
15:25;20:6;28:24,25;
29:14
**Strickland's (1)**
12:23

**STUART (1)**
7:17
**stuff (1)**
14:20
**stumbling (1)**
13:12
**styled (1)**
11:15
**subject (4)**
14:25;15:2;30:19,
23
**submit (1)**
13:15
**substantial (1)**
22:9
**substantive (2)**
21:5;33:10
**subtleties (1)**
20:20
**successfully (1)**
34:15
**suggested (1)**
18:14
**Suite (5)**
4:5,16;5:6;6:6;5:7;
23
**supposed (1)**
33:12
**sure (12)**
13:6;15:4,6;17:23;
19:2;21:13;22:16;
25:15;27:16;28:19;
34:9;37:3

## T

**talk (8)**
13:19;15:5;34:3,6;
35:12;36:12;37:1,23
**talked (3)**
12:21;29:12;33:4
**talking (6)**
11:23;18:15;19:10;
34:12,14,20
**Taxation (1)**
7:12
**TBD (1)**
25:22
**technical (2)**
10:13;33:23
**teed (1)**
17:20
**telephone (1)**
13:1
**term (2)**
17:9;26:15
**terms (13)**
13:12;15:11;16:8,8;
17:10,21;18:22;
20:23;21:2,5;22:15,
21;36:4
**Thanks (1)**
21:14
**thereto (1)**

23:4

**thinking (1)**
18:23
**Third (3)**
6:13;19:23;25:4
**third- (1)**
29:24
**thirdly (1)**
30:6
**though (1)**
29:17
**thought (6)**
11:18,24;17:20;
27:4,5;32:11
**thoughts (2)**
16:10;33:25
**Three (1)**
29:18
**throw (1)**
31:3
**thus (1)**
34:7
**til (1)**
30:10
**timely (1)**
20:9
**times (1)**
20:24
**timing (1)**
22:16
**TIMOTHY (1)**
7:25
**title (1)**
9:7
**today (6)**
9:9;22:19;23:15;
24:10;33:3;38:14
**today's (1)**
10:24
**together (5)**
15:19;36:8,12;37:2,
8
**took (1)**
19:25
**top (1)**
25:18
**top-twenty (1)**
29:19
**towards (1)**
18:11
**transcript (3)**
13:18;24:12;29:4
**transfers (1)**
35:21
**transparency (1)**
36:1
**treat (1)**
35:12
**treating (1)**
9:9
**trial (1)**
12:20
**trust (1)**

36:2

**Trustee (7)**
8:3;10:18;14:12;
16:10;19:24;21:15;
23:11
**Trustee's (6)**
10:16;12:24;14:14;
15:24;23:22;33:1
**try (9)**
14:19,20;16:12,25;
25:6,14;35:15;36:16;
38:7
**trying (4)**
18:8;20:23;29:10;
36:22
**tuned (1)**
10:22
**turn (3)**
10:23;11:14,24
**two (5)**
20:21;22:6;24:23;
27:19;38:1
**TX (2)**
4:6;5:7

**U**

**ultimate (1)**
28:11
**ultimately (1)**
24:14
**uncertainty (1)**
19:22
**unclear (1)**
29:20
**under (2)**
26:11;27:7
**understated (1)**
26:4
**understood (1)**
22:15
**United (3)**
9:3;10:15,18
**unless (1)**
38:9
**unnecessary (3)**
28:10,10;34:9
**Unsecured (3)**
5:3,13;10:3
**up (12)**
11:2;12:9;17:20;
18:13;24:14;28:5;
29:11;32:7;34:6;35:9,
14;37:6
**update (3)**
13:5;17:8;21:12
**upon (5)**
13:22;14:14;22:8,
20;33:13
**urge (1)**
36:3
**use (2)**
15:17;34:2

