1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   - - - - - - - - - - - - - - - - - - - -x

5

6   In the Matter of:

7   RUDOLPH W. GIULIANI,                    Main Case No.

8           Debtor.                         23-12055-shl

9

10  - - - - - - - - - - - - - - - - - - - -x

11

12               United States Bankruptcy Court

13               One Bowling Green

14               New York, New York

15

16               February 16, 2024

17               11:13 AM

18

19

20

21  B E F O R E:

22  HON. SEAN H. LANE

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  ALIANA PERSAUD AND ART TAVAREZ

2

1

2   Doc. #107 Debtor's Letter Requesting Conference

3

4   Doc. #108 Memorandum Endorsed Order Regarding Debtor's Letter

5   Requesting Conference

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  Michael Drake

21   eScribers, LLC

22   7227 North 16th Street, Suite #207

23   Phoenix, AZ 85020

24   (800) 257-0885

25   operations@escribers.net

3

1

2  A P P E A R A N C E S:

3  BERGER, FISCHOFF, SHUMER, WEXLER & GOODMAN, LLP

4        Attorneys for Debtor

5        6901 Jericho Turnpike

6        Suite 230

7        Syosset, NY 11791

8

9  BY:   GARY C. FISCHOFF, ESQ.

10       HEATH S. BERGER, ESQ.

11

12

13  CAMARA & SIBLEY LLP

14       Proposed Attorneys for Debtor

15       1108 Lavaca Street

16       Suite 110263

17       Austin, TX  78701

18

19  BY:   JOE SIBLEY, ESQ.

20

21

22

23

24

25

4

1

2  WILLKIE FARR & GALLAGHER LLP

3       Attorneys for Ms. Ruby Freeman and Ms. Wandrea ArShaye

4       Moss

5       787 Seventh Avenue

6       New York, NY 10019

7

8  BY:   JAMES BURBAGE, ESQ.

9

10

11  AKIN, GUMP, STRAUSS HAUER & FELD LLP

12       Proposed Attorneys for Official Committee of Unsecured

13       Creditors

14       One Bryant Park

15       New York, NY 10038

16

17  BY:   PHILIP C. DUBLIN, ESQ.

18

19

20  UNITED STATES DEPARTMENT OF JUSTICE

21       Office of the United States Trustee

22       One Bowling Green

23       New York, NY 10004

24

25  BY:   ANDREA B. SCHWARTZ, ESQ.

5

1

2   DAVIDOFF, HUTCHER & CINTRON LLP

3        Attorneys for Davidoff, Hutcher & Cintron LLP

4        605 Third Avenue

5        New York, NY 10158

6

7   BY:   JAMES B. GLUCKSMAN, ESQ.

8

9

10  BUCHALTER, A PROFESSIONAL CORPORATION

11        Attorneys for U.S. Dominion, Inc.

12        1000 Wilshire Boulevard

13        Suite 1500

14        Los Angeles, CA 90017

15

16  BY:   JOEL G. SAMUELS, ESQ.

17

18

19

20

21

22

23

24

25

6

1              P R O C E E D I N G S

2          THE COURT:  Good morning.  This is Judge Sean Lane

3   here in the United States bankruptcy court for the Southern

4   District of New York.  We're here for the Rudolph Giuliani

5   Chapter 11 case.

6          There was a request filed by debtor's counsel by a

7   letter of February 13th to ask for a conference dealing -- oh,

8   I'm sorry.  I'm sorry.  I was muted.  See, it gets all of us

9   from time to time one way or the other.

10         Good morning.  This is Judge Sean Lane in the United

11  States Bankruptcy Court for the Southern District of New York.

12  And we're here this morning for the Chapter 11 case of Rudolph

13  W. Giuliani.

14         There was a letter filed on the docket February 13th

15  by debtor's counsel seeking to have a conference about motions

16  to retain various law firms in the case that had been discussed

17  in connection with the motions to lift stay that these

18  applications were filed on January 30th for presentment on

19  February 20th with an objection deadline of five days prior.

20         A day after they were filed, we had the hearing on the

21  motion for lift stay which implicated the applications in terms

22  of the question of the source of the funds for the payment of

23  the professionals and the relationships and typical what we

24  call Lar Dan affidavit issues.

25         The letter on February 13th asks for a conference the

7

1 next on the 14th on the issues that the parties are still

2 working through.  My memo endorsed that letter the same day

3 saying that we were not having a conference on the 14th because

4 I really -- the letter didn't identify when the actual deadline

5 was for filing anything in D.C..  And there didn't seem to be

6 that kind of an emergency, particularly given that the time for

7 actually responding had not yet come and gone.  And so I set

8 today at 11 o'clock for this conference.

9         So with that, we'll get appearances, starting with

10 counsel for the debtor.

11        MR. FISCHOFF:  Yes.  Good morning, Your Honor.

12 Berger, Fischoff, Schumer, Wexler & Goodman by Gary Fischoff

13 and --

14        MR. BERGER:  Your Honor, Heath Berger from Berger,

15 Fischoff, Schumer, Wexler &  Goodman, attorneys for the debtor.

16 Good morning.

17        THE COURT:  All right.  Good morning.  On behalf of

18 the official committee?

19        MR. DUBLIN:  Good morning, Your Honor.  Phil Dublin,

20 Akin Gump Strauss Hauer & Feld, proposed counsel to the

21 creditors' committee.

22        THE COURT:  All right.  On behalf of the United States

23 Trustee's Office?

24        MS. SCHWARTZ:  Good morning, Your Honor.  Andrea

25 Schwartz on behalf of the United States Trustee.

8

```
 1          THE COURT:  All right.  Good morning.  And on behalf
 2    of the Freeman plaintiffs?
 3          MR. BURBAGE:  Good morning, Your Honor.  Jim Burbage
 4    of Willkie, Farr & Gallagher, on behalf of the Freeman
 5    plaintiffs.
 6          THE COURT:  All right.  Good morning.  Anyone else who
 7    is here for this matter who wishes to be --
 8          MR. GLUCKSMAN:  Davidhoff Hutcher Cintron, creditor by
 9    James Glucksman.
10          THE COURT:  All right.  Good morning.  Anyone else?
11          MR. SAMUELS:  Good morning, Your Honor.  Joel Samuels,
12    on behalf of the Dominion parties.
13          THE COURT:  All right.  Good morning.  Anyone else?
14          MR. SIBLEY:  Good morning, Your Honor.  This is Joe
15    Sibley.  I'm proposed special counsel that's, I think, subject
16    of this hearing.  So I am present.
17          THE COURT:  All right.  Thank you very much.  Good
18    morning.  Anyone else?
19          All right.  So let me just start with a preliminary
20    comment.  I'm always happy to make myself available to try to
21    resolve things for parties and to move things along and to
22    prevent parties from having to file extensive pleadings that
23    might otherwise be avoided or significantly reduced by virtue
24    of having a conference.  That said, there are some limitations
25    to that.  And they're the limitations imposed by just good
```

1   sense.

2          So one is if people are asking for an immediate

3   conference on short notice, I need to know what the driver is

4   because there's a fine line between having a conference that

5   will be helpful and having a conference that can be arguably

6   used as leverage and sort of weaponized.  And so I'm a fan of

7   conferences that are helpful.  I'm not a fan of conferences or

8   hearings that are somehow trying to be used as leverage.  And

9   sometimes it's hard for me to tell the difference.  But I look

10  at things like, well, what is the actual emergency?  What are

11  the actual dates, drivers, what's going on?

12          and so here obviously with the applications actually

13  on for presentment on the 20th and the not yet come and gone,

14  I -- and not having seen any supplemental declarations on the

15  retention issues that have been discussed on the 31st, it -- I

16  was mystified as to the level of urgency that would require a

17  hearing on the 14th.

18          The other thing is people need to talk to each other.

19  And sometimes I can tell that's happened, sometimes I can't,

20  but it's always going to be a concern of mine.  So whenever

21  there's a request like this, I always look at it.

22          And last but not least, I need time to look at things

23  in order to appropriately -- to give you folks the best and

24  most appropriate answer.  So I certainly want to give people

25  the maximum amount of time to negotiate and work through

**RUDOLPH W. GIULIANI**

10

1   issues.  But I'm dating myself by referencing the old Johnny

2   Carson Carnac bit where I hold something up to my head and

3   pronounce the answer.  I can't do that.  And so that's the

4   reason why I said I can't extend a deadline out to 9 a.m. just

5   because I don't know what I'm getting.

6           And as it turns out, I got quite a bit anyway.  I got

7   the two supplemental declarations.  And frankly, that's sort of

8   what I was waiting for because I thought those were the

9   drivers.  And for things like this the perfect shouldn't be the

10  enemy of the good.  And let's make some progress.  So I didn't

11  really know what there would actually be to talk about with the

12  Court until we saw what those declarations look like.  So those

13  were filed this morning at 9:33 and 10:40 at docket 116 and

14  117.  That is, the supplemental application for the retention

15  of the Camara Sibley LLC firm as special counsel, that's the

16  one filed at 9:33 which has a number of things with it, the

17  supplemental declaration of Andrew Giuliani and a bunch of

18  attachments, including the information about the funders, that

19  is. the receipts and disbursements and things of that sort.

20          And then a 10:40, I got the supplemental declaration

21  dealing the other funder, James -- is it Menges?  Am I saying

22  that correctly?

23          MR. FISCHOFF:  Manges, that's right.

24          THE COURT:  Manges, okay, all right.  So now I sort of

25  have a sense of where we are.  And it helps to sort of put some

1   meat on the bones to what I think Ms. Schwartz said in her

2   email to say -- to helpfully sort of give me a status yesterday

3   as to -- we've asked for these things; if we get these things,

4   we think we're cautiously optimistic that we'll be in a good

5   place.

6           So all that said, I just wanted to level set and try

7   to let folks know how I think about these things.  I'm not

8   trying to surprise anybody.  I'm not trying to make anybody's

9   life more difficult.  But it's a very much help-me-to-help-you

10  situation.

11          So with that said, I know that there were concerns.  I

12  do have a formal objection and a joinder that was filed to the

13  applications of course.  And the objection was by the official

14  committee.  They hadn't seen these supplemental declarations

15  yet.  In fact, they've had about twenty minutes to look at one

16  of them.

17          So I'm happy to hear from the debtors first, but my

18  thought is that it may make sense to hear from the parties who

19  had raise the concerns in the first instance based on what's

20  been filed.  I sort of see the debtors as having spoken with by

21  virtue of their filings that were just made this morning.

22          MR. FISCHOFF:  Judge, this is Gary Fischoff for the

23  debtor.  If I may, I'd just like to speak for a moment.

24          First of all, I apologize for not putting the date

25  that was of concern.

**RUDOLPH W. GIULIANI**

12

1       THE COURT:  Yeah.  Listen, I'm not -- let me let me

2   just make it clear.  I don't need apologies.  I'm not easily

3   offended.  I'm just trying to be practical and let you know how

4   I do things and how we can help things move forward.  So all

5   right.

6       MR. FISCHOFF:  The date that was a concern was

7   February 20th.  And the reason I asked for a conference was not

8   so much for the retentions, although that seemed to become the

9   focus.  I want to take a step back.  My concern when I filed

10  the letter is the Court had authorized the stay to be modified

11  for certain limited purposes, that is, to file motions, post-

12  judgment motions, and a notice of appeal.  And that lifting of

13  the stay which order has been prepared and pretty much agreed

14  to by the parties since shortly after that hearing date was

15  conditioned upon first there being an order --

16      THE COURT:  Right.

17      MR. FISCHOFF:  -- retention for Sibley and the

18  condition that the Sibley firm had -- were going to seek

19  compensation from third parties and not from the debtor.  So we

20  had written commitments from Mr. Sibley that he would only seek

21  payment from the third parties, and if they couldn't pay him,

22  he wouldn't be looking at the debtor for payment.  That was

23  unequivocal.  We had that --

24      THE COURT:  Right, right.  But that the hearing, the

25  thought was we need to resolve these issues in order to get the

**RUDOLPH W. GIULIANI**

13

1    stay lifted in order for things to move forward.  And so -- and

2    frankly, there's no better time than now to do that.  So I can

3    understand --

4            MR. FISCHOFF:  Okay.  That's fine.

5            THE COURT:  And that's why I took -- I think the

6    different approaches taken by the committee and the U.S.

