**Hearing Date and Time: April 4, 2024 at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline: March 28, 2024 at 4:00 p.m. (prevailing Eastern Time)**

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

*Proposed Counsel to the Official Committee*
*of Unsecured Creditors of Rudolph W. Giuliani*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **RUDOLPH W. GIULIANI** | : | **Case No. 23-12055 (SHL)** |
| **a/k/a RUDOLPH WILLIAM GIULIANI,** | : | |
| | : | |
| **Debtor.** | : | |

------------------------------------------------------------x

## NOTICE OF HEARING
## ON MOTION OF THE OFFICIAL
## COMMITTEE OF UNSECURED CREDITORS FOR THE
## ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY CODE
## SECTION 105 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE
## 2004 AUTHORIZING DISCOVERY OF THE DEBTOR AND THIRD PARTIES

**PLEASE TAKE NOTICE** that on March 7, 2024, the Official Committee of Unsecured

Creditors (the "Committee") appointed in the chapter 11 case of the above-captioned debtor (the

"Debtor") filed the *Motion of the Official Committee of Unsecured Creditors for the Entry of an*

*Order Pursuant to Bankruptcy Code Section 105 and Federal Rule of Bankruptcy Procedure 2004*

*Authorizing Discovery of the Debtor and Third Parties* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Motion (the "Hearing") will be held before the Honorable Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York (the "Court"), 300 Quarropas Street, White Plains, New York 10601, on **April 4, 2024 at 2:00 p.m. (prevailing Eastern Time)**. Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, must make an electronic appearance (an "eCourt Appearance") through the Court's website at *https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl*. eCourt Appearances must be made by **April 3, 2024 at 4:00 p.m. (prevailing Eastern Time).**

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of this chapter 11 case by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at *http://www.nysb.uscourts.gov*); and (d) be served so as to be actually received by the Court and the Committee no later than **March 28, 2024 at 4:00 p.m. (prevailing Eastern Time).**

**PEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Motion, or if you want the Court to hear your position on the Motion, then you or your attorney must attend the Hearing. If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Motion and may enter an order granting the relief requested by the Committee. If no responses or objections are timely filed and served

with respect to the Motion, the Committee may submit to the Court an order substantially in the form of the proposed order attached to the Motion as **Exhibit A**, which order may be entered with no further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in this chapter 11 case may be obtained by visiting the Court's website at *http://www.nysb.uscourts.gov* in accordance with the procedures and fees set forth therein.

Dated: March 7, 2024
   New York, New York

By: */s/ Philip C. Dublin*
   **AKIN GUMP STRAUSS HAUER & FELD LLP**
   Ira S. Dizengoff
   Philip C. Dublin
   Abid Qureshi
   One Bryant Park
   New York, New York 10036
   Tel:    (212) 872-1000
   Fax:    (212) 872-1002
   Email:  idizengoff@akingump.com
            pdublin@akingump.com
            aqureshi@akingump.com

   - and -

   Rachel Biblo Block (admitted *pro hac vice*)
   2300 N. Field St., Suite 1800
   Dallas, Texas 75201
   Tel:    (214) 969-2800
   Fax:    (214) 969-4343
   Email:  rbibloblock@akingump.com

   *Proposed Counsel to the Official Committee*
   *of Unsecured Creditors of Rudolph W. Giuliani*

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

*Proposed Counsel to the Official Committee
of Unsecured Creditors of Rudolph W. Giuliani*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **RUDOLPH W. GIULIANI** | : | **Case No. 23-12055 (SHL)** |
| **a/k/a RUDOLPH WILLIAM GIULIANI,** | : | |
| | : | |
| **Debtor.** | : | |

-------------------------------------------------------------x

**MOTION OF THE OFFICIAL
COMMITTEE OF UNSECURED
CREDITORS FOR THE ENTRY OF AN ORDER
PURSUANT TO BANKRUPTCY CODE SECTION 105
AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004
<u>AUTHORIZING DISCOVERY OF THE DEBTOR AND THIRD PARTIES</u>**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

JURISDICTION AND VENUE ...................................................................................................3

RELEVANT BACKGROUND .....................................................................................................3

    A.      General Background ....................................................................................3

    B.      The Freeman Litigation.............................................................................4

    C.      The Giuliani Businesses.............................................................................7

    D.      Giuliani's Substantial Additional Liabilities.............................................8

    E.      Giuliani Legal Funds...............................................................................10

RELIEF REQUESTED.................................................................................................................10

BASIS FOR RELIEF....................................................................................................................16

    A.      The Committee is Entitled to Discovery under Rule 2004. .....................16

    B.      The Debtor's Extensive History of Discovery Misconduct Necessitates
               Formal Rule 2004 Discovery Procedures ...............................................18

MOTION PRACTICE ..................................................................................................................19

NOTICE........................................................................................................................................19

NO PRIOR REQUEST ................................................................................................................20

RESERVATION OF RIGHTS .....................................................................................................20

CONCLUSION..............................................................................................................................20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Drexel Burnham Lambert Grp., Inc.*,
    123 B.R. 702 (Bankr. S.D.N.Y. 1991) ................................................................17

*In re Ecam Publ'ns, Inc.*,
    131 B.R. 556 (Bankr. S.D.N.Y. 1991) ................................................................17

*In re Hughes*,
    281 B.R. 224 (Bankr. S.D.N.Y. 2002) ................................................................16

*In re Madison Williams & Co., LLC*,
    No. 11-15896, 2014 WL 56070 (Bankr. S.D.N.Y. Jan. 7, 2014) ...........................16

*In re Recoton Corp.*,
    307 B.R. 751 (Bankr. S.D.N.Y. 2004) ....................................................16, 17, 18

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re: Bernard L. Madoff)*, No. 09-11893, 2014 WL 5486279 (Bankr. S.D.N.Y. 2014) ......................................16

**Statutes**

28 U.S.C. § 105 ............................................................................................................3

28 U.S.C. § 157 ............................................................................................................3

28 U.S.C. § 1103 ........................................................................................................17

28 U.S.C. § 1107 ..........................................................................................................4

28 U.S.C. § 1108 ..........................................................................................................4

28 U.S.C. § 1334 ..........................................................................................................3

28 U.S.C. § 1408 ..........................................................................................................3

28 U.S.C. § 1409 ..........................................................................................................3

**Other Authorities**

Rule 2004 ............................................................................................................. passim

Local Bankruptcy Rule 9013-1(a) ..............................................................................19

ii

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of Rudolph W. Giuliani a/k/a Rudolph William Giuliani ("Giuliani" or the "Debtor"), by and through its undersigned proposed counsel, hereby submits this motion (the "Motion") for entry of an order authorizing the Committee to conduct an examination of, and seek discovery from, the Debtor, his businesses, his advisors and other relevant third parties pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"). In support of this Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Pursuant to Rule 2004, the Committee seeks to take discovery of the Debtor, his businesses, his advisors and certain additional relevant parties in connection with the Committee's investigation into the assets, liabilities and financial condition of the Debtor and in connection with certain prepetition conduct that the Committee believes may give rise to material claims and causes of action in favor of the Debtor's estate.

2.      Consistent with its fiduciary obligations to the Debtor's unsecured creditors and its statutory duty to "investigate the acts, conduct, assets, liabilities, and financial condition" of the Debtor, the Committee is currently examining, among other things, Giuliani's financial condition and assets, the circumstances leading to Giuliani's commencement of the above-captioned chapter 11 case (the "Chapter 11 Case"),[1] the extent of Giuliani's prepetition liabilities, and potential claims or causes of action that may exist for the benefit of the Debtor's estate.

3.      As illustrated by Giuliani's "willful shirking of his discovery obligations" in recent prepetition litigation, substantial doubt exists as to Giuliani's willingness and ability to comply

---

[1]      Unless otherwise indicated, references to "ECF No." refer to filings in the Chapter 11 Case. References to "Freeman ECF No." refer to filings in *Freeman et al. v. Giuliani*, United States District Court for the District of Columbia, Case No. 1:21-cv-03354-BAH (the "Freeman Litigation").

fully with his disclosure obligations in the Chapter 11 Case.[2]  Indeed, it was Giuliani's discovery misconduct in the Freeman Litigation—concerning Giuliani's defamatory statements about two Georgia 2020 election workers—that led U.S. District Court Judge Beryl A. Howell to enter a $148 million default judgment against Giuliani.  Judge Howell found Giuliani's misconduct in the Freeman Litigation so egregious that she further ordered immediate dissolution of the automatic thirty-day stay of enforcement of the judgment, allowing the plaintiffs in the Freeman Litigation to take immediate steps to enforce the judgment.  As Judge Howell stated in her memorandum and order lifting the stay of enforcement, "several considerations make clear the risk that Giuliani may attempt to 'conceal and dissipate [his] assets' during the thirty-day period."[3]

4.      Chief among Judge Howell's concerns were Giuliani's demonstrated inability to conduct himself as a cooperative litigant in the Freeman Litigation and Giuliani's substantial actual and potential liabilities resulting from his prepetition misconduct, including without limitation the $148 million Freeman Litigation judgment.  Those concerns persist in the Chapter 11 Case.

5.      In addition to the judgment entered in the Freeman Litigation, Giuliani is currently the subject of at least nine additional pending litigations or outstanding judgments.[4]  In the Chapter 11 Case, Giuliani has alleged that he has approximately $10.6 million of assets, which amount is dwarfed by nearly $153 million in liabilities.  Given the magnitude of these liabilities—and considering the pending lawsuits against Giuliani and his businesses seek upwards of $4 billion in damages—Giuliani has substantial motivation to continue his historical pattern of financial obfuscation and discovery misconduct.

---

[2]    *Memorandum Opinion Regarding Plaintiffs' Motion for Sanctions* (filed Aug. 30, 2023), [Freeman ECF No. 94] at *5.

[3]    *Memorandum and Order Granting Plaintiffs' Motion to Dissolve Stay of Execution and for Leave to Register Judgment in Any Other District* (filed Dec. 20, 2023), [Freeman ECF No. 144] at *7.

[4]    *Statement of Financial Affairs for Individuals Filing for Bankruptcy* (filed Jan. 26, 2024), [ECF No. 73] at *3-4.

6.      Accordingly, the Committee believes that obtaining formal authority to conduct this investigation and pursue documents and information from the Debtor, his businesses, his advisors and other relevant parties identified in this Motion is necessary to carry out the Committee's obligations in the Chapter 11 Case in a timely and effective manner.  As such, Rule 2004 discovery is warranted at this juncture.[5]

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

8.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

9.      The bases for the relief requested herein are section 105 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2004.

## RELEVANT BACKGROUND

**A.      General Background**

10.     Giuliani is an American lawyer and politician who served as mayor of New York City from 1994 through 2001.[6]  More recently, Giuliani advised former President Donald Trump during his 2016 campaign and early administration, before joining former President Trump's personal legal team in April 2018.[7]  Giuliani's conduct as Trump's attorney—in particular, his involvement in former President Trump's efforts to overturn the results of the 2020 presidential election—has been the subject of various recent lawsuits, including the Freeman Litigation and

---

[5]    Prior to filing the Motion, the Committee's counsel provided a draft of the Motion to the Debtor's counsel and offered to meet and confer prior to the objection deadline to address any specific concerns.

[6]    *Rudy Giuliani*, BRITANNICA, https://www.britannica.com/biography/Rudy-Giuliani (last accessed February 22, 2024).

[7]    *Id.*

3

criminal proceedings in Georgia alleging Giuliani "spearheaded" Trump's effort to "challenge the election results," despite knowing that Biden had won.[8]

11.     On December 21, 2023, just days after the entry of a $148 million default judgment in the Freeman Litigation, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Giuliani claims an estimated $10.6 million in assets as compared to at least $153 million in liabilities and multiple potentially significant additional contingent liabilities in other pending civil suits.[9]

12.     The Debtor has continued in possession of his property and is managing his affairs as a debtor and debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No request for the appointment of a trustee or examiner has been made in this Chapter 11 Case.

13.     On January 12, 2024, the Committee was appointed by the United States Trustee.[10] On January 16, 2024, the Committee selected Akin Gump Strauss Hauer & Feld LLP as its proposed counsel.  On February 9, 2024, the Committee selected Global Data Risk LLC as its proposed specialized forensic financial advisor.

