Hearing Date and Time: April 4, 2024 at 2:00 p.m. (prevailing Eastern Time)
Objection Deadline: March 28, 2024 at 4:00 p.m. (prevailing Eastern Time)

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

*Proposed Counsel to the Official Committee*
*of Unsecured Creditors of Rudolph W. Giuliani*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
In re:                                                          :    Chapter 11
                                                                :
**RUDOLPH W. GIULIANI**                                         :    Case No. 23-12055 (SHL)
**a/k/a RUDOLPH WILLIAM GIULIANI,**                             :
                                                                :
            **Debtor.**                                         :
----------------------------------------------------------------x

**NOTICE OF HEARING ON MOTION OF THE**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF**
**RUDOLPH W. GIULIANI TO COMPEL THE DEBTOR TO (I) SELL HIS**
**FLORIDA CONDOMINIUM AND (II) OBTAIN HOMEOWNERS INSURANCE**
**FOR HIS FLORIDA CONDOMINIUM AND NEW YORK CITY APARTMENT**

**PLEASE TAKE NOTICE** that on March 15, 2024, the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of the above-captioned debtor and debtor in possession filed the *Motion of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani to Compel the Debtor to (I) Sell His Florida Condominium and (II) Obtain Homeowners Insurance for His Florida Condominium and New York City Apartment* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Motion (the "Hearing") will be held before the Honorable Sean H. Lane, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York (the "Court"), 300 Quarropas Street, White Plains, New York 10601, on **April 4, 2024 at 2:00 p.m.** (**prevailing Eastern Time**). Parties wishing to appear at the Hearing, whether making a "live" or "listen only" appearance before the Court, must make an electronic appearance (an "eCourt Appearance") through the Court's website at *https://ecf.nysb.uscourts.gov/cgi-bin/nysbAppearances.pl*. eCourt Appearances must be made by **April 3, 2024 at 4:00 p.m. (prevailing Eastern Time).**

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief requested in the Motion shall: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) be filed electronically with the Court on the docket of this chapter 11 case by registered users of the Court's electronic filing system and in accordance with all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (which are available on the Court's website at *http://www.nysb.uscourts.gov*); and (d) be served so as to be actually received by the Court and the Committee no later than **March 28, 2024 at 4:00 p.m. (prevailing Eastern Time).**

**PEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Motion, or if you want the Court to hear your position on the Motion, then you or your attorney must attend the Hearing. If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Motion and may enter an order granting the relief requested by the Committee. If no responses or objections are timely filed and

2

served with respect to the Motion, the Committee may submit to the Court an order substantially in the form of the proposed order attached to the Motion as <u>Exhibit A</u>, which order may be entered with no further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion and other pleadings filed in this chapter 11 case may be obtained by visiting the Court's website at *http://www.nysb.uscourts.gov* in accordance with the procedures and fees set forth therein.

Dated: March 15, 2024
      New York, New York

By: */s/ Philip C. Dublin*
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Tel:    (212) 872-1000
Fax:   (212) 872-1002
Email:  idizengoff@akingump.com
           pdublin@akingump.com
           aqureshi@akingump.com

- and -

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Tel:    (214) 969-2800
Fax:   (214) 969-4343
Email:  rbibloblock@akingump.com

*Proposed Counsel to the Official Committee
of Unsecured Creditors of Rudolph W. Giuliani*

Hearing Date and Time: April 4, 2024 at 2:00 p.m. (prevailing Eastern Time)
Objection Deadline: March 28, 2024 at 4:00 p.m. (prevailing Eastern Time)

AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

*Proposed Counsel to the Official Committee*
*of Unsecured Creditors of Rudolph W. Giuliani*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:                                              :   Chapter 11
                                                    :
**RUDOLPH W. GIULIANI**                             :   Case No. 23-12055 (SHL)
a/k/a RUDOLPH WILLIAM GIULIANI,                     :
                                                    :
        Debtor.                                     :
---------------------------------------------------------------x

