```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                                      Chapter 11

RUDOLPH W. GIULIANI                                         Case No: 23-12055
a/k/a RUDOLPH WILLIAM GIULIANI

                                Debtor
-------------------------------------------------------X
```

## DEBTOR'S OPPOSITION TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF RUDOLPH W. GIULIANI TO COMPEL THE DEBTOR TO (I) SELL HIS FLORIDA CONDOMINIUM AND (II) OBTAIN HOMEOWNERS INSURANCE FOR HIS FLORIDA CONDOMINIUM AND NEW YORK CITY APARTMENT

**TO:    HONORABLE SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Rudolph W. Giuliani, the Debtor and Debtor-in-Possession herein ("Debtor"), by his attorneys Berger, Fischoff, Shumer, Wexler & Goodman, LLP, as and for his opposition to the motion by the Official Committee of Unsecured Creditors seeking to have the Debtor sell his Florida Condominium, states as follows:

### BACKGROUND

1. The Debtor commenced a voluntary petition for relief from his creditors under Chapter 11 of the Bankruptcy Code on December 21, 2023.

2. The Debtor continues to manage and operate his business as a debtor-in-possession under Bankruptcy Code Sections 1107(a) and 1108. An Official Committee of unsecured creditors was appointed on January 12, 2024. No trustee or examiner has been appointed in this case.

1

3. The Debtor is an individual who resides at 45 East 66th Street, New York, New York. The Debtor currently receives social security benefits and broadcasts a radio show and a podcast; these are his sole sources of income.

4. The Debtor's assets consist primarily of a New York City co-op apartment and Florida condominium with affiliated entities from which he conducts his broadcasts.

5. The Debtor's liabilities consist of various unliquidated claims by way of various lawsuits and a judgment for defamation in the amount of $148,000,000.00 arising from the case entitled "Freeman v. Giuliani" pending in the Federal District Court for Washington D.C.

6. On February 20, 2024, the Court entered an order allowing the Debtor's special litigation counsel, Joseph Sibley of Camara & Sibley, LLP, to file a motion for a new trial and also to file a Notice of Appeal in the above-referenced "Freeman" case. That process has only recently been initiated. It is yet unknown whether the process will result in a favorable outcome for the Debtor, or not, but it is certain that whatever the outcome is it will have a profound and direct impact on the Debtor's bankruptcy proceedings. While Appellate Counsel is still assembling and analyzing several meritorious issues to be raised on appeal; one issue stands out in that the amount of the punitive damages is excessive. As the D.C. Court of Appeals has held "Because *the purpose of punitive damages is to punish the tortfeasor and deter future conduct; the amount should be enough to inflict punishment, while not so great as to exceed the boundaries of punishment and lead to bankruptcy." Jonathan Woodner Co. v. Breeden,* 665 A.2d 929, 941 (D.C. 1995), which is the result here.

7. The Freeman plaintiffs have, through their counsel, commenced an adversary proceeding to have the Freeman judgment declared non-dischargeable.

8. As of the date of this motion, the creditors committee counsel's retention has not yet been approved by this Court.

9. On March 7, 2024, counsel for the creditors committee filed an application to conduct document production and 2004 examinations of numerous individuals.

10. The date for the Debtor's exclusive right to file a plan expires on April 19, 2024, and the time to solicit acceptances expires on June 18, 2024. A motion to extend the Debtor's exclusivity period is currently pending before this Court.

## JURISDICTION AND VENUE

11. The United States Bankruptcy Court for the Southern District of New York (this Honorable "Court") maintains jurisdiction over the instant Motion pursuant to 28 U.S.C. §1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, entered February 1, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

12. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## OPPOSITION TO RELIEF REQUESTED

13. The instant Motion seeks to have the Debtor list and sell his Florida Condominium in order to create a fund with which to pay his creditors. This motion is premature and without legal authority. It appears that the Committee is assuming that most if not all of the Freeman judgment will survive on appeal, and is proceeding as if all of the Debtor's assets need to be liquidated now to satisfy a potentially inflated claim. The Debtor could be irreparably harmed if the Florida residence is sold and later it turns out that the Freeman judgment is vacated.

