AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

*Counsel to the Official Committee of
Unsecured Creditors of Rudolph W. Giuliani*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
| In re: | : | Chapter 11 |
| | : | |
| **RUDOLPH W. GIULIANI** | : | Case No. 23-12055 (SHL) |
| a/k/a RUDOLPH WILLIAM GIULIANI, | : | |
| | : | |
| **Debtor.** | : | |
---------------------------------------------------------------x

**OBJECTION OF THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF
RUDOLPH W. GIULIANI TO DEBTOR'S APPLICATION
FOR RETENTION AND EMPLOYMENT OF KENNETH CARUSO
LAW LLC AS SPECIAL LITIGATION COUNSEL EFFECTIVE MARCH 20, 2024**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of Rudolph W. Giuliani a/k/a Rudolph William Giuliani (the "Debtor"), by and through its undersigned counsel, hereby submits this objection (this "Objection") to the *Debtor's Application for Retention and Employment of Kenneth Caruso Law LLC as Special Litigation*

*Counsel Effective March 20, 2024* [Docket No. 169-1] (the "KCL Application").[1]  In support of this Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.  By the KCL Application—the fourth retention application filed by the Debtor in just as many months as he has been in bankruptcy—the Debtor seeks authority to employ KCL (as defined below) to represent him in connection with a potential appeal of the Freeman Judgment (as defined below) to the D.C. Circuit (as defined below).

2.  The KCL Application gives rise to numerous factual and legal issues and cannot be approved under the applicable sections of the Bankruptcy Code.  Indeed, among other infirmities, the KCL Application incomprehensibly backtracks from the highly negotiated provisions agreed to by the Debtor, the Committee and the Freeman Plaintiffs (as defined below) in connection with the C&S Retention Order (as defined below), which were critical to the parties' agreement to such retention being approved, the automatic stay being lifted for the limited purposes of allowing the Debtor to file the ultimately unsuccessful Post-Judgment Motion (as defined below) and the notice of appeal from the Freeman Judgment and the Court granting applicable related, yet limited, relief.

3.  For the reasons set forth herein, the Committee respectfully requests that, if the Second Lift Stay Motion (as defined below) is granted, the KCL Application should only be approved if the terms of KCL's retention are modified to address the issues raised in this Objection.

---

[1] In support of the KCL Application, the Debtor filed the *Declaration of Kenneth A. Caruso in Support of the Application for an Order Authorizing the Retention and Employment of Kenneth Caruso Law LLC as Special Counsel to the Debtor Effective March 20, 2024* [Docket No. 169-2] (the "Caruso Declaration") and the *Declaration of Andrew Giuliani* [Docket No. 169-4].

2

## BACKGROUND

A. **General Background**

4. On December 21, 2023, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has continued in possession of his property and is managing his affairs as a debtor and debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in this chapter 11 case yet.[2]

5. On January 12, 2024, the Committee was appointed by the United States Trustee for the Southern District of New York [Docket No. 46]. On January 16, 2024, the Committee selected Akin Gump Strauss Hauer & Feld LLP as its counsel. On February 9, 2024, the Committee selected Global Data Risk LLC as its specialized forensic financial advisor.

B. **The Debtor's Limited Relief from the Automatic Stay and C&S Retention**

6. One of the Debtor's first actions in this chapter 11 case was to move for relief from the automatic stay to (i) file post-trial motions to modify the Freeman Judgment and/or for a new trial in the Freeman Litigation[3] and (ii) file a notice of appeal from the Freeman Judgment [Docket No. 25] (the "Lift Stay Motion"). The Freeman Plaintiffs and the Committee objected to the Lift Stay Motion, and a hearing on the Lift Stay Motion was held on January 19, 2024.

---

[2] On April 26, 2024, the Committee filed the *Motion of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani to Compel the Debtor to (I) File Delinquent Monthly Operating Reports and (II) File Timely Future Monthly Operating Reports* [Docket No. 197] (the "Motion to Compel"). By the Motion to Compel, at this time, "the Committee is not formally requesting the appointment of a chapter 11 trustee to the extent the Debtor files his past due monthly operating reports within two (2) business days of the entry of an order approving this Motion [to Compel] and timely files all future monthly operating reports." Motion to Compel ¶ 30.

