AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

*Counsel to the Official Committee of*
*Unsecured Creditors of Rudolph W. Giuliani*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re:                                                          :    Chapter 11
                                                                :
**RUDOLPH W. GIULIANI**                                         :    Case No. 23-12055 (SHL)
a/k/a RUDOLPH WILLIAM GIULIANI,                                 :
                                                                :
                       **Debtor.**                              :
------------------------------------------------------------x

**OBJECTION OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS OF RUDOLPH W.
GIULIANI TO THE DEBTOR'S MOTION FOR AN ORDER
MODIFYING THE AUTOMATIC STAY FOR THE LIMITED PURPOSE
OF ALLOWING THE DEBTOR TO PROCEED WITH PROSECUTING
AND PERFECTING THE *FREEMAN* APPEAL BEFORE THE D.C. CIRCUIT**

The Official Committee of Unsecured Creditors (the "Committee") of Rudolph W. Giuliani a/k/a Rudolph William Giuliani (the "Debtor"), by and through its undersigned counsel, hereby submits this objection (this "Objection") to the *Debtor's Motion for an Order Modifying the Automatic Stay for the Limited Purpose of Allowing the Debtor to Proceed with Prosecuting and*

*Perfecting the Freeman Appeal Before the D.C. Circuit* [Docket No. 195] (the "Second Stay Relief Motion").[1] In support of this Objection, the Committee respectfully states as follows.

## PRELIMINARY STATEMENT

1. By the Second Stay Relief Motion, the Debtor asks this Court to bless a framework where he does nothing to advance his chapter 11 case and continues with the Freeman Litigation (as defined below) in the exact manner he wishes, despite not having participated in any meaningful way for several years before the Petition Date (as defined below). With no end in sight for any potential appeal of the Freeman Judgment (as defined below), the Debtor asks his other creditors to sit on their hands while he continually delays his day of reckoning, at their expense. In fact, he pretends the pursuit of an appeal of the Freeman Judgment is for the benefit of his other creditors; yet, in recent weeks, he and his counsel have had virtually no communication with the Committee and its counsel, refusing to even respond to ordinary course emails about the Debtor's intent to comply with his statutory obligations or prior representations made to this Court, the Committee's requests for contact information for certain targets of the Committee's Bankruptcy Rule 2004 subpoenas and the timing of when exactly the Debtor finally intends to file his long-awaited application to employ Sotheby's International Realty as broker to sell his New York City apartment.[2] Instead, the Debtor continues wasting resources funding and living in two multi-

---

[1] Attached to the Second Stay Relief Motion is the *Declaration of Kenneth A. Caruso in Support of the Application for an Order to Modify the Automatic Stay to Allow Prosecution of the Appeal (as Defined Below)* [Docket No. 195-2] (the "Caruso Declaration"). The Caruso Declaration contains (i) background information and dates concerning the Debtor's first attempt to modify the stay to proceed with the Freeman Litigation (as defined below) and the outcome thereof in this Court and the D.C. District Court (as defined below); (ii) Mr. Caruso's opinion that "the time has come for the Debtor to perfect and prosecute the Appeal"; (iii) a recitation of the relief sought by the Second Stay Relief Motion; and (iv) the D.C. Circuit Court's (as defined below) scheduling order (the "Circuit Court Scheduling Order"). The Caruso Declaration does not, however, indicate whether the Debtor has informed the D.C. Circuit Court that the automatic stay remains in place.

[2] The only recent meaningful response that the Committee and its counsel have received from the Debtor and his counsel is in connection with an email from the Committee's counsel expressing serious concerns with respect to the Debtor's late filed monthly operating report for March. That operating report includes a brazenly unauthorized payment of $12,000 to the Debtor's accountant for whom no retention application has been filed. The Debtor's

2

million dollar residences, proposes extended deadlines for himself in the chapter 11 case, misses those same extended deadlines, consistently fails to file timely monthly operating reports[3] and leaves his creditors and this Court largely in the dark.

2.     The Committee finds itself on a hamster wheel trying to hold the Debtor accountable for his recurring and continuous misdeeds. Indeed, this is the second time the parties have been through this very exercise. The Second Stay Relief Motion is a near carbon copy of the Debtor's low-effort, woefully deficient First Stay Relief Motion (as defined below), and, like with the First Stay Relief Motion, the Debtor has failed again to establish his *prima facie* case, which means the burden never shifts and the requested relief must be denied. Additionally, the Second Stay Relief Motion is reflective of the Debtor's continuing efforts to abuse the bankruptcy process and reap all the benefits thereof while ignoring his related obligations as a debtor in possession. The Debtor is telling us that his bankruptcy case is solely a means to fight the Freeman Judgment, the automatic stay is his sword against the Freeman Plaintiffs (as defined below) and all of his creditors and the rules governing the bankruptcy process and the integrity thereof do not matter to him. The Committee hears him loud and clear and will not stand by silently.

