Rachel C. Strickland
Aaron E. Nathan
James H. Burbage
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
rstrickland@willkie.com
anathan@willkie.com
jburbage@willkie.com

Michael J. Gottlieb
Meryl Governski (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
mgottlieb@willkie.com
mgovernski@willkie.com

Von A. DuBose (*pro hac vice* forthcoming)
DUBOSE MILLER LLC
75 14th Street NE
Suite 2110
Atlanta, GA 30309
Telephone: (404) 720-8111
dubose@dubosemiller.com

Rachel Goodman
John Langford
UNITED TO PROTECT DEMOCRACY
82 Nassau Street, #601
New York, NY 10038
Telephone: (202) 579-4582
rachel.goodman@protectdemocracy.org
john.langford@protectdemocracy.org

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>RUDOLPH W. GIULIANI<br>a/k/a RUDOLPH WILLIAM GIULIANI<br><br>                Debtor. | Chapter 11<br><br>Case No. 23-12055 (SHL) |

**OBJECTION OF RUBY FREEMAN AND**
**WANDREA' ARSHAYE MOSS TO DEBTOR'S**
**MOTION FOR AN ORDER MODIFYING THE AUTOMATIC STAY**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ...................................................................................................................3

    I.      FACTUAL BACKGROUND OF THE FREEMAN LITIGATION ..............................3

    II.    MR. GIULIANI'S CHAPTER 11 CASE TO DATE ....................................4

        a.     Mr. Giuliani's First Stay Relief Motion........................................4

        b.     Freeman Plaintiffs' Nondischargeability Adversary Proceeding................6

        c.     Growing Frustration Among Mr. Giuliani's Creditors .................6

OBJECTION........................................................................................................................8

    I.      THE COURT SHOULD DENY THE MOTION BECAUSE MR. GIULIANI HAS
          NOT MET HIS BURDEN TO ESTABLISH CAUSE....................................8

        a.     The Court Should Deny the Motion Because It Fails to Make a Prima Facie Showing
           that Cause Exists for Lifting the Stay ...............................................9

        b.     The Sonnax Factors Do Not Support Granting the Motion .......................10

    II.    MR. GIULIANI SHOULD NOT BE ABLE TO USE THE AUTOMATIC STAY AS
          THE FUNCTIONAL EQUIVALENT TO A SUPERSEDEAS BOND .......................17

CONCLUSION....................................................................................................................22

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alton Telegraph Printing Co.*,
    14 B.R. 238 (Bankr. S.D. Ill. 1981) ...................................................................18

*Barcelona Capital, LLC v. Neno Cab Corp.*,
    648 B.R. 5782 (E.D.N.Y. 2023) .........................................................................10

*In re Bogdanovich*,
    292 F.3d 104 (2d Cir. 2002).................................................................................9

*Chu v. Syntron Bioresearch, Inc. (In re Chu)*,
    253 B.R. 92 (S.D. Cal. 2000)..............................................................................19

*In re Cicale*,
    No. 05-14462 (AJG), 2007 WL 1893301 (Bankr. S.D.N.Y. June 29, 2007) ..........14

*In re Cinnabar 2000 Haircutters, Inc.*,
    20 B.R. 575 (Bankr. S.D.N.Y. 1982)...................................................................20

*In re Ditech Holding Corp.*,
    No. 19-10412 (JLG), 2022 WL 16952443 (Bankr. S.D.N.Y. Nov. 14, 2022) .................13, 17

*Freeman v. Giuliani*,
    No. 21-cv-3354 (D.D.C. May 6, 2024)............................................................14, 18

*FTC v. Endo Pharms. Inc.*,
    82 F.4th 1196 (D.C. Cir. 2023)...........................................................................17

*In re Holm*,
    75 B.R. 86 (Bankr. N.D. Cal. 1987) ....................................................................19

*Holzer v. Barnard*,
    No. 15-cv-6277, 2016 WL 4046767 (E.D.N.Y. July 27, 2016)...............................10

*In re Karum Grp., Inc.*,
    66 B.R. 436 (Bankr. W.D. Wash. 1986) ..............................................................19

*LeAnne Tan vs. Matthew Martorano, Kathryn Martorano, Converging Resources
    Corporation, Konnektive LLC, Echo 51 LLC, Checkout Champ LLC*, No.
    24CV002451 (Ga. Super. Ct. Feb 27, 2024)..........................................................7

*In re Marsch*,
    36 F.3d 825 (9th Cir. 1994) ...............................................................................19

*In re Mazzeo*,
   167 F.3d 139 (2d Cir. 1999) ................................................................................. 9

*In re Mildred Deli Grocery, Inc.*,
   No. 18-10077 (MG), 2018 WL 1136017 (Bankr. S.D.N.Y. Feb. 28, 2018) .................... 21, 22

*Reading Co. v. Brown*,
   391 U.S. 471 (1968) ........................................................................................ 16

*In re Residential Cap., LLC*,
   501 B.R. 624 (Bankr. S.D.N.Y. 2013) ............................................................... 11, 13

*In re Residential Cap., LLC*,
   No. 12-12020 (MG), 2012 WL 3555584 (Bankr. S.D.N.Y. Aug. 16, 2012) ....................... 16

*In re Residential Cap.*,
   No. 12-12020 (MG), 2012 WL 3249641 (Bankr. S.D.N.Y. Aug. 7, 2012) ......................... 20

*In re Rudolph W. Giuliani*,
   No. 23-12055 (SHL) (Bankr. S.D.N.Y.) ............................................................... 5, 6

*In re Sletteland*,
   260 B.R. 657 (Bankr. S.D.N.Y. 2001) ................................................................. 18

*In re Sonnax Indus., Inc.*,
   907 F.2d 1280 (2d Cir. 1990) ..................................................................... *passim*

*In re Sparklet Devices, Inc.*,
   154 B.R. 544 (Bankr. E.D. Mo. 1993) ................................................................ 18

*Stasko v. Motors Liquidation (In re Motors Liquidation Co.)*,
   No. 10-CV-4322 (JGK), 2011 WL 2462773 (S.D.N.Y. June 17, 2011) ........................... 15

*Sternberg v. Johnston*,
   582 F.3d 1114 (9th Cir. 2009) ......................................................................... 20

*U.S. Bank Tr. Nat'l Ass'n v. Am. Airlines, Inc. (In re AMR Corp.)*,
   485 B.R. 279 (Bankr. S.D.N.Y. 2013) .................................................................. 8

*In re Uchitel*,
   No. 20-11585 (JLG), 2022 WL 3134217 (Bankr. S.D.N.Y. Aug. 4, 2022) ........................ 20

*In re Wally Findlay Galleries (New York), Inc.*,
   36 B.R. 849 (Bankr. S.D.N.Y. 1984) ............................................................... 19, 20

*Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*,
   776 F.3d 1 (D.C. Cir. 2015) ............................................................................ 11

**Statutes**

11 U.S.C. § 362(d)(1) .............................................................................................................8

