AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

*Counsel to the Official Committee of
Unsecured Creditors of Rudolph W. Giuliani*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| **RUDOLPH W. GIULIANI** | : Case No. 23-12055 (SHL) |
| a/k/a RUDOLPH WILLIAM GIULIANI, | : |
| | : |
| **Debtor.** | : |

---------------------------------------------------------------x

**REPLY IN SUPPORT OF THE
MOTION OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS OF RUDOLPH W. GIULIANI TO
COMPEL THE DEBTOR TO (I) FILE DELINQUENT MONTHLY OPERATING
REPORTS AND (II) FILE TIMELY FUTURE MONTHLY OPERATING REPORTS**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of Rudolph W. Giuliani a/k/a Rudolph William Giuliani (the "Debtor"), by and through its undersigned counsel, hereby files this reply (this "Reply") to the Debtor's response [Docket No. 206] (the "Response") to the *Motion of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani to Compel the Debtor to (I) File Delinquent Monthly Operating Reports*

*and (II) File Timely Future Monthly Operating Reports* [Docket No. 197] (the "Motion").[1] In support of this Reply and further support of the Motion, the Committee respectfully states as follows:

**REPLY**

1. The Committee finds it notable that the Debtor did not file an objection to the Motion but, instead, filed a two-and-a-half page "response." The Response does not argue that the Motion should not be granted and does little to alleviate the Committee's concerns about the Debtor. The Committee continues to lack confidence in the Debtor's ability to fulfill his obligations as a debtor in possession,[2] including by filing timely, accurate and complete monthly operating reports.

2. *First*, the Debtor has filed every monthly operating report after the applicable deadline.

| Monthly Operating Report | Filing Deadline | Date Filed |
|---|---|---|
| December 2023 [Docket No. 80] | January 22, 2024 | January 29, 2024 |
| January 2024 [Docket No. 127] | February 21, 2024 | February 23, 2024 |
| February 2024 [Docket No. 199] | March 21, 2024 | May 2, 2024 |
| March 2024 [Docket No. 203] | April 22, 2024 | May 6, 2024 |

The monthly operating reports are the Committee's window into the Debtor's expenditure and receipt of funds, as the Debtor has shown no interest in discussing his monthly spending practices

---

[1]  Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

[2]  *See* Response at ¶ 13 ("[t]he committee has been clear with the fact that they [sic] lack confidence in the Debtor's ability to fulfill his obligations as a Debtor-in-Possession").

2

or a budget with the Committee.[3]  As such, these filings are the Committee's primary means by which to police the Debtor's spending, and, unfortunately, that is a very important job in this case. The Debtor's delayed submissions mean that his litany of incomplete filings, which, among other things, evidence unauthorized postpetition payments are not identified until weeks, and sometimes, months later.  Indeed, as discussed further below, the Committee has identified no less than twenty-one (21) unauthorized postpetition transfers by the Debtor in his monthly operating reports and has made demand on the Debtor to obtain the return of such funds by May 13, 2024.  As of the date of the filing of this Reply, the Debtor has not responded to the Committee's demand.  Absent the return of the improper postpetition transfers, the Committee anticipates seeking standing on behalf of the Debtor's estate to pursue claims against the recipients of such transfers and/or the entities for whose benefit such transfers were made and additional relief from this Court.

3.  *Second*, in the Response, the Debtor states that he understands the importance of timely filing monthly operating reports and that his counsel has explained this to him.  *See* Response at ¶¶ 6, 10, 12, 14.  Those statements, however, do not inspire confidence, as timing is only part of the issue, and the Debtor says nothing in the Response to address the fact that the limited information that is provided in his monthly operating reports raises serious concerns about his understanding of the Bankruptcy Code and what it means to be a debtor in possession.

4.  For example, one day before filing the Response, the Debtor filed a monthly operating report for March (the "March MOR").  The Response explains how the Debtor's accountant, Ricci And Company, CPA, P.C. ("Ricci"), is no longer willing to work for the Debtor and the Debtor is unable to find another accountant.  *See* Response at ¶¶ 7-8.  The Debtor never

---

[3] The Committee has requested information concerning the Debtor's compensation because he notes in the Response that he receives income from his radio show and podcast, but no wages, salaries or other forms of compensation are included in his monthly operating reports.

3

filed a retention application for Ricci, even though a principal thereof signed the December MOR and the January MOR. *See* December MOR at p. 9; January MOR at p. 9. Nonetheless, the March MOR reveals a $12,000 payment to Ricci via check dated "March , 2024." *See* March MOR at p. 19. This is just one of numerous payments that the Debtor had no authority to make. The Debtor's counsel agreed that Mr. Giuliani had no authority to make that payment and assured the Committee's counsel that the Debtor was working to get that payment returned. The problem, however, is that the payment happened two months ago and no one did anything to facilitate its return within that time. Indeed, it is unclear whether any action at all would have been taken but for the Committee's outreach.[4]

5.  Moreover, this follows thousands of dollars of unauthorized payments in January 2024, which were only identified by the Committee after requests for supporting documentation because the January MOR did not include enough detail regarding for whose benefit credit card charges were incurred and related payments were made. *See* January MOR [Docket No. 127-1] at p. 2 (a table of all "American Express Payments" with two columns: (1) the date and (2) the amount, and no identification of the applicable credit card or recipient of each payment), at p. 3 (a table of all "Discover Payments" with four columns: (1) the date, (2) the amount, (3) the vendor (though no vendor is included in the table) and (4) category (which includes just "MISC" and "PRIOR BALANCE," and no identification of the applicable credit card or recipient of each payment). The Committee had to undertake a line by line review of the Debtor's credit card statements for January and try to match payments from the credit card statements with those actually disclosed in the monthly operating report, and many of the payment dates do not match.

---

[4] Unfortunately, as of the date hereof, the Debtor has provided no evidence that he has taken any steps to recover the $12,000 unauthorized payment from Ricci.

4

6.      Such review revealed that the Debtor made thousands of dollars of payments for his affiliated company's employees and close associates, Maria Ryan and Ted Goodman, and for one of his companies, Giuliani Partners LLC ("Giuliani Partners"). In fact, one of the credit card statements provided by the Debtor to the Committee as supporting documentation for the January MOR was Ms. Ryan's credit card statement, in addition to two of Giuliani Partners' credit card statements. Although the Committee identified such unauthorized payments to the Debtor's counsel and in its pleadings before this Court, the Committee is not aware of any steps taken by the Debtor to facilitate the return of such amounts.

7.      Despite the Debtor's counsel's assurances that such unauthorized payments would not happen again, the recently filed monthly operating reports show similar unauthorized payments. *See, e.g.*, February MOR [Docket No. 199-2] at pp. 19, 37 (payment of Giuliani Partners' credit card bills) and March MOR [Docket No. 203-1] at p. 19, [Docket No. 203-2] at p. 8 (payment of Giuliani Partners' credit card bills).

8.      *Third*, the Committee has serious doubts as to whether the information included in the Debtor's monthly operating reports is even accurate. For example, attached to the monthly operating report for February (the "February MOR") are two February *2023* bank statements, which appear to be the source for at least one number in the February monthly operating report form. *See* February MOR [Docket No. 199-1] at pp. 1-4 (February 2023 bank statement), 14-17 (February 2023 bank statement showing receipt of a social security payment in the amount of $4,509.08); [Docket No. 199] at p. 2 (listing total receipts of $4,509). Upon request, the Debtor's counsel sent to the Committee's counsel the February 2024 bank statements; however, it is not the Committee's job to do the Debtor's math for him, and the Debtor needs to file an amended February MOR.

5

9.  Finally, in the Response, the Debtor notes efforts made by him and his counsel to resolve issues concerning the monthly operating reports.  *See* Response at ¶ 11.  In connection therewith, the Debtor references an "informal 2004 examination."  *Id.*  That deposition is completely irrelevant to the Motion, as the examination was, by agreement with the Debtor, limited to (i) where and how the Debtor stores his documents and (ii) third parties that may have the Debtor's documents.

10. Accordingly, the Debtor has shown himself to be unwilling to file, or incapable of filing, timely, accurate and complete monthly operating reports.  Accordingly, the relief requested by the Committee in the Motion remains ripe for consideration by the Court and should be granted.

**CONCLUSION**

11. For the reasons set forth in the Motion and herein, the Committee respectfully requests that the Court grant the relief requested in the Motion and such other and further relief as is just, proper and equitable.

Dated: May 10, 2024
     New York, New York

*/s/ Philip C. Dublin*
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Tel:   (212) 872-1000
Fax:   (212) 872-1002
Email:  idizengoff@akingump.com
          pdublin@akingump.com
          aqureshi@akingump.com

- and -

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Tel:   (214) 969-2800
Fax:   (214) 969-4343
Email:  rbibloblock@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Rudolph W. Giuliani*