UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                                                         Chapter 11

RUDOLPH W. GIULIANI                                                          Case No: 23-12055
a/k/a Rudolph William Giuliani,

                      Debtor.
------------------------------------------------------------X

## AMENDED DECLARATION OF KENNETH A. CARUSO IN SUPPORT OF THE APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF KENNETH CARUSO LAW LLC AS SPECIAL COUNSEL TO THE DEBTOR EFFECTIVE MARCH 20, 2024

      I, Kenneth A. Caruso, hereby declare, pursuant to 28 U.S.C. § 1746, that the following statements are true and correct, to the best of my knowledge and belief after due inquiry as described herein:

      1.      I am a member of the Bar of this Court and the sole member of Kenneth Caruso Law LLC ("KCL"), 15 West 72nd Street, New York NY 10023. In brief: In recent years, I was a litigation partner at the global law firm White & Case LLP, and later, Special Counsel at the boutique litigation firm now known as Mukasey Young LLP. While in private practice, I have also performed quasi-judicial service, by appointment of several United States District Judges, as a Special Master, a Receiver in an SEC case, a Special Prosecutor in an attorney discipline proceeding and a mediator.

      2.      Before I entered private practice, I served as an Assistant United States Attorney for the Southern District of New York and as Deputy Associate Attorney General of the United States at Department of Justice headquarters in Washington, D.C. I graduated from Columbia University School of Law in 1977 and I was admitted to the New York Bar in 1978. I am a member of the Bars of the Supreme Court of the United States, the United States Court of

1

Appeals for the Second Circuit and the United States District Courts for the Southern and Eastern Districts of New York. Over the years, I have also been admitted *pro hac vice* in numerous federal and state courts around the country.

3. I am familiar with the matters set forth in this Declaration, which I make in support of the application (the "Application") of Rudolph W. Giuliani, the Debtor and Debtor-in Possession, to retain KCL as his special counsel in this case. Specifically, the Debtor seeks to retain KCL to represent the Debtor in connection with his appeal from the final judgment of the United States District Court for the District of Columbia, in *Freeman et al. v. Giuliani*, Case No. 1:21-cv-03354-BAH, to the United States Court of Appeals for the District of Columbia Circuit (the "Appeal").

## KCL'S QUALIFICATIONS

4. The Debtor seeks to retain KCL because of my expertise, experience and knowledge with respect to the issues that will arise in the Appeal. More specifically:

5. Over the years, I have defended many defamation cases, and I am fully familiar with the common-law and constitutional-law issues that arise in such cases. I am also fully familiar with the law of intentional infliction of emotional distress ("IIED"). In fact, in a different case, I am currently litigating one of the very issues that will arise in the Appeal; namely, the contention that IIED impermissibly "duplicates" a claim for a traditional tort (such as defamation). Finally, I am fully familiar with the common-law and constitutional-law issues of compensatory and punitive damages for intentional torts.

6. I am a seasoned appellate advocate, having appeared as lead counsel in 57 appeals in the U.S. Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Ninth and Eleventh Circuits; the New York Court of Appeals; and the Appellate Division, First and Third

Departments. I also was selected for, and served on, the Second Circuit's Criminal Justice Act Panel, representing indigent defendants on appeal. I am fully familiar with the Federal Rules of Appellate Procedure.

7.  In my experience, it is not uncommon for a party to change counsel when a case moves from a trial court to an appellate court. Often, at the appellate stage, the party benefits from a new lawyer's fresh perspective on the case, even a case that was very ably tried. I respectfully submit that I will bring that fresh perspective to the Appeal, which, as this Court knows, is critically important to the Debtor's successful reorganization, given the substantial damages awarded in the judgment to be challenged on the Appeal.

8.  I have read the Objection, ECF 200, filed by the Official Committee of Unsecured Creditors (the "Committee"). The Committee, however, does not dispute the following: The Judgment to be challenged on the Appeal is the Debtor's largest debt and presents the single most important obstacle to a successful reorganization. A fresh set of eyes, fresh analysis and fresh advocacy are extremely helpful in a situation like this. I am qualified to conduct the Appeal. I bring a fresh perspective. And I work free of charge, as far as the estate is concerned. In these undisputed circumstances, the Court should reject the Committee's objection. Finally, moving beyond the undisputed, my fresh perspective is—in my professional judgment—necessary in the circumstances of this case.

## PROFESSIONAL COMPENSATION

9.  KCL intends to apply for compensation for professional services rendered on the basis of a flat fee of $250,000 and reimbursement of actual, necessary expenses incurred in connection with the engagement, subject to the Court's approval in accordance with Section 330(a) of the Bankruptcy Code and in compliance with applicable provisions of the Bankruptcy

3

Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable procedures and orders of the Court. My current, standard hourly rate is $1,400. Therefore, in light of the work to be done on the Appeal, the flat fee of $250,000 is different from, and will likely be lower than, the fee that KCL generally charges in similar representations, regardless of the location of the matter.

10. The Committee does not object to the flat fee of $250,000 plus reimbursement of expenses. Indeed, it is hard to see how the Committee *could* lodge a meritorious objection considering that the Debtor's estate will *not* pay the fees and expenses. The Court may note the irony here: The Committee, through its Objection, depletes the estate in an effort to avoid or delay an appeal that will seek to increase the estate. The Debtor and I, by contrast, seek to increase the estate without depleting the estate.

11. The position taken by the *Freeman* Plaintiffs, furthermore, is very telling. The *Freeman* Plaintiffs hold an enormous judgment against the Debtor. Viewing the situation objectively, the judgment creditor should be anxious to win affirmance on appeal, so that she can move the litigations along and seek to enforce the judgment, perhaps after a finding of non-dischargability. Here, however, the *Freeman* Plaintiffs do everything they can to obstruct the Appeal. That conduct warrants the inference that the *Freeman* Plaintiffs and/or their counsel recognize that the Judgment is vulnerable to reversal on appeal.

12. Mr. Joseph Sibley of Camara and Sibley will withdraw as counsel on the Appeal, and I will substitute into the Appeal, as counsel for the appellant (the Debtor in this case). Upon approval of this Application, Mr. Sibley and I will execute and file in the D.C. Circuit a formal notice of withdrawal and substitution of counsel.

13. I expect that Mr. David Labkowski of Labkowski Law, P.A., a member of the Bars of New York and Florida, will file his own, separate application to serve as appellate co-counsel to assist me on the Appeal. That application will address all the required issues, such as Mr. Labkowski's compensation, lack of conflicts of interest, and avoidance of duplication of efforts. Mr. Labkowski also will be paid from the Giuliani Defense fund and therefore there will be no fee sharing. I have read Bankruptcy Code section 504 and will comply therewith.

14. I expect that I will work with Mr. Labkowski on the Appeal, and avoid duplication of effort, as follows:

15. The first stage of the Appeal involves the selection of the questions to be presented on the Appeal. I believe that the lawyer in charge of an appeal must, at this stage, personally review the record and exercise his or her best professional judgment to select the issues. That is precisely what I am doing here, considering that the D.C. Circuit has, by order, fixed May 20, 2024, for the submission of a statement of the issues to be presented. I am doing that work largely unassisted, although Mr. Labkowski, at my request, has conducted some legal research for me. For avoidance of duplication, I have specifically directed Mr. Labkowski to refrain from work that I am doing, such as reading the entire trial transcript and the trial exhibits.

16. The next stage is the brief writing (although, in fact, I have already drafted some "inserts" while the record-review and legal research was fresh in my mind). I always do substantially all my own brief-writing; this case will be no exception. During this stage, Mr. Labkowski will conduct legal research, locate particular items of evidence, argument and rulings in the record, and/or draft specific inserts at my direction and under my supervision. When I have completed a substantially final draft of the brief, I will have Mr. Labkowski review it and

5

propose edits, which I will consider carefully and take into account when finalizing the brief. (The division of labor for the reply brief will be the same.)

17. The next stage is oral argument. I will orally argue the appeal. I always hold a moot court in preparation; this case will be no exception. Mr. Labkowski will "sit" on the moot court "panel."

18. It is KCL's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also KCL's policy to charge its clients only the amounts actually incurred by KCL in connection with such items. With respect to the Appeal, I expect that such expenses will include court filing fees, court reporter fees for transcripts of proceedings in the district court, the fees of an appellate-printing vendor, overnight mail and courier delivery. There may also be expenses for travel to Washington, D.C., in connection with oral argument of the Appeal.

19. KCL will not charge for standard duplication in its office, for computer-assisted legal research, or for fax transmissions (which KCL does not use).

20. Under all the circumstances of this case, I believe that the fees set forth above will compensate KCL fairly for the professional services to be rendered and will cover actual, necessary expenses.

**DISINTERESTEDNESS AND LACK OF ADVERSE INTERST**

21. KCL, in connection with its proposed retention by the Debtor in this Chapter 11 case, undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtor or his estate. Specifically, KCL obtained from the Debtor's counsel the names of individuals and entities that

6

may be parties in interest in this Chapter 11 case or otherwise have material connections to this case (the "Potential Parties in Interest") and such parties are listed in Exhibit B hereto. Exhibit B includes all creditors disclosed on Debtor's schedules, and all the Debtor's affiliates disclosed on the Debtor's Schedules. KCL has searched its electronic database of closed/prior matter files for connections to the entities and persons listed in Exhibit B and there are no connections to the Potential Parties in Interest with any closed/prior matters. I am responsible for all matters on which KCL currently works. Therefore, I have personal knowledge that KCL currently has no connection to any of the Potential Parties in Interest.

22.     I have known the Debtor since 1977. We have been personal friends and professional colleagues in both government service and private practice. During his Mayoralty, he appointed me to positions of trust and confidence, such as membership on the Board of Directors of the Metropolitan Transportation Authority, the New York City Charter Revision Commission, and the Mayor's Appointments Committee. From 2005 to 2010, he and I were partners in the law firm then known as Bracewell & Giuliani. Based on the conflicts search conducted to date and described herein, to the best of my knowledge, neither KCL nor I, insofar as I have been able to ascertain, have any connection with the Debtor's corporate affiliates, the Debtor's creditors, or any other parties in interest, their respective attorneys and accountants, the United States Trustee for Region 2 (the "U.S. Trustee"), any person employed his office, any Bankruptcy Judge currently serving on the United States Bankruptcy Court for the Southern District of New York, any District Judge currently serving on the United States District Court for the Southern District of New York, or the Clerk and Deputy Clerk of the United States Bankruptcy Court for the Southern District of New York. Please see the annexed Schedule B.

23. KCL has no other connection with any other party in interest with respect to the Appeal.

24. KCL will disclose in the future if it performs or has performed services for any Potential Parties in Interest in this Chapter 11 case, and KCL will promptly update this Declaration to disclose any developments regarding the Debtor, his creditors, or any other pertinent relationship that comes to KCL's attention that would require disclosure under Fed. R. Bankr. P. 2014. KCL will not take on any clients who are creditors in this case with respect to the matter upon which I am being retained. KCL has not received a retainer, advance or any other property of the Debtor or other person in connection with the Appeal.

25. To the best of my knowledge, (a) KCL is a "disinterested person" within the meaning of section 101(14) the Bankruptcy Code and does not hold or represent an interest adverse to the Debtor or the Debtor's estate with respect to the Appeal on which KCL is being employed, and (b) KCL has no connection to the Debtor, his creditors, or other parties in interest, except as is disclosed in this Declaration.

26. To the best of my knowledge, after due inquiry, KCL:

   a. Is not an equity security holder, or an "insider" of the Debtor;

   b. Is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the Debtor; and

   c. Does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

27. KCL is not owed any pre-petition fees and is, therefore, not a creditor in this bankruptcy.

28. KCL has agreed that it will not seek payment of any legal fees or costs, in connection with the Appeal, directly from the Debtor. KCL will file any application for an award of fees and expenses in this case to be payable from the Giuliani Defense fund. To be clear: KCL will not seek payment from the Debtor.

29. Accordingly, I believe that KCL is "disinterested", as that term is defined in section 101(14) of the Bankruptcy Code, and, pursuant to section 327(e) of the Bankruptcy Code, is not disqualified from being retained as special counsel to the Debtor.

30. The following is provided in response to the request for additional information set forth in Paragraph D.1. of the Appendix B Guidelines.

Question: Did you agree to any variations from, or alternatives to your standard or customary billing arrangements for this engagement:

Response: Yes. My standard and customary billing arrangement is hourly; my current, standard hourly rate is $1,400. I have agreed here to a flat fee of $250,000, plus expenses, as stated above.

Question: Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case:

Response: No.

Question: If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed post-petition, explain the difference and the reasons for the difference.

Response: Not applicable.

Question: Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

Response: Yes; for the duration of the proceedings in the United States Court of Appeals for the District of Columbia Circuit. KCL has agreed to the fee arrangement set forth above because I believe that this amount will be lower than a fee that would be generated by hourly rates and because I understand that the legal defense funds have many obligations on behalf of Debtor for a variety of other matters. Nevertheless, KCL will maintain time records in tenths of an hour increments and will submit, with any interim or final fee application, together with the time records, a narrative summary, by project category, of services rendered, and will identify each professional rendering services, the category of services rendered, and the amount of compensation requested.

31.     KCL agrees that it will not share fees other than in compliance with Section 504 of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 13, 2024

_Kenneth A. Caruso_