1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x

In the Matter of:

RUDOLPH W. GIULIANI,                     Lead Case No.

            Debtor.                      23-12055-shl

- - - - - - - - - - - - - - - - - - -x

FREEMAN, et al.,

            Plaintiffs,                  Adv. Proc. No.

v.                                       24-01320-shl

GIULIANI,

            Defendant.

- - - - - - - - - - - - - - - - - - -x

FREEMAN, et al.,

            Plaintiffs,                  Adv. Proc. No.

v.                                       24-01355-shl

GIULIANI,

            Defendant.

- - - - - - - - - - - - - - - - - - -x

2

1

2                United States Bankruptcy Court

3                One Bowling Green

4                New York, New York

5

6                May 14, 2024

7                11:05 AM

8

9

10

11  B E F O R E:

12  HON. SEAN H. LANE

13  U.S. BANKRUPTCY JUDGE

14

15  ECRO:   ART

16

17

18

19

20

21

22

23

24

25

3

1

2  Case Management Status Conference

3

4  Doc. #217 Notice of Agenda

5

6  Doc. #197 Motion Of The Official Committee Of Unsecured

7  Creditors Of Rudolph W. Giuliani To Compel The Debtor To (I)

8  File Delinquent Monthly Operating Reports And (II) File Timely

9  Future Monthly Operating Reports

10

11  Doc. #195 Motion For An Order Modifying The Automatic Stay For

12  The Limited Purpose Of Allowing The Debtor To Proceed With

13  Prosecuting And Perfecting The Freeman Appeal Before The D.C.

14  Circuit

15

16  Doc. #220 Amended Application To Employ Kenneth Caruso Law, LLC

17  As Special Litigation Counsel

18

19  Adversary proceeding: 24-01320-shl Freeman et al v. Giuliani

20  Pre-Trial Conference

21

22  Adversary proceeding: 24-01320-shl Freeman et al v. Giuliani

23  Doc. #5 Scheduling Order

24

25

4

1

2   Adversary proceeding: 24-01355-shl Freeman et al v. Giuliani

3   Doc. #2 Letter Requesting A Pre-Motion Conference

4

5   Adversary proceeding: 24-01355-shl Freeman et al v. Giuliani

6   Doc. #3 Notice Of Pre-Motion Conference

7

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  River Wolfe

21   eScribers, LLC

22   7227 North 16th Street, Suite #207

23   Phoenix, AZ 85020

24   (800) 257-0885

25   operations@escribers.net

5

1

2   A P P E A R A N C E S:

3   BERGER, FISCHOFF, SHUMER, WEXLER & GOODMAN, LLP

4          Attorneys for Debtor

5          6901 Jericho Turnpike

6          Suite 230

7          Syosset, NY 11791

8

9   BY:   HEATH S. BERGER, ESQ.

10         GARY C. FISCHOFF, ESQ.

11

12

13  LABKOWSKI LAW, P.A.

14         Attorneys for Debtor

15         250 95th Street

16         Suite 547233

17         Surfside, FL 33154

18

19  BY:   DAVID LABKOWSKI, ESQ.

20

21

22

23

24

25

6

KENNETH CARUSO LAW LLC

       Proposed Special Counsel for Debtor

       15 West 72nd Street

       New York, NY 100023


BY:   KENNETH A. CARUSO, ESQ.



WILLKIE FARR & GALLAGHER LLP

       Attorneys for Ms. Ruby Freeman and Ms. Wandrea ArShaye

        Moss

       787 Seventh Avenue

       New York, NY 10019


BY:   ALISON R. AMBEAULT, ESQ. (ZOOM)

       JAMES BURBAGE, ESQ.

       MARINE LOISON, ESQ. (ZOOM)

       AARON E. NATHAN, ESQ.

       RACHEL C. STRICKLAND, ESQ.

7

1

2   WILLKIE FARR & GALLAGHER LLP

3        Attorneys for Ms. Ruby Freeman and Ms. Wandrea ArShaye

4          Moss

5        1875 K Street, Northwest

6        Washington, DC 20006

7

8   BY:   MICHAEL GOTTLIEB, ESQ. (ZOOM)

9        MERYL GOVERNSKI, ESQ. (ZOOM)

10        MAGGIE MACCURDY, ESQ. (ZOOM)

11

12

13   AKIN GUMP STRAUSS HAUER & FELD LLP

14        Attorneys for the Official Committee of Unsecured

15          Creditors

16        2300 North Field Street

17        Suite 1800

18        Dallas, TX 75201

19

20   BY:   RACHEL L. BIBLO BLOCK, ESQ.

21

22

23

24

25

```
 1
 2   AKIN GUMP STRAUSS HAUER & FELD LLP
 3        Attorneys for the Official Committee of Unsecured
 4           Creditors
 5        One Bryant Park
 6        New York, NY 10036
 7
 8   BY:   AMELIA DANOVITCH, ESQ.
 9         PHILIP C. DUBLIN, ESQ.
10         SHANT K. EULMESSEKIAN, ESQ. (ZOOM)
11         ABID QURESHI, ESQ.
12
13
14   DAVIDOFF HUTCHER & CITRON LLP
15        Attorneys for Davidoff Hutcher & Citron LLP
16        605 Third Avenue
17        New York, NY 10158
18
19   BY:   JAMES B. GLUCKSMAN, ESQ. (ZOOM)
20         ROBERT L. RATTET, ESQ. (ZOOM)
21
22
23
24
25
```

9

OFFICE OF THE NYS ATTORNEY GENERAL

     Attorneys for NYS Department of Taxation and Finance

     28 Liberty Street

     New York, NY 10005

BY:   LEO V. GAGION, ESQ. (ZOOM)

     ENID NAGLER STUART, ESQ. (ZOOM)

U.S. DEPARTMENT OF JUSTICE

     Attorneys for the Office of the U.S. Trustee

     One Bowling Green

     New York, NY 10004

BY:   ANDREA B. SCHWARTZ, ESQ. (ZOOM)

WINSTON & STRAWN LLP

     Attorneys for Interested Party

     1901 L Street, Northwest

     Washington, DC 20036

BY:   KENNETH L. PERKINS, ESQ. (ZOOM)

10

ALSO PRESENT:

    NOELLE DUNPHY (ZOOM)

    CLARA E. GEOGHEGAN, Law360 (ZOOM)

    JOSHUA GERSTEIN, Politico (ZOOM)

    ANDREA GOLDEN, Reorg (ZOOM)

    UDAY GORREPATI, ABI Project (ZOOM)

    TAYLOR HARRISON, ION Group (ZOOM)

    DIETRICH KNAUTH, Reuters (ZOOM)

    DANIEL LATHROP, Scripps News (ZOOM)

    EVAN OCHSNER, Bloomberg Law (ZOOM)

    KELLY RISSMAN, The Independent (ZOOM)

    EILEEN SULLIVAN, New York Times (ZOOM)

    VINCE SULLIVAN, Law360 (ZOOM)

    BECKY YERAK, Wall Street Journal (ZOOM)

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

11

|     |     |
| --- | --- |
| 1   | P R O C E E D I N G S |
| 2   | THE COURT:  Please be seated. |
| 3   | Good morning.  My name is Sean Lane.  I'm a bankruptcy |
| 4   | judge here in the Southern District of New York, and we're here |
| 5   | for an 11 o'clock hearing in the Chapter 11 case of Rudolph |
| 6   | Giuliani. |
| 7   | So we'll start, as we always do, with appearances.  So |
| 8   | let me find out who's here on behalf of the debtor. |
| 9   | MR. BERGER:  Sure.  Good morning, Your Honor.  Heath |
| 10  | Berger, Berger, Fischoff, Shumer, Wexler & Goodman, attorneys |
| 11  | for the debtor. |
| 12  | MR. FISCHOFF:  Good morning, Your Honor.  Berger, |
| 13  | Fischoff, Shumer, Wexler & Goodman by Gary Fischoff for the |
| 14  | debtor. |
| 15  | MR. CARUSO:  Your Honor, good morning.  Kenneth |
| 16  | Caruso.  And I'm the proposed special counsel on one of the |
| 17  | motions that you have today. |
| 18  | THE COURT:  All right.  Good morning. |
| 19  | Let me find out who's here on behalf of the official |
| 20  | committee. |
| 21  | MS. BIBLO BLOCK:  Good morning, Your Honor.  Rachel |
| 22  | Biblo Block with Akin Gump Strauss Hauer & Feld.  And I'm |
| 23  | joined by my colleagues Phil Dublin, Abid Qureshi, and Amelia |
| 24  | Danovitch. |
| 25  | THE COURT:  All right.  Good morning. |

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

12

1        And on behalf of the Freeman plaintiffs.

2        MS. STRICKLAND:  Good morning, Your Honor.  Rachel

3   Strickland, Willkie Farr & Gallagher, here with my colleagues

4   Aaron Nathan and Jim Burbage on behalf of the Freeman

5   plaintiffs.

6        THE COURT:  All right.  Good morning.

7        And let me find out if there's anyone else who's in

8   the courtroom here who wishes to make an appearance who's not

9   yet done so.

10        All right.  I know we have the United States Trustee's

11   office on the Zoom hearing, so let me get that appearance.

12        MS. SCHWARTZ:  Thank you, Your Honor.  Andrea Schwartz

13   for the United States Trustee.  And thank you, again, Your

14   Honor, for allowing me to participate via Zoom due to my ankle

15   fracture, foot fracture, or whatever I have.

16        THE COURT:  All good.  All right.  And can you hear

17   everyone in the courthouse fine?

18        MS. SCHWARTZ:  Yes, I can.  Thank you, Your Honor.

19        THE COURT:  All right.  Thank you very much.

20        All right.  So I do have the agenda that was filed on

21   the docket that lists several contested matters.  Just to get a

22   sort of a brief overview, those include the motion to compel

23   the filing of monthly operating reports, a motion for an order

24   seeking to modify the automatic stay, this second such motion

25   in this case, and then a retention application for KCL.  That

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

1   is the Kenneth Caruso Law, LLC as special counsel.  So those

2   are the three items listed.  There's also a pre-trial

3   conference on for a adversary proceeding.

4          So I am thinking, unless I'm totally misreading the

5   tea leaves, that it makes sense to start with the lift stay

6   motion first, unless there's some preliminary status of the

7   case matters that are worth addressing.  But I'm open to the

8   suggestions of the parties.

9          MR. BERGER:  Your Honor, Heath Berger.

10         The only status I just wanted to really update the

11  Court with is that we did file the retention application for

12  Sotheby's to be retained in order to sell the debtor's

13  apartment in New York City.  I believe that's on towards the

14  end of the month, but I just want to let the Court know that

15  that has been filed.  Proceeding forward with counsel.  We've

16  all worked out the applications.  We're working with the order

17  with the U.S. Trustee's office.  So just so the Court knows,

18  that's proceeding at this point.

19         THE COURT:  All right.  Thank you for that.

20         All right.  Anyone have a suggestion for proceeding in

21  a way other --

22         When was that filed?

23         MR. BERGER:  That was filed on Monday, I believe, Your

24  Honor.

25         THE COURT:  All right.  Anyone prefer to proceed with

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 14 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

14

1  something other than the lift stay motion first?  That seems to

2  be sort of the thing upon which quite a few things hang this

3  morning.

4       So all right.  So with that, it's debtor's motion.

5  I'll turn it over to the debtor's counsel.

6       MR. FISCHOFF:  Thank you.  Good morning, Your Honor.

7       So this is the debtor's motion to modify the automatic

8  stay.  As the Court, I'm sure, recalls, we previously had a

9  motion before the Court to modify the automatic stay that

10  authorized the debtor to file post-trial motions and to file a

11  notice of appeal to preserve the appellate right with time

12  expiring.  Since that time, the post-trial motions were denied

13  by the district court in DC, and we're now seeking the stay to

14  be modified to authorize the debtor to proceed to perfect the

15  appeal.

16       In the motion, we also asked for authority to file an

17  amended notice of appeal, but on reflection, since the notice

18  of appeal was filed, we believe that the amended notice was

19  encompassed within that.  And the debtor did file an amended

20  notice of appeal.  So we're not facing that deadline on May

21  15th, but there are the other deadlines faced by the circuit

22  court.

23       So this case -- and by the way, the circuit court,

24  aware of the bankruptcy filing, issued its own order on April

25  18th that said the matter is restored to the calendar and

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

1    issued a set of events that are to be followed in connection

2    with the appeal in the district court.

3            THE COURT:  Well, let me ask you what happens if the

4    motion isn't granted?  I assume, since it is a litigation

5    against the debtor, that it would be stayed by virtue of the

6    bankruptcy.

7            MR. FISCHOFF:  Well --

8            THE COURT:  I mean, I know what the district court --

9    the circuit did, but at the same time, the circuit --

10           MR. FISCHOFF:  Yes.

11           THE COURT:  -- saw there was a filing of pleadings in

12   the district court so may have assumed that the stay was lifted

13   for all purposes or it was somehow going forward.  That's a

14   busy courthouse down there.  So they don't necessarily have

15   time to parse out all the details until they need to do that

16   so --

17           MR. FISCHOFF:  If the debtor's motion is not granted,

18   then I believe the debtor doesn't have the authority to perfect

19   the appeal in the circuit court, and that's why we're asking

20   for permission.

21           THE COURT:  No, no, but I'm asking a different

22   question.

23           MR. FISCHOFF:  Oh, oh, maybe I --

24           THE COURT:  So what happens by virtue of that?  That

25   case would be stayed, wouldn't it?

23-12055-shl    Doc 231    Filed 05/16/24    Entered 05/24/24 10:23:55    Main Document
Pg 16 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

16

1        MR. FISCHOFF:  I believe it's stayed, but the circuit

2   court may have its own opinion.  So we're in an area I don't

3   really know what to --

4        THE COURT:  Well, no, I'm asking you as bankruptcy

5   counsel.

6        MR. FISCHOFF:  Yeah, it's stayed.

7        THE COURT:  They issued something for scheduling

8   order.  They do that in the ordinary course.  That's what

9   they're supposed to do to keep the trains running.  So all

10  right.

11       MR. FISCHOFF:  I think it's stayed, then, in terms of

12  bankruptcy law and bankruptcy law that we're familiar with.  I

13  believe it would be stayed absent the authority of the Court to

14  perfect the appeal, which is consistent with the prior order of

15  this Court that said any further action on the appeal is

16  subject to further order of the Court.  And that's why we're

17  here.

18       And this is important to the debtor because obviously

19  the outcome of the appeal -- and we believe there are

20  meritorious grounds for a successful appeal.  And this is

21  important to the status of the debtor's case because obviously

22  a 148-million-dollar judgment is this case.  There are other

23  claims against the debtor, but if this were sustained or if

24  it's not sustained and perhaps vacated, that will be the

25  fundamental issue in this case.

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

17

1        And lifting the stay so this could proceed is actually

2    beneficial to the debtor's estate and its creditors.  I'm a

3    little perplexed why the creditors committee would oppose this

4    because if this large creditor is eliminated or reduced or

5    vacated, whatever the outcome, will have a serious impact on

6    the process of this case.

7        THE COURT:  Well, so let's dive into why they might

8    oppose it.  So there's the optics of how things have gone based

9    on what I've seen in the papers.  And I think I had urged the

10   parties, as I do in all cases, but particularly in cases that

11   have this level of acrimony coming in, to communicate.  I

12   encourage parties to communicate with one another.

13       But that doesn't appear to be -- that message doesn't

14   appear to have sunk in.  And so I understood from the parties

15   who filed objections that, in fact, they haven't really heard a

16   lot from the debtor and then saw this motion to lift the stay

17   for a second time and are sort of in the dark about other

18   progress on the case.  So certainly, that's not a substantive

19   kind of response to your motion, but it does sort of -- various

20   things that happen in bankruptcy court reflect whether parties

21   are talking to one another or not.  And I have a stack of

22   papers that reflects people not talking to one another.

23       MR. FISCHOFF:  Well, that's not correct because we're

24   in communication, at least with the creditors committee, on a

25   regular basis.  And on not as a regular basis, but we are in

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

18

1  touch with the Freeman plaintiffs' attorneys because they have

2  their complaint.  They have their motion --

3        THE COURT:  Did anyone pick up the phone before you

4  filed this motion to tell them you were going to file this

5  motion?

6        MR. FISCHOFF:  I believe I asked for if they would

7  consent, and they said no, which wasn't surprising.  So yes,

8  there is communication, Your Honor, and there's a lot of

9  communication.

10        Now, granted, the debtors had some administrative

11  issues with reports.  They were unable to get a professional

12  willing to assist the debtor with his financial reporting.  We

13  think a process is now in place in order to --

14        THE COURT:  But that's what we had heard last time.

15  Right.  So the last time we got together, I think April 4th,

16  there was a discussion of the February operating report saying

17  had been filed.  There were a couple of questions to the

18  counties on board now, and that turned out not to be the case.

19  So how are we going to prevent this from being a recurring

20  issue?

21        MR. FISCHOFF:  So the accountant who had done work

22  pre-petition for the debtor, Joe Ricci, had said, I'm not going

23  to do this.  Then he said, okay.  We thought we persuaded him

24  to stay and assist.  And after that court hearing, he said, no,

25  I'm out.  I'm not involved.

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

1    We therefore had to set up a process within the debtor

2   and his assistant to try to get us the information to assist

3   preparing the reports.  And it took some time.  I mean, the

4   debtor has not in the past had to report finances.  We believe

5   we have a system in place to get reports timely filed.  And I

6   hope that turns out to be correct, but we believe so.  And

7   there are some errors in one report that we're looking to

8   correct.  But we think that's in place.

9    And then the issue about, well, the debtor's spending

10  down all his resources --

11   THE COURT:  Well, what we're going to get to that.

12   MR. FISCHOFF:  Okay.

13   THE COURT:  That's a whole other sort of area.  But

14  let's focus on disclosure first.

15   There's also pointed out one of the oppositions that

16  there was a concern about the schedules, of assets and

17  liabilities, of financial affairs missing key information,

18  being inaccurate, and that they needed to be updated.  And at

19  least as of the time of the filing of the opposition that I'm

20  looking at, that had not occurred.

21   What's the status of that?

22   MR. FISCHOFF:  Well, the creditors committee has

23  already held one examination of the debtor.  We've agreed that

24  there will be another one or if necessary, maybe beyond that.

25  And they're in the process of their discovery through third-

1   parties --

2         THE COURT:  But let me get an answer to my question.

3   My question is have the initial schedules of assets and

4   liabilities and statement of financial affairs been amended?

5         MR. FISCHOFF:  I'm looking to my colleague Mr. Berger

6   for the answer to my question.

7         MR. BERGER:  Heath Berger, Your Honor.  They haven't

8   been amended.  We believe that we've disclosed everything.  If

9   there's some other stuff, we'll continue to work with the

10  debtor to provide that information.

11        THE COURT:  But I understand.  So I'm not trying to be

12  clever or hide the ball here.  So I'm looking at the motion of

13  the official committee seeking to compel the debtor to file

14  delinquent monthly operating reports.

15        And again, maybe I took the motions in the wrong order

16  so I apologize, but there's a lot of interrelated issues here.

17  And that motion at docket 197 makes reference to a stipulation

18  and an admission by the debtor saying that there are problems

19  and missing key information and containing inaccuracies.  And

20  I'm looking at paragraph 4 on page 6 of 20, and that hasn't

21  been updated.

22        And I guess, again, we've had various hearings where

23  we've stressed the need for compliance and financial

24  transparency by the debtor, that that's the whole bankruptcy

25  benefits and burdens speech, which I've given several times

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

21

1    before.  And it also has a lot to do with how the debtor's

2    actions are perceived in the court, whether they are honoring

3    their obligations when asking for certain things in the case

4    that they want, that the debtor wants.  So that's one of the

5    reasons why I'm asking about this now.

6         MR. BERGER:  Understood, Your Honor, and we will

7    whatever needs to get done to fix whatever's outstanding.  We

8    do believe that things have been filed.

9         As far as the operating reports, Judge, we did create

10   a system with the debtor on what needs to get done and how the

11   reporting does.  As a matter of fact, I have in my possession

12   the April operating report, which I was just waiting for one

13   more piece of backup, which was emailed to me yesterday.  So we

14   will have the April operating report filed by the end of the

15   week.  So that will be timely.

16        And going forward, I believe, Judge, that we will get

17   everything filed in a timely basis.  That is our goal, Judge.

18   Obviously, we know the requirement.  We've emphasized it enough

19   to the debtor what needs to get done.  And hopefully, at this

20   point, the debtor is on board and now knows how to kind of work

21   on the operating report.  And we'll proceed forward that way,

22   Your Honor.  But I do have the April one, so that will be filed

23   on time.

24        THE COURT:  All right.  Continue, Counsel.

25        MR. FISCHOFF:  So as I was saying, the motion is to

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

22

1   request that the stay be modified so that the debtor may

2   perfect the appeal.  If we were not in bankruptcy court,

3   there's no question that the debtor would be free to pursue

4   this appeal.  Now that we're --

5            THE COURT:  If you filed a bond, which you didn't do

6   before, right?

7            MR. FISCHOFF:  Well, no.  You can pursue an appeal

8   without a bond.  There would just be no stay.  So if there were

9   no stay, then the Freeman plaintiffs would be free to seize the

10  debtor's assets and get a --

11           THE COURT:  Right.

12           MR. FISCHOFF:  -- and get a leg up on the debtor's

13  other creditors.  So the benefit of the bankruptcy --

14           THE COURT:  Right, but this isn't an ordinary

15  situation, to be fair.  Right.  The district court took actions

16  in connection with that based on the record in the trial court,

17  right, that reflected a very conscious decision about the

18  reason for allowing that to happen on a very expedited basis

19  so --

20           MR. FISCHOFF:  Well, I saw the order.  I don't know

21  what the court was -- what was going on in their mind.  But the

22  bottom line is the bankruptcy gives the debtor the opportunity

23  to have the decision addressed on appeal while protecting its

24  assets from one creditor getting a leg up on all the other

25  creditors.  So it is to the -- it is to the benefit of the

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

1  debtor's estate and their creditors.

2          THE COURT:  Well, but you realize you have the

3  committee and the Freeman plaintiffs singing off the same sheet

4  of music.  Right.  They both oppose the request.  So I don't

5  know that they see it the way --

6          MR. FISCHOFF:  Well --

7          THE COURT:  -- you see it, and that may be for a

8  number of reasons.  So let's dive into that.

9          So one of the issues that you look at under the Sonnax

10  factors is whether this is going to lead to a partial or a

11  complete resolution.  Your papers say in, I think, a fairly

12  conclusory way that it will, but it's not clear to me why that

13  would be the case.

14          MR. FISCHOFF:  Okay.  Well, first of all, I can

15  understand why the Freeman plaintiffs are opposed to the relief

16  we request because they may know the same things that the

17  debtor's now aware of that we believe that this judgment is

18  subject to attack on appeal.  And the final resolution is

19  whether or not the appeal sends it back for further proceedings

20  or makes a final judgment.  It's still a -- will be a

21  resolution of the issue.  It's not --

22          THE COURT:  But I think that's -- again, you say that

23  as a conclusion, just like your motion says it.  I don't know

24  that that's true.  I don't know that it's a conclusion.  So I

25  think your best case scenario for the debtor is that you win,

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 24 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

24

1  and then you go back on a remand to the district court.  So I

2  don't think there's any --

3         MR. FISCHOFF:  Well, that's all --

4         THE COURT:  -- I don't think there's any conclusion in

5  sight.  I mean, if you lose, there's a conclusion in sight

6  absent a petition for cert.  But there is -- particularly on

7  this record, it seems hard to conceive that an appeal, if your

8  client prevails in some form or another, would be the end of

9  the story.  So how is the -- again, you've said that a couple

10  of times, and I'm really not following how that's the case.

11         MR. FISCHOFF:  So it may not bring a quick resolution,

12  but it will bring a final resolution.  And that's only one of

13  the Sonnax factors.

14         THE COURT:  But you keep using this word "final", and

15  to quote The Princess Bride, I don't think it means what you

16  think it means.  I don't think it brings a final resolution at

17  all.  I think the best it could be is it brings a one step in a

18  long road, but I don't think it brings a final resolution.

19         MR. FISCHOFF:  Well, that may be correct, Your Honor,

20  but the point I'm trying to say is there are other factors.

21  That's not the singular factor in determining.  There are other

22  factors in Sonnax to determine it, including whether this

23  appeal will prejudice other creditors.  And in this particular

24  case, it might prejudice one set of creditors.

25         THE COURT:  But isn't that something that the

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

25

1    committee is more than able to look out for those folks?

2         MR. FISCHOFF:  Well, I'm perplexed why the committee

3    is actually against this relief.

4         THE COURT:  Well, I'm actually not that perplexed, and

5    they'll speak for themselves in a minute.  But as I understand

6    it, their concern, and we might as well just dive into it now,

7    is that precious little else is happening in the case other

8    than the appeal and that the appeal has become for the debtor

9    the case.

10        Certainly, we have all seen in bankruptcy instances

11   where a case is motivated by a judgment that's entered against

12   the debtor.  Almost uniformly, in my experience, those cases

13   not only pursue some appeal, but they also pursue other

14   avenues, recognizing that whether it's -- or there's often a

15   requests for mediation.  There's often requests for -- there's

16   other things going on.  And I think, as I understand it, the

17   committee's concern is that there's not a whole lot going on.

18        MR. FISCHOFF:  Well, if I may answer that, there's

19   actually --

20        THE COURT:  Yes, please.

21        MR. FISCHOFF:  -- a fair amount going on.  The

22   committee is conducting a wide-ranging investigation of

23   possible causes of action or recoveries against various third

24   parties.  They've issued numerous --

25        THE COURT:  Yeah, but you can't rely on what the

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

26

1   committee's doing.  They're talking about precious little is

2   going on on behalf of the debtor other than wanting to pursue

3   the appeal.

4          MR. FISCHOFF:  Well, so --

5          THE COURT:  I mean, it's May, and we finally have, I

6   guess, as of yesterday, the application for the broker.

7          MR. FISCHOFF:  Well, yeah.  Well --

8          THE COURT:  And that's taken a while.

9          MR. FISCHOFF:  Yes, it has.  And there are a lot of

10  parties having input on that, but it's finally coalesced into

11  the filing.  And that's going to proceed.

12         And the debtor is working, and the debtor advises that

13  he has some additional work lined up.  And he hopes to be

14  replacing any lost income.  I'm sure we all saw in the

15  newspapers last week that his WABC contract was terminated, but

16  he advised us he has some new things on the horizon and hopes

17  to be generating income above and beyond what was lost in that.

18         So I mean, this is not a large business where there's

19  a lot of things going on.  And yes, this freemen judgment is a

20  fundamental part of the case.  The major asset the debtor

21  intends to sell is now up for sale.  Hopefully, there'll be a

22  buyer in short order and that can be closed and the money

23  placed in escrow.  The creditors committee is conducting their

24  discovery.

25         I mean, there's mediation.  I don't think the Freemen

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

1   judgment is up for mediation.  I mean, they have a judgment,

2   and they want to -- they want their judgment to stand.  So

3   we're moving on that.

4        We have replacement special counsel scheduled for the

5   hearing today so that we can have a fresh set of eyes.  Look at

6   what took place in order to pursue that legitimate appeal.

7        So it may seem to be moving slow, but there's a lot

8   going on behind the scenes, and I think the debtor is making a

9   good faith, solid progress towards this case being resolved.  I

10  mean, every step of the way requires input from the various

11  parties and does take a little time.  And so I think it's in

12  the best interest of the debtor to pursue this.  And I think

13  there's no prejudice to the creditors or the estate at this

14  point to pursue it.

15       My only question is, you have to wonder why do the

16  Freeman plaintiffs not want this matter resolved on appeal?  Do

17  they have something to fear what will happen on appeal?  I

18  can't say.  But on the other hand, they say they want a swift,

19  prompt resolution --

20       THE COURT:  Well --

21       MR. FISCHOFF:  -- but they're delaying the process --

22       THE COURT:  -- those comments seem incredibly odd,

23  given the record in the district court in DC and your client's

24  behavior in that case.  Perplexing is a very kind way to say

25  it.  But there's an extensive record of your client's behavior,

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

28

1  which the district court found exceedingly problematic.  And

2  again, I'm using a lot of -- I'm using a lot of kind

3  adjectives.

4        MR. FISCHOFF:  So --

5        THE COURT:  One could choose a lot of less kind

6  adjectives.  And certainly, the district court did.  So but the

7  notion that the -- I mean, I don't really understand, other

8  than perhaps your client wants you to say things like that,

9  what the point is of those comments --

10       MR. FISCHOFF:  So there were --

11       THE COURT:  -- and what you hope to gain by delving

12  into that.  I just am -- I'm mystified.

13       MR. FISCHOFF:  So Judge, there were two things that

14  occurred in that trial, as I understand it.  One was finding of

15  facts and one is application of the law.  On appeal, the

16  application of the law is the issue that would be on appeal,

17  not necessarily the factual findings.  And I'm not the

18  appellate counsel.  We have proposed appellate counsel.  I'm

19  not sure this is the right time for him to talk about the exact

20  issue --

21       THE COURT:  No, that's not what we're -- that's not

22  what we're here for.  But I'm just taking issue with -- I'm

23  saying I think it's probably an unwise conversation for you to

24  want to have to start to get into the nitty-gritty of what

25  happened in the district court in DC.  Regardless of what the

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 29 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

29

1   court does on appeal, it's not a very kind record for your

2   client.

3           MR. FISCHOFF:  Well, I think, one of the points that

4   the plaintiffs want is they want to say that the findings in

5   the district court, the judgment in the district court, should

6   estop the debtor from raising any of those issues in this case.

7           THE COURT:  But I thought we were just going to stay

8   away from this.

9           MR. FISCHOFF:  Oh, okay.

10          THE COURT:  I mean, do you want to get into it?  I

11  mean --

12          MR. FISCHOFF:  No, no, no.  But what I was just going

13  to say is that --

14          THE COURT:  Okay.  So let's move on to the other stay

15  issues.

16          MR. FISCHOFF:  Okay.  I was going in a little bit

17  different direction, but that's okay, Your Honor.  So really,

18  the essence --

19          THE COURT:  Because I mean, just to put a coda on it,

20  it's certainly in the oppositions, the notion that the very

21  sort of arm's length discussion about the appeal and assessing

22  things on appeal is somewhat -- again, I'll use the term odd,

23  given your client's refusal at various points to even

24  participate in the case and the findings of fact that are made

25  against your client by the district court in light of that

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

1   course of action.

2           So it is one of the elephants in the room in terms of

3   talking about the proceedings in the District of Columbia, that

4   we're talking about the appeal is if it's a garden variety,

5   normal case, but the record in it is really not a normal kind

6   of record.  So I mean, again, if you want to talk about it

7   further --

8           MR. FISCHOFF:  No.

9           THE COURT:  -- we can do that.

10          MR. FISCHOFF:  So this is obviously not a garden-

11  variety case.  But I do think, notwithstanding that, that the

12  debtor should be afforded the full and fair opportunity to have

13  his appeal heard and a determination made.  Maybe he loses and

14  it is a final resolution, or maybe it's sent back for further

15  proceedings.  But Sonnax is a flexible standard, and there's

16  other standards other than whether it's going to result in a

17  final resolution or an immediate resolution, which it most

18  likely will not.  But it still doesn't --

19          THE COURT:  So what do you say to the parties who say

20  that the approach by the debtor seems to be the appeal and that

21  we're going to wait till that runs its final conclusion and

22  that that could take years?  So even if you -- again, even if

23  you're successful, that means a remand.  And so what's your

24  response to that in terms of what should happen in the

25  bankruptcy while all that's going on?

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

1          MR. FISCHOFF:  Well, so I think the case can still

2     proceed in tandem while that's pending.  There are some assets

3     to be marshaled, and there's discussions with the committee

4     about a proposed plan with a contingency on the outcome of the

5     appeal.  But I think that can move forward.

6          At the same, I'm hopeful that the liquidation of the

7     New York apartment can happen relatively quickly.  There has to

8     be a discussion about the Florida asset.  I mean, those are

9     really the two assets in this case.  To the extent that there's

10    substantial value for creditors, that's not going to change all

11    that much regardless of the outcome of the appeal.  It may

12    affect distributions, but the marshaling of the assets can

13    continue simultaneously.  And I think that's the debtor's

14    intention to do that, so we're in the --

15         THE COURT:  So where does the adversary proceeding on

16    nondischargeable fit into all this, from your point of view?

17         MR. FISCHOFF:  Well, the nondischargeability, there's

18    a motion for summary judgment pending.  We filed our opposition

19    last week.  The reply, I believe, is due next week, I think.

20    And then it'll be scheduled for a hearing before the Court.

21    And that will obviously have an impact, and that's moving

22    ahead.  But even if summary judgment is granted, it's still

23    later subject to -- if on appeal something is vacated, then the

24    summary judgment, which is basically premised on collateral

25    estoppel and res judicata, would be impacted.

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
                    Pg 32 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

32

1          But that's proceeding.  There's another complaint

2     filed that was just filed.  I think there was an agreement as

3     to a briefing schedule.  And the debtor's considering its

4     options.

5          THE COURT:  So but let me ask you about that.  Again,

6     one of the elephants in the room is the application of the

7     usual principles to cases that all have their own facts, and

8     some of the facts here are quite out of the ordinary.  And that

9     second adversary proceeding is very disturbing in the

10    allegation that it makes that the debtor has continued to

11    statements of the sort that were the subject of the defamation

12    lawsuit.

13         And that seems to inconsistent with everything the

14    district court did and concluded and also seems to show a

15    troubling attitude vis-a-vis the law and the court system.  And

16    that sort of is the noise playing in the background as we

17    discuss these principles that we discuss in all sorts of cases

18    with much more mundane facts.

19         So what am I supposed to -- for purposes of the motion

20    to lift stay, what am I supposed to take, if anything, from

21    that?

22         MR. FISCHOFF:  Well, in concept, the idea that the

23    debtor is not supposed to be repeating statements that have

24    already been judged to be defamatory seems appropriate.  That

25    being said, some of those findings may or may not be modified

1   at the conclusion of an appeal.  But for now, in --

2           THE COURT:  But does that evidence and approach to the

3   law that's an a la carte approach say I'm going to do that

4   because I want to do that, but this other thing that the law

5   requires or says, I don't want to do that --

6           MR. FISCHOFF:  No, I --

7           THE COURT:  Well, again, you have a decision on

8   appeal.  The idea to have it on appeal is to get it reversed.

9   But until it is reversed, it is the decision of a district

10  court.

11          MR. FISCHOFF:  I agree.  I agree.

12          THE COURT:  And well, I know you agree, but does your

13  client see it that way?

14          MR. FISCHOFF:  I hope so.

15          THE COURT:  All right.  I guess we'll get to that to

16  later on today.  But so let me ask you, any other comments you

17  want to make on the motion to lift stay?

18          MR. FISCHOFF:  I think I've covered it.  I think I've

19  covered it.  I think the Court understands the debtor's

20  position.  So I would just like to reserve some reply or

21  rebuttal time at the conclusion of the Court's hearing of the

22  objections.

23          THE COURT:  All right.  Thank you.

24          All right.  I'm sure you've chatted with one another

25  as to who's going to start off.

34

1        MS. STRICKLAND:  Good morning, Your Honor.  Rachel

2   Strickland, Willkie Farr & Gallagher, on behalf of the Freeman

3   plaintiffs.

4        You used very kind adjectives.  I think the way I

5   would put it is Mr. Giuliani is hiding out in Chapter 11,

6   living in two multimillion-dollar homes, one in Florida, one in

7   New York.  He's not fulfilling any of his obligations as a

8   debtor-in-possession.  He's not doing anything to maximize

9   value.  He's reversed maximizing the value.  He is making

10  defamatory statements every single day, which is what he said

11  on the Rudy Giuliani Show yesterday in bragging about his

12  continued defamation of my clients.  He is rope-a-doping

13  everyone.

14       Your Honor asked debtor's counsel whether or not we've

15  all been talking.  We've been talking.  For several weeks,

16  debtor's counsel told us they were going to stipulate to

17  nondischargeability.  And then, weeks later, after we were

18  going back and forth on what that would look like, they said,

19  only kidding; our client has changed his mind.

20       The other conversations we have are that every time

21  there's a deadline, they wait until the very last minute, and

22  then they call us and they ask us for an extension of that

23  deadline.  They talked a lot about if there were no bankruptcy,

24  they could appeal.  Exactly.  There were no bankruptcy, they

25  could appeal.  But then it would be harder for their client to

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

35

1   just hide out.

2        So I do think that there's a lot going on behind the

3   scenes.  I just don't think any of it is good.  I think all of

4   the professionals in this room, and certainly Your Honor, have

5   been involved in cases with hundreds of millions of dollars in

6   operations in large restructurings that have restructured in

7   the entire time we've been sitting here.

8        During the time that we've been sitting here, what's

9   happened in this case are there have been two stay relief

10  motions, four retention applications, payments to professionals

11  that haven't been retained, a motion to extend exclusivity, and

12  that's it.  They have done nothing.  They have sold nothing.

13  They have settled nothing.  They are -- there's no "they're".

14  He, Mr. Giuliani, is going in the wrong direction in terms of

15  being able to actually work and make money.  He is deliberately

16  flouting his employers' restrictions and getting fired.

17        THE COURT:  So I agree with you that I am disturbed

18  about the status of this case.  The question is, as it always

19  is in bankruptcy court, where do we go from here.

20        MS. STRICKLAND:  Sure.

21        THE COURT:  What's the right things to do?

22        MS. STRICKLAND:  Yep.

23        THE COURT:  And in that context, what does that mean

24  for the motion to lift the stay?

25        MS. STRICKLAND:  Well, Your Honor asked what will

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 36 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

36

1   happen if the motion is denied.  Nothing's going to happen.

2   It's stayed.  When the clerk of the DC Circuit put out what was

3   a very standard, hey, I saw you filed a notice of appeal; now

4   it's time for notices of appearance, statements of conflict,

5   and the statement of issues, the normal response of a debtor

6   would be to send a notice of stay.

7            THE COURT:  Right.

8            MS. STRICKLAND:  We wrote to Mr. Berger on May 2nd and

9   said, hey, why don't you notify the clerk this is stayed

10  because this is just a --

11           THE COURT:  Well, the clerk is also going to send that

12  up because they saw the notice of appeal --

13           MS. STRICKLAND:  Of course.

14           THE COURT:  -- and assumed that nothing's stayed.

15  Right.

16           MS. STRICKLAND:  But there's no fake emergency that

17  should govern this.  So I think Your Honor is going to find

18  that our clients' claims are nondischargeable.  They're going

19  to have to be dealt with one way or the other.  They could

20  offer to settle it.  They could do a million things.  But just

21  taking a year or two to appeal and setting everything on ice

22  doesn't make a whole lot of sense.

23           THE COURT:  But let me ask you about that.  In a

24  traditional restructuring approach, you say we're going to do a

25  lot of things at the same time.  Right.  We hear a lot about

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

37

1  we've got this track, we've got that track, we've got this

2  potential plan, then we've got this other plan that's a toggle

3  plan.  Right.  That's what bankruptcy professionals --

4        MS. STRICKLAND:  Yeah.

5        THE COURT:  -- do is a lot of multitasking.  And so if

6  you thought of this for a second outside of the highly

7  inflammatory context in which it exists, you might say, well,

8  we're going to pursue the appeal.  And at the same time, we're

9  going to have a mediation.  At the same time, we're going to

10  be -- we're going to have already been showing the property.

11        So I'm trying to sort of look at -- I'm trying to

12  understand the motion to lift stay in that context.  That is

13  that it seems that a significant part of the objections are,

14  quite reasonably, there's no progress in the case, that this is

15  the only thing that's happening and that's inappropriate.  And

16  that's sort of a case issue but is a bit of sort of an odd fit

17  when thinking about the Sonnax factors.  Right.

18        So how do you think about that --

19        MS. STRICKLAND:  Sure.

20        THE COURT:  -- for purposes of your opposition?

21        MS. STRICKLAND:  So I'll put myself in the shoes of

22  debtor's counsel.  If I were debtor's counsel, the first thing

23  I would have done a long time ago is called me up and said,

24  will your clients take five million dollars?  Your clients take

25  ten million dollars?  Can we work out a payment plan?

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

38

1       I'm not going to waste the rest of my life losing in

2   court, unless my real objective is to actually do nothing to

3   resolve any claims of anyone that I've harmed with my own

4   willful, malicious statements.  And instead, what I want to do

5   as a significantly older person is hide out in my fancy condos

6   in two places and use the automatic stay and use the bankruptcy

7   process as a sword and a shield and a tactical litigation

8   advantage.

9       I would have sold my homes.  I would have told my

10  client, you have an obligation to file your MORs.  We can't pay

11  people that aren't court-retained.  We're going to sell all of

12  this stuff.  And sorry, sir, you're in Chapter 11.  You can

13  live in a one-bedroom apartment somewhere that isn't super

14  fancy.  That's what debtors do.

15      THE COURT:  Well, but you're talking about the case at

16  large, right?  And I get that.

17      MS. STRICKLAND:  Not just at large, Your Honor.

18      THE COURT:  But I guess -- but I'm trying to

19  understand what it means for purposes of the motion to lift

20  stay.  Where does it fit into the Sonnax factors in cases about

21  lifting the stay, right, because --

22      MS. STRICKLAND:  Yeah.

23      THE COURT:  So that's my question is sort of the

24  intellectual architecture for that.

25      MS. STRICKLAND:  So I'm happy to do it in reverse.

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 39 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

39

1  And we have briefed the Sonnax factors in a --

2  THE COURT:  Yes.  Yeah, I have -- right.

3  MS. STRICKLAND:  -- nonconclusory manner, and I'm

4  happy to take you through the Sonnax factors.

5  THE COURT:  But I'm sort of asking sort of a -- and I

6  have your going through the factors --

7  MS. STRICKLAND:  Yeah.

8  THE COURT:  -- but I'm sort of asking a little bit of

9  a different question, which is if the lack of progress is one

10  of the significant concerns in connection with this motion, and

11  perhaps even the most significant concern, putting aside the

12  sort of more rote or routine application of Sonnax factors, how

13  do you see it conceptually?  That's what I'm --

14  MS. STRICKLAND:  Right.

15  THE COURT:  -- really trying to get at.

16  MS. STRICKLAND:  I don't.  I don't think that any of

17  the relevant Sonnax factors are met here.  And there are going

18  concern businesses with employees where the court has said this

19  litigation is a roadblock for your ongoing business and is

20  going to jeopardize the estate.  You should get a lift stay,

21  even without a bond in some of these scenarios, because

22  otherwise the going concern and the people it employs are not

23  going to be able to go forward to deal with the cases.

24  That's not what we have here.  We have a guy hiding

25  out in his apartment talking into a microphone racking up

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

40

1   administrative expense claims.  So I don't think that the

2   pursuit of the appeal moves the needle for anyone because he's

3   going to ultimately lose everything, and whether you think that

4   or you don't doesn't matter.  It's years down the road.  And

5   Chapter 11 isn't a place to just hide out, spend all your

6   money, and wait.  You have to do those things.  So I don't

7   think they hit any Sonnax factor.  None of them.

8         THE COURT:  So let me then back up.  I think, if I'm

9   understanding your response correctly and sort of marrying it

10  to the question and the concern I was thinking about, I guess

11  your point is, Judge, don't worry about it.  He doesn't meet

12  the Sonnax factors anyway.  And so the case has problems.

13  We'll deal with that in the context of the case.  And the

14  motion has problems in the context of Sonnax, and we'll deal

15  with it in the context of the relevant Sonnax factors.

16        MS. STRICKLAND:  Yeah.  I think the litigation stays

17  on ice because I believe it is nondischargeable.  It's going to

18  live forever until it is settled or otherwise dealt with.  And

19  going through the machinations is just giving him a litigation

20  shield and an excuse why he's not moving on with the regular

21  things that debtors do.

22        Again, it's bizarre to me that it hasn't even occurred

23  to them to have a settlement conversation, and it's because

24  that's not their goal.  Their goal isn't the resolution of any

25  of these problems.  And we know that because you just have to

1  listen to Mr. Giuliani.  Yesterday, he said, I talk about this

2  every day.  He has defamed them over and over again.  On Friday

3  of last week, he talked about double, triple, quadruple

4  counting.  He is actively building liabilities.

5      So I think where this case is ultimately going is a

6  trustee.  I think where it's ultimately going may be dismissal.

7  There's a lot of things that should be happening here, but it

8  shouldn't be a fat cat sitting out in two fancy apartments

9  defaming people into a microphone.

10     He's not employing anybody.  He doesn't have a

11  business.  We didn't hear about his prospects for making money.

12  He's got two apartments.  So if all he has, which is what we

13  just heard from debtor's counsel, is two apartments, if we all

14  can restructure companies with hundreds of millions of dollars

15  in four weeks, they can sell two apartments.  He can live

16  somewhere cheaper.

17     So the motion, I blacklined it against their first

18  motion, not a lot of lawyering going on between motion 1, which

19  Your Honor said, and I think this was a quote, doesn't deliver

20  the mail and acknowledged that but for our offer to allow some

21  form of stay relief, which we affirmatively put in our papers,

22  he would have just had it denied because he didn't meet his

23  burden.  So it starts with the burden.  Burden not met yet

24  again.

25     They said nothing in their pleading that actually

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

42

1   establishes cause.  They didn't bother to do anything other

2   than list the factors.  They didn't evaluate them.  So it's a

3   loss on the first question.  It's a loss on the second

4   question.  If Your Honor goes through the Sonnax factors, they

5   lose again.  There is no way that this is something that

6   resolves the cases.  There is no way --

7            THE COURT:  Well --

8            MS. STRICKLAND:  Yep.

9            THE COURT:  -- I'm sorry to interrupt, but let me ask

10  you for your view on something I asked debtor about, which was

11  your nondischargeability adversary proceeding.  And I think the

12  question I have for you is how does that factor into the Sonnax

13  inquiry into complete or partial relief.  Right.  I mean, I am

14  assuming that from your point of view that the

15  nondischargeability proceeding says a lot about how meaningful

16  or not for bankruptcy purposes the appeal is.  But I'd

17  appreciate it if you would sort of fill out that picture for

18  me.

19           MS. STRICKLAND:  Sure.  I don't think it's ever going

20  away until it's settled or until it's paid or until he dies.  I

21  don't think it's going away.  So focusing and putting all the

22  eggs in the basket that's never going away, you're not ridding

23  the case of overhang.  The overhang is why he's here.

24           And I can't imagine, after he has conducted himself

25  the way he did in the district and continues to conduct

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 43 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

43

1   himself, every day in his own words, until then, we know how

2   the movie ends.  The question is, is anyone going to hold him

3   accountable to do the things he is required to do as a debtor

4   and actually take the steps necessary to satisfy anyone of any

5   obligations during this time.

6          So I don't see a scenario where -- I mean, Your Honor

7   I think said the very first time we appeared before you, just

8   looking at the stipulations, that this looks like a duck.

9   Quacks like a duck.  This thing is nondischargeable.  Everybody

10  thinks so, including, for several weeks, debtor's counsel.

11         But it's not going away.  So why are we acting like

12  this is a big movable piece that's going to solve the puzzle?

13  It is the puzzle.

14         THE COURT:  Well, but in terms of that case moving

15  forward and the adversary proceeding moving forward on summary

16  judgment, is there a logical sequencing of events in terms of

17  the way they relate to each other and the way they relate to

18  what can be accomplished in bankruptcy for purposes of this

19  motion?

20         MS. STRICKLAND:  I think this motion is just a delay

21  tactic.  I don't think it moves the needle in these cases at

22  all.  I think that when a guy has two apartments and a

23  dwindling radio income, he should deal with his two apartments.

24  Deal with his dwindling radio income.  But if he actually does

25  that, if he proposes a plan and people get money, the things

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 44 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

44

1    that are nondischargeable are still there.  He'll deal with it

2    however he has to deal with it in the future.  Then he has the

3    freedom to appeal to his heart's content.  Right.

4            And if other people are paying the legal fees, that's

5    not an impediment.  If I were Giuliani, if I wanted what his

6    counsel said he wanted, I would deal with that plan lickety-

7    split.  I would pay out the people whatever shekels I could get

8    from it.  And then I would exit Chapter 11, and I would appeal

9    and clear my name.  Isn't that what he says he wants?  It

10   isn't.

11           If he'd wanted that, he didn't have to file it all, or

12   he could have come in with a plan to sell his only two assets,

13   live wherever he's going to live, talk on the radio in the way

14   that's the most profitable for him, and get out.  That's the

15   tell.  Every single thing he says or his counsel says that he

16   wants could have been achieved already in the four weeks that

17   we've been here.  Then he's free to pay his girlfriend's Amex

18   cards.  He's free to pay professionals that are not retained in

19   the court.

20           What they are saying and what they are doing are two

21   very different things.  If all this man wants to do is deal

22   with other creditors other than the Freemen plaintiffs and pay

23   what he owes, he should have sold that apartment a long time

24   ago.  He should be having settlement conversations with people.

25   He should prepare a plan, which probably could be drafted on

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 45 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

45

1  three single-sided pages, given the amount of assets this man

2  has, and then exit Chapter 11 and appeal.  Appeal forever.

3  That's okay.

4          THE COURT:  All right.  Anything else, Counsel, on the

5  motion?

6          MS. STRICKLAND:  I don't think so, Your Honor.

7          THE COURT:  All right.

8          MS. STRICKLAND:  Thank you.

9          THE COURT:  Thank you very much.

10          Anything from the committee?

11          MS. BIBLO BLOCK:  Your Honor, Good afternoon.  Rachel

12  Biblo Block with Akin Gump Strauss Hauer & Feld on behalf of

13  the official committee of unsecured creditors.

14          I'm a little perplexed by some of debtor's counsel's

15  statements because the debtor filed this motion with no heads

16  up to the committee, ignoring the Court's guidance and common

17  sense that the committee should be involved in this.

18  Ultimately, this course of conduct is more of the same.  And

19  I'm not sure it's particularly constructive to get into this,

20  but a few things that we have asked the debtor for or tried to

21  do with the debtor that have gone unanswered.

22          We sent a letter about the debtor's compensation that

23  doesn't appear on the MORs.  We didn't get a response.  We sent

24  the debtor an email, the debtor's counsel an email, about

25  Amazon and Apple charges, five, six, seven a day.  Didn't get a

1  response.  Following the April 4th hearing, we sent them a

2  budget proposal to try to deal with the comments that you said

3  earlier at the hearing about using exempt assets to pay for the

4  Florida condo.  They indicated that he would be receptive, but

5  then we got no response.  We filed a letter asking the debtor

6  to do something.  We submitted a letter asking the debtor to do

7  something about unauthorized payments.  No response.

8         So again, this is just more of the same from the

9  debtor.  The second stay motion is a carbon copy of the first,

10  and it has the same fatal flaws.  The debtor failed to meet his

11  initial burden, application of the Sonnax factors weighs

12  against modifying this stay, and the requested relief conflicts

13  with central tenets of bankruptcy law.  The debtor's analysis

14  of the Sonnax factors is exceedingly and surprisingly brief,

15  and it frankly doesn't comport with logic.

16         Saying that an appeal would accelerate the debtor's

17  exit strategy when the timeline for conclusion of any such

18  appeal is unknown, it doesn't make sense.  Saying that a full

19  and fair resolution requires that this judgment be reversed or

20  modified, it doesn't make sense.  The judgment has been

21  repeatedly found to be valid.  And are we going to wait forever

22  for a resolution in order to move this case forward.

23         What is clear from the debtor's analysis is that he

24  has not considered, and he does not want to consider, any other

25  means for resolving these claims.  Instead, he wants to pursue

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

47

1   the appeal, choosing to participate now after years of refusing

2   to do so.

3          Your Honor, I know you read the papers, and I know

4   that you've seen our application of the Sonnax factors, but I

5   did want to highlight two in particular.

6          The second factor, whether there's any connection or

7   interference with the bankruptcy case.  Thus far, the debtor

8   has shown himself to be unable to focus on more than one thing

9   at a time and he has chosen to focus nearly exclusively on the

10   Freeman litigation.  The debtor fixed dates on this litigation,

11   ignoring everything else, including complying with statutory

12   deadlines and disclosure obligations, carrying out his

13   fiduciary duties, and making progress toward the

14   reorganization.

15          Factor 12, the impact of the stay on the parties and

16   the balance of harms.  For the committee, the most critical

17   issues underlying the debtor's requested relief are that it

18   will distract from the debtor -- distract the debtor from

19   reorganizing and enable him to further delay taking steps to

20   progressive Chapter 11 case, and it will take a long time to

21   litigate to resolution.  In the event he is allowed to proceed

22   at this time with an appeal, creditors face the real risk that

23   the debtor will continue spending his limited assets to fund

24   his opulent lifestyle in an unending bankruptcy case, delaying

25   resolution of all of his creditors' claims and delaying their

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 48 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

48

1    days in court.

2        The debtor wants this authority from this Court to use

3    automatic stay in all kinds of ways that are contrary to the

4    bankruptcy process and the integrity thereof.  The debtor wants

5    to use automatic stay as a weapon against the Freeman

6    plaintiffs, as a pause button for his bankruptcy case, and as a

7    means to delay for as long as possible his other creditors'

8    days in court.  He continues to show that he has no serious

9    intentions for his bankruptcy case.

10       The committee refuses to remain on this hamster wheel

11   of having the same fights with the debtor, who refuses to learn

12   from his mistakes, makes no adjustments to account for the

13   committee's concerns, and continue doing exactly what he wants

14   to do.  Accordingly, the committee respectfully requests that

15   the debtor's stay relief be denied.

16       THE COURT:  All right.  Thank you very much.

17       All right.  Unless there's anything else, I will hear

18   from the debtor for any brief response.

19       I'm assuming the U.S. Trustee's office is not weighing

20   in on this; is that correct?

21       MS. SCHWARTZ:  Your Honor, Andrea Schwartz for the

22   U.S. Trustee.  We're not taking a position on this motion, but

23   we certainly have comments regarding the progress of the case

24   and the various other issues that have come up during the

25   colloquy on the motion.  So I'm assuming Your Honor would want

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 49 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

49

1  to hear from us after Your Honor hears for the motion.

2            THE COURT:  All right.  Thank you.

3            All right.  Counsel.

4            MR. FISCHOFF:  So briefly, Your Honor, first, there

5  was a 12,000-dollar payment to Joe Ricci, who was going to be

6  the proposed accountant, and the debtor did that.  Wasn't

7  supposed to.  And that's been recovered and returned.  And I

8  believe yesterday we received a document confirming that.  We

9  didn't have a chance to send it to the creditors committee, but

10  we were in discussion with them about that payment that should

11  have not been paid and was in the process of being recovered

12  so --

13            And yes, the counsel did send us a proposed budget,

14  but we have not been able to, with the debtor's assistant,

15  prepare a response to that at the moment.  Those other issues,

16  I believe, about the Amazon bill have been addressed, and I

17  think the operating reports reflect that.

18            So I think the debtor is making an effort, and there's

19  a lot of reference, well, if this was a big company, in this

20  time, they would have filed a plan.  As the Court knows,

21  sometimes the bigger cases are easier because there's a full

22  staff in place to do the work that here we're trying to get a

23  single individual to do.  So in some ways, it's harder, and

24  bigger cases can move quicker than the little cases.  But I --

25            THE COURT:  Well, I don't know that I have any big,

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

50

1   small -- there's no definitive categories in terms of how

2   quickly things move forward.  But certainly, Ms. Strickland's

3   comment that the assets here are fairly straightforward and

4   fairly easy to get a handle on and would be fairly easy to

5   monetize.  And so that makes it different than, say, an

6   investment into Shariah compliance investment vehicle overseas.

7   I mean, we're not talking about something that you need to jump

8   through a lot of hoops for.

9        So I think her point is, from that point of view, if

10  there's a -- that the path in this case is fairly

11  straightforward.  So that's how I took the comment.

12       MR. FISCHOFF:  Well, okay.  Well, in any case, the

13  debtor is working on moving the case forward, and we don't

14  believe that that's a basis to prevent the debtor from pursuing

15  his rights to have a full and fair opportunity on the appeal to

16  be heard.  It's moving on two tracks.  There is their motion

17  objecting to dischargeability.  The debtor did exercise its

18  right to file opposition.  There were discussions about

19  settling it.  I'm not sure that --

20       THE COURT:  Well, I'll leave that --

21       MR. FISCHOFF:  -- settlement discussion should have

22  been --

23       THE COURT:  -- all to you to have those conversations

24  but --

25       MR. FISCHOFF:  -- should have even been raised here,

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

1  but it was.  And there was a good faith effort.  It didn't pan

2  out.  And now we filed opposition to the motion.

3       I think that -- and I think part and parcel to the

4  motion for relief from stay is the proposed retention of Mr.

5  Caruso, who I would like the Court to allow him to speak

6  briefly on his retention, which I think it may shed more

7  insight on the importance of --

8       THE COURT:  Well, I have a declaration for him in

9  connection with that.  Right.  So is there something new that

10  that -- I mean, you're counsel in the bankruptcy case.

11       MR. FISCHOFF:  Yeah.

12       THE COURT:  So I understand his view about how he

13  proceeds and what he intends to do.  There are some questions

14  that were raised about comments that led parties to wonder

15  whether there was going to be some sort of shared compensation

16  arrangement or whether there were any concerns about conflicts.

17  There's also some language about third-party funding, which I

18  had previously rejected in a prior application that seems to

19  still be floating around here.  But those are the questions, I

20  think, that were the issues that were raised.

21       MR. FISCHOFF:  So Your Honor, there was an amended

22  declaration filed yesterday to address U.S. Trustee's comments.

23  But as far as the declaration, I don't think Mr. Caruso then

24  has anything further to add other than the original one and

25  then the amended one that was filed yesterday after.

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

52

1        THE COURT:  Right.  Well, I confess I don't have time

2   to sort of sit there and figure out when I get an amended

3   application what is it that's been amended.

4        MR. FISCHOFF:  Okay.  So --

5        THE COURT:  So what was it that was changed in terms

6   of understanding the -- some things I think I figured out, but

7   other things I have missed.

8        MR. FISCHOFF:  There were issues about duplication of

9   services and potential fee sharing and so forth.  So that's

10   been resolved to the U.S. Trustee's satisfaction.  And Mr.

11   Labrowski (sic), who works with Mr. Caruso, will be submitting

12   in accordance with the U.S. Trustee's requirements his own

13   separate application the next day or two.

14        So we believe -- and I didn't mean to jump into Mr.

15   Caruso's application at this point.  Maybe it's out of order.

16   But we believe that the U.S. Trustee is now on board with the

17   amended application.  I'm not sure -- other parties may have

18   objections, which I guess --

19        THE COURT:  All right.

20        MR. FISCHOFF:  -- the Court can address, but I just,

21   as far as the motion for relief from stay goes, I have nothing

22   further to add at this moment.

23        THE COURT:  All right.  So you all know the standard

24   to lift -- this is a litigation against the debtor in

25   connection with both of the cases pending in the DC district

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 53 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

53

1   court and now on appeal.  It is therefore subject to the

2   automatic stay because it would be taking a step against the

3   assets of the debtor, potentially, and certainly --

4        So what I understand is that the debtor claims that

5   there is cause to lift the automatic stay and that this would

6   help move the bankruptcy case forward.  The parties' papers,

7   particularly those that were filed in opposition to the motion,

8   which is the committee and the Freeman plaintiffs, go through

9   the factors in detail.

10        And the debtor's papers, frankly, are, are quite a bit

11   less fulsome.  I think there's -- basically, it's very similar

12   to the first motion I received to lift the automatic stay.  I

13   think it's got probably one more page to it that mentions, I

14   think, specifically two of the Sonnax factors, two of the

15   twelve.  One of the ones it mentions is talking about it would

16   result in a partial or complete resolution of the issues.  And

17   I'm not sure that it would.  That's why I asked that question.

18        I don't think there would be any immediate or even a

19   near-term resolution, partial or otherwise, of the issues.  And

20   so I think that that factor certainly doesn't favor lifting the

21   stay.  I think that litigation would appear even if the debtor

22   prevails on appeal, particularly given the record that's in

23   front of the district court.

24        If the debtor proceeds, presumably the argument is

25   that it's not an appropriate sanction, the judgment's not an

54

1   appropriate sanction, or the amount is too high.  It seems

2   impossible to conceive that there wouldn't be further

3   proceedings in the district court if Mr. Giuliani was

4   successful in an appeal.  So there's, at best, an indeterminate

5   amount of time that would go on before you'd be able to take

6   the next steps.

7        As to factor number 2, connection or interference with

8   the bankruptcy case, is sort of an interesting argument here by

9   the parties opposing it to basically say that it is interfering

10  with the bankruptcy case because it's essentially seen by the

11  debtor as the thing to be done, to the exclusion of other

12  things.  There was a mention of settlement talks and whatever.

13  Obviously, those are all Rule 408, for purposes of my

14  consideration.

15       At the same time, having seen more than a few cases

16  where a case is motivated by a judgment, the cases, if they're

17  to be successful, don't stand still.  And I do agree with Ms.

18  Strickland that the more compelling case is an instance where

19  the litigation has an ongoing impact on a debtor's operations

20  and that that is a significant calculus.  That's not a calculus

21  here.

22       But again, what I'm hearing from the parties opposing

23  it is that the debtor's view of the case seems to be that it is

24  the appeal or bust and that that's having an impact on the

25  debtor's approach, that it has become the single-minded focus.

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 55 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

55

1   So it's, in that way, somewhat of a sort of ironic flip to the

2   concerns about the automatic stay where someone's worried about

3   litigation and their interference that outside litigation will

4   cause on the bankruptcy, the ability to focus on the

5   bankruptcy.  So I guess it's a form of that played out in a

6   different way.

7          So there are other factors that are not really

8   relevant here.  Certainly, factor 3, other proceeding involving

9   debtor's fiduciary, there is no fiduciary that was not a

10  fiduciary when these events took place.

11         Factor 4, where there's a specialized tribunal for

12  establishing to hear the case.  There's nothing in particular

13  that weighs for or against in connection with factor 4.

14         Same is true for factor 5.  There's no debtor insurer

15  who has assumed full responsibility for defending it.  That

16  case -- or when that factor exists, it makes it easier to lift

17  the stay because it doesn't impact the estate.  And so here,

18  it's clear that this is the debtor's show.  And so there is a

19  concern, and perhaps this is the factor where the concern of

20  the committee and the Freeman plaintiffs about the debtor

21  focusing single-handedly on this outside litigation in the

22  District of Columbia plays out in the sense that the debtor is

23  the one pursuing the litigation, defending the litigation, and

24  potentially being distracted by the litigation in terms of

25  being able to get things done in bankruptcy.

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

1            Certainly, I think the record reflects facts that

2    raise that as a legitimate concern.  It's taken a long time to

3    get a retention for a broker for the sale of an apartment.

4    There is the view about the other apartment is no doubt, as

5    framed by the debtor, has been all about what's going on in the

6    appeal and therefore factoring in what should happen with the

7    apartment.  And it shouldn't get -- that other apartment

8    shouldn't get sold, in the debtor's view, because what happens

9    if the case in D.C. is reversed sort of ignores that there are

10   other creditors here as well.  And I think that that's why the

11   committee has weighed in -- one of the reasons it's weighed in

12   the way it has.

13           Factor 6, whether the action primarily involves third

14   parties.  There are no third parties in the Freeman litigation.

15           Whether litigating in another forum would prejudice

16   other creditors, factor 7.  And again, I think this is another

17   factor that talks about what's going to happen, whether the

18   bankruptcy is going to be essentially in an eternal holding

19   pattern while the appeal goes forward and that there are

20   reasons to have a different view as to that and that the case

21   should not be so handled.  Now, again, I think debtors can

22   handle things different ways, but certainly, it looks like

23   litigating in that other forum, the debtor's view of that seems

24   to be that that is the focus and primary focus, I think is, is

25   safe characterization of the debtor at this point.

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

57

1        Factor 8 is whether there is a judgment claim arising

2    that would be subject to equitable subordination.  And there's

3    an argument in the papers by the opposing parties that this

4    weighs against modifying the automatic stay, given the separate

5    adversary proceeding challenging dischargeability.

6        So moving on to factor 9, it's not applicable dealing

7    with the judicial lien.

8        And factor 10, the interest of judicial economy and

9    the expeditious resolution of litigation, again, I can't see

10   any way, shape, or form, and certainly there is no explanation

11   in the debtor's papers, as to how lifting the stay would result

12   in expeditious resolution of litigation.  In fact, everything

13   seems to point to the opposite conclusion.

14       And so factor 11, whether parties are ready for trial,

15   there already is a trial.  There already is a judgment.  And

16   again, I think if the debtor prevailed, the debtor's best case

17   scenario, it would mean that everything would go back to the

18   district court for more proceedings.  And that, I think, means

19   that factor 11 appears to weight against granting the relief.

20       And so factor 12 is the impact of the stay on the

21   parties in the balance of harm.  And again, I think it's

22   identified in the official committee's objection, saying that

23   the concern is that the appeal would distract the debtor from

24   reorganizing and will sort of serve as kind of an excuse for

25   further delay in taking critical steps.

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

58

1        So together with this, there is the application to

2    employ counsel.  There are concerns relating to that that we

3    have not fully addressed here today, some of which sound like

4    the changes have been made.  But it's, again, not clear from

5    what I received that everything is resolved so --

6        But to loop back to the lift stay for a moment to

7    conclude, I think the other relevant factor for purposes of the

8    Court is obviously we're really concerned about how it impacts

9    the bankruptcy case and how these two things interrelate to one

10   another.  There is a nondischargeability proceeding that is

11   teed up.  It is one of the things that is teed up in the case

12   to go forward for argument.  And that's going to say a lot

13   about what the Freeman plaintiffs' litigation means or doesn't

14   mean for purposes of the bankruptcy and what that judgment

15   means.  And as I understand the argument, and obviously it's

16   not being argued today, the argument about nondischargeability

17   doesn't arrest solely on the judgment itself.  It rests on

18   things that happened in the litigation that were agreements

19   among the parties.

20       And so it does mean that I think, and the Freeman

21   plaintiffs argue that, regardless of the appeal, that it is

22   nondischargeable, and that meaning any judgment coming out of

23   that litigation would be nondischargeable.  But we'll cross

24   that bridge when we get to it.  But it does say that in

25   thinking about progress in the case here in the bankruptcy

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

59

1   case, when thinking about the other litigation, it does seem to

2   me that in the interest of efficiency that we should get to the

3   nondischargeability of the litigation.  It will be an --

4        If that litigation is resolved one way or the other,

5   it should provide valuable information for the parties to

6   assess the path forward.  And I think, probably more valuable

7   information, even, one, it can be done in the short term, a

8   shorter term, and two, it will help the parties assess the path

9   forward.  So I mentioned that in terms of understanding the

10  relationship of all these things to each other in terms of

11  moving the bankruptcy case forward and for the benefit of all

12  parties, which is what we're supposed to be doing here.

13       So based on where I am and the showing that's been

14  made by the debtor, I don't think a showing has been made that

15  it's appropriate to lift the automatic stay today.  So the case

16  will be stayed by virtue of the bankruptcy of Mr. Giuliani.

17  And if we get to a point where pursuing that appeal does not

18  raise the prospect of interfering with the bankruptcy case,

19  then we can get there.

20       And so today may not be the last word, but again, I'm

21  not convinced, based on what I've received, that the stay

22  should be lifted, that it's part of the solution for this case

23  moving forward, given where the case is.  So I think I have to

24  analyze the Sonnax factors given where a case is.  And so

25  analyzing it in that context, I don't think it's appropriate to

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 60 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

60

1  grant that relief today.

2         Again, it may be a discussion for later in the case if

3  progress is made if additional milestones or results are

4  achieved where parties have a better sense of what the

5  appropriate path forward is.  That might include an argument

6  and ruling on nondischargeability.  It might include progress

7  on monetizing assets.  But right now, given where the case is

8  and my reading of the case, I don't see lifting the stay.  I

9  see it as an impediment to progress in the bankruptcy.  And so

10  for that reason, I don't need to address the issues with the

11  application today.  And so we'll get to that at an appropriate

12  date, if that's where we find ourselves.

13         So that's my ruling.  And again, I'll end by saying

14  what I think I've been saying at every hearing.  It is

15  important for people to think about how to move the case

16  forward.  Talk to the constituencies.  And again, I can almost

17  always tell by the size of the papers that are filed in a case

18  whether parties are talking to one another or not.  And these

19  cases really reflect -- I know there's a difference of opinion.

20  Yes, we spoke to them.  No, nobody spoke to us.  The papers

21  reflect a lack of communication.

22         And so that's what needs to happen in a bankruptcy

23  case.  It is a collective proceeding.  And so while the debtor

24  says that counsel says you don't understand why the committee

25  opposed this and it's really a very myopic Freeman plaintiff

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 61 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

61

1  issue, that's not how the committee sees it.  And so that tells

2  you something in terms of the progress of the case and whether

3  proceeding with the appeal will interfere with the case or move

4  the case forward.  So the committee has voted with its feet and

5  doesn't see it that way at all.

6          So that's my ruling.  That motion is denied without

7  prejudice to reasserting based on changed facts and

8  circumstances later in the case.  And so we can move on to the

9  next matters.  So the application is also therefore put to the

10 side for the moment.

11         So the other matter, I understand, that's on --

12         MS. SCHWARTZ:  Your Honor --

13         THE COURT:  Well, hold on a second.

14         So the other matter that's on relates to the motion to

15 compel.  I did see the debtor's reply.  And so I suspect I'm

16 going to get sort of a refresh and update on exactly what's

17 happened.  I've gotten some of that already.

18         So I do think it's probably a fitting segue to here

19 from the U.S. Trustee's office.  It's the only party we haven't

20 heard from at this point and who has an interest in the kinds

21 of things that relate to the motion to compel.

22         So Ms. Schwartz.

23         MS. SCHWARTZ:  Thank you, Your Honor.  Andrea Schwartz

24 for the U.S. Trustee.

25         Your Honor, I think a couple of things Your Honor said

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

62

1  in his preparatory comments are a little different -- we come

2  at it from a different perspective.  Your Honor noted the

3  acrimony in the case.  As Your Honor knows, we are an unbiased

4  agency that is responsible for oversight of the case.

5       With respect to communication, Your Honor, I think the

6  Court should be aware that we have regular communication with

7  debtor's counsel multiple times a week, if not every day, on

8  the issues that have been raised by the committee and by the

9  Freeman plaintiffs.

10      It's an individual Chapter 11.  I think that the

11 biggest problem from the debtor's counsel's perspective has

12 been their inability to retain an accountant, and that has

13 resulted in the delays of filing the MORs, mistakes, things of

14 that nature.  They haven't explained to the Court what those

15 issues have been.  We've been pressing them regularly on the

16 accountant issue.  We're advised now that they're not retaining

17 an accountant.

18      The accountant that's referenced with that payment,

19 Mr. Ricci, is the long time accountant for Mr. Giuliani's

20 business entities.  And we understand that he's continuing to

21 work for the nondebtor business entities but is unwilling to

22 take on the role for the debtor.  So that obviously creates a

23 problem.

24      We've been requesting that debtor's counsel make the

25 appropriate modifications to their schedules.  Those things

63

1    were identified at the 341 meeting.  I think that the committee

2    and the Freeman plaintiffs are accurate in pointing those

3    things out in their papers.  But Your Honor should know that

4    also we're not filing papers with Your Honor.  We're dealing

5    directly with the debtors and the debtor's counsel.  And I

6    think, based on Your Honor's comments today, it is my hope that

7    you will see of all of those things resolved no later than the

8    end of this week.

9          With respect to the case in terms of its going

10   forward, it has also been brought to the Court's attention, I

11   think in an accurate manner, that there has not been much

12   activity in terms of reorganization.  There might have been a

13   lot of things going on, but in terms of reorganization, there

14   are very few assets.  And I think Your Honor read it straight

15   that the debtor's thought that the case is the appeal of the

16   Freeman judgment, that was the -- that was their main item that

17   they thought would save their case or at least enable them to

18   restructure.  I think they got a little rejiggering of that

19   thought today.  And they have to do the other things that are

20   required in the case.

21         I will also say, I have heard from debtor's counsel

22   that their client is not easy to get in touch with.  They can

23   reach him, but it's been difficult to get in touch with him.

24   We have no information at all regarding their client's motives

25   on what the client is doing or what.  And the only thing we can

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

64

1   assess, like the Court, is what actions are taken by the debtor

2   in this case.  And clearly, the debtor needs to move.

3        He has a lot that he has to do.  We've spent a good

4   amount of time on retention applications, which is true.  That

5   application that came in for the Caruso firm came out of the

6   blue to us, Judge, because we had gone through so much time

7   with that other counsel.

8        But that's the debtor's choice, who his counsel is.

9   And if he wants to switch counsel, that's his choice, except

10  the way they proposed it, we saw it as a violation of 504.

11  That's why there's a total revision.  But Your Honor won't be

12  addressing that today, and we'll bring those points up to Your

13  Honor at that time when the Court is, in fact, addressing those

14  issues.

15       But I wanted to make the Court aware that, as far as

16  our office is concerned, we are also in regular communication

17  with the committee counsel.  They've been very good about

18  advising us where they're going, and we've been explaining to

19  them what we are doing.

20       So as far as us, we've been extremely communicating.

21  But again, we're not acrimonious to any party in the case.  We

22  just want to see the case restructure if that's possible.  If

23  not, then the case should -- the case will take a different

24  turn.

25       THE COURT:  All right.  Thank you very much.

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

65

1      So I know the committee has a motion to compel the

2  monthly operating reports.  And obviously, we all received an

3  update on that.  And so let me ask the committee how it wants

4  to proceed --

5      MS. SCHWARTZ:  Oh, Your Honor, may I just add one

6  thing?  I'm sorry.

7      One other thing that we've asked of the debtors is

8  because Mr. Giuliani has these businesses and he's an

9  individual debtor, we do ask for reporting on his corporate

10  entities and that they filed a quarterly 2015.3 statement.

11  They have not filed that as of yet.  I believe our analyst Mr.

12  Ned Carney (ph.) has requested that.

13      THE COURT:  All right.  Thank you.

14      So let me go back to the committee as to how you want

15  to handle the motion to compel.

16      MS. BIBLO BLOCK:  Your Honor, for the record, Rachel

17  Biblo Block with Akin Gump Strauss Hauer & Feld on behalf of

18  the official committee of unsecured creditors.

19      We still think we would like the relief.  We obviously

20  need to modify it since the two monthly operating reports were

21  filed.  But we've noticed a bunch of deficiencies in those

22  reports and think they should be amended.

23      We also think it would be helpful to have a court

24  order requiring that future monthly operating reports are filed

25  timely.  And we also think that relief, to the extent that the

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

66

1   debtor is not doing that, was appropriate for the appointment

2   of a trustee.

3         THE COURT:  All right.  Well, are you making a request

4   for a trustee today?  I mean, so I'm trying to figure out what

5   you want to do.  I would say -- to lead the witness, I would

6   say that perhaps today is not the day to have that

7   conversation.  But one way to handle this -- so it's always an

8   awkward situation when you're asking to compel somebody to do

9   something that they're required to do.  And judges, we can

10   issue orders, but sometimes if it's already required, we're not

11   quite sure how helpful or meaningful it is.

12         So one way to handle this would be to carry your

13   motion and to view it as a request for the debtor to address

14   the things that need to be addressed, whether it's timely

15   monthly operating reports, corrections of things that are

16   either inaccurate or missing from the schedules, all the things

17   you identify in your motion.  And then if we carry it, then we

18   can, if there is an order, ultimately enter it.  It can be more

19   specific and therefore more meaningful to you.

20         And now, if there's something specific today that you

21   want to push on in that vein, I think we certainly could do

22   that.  But to the extent that you're worried that this may be

23   an ongoing problem -- to the extent you're worried about this

24   being an ongoing problem, one way to do it is to carry the

25   motion and see how things go.  Trust but verify, I guess, is

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

67

1  the what -- is the way to look at it.

2          So but again, I'm happy to hear from the committee on

3  your thoughts.

4          MS. BIBLO BLOCK:  Yeah.  Your Honor, I think we're

5  okay with carrying the motion.  I think our primary concern is

6  income.  He's not reported any income on his monthly operating

7  report, but he has said in various pleadings that he does get

8  income from the job that he was just terminated with.

9          THE COURT:  That's a very specific and fair point,

10  Counsel.  Thank you.  That's exactly the kind of thing to focus

11  on.

12          So debtor, what say you?

13          MR. BERGER:  Judge, if I could just go a couple of

14  issues.  Obviously, Your Honor -- Heath Berger, attorney for

15  the debtor -- we agree, Judge.  The operating reports have to

16  be filed.  That's one of the requirements as a Chapter 11

17  debtor-in-possession.

18          I've been doing this long enough, Judge.  My letters

19  that go out to my clients, they do explain it, Judge.  I don't

20  want to sit here and minimize that.  We understand, Judge.  And

21  I think that I've gotten it through to the debtor of the

22  requirements that need to be done.

23          There were issues, and some of the delays was going

24  back and forth with the accountant.  That caused some problems.

25  They finally have, I think, gotten things on track --

23-12055-shl    Doc 231    Filed 05/16/24    Entered 05/24/24 10:23:55    Main Document
Pg 68 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

68

1              THE COURT:  All right.

2              MR. BERGER:  -- like I said --

3              THE COURT:  So to pick up on your comment and Ms.

4    Schwartz' comment, that's fine.  Every case is its own story,

5    and there are issues in cases and things.  The concern for your

6    client is twofold.

7              One is there will reach a point, and it's already been

8    hinted at and discussed in, actually, this very motion about

9    the request to appoint a trustee.  And so it's all about the

10   record in the case.

11             MR. BERGER:  Sure.

12             THE COURT:  And that's something your client should be

13   concerned about.

14             And the second is that it always reaches a point where

15   judges say that it's another really interesting story, but I

16   don't care why it's not properly done or done timely or

17   consistent with the rules.  We've reached the point where I

18   can't afford to care why.  It just hasn't happened.

19             So those are the two things.  Again, I'm not telling

20   you anything you don't already know.  I know that.  But I'm

21   saying it out loud so that there's no misunderstanding by

22   anybody, anywhere about how this system works.

23             And so I get it.  But it's got to get fixed or at a

24   certain point, we live in a very Manichean, black-and-white

25   world that either is fixed or it's not fixed.  And so that's --

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

69

1          MR. BERGER:  I understand that, Your Honor.

2          THE COURT:  But with adjourning the motion, it's not a

3  today viewpoint, but we're going to get there if it's not

4  fixed.

5          MR. BERGER:  Yeah.  I understand, Your Honor.  And

6  I've used that threat for that, Judge.

7          THE COURT:  Yeah.  Well, I mean, again, that's why I

8  give some of these --

9          MR. BERGER:  I understand the Court's point.

10          THE COURT:  -- speeches so that people can pass them

11  along to whoever needs to hear them.

12          So what about the income piece, the very specific

13  income piece?  What can you tell us today on that?

14          MR. BERGER:  Judge, the only thing I could say is some

15  of that money gets paid, my understanding, is to the

16  corporations, which is used to basically fund some of the staff

17  that's out there.  None of it goes to the debtor.  We did have

18  a conversation that they should start giving him a salary out

19  of that.  That was a conversation we've had recently.  So we're

20  going to try to sit down and figure that out because it's not a

21  lot that comes in, especially now that the ABC is out.

22          Most of the money, again, Judge, that the debtor is

23  using, and actually, when I file the April operating reports,

24  is again has taken money from the retirement accounts to fund

25  to pay the maintenance for both properties.  Again, the

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

70

1    property appears listed.  I'm hoping, the way the market goes,

2    that goes fast.  So that's truthfully less money he has to take

3    out of his account.

4        THE COURT:  So going back to the income, is there any

5    reason why you can't send a letter to the U.S. Trustee, the

6    committee, the Freeman plaintiffs, everybody about what the

7    income situation is?  Because obviously ,when you know what you

8    know, you say, well, this isn't problematic at all because of

9    the way it works.  But if people don't know, they're seeing a

10   big, fat zero where they expect income to be reported.

11       So when can you provide an update?  Now, again,

12   whether that's in a monthly operating report, it's in a letter,

13   it takes some other form, it's in schedules, you all are in a

14   better position to understand what form that information should

15   be conveyed in.  But when people are asking questions about

16   income, that's a pretty basic question.

17       So what would be your intention on providing

18   information on that and both by when and in what form?

19       MR. BERGER:  Judge, I can provide a letter update to

20   everybody.  If you could give me to the middle of next week,

21   just that two confirmation hearings on this week for Chapter 11

22   cases, so I apologize.  I just a little --

23       THE COURT:  Yeah, that's fine.  The middle of next

24   week is fine.

25       MR. BERGER:  Yeah, I'll get that out, Your Honor,

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

1    middle of next week, everybody.

2         THE COURT:  All right.  All right.  So let me just

3    loop back to the committee, if there's anything in particular

4    in light of what you just heard that you wanted to focus on or

5    follow up on on the question of income.

6         MS. BIBLO BLOCK:  The only problem with the income is

7    that both in the reply to this motion -- or the response to

8    this motion and the opposition to the motion to compel, the

9    debtor does say he gets income.  So it's just a little

10   confusing.  So we would like the documentation from --

11        THE COURT:  All right.  That's a fair point.  All

12   right.  So that's your touchstone for trying to understand the

13   issue.  So that's a fair question.  Thank you.

14        Anything else from the committee on this motion, which

15   I would say we would carry?

16        And what I would suggest is I want to be responsive to

17   the concerns, and we could carry it to our next hearing date.

18   And perhaps the idea would be, at a time of your choosing,

19   whether it's three days or five days or seven days, whatever it

20   is, to submit a letter on what you think are the open issues

21   and where the motion stands.  And that gives, hopefully, enough

22   time for everybody to know what they are, those issues are, to

23   have conversations -- again, this is an aspirational view, I

24   suppose -- but to have conversations and communications about

25   addressing those issues.

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

72

1          Would that work for you, Counsel?

2          MS. BIBLO BLOCK:  Yes.  Thank you, Your Honor.

3          THE COURT:  All right.  And I'll consider that,

4     essentially, a supplement to the motion.

5          Anything else from the committee?

6          MS. BIBLO BLOCK:  Nothing else from the committee's

7     perspective.  Thank you.

8          THE COURT:  All right.  And Counsel, I know you -- I

9     think you had some other things you wanted to address.

10          MR. BERGER:  I just want to address just a couple of

11     just comments from the Court.  So I apologize to the Court.

12          As far as moving along, the issue, we've been working,

13     both Ms. Biblo Block, myself, and Ms. Schwartz, on getting the

14     retention for Sotheby's probably for the last six to eight

15     weeks trying to get it done.  And there were a lot of issues

16     with some commissions, some issues that Sotheby's was very

17     strict on what they wanted, and what the U.S. Trustee's.  It

18     took longer because just a lot of moving parts going on, Judge.

19     We've been trying to get this done for a while.

20          So I don't want the Court to think that it was just

21     sitting.  It's been more negotiations back and forth on certain

22     issues that Sotheby's needed.  Issues that the U.S. Trustee

23     needed.  So I just don't want the Court to think that we just

24     woke up yesterday and we filed it.

25          THE COURT:  No, I understand that.  I understand that.

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

73

1  At the same time, again, from a court perspective, you know we

2  look at --

3     MR. BERGER:  I understand.

4     THE COURT:  -- what's happening or what's not

5  happening.  And this case has been around now long enough that

6  if the thought from the beginning is to sell one of the

7  properties -- I'm looking back at my notes.  We had our first

8  hearing January 31st.  So that's all of February, all of March,

9  all of April.  And so we're in about three and a half months.

10  Right.

11     So Chrysler sold the business in thirty days.  So I'm

12  not saying this is a Chrysler.  I understand each case has its

13  own story and its own challenges, but that's got to happen.

14     MR. BERGER:  Sure.

15     THE COURT:  And if for some reason you're stuck on

16  things, that's what court hearings can be useful for.  I don't

17  want things to get stuck.  Retention applications that get

18  stuck can be a real problem in cases, and they can prevent

19  things from going forward.  Professionals get very nervous if

20  they don't have their retentions, things squared away at a

21  certain point.  So if we need to have a conversation, we'll do

22  that.

23     MR. BERGER:  Okay.

24     MR. FISCHOFF:  So that's what I'm here for.

25     MR. BERGER:  Thank you.  Yeah, I just, like I said,

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

74

1   took a little bit.  We got it going.

2          Your Honor, just as far as the communication, I mean,

3   the reality is I know we hear nobody really speaks.  I mean, I

4   think Ms. Biblo Block and I probably email each other on a

5   fairly regular, daily basis.  I mean, we may have differing

6   opinions on things, but --

7          THE COURT:  Right.

8          MR. BERGER:  -- there is a line of communications that

9   is open.  And on the debtor's side, we do want to continue that

10  line to go forward.

11         THE COURT:  Right.  But there's just got to be --

12         MR. BERGER:  Ms. Strickland actually just brought up

13  an interesting statement earlier today, which I think is

14  something very valuable, to sit down and have that discussion

15  with all parties about a possible settlement.

16         THE COURT:  Well, in my experience, again, I don't

17  want to know about what you all are talking about in terms of

18  any settlement or resolution, but restructuring

19  professionals -- again, I don't want to be pedantic.  You all

20  know this.  Restructuring professionals look at their options

21  and they pursue options and think about what works.  And the

22  more data they get, the more they can assess the options and

23  the further along they get.  So that's why something like the

24  nondischargeability adversary proceeding, which is teed up, is

25  a relevant data point.

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

75

1        And the appeal is frankly less so because it's going

2   to take longer to get to a final conclusion.  And so that's

3   why, in my view, the focus, the laser-like focus, exclusion of

4   other things, is not the path forward.  I'm not saying that at

5   some point it isn't appropriate, but I think right now, I don't

6   think it is.

7        MR. BERGER:  I understand, Your Honor.

8        THE COURT:  And so, again, if there's progress in the

9   case, then we can revisit those kinds of issues and assess the

10  circumstances so --

11       But Counsel, I cut you off.  What else would you like

12  to raise?

13       MR. BERGER:  No, no, Your Honor.  That's kind of just

14  what I wanted to bring up to the Court.

15       THE COURT:  And if there's other things that the Court

16  could be useful with, you'll let me know, whether that's people

17  will mediate everything from litigation disputes, like what's

18  going on the case of the District of Columbia, to having plan

19  mediations.  There's lots of ways.

20       The idea is, is sometimes to get a third-party who you

21  can candidly share all the details with, which sometimes you're

22  not able to do with me, to give you a third party's outsider

23  view.  And certainly, there are lots of good mediators.  Again,

24  you are all -- you all know that.  So that's one avenue that is

25  often taken in the context of trying to figure out how to deal

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

1   with a judgment that's out there.

2          So all right.  Anything else, Counsel?

3          MR. BERGER:  That's it, Your Honor.  Thank you.

4          THE COURT:  All right.  So I know we were also going

5   to talk about the adversary proceeding that was filed.  And so

6   I think, unless there's something else that logically we need

7   to tie up a loose end on, we could do that now.

8          And I did see that it has, as already been discussed,

9   based on Mr. Giuliani's statements, continued statements about

10  the Freeman plaintiffs, and is seeking an injunction in this

11  court.  And so what I would ask the Freeman plaintiffs in

12  connection with that adversary is the following question is

13  whether that makes sense to be here.

14         Normally, that kind of thing would be in the court

15  where the actual first case was.  I know a district judge here

16  in the Southern District of New York recently had -- there have

17  been cases that sort of have presented a similar problem.  And

18  so that would be my big question to you.  And this is where

19  communication among counsel is invaluable in terms of trying to

20  figure out what to do about these things.

21         But let me hear from the Freeman plaintiffs to start

22  us off on this topic.

23         MR. NATHAN:  Good afternoon or -- yes, good afternoon,

24  Your Honor.

25         THE COURT:  Yes.

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 77 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

77

1          MR. NATHAN:  Yeah.  Aaron Nathan for the Freeman

2     plaintiffs.

3          That is something we've considered internally.

4     Obviously, at this point, given the automatic stay, the

5     injunctive relief proceeding that we had brought in the

6     district court in DC is stayed.

7          THE COURT:  Right.

8          MR. NATHAN:  But for the stay, it would certainly be

9     possible to amend that complaint to update it to include the

10    post-petition statements and pursue the relief there.  I would

11    say, we'd be happy to consider that further and make a proposal

12    along those lines if Your Honor is open to that.  I'm not

13    frankly sure what our answer would be at this stage, and I

14    think we'd have to discuss that with the committee before we

15    took any steps in that direction.

16         THE COURT:  Yeah.  No, I understand why you're here --

17         MR. NATHAN:  Yeah.

18         THE COURT:  -- in light of the automatic stay.  I get

19    that.

20         MR. NATHAN:  The other reason why we're here is that,

21    obviously, the debtor's post-petition conduct has a dramatic

22    impact on what happens in this bankruptcy, given that it's

23    already given rise to administrative expense claims that the

24    Freeman plaintiffs have filed in this court.  So there may be a

25    reason why Your Honor would conclude that it's appropriate to

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 78 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

78

1    enter that injunction here in this court.

2         But I would say as far as the Freeman plaintiffs are

3    concerned, what we want is for the debtor to stop defaming and

4    inflicting emotional distress on our clients.  It's long past

5    time for that relief to be entered, and that's our priority.

6         THE COURT:  All right.  And that's fair enough.  Thank

7    you for that presentation.

8         Let me hear from the debtor.

9         MR. BERGER:  Thank you, Your Honor.  Heath Berger,

10   Berger, Fischoff, Shumer, for the debtor.

11        Your Honor, we received, obviously, the complaint on

12   Monday.  We've sent it to the debtor.  Trying to have some

13   discussions on it, possibly with counsel, or we're having that

14   discussion with Mr. Caruso also.

15        So we also had conversations about a briefing schedule

16   and all that and to set that going forward.  And again, we kind

17   of had a little bit of the same question internally ourselves

18   is whether it's appropriate in this court or should it go back

19   to the district court in DC.

20        I don't have an answer to that, Your Honor, at this

21   point.  I'm not sure which way it's supposed to go.  Again,

22   we've received it.  We've sent it to the debtor.  We've said we

23   need to have further discussions --

24        THE COURT:  Right.

25        MR. BERGER:  -- concerning the allegations because we

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

1    want to try to keep this on a smooth path and not as --

2         THE COURT:  Right.

3         MR. BERGER:  -- bumpy as it's getting.

4         THE COURT:  Well, again, I find that we're having

5    conversations that sound like things that are sort of very

6    normal course, and this isn't normal course.  I don't normally

7    have this kind of an issue.

8         And the stage, I know your client has an appeal, but

9    there's a decision by a federal district judge about this.  And

10   I'm not going to let this court be used as a place where

11   parties can flout the requirements of the law.  It's just not

12   acceptable.  And I think you'd get that answer from any judge.

13   And if you look up my bio, I think I have a little bit of a law

14   and order background.  I mean, it's just appalling.  There's

15   been a finding that your client improperly did this, and he's

16   continuing to do it.

17        So there's a couple of ways to deal with this.  What

18   I'm hearing from the Freeman plaintiffs is to say, just stop

19   doing it.  So I understand you've said it to your client.

20   You're going to have discussions.  But it's pretty simple.

21   What it requires not is a great intellectual discussion or

22   analysis of issues, but rather will, the will to say no more.

23        And so I realize that as a bankruptcy court, I can act

24   without the impediments that some other district court may

25   have, although I recognize that that court is the one that had

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

80

1   the proceedings.  And so I have no desire to step on the toes

2   of that district court in an already difficult case and make

3   things more complicated.

4         So in the first instance, I normally would send this

5   back -- encourage the parties to send it back to the district

6   court.  At the same time, I'm just, unless I'm really missing

7   something in a profound way, just stop.  Tell your client to

8   stop.  I mean, it's not complicated.

9         And you don't like a decision that the district court

10  came up with.  You're appealing it.  You filed a motion.  And I

11  just don't understand that attitude to the law.  And so I don't

12  think you get to just disregard what the district court said.

13  I mean, it doesn't sound like there's any prospect -- I'm

14  certainly not hearing any prospect that you think the district

15  court would tell your client that this conduct was permissible,

16  right?  Am I missing something?

17        MR. BERGER:  No, Your Honor, you're not.

18        THE COURT:  So we can all spend a lot of time and

19  money papering things, but it seems to be a pretty

20  straightforward issue.  And so my thought is to get back

21  together this week.  I want an answer on this.

22        And so I'm going to direct you to speak to your client

23  in the next twenty-four hours about the issues we're discussing

24  today and that within twenty-four hours after that, you're

25  going to reach out to the Freeman about the substance that is

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 81 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

81

1  the continued statements and the procedure, what should happen.

2         I mean, there's several ways to do this.  One is to

3  lift the stay for purposes of people going in front of the

4  district court to address these issues, and we could do that.

5  I'm trying to think, procedurally, for purposes of finality,

6  what's best for the parties.  And so as the Court that didn't

7  originally have the case, I have a question about whether I'm

8  the right person to make those decisions, to make those calls.

9  But you're, I think, in a better position to assess the pros

10  and cons, and I just don't want to create any procedural

11  impediments or difficulties.

12         So I'm going to direct you all to have a conversation

13  on Thursday, and I'd like to have a hearing on Friday on this

14  particular issue.  So I don't see any reason why this should

15  wait.  Again, unless I'm profoundly misunderstanding the facts,

16  which have been represented to me as Mr. Giuliani making

17  statements that a court has already found to be defamatory and

18  continuing to do so.  So if I have those facts correct, and I'm

19  not hearing anything to the contrary, that's an unacceptable

20  situation.

21         MR. BERGER:  Understand, Your Honor.

22         THE COURT:  So we can set a time for Friday, I would

23  say 11 o'clock, if that works for the parties, and to sort of

24  figure out where we are in this issue.  Again, I'm trying to

25  save you all the need to fully gear up the litigation war

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

82

1   machine.  That takes time.  It takes money.

2        And also, I mean, we're a bankruptcy court.  We should

3   be sensitive to the costs.  But also, it takes time.  And given

4   what the district court has decided, it doesn't seem

5   appropriate to have a time lag on this particular issue.

6   Again, if there's some debate about something but --

7        And I suppose my opinion is somewhat -- I had

8   understood, I think, when we were talking about the first lift

9   stay motion, that the focus of Mr. Giuliani was the amount of

10  the damages that were awarded and not the underlying liability.

11  Of course, the longer we have these conversations about that

12  appeal case, I think the longer I realize that my assumption,

13  or at least the suggestion that I heard from the debtor, that

14  that may not be, in fact, their approach.  But again, you can

15  all talk about that.

16        So any questions or comments or suggestions, Counsel?

17        MR. BERGER:  None, Your Honor.

18        THE COURT:  All right.

19        MR. BERGER:  I will speak to the debtor, I will reach

20  out to counsel, and hopefully advise the Court on Thursday of

21  where we are.

22        THE COURT:  All right.  All right.  So anything from

23  the Freeman plaintiffs?

24        MR. NATHAN:  Just one further thing on that, Your

25  Honor, and I realize I may be telling you something you already

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 83 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

83

1    know.  At this point, with everything that's happened, I think

2    the Freeman plaintiffs will not be amenable to an agreement for

3    anything short of a court order that would be enforceable in

4    court.

5             THE COURT:  Oh, I wouldn't expect anything to the

6    contrary.

7             MR. NATHAN:  Okay.

8             THE COURT:  We use trust but verify earlier, but I

9    completely understand that.  What I'm trying to avoid is your

10   clients having to spend time and money and emotional angst to

11   sort of have to litigate this, as, again, the facts you

12   presented to me seem to be fairly straightforward.  And so

13   unless I'm missing something about those facts and about how

14   they connect to the proceedings in district court and the

15   district court's rulings, this seems to be a pretty

16   straightforward problem, from the point of view of your

17   clients, a horrible problem, but not a complicated one, if,

18   again, I'm understanding the facts straight.

19            So that's what I'm just trying to sort of get this

20   resolved as promptly as possible.  So I don't expect your

21   clients to say, well, if somebody stands up and says, no, no,

22   it's not a problem, everything's fine, that that would be

23   acceptable.  But again, I'm struggling to understand, again, if

24   I'm understanding the facts and the circumstances correctly,

25   why there need to be proceedings on this in the sense of it

84

1   being a disputed issue as a matter of facts or law so --

2          MR. NATHAN:  Right.  Thank you.

3          THE COURT:  But I appreciate the heads up.  It's

4   important to say these things out loud so everybody's on the

5   same page on that.  But I expect that'll part of the

6   conversations that will occur before we come to court on Friday

7   at 11.

8          And I'm going to leave that date on the calendar.

9   There are times when I say to people, if you work it out, then

10  we can take it off the calendar.  It would seem that a hearing

11  would be appropriate and helpful.  So let's leave that on.  And

12  if that means that there's -- so think about, to your point if

13  there's been some progress but it needs to be more tangible

14  progress that we can use Friday to hopefully try to do that.

15         So with that said, I realize I sort of got out in

16  front of that particular adversary proceeding, and I don't want

17  to prevent the Freeman plaintiffs from identifying any other

18  questions, concerns, or issues that we should talk about in

19  connection with that.

20         MR. NATHAN:  Thank you, Your Honor.  Aaron Nathan,

21  again, for the Freeman plaintiffs.

22         The only other item on our agenda would have been a

23  briefing schedule on the motion for summary judgment and for

24  permanent injunctive relief.  I think I heard debtor's counsel

25  say that we had an agreement on that, and if that's true, we

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

85

1   had exchanged an email about a potential schedule.  I'd be

2   happy to have that schedule entered, if you would like that,

3   Your Honor, just to have a briefing schedule in the background

4   while we discuss the possibility of an alternative resolution.

5            THE COURT:  Right.  That's fine.  If you all worked

6   out a schedule, that's fine.  And so if you want to submit it

7   to me because it's agreed upon, just send an email with that.

8   That's fine.  And if, to the extent that that's something

9   that's still not nailed down, we can revisit it on Friday.  So

10  my thought would be, we'd end the week with a schedule one way

11  or the other.

12           MR. NATHAN:  Understood.  And just so Your Honor has

13  all the information, the briefing schedule would involve the

14  Freeman plaintiffs filing their opening brief next Wednesday,

15  which is the only reason why we thought it might make sense to

16  have the schedule in place while we continue to have these

17  conversations in anticipation of Friday so --

18           THE COURT:  Yeah.  That's fine.  Again, I'm sensitive

19  to everybody's time and money in connection with this.  But

20  obviously, I know there are important issues, and your client

21  may feel like, well, Judge, we want to be ready to file on

22  Wednesday, next Wednesday, and --

23           MR. NATHAN:  Right.

24           THE COURT:  -- that's fine.  So if I thought a date

25  before Friday would be more meaningful, I'd be happy to get

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 86 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

86

1  together Thursday.  I mean, if it's meaningful to buy an extra

2  day or so, I could chat with all you nice folks on Thursday

3  afternoon, if that would be helpful.  Why don't you chat and

4  see what works for you all, unless you want to think about it

5  now.  Whatever works for you.

6        MR. NATHAN:  I think Thursday would be preferable for

7  the Freeman plaintiffs, if we can find a time that works for

8  the Court.

9        THE COURT:  Yeah.  Would Thursday afternoon work?

10        MR. BERGER:  I have a hearing before Judge Scarcella

11  on the disclosure statement in the morning.  I just don't know

12  if I'll drive here.  We agree to do it by Zoom, I think I --

13        THE COURT:  Yeah, this could be by Zoom.  Yeah, I

14  would think --

15        MR. BERGER:  Okay.

16        THE COURT:  -- it could be by Zoom.

17        MR. BERGER:  I think I could make that work better.

18  I'll never make it here, Judge.

19        THE COURT:  Do you have a time that you think that

20  would be best for running between the raindrops?  You want to

21  do it 1, 1:30?  Courts tend not to be --

22        MR. BERGER:  Yeah.

23        THE COURT:  -- in session from 12 to 2.

24        MR. BERGER:  1:30, 2 o'clock, and I don't -- I think

25  that should work for me, Your Honor.  I have a 10 o'clock

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 87 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

87

1   hearing.  Let's assume it's going to take me maybe two hours.

2          THE COURT:  I mean, could also make it a 3 o'clock as

3   well, if that's easier.

4          MR. BERGER:  Well, let's do 3, if that's acceptable.

5          THE COURT:  3 o'clock?

6          MR. NATHAN:  That's fine, Your Honor.

7          MR. BERGER:  Yeah.  As long as it's by Zoom, Judge, I

8   appreciate that.  That makes --

9          THE COURT:  Yeah, Zoom's fine.

10         MR. BERGER:  -- it a little bit easier.

11         THE COURT:  Zoom is fine.

12         MR. BERGER:  Okay.

13         THE COURT:  3 o'clock on Thursday, and we'll talk

14  about where we are on the substance of it.  And then we can

15  also, as needed, talk about the procedural issues as well, and

16  then we'll loop back to scheduling.  So but again, I'll look

17  for the scheduling order if it gets sent my way in the

18  meantime.

19         MR. NATHAN:  Thank you, Your Honor.  And the only

20  remaining item would be with respect to the other adversary

21  proceeding on the nondischargeability.

22         You mentioned that it is teed up.  Our reply is coming

23  in on May 22nd.  And I think Your Honor mentioned the

24  possibility of argument on that motion.  The Freeman plaintiffs

25  would be happy to appear for our argument and answer any

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

1  questions that the Court may have.  And if you would like to

2  schedule that now or discuss it any further, we're available.

3        THE COURT:  I confess, I would like to schedule it

4  now.  I've got a couple of cases that are things that I need to

5  bring to closure shortly.  So what I'd like to do is let's talk

6  about that on Thursday.  May be in a better position to get you

7  a date at that point.  But my intent would be to schedule it

8  fairly promptly.  If we can do that in June, that would be the

9  thought.

10        MR. NATHAN:  Thank you.

11        THE COURT:  All right.  All right.  Counsel.

12        MR. BERGER:  No, Judge.  I'm just, I guess, at this

13  point, I guess we'll need just an adjourn date for a status

14  conference.

15        THE COURT:  Yeah.  We can schedule that now.  I would

16  think in this case that thirty days out seems to make the most

17  sense, or thereabouts, although we're obviously getting

18  together Thursday.  So I would say June 17th.

19        MR. FISCHOFF:  Could we possibly make that the 18th?

20  On the 17th, I have some other --

21        THE COURT:  Well, Ms. Ebanks prevents me from running

22  afoul of the space time continuum by giving me dates.  So I

23  don't have the 18th listed on here.

24        So I could go later, the 24th, or earlier, the 7th?

25        MR. BERGER:  No, I can't do the 7th, Judge.

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 89 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

89

1      MR. FISCHOFF:  So 24th.

2      THE COURT:  So let me ask folks if that's too far out

3  or your views.

4      MR. DUBLIN:  Your Honor, Phil Dublin, Akin Gump, on

5  behalf of the committee.

6      Your Honor, that's fine for a status conference.  If

7  we don't see progress on a number of the issues that we've gone

8  through today, it's possible we're seeking relief before then

9  along the lines that Your Honor hinted at with the trustee or

10  otherwise.  So we can do that for now, but we may --

11      THE COURT:  All right.

12      MR. DUBLIN:  -- look to expedite things.

13      THE COURT:  All right.  Well, it also means you could

14  use that as an omnibus date to put whatever you need to put on

15  for that date.

16      MR. DUBLIN:  Understood, Your Honor.

17      THE COURT:  All right.  Thank you very much.

18      On behalf of the Freeman plaintiffs, any other

19  thoughts on that?

20      All right.

21      MS. STRICKLAND:  No, Your Honor.

22      THE COURT:  All right.  So we use the 24th.  We'll

23  make it 11 o'clock.  And we will talk again Thursday.

24      I will just say this.  We obviously have a very

25  specific thing to talk about on Thursday.  To the extent that

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

1   there are other things we can talk about on Thursday would help

2   move things forward, I'm fine with doing that, with one caveat.

3   It can't be a surprise.  Nobody can say, well, I know I didn't

4   say anything to anybody, but I want to talk about this on

5   Thursday.

6        So if there's something that would be helpful, you

7   just got to vet it with the other side and let people know.

8   Keep them in the loop.  Again, progress takes a lot of

9   different forms.  And if we can make progress, I'm all in

10  favor.  But again, I'm not trying to surprise anybody or make

11  things inefficient.

12       So we're on for the 24th at 10.  We're on for this

13  Thursday at 3 by Zoom.

14       And with that, let me ask if the debtors have anything

15  else.

16       MR. BERGER:  Just one question.  I thought you said 11

17  o'clock on the 24th, Your Honor.

18       THE COURT:  Yeah.  I'm sorry.

19       MR. BERGER:  Just so we have it --

20       THE COURT:  You're entirely correct.  Yes.

21       MR. FISCHOFF:  Okay.

22       THE COURT:  Thank you.

23       MR. BERGER:  Thank you.

24       MR. FISCHOFF:  And we're carrying the creditors

25  committee motion to compel the reports to that day also?

**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

1          THE COURT:  Correct.

2          MR. FISCHOFF:  Okay.

3          MR. BERGER:  Okay.

4          THE COURT:  And they'll give an update, let's say,

5   since it's the 24th, maybe a week ahead of time on what issues

6   remain outstanding in terms of disclosure.

7          All right.  Anything else from the debtor?

8          MR. BERGER:  That's it, Your Honor.  Thank you very

9   much.

10         THE COURT:  All right.  Thank you.

11         Anything else from the Freeman plaintiffs?

12         MS. STRICKLAND:  No, Your Honor.  I just had one

13  question.  The MOR for April is getting filed tomorrow?

14         MR. FISCHOFF:  Friday.

15         MR. BERGER:  Right.  Friday.

16         MS. STRICKLAND:  I was just thinking that might come

17  up on Thursday, so I wanted to flag it.

18         THE COURT:  All right.  Well, I think we've probably

19  said as much as we can say on that.

20         Anything else from the committee?

21         MS. BIBLO BLOCK:  No, Your Honor.  Thank you.

22         THE COURT:  All right.  Thank you very much.

23         I'll await a proposed order denying without prejudice

24  the motion for relief from the automatic stay.  I assume that

25  would come from the committee and/or the Freeman plaintiffs.  I

23-12055-shl   Doc 231   Filed 05/16/24   Entered 05/24/24 10:23:55   Main Document
Pg 92 of 111
**RUDOLPH W. GIULIANI; FREEMAN, ET AL. V. GIULIANI**

92

1    would think that that order should contain language to make it

2    very clear to anyone who might be an inquiring mind in the

3    District of Columbia who is not a bankruptcy professional that

4    that means the stay remains in place in all respects.  It can

5    hopefully do some double-duty that way.

6          And so I'd ask that that order be circulated before

7    it's provided to chambers.  And if for some reason there's some

8    issue, some dispute about language, we can talk about that on

9    Thursday.  I'll put that on the agenda on Thursday so it won't

10   languish.  And I think that's all I got, so with that, thank

11   you very much.

12         MS. SCHWARTZ:  Judge, are we still having the

13   conference on Friday at 11?

14         THE COURT:  No, no, Friday's off.

15         MS. SCHWARTZ:  That's all moved to Thursday?

16         THE COURT:  Thursday is the new Friday.  Yes.

17         MS. SCHWARTZ:  Okay.  Thank you.

18         THE COURT:  So at Thursday at 3 o'clock.  Nothing on

19   Friday.  Thanks.

20         MS. SCHWARTZ:  Thank you.

21         THE COURT:  Thanks for pointing that out.

22         All right.  Thank you very much.  Have a good

23   afternoon.

24         IN UNISON:  Thank you, Your Honor.

25       (Whereupon these proceedings were concluded at 1:06 PM)

93

1

2                          I N D E X

3   RULINGS:                                      PAGE   LINE

4   Debtor's motion to lift stay is denied         59     13

5   without prejudice

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

94

1

2                    C E R T I F I C A T I O N

3

4   I, River Wolfe, certify that the foregoing transcript is a true

5   and accurate record of the proceedings.

6

7

8

9   _____

10  River Wolfe (CDLT-265)

11  TTA-Certified Digital Legal Transcriber

12

13  eScribers

14  7227 North 16th Street, Suite #207

15  Phoenix, AZ 85020

16

17  Date:  May 16, 2024

18

19

20

21

22

23

24

25

# #

**#195 (1)**
3:11
**#197 (1)**
3:6
**#2 (1)**
4:3
**#207 (1)**
4:22
**#217 (1)**
3:4
**#220 (1)**
3:16
**#3 (1)**
4:6
**#5 (1)**
3:23

# A

**AARON (4)**
6:19;12:4;77:1;
84:20
**ABC (1)**
69:21
**ABI (1)**
10:7
**ABID (2)**
8:11;11:23
**ability (1)**
55:4
**able (7)**
25:1;35:15;39:23;
49:14;54:5;55:25;
75:22
**above (1)**
26:17
**absent (2)**
16:13;24:6
**accelerate (1)**
46:16
**acceptable (3)**
79:12;83:23;87:4
**accomplished (1)**
43:18
**accordance (1)**
52:12
**Accordingly (1)**
48:14
**account (2)**
48:12;70:3
**accountable (1)**
43:3
**accountant (8)**
18:21;49:6;62:12,
16,17,18,19;67:24
**accounts (1)**
69:24
**accurate (2)**
63:2,11
**achieved (2)**

44:16;60:4
**acknowledged (1)**
41:20
**acrimonious (1)**
64:21
**acrimony (2)**
17:11;62:3
**act (1)**
79:23
**acting (1)**
43:11
**action (4)**
16:15;25:23;30:1;
56:13
**actions (3)**
21:2;22:15;64:1
**actively (1)**
41:4
**activity (1)**
63:12
**actual (1)**
76:15
**actually (12)**
17:1;25:3,4,19;
35:15;38:2;41:25;
43:4,24;68:8;69:23;
74:12
**add (3)**
51:24;52:22;65:5
**additional (2)**
26:13;60:3
**address (7)**
51:22;52:20;60:10;
66:13;72:9,10;81:4
**addressed (4)**
22:23;49:16;58:3;
66:14
**addressing (4)**
13:7;64:12,13;
71:25
**adjectives (3)**
28:3,6;34:4
**adjourn (1)**
88:13
**adjourning (1)**
69:2
**adjustments (1)**
48:12
**administrative (3)**
18:10;40:1;77:23
**admission (1)**
20:18
**advantage (1)**
38:8
**Adversary (15)**
3:19,22;4:2,5;13:3;
31:15;32:9;42:11;
43:15;57:5;74:24;
76:5,12;84:16;87:20
**advise (1)**
82:20
**advised (2)**
26:16;62:16

**advises (1)**
26:12
**advising (1)**
64:18
**affairs (2)**
19:17;20:4
**affect (1)**
31:12
**affirmatively (1)**
41:21
**afford (1)**
68:18
**afforded (1)**
30:12
**afoul (1)**
88:22
**afternoon (6)**
45:11;76:23,23;
86:3,9;92:23
**again (58)**
12:13;20:15,22;
23:22;24:9;28:2;
29:22;30:6,22;32:5;
33:7;40:22;41:2,24;
42:5;46:8;54:22;
56:16,21;57:9,16,21;
58:4;59:20;60:2,13,
16;64:21;67:2;68:19;
69:7,22,24,25;70:11;
71:23;73:1;74:16,19;
75:8,23;78:16,21;
79:4;81:15,24;82:6,
14;83:11,18,23,23;
84:21;85:18;87:16;
89:23;90:8,10
**against (14)**
15:5;16:23;25:3,11,
23;29:25;41:17;
46:12;48:5;52:24;
53:2;55:13;57:4,19
**agency (1)**
62:4
**Agenda (4)**
3:4;12:20;84:22;
92:9
**ago (2)**
37:23;44:24
**agree (7)**
33:11,11,12;35:17;
54:17;67:15;86:12
**agreed (2)**
19:23;85:7
**agreement (3)**
32:2;83:2;84:25
**agreements (1)**
58:18
**ahead (2)**
31:22;91:5
**AKIN (6)**
7:13;8:2;11:22;
45:12;65:17;89:4
**al (4)**
3:19,22;4:2,5

**ALISON (1)**
6:16
**allegation (1)**
32:10
**allegations (1)**
78:25
**allow (2)**
41:20;51:5
**allowed (1)**
47:21
**Allowing (3)**
3:12;12:14;22:18
**Almost (2)**
25:12;60:16
**along (5)**
69:11;72:12;74:23;
77:12;89:9
**alternative (1)**
85:4
**although (2)**
79:25;88:17
**always (5)**
11:7;35:18;60:17;
66:7;68:14
**Amazon (2)**
45:25;49:16
**AMBEAULT (1)**
6:16
**AMELIA (2)**
8:8;11:23
**amenable (1)**
83:2
**amend (1)**
77:9
**Amended (12)**
3:16;14:17,18,19;
20:4,8;51:21,25;52:2,
3,17;65:22
**Amex (1)**
44:17
**among (2)**
58:19;76:19
**amount (6)**
25:21;45:1;54:1,5;
64:4;82:9
**analysis (3)**
46:13,23;79:22
**analyst (1)**
65:11
**analyze (1)**
59:24
**analyzing (1)**
59:25
**and/or (1)**
91:25
**ANDREA (5)**
9:16;10:6;12:12;
48:21;61:23
**angst (1)**
83:10
**ankle (1)**
12:14
**anticipation (1)**

85:17
**apartment (9)**
13:13;31:7;38:13;
39:25;44:23;56:3,4,7,
7
**apartments (6)**
41:8,12,13,15;
43:22,23
**apologize (3)**
20:16;70:22;72:11
**appalling (1)**
79:14
**Appeal (72)**
3:13;14:11,15,17,
18,20;15:2,19;16:14,
15,19,20;22:2,4,7,23;
23:18,19;24:7,23;
25:8,8,13;26:3;27:6,
16,17;28:15,16;29:1,
21,22;30:4,13,20;
31:5,11,23;33:1,8,8;
34:24,25;36:3,12,21;
37:8;40:2;42:16;44:3,
8;45:2,2;46:14,56:6,19;
57:23;58:21;59:17;
61:3;63:15;75:1;79:8;
82:12
**appealing (1)**
80:10
**appear (5)**
17:13,14;45:23;
53:21;87:25
**appearance (3)**
12:8,11;36:4
**appearances (1)**
11:7
**appeared (1)**
43:7
**appears (2)**
57:19;70:1
**appellate (3)**
14:11;28:18,18
**Apple (1)**
45:25
**applicable (1)**
57:6
**Application (19)**
3:16;12:25;13:11;
26:6;28:15,16;32:6;
39:12;46:11;47:4;
51:18;52:3,13,15,17;
58:1;60:11;61:9;64:5
**applications (4)**
13:16;35:10;64:4;
73:17
**appoint (1)**
68:9
**appointment (1)**
66:1
**appreciate (3)**
42:17;84:3;87:8

23-12055-shl    Doc 231    Filed 05/16/24    Entered 05/24/24 10:23:55    Main Document
In the Matter of: RUDOLPH W. GIULIANI                Pg 96 of 111

May 14, 2024

**approach (6)**
30:20;33:2,3;36:24;
54:25;82:14
**appropriate (14)**
32:24;53:25;54:1;
59:15,25;60:5,11;
62:25;66:1;75:5;
77:25;78:18;82:5;
84:11
**April (9)**
14:24;18:15;21:12,
14,22;46:1;69:23;
73:9;91:13
**architecture (1)**
38:24
**area (2)**
16:2;19:13
**argue (1)**
58:21
**argued (1)**
58:16
**argument (9)**
53:24;54:8;57:3;
58:12,15,16;60:5;
87:24,25
**arising (1)**
57:1
**arm's (1)**
29:21
**around (2)**
51:19;73:5
**arrangement (1)**
51:16
**arrest (1)**
58:17
**ArShaye (2)**
6:11;7:3
**ART (1)**
2:15
**aside (1)**
39:11
**aspirational (1)**
71:23
**assess (6)**
59:6,8;64:1;74:22;
75:9;81:9
**assessing (1)**
29:21
**asset (2)**
26:20;31:8
**assets (15)**
19:16;20:3;22:10,
24;31:2,9,12;44:12;
45:1;46:3;47:23;50:3;
53:3;60:7;63:14
**assist (3)**
18:12,24;19:2
**assistant (2)**
19:2;49:14
**assume (3)**
15:4;87:1;91:24
**assumed (3)**
15:12;36:14;55:15

**assuming (3)**
42:14;48:19,25
**assumption (1)**
82:12
**attack (1)**
23:18
**attention (1)**
63:10
**attitude (2)**
32:15;80:11
**ATTORNEY (2)**
9:2;67:14
**Attorneys (10)**
6:11;7:3,14;8:3,15;
9:3,12,20;11:10;18:1
**authority (4)**
14:16;15:18;16:13;
48:2
**authorize (1)**
14:14
**authorized (1)**
14:10
**Automatic (16)**
3:11;12:24;14:7,9;
38:6;48:3,5;53:2,5,
12;55:2;57:4;59:15;
77:4,18;91:24
**available (1)**
88:2
**Avenue (3)**
6:13;8:16;75:24
**avenues (1)**
25:14
**avoid (1)**
83:9
**await (1)**
91:23
**awarded (1)**
82:10
**aware (4)**
14:24;23:17;62:6;
64:15
**away (6)**
29:8;42:20,21,22;
43:11;73:20
**awkward (1)**
66:8
**AZ (1)**
4:23

**B**

**back (18)**
23:19;24:1;30:14;
34:18;40:8;57:17;
58:6;65:14;67:24;
70:4;71:3;72:21;73:7;
78:18;80:5,5,20;
87:16
**background (3)**
32:16;79:14;85:3
**backup (1)**
21:13

**balance (2)**
47:16;57:21
**ball (1)**
20:12
**Bankruptcy (48)**
2:2,13;11:3;14:24;
15:6;16:4,12,12;
17:20;20:24;22:2,13,
22;25:10;30:25;
34:23,24;35:19;37:3;
38:6;42:16;43:18;
46:13;47:7,24;48:4,6,
9;51:10;53:6;54:8,10;
55:4,5,25;56:18;58:9,
14,25;59:11,16,18;
60:9,22;77:22;79:23;
82:2;92:3
**based (7)**
17:8;22:16;59:13,
21;61:7;63:6;76:9
**basic (1)**
70:16
**basically (4)**
31:24;53:11;54:9;
69:16
**basis (6)**
17:25,25;21:17;
22:18;50:14;74:5
**basket (1)**
42:22
**BECKY (1)**
10:15
**become (2)**
25:8;54:25
**beginning (1)**
73:6
**behalf (10)**
11:8,19;12:1,4;
26:2;34:2;45:12;
65:17;89:5,18
**behavior (2)**
27:24,25
**behind (2)**
27:8;35:2
**beneficial (1)**
17:2
**benefit (3)**
22:13,25;59:11
**benefits (1)**
20:25
**BERGER (58)**
11:9,10,10,12;13:9,
9,23;20:5,7,7;21:6;
36:8;67:13,14;68:2,
11;69:1,5,9,14;70:19,
25;72:10;73:3,14,23,
25;74:8,12;75:7,13;
76:3;78:9,9,10,25;
79:3;80:17;81:21;
82:17,19;86:10,15,17,
22,24;87:4,7,10,12;
88:12,25;90:16,19,23;
91:3,8,15

**best (7)**
23:25;24:17;27:12;
54:4;57:16;81:6;
86:20
**better (5)**
60:4;70:14;81:9;
86:17;88:6
**beyond (2)**
19:24;26:17
**BIBLO (14)**
7:20;11:21,22;
45:11,12;65:16,17;
67:4;71:6;72:2,6,13;
74:4;91:21
**big (5)**
43:12;49:19,25;
70:10;76:18
**bigger (2)**
49:21,24
**biggest (1)**
62:11
**bill (1)**
49:16
**bio (1)**
79:13
**bit (8)**
29:16;37:16;39:8;
53:10;74:1;78:17;
79:13;87:10
**bizarre (1)**
40:22
**black-and-white (1)**
68:24
**blacklined (1)**
41:17
**BLOCK (14)**
7:20;11:21,22;
45:11,12;65:16,17;
67:4;71:6;72:2,6,13;
74:4;91:21
**Bloomberg (1)**
10:11
**blue (1)**
64:6
**board (3)**
18:18;21:20;52:16
**bond (3)**
22:5,8;39:21
**both (6)**
23:4;52:25;69:25;
70:18;71:7;72:13
**bother (1)**
42:1
**bottom (1)**
22:22
**Bowling (2)**
2:3;9:13
**bragging (1)**
34:11
**Bride (1)**
24:15
**bridge (1)**
58:24

**brief (4)**
12:22;46:14;48:18;
85:14
**briefed (1)**
39:1
**briefing (5)**
32:3;78:15;84:23;
85:3,13
**briefly (2)**
49:4;51:6
**bring (5)**
24:11,12;64:12;
75:14;88:5
**brings (3)**
24:16,17,18
**broker (2)**
26:6;56:3
**brought (3)**
63:10;74:12;77:5
**Bryant (1)**
8:5
**budget (2)**
46:2;49:13
**building (1)**
41:4
**bumpy (1)**
79:3
**bunch (1)**
65:21
**BURBAGE (2)**
6:17;12:4
**Burden (4)**
41:23,23,23;46:11
**burdens (1)**
20:25
**business (6)**
26:18;39:19;41:11;
62:20,21;73:11
**businesses (2)**
39:18;65:8
**bust (1)**
54:24
**busy (1)**
15:14
**button (1)**
48:6
**buy (1)**
86:1
**buyer (1)**
26:22

**C**

**calculus (2)**
54:20,20
**calendar (3)**
14:25;84:8,10
**call (1)**
34:22
**called (1)**
37:23
**calls (1)**
81:8

23-12055-shl    Doc 231    Filed 05/16/24    Entered 05/24/24 10:23:55    Main Document
In the Matter of: RUDOLPH W. GIULIANI        Pg 97 of 111

May 14, 2024

**came (3)**
64:5,5;80:10

**can (58)**
12:16,18;22:7;
23:14;26:22;27:5;
30:9;31:1,5,7,12;
37:25;38:12;41:14,
15,15;43:18;49:24;
52:20;56:21;59:7,19;
60:16;61:8;63:22,25;
66:9,18,18;69:10,13;
70:11,19;73:16,18,18;
74:22;75:9,21;79:11,
23;80:18;81:22;
82:14;84:10,14;85:9;
86:7;87:14;88:8,15;
89:10;90:1,3,9;91:19;
92:4,8

**candidly (1)**
75:21

**carbon (1)**
46:9

**cards (1)**
44:18

**care (2)**
68:16,18

**Carney (1)**
65:12

**carry (5)**
66:12,17,24;71:15,
17

**carrying (3)**
47:12;67:5;90:24

**carte (1)**
33:3

**Caruso (11)**
3:16;6:2,7;11:15,
16;13:1;51:5,23;
52:11;64:5;78:14

**Caruso's (1)**
52:15

**Case (103)**
3:2;11:5;12:25;
13:7;14:23;15:25;
16:21,22,25;17:6,18;
18:18;21:3;23:13,25;
24:10,24;25:7,9,11;
26:20;27:9,24;29:6,
24;30:5,11;31:1,9;
35:9,18;37:14,16;
38:15;40:12,13;41:5;
42:23;43:14;46:22;
47:7,20,24;48:6,9,23;
50:10,12,13;51:10;
53:6;54:8,10,16,18,
23;55:12,16;56:9,20;
57:16;58:9,11,25;
59:1,11,15,18,22,23,
24;60:2,7,8,15,17,23;
61:2,3,4,8;62:3,4;
63:9,15,17,20;64:2,
21,22,23,23;68:4,10;
73:5,12;75:9,18;

76:15;80:2;81:7;
82:12;88:16

**cases (22)**
17:10,10;25:12;
32:7,17;35:5;38:20;
39:23;42:6;43:21;
49:21,24,24;52:25;
54:15,16;60:19;68:5;
70:22;73:18;76:17;
88:4

**cat (1)**
41:8

**categories (1)**
50:1

**cause (3)**
42:1;53:5;55:4

**caused (1)**
67:24

**causes (1)**
25:23

**caveat (1)**
90:2

**central (1)**
46:13

**cert (1)**
24:6

**certain (4)**
21:3;68:24;72:21;
73:21

**certainly (17)**
17:18;25:10;28:6;
29:20;35:4;48:23;
50:2;53:3,20;55:8;
56:1,22;57:10;66:21;
75:23;77:8;80:14

**challenges (1)**
73:13

**challenging (1)**
57:5

**chambers (1)**
92:7

**chance (1)**
49:9

**change (1)**
31:10

**changed (3)**
34:19;52:5;61:7

**changes (1)**
58:4

**Chapter (10)**
11:5;34:5;38:12;
40:5;44:8;45:2;47:20;
62:10;67:16;70:21

**characterization (1)**
56:25

**charges (1)**
45:25

**chat (2)**
86:2,3

**chatted (1)**
33:24

**cheaper (1)**
41:16

**choice (2)**
64:8,9

**choose (1)**
28:5

**choosing (2)**
47:1;71:18

**chosen (1)**
47:9

**Chrysler (2)**
73:11,12

**Circuit (8)**
3:14;14:21,23;15:9,
9,19;16:1;36:2

**circulated (1)**
92:6

**circumstances (3)**
61:8;75:10;83:24

**CITRON (2)**
8:14,15

**City (1)**
13:13

**claim (1)**
57:1

**claims (8)**
16:23;36:18;38:3;
40:1;46:25;47:25;
53:4;77:23

**CLARA (1)**
10:4

**clear (6)**
23:12;44:9;46:23;
55:18;58:4;92:2

**clearly (1)**
64:2

**clerk (3)**
36:2,9,11

**clever (1)**
20:12

**client (19)**
24:8;28:8;29:2,25;
33:13;34:19,25;
38:10;63:22,25;68:6,
12;79:8,15,19;80:7,
15,22;85:20

**clients (8)**
34:12;37:24,24;
67:19;78:4;83:10,17,
21

**clients' (1)**
36:18

**client's (4)**
27:23,25;29:23;
63:24

**closed (1)**
26:22

**closure (1)**
88:5

**coalesced (1)**
26:10

**coda (1)**
29:19

**collateral (1)**
31:24

**colleague (1)**
20:5

**colleagues (2)**
11:23;12:3

**collective (1)**
60:23

**colloquy (1)**
48:25

**Columbia (4)**
30:3;55:22;75:18;
92:3

**coming (3)**
17:11;58:22;87:22

**comment (4)**
50:3,11;68:3,4

**comments (11)**
27:22;28:9;33:16;
46:2;48:23;51:14,22;
62:1;63:6;72:11;
82:16

**commissions (1)**
72:16

**Committee (45)**
3:6;7:14;8:3;11:20;
17:3,24;19:22;20:13;
23:3;25:1,2,22;26:23;
31:3;45:10,13,16,17;
47:16;48:10,14;49:9;
53:8;55:20;56:11;
60:24;61:1,4;62:8;
63:1;64:17;65:1,3,14,
18;67:2;70:6;71:3,14;
72:5;77:14;89:5;
90:25;91:20,25

**committee's (5)**
25:17;26:1;48:13;
57:22;72:6

**common (1)**
45:16

**communicate (2)**
17:11,12

**communicating (1)**
64:20

**communication (9)**
17:24;18:8,9;60:21;
62:5,6;64:16;74:2;
76:19

**communications (2)**
71:24;74:8

**companies (1)**
41:14

**company (1)**
49:19

**Compel (10)**
3:7;12:22;20:13;
61:15,21;65:1,15;
66:8;71:8;90:25

**compelling (1)**
54:18

**compensation (2)**
45:22;51:15

**complaint (4)**
18:2;32:1;77:9;

78:11

**complete (3)**
23:11;42:13;53:16

**completely (1)**
83:9

**compliance (2)**
20:23;50:6

**complicated (2)**
80:3,8;83:17

**complying (1)**
47:11

**comport (1)**
46:15

**conceive (2)**
24:7;54:2

**concept (1)**
32:22

**conceptually (1)**
39:13

**concern (13)**
19:16;25:6,17;
39:11,18,22;40:10;
55:19,19;56:2;57:23;
67:5;68:5

**concerned (4)**
58:8;64:16;68:13;
78:3

**concerning (1)**
78:25

**concerns (7)**
39:10;48:13;51:16;
55:2;58:2;71:17;
84:18

**conclude (2)**
58:7;77:25

**concluded (2)**
32:14;92:25

**conclusion (10)**
23:23,24;24:4,5;
30:21;33:1,21;46:17;
57:13;75:2

**conclusory (1)**
23:12

**condo (1)**
46:4

**condos (1)**
38:5

**conduct (4)**
42:25;45:18;77:21;
80:15

**conducted (1)**
42:24

**conducting (2)**
25:22;26:23

**Conference (8)**
3:2,20;4:3,6;13:3;
88:14;89:6;92:13

**confess (2)**
52:1;88:3

**confirmation (1)**
70:21

**confirming (1)**
49:8

23-12055-shl Doc 231 Filed 05/16/24 Entered 05/24/24 10:23:55 Main Document
In the Matter of: RUDOLPH W. GIULIANI
Pg 98 of 111

May 14, 2024

**conflict (1)**
36:4
**conflicts (2)**
46:12;51:16
**confusing (1)**
71:10
**connect (1)**
83:14
**connection (11)**
15:1;22:16;39:10;
47:6;51:9;52:25;54:7;
55:13;76:12;84:19;
85:19
**cons (1)**
81:10
**conscious (1)**
22:17
**consent (1)**
18:7
**consider (3)**
46:24;72:3;77:11
**consideration (1)**
54:14
**considered (2)**
46:24;77:3
**considering (1)**
32:3
**consistent (2)**
16:14;68:17
**constituencies (1)**
60:16
**constructive (1)**
45:19
**contain (1)**
92:1
**containing (1)**
20:19
**content (1)**
44:3
**contested (1)**
12:21
**context (8)**
35:23;37:7,12;
40:13,14,15;59:25;
75:25
**contingency (1)**
31:4
**continue (7)**
20:9;21:24;31:13;
47:23;48:13;74:9;
85:16
**continued (4)**
32:10;34:12;76:9;
81:1
**continues (2)**
42:25;48:8
**continuing (3)**
62:20;79:16;81:18
**continuum (1)**
88:22
**contract (1)**
26:15
**contrary (3)**

48:3;81:19;83:6
**conversation (7)**
28:23;40:23;66:7;
69:18,19;73:21;81:12
**conversations (10)**
34:20;44:24;50:23;
71:23,24;78:15;79:5;
82:11;84:6;85:17
**conveyed (1)**
70:15
**convinced (1)**
59:21
**copy (1)**
46:9
**corporate (1)**
65:9
**corporations (1)**
69:16
**corrections (1)**
66:15
**correctly (2)**
40:9;83:24
**costs (1)**
82:3
**Counsel (45)**
3:17;6:3;11:16;
13:1,15;14:5;16:5;
21:24;27:4;28:18,18;
34:14,16;37:22,22;
41:13;43:10;44:6,15;
45:4,24;49:3,13;
51:10;58:2;60:24;
62:7,24;63:5,21;64:7,
8,9,17;67:10;72:1,8;
75:11;76:2,19;78:13;
82:16,20;84:24;88:11
**counsel's (2)**
45:14;62:11
**counties (1)**
18:18
**counting (1)**
41:4
**couple (7)**
18:17;24:9;61:25;
67:13;72:10;79:17;
88:4
**course (7)**
16:8;30:1;36:13;
45:18;79:6,6;82:11
**Court (259)**
2:2;11:2,18,25;
12:6,16,19;13:11,14,
17,19,25;14:8,9,13,
22,23;15:2,3,8,8,11,
12,19,21,24;16:2,4,7,
13,15,16;17:7,20;
18:3,14,24;19:11,13;
20:2,11;21:2,24;22:2,
5,11,14,15,16,21;
23:2,7,22;24:1,4,14,
25:25,4,20,25;26:5,8;
27:20,22,23;28:1,5,6,
11,21,25;29:1,5,5,7,

10,14,19,25;30:9,19;
31:15,20;32:5,14,15;
33:2,7,10,12,15,19,
23;35:17,19,21,23;
36:7,11,14,23;37:5,
20;38:2,5,18,40:8;
39:2,5,8,15,18;40:8;
42:7,9;43:14;44:19;
45:4,7,9;48:1,2,8,16;
49:2,20,25;50:20,23;
51:5,8,12;52:1,5,19,
20,23;53:1,23;54:3;
57:18;58:8;61:13;
62:6,14;64:1,13,15,
25;65:13,23;66:3;
67:9;68:1,3,12;69:2,7,
10;70:4,23;71:2,11;
72:3,8,11,11,20,23,
25;73:1,4,15,16;74:7,
11,16;75:8,14,15,15;
76:4,11,14,25;77:6,7,
16,18,24;78:1,6,18,
19,24;79:2,4,10,23,
24,25;80:2,6,9,12,15,
18;81:4,6,17,22;82:2,
4,18,20,22;83:4,5,8,
14;84:3,6;85:5,18,24;
86:8,9,13,16,19,23;
87:2,5,9,11,13;88:1,3,
11,15,21;89:2,11,13,
17,22;90:18,20,22;
91:1,4,10,18,22;
92:14,16,18,21
**courthouse (2)**
12:17;15:14
**court-retained (1)**
38:11
**courtroom (1)**
12:8
**Courts (1)**
86:21
**Court's (5)**
33:21;45:16;63:10;
69:9;83:15
**covered (2)**
33:18,19
**create (2)**
21:9;81:10
**creates (1)**
62:22
**creditor (2)**
17:4;22:24
**Creditors (23)**
3:7;7:15;8:4;17:2,3,
24;19:22;22:13,25;
23:1;24:23,24;26:23;
27:13;31:10;44:22;
45:13;47:22;49:9;
56:10,16;65:18;90:24
**creditors' (2)**
47:25;48:7
**critical (2)**
47:16;57:25

**cross (1)**
58:23
**cut (1)**
75:11

## D

**daily (1)**
74:5
**Dallas (1)**
7:18
**damages (1)**
82:10
**DANIEL (1)**
10:10
**DANOVITCH (2)**
8:8;11:24
**dark (1)**
17:17
**data (2)**
74:22,25
**date (8)**
60:12;71:17;84:8;
85:24;88:7,13;89:14,
15
**dates (2)**
47:10;88:22
**DAVIDOFF (2)**
8:14,15
**day (9)**
34:10;41:2;43:1;
45:25;52:13;62:7;
66:6;86:2;90:25
**days (7)**
48:1,8;71:19,19,19;
73:11;88:16
**DC (11)**
3:13;7:6;9:22;
14:13;27:23;28:25;
36:2;52:25;56:9;77:6;
78:19
**deadline (3)**
14:20;34:21,23
**deadlines (2)**
14:21;47:12
**deal (12)**
39:23;40:13,14;
43:23,24;44:1,2,6,21;
46:2;75:25;79:17
**dealing (2)**
57:6;63:4
**dealt (2)**
36:19;40:18
**debate (1)**
82:6
**Debtor (104)**
3:7,12;6:3;11:8,11,
14;14:10,14,19;15:5,
18;16:18,23;17:16;
18:12,22;19:1,4,23;
20:10,13,18,24;21:4,
10,19,20;22:1,3,22;
23:25;25:8,12;26:2,

12,12,20;27:8,12;
29:6;30:12,20;32:10,
23;36:5;42:10;43:3;
45:15,20,21,24;46:5,
6,9,10;47:7,10,18,18,
23;48:2,4,11,18;49:6,
18;50:13,14,17;
52:24;53:3,4,21,24;
54:11;55:14,20,22;
56:5,25;57:16,23;
59:14;60:23;62:22;
64:1,2;65:9;66:1,13;
67:12,15,21;69:17,22;
71:9;78:3,8,10,12,22;
82:13,19;91:7
**debtor-in-possession (2)**
34:8;67:17
**debtors (7)**
18:10;38:14;40:21;
56:21;63:5;65:7;
90:14
**debtor's (52)**
13:12;14:4,5,7;
15:17;16:21;17:2;
19:9;21:1;22:10,12;
23:1,17;31:13;32:3;
33:19;34:14,16;
37:22,22;41:13;
43:10;45:14,22,24;
46:13,16,23;47:17;
48:15;49:14;53:10;
54:19,23,25;55:9,18;
56:8,23;57:11,16;
61:15;62:7,11,24;
63:5,15,21;64:8;74:9;
77:21;84:24
**decided (1)**
82:4
**decision (6)**
22:17,23;33:7,9;
79:9;80:9
**decisions (1)**
81:8
**declaration (3)**
51:8,22,23
**defamation (2)**
32:11;34:12
**defamatory (3)**
32:24;34:10;81:17
**defamed (1)**
41:2
**defaming (2)**
41:9;78:3
**defending (2)**
55:15,23
**deficiencies (1)**
65:21
**definitive (1)**
50:1
**delay (4)**
43:20;47:19;48:7;
57:25
**delaying (3)**

23-12055-shl    Doc 231    Filed 05/16/24    Entered 05/24/24 10:23:55    Main Document
In the Matter of: RUDOLPH W. GIULIANI          Pg 99 of 111

May 14, 2024

27:21;47:24,25
**delays (2)**
62:13;67:23
**deliberately (1)**
35:15
**Delinquent (2)**
3:8;20:14
**deliver (1)**
41:19
**delving (1)**
28:11
**denied (5)**
14:12;36:1;41:22;
48:15;61:6
**denying (1)**
91:23
**Department (2)**
9:3,11
**desire (1)**
80:1
**detail (1)**
53:9
**details (2)**
15:15;75:21
**determination (1)**
30:13
**determine (1)**
24:22
**determining (1)**
24:21
**dies (1)**
42:20
**DIETRICH (1)**
10:9
**difference (1)**
60:19
**different (12)**
15:21;29:17;39:9;
44:21;50:5;55:6;
56:20,22;62:1,2;
64:23;90:9
**differing (1)**
74:5
**difficult (2)**
63:23;80:2
**difficulties (1)**
81:11
**direct (2)**
80:22;81:12
**direction (3)**
29:17;35:14;77:15
**directly (1)**
63:5
**dischargeability (2)**
50:17;57:5
**disclosed (1)**
20:8
**disclosure (4)**
19:14;47:12;86:11;
91:6
**discovery (2)**
19:25;26:24
**discuss (5)**

32:17,17;77:14;
85:4;88:2
**discussed (2)**
68:8;76:8
**discussing (1)**
80:23
**discussion (9)**
18:16;29:21;31:8;
49:10;50:21;60:2;
74:14;78:14;79:21
**discussions (5)**
31:3;50:18;78:13,
23;79:20
**dismissal (1)**
41:6
**dispute (1)**
92:8
**disputed (1)**
84:1
**disputes (1)**
75:17
**disregard (1)**
80:12
**distract (3)**
47:18,18;57:23
**distracted (1)**
55:24
**distress (1)**
78:4
**distributions (1)**
31:12
**District (40)**
11:4;14:13;15:2,8,
12;22:15;24:1;27:23;
28:1,6,25;29:5,5,25;
30:3;32:14;33:9;
42:25;52:25;53:23;
54:3;55:22;57:18;
75:18;76:15,16;77:6;
78:19;79:9,24;80:2,5,
9,12,14;81:4;82:4;
83:14,15;92:3
**disturbed (1)**
35:17
**disturbing (1)**
32:9
**dive (3)**
17:7;23:8;25:6
**Doc (7)**
3:4,6,11,16,23;4:3,6
**docket (2)**
12:21;20:17
**document (1)**
49:8
**documentation (1)**
71:10
**dollars (4)**
35:5;37:24,25;
41:14
**done (15)**
12:9;18:21;21:7,10,
19;35:12;37:23;
54:11;55:25;59:7;

67:22;68:16,16;
72:15,19
**double (1)**
41:3
**double-duty (1)**
92:5
**doubt (1)**
56:4
**down (6)**
15:14;19:10;40:4;
69:20;74:14;85:9
**drafted (1)**
44:25
**dramatic (1)**
77:21
**drive (1)**
86:12
**DUBLIN (6)**
8:9;11:23;89:4,4,
12,16
**duck (2)**
43:8,9
**due (2)**
12:14;31:19
**DUNPHY (1)**
10:3
**duplication (1)**
52:8
**During (3)**
35:8;43:5;48:24
**duties (1)**
47:13
**dwindling (2)**
43:23,24

**E**

**earlier (4)**
46:3;74:13;83:8;
88:24
**easier (4)**
49:21;55:16;87:3,
10
**easy (3)**
50:4,4;63:22
**Ebanks (1)**
88:21
**economy (1)**
57:8
**ECRO (1)**
2:15
**efficiency (1)**
59:2
**effort (2)**
49:18;51:1
**eggs (1)**
42:22
**eight (1)**
72:14
**EILEEN (1)**
10:13
**either (2)**
66:16;68:25

**elephants (2)**
30:2;32:6
**eliminated (1)**
17:4
**else (15)**
12:7;25:7;45:4;
47:11;48:17;71:14;
72:5,6;75:11;76:2,6;
90:15;91:7,11,20
**email (5)**
45:24,24;74:4;85:1,
7
**emailed (1)**
21:13
**emergency (1)**
36:16
**emotional (2)**
78:4;83:10
**emphasized (1)**
21:18
**Employ (2)**
3:16;58:2
**employees (1)**
39:18
**employers' (1)**
35:16
**employing (1)**
41:10
**employs (1)**
39:22
**enable (2)**
47:19;63:17
**encompassed (1)**
14:19
**encourage (2)**
17:12;80:5
**end (7)**
13:14;21:14;24:8;
60:13;63:8;76:7;
85:10
**ends (1)**
43:2
**enforceable (1)**
83:3
**ENID (1)**
9:8
**enough (5)**
21:18;67:18;71:21;
73:5;78:6
**enter (2)**
66:18;78:1
**entered (3)**
25:11;78:5;85:2
**entire (1)**
35:7
**entirely (1)**
90:20
**entities (3)**
62:20,21;65:10
**equitable (1)**
57:2
**errors (1)**
19:7

**eScribers (1)**
4:21
**escrow (1)**
26:23
**especially (1)**
69:21
**ESQ (20)**
6:7,16,17,18,19,20;
7:8,9,10,20;8:8,9,10,
11,19,20;9:7,8,16,24
**essence (1)**
29:18
**essentially (3)**
54:10;56:18;72:4
**establishes (1)**
42:1
**establishing (1)**
55:12
**estate (5)**
17:2;23:1;27:13;
39:20;55:17
**estop (1)**
29:6
**estoppel (1)**
31:25
**et (4)**
3:19,22;4:2,5
**eternal (1)**
56:18
**EULMESSEKIAN (1)**
8:10
**evaluate (1)**
42:2
**EVAN (1)**
10:11
**even (11)**
29:23;30:22,22;
31:22;39:11,21;
40:22;50:25;53:18,
21;59:7
**event (1)**
47:21
**events (3)**
15:1;43:16;55:10
**Everybody (5)**
43:9;70:6,20;71:1,
22
**everybody's (2)**
84:4;85:19
**everyone (2)**
12:17;34:13
**everything's (1)**
83:22
**evidence (1)**
33:2
**exact (1)**
28:19
**Exactly (4)**
34:24;48:13;61:16;
67:10
**examination (1)**
19:23
**exceedingly (2)**

28:1;46:14

**except (1)**
64:9

**exchanged (1)**
85:1

**exclusion (2)**
54:11;75:3

**exclusively (1)**
47:9

**exclusivity (1)**
35:11

**excuse (2)**
40:20;57:24

**exempt (1)**
46:3

**exercise (1)**
50:17

**exists (2)**
37:7;55:16

**exit (3)**
44:8;45:2;46:17

**expect (4)**
70:10;83:5,20;84:5

**expedite (1)**
89:12

**expedited (1)**
22:18

**expeditious (2)**
57:9,12

**expense (2)**
40:1;77:23

**experience (2)**
25:12;74:16

**expiring (1)**
14:12

**explain (1)**
67:19

**explained (1)**
62:14

**explaining (1)**
64:18

**explanation (1)**
57:10

**extend (1)**
35:11

**extension (1)**
34:22

**extensive (1)**
27:25

**extent (6)**
31:9;65:25;66:22,
23;85:8;89:25

**extra (1)**
86:1

**extremely (1)**
64:20

**eyes (1)**
27:5

**F**

**face (1)**
47:22

**faced (1)**
14:21

**facing (1)**
14:20

**fact (6)**
17:15;21:11;29:24;
57:12;64:13;82:14

**factor (23)**
24:21;40:7;42:12;
47:6,15;53:20;54:7;
55:8,11,13,14,16,19;
56:13,16,17;57:1,6,8,
14,19,20;58:7

**factoring (1)**
56:6

**factors (22)**
23:10;24:13,20,22;
37:17;38:20;39:1,4,6,
12,17;40:12,15;42:2,
4;46:11,14;47:4;53:9,
14;55:7;59:24

**facts (13)**
28:15;32:7,8,18;
56:1;61:7;81:15,18;
83:11,13,18,24;84:1

**factual (1)**
28:17

**failed (1)**
46:10

**fair (9)**
22:15;25:21;30:12;
46:19;50:15;67:9;
71:11,13;78:6

**fairly (8)**
23:11;50:3,4,4,10;
74:5;83:12;88:8

**faith (2)**
27:9;51:1

**fake (1)**
36:16

**familiar (1)**
16:12

**fancy (3)**
38:5,14;41:8

**far (10)**
21:9;47:7;51:23;
52:21;64:15,20;
72:12;74:2;78:2;89:2

**FARR (4)**
6:10;7:2;12:3;34:2

**fast (1)**
70:2

**fat (2)**
41:8;70:10

**fatal (1)**
46:10

**favor (2)**
53:20;90:10

**fear (1)**
27:17

**February (2)**
18:16;73:8

**federal (1)**

79:9

**fee (1)**
52:9

**feel (1)**
85:21

**fees (1)**
44:4

**feet (1)**
61:4

**FELD (5)**
7:13;8:2;11:22;
45:12;65:17

**few (4)**
14:2;45:20;54:15;
63:14

**fiduciary (4)**
47:13;55:9,9,10

**Field (1)**
7:16

**fights (1)**
48:11

**figure (6)**
52:2;66:4;69:20;
75:25;76:20;81:24

**figured (1)**
52:6

**File (14)**
3:8,8;13:11;14:10,
10,16,19;18:4;20:13;
38:10;44:11;50:18;
69:23;85:21

**filed (36)**
12:20;13:15,22,23;
14:18;17:15;18:4,17;
19:5;21:8,14,17,22;
22:5;31:18;32:2,2;
36:3;45:15;46:5;
49:20;51:2,22,25;
53:7;60:17;65:10,11,
21,24;67:16;72:24;
76:5;77:24;80:10;
91:13

**filing (8)**
12:23;14:24;15:11;
19:19;26:11;62:13;
63:4;85:14

**fill (1)**
42:17

**final (10)**
23:18,20;24:12,14,
16,18;30:14,17,21;
75:2

**finality (1)**
81:5

**finally (3)**
26:5,10;67:25

**Finance (1)**
9:3

**finances (1)**
19:4

**financial (4)**
18:12;19:17;20:4,
23

**find (7)**
11:8,19;12:7;36:17;
60:12;79:4;86:7

**finding (2)**
28:14;79:15

**findings (4)**
28:17;29:4,24;
32:25

**fine (15)**
12:17;68:4;70:23,
24;83:22;85:5,6,8,18,
24;87:6,9,11;89:6;
90:2

**fired (1)**
35:16

**firm (1)**
64:5

**first (15)**
13:6;14:1;19:14;
23:14;37:22;41:17;
42:3;43:7;46:9;49:4;
53:12;73:7;76:15;
80:4;82:8

**Fischoff (67)**
11:10,12,13,13;
14:6;15:7,10,17,23;
16:1,6,11;17:23;18:6,
21;19:12,22;20:5;
21:25;22:7,12,20;
23:6,14;24:3,11,19;
25:2,18,21;26:4,7,9;
27:21;28:4,10,13;
29:3,9,12,16;30:8,10;
31:1,17;32:22;33:6,
11,14,18;49:4;50:12,
21,25;51:11,21;52:4,
8,20;73:24;78:10;
88:19;89:1;90:21,24;
91:2,14

**fit (3)**
31:16;37:16;38:20

**fitting (1)**
61:18

**five (3)**
37:24;45:25;71:19

**fix (1)**
21:7

**fixed (5)**
47:10;68:23,25,25;
69:4

**flag (1)**
91:17

**flaws (1)**
46:10

**flexible (1)**
30:15

**flip (1)**
55:1

**floating (1)**
51:19

**Florida (3)**
31:8;34:6;46:4

**flout (1)**

79:11

**flouting (1)**
35:16

**focus (12)**
19:14;47:8,9;54:25;
55:4;56:24,24;67:10;
71:4;75:3,3;82:9

**focusing (2)**
42:21;55:21

**folks (3)**
25:1;86:2;89:2

**follow (1)**
71:5

**followed (1)**
15:1

**following (3)**
24:10;46:1;76:12

**foot (1)**
12:15

**forever (3)**
40:18;45:2;46:21

**form (7)**
24:8;41:21;55:5;
57:10;70:13,14,18

**forms (1)**
90:9

**forth (4)**
34:18;52:9;67:24;
72:21

**forum (2)**
56:15,23

**forward (27)**
13:15;15:13;21:16,
21;31:5;39:23;43:15,
15;46:22;50:2,13;
53:6;56:19;58:12;
59:6,9,11,23;60:5,16;
61:4;63:10;73:19;
74:10;75:4;78:16;
90:2

**found (3)**
28:1;46:21;81:17

**four (3)**
35:10;41:15;44:16

**fracture (2)**
12:15,15

**framed (1)**
56:5

**frankly (4)**
46:15;53:10;75:1;
77:13

**free (4)**
22:3,9;44:17,18

**freedom (1)**
44:3

**Freeman (45)**
3:13,19,22;4:2,5;
6:11;7:3;12:1,4;18:1;
22:9;23:3,15;27:16;
34:2;47:10;48:5;53:8;
55:20;56:14;58:13,
20;60:25;62:9;63:2,
16;70:6;76:10,11,21;

77:1,24;78:2;79:18;
80:25;82:23;83:2;
84:17,21;85:14;86:7;
87:24;89:18;91:11,25
**freemen (3)**
26:19,25;44:22
**fresh (1)**
27:5
**Friday (13)**
41:2;81:13,22;84:6,
14;85:9,17,25;91:14,
15;92:13,16,19
**Friday's (1)**
92:14
**front (3)**
53:23;81:3;84:16
**fulfilling (1)**
34:7
**full (5)**
30:12;46:18;49:21;
50:15;55:15
**fully (2)**
58:3;81:25
**fulsome (1)**
53:11
**fund (3)**
47:23;69:16,24
**fundamental (2)**
16:25;26:20
**funding (1)**
51:17
**further (15)**
16:15,16;23:19;
30:7,14;47:19;51:24;
52:22;54:2;57:25;
74:23;77:11;78:23;
82:24;88:2
**Future (3)**
3:9;44:2;65:24

## G

**GAGION (1)**
9:7
**gain (1)**
28:11
**GALLAGHER (4)**
6:10;7:2;12:3;34:2
**garden (1)**
30:4
**garden- (1)**
30:10
**Gary (1)**
11:13
**gear (1)**
81:25
**GENERAL (1)**
9:2
**generating (1)**
26:17
**GEOGHEGAN (1)**
10:4
**GERSTEIN (1)**

10:5
**gets (3)**
69:15;71:9;87:17
**girlfriend's (1)**
44:17
**Giuliani (16)**
3:7,19,22;4:2,5;
11:6;34:5,11;35:14;
41:1;44:5;54:3;59:16;
65:8;81:16;82:9
**Giuliani's (2)**
62:19;76:9
**given (13)**
20:25;27:23;29:23;
45:1;53:22;57:4;
59:23,24;60:7;77:4,
22,23;82:3
**gives (2)**
22:22;71:21
**giving (3)**
40:19;69:18;88:22
**GLUCKSMAN (1)**
8:19
**goal (3)**
21:17;40:24,24
**goes (6)**
42:4;52:21;56:19;
69:17;70:1,2
**GOLDEN (1)**
10:6
**Good (22)**
11:3,9,12,15,18,21,
25;12:2,6,16;14:6;
27:9;34:1;35:3;45:11;
51:1;64:3,17;75:23;
76:23,23;92:22
**Goodman (2)**
11:10,13
**GORREPATI (1)**
10:7
**GOTTLIEB (1)**
7:8
**govern (1)**
36:17
**GOVERNSKI (1)**
7:9
**grant (1)**
60:1
**granted (4)**
15:4,17;18:10;
31:22
**granting (1)**
57:19
**great (1)**
79:21
**Green (2)**
2:3;9:13
**grounds (1)**
16:20
**Group (2)**
10:8
**guess (10)**
20:22;26:6;33:15;

38:18;40:10;52:18;
55:5;66:25;88:12,13
**guidance (1)**
45:16
**GUMP (6)**
7:13;8:2;11:22;
45:12;65:17;89:4
**guy (2)**
39:24;43:22

## H

**half (1)**
73:9
**hamster (1)**
48:10
**hand (1)**
27:18
**handle (5)**
50:4;56:22;65:15;
66:7,12
**handled (1)**
56:21
**hang (1)**
14:2
**happen (12)**
17:20;22:18;27:17;
30:24;31:7;36:1,1;
56:6,17;60:22;73:13;
81:1
**happened (6)**
28:25;35:9;58:18;
61:17;68:18;83:1
**happening (5)**
25:7;37:15;41:7;
73:4,5
**happens (4)**
15:3,24;56:8;77:22
**happy (7)**
38:25;39:4;67:2;
77:11;85:2,25;87:25
**hard (1)**
24:7
**harder (2)**
34:25;49:23
**harm (1)**
57:21
**harmed (1)**
38:3
**harms (1)**
47:16
**HARRISON (1)**
10:8
**HAUER (5)**
7:13;8:2;11:22;
45:12;65:17
**heads (2)**
45:15;84:3
**hear (11)**
12:16;36:25;41:11;
48:17;49:1;55:12;
67:2;69:11;74:3;
76:21;78:8

**heard (10)**
17:15;18:14;30:13;
41:13;50:16;61:20;
63:21;71:4;82:13;
84:24
**hearing (19)**
11:5;12:11;18:24;
27:5;31:20;33:21;
46:1,3;54:22;60:14;
71:17;73:8;79:18;
80:14;81:13,19;
84:10;86:10;87:1
**hearings (3)**
20:22;70:21;73:16
**hears (1)**
49:1
**heart's (1)**
44:3
**Heath (5)**
11:9;13:9;20:7;
67:14;78:9
**held (1)**
19:23
**help (3)**
53:6;59:8;90:1
**helpful (5)**
65:23;66:11;84:11;
86:3;90:6
**hey (2)**
36:3,9
**hide (4)**
20:12;35:1;38:5;
40:5
**hiding (2)**
34:5;39:24
**high (1)**
54:1
**highlight (1)**
47:5
**highly (1)**
37:6
**himself (3)**
42:24;43:1;47:8
**hinted (2)**
68:8;89:9
**hit (1)**
40:7
**hold (2)**
43:2;61:13
**holding (1)**
56:18
**homes (2)**
34:6;38:9
**HON (1)**
2:12
**Honor (85)**
11:9,12,15,21;12:2,
12,14,18;13:9,24;
14:6;18:8;20:7;21:6,
22;24:19;29:17;34:1,
14;35:4,25;36:17;
38:17;41:19;42:4;
43:6;45:6,11;47:3;

48:21,25;49:1,4;
51:21;61:12,23,25;
62:2,3,5;63:3,4,14;
64:11,13;65:5,16;
67:4,14;69:1,5;70:25;
72:2;74:2;75:7,13;
76:3,24;77:12,25;
78:9,11,20;80:17;
81:21;82:17,25;
84:20;85:3,12;86:25;
87:6,19,23;89:4,6,9,
16,21;90:17;91:8,12,
21;92:24
**honoring (1)**
21:2
**Honor's (1)**
63:6
**hoops (1)**
50:8
**hope (4)**
19:6;28:11;33:14;
63:6
**hopeful (1)**
31:6
**hopefully (6)**
21:19;26:21;71:21;
82:20;84:14;92:5
**hopes (2)**
26:13,16
**hoping (1)**
70:1
**horizon (1)**
26:16
**horrible (1)**
83:17
**hours (3)**
80:23,24;87:1
**hundreds (2)**
35:5;41:14
**HUTCHER (2)**
8:14,15

## I

**ice (2)**
36:21;40:17
**idea (4)**
32:22;33:8;71:18;
75:20
**identified (2)**
57:22;63:1
**identify (1)**
66:17
**identifying (1)**
84:17
**ignores (1)**
56:9
**ignoring (2)**
45:16;47:11
**II (1)**
3:8
**imagine (1)**
42:24

23-12055-shl    Doc 231    Filed 05/16/24    Entered 05/24/24 10:23:55    Main Document
In the Matter of: RUDOLPH W. GIULIANI    Pg 102 of 111

May 14, 2024

**immediate (2)**
30:17;53:18
**impact (8)**
17:5;31:21;47:15;
54:19,24;55:17;
57:20;77:22
**impacted (1)**
31:25
**impacts (1)**
58:8
**impediment (2)**
44:5;60:9
**impediments (2)**
79:24;81:11
**importance (1)**
51:7
**important (5)**
16:18,21;60:15;
84:4;85:20
**impossible (1)**
54:2
**improperly (1)**
79:15
**inability (1)**
62:12
**inaccuracies (1)**
20:19
**inaccurate (2)**
19:18;66:16
**inappropriate (1)**
37:15
**include (4)**
12:22;60:5,6;77:9
**including (3)**
24:22;43:10;47:11
**income (16)**
26:14,17;43:23,24;
67:6,6,8;69:12,13;
70:4,7,10,16;71:5,6,9
**inconsistent (1)**
32:13
**incredibly (1)**
27:22
**Independent (1)**
10:12
**indeterminate (1)**
54:4
**indicated (1)**
46:4
**individual (3)**
49:23;62:10;65:9
**inefficient (1)**
90:11
**inflammatory (1)**
37:7
**inflicting (1)**
78:4
**information (10)**
19:2,17;20:10,19;
59:5,7;63:24;70:14,
18;85:13
**initial (2)**
20:3;46:11

**injunction (2)**
76:10;78:1
**injunctive (2)**
77:5;84:24
**input (2)**
26:10;27:10
**inquiring (1)**
92:2
**inquiry (1)**
42:13
**insight (1)**
51:7
**instance (2)**
54:18;80:4
**instances (1)**
25:10
**instead (2)**
38:4;46:25
**insurer (1)**
55:14
**integrity (1)**
48:4
**intellectual (1)**
38:24;79:21
**intends (2)**
26:21;51:13
**intent (1)**
88:7
**intention (2)**
31:14;70:17
**intentions (1)**
48:9
**interest (4)**
27:12;57:8;59:2;
61:20
**Interested (1)**
9:20
**interesting (3)**
54:8;68:15;74:13
**interfere (1)**
61:3
**interference (3)**
47:7;54:7;55:3
**interfering (2)**
54:9;59:18
**internally (2)**
77:3;78:17
**interrelate (1)**
58:9
**interrelated (1)**
20:16
**interrupt (1)**
42:9
**into (16)**
17:7;23:8;25:6;
26:10;28:12,24;
29:10;31:16;38:20;
39:25;41:9;42:12,13;
45:19;50:6;52:14
**invaluable (1)**
76:19
**investigation (1)**
25:22

**investment (2)**
50:6,6
**involve (1)**
85:13
**involved (3)**
18:25;35:5;45:17
**involves (1)**
56:13
**involving (1)**
55:8
**ION (1)**
10:8
**ironic (1)**
55:1
**issue (20)**
16:25;18:20;19:9;
23:21;28:16,20,22;
37:16;61:1;62:16;
66:10;71:13;72:12;
79:7;80:20;81:14,24;
82:5;84:1;92:8
**issued (4)**
14:24;15:1;16:7;
25:24
**issues (36)**
18:11;20:16;23:9;
29:6,15;36:5;47:17;
48:24;49:15;51:20;
52:8;53:16,19;60:10;
62:8,15;64:14;67:14,
23;68:5;71:20,22,25;
72:15,16,22,22;75:9;
79:22;80:23;81:4;
84:18;85:20;87:15;
89:7;91:5
**item (3)**
63:16;84:22;87:20
**items (1)**
13:2

**J**

**JAMES (2)**
6:17;8:19
**January (1)**
73:8
**jeopardize (1)**
39:20
**Jim (1)**
12:4
**job (1)**
67:8
**Joe (2)**
18:22;49:5
**joined (1)**
11:23
**JOSHUA (1)**
10:5
**Journal (1)**
10:15
**JUDGE (28)**
2:13;11:4;21:9,16,
17;28:13;40:11;64:6;

67:13,15,18,19,20;
69:6,14,22;70:19;
72:18;76:15;79:9,12;
85:21;86:10,18;87:7;
88:12,25;92:12
**judged (1)**
32:24
**judges (2)**
66:9;68:15
**judgment (24)**
16:22;23:17,20;
25:11;26:19;27:1,1,2;
29:5;31:18,22,24;
43:16;46:19,20;
54:16;57:1,15;58:14,
17,22;63:16;76:1;
84:23
**judgment's (1)**
53:25
**judicata (1)**
31:25
**judicial (2)**
57:7,8
**jump (2)**
50:7;52:14
**June (2)**
88:8,18
**JUSTICE (1)**
9:11

**K**

**KCL (1)**
12:25
**keep (4)**
16:9;24:14;79:1;
90:8
**KELLY (1)**
10:12
**Kenneth (6)**
3:16;6:2,7;9:24;
11:15;13:1
**key (2)**
19:17;20:19
**kidding (1)**
34:19
**kind (14)**
17:19;21:20;27:24;
28:2,5;29:1;30:5;
34:4;57:24;67:10;
75:13;76:14;78:16;
79:7
**kinds (3)**
48:3;61:20;75:9
**KNAUTH (1)**
10:9
**knows (4)**
13:17;21:20;49:20;
62:3

**L**

**la (1)**

33:3
**Labrowski (1)**
52:11
**lack (2)**
39:9;60:21
**lag (1)**
82:5
**LANE (2)**
2:12;11:3
**language (3)**
51:17;92:1,8
**languish (1)**
92:10
**large (5)**
17:4;26:18;35:6;
38:16,17
**laser-like (1)**
75:3
**last (8)**
18:14,15;26:15;
31:19;34:21;41:3;
59:20;72:14
**later (7)**
31:23;33:16;34:17;
60:2;61:8;63:7;88:24
**LATHROP (1)**
10:10
**Law (16)**
3:16;6:2;10:11;
13:1;16:12,12;28:15,
16;32:15;33:3,4;
46:13;79:11,13;
80:11;84:1
**Law360 (2)**
10:4,14
**lawsuit (1)**
32:12
**lawyering (1)**
41:18
**lead (2)**
23:10;66:5
**learn (1)**
48:11
**least (4)**
17:24;19:19;63:17;
82:13
**leave (3)**
50:20;84:8,11
**leaves (1)**
13:5
**led (1)**
51:14
**leg (2)**
22:12,24
**legal (1)**
44:4
**legitimate (2)**
27:6;56:2
**length (1)**
29:21
**LEO (1)**
9:7
**less (4)**

23-12055-shl    Doc 231    Filed 05/16/24    Entered 05/24/24 10:23:55    Main Document
In the Matter of: RUDOLPH W. GIULIANI        Pg 103 of 111

May 14, 2024

28:5;53:11;70:2;
75:1
**Letter (8)**
4:3;45:22;46:5,6;
70:5,12,19;71:20
**letters (1)**
67:18
**level (1)**
17:11
**liabilities (3)**
19:17;20:4;41:4
**liability (1)**
82:10
**Liberty (1)**
9:4
**lickety- (1)**
44:6
**lien (1)**
57:7
**life (1)**
38:1
**lifestyle (1)**
47:24
**lift (17)**
13:5;14:1;17:16;
32:20;33:17;35:24;
37:12;38:19;39:20;
52:24;53:5,12;55:16;
58:6;59:15;81:3;82:8
**lifted (2)**
15:12;59:22
**lifting (5)**
17:1;38:21;53:20;
57:11;60:8
**light (3)**
29:25;71:4;77:18
**likely (1)**
30:18
**Limited (2)**
3:12;47:23
**line (3)**
22:22;74:8,10
**lined (1)**
26:13
**lines (2)**
77:12;89:9
**liquidation (1)**
31:6
**list (1)**
42:2
**listed (3)**
13:2;70:1;88:23
**listen (1)**
41:1
**lists (1)**
12:21
**litigate (2)**
47:21;83:11
**litigating (2)**
56:15,23
**Litigation (28)**
3:17;15:4;38:7;
39:19;40:16,19;

47:10,10;52:24;
53:21;54:19;55:3,3,
21,23,23,24;56:14;
57:9,12;58:13,18,23;
59:1,3,4;75:17;81:25
**little (16)**
17:3;25:7;26:1;
27:11;29:16;39:8;
45:14;49:24;62:1;
63:18;70:22;71:9;
74:1;78:17;79:13;
87:10
**live (6)**
38:13;40:18;41:15;
44:13,13;68:24
**living (1)**
34:6
**LLC (4)**
3:16;4:21;6:2;13:1
**LLP (7)**
6:10;7:2,13;8:2,14,
15;9:19
**logic (1)**
46:15
**logical (1)**
43:16
**logically (1)**
76:6
**LOISON (1)**
6:18
**long (11)**
24:18;37:23;44:23;
47:20;48:7;56:2;
62:19;67:18;73:5;
78:4;87:7
**longer (4)**
72:18;75:2;82:11,
12
**look (11)**
23:9;25:1;27:5;
34:18;37:11;67:1;
73:2;74:20;79:13;
87:16;89:12
**looking (7)**
19:7,20;20:5,12,20;
43:8;73:7
**looks (2)**
43:8;56:22
**loop (4)**
58:6;71:3;87:16;
90:8
**loose (1)**
76:7
**lose (3)**
24:5;40:3;42:5
**loses (1)**
30:13
**losing (1)**
38:1
**loss (2)**
42:3,3
**lost (2)**
26:14,17

**lot (30)**
17:16;18:8;20:16;
21:1;25:17;26:9,19;
27:7;28:2,2,5;34:23;
35:2;36:22,25,25;
37:5;41:7,18;42:15;
49:19;50:8;58:12;
63:13;64:3;69:21;
72:15,18;80:18;90:8
**lots (2)**
75:19,23
**loud (2)**
68:21;84:4

---

# M

**MACCURDY (1)**
7:10
**machinations (1)**
40:19
**machine (1)**
82:1
**MAGGIE (1)**
7:10
**mail (1)**
41:20
**main (1)**
63:16
**maintenance (1)**
69:25
**major (1)**
26:20
**makes (9)**
13:5;20:17;23:20;
32:10;48:12;50:5;
55:16;76:13;87:8
**making (7)**
27:8;34:9;41:11;
47:13;49:18;66:3;
81:16
**malicious (1)**
38:4
**man (2)**
44:21;45:1
**Management (1)**
3:2
**Manichean (1)**
68:24
**manner (2)**
39:3;63:11
**March (1)**
73:8
**MARINE (1)**
6:18
**market (1)**
70:1
**marrying (1)**
40:9
**marshaled (1)**
31:3
**marshaling (1)**
31:12
**matter (7)**

14:25;21:11;27:16;
40:4;61:11,14;84:1
**matters (3)**
12:21;13:7;61:9
**maximize (1)**
34:8
**maximizing (1)**
34:9
**May (33)**
2:6;14:20;15:12;
16:2;22:1;23:7,16;
24:11,19;25:18;26:5;
27:7;31:11;32:25,25;
36:8;41:6;51:6;52:17;
59:20;60:2;65:5;
66:22;74:5;77:24;
79:24;82:14,25;
85:21;87:23;88:1,6;
89:10
**maybe (8)**
15:23;19:24;20:15;
30:13,14;52:15;87:1;
91:5
**mean (35)**
15:8;19:3;24:5;
26:5,18,25;27:1,10;
28:7;29:10,11,19;
30:6;31:8;35:23;
42:13;43:6;50:7;
51:10;52:14;57:17;
58:14,20;66:4;69:7;
74:2,3,5;79:14;80:8,
13;81:2;82:2;86:1;
87:2
**meaning (1)**
58:22
**meaningful (5)**
42:15;66:11,19;
85:25;86:1
**means (12)**
24:15,16;30:23;
38:19;46:25;48:7;
57:18;58:13,15;
84:12;89:13;92:4
**meantime (1)**
87:18
**mediate (1)**
75:17
**mediation (4)**
25:15;26:25;27:1;
37:9
**mediations (1)**
75:19
**mediators (1)**
75:23
**meet (3)**
40:11;41:22;46:10
**meeting (1)**
63:1
**mention (1)**
54:12
**mentioned (3)**
59:9;87:22,23

**mentions (2)**
53:13,15
**meritorious (1)**
16:20
**MERYL (1)**
7:9
**message (1)**
17:13
**met (2)**
39:17;41:23
**MICHAEL (1)**
7:8
**microphone (2)**
39:25;41:9
**middle (3)**
70:20,23;71:1
**might (10)**
17:7;24:24;25:6;
37:7;60:5,6;63:12;
85:15;91:16;92:2
**milestones (1)**
60:3
**million (3)**
36:20;37:24,25
**millions (2)**
35:5;41:14
**mind (3)**
22:21;34:19;92:2
**minimize (1)**
67:20
**minute (2)**
25:5;34:21
**misreading (1)**
13:4
**missed (1)**
52:7
**missing (6)**
19:17;20:19;66:16;
80:6,16;83:13
**mistakes (2)**
48:12;62:13
**misunderstanding (2)**
68:21;81:15
**modifications (1)**
62:25
**modified (4)**
14:14;22:1;32:25;
46:20
**modify (4)**
12:24;14:7,9;65:20
**Modifying (3)**
3:11;46:12;57:4
**moment (4)**
49:15;52:22;58:6;
61:10
**Monday (2)**
13:23;78:12
**monetize (1)**
50:5
**monetizing (1)**
60:7
**money (13)**
26:22;35:15;40:6;

23-12055-shl    Doc 231    Filed 05/16/24    Entered 05/24/24 10:23:55    Main Document
In the Matter of: RUDOLPH W. GIULIANI         Pg 104 of 111

May 14, 2024

41:11;43:25;69:15,
22,24;70:2;80:19;
82:1;83:10;85:19
month (1)
13:14
Monthly (10)
3:8,9;12:23;20:14;
65:2,20,24;66:15;
67:6;70:12
months (1)
73:9
MOR (1)
91:13
more (22)
21:13;25:1;32:18;
39:12;45:18;46:8;
47:8;51:6;53:13;
54:15,18;57:18;59:6;
66:18,19;72:21;
74:22,22;79:22;80:3;
84:13;85:25
morning (13)
11:3,9,12,15,18,21,
25;12:2,6;14:3,6;
34:1;86:11
MORs (3)
38:10;45:23;62:13
Moss (2)
6:12;7:4
most (6)
30:17;39:11;44:14;
47:16;69:22;88:16
Motion (72)
3:6,11;12:22,23,24;
13:6;14:1,4,7,9,16;
15:4,17;17:16,19;
18:2,4,5;20:12,17;
21:25;23:23;31:18;
32:19;33:17;35:11,
24;36:1;37:12;38:19;
39:10;40:14;41:17,
18,18;43:19,20;45:5,
15;46:9;48:22,25;
49:1;50:16;51:2,4;
52:21;53:7,12;61:6,
14,21;65:1,15;66:13,
17,25;67:5;68:8;69:2;
71:7,8,8,14,21;72:4;
80:10;82:9;84:23;
87:24;90:25;91:24
motions (5)
11:17;14:10,12;
20:15;35:10
motivated (2)
25:11;54:16
motives (1)
63:24
movable (1)
43:12
move (11)
29:14;31:5;46:22;
49:24;50:2;53:6;
60:15;61:3,8;64:2;

90:2
moved (1)
92:15
moves (2)
40:2;43:21
movie (1)
43:2
moving (13)
27:3,7;31:21;40:20;
43:14,15;50:13,16;
57:6;59:11,23;72:12,
18
much (14)
12:19;31:11;32:18;
45:9;48:16;63:11;
64:6,25;89:17;91:9,
19,22;92:11,22
multimillion-dollar (1)
34:6
multiple (1)
62:7
multitasking (1)
37:5
mundane (1)
32:18
music (1)
23:4
myopic (1)
60:25
myself (2)
37:21;72:13
mystified (1)
28:12

N

NAGLER (1)
9:8
nailed (1)
85:9
name (2)
11:3;44:9
NATHAN (19)
6:19;12:4;76:23;
77:1,1,8,17,20;82:24;
83:7;84:2,20,20;
85:12,23;86:6;87:6,
19;88:10
nature (1)
62:14
nearly (1)
47:9
near-term (1)
53:19
necessarily (2)
15:14;28:17
necessary (2)
19:24;43:4
Ned (1)
65:12
need (15)
15:15;20:23;50:7;
60:10;65:20;66:14;

67:22;73:21;76:6;
78:23;81:25;83:25;
88:4,13;89:14
needed (2)
19:18;72:22,23;
87:15
needle (2)
40:2;43:21
needs (7)
21:7,10,19;60:22;
64:2;69:11;84:13
negotiations (1)
72:21
nervous (1)
73:19
New (17)
2:4,4;4:6;5,14;8:6,17;
9:5,14;10:13;11:4;
13:13;26:16;31:7;
34:7;51:9;76:16;
92:16
News (1)
10:10
newspapers (1)
26:15
next (11)
31:19;52:13;54:6;
61:9;70:20,23;71:1,
17;80:23;85:14,22
nice (1)
86:2
nitty-gritty (1)
28:24
nobody (3)
60:20;74:3;90:3
NOELLE (1)
10:3
noise (1)
32:16
nonconclusory (1)
39:3
nondebtor (1)
62:21
nondischargeability (10)
31:17;34:17;42:11,
15;58:10,16;59:3;
60:6;74:24;87:21
nondischargeable (7)
31:16;36:18;40:17;
43:9;44:1;58:22,23
None (3)
40:7;69:17;82:17
normal (5)
30:5,5;36:5;79:6,6
Normally (3)
76:14;79:6;80:4
North (2)
4:22;7:16
Northwest (2)
7:5;9:21
noted (1)
62:2
notes (1)

73:7
Nothing's (2)
36:1,14
Notice (10)
3:4;4:6;14:11,17,
17,18,20;36:3,6,12
noticed (1)
65:21
notices (1)
36:4
notify (1)
36:9
notion (2)
28:7;29:20
notwithstanding (1)
30:11
number (3)
23:8;54:7;89:7
numerous (1)
25:24
NY (2)
6:5,14;8:6,17;9:5,
14
NYS (2)
9:2,3

O

objecting (1)
50:17
objection (1)
57:22
objections (4)
17:15;33:22;37:13;
52:18
objective (1)
38:2
obligation (1)
38:10
obligations (4)
21:3;34:7;43:5;
47:12
obviously (19)
16:18,21;21:18;
30:10;31:21;54:13;
58:8,15;62:22;65:2,
19;67:14;70:7;77:4,
21;78:11;85:20;
88:17;89:24
occur (1)
84:6
occurred (3)
19:20;28:14;40:22
OCHSNER (1)
10:11
o'clock (10)
11:5;81:23;86:24,
25;87:2,5,13;89:23;
90:17;92:18
odd (3)
27:22;29:22;37:16
off (6)
23:3;33:25;75:11;

76:22;84:10;92:14
offer (2)
36:20;41:20
OFFICE (7)
9:2,12;12:11;13:17;
48:19;61:19;64:16
Official (8)
3:6;7:14;8:3;11:19;
20:13;45:13;57:22;
65:18
often (3)
25:14,15;75:25
older (1)
38:5
omnibus (1)
89:14
One (59)
2:3;8:5;9:13;11:16;
17:12,21,22;19:7,15,
23,24;21:4,12,22;
22:24;23:9;24:12,17,
24;28:5,14,15;29:3;
30:2;32:6;33:24;34:6,
6;36:19;39:9;47:8;
51:24,25;53:13,15;
55:23;56:11;58:9,11;
59:4,7;60:18;65:5,7;
66:7,12,24;67:16;
68:7;73:6;75:24;
79:25;81:2;82:24;
83:17;85:10;90:2,16;
91:12
one-bedroom (1)
38:13
ones (1)
53:15
ongoing (4)
39:19;54:19;66:23,
24
only (14)
13:10;24:12;25:13;
27:15;34:19;37:15;
44:12;61:19;63:25;
69:14;71:6;84:22;
85:15;87:19
open (4)
13:7;71:20;74:9;
77:12
opening (1)
85:14
Operating (18)
3:8,9;12:23;18:16;
20:14;21:9,12,14,21;
49:17;65:2,20,24;
66:15;67:6,15;69:23;
70:12
operations (2)
35:6;54:19
operations@escribersnet (1)
4:25
opinion (3)
16:2;60:19;82:7
opinions (1)

23-12055-shl    Doc 231    Filed 05/16/24    Entered 05/24/24 10:23:55    Main Document
In the Matter of: RUDOLPH W. GIULIANI    Pg 105 of 111

May 14, 2024

74:6
**opportunity (3)**
22:22;30:12;50:15
**oppose (3)**
17:3,8;23:4
**opposed (2)**
23:15;60:25
**opposing (3)**
54:9,22;57:3
**opposite (1)**
57:13
**opposition (7)**
19:19;31:18;37:20;
50:18;51:2;53:7;71:8
**oppositions (2)**
19:15;29:20
**optics (1)**
17:8
**options (4)**
32:4;74:20,21,22
**opulent (1)**
47:24
**Order (24)**
3:11,23;12:23;
13:12,16;14:24;16:8,
14,16;18:13;20:15;
22:20;26:22;27:6;
46:22;52:15;65:24;
66:18;79:14;83:3;
87:17;91:23;92:1,6
**orders (1)**
66:10
**ordinary (3)**
16:8;22:14;32:8
**original (1)**
51:24
**originally (1)**
81:7
**otherwise (4)**
39:22;40:18;53:19;
89:10
**ourselves (2)**
60:12;78:17
**out (54)**
11:8,19;12:7;13:16;
15:15;18:18,25;19:6,
15;25:1;32:8;34:5;
35:1;36:2;37:25;38:5;
39:25;40:5;41:8;
42:17;44:7,14;47:12;
51:2;52:2,6,15;55:5,
22;58:22;63:3;64:5;
66:4;67:19;68:21;
69:17,18,20,21;70:3,
25;75:25;76:1,20;
80:25;81:24;82:20;
84:4,9,15;85:6;88:16;
89:2;92:21
**outcome (4)**
16:19;17:5;31:4,11
**outside (3)**
37:6;55:3,21
**outsider (1)**

75:22
**outstanding (2)**
21:7;91:6
**over (3)**
14:5;41:2,2
**overhang (1)**
42:23,23
**overseas (1)**
50:6
**oversight (1)**
62:4
**overview (1)**
12:22
**owes (1)**
44:23
**own (9)**
14:24;16:2;32:7;
38:3;43:1;52:12;68:4;
73:13,13

## P

**page (1)**
20:20;53:13;84:5
**pages (1)**
45:1
**paid (3)**
42:20;49:11;69:15
**pan (1)**
51:1
**papering (1)**
80:19
**papers (13)**
17:9,22;23:11;
41:21;47:3;53:6,10;
57:3,11;60:17,20;
63:3,4
**paragraph (1)**
20:20
**parcel (1)**
51:3
**Park (1)**
8:5
**parse (1)**
15:15
**part (5)**
26:20;37:13;51:3;
59:22;84:5
**partial (4)**
23:10;42:13;53:16,
19
**participate (3)**
12:14;29:24;47:1
**particular (7)**
24:23;47:5;55:12;
71:3;81:14;82:5;
84:16
**particularly (5)**
17:10;24:6;45:19;
53:7,22
**parties (3)**
13:8;17:10,12,14,
20;20:1;25:24;26:10;

27:11;30:19;47:15;
51:14;52:17;54:9,22;
56:14,14;57:3,14,21;
58:19;59:5,8,12;60:4,
18;74:15;79:11;80:5;
81:6,23
**parties' (1)**
53:6
**parts (1)**
72:18
**Party (3)**
9:20;61:19;64:21
**party's (1)**
75:22
**pass (1)**
69:10
**past (2)**
19:4;78:4
**path (6)**
50:10;59:6,8;60:5;
75:4;79:1
**pattern (1)**
56:19
**pause (1)**
48:6
**pay (7)**
38:10;44:7,17,18,
22;46:3;69:25
**paying (1)**
44:4
**payment (4)**
37:25;49:5,10;
62:18
**payments (2)**
35:10;46:7
**pedantic (1)**
74:19
**pending (3)**
31:2;18;52:25
**people (16)**
17:22;38:11;39:22;
41:9;43:25;44:4,7,24;
60:15;69:10;70:9,15;
75:16;81:3;84:9;90:7
**perceived (1)**
21:2
**perfect (4)**
14:14;15:18;16:14;
22:2
**Perfecting (1)**
3:13
**perhaps (6)**
16:24;28:8;39:11;
55:19;66:6;71:18
**PERKINS (1)**
9:24
**permanent (1)**
84:24
**permissible (1)**
80:15
**permission (1)**
15:20
**perplexed (4)**

17:3;25:2,4;45:14
**Perplexing (1)**
27:24
**person (2)**
38:5;81:8
**perspective (4)**
62:2,11;72:7;73:1
**persuaded (1)**
18:23
**petition (1)**
24:6
**ph (1)**
65:12
**Phil (2)**
11:23;89:4
**PHILIP (1)**
8:9
**Phoenix (1)**
4:23
**phone (1)**
18:3
**pick (2)**
18:3;68:3
**picture (1)**
42:17
**piece (4)**
21:13;43:12;69:12,
13
**place (10)**
18:13;19:5,8;27:6;
40:5;49:22;55:10;
79:10;85:16;92:4
**placed (1)**
26:23
**places (1)**
38:6
**plaintiff (1)**
60:25
**plaintiffs (33)**
12:1,5;22:9;23:3,
15;27:16;29:4;34:3;
44:22;48:6;53:8;
55:20;58:21;62:9;
63:2;70:6;76:10,11,
21;77:2,24;78:2;
79:18;82:23;83:2;
84:17,21;85:14;86:7;
87:24;89:18;91:11,25
**plaintiffs' (2)**
18:1;58:13
**plan (11)**
31:4;37:2,2,3,25;
43:25;44:6,12,25;
49:20;75:18
**played (1)**
55:5
**playing (1)**
32:16
**plays (1)**
55:22
**pleading (1)**
41:25
**pleadings (2)**

15:11;67:7
**Please (2)**
11:2;25:20
**PM (1)**
92:25
**point (32)**
13:18;21:20;24:20;
27:14;28:9;31:16;
40:11;42:14;50:9,9;
52:15;56:25;57:13;
59:17;61:20;67:9;
68:7,14,17,24;69:9;
71:11;73:21;74:25;
75:5;77:4;78:21;83:1,
16;84:12;88:7,13
**pointed (1)**
19:15
**pointing (2)**
63:2;92:21
**points (3)**
29:3,23;64:12
**Politico (1)**
10:5
**position (5)**
33:20;48:22;70:14;
81:9;88:6
**possession (1)**
21:11
**possibility (2)**
85:4;87:24
**possible (7)**
25:23;48:7;64:22;
74:15;77:9;83:20;
89:8
**possibly (2)**
78:13;88:19
**post-petition (2)**
77:10,21
**post-trial (2)**
14:10,12
**potential (3)**
37:2;52:9;85:1
**potentially (2)**
53:3;55:24
**precious (2)**
25:7;26:1
**prefer (1)**
13:25
**preferable (1)**
86:6
**prejudice (6)**
24:23,24;27:13;
56:15;61:7;91:23
**preliminary (1)**
13:6
**premised (1)**
31:24
**Pre-Motion (2)**
4:3,6
**preparatory (1)**
62:1
**prepare (2)**
44:25;49:15

23-12055-shl    Doc 231    Filed 05/16/24    Entered 05/24/24 10:23:55    Main Document
In the Matter of: RUDOLPH W. GIULIANI    Pg 106 of 111

May 14, 2024

**preparing (1)**
19:3
**pre-petition (1)**
18:22
**PRESENT (1)**
10:2
**presentation (1)**
78:7
**presented (2)**
76:17;83:12
**preserve (1)**
14:11
**pressing (1)**
62:15
**presumably (1)**
53:24
**Pre-Trial (2)**
3:20;13:2
**pretty (4)**
70:16;79:20;80:19;
83:15
**prevailed (1)**
57:16
**prevails (2)**
24:8;53:22
**prevent (4)**
18:19;50:14;73:18;
84:17
**prevents (1)**
88:21
**previously (2)**
14:8;51:18
**primarily (1)**
56:13
**primary (2)**
56:24;67:5
**Princess (1)**
24:15
**principles (2)**
32:7,17
**prior (2)**
16:14;51:18
**priority (1)**
78:5
**probably (8)**
28:23;44:25;53:13;
59:6;61:18;72:14;
74:4;91:18
**problem (10)**
62:11,23;66:23,24;
71:6;73:18;76:17;
83:16,17,22
**problematic (2)**
28:1;70:8
**problems (5)**
20:18;40:12,14,25;
67:24
**procedural (2)**
81:10;87:15
**procedurally (1)**
81:5
**procedure (1)**
81:1

**Proceed (9)**
3:12;13:25;14:14;
17:1;21:21;26:11;
31:2;47:21;65:4
**proceeding (24)**
3:19,22;4:2,5;13:3,
15,18,20;31:15;32:1,
9;42:11,15;43:15;
55:8;57:5;58:10;
60:23;61:3;74:24;
76:5;77:5;84:16;
87:21
**proceedings (9)**
23:19;30:3,15;54:3;
57:18;80:1;83:14,25;
92:25
**proceeds (2)**
51:13;53:24
**process (8)**
17:6;18:13;19:1,25;
27:21;38:7;48:4;
49:11
**professional (2)**
18:11;92:3
**professionals (7)**
35:4,10;37:3;44:18;
73:19;74:19,20
**profitable (1)**
44:14
**profound (1)**
80:7
**profoundly (1)**
81:15
**progress (17)**
17:18;27:9;37:14;
39:9;47:13;48:23;
58:25;60:3,6,9;61:2;
75:8;84:13,14;89:7;
90:8,9
**progressive (1)**
47:20
**Project (1)**
10:7
**prompt (1)**
27:19
**promptly (2)**
83:20;88:8
**properly (1)**
68:16
**properties (2)**
69:25;73:7
**property (1)**
37:10;70:1
**proposal (2)**
46:2;77:11
**Proposed (9)**
6:3;11:16;28:18;
31:4;49:6,13;51:4;
64:10;91:23
**proposes (1)**
43:25
**pros (1)**
81:9

**Prosecuting (1)**
3:13
**prospect (3)**
59:18;80:13,14
**prospects (1)**
41:11
**protecting (1)**
22:23
**provide (4)**
20:10;59:5;70:11,
19
**provided (1)**
92:7
**providing (1)**
70:17
**Purpose (1)**
3:12
**purposes (11)**
15:13;32:19;37:20;
38:19;42:16;43:18;
54:13;58:7,14;81:3,5
**pursue (12)**
22:3,7;25:13,13;
26:2;27:6,12,14;37:8;
46:25;74:21;77:10
**pursuing (3)**
50:14;55:23;59:17
**pursuit (1)**
40:2
**push (1)**
66:21
**put (9)**
29:19;34:5;36:2;
37:21;41:21;61:9;
89:14,14;92:9
**putting (2)**
39:11;42:21
**puzzle (2)**
43:12,13

**Q**

**Quacks (1)**
43:9
**quadruple (1)**
41:3
**quarterly (1)**
65:10
**quick (1)**
24:11
**quicker (1)**
49:24
**quickly (2)**
31:7;50:2
**quite (5)**
14:2;32:8;37:14;
53:10;66:11
**quote (2)**
24:15;41:19
**QURESHI (2)**
8:11;11:23

**R**

**RACHEL (7)**
6:20;7:20;11:21;
12:2;34:1;45:11;
65:16
**racking (1)**
39:25
**radio (3)**
43:23,24;44:13
**raindrops (1)**
86:20
**raise (3)**
56:2;59:18;75:12
**raised (4)**
50:25;51:14,20;
62:8
**raising (1)**
29:6
**rather (1)**
79:22
**RATTET (1)**
8:20
**reach (4)**
63:23;68:7;80:25;
82:19
**reached (1)**
68:17
**reaches (1)**
68:14
**read (2)**
47:3;63:14
**reading (1)**
60:8
**ready (2)**
57:14;85:21
**real (3)**
38:2;47:22;73:18
**reality (1)**
74:3
**realize (5)**
23:2;79:23;82:12,
25;84:15
**really (16)**
13:10;16:3;17:15;
24:10;28:7;29:17;
30:5;31:9;39:15;55:7;
58:8;60:19,25;68:15;
74:3;80:6
**reason (9)**
22:18;60:10;70:5;
73:15;77:20,25;
81:14;85:15;92:7
**reasonably (1)**
37:14
**reasons (4)**
21:5;23:8;56:11,20
**reasserting (1)**
61:7
**rebuttal (1)**
33:21
**recalls (1)**

14:8
**received (7)**
49:8;53:12;58:5;
59:21;65:2;78:11,22
**recently (2)**
69:19;76:16
**receptive (1)**
46:4
**recognize (1)**
79:25
**recognizing (1)**
25:14
**record (11)**
22:16;24:7;27:23,
25;29:1;30:5,6;53:22;
56:1;65:16;68:10
**recovered (1)**
49:7,11
**recoveries (1)**
25:23
**recurring (1)**
18:19
**reduced (1)**
17:4
**reference (2)**
20:17;49:19
**referenced (1)**
62:18
**reflect (4)**
17:20;49:17;60:19,
21
**reflected (1)**
22:17
**reflection (1)**
14:17
**reflects (2)**
17:22;56:1
**refresh (1)**
61:16
**refusal (1)**
29:23
**refuses (2)**
48:10,11
**refusing (1)**
47:1
**regarding (2)**
48:23;63:24
**Regardless (3)**
28:25;31:11;58:21
**regular (6)**
17:25,25;40:20;
62:6;64:16;74:5
**regularly (1)**
62:15
**rejected (1)**
51:18
**rejiggering (1)**
63:18
**relate (3)**
43:17,17;61:21
**relates (1)**
61:14
**relating (1)**

58:2
**relationship (1)**
59:10
**relatively (1)**
31:7
**relevant (5)**
39:17;40:15;55:8;
58:7;74:25
**relief (20)**
23:15;25:3;35:9;
41:21;42:13;46:12;
47:17;48:15;51:4;
52:21;57:19;60:1;
65:19,25;77:5,10;
78:5;84:24;89:8;
91:24
**rely (1)**
25:25
**remain (2)**
48:10;91:6
**remaining (1)**
87:20
**remains (1)**
92:4
**remand (2)**
24:1;30:23
**Reorg (1)**
10:6
**reorganization (3)**
47:14;63:12,13
**reorganizing (2)**
47:19;57:24
**repeatedly (1)**
46:21
**repeating (1)**
32:23
**replacement (1)**
27:4
**replacing (1)**
26:14
**reply (5)**
31:19;33:20;61:15;
71:7;87:22
**report (8)**
18:16;19:4,7;21:12,
14,21;67:7;70:12
**reported (2)**
67:6;70:10
**reporting (3)**
18:12;21:11;65:9
**Reports (17)**
3:8,9;12:23;18:11;
19:3,5;20:14;21:9;
49:17;65:2,20,22,24;
66:15;67:15;69:23;
90:25
**represented (1)**
81:16
**request (6)**
22:1;23:4,16;66:3,
13;68:9
**requested (3)**
46:12;47:17;65:12

**Requesting (2)**
4:3;62:24
**requests (3)**
25:15,15;48:14
**required (4)**
43:3;63:20;66:9,10
**requirement (1)**
21:18
**requirements (4)**
52:12;67:16,22;
79:11
**requires (4)**
27:10;33:5;46:19;
79:21
**requiring (1)**
65:24
**res (1)**
31:25
**reserve (1)**
33:20
**resolution (22)**
23:11,18,21;24:11,
12,16,18;27:19;30:14,
17,17;40:24;46:19,
22;47:21,25;53:16,
19;57:9,12;74:18;
85:4
**resolve (1)**
38:3
**resolved (7)**
27:9,16;52:10;58:5;
59:4;63:7;83:20
**resolves (1)**
42:6
**resolving (1)**
46:25
**resources (1)**
19:10
**respect (3)**
62:5;63:9;87:20
**respectfully (1)**
48:14
**respects (1)**
92:4
**response (11)**
17:19;30:24;36:5;
40:9;45:23;46:1,5,7;
48:18;49:15;71:7
**responsibility (1)**
55:15
**responsible (1)**
62:4
**responsive (1)**
71:16
**rest (1)**
38:1
**restored (1)**
14:25
**restrictions (1)**
35:16
**restructure (3)**
41:14;63:18;64:22
**restructured (1)**

35:6
**restructuring (3)**
36:24;74:18,20
**restructurings (1)**
35:6
**rests (1)**
58:17
**result (3)**
30:16;53:16;57:11
**resulted (1)**
62:13
**results (1)**
60:3
**retain (1)**
62:12
**retained (3)**
13:12;35:11;44:18
**retaining (1)**
62:16
**retention (9)**
12:25;13:11;35:10;
51:4,6;56:3;64:4;
72:14;73:17
**retentions (1)**
73:20
**retirement (1)**
69:24
**returned (1)**
49:7
**Reuters (1)**
10:9
**reverse (1)**
38:25
**reversed (5)**
33:8,9;34:9;46:19;
56:9
**revision (1)**
64:11
**revisit (2)**
75:9;85:9
**Ricci (3)**
18:22;49:5;62:19
**ridding (1)**
42:22
**right (90)**
11:18,25;12:6,10,
16,19,20;13:19,20,25;
14:4,11;16:10;18:15;
21:24;22:6,11,14,15,
17;23:4;28:19;33:15,
23,24;35:21;36:7,15,
25;37:3,17;38:16,21;
39:2,14;42:13;44:3;
45:4,7;48:16,17;49:2,
3;50:18;51:9;52:1,19,
23;60:7;64:25;65:13;
66:3;68:1;71:2,2,11,
12;72:3,8;73:10;74:7,
11;75:5;76:2,4;77:7;
78:6,24;79:2;80:16;
81:8;82:18,22,22;
84:2;85:5,23;88:11,
11;89:11,13,17,20,22;

91:7,10,15,18,22;
92:22
**rights (1)**
50:15
**rise (1)**
77:23
**risk (1)**
47:22
**RISSMAN (1)**
10:12
**River (1)**
4:20
**road (2)**
24:18;40:4
**roadblock (1)**
39:19
**ROBERT (1)**
8:20
**role (1)**
62:22
**room (3)**
30:2;32:6;35:4
**rope-a-doping (1)**
34:12
**rote (1)**
39:12
**routine (1)**
39:12
**Ruby (2)**
6:11;7:3
**Rudolph (2)**
3:7;11:5
**Rudy (1)**
34:11
**Rule (1)**
54:13
**rules (1)**
68:17
**ruling (3)**
60:6,13;61:6
**rulings (1)**
83:15
**running (3)**
16:9;86:20;88:21
**runs (1)**
30:21

## S

**safe (1)**
56:25
**salary (1)**
69:18
**sale (2)**
26:21;56:3
**same (17)**
15:9;23:3,16;31:6;
36:25;37:8,9;45:18;
46:8,10;48:11;54:15;
55:14;73:1;78:17;
80:6;84:5
**sanction (2)**
53:25;54:1

**satisfaction (1)**
52:10
**satisfy (1)**
43:4
**save (2)**
63:17;81:25
**saw (7)**
15:11;17:16;22:20;
26:14;36:3,12;64:10
**saying (13)**
18:16;20:18;21:25;
28:23;44:20;46:16,
18;57:22;60:13,14;
68:21;73:12;75:4
**Scarcella (1)**
86:10
**scenario (3)**
23:25;43:6;57:17
**scenarios (1)**
39:21
**scenes (2)**
27:8;35:3
**schedule (14)**
32:3;78:15;84:23;
85:1,2,3,6,10,13,16;
88:2,3,7,15
**scheduled (2)**
27:4;31:20
**schedules (5)**
19:16;20:3;62:25;
66:16;70:13
**Scheduling (4)**
3:23;16:7;87:16,17
**SCHWARTZ (16)**
9:16;12:12,12,18;
48:21,21;61:12,22,23,
23;65:5;72:13;92:12,
15,17,20
**Schwartz' (1)**
68:4
**Scripps (1)**
10:10
**SEAN (2)**
2:12;11:3
**seated (1)**
11:2
**second (9)**
12:24;17:17;32:9;
37:6;42:3;46:9;47:6;
61:13;68:14
**seeing (1)**
70:9
**seeking (5)**
12:24;14:13;20:13;
76:10;89:8
**seem (6)**
27:7,22;59:1;82:4;
83:12;84:10
**seems (15)**
14:1;24:7;30:20;
32:13,14,24;37:13;
51:18;54:1,23;56:23;
57:13;80:19;83:15;

88:16

**sees (1)**
61:1

**segue (1)**
61:18

**seize (1)**
22:9

**sell (6)**
13:12;26:21;38:11;
41:15;44:12;73:6

**send (8)**
36:6,11;49:9,13;
70:5;80:4,5;85:7

**sends (1)**
23:19

**sense (11)**
13:5;36:22;45:17;
46:18,20;55:22;60:4;
76:13;83:25;85:15;
88:17

**sensitive (2)**
82:3;85:18

**sent (7)**
30:14;45:22,23;
46:1;78:12,22;87:17

**separate (2)**
52:13;57:4

**sequencing (1)**
43:16

**serious (2)**
17:5;48:8

**serve (1)**
57:24

**services (1)**
52:9

**session (1)**
86:23

**set (6)**
15:1;19:1;24:24;
27:5;78:16;81:22

**setting (1)**
36:21

**settle (1)**
36:20

**settled (3)**
35:13;40:18;42:20

**settlement (6)**
40:23;44:24;50:21;
54:12;74:15,18

**settling (1)**
50:19

**seven (2)**
45:25;71:19

**Seventh (1)**
6:13

**several (5)**
12:21;20:25;34:15;
43:10;81:2

**SHANT (1)**
8:10

**shape (1)**
57:10

**share (1)**

75:21

**shared (1)**
51:15

**Shariah (1)**
50:6

**sharing (1)**
52:9

**shed (1)**
51:6

**sheet (1)**
23:3

**shekels (1)**
44:7

**shield (2)**
38:7;40:20

**shoes (1)**
37:21

**short (3)**
26:22;59:7;83:3

**shorter (1)**
59:8

**shortly (1)**
88:5

**show (4)**
32:14;34:11;48:8;
55:18

**showing (3)**
37:10;59:13,14

**shown (1)**
47:8

**Shumer (3)**
11:10,13;78:10

**sic (1)**
52:11

**side (3)**
61:10;74:9;90:7

**sight (2)**
24:5,5

**significant (4)**
37:13;39:10,11;
54:20

**significantly (1)**
38:5

**similar (2)**
53:11;76:17

**simple (1)**
79:20

**simultaneously (1)**
31:13

**singing (1)**
23:3

**single (3)**
34:10;44:15;49:23

**single-handedly (1)**
55:21

**single-minded (1)**
54:25

**single-sided (1)**
45:1

**singular (1)**
24:21

**sit (4)**
52:2;67:20;69:20;

74:14

**sitting (4)**
35:7,8;41:8;72:21

**situation (4)**
22:15;66:8;70:7;
81:20

**six (2)**
45:25;72:14

**size (1)**
60:17

**slow (1)**
27:7

**small (1)**
50:1

**smooth (1)**
79:1

**sold (5)**
35:12;38:9;44:23;
56:8;73:11

**solely (1)**
58:17

**solid (1)**
27:9

**solution (1)**
59:22

**solve (1)**
43:12

**somebody (2)**
66:8;83:21

**somehow (1)**
15:13

**someone's (1)**
55:2

**sometimes (4)**
49:21;66:10;75:20,
21

**somewhat (3)**
29:22;55:1;82:7

**somewhere (2)**
38:13;41:16

**Sonnax (21)**
23:9;24:13,22;
30:15;37:17;38:20;
39:1,4,12,17;40:7,12,
14,15;42:4,12;46:11,
14;47:4;53:14;59:24

**sorry (4)**
38:12;42:9;65:6;
90:18

**sort (31)**
12:22;14:2;17:17,
19;19:13;29:21;
32:11,16;37:11,16,16;
38:23;39:5,5,8,12;
40:9;42:17;51:15;
52:2;54:8;55:1;56:9;
57:24;61:16;76:17;
79:5;81:23;83:11,19;
84:15

**sorts (1)**
32:17

**Sotheby's (4)**
13:12;72:14,16,22

sound (3)
58:3;79:5;80:13

**Southern (2)**
11:4;76:16

**space (1)**
88:22

**speak (4)**
25:5;51:5;80:22;
82:19

**speaks (1)**
74:3

**Special (5)**
3:17;6:3;11:16;
13:1;27:4

**specialized (1)**
55:11

**specific (5)**
66:19;20;67:9;
69:12;89:25

**specifically (1)**
53:14

**speech (1)**
20:25

**speeches (1)**
69:10

**spend (3)**
40:5;80:18;83:10

**spending (2)**
19:9;47:23

**spent (1)**
64:3

**split (1)**
44:7

**spoke (2)**
60:20,20

**squared (1)**
73:20

**stack (1)**
17:21

**staff (2)**
49:22;69:16

**stage (2)**
77:13;79:8

**stand (2)**
27:2;54:17

**standard (3)**
30:15;36:3;52:23

**standards (1)**
30:16

**stands (2)**
71:21;83:21

**start (6)**
11:7;13:5;28:24;
33:25;69:18;76:21

**starts (1)**
41:23

**statement (5)**
20:4;36:5;65:10;
74:13;86:11

**statements (11)**
32:11,23;34:10;
36:4;38:4;45:15;76:9,
9;77:10;81:1,17

**States (3)**
2:2;12:10,13

**Status (8)**
3:2;13:6,10;16:21;
19:21;35:18;88:13;
89:6

**statutory (1)**
47:11

**Stay (55)**
3:11;12:24;13:5;
14:1,8,9,13;15:12;
17:1,16;18:24;22:1,8,
9;29:7,14;32:20;
33:17;35:9,24;36:6;
37:12;38:6,20,21;
39:20;41:21;46:9,12;
47:15;48:3,5,15;51:4;
52:21;53:2,5,12,21;
55:2,17;57:4,11,20;
58:6;59:15,21;60:8;
77:4,8,18;81:3;82:9;
91:24;92:4

**stayed (11)**
15:5,25;16:1,6,11,
13;36:2,9,14;59:16;
77:6

**stays (1)**
40:16

**step (4)**
24:17;27:10;53:2;
80:1

**steps (5)**
43:4;47:19;54:6;
57:25;77:15

**still (10)**
23:20;30:18;31:1,
22;44:1;51:19;54:17;
65:19;85:9;92:12

**stipulate (1)**
34:16

**stipulation (1)**
20:17

**stipulations (1)**
43:8

**stop (4)**
78:3;79:18;80:7,8

**story (4)**
24:9;68:4,15;73:13

**straight (2)**
63:14;83:18

**straightforward (5)**
50:3,11;80:20;
83:12,16

**strategy (1)**
46:17

**STRAUSS (5)**
7:13;8:2;11:22;
45:12;65:17

**STRAWN (1)**
9:19

**Street (2)**
4:22;6:4;7:5,16;9:4,
21;10:15

23-12055-shl    Doc 231    Filed 05/16/24    Entered 05/24/24 10:23:55    Main Document
In the Matter of: RUDOLPH W. GIULIANI    Pg 109 of 111

May 14, 2024

**stressed (1)**
20:23
**STRICKLAND (32)**
6:20;12:2,3;34:1,2;
35:20,22,25;36:8,13,
16;37:4,19,21;38:17,
22,25;39:3,7,14,16;
40:16;42:8,19;43:20;
45:6,8;54:18;74:12;
89:21;91:12,16
**Strickland's (1)**
50:2
**strict (1)**
72:17
**struggling (1)**
83:23
**STUART (1)**
9:8
**stuck (3)**
73:15,17,18
**stuff (2)**
20:9;38:12
**subject (6)**
16:16;23:18;31:23;
32:11;53:1;57:2
**submit (2)**
71:20;85:6
**submitted (1)**
46:6
**submitting (1)**
52:11
**subordination (1)**
57:2
**substance (2)**
80:25;87:14
**substantial (1)**
31:10
**substantive (1)**
17:18
**successful (4)**
16:20;30:23;54:4,
17
**suggest (1)**
71:16
**suggestion (2)**
13:20;82:13
**suggestions (2)**
13:8;82:16
**Suite (2)**
4:22;7:17
**SULLIVAN (2)**
10:13,14
**summary (5)**
31:18,22,24;43:15;
84:23
**sunk (1)**
17:14
**super (1)**
38:13
**supplement (1)**
72:4
**suppose (2)**
71:24;82:7

**supposed (7)**
16:9;32:19,20,23;
49:7;59:12;78:21
**Sure (17)**
11:9;14:8;26:14;
28:19;33:24;35:20;
37:19;42:19;45:19;
50:19;52:17;53:17;
66:11;68:11;73:14;
77:13;78:21
**surprise (2)**
90:3,10
**surprising (1)**
18:7
**surprisingly (1)**
46:14
**suspect (1)**
61:15
**sustained (2)**
16:23,24
**swift (1)**
27:18
**switch (1)**
64:9
**sword (1)**
38:7
**system (4)**
19:5;21:10;32:15;
68:22

**T**

**tactic (1)**
43:21
**tactical (1)**
38:7
**talk (16)**
28:19;30:6;41:1;
44:13;60:16;76:5;
82:15;84:18;87:13,
15;88:5;89:23,25;
90:1,4;92:8
**talked (2)**
34:23;41:3
**talking (14)**
17:21,22;26:1;30:3,
4;34:15,15;38:15;
39:25;50:7;53:15;
60:18;74:17;82:8
**talks (2)**
54:12;56:17
**tandem (1)**
31:2
**tangible (1)**
84:13
**Taxation (1)**
9:3
**TAYLOR (1)**
10:8
**tea (1)**
13:5
**teed (4)**
58:11,11;74:24;

87:22
**telling (2)**
68:19;82:25
**tells (1)**
61:1
**ten (1)**
37:25
**tend (1)**
86:21
**tenets (1)**
46:13
**term (3)**
29:22;59:7,8
**terminated (2)**
26:15;67:8
**terms (18)**
16:11;30:2,24;
35:14;43:14,16;50:1;
52:5;55:24;59:9,10;
61:2;63:9,12,13;
74:17;76:19;91:6
**Thanks (2)**
92:19,21
**that'll (1)**
84:5
**thereabouts (1)**
88:17
**therefore (5)**
19:1;53:1;56:6;
61:9;66:19
**there'll (1)**
26:21
**thereof (1)**
48:4
**thinking (6)**
13:4;37:17;40:10;
58:25;59:1;91:16
**Third (5)**
8:16;25:23;56:13,
14;75:22
**third- (1)**
19:25
**third-party (2)**
51:17;75:20
**thirty (2)**
73:11;88:16
**thought (13)**
18:23;29:7;37:6;
63:15,17,19;73:6;
80:20;85:10,15,24;
88:9;90:16
**thoughts (2)**
67:3;89:19
**threat (1)**
69:6
**three (4)**
13:2;45:1;71:19;
73:9
**Thursday (20)**
81:13;82:20;86:1,2,
6,9;87:13;88:6,18;
89:23,25;90:1,5,13;
91:17;92:9,9,15,16,18

**Thus (1)**
47:7
**tie (1)**
76:7
**till (1)**
30:21
**timeline (1)**
46:17
**Timely (7)**
3:8;19:5;21:15,17;
65:25;66:14;68:16
**Times (5)**
10:13;20:25;24:10;
62:7;84:9
**today (20)**
11:17;27:5;33:16;
58:3,16;59:15,20;
60:1,11;63:6,19;
64:12;66:4,6,20;69:3,
13;74:13;80:24;89:8
**toes (1)**
80:1
**together (5)**
18:15;58:1;80:21;
86:1;88:18
**toggle (1)**
37:2
**told (2)**
34:16;38:9
**tomorrow (1)**
91:13
**took (9)**
19:3;20:15;22:15;
27:6;50:11;55:10;
72:18;74:1;77:15
**topic (1)**
76:22
**total (1)**
64:11
**totally (1)**
13:4
**touch (3)**
18:1;63:22,23
**touchstone (1)**
71:12
**toward (1)**
47:13
**towards (2)**
13:13;27:9
**track (3)**
37:1,1;67:25
**tracks (1)**
50:16
**traditional (1)**
36:24
**trains (1)**
16:9
**Transcribed (1)**
4:20
**transparency (1)**
20:24
**trial (4)**
22:16;28:14;57:14,

15
**tribunal (1)**
55:11
**tried (1)**
45:20
**triple (1)**
41:3
**troubling (1)**
32:15
**true (4)**
23:24;55:14;64:4;
84:25
**Trust (2)**
66:25;83:8
**Trustee (12)**
9:12;12:13;41:6;
48:22;52:16;61:24;
66:2,4;68:9;70:5;
72:22;89:9
**Trustee's (8)**
12:10;13:17;48:19;
51:22;52:10,12;
61:19;72:17
**truthfully (1)**
70:2
**try (5)**
19:2;46:2;69:20;
79:1;84:14
**trying (19)**
20:11;24:20;37:11,
11;38:18;39:15;
49:22;66:4;71:12;
72:15,19;75:25;
76:19;78:12;81:5,24;
83:9,19;90:10
**turn (2)**
14:5;64:24
**turned (1)**
18:18
**turns (1)**
19:6
**twelve (1)**
53:15
**twenty-four (2)**
80:23,24
**two (25)**
28:13;31:9;34:6;
35:9;36:21;38:6;41:8,
12,13,15;43:22,23;
44:12,20;47:5;50:16;
52:13;53:14,14;58:9;
59:8;65:20;68:19;
70:21;87:1
**twofold (1)**
68:6
**TX (1)**
7:18

**U**

**UDAY (1)**
10:7
**ultimately (5)**

23-12055-shl    Doc 231    Filed 05/16/24    Entered 05/24/24 10:23:55    Main Document
In the Matter of: RUDOLPH W. GIULIANI    Pg 110 of 111

May 14, 2024

40:3;41:5,6;45:18;
66:18
**unable (2)**
18:11;47:8
**unacceptable (1)**
81:19
**unanswered (1)**
45:21
**unauthorized (1)**
46:7
**unbiased (1)**
62:3
**under (1)**
23:9
**underlying (2)**
47:17;82:10
**understands (1)**
33:19
**understood (5)**
17:14;21:6;82:8;
85:12;89:16
**unending (1)**
47:24
**uniformly (1)**
25:12
**UNISON (1)**
92:24
**United (3)**
2:2;12:10,13
**unknown (1)**
46:18
**unless (9)**
13:4,6;38:2;48:17;
76:6;80:6;81:15;
83:13;86:4
**Unsecured (5)**
3:6;7:14;8:3;45:13;
65:18
**unwilling (1)**
62:21
**unwise (1)**
28:23
**up (30)**
18:3;19:1;22:12,24;
26:13,21;27:1;36:12;
37:23;39:25;40:8;
45:16;48:24;58:11,
11;64:12;68:3;71:5;
72:24;74:12,24;
75:14;76:7;79:13;
80:10;81:25;83:21;
84:3;87:22;91:17
**update (7)**
13:10;61:16;65:3;
70:11,19;77:9;91:4
**updated (2)**
19:18;20:21
**upon (2)**
14:2;85:7
**urged (1)**
17:9
**use (9)**
29:22;38:6,6;48:2,

5;83:8;84:14;89:14,
22
**used (4)**
34:4;69:6,16;79:10
**useful (1)**
73:16;75:16
**using (5)**
24:14;28:2,2;46:3;
69:23
**usual (1)**
32:7

## V

**vacated (3)**
16:24;17:5;31:23
**valid (1)**
46:21
**valuable (3)**
59:5,6;74:14
**value (3)**
31:10;34:9,9
**variety (2)**
30:4,11
**various (7)**
17:19;20:22;25:23;
27:10;29:23;48:24;
67:7
**vehicle (1)**
50:6
**vein (1)**
66:21
**verify (2)**
66:25;83:8
**vet (1)**
90:7
**via (1)**
12:14
**view (15)**
31:16;42:10,14;
50:9;51:12;54:23;
56:4,8,20,23;66:13;
71:23;75:3,23;83:16
**viewpoint (1)**
69:3
**views (1)**
89:3
**VINCE (1)**
10:14
**violation (1)**
64:10
**virtue (3)**
15:5,24;59:16
**vis-a-vis (1)**
32:15
**voted (1)**
61:4

## W

**WABC (1)**
26:15
**wait (5)**

30:21;34:21;40:6;
46:21;81:15
**waiting (1)**
21:12
**Wall (1)**
10:15
**Wandrea (2)**
6:11;7:3
**wants (11)**
21:4;28:8;44:9,16,
21;46:25;48:2,4,13;
64:9;65:3
**war (1)**
81:25
**Washington (2)**
7:6;9:22
**waste (1)**
38:1
**way (34)**
13:21;14:23;21:21;
23:5,12;27:10,24;
33:13;34:4;36:19;
42:5,6,25;43:17,17;
44:13;55:1,6;56:12;
57:10;59:4;61:5;
64:10;66:7,12,24;
67:1;70:1,9;78:21;
80:7;85:10;87:17;
92:5
**ways (6)**
48:3;49:23;56:22;
75:19;79:17;81:2
**weapon (1)**
48:5
**Wednesday (3)**
85:14,22,22
**week (14)**
21:15;26:15;31:19,
19;41:3;62:7;63:8;
70:20,21,24;71:1;
80:21;85:10;91:5
**weeks (6)**
34:15,17;41:15;
43:10;44:16;72:15
**weighed (2)**
56:11,11
**weighing (1)**
48:19
**weighs (3)**
46:11;55:13;57:4
**weight (1)**
57:19
**West (1)**
6:4
**Wexler (2)**
11:10,13
**whatever's (1)**
21:7
**What's (11)**
19:21;30:23;35:8,
21;56:5,17;61:16;
73:4,4;75:17;81:6
**wheel (1)**

48:10
**Whereupon (1)**
92:25
**wherever (1)**
44:13
**whole (4)**
19:13;20:24;25:17;
36:22
**who's (5)**
11:8,19;12:7,8;
33:25
**wide-ranging (1)**
25:22
**willful (1)**
38:4
**willing (1)**
18:12
**WILLKIE (4)**
6:10;7:2;12:3;34:2
**win (1)**
23:25
**WINSTON (1)**
9:19
**wishes (1)**
12:8
**within (3)**
14:19;19:1;80:24
**without (5)**
22:8;39:21;61:6;
79:24;91:23
**witness (1)**
66:5
**woke (1)**
72:24
**Wolfe (1)**
4:20
**wonder (2)**
27:15;51:14
**word (2)**
24:14;59:20
**words (1)**
43:1
**work (13)**
18:21;20:9;21:20;
26:13;35:15;37:25;
49:22;62:21;72:1;
84:9;86:9,17,25
**worked (2)**
13:16;85:5
**working (4)**
13:16;26:12;50:13;
72:12
**works (8)**
52:11;68:22;70:9;
74:21;81:23;86:4,5,7
**world (1)**
68:25
**worried (3)**
55:2;66:22,23
**worry (1)**
40:11
**worth (1)**
13:7

**wrong (2)**
20:15;35:14
**wrote (1)**
36:8

## Y

**year (1)**
36:21
**years (3)**
30:22;40:4;47:1
**Yep (2)**
35:22;42:8
**YERAK (1)**
10:15
**yesterday (8)**
21:13;26:6;34:11;
41:1;49:8;51:22,25;
72:24
**York (14)**
2:4,4;6:5,14;8:6,17;
9:5,14;10:13;11:4;
13:13;31:7;34:7;
76:16

## Z

**zero (1)**
70:10
**ZOOM (33)**
6:16,18;7:8,9,10;
8:10,19,20;9:7,8,16,
24;10:3,4,5,6,7,8,9,10,
11,12,13,14,15;12:11,
14;86:12,13,16;87:7,
11;90:13
**Zoom's (1)**
87:9

## 1

**1 (2)**
41:18;86:21
**1:06 (1)**
92:25
**1:30 (2)**
86:21,24
**10 (3)**
57:8;86:25;90:12
**100023 (1)**
6:5
**10004 (1)**
9:14
**10005 (1)**
9:5
**10019 (1)**
6:14
**10036 (1)**
8:6
**10158 (1)**
8:17
**11 (18)**
11:5,5;34:5;38:12;

40:5;44:8;45:2;47:20;
57:14,19;62:10;
67:16;70:21;81:23;
84:7;89:23;90:16;
92:13
**11:05 (1)**
  2:7
**12 (3)**
  47:15;57:20;86:23
**12,000-dollar (1)**
  49:5
**14 (1)**
  2:6
**148-million-dollar (1)**
  16:22
**15 (1)**
  6:4
**15th (1)**
  14:21
**16th (1)**
  4:22
**17th (2)**
  88:18,20
**1800 (1)**
  7:17
**1875 (1)**
  7:5
**18th (3)**
  14:25;88:19,23
**1901 (1)**
  9:21
**197 (1)**
  20:17

**2**

**2 (3)**
  54:7;86:23,24
**20 (1)**
  20:20
**20006 (1)**
  7:6
**20036 (1)**
  9:22
**2015.3 (1)**
  65:10
**2024 (1)**
  2:6
**22nd (1)**
  87:23
**2300 (1)**
  7:16
**24-01320-shl (2)**
  3:19,22
**24-01355-shl (2)**
  4:2,5
**24th (6)**
  88:24;89:1,22;
  90:12,17;91:5
**257-0885 (1)**
  4:24
**28 (1)**
  9:4

**2nd (1)**
  36:8

**3**

**3 (7)**
  55:8;87:2,4,5,13;
  90:13;92:18
**31st (1)**
  73:8
**341 (1)**
  63:1

**4**

**4 (3)**
  20:20;55:11,13
**408 (1)**
  54:13
**4th (2)**
  18:15;46:1

**5**

**5 (1)**
  55:14
**504 (1)**
  64:10

**6**

**6 (2)**
  20:20;56:13
**605 (1)**
  8:16

**7**

**7 (1)**
  56:16
**7227 (1)**
  4:22
**72nd (1)**
  6:4
**75201 (1)**
  7:18
**787 (1)**
  6:13
**7th (2)**
  88:24,25

**8**

**8 (1)**
  57:1
**800 (1)**
  4:24
**85020 (1)**
  4:23

**9**

**9 (1)**

57:6