Akin Gump Strauss Hauer & Feld LLP  
One Bryant Park  
Bank of America Tower  
New York, NY 10036

T  +1 212.872.1000  
F  +1 212.872.1002  
akingump.com



**Philip C. Dublin**  
+1 212.872.8083/fax: +1 212.872.1002  
pdublin@akingump.com

June 10, 2024

Hon. Sean H. Lane  
United States Bankruptcy Court for the Southern District of New York  
300 Quarropas Street  
White Plains, NY 10601

    Re:    *In re Rudolph W. Giuliani*, No. 23-12055 (SHL) (Bankr. S.D.N.Y.)

Dear Judge Lane:

    At the May 14, 2024 hearing in the above-referenced chapter 11 case (the "May 14 Hearing"), the Court requested that the Official Committee of Unsecured Creditors (the "Committee") of Rudolph W. Giuliani (the "Debtor") submit a letter regarding the status of, and open issues with respect to, the *Motion of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani to Compel the Debtor to (I) File Delinquent Monthly Operating Reports and (II) File Timely Future Monthly Operating Reports* [Docket No. 197] (the "Motion to Compel MORs"). *See In re Giuliani*, No. 23-12055 (SHL) (Bankr. S.D.N.Y. May 14, 2024), May 14 Hearing Tr. at 71:16-25.

    At the time the Committee filed the Motion to Compel MORs, the Debtor was delinquent in filing both his February and March monthly operating reports. On May 2, 2024 and May 6, 2024, the Debtor filed the February MOR and March MOR, respectively.[1] *See* Docket Nos. 199, 203. Although the Debtor managed to file these reports prior to the May 14 Hearing, the February MOR and March MOR contained several issues and inconsistencies, which counsel for the Committee raised at the May 14 Hearing, in the Reply[2] and in its pending Trustee Motion.[3] These issues include (i) lack of transparency with respect to the Debtor's income, (ii) the Debtor's pattern of unauthorized postpetition payments and failure to secure

---

[1] The "February MOR" means the Debtor's monthly operating report for the period from February 1, 2024 through February 29, 2024 [Docket No. 199]. The "March MOR" means the Debtor's monthly operating report for the period from March 1, 2024 through March 31, 2024 [Docket No. 203].

[2] The "Reply" means the *Reply in Support of the Motion of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani to Compel the Debtor to (I) File Delinquent Monthly Operating Reports and (II) File Timely Future Monthly Operating Reports* [Docket No. 216].

[3] The "Trustee Motion" means the *Motion of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani for Entry of an Order Directing the Immediate Appointment of a Trustee Pursuant to 11 U.S.C. § 1104* [Docket No. 233].



June 10, 2024
Page 2

repayment of such unauthorized payments and (iii) mistakes and inaccuracies in the Debtor's monthly operating reports. The status of each of these issues is set forth below.

- *Income*. At the May 14 Hearing, counsel for the Committee expressed concerns that the Debtor has never reported income on his monthly operating reports, yet in several pleadings filed in this case noted that he receives income from his (now cancelled) radio show on WABC and his podcasts. *See* May 14 Hearing Tr. at 67:6-8. To address these concerns, the Court directed Debtor's counsel to send a letter to the case parties describing the Debtor's income situation. May 14 Hearing Tr. at 70:4-7. As described in greater detail in the Trustee Motion, on May 22, 2024, Debtor's counsel sent Committee counsel a letter describing the Debtor's income. This letter, however, only raised further questions and concerns, as it revealed a disturbing pattern where the Debtor earns tens of thousands of dollars each month from his radio and podcasting efforts, all of which gets paid to his wholly-owned business, Giuliani Communications. Yet, "[t]he Debtor has not received any compensation from Giuliani Communications as the income is used to pay expenses of the company."[4] This purported reason for the Debtor not receiving any compensation from Giuliani Communications does not align with the Debtor's *Periodic Report Regarding Value, Operations, and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest* [Docket No. 81], which lists Giuliani Communications' total expenses for 2023 as less than $70,000 (or less than three months of the compensation received by Giuliani Communications on account of the Debtor's podcasts and (now cancelled) WABC radio show). *See* Docket No. 81 at p. 14.

- *Unauthorized Postpetition Payments*. In the Trustee Motion, the Committee describes, among other things, numerous unauthorized postpetition payments made by the Debtor. Of these, only one has been adequately addressed: Debtor's counsel sent Committee counsel documentation confirming the return of the unauthorized $12,000 payment to the Debtor's former accountant who was never retained by Court order. Other than the return of this one payment, the Debtor has provided no evidence of repayment of the amounts the Debtor paid on account of the credit card statements of his wholly-owned business, Giuliani Partners, or his business's employee and the Debtor's reported girlfriend, Maria Ryan. Nor has the Committee received any indication that the Debtor has any inclination to obtain repayment of these amounts. Indeed, Debtor's counsel has indicated that Debtor's counsel does not perceive these payments as being improper but has provided no evidence to substantiate such view.

---

[4] In addition, at the May 14 Hearing, Ms. Schwartz, on behalf of the Office of the United States Trustee (the "U.S. Trustee") noted that the U.S. Trustee has requested the Debtor provide quarterly reporting with respect to his businesses, which had not been filed as of May 14 Hearing. As of the date hereof, the Debtor still has not filed the quarterly 2015.3 report requested by the U.S. Trustee, which reporting is highly relevant to the Committee's concerns raised in the Motion to Compel MORs, at the May 14 Hearing and in the Trustee Motion.



June 10, 2024
Page 3

- *Mistakes and Inaccuracies*. Despite the Committee identifying several mistakes and inaccuracies with respect to the Debtor's monthly operating reports, the Debtor has not filed a single amended monthly operating report since the commencement of this chapter 11 case. The mistakes and inaccuracies in the Debtor's monthly operating reports include: (i) the Debtor did not file any supporting documentation for his January monthly operating report (and, in fact, the supporting documentation that the Debtor informally sent to the Committee conflicted with the disclosures that the Debtor made publicly in such report); (ii) the February MOR attached as supporting documentation bank statements for February *2023*, which inapplicable bank statements appear to be the source for at least one figure in the February MOR form; and (iii) not a single "Cash balance end of month" line item in a given monthly operating report has matched the "Cash balance beginning of month" in the subsequent monthly operating report filed during the course of this entire case. Not one of these issues has been fixed.

Notably, the Committee raised each of these issues in the Trustee Motion, which was filed on May 28, 2024. The Debtor had nearly two full weeks to remedy and/or discuss these issues with the Committee but has failed to take any constructive actions in that time. Accordingly, the Debtor's "trust but verify" window has closed. The Committee will be prepared to address the issues raised herein at the hearing scheduled for June 17, 2024 on the Committee's Trustee Motion.

Sincerely,

Philip C. Dublin