**used (1)**
38:2
**using (1)**
38:8
**usually (1)**
37:25

**V**

**values (1)**
26:2
**variety (2)**
32:8,8
**various (2)**
22:24;28:21
**verdict (1)**
12:13
**verdicts (1)**
16:23
**version (1)**
12:25
**versions (1)**
13:15
**view (2)**
17:13,13
**virtual (1)**
12:1

**W**

**wait (1)**
33:17
**waiting (1)**
31:17
**Walker (1)**
31:20
**WALSH (1)**
7:25
**way (16)**
12:15;14:24,24;
15:9,12;21:21;27:11,
11;29:13;32:14,20;
33:12;34:8;36:19,24;
38:1
**ways (3)**
15:10;18:14;22:3
**Wednesday (3)**
16:14;23:18;37:18
**week (5)**
14:2;26:1;36:19;
37:4,10
**weeks (3)**
27:19;28:16,21
**weigh (1)**
32:9
**WELLS (1)**
8:8
**Wexler (1)**
9:15
**whenever (1)**
38:4
**Whereupon (1)**
38:23

**who's (1)**
25:9
**wider (1)**
35:4
**Willkie (2)**
9:25;28:25
**Wilmington (1)**
6:6
**Wilshire (1)**
7:4
**WINSTON (1)**
7:20
**winter (1)**
34:16
**wisdom (3)**
15:11;21:1;22:3
**wish (1)**
31:3
**wishes (1)**
33:20
**within (3)**
25:21;35:22;37:25
**without (3)**
19:8;35:14;37:14
**work (18)**
14:18;15:25;16:1;
18:11;19:20;21:23;
25:6,14;27:15,19;
28:17;33:12;34:15;
35:14;36:22;37:8,12;
38:7
**worked (5)**
14:2;16:24;32:19,
20;34:17
**working (6)**
16:4,6,12;33:7;
35:13;37:22
**works (1)**
27:12
**world (1)**
28:8
**worry (1)**
21:6

**Y**

**yesterday (1)**
29:17
**York (10)**
4:17;5:16;6:14;
7:14,22;8:5;9:4;12:9;
14:9;16:7

**Z**

**Zoom (2)**
11:16;33:21

**1**

**10 (3)**
37:21;38:9,12
**1000 (1)**

7:4

**10004 (1)**
8:5
**10005 (1)**
7:14
**10011 (1)**
4:17
**10036 (1)**
5:16
**10158 (1)**
6:14
**10166 (1)**
7:22
**11 (2)**
9:5;10:20
**119 (1)**
4:15
**1201 (1)**
6:5
**12th (1)**
12:22
**1313 (1)**
6:4
**13th (3)**
37:18;38:9,12
**148 (1)**
9:22
**148-million-dollar (1)**
16:21
**1500 (1)**
7:5
**17 (2)**
29:4;30:6
**1800 (1)**
5:6
**19801 (1)**
6:6
**19th (1)**
31:7

**2**

**2 (1)**
23:19
**2:51 (1)**
38:23
**200 (1)**
7:21
**2004 (4)**
26:7;34:25;35:6,11
**2023 (1)**
12:17
**2024 (2)**
12:18,19
**21st (1)**
12:17
**2300 (1)**
5:5
**23rd (1)**
4:15
**24 (1)**
29:4
**26th (1)**

23-12055-shl   Doc 130   Filed 02/06/24   Entered 02/28/24 09:02:11   Main Document
In the Matter of: RUDOLPH W. GIULIANI          Pg 48 of 48

January 31, 2024

12:18
**28 (1)**
  7:13
**2850 (1)**
  4:5

**3**

**303 (1)**
  4:4
**341 (6)**
  16:13;17:10;23:17;
  26:1,6;37:5

**5**

**5th (1)**
  12:18

**6**

**605 (1)**
  6:13

**7**

**75201 (1)**
  5:7
**78701 (1)**
  4:6

**8**

**80 (1)**
  29:4

**9**

**900 (1)**
  4:16
**90017 (1)**
  7:6