7    Trustee's Office are both right in the sense that the committee

8    wanted to tee up the issues and say, Judge, this is what we

9    need now and this is what we need to address.  And the U.S.

10   Trustee's Office was working the problem from the other end to

11   try to say we're in constant contact about the content of the

12   supplemental declarations that are not yet together but are on

13   their -- in progress.  So I get it.  I get it.  I guess my

14   thought is that a lot of this is within the control of the

15   people or the funders and the debtors.  And so, you know,

16   people have to avoid creating their own emergency.

17           So you know, the information -- when I finally read

18   the declarations, the information didn't strike me as

19   particularly surprising or controversial in terms of

20   relationships and assets and who are the control parties and

21   things of that sort.  So I mean, if you had asked me and put a

22   gun to my head on the 31st, what sort of stuff do you think

23   we'll end up talking about, we need to talk about in these

24   declarations, it would have been this kind of stuff.  So I

25   don't think it's a surprise.  So let let's try to avoid fire

1  drills where we can by just getting in front of these issues I

2  guess is my thought.

3       So I understand that -- I understand the sequencing.

4  I checked my notes for it, come out here.  And so I'm aware of

5  what we had done and why we had done it and what the flash

6  points were.  And we were working towards trying to make this

7  as consensual as possible for lots of good reasons in terms of

8  the case.

9       So Mr. Fischoff, anything else before I hear from the

10  parties to figure out whether I have any live active

11  objections?

12       MR. FISCHOFF:  No.  I'll defer for the moment.

13       THE COURT:  All right.  All right.  Let me start with

14  the committee because they have filed papers that are

15  objections.  Obviously, I realize that they are -- haven't been

16  superseded by, but they've been two ships passing in the night

17  with the supplemental declarations that were filed this

18  morning.  So let me hear from the committee.

19       MR. DUBLIN:  Thank you, Your Honor.  Again, for the

20  record.  Phil Dublin, Akin, Gump, Strauss, Hauer & Feld,

21  proposed counsel to the committee.

22       Your Honor, unfortunately, we still have live

23  disputes.  We go through in painstaking detail in our objection

24  the issues that we have and the lack of information that's been

25  provided.  Unfortunately, throughout this process, repeated

1    requests to debtor's counsel to get access to information as it

2    relates to the funding sources as well as certain relationships

3    that the Sibley firm has with other parties-in-interest,

4    including Mr. Giuliani's affiliated entities, have gone

5    unanswered.

6              THE COURT:  But let me -- so I read the papers, so I

7    understand your view.  But the papers are before the

8    supplemental declarations were filed.  And certainly there is

9    additional information that was provided.  So I did see, for

10   example, in the first one,  docket 116, the one filed at 9:30

11   that goes through the receipts of the Giuliani Defense

12   Committee and the itemized disbursements.  And it makes certain

13   statements that I think were requested but had not been made in

14   terms of the firm's sole obligation as to representation of the

15   debtor to the exclusion of any other individual, that Giuliani

16   Defense is not a creditor, and it doesn't intend to essentially

17   participate in the case by doing things like bidding on assets.

18             So certainly some boxes have been checked.  So let's

19   get down to sort of what the specific issues are that are left.

20             MR. DUBLIN:  Well, Your Honor, we do have information

21   in the Giuliani declaration with respect to Giuliani Defense.

22   What we do -- and we have itemized information which is nice to

23   receive, but it's only through the end of the year and is

24   not -- respectfully not the most current information.

25             With respect to the Freedom entity, so Giuliani

 1  Freedom, we do not have that information.  We have no

 2  information with respect to who has made the actual donations.

 3  Instead, we have a simple statement that says to the best the

 4  declarant's knowledge, that the debtor has not made any

 5  contributions.  We had asked repeatedly for itemized

 6  information so that we could be sure as to where the money has

 7  been coming from.

 8          And issues with respect to where money comes from has

 9  been heightened significantly since the 341 meeting.  The

10  debtor stated under oath that he comingles his funds with his

11  businesses.  So we don't know where money is going.  We don't

12  know who it's coming from.  And in order for us to be

13  comfortable that there is no actual conflict or potential for

14  conflict as it relates to that fund, we need access to

15  information as to who the funding sources are.  The debtor's

16  counsel told us we're not getting that information, we're not

17  entitled to that information, the trust isn't going to provide

18  us with that information which obviously is not an acceptable

19  answer when we're in a situation where --

20          MR. FISCHOFF:  May I --

21          THE COURT:  No, no.  Listen, people, I'll elicit

22  comments as we go.  So otherwise it's too hard to conduct these

23  hearings by Zoom.

24          So what I'd like to do, Mr. Dublin, is take these one

25  at a time so we can just deal with them as they come up because

1    I'm sure you have a very nice long speech.  You could address

2    them all in one.  But I think then we'd have to go back and

3    unpack them.

4            So let's talk about that one.  So what I'd like to do

5    is hear from Ms. Schwartz and then hear from the debtor and

6    then hear from anybody else.

7            So Mr. Dublin, anything else on this particular

8    question?  I understand what your comment is.  You don't have

9    the corresponding kinds of detail and that's what you're

10    looking for.  Anything else on that particular issue?

11            MR. DUBLIN:  Obviously, Your Honor, I have a host of

12    issues.

13            THE COURT:  No, no.

14            MR. DUBLIN:  On this one, as it relates to the Manges

15    declaration, I didn't have a ton of time to spend with it.  We

16    did have a partial draft provided to us last night.  Obviously,

17    more detail is always better.  We feel significantly lacking,

18    given third parties paying for the fees and expenses.  There

19    are other declarations, including the Sibley declaration, which

20    is internally inconsistent.  But as far as the Manges

21    declaration goes --

22            THE COURT:  Yeah.  I'd like to --

23            MR. DUBLIN:  -- thee primary issue relates to a lack

24    of information.

25            THE COURT:  -- take this one at -- I'd like to take it

18

1   one at a time.  So as to the Manges declaration talking about

2   the that kind of detailed information, Ms. Schwartz?

3          MS. SCHWARTZ:  Thank you, Your Honor.  I just want to

4   say one thing first with respect to your preliminary comments,

5   just so that you are aware, which I think you are, based on

6   what you said, that -- and I think what we've said at prior

7   conferences.  It's been, in essence, like pulling teeth to get

8   the information.  We provided three rounds of comments to the

9   application, including the Sibley declaration, the Giuliani

10  declaration, and the Menges Declaration.  And you now have,

11  like, a third supplemental declaration from Mr. Sibley which

12  includes all the information that we require of all

13  professionals, including the payments within the ninety-day

14  period.  He's now explained all the "Guiliani matters" that

15  he's representing other parties in.  He's also stated that he's

16  withdrawing as counsel to Mr. Costello who is a principal of

17  creditor Davidson Hutchinson.  That was a conflict issue that

18  we had identified.  And he's withdrawing as counsel for that.

19          With respect to the two declarations on the funds,

20  Your Honor, the fund that Andrew Giuliani is the president of,

21  that's a PAC.  So that is actually filed with the Federal

22  Election Commission.  So it was very easy to get the donors and

23  the disbursements because that's all public information.  Mr.

24  Dublin's right that it's not anything past that.

25          With respect to Mr. Manges, the Lar Dan affidavit

1  requires that -- essentially that the third-party contributor

2  basically understands that once they give that money to the

3  debtor, that the debtor and the debtor's counsel has absolutely

4  a sole fiduciary duty to the debtor.

5          THE COURT:  No, no.  I understand that.  And I see

6  language.  What I'm trying to get is, is your office's position

7  on this specific issue identified by Mr. Dublin because, again,

8  we're going to have to go through one at a time.

9          MS. SCHWARTZ:  Yes.  I'm --

10          THE COURT:  But we need to we need to get there

11  because I'm trying to --

12          MS. SCHWARTZ:  Okay.  I'm right there.

13          THE COURT:  -- direct everybody.

14          MS. SCHWARTZ:  I'm right --

15          THE COURT:  And if I --

16          MS. SCHWARTZ:  But we are --

17          THE COURT:  -- doing it to Mr. Bischoff.  I did it to

18  Mr. Dublin.  I'm going to do it to you.

19          MS. SCHWARTZ:  Right.

20          THE COURT:  It's just sort of equal --

21          MS. SCHWARTZ:  Yes.

22          THE COURT:  -- equal treatment.  So what what's your

23  view about that?

24          MS. SCHWARTZ:  We understood that the concern on the

25  disclosure of who are the donors to that fund was to make sure

1    that they weren't estate assets; therefore, that it wasn't Mr.

2    Giuliani, the debtor, contributing to that fund.  And now

3    there's a statement in that declaration that states he did not

4    contribute any of that.

5            THE COURT:  Well, I think Mr. Dublin pointed out that

6    it is a -- there's a caveat in there.  It says to the best of

7    my knowledge.  And --

8            MS. SCHWARTZ:  Okay.  It does say that.

9            THE COURT:  And so let me then turn to Mr. Fischoff

10   for a second and say, Mr. Fischoff, can't we do better than

11   that, right?  I mean --

12           MR. FISCHOFF:  Yes.

13           THE COURT:  -- somebody has this information and can

14   check and can swear under oath whether Mr. Giuliani or --

15   either directly or indirectly provided any funds to this.  And

16   it doesn't seem to be that complicated.

17           MR. FISCHOFF:  Yes.  The answer is yes.  I will get a

18   declaration from Mr. Giuliani that neither he or his related

19   entities have donated any funds to that entity.

20           THE COURT:  And I think it -- I think it should be

21   broad enough to say that he has not directly or indirectly,

22   including through those entities, provided any funding to

23   either of these entities.

24           MR. FISCHOFF:  Okay.  That's fine.  But here's the

25   problem with the Rudy Giuliani Freedom Fund, the one that's

1  administered by Manges.  It gets -- that fund gets hundreds of

2  small contributions.  One, these people aren't prepared to --

3           THE COURT:  I understand that.  But again, nobody has

4  dragged them into this bankruptcy.  They have put themselves

5  into the bankruptcy somebody's going to fund.  And that's all

6  fine.  But once you do that, there are certain requirements for

7  that, right?  And they're well-worn requirements.  And I

8  don't -- I mean, I think any lawyer looking at this --

9           MR. FISCHOFF:  Your Honor, what about all the people

10  who donated prior to the bankruptcy?  They didn't insert

11  themselves into this litigation.  They're small-time people who

12  donated --

13           THE COURT:  I'm not asking for their information.  I'm

14  asking.

15           MR. FISCHOFF:  I --

16           THE COURT:  Okay.  Mr. Fischhoff, let's not be cute

17  about this, right?  You're a smart lawyer.  When I read this,

18  it immediately caught my eye where it said to the best of my

19  knowledge, Mr. Giuliani hasn't contributed.  I understand why a

20  witness says that, because the witness says I don't know, like,

21  as far as I know, but that's not good enough.  And so I'm not

22  asking --

23           MR. FISCHOFF:  I don't --

24           THE COURT:  -- for the identity of all the small-time

25  contributors.

1          MR. FISCHOFF:  I --

2          THE COURT:  Let's not -- Mr. Fischoff, when I'm

3    talking, you're not.

4          MR. FISCHOFF:  I apologize.  Sorry.

5          THE COURT:  I'm not asking for the identity of all

6    those people and to drag them into bankruptcy.  So let's not

7    make this an issue that it's not, right?  It's fairly easy to

8    get a categorical statement from an appropriate witness to say

9    that Mr. Giuliani is not directly or indirectly providing funds

10   to either of these two funders.  And that's straightforward and

11   simple under oath.  So let's do that.

12         MR. FISCHOFF:  I will.

13         THE COURT:  All right.  Mr. Dublin, next issue.

14         MR. DUBLIN:  Your Honor, I'm going to try to avoid the

15   rhetoric as to how we found ourselves in this situation on this

16   date.

17         THE COURT:  Well, I appreciate that, because I think

18   if we don't do that, we all may not get to any other business

19   today.  So I understand.  I've read your papers.  I have them

20   all here.  I made sure to read them.  I read them yesterday,

21   and I read them again this morning.  So I got it.

22         MR. DUBLIN:  Okay.  Needless to say, I'm expecting

23   this is not going to be the most pleasant Chapter 11 case

24   for -- if the debtor is not more forthcoming with information,

25   timely, and is responsive regularly to the creditors.

23

1          THE COURT:  Well, let's -- as you said, let's avoid

2     the rhetoric.  Let's get down to brass tacks.

3          MR. DUBLIN:  Your Honor, if we get the statement that

4     there's no direct or indirect contribution from the debtor to

5     the fund, we'll address that issue for today.  That would not

6     resolve necessarily our issues of discovery in connection with

7     2004 which, as we've said previously, we would tend to seek in

8     the near term of what --

9          THE COURT:  That's fine.  And no, nobody's saying that

10    this inquiry forecloses any of that inquiry.

11         MR. DUBLIN:  Okay.  Yeah.  Your Honor, with respect to

12    the actual payments for the services that the Sibley firm

13    proposes to provide, there are some internal inconsistencies

14    based on my quick review of the new Sibley declaration.  And

15    also in discussions that I had with debtor's counsel last night

16    with respect to the extent to which Mr. Sibley and his firm

17    would seek additional funding with respect to the matters

18    pertaining to the Freeman litigation as it proceeds in the

19    District court with post-trial motions, litigation, notice of

20    appeal, and to the extent thereafter, there is additional

21    litigation with respect to an actual appeal that's ever

22    permitted -- that's permitted to go forward.

23         At various points in the initial retention

24    application, the amended retention application, I haven't had

25    sufficient time to look at the further amended retention

**RUDOLPH W. GIULIANI**

24

1   application.  But I believe in the most recent supplemental

2   declaration, at various points, Mr. Sibley says that he is only

3   going to seek to be compensated 50,000 dollars from the trusts

4   with respect to all matters pertaining to the Freeman

5   litigation on a go-forward basis.

6            THE COURT:  Well, I saw your -- I understand that.

7   But I thought the concern was the source of the funding.  So

8   that's distinct from what's going to be charged.  And for

9   purposes of the lift stay motion, I think the most -- the

10  concern that I understood from the committee and the Freeman

11  plaintiffs was this notion about where the money was coming

12  from.  And I did see in paragraph 18 of the supplemental

13  declaration of Joseph Sibley that the firm agrees not to seek

14  payment of any legal fees or costs directly from the debtor,

15  and it will file any application for fees and expenses to be

16  paid from one or the two funds or other third-party funding.

17           I had a problem with the other third-party funding in

18  the sense that I don't know what that means.  And so nobody can

19  do any of that without approval because then the Lar Dan

20  affidavit is meaningless.  Because it says, well, there could

21  be somebody else who could pop up, and then we're going to run

22  this process again.  So I had a problem with that.  But I think

23  I understood it to mean if you strike that statement or other

24  third-party funding, that it was going to be an application and

25  the funds were only coming from those two sources.  And it goes

1  on to say it won't seek payment from the debtor.

2       So is there something I'm missing in thinking that if

3  that other third-party funding language is struck, that that'll

4  answer the mail for today at least?

5       MR. DUBLIN:  So that was one of our issues.  And, Your

6  Honor, this becomes a little difficult doing this a little

7  separately from the other retention applications that were

8  supposed to be heard at the same time as this application

9  because all of them contemplate getting paid from these third-

10  party sources at least to some extent.  And we don't have a

11  great accounting of what's currently in those trusts.  So when

12  we look back at paragraph 14 --

13       THE COURT:  But isn't that a problem for the lawyers

14  who are agreeing to the retention?  I mean, again, my

15  understanding was that the source of the funding could be the

16  debtor.  There were legitimate concerns raised about why that

17  is the case.  And so I understand that this is an issue that's

18  popping up in different retentions.  But my understanding that

19  this is the most -- this is the time-sensitive one.  So

20  we'll -- I'll take success in whatever form I can get.  And so

21  if we can get through this one today, then these are on for

22  presentment on the 20th.  We can have another hearing if

23  necessary if we can't resolve those today.  But again, my

24  question is, doesn't this -- again, getting rid of the other

25  third-party funding language, doesn't the language -- the other

1    language in paragraph 18 solve the problem of the source of the

2    funds?

3            MR. DUBLIN:  Well, the source.  But it's not just the

4    source, Your Honor.  Because when we're looking at estate

5    assets.  right, if there are many things that  estate assets

6    will be used for.  And with respect to the other retention

7    applications, if there are amounts above the 50,000 that may be

8    sought by the Sibley firm in connection with the Freeman

9    litigation, that would further dissipate the --

10            THE COURT:  I don't know.  That's not the issue that

11    was identified for me.  And it's a hypothetical.  And if

12    there's no funding to pay for the lawyers, then people will

13    have to come back and seek an amended application or identify

14    other third-party sources.  But I don't think that's your role

15    to get in into that question.  Why does it matter to you as to

16    how much money there is and when the money will run out?

17            MR. DUBLIN:  Because we're looking to maximize the

18    value of the estate, Your Honor, if the parties --

19            THE COURT:  Those aren't estate assets.  Those are the

20    two party funders.

21            MR. DUBLIN:  I understand, Your Honor.  But these

22    professionals said they're going to seek funding from those

23    entities.  And then if there's not enough money, they're going

24    to come to the estate, not necessarily Sibley.

25            THE COURT:  No.  That's actually not what it says.  It

1  says it will not seek payment from the debtor.

2           MR. DUBLIN:  Right, Your Honor.  But I'm getting back

3  to the fact that we have issues with the two other retentions

4  as well.

5           THE COURT:  No.  I'm not hearing anything that -- I

6  think we're going around and around.  I'm taking the language

7  in paragraph 18 at face value that the firm will not seek any

8  payment from the debtors.  All funds that it will seek will be

9  made by application.  And they will all seek to be compensated

10 from one or the other of these funds.  And that's it.  I am

11 essentially telling the debtor that this language about other

12 third-party funding is right out.  It's inappropriate.  It's a

13 back door.  And I am not approving any application that is

14 conditioned on that language.  But other than that, I think

15 it's fine.

16          We have many bridges to cross.  We'll burn this

17 particular bridge when we get there.  So I'm okay with that.

18 What's your next issue?

19          MR. DUBLIN:  Your Honor, I would like that -- the

20 order to provide directly or indirectly from the debtor,

21 looking at the same type of issue with respect to --

22          THE COURT:  Yeah.

23          MR. DUBLIN:  -- the buyer disclosure.

24          THE COURT:  That's a fair point.  I think that's a

25 fair point.

28

1          All right.  Any other issues, Mr. Dublin?  And again,

2     I recognize that you got these this morning and in one case

3     less than a half an hour before the hearing.  So I recognize

4     that that is less than ideal.

5          MR. DUBLIN:  Your Honor, I have not had a sufficient

6     time to spend with the proposed retention order as to whether

7     we would have comments with the order itself, ensuring that

8     it's consistent with the items that we're discussing today.  So

9     I would like to have an opportunity to review that.

10         THE COURT:  That's fair.

11         MR. DUBLIN:  We also -- and Your Honor hasn't seen

12    this.  But in the agreement that we had as it related to the

13    lift stay order, the debtor had to -- had agreed to provide us

14    the debtor's -- I'm sorry, the committee and the Freeman

15    plaintiffs drafts of the documents that they intended to file

16    within five days prior to the filing.  We're already within

17    that period.  We haven't seen those documents.  To ensure that

18    (audio interference) encompassing the scope of the limited

19    relief from the stay that that Your Honor had indicated that

20    you would approve, we're up against a little bit of a wall

21    there as well. l

22         THE COURT:  All right.  We should circle back to that

23    before we get off.  But as to the retention for the moment, Ms.

24    Schwartz, anything else from your office?  And now's the chance

25    to actually take a step back and identify any other issues.  I

29

1   just wanted to not lose the thread before.

2           MS. SCHWARTZ:  Yes, I understand that.  Thank you,

3   Your Honor.

4           I do think that the order will have to be slightly

5   tweaked to reflect what Your Honor said on the record.  So I

6   think it's totally appropriate for Mr. Dublin without a doubt.

7   I mean, we would never -- we would never permit the debtor to

8   submit an order until everybody signed off on it.  So that's

9   number one.

10          Number two, Your Honor, from our perspective, what we

11  were ultimately able to pull out from the debtor -- and when I

12  say pull out, I mean -- I didn't see the declaration until it

13  was filed ten minutes before the hearing.  But we did think

14  that it met the minimum standard required for retention.

15  Clearly, the committee is going to want to get a lot more

16  information.  And they'll be entitled to get that.  But we were

17  really looking at it from the perspective of it's not a -- this

18  is not the greatest declaration and everything under the sun.

19  But we wanted to get something done so that the debtor didn't

20  miss its deadline and was able to do what they needed to do to

21  preserve those assets.

22          So I didn't -- I didn't disagree with any of Your

23  Honor's comments.  We've got most of the stuff last night or

24  this morning ourselves.

25          THE COURT:  Yeah.

30

1       MS. SCHWARTZ:  So --

2       THE COURT:  So let me make it clear.  I think my

3   earlier comment should have done it, but this is the retention

4   issue.  It is not about information generally in the case.  I

5   understand there's a 2004 request for information that that is

6   very likely coming.  This doesn't impact that.

7       My other observation -- well, two other observations.

8   One is I appreciate everybody sort responding to where I'm

9   trying to go in terms of addressing specific issues.  As you

10  know, in this courthouse, we're forced to be very practical

11  people to try to get things done.

12      The third comment is this is an unnecessary fire

13  drill.  I don't see any reason why it took this long to get

14  this information.  And if this becomes a pattern, there is a

15  risk that when a debtor asks for information or -- I'm sorry,

16  is asking for something to be done and it doesn't meet the

17  requisite transparency and timeliness requirements to allow

18  people to chime in, that the procedural issue will over will

19  take precedence and say we're not doing any of that because

20  people just got the declarations, people just got the

21  information.

22      So when you do that, you're playing with fire.  And I

23  don't understand why that was necessary here.  We all knew on

24  the 31st what was being asked.  And frankly, then getting an

25  email a day for the last three days on various issues, again,

**RUDOLPH W. GIULIANI**

31

1    that's not going to be the successful way to handle this

2    because it reflects a lack of communication.  It reflects just

3    a bad process.  So people need to respond promptly.  There

4    needs to be communication.  There needs to be prompt

5    communication.  And we all know -- and I'm sorry, I don't want

6    to be pedantic, but with the bankruptcy you get benefits.  They

7    come with obligations.  Transparency is the primary obligation.

8    I give this speech all the time.  You could write this speech.

9    You all know.  You're all practitioners in this court, and you

10   know how it works.  So help me to help you.  Let's minimize the

11   amount of disputes.  And so I'm hoping that as we go along, we

12   won't have a repeat of sort of requests for emergency

13   conferences that look like this one because it's just not --

14   it's just not the way to run a railroad.

15          So here's what I would suggest is we're going to deal

16   with this retention because this is the time-sensitive one.

17   There have been changes that have been identified that need to

18   be made in terms of the source of funding that are addressed in

19   one of the funds.  And indeed that that declaration, we need it

20   on the record so that everybody knows what it says.  And it

21   doesn't count until it's on the docket.  And obviously, you can

22   share drafts to the extent that people want to see what it

23   says, but I think it's pretty clear, directly or indirectly.

24   Somebody knows -- I'm not trying to drag these individuals into

25   bankruptcy court.  They're not here.  And it's not surprising

32

1   they're here because we don't need them here.  We can address

2   the problem without their involvement.

3           And also, I need the order to say that, however you

4   want to phrase it, whether the language is retracted or the

5   Court is essentially overruling the conditions set forth in

6   paragraph 18 about paying fees from not only the two funds but

7   any other third-party funding.  I suspect, and Ms. Schwartz can

8   tell me if I'm wrong, that when you say there's another third

9   party who might fund, then we do the Lar Dan affidavit drill

10  again.  That's how it works.  So we can't have that in there.

11  And so I'm not going to grant any relief with that condition in

12  there.  So you can either strike it from the declaration, you

13  can either make it clear that that's not something that will be

14  done in the context of seeking compensation.

15          So my thought is that the declaration could get on the

16  docket promptly.  And remind me what day of the week the 20th

17  is.

18          MR. FISCHOFF:  Tuesday.

19          THE COURT:  Tuesday.  And while that declaration is

20  being prepared, a revised proposed order can be circulated.

21  And then my thought would be to hopefully be in a position late

22  in the day on Monday or Tuesday morning at the very latest to

23  sign the order after reviewing the declaration and also sign

24  the lift stay order.  So that would be my intention.  I will

25  look at it Monday afternoon if it's all ready to go.

33

1          MR. BERGER:  Thank you, Your Honor.

2          For the record, I just want to just advise the Court

3    that on the other two retentions, the one for Aidala and the

4    one for us,  we've requested to adjourn that out because once

5    we resolve hopefully this issue with some Lar Dan affidavits,

6    we could then supplement those two other ones with the new Lar

7    Dan affidavits which I think will be much more consistent with

8    Your Honor's ruling today and the opinions and stuff expressed

9    by the Court.

10          THE COURT:  All right.  Yeah, no.  I think that makes

11   sense.  This is the canary in the coal mine.  And once we sort

12   of have a go by that this will hopefully make the other

13   retentions easier.  And anything else, Mr. Berger?

14          MR. BERGER:  That's it, Your Honor.  Thank you.

15          THE COURT:  All right.  So also I'm going to I'm going

16   to take the shot because it's my job to encourage people to

17   voluntarily share information.  The committee clearly has a

18   desire for more information.  They're going to file a 2004

19   request.  We can all go that way, but we don't necessarily need

20   to go that way.  So if Mr. Dublin has communicated that there's

21   certain information he would like that should be shared and

22   there's no appropriate substantive objection to it, let's get

23   that information out.  Let's get it in progress and so the case

24   can move along more smoothly.  Otherwise, the case will get

25   hung up on things like that.  And that's just not helpful for

1  anyone:  debtor, creditors, the U.S. Trustee's Office, you name

2  it.  So let's try to move things along.  And if -- I'm not

3  expecting necessarily people to be thrilled about that, but

4  that's the price of doing business here in the Bankruptcy

5  Court.  And you can all blame me.  That's why I wear the robe.

6  I'm happy to be the person you can point to for that.

7          So with that, anything else today for the committee?

8          MR. DUBLIN:  Just that we have to modify the lift stay

9  order given where we are timing wise.  And I would expect that,

10  given our prior agreement, we would be receiving drafts of the

11  documentation that they intend to file on the 20th posthaste.

12          THE COURT:  All right.  That's an appropriate request.

13  And so I don't see any reason why that kind of information

14  shouldn't be shared this afternoon, maybe 2, 3 o'clock along

15  with revised proposed orders.

16          MR. BERGER:  Judge, Heath Berger.

17          Just to get things expedited, and I think Your Honor

18  brought it up, instead of getting Mr. Sibley to redo the

19  affidavit, maybe we just be more specific in the order.  And

20  this way we can get an order out.

21          THE COURT:  Yes.  You can fix it in the order.  I

22  would agree.

23          MR. HEATH:  Right.

24          THE COURT:  That's one of the benefit of revising the

25  orders is you can fix those kinds of issues just like we do

1  with confirmation orders when you've got something in the plan,

2  notwithstanding anything else, anywhere else, here's what the

3  rule is.  Yes, absolutely.  I'm perfectly fine with that

4  approach.  And that's why I'm not telling you exactly how to

5  phrase it.  I'm sure -- you've got a bunch of smart

6  professionals on the phone.  I'm sure you can figure out how to

7  do it.

8          MR. HEATH:  Will do, Your Honor.  Thank you.

9          THE COURT:  All right.  Let me ask if there's any

10 other party that needs to be heard this morning.

11         MR. SIBLEY:  Your Honor, this is Joe Sibley.

12         THE COURT:  Yes.

13         MR. SIBLEY:  Your Honor, I'd just like to point out a

14 couple of things.  One is the work that's being done to be

15 filed on Tuesday, that is not costing anyone any additional

16 fees.  I've already been paid for a flat fee for the work

17 through final judgment of the trial court.  So the additional

18 fees would be for the work that would be done in the D.C.

19 circuit, not for this work.

20         THE COURT:  All right.

21         MR. SIBLEY:  The second issue is my understanding by

22 looking at the previous proposed order was that we would give

23 them notice of our intent to file these things five business

24 days in advance, not the actual draft.  I don't have a draft

25 prepared to circulate at this point.  The only motion that we

1  plan on filing post-verdict is the Rule 59 motion we're

2  required to file to preserve certain appellate issues.  I think

3  all of those issues are known issues because we had to move for

4  a directed verdict on those issues anyway.  I can give a sketch

5  of what that's going to entail, but the only thing we're going

6  to do is what we are required to do under the rules to preserve

7  appellate issues.  So --

8         THE COURT:  All right.  Well, I realize that I am not

9  as knowledgeable about your conversations back and forth on

10  these issues.  But again, communication is the key.  So what I

11  think would be appropriate then to make sure -- again, I don't

12  know what was said and how it was presented.  But, Mr. Sibley,

13  if you would be so kind as to respond to any questions the

14  committee might have, I think that's the other way to address

15  that just to get a sketch of what's going to be in there.

16         Again, I don't know what you all talked about and how

17  it was presented.  It's not in any order I have, so it's not

18  really within my bailiwick.

19         What I understand the question to be is exactly was

20  whether the scope of the pleadings were going to be consistent

21  with what was represented on the record at the hearing.  And so

22  if you can answer that statement, yes, I think that will

23  hopefully give Mr. Dublin at least some comfort before getting

24  off the phone.

25         MR. SIBLEY:  I'm happy to do that, Your Honor.

1          THE COURT:  All right.  All right.  Let me ask if

2     there's anything else from any other party.

3          MR. DUBLIN:  Your Honor, there's one thing before we

4     go.  I think we will need a the further supplemental

5     declaration as it relates to the knowledge of direct or

6     indirect contributions to the trust by the debtor.

7          THE COURT:  Yeah, I think that was what was

8     contemplated.  I think that's right.  We're expecting one

9     declaration and a couple of revised orders.

10          MR. DUBLIN:  Yes, Your Honor.

11          THE COURT:  I think what my comment earlier about is

12     that I didn't counsel to provide a revised declaration simply

13     to strike the "or other third-party funding" language, that

14     that issue can be addressed in the order.

15          MR. DUBLIN:  Thank you, Your Honor.

16          THE COURT:  All right.  Thank you.

17          MR. HEATH:  One last thing just administrative wise.

18          THE COURT:  Sure.

19          MR. HEATH:  If we're adjourning at the presentment on

20     the Aidala and the Berger Fischhoff retentions, perhaps the

21     Court wants to tell us the date so we can --

22          THE COURT:  Yeah, that's an excellent idea to do that

23     now so everybody's on the same page.  How far out were people

24     contemplating going with that?  So I think it was scheduled for

25     the 20th.

1          MR. HEATH:  Yeah.  Let's make it the -- I mean, I'm

2     just looking at my calendar the 20th.  How about we make it the

3     29th which is the last day of February with objections five

4     days before that?  No, you we should -- I'm thinking out loud.

5     Maybe we should move to --

6          THE COURT:  So I will say I have hotly contested mega

7     case confirmation starting on the 26th.  I don't know the

8     extent of how long that's going to take, but I am trying to

9     avoid giving out dates during that week just because I don't

10    want to inconvenience you all and have you wait around.  So if

11    it doesn't do any harm and there are no impending deadlines

12    that would be implicated, my suggestion would be to go with

13    March 5th.

14         MR. HEATH:  Okay.  And the objections five days before

15    that day?

16         THE COURT:  Does that work for folks?

17         MR. DUBLIN:  Yes, Your Honor.

18         MS. SCHWARTZ:  Works for the U.S. Trustee, Your Honor.

19         THE COURT:  All right.

20         MR. DUBLIN:  I would hope that based on today's

21    dialog, Your Honor, that we'd be able to resolve issues with

22    the other retentions that we don't need to bother you with a

23    hearing, but we'll see how that goes.

24         THE COURT:  All right.

25         MR. HEATH:  We are good with that also, Your Honor.

**RUDOLPH W. GIULIANI**

39

1          THE COURT:  From your lips to God's ears.  All right.

2     All right.  Thank you very much.  And unless anybody has

3     anything else, we're adjourned.  Thank you very much for

4     everybody's flexibility in dealing with a developing situation

5     in terms of the declarations this morning.  I appreciate it.

6     And I will see you all no doubt soon.  Thank you.

7          IN UNISON:  Thank you.

8        (Whereupon these proceedings were concluded at 12:03 PM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

40

C E R T I F I C A T I O N

I, Michael Drake, certify that the foregoing transcript is a
true and accurate record of the proceedings.


_____

Michael Drake (CER-513, CET-513)

AAERT Certified Electronic Transcriber

eScribers

7227 North 16th Street, Suite #207

Phoenix, AZ 85020


Date:   February 19, 2024

23-12055-shl    Doc 132    Filed 02/19/24    Entered 03/01/24 11:39:06    Main Document
In the Matter of: RUDOLPH W. GIULIANI    Pg 41 of 48

February 16, 2024

## A

**able (3)**
29:11,20;38:21
**above (1)**
26:7
**absolutely (2)**
19:3;35:3
**acceptable (1)**
16:18
**access (2)**
15:1;16:14
**accounting (1)**
25:11
**active (1)**
14:10
**actual (8)**
7:4;9:10,11;16:2,
13;23:12,21;35:24
**actually (6)**
7:7;9:12;10:11;
18:21;26:25;28:25
**additional (5)**
15:9;23:17,20;
35:15,17
**address (5)**
13:9;17:1;23:5;
32:1;36:14
**addressed (2)**
31:18;37:14
**addressing (1)**
30:9
**adjourn (1)**
33:4
**adjourned (1)**
39:3
**adjourning (1)**
37:19
**administered (1)**
21:1
**administrative (1)**
37:17
**advance (1)**
35:24
**advise (1)**
33:2
**affidavit (5)**
6:24;18:25;24:20;
32:9;34:19
**affidavits (2)**
33:5,7
**affiliated (1)**
15:4
**afternoon (2)**
32:25;34:14
**Again (14)**
14:19;19:7;21:3;
22:21;24:22;25:14,
23,24;28:1;30:25;
32:10;36:10,11,16
**against (1)**
28:20

**agree (1)**
34:22
**agreed (2)**
12:13;28:13
**agreeing (1)**
25:14
**agreement (2)**
28:12;34:10
**agrees (1)**
24:13
**Aidala (2)**
33:3;37:20
**AKIN (3)**
4:11;7:20;14:20
**allow (1)**
30:17
**along (5)**
8:21;31:11;33:24;
34:2,14
**although (1)**
12:8
**always (4)**
8:20;9:20,21;17:17
**amended (3)**
23:24,25;26:13
**amount (2)**
9:25;31:11
**amounts (1)**
26:7
**ANDREA (2)**
4:25;7:24
**Andrew (2)**
10:17;18:20
**Angeles (1)**
5:14
**apologies (1)**
12:2
**apologize (2)**
11:24;22:4
**appeal (3)**
12:12;23:20,21
**appearances (1)**
7:9
**appellate (2)**
36:2,7
**application (11)**
10:14;18:9;23:24,
24;24:1,15,24;25:8;
26:13;27:9,13
**applications (6)**
6:18,21;9:12;11:13;
25:7;26:7
**appreciate (3)**
22:17;30:8;39:5
**approach (1)**
35:4
**approaches (1)**
13:6
**appropriate (6)**
9:24;22:8;29:6;
33:22;34:12;36:11
**appropriately (1)**
9:23

**approval (1)**
24:19
**approve (1)**
28:20
**approving (1)**
27:13
**arguably (1)**
9:5
**around (3)**
27:6,6;38:10
**ArShaye (1)**
4:3
**assets (7)**
13:20;15:17;20:1;
26:5,5,19;29:21
**attachments (1)**
10:18
**Attorneys (5)**
4:3,12;5:3,11;7:15
**audio (1)**
28:18
**authorized (1)**
12:10
**available (1)**
8:20
**Avenue (2)**
4:5;5:4
**avoid (5)**
13:16,25;22:14;
23:1;38:9
**avoided (1)**
8:23
**aware (2)**
14:4;18:5

## B

**back (9)**
12:9;17:2;25:12;
26:13;27:2,13;28:22,
25;36:9
**bad (1)**
31:3
**bailiwick (1)**
36:18
**bankruptcy (9)**
6:3,11;21:4,5,10;
22:6;31:6;25;34:4
**based (4)**
11:19;18:5;23:14;
38:20
**basically (1)**
19:2
**basis (1)**
24:5
**become (1)**
12:8
**becomes (2)**
25:6;30:14
**behalf (6)**
7:17,22,25;8:1,4,12
**benefit (1)**
34:24

**benefits (1)**
31:6
**Berger (10)**
7:12,14,14,14;33:1,
13,14;34:16,16;37:20
**best (4)**
9:23;16:3;20:6;
21:18
**better (3)**
13:2;17:17;20:10
**bidding (1)**
15:17
**Bischoff (1)**
19:17
**bit (3)**
10:2,6;28:20
**blame (1)**
34:5
**bones (1)**
11:1
**both (1)**
13:7
**bother (1)**
38:22
**Boulevard (1)**
5:12
**Bowling (1)**
4:22
**boxes (1)**
15:18
**brass (1)**
23:2
**bridge (1)**
27:17
**bridges (1)**
27:16
**broad (1)**
20:21
**brought (1)**
34:18
**Bryant (1)**
4:14
**BUCHALTER (1)**
5:10
**bunch (2)**
10:17;35:5
**BURBAGE (3)**
4:8;8:3,3
**burn (1)**
27:16
**business (3)**
22:18;34:4;35:23
**businesses (1)**
16:11
**buyer (1)**
27:23

## C

**CA (1)**
5:14
**calendar (1)**
38:2

**call (1)**
6:24
**Camara (1)**
10:15
**can (30)**
9:5,19;12:4;13:2;
14:1;16:25;20:13,14;
24:18;25:20,21,22;
31:21;32:1,7,12,13,
20;33:19,24;34:5,6,
20,21,25;35:6;36:4,
22;37:14,21
**canary (1)**
33:11
**Carnac (1)**
10:2
**Carson (1)**
10:2
**case (12)**
6:5,12,16;14:8;
15:17;22:23;25:17;
28:2;30:4;33:23,24;
38:7
**categorical (1)**
22:8
**caught (1)**
21:18
**cautiously (1)**
11:4
**caveat (1)**
20:6
**certain (6)**
12:11;15:2,12;21:6;
33:21;36:2
**certainly (3)**
9:24;15:8,18
**chance (1)**
28:24
**changes (1)**
31:17
**Chapter (3)**
6:5,12;22:23
**charged (1)**
24:8
**check (1)**
20:14
**checked (2)**
14:4;15:18
**chime (1)**
30:18
**CINTRON (3)**
5:2,3;8:8
**circle (1)**
28:22
**circuit (1)**
35:19
**circulate (1)**
35:25
**circulated (1)**
32:20
**clear (4)**
12:3;30:2;31:23;
32:13

23-12055-shl   Doc 132   Filed 02/19/24   Entered 03/01/24 11:39:06   Main Document
In the Matter of: RUDOLPH W. GIULIANI      Pg 42 of 48

February 16, 2024

**Clearly (2)**
29:15;33:17
**coal (1)**
33:11
**comfort (1)**
36:23
**comfortable (1)**
16:13
**coming (5)**
16:7,12;24:11,25;
30:6
**comingles (1)**
16:10
**comment (5)**
8:20;17:8;30:3,12;
37:11
**comments (5)**
16:22;18:4,8;28:7;
29:23
**Commission (1)**
18:22
**commitments (1)**
12:20
**Committee (16)**
4:12;7:18,21;11:14;
13:6,7;14:14,18,21;
15:12;24:10;28:14;
29:15;33:17;34:7;
36:14
**communicated (1)**
33:20
**communication (4)**
31:2,4,5;36:10
**compensated (2)**
24:3;27:9
**compensation (2)**
12:19;32:14
**complicated (1)**
20:16
**concern (7)**
9:20;11:25;12:6,9;
19:24;24:7,10
**concerns (3)**
11:11,19;25:16
**concluded (1)**
39:8
**condition (2)**
12:18;32:11
**conditioned (2)**
12:15;27:14
**conditions (1)**
32:5
**conduct (1)**
16:22
**conference (10)**
6:7,15,25;7:3,8;
8:24;9:3,4,5;12:7
**conferences (4)**
9:7,7;18:7;31:13
**confirmation (2)**
35:1;38:7
**conflict (3)**
16:13,14;18:17

**connection (3)**
6:17;23:6;26:8
**consensual (1)**
14:7
**consistent (3)**
28:8;33:7;36:20
**constant (1)**
13:11
**contact (1)**
13:11
**contemplate (1)**
25:9
**contemplated (1)**
37:8
**contemplating (1)**
37:24
**content (1)**
13:11
**contested (1)**
38:6
**context (1)**
32:14
**contribute (1)**
20:4
**contributed (1)**
21:19
**contributing (1)**
20:2
**contribution (1)**
23:4
**contributions (3)**
16:5;21:2;37:6
**contributor (1)**
19:1
**contributors (1)**
21:25
**control (2)**
13:14,20
**controversial (1)**
13:19
**conversations (1)**
36:9
**CORPORATION (1)**
5:10
**correctly (1)**
10:22
**corresponding (1)**
17:9
**Costello (1)**
18:16
**costing (1)**
35:15
**costs (1)**
24:14
**counsel (14)**
6:6,15;7:10,20;
8:15;10:15;14:21;
15:1;16:16;18:16,18;
19:3;23:15;37:12
**count (1)**
31:21
**couple (2)**
35:14;37:9

**course (1)**
11:13
**COURT (86)**
6:2,3,11;7:17,22;
8:1,6,10,13,17;10:12,
24;12:1,10,16,24;
13:5;14:13;15:6;
16:21;17:13,22,25;
19:5,10,13,15,17,20,
22;20:5,9,13,20;21:3,
13,16,24;22:2,5,13,
17;23:1,9,19;24:6;
25:13;26:10,19,25;
27:5,22,24;28:10,22;
29:25;30:2;31:9,25;
32:5,19;33:2,9,10,15;
34:5,12,21,24;35:9,
12,17,20;36:8;37:1,7,
11,16,18,21,22;38:6,
16,19,24;39:1
**courthouse (1)**
30:10
**creating (1)**
13:16
**creditor (3)**
8:8;15:16;18:17
**Creditors (3)**
4:13;22:25;34:1
**creditors' (1)**
7:21
**cross (1)**
27:16
**current (1)**
15:24
**currently (1)**
25:11
**cute (1)**
21:16

**D**

**Dan (6)**
6:24;18:25;24:19;
32:9;33:5,7
**date (5)**
11:24;12:6,14;
22:16;37:21
**dates (2)**
9:11;38:9
**dating (1)**
10:1
**Davidhoff (1)**
8:8
**DAVIDOFF (2)**
5:2,3
**Davidson (1)**
18:17
**day (7)**
6:20;7:2;30:25;
32:16,22;38:3,15
**days (6)**
6:19;28:16;30:25;
35:24;38:4,14

**DC (2)**
7:5;35:18
**deadline (4)**
6:19;7:4;10:4;
29:20
**deadlines (1)**
38:11
**deal (2)**
16:25;31:15
**dealing (3)**
6:7;10:21;39:4
**debtor (28)**
7:10,15;11:23;
12:19,22;15:15;16:4,
10;17:5;19:3,3,4;
20:2;22:24;23:4;
24:14;25:1,16;27:1,
11,20;28:13;29:7,11,
19;30:15;34:1;37:6
**debtors (4)**
11:17,20;13:15;
27:8
**debtor's (7)**
6:6,15;15:1;16:15;
19:3;23:15;28:14
**declarant's (1)**
16:4
**declaration (26)**
10:17,20;15:21;
17:15,19,21;18:1,9,
10,10,11;20:3,18;
23:14;24:2,13;29:12,
18;31:19;32:12,15,19,
23;37:5,9,12
**declarations (13)**
9:14;10:7,12;11:14;
13:12,18,24;14:17;
15:8;17:19;18:19;
30:20;39:5
**Defense (3)**
15:11,16,21
**defer (1)**
14:12
**DEPARTMENT (1)**
4:20
**desire (1)**
33:18
**detail (3)**
14:23;17:9,17
**detailed (1)**
18:2
**developing (1)**
39:4
**dialog (1)**
38:21
**difference (1)**
9:9
**different (2)**
13:6;25:18
**difficult (2)**
11:9;25:6
**direct (1)**
19:13;23:4;37:5

**directed (1)**
36:4
**directly (6)**
20:15,21;22:9;
24:14;27:20;31:23
**disagree (1)**
29:22
**disbursements (3)**
10:19;15:12;18:23
**disclosure (2)**
19:25;27:23
**discovery (1)**
23:6
**discussed (2)**
6:16;9:15
**discussing (1)**
28:8
**discussions (1)**
23:15
**disputes (2)**
14:23;31:11
**dissipate (1)**
26:9
**distinct (1)**
24:8
**District (3)**
6:4,11;23:19
**docket (5)**
6:14;10:13;15:10;
31:21;32:16
**documentation (1)**
34:11
**documents (2)**
28:15,17
**dollars (1)**
24:3
**Dominion (2)**
5:11;8:12
**donated (3)**
20:19;21:10,12
**donations (1)**
16:2
**done (9)**
14:5,5;29:19;30:3,
11,16;32:14;35:14,18
**donors (2)**
18:22;19:25
**door (1)**
27:13
**doubt (2)**
29:6;39:6
**down (2)**
15:19;23:2
**draft (3)**
17:16;35:24,24
**drafts (3)**
28:15;31:22;34:10
**drag (2)**
22:6;31:24
**dragged (1)**
21:4
**drill (2)**
30:13;32:9

23-12055-shl    Doc 132    Filed 02/19/24    Entered 03/01/24 11:39:06    Main Document
In the Matter of: RUDOLPH W. GIULIANI        Pg 43 of 48

February 16, 2024

**drills (1)**
14:1
**driver (1)**
9:3
**drivers (2)**
9:11;10:9
**DUBLIN (38)**
4:17;7:19,19;14:19,
20;15:20;16:24;17:7,
11,14,23;19:7,18;
20:5;22:13,14,22;
23:3,11;25:5;26:3,17,
21;27:2,19,23;28:1,5,
11;29:6;33:20;34:8;
36:23;37:3,10,15;
38:17,20
**Dublin's (1)**
18:24
**during (1)**
38:9
**duty (1)**
19:4

**E**

**earlier (2)**
30:3;37:11
**ears (1)**
39:1
**easier (1)**
33:13
**easily (1)**
12:2
**easy (2)**
18:22;22:7
**either (5)**
20:15,23;22:10;
32:12,13
**Election (1)**
18:22
**elicit (1)**
16:21
**else (16)**
8:6,10,13,18;14:9;
17:6,7,10;24:21;
28:24;33:13;34:7;
35:2,2;37:2;39:3
**email (2)**
11:2;30:25
**emergency (4)**
7:6;9:10;13:16;
31:12
**encompassing (1)**
28:18
**encourage (1)**
33:16
**end (3)**
13:10,23;15:23
**endorsed (1)**
7:2
**enemy (1)**
10:10
**enough (3)**

20:21;21:21;26:23
**ensure (1)**
28:17
**ensuring (1)**
28:7
**entail (1)**
36:5
**entities (5)**
15:4;20:19,22,23;
26:23
**entitled (2)**
16:17;29:16
**entity (1)**
15:25;20:19
**equal (2)**
19:20,22
**ESQ (5)**
4:8,17,25;5:7,16
**essence (1)**
18:7
**essentially (4)**
15:16;19:1;27:11;
32:5
**estate (6)**
20:1;26:4,5,18,19,
24
**everybody (4)**
19:13;29:8;30:8;
31:20
**everybody's (2)**
37:23;39:4
**exactly (2)**
35:4;36:19
**example (1)**
15:10
**excellent (1)**
37:22
**exclusion (1)**
15:15
**expect (1)**
34:9
**expecting (3)**
22:22;34:3;37:8
**expedited (1)**
34:17
**expenses (2)**
17:18;24:15
**explained (1)**
18:14
**expressed (1)**
33:8
**extend (1)**
10:4
**extensive (1)**
8:22
**extent (5)**
23:16,20;25:10;
31:22;38:8
**eye (1)**
21:18

**F**

**face (1)**
27:7
**fact (2)**
11:15;27:3
**fair (3)**
27:24,25;28:10
**fairly (1)**
22:7
**fan (2)**
9:6,7
**far (3)**
17:20;21:21;37:23
**FARR (2)**
4:2;8:4
**February (6)**
6:7,14,19,25;12:7;
38:3
**Federal (1)**
18:21
**fee (1)**
35:16
**feel (1)**
17:17
**fees (6)**
17:18;24:14,15;
32:6;35:16,18
**FELD (3)**
4:11;7:20;14:20
**fiduciary (1)**
19:4
**figure (2)**
14:10;35:6
**file (8)**
8:22;12:11;24:15;
28:15;33:18;34:11;
35:23;36:2
**filed (16)**
6:6,14,18,20;10:13,
16;11:12,20;12:9;
14:14,17;15:8,10;
18:21;29:13;35:15
**filing (3)**
7:5;28:16;36:1
**filings (1)**
11:21
**final (1)**
35:17
**finally (1)**
13:17
**fine (7)**
9:4;13:4;20:24;
21:6;23:9;27:15;35:3
**fire (3)**
13:25;30:12,22
**firm (8)**
10:15;12:18;15:3;
23:12,16;24:13;26:8;
27:7
**firms (1)**
6:16
**firm's (1)**
15:14
**first (6)**

11:17,19,24;12:15;
15:10;18:4
**Fischhoff (2)**
21:16;37:20
**FISCHOFF (26)**
7:11,12,12,15;
10:23;11:22,22;12:6,
17;13:4;14:9,12;
16:20;20:9,10,12,17,
24;21:9,15,23;22:1,2,
4,12;32:18
**five (5)**
6:19;28:16;35:23;
38:3,14
**fix (2)**
34:21,25
**flash (1)**
14:5
**flat (1)**
35:16
**flexibility (1)**
39:4
**focus (1)**
12:9
**folks (3)**
9:23;11:7;38:16
**forced (1)**
30:10
**forecloses (1)**
23:10
**form (1)**
25:20
**formal (1)**
11:12
**forth (2)**
32:5;36:9
**forthcoming (1)**
22:24
**forward (3)**
12:4;13:1;23:22
**found (1)**
22:15
**frankly (3)**
10:7;13:2;30:24
**Freedom (3)**
15:25;16:1;20:25
**Freeman (8)**
4:3;8:2,4;23:18;
24:4,10;26:8;28:14
**front (1)**
14:1
**fund (9)**
16:14;18:20;19:25;
20:2,25;21:1,5;23:5;
32:9
**funder (1)**
10:21
**funders (4)**
10:18;13:15;22:10;
26:20
**funding (17)**
15:2;16:15;20:22;
23:17;24:7,16,17,24;

25:3,15,25;26:12,22;
27:12;31:18;32:7;
37:13
**funds (13)**
6:22;16:10;18:19;
20:15,19;29:24:16,
25;26:2;27:8,10;
31:19;32:6
**further (3)**
23:25;26:9;37:4

**G**

**GALLAGHER (2)**
4:2;8:4
**Gary (2)**
7:12;11:22
**generally (1)**
30:4
**gets (3)**
6:8;21:1,1
**Giuliani (16)**
6:4,13;10:17;15:11,
15,21,21,25;18:9,20;
20:2,14,18,25;21:19;
22:9
**Giuliani's (1)**
15:4
**given (4)**
7:6;17:18;34:9,10
**giving (1)**
38:9
**GLUCKSMAN (3)**
5:7;8:8,9
**God's (1)**
39:1
**goes (4)**
15:11;17:21;24:25;
38:23
**go-forward (1)**
24:5
**Good (21)**
6:2,10;7:11,16,17,
19,24;8:1,3,6,10,11,
13,14,17,25;10:10;
11:4;14:7;21:21;
38:25
**Goodman (2)**
7:12,15
**grant (1)**
32:11
**great (1)**
25:11
**greatest (1)**
29:18
**Green (1)**
4:22
**guess (2)**
13:13;14:2
**Guiliani (1)**
18:14
**GUMP (3)**
4:11;7:20;14:20

**gun (1)**
13:22

**H**

**half (1)**
28:3
**handle (1)**
31:1
**happened (1)**
9:19
**happy (4)**
8:20;11:17;34:6;
36:25
**hard (2)**
9:9;16:22
**harm (1)**
38:11
**HAUER (3)**
4:11;7:20;14:20
**head (2)**
10:2;13:22
**hear (7)**
11:17,18;14:9,18;
17:5,5,6
**heard (2)**
25:8;35:10
**hearing (11)**
6:20;8:16;9:17;
12:14,24;25:22;27:5;
28:3;29:13;36:21;
38:23
**hearings (2)**
9:8;16:23
**Heath (9)**
7:14;34:16,23;35:8;
37:17,19;38:1,14,25
**heightened (1)**
16:9
**help (3)**
12:4;31:10,10
**helpful (3)**
9:5,7;33:25
**helpfully (1)**
11:2
**help-me-to-help-you (1)**
11:9
**helps (1)**
10:25
**here's (3)**
20:24;31:15;35:2
**hold (1)**
10:2
**Honor (43)**
7:11,14,19,24;8:3,
11,14;14:19,22;
15:20;17:11;18:3,20;
21:9;22:14;23:3,11;
25:6;26:4,18,21;27:2,
19;28:5,11,19;29:3,5,
10;33:1,14;34:17;
35:8,11,13;36:25;
37:3,10,15;38:17,18,

21,25
**Honor's (2)**
29:23;33:8
**hope (1)**
38:20
**hopefully (4)**
32:21;33:5,12;
36:23
**hoping (1)**
31:11
**host (1)**
17:11
**hotly (1)**
38:6
**hour (1)**
28:3
**hundreds (1)**
21:1
**hung (1)**
33:25
**HUTCHER (3)**
5:2,3;8:8
**Hutchinson (1)**
18:17
**hypothetical (1)**
26:11

**I**

**idea (1)**
37:22
**ideal (1)**
28:4
**identified (4)**
18:18;19:7;26:11;
31:17
**identify (3)**
7:4;26:13;28:25
**identity (2)**
21:24;22:5
**immediate (1)**
9:2
**immediately (1)**
21:18
**impact (1)**
30:6
**impending (1)**
38:11
**implicated (2)**
6:21;38:12
**imposed (1)**
8:25
**inappropriate (1)**
27:12
**Inc (1)**
5:11
**includes (1)**
18:12
**including (6)**
10:18;15:4;17:19;
18:9,13;20:22
**inconsistencies (1)**
23:13

**inconsistent (1)**
17:20
**inconvenience (1)**
38:10
**indeed (1)**
31:19
**indicated (1)**
28:19
**indirect (2)**
23:4;37:6
**indirectly (5)**
20:15,21;22:9;
27:20;31:23
**individual (1)**
15:15
**individuals (1)**
31:24
**information (35)**
10:18;13:17,18;
14:24;15:1,9,20,22,
24;16:1,2,6,15,16,17,
18;17:24;18:2,8,12,
23;20:13;21:13;
22:24;29:16;30:4,5,
14,15,21;33:17,18,21,
23;34:13
**initial (1)**
23:23
**inquiry (2)**
23:10,10
**insert (1)**
21:10
**instance (1)**
11:19
**Instead (2)**
16:3;34:18
**intend (2)**
15:16;34:11
**intended (1)**
28:15
**intent (1)**
35:23
**intention (1)**
32:24
**interference (1)**
28:18
**internal (1)**
23:13
**internally (1)**
17:20
**into (6)**
21:4,5,11;22:6;
26:15;31:24
**involvement (1)**
32:2
**issue (16)**
17:10,23;18:17;
19:7;22:7,13;23:5;
25:17;26:10;27:18,
21;30:4,18;33:5;
35:21;37:14
**issues (26)**
6:24;7:1;9:15;10:1;

12:25;13:8;14:1,24;
15:19;16:8;17:12;
23:6;25:5;27:3;28:1,
25;30:9,25;34:25;
36:2,3,3,4,7,10;38:21
**itemized (3)**
15:12,22;16:5
**items (1)**
28:8

**J**

**JAMES (4)**
4:8;5:7;8:9;10:21
**January (1)**
6:18
**Jim (1)**
8:3
**job (1)**
33:16
**Joe (2)**
8:14;35:11
**JOEL (2)**
5:16;8:11
**Johnny (1)**
10:1
**joinder (1)**
11:12
**Joseph (1)**
24:13
**Judge (5)**
6:2,10;11:22;13:8;
34:16
**judgment (2)**
12:12;35:17
**JUSTICE (1)**
4:20

**K**

**key (1)**
36:10
**kind (5)**
7:6;13:24;18:2;
34:13;36:13
**kinds (2)**
17:9;34:25
**knew (1)**
30:23
**knowledge (4)**
16:4;20:7;21:19;
37:5
**knowledgeable (1)**
36:9
**known (1)**
36:3
**knows (2)**
31:20,24

**L**

**lack (3)**
14:24;17:23;31:2

**lacking (1)**
17:17
**Lane (2)**
6:2,10
**language (10)**
19:6;25:3,25,25;
26:1;27:6,11,14;32:4;
37:13
**Lar (6)**
6:24;18:25;24:19;
32:9;33:5,6
**last (7)**
9:22;17:16;23:15;
29:23;30:25;37:17;
38:3
**late (1)**
32:21
**latest (1)**
32:22
**law (1)**
6:16
**lawyer (2)**
21:8,17
**lawyers (2)**
25:13;26:12
**least (4)**
9:22;25:4,10;36:23
**left (1)**
15:19
**legal (1)**
24:14
**legitimate (1)**
25:16
**less (2)**
28:3,4
**letter (6)**
6:7,14,25;7:2,4;
12:10
**level (2)**
9:16;11:6
**leverage (2)**
9:6,8
**life (1)**
11:9
**lift (6)**
6:17,21;24:9;28:13;
32:24;34:8
**lifted (1)**
13:1
**lifting (1)**
12:12
**likely (1)**
30:6
**limitations (2)**
8:24,25
**limited (2)**
12:11;28:18
**line (1)**
9:4
**lips (1)**
39:1
**Listen (2)**
12:1;16:21

23-12055-shl    Doc 132    Filed 02/19/24    Entered 03/01/24 11:39:06    Main Document
In the Matter of: RUDOLPH W. GIULIANI    Pg 45 of 48

February 16, 2024

**litigation (6)**
21:11;23:18,19,21;
24:5;26:9
**little (3)**
25:6,6;28:20
**live (2)**
14:10,22
**LLC (1)**
10:15
**LLP (4)**
4:2,11;5:2,3
**long (3)**
17:1;30:13;38:8
**look (9)**
9:9,21,22;10:12;
11:15;23:25;25:12;
31:13;32:25
**looking (9)**
12:22;17:10;21:8;
26:4,17;27:21;29:17;
35:22;38:2
**Los (1)**
5:14
**lose (1)**
29:1
**lot (2)**
13:14;29:15
**lots (1)**
14:7
**loud (1)**
38:4

**M**

**mail (1)**
25:4
**makes (2)**
15:12;33:10
**Manges (7)**
10:23,24;17:14,20;
18:1,25;21:1
**many (2)**
26:5;27:16
**March (1)**
38:13
**matter (2)**
8:7;26:15
**matters (3)**
18:14;23:17;24:4
**maximize (1)**
26:17
**maximum (1)**
9:25
**may (5)**
11:18,23;16:20;
22:18;26:7
**maybe (3)**
34:14,19;38:5
**mean (8)**
13:21;20:11;21:8;
24:23;25:14;29:7,12;
38:1
**meaningless (1)**

24:20
**means (1)**
24:18
**meat (1)**
11:1
**meet (1)**
30:16
**meeting (1)**
16:9
**mega (1)**
38:6
**memo (1)**
7:2
**Menges (2)**
10:21;18:10
**met (1)**
29:14
**might (3)**
8:23;32:9;36:14
**mine (2)**
9:20;33:11
**minimize (1)**
31:10
**minimum (1)**
29:14
**minutes (2)**
11:15;29:13
**miss (1)**
29:20
**missing (1)**
25:2
**modified (1)**
12:10
**modify (1)**
34:8
**moment (3)**
11:23;14:12;28:23
**Monday (2)**
32:22,25
**money (8)**
16:6,8,11;19:2;
24:11;26:16,16,23
**more (8)**
11:9;17:17;22:24;
29:15;33:7,18,24;
34:19
**morning (25)**
6:2,10,12;7:11,16,
17,19,24;8:1,3,6,10,
11,13,14,18;10:13;
11:21;14:18;22:21;
28:2;29:24;32:22;
35:10;39:5
**Moss (1)**
4:4
**most (7)**
9:24;15:24;22:23;
24:1,9;25:19;29:23
**motion (4)**
6:21;24:9;35:25;
36:1
**motions (5)**
6:15,17;12:11,12;

23:19
**move (7)**
8:21;12:4;13:1;
33:24;34:2;36:3;38:5
**much (8)**
8:17;11:9;12:8,13;
26:16;33:7;39:2,3
**muted (1)**
6:8
**myself (2)**
8:20;10:1
**mystified (1)**
9:16

**N**

**name (1)**
34:1
**near (1)**
23:8
**necessarily (4)**
23:6;26:24;33:19;
34:3
**necessary (2)**
25:23;30:23
**need (19)**
9:3,18,22;12:2,25;
13:9,9,23;16:14;
19:10,10;31:3,17,19;
32:1,3;33:19;37:4;
38:22
**needed (1)**
29:20
**Needless (1)**
22:22
**needs (3)**
31:4,4;35:10
**negotiate (1)**
9:25
**neither (1)**
20:18
**New (8)**
4:6,15,23;5:5;6:4,
11;23:14;33:6
**next (3)**
7:1;22:13;27:18
**nice (2)**
15:22;17:1
**night (4)**
14:16;17:16;23:15;
29:23
**ninety-day (1)**
18:13
**nobody (2)**
21:3;24:18
**nobody's (1)**
23:9
**notes (1)**
14:4
**notice (4)**
9:3;12:12;23:19;
35:23
**notion (1)**

24:11
**notwithstanding (1)**
35:2
**now's (1)**
28:24
**number (3)**
10:16;29:9,10
**NY (4)**
4:6,15,23;5:5

**O**

**oath (3)**
16:10;20:14;22:11
**objection (5)**
6:19;11:12,13;
14:23;33:22
**objections (4)**
14:11,15;38:3,14
**obligation (2)**
15:14;31:7
**obligations (1)**
31:7
**observation (1)**
30:7
**observations (1)**
30:7
**obviously (6)**
9:12;14:15;16:18;
17:11,16;31:21
**o'clock (2)**
7:8;34:14
**off (3)**
28:23;29:8;36:24
**offended (1)**
12:3
**Office (6)**
4:21;7:23;13:7,10;
28:24;34:1
**office's (1)**
19:6
**Official (3)**
4:12;7:18;11:13
**old (1)**
10:1
**once (4)**
19:2;21:6;33:4,11
**One (36)**
4:14,22;6:9;9:2;
10:16;11:15;15:10,
10;16:24;17:2,4,14,
25;18:1,4;19:8;20:25;
21:2;24:16;25:5,19,
21;27:10;28:2;29:9;
30:8;31:13,16,19;
33:3,4;34:24;35:14;
37:3,8,17
**ones (1)**
33:6
**only (7)**
12:20;15:23;24:2,
25;32:6;35:25;36:5
**opinions (1)**

33:8
**opportunity (1)**
28:9
**optimistic (1)**
11:4
**order (23)**
9:23;12:13,15,25;
13:1;16:12;27:20;
28:6,7,13;29:4,8;32:3,
20,23,24;34:9,19,20,
21;35:22;36:17;37:14
**orders (4)**
34:15,25;35:1;37:9
**otherwise (3)**
8:23;16:22;33:24
**ourselves (2)**
22:15;29:24
**out (17)**
10:4,6;14:4,10;
20:5;26:16;27:12;
29:11,12;33:4,23;
34:20;35:6,13;37:23;
38:4,9
**over (1)**
30:18
**overruling (1)**
32:5
**own (1)**
13:16

**P**

**PAC (1)**
18:21
**page (1)**
37:23
**paid (3)**
24:16;25:9;35:16
**painstaking (1)**
14:23
**papers (4)**
14:14;15:6,7;22:19
**paragraph (5)**
24:12;25:12;26:1;
27:7;32:6
**Park (1)**
4:14
**partial (1)**
17:16
**participate (1)**
15:17
**particular (3)**
17:7,10;27:17
**particularly (2)**
7:6;13:19
**parties (13)**
7:1;8:12,21,22;
11:18;12:14,19,21;
13:20;14:10;17:18;
18:15;26:18
**parties-in-interest (1)**
15:3
**party (5)**

23-12055-shl    Doc 132    Filed 02/19/24    Entered 03/01/24 11:39:06    Main Document
In the Matter of: RUDOLPH W. GIULIANI          Pg 46 of 48

February 16, 2024

**25:10;26:20;32:9;**
**35:10;37:2**
**passing (1)**
14:16
**past (1)**
18:24
**pattern (1)**
30:14
**pay (2)**
12:21;26:12
**paying (2)**
17:18;32:6
**payment (7)**
6:22;12:21,22;
24:14;25:1;27:1,8
**payments (2)**
18:13;23:12
**pedantic (1)**
31:6
**people (20)**
9:2,18,24;13:15,16;
16:21;21:2,9,11;22:6;
26:12;30:11,18,20,20;
31:3,22;33:16;34:3;
37:23
**perfect (1)**
10:9
**perfectly (1)**
35:3
**perhaps (1)**
37:20
**period (2)**
18:14;28:17
**permit (1)**
29:7
**permitted (2)**
23:22,22
**person (1)**
34:6
**perspective (2)**
29:10,17
**pertaining (2)**
23:18;24:4
**Phil (2)**
7:19;14:20
**PHILIP (1)**
4:17
**phone (2)**
35:6;36:24
**phrase (2)**
32:4;35:5
**place (1)**
11:5
**plaintiffs (4)**
8:2,5;24:11;28:15
**plan (2)**
35:1;36:1
**playing (1)**
30:22
**pleadings (2)**
8:22;36:20
**pleasant (1)**
22:23

**PM (1)**
39:8
**point (5)**
27:24,25;34:6;
35:13,25
**pointed (1)**
20:5
**points (3)**
14:6;23:23;24:2
**pop (1)**
24:21
**popping (1)**
25:18
**position (2)**
19:6;32:21
**possible (1)**
14:7
**post- (1)**
12:11
**posthaste (1)**
34:11
**post-trial (1)**
23:19
**post-verdict (1)**
36:1
**potential (1)**
16:13
**practical (2)**
12:3;30:10
**practitioners (1)**
31:9
**precedence (1)**
30:19
**preliminary (2)**
8:19;18:4
**prepared (4)**
12:13;21:2;32:20;
35:25
**present (1)**
8:16
**presented (2)**
36:12,17
**presentment (4)**
6:18;9:13;25:22;
37:19
**preserve (1)**
29:21;36:2,6
**president (1)**
18:20
**pretty (2)**
12:13;31:23
**prevent (1)**
8:22
**previous (1)**
35:22
**previously (1)**
23:7
**price (1)**
34:4
**primary (2)**
17:23;31:7
**principal (1)**
18:16

**prior (5)**
6:19;18:6;21:10;
28:16;34:10
**problem (7)**
13:10;20:25;24:17,
22;25:13;26:1;32:2
**procedural (1)**
30:18
**proceedings (1)**
39:8
**proceeds (1)**
23:18
**process (3)**
14:25;24:22;31:3
**PROFESSIONAL (1)**
5:10
**professionals (4)**
6:23;18:13;26:22;
35:6
**progress (3)**
10:10;13:13;33:23
**prompt (1)**
31:4
**promptly (2)**
31:3;32:16
**pronounce (1)**
10:3
**Proposed (8)**
4:12;7:20;8:15;
14:21;28:6;32:20;
34:15;35:22
**proposes (1)**
23:13
**provide (5)**
16:17;23:13;27:20;
28:13;37:12
**provided (6)**
14:25;15:9;17:16;
18:8;20:15,22
**providing (1)**
22:9
**public (1)**
18:23
**pull (2)**
29:11,12
**pulling (1)**
18:7
**purposes (2)**
12:11;24:9
**put (3)**
10:25;13:21;21:4
**putting (1)**
11:24

**Q**

**quick (1)**
23:14
**quite (1)**
10:6

**R**

**railroad (1)**
31:14
**raise (1)**
11:19
**raised (1)**
25:16
**read (7)**
13:17;15:6;21:17;
22:19,20,20,21
**ready (1)**
32:25
**realize (2)**
14:15;36:8
**really (4)**
7:4;10:11;29:17;
36:18
**reason (4)**
10:4;12:7;30:13;
34:13
**reasons (1)**
14:7
**receipts (2)**
10:19;15:11
**receive (1)**
15:23
**receiving (1)**
34:10
**recent (1)**
24:1
**recognize (2)**
28:2,3
**record (5)**
14:20;29:5;31:20;
33:2;36:21
**redo (1)**
34:18
**reduced (1)**
8:23
**referencing (1)**
10:1
**reflect (1)**
29:5
**reflects (2)**
31:2,2
**regularly (1)**
22:25
**related (2)**
20:18;28:12
**relates (5)**
15:2;16:14;17:14,
23;37:5
**relationships (3)**
6:23;13:20;15:2
**relief (2)**
28:19;32:11
**remind (1)**
32:16
**repeat (1)**
31:12
**repeated (1)**
14:25
**repeatedly (1)**
16:5

**representation (1)**
15:14
**represented (1)**
36:21
**representing (1)**
18:15
**request (5)**
6:6;9:21;30:5;
33:19;34:12
**requested (2)**
15:13;33:4
**requests (2)**
15:1;31:12
**require (2)**
9:16;18:12
**required (3)**
29:14;36:2,6
**requirements (3)**
21:6,7;30:17
**requires (1)**
19:1
**requisite (1)**
30:17
**resolve (6)**
8:21;12:25;23:6;
25:23;33:5;38:21
**respect (14)**
15:21,25;16:2,8;
18:4,19,25;23:11,16,
17,21;24:4;26:6;
27:21
**respectfully (1)**
15:24
**respond (2)**
31:3;36:13
**responding (2)**
7:7;30:8
**responsive (1)**
22:25
**retain (1)**
6:16
**retention (14)**
9:15;10:14;12:17;
23:23,24,25;25:7,14;
26:6;28:6,23;29:14;
30:3;31:16
**retentions (7)**
12:8;25:18;27:3;
33:3,13;37:20;38:22
**retracted (1)**
32:4
**review (2)**
23:14;28:9
**reviewing (1)**
32:23
**revised (4)**
32:20;34:15;37:9,
12
**revising (1)**
34:24
**rhetoric (2)**
22:15;23:2
**rid (1)**

23-12055-shl    Doc 132    Filed 02/19/24    Entered 03/01/24 11:39:06    Main Document
In the Matter of: RUDOLPH W. GIULIANI        Pg 47 of 48

February 16, 2024

25:24
**right (46)**
7:17,22;8:1,6,10,13,
17,19;10:23,24;12:5,
16,24,24;13:7;14:13,
13;18:24;19:12,14,
19;20:11;21:7,17;
22:7,13;26:5;27:2,12;
28:1,22;33:10,15;
34:12,23;35:9,20;
36:8;37:1,1,8,16;
38:19,24;39:1,2
**risk (1)**
30:15
**robe (1)**
34:5
**role (1)**
26:14
**rounds (1)**
18:8
**Ruby (1)**
4:3
**Rudolph (2)**
6:4,12
**Rudy (1)**
20:25
**rule (2)**
35:3;36:1
**rules (1)**
36:6
**ruling (1)**
33:8
**run (3)**
24:21;26:16;31:14

## S

**same (4)**
7:2;25:8;27:21;
37:23
**SAMUELS (3)**
5:16;8:11,11
**saw (2)**
10:12;24:6
**saying (3)**
7:3;10:21;23:9
**scheduled (1)**
37:24
**Schumer (2)**
7:12,15
**SCHWARTZ (20)**
4:25;7:24,25;11:1;
17:5;18:2,3;19:9,12,
14,16,19,21,24;20:8;
28:24;29:2;30:1;32:7;
38:18
**scope (2)**
28:18;36:20
**Sean (2)**
6:2,10
**second (2)**
20:10;35:21
**seek (13)**

12:18,20;23:7,17;
24:3,13;25:1;26:13,
22;27:1,7,8,9
**seeking (2)**
6:15;32:14
**seem (2)**
7:5;20:16
**seemed (1)**
12:8
**sense (6)**
9:1;10:25;11:18;
13:7;24:18;33:11
**separately (1)**
25:7
**sequencing (1)**
14:3
**services (1)**
23:12
**set (3)**
7:7;11:6;32:5
**Seventh (1)**
4:5
**share (2)**
31:22;33:17
**shared (2)**
33:21;34:14
**ships (1)**
14:16
**short (1)**
9:3
**shortly (1)**
12:14
**shot (1)**
33:16
**SIBLEY (24)**
8:14,15;10:15;
12:17,18,20;15:3;
17:19;18:9,11;23:12,
14,16;24:2,13;26:8,
24;34:18;35:11,11,13,
21;36:12,25
**sign (2)**
32:23,23
**signed (1)**
29:8
**significantly (3)**
8:23;16:9;17:17
**simple (2)**
16:3;22:11
**simply (1)**
37:12
**situation (4)**
11:10;16:19;22:15;
39:4
**sketch (2)**
36:4,15
**slightly (1)**
29:4
**small (1)**
21:2
**small-time (2)**
21:11,24
**smart (2)**

21:17;35:5
**smoothly (1)**
33:24
**sole (2)**
15:14;19:4
**solve (1)**
26:1
**somebody (3)**
20:13;24:21;31:24
**somebody's (1)**
21:5
**somehow (1)**
9:8
**sometimes (3)**
9:9,19,19
**soon (1)**
39:6
**sorry (6)**
6:8,8;22:4;28:14;
30:15;31:5
**sort (14)**
9:6;10:7,19,24,25;
11:2,20;13:21,22;
15:19;19:20;30:8;
31:12;33:11
**sought (1)**
26:8
**source (7)**
6:22;24:7;25:15;
26:1,3,4;31:18
**sources (5)**
15:2;16:15;24:25;
25:10;26:14
**Southern (2)**
6:3,11
**speak (1)**
11:23
**special (2)**
8:15;10:15
**specific (4)**
15:19;19:7;30:9;
34:19
**speech (3)**
17:1;31:8,8
**spend (2)**
17:15;28:6
**spoken (1)**
11:20
**standard (1)**
29:14
**start (2)**
8:19;14:13
**starting (2)**
7:9;38:7
**stated (2)**
16:10;18:15
**statement (6)**
16:3;20:3;22:8;
23:3;24:23;36:22
**statements (1)**
15:13
**STATES (7)**
4:20,21;6:3,11;

7:22,25;20:3
**status (1)**
11:2
**stay (10)**
6:17,21;12:10,13;
13:1;24:9;28:13,19;
32:24;34:8
**step (2)**
12:9;28:25
**still (2)**
7:1;14:22
**straightforward (1)**
22:10
**STRAUSS (3)**
4:11;7:20;14:20
**strike (4)**
13:18;24:23;32:12;
37:13
**struck (1)**
25:3
**stuff (4)**
13:22,24;29:23;
33:8
**subject (1)**
8:15
**submit (1)**
29:8
**substantive (1)**
33:22
**success (1)**
25:20
**successful (1)**
31:1
**sufficient (2)**
23:25;28:5
**suggest (1)**
31:15
**suggestion (1)**
38:12
**Suite (1)**
5:13
**sun (1)**
29:18
**superseded (1)**
14:16
**supplement (1)**
33:6
**supplemental (13)**
9:14;10:7,14,17,20;
11:14;13:12;14:17;
15:8;18:11;24:1,12;
37:4
**supposed (1)**
25:8
**sure (8)**
16:6;17:1;19:25;
22:20;35:5,6;36:11;
37:18
**surprise (2)**
11:8;13:25
**surprising (2)**
13:19;31:25
**suspect (1)**

32:7
**swear (1)**
20:14

## T

**tacks (1)**
23:2
**talk (4)**
9:18;10:11;13:23;
17:4
**talked (1)**
36:16
**talking (3)**
13:23;18:1;22:3
**tee (1)**
13:8
**teeth (1)**
18:7
**telling (2)**
27:11;35:4
**ten (1)**
29:13
**tend (1)**
23:7
**term (1)**
23:8
**terms (7)**
6:21;13:19;14:7;
15:14;30:9;31:18;
39:5
**that'll (1)**
25:3
**thee (1)**
17:23
**thereafter (1)**
23:20
**therefore (1)**
20:1
**thinking (2)**
25:2;38:4
**Third (7)**
5:4;12:19,21;17:18;
18:11;30:12;32:8
**third- (1)**
25:9
**third-party (10)**
19:1;24:16,17,24;
25:3,25;26:14;27:12;
32:7;37:13
**thought (8)**
10:8;11:18;12:25;
13:14;14:2;24:7;
32:15,21
**thread (1)**
29:1
**three (2)**
18:8;30:25
**thrilled (1)**
34:3
**throughout (1)**
14:25
**timeliness (1)**

23-12055-shl    Doc 132    Filed 02/19/24    Entered 03/01/24 11:39:06    Main Document
In the Matter of: RUDOLPH W. GIULIANI    Pg 48 of 48

February 16, 2024

30:17
**timely (1)**
22:25
**time-sensitive (2)**
25:19;31:16
**timing (1)**
34:9
**today (9)**
7:8;22:19;23:5;
25:4,21,23;28:8;33:8;
34:7
**today's (1)**
38:20
**together (1)**
13:12
**told (1)**
16:16
**ton (1)**
17:15
**took (2)**
13:5;30:13
**totally (1)**
29:6
**towards (1)**
14:6
**transparency (2)**
30:17;31:7
**treatment (1)**
19:22
**trial (1)**
35:17
**trust (2)**
16:17;37:6
**Trustee (3)**
4:21;7:25;38:18
**Trustee's (4)**
7:23;13:7,10;34:1
**trusts (2)**
24:3;25:11
**try (7)**
8:20;11:6;13:11,25;
22:14;30:11;34:2
**trying (10)**
9:8;11:8,8;12:3;
14:6;19:6,11;30:9;
31:24;38:8
**Tuesday (4)**
32:18,19,22;35:15
**turn (1)**
20:9
**turns (1)**
10:6
**tweaked (1)**
29:5
**twenty (1)**
11:15
**two (13)**
10:7;14:16;18:19;
22:10;24:16,25;
26:20;27:3;29:10;
30:7;32:6;33:3,6
**type (1)**
27:21

**typical (1)**
6:23

## U

**ultimately (1)**
29:11
**unanswered (1)**
15:5
**under (5)**
16:10;20:14;22:11;
29:18;36:6
**understands (1)**
19:2
**understood (3)**
19:24;24:10,23
**unequivocal (1)**
12:23
**unfortunately (2)**
14:22,25
**UNISON (1)**
39:7
**UNITED (6)**
4:20,21;6:3,10;
7:22,25
**unless (1)**
39:2
**unnecessary (1)**
30:12
**unpack (1)**
17:3
**Unsecured (1)**
4:12
**up (9)**
10:2;13:8,23;16:25;
24:21;25:18;28:20;
33:25;34:18
**upon (1)**
12:15
**urgency (1)**
9:16
**used (3)**
9:6,8;26:6

## V

**value (2)**
26:18;27:7
**various (4)**
6:16;23:23;24:2;
30:25
**verdict (1)**
36:4
**view (2)**
15:7;19:23
**virtue (2)**
8:23;11:21
**voluntarily (1)**
33:17

## W

**wait (1)**

38:10
**waiting (1)**
10:8
**wall (1)**
28:20
**Wandrea (1)**
4:3
**wants (1)**
37:21
**way (7)**
6:9;31:1,14;33:19,
20;34:20;36:14
**weaponized (1)**
9:6
**wear (1)**
34:5
**week (2)**
32:16;38:9
**well-worn (1)**
21:7
**weren't (1)**
20:1
**Wexler (2)**
7:12,15
**what's (7)**
9:11;11:19;19:22;
24:8;25:11;27:18;
36:15
**whenever (1)**
9:20
**Whereupon (1)**
39:8
**WILLKIE (2)**
4:2;8:4
**Wilshire (1)**
5:12
**wise (2)**
34:9;37:17
**wishes (1)**
8:7
**withdrawing (2)**
18:16,18
**within (5)**
13:14;18:13;28:16,
16;36:18
**without (3)**
24:19;29:6;32:2
**witness (3)**
21:20,20;22:8
**work (6)**
9:25;35:14,16,18,
19;38:16
**working (3)**
7:2;13:10;14:6
**works (3)**
31:10;32:10;38:18
**write (1)**
31:8
**written (1)**
12:20
**wrong (1)**
32:8

## Y

**year (1)**
15:23
**yesterday (2)**
11:2;22:20
**York (6)**
4:6,15,23;5:5;6:4,
11

## Z

**Zoom (1)**
16:23

## 1

**10:40 (2)**
10:13,20
**1000 (1)**
5:12
**10004 (1)**
4:23
**10019 (1)**
4:6
**10038 (1)**
4:15
**10158 (1)**
5:5
**11 (4)**
6:5,12;7:8;22:23
**116 (2)**
10:13;15:10
**117 (1)**
10:14
**12:03 (1)**
39:8
**13th (3)**
6:7,14,25
**14 (1)**
25:12
**14th (3)**
7:1,3;9:17
**1500 (1)**
5:13
**18 (4)**
24:12;26:1;27:7;
32:6

## 2

**2 (1)**
34:14
**2004 (3)**
23:7;30:5;33:18
**20th (8)**
6:19;9:13;12:7;
25:22;32:16;34:11;
37:25;38:2
**26th (1)**
38:7
**29th (1)**

38:3

## 3

**3 (1)**
34:14
**30th (1)**
6:18
**31st (3)**
9:15;13:22;30:24
**341 (1)**
16:9

## 5

**50,000 (2)**
24:3;26:7
**59 (1)**
36:1
**5th (1)**
38:13

## 6

**605 (1)**
5:4

## 7

**787 (1)**
4:5

## 9

**9 (1)**
10:4
**9:30 (1)**
15:10
**9:33 (2)**
10:13,16
**90017 (1)**
5:14