**B.     The Freeman Litigation**

14.     On December 21, 2021, Ms. Ruby Freeman ("Ms. Freeman") and Ms. Wandrea' ArShaye "Shaye" Moss ("Ms. Moss") commenced the Freeman Litigation in the United States District Court for the District of Columbia (the "District Court") against Giuliani, One America

---

[8]     Indictment, *United States v. Trump*, Case No. 1:23-cr-00257-TSC, (D.D.C. August 1, 2023) [ECF No. 1], at *9; Adam Rawnsley, *Rudy Giuliani Is Trump's 'Co-Conspirator 1' in Jan. 6 Indictment*, ROLLING STONE: POLITICS (August 1, 2023), https://www.rollingstone.com/politics/politics-features/rudy-giuliani-donald-trump-jan6-indictment-coconspirator-1234799169/.

[9]     *Chapter 11 Voluntary Petition for Individual* (filed Dec. 21, 2023), [ECF No. 1] (the "Petition"); *Individual Schedules A/B, C, I, & J* (filed Jan. 26, 2024), [ECF No. 70]; *Summary of Assets and Liabilities Schedules - Individual* (filed Jan. 26, 2024), [ECF No. 71]; *Amended Individual Schedules D & E/F* (filed Feb. 5, 2024), [ECF No. 100]; *Amended Individual Schedules A/B & G* (filed Feb. 27, 2024) [ECF No. 129].

[10]    *Notice of Appointment of Official Committee of Unsecured Creditors* (filed Jan. 12, 2024), [ECF No. 46].

News Network ("OAN") and OAN's agents for their defamatory statements about Ms. Freeman and Ms. Moss.[11]  Giuliani and OAN made and disseminated a number of false statements—including after those statements had been publicly and officially debunked—about Ms. Freeman and Ms. Moss with respect to their role as election workers in the 2020 presidential election.[12] Among other platforms, Giuliani made these statements on his *Common Sense* podcast.[13]

15.     As the Freeman Litigation progressed, Giuliani failed to comply with his discovery obligations.  Ultimately, following discovery conferences and hearings before the District Court that failed to elicit Giuliani's production of responsive documents, Ms. Freeman and Ms. Moss filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 37.[14]

16.     In response to this development, rather than producing evidence or explaining his conduct, Giuliani submitted two personally executed, but unsworn, stipulations riddled with qualifications and reservations of rights, which admitted, purportedly only for purposes of the Freeman Litigation, liability on the factual elements of Ms. Freeman's and Ms. Moss's claims and their entitlement to punitive damages.[15]

17.     On August 30, 2023, the District Court ordered that default judgment be entered against Giuliani as a "death penalty" discovery sanction pursuant to Federal Rules of Civil Procedure 37(e)(2)(C) and 37(b)(2)(A)(vi), holding him civilly liable on Ms. Freeman's and Ms.

---

[11]    *Complaint* (filed Dec. 23, 2021), [Freeman ECF No. 1] (the "Freeman Complaint").

[12]    *Id.*; *Giuliani Stipulation, Response to Motion for Sanctions for Failure to Preserve Electronic Evidence*, Exhibit 2 (filed July 25, 2023), [Freeman ECF No. 84-2].

[13]    Freeman Complaint ¶¶ 91-95, 101-104.

[14]    *Plaintiffs' Motion for Discovery Sanctions Against Defendant Giuliani for Failure to Preserve Electronic Evidence* (filed July 11, 2023), [Freeman ECF No. 81].

[15]    *Memorandum Opinion Regarding Plaintiffs' Motion for Sanctions* (filed Aug. 30, 2023), [Freeman ECF No. 94] at *23.

Moss's claims for defamation, intentional infliction of emotional distress, civil conspiracy and punitive damages.[16]

18.    Following entry of the District Court's order, the Freeman Litigation proceeded to trial on the issue of damages, and, on December 15, 2023, the jury returned a verdict awarding Ms. Freeman and Ms. Moss approximately $148 million in compensatory and punitive damages.[17]

19.    On December 18, 2023, Ms. Freeman, Ms. Moss and Giuliani entered a *Joint Stipulation Regarding Entry of Final Judgment* [Freeman ECF No. 138], which set forth the parties' agreement on declaratory relief to be entered by the District Court.  Also on December 18, 2023, Ms. Freeman and Ms. Moss filed a motion for leave to dissolve the automatic thirty-day stay of execution on the judgment and for authority to immediately register the final judgment in any other judicial district.[18]  Later that same day, the District Court entered the judgment in the total amount of $146,206,113.00 plus post-judgment interest.[19]

20.    On December 20, 2023, the D.C. Court entered an order granting Ms. Moss and Ms. Freeman leave to register the Freeman Litigation judgment in any district and lifting the thirty-day automatic stay of execution of collection as result of the substantial concerns existing as to potential dissipation and obfuscation of Giuliani's assets.[20]  Giuliani filed the Chapter 11 Case the following day.

---

[16]    *Order Granting Plaintiffs' Motion for Sanctions* (filed Aug. 30, 2023), [Freeman ECF No. 93]; *Memorandum Opinion Regarding Plaintiffs' Motion for Sanctions* (filed Aug. 30, 2023), [Freeman ECF No. 94].

[17]    *Jury Verdict Form* (filed Dec. 15, 2023), [Freeman ECF No. 135].

[18]    *Plaintiffs' Motion to Dissolve Stay of Execution* (filed Dec. 18, 2023), [Freeman ECF No. 139].

[19]    *Final Judgment* (filed Dec. 18, 2023), [Freeman ECF No. 142].

[20]    *Memorandum and Order Granting Plaintiffs' Motion to Dissolve Stay of Execution and for Leave to Register Judgment in Any Other District* (filed Dec. 20, 2023), [Freeman ECF No. 144].

C.     **The Giuliani Businesses**

21.     Throughout the Freeman Litigation, Giuliani has consistently resisted inquiry into the structure of his financial affairs, including that of his multiple businesses.  Giuliani owns and operates a number of businesses—Giuliani Partners, LLC ("Giuliani Partners"); Giuliani Communications, LLC, previously known as Giuliani Media, LLC ("Giuliani Communications"); Giuliani Security & Safety, LLC ("Giuliani Security"); Giuliani Group, LLC ("Giuliani Group"); Giuliani & Company LLC ("Giuliani & Co."); and Rudolph W. Giuliani PLLC (collectively, the "Giuliani Businesses").

22.     Although Ms. Freeman and Ms. Moss properly served Giuliani Partners and Giuliani Communications via their registered agents with document and deposition subpoenas, those subpoenas remained unanswered for over a month past their deadlines with no communication from representatives of either Giuliani Communications or Giuliani Partners.[21]  To date, little is known about the structure of Giuliani Communications and Giuliani Partners, their financial conditions or their precise business relationships to Giuliani.

23.     Further, Giuliani Security and Giuliani Group, alongside Giuliani and others, are named defendants in various prepetition litigations which may result in substantial additional liabilities, as described *supra*.

24.     Upon information and belief, Giuliani & Co.—of which Giuliani claims a 100% interest—operates as holding company for several of the Giuliani Businesses.[22]  Further, upon information and belief, Giuliani, Giuliani & Co., Giuliani Group and other of the Giuliani

---

[21]   *Memorandum Opinion Regarding Plaintiffs' Motion for Sanctions* (filed Aug. 30, 2023) [Freeman ECF No. 94] at *20-21.

[22]   Mary Jacoby, *Qatar Contract Offers Glimpse Into Giuliani Firm*, WALL STREET JOURNAL (Nov. 7, 2007), https://www.wsj.com/articles/SB119440640166884884; *Periodic Report Regarding Value, Operations and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest* (filed Jan. 30, 2024), [ECF No. 81].

Businesses commingle their assets, disregard corporate formalities and operate as a single enterprise at the direction of Giuliani.[23] According to Giuliani's *Periodic Report Regarding Value, Operations and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest* [ECF No. 81] (the "Periodic Report"), the Giuliani Businesses have engaged in substantial intercompany transfers throughout the year prior to the Chapter 11 Case.

25.     Beyond their involvement in prepetition conduct giving rise to significant actual and potential liabilities, the Giuliani Businesses generate income that constitutes a substantial portion of Giuliani's self-reported income.  Because the Giuliani Businesses are privately held by Giuliani, and in light of Giuliani's refusal to comply with his discovery obligations in prepetition litigation, Rule 2004 discovery is necessary to determine the value of the Giuliani Businesses for the Debtor's estate.  Moreover, the Debtor has testified that he "paid a lot of business expenses. Always have because they're my businesses. I pay them out of my personal account. And I'm really not good about getting reimbursement for them because they were my businesses."[24]  These transfers and commingling of funds between the Debtor and the Giuliani Businesses further necessitate the Committee's investigation and Rule 2004 discovery.

**D.      Giuliani's Substantial Additional Liabilities**

26.     In his chapter 11 petition, Giuliani reports some $153 million in total liabilities, including the $148 million judgment in the Freeman Litigation.[25]  Of that sum, all but one of the claims are unsecured, and the vast majority result from litigation judgments.[26]

---

[23]    *See Complaint*, *Biden v. Giuliani*, Case No. 2:23-cv-08032, (filed Sept. 6, 2023) [ECF No. 1] ¶ 15.

[24]    *Transcript of Debtor's February 7, 2024 Section 341 Meeting* at 138:1-4.

[25]    *Chapter 11 Voluntary Petition for Individual* (filed Dec. 21, 2023), [ECF No. 1].

[26]    *Individual Schedules A/B, C, I, & J* (filed Jan. 26, 2024), [ECF No. 70]; *Summary of Assets and Liabilities Schedules – Individual* (filed Jan. 26, 2024), [ECF No. 71]; *Amended Individual Schedules D & E/F* (filed Feb. 5, 2024), [ECF No. 100] at *6.

27.     Beyond the Freeman Litigation judgment and other known liabilities such as Giuliani's unpaid taxes and legal fees, Giuliani includes additional, potentially substantial, contingent liabilities in his chapter 11 petition. Among others, U.S. Dominion and Smartmatic—two voting machine companies harmed by Giuliani's statements about the 2020 election—are pursuing damages in the amounts of $1.3 billion and $2.7 billion, respectively, in their own litigations against Giuliani.[27]

28.     Giuliani's former employee, Noelle Dunphy, is also seeking $10 million in damages in litigation pending against Giuliani, Giuliani Partners, Giuliani Group, and Giuliani Security for, among other causes of action, sexual assault, battery and unpaid wages experienced in the course of her employment by Giuliani and Giuliani Partners (the "Dunphy Litigation").[28]

29.     Likewise, Robert Hunter Biden has filed suit against Giuliani, Giuliani Partners, Giuliani Group, Giuliani Security, and Giuliani's counsel Robert J. Costello for violations of federal and state computer fraud and abuse statutes and for unfair competition via their alleged unauthorized access to, and dissemination of, Biden's private digital data (the "Biden Litigation").[29] Among other allegations, Biden asserts that Giuliani made numerous inculpating statements on the *Common Sense* podcast. Damages in the Biden Litigation are yet to be determined.

---

[27]   *US Dominion, Inc., et al. v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-00213-CJN; *Smartmatic USA Corp. et al v Fox Corp. et al*, New York State Supreme Court, New York County, No. 151136/2021.

[28]   *Dunphy vs. Giuliani, et al.*, New York Supreme Court, Index No. 650033 / 2023.

[29]   *Biden v. Giuliani*, United States District Court for the District of Columbia, No. 2:23-cv-08032.

30.    As noted by Judge Howell in her decision to lift the stay of enforcement in the Freeman Litigation, these contingent liabilities further increase the likelihood that Giuliani may obfuscate assets and indeed increase his motivation to do so.[30]

### E.    Giuliani Legal Funds

31.    Giuliani has received substantial monetary support from at least two legal defense funds—The Rudy Giuliani Freedom Fund Legal Defense Trust Fund (the "Giuliani Freedom Fund") and Giuliani Defense—in defending various prepetition litigation, including the Freeman Litigation and Biden Litigation.  To date, the origin of these funds, the relationships between Giuliani and the donors of those funds, and any historical relationship between those assets and the assets of Giuliani or the Giuliani Businesses have not been sufficiently disclosed.

### RELIEF REQUESTED

32.    The Committee respectfully requests that the Court enter an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the Committee to (i) serve documents requests/subpoenas ("Requests") on, and (ii) take depositions of, the Debtor and representatives of, the Debtor, his businesses, his advisors and employees and any other entities or individuals involved in, or having knowledge of, the Debtor's relevant prepetition conduct, assets and finances, including without limitation:[31]

      i.   Giuliani Partners:  Giuliani Partners is a consulting firm formed by Giuliani in 2001.  Beyond its involvement in prepetition conduct giving rise to significant actual and contingent litigation liabilities, including without limitation in the Freeman Litigation and the Biden Litigation, Giuliani Partners is named in multiple prepetition litigations as described *infra*, and, upon information and

---

[30]    *See Memorandum and Order Granting Plaintiffs' Motion to Dissolve Stay of Execution and for Leave to Register Judgment in Any Other District* (filed Dec. 20, 2023), [Freeman ECF No. 144].

[31]    As noted above, the Committee is in the initial stages of its investigation and bases its requests on the information currently available to it.  The Committee reserves all of its rights to serve additional requests in the course of its investigation and to propound discovery in connection with any other matter that may arise in the Chapter 11 Case.

belief, constitutes a significant source of Giuliani's income. Per Giuliani's Periodic Report, Giuliani owns 100% of Giuliani Partners.

ii.   <u>Giuliani Communications</u>: Per Giuliani's testimony in the Freeman Litigation, Giuliani Communications owns the *Common Sense* podcast, which is disseminated to "over a million people" and from which he derives revenue on a "per-view" basis.[32] Accordingly, understanding the structure of Giuliani Communications and its relationship to Giuliani is critical to understanding Giuliani's financial condition. Further, as noted *infra*, Giuliani made a number of false and defamatory statements about Ms. Freeman and Ms. Moss on the *Common Sense* podcast, as well as several statements relevant to the Biden Litigation. Further, per Schedule A/B of Giuliani's *Individual Schedules A/B, C, I, & J* [ECF No. 70] ("<u>Schedule A/B</u>"), filed January 26, 2024, Giuliani has a 100% ownership interest in Giuliani Communications.

iii.  <u>Giuliani Security</u>: Upon information and belief, Giuliani utilized Giuliani Security in prepetition misconduct leading to substantial potential liabilities and receives income from Giuliani Security. Specifically, Giuliani Security is a named defendant in both the Dunphy Litigation and the Biden Litigation. Per Giuliani's Periodic Report, Giuliani owns 100% of Giuliani Security.

iv.   <u>Giuliani Group</u>: Upon information and belief, Giuliani utilized Giuliani Group in various courses of prepetition conduct that may have resulted in substantial liability for Giuliani. Specifically, Giuliani Group is a named defendant in the Dunphy Litigation and the Biden Litigation.[33] Further, upon information and belief, Giuliani Group operates with other of the Giuliani Businesses as a single enterprise at the direction of Giuliani.[34] Per Giuliani's Periodic Report, Giuliani owns 100% of Giuliani Group.

v.    <u>Giuliani & Co.</u>: Per Giuliani's Schedule A/B, Giuliani has a 100% ownership interest in Giuliani & Co. Upon information and belief, Giuliani & Co. operates as the holding company for several of the Giuliani Businesses, and Giuliani derives a substantial portion of his income therefrom.

vi.   <u>Rudolph W. Giuliani PLLC</u>: Upon information and belief, Giuliani has established a professional legal corporation named Rudolph W. Giuliani PLLC for the purpose of receiving income from his legal representations.

vii.  <u>WorldCapital Payroll Corporation</u> ("<u>WorldCapital</u>"): Upon information and belief, Giuliani has utilized WorldCapital to structure his and his businesses' financial dealings, including to fulfill payroll for the Giuliani Businesses.

---

[32]  *Revised Plaintiffs' Motion to Compel Giuliani Partners and Giuliani Communications to Respond to Plaintiffs' Properly Served Rule 45 Subpoenas and Rule 30(b)(6) Deposition Subpoenas* (filed June 22, 2023), [Freeman ECF No. 70] at 3.

[33]  *Dunphy vs. Giuliani, et al.*, New York Supreme Court, Index No. 650033 / 2023; *Biden v. Giuliani*, United States District Court for the District of Columbia, No. 2:23-cv-08032.

[34]  Complaint, *Biden v. Giuliani*, Case No. 2:23-cv-08032, (D.D.C. September 6, 2023) [ECF No. 1] at ¶ 15.

Further, per Schedule A/B, Giuliani has a 100% ownership interest in WorldCapital Payroll.

viii.   Giuliani Freedom Fund: Per recent filings, Giuliani Freedom Fund has paid upwards of $670,000 in legal fees on Giuliani's behalf.[35] These funds from unidentified donors are a significant source of value for the Debtor, and Giuliani's counsel has declined to disclose information regarding those donors to the Committee.

ix.   Giuliani Defense: Per recent filings, Giuliani Defense has paid upwards of $560,000 in legal fees on Giuliani's behalf.[36] These funds are a significant source of value for the Debtor, and contributions to Giuliani Defense after December 31, 2023 have not been disclosed and contributions dating before December 31, 2023 have been disclosed but appear to contain a number of mistakes.[37]

x.   Robert Kiger ("Kiger"): Per filings with the Federal Election Commission, Kiger serves as Treasurer for Giuliani Defense.[38]

xi.   Andrew Giuliani: Andrew Giuliani founded and now currently serves as designated agent for Giuliani Defense.[39]

xii.   Jake Menges ("Menges"): Menges serves as Trustee of Giuliani Freedom Fund and is, according to Giuliani, a "close friend and associate."[40]

xiii.   Maria Ryan ("Ryan"): Giuliani has identified Ryan as "president of Giuliani Communications," the producer of *Common Sense* who "oversees the advertisers" and "runs the podcast operation," and as having also worked for Giuliani Partners.[41] According to counsel for Giuliani, Ryan is the "only remaining employee with a Giuliani partners email."[42] Further, upon

---

[35] *Debtor's Amended Application for Retention and Employment of Aidala, Bertuna & Kamins, P.C. as Special Counsel* (filed Jan. 29, 2024), [ECF No.77-2]; *Debtor's Amended Application for Retention and Employment of Camara Sibley, LLC as Special Litigation Counsel* (filed Jan. 30, 2024), [ECF No. 87]; *Retention Application to Employ Berger, Fischoff, Shumer, Wexler & Goodman, LLP as Counsel* (filed Jan. 30, 2024), [ECF No. 90].

[36] *See* Giuliani Defense FEC Form 3X: Summary Page, FEDERAL ELECTION COMMISSION, [Filing No. FEC-1745830], https://docquery.fec.gov/cgi-bin/forms/C00847327/1745830/sb/ALL (last accessed Feb. 27, 2024).

[37] *See* Giuliani Defense FEC Form 3X: Schedule A, FEDERAL ELECTION COMMISSION, [Filing No. FEC-1745830], https://docquery.fec.gov/cgi-bin/forms/C00847327/1745830/sa/ALL (last accessed Feb. 28, 2024) (listing "Garyn Borland" as a contributor, but, upon information and belief, the donor is Caryn Borland and listing "James Liautuo" as a contributor, but, upon information and belief, the donor is James Liautaud).

[38] *See* Giuliani Defense FEC Form 3X: Schedule B, FEDERAL ELECTION COMMISSION, [Filing No. FEC-1745830], https://docquery.fec.gov/cgi-bin/forms/C00847327/1745830/#SUMMARY (last accessed Feb. 27, 2024).

[39] *Transcript of Debtor's February 7, 2024 Section 341 Meeting* at 111:24-112:11, 113:1-7.

[40] *Id.* at 113:5-6.

[41] *Revised Plaintiffs' Motion to Compel Giuliani Partners and Giuliani Communications to Respond to Plaintiffs' Properly Served Rule 45 Subpoenas and Rule 30(b)(6) Deposition Subpoenas* (filed June 22, 2023), [Freeman ECF No. 70] at 3.

[42] *Id.*

12

information and belief, Ryan may have received significant gifts from Giuliani, including in the days leading up to the filing of this Chapter 11 Case.

xiv.    Ryan Medrano ("Medrano"): According to Giuliani's *Amended Statement of Financial Affairs* [ECF No. 99] (the "Amended Statement"), Medrano serves as bookkeeper for Giuliani Communications, Giuliani & Co. and WorldCapital.

xv.    Joseph Ricci ("Ricci"): According to Giuliani's Amended Statement, Ricci serves as a Certified Public Accountant for Giuliani Communications, Giuliani & Co. and WorldCapital.  Further, Ricci signed, as the "Responsible Party," Giuliani's December and January monthly operating reports.[43]

xvi.    Ted Goodman ("Goodman"): Goodman is employed by one or more of the Giuliani Businesses and serves as spokesperson for the Giuliani Businesses and for Giuliani personally.  Upon information and belief, Goodman provides tech services to Giuliani and his businesses, appears on Giuliani's live videocasts and has firsthand knowledge of the Giuliani Businesses and Giuliani's financial condition.  Goodman was present at Giuliani's 341 meeting on February 7, 2024.[44]

xvii.    Michael Ragusa ("Ragusa"): Ragusa is employed by one or more of the Giuliani Businesses as a physical security person for Giuliani.  As such, upon information and belief, Ragusa has had extensive exposure to Giuliani's personal affairs and information about his financial condition.

33.    Attached hereto as **Exhibit B** are the proposed Requests to the Debtor.  Attached hereto as **Exhibit C** is an illustrative example of Requests that will be propounded on the non-Debtor parties and tailored based on the nature of a party's relationship with the Debtor.

34.    Through its investigation, the Committee expects to identify additional parties who may possess information necessary to the investigation.  For that reason, the Proposed Order grants the Committee the ability to seek discovery from parties not yet identified, subject of course to the ability of those parties to object to the extent the discovery does not proceed consensually.

---

[43]    *See Chapter 11 Monthly Operating Report for the Month Ending: 12/31/2023* (filed Jan. 24, 2024), [ECF No. 80]; *Chapter 11 Monthly Operating Report for the Month Ending: 1/31/2024* (filed Feb. 23, 2024), [ECF No. 127].

[44]    *Transcript of Debtor's February 7, 2024 Section 341 Meeting* at 20:1-21.

35.     As his conduct during the Freeman Litigation makes clear, Giuliani has been unwilling or otherwise unable to comply with his discovery obligations and possesses substantial motivation to obfuscate and dissipate assets.  Further, to date in the Chapter 11 Case, Giuliani and his counsel have been, at best, slow to respond to requests by the Committee to obtain documents and information regarding Giuliani's assets and financial condition, and his financial disclosures to date in the instant case have been, at best, insufficient.  For example, Giuliani has been paying business credit card bills and expenses, as well as expenses of his employees, including Ryan, out of estate assets in violation of the Bankruptcy Code and without fully disclosing the same in his monthly operating reports.[45]

36.     Further, even where assets *are* disclosed in Giuliani's filings, those disclosures are incomplete or otherwise inconsistent.  Giuliani discloses lumped categories of assets such as "television etc...," without sufficient itemization.[46]  Similarly, the values listed for certain categories—such as "Jewelry," which includes among other items, a "diamond ring, 3 yankee world series rings," and 26 luxury watches—are insufficiently itemized and appear to be undervalued.[47]  Giuliani claims a total value of $30,000 for this jewelry; yet a single World Series ring may be valued at upwards of $15,000 in its own right.[48]  Likewise, Giuliani vaguely discloses

---

[45]  *See Transcript of Debtor's February 7, 2024 Section 341 Meeting* at 137:4-138:22; Delta SkyMiles Gold Card Credit Card Statement for Maria Ryan for the period closing January 26, 2024, informally produced to the Committee; *Chapter 11 Monthly Operating Report for the Month Ending: 12/31/2023* (filed Jan. 24, 2024), [ECF No. 80]; *Chapter 11 Monthly Operating Report for the Month Ending: 1/31/2024* (filed Feb. 23, 2024), [ECF No. 127].

[46]  *Amended Individual Schedules A/B & G* (filed Feb. 27, 2024) [ECF No. 129] at 3.

[47]  *Id.*

[48]  *Id.*; *see* Mint Condition New York Yankees 2000 World Series Championship 14k Gold Diamond Ring Size 11.75,  LIVEAUCTIONEERS,  https://www.liveauctioneers.com/price-result/mint-condition-new-york-yankees-2000-world-series-championship-14k-gold-diamond-ring-size-1175/ (showing median sale price of $15,500).

"Uber shares"—with no information as to present value, basis, location of those assets, or even the number of shares.[49]  Even the address of Giuliani's Florida property is listed incorrectly.[50]

37.     Additionally, despite repeated requests for information to address Giuliani's deficient filings, Giuliani and his counsel have taken days to respond, and where they do respond with information, such information leads only to more questions and issues.  In response to information obtained outside of Giuliani's disclosures in the Chapter 11 Case, the Committee's counsel approached Giuliani's counsel regarding a publishing contract that he failed to list in his original schedules.  Initially, Giuliani's counsel relayed that no such contract exists, but later, Giuliani filed an amended schedule listing the publishing contract.[51]  Despite repeated attempts to obtain an executed version of that contract informally, Giuliani and his counsel have only provided a partially executed version.

38.     Giuliani and his counsel have been similarly unresponsive to requests by others in the Chapter 11 Case regarding his financial disclosures as well.  Despite the U.S. Trustee's direction that Giuliani himself file a declaration attesting to the accuracy of his amended schedule, Giuliani has failed to do so.[52]  Thus, given Giuliani's conduct to date, the Committee believes it must obtain the relief requested herein to adequately conduct its own investigation and satisfy its fiduciary duties to its constituency.

39.     Prior to filing the Motion, the Committee provided a draft of the Motion and Requests to the Debtor's counsel for his review.  The Committee anticipates conducting the typical

---

[49]   *Amended Individual Schedules A/B & G* (filed Feb. 27, 2024) [ECF No. 129] at 4.

[50]   *Id.* at 2; *cf.* 86:18-87:17.

[51]   *Amended Individual Schedules A/B & G* (filed Feb. 27, 2024) [ECF No. 129] at 8.

[52]   *See Transcript of Debtor's February 7, 2024 Section 341 Meeting* at 35:13-18.

meet and confer process with the Debtor and third parties in connection with the Requests concerning any objections, custodians or search terms as necessary.

## BASIS FOR RELIEF

**A.    The Committee is Entitled to Discovery under Rule 2004.**

40.    Rule 2004(a) provides, in relevant part, that "[o]n motion of any party in interest, the court may order examination of any entity." Under Rule 2004, a party-in-interest, here the Committee, may request discovery related to "acts, conduct, or property, or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).

41.    The purpose of Rule 2004 is to "assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004). Rule 2004 permits discovery "to determine the extent of the estate's assets and recover those assets for the benefit of creditors." *In re Madison Williams & Co., LLC*, No. 11-15896, 2014 WL 56070, at *3 (Bankr. S.D.N.Y. Jan. 7, 2014); Rule 2004 also functions to "allow the court to gain a clear picture of the condition and whereabouts of the bankrupt's estate." *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re: Bernard L. Madoff)*, No. 09-11893 (SMB), 2014 WL 5486279, at *2 (Bankr. S.D.N.Y. Oct. 30, 2014).

42.    The scope of discovery allowed under Rule 2004 is "very broad and great latitude of inquiry is ordinarily permitted." *Madison Williams*, 2014 WL 56070, at *3. Courts repeatedly have recognized that discovery provided for under Rule 2004 encompasses "broader discovery than is available under the Federal Rules of Civil Procedure." *In re Bernard L. Madoff*, 2014 WL 5486279, at *2; *see also In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) ("[T]he scope of examination allowed under Rule 2004 is broader than discovery allowed under the Federal

16

Rules of Civil Procedure and may be in the nature of a 'fishing expedition.'"); *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) (same).

43.    Rule 2004 permits discovery of any party, including third parties, "if they have knowledge of the debtor's affairs." *In re Ecam Publ'ns, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); *see also In re Recoton Corp.*, 307 B.R. at 756 ("Any third party who has a relationship with a debtor may be made subject to a Rule 2004 investigation."); *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("[T]he Court may authorize the examination of third parties that possess knowledge of the debtor's acts, conduct, liabilities or financial condition which relate to the administration of the bankruptcy estate."). Bankruptcy Code section 1103 expressly authorizes the Committee "to investigate the acts, conduct, assets, liabilities and financial condition of the Debtors." *In re Recoton Corp.*, 307 B.R. at 755.

44.    The Committee requires the discovery requested in this Motion, which "may affect the administration of the debtor[s'] estate[s]," in order to investigate potential claims or causes of action in favor of the Debtor's estate, and this discovery is critical for the Committee's investigation of potential claims or causes of action against the Debtor and his businesses, as well as the investigation of the Debtor's assets, liabilities and general financial condition. Fed. R. Bankr. P. 2004(b).   The information sought therefore relates directly to the "acts, conduct, or property or to the liabilities and financial condition" of the Debtor within the scope of Rule 2004. *Id*. Absent the relief requested, the Committee would be subjected to undue hardship with respect to their efforts to assess the Debtor's assets, liabilities and financial position. Good cause accordingly exists to permit the Rule 2004 examination of the Debtor and those third parties outlined above.

45.     The information sought through this Motion goes directly to the "acts, conduct, or property or to the liabilities and financial condition" of the Debtor and bears directly on potential estate assets and claims.  Fed. R. Bankr. P. 2004(b).  Thus, the discovery requested in this Motion is "*prima facie* consistent with the Rule's . . . purposes of allowing the Committee to obtain information necessary to determine whether claims beneficial to the estate exist and whether to pursue such claims."  *In re Recoton Corp.*, 307 B.R. at 756.  Because an "examination is necessary to establish the claim[s]" that the estate could pursue to benefit his creditors, good cause exists to grant this Motion.  *In re Metiom, Inc.*, 318 B.R. 263, 268-270 (S.D.N.Y. 2004) (internal citations and quotations omitted) (affirming bankruptcy court's order granting Rule 2004 examination).

**B.      The Debtor's Extensive History of Discovery Misconduct Necessitates Formal Rule 2004 Discovery Procedures**

46.     Formal Rule 2004 discovery is especially necessary in the Debtor's case, considering his extensive history of prepetition discovery misconduct and obfuscation.  Despite repeated attempts to subpoena documents from the Giuliani Businesses, including Giuliani Communications and Giuliani Partners, in the Freeman Litigation, Giuliani and the Giuliani Businesses failed to comply with their discovery obligations.  Per Judge Howell, Giuliani gave "only lip service to compliance with his discovery obligations," "fail[ed] to take reasonable steps to preserve or produce his ESI," and instead, submitted "slippery" declarations and "excuses designed to shroud the insufficiency of his discovery compliance."[53]  Further, as noted by Judge Howell, substantial concern exists as to "the risk that Giuliani may attempt to 'conceal and dissipate [his] assets.'"[54]

---

[53]   *Memorandum Opinion Regarding Plaintiffs' Motion for Sanctions* (filed Aug. 30, 2023), [Freeman ECF No. 94] at 2.

[54]   *Memorandum and Order Granting Plaintiffs' Motion to Dissolve Stay of Execution and for Leave to Register Judgment in Any Other District* (filed Dec. 20, 2023), [Freeman ECF No. 144] at 7.

47.     Giuliani's consistent obfuscation and noncompliance in prepetition civil discovery lay bare his fundamental unwillingness to fulfill his obligations as a litigant, even with judicial oversight.   Additionally, substantial concern exists as to Giuliani's efforts to dissipate and conceal estate assets.   Unfortunately, the Committee's experience thus far with the Debtor in this case has been more of the same.   The Committee's counsel has made repeated requests to the Debtor's counsel for information related to, among other things, the Debtor's applications to retain professionals but has been met with silence, information provided weeks following the initial request and, in one extreme instance, right before an emergency hearing necessitated solely by the Debtor's dilatory conduct, or containing facially inaccurate information despite being submitted under penalty of perjury.[55]   Accordingly, Rule 2004 discovery is especially warranted to ensure Giuliani's compliance with his disclosure obligations in the Chapter 11 Case.

## **MOTION PRACTICE**

48.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. The Committee submits that this Motion satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## **NOTICE**

49.     Notice of this Motion will be provided to (i) counsel for the Debtor, Berger Fischoff Shumer Wexler & Goodman LLP; (ii) the United States Trustee; (iii) any creditor that has filed a notice of appearance in the Chapter 11 Case; (iv) Giuliani Partners, LLC; (v) Giuliani

---

[55]     *Omnibus Objection of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani to (i) Debtor's Amended Application for Retention and Employment of Aidala, Bertuna & Kamins, P.C. as Special Counsel Effective December 21, 2023 and (ii) Application to Employ Berger, Fischoff, Shumer, Wexler & Goodman, LLP as Attorney for the Debtor* (filed Feb. 15, 2024), [ECF No. 113]; *Declaration of Rudolph W. Giuliani* (filed Feb. 19, 2024), [ECF No. 119]; *Amended Declaration of Rudolph W. Giuliani* (filed Feb. 19, 2024), [ECF No. 122].

Communications, LLC; (vi) Giuliani Security & Safety, LLC; (vii) Giuliani Group, LLC; (viii) Giuliani & Company, LLC; (ix) Rudolph W. Giuliani, PLLC; (x) WorldCapital Payroll Corporation; (xi) Giuliani Defense; (xii) Giuliani Freedom Fund; (xiii) Robert Kiger; (xiv) Andrew Giuliani; (xv) Jake Menges; (xvi) Dr. Maria Ryan; (xvii) Ryan Medrano; (xviii) Joseph Ricci; (xix) Ted Goodman; and (xx) Michael Ragusa.  The Committee submits that such notice is sufficient and no other or further notice need be provided.

## NO PRIOR REQUEST

50.    No prior request for the relief sought in this Motion has been made.

## RESERVATION OF RIGHTS

51.    The Committee and its members reserve all rights, claims, defenses and remedies, including, without limitation, the right to amend, modify or supplement this Motion, to seek additional discovery, add additional parties or to raise additional grounds for granting this Motion during any hearing on the Motion.

## CONCLUSION

52.    The Committee respectfully requests that the Court enter the Proposed Order (i) authorizing the Committee to serve Requests on the Debtor and third parties, including those yet to be identified, (ii) requiring the Debtor and the third parties to respond to the Requests and to substantially complete their document productions within 21 days, and (iii) authorizing the Committee to take depositions of the Debtor and representatives of the Debtor and third parties, including those yet to be identified.

Dated: March 7, 2024                            */s/ Philip C. Dublin*
        New York, New York               **AKIN GUMP STRAUSS HAUER & FELD LLP**
                                        Ira S. Dizengoff
                                        Philip C. Dublin
                                        Abid Qureshi
                                        One Bryant Park
                                        New York, New York 10036

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Tel:      (212) 872-1000
Fax:     (212) 872-1002
Email:   idizengoff@akingump.com
            pdublin@akingump.com
            aqureshi@akingump.com

- and -

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Tel:      (214) 969-2800
Fax:     (214) 969-4343
Email:   rbibloblock@akingump.com

*Proposed Counsel to the Official Committee
of Unsecured Creditors of Rudolph W. Giuliani*

21

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:                                                          :        **Chapter 11**
                                                                :
**RUDOLPH W. GIULIANI**                                         :        **Case No. 23-12055 (SHL)**
**a/k/a RUDOLPH WILLIAM GIULIANI,**                            :
                                                                :
                         Debtor.                                :
-------------------------------------------------------------x

### ORDER GRANTING MOTION
### OF THE OFFICIAL COMMITTEE OF
### UNSECURED CREDITORS FOR THE ENTRY OF AN
### ORDER PURSUANT TO BANKRUPTCY CODE SECTION
### 105 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004
### AUTHORIZING DISCOVERY OF THE DEBTOR AND THIRD PARTIES

Upon the motion (the "Motion")[1] of the Official Committee of Unsecured Creditors

(the "Committee"), for entry of an order pursuant to Bankruptcy Code section 105 and Rule 2004

of the Federal Rules of Bankruptcy Procedure authorizing discovery of the Debtor, his businesses

and certain third parties, as more fully set forth in the Motion; and the Court having jurisdiction to

decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and

consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C.

§ 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and,

after due deliberation, the Court having determined that the relief requested in the Motion is in the

best interests of the Debtor, the estate, his creditors and all parties in interest; and it appearing that

no notice of the relief sought in the Motion is necessary; and good and sufficient cause appearing

therefor;

                    **IT IS HEREBY ORDERED THAT:**

    1.        The Motion is granted, as set forth herein.

---

[1]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms
       in the Motion.

2.      The Committee is hereby authorized, pursuant to Rule 2004, to (a) serve document requests as specified below/subpoenas on, and (b) take depositions of, (i) Rudolph W. Giuliani; (ii) Giuliani Partners, LLC; (iii) Giuliani Communications, LLC; (iv) Giuliani Security & Safety, LLC; (v) Giuliani Group, LLC; (vi) Giuliani & Co.; (vii) Rudolph W. Giuliani PLLC; (viii) WorldCapital Payroll Corporation; (ix) Rudy Giuliani Freedom Fund Legal Defense Trust Fund; (x) Giuliani Defense; (xi) Robert Kiger; (xii) Andrew Giuliani; (xiii) Jake Menges; (xiv) Maria Ryan; (xv) Ryan Medrano; (xvi) Joseph Ricci; (xvii) Ted Goodman; (xviii) Michael Ragusa; and (xix) any other party the Committee identifies as possessing information relevant to its investigation into the Debtor's assets, liabilities, relevant prepetition conduct and financial position.

3.      The recipients of any such subpoena are directed to respond to the requests and have completed document production no later than twenty-one (21) calendar days of service, subject to the recipients' rights to object or otherwise properly seek relief from the Court.

4.      The Committee is hereby authorized, pursuant to Bankruptcy Rule 2004, to issue additional document requests, subpoenas *duces tecum* and subpoenas *ad testificandum* related to the identification, investigation and/or recovery of any of the Debtor's assets, the Debtor's liabilities, the Debtor's or other parties' prepetition conduct concerning the Debtor's assets or liabilities or claims of the estate, without further order of the Court.

5.      The Committee reserves all rights to request additional discovery and/or examination, including, without limitation, requests based on any information that may be revealed as a result of discovery authorized pursuant to this Order.

6.      The Committee is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

2

7.      The terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

8.      The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated: _____, 2024

_____

SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Requests to the Debtor**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re:                                                  :          **Chapter 11**
                                                        :
**RUDOLPH W. GIULIANI**                                 :          **Case No. 23-12055 (SHL)**
**a/k/a RUDOLPH WILLIAM GIULIANI,**                     :
                                                        :
                            **Debtor.**                 :
------------------------------------------------------------------x

## NOTICE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' BANKRUPTCY RULE 2004 EXAMINATION OF RUDOLPH W. GIULIANI

Please take notice that, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of Rudolph W. Giuliani a/k/a Rudolph William Giuliani ("Giuliani" or the "Debtor") submits the following requests for the production of documents (the "Requests," and each individually a "Request") (attached hereto as **Exhibit A**) to Giuliani.  The Committee requests that Giuliani respond to these Requests by producing documents and electronic information immediately, and on a rolling basis until complete, delivering all such responsive materials to the undersigned counsel.  The production of all responsive materials shall be completed by [Date].  The Committee reserves the right to serve additional requests at a later time.

Dated: April \_\_, 2024

By: _____

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Tel:    (212) 872-1000
Fax:    (212) 872-1002
Email:idizengoff@akingump.com
pdublin@akingump.com
aqureshi@akingump.com

- and -

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Tel:    (214) 969-2800
Fax:    (214) 969-4343
Email:        rbibloblock@akingump.com

*Proposed Counsel to the Official Committee*
*of Unsecured Creditors of Rudolph W. Giuliani*

## EXHIBIT A

## DEFINITIONS

The following Requests incorporate by reference the definitions and rules of construction set forth in Local Civil Rule 26.3 of the Southern District of New York, as incorporated by Local Rule 2004-1 of the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and any other applicable law or rules.  For the purposes of these Requests, the following definitions shall apply whether or not such term is capitalized.  Unless otherwise defined herein, all words and phrases shall be accorded their usual meaning and shall be interpreted broadly to encompass all facts and information that could otherwise be construed to fall outside their scope.

1.      The term "*Account*" shall mean any arrangement or agreement by which one or more Persons accepts one or more Persons' Assets to hold on behalf of that Person, including but not limited to savings accounts, checking accounts, money market accounts, Certificate of Deposit accounts, brokerage accounts, currency accounts, Cryptocurrency accounts, commodities, commodities futures accounts, trust accounts, bailments, custodial agreements, safe deposit boxes, arrangements or agreements by which Assets are stored and any other accounts held with a financial institution.  For the avoidance of doubt, this includes, but is not limited, to any Accounts or other repositories of Assets, including storage units identified on any of the Schedules and Statements.

2.      The term "*ACH Documentation*" shall mean any authorization of or consent to Payment that permits a Person to transfer financial assets from another Person's Account.

3.      The term "*Affiliate*" or "*Affiliates*" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

4.      The term "*Agent*" shall mean any Person or entity and their Professionals acting for or on behalf of another Person or entity.

5.      The terms "*all*," "*any*" and "*each*" shall each be construed as encompassing any and all of these terms.

6.      The term "***America's Mayor Live***" shall mean Giuliani's video livestream that is owned by Giuliani Communications, LLC, and distributed on platforms including, but not limited to, YouTube, Gettr, Facebook and Instagram.

7.      The connectives "***and***" and "***or***" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents, Communications or responses that might otherwise be construed to be outside of its scope.

8.      The term "***Assets***" shall mean both real assets and intangible assets, including Real Property (whether owned or leased), fixtures, facilities, businesses, business lines, intellectual property, goodwill, contracts, rights to recover under any insurance policy, causes of action, inventory, cash, Cryptocurrency, Cryptocurrency Wallets, cash equivalents, commodities, commodities futures, precious metals, jewelry, watches, furniture, wine, art, firearms, Domain Names, oil and gas leases, mineral rights, automobiles, watercraft, boats, helicopters and any other thing of value.

9.      The term "***Biden Litigation***" shall refer to *Biden v. Giuliani*, United States District Court for the District of Columbia, No. 2:23-cv-08032, the suit filed by Robert Hunter Biden against Giuliani, Giuliani Partners, LLC, Giuliani Group, LLC, Giuliani Security & Safety, LLC and Giuliani's counsel Robert J. Costello for violations of federal and state computer fraud and abuse statutes and for unfair competition via their alleged unauthorized access to and dissemination of Biden's private digital data.

10.    The term "***Common Sense***" shall mean Giuliani's audio podcast that is owned by Giuliani Communications, LLC and distributed on platforms including, but not limited to, YouTube, Rumble and Spike.

11.    The term "***Communication***" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise).  For the avoidance of doubt, this may encompass any oral, written or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, email messages, text messages, Bloomberg messages, chat messages, Instant Bloomberg chat messages, Social Media messages, WhatsApp chat messages, Signal app messages, Telegram app messages, GroupMe chat messages or other messaging platforms, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, video tapes, photographs, microfilm, microfiche, magnetic disks or other media of any kind.

12.    The term "***concerning***" shall mean relating to (however remotely), referring to, describing, evidencing or constituting.

13.    The term "***Corporate Records***" shall include articles of association, company bylaws, articles of incorporation, founding documents, partnership agreements, limited liability company agreements, management agreements, meeting minutes, board presentations, policies and resolutions, records of material transactions, approvals of material contracts, records of sale, purchase of real estate, annual reports, trust agreements, accounting and any other Document concerning an entity's organization or material activities.

14.    The term "***Credit Documents***" shall mean any Documents concerning any application or request for an extension of credit of any kind including, but not limited to, mortgages, personal loans, lines of credit and credit cards.  For the avoidance of doubt, this

3

includes, but is not limited to, the following types of Documents: (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) residential rental Payment histories; (i) other Tax Documents; and (j) any other Document submitted in connection with an application for an extension of credit.

15.     The term "**_Cryptocurrency_**" shall mean any digital or virtual currency or medium of exchange secured by or otherwise utilizing cryptography.

16.     The term "**_Cryptocurrency Wallet_**" shall mean any device, physical medium, program, app, service, software or anything similar that stores private keys for Cryptocurrency or Cryptocurrency transactions, whether encrypted or otherwise.

17.     The terms "**_Debtor_**" or "**_Giuliani_**" shall mean the Person who filed a petition for chapter 11 relief in the case of _In re Rudolph W. Giuliani_, No. 23-12055 (Bankr. S.D.N.Y.) and who goes by the name of Rudolph W. Giuliani, Rudolph William Guiliani, Rudolph Giuliani, Rudy Giuliani or any other variation of the Debtor's name, including any alter egos, Persons who have apparent authority over the Debtor, Agents of the Debtor and Professionals of the Debtor.

18.     The term "**_Debtor Related Entity_**" shall include the following Persons, each as defined herein, and including without limitation any trade names, assumed names or previously registered names:

- Giuliani Partners, LLC

- Giuliani Communications, LLC

- Giuliani Security & Safety, LLC

- Giuliani Group, LLC

- Giuliani & Company, LLC

- Rudolph W. Giuliani, PLLC

- WorldCapital Payroll Corporation

- The Rudy Giuliani Freedom Fund Legal Defense Trust Fund

- Giuliani Defense

- Giuliani Media, LLC

19.    The term "***Debtor Related Person***" shall include the following Persons, each as defined herein:

- Andrew Giuliani

- James Menges

- Joseph Ricci

- Maria Ryan

- Michael Ragusa

- Robert Kiger

- Ryan Medrano

- Ted Goodman

20.    The term "***Deposit Ticket***" shall mean any Document evidencing a deposit of financial assets to a bank or financial institution with information including, *inter alia*, the date, the name of the depositor, the depositor's Account number and the value of the assets being deposited.

21.    The term "***Document***" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information and other data or data

compilations.  This includes documents stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including but not limited to emails, texts, chats, spreadsheets and PowerPoint presentations.  A draft or non-identical copy is a separate document within the meaning of this term.

22.    The term "*Domain Name*" shall mean any sequence of alphanumeric characters that forms all or part of the corresponding internet addresses.

23.    The term "*Dominion Litigation*" shall refer to *US Dominion, Inc., et al. v. Giuliani, United States District Court for the District of Columbia*, No. 1:21-cv- 00213-CJN, the suit filed against Giuliani by Dominion Voting Systems, who seeks $1.3 billion in damages for harm caused by Giuliani's statements about the 2020 presidential election.

24.    The term "*Dunphy Litigation*" shall refer to *Dunphy vs. Giuliani*, et al., New York Supreme Court, Index No. 650033 / 2023, the suit filed against Giuliani by his former employee, Noelle Dunphy, who seeks $10 million in damages for unpaid wages and sexual harassment experienced in her course of employment by Giuliani and Giuliani Partners LLC.

25.    The term "*Financial Records*" shall include any Document or Communication that contains or summarizes information about any Person's or entity's financial activities or condition of the Debtor including, but not limited to, information about the Assets, balance sheets, budgets, cash flow, earnings, revenue, Gifts, Payments, Transfers in Assets or interests, Tax Documents, Credit Documents, Mortgage Documents, QuickBooks files and books and records containing any of the above maintained in the ordinary course of business.

26.    The term "*Freeman Litigation*" shall refer to *Freeman v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-03354-BAH, the suit filed against Giuliani

regarding his defamatory statements about two Georgia 2020 election workers that led U.S. District Judge Beryl A. Howell of the District of Columbia to enter a $148 million default judgment against Giuliani.

27.     The term "**Gift**" shall mean any voluntary or involuntary Transfer of an Asset ***not*** made in exchange for any promise, service, product or other Asset.  For the avoidance of doubt, "Gift" shall be construed to encompass any engagement rings, other jewelry and things of value exchanged between you and any Person in connection with any marriage proposal.

28.     The term "**Giuliani Defense Funds**" shall mean The Rudy Giuliani Freedom Fund Legal Defense Trust Fund, Giuliani Defense or any other entity paying, subsidizing or reimbursing legal costs, expenses, judgments, sanctions, monetary awards or penalties incurred or issued in connection with any civil, criminal or bankruptcy proceeding involving Giuliani, including, without limitation, the Freeman Litigation, the Biden Litigation, the Dunphy Litigation and the Dominion Litigation.

29.     The term "**including**" shall mean "including, but not limited to."

30.     The term "**Media Outlet**" or "**Media Outlets**" means any person, group or entity purporting to provide information via any distribution channel, including, but not limited to, cable television, radio, podcasts and YouTube.

31.     The term "**Money Order**" shall mean any prepaid Negotiable Instrument or certificate issued by a government or financial institution that requires the issuer to pay a certain sum of money on demand to a Person.

32.     The term "**Mortgage Documents**" shall include any Documents concerning any application or request for a line of credit secured by a mortgage on any residential or commercial Real Property, including but not limited to:  (a) W-2 forms; (b) pay stubs; (c) income tax returns;

(d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) copies of the purchase and sale agreement; (i) deeds of trust; (j) residential rental Payment histories; (k) other Tax Documents; and (l) any other Document submitted in connection with the above.

33.    The term "*Negotiable Instrument*" shall include any unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it (a) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (b) is payable on demand or at a definite time; and (c) does not state any other undertaking or instruction by the person promising or ordering Payment to do any act in addition to the Payment of money, and any similar instrument.

34.    The term "*Paycheck Protection Program*" shall refer to the business loan program established by the United States government in 2020 through the Coronavirus Aid, Relief and Economic Security Act to assist certain businesses with continuing to pay their employees.

35.    The term "*Payment*" shall mean any voluntary or involuntary Transfer in exchange for any service, product or other Asset, whether previously provided, provided contemporaneously with the Transfer or to be provided in the future, and whether or not such service, product or other Asset was or will be provided to the Person making or causing the Payment to be made.

36.    The term "*Person*" shall mean any natural person or any legal entity, unincorporated association or group of individuals or legal entities, whether formally or informally established, and their Affiliates and Professionals, including, without limitation, any business or governmental entity or association.

37.    The term "*Petition Date*" shall mean December 21, 2023.

38.    The term "*Professional*" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation, any attorneys, accountants, consultants (including independent consultants), independent contractors, advisors and testifying or non-testifying experts.

39.    The term "*Real Property*" shall have the meaning ascribed to the term in section 102 of the New York Real Property Tax Law.

40.    The term "*Schedules and Statements*" shall mean any and all schedules and statements filed by the Debtor, including, without limitation, Schedule A/B; Schedule C; Schedule D; Schedule G; Schedule I, Schedule J, Summary of Assets and Liabilities; Schedule of Executory Contracts and Statement of Financial Affairs and any amendments or supplements to any of the foregoing.

41.    The term "*Social Media*" shall mean any forum, website, application or other platform on which persons can create, transmit, share, communicate or comment upon any information, ideas or opinions, or otherwise engage in social networking, including but not limited to: Twitter, Rumble, Gab, MeWe, Periscope, Facebook, Discord, Reddit, Imgur, SnapChat, Instagram, Google+, 4chan, 8chan, Tumblr, Youtube, LinkedIn, Flikr, Reddit, Quora, Disquis, Slack, Whisper, Yik Yak, Medium, WordPress, WeChat and instant messaging services such as Signal, WhatsApp, Facebook Messenger, Hangouts, Skype, Line, KakaoTalk, Telegram and CyberDust.  Without limiting the foregoing in any manner, and by way of example only, the following are Social Media activity:  uploading, posting, commenting, reacting (*e.g.*, "liking" a post), sharing and communicating on comment sections of Social Media.

42.    The term "*Tax Documents*" shall mean any tax return, tax form, tax schedule, declaration, report, claim for refund, assessment or information return, statement or other Document relating to taxes, including any schedules or form or attachment thereto, whether

prepared by the taxpayer, in the taxpayer's individual capacity or the taxpayer's capacity as an employer or employee, a tax preparer, a bank or financial institution, the Internal Revenue Service or any other governmental authority.

43.     The term "***The Biden Crime Family: The Blueprint for Their Prosecution***" shall mean the book for sale authored by Giuliani, published by War Room Books and expected to release on April 16, 2024, through various distribution platforms.

44.     The term "***The Rudy Giuliani Show***" shall mean Giuliani's audio podcast that is owned by Giuliani Communications, LLC, and distributed on platforms including, but not limited to, 77 WABC Radio, Apple Podcasts and Spotify.

45.     The term "***Transfer***" shall have the meaning ascribed in 11 U.S.C. § 101(54)(A)–(D), inclusive.

46.     The term "***TrustPoint One***" shall refer to the integrated legal services provider that houses a dataset containing data collected by the Federal Bureau of Investigation from Giuliani's seized devices.

47.     The term "***Uncovering the Truth***" shall mean Giuliani's audio podcast that is owned by Giuliani Communications, LLC, co-hosted with Maria Ryan and distributed on platforms including, but not limited to, Apple Podcasts, 77 WABC Radio and Amazon Music.

48.     The term "***Wire Transfer***" shall mean any electronic Transfer of financial assets from one Account to another Account.

49.     The term "***Withdrawal Slips***" shall mean any Document prepared in order to withdraw financial assets from any Account with information including, *inter alia*, the date, the name of the withdrawer, the withdrawer's Account number and the value of the assets being withdrawn.

50.    The terms "*You*," "*Your*" or "*Yours*" shall refer to Rudolph W. Giuliani.

51.    The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

52.    Any references to a Person shall be deemed to include such Person's Agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, managers, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, trustees, fiduciaries, settlors, donors, beneficiaries or any other individual or entity acting or purporting to act on behalf of such Person.  In addition, the reference to any trust shall include any current or former trustees, or other fiduciaries, settlors, donors and beneficiaries.

53.    The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

54.    The use of the present tense includes the past tense, the use of the past tense shall include the present tense, and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

55.    Words and phrases not defined shall have their ordinary and plain meaning within the context of the Federal Rules of Civil Procedure and in accordance with the generally accepted meaning accorded such words and phrases in everyday use in the English language.

## **<u>INSTRUCTIONS</u>**

1.      These instructions incorporate by reference the requirements and duties of the Federal Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York.

2.      Each Request is continuing in nature.  If at any time additional Documents responsive to the Requests come into Your possession, custody or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

3.      You are requested to produce all Documents, Communications and information requested herein that are within Your possession, custody or control or in the possession, custody or control of Your current and former officers, directors, Agents, employees, representatives, Affiliates, Professionals, members, managers, trustees or any other Person or entity acting or purporting to act on Your behalf.

4.      You are requested to produce Documents, Communications and information requested herein on a rolling basis.

5.      If You cannot fully respond to one or more of the Requests after exercising due diligence to secure the information requested thereby, please so state, and specify:  (a) the portion of each Request that cannot be responded to fully and completely; (b) what efforts were made to obtain the requested information; (c) the facts relied upon that support Your contention that the Request(s) cannot be answered fully and completely; and (d) any knowledge, information or belief You have concerning the unanswered portion of any such Request(s).

6.      All Documents shall be produced with metadata in TIFF format with OCR images, provided, however, that documents in Excel format shall be provided in native format.  ***All Documents shall be produced with metadata, including but not limited to the date and time***

*created/sent, author, recipients, cc-copies, bcc-blind copies, family member information, MD-5*

*hash, subject line and title and whether the document contains redactions*.

7.      If the response to any Request consists, in whole or in part, of an objection on the

basis of or including undue burdensomeness, then provide those documents that can be produced

without undue burden.  For such documents that are too unduly burdensome to produce, describe

the process or method required to obtain said documents, the quantity and location of the

documents involved and the estimated costs of the search.

8.      If You intend to withhold any responsive Document, Communication or other

information on the basis of a claim of attorney-client privilege, work product protection or any

other ground of non-disclosure, You shall identify such Document, Communication or information

in writing by date of the Document's creation, title/file name/"re line"/subject, addressee/to/cc/bcc,

addressor/from, Document type and topic covered and listed with a statement of the grounds

alleged for withholding such Document, Communication or other information, including any

privilege claimed.

9.      If Your response to any Request is any other objection, You must indicate if

Documents are being withheld based on the objection(s), provide all Documents not covered by

the objection and state the specific basis of the objection.

10.     If any Document responsive to these Requests has been destroyed, lost or discarded,

state when the Document was destroyed, lost or discarded; identify the Person who destroyed, lost

or discarded the Document; and, in the event the Document was destroyed or discarded, identify

the Person who directed that it be destroyed or discarded.  Additionally, detail the reasons for the

destruction, loss or discarding; describe the nature of the Document; identify the Persons who

created, sent, received or reviewed the Document; and state in as much detail as possible the contents of the Document.

11.     Subject to Instruction No. 6 above, Documents should be produced in the manner they are kept in the ordinary course of business.  In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

12.     All Documents shall be produced in such fashion as to identify the custodian or department in whose possession the Document was found and the business address of each Document's custodian(s).

13.     The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

14.     Unless otherwise specified, the Requests call for the production of Documents and Communications created, drafted, copied or otherwise obtained from January 1, 2019, to the present.

15.     By serving these Requests, the Committee reserves all rights, does not waive any of its rights, and expressly reserves the right to amend, to modify or otherwise to supplement these Requests.

## REQUESTS FOR PRODUCTION

1.      Documents and Communications sufficient to show Your total revenue, yearly revenue and monthly revenue, including, but not limited to, revenue received from *Common Sense, Uncovering the Truth*, *The Rudy Giuliani Show*, *America's Mayor Live* and appearances on any Media Outlets.

2.      Documents and Communications sufficient to show all contracts You have entered into, whether oral or written, formal or informal, relating to business dealings, advertisements, endorsements or any other sources of income, including, but not limited to, (i) contracts between You and any Media Outlets, and (ii) contracts pertaining to your forthcoming book, *The Biden Crime Family: The Blueprint for Their Prosecution*, currently scheduled for public release in April 2024.

3.      All Corporate Records, Financial Records and Tax Documents for or otherwise concerning You or any Debtor Related Entity.

4.      All Documents and Communications concerning any Accounts belonging to You or for which You have or have ever had a legal, equitable, possessory, contingent, beneficiary or pecuniary interest, including:

      a.   all monthly Account statements, with itemized transaction-level information;

      b.   all yearly Account statements;

      c.   any Deposit Tickets;

      d.   any Withdrawal Slips, including any Documents and Communications concerning the substance of any withdrawals from any Account;

      e.   all negotiated checks or cancelled checks including checks written against or deposited into the Account and any bank checks (including certified checks,

cashier's checks, official checks or teller's checks) funded in whole or in part by the Account, including images of the front and back;

f.   all documents and communications sufficient to identify any deposits or withdrawals of all income listed in the Schedules and Statements;

g.   any Money Orders;

h.   any Wire Transfers into, out of, or by any Account, including information concerning the origins, destinations, Account numbers, financial institutions and any other Wire Transfer information or ACH Documentation;

i.   any Negotiable Instruments; and

j.   any Cryptocurrency Wallets.

5.     Documents and Communications sufficient to show the nature of Your interests in and/or affiliation with any entities You own, operate, manage or benefit from (directly or indirectly), or any entities that are owned or operated by any family member or associate of You and which are related to You (directly or indirectly), including the Debtor Related Entities.

6.     Documents and Communications sufficient to show the nature of the relationship between You and each Debtor Related Person.

7.     Documents and Communications sufficient to show the extent to which any Debtor Related Persons had, or continues to have, any role in managing, overseeing or providing advice and other services regarding (i) Your Accounts, Assets or Financial Records, (ii) any Debtor Related Entity; or (iii) the preparation for Your bankruptcy petition and related materials.

8.     Documents and Communications sufficient to show the value of any bond, mutual fund or publicly traded stock listed as an Asset in the Schedules and Statements, including the value of Your reported Uber shares.

9.      All Documents and Communications concerning any contracts, agreements, Payments, Transfers, Gifts or distributions of any Assets between You and (i) any Debtor Related Entity, (ii) any other entity that You own, operate, manage or benefit from (directly or indirectly), (iii) any entity that is owned, operated or managed by any family member or associate of You and which is related to You (directly or indirectly) or (iv) any Debtor Related Person.

10.      All articles of incorporation, LLC agreements, LLP agreements, founding Documents, organization Documents, organization charts or other Corporate Records and Financial Records of any Debtor Related Entity.

11.      All audited and unaudited balance sheets, income statements, consolidating schedules, cash flow statements, profit and loss statements, statements of changes in equity, statements of retained earnings and other financial statements or accounting reports, along with drafts, trial balances and internal accounting work papers for any Debtor Related Entity.

12.      All Documents and Communications concerning the bases, evidence and work product made in connection with any claims or causes of action that are asserted or assertable by You, including, but not limited to, (i) any claims for unpaid legal fees against Donald J. Trump, (ii) any defamation actions against Joseph R. Biden (iii) any unliquidated and/or contingent claims and causes of action listed in Your Schedules and Statements, and (ii) counterclaims that have been or may be asserted in connection with any pending litigation against You, including, without limitation,  the Freeman Litigation, the Biden Litigation, the Dunphy Litigation or the Dominion Litigation.

13.      Documents and Communications sufficient to identify the nature of any legal services that you have performed, or continue to perform, for Donald J. Trump.

14.    All Documents and Communications between You or any other Person, including any Debtor Related Person, concerning any Asset planning or estate planning with respect to, or in consideration of, any creditor's ability to reach any Assets in which You have a legal, possessory, beneficial, equitable, pecuniary or disputed interest.

15.    All Documents and Communications concerning the Giuliani Defense Funds, including Documents and Communications sufficient to show (i) the sources and uses of funds originating from the Giuliani Defense Funds, (ii) any relationship between You and the donors of Giuliani Defense Funds, (iii) how decisions are made by the Giuliani Defense Funds to disburse funds and to whom and (iv) any connection between Assets held or disbursed from the Giuliani Defense Funds and Assets of You or any other Debtor Related Entity.

16.    All Documents and Communications concerning any offers of employment, endorsement or financial backing or support from any Person.

17.    All Documents and Communications sufficient to show (i) the identity of all creditors to whom You made Payments, Transfers, Gifts or distributions of any Assets prior to the Petition Date, and (ii) the nature and value of such Payments, Transfers, Gifts or distributions of any Assets.

18.    Documents and Communications sufficient to show itemized valuations—or estimated values—and pictures of all personal property listed or referenced in the Schedules and Statement that are valued at or above $250, including, but not limited to, an inventory and pictures of all electronics, household goods and furnishings, sports memorabilia, jewelry and clothes.

19.    Documents and Communications sufficient to identify a list of all Assets belonging to You or otherwise within Your possession, custody, or control, including without limitation any electronic devices such as cell phones, laptops, desktop computers and tablets, and including any

Assets residing in any Real Property, home, apartment or storage unit that is owned, leased, or otherwise belongs to You.

20.     Documents and Communications sufficient to identify the sources and purposes of all monthly expenses listed in the Schedules and Statements.

21.     Documents and Communications sufficient to identify any expenses being paid on Your behalf that You are actively reimbursing, including, but not limited to, expenses listed in the Schedules and Statements.

22.     Documents sufficient to identify any Person(s) who handle any of Your personal finances, including accountants, tax advisors, other finance Professionals, personal assistants, secretaries, household assistants or other Professional, including any Person(s) who assisted in the preparation of Your Schedules and Statements.

23.     Documents and Communications sufficient to identify the disposition of any of Your past or present Assets, property or Accounts as a result of any divorce settlement to which You were a party.

24.     Documents and Communications sufficient to show the job titles, roles, employment contracts and organizational charts relating to any employee, including, but not limited to, any of the Debtor Related Persons who work for, or have worked for, You or any of the Debtor Related Entities.

25.     Documents and Communications sufficient to identify all of Your data collected by the Federal Bureau of Investigation from Your devices and held for preservation by entities including, but not limited to, a special master or TrustPoint One.

26.     All Documents and Communications concerning any application for a private loan, including, but not limited to, funds offered through the Paycheck Protection Program, by any Debtor Related Entity.

27.     All Documents and Communications concerning the issuance and substance of any search warrants or affidavits executed by the United States Department of Justice for the purpose of gathering information for investigations pertaining to You, any Debtor Related Entity or any Debtor Related Person.

## **Exhibit C**

**Example Requests to Third Parties**

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 872-1000
Facsimile: (214) 969-1002

*Proposed Counsel to the Official Committee of*
*Unsecured Creditors of Rudolph W. Giuliani*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **RUDOLPH W. GIULIANI** | : | **Case No. 23-12055 (SHL)** |
| **a/k/a RUDOLPH WILLIAM GIULIANI,** | : | |
| | : | |
| Debtor. | : | |

-----------------------------------------------------------------x

<u>**NOTICE OF INTENT TO SERVE A SUBPOENA**</u>

**PLEASE TAKE NOTICE** that, on April [ ], 2024, pursuant to Rule 2004 of the Federal

Rules of Bankruptcy Procedure, the Official Committee of Unsecured Creditors (the "<u>Committee</u>")

of Rudy W. Giuliani ("<u>Giuliani</u>" or the "<u>Debtor</u>"), by and through its proposed undersigned

counsel, will cause the attached subpoena (the "<u>Subpoena</u>") to be served via process on Giuliani

Communications, LLC. A true and correct copy of the Subpoena is attached hereto as <u>**Exhibit A**</u>.

Dated: April __, 2024

By: _____

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Tel:    (212) 872-1000
Fax:    (212) 872-1002
Email: idizengoff@akingump.com
pdublin@akingump.com
aqureshi@akingump.com

- and -

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Tel:    (214) 969-2800
Fax:    (214) 969-4343
Email: rbibloblock@akingump.com

*Proposed Counsel to the Official Committee*
*of Unsecured Creditors of Rudolph W. Giuliani*

## **EXHIBIT A**

## **SUBPOENA**

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ Southern _____ District of _New York_____

In re   Rudolph W. Giuliani a/k/a Rudolph William Giuliani
_____
                    Debtor

Case No.   23-12055 (SHL)_____

Chapter ___11_____

## SUBPOENA FOR RULE 2004 EXAMINATION

To:   Giuliani Communications, LLC
_____
*(Name of person to whom the subpoena is directed)*

☐ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure.  A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The examination will be recorded by this method: _____

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

        See Ex. A
_____

        The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

              CLERK OF COURT

                                OR

_____          _____
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Official Committee of Unsecured Creditors   , who issues or requests this subpoena, are:

Abid Qureshi, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, aqureshi@akingump.com  Tel. (212) 872-1000

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date: _____


                                                    _____
                                                                    *Server's signature*


                                                    _____
                                                                    *Printed name and title*


                                                    _____
                                                                    *Server's address*


Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**EXHIBIT A**

**DEFINITIONS**

The following Requests incorporate by reference the definitions and rules of construction set forth in Local Civil Rule 26.3 of the Southern District of New York, as incorporated by Local Rule 2004-1 of the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and any other applicable law or rules. For the purposes of these Requests, the following definitions shall apply whether or not such term is capitalized. Unless otherwise defined herein, all words and phrases shall be accorded their usual meaning and shall be interpreted broadly to encompass all facts and information that could otherwise be construed to fall outside their scope.

1.      The term "*Account*" shall mean any arrangement or agreement by which one or more Persons accepts one or more Persons' Assets to hold on behalf of that Person, including but not limited to savings accounts, checking accounts, money market accounts, Certificate of Deposit accounts, brokerage accounts, currency accounts, Cryptocurrency accounts, commodities, commodities futures accounts, trust accounts, bailments, custodial agreements, safe deposit boxes, arrangements or agreements by which Assets are stored and any other accounts held with a financial institution.  For the avoidance of doubt, this includes, but is not limited, to any Accounts or other repositories of Assets, including storage units identified on any of the Schedules and Statements.

2.      The term "*ACH Documentation*" shall mean any authorization of or consent to Payment that permits a Person to transfer financial assets from another Person's Account.

3.      The term "*Affiliate*" or "*Affiliates*" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

4.      The term "*Agent*" shall mean any Person or entity and their Professionals acting for or on behalf of another Person or entity.

5.      The terms "*all*," "*any*" and "*each*" shall each be construed as encompassing any and all of these terms.

6.      The term "*America's Mayor Live*" shall mean Giuliani's video livestream that is owned by Giuliani Communications, LLC, and distributed on platforms including, but not limited to, YouTube, Gettr, Facebook and Instagram.

7.      The connectives "*and*" and "*or*" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents, Communications or responses that might otherwise be construed to be outside of its scope.

8.      The term "*Assets*" shall mean both real assets and intangible assets, including Real Property (whether owned or leased), fixtures, facilities, businesses, business lines, intellectual property, goodwill, contracts, rights to recover under any insurance policy, causes of action, inventory, cash, Cryptocurrency, Cryptocurrency Wallets, cash equivalents, commodities, commodities futures, precious metals, jewelry, watches, furniture, wine, art, firearms, Domain Names, oil and gas leases, mineral rights, automobiles, watercraft, boats, helicopters and any other thing of value.

9.      The term "*Common Sense*" shall mean Giuliani's audio podcast that is owned by Giuliani Communications, LLC and distributed on platforms including, but not limited to, YouTube, Rumble and Spike.

10.      The term "*Communication*" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings,

discussions, conversations, telephone calls, email messages, text messages, Bloomberg messages, chat messages, Instant Bloomberg chat messages, Social Media messages, WhatsApp chat messages, Signal app messages, Telegram app messages, GroupMe chat messages, or other messaging platforms, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, video tapes, photographs, microfilm, microfiche, magnetic disks or other media of any kind.

11.     The term "***concerning***" shall mean relating to (however remotely), referring to, describing, evidencing or constituting.

12.     The term "***Corporate Records***" shall include articles of association, company bylaws, articles of incorporation, founding documents, partnership agreements, limited liability company agreements, management agreements, meeting minutes, board presentations, policies and resolutions, records of material transactions, approvals of material contracts, records of sale, purchase of real estate, annual reports, trust agreements, accounting and any other Document concerning an entity's organization or material activities.

13.     The term "***Credit Documents***" shall mean any Documents concerning any application or request for an extension of credit of any kind including, but not limited to, mortgages, personal loans, lines of credit and credit cards.  For the avoidance of doubt, this includes, but is not limited to, the following types of Documents:  (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) residential rental Payment histories; (i) other Tax Documents; and (j) any other Document submitted in connection with an application for an extension of credit.

14.     The term "***Cryptocurrency***" shall mean any digital or virtual currency or medium

of exchange secured by or otherwise utilizing cryptography.

15.     The term "***Cryptocurrency Wallet***" shall mean any device, physical medium, program, app, service, software or anything similar that stores private keys for Cryptocurrency or Cryptocurrency transactions, whether encrypted or otherwise.

16.     The terms "***Debtor***" or "***Giuliani***" shall mean the Person who filed a petition for chapter 11 relief in the case of *In re Rudolph W. Giuliani*, No. 23-12055 (Bankr. S.D.N.Y) and who goes by the name of Rudolph W. Giuliani, Rudolph Giuliani, Rudy Giuliani or any other variation of the Debtor's name, including any alter egos, Persons who have apparent authority over the Debtor, Agents of the Debtor and Professionals of the Debtor.

17.     The term "***Debtor Related Entity***" shall include the following Persons, each as defined herein, and including without limitation any trade names, assumed names or previously registered names:

- Giuliani Partners, LLC

- Giuliani Communications, LLC

- Giuliani Security & Safety, LLC

- Giuliani Group, LLC

- Giuliani & Company, LLC

- Rudolph W. Giuliani, PLLC

- WorldCapital Payroll Corporation

- The Rudy Giuliani Freedom Fund Legal Defense Trust Fund

- Giuliani Defense

- Giuliani Media, LLC

18.     The term "***Debtor Related Person***" shall include the following Persons, each as defined herein:

- Andrew Giuliani

- James Menges

- Joseph Ricci

- Maria Ryan

- Michael Ragusa

- Robert Kiger

- Ryan Medrano

- Ted Goodman

19.     The term "***Deposit Ticket***" shall mean any Document evidencing a deposit of financial assets to a bank or financial institution with information including, *inter alia*, the date, the name of the depositor, the depositor's Account number and the value of the assets being deposited.

20.     The term "***Document***" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information and other data or data compilations.  This includes documents stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including but not limited to emails, texts, chats, spreadsheets and PowerPoint presentations.  A draft or non-identical copy is a separate document within the meaning of this term.

21.     The term "*Domain Name*" shall mean any sequence of alphanumeric characters that forms all or part of the corresponding internet addresses.

22.     The term "*Financial Records*" shall include any Document or Communication that contains or summarizes information about any Person's or entity's financial activities or condition of the Debtor including, but not limited to, information about the Assets, balance sheets, budgets, cash flow, earnings, revenue, Gifts, Payments, Transfers in Assets or interests, Tax Documents, Credit Documents, Mortgage Documents, QuickBooks files and books and records containing any of the above maintained in the ordinary course of business.

23.     The term "*Gift*" shall mean any voluntary or involuntary Transfer of an Asset *not* made in exchange for any promise, service, product, or other Asset. For the avoidance of doubt, "Gift" shall be construed to encompass any engagement rings, other jewelry and things of value exchanged between the Debtor and any Person in connection with any marriage proposal.

24.     The term "*including*" shall mean "including, but not limited to."

25.     The term "*Media Outlet*" or "*Media Outlets*" means any person, group or entity purporting to provide information via any distribution channel, including, but not limited to, cable television, radio, podcasts and YouTube.

26.     The term "*Money Order*" shall mean any prepaid Negotiable Instrument or certificate issued by a government or financial institution that requires the issuer to pay a certain sum of money on demand to a Person.

27.     The term "*Mortgage Documents*" shall include any Documents concerning any application or re-quest for a line of credit secured by a mortgage on any residential or commercial Real Property, including but not limited to:  (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters;

(g) Documents verifying creditworthiness; (h) copies of the purchase and sale agreement; (i) deeds of trust; (j) residential rental Payment histories; (k) other Tax Documents; and (l) any other Document submitted in connection with the above.

28.     The term "*Negotiable Instrument*" shall include any unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it (a) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (b) is payable on demand or at a definite time; and (c) does not state any other undertaking or instruction by the person promising or ordering Payment to do any act in addition to the Payment of money, and any similar instrument.

29.     The term "*Paycheck Protection Program*" shall refer to the business loan program established by the United States government in 2020 through the Coronavirus Aid, Relief and Economic Security Act to assist certain businesses with continuing to pay their employees.

30.     The term "*Payment*" shall mean any voluntary or involuntary Transfer in exchange for any service, product or other Asset, whether previously provided, provided contemporaneously with the Transfer or to be provided in the future, and whether or not such service, product or other Asset was or will be provided to the Person making or causing the Payment to be made.

31.     The term "*Person*" shall mean any natural person or any legal entity, unincorporated association or group of individuals or legal entities, whether formally or informally established, and their Affiliates and Professionals, including, without limitation, any business or governmental entity or association.

32.     The term "*Petition Date*" shall mean December 21, 2023.

33.     The term "*Professional*" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation,

any attorneys, accountants, consultants (including independent consultants), independent contractors, advisors and testifying or non-testifying experts.

34.    The term "***Real Property***" shall have the meaning ascribed to the term in section 102 of the New York Real Property Tax Law.

35.    The term "***Schedules and Statements***" shall mean any and all schedules and statements filed by the Debtor, including, without limitation, Schedule A/B; Schedule C; Schedule D; Schedule G; Schedule I, Schedule J, Summary of Assets and Liabilities; Schedule of Executory Contracts and Statement of Financial Affairs and any amendments or supplements to any of the foregoing.

36.    The term "***Social Media***" shall mean any forum, website, application, or other platform on which persons can create, transmit, share, communicate, or comment upon any information, ideas, or opinions, or otherwise engage in social networking, including but not limited to: Twitter, Rumble, Gab, MeWe, Periscope, Facebook, Discord, Reddit, Imgur, SnapChat, Instagram, Google+, 4chan, 8chan, Tumblr, Youtube, LinkedIn, Flikr, Reddit, Quora, Disquis, Slack, Whisper, Yik Yak, Medium, WordPress, WeChat and instant messaging services such as Signal, WhatsApp, Facebook Messenger, Hangouts, Skype, Line, KakaoTalk, Telegram and CyberDust. Without limiting the foregoing in any manner, and by way of example only, the following are Social Media activity: uploading, posting, commenting, reacting (e.g., "liking" a post), sharing and communicating on comment sections of Social Media.

37.    The term "***Tax Documents***" shall mean any tax return, tax form, tax schedule, declaration, report, claim for refund, assessment or information return, statement or other Document relating to taxes, including any schedules or form or attachment thereto, whether prepared by the taxpayer, in the taxpayer's individual capacity or the taxpayer's capacity as an

employer or employee, a tax preparer, a bank or financial institution, the Internal Revenue Service or any other governmental authority.

38.     The term "*The Rudy Giuliani Show*" shall mean Giuliani's audio podcast that is owned by Giuliani Communications, LLC, and distributed on platforms including, but not limited to, 77 WABC Radio, Apple Podcasts and Spotify.

39.     The term "*Transfer*" shall have the meaning ascribed in 11 U.S.C. § 101(54)(A)–(D), inclusive.

40.     The term "*Uncovering the Truth*" shall mean Giuliani's audio podcast that is owned by Giuliani Communications, LLC, co-hosted with Maria Ryan and distributed on platforms including, but not limited to, Apple Podcasts, 77 WABC Radio and Amazon Music.

41.     The term "*Wire Transfer*" shall mean any electronic Transfer of financial assets from one Account to another Account.

42.     The term "*Withdrawal Slips*" shall mean any Document prepared in order to withdraw financial assets from any Account with information including, *inter alia*, the date, the name of the withdrawer, the withdrawer's Account number and the value of the assets being withdrawn.

43.     The terms "*You*," "*Your*" or "*Yours*" shall refer to Giuliani Communications, LLC, whether known under the name Giuliani Communications, LLC, Giuliani Media, LLC or any other name, including, but not limited to, any trade names, assumed names or previously registered names.

44.     The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

45.     Any references to a Person shall be deemed to include such Person's Agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, managers, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, trustees, fiduciaries, settlors, donors, beneficiaries or any other individual or entity acting or purporting to act on behalf of such Person.  In addition, the reference to any trust shall include any current or former trustees, or other fiduciaries, settlors, donors and beneficiaries.

46.     The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

47.     The use of the present tense includes the past tense, the use of the past tense shall include the present tense and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

48.     Words and phrases not defined shall have their ordinary and plain meaning within the context of the Federal Rules of Civil Procedure and in accordance with the generally accepted meaning accorded such words and phrases in everyday use in the English language.

## **INSTRUCTIONS**

1.      These instructions incorporate by reference the requirements and duties of the Federal Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York.

2.      Each Request is continuing in nature.  If at any time additional Documents responsive to the Requests come into Your possession, custody or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

3.      You are requested to produce all Documents, Communications and information requested herein that are within Your possession, custody or control or in the possession, custody or control of Your current and former officers, directors, Agents, employees, representatives, Affiliates, Professionals, members, managers, trustees or any other Person or entity acting or purporting to act on Your behalf.

4.      You are requested to produce Documents, Communications and information requested herein on a rolling basis.

5.      If You cannot fully respond to one or more of the Requests after exercising due diligence to secure the information requested thereby, please so state, and specify:  (a) the portion of each Request that cannot be responded to fully and completely; (b) what efforts were made to obtain the requested information; (c) the facts relied upon that support Your contention that the Request(s) cannot be answered fully and completely; and (d) any knowledge, information or belief You have concerning the unanswered portion of any such Request(s).

6.      All Documents shall be produced with metadata in TIFF format with OCR images, provided, however, that documents in Excel format shall be provided in native format.  ***All Documents shall be produced with metadata, including but not limited to the date and time***

*created/sent, author, recipients, cc-copies, bcc-blind copies, family member information, MD-5*

*hash, subject line and title and whether the document contains redactions*.

7.      If the response to any Request consists, in whole or in part, of an objection on the basis of or including undue burdensomeness, then provide those documents that can be produced without undue burden.  For such documents that are too unduly burdensome to produce, describe the process or method required to obtain said documents, the quantity and location of the documents involved and the estimated costs of the search.

8.      If You intend to withhold any responsive Document, Communication or other information on the basis of a claim of attorney-client privilege, work product protection or any other ground of non-disclosure, You shall identify such Document, Communication or information in writing by date of the Document's creation, title/file name/"re line"/subject, addressee/to/cc/bcc, addressor/from, Document type and topic covered and listed with a statement of the grounds alleged for withholding such Document, Communication or other information, including any privilege claimed.

9.      If Your response to any Request is any other objection, You must indicate if Documents are being withheld based on the objection(s), provide all Documents not covered by the objection and state the specific basis of the objection.

10.      If any Document responsive to these Requests has been destroyed, lost or discarded, state when the Document was destroyed, lost or discarded; identify the Person who destroyed, lost or discarded the Document; and, in the event the Document was destroyed or discarded, identify the Person who directed that it be destroyed or discarded.  Additionally, detail the reasons for the destruction, loss or discarding; describe the nature of the Document; identify the Persons who

created, sent, received or reviewed the Document; and state in as much detail as possible the contents of the Document.

11.     Subject to Instruction No. 6 above, Documents should be produced in the manner they are kept in the ordinary course of business.  In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

12.     All Documents shall be produced in such fashion as to identify the custodian or department in whose possession the Document was found and the business address of each Document's custodian(s).

13.     The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

14.     Unless otherwise specified, the Requests call for the production of Documents and Communications created, drafted, copied or otherwise obtained from January 1, 2019, to the present.

15.     By serving these Requests, the Committee reserves all rights, does not waive any of its rights, and expressly reserves the right to amend, to modify or otherwise to supplement these Requests.

## REQUESTS FOR PRODUCTION

1.      Documents and Communications sufficient to show Your total revenue, yearly revenue and monthly revenue, including, but not limited to, revenue received from *Common Sense, Uncovering the Truth*, *The Rudy Giuliani Show*, *America's Mayor Live* and appearances on any Media Outlets.

2.      Documents and Communications sufficient to show all contracts You have entered into, whether oral or written, formal or informal, relating to business dealings, advertisements, endorsements or any other sources of income, including, but not limited to, contracts between You and the Debtor, any family members or associates of the Debtor or any Debtor Related Entity.

3.      All Documents and Communications concerning the Debtor's filing of his chapter 11 petition, including all Documents and Communications concerning the planning of the filing of his chapter 11 petition.

4.      All Corporate Records, Financial Records and Tax Documents for or otherwise concerning You or any Debtor Related Entity.

5.      All Documents and Communications between You and the Debtor or any other Person concerning any Asset planning or estate planning with respect to, or in consideration of, any creditor's ability to reach any Assets in which the Debtor has a legal, possessory, beneficial, equitable, pecuniary or disputed interest.

6.      All Documents and Communications concerning the creation or purpose of any entity that does business, directly or indirectly, with the Debtor or the Debtor's businesses, including but not limited to the creation or purpose of any Debtor Related Entity.

7.      Documents and Communications sufficient to show the nature of the relationship between You and each Debtor Related Person.

4

8.      Documents and Communications sufficient to show the extent to which any Debtor Related Persons had, or continues to have, any role in managing, overseeing or providing advice and other services regarding Your Accounts, Assets or Financial Records.

9.      All Documents and Communications concerning any Payments, Transfers, Gifts or distributions of any Assets between You and the Debtor, any family members or associates of the Debtor or any Debtor Related Entity.

10.     All Documents and Communications concerning any Accounts belonging to You or for which You have or have ever had a legal, equitable, possessory, contingent, beneficiary or pecuniary interest, including:

a.  all monthly Account statements, with itemized transaction-level information;

b.  all yearly Account statements;

c.  any Deposit Tickets;

d.  any Withdrawal Slips, including any Documents and Communications concerning the substance of any withdrawals from any Account;

e.  all negotiated checks or cancelled checks including checks written against or deposited into the Account and any bank checks (including certified checks, cashier's checks, official checks or teller's checks) funded in whole or in part by the Account, including images of the front and back;

f.  all documents and communications sufficient to identify any deposits or withdrawals of all income listed in the Schedules and Statements;

g.  any Money Orders;

5

     h.   any Wire Transfers into, out of, or by any Account, including information concerning the origins, destinations, Account numbers, financial institutions and any other Wire Transfer information or ACH Documentation;

     i.   any Negotiable Instruments; and

     j.   any Cryptocurrency Wallets.

11.    All articles of incorporation, LLC agreements, LLP agreements, founding Documents, organization Documents, organization charts or other Corporate Records and Financial Records of Giuliani Communications, LLC

12.    All audited and unaudited balance sheets, income statements, consolidating schedules, cash flow statements, profit and loss statements, statements of changes in equity, statements of retained earnings and other financial statements or accounting reports, along with drafts, trial balances and internal accounting work papers of Giuliani Communications, LLC.

13.    Documents and Communications sufficient to identify a list of all Assets belonging to You, including without limitation Assets residing in any property or storage unit that is owned, leased, or otherwise belongs to You.

14.    All Documents and Communications concerning any application for a private loan, including, but not limited to, funds offered through the Paycheck Protection Program, by You or any Debtor Related Entity. .

15.    Documents and Communications sufficient to show the job titles, roles, salaries, wages, employment contracts and organizational charts relating to any employee, including, but not limited to, any of the Debtor Related Persons who work for, or have worked for, You or any of the Debtor Related Entities in any capacity.

16.     All Documents and Communications concerning any contracts, agreements, Payments, Transfers, Gifts or distributions of any Assets between You and (i) the Debtor, (ii) any Debtor Related Entity, (iii) any other entity that You own, operate, manage or benefit from (directly or indirectly) or (iv) any Debtor Related Person.

17.     Documents and Communications sufficient to identify any debts or other amounts, including without limitation Assets and property, owed to you by the Debtor.

18.     Documents and Communications sufficient to identify Your cash management system, including without limitation information pertaining to cash flow from operating activities, cash received from accounts receivable, cash paid for accounts payable, free cash flow to equity and working capital.