**MOTION OF THE OFFICIAL**
**COMMITTEE OF UNSECURED**
**CREDITORS OF RUDOLPH W. GIULIANI**
**TO COMPEL THE DEBTOR TO (I) SELL HIS FLORIDA**
**CONDOMINIUM AND (II) OBTAIN HOMEOWNERS INSURANCE**
**FOR HIS FLORIDA CONDOMINIUM AND NEW YORK CITY APARTMENT**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of Rudolph W. Giuliani a/k/a Rudolph William Giuliani (the "Debtor"), by and through its undersigned proposed counsel, hereby files this motion (this "Motion"), pursuant to sections 105(a), 522, 541 and 1112 of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), compelling the Debtor to (i) take all reasonable steps to sell his Florida

condominium (the "Florida Condo"); (ii) pending such sale, obtain homeowners insurance with respect to the Florida Condo; and (iii) pending the sale of his New York City apartment (the "NYC Apartment"), obtain homeowners insurance with respect to such apartment. In support of this Motion, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1. On several occasions, the Debtor has emphasized his limited assets available for distribution to creditors—according to the Debtor's counsel, "there's no pot of gold at the end of the rainbow."[1] Of this purported limited pool of assets disclosed by the Debtor, the Florida Condo is a key asset, and the proceeds thereof will be available to satisfy the claims of his creditors. Critically, the Debtor—a New York domiciliary who has elected New York State exemptions—has not and cannot claim a homestead exemption with respect to the Florida Condo. Since it is a nonexempt asset, the Debtor cannot retain the Florida Condo, and he has no credible argument that he is entitled to live there following the conclusion of his chapter 11 case. Any proposal by the Debtor to both claim a New York State homestead exemption for the NYC Apartment and retain his nonexempt multimillion-dollar Florida Condo cannot withstand legal scrutiny.

2. Despite having no legal basis under the Bankruptcy Code for retaining the Florida Condo, the Debtor has made no effort to monetize this nonexempt property of the estate. Moreover, according to his limited financial disclosures in the chapter 11 case, the Debtor incurs tens of thousands of dollars of maintenance fees for the Florida Condo every month. Concerned by this drain on estate resources, the Committee, through its counsel, repeatedly has asked the Debtor's counsel what the Debtor's plan is for the Florida Condo. To date, these entreaties have

---

[1]  *In re Rudolph W. Giuliani*, No. 23-12055 (SHL) (Bankr. S.D.N.Y. Jan. 19, 2024), Hr'g Tr. at 15:15.

5

been fruitless, and the Debtor has exhibited no motivation to list, market or otherwise take steps to sell the Florida Condo, the proceeds of which necessarily must be distributed to his creditors.

3. To make matters worse, and given that the Florida Condo and NYC Apartment are the Debtor's most valuable reported assets in his Schedules (as defined below), the Committee is troubled by the Debtor's recklessness in not maintaining any homeowners insurance for the Florida Condo or the NYC Apartment. The Debtor has chosen to avail himself of the protections of the Bankruptcy Code to obtain a breathing spell from his creditors, but in return he must exercise due care in protecting his assets and avoiding loss, since these are the assets that he, as a debtor in possession, is holding in trust for his creditors.

4. Accordingly, the Committee respectfully requests that this Court compel the Debtor to take all necessary steps to sell the Florida Condo and obtain homeowners insurance in order to preserve and protect estate resources and abide by his duty to maximize the value of the estate for the benefit of his creditors.

## JURISDICTION AND VENUE

5. The United States Bankruptcy Court for the Southern District of New York (this "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York entered February 1, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Committee confirms its consent to the Court's entering a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the Committee, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6

7. The legal bases for the relief requested herein are Bankruptcy Code sections 105(a), 522, 541 and 1112 and the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines").

## GENERAL BACKGROUND

8. On December 21, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has continued in possession of his property and is managing his affairs as a debtor and debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. To date, no request for the appointment of a trustee or examiner has been made in this chapter 11 case.

9. On January 12, 2024, the Committee was appointed by the United States Trustee for the Southern District of New York (the "U.S. Trustee") [Docket No. 46]. On January 16, 2024, the Committee selected Akin Gump Strauss Hauer & Feld LLP as its proposed counsel. On February 9, 2024, the Committee selected Global Data Risk LLC as its proposed specialized forensic financial advisor.

10. On January 26, 2024, the Debtor filed his schedules of assets and liabilities [Docket No. 70] (the "Initial Schedules") and statement of financial affairs [Docket No. 73] (the "Initial SOFA"); however, the Initial Schedules and the Initial SOFA were missing key information and contained inaccuracies. On February 5, 2024, the Debtor filed amended schedules of assets and liabilities [Docket No. 100] (the "Amended Schedules") and an amended statement of financial affairs [Docket No. 99] (the "Amended SOFA").

11. On February 7, 2024, the U.S. Trustee commenced the Debtor's meeting of creditors pursuant to Bankruptcy Code section 341(a) (the "341 Meeting"). As a result of the 341 Meeting, the Debtor was required to file further amended schedules of assets and liabilities

7

and a further amended statement of financial affairs to disclose missing information and correct inaccuracies.

12. On February 27, 2024, the Debtor filed further amended schedules of financial affairs [Docket No. 129] (the "Further Amended Schedules" and, collectively with the Initial Schedules and the Amended Schedules, the "Schedules").

## THE FLORIDA CONDO AND THE NYC APARTMENT

13. The Florida Condo is located at 315 South Lake Drive, Unit 5D, Palm Beach, Florida,[2] which is situated in a highly desirable area of Palm Beach near the Intracoastal Waterway, just minutes from West Palm Beach. The Florida Condo is located in "The Southlake," a luxury building with amenities such as a resort style pool and outdoor lounge area.[3]

14. As self-reported by the Debtor in the Schedules, the Florida Condo has a current value of $3.5 million,[4] and the Debtor owns the Florida Condo in fee simple. Schedule A/B, Part 1, Question 1.2. When the Debtor filed his Initial Schedules, he did not file Schedule D: Creditors Who Have Claims Secured by Property. *See generally* Initial Schedules. However, when he filed the Amended Schedules, he listed a secured claim for condominium association arrears in the amount of $16,745.93 owed to the Southlake Condominium Association. Amended Schedules, Schedule D: Creditors Who Have Claims Secured by Property, Part 1, Question 2.1.

---

[2] The Debtor lists the address of the Florida Condo as 316 South Lake Drive in his Schedule A/B: Property; however, this appears to be an error. Initial Schedules, Schedule A/B: Property, Question 1.2. The Debtor describes the property as a "six-story condominium in Palm Beach, probably about forty or fifty-year-old building" which description perfectly matches the Southlake, which is located at 315 South Lake Drive—not 316. *In re Rudolph W. Giuliani*, No. 23-12055 (SHL) (Bankr. S.D.N.Y. Feb. 7, 2024), 341 Meeting Tr. (the "341 Meeting Transcript") at 87:21-22.

[3] *The Southlake*, THE LUXURY TEAM, https://www.theluxuryteam.com/the-southlake/ (last visited Mar. 15, 2024).

[4] At the 341 Meeting, the Debtor stated that the Florida Condo was appraised two years ago in connection with his divorce proceeding, so "it's a pretty accurate appraisal." 341 Meeting Transcript at 148:1. The U.S. Trustee requested that the Debtor provide the appraisal, and Debtor's counsel confirmed it would be provided. *Id*. at 148:7-8. To date, the Committee still has not seen information regarding the appraisal of the Florida Condo.

8

At the 341 Meeting, counsel to the Debtor noted that the Southlake Condominium Association filed a notice that the Debtor was behind on his condominium association payments, so the Southlake Condominium Association was listed as a secured creditor despite Debtor's counsel's uncertainty as to whether the Southlake Condominium Association filed a lien on the property. *See* 341 Meeting Transcript at 88:19-89:8. The Debtor asserts that there are no mortgages on the Florida Condo. *See id.* at 93:12-19.

15. Additionally, at the 341 Meeting, the Debtor confirmed that he resides and spends most of his time in Manhattan and that the NYC Apartment is his primary residence. *See* 341 Meeting Tr. at 9:4, 23, 10:3-5. The Debtor testified that he does not maintain homeowners insurance for either the NYC Apartment or the Florida Condo. *See* 341 Meeting Transcript at 144:1-18.

16. In the Initial Schedules, the Debtor claims a homestead exemption for the NYC Apartment in the amount of $179,975.00 pursuant to NY CPLR § 5206. Initial Schedules, Schedule C: The Property You Claim as Exempt, Question 2. The Debtor does not claim any sort of exemption with respect to the Florida Condo. *See generally id.*

17. The Schedules list approximately $8,416 in monthly expenses related to the Florida Condo. *See* Initial Schedules, Schedule J: Your Expenses, Part 2, Item 20. In the Amended SOFA, however, the Debtor lists numerous transfers made within the 90 days prior to the Petition Date in respect of the Florida Condo, including—to name the most notable—maintenance fee payments of $15,995.43 to the Southlake Association on each of September 20, 2023, November 10, 2023 and November 15, 2023 and a payment of $84,408.59 on account of Florida property taxes on November 17, 2023. Amended SOFA, Part 3, Question 6. Later, in January, the Debtor made two more maintenance fee payments of $15,995.43 on each of

9

January 11, 2024 and January 17, 2024.  *Monthly Operating Report for the Month Ending 01/31/2024* [Docket No. 127] (the "January MOR").

18.     The NYC Apartment is located at 45 East 66th Street, New York, New York in a pre-war co-op building on the Upper East Side of Manhattan.[5]  In the Schedules, the Debtor reported that the NYC Apartment has a current value of $5.6 million and that he owns the NYC Apartment in fee simple.[6]  Schedule A/B, Part 1, Question 1.1.  As with the Florida Condo, the Debtor incurs significant monthly maintenance fees with respect to the NYC Apartment.  *See* Amended SOFA, Part 3, Question 6 (disclosing $15,000.00 maintenance fee payments on each of September 29, 2023 and October 31, 2023 and $18,000 maintenance fee on November 3, 2023); January MOR (disclosing $33,331.29 maintenance fee payment on January 17, 2024). The Committee understands that the Debtor intends to file an application to retain Sotheby's International Realty as the Debtor's real estate broker to market and sell the NYC Apartment in the near term.

### RELIEF REQUESTED

19.     By this Motion, the Committee requests entry of the Proposed Order: (i) compelling the Debtor to undertake actions immediately to sell the Florida Condo; (ii) compelling the Debtor to obtain homeowners' insurance for the Florida Condo and the NYC Apartment; and (iii) granting related relief.

---

[5] *45 E 66th Street Building*, COMPASS, https://www.compass.com/building/45-east-66th-street-building-manhattan-ny/282039927842032581/ (last visited Mar. 15, 2024).

[6] As noted above, the NYC Apartment was appraised in connection with the Debtor's divorce two years ago.  To date, the Committee has not received information regarding this appraisal either.

**BASIS FOR RELIEF**

**A.    Because the Florida Condo Is Not Exempt Property and Is a Significant Drain on Estate Resources, the Debtor Should Be Compelled to List, Market and Ultimately Sell the Florida Condo Pursuant to Bankruptcy Code Section 363.**

20.    Upon commencement of a bankruptcy case, an estate is created pursuant to Bankruptcy Code section 541, which includes all of a debtor's legal and equitable interests in property. 11 U.S.C. § 541(a)(1). Pursuant to Bankruptcy Code section 522, an individual debtor may exempt certain property from the estate notwithstanding Bankruptcy Code section 541 and may choose to claim exemptions under either bankruptcy or nonbankruptcy law. *Id.* § 522. A debtor claiming exemptions under State nonbankruptcy law may only elect to exempt property under State law that is applicable on the petition date in the place in which the debtor's domicile has been located for the two years immediately preceding the petition date. *Id.* § 522(b)(3)(A). "Domicile" means a physical presence in a place coupled with an intent to remain there. *See Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

21.    According to the Debtor, New York is currently his principal place of residence, and he only spends approximately 20-30% of his time in Florida. 341 Meeting Transcript at 10:5, 2. Upon information and belief, New York was the Debtor's domicile for the two years immediately preceding the Petition Date as well.[7] That the Debtor elected only New York State law exemptions in his Initial Schedules also supports this conclusion. *See* Initial Schedules, Schedule C: The Property You Claim as Exempt. Indeed, the Debtor claims a homestead exemption of $179,975.00 for the NYC Apartment under NY CPLR § 5206 but does not—and cannot—claim a homestead exemption for the Florida Condo. Accordingly, the State of Florida's "unlimited" homestead exemption, which shields a Florida domiciliary's homestead

---

[7]    The Debtor sent copies of his 2021 and 2022 tax returns to the Committee on an informal basis, and both tax returns include New York State resident tax forms.

11

from forced sale, does not apply here, and the Debtor has no cogent argument that he may keep the Florida Condo at the conclusion of this chapter 11 case.

22. Put simply, the Florida Condo is nonexempt property of the Debtor's estate, and it is also the Debtor's second most valuable asset reported in the Schedules. As property of the estate, the value of the Florida Condo ultimately will be distributed to the Debtor's creditors. As a result, it is merely a matter of *when*, not *if*, the Debtor will have to sell the Florida Condo in order to distribute the proceeds thereof to creditors in satisfaction of their claims.

23. Given this dynamic with respect to timing, every day that the Debtor holds the Florida Condo without making an effort to list, market and sell it, he continues to incur significant maintenance fees, in addition to other utilities, tax and upkeep costs. *See, e.g.,* January MOR, Statement of Receipts and Disbursements for the Period January 1, 2024 to January 31, 2024; *see also In re Sillerman*, 605 B.R. 631, 654 (Bankr. S.D.N.Y. 2019) (discussing—although in context of whether to appoint trustee—individual debtor's troubling delay in listing certain real estate properties and incurrence of substantial costs by continuing to carry those properties). Despite this significant drain on estate resources, the Debtor appears to have no interest in monetizing this asset, contrary to his fiduciary duty to maximize the value of the estate for the benefit of his creditors. *See In re Klaynberg*, 643 B.R. 309, 317 (Bankr. S.D.N.Y. 2022) ("[A] debtor in possession owes fiduciary duties to the bankruptcy estate and must, among other things, 'protect and . . . conserve property in [its] possession for the benefit of creditors' and 'refrain[] from acting in a manner which could damage the estate, or hinder a successful reorganization of the business.'") (quoting *In re Ashley River Consulting, LLC*, 2015 WL 1540941, at *8 (Bankr. S.D.N.Y. Mar. 31, 2015)); *In re WB Bridge Hotel LLC*, 656 B.R. 733, 750 (Bankr. S.D.N.Y. 2024) ("In nonlegal terms, directors and management of a [C]hapter 11

debtor are obligated to preserve the assets of the debtor and otherwise act consistently with the interests of *both* creditors and shareholders."); *In re Sillerman*, 605 B.R. at 648 ("Failure to protect and conserve estate property constitutes a breach of fiduciary duty."); *see also In re Martin Custom Made Tires Corp.*, 108 F.2d 172, 173 (2d Cir. 1939) ("A debtor in possession holds its powers in trust for the benefit of the creditors. The creditors have the right to require the debtor in possession to exercise those powers for their benefit."). Consequently, the Committee seeks to compel the Debtor to take the necessary steps to sell the Florida Condo in keeping with his fiduciary duties to creditors.

24. As explained by a bankruptcy court considering whether to mandate a sale that a debtor did not wish to carry out, bankruptcy courts have "the power . . . to regulate the conduct of a debtor which, after all, occupies the position of a trustee in bankruptcy, so that it not act detrimentally to the interest of creditors." *See In re Highway Equipment Co.*, 61 B.R. 58, 60 (Bankr. S.D. Ohio 1986). The court held that the creditor seeking to compel the sale had the burden of showing that the debtor "is acting without a valid business judgment." *Id.* Here, as discussed above, the Debtor is clearly acting without a valid business judgment, as he insists on holding a valuable nonexempt estate asset—which he unquestionably may not retain at the close of this chapter 11 case—while that same asset continues to generate thousands of dollars of monthly expenses and no income.

25. To be clear, by this Motion, the Committee does not seek to force the Debtor to run an expedited sale process or accept a below market offer for the Florida Condo. The Committee instead is concerned by the Debtor's refusal to take steps to monetize a critical asset even though continuing to hold it wastes estate resources to the detriment of his unsecured

creditors. The Committee recognizes and agrees that any sale transaction ultimately must be in the best interests of the Debtor's estate and all creditors.

26.  Thus, the Committee respectfully requests that the Court compel the Debtor to take all reasonable steps to list, market and sell the Florida Condo in order to preserve and maximize estate assets for the benefit of his creditors.

**B.   The Debtor Must Obtain Homeowners Insurance for the Florida Condo and the NYC Apartment.**

27.  Bankruptcy Code section 1112(b)(4)(C) provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). In addition, the U.S. Trustee Guidelines require a debtor to "maintain appropriate insurance coverage" and provide the U.S. Trustee with documentation evidencing the existence of such coverage "as early in the case as possible." U.S. Trustee Guidelines § 3-3.2.3. Moreover, the dollar amount of insurance coverage "must be sufficient to cover the fair market value of the estate's property." *Id.* Pursuant to Bankruptcy Code section 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

28.  Given that the Florida Condo and the NYC Apartment are the most valuable assets reported by the Debtor, his failure to maintain appropriate homeowners insurance puts the estate at great risk. The Florida Condo and the NYC Apartment are key sources of recoveries for the Debtor's creditors, and if anything were to happen to either of them, such loss would be a significant impediment to creditor recoveries in this chapter 11 case.

29.  At the 341 Meeting, the U.S. Trustee specifically asked the Debtor whether he had homeowners insurance for either the NYC Apartment or the Florida Condo, to which the Debtor

14

replied, "[n]ot right now" and "[n]ot that I can find," respectively. 341 Meeting Transcript at 143:24-144:12. The Debtor is aware of the issue posed by his failure to insure his most valuable reported assets and cites cost as the reason for this failure. *Id.* at 144:7. Yet, as disclosed in the Debtor's January Monthly Operating Report, the Debtor can make credit card payments totaling $26,212.87 in one month—for expenses including at least 60 Amazon transactions; charges for entertainment such as Netflix, Prime Video, Kindle, Audible, Paramount+ and Apple services and products; numerous Uber rides; payments on account of Maria Ryan's credit card statement; and travel and lodging expenses for his employees and associates[8]—but cannot find sufficient funds to purchase homeowners insurance to preserve the value of estate property for the benefit of his creditors. The Debtor's knowledge of this issue paired with his decision not to ameliorate it, calls into question whether the Debtor is discharging his fiduciary duties to his creditors.

30. Accordingly, to ensure that the Debtor complies with Bankruptcy Code section 1112(b)(4)(C), the U.S. Trustee Guidelines and his fiduciary duties, it is essential that the Debtor obtain homeowners insurance for the Florida Condo and the NYC Apartment. The Committee thus respectfully requests that the Court compel the Debtor to obtain homeowners insurance for these properties.

### NOTICE

31. Notice of this Motion has been provided to: (i) the U.S. Trustee; (ii) bankruptcy counsel to the Debtor; (iii) the Southlake Association; and (iv) all parties requesting notice under

---

[8] The January MOR contained no supporting documentation for the expenditures made by the Debtor on his credit cards. Upon request by the Committee, the Debtor's counsel provided several American Express credit card statements for the month of January to the Committee on an informal basis. However, despite repeated requests, to date, the Committee still has not received supporting documentation with respect to the Debtor's Discover credit card. The Committee will make the credit card statements it has received available to the Court and the U.S. Trustee upon request.

15

Bankruptcy Rule 2002. Due to the nature of the relief requested herein, the Committee submits that no other or further notice need be provided.

## **CONCLUSION**

**WHEREFORE**, the Committee respectfully requests that the Court (i) enter the Proposed Order, substantially in the form attached hereto as **Exhibit A** and (ii) grant the Committee such other and further relief as is just, proper and equitable.

Dated: March 15, 2024  
      New York, New York

    */s/ Philip C. Dublin*
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Tel:   (212) 872-1000
Fax:  (212) 872-1002
Email:  idizengoff@akingump.com
          pdublin@akingump.com
          aqureshi@akingump.com

- and -

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Tel:   (214) 969-2800
Fax:  (214) 969-4343
Email:  rbibloblock@akingump.com

*Proposed Counsel to the Official Committee*
*of Unsecured Creditors of Rudolph W. Giuliani*

## Exhibit A

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                                                  : Chapter 11
                                                                            :
**RUDOLPH W. GIULIANI**                             : Case No. 23-12055 (SHL)
a/k/a RUDOLPH WILLIAM GIULIANI,       :
                                                                            :
                         **Debtor.**                                :
------------------------------------------------------------x

**ORDER GRANTING MOTION OF THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF
RUDOLPH W. GIULIANI TO COMPEL THE DEBTOR TO (I) SELL HIS
FLORIDA CONDOMINIUM AND (II) OBTAIN HOMEOWNERS INSURANCE
FOR HIS FLORIDA CONDOMINIUM AND NEW YORK CITY APARTMENT**

Upon the motion (the "Motion")[1] of the Official Committee of Unsecured Creditors (the "Committee") of Rudolph W. Giuliani (the "Debtor") for entry of an order (this "Order"), pursuant to sections 105(a), 522, 541 and 1112 of title 11 of the United States Code (the "Bankruptcy Code") and the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees*, compelling the Debtor to take all reasonable actions to sell the Florida Condo and obtain homeowners insurance for the Florida Condo and the NYC Apartment; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York entered February 1, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, his creditors and other parties in interest; and this Court

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

having found that the notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and any objections to the relief requested in the Motion having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The relief requested in the Motion is granted.

2. The Debtor shall promptly take all reasonable actions to sell the Florida Condo, including, but not limited to:

   (a) Retaining a listing agent and entering into a listing agreement, in each case subject to approval by this Court;

   (b) Listing, marketing and soliciting offers to purchase the Florida Condo;

   (c) Maintaining the Florida Condo in good repair; and

   (d) Staying current on obligations related to the Florida Condo, including, but not limited to, taxes, homeowners association fees, maintenance fees and utility costs.

3. The Debtor shall send an update (email shall suffice) to counsel for the Committee and the U.S. Trustee on a weekly basis to provide a report regarding all updates with respect to the sale process for the Florida Condo, including all actions taken pursuant to Paragraph 2 hereof.

4. Within ten (10) days of the entry of this Order, the Debtor shall obtain homeowners insurance for the Florida Condo and the NYC Apartment that complies with the U.S. Trustee Guidelines and provide proof of insurance to the Committee and the U.S. Trustee.

5. The Committee and the Debtor are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

6. This Court retains exclusive jurisdiction with respect to all matters arising from, or related to, the implementation, interpretation and enforcement of this Order.

Dated: _____, 2024
New York, New York

                                              THE HONORABLE SEAN H. LANE
                                              UNITED STATES BANKRUPTCY JUDGE