14. While the Committee claims that the Debtor herein "[has] no legal basis under the Bankruptcy Code for retaining the Florida Condo...," the Committee itself presents no legal basis whatsoever for its argument that this Court should compel a sale of the Debtor's real property, much less on an application of a Committee of Unsecured Creditors of Debtor.

15. The Debtor is in the process of obtaining Court approval to list and sell his New York City apartment. An application to retain Sotheby's as the listing broker is currently being reviewed by the U.S. Trustee and and will be filed with the Court shortly. Upon Court approval, the apartment will be listed for approximately five million dollars on the open market. There exists no mortgage encumbering the apartment and after deductions for the federal tax lien and a deduction for the Debtor's entitled homestead exemption, the net proceeds of the sale of the apartment will be placed in an attorney escrow account for the benefit of the estate.

16. As correctly set forth in the moving papers, the Debtor testified to the fact that he spends a substantial amount of his time in Manhattan where the New York City apartment at issue is his primary residence. As such, in his Bankruptcy filing, the Debtor properly claimed a homestead exemption for the New York City property in the amount of $179,975.00 pursuant to CPLR §5206. Obviously, the Debtor cannot claim an exemption for the Florida condominium. While it is unusual to maintain two residences, it cannot be disputed that the Debtor divides his time between New York City and Florida. Debtor does not dispute the need to sell the New York City apartment and, in fact, both the Debtor and the Unsecured Creditors Committee have agreed that the New York City apartment should be

sold. Once the apartment is sold, the Debtor will primarily reside at the Florida condominium.

17. Once the New York City apartment is sold, and the Debtor has only one property to maintain, his monthly expenses will be significantly reduced.

18. The Florida condominium is not encumbered by a mortgage. The only expenses required to maintain the Florida condominium are the monthly condominium maintenance fees, the real estate taxes and standard household expenses, such as utilities. These expenses are no greater than if the Debtor rented an apartment in New York City and likely will be less. The Debtor spends $5,166.00 per month for maintenance and approximately $3,000.00 per month for real estate taxes on the Florida Condominium. Presently the Debtor is paying these expenses from exempt retirement accounts and not from estate property.

19. Counsel for the creditors' committee cannot point to a single statute in the Bankruptcy Code which compels a debtor who filed a voluntary Chapter 11 petition to sell assets; such statute simply does not exist. This would be the same as a non-judgment debtor having an ability, outside of bankruptcy, to force the sale of property. It is well settled that Congress intended, through the statutory language of the Bankruptcy Code, to allow debtors in possession, standing in the shoes of trustees, to conduct business as usual after the filing of Chapter 11, which does not encompass day-to-day input from creditors. *In re UNR Industries, Inc.*, 30 B.R. 609, 612 (Bankr. N.D.Ill. 1983). In fact, the duties of creditors committees are finely delineated and include the following: (1) consult with the trustee or debtor in possession concerning the administration of the case; (2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other

matter relevant to the case or to the formulation of a plan; (3) participate in the formulation of a plan, advise those represented by such committee of such committee's recommendations as to any plan formulated, and collect and file with the court acceptances of a plan; (4) request the appointment of a trustee or examiner under section 1104 of the Bankruptcy Code, if a trustee or examiner, as the case may be has not previously been appointed in the case; and (5) perform such other services as are in the interest of those represented. *Id. at 612.*

20. It has been held that the courts have no authority to interfere with the day-to-day business decisions of Chapter 11 trustees. *Id. at 612*; *In re Airlift Intern., Inc.*, 18 B.R. 787, 788 (Bankr. D. Fla. 1982); *In re Curlew Valley Associates*, 14 B.R. 506, 512-513 (Bankr. D. Utah 1981). This is especially true when the debtor in possession, as trustee, is not harming the estate in any way. While the Debtor would concede that if this was a chapter 7 filing, a trustee would have the ability to liquidate the assets of the estate for the benefit of creditors, this case is a voluntary chapter 11 reorganization and the forced liquidation of assets of the Debtor's bankruptcy estate is not in play. The Debtor understands that he has an obligation to pay his creditors what they would receive if his assets were liquidated, but that issue and such amounts/obligations will be established in an approved plan of reorganization, not by the proposed forced sale of the Florida condominium by the Committee.

21. No one is arguing that the Florida condominium is non-exempt property, but the purpose of a reorganization is to allow the Debtor to protect his assets as long as creditors are paid what they would be entitled to under a liquidation analysis. If the Committee has the right to compel a sale, would this not extend to individual chapter 13 cases where a debtor is

seeking to protect assets while paying his/her creditors? Are we going to allow chapter 13 Trustees to compel the sale of assets if the debtor is paying his/her creditors what s/he is required to do under the code? The proposed sale would be in direct contradiction of the intention of the code and the exact reason why chapter 11 bankruptcy protection exists. In a heading under the Committee's Basis for Relief, it references Bankruptcy Code Section 363 as a basis. Notably, the following pages of "argument" nowhere contain another reference to such section, or to its numerous sub-subsections as support. This is because there is no support in section 363 for a committee of unsecured creditors to compel a sale of a debtor-in-possession's real property. No case law is presented in the Committee's motion where a Court ordered a debtor in possession of real property to sell the property to protect its estate.

22. Additionally, as set forth in the Debtor's schedules and operating report, the majority of the money used to pay the Debtor's ongoing and revolving expenses comes from his exempt assets, namely monies from his IRA and social security benefits. Contrary to the Committee's position, it cannot be viewed as improper when the Debtor uses his exempt assets to help maintain a residence; in doing so, Debtor is actually maintaining an asset that serves to secure the creditors' payments when a plan is proposed.

23. The Committee believes the Debtor is acting with reckless abandon and improper judgment while insisting on holding onto the property at issue. To the contrary, the Debtor is using sound business judgment by understanding that he cannot afford or legally maintain two properties; one property needs to be sold. The Debtor is well aware that he is rapidly liquidating his IRA to support the two properties, which is simply unsustainable (and is

working diligently to grow his broadcast income); he has agreed that the New York City property must be sold.

24. The Committee cites to six decisions that purportedly "support" its argument that somehow the Debtor is failing to protect and conserve his real property in accordance with his duties to the estate. None of the decisions support the Committee's application herein.

25. The Committee cites the Court's decision in *In re Sillerman,* 605 B.R. 631, 654 (Bankr. S.D.N.Y. 2019) seemingly only to point out that the Bankruptcy Court therein "discuss[ed]" an "individual debtor's troubling delay in listing certain real properties and incurrence of substantial costs by continuing to carry those properties." Motion of Proposed Counsel to the Official Committee of Unsecured Creditors of Rudolph W. Giuliani by Philip C. Dublin dated March 15, 2024 ("Motion") at par. 23.

26. The Motion does not contain a discussion of the Court's holding in *In re Sillerman*, which was decided on a motion to appoint a Chapter 11 trustee, which is not the instant Motion. In the Court's analysis of whether to appoint a Chapter 11 trustee, the Court stated that a Chapter 11 bankruptcy proceeding allows a debtor to continue to manage and operate his business and any property of his estate. 11 U.S.C.S. § 1107; *see In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 665 (Bankr. S.D.N.Y. 2006). The *Sillerman* Court found the facts therein were "replete with examples of the Debtor's failure to comply with the Bankruptcy Code and his obligations thereunder", which is not present in the instant bankruptcy. The Debtor in *Sillerman*, nearly eighteen months after the order for relief, had not filed a single required report and failed to comply with Court orders. That case did not involve compelling a Debtor to sell property but a motion to appoint a trustee where the Debtor flagrantly defied the Court. In contrast, the Debtor herein is not hindering a successful reorganization of his estate, he is simply retaining and conserving real property for the

8

present time in which he intends to reside once his NYC apartment is sold. Indeed, the Motion does not and cannot point to any flagrant abuse of the Chapter 11 bankruptcy process or the real property in Florida by the Debtor.

27. The Committee's counsel cites *In re Klaynberg*, 643 B.R. 309, 317 (Bankr. S.D.N.Y. 2022), another case is deciding a motion to appoint a trustee, for the *dicta* therein about fiduciary duties owed to the estate by a debtor in possession, which the Debtor herein is well aware of. As the Motion states and we concede, the Debtor must exercise due care in protecting his assets and avoiding loss. Protecting the real property where the Debtor will reside is representative of that. The Court in *Klaynberg* held that there was cause to appoint a trustee (again, not to compel a debtor to sell any property) because it found fraud, conflicts of interest and mismanagement of the debtor's possessions. Again, the Court states that "Chapter 11 of the Bankruptcy Code allows a debtor in possession to continue to retain management and control of property of his estate." 11 U.S.C.S. § 1107; *Id.* at 309. Here, no allegations of fraud, conflict of interest or mismanagement have been alleged.

28. The Committee's counsel next inexplicably cites the decision of *In re WB Bridge Hotel LLC*, 656 B.R. 733, 750 (Bankr. S.D.N.Y. 2024). The holding of the Court therein is: (1) Debtors' counsel was granted withdrawal and disqualification as a result of being sued by the liquidating trustee of debtors' estates, and (2) the law firm was presumed to have accessed the debtors' confidential information as their counsel.

29. This instant Motion is not one to withdraw as counsel nor is it a motion to appoint a trustee. The Motion is specifically to compel a debtor in a Chapter 11 bankruptcy to sell his real property. Citing dicta from case law that is completely irrelevant to the instant case is not controlling and is unpersuasive.

30. Similarly, the decision in *In re Highway Equipment Co.*, 61 B.R. 58, 60 (Bankr. S.D. Ohio 1986), cited in the Motion, is more favorable to the Debtor herein than it is to the Committee. There, the Debtor had a business that held real property. The Court held that a debtor could not be forced to sell property where the debtor shows a valid business justification for its course of conduct. *Id.* at 60. The movant therein bore the burden of showing that the debtor was acting without a valid business justification, which it failed to do and its application was denied.

31. If the Court compels the sale of the Florida Condominium, then the Debtor will be forced to incur expenses for alternative housing. Surely the Committee does not intend the Debtor to join the ranks of the homeless? If the Debtor stays in New York, he is informed the cost to rent a a new home would be prohibitive and not much less than the maintenance costs of the Florida Condominium. Additionally, the maintenance of the Florida property has no detrimental effect to creditors. The property will continue to be an asset and its value will be used as the basis of a plan of reorganization.

32. In further opposition to the Committee's application, it must be taken into consideration that the Debtor operates his Podcast business from the two residences. Each residence has a "studio" area set up for broadcastingthe Podcast. Once the New York apartment is sold, the Debtor will need a place to operate the Podcast from if he is to earn money therefrom; the only remaining location would be from the Florida Condominium. The Debtor is actually saving money as he does not need to pay for and maintain both a Podcast studio and a residence in both New York City and Florida. The Debtor earns income from the Podcast and hopes in the future to earn even more, which would only serve to benefit

creditors. It is imperative that the Florida Condominium be maintained as the Debtor's residence when the New York City apartment is sold.

33. The Committee asserts that it "does not seek to force the Debtor to run an expedited sale process or accept a below market offer for the Florida Condo." Motion at par. 25. However, this is exactly what will happen if the application is granted, with extreme prejudice to the Debtor and his estate. The application to compel is premature.

34. The Committee is also requiring the Debtor to maintain insurance for the New York City apartment and Florida condominium. Attached hereto as Exhibit "A" are copies of the insurance the Debtor has obtained in connection with the two properties.

35. As this Court is aware, the New York City apartment is a cooperative corporation and has its own master insurance policy. The only insurance requirement the Debtor has is personal property coverage and liability. The Debtor has obtained said insurance as requested by the United States Trustee.

36. As to the Florida condominium, the same as above is true. The condominium corporation has its own insurance and covers everything but the inside of unit walls and personal property, and there is no requirement by the condominium corporation that a homeowner maintain insurance. However, the Debtor has obtained contents and liability insurance for the property.

WHEREFORE, it is respectfully requested that the Court deny the Motion to Compel in its entirety, together with such other, further and different relief as this Corut deems just, proper and equitable.

Dated: March 28, 2024
      Syosset, New York

                                      BERGER, FISCHOFF, SHUMER,
                                      WEXLER & GOODMAN, LLP
                                      *Attorneys for the Debtor*

                                      _____
                                      Heath S. Berger, Esq.
                                      Gary C. Fischoff, Esq.
                                      Joan Keely, Esq.
                                      6901 Jericho Turnpike, Suite 230
                                      Syosset, New York 11791