[3] The "Freeman Litigation" means the lawsuit brought by Ms. Ruby Freeman ("Ms. Freeman") and Ms. Wandrea' ArShaye Moss ("Ms. Moss" and, together with Ms. Freeman, the "Freeman Plaintiffs") in the U.S. District Court for the District of Columbia ("D.C. District Court") against Mr. Giuliani in connection with his relentless public defamation of them following the 2020 presidential election.

7.      Shortly after filing the Lift Stay Motion, the Debtor also filed an application to retain Camara & Sibley, LLP ("C&S") as special litigation counsel [Docket No. 40] in connection with the Freeman Litigation. The Debtor filed several iterations of C&S's retention application, including an amended retention application for C&S on January 30, 2024 [Docket No. 87] and a supplemental amended application for C&S on February 16, 2024 [Docket No. 116], which was filed just prior to an emergency status conference on C&S's retention.

8.      Following the February 16, 2024 status conference concerning issues related to the Lift Stay Motion and C&S's retention, the Debtor, the Freeman Plaintiffs and the Committee ultimately reached consensus on agreed forms of order with respect to both the Debtor's request for limited relief from the automatic stay and C&S's retention. On February 20, 2024, the Court entered orders (i) granting limited relief from the automatic stay [Docket No. 124] ("Lift Stay Order") and (ii) authorizing the retention of C&S [Docket No. 123] ("C&S Retention Order").

9.      Pursuant to the Lift Stay Order, the Debtor was granted limited relief only to (i) file and litigate in the D.C. District Court post-trial motions in the Freeman Litigation under Federal Rule of Civil Procedure 50 and/or Federal Rule of Civil Procedure 59 and (ii) file a notice of appeal from the Freeman Judgment. Lift Stay Order ¶ 2. The Debtor otherwise was not granted authority to take further actions with respect to the appeal of the Freeman Judgment.

10.     The C&S Retention Order was similarly limited, authorizing the Debtor to employ C&S as special litigation counsel solely (i) to file and litigate the post-trial motion(s) in the D.C. District Court and (ii) to file a notice of appeal from the Freeman Judgment. C&S Retention Order at 2. For C&S to provide anything beyond that prescribed scope of services, the Debtor would have to seek further order of the Court. *Id.*

4

11. Following entry of the Lift Stay Order and C&S Retention Order, C&S, on behalf of the Debtor, filed the *Defendant's Renewed Motion for Judgment as a Matter of Law* (the "Post-Judgment Motion")[4] and a notice of appeal to the United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit").[5]

12. On April 15, 2024, the D.C. District Court entered an order and memorandum opinion denying the Post-Judgment Motion.[6] Two days later, on April 17, 2024, the Debtor filed the KCL Application.

13. Despite the Court's numerous entreaties to the case parties at the April 4, 2024 hearing to work together and discuss next steps regarding an appeal and any related issues,[7] on April 26, 2024, the Debtor filed a motion to lift the automatic stay to appeal the Freeman Judgment to the D.C. Circuit [Docket No. 195] (the "Second Lift Stay Motion") without consulting or even, at the absolute minimum, providing advance notice to the Committee.[8] In fact, in the Caruso Declaration, Caruso said, "if this Court grants this Application to retain KCL as the Debtor's special counsel on the Appeal, the Debtor will seek further orders of this Court modifying the stay, as and when necessary and appropriate, to perfect the Appeal." Caruso Declaration ¶ 24.

---

[4] *Freeman et al. v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-03354-BAH [Docket No. 147].

[5] *Id.* at Docket No. 148.

[6] *Id.* at Docket Nos. 158, 159.

[7] "Well, most importantly, just talk to other folks; the Committee, and Mr. Burbage, and Ms. Strickland about all that stuff." *In re Rudolph W. Giuliani*, 23-12055 (SHL), (Bankr. S.D.N.Y. Apr. 4, 2024), Hr'g Tr. at 23:17-19. "So my only point in raising any of this, is to just make sure we don't end up in an unproductive fire drill. So I'll ask all of you to talk about these issues." *Id.* at 25:2-5. "The reason why I mentioned that is just again . . . because it means there will be a certain amount of lead time that will allow us to deal with a motion – any motion that the debtor[] would file to go ahead with further steps in the appeal in time for you and your clients to file any opposition to that. That's why I want to make sure we don't – we're all just cognizant of . . . avoiding an unnecessary fire drill." *Id.* at 26:22-27:4. "There's a lot of questions and a lot of issues to think about, and so I'm happy to turn it over to you all to think about them and then provide me with your thoughts when we reach that point, but again, I'm just not a fan of unnecessary fire drills." *Id.* at 27:15-19.

[8] The Committee anticipates filing an objection to the Second Lift Stay Motion on or before the objection deadline for such motion.

5

### C. The KCL Application

14. On April 17, 2024, on notice of presentment, the Debtor filed the KCL Application. By the KCL Application, the Debtor seeks authority to employ Kenneth Caruso Law LLC ("KCL") as special litigation counsel to represent the Debtor in the appeal from the approximately $148 million judgment (the "Freeman Judgment") entered in the Freeman Litigation.[9]

15. The KCL Application proposes to compensate KCL with a flat fee of $250,000 and reimbursement of actual, necessary expenses, in each case subject to Court approval in accordance with Bankruptcy Code section 330(a). KCL Application ¶ 10. The KCL Application states that "KCL will not seek payment of its legal fees and expenses from the Debtor" and "will seek payment only from third party sources . . . that also waive any claim for reimbursement from the estate." KCL Application ¶ 11.

16. According to the KCL Application, Kenneth Caruso ("Caruso"), who is the sole member of KCL, will "provide all the partner-level/senior-level services" in connection with the appeal. Caruso Dec. ¶ 9. Caruso's standard hourly rate is $1,400, and Caruso asserts in the Caruso Declaration that the proposed $250,000 flat fee "is different from, and will likely be lower than, the fee that KCL generally charges in similar representations." Caruso Declaration ¶ 8.

17. In addition to Caruso, the KCL Application refers to two other attorneys who may be involved in the appeal. First, despite the C&S Retention Order's expressly limiting the scope of C&S's retention to filing and litigating a post-judgment motion before the D.C. District Court and filing a notice of appeal, the KCL Application states that C&S "will continue to participate [in the appeal] based on Mr. Sibley's involvement in the proceedings in the district court" and "assist with respect to the facts and the course of the proceedings in the district court." KCL Application

---

[9] *Freeman et al. v. Giuliani*, United States Court of Appeals for the District of Columbia Circuit, No. 24-7021.

¶ 7; Caruso Dec. ¶ 9. Without further explanation, Caruso asserts that C&S "will not duplicate efforts." Caruso Dec. ¶ 9.

18. The Caruso Declaration also provides that Caruso will be assisted by David Labkowski ("Labkowski"), the sole shareholder of Labkowski Law, P.A., who is not an employee of KCL. *Id.* Bafflingly, Caruso goes on to state that "KCL agrees that it will not share fees other than in compliance with Section 504 of the Bankruptcy Code, *except as otherwise disclosed herein*." Caruso Dec. ¶ 22 (emphasis added). Yet, there is no other mention of Bankruptcy Code section 504, the proposed breakdown of work between Caruso and Labkowski or the details of whatever fee sharing agreement is being proposed in the KCL Application. *See generally* KCL Application; Caruso Dec. Nor has an application been filed by the Debtor to retain Labkowski or his firm.

## **OBJECTION**

19. The KCL Application should be denied because it (i) appears to propose an impermissible compensation sharing arrangement with an attorney who has not been retained by this Court; (ii) appears to seek to expand the terms of C&S's retention without authority from this Court; (iii) provides for payment by "other third-party funding" contrary to the Court's express direction at the February 16, 2024 hearing; and (iv) includes mistakes and lacks disclosures that must be addressed or provided in order for KCL's retention to be approved.

**I.   Based on the Limited Disclosures in the KCL Application, Any Proposed Compensation Sharing Between Caruso and Labkowski Is Inappropriate, and Caruso and Labkowski Should Not Be Permitted to Circumvent the Requirements of Bankruptcy Code Section 327.**

20. The KCL Application alludes to an impermissible compensation sharing arrangement between KCL and Labkowski. *See* KCL Application ¶ 23 (noting that KCL "will not share fees other than in compliance with Section 504 of the Bankruptcy Code, except as otherwise

7

disclosed herein"). At this point, it is unclear to the Committee if the Debtor intends to file a separate retention application for Labkowski or if the Debtor imagines that approval of the KCL Application will somehow grant approval of Labkowski's services, since he was mentioned cursorily twice therein. KCL Application ¶ 9; Caruso Dec. ¶ 9. The Debtor cannot circumvent the prohibition against compensation sharing under Bankruptcy Code section 504 or the standards for employment of professionals in Bankruptcy Code section 327.

21. The purpose of Bankruptcy Code section 504 is "to prohibit altogether the sharing of compensation in a bankruptcy case" except if one of two limited exceptions applies, as set forth below. *In re Matis*, 73 B.R. 228, 231 (Bankr. N.D.N.Y. 1987); *see also* 4 Collier on Bankruptcy ¶ 504.02[1] ("[T]here can be no doubt that section 504(a) is intended to be mandatory and peremptory. The section illustrates a congressional intent to preserve the integrity of the bankruptcy process so that professionals engaged in bankruptcy cases attend to their duty as officers of the bankruptcy court[.]"). In relevant part, Bankruptcy Code section 504(a) provides:

> (a) Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share—
>
> (1) any such compensation or reimbursement with another person . . .

11 U.S.C. § 504(a).[10] Thus, a violation of Bankruptcy Code section 504 occurs when: (1) a person or entity was awarded compensation under section 503(b)(2); (2) a person or entity shared or agreed to share its awarded compensation; and (3) the person or entity that shared compensation

---

[10] Professionals retained pursuant to Bankruptcy Code section 327 and compensated in accordance with section 330 (as KCL is sought to be) fall within the ambit of Bankruptcy Code section 504(a), as their allowed compensation is payable under Bankruptcy Code section 503(b)(2). *See* 11 U.S.C. § 503(b)(2).

8

does not fall within one of Bankruptcy Code section 504(b)'s two stated exceptions. *See In re Mazzei*, 522 B.R. 113, 132 (Bankr. W.D. Pa. 2014).

22. Bankruptcy Code section 504(b) sets forth the limited exceptions to section 504(a)'s flat prohibition against compensation sharing. Bankruptcy Code section 504(b)(1) states:

> (b)
>
> > (1) A member, partner, or regular associate in a professional association, corporation, or partnership may share compensation or reimbursement received under section 503(b)(2) or 503(b)(4) of this title with another member, partner, or regular associate in such association, corporation, or partnership, and may share in any compensation or reimbursement received under such sections by another member, partner, or regular associate in such association, corporation, or partnership.
> >
> > (2) An attorney for a creditor that files a petition under section 303 of this title may share compensation and reimbursement received under section 503(b)(4) of this title with any other attorney contributing to the services rendered or expenses incurred by such creditor's attorney.

11 U.S.C. § 504(b); *see also In re Matis*, 73 B.R. at 231 ("[I]t is clear that Congress intended to prohibit altogether the sharing of compensation in a bankruptcy case except where the sharing occurred between "a member, partner or regular associate in a professional association, corporation or partnership[.]"). Some courts have applied a stricter, plain language reading of the exception focused on the legal relationship between firms, finding that section 504(b) does not permit fee sharing across two separate firms. *See, e.g.*, *In re Grenoble Apartments, II*, 152 B.R. 608, 611 (D.S.D. 1993) (looking to plain language of statute in holding that father and son who each maintained separate solo practices could not share compensation and son's retention had to be approved separately for him to receive compensation); *In re Maller Rest. Corp.*, 57 B.R. 72, 74 (Bankr. E.D.N.Y. 1985) ("[Section 504] thus makes crystal clear that there cannot be any sharing

9

based on the employment as counsel of a second firm. No compensation can be awarded [non-retained firm] in the name of [appropriately retained firm].").

23. Other courts, however, have analyzed compensation sharing arrangements by applying a more flexible approach, looking to the function of the professional whose retention has not been approved by the bankruptcy court to determine whether such professional constitutes a "regular associate" of the firm that had been retained appropriately. *See, e.g., In re GSC Grp., Inc.*, 502 B.R. 673, 736 (Bankr. S.D.N.Y. 2013) (finding that executive director engaged by firm as independent contractor was functionally acting as part of firm vis-à-vis the debtors such that he could be considered "regular associate" or "member" of firm). Under either of these analyses, however, and based on the meager disclosures provided in the KCL Application, a compensation sharing arrangement between Caruso and Labkowski cannot be approved.

24. Clearly, under a strict, plain language reading of Bankruptcy Code section 504 that looks to the legal relationship between the attorneys, Caruso and Labkowski cannot share, or agree to share, compensation. First, KCL and Labkowski Law, P.A. are separate firms, and Caruso and Labkowski each maintain independent, separate solo practices. *See* Caruso Dec. ¶ 9; *In re Grenoble Apartments, II*, 152 B.R. at 611 (holding that father and son, who maintained separate solo practices, were not part of same firm and had no professional relationship, could not share compensation, and son had to be retained separately); *In re Maller Rest. Corp.*, 57 B.R. at 74 (holding that appropriately retained firm could not share compensation with second firm identified as "of counsel" to appropriately retained firm). Moreover, and as far as the Committee can ascertain from the KCL Application, there is no "identifiable legal relationship" between Caruso and Labkowski or their respective firms, especially in light of Caruso's disclosure that Labkowski is "not an employee of KCL but he and I regularly work together on our cases." Caruso Dec. ¶ 9;

10

*see also In re Matis*, 73 B.R. at 232-33 (analyzing whether attorneys seeking compensation had "identifiable legal relationship" and finding no indication of "any relationship . . . other than that of independent co-counsel").

25. Any proposed compensation sharing arrangement between Caruso and Labkowski likewise cannot withstand scrutiny under an analysis of Labkowski's proposed function. Courts assessing compensation arrangements under a functional analysis have considered, among other things: (i) whether the professional at issue holds himself out (and is held out by the appropriately retained firm) as acting on behalf of the firm; (ii) what representations the parties make to the public and the court; (iii) whether the professional "essentially act[s] like [an] associate[] of the firm" (*i.e.*, working in the firm's office, enjoying the fringe benefits offered to the firm's associates, etc.); (iv) whether the professional is directly supervised by the firm's attorneys; and (v) whether the professional was screened for conflicts and expected to preserve confidentiality in the same manner as the firm's employees. *See In re Coin Phones, Inc.*, 266 B.R. 131, 133 (S.D.N.Y. 1998), *aff'd* 189 F.3d 460 (2d Cir. 1999); *In re Sheehan Mem'l Hosp.*, 380 B.R. 299, 303 (Bankr. W.D.N.Y. 2007); *In re GSC Grp., Inc.*, 502 B.R. at 736-39; *In re Worldwide Direct, Inc.*, 316 B.R. 637, 648-50 (Bankr. D. Del. 2004).

26. The Committee's analysis of these various considerations leads to the conclusion that Labkowski is not a "regular associate" of KCL. Labkowski does not hold himself out as acting on behalf of KCL, nor does KCL hold Labkowski out as acting on the firm's behalf. Labkowski maintains his own independent firm website, which does not mention KCL anywhere, and KCL's website similarly does not refer to Labkowski anywhere.[11] *See In re GSC Grp., Inc.*, 502 B.R. 736 (finding that executive director who served function of full-time member of firm and was listed on

---

[11] *See generally* LABKOWSKI LAW, https://www.labkowskilaw.com/ (last visited May 3, 2024); KENNETH CARUSO LAW LLC, https://www.kennethcarusolaw.com/ (last visited May 3, 2024).

11

firm's website did not constitute "outsider to the firm participating in a one-off assignment"). Moreover, the Caruso Declaration expressly disclaims an employment relationship with Labkowski, noting that Labkowski is "not an employee of KCL" and that Labkowski is "the sole shareholder of Labkowski Law, P.A." Caruso Dec. ¶ 9; *see In re Sheehan Mem'l Hosp.*, 380 B.R. at 303 (allowing compensation sharing where firm made representations to public and court that attorneys had "of counsel" relationship to firm).

27.    The Committee cannot, based on the paltry disclosures in the KCL Application, assess several of the other considerations examined by courts analyzing compensation sharing arrangements under Bankruptcy Code section 504. The KCL Application does not disclose whether Labkowski essentially acts as a "regular associate" of the firm; however, it seems unlikely from Caruso's and Labkowski's respective websites that Labkowski is working from KCL's office[12] or otherwise receives the benefits of working for KCL. *See In re Worldwide Direct, Inc.*, 316 B.R. at 648 (finding that temporary associates and paralegals "essentially acted like associates of the firm" where they, among other things, worked at firm's offices and enjoyed same fringe benefits as firm's regular associates). The KCL Application likewise makes no representations about the level of oversight Caruso will have over Labkowski's work, including whether they will each be responsible for separate issues or workstreams or whether Labkowski would function as an associate under the direct supervision of Caruso. *See generally* KCL Application; *see also* Caruso Declaration ¶ 9 (providing only that Caruso "will be assisted by" Labkowski and implying that, since Caruso will be providing all senior-/partner-level services, by inference, Labkowski will not be providing such services).

---

[12]    KCL's website lists an address in New York City, whereas the footer of Labkowski's home page notes "Miami, Florida" and includes a contact phone number with a Miami area code.

28.     Finally, and most critically, the KCL Application is entirely silent with respect to whether Labkowski has been screened for conflicts. *See In re Worldwide Direct, Inc.*, 316 B.R. at 650 (focusing on firm's presentation of evidence that temporary paralegals and associates were screened for conflicts and expected to preserve client confidentiality). Parties may not avoid the requirements of section 327(a) by entering into fee sharing arrangements, as such arrangements would "eviscerate the protections of section 327(a) and allow a third party (rather than the debtor or the [c]ourt) to determine who should render professional services for the estate." *In re United Comps. Fin. Corp.*, 241 B.R. 521 (Bankr. D. Del. 1999); *see also In re Worldwide Direct, Inc.*, 316 B.R. at 649 (noting inappropriateness of situation where work is performed by two distinct lawyers or firms, only one of which was retained by court, because other could "avoid[] disinterestedness rules or fiduciary obligations that professionals owe to the estate").[13]

29.     The Debtor has provided little information regarding the proposed compensation sharing between Caruso and Labkowski, and what scant information the Debtor has provided leaves the Committee with numerous questions and concerns. It is not for Caruso and Labkowski to determine if Labkowksi is a professional who should provide services to the Debtor, and they should not be permitted to circumvent the requirements of Bankruptcy Code sections 327(a) and 504. As a result, the Committee respectfully requests that the Court deny the KCL Application on the grounds that the KCL Application appears to propose an impermissible compensation sharing arrangement with an attorney who has not followed the requisite procedures for retention or provided any disclosures to demonstrate compliance with Bankruptcy Code section 504.

---

[13]  Beyond the above-described issues with respect to fee sharing and retention, the Committee is also concerned that Labkowski has not submitted a declaration, among other things, agreeing to be paid only by specific legal defense funds that submit *Lar Dan* affidavits and are approved by the Court and agreeing not to seek payment of any legal fees or expenses directly or indirectly from the Debtor.

13

**II. The KCL Application Appears to Contemplate an Expansion of C&S's Retention in Contravention of the C&S Retention Order.**

30. The KCL Application appears to contemplate the expansion of the terms of C&S's retention to include matters related to an appeal from the Freeman Judgment. *See* KCL Application ¶ 7 ("Camara & Sibley LLP will continue to participate based on Mr. Sibley's involvement in the proceedings in the district court."); Caruso Dec. ¶ 9 ("Mr. Joseph Sibley will assist with respect to the facts and the course of the proceedings in the district court."). The C&S Retention Order expressly limited the scope of C&S's retention, "unless approved pursuant to further order of the Court," to (i) filing and litigating in the D.C. District Court the Post-Judgment Motion and (ii) filing a notice of appeal from the Freeman Judgment. C&S Retention Order at p. 2. The Debtor does not have authority under the C&S Retention Order to retain C&S in connection with an appeal from the Freeman Judgment, and any contemplated expansion of C&S's retention to include services in connection with such an appeal is improper. If the Debtor wishes to expand the scope of C&S's retention, he must do so by filing a further application to retain C&S and obtain entry of a further order of this Court.

**III. The KCL Application Contemplates Payment of KCL by "Other Third-Party Funding" in Direct Contravention of the Court's Statements at the February 16, 2024 Hearing.**

31. In addition to suffering from the above-described infirmities, the KCL Application references several times the possibility that KCL may be paid by "other third-party funding." Caruso Dec. ¶ 20; Proposed Order, p. 2.[14] The Committee has already expressed to the Debtor that this language is unacceptable, and the Court has already made its view on this issue clear. At the February 16, 2024 hearing, the Court stated:

> I had a problem with the other third-party funding in the sense that
> I don't know what that means. And so nobody can do any of that
> without approval because then the Lar Dan affidavit is meaningless.

---

[14] The "Proposed Order" means the proposed order attached to the KCL Application at Docket No. 169-5.

14

> Because it says, well, there could be somebody else who could pop up, and then we're going to run this process again. So I had a problem with that. But I think I understood it to mean that if you strike that statement ["]or other third-party funding,["] that it was going to be an application and the funds were only coming from those two sources.
>
> . . .
>
> I am essentially telling the debtor that this language about other third-party funding is right out. It's inappropriate. It's a back door. And I am not approving any application that is conditioned on that language.

*In re Rudolph W. Giuliani*, No. 23-12055 (SHL) (Bankr. S.D.N.Y. Feb. 16, 2024), Hr'g Tr. at 24:17-25; 27:10-14. The Court's statements resulted in the Debtor's striking the "or other third-party funding" language and including a highly negotiated provision in the C&S Retention Order, which provides that (i) C&S's fees shall be paid solely by two specific legal defense funds; (ii) C&S shall not be paid by any third party without further order of the Court; (iii) C&S shall not seek payment of any legal fees or expenses directly or indirectly from the Debtor and the Debtor shall not directly or indirectly pay any such legal fees or expenses; and (iv) C&S shall waive any and all claims against the Debtor and his estate whether arising prior to, on the date of, or after entry of the C&S Retention Order. C&S Retention Order, p. 3.

32. This language is curiously absent from the Proposed Order despite the fact it provides a clear roadmap for an unobjectionable provision reflecting the Court's and Committee's comments.[15] In the unlikely event that the Second Lift Stay Motion is granted, the Committee

---

[15] At the April 4, 2024 hearing, the Court advised all of the parties to avoid an unproductive, unnecessary fire drill, so the Committee is disheartened by the lack of communication and minimal effort expended to avoid yet another contentious issue in this case—especially one which could have been easily avoided. Additionally, the Committee is frustrated by the Debtor's ignoring prior rulings or attempting to re-open previously decided issues, particularly in the context of his trying to retain yet another professional while making no progress toward a reorganization.

emphasizes that the KCL Application should be denied unless the Debtor incorporates this provision into a future iteration of a proposed order for KCL's retention.

**IV.**  **The KCL Application Contains Mistakes and Lacks Disclosures that Must Be Corrected or Provided, as Applicable, in Order for KCL's Retention to Be Approved.**

    **A.**  **Bankruptcy Code Section 327(e) Is Not the Appropriate Basis for Retention of KCL.**

33.    By the KCL Application, the Debtor seeks to retain KCL as special litigation counsel under Bankruptcy Code section 327(e). KCL Application ¶ 5. However, based on the facts disclosed in the KCL Application, it appears that Bankruptcy Code section 327(a), rather than section 327(e), is the appropriate provision under which the Debtor must seek to retain KCL.

34.    In relevant part, Bankruptcy Code section 327 provides:

> (a) The trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
>
> . . .
>
> (e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, ***an attorney that has represented the debtor***, ***if in the best interest of the estate***, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. §§ 327(a), (e) (emphasis added). Bankruptcy Code section 327(e) permits a debtor to employ as special counsel—as opposed to general bankruptcy counsel—an attorney who has previously represented the debtor if the attorney does not hold or represent an interest adverse to the estate with respect to the particular matter on which the attorney is to be employed. *Id.* § 327(e); *In re AroChem Corp.*, 176 F.3d 610, 622 (2d Cir. 1999). "By its terms, section 327(e)

16

applies only where the attorney represented the debtor." *In re AroChem Corp.*, 176 F.3d at 622. Accordingly, in cases where counsel proposed to be hired for a specified special purpose has not previously represented the debtor, then such counsel's retention should be assessed under section 327(a), and the court "should reason by analogy to 327(e)." *Id.*

35. Nowhere in the KCL Application does the Debtor claim that KCL has previously represented the Debtor. In fact, the KCL Application instead alludes to the fact that KCL will be relying on C&S for assistance with "the facts and the course of the proceedings in the district court." Caruso Dec. ¶ 9. Although Caruso frames this change of counsel in a positive light,[16] the whole purpose of Bankruptcy Code section 327(e) is to ensure consistent legal representation and avoid any issues that substituting counsel in the middle of litigation could precipitate. *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. at 328 (1977) ("[Section 327(e)] will most likely be used when the debtor is involved in complex litigation, and changing attorneys in the middle of the case after the bankruptcy case has commenced would be detrimental to the progress of that other litigation."); S. Rep. No. 989, 95th Cong., 2nd Sess. at 38-39 (1978) (same). Therefore, section 327(e) is not the proper provision under which to assess the Debtor's request to retain KCL, and the KCL Application and Proposed Order must be revised to seek authority to retain and employ KCL under Bankruptcy Code section 327(a).

**B. The KCL Application Lacks Disclosures Necessary to Understand the Scope and Services of KCL's Proposed Retention.**

36. Bankruptcy Rule 2014 requires, in pertinent part, that a retention application "state the specific facts showing the necessity for the employment, . . . the reasons for the selection, [and] the professional services to be rendered[.]" Bankruptcy Rule 2014(a). The purpose of Bankruptcy

---

[16] Caruso asserts, "it is not uncommon for a party to change counsel when a case moves from a trial court to an appellate court. Often, at the appellate stage, the party benefits from a new lawyer's fresh perspective on the case, even a case that was very ably tried." Caruso Dec. ¶ 7.

17

Rule 2014(a) is "to provide the court and the United States trustee with information to determine whether the professional's employment is in the best interest of the estate." *In re Enron Corp.*, No. 02 Civ. 5638 (BSJ), 2003 WL 223455, at *4 (S.D.N.Y. Feb. 3, 2003) (citing *In re Leslie Fay Co.*, 175 B.R. 525, 532 (S.D.N.Y. 1994)). Courts strictly construe Rule 2014's disclosure requirements. *In re Enron Corp.*, No. 02 Civ. 5638 (BSJ), 2003 WL 223455, at *4.

37. The KCL Application fails to set forth specific facts showing the necessity of KCL's employment or the reasons for the Debtor's selection of KCL in particular. *See* Bankruptcy Rule 2014(a). The KCL Application dedicates one paragraph to KCL's qualifications and expertise and another paragraph to the contention that "it is imperative to the Debtor and the estate that the Debtor succeed in and have excellent representation in the Appeal." KCL Application ¶¶ 8-9; *see also* Caruso Dec. ¶¶ 5-6 (noting that Caruso has defended "many" defamation cases and is "fully familiar with the law of intentional infliction of emotional distress" and that Caruso has appeared before numerous Courts of Appeal, but not the D.C. Circuit). Meanwhile, the closest the Caruso Declaration comes to setting forth specific facts regarding the necessity of KCL's employment is to assert that "it is not uncommon for a party to change counsel when a case moves from a trial court to an appellate court" and that "[o]ften, at the appellate stage, the party benefits from a new lawyer's fresh perspective on the case . . . I respectfully submit that I will bring that fresh perspective to the Appeal." Caruso Dec. ¶ 7. These disclosures fall far short of the requirements of Bankruptcy Rule 2014(a) and fail to support a finding that KCL's employment is necessary or in the best interest of the estate.

38. The insufficient disclosures in the KCL Application also leave the Committee with numerous questions about the proposed scope of KCL's services, who will be responsible for performing the services and the clear risk of duplicative services. *See In re Wang Labs., Inc.*, 143

18

B.R. 794, 795 (Bankr. D. Mass. 1992) ("Debtors can not [sic] envelop themselves with duplicative advisors at the expense of the estate.") (citing *In re Glosser Bros.*, 102 B.R. 38 (Bankr. W.D. Pa. 1989)).  The KCL Application introduces a cast of characters responsible for the appeal from the Freeman Judgment—KCL, Labkowski and C&S—but provides no detail about which attorneys will be responsible for which tasks and how they propose to prevent the duplication of services.  Instead, Caruso concludes that "Mr. Sibley will not duplicate efforts that Mr. Labkowski and I will undertake and perform."  Caruso Dec. ¶ 9.  This is not enough to pass muster under Bankruptcy Rule 2014 to demonstrate that KCL's retention is necessary or in the best interest of the estate.

39. The Committee respectfully submits that, if the Debtor's Second Lift Stay Motion is granted, the KCL Application should only be approved if the Debtor modifies the KCL Application to address these concerns.

## RESERVATION OF RIGHTS

40. The Committee reserves all of its rights and remedies with respect to the KCL Application, the Debtor and all other matters related to this chapter 11 case.

19

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Committee requests that the Court deny the relief requested in the KCL Application.

Dated: May 3, 2024  
     New York, New York

*/s/ Philip C. Dublin*
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Tel:   (212) 872-1000
Fax:   (212) 872-1002
Email:  idizengoff@akingump.com
          pdublin@akingump.com
          aqureshi@akingump.com

- and -

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Tel:   (214) 969-2800
Fax:   (214) 969-4343
Email:  rbibloblock@akingump.com

*Counsel to the Official Committee of*
*Unsecured Creditors of Rudolph W. Giuliani*