3.     If the Debtor had any serious, good faith intentions for his bankruptcy case and a reorganization, then he would talk to the Committee and his creditors. He would provide complete, accurate and timely financial disclosures. He would not waste everyone's time repeatedly filing the same self-serving and inadequate pleadings, ignoring the Court's related guidance and rulings

---

counsel agreed with the Committee's assessment that the payment is not authorized. Additionally, the monthly operating report for February includes, and relies upon, two February 2023 bank statements. When the Committee's counsel requested the February 2024 bank statements, the Debtor's counsel did provide such.

[3] On May 2, 2024, the Debtor filed his monthly operating report for the period ending February 29, 2024 [Docket No. 199] 42 days after it was due, and, on May 6, 2024, the Debtor filed his monthly operating report for the period ending March 31, 2024 [Docket No. 203] 15 days after it was due. Both reports, like all prior reports (which were also filed late), raise more questions and issues, including with respect to the continued payment of expenses of third parties such as his affiliated businesses, daily Amazon and Apple charges and the $12,000 unauthorized payment to his accountant.

3

and the Committee's comments and concerns. He would explore options to advance his case expeditiously and to resolve the Freeman Plaintiffs' claims and all of the other claims against him consensually.[4] Unfortunately, the Debtor has continued to show that he has no such serious, good faith intentions.

4. Accordingly, for the reasons set forth above and herein, the relief requested in the Second Stay Relief Motion must be denied.

## BACKGROUND

**A. General Background**

5. On December 21, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor has continued in possession of his property and is managing his affairs as a debtor and debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in this chapter 11 case yet.[5]

6. On January 12, 2024, the Committee was appointed by the United States Trustee for the Southern District of New York [Docket No. 46]. On January 16, 2024, the Committee selected Akin Gump Strauss Hauer & Feld LLP as its counsel. On February 9, 2024, the Committee selected Global Data Risk LLC as its specialized forensic financial advisor.

---

[4] Surely a chapter 11 trustee would seek to expeditiously resolve such claims consensually.

[5] On April 26, 2024, the Committee filed the *Motion of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani to Compel the Debtor to (I) File Delinquent Monthly Operating Reports and (II) File Timely Future Monthly Operating Reports* [Docket No. 197] (the "Motion to Compel"). By the Motion to Compel, at this time, "the Committee is not formally requesting the appointment of a chapter 11 trustee to the extent the Debtor files his past due monthly operating reports within two (2) business days of the entry of an order approving this Motion [to Compel] and timely files all future monthly operating reports." Motion to Compel ¶ 30.

4

**B.    The Debtor's First Stay Relief Motion and C&S Retention**

7.      One of the Debtor's first actions in this chapter 11 case was to move for relief from the automatic stay to (i) file post-trial motions to modify the Freeman Judgment and/or for a new trial in the Freeman Litigation[6] and (ii) file a notice of appeal from the Freeman Judgment [Docket No. 25] (the "First Stay Relief Motion"). The Freeman Plaintiffs and the Committee objected to the First Stay Relief Motion, and a hearing on the First Stay Relief Motion was held on January 19, 2024.

8.      Shortly after filing the First Stay Relief Motion, the Debtor also filed an application to retain Camara & Sibley, LLP ("C&S") as special litigation counsel [Docket No. 40] in connection with the Freeman Litigation.

9.      Following the February 16, 2024 status conference concerning issues related to the First Stay Relief Motion and C&S's retention, the Debtor, the Freeman Plaintiffs and the Committee ultimately reached consensus on agreed forms of order with respect to both the Debtor's request for limited relief from the automatic stay and C&S's retention. On February 20, 2024, the Court entered orders (i) granting limited relief from the automatic stay [Docket No. 124] (the "Lift Stay Order") and (ii) authorizing the retention of C&S [Docket No. 123] (the "C&S Retention Order").

10.     Pursuant to the Lift Stay Order, the Debtor was granted limited relief only to (i) file and litigate in the D.C. District Court post-trial motions in the Freeman Litigation under Federal Rule of Civil Procedure 50 and/or Federal Rule of Civil Procedure 59 and (ii) file a notice of appeal

---

[6] The "Freeman Litigation" means the lawsuit brought by Ms. Ruby Freeman ("Ms. Freeman") and Ms. Wandrea' ArShaye Moss ("Ms. Moss" and, together with Ms. Freeman, the "Freeman Plaintiffs") in the U.S. District Court for the District of Columbia ("D.C. District Court") against Mr. Giuliani in connection with his relentless public defamation of them following the 2020 presidential election.

5

from the Freeman Judgment (the "Appeal"). Lift Stay Order ¶ 2. The Debtor otherwise was not granted authority to take further actions with respect to the Appeal.

11. The C&S Retention Order was similarly limited, authorizing the Debtor to employ C&S as special litigation counsel solely (i) to file and litigate the post-trial motion(s) in the D.C. District Court and (ii) to file a notice of appeal from the Freeman Judgment. C&S Retention Order at 2.[7]

12. Following entry of the Lift Stay Order and C&S Retention Order, C&S, on behalf of the Debtor, filed the *Defendant's Renewed Motion for Judgment as a Matter of Law* (the "Post-Judgment Motion")[8] and a notice of appeal to the United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit").[9] On April 15, 2024, the D.C. District Court entered an order and memorandum opinion denying the Post-Judgment Motion (the "Post-Judgment Denial Order").[10]

C. The Second Stay Relief Motion

13. Despite the Court's numerous entreaties to the parties throughout the chapter 11 case to work together and discuss next steps regarding issues related to the Freeman Litigation,[11]

---

[7] Despite the fact that, with respect to a notice of appeal, (i) the Lift Stay Order solely authorized the Debtor to "file a notice of appeal from the Freeman Judgment entered on December 18, 2023" and (ii) the C&S Retention Order solely authorized C&S "to file a notice of appeal from the judgment entered in the Freeman Litigation on December 18, 2023," on May 6, 2024, C&S filed the *Defendant's Amended Notice of Appeal* (the "Amended Notice of Appeal") in the Freeman Litigation, adding to the Debtor's appeal the Post-Judgment Denial Order and the related memorandum opinion. *See Freeman, et al. v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-03354-BAH [Docket No. 161].

[8] *Freeman, et al. v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-03354-BAH [Docket No. 147].

[9] *Id.* at Docket No. 148.

[10] *Id.* at Docket Nos. 158, 159.

[11] At the hearing on the First Stay Relief Motion, the Court emphasized that "for things like this [related to the Freeman litigation], surprise is a bad idea, and I want to avoid surprise. So please talk to each other first." *In re Rudolph W. Giuliani*, 23-12055 (SHL), (Bankr. S.D.N.Y. Jan. 19, 2024), Hr'g Tr. at 78:23-25. Months later, the Court provided the same guidance: "Well, most importantly, just talk to other folks; the Committee, and Mr. Burbage, and Ms. Strickland about all that stuff." *In re Rudolph W. Giuliani*, 23-12055 (SHL), (Bankr. S.D.N.Y. Apr. 4, 2024), Hr'g Tr. at 23:17-19. "So my only point in raising any of this, is to just make sure we don't end up in an unproductive fire drill. So I'll ask all of you to talk about these issues." *Id.* at 25:2-5. "The reason why

6

on April 26, 2024, the Debtor filed the Second Stay Relief Motion to appeal the Freeman Judgment to the D.C. Circuit [Docket No. 195] (the "Second Stay Relief Motion") without consulting or even, at the absolute minimum, providing advance notice to the Committee.

14. The Second Stay Relief Motion looks exasperatingly similar[12] to the First Stay Relief Motion. The Second Stay Relief Motion seeks an order "modifying the automatic stay for the limited purpose of allowing the Debtor to prosecute and perfect the Appeal." Specifically, the Debtor asks this Court:

   a. To authorize the Debtor to file an amended notice of appeal, as required by Rule 4(a)(4)(B)(ii), Fed. R. App. P., in order to bring the Post-Judgment Denial Order up for review on the Appeal; the deadline for filing the Amended Notice of Appeal is May 15, 2024;

   b. To authorize counsel for the Debtor to comply with the Circuit Court Scheduling Order (including, specifically, to facilitate such compliance, authorizing Mr. Caruso and his colleague David Labkowski, Esq.,[13] to move for admission *pro hac vice* in the D.C. Circuit);

   c. To authorize counsel for the plaintiffs in the Freeman Litigation to comply with the Circuit Court Scheduling Order; and

   d. To authorize the parties to the Appeal and their counsel to comply with further scheduling orders that the Clerk of the D.C. Circuit will make, such as orders establishing a briefing schedule and fixing a date for oral argument.

Second Stay Relief Motion ¶¶ 14-15. From the Second Stay Relief Motion, it is not clear whether the Debtor has informed the D.C. Circuit Court that, at this time, the automatic stay remains in place; instead, the Debtor points to several May deadlines in the Circuit Court Scheduling Order

---

I mentioned that is just again . . . because it means there will be a certain amount of lead time that will allow us to deal with a motion – any motion that the debtor[] would file to go ahead with further steps in the appeal in time for you and your clients to file any opposition to that. That's why I want to make sure we don't – we're all just cognizant of . . . avoiding an unnecessary fire drill." *Id.* at 26:22-27:4. "There's a lot of questions and a lot of issues to think about, and so I'm happy to turn it over to you all to think about them and then provide me with your thoughts when we reach that point, but again, I'm just not a fan of unnecessary fire drills." *Id.* at 27:15-19.

[12] This issue will be discussed in greater detail herein.
[13] The Debtor has not filed an application to retain Mr. Labkowski.

7

and proposes that alone requires the automatic stay to be modified to allow him to pursue an appeal of the Freeman Judgment now.

## OBJECTION

15. The Second Stay Relief Motion should be denied because (i) the Debtor again has failed to meet his burden to show that cause exists to lift the automatic stay; (ii) application of the Sonnax Factors (as defined below) weighs heavily against modifying the automatic stay; and (iii) the relief requested in the Second Stay Relief Motion conflicts with central tenets of bankruptcy law.

### I. The Debtor Failed to Meet His Burden to Demonstrate a Right to Relief from the Automatic Stay.

16. With respect to a motion for relief from the automatic stay, the moving party bears the initial burden to demonstrate that cause exists to lift the automatic stay. *See, e.g.*, *In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3778, at *6 (Bankr. S.D.N.Y. Aug. 16, 2012). As part of that *prima facie* case, the movant must demonstrate a factual and legal right to relief from the automatic stay through application of the Sonnax Factors. *See, e.g.*, *In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3624, at *10 (Bankr. S.D.N.Y. Aug. 2012); *In re ELMIRA LITHO, Inc.*, 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994). If the movant fails to make the initial showing, then a court should deny relief without requiring any showing from an opposing party because it is only after the movant establishes a *prima facie* case that the burden shifts. *See, e.g.*, *In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3778, at *7; *In re ELMIRA LITHO, Inc.*, 174 B.R. at 900-02.

17. Astonishingly, despite the Court's clear views on the First Stay Relief Motion, the Second Stay Relief Motion is essentially the same, low-effort motion as the First Stay Relief Motion, merely updating the requested relief within the same deficient form to reflect his request

8

to pursue the Appeal rather than the Post-Judgment Motion. And just like the First Stay Relief Motion, the Debtor has failed to meet his initial burden.

18. With respect to the First Stay Relief Motion, the Court explained:

> The motion itself that I received is exceedingly brief. It's fairly pro forma. I think it's probably five pages of content. One page is the double-spaced recitation of the Sonnax factors that are relevant in these kinds of motions. And there's only really two paragraphs about . . . how those apply or . . . what's going to happen and what the debtor wants to do.
>
> . . .
>
> And the reason why I'm focusing so much on the agreement of the parties and what parties can live with is frankly, the motion doesn't answer the mail. It doesn't lay out the Sonnax factors. There's case law that says when you don't engage in an analysis on Sonnax factors, that is alone a basis for denial of a motion. It's very pro forma. And so I mean, there is a basis to deny it, given the record.
>
> . . .
>
> And it's striking how minimal an effort was made on the motion . . . . And this minimal effort was also surprising, given the underlying background here, as debtor would have to know this effort, this request to lift the automatic stay to continue the Freeman litigation, would be met with great scrutiny by the Freeman plaintiffs and other creditors.

*In re Rudolph W. Giuliani*, 23-12055 (SHL), (Bankr. S.D.N.Y. Jan. 19, 2024), Hr'g Tr. at 19:21-25, 20:1-2, 57:18-25, 73:15-21. The Second Stay Relief Motion, like the first, is exceedingly brief and pro forma. The Debtor again dedicates one double-spaced page of the less-than-seven-page motion to a recitation of the Sonnax Factors but analyzes those factors in about four sentences, which analysis simply does not make sense.

19. For example, one of the four sentences provides that "[i]t is imperative to a full and fair resolution of this Chapter 11 proceeding that the Debor have the *Freeman* judgment reversed or modified." Second Stay Relief Motion ¶ 18. The Debtor provides no explanation as to why a

9

claim based on a judgment that the D.C. District Court has repeatedly found to be valid must be reversed or modified in order for the chapter 11 case to have a "full and fair resolution." Another of the four sentences provides that "if the Debtor is successful in the Appeal, it . . . will surely accelerate the Debtor's exit strategy." Second Stay Relief Motion ¶ 18. That statement contradicts logic, as the appellate process can take months or even years to come to a resolution. Contrary to the Debtor's unsupported statement, playing out the appellate process (and continuing to press pause on his chapter 11 case) will surely delay the Debtor's exit from chapter 11 and that delay will drain the Debtor's limited resources and deplete his assets available for distribution to creditors. The Debtor clearly has not considered, and does not want to consider, any other means by which the Freeman Judgment can be addressed more quickly and in this Court.

20. As the Debtor has once again failed to adequately apply the Sonnax Factors, the Second Stay Relief Motion should be denied because of the Debtor's failure to meet his initial burden (again).

II. **Actual Application of the Sonnax Factors Again Weighs Against Lifting the Automatic Stay.**

21. A determination of whether "cause" exists to lift the automatic stay requires consideration of the twelve factors set forth in *In re Sonnax Industries, Inc.* (such factors, the "Sonnax Factors"), and no one factor is dispositive. *In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2d Cir. 1990); *see also In re Bogdanovich*, 292 F.2d 104, 110 (2d Cir. 2002) (noting that not all Sonnax Factors are relevant in each case and that determination of whether cause exists to lift stay depends on facts of a given case). The proper application and consideration of the Sonnax Factors here lead to one conclusion: cause does not exist to lift the automatic stay to allow the Debtor to pursue the Appeal at this time.

- *Factor 1: Whether relief would result in a partial or complete resolution of the issues.* This factor weighs against modifying the automatic stay. Rather than

10

resolving the Freeman Plaintiffs' claims, lifting the stay to allow the Debtor to pursue an appeal would lead to the Debtor's reopening and relitigating issues in the Freeman Litigation and inevitably prolong the bankruptcy case. Even to the extent that the Appeal ultimately could, after some indeterminate amount of time, result in a partial or complete resolution of the issues in the Freeman Litigation, this resolution would not be immediate because (i) the Appeal is in its infancy and (ii) there is a possibility of future appeals. *See In re Residential Capital, LLC*, No. 12-12020 (MG) 2012 Bankr. LEXIS 3624, at *7 (considering whether a resolution (partial or complete) would be immediate and if not, then viewing that fact as weighing against any modification to the stay).

- *Factor 2: Whether there is any connection or interference with the bankruptcy case.* This factor weighs heavily against modifying the automatic stay. The Freeman Litigation precipitated the Debtor's commencement of this bankruptcy case and appears to be his primary (and only) focus in this case. The Debtor fixates on the Freeman Litigation to the exclusion of everything else, including, complying with statutory deadlines and disclosure obligations, carrying out his fiduciary duties as a debtor in possession and making progress toward a successful reorganization.[14] Moreover, the Second Lift Stay Motion states that lifting the stay "will have a profound effect on the status of the case and will surely accelerate the Debtor's exit strategy." Second Lift Stay Motion ¶ 18. To the extent that this point is supposed to support the Debtor's argument to lift the stay, he completely misreads the relevant Sonnax Factor, since re-litigating the Freeman Litigation will distract from this chapter 11 case and cause the Debtor to expend time and resources pursuing an appeal instead of making progress toward a reorganization.[15] Moreover, the Debtor drastically underestimates how quickly an appeal could proceed to resolution. The Committee reiterates that the Debtor should not be permitted to waste finite resources and time and shirk his duties as a debtor in possession by pursuing an appeal that seems unlikely to be successful (given the proceedings before the D.C. District Court) and deliberately obstructing progress in this chapter 11 case.[16]

- *Factor 3: Whether the other proceeding involves the debtor as a fiduciary.* This factor does not support granting the Second Stay Relief Motion because the Debtor

---

[14] *See, e.g.*, Second Lift Stay Motion ¶ 18 (stating, perplexingly, that "[i]t is imperative to a ***full and fair*** resolution of this Chapter 11 proceeding that the Debtor have the *Freeman* judgment reversed or modified") (emphasis added).

[15] *See In re Residential Capital, LLC*, No. 12-12020 (MG) 2012 Bankr. LEXIS 3624, at *7 (finding that lifting stay would "hinder the [d]ebtors' attempts to reorganize, forcing the [d]ebtors to utilize time and resources that would otherwise be spend resolving these chapter 11 cases"); *In re Mixon*, No. 11-41568, 2013 WL 2481525 (Bankr. S.D. Ga. June 10, 2013) (finding that debtor's request to pursue state court litigation would interfere with bankruptcy and delay completion of plan by relitigating creditor's claim).

[16] *See, e.g.*, *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2022 Bankr. LEXIS 3220, at *4243 (Bankr. S.D.N.Y. Nov. 14, 2022) (examining generally how the continuation of non-bankruptcy litigation during the chapter 11 case can interfere with the bankruptcy case); *In re Residential Cap, LLC*, 501 B.R. 624, 644 (Bankr. S.D.N.Y. 2013) (emphasizing that continuing litigation in non-bankruptcy courts would hinder the debtors' reorganization efforts by diverting the debtors' time and resources away from the chapter 11 cases).

11

was not a fiduciary when he committed intentional torts against the Freeman Plaintiffs.[17]

- *Factor 4: Whether a specialized tribunal has been established in the foreign jurisdiction to hear the case.* This factor weighs against modifying the automatic stay. No specialized tribunal has been established with respect to the Freeman Litigation.

- *Factor 5: Whether the debtor's insurer has assumed full responsibility for defending it.* This factor weighs against modifying the automatic stay. The Committee is not aware of any insurer that has assumed full responsibility for defending the Debtor in the Freeman Litigation.[18] The KCL Application[19] provides that a third-party legal defense fund will pay KCL a $250,000 flat fee plus reimbursement of expenses incurred in connection with the appeal. This arrangement, however, is subject to this Court's approval, and the Committee believes the retention should be denied.[20] Moreover, allowing the Appeal to proceed at this time will distract the Debtor from acting to push this case forward, causing the accrual of administrative expenses unrelated to the Appeal, allow the Debtor to hide behind the Appeal to assert (falsely) that success in the Appeal will allow him to retain non-exempt assets that otherwise must be monetized to satisfy creditors and otherwise delay him from engaging proactively with the Committee and other stakeholders. Accordingly, the Debtor has not shown that his estate will not bear any costs of an appeal from the Freeman Judgment. In fact, the contrary is true.

- *Factor 6: Whether the action primarily involves third parties.* This factor weighs against modifying the automatic stay. The Freeman Litigation involves no third parties. Rather, the parties are the Debtor and the Freeman Plaintiffs, who hold the largest scheduled claim against the estate. Courts have permitted continued

---

[17] *See In re Residential Capital, LLC*, No. 12-12020 (MG), 2012 Bankr. LEXIS 3777, at *9 (Bankr. S.D.N.Y. Aug. 16, 2012) (finding that "generally, proceedings in which the debtor is a fiduciary . . . need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors" (citation omitted)).

[18] *See, e.g.*, *In re Holtkamp*, 669 F.2d 505, 508-09 (7th Cir. 1982) (finding that the bankruptcy court did not err by lifting the automatic stay and permitting the plaintiff to continue litigating a personal injury lawsuit against the debtor because the debtor's insurer assumed full responsibility for defending the debtor in that litigation such that estate resources were not jeopardized).

[19] The "KCL Application" means the Debtor's application to retain Kenneth Caruso Law LLC ("KCL") as special litigation counsel to pursue an appeal from the Freeman Judgment [Docket No. 169].

[20] As detailed in the Committee's objection to the KCL Application, the KCL Application: (1) contains a "back door" for "other third party funding" in contravention of this Court's prior ruling; (2) inexplicably backtracks from heavily negotiated provisions memorialized in the C&S Retention Order, including one which would require KCL to waive claims against the Debtor or his estate and to agree not to seek payment of any legal fees or expenses directly or indirectly from the Debtor; and (3) purports to contemplate the assistance of two other firms in litigating the appeal, neither of which have been retained pursuant to Bankruptcy Code section 327 to assist with an appeal and, as such, have not submitted declarations (x) disclaiming claims against the Debtor and the estate with respect to an appeal and (y) agreeing not to seek payment directly or indirectly from the Debtor for fees and expenses relating to services in connection with an appeal.

12

litigation of claims outside the bankruptcy court where the debtor's involvement in the litigation is limited and where the litigation will not frustrate the orderly disposition of the debtor's assets. Here, modifying the automatic stay on the Debtor's terms is contrary to both considerations.[21] Where claims are asserted directly against a debtor, as is the case here, such that the debtor will be required to engage actively in the proceedings, courts are less likely to grant relief from the stay.[22] Clearly, the Debtor will be heavily involved in an appeal, and he will delay any progress on his chapter 11 case until such appeal is resolved.

- *Factor 7: Whether litigating in another forum would prejudice other creditors.* This factor weighs heavily against modifying the automatic stay. An appeal will take time to litigate, and—even if the Debtor's legal fees are paid by one or more third party defense funds—additional time spent in bankruptcy necessarily means that the Debtor will continue to spend his limited resources funding his lavish lifestyle. It is only a matter of time before the Debtor can no longer tap his exempt IRA assets and must instead turn to spending assets that he purports to hold in trust for creditors to bankroll his extravagant lifestyle, which lifestyle is not befitting a debtor in bankruptcy. All creditors will be prejudiced if the automatic stay is lifted to permit the Debtor to embark on an appeal with no timeline for conclusion (and one which would be used strategically to delay taking steps in this chapter 11 case). It is also noteworthy that if the Debtor's requested relief is granted, then the Freeman Plaintiffs will be uniquely prejudiced because the Debtor would be authorized to appeal the Freeman Judgment without posting the security required by the Federal Rules of Civil Procedure.

- *Factor 8: Whether a judgment claim arising from the foreign proceedings would be subject to equitable subordination.* This factor weighs against modifying the automatic stay. Here, the priority of claims relates to their dischargeability, which, while the subject of a separate adversary proceeding, most definitely will not be dischargeable given the Debtor's stipulations in the Freeman Litigation and his egregious conduct toward two innocent women who were fulfilling their civic duties in furtherance of democracy and came under the Debtor's ire for no justifiable reason.

- *Factor 9: Whether the movant's success in the foreign proceedings would result in a judicial lien avoidable by the debtor.* This factor is not applicable.

- *Factor 10: The interests of judicial economy and expeditious resolution of litigation.* This factor weighs against modifying the automatic stay. At this point, the only action the Debtor has taken in connection with an appeal from the Freeman

---

[21] *See, e.g.*, *In re Mego International, Inc.*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (finding that "[a] court may lift a stay for actions which bear little relation to the bankruptcy case. Such lack of connection with the title 11 case occurs where . . . the debtor functions only as a bailee or conduit for the goods or proceeds in question, and resolution of the issue in no way frustrates the orderly distribution of assets of the estate.").

[22] *See, e.g.*, *Residential Capital, LLC*, 2012 Bankr. LEXIS 3624, at *16-17; *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 624 (Bankr. S.D.N.Y. 2009).

13

Judgment is to file a notice of appeal. He would be starting this phase of the Freeman Litigation from the very beginning. As emphasized previously herein, an appeal from the Freeman Judgment could take months or even years to resolve, and an appeal before the D.C. Circuit could eventually lead to the Debtor's pursuit of a further appeal. A lengthy appellate process in which the Debtor relitigates matters that were already resolved in the D.C. District Court undoubtedly will delay this chapter 11 case.[23] Moreover, given that the Debtor has avoided taking important steps in this chapter 11 case on the off chance the Freeman Judgment might be vacated or reduced to nearly nothing,[24] it is likely that lifting the automatic stay will further spur him to delay taking necessary and constructive steps for a reorganization, which will also lead to an unnecessarily protracted timeline in this chapter 11 case and the expenditure of the Debtor's limited resources to fund it.

- *Factor 11: Whether the parties are ready for trial in the other proceeding.* This factor weighs against modifying the automatic stay. The Freeman Judgment already has been entered against the Debtor in the Freeman Litigation, and the D.C. District Court has ruled on the Post-Judgment Motion, denying the Debtor's request to modify the Freeman Judgment and/or obtain a new trial. By the Second Lift Stay Motion, the Debtor again seeks to reopen issues from the Freeman Litigation, thereby launching a new stage of litigation from the very start, which—if granted—will cause significant delay and inevitably drain the Debtor's limited resources.

- *Factor 12: The impact of the stay on the parties and the balance of harms.* This factor weighs heavily against modifying the automatic stay. This factor is "one of the most important" factors.[25] As discussed, the Debtor's estate and all of his creditors will be harmed if the stay is lifted to allow the Debtor to appeal the Freeman Judgment. The most critical issues underlying the Debtor's requested relief are that an appeal will (i) distract the Debtor from reorganizing and enable him to further delay taking critical steps to progress this chapter 11 case and (ii) take a long time to litigate to resolution. In the event that the Debtor is allowed to appeal the Freeman Judgment, creditors face the very real risk that this chapter 11 case will stagnate and the Debtor will continue to spend his limited assets on his opulent

---

[23] *See, e.g., In re Cicale*, No. 05-14462 (AJG), 2007 Bankr. LEXIS 2252, at *12 (Bankr. S.D.N.Y. June 29, 2007) (explaining that, for judicial economy to weigh in favor of modifying the automatic stay to pursue litigation, the litigation must not result in a delay of the bankruptcy case and must alleviate the need for further proceedings in the bankruptcy court); *In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2022 Bankr. LEXIS 3220, at *49 (explaining that since the claim had been adjudicated, the debtor did not need to spend funds relitigating the matter).

[24] *See Debtor's Opposition to the Motion of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani to Compel the Debtor to (I) Sell His Florida Condominium and (II) Obtain Homeowners Insurance for His Florida Condominium and New York City Apartment*, In re Rudolph W. Giuliani, 23-12055 (SHL) (Bankr. S.D.N.Y. Mar. 28, 2024) [Docket No. 155], at ¶ 13 (noting that Debtor would be "irreparably harmed" if he sold the Florida condominium and Freeman Judgment were later vacated).

[25] *In re Motors Liquidation Co.*, No. 10-CV-4322 (JGK), 2011 U.S. Dist. LEXIS 67750, at *5 (S.D.N.Y. June 17, 2011).

lifestyle.[26] Neither the Debtor's estate nor his creditors benefit from a protracted bankruptcy case in which the Debtor is distracted by an appeal with questionable merits.

22. Accordingly, cause does not exist to modify the automatic stay.

### III. The Relief Requested in the Second Stay Relief Motion Conflicts with Central Tenets of Bankruptcy Law.

23. The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws" and is intended to give the debtor "a breathing spell from his creditors." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977). However, "[a]lthough section 362 is a shield to protect the debtor to provide for a 'fresh start', the automatic stay was not intended by Congress to be used as a sword." *In re Clowser*, 39 B.R. 883, 886 (Bankr. E.D. Va. 1984); *see also Sternberg v. Johnston*, 582 F.3d 1114, 1124 (9th Cir. 2009) ("The stay, then, is meant to help the debtor deal with his bankruptcy for the benefit of himself and his creditors alike. We have never said the stay should aid the debtor in pursuing his creditors. . . The stay is a shield, not a sword.").

24. The Debtor has used the automatic stay as a sword against the Freeman Plaintiffs to try to re-litigate the Freman Judgment, something he certainly could not do outside of bankruptcy in light of the bond requirements that he could never meet.[27] Similarly, he has weaponized the bankruptcy case and the automatic stay to delay dealing with his other creditors and prevent those parties from having their days in court and their claims addressed. Bankruptcy law generally, and the automatic stay specifically, do not sanction such endeavors.

25. Moreover, it is unclear how the Debtor's preferred path promotes a "breathing spell" from creditors, since the Debtor has offered no evidence that the D.C. Circuit Court would

---

[26] *See In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, (Bankr. S.D.N.Y. 2009) (finding that lifting stay would "distract and hinder the [d]ebtors from their reorganization efforts").

[27] The issue of whether the bond requirements apply to a debtor in bankruptcy has not been decided in this bankruptcy case, and by this Objection, the Committee is not making any concessions on that point.

15

look favorably on his willful and obstructionist behavior in the Freeman Litigation and render a ruling favorable to the Debtor or impactful or his other creditors. Pursuit of an appeal that is unlikely to succeed (and relates to claims that are highly likely to be nondischargeable in any event) will delay an ending to the chapter 11 case, and that delay will drain the Debtor's already-limited resources available for funding this case and making distributions to creditors. Such a path is contrary to another of the Bankruptcy Code's fundamental principles: maximizing the value of the estate for the benefit of all creditors.[28]

26. Finally, and simply put, "[a] debtor cannot enjoy the benefits of the bankruptcy process while avoiding its burdens. Any other approach would produce an unlevel playing field tilted in the debtor's favor." *In re LEDERMAN*, 140 B.R. 49, 53 (Bankr. E.D.N.Y. 1992).[29] To date, the Debtor has shown no interest in, among other obligations, (i) advancing his chapter 11 case, (ii) maximizing the value of his estate for the benefit of creditors, (iii) providing complete, accurate and timely financial disclosures, (iv) complying with the rules of the bankruptcy process or (v) engaging productively with his creditors. The playing field here should not be tilted in the Debtor's favor. The Second Stay Relief Motion should be denied.

---

[28] *See In re Klaynberg*, 643 B.R. 309, 317 (Bankr. S.D.N.Y. 2022) ("[A] debtor in possession owes fiduciary duties to the bankruptcy estate and must, among other things, 'protect and . . . conserve property in [its] possession for the benefit of creditors' and 'refrain[] from acting in a manner which could damage the estate, or hinder a successful reorganization of the business.'") (quoting *In re Ashley River Consulting, LLC*, 2015 WL 1540941, at *8 (Bankr. S.D.N.Y. Mar. 31, 2015)); *In re WB Bridge Hotel LLC*, 656 B.R. 733, 750 (Bankr. S.D.N.Y. 2024) ("In nonlegal terms, directors and management of a [C]hapter 11 debtor are obligated to preserve the assets of the debtor and otherwise act consistently with the interests of *both* creditors and shareholders."); *In re Sillerman*, 605 B.R. 631, 654 (Bankr. S.D.N.Y. 2019) ("Failure to protect and conserve estate property constitutes a breach of fiduciary duty.")

[29] In *In re LEDERMAN*, the debtor refused to comply with document requests, arguing his Fifth Amendment right against self-incrimination. 140 B.R. at 52. The court rejected the debtor's argument and emphasized that a debtor cannot use the bankruptcy court to broaden benefits that would act as a shield for the debtor, while at the same time, using the Bankruptcy Code as a sword to take unfair advantage of his creditors. *Id.* at 53. Additionally, the court underscored the irrationality of a debtor coming to the bankruptcy court to obtain a discharge from liabilities without ever disclosing his assets on the grounds of self-incrimination. *Id.* at 52.

## RESERVATION OF RIGHTS

27. The Committee reserves all of its rights and remedies with respect to the Second Stay Relief Motion, the Debtor and all other matters related to this chapter 11 case.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Debtor has failed to demonstrate that cause exists for relief from the automatic stay, and, as a result, the Court should deny the Second Stay Relief Motion.

Dated: May 7, 2024
     New York, New York

*/s/ Philip C. Dublin*
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Tel:   (212) 872-1000
Fax:   (212) 872-1002
Email:  idizengoff@akingump.com
          pdublin@akingump.com
          aqureshi@akingump.com

- and -

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Tel:   (214) 969-2800
Fax:   (214) 969-4343
Email:  rbibloblock@akingump.com

*Counsel to the Official Committee of
Unsecured Creditors of Rudolph W. Giuliani*