11 U.S.C. § 502(c)(1).............................................................................................................12

Fed. R. Civ. P. 62(b) .............................................................................................................21

**Other Authorities**

Rudy Giuliani's Common Sense, *America's Mayor Live (384): The Fall of New
    York City & How the Giuliani Playbook Can Spur a Revival* (April 11, 2024),
    Rumble, https://rumble.com/v4oyfor-americas-mayor-live-384-the-fall-of-
    new-york-city-and-how-the-giuliani-play.html at 1:06:43-1:08:33...........................................1

Rudy W. Giuliani (@RudyGiuliani), *America's Mayor Live (384): The Fall of
    New York City & How the Giuliani Playbook Can Spur a Revival*, X/Twitter
    (April 11, 2024), https://twitter.com/i/broadcasts/1lPKqbpkgMYGb at
    1:06:43-1:08:02............................................................................................................................1

Rudy W. Giuliani (@therudygiuliani), Instagram (Apr. 13, 2024),
    https://www.instagram.com/p/C5taWK3NQrO.........................................................................1

Rudy W. Giuliani, *America's Mayor Live (384): The Fall of New York City &
    How the Giuliani Playbook Can Spur a Revival*, YouTube (April 11, 2024),
    https://www.youtube.com/watch?v=2UWfA8Qhs00 at 1:06:38-1:08:29 ................................1

Ms. Ruby Freeman and Ms. Wandrea' ArShaye "Shaye" Moss, as creditors and parties-in-interest of Mr. Rudolph W. Giuliani a/k/a Rudolph William Giuliani (the "Debtor"), by and through their undersigned counsel, respectfully submit this objection (the "Objection") to the *Debtor's Motion for an Order Modifying the Automatic Stay for the Limited Purposes of Allowing the Debtor to Proceed with Prosecuting and Perfecting the Freeman Appeal Before the D.C. Circuit* [Docket No. 195] (the "Motion").   In support thereof, Ms. Freeman and Ms. Moss respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      On April 11, 2024, *after* filing this case, and *after* being warned by this Court not to continue making defamatory statements, Rudy Giuliani livestreamed a video of himself addressing a crowd in Tulsa, Oklahoma, across multiple platforms, including Twitter/X, YouTube, and Rumble.   While sitting in a chair onstage, Mr. Giuliani discusses election night 2020 and Georgia election workers Ruby Freeman and Shaye Moss.   Despite having been found liable for approximately $148 million in damages as a result of his previous statements about these women, Mr. Giuliani again made false and defamatory remarks about them.   Mr. Giuliani stated "I was sued by two women who were counting multiple ballots in Georgia, we have one of them on tape doing it."   Mr. Giuliani went on and told the crowd, "I can show you [evidence] tonight of them counting the ballots four times, one two one two four times four time four times."[1]

---

[1]    Rudy W. Giuliani (@RudyGiuliani), *America's Mayor Live (384): The Fall of New York City & How the Giuliani Playbook Can Spur a Revival*, X/Twitter (April 11, 2024), https://twitter.com/i/broadcasts/1lPKqbpkgMYGb at 1:06:43–1:08:02; Rudy W. Giuliani, *America's Mayor Live (384): The Fall of New York City & How the Giuliani Playbook Can Spur a Revival*, YouTube (April 11, 2024), https://www.youtube.com/watch?v=2UWfA8Qhs00 at 1:06:38-1:08:29; Rudy Giuliani's Common Sense, *America's Mayor Live (384): The Fall of New York City & How the Giuliani Playbook Can Spur a Revival* (April 11, 2024), Rumble, https://rumble.com/v4oyfor-americas-mayor-live-384-the-fall-of-new-york-city-and-how-the-giuliani-play.html at 1:06:43–1:08:33.   On April 13, 2024, Mr. Giuliani posted a 1 minute and 10 second clip from his livestream to Instagram.   *See* Rudy W. Giuliani (@therudygiuliani), Instagram (Apr. 13, 2024), https://www.instagram.com/p/C5taWK3NQrO.   The video republished some of his defamatory statements about Ms. Freeman and Ms. Moss via audio and subtitles.

2.      Mr. Giuliani's remarks reflect his continued belief that laws and their consequences do not apply to him.  Indeed, this was the approach that Mr. Giuliani adopted when litigating against the Freeman Plaintiffs prior to the petition date.  For more than two years, Mr. Giuliani had full opportunity to participate in the Freeman Litigation.  Rather than complying with court directives, Mr. Giuliani chose a strategy of obstruction and willful disobedience.  That strategy eventually lead to a default judgment as to his liability and a federal jury awarding Ms. Freeman and Ms. Moss approximately $148 million in damages.

3.      Given Mr. Giuliani's established track record of intentionally abusing the civil justice system, it is unsurprising that he continues to do so in bankruptcy.  To date, he has not meaningfully advanced this case in the over four months since its commencement.  Far from making progress towards a successful reorganization, Mr. Giuliani has thumbed his nose at even the most basic reporting requirements such as filing complete, accurate and timely monthly operating reports.  Put simply, Mr. Giuliani is trying to capture the benefits of the chapter 11 process while ignoring his obligations.

4.      As this Court is well aware, Mr. Giuliani's creditors have lost their patience.  What minimal evidence creditors have suggests Mr. Giuliani is funding his affluent lifestyle off of their backs.  And now, just as creditor frustrations are reaching a fever pitch, Mr. Giuliani has filed his Motion seeking special permission to pursue an appeal of the Freeman Judgment ("Appeal").  Much like the first episode when the parties litigated this issue, all of Mr. Giuliani's creditors uniformly oppose his requested relief.  The reasons why are the same now as they were then: (a) the Motion is facially insufficient, (b) the relief sought is impermissible as a matter of law, and (c) granting the Motion will stall progress in this chapter 11 case.  Of course, stalled progress is

*exactly* what Mr. Giuliani is looking to achieve with the Motion—his entire case is one big effort to delay and frustrate his creditors.

5.       With respect to the Freeman Plaintiffs in particular, Mr. Giuliani's conduct in this chapter 11 case is especially galling.  The only reason the Freeman Plaintiffs are currently prevented from executing on their judgment is Mr. Giuliani's bankruptcy filing, which ostensibly reflected Mr. Giuliani's good-faith intention to reorganize under the bankruptcy laws.  But as Mr. Giuliani's recent conduct has demonstrated, there are serious questions about whether Mr. Giuliani ever had such a good-faith intention: instead, he appears laser-focused on obtaining permission to continue litigating against the Freeman Plaintiffs, while flouting deadlines and obligations in the chapter 11 process, and simultaneously enjoying the benefits of a debtor-in-possession.

6.       Mr. Giuliani's recent track record in the federal courts demonstrates that he is not a typical debtor who should be entitled to the benefit of the doubt.  Quite the contrary.  Much like the previous attempt to lift the stay and pursue the Appeal, the current Motion is a flawed litigation tactic from an actor with a history of engaging the judicial system in bad faith.  As set forth in detail below, the Motion should be denied.

## BACKGROUND

### I.       FACTUAL BACKGROUND OF THE FREEMAN LITIGATION

7.       The Freeman Plaintiffs provided a detailed overview of the Freeman Litigation in their objection to Mr. Giuliani's First Stay Relief Motion.[2]  For the Court's benefit, an abbreviated description is set forth herein.

---

[2]       *See Debtor's Motion for an Order Modifying the Stay for the Limited Purposes of Allowing the Debtor to File Post Trial Motions to Modify the Judgment and on for a New Trial to File a Notice of Appeal* [Docket No. 25] (the "First Stay Relief Motion"); *Objection of Ruby Freeman and Wandrea' ArShaye Moss to Debtor's Motion for an Order Modifying the Stay for the Limited Purposes of Allowing the Debtor to File Post Trial Motions to Modify the Judgment and on for a New Trial and to File a Notice of Appeal* [Docket No. 50] ("First Stay Relief Objection").

8.      On December 23, 2021, Ms. Freeman and Ms. Moss (together, the "Freeman Plaintiffs") filed a lawsuit in the United States District Court for the District of Columbia ("District Court") against Mr. Giuliani (the "Freeman Litigation"). First Stay Relief Objection ¶ 24. As the Court is aware, Mr. Giuliani's egregious "willful shirking of his discovery obligations" ultimately led the D.C. District Court to enter a default judgment on liability as a sanction under Federal Rule of Civil Procedure 37 (the "Default Judgment Order"). *Id.* at ¶ 36. Following the entry of the Default Judgment Order, the District Court held a jury trial to determine the amount of appropriate compensatory and punitive damages. *Id.* at ¶ 39. On December 15, 2023, a jury returned a unanimous verdict awarding Ms. Freeman and Ms. Moss approximately $148 million in combined compensatory and punitive damages (the "Freeman Judgment"). *Id.* at ¶ 42.

9.      On December 20, 2023, the District Court granted the Freeman Plaintiffs' motion to dissolve Federal Rule of Civil Procedure 62(a)'s automatic 30-day stay of enforcement and authorized the Freeman Plaintiffs to register their judgment in any district of the United States. *Id.* at ¶ 46. The next day—December 21, 2023—Mr. Giuliani filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court").

## II.    MR. GIULIANI'S CHAPTER 11 CASE TO DATE

### a.    Mr. Giuliani's First Stay Relief Motion

10.      On January 5, 2024, the Debtor filed the First Stay Relief Motion seeking to (a) pursue the Appeal and (b) stay the Freeman Plaintiffs from enforcing the Freeman Judgment without posting a supersedeas bond pursuant to Federal Rule of Procedure 62(b).

11.      On January 18, 2024, the Freeman Plaintiffs filed their objection to the First Stay Relief Motion. That objection opposed Mr. Giuliani's request to prosecute the Appeal, but did not

4

oppose more narrow relief which would allow Mr. Giuliani to preserve his appellate rights with respect to the Freeman Judgment.

12.     Although the First Stay Relief Motion did not satisfy the Debtor's burden, during oral arguments on January 19, 2024, the parties reached a conceptual resolution to the issues at hand.  Under the agreement, Mr. Giuliani could (a) file and litigate post-trial motions in the District Court and (b) file a notice of appeal from the Freeman Judgment (but not litigate the Appeal).  *See* Jan. 19, 2024 Hr'g Tr. 76:17–77:16, *In re Rudolph W. Giuliani*, No. 23-12055 (SHL) (Bankr. S.D.N.Y.) (respectively, the "First Stay Relief Hearing" and the "First Stay Relief Hearing Transcript").  The Court agreed to condition entry of the order lifting the stay on the resolution of issues that the Official Committee of Unsecured Creditors (the "Committee"), the Freeman Plaintiffs, and the Office of the United States Trustee (the "U.S. Trustee") raised with respect to Mr. Giuliani's retention of Camara & Sibley, LLC as special litigation counsel for purposes of the Appeal.  *See Id*. at 79:24–80:2, 17–23.  The Committee, the Freeman Plaintiffs and the U.S. Trustee were particularly concerned about payment of Camara & Sibley's legal fees, including (a) ensuring estate resources were not being used, and (b) understanding the funding sources of the two third-party defense funds that would be making the payments (the "Legal Defense Funds").

13.     On February 20, 2024, after weeks of insufficient disclosure from Mr. Giuliani (and an emergency hearing), the Court entered an order resolving the First Stay Relief Motion and authorizing Mr. Giuliani to file post-trial motions in the District Court and file a notice of appeal. Shortly thereafter, Mr. Giuliani filed his *Renewed Motion for Judgment as a Matter of Law* in the District Court (the "Post-Trial Motion") and a *Notice of Appeal*.  Freeman Litigation Dkt. Nos. 147, 148.  On April 15, 2024, the District Court denied the Post-Trial Motion.  Freeman Litigation Dkt. No. 159.

### b.    Freeman Plaintiffs' Nondischargeability Adversary Proceeding

14.    On February 23, 2024, the Freeman Plaintiffs initiated an adversary proceeding to

establish that the Freeman Judgment is a debt excepted from discharge under 11 U.S.C. § 523(a)(6)

(the "Nondischargeability Adversary Proceeding").[3]

15.    On March 22, 2024, the Court entered a scheduling order for the

Nondischargeability Adversary Proceeding.  Consistent with that scheduling order, on April 5,

2024, the Freeman Plaintiffs filed their motion for summary judgment.  Mr. Giuliani is required to

file his opposition to the summary judgment motion by May 8, 2024.

### c.    Growing Frustration Among Mr. Giuliani's Creditors

16.    On April 4, 2024, the Court heard oral argument on the Committee's motion to

compel the sale of Mr. Giuliani's Florida condominium.[4]  While the Court took the matter under

advisement, it did describe the Committee's requested relief as "a warning shot across the bow."

*See* Apr. 4, 2024 Hr'g Tr. 56:16–20, *In re Rudolph W. Giuliani*, No. 23-12055 (SHL) (Bankr.

S.D.N.Y.).   In the same discussion, the Court implored Mr. Giuliani to improve disclosures

regarding his financial information.  Apr. 4, 2024 Hr'g Tr. 58:3–9.

17.    On April 17, 2024, the Debtor filed an application to retain Kenneth Caruso Law

LLC to help litigate the Appeal, despite Mr. Giuliani's previous retention of Camara & Sibley and

despite the fact that the Court's modification of the automatic stay expressly provided that Mr.

---

[3]    For over two weeks beginning in mid-April, Debtor's counsel indicated to the Freeman Plaintiffs that the Debtor
would stipulate the Freeman Judgment being a nondischargeable debt.  On April 30, Debtor's counsel informed
counsel to the Freeman Plaintiffs that Mr. Giuliani had "changed his mind" and requested an additional two weeks
to reply to the Freeman Plaintiffs' motion for summary judgment.  The Freeman Plaintiffs declined Mr. Giuliani's
request for additional time to play more games.

[4]    *Motion of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani to Compel the Debtor to (I) Sell
His Florida Condominium and (II) Obtain Homeowners Insurance for His Florida Condominium and New York
City Apartment* [Docket No. 148].

Giuliani was not authorized to litigate the Appeal.[5]  On May 3, 2024, the Committee filed an

objection to the Caruso Retention Application, which the Freeman Plaintiffs joined.[6]

18.     On April 18, 2024, the Clerk of the District of Columbia Circuit Court issued an

order requesting that Mr. Giuliani make certain preliminary filings by May 20, 2024 (respectively,

the "Scheduling Order" and "May 20 Filing Requests").  Rather than notify the D.C. Circuit of the

application of the automatic stay, Mr. Giuliani has come to this Court—using the May 20 Filing

Requests as a pretext for urgency—to again seek relief to pursue the Appeal.[7]

19.     On April 26, 2024, Mr. Giuliani filed the present Motion.  That same day, the

Committee filed its motion to compel Mr. Giuliani to file his monthly operating reports.[8]  As

discussed therein, Mr. Giuliani's December and January monthly operating reports are incomplete.

---

[5]   *Debtor's Application for Retention and Employment of Kenneth Caruso Law LLC as Special Litigation Counsel Effective March 20, 2024* [Docket No. 169-1] ("Caruso Retention Application").

[6]   To be clear, the Legal Defense Funds' agreement to pay the Caruso Law Firm does not address all of the Freeman Plaintiffs' concerns regarding this arrangement.  First, the Freeman Plaintiffs continue to have legitimate questions about the Legal Defense Funds' sources of funding.  For example, one of the Legal Defense Funds is now the defendant in a clawback suit.  *See LeAnne Tan vs. Matthew Martorano, Kathryn Martorano, Converging Resources Corporation, Konnektive LLC, Echo 51 LLC, Checkout Champ LLC*, Docket No. 24CV002451 (Ga. Super. Ct. Feb 27, 2024).  Put simply, there is no certainty that the Legal Defense Funds will be able to meet their obligations to Mr. Giuliani's lawyers in the future.  And under no circumstances should Mr. Giuliani's estate be required to pay for these legal fees if the Legal Defense Funds fail to uphold their commitment midway through any Appeal.  Second, authorizing retention of the Kenneth Caruso Law LLC would embolden Mr. Giuliani to make no progress in this chapter 11 case until after the Appeal is resolved.  That outcome would necessarily be borne by estate creditors, both in (a) the administrative expenses that would accrue as the case continues, and (b) the denial of timely creditor distributions.

[7]   The Court has warned Mr. Giuliani about creating unnecessary fire drills.  "Well, most importantly, just talk to other folks; the Committee, and Mr. Burbage, and Ms. Strickland about all that stuff."  Apr. 4, 2024 Hr'g Tr. 23:17-19.  "So my only point in raising any of this, is to just make sure we don't end up in an unproductive fire drill.  So I'll ask all of you to talk about these issues."  *Id.* at 25:2-5.  "The reason why I mentioned that is just again . . . because it means there will be a certain amount of lead time that will allow us to deal with a motion – any motion that the debtor[] would file to go ahead with further steps in the appeal in time for you and your clients to file any opposition to that.  That's why I want to make sure we don't – we're all just cognizant of . . . avoiding an unnecessary fire drill."  *Id.* at 26:22-27:4.  "There's a lot of questions and a lot of issues to think about, and so I'm happy to turn it over to you all to think about them and then provide me with your thoughts when we reach that point, but again, I'm just not a fan of unnecessary fire drills."  *Id.* at 27:15-19.

[8]   *Motion of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani to Compel the Debtor to (I) File Delinquent Monthly Operating Reports and (II) File Timely Future Monthly Operating Reports* [Docket No. 197] ("Motion to Compel MORs").

*See* Motion to Compel MORs ¶¶ 15–18.  Even more troubling, Mr. Giuliani has blown off the deadlines to file his February and March operating reports, which were due March 21, 2024 and April 22, 2024, respectively.[9]  *See id.* at ¶ 1.

## OBJECTION

## I.   THE COURT SHOULD DENY THE MOTION BECAUSE MR. GIULIANI HAS NOT MET HIS BURDEN TO ESTABLISH CAUSE

20.     Section 362(d)(1) of the Bankruptcy Code allows the Bankruptcy Court to lift the automatic stay on request of a party in interest and after notice and a hearing for "cause."  11 U.S.C. § 362(d)(1).  While the Bankruptcy Code does not define the term "for cause," such term is a "broad and flexible concept that must be determined on a case-by-case basis."  *U.S. Bank Tr. Nat'l Ass'n v. Am. Airlines, Inc. (In re AMR Corp.)*, 485 B.R. 279, 295 (Bankr. S.D.N.Y. 2013).  Courts in this district evaluate whether or not cause exists by considering the following, non-exhaustive list of twelve factors:

- (1) whether relief would result in a partial or complete resolution of the issues;

- (2) lack of any connection with or interference with the bankruptcy case;

- (3) whether the other proceeding involves the debtor as a fiduciary;

- (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

- (5) whether the debtor's insurer has assumed full responsibility for defending it;

- (6) whether the action primarily involves third parties;

---

[9]     Mr. Giuliani filed his February operating report on May 2, 2024, six weeks after the operating report was due. Mr. Giuliani filed his March operating report on May 6, 2024, two weeks after the operating report was due. While the Freeman Plaintiffs are reviewing these filings, they again appear to raise additional questions.

- (7) whether litigation in another forum would prejudice the interests of other creditors;

- (8) whether the judgment claim arising from the other action is subject to equitable subordination;

- (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

- (10) the interests of judicial economy and the expeditious and economical resolution of litigation;

- (11) whether the parties are ready for trial in the other proceeding; and

- (12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (citation omitted). No one of these factors—the so-called "Sonnax" factors—is dispositive. Whether cause exists to lift the automatic stay "depends upon the facts underlying a given motion." *In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir. 2002) (citation omitted). Importantly, the moving party (i.e., Mr. Giuliani) bears the burden of making an initial showing of cause for relief from the stay. *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999). "Only if the movant makes such a showing does any burden shift to the debtor; absent a showing of cause, the court should simply deny relief from the stay." *Id.*[10]

> **a.    The Court Should Deny the Motion Because It Fails to Make a *Prima Facie* Showing that Cause Exists for Lifting the Stay**

21.    The Bankruptcy Court should deny the Motion because it makes no effort to apply the *Sonnax* factors to the facts of this case. Courts applying the *Sonnax* factors have emphasized

---

[10]    Notably, virtually all case law addressing section 362(d)(1) involves a *creditor's* motion for relief from stay. Here, where the Debtor seeks such relief, if, and only if, the Debtor can meet its burden would the burden shift to the opposing creditors.

that a motion merely articulating the factors—rather than applying them—cannot be deemed to constitute a showing of cause. *See Barcelona Capital, LLC v. Neno Cab Corp.*, 648 B.R. 578, 59192 (E.D.N.Y. 2023) (emphasizing that a failure to describe how the *Sonnax* factors weigh in favor of granting relief from the automatic stay constitutes reason alone to deny relief from the automatic stay for failure to demonstrate "cause"); *Holzer v. Barnard*, No. 15-cv-6277, 2016 WL 4046767, at *13 (E.D.N.Y. July 27, 2016) (affirming bankruptcy court's denial of relief from the automatic stay when creditor "failed to make an initial showing of cause"). Here, the Motion applies just two *Sonnax* factors (in cursory, incorrect, and self-serving fashion). This wholly inadequate analysis is particularly surprising given the Court's comments during oral argument for the First Stay Relief Motion, when the Court noted that motion "didn't answer the mail" in part because it failed to "lay out the Sonnax factors."[11]  For this reason alone, the Court should deny the Motion on its face.

### b.    The Sonnax Factors Do Not Support Granting the Motion

22.    Even if Mr. Giuliani had attempted to analyze the *Sonnax* factors (which he has not), the Motion cannot be granted because "cause" for lifting the automatic stay does not exist.

### i.    Factor 1: Whether Relief Would Result in a Partial or Complete Resolution of the Issues

23.    The Debtor's application of the first *Sonnax* factor provides: "The first factor should weigh heavily, as the relief of the limited lift of the stay will certainly result in a partial or complete issue resolution."  Motion ¶ 18.  This assertion is both conclusory and untrue.

---

[11]    *See* First Stay Relief Hearing Transcript 57:18–23 ("And the reason why I'm focusing so much on the agreement of the parties and what parties can live with is frankly, the motion doesn't answer the mail.  It doesn't lay out the Sonnax factors.  There's case law that says when you don't engage in an analysis on Sonnax factors, that is alone a basis for denial of a motion.  It's very pro forma.  And so I mean, there is a basis to deny it, given the record.").

Specifically, it ignores the procedural posture of the Freeman Litigation which precludes a simple resolution of the issues:

- **First**, the Freeman Litigation involves a default judgment entered against Mr. Giuliani as a sanction for his numerous and willful discovery violations in the District Court.  On appeal, Mr. Giuliani could not simply challenge the District Court's finding of liability without first succeeding in a challenge to Judge Howell's decision to impose discovery sanctions on Mr. Giuliani.  Such a challenge would be subject to abuse-of-discretion review and, in any event, would be meritless in light of Mr. Giuliani's own stipulations to liability, as well as the egregious and willful nature of Mr. Giuliani's violations.  *See Wash. Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 4 (D.C. Cir. 2015) (affirming entry of default judgment as a discovery sanction under the abuse of discretion standard).
- **Second**, even if Mr. Giuliani were successful in winning vacatur of the default judgment, the result would be a remand to the District Court, which has ruled against him twice, for further proceedings on Ms. Freeman and Ms. Moss' now-unliquidated claims.

Thus, even if Mr. Giuliani "won" the Appeal, the result would not be a partial or complete resolution of the Freeman Litigation.  Instead, the Freeman Litigation would simply return to a posture where Ms. Freeman and Ms. Moss hold unliquidated claims against Mr. Giuliani—claims that would then presumably have to be estimated in this bankruptcy proceeding.

24.    The first *Sonnax* factor separately cuts against lifting the automatic stay because there would still be need for proceedings in the bankruptcy court.  The need for additional proceedings in the bankruptcy court cuts against lifting the stay.  *In re Residential Cap., LLC*, 501 B.R. 624, 644 (Bankr. S.D.N.Y. 2013).  Here, there are at least two issues that would still likely need to be litigated even if the Motion were granted:

- ***Exception from Discharge Litigation***.  On February 23, the Freeman Plaintiffs filed a complaint seeking to have their debt be found nondischargeable under 11 U.S.C. §

523(a)(6). Shortly thereafter, the Freeman Plaintiffs filed a motion for summary judgment given that Mr. Giuliani was precluded from relitigating those facts under well-established law applying collateral estoppel principles in nondischargeability proceedings. The existence of this litigation alone demonstrates that granting the Motion will not provide a complete resolution to the Freeman Judgment. And efficient case management dictates that Mr. Giuliani should first litigate nondischargeability in the Freeman Litigation, rather than pursue a meritless appeal.

- *Claim Estimation*. Bankruptcy Code section 502(c) allows for the estimation of "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c)(1). Mr. Giuliani has characterized the Freeman Judgment as a "contingent" claim. *See* Debtors' Amended Schedule E/F, Part 2, Question 4 [Docket No. 100]. It is also a claim that would delay the administration of the case if Mr. Giuliani is able to pursue the Appeal. Litigating the Appeal to its conclusion would take months, if not years, including time for briefing, oral argument, decision, and Mr. Giuliani's inevitable rehearing and certiorari petitions. Mr. Giuliani could easily use even an unsuccessful Appeal to delay this chapter 11 case into 2025 or beyond. Moreover, if his Appeal necessitates any further proceedings on remand to the D.C. District Court, that timeline could of course be extended significantly. Mr. Giuliani would have the Court believe that the only way to move this case forward is to remove the contingency from the Freeman Judgment, and that the only way to remove the contingency from the Freeman Judgment is to prosecute the Appeal. Mr. Giuliani's argument is incorrect. The Bankruptcy Code provides other, more efficient ways to advance these chapter 11 cases forward.[12]

---

[12]   In the Motion to Compel MORs, the Committee seeks the appointment of a chapter 11 trustee in the event Mr. Giuliani does not file his delinquent monthly operating reports. And while the Court may not appoint a chapter 11 trustee based on the Committee's Motion to Compel MORs, there is a significant likelihood that Mr. Giuliani's case is heading there. If a chapter 11 trustee is appointed, then all of Mr. Giuliani's creditors will have the benefit of negotiating with a party that should want to see this case get resolved as quickly as possible, not drag out as long as possible. As part of this process, the chapter 11 trustee is likely to engage with all creditors who currently have significant contingent or unliquidated claims about negotiating an allowed claim amount for purposes of advancing the bankruptcy case forward.

ii.    *Factor 2:  Lack of any Connection with the Bankruptcy Case*

25.    When analyzing the second *Sonnax* factor, courts assess the extent to which lifting the stay will impact the broader bankruptcy.  *See In re Ditech Holding Corp.*, No. 19-10412 (JLG), 2022 WL 16952443, at *14 (Bankr. S.D.N.Y. Nov. 14, 2022) (analyzing how continuing non-bankruptcy litigation during the chapter 11 case can interfere with the administration of claims process and bankruptcy case generally); *In re Residential Cap.*, 501 B.R. at 644 ("Litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases.").  Here, granting the Motion would have a significant negative impact on the chapter 11 case.  Mr. Giuliani has made clear that he views resolving the Freeman Litigation as a prerequisite to advancing his chapter 11 case.  *See* Motion ¶ 18 ("It is imperative to a full and fair resolution of this chapter 11 proceeding that the Debtor have the Freeman judgment reversed or modified.").  If that is his belief and the Motion is granted, Mr. Giuliani's unsecured creditors will be forced to continue funding his lavish prepetition lifestyle during a much longer (and therefore costlier) case.[13]  Thus, the decision whether or not to allow Mr. Giuliani to pursue the Appeal is directly relevant to the remainder of the bankruptcy case.  Accordingly, the second *Sonnax* factor cuts against granting the Motion.

iii.    *Factor 10:  The Interests of Judicial Economy and the Expeditious and
Economical Resolution of Litigation*

26.    The interests of judicial economy and the expeditious and economical resolution of the litigation also weigh against lifting the automatic stay.  In order for considerations of judicial

---

[13]    As noted in the Committee's Motion to Compel MORs, Mr. Giuliani's conduct in this chapter 11 case to date has frustrated the ability of creditors to meaningfully evaluate his post-petition expenses.  The expenses that creditors do have insight into are cause for concern and suggest Mr. Giuliani is continuing to live a luxurious lifestyle. These costs, when combined with the costs of professionals whose professional fees are being borne by the estate, ensure that there is less and less distributable value for creditors as each month this chapter 11 case goes on.

economy to cut in favor of lifting the stay, the litigation must (a) not result in a delay of the chapter 11 case and (b) alleviate the need for further proceedings in the bankruptcy court. *See In re Cicale*, No. 05-14462 (AJG), 2007 WL 1893301, at *4 (Bankr. S.D.N.Y. June 29, 2007). Here, neither condition is satisfied. As noted above, at many points in this chapter 11 case, Mr. Giuliani has taken the position that resolution of the Freeman Litigation is a condition precedent to advancing this case forward.[14] Moreover, there will be no partial or complete resolution of the Appeal for months, and possibly years if additional appeals are heard or the case is remanded back to the District Court. If Mr. Giuliani is given his way, this case will remain in chapter 11 for the foreseeable future with no meaningful path forward—the antithesis of judicial economy. Second—and as also mentioned above—allowing Mr. Giuliani to pursue the Appeal will not obviate the need for additional proceedings in the Bankruptcy Court, such as the resolution of nondischargeability litigation and (potentially) an estimation proceeding.

27.    Mr. Giuliani's conduct during the Freeman Litigation also should preclude a finding that his proposed path forward is in the interest of the expeditious resolution of litigation. Mr. Giuliani was given every opportunity (and then some) to meaningfully participate in the Freeman Litigation and chose not to do so. During the course of that litigation, Mr. Giuliani routinely and repeatedly refused to comply with the District Court's orders, based on his strategic assessment that defaulting was a preferable strategy to litigating, which left Judge Howell no choice but to enter a default judgment. *See* Default Judgment Order at 2 ("The bottom line is that Giuliani has refused to comply with his discovery obligations and thwarted plaintiffs Ruby Freeman and Wandrea' ArShaye Moss' procedural rights to obtain any meaningful discovery in

---

[14]    *See Application in Support for an Order Scheduling an Expedited Hearing* [Dkt. No. 26] ¶ 5 ("The sooner the *Freeman* judgment can be addressed, the sooner [Mr. Giuliani] will be in a position to file a proposed Plan of Reorganization.").

this case."). Against that backdrop, the Motion should be seen as another litigation tactic by Mr. Giuliani designed to evade his creditors, rather than promote judicial efficiency. Accordingly, this factor cuts against granting the Motion.

        iv.     *Factor 12: Impact of the Stay on the Parties and the Balance of Harms*

28.    The twelfth *Sonnax* factor is a broader inquiry and balances the harms of parties-in-interest if the automatic stay were to be lifted. *Stasko v. Motors Liquidation (In re Motors Liquidation Co.)*, No. 10-CV-4322 (JGK), 2011 WL 2462773, at *2 (S.D.N.Y. June 17, 2011) (noting the twelfth factor as "one of the most important" of the *Sonnax* factors). On one side of the scale is Mr. Giuliani. Well over four months into this case, the Court can comfortably conclude that Mr. Giuliani is a debtor not upholding his end of the chapter 11 bargain. Since the petition date, Mr. Giuliani has done nothing but intentionally frustrate his creditors by (a) not undertaking his financial reporting obligations in good faith, (b) filing only a motion to extend exclusivity, two motions to lift the automatic stay and a seemingly endless series of retention applications,[15] (c) failing to establish a claims bar date, and (d) not articulating any clear vision for advancing this chapter 11 case except for pursuing a meritless appeal of the Freeman Judgment. On the other side of the scale are Mr. Giuliani's creditors. If appealing the Freeman Judgment was advisable, the Committee would support such relief. Tellingly, the Committee did not support the relief back in January and does not support the relief now. That is because the Committee sees what Mr. Giuliani refuses to see: granting the Motion will significantly harm all general unsecured creditors

---

[15]   Mr. Giuliani has filed four retention applications in this case, an average of approximately one per month. On April 24, 2024, Mr. Giuliani was criminally indicted in Arizona for his role in trying to overturn the state election results during the 2020 election. Undoubtedly, it is only a matter of time before Mr. Giuliani comes before the court with another retention application in connection with that criminal indictment.

who will endure the erosion of the estate's limited resources.[16]   For this reason alone, the balance of harms cuts in favor of denying the Motion.   Factoring in the particular effects on Ms. Freeman and Ms. Moss—as discussed in detail below—the balance of harms becomes even more one-sided. Accordingly, the twelfth *Sonnax* factor cuts against lifting the stay.

> ## v.   All Other Sonnax Applicable Factors Cut Against Lifting the Stay

29.   While not all *Sonnax* factors will be relevant in each case, none of the remaining applicable factors weigh in favor of Mr. Giuliani's requested relief:

- **_Factor Three_: Whether the Other Proceeding Involves the Debtor as a Fiduciary**.   Mr. Giuliani was not acting as a fiduciary when he committed intentional torts against Ms. Freeman and Ms. Moss.   Accordingly, Mr. Giuliani cannot cite this factor as a basis for lifting the stay.   *In re Residential Cap., LLC*, No. 12-12020 (MG), 2012 WL 3555584, at *3 (Bankr. S.D.N.Y. Aug. 16, 2012) (denying motion to lift automatic stay and noting that "generally, proceedings in which the debtor is a fiduciary . . . need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors") (citation omitted).

- **_Factor Five_:   Whether the Debtor's Insurer Has Assumed Full Responsibility for Defending It**.   No insurer has assumed responsibility for Mr. Giuliani's conduct in the Freeman Litigation.   This factor weighs in favor of denying relief from the automatic stay.

- **_Factor Six_: Whether the Action Primarily Involves Third Parties**.   Mr. Giuliani is the only party adverse to Ms. Freeman and Ms. Moss in the Freeman Litigation.   This factor weighs heavily in favor of denying relief from the automatic stay.

- **_Factor Seven_: Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors**.   Mr. Giuliani argues that this factor strongly cuts in favor of lifting the

---

[16]   To further ensure that Mr. Giuliani's limited estate resources are not wasted, Ms. Freeman and Ms. Moss are preparing to initiate an adversary proceeding for injunctive relief that would seek to bar Mr. Giuliani from making additional defamatory statements about them and in connection with the 2020 federal election.   Such relief would benefit all creditors by ensuring Mr. Giuliani does not further erode his limited estate resources by incurring additional liability from postpetition tortious actions, such as the statements he posted to Instagram Reels on April 13, 2024.   Moreover, each of the Freeman Plaintiffs intends to file an administrative expense claim for damages relating to this post-petition tort. *See Reading Co. v. Brown*, 391 U.S. 471 (1968).

stay.  *See* Motion ¶ 19 ("[T]he Appeal can only assist and not prejudice other creditors, as if the Debtor can avoid a large judgment or have the amount reduced, there will be more funds available to the Debtor to satisfy creditors.").  First, as demonstrated by the Committee's objection to the Motion, creditors do not agree with Mr. Giuliani's conclusory assessment of what is best for them.  Second, granting the Motion will result in significant time and energy relitigating previously resolved issues.  Courts have found that requests to relitigate issues cut against lifting the automatic stay.  *See In re Ditech Holding Corp.*, 2022 WL 16952443, at *16 ("The Court finds that because the claim was already adjudicated, there is no need for the Debtor to expend additional funds or relitigate closed matters. Therefore, this factor weighs against granting the Motion.").  Accordingly, this factor weighs in favor of denying relief from the automatic stay.

- ***Factor Eleven: Whether the Parties Are Ready for Trial in the Other Proceeding***.  In the unlikely event that Mr. Giuliani wins his appeal, the Freeman Litigation will be remanded to the District Court where the parties will then need to begin preparing for trial.  This factor weighs heavily against lifting the automatic stay.

## II.    MR. GIULIANI SHOULD NOT BE ABLE TO USE THE AUTOMATIC STAY AS THE FUNCTIONAL EQUIVALENT TO A SUPERSEDEAS BOND

30.    Mr. Giuliani's Motion confirms that his main interest lies in continuing to litigate against the Freeman Plaintiffs rather than meaningfully pursue a reorganization.  As illustrated by which deadlines spur Mr. Giuliani to action (and which he feels comfortable ignoring), Mr. Giuliani's attention is focused on litigating and relitigating the Freeman Plaintiffs' claims.  The bankruptcy estate's resources have followed suit: when not funding Mr. Giuliani's lavish lifestyle, Mr. Giuliani's estate has been incurring fees to pay his lawyers to file (a) not one but two motions to lift the automatic stay to pursue post-trial litigation and an appeal and (b) further motions to retain one, and then *another* additional attorney to assist in that appeal.[17]  Suffice it to say that Mr.

---

[17]    Mr. Giuliani's urgency in bringing this Motion before the Court is all of his own making.  As for the D.C. Circuit's May 20 Filing Deadlines, it is well established that the D.C. Circuit lacks authority to proceed with the Appeal absent an order from *this* Court modifying the automatic stay.  *See FTC v. Endo Pharms. Inc.*, 82 F.4th 1196, 1202 (D.C. Cir. 2023) ("If it applies, the automatic stay strips this court of jurisdiction.").  As for Mr. Giuliani's deadline to file an amended notice of appeal, after taking the position in his Motion that filing such an amended

Giuliani has not applied anything approaching that kind of diligence even to the basic obligations of the chapter 11 process, much less to achieving meaningful progress towards a plan of reorganization.

31.     The fact that appealing the Freeman Judgment is a more urgent concern to Mr. Giuliani than making progress in his chapter 11 case is not a legitimate basis to modify the automatic stay so that the Appeal can proceed while Mr. Giuliani continues to drag his feet in bankruptcy.  To the contrary, Mr. Giuliani's conduct demonstrates that this Motion (and perhaps the chapter 11 petition itself) runs afoul of cases forbidding debtors from using the Bankruptcy Code as a substitute for a supersedeas bond.  While this issue is most typically litigated in the context of alleged bad faith filings, where the court must determine whether to allow the debtor to remain in chapter 11 or dismiss the case, it also weighs heavily against granting this Motion.

32.     To the extent the Court even needs to address whether Mr. Giuliani's request to pursue the Appeal is permissible—which it should not, given Mr. Giuliani's failure to establish cause—case law identifies three circumstances in which a debtor may be permitted relief from the automatic stay to pursue an appeal without posting a bond: (a) if the relief is unopposed, (b) if the debtor is a multinational corporation facing mass tort litigation, or (c) a large judgment would force the debtor to close its business and liquidate.  *See e.g.*, *In re Sletteland*, 260 B.R. 657, 666 (Bankr. S.D.N.Y. 2001) (appeal proceeded when relief was unopposed); *In re Sparklet Devices, Inc.*, 154 B.R. 544 (Bankr. E.D. Mo. 1993); *In re Alton Telegraph Printing Co.*, 14 B.R. 238 (Bankr. S.D. Ill. 1981) (appeal proceeded when debtor faced liquidation).  Many cases in this area assess whether proceeding with the appeal is essential to rehabilitation of the business or appears

---

notice would require relief from the automatic stay, Motion at 3, Mr. Giuliani went ahead and filed an amended notice of appeal without waiting for further relief from this Court. *See* Amended Notice of Appeal, *Freeman v. Giuliani*, No. 21-cv-3354 (D.D.C. May 6, 2024), ECF No. 161. There are accordingly no valid deadlines that would necessitate relief from the automatic stay, much less urgent relief.

to be more of a litigation tactic. *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994); *In re Holm,* 75 B.R. 86, 87 (Bankr. N.D. Cal. 1987); *Chu v. Syntron Bioresearch, Inc. (In re Chu)*, 253 B.R. 92, 95–6 (S.D. Cal. 2000); *In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984). Here, Mr. Giuliani does not fall into any of the three categories identifiable in the case law. First, all creditors oppose the Motion, including the Freeman Plaintiffs and the Committee. Second, Mr. Giuliani is not a large multinational corporation or a corporation at all. Finally, there is no basis to conclude that denying the Motion will lead to a disorderly liquidation. Mr. Giuliani is currently benefiting from the automatic stay and the Freeman Plaintiffs have not moved to dismiss the case. Moreover, pursuing the appeal is in no way essential to protecting Mr. Giuliani's business, which—to the extent it exists—is based on his own political commentary.[18] In fact, Mr. Giuliani's own remarks make it clear that his entire chapter 11 case is a strategy to deal with the Freeman Judgment.[19] *See, e.g.*, *In re Karum Grp., Inc.*, 66 B.R. 436, 438 (Bankr. W.D. Wash. 1986) (dismissing a chapter 11 petition where the facts "show that the debtor filed solely to enable it to continue litigating in state court without having to post a supersedeas bond"). On the spectrum of "legitimate reorganization purpose" to "impermissible litigation tactic," Mr. Giuliani's pursuit of the Appeal is much closer to the latter.

33.    Indeed, Mr. Giuliani's case is most similar to cases that have been dismissed as bad faith filings. For example, courts will not allow a debtor to use chapter 11 as a substitute for a

---

[18]    As a result of his defamatory statements, Mr. Giuliani's continued business is arguably creating liabilities that could exceed any profit.

[19]    First Stay Relief Transcript 14:13-22 ("[T]his case was filed on December 21, 2023. And it was filed – it was precipitated by the entry the prior day by Judge Howell in the Federal District Court for the District of Columbia, where the court entered an order authorizing the Freeman plaintiffs to enter and force their judgment on an expedited basis. So while the debtor had been reviewing options, the entry of that judgment . . . of that order late on December 20th accelerated the debtor's thinking, and this petition was filed the next afternoon."); First Stay Relief Motion ¶ 15 ("In this instance the $148,000,000.00 judgment was the immediate precipitating cause of the Debtor's Chapter 11 filing.").

supersedeas bond when the purpose of the chapter 11 filing is to relitigate a state court judgment. *See In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. at 851 ("The debtor filed its petition herein to avoid the consequences of adverse state court decisions while it continues litigating. This court should not, and will not, act as a substitute for a supersedeas bond of state court proceedings."); *see also In re Cinnabar 2000 Haircutters, Inc.*, 20 B.R. 575, 577 (Bankr. S.D.N.Y. 1982) (noting debtor may not use the automatic stay as a strategy device to circumvent its failure to obtain a stay pending appeal). Here, Mr. Giuliani's attempt to relitigate the merits of the Freeman Litigation on appeal is particularly outrageous given his conduct in the District Court. There, Mr. Giuliani repeatedly violated court orders and avoided his discovery obligations. That willful litigation misconduct led to Judge Howell entering a default judgment sanction that Mr. Giuliani now hopes to appeal. Based on his conduct in this chapter 11 case to date, there is little reason to think Mr. Giuliani has abandoned his strategy of intentionally abusing the civil justice system. While the Freeman Plaintiffs are not currently requesting that this case be dismissed, it would be highly inequitable for the Court to grant Mr. Giuliani's requested, affirmative relief to prosecute the Appeal.

34.   The relief Mr. Giuliani seeks is separately impermissible under another line of case law: cases prohibiting the use of the automatic stay as a sword. It is black letter bankruptcy law that the automatic stay can only be used as a shield and not a sword. *See Sternberg v. Johnston*, 582 F.3d 1114, 1124 (9th Cir. 2009) ("We have never said the stay should aid the debtor in pursuing his creditors . . . . The stay is a shield, not a sword."); *In re Uchitel*, No. 20-11585 (JLG), 2022 WL 3134217, at *13 (Bankr. S.D.N.Y. Aug. 4, 2022) ("To hold otherwise would be to impermissibly enable the Debtor to use bankruptcy as a sword, rather than as a shield."); *see also In re Residential Cap.*, No. 12-12020 (MG), 2012 WL 3249641 (Bankr. S.D.N.Y. Aug. 7, 2012)

(denying creditor's lift stay motion and rejecting partial lifting of the automatic stay).  Here, Ms. Freeman and Ms. Moss are judgment creditors with nonbankruptcy rights under the Federal Rules of Civil Procedure ("FRCP").  Specifically, but for the automatic stay, FRCP 62 and the D.C. District Court's orders authorize the Freeman Plaintiffs to execute on their judgment even while Mr. Giuliani pursued an appeal, unless Mr. Giuliani were to post a bond securing the full amount of the judgment, or other "adequate" security.  Fed. R. Civ. P. 62(b).  By looking to pursue the Appeal without posting a bond and without any legitimate restructuring purpose, Mr. Giuliani is looking to use the bankruptcy process as a way to have his cake and eat it too (i.e., vigorously pursue an appeal without needing to post a supersedeas bond).  Notably, Mr. Giuliani has not proposed either (a) lifting the stay as to *both* himself and the Freeman Plaintiffs, or (b) lifting the stay upon his posting *any* security, much less adequate security.[20]  The Court should reject Mr. Giuliani's request to use the bankruptcy process as a sword to achieve a result that would not be permitted outside of bankruptcy.

35.      Finally, much like the First Stay Relief Motion, the current Motion contains no law that supports granting Mr. Giuliani the one-sided relief he seeks.  The Motion cites one case in support of the relief being sought:  *In re Mildred Deli Grocery, Inc.*, No. 18-10077 (MG), 2018 WL 1136017 (Bankr. S.D.N.Y. Feb. 28, 2018).  There, creditors moved to lift the automatic stay to continue a litigation against the debtor that was *set for trial.*  In other words, the purpose of lifting the stay there was to allow the claim against the debtor (if any) to become "fixed."  *Id.* at *3, *9.  Here, the Freeman Judgment is already a fixed claim as a result of the prepetition jury

---

[20]      Indeed, although Mr. Giuliani has readily proposed using third-party assets to fund his burgeoning team of appellate lawyers, he has never proposed obtaining such third-party assistance in posting a bond to secure *any portion* of the Freeman Plaintiffs' claim.

verdict and Final Judgment. *In re Mildred Deli Grocery, Inc.* is therefore inapplicable to the relief being sought here.

## **CONCLUSION**

36.      For all of the foregoing reasons, Ms. Freeman and Ms. Moss respectfully request that the Court deny the Motion.  The Freeman Plaintiffs do not object to a limited modification of the automatic stay that would allow Mr. Giuliani to (a) inform the Clerk of the District of Columbia Circuit Court that that Freeman Litigation is currently subject to the automatic stay, or (b) respond to the May 20 Filing Requests.  However, the Court *should* rule on the substance of the Motion.  Otherwise, Mr. Giuliani will just use resolving whether he can pursue the Appeal as the basis for continued delay in this case.

*[remainder of page left intentionally blank]*

Dated: May 7, 2024

By: */s/ Rachel C. Strickland*

Rachel C. Strickland
Aaron E. Nathan
James H. Burbage
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
rstrickland@willkie.com
anathan@willkie.com
jburbage@willkie.com

Von A. DuBose (*pro hac vice* forthcoming)
DUBOSE MILLER LLC
75 14th Street NE
Suite 2110
Atlanta, GA 30309
Telephone: (404) 720-8111
dubose@dubosemiller.com

Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
mgottlieb@willkie.com
mgovernski@willkie.com

Rachel Goodman
John Langford
UNITED TO PROTECT DEMOCRACY
82 Nassau Street, #601
New York, NY 10038
Telephone: (202) 579-4582
rachel.goodman@protectdemocracy.org
john.langford@protectdemocracy.org