AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

*Counsel to the Official Committee of*
*Unsecured Creditors of Rudolph W. Giuliani*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
|  |  |  |
|---|---|---|
| **In re:** | : | **Chapter 11** |
|  | : |  |
| **RUDOLPH W. GIULIANI** | : | **Case No. 23-12055 (SHL)** |
| **a/k/a RUDOLPH WILLIAM GIULIANI,** | : |  |
|  | : |  |
| **Debtor.** | : |  |

----------------------------------------------------------------x

**REPLY OF THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS TO**
**(I) THE DEBTOR'S OPPOSITION TO, AND (II) THE UNITED**
**STATES TRUSTEE'S STATEMENT CONCERNING, THE MOTION**
**OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF**
**RUDOLPH W. GIULIANI FOR ENTRY OF AN ORDER DIRECTING THE**
**IMMEDIATE APPOINTMENT OF A TRUSTEE PURSUANT TO 11 U.S.C. § 1104**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the

chapter 11 case of Rudolph W. Giuliani a/k/a Rudolph William Giuliani (the "Debtor"), by and

through its undersigned counsel, hereby files this reply (this "Reply") to (i) the Debtor's opposition

[Docket No. 250] (the "Opposition") to the *Motion of the Official Committee of Unsecured*

*Creditors of Rudolph W. Giuliani for Entry of an Order Directing the Immediate Appointment of*

*a Trustee Pursuant to 11 U.S.C. § 1104* (the "Motion")[1] and (ii) the *Statement of the United States Trustee Concerning Motion of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani for Entry of an Order Directing the Immediate Appointment of a Trustee Pursuant to 11 U.S.C. § 1104* [Docket No. 249] (the "UST Statement").  In response to the Opposition and the UST Statement and in further support of the Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.    The Opposition is a step-by-step guide for establishing "cause" requiring the appointment of a chapter 11 trustee pursuant to Bankruptcy Code section 1104(a)(1).  In ten pages consisting largely of statements against interest and six pages of "legal argument," the Debtor makes the Committee's case for the appointment of a chapter 11 trustee:

- *Section 1104(a)(1) cause – inappropriate relations between the Debtor and his wholly-owned business and conflicts of interest*:  "The Debtor operat[es] through an alter ego LLC [Giuliani Communications, LLC]."  Opposition at ¶ 5.

- *Section 1104(a)(1) cause – incompetence and inadequate recording-keeping and reporting*:  "[T]he Debtor may be struggling with some of the administrative aspects [of chapter 11]."  Opposition at ¶ 16.

- *Section 1104(a)(1) cause – incompetence and inadequate recording-keeping and reporting*:  The Debtor "concedes he needs to improve his adherence to administrative guidelines which is essential to the proper administration of the case."  Opposition at ¶ 24.

- *Section 1104(a)(1) cause – inappropriate relations between the Debtor and his wholly-owned business*:  "There is nothing new or unusual about the manner in which the Debtor operates.  He has always used the income he generates to pay business expenses and then use any remainder to cover his personal expenses."  Opposition at ¶ 30.

- *Section 1104(a)(1) cause – gross mismanagement of the estate, incompetence and inadequate recording-keeping and reporting*:  "The Debtor concedes that his compliance with the operating guidelines was not up to par."  Opposition at ¶ 38.

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

- *Section 1104(a)(1) cause – dishonesty, gross mismanagement of the estate, inappropriate relations between the Debtor and his wholly-owned business, conflicts of interest and breach of fiduciary duty*: "The Committee included a schedule of allegedly improper payments by the Debtor . . . . The schedule includes payments mostly from January and a few from March. The Debtor believes this is a positive improvement." Opposition at ¶ 39.

The Opposition is one of the rare instances in the Debtor's bankruptcy case where the Committee and the Debtor are in agreement on numerous points.

2.      The Opposition, however, also fails to address many points made in the Motion. Instead, the Debtor oddly repeats (i) the fact that the Committee is conducting a Court-approved Bankruptcy Rule 2004 investigation process and searching for "bodies" in quotes, without any related citations and despite the fact that the Committee has never used such in any pleading filed in, or hearing before, this Court, and (ii) the term "fishing expedition" apparently to describe the Committee's Bankruptcy Rule 2004 investigation to which the Debtor did not object and agreed to the deadline by when he and his wholly-owned businesses would produce documents. Finding "bodies" and conducting a "fishing expedition," however, are dependent upon the fish complying with this Court's 2004 Order.

3.      The fish with the most information, the Debtor and his wholly-owned businesses, have flagrantly defied this Court's 2004 Order. The deadline for the Debtor and his wholly-owned businesses to comply with the 2004 Order occurred on May 24, 2024. To date, the Debtor has produced just fifteen documents, and his wholly-owned businesses have not produced a single document. Moreover, the Debtor's counsel will not even reply to Committee counsel's correspondence regarding the Debtor's and his wholly-owned companies' blatant disregard of this Court's 2004 Order. The Debtor's attempt to divert attention from his egregious failure to comply with this Court's order, the Bankruptcy Code, the Bankruptcy Rules and the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "UST Operating

Guidelines") by repeating colorful terms is unavailing. Indeed, the Debtor has continued postpetition the same prepetition behavior of flouting court orders and ignoring his discovery-related obligations.

4.    Similarly, the Debtor's focus on the Committee not proving in the Motion that the Debtor has committed fraud is misplaced. While the Committee believes the Debtor and others may have committed fraud,[2] the Committee does not allege fraud as a cause for the appointment of a trustee pursuant to Bankruptcy Code 1104(a)(1). Rather, as the Motion makes clear, the Committee bases its request for the appointment of a chapter 11 trustee on different section 1104(a)(1) factors: (i) dishonesty, (ii) incompetence, (iii) gross mismanagement of the Debtor's affairs, (iv) inadequate record-keeping and reporting, (v) inappropriate relations between the Debtor and his wholly-owned businesses, (vi) conflicts of interest and (vii) breach of fiduciary duty; none of which the Debtor addresses in the Opposition.

5.    The Committee also finds the UST Statement to be curious given the facts of this case. The Debtor observes no corporate formalities. *See* 341 Meeting Tr. at 137:25-139:19. The Debtor has ignored the U.S. Trustee's request for additional reporting with respect to his wholly-owned businesses. *See* May 14 Hearing Tr. at 65:7-12. The Debtor has not complied with the UST Operating Guidelines. *See* Opposition at ¶ 38. The Debtor has not filed timely or accurate

---

[2]    The Motion provides that "the chapter 11 trustee and the Committee will now need to investigate whether the Debtor is liable for bankruptcy crimes through the use of his businesses to divert resources away from his estate and creditors in connection with his purported income that he allegedly never personally receives." Motion at ¶ 4. That investigation will consider, among other things, whether the Debtor violated sections 152 and 157 of title 18 of the United States Code. Section 152 (concealment of assets; false oaths and claims; bribery) "promotes disclosure and revelation by debtors, and furthers one of the main goals of the statute: identification of all the debtor's assets and affairs so that there can be an objective evaluation of each bankruptcy estate. Thus, the statute prohibits hiding assets from bankruptcy officers *and actively frustrating collection efforts by creditors.*" *United States v. Wagner*, 382 F.3d 598, 608 (6th Cir. 2004) (internal citation omitted). Section 157 (bankruptcy fraud) has three elements: (i) "the existence of a scheme to defraud or intent to later formulate a scheme to defraud," (ii) "'the filing of a document in a proceeding under' the Bankruptcy Code" and (iii) "for the purpose of executing or attempting to execute the scheme." *United States v. Henderson*, 2021 WL 3173261 at *4 (6th Cir. July 27, 2021).

monthly operating reports, as required by the UST Operating Guidelines.  *See generally* MOR Motion; Reply ISO MOR Motion; *see also* Motion at ¶¶ 51-52.  The Debtor has a history of ignoring court orders and continues to do so in this bankruptcy case.  *See, e.g.*, *Freeman et al. v. Giuliani*, No. 21-3354 (BAH) [Docket No. 94] (D.C. District Court memorandum opinion describing Giuliani's conduct in the Freeman Litigation); 2004 Order (the Debtor and his businesses missed their May 24, 2024 production deadline).  The Debtor has paid or facilitated the payment of unretained professionals.  *See* Docket No. 116-2 (disclosing postpetition, pre-retention payments to Camara & Sibley, LLP); March MOR at p. 19 ($12,000 payment to unretained accountant).  The Debtor has not followed through on his agreement with the U.S. Trustee to amend his schedules and statement with accurate and complete information.  *See* May 14 Hearing Tr. at 62:24-63:1; 341 Meeting Tr. at 35:13-18, 74:9-13, 78:1-79:20, 135:4-136:20, 140:18-21, 142:24-143:3, 152:11-153:15.

6.      Simply, the Motion and the Proposed Order are not meant to "punish" but to protect the creditors and the estate from the Debtor and the Debtor from himself.  In furtherance of this goal to protect, the time has come for the immediate appointment of a chapter 11 trustee.

## REPLY

### A.      The Committee's Reply to the Debtor's Opposition.

7.      The Debtor kicks off the Opposition with a disjointed summary of arguments that covers a range of topics.  The first of such topics is a stunning admission that he operates through "an alter ego LLC."  Opposition at ¶ 5.  This admission lays the groundwork for reverse veil piercing whereby the Debtor's creditors could look to the Debtor's "alter ego LLC" to satisfy their claims.  *See, e.g.*, *Citibank v. Aralpa Holdings Ltd. P'ship*, 2024 WL 398094 at *14 (S.D.N.Y. Feb. 2, 2024) (explaining that "the corporate veil will be pierced to achieve equity, even absent fraud, when a corporation has been so dominated by an individual or another corporation and its separate

entity so ignored that it primarily transacts the dominator's business instead of its own and can be call the other's alter ego."); *In re D'Alessio*, 2014 WL 201871 (Bankr. E.D.N.Y. Jan. 17, 2014) (explaining that "New York law recognizes reverse veil piercing, whereby a corporation will be held liable for the debts of a controlling shareholder or owner."). That type of admission leads to questions concerning the Debtor's competence, inappropriate relations with his wholly-owned businesses and conflicts of interest, each of which constitutes cause requiring the appointment of a trustee pursuant to Bankruptcy Code section 1104(a)(1).

8.      From there, the Debtor pivots to his expenditure of exempt funds to preserve "equity in his two apartments for the benefit of creditors." Opposition at ¶ 7. The creditors, however, have been asking the Debtor to sell his New York City apartment and Florida condominium for months. *See, e.g.*, Motion to Compel Sale. The Committee was crystal clear in the Motion to Compel Sale that the Debtor should sell his non-exempt assets, like his Florida condominium, as soon as possible and stop wasting funds and resources on assets that he cannot keep. *See, e.g.*, *id.* at ¶¶ 4, 22-23. The proceeds from the sale of the Debtor's non-exempt Florida condominium belong to his creditors, and the Debtor's delay and refusal to sell his multimillion-dollar homes should not be applauded, regardless of how any related upkeep expenses are paid.

9.      Finally, the Debtor takes on two more points in his opening summary. First, he pats himself on the back for "working on improving his compliance with administrative guidelines" while acknowledging his failure to comply with statutory reporting requirements. Opposition at ¶ 8. The Debtor has a long way to go. And, as we know all too well from the Debtor's prepetition conduct and conduct in this bankruptcy case, just because the Debtor says something does not make it true, and his conclusory statement that the Committee has not met its burden for the appointment of a trustee could not be less persuasive.

10.    Next, the Debtor offers a verbose introduction in which he paints himself as having had "a storied career" as a U.S. Attorney for the Southern District of New York, a two-term "Major of New York City," a Deputy Attorney General, a lawyer and a consultant.  Opposition at ¶ 12. But somehow, this former U.S. attorney, mayor and deputy attorney general cannot figure out how to file an accurate monthly operating report, "is not an accurate record keeper" and admits he needs to "improve his adherence to the administrative guidelines which is essential to the proper administration of the case."  Opposition at ¶¶ 17, 24.

11.    From there, the Debtor discusses his employment by Giuliani Communications, LLC ("GC") and how he runs his wholly-owned business, but he does so in a way that reveals the urgent need for the appointment of a chapter 11 trustee.  First, the Debtor has never provided any evidence of his employment by GC and does not include an employment agreement among his contracts on *Schedule G*.  *See* Docket Nos. 1, 129.  Second, he casually describes how all of his business opportunities are funneled through GC and that *his* gross income is deposited into GC. He does so as though it is completely acceptable for estate assets—his income—to be deposited into a non-Debtor's account and used to pay that non-Debtor's expenses, like wages to "his staff of two full time employees and three part time employees."  Opposition at ¶ 15.  This again shows mismanagement of estate assets, reveals an inappropriate relationship with his wholly-owned business and conflicts of interest between the Debtor and his wholly-owned business.

12.    And the conflicts of interest do not end there.  The Debtor lists five employees, including "Maria Ryan" and "Vanessa Federson," which appears to be a typo for Maria Ryan's daughter's alias, Vanessa Fenderson.[3]  Opposition at ¶ 15, n.1.  Maria Ryan is the Debtor's reported

---

[3]    Upon information and belief, Vanessa Ryan uses the alias Vanessa Fenderson.  "Vanessa Dawn Ryan" is listed on the Manchester County, New Hampshire voter rolls with a specific date of birth in 1986.  *See New Hampshire Department of State, Voter Information Lookup*, https://app.sos.nh.gov/voterinformation (last visited June 12, 2024).  "Vanessa Dawn Fenderson" is a defendant in two criminal cases pending in Wake County, North Carolina.

girlfriend, and she, like the Debtor and his wholly-owned companies, has completely ignored this Court's 2004 Order, producing no documents and refusing to respond to Committee counsel's outreach after she blew her deadline for production. The Debtor has provided no information about her employment by GC or related salary. In fact, the only information the Committee has received about Maria Ryan is in connection with the Debtor's January MOR whereby he provided Maria Ryan's credit card statement, which he paid, as supporting documentation for that operating report. *See* Decl. in Support, Ex. K. The Debtor has not offered any of his other employee's credit card statements as support for a monthly operating report.

13.    Additionally, the Debtor's list of employees in the Opposition conflicts with his sworn testimony at the 341 Meeting where he named his businesses' employees. 341 Meeting Tr. at 28:13-16. In the Opposition, he added a new employee, "Vanessa Federson." The Debtor has provided no information about her employment by GC or related salary. This means, in the Opposition, the Debtor is telling us that he is using his income to pay the salaries of his reported girlfriend and her daughter. The Debtor is admitting that his income, an estate asset, is being used to fund their salaries, as "employees" of his non-Debtor business, instead of distributions to creditors.

14.    Finally, the Debtor describes how he is paid after his salary is used for his wholly-owned business's expenses: he receives the "excess" as "personal income for payment of personal expenses." Opposition at ¶ 15. This means, throughout the bankruptcy case, GC has been in the red, never making one "excess" cent, or the Debtor is receiving "excess" and not accurately

---

In filings therein, Ms. Fenderson's (i) date of birth matches exactly that from the Manchester County, New Hampshire voter rolls for Vanessa Ryan and (ii) address is listed as the known address for Maria Ryan in Manchester, New Hampshire. *See State of North Carolina v. Vanessa Fenderson*, File Nos. 23CR423916-910, 23CR423919-910, *SBI Final Disposition Report* (filed Oct. 3, 2023), *Conditions of Release and Release Order* (entered Oct. 2, 2023). It is anyone's guess as to why the Debtor decided to refer in the Opposition to Vanessa Ryan by an alias.

reporting such amounts, as he has never reported wages, salary or compensation in a monthly operating report. The Debtor either continues to operate a failing business with estate assets at his creditors' expense, or the Debtor is, again, providing inaccurate financial disclosures. Regardless, the Debtor's own facts support a finding of cause for gross mismanagement, incompetence, inadequate record-keeping and reporting, inappropriate relations with his wholly-owned business, conflicts of interest and breach of fiduciary duty.

15.    Next, the Debtor makes a completely unsupportable statement, saying that "[w]hile the Debtor may be struggling with some of the administrative aspects [of chapter 11]"—massively understating his problems—"he has always been fully transparent and open about his finances." Opposition at ¶ 16. How the Debtor makes such a claim when he and his wholly-owned companies have refused to comply with this Court's 2004 Order or to provide accurate financial reporting is truly unbelievable. It is disappointing but not at all surprising that the Debtor would submit a pleading to this Court that peddles such an obviously false and misleading narrative.

16.    Finally, the Debtor concludes his introduction by continuing his campaign of indecency, recklessness and gross mismanagement of the estate by attacking the Freeman Plaintiffs and telling everyone, again, that he filed this bankruptcy case for one purpose: the "ability to appeal the Freeman judgment." Opposition at ¶ 18. And, apparently, instead of amending his inaccurate and incomplete schedules and statement or correcting his inaccurate and incomplete monthly operating reports, the Debtor has been working with two attorneys who have not been retained on a preliminary brief for his appeal of the Freeman Judgment. Opposition at ¶ 19, Ex. A. The problem, however, is that the Debtor has no authority to pursue an appeal of the Freeman Judgment.

17. Last month, this Court denied the Debtor's second request to modify the automatic stay, this time, to prosecute an appeal of the Freeman Judgment. *See* Docket No. 230. In a direct rebuke of this Court's ruling, the Debtor proclaims that "the Committee and indeed all of the parties, except the Debtor, have lost sight of the primary driver for the success or failure of this case – the Debtor's right and ability to appeal the Freeman judgment." Opposition at ¶ 18. It is the Debtor, not the Committee or this Court, that has lost sight of how to make this case successful. As this Court explained, lifting the stay to pursue an appeal of the Freeman Judgment:

> may be a discussion for later in the case if progress is made[,] if additional milestones or results are achieved where parties have a better sense of what the appropriate path forward is. That might include an argument and ruling on dischargeability [of the Freeman Plaintiffs' claims]. It might include progress on monetizing assets. But right now, given where the case is and my reading of the case, I don't see lifting the stay. ***I see it as an impediment to progress in the bankruptcy.***

May 14 Hearing Tr., at 60:2-9 (emphasis added). The fact that, despite this Court's ruling, the Debtor thinks it is appropriate to tell the Court that he "has been primarily and justifiably focused on prosecuting the appeal" as support for his opposition to a motion to appoint a trustee—a motion focused on his failure to comply with this Court's 2004 Order and the rules of the bankruptcy process—is baffling. The Debtor's fixation on the Freeman Judgment and the Freeman Plaintiffs is an impediment to progress in the bankruptcy that has led to the gross mismanagement of his affairs and breaches of fiduciary duties, each constituting cause warranting the appointment of a trustee.

## 1. The Debtor's Opposition Has a Misplaced Focus on Fraud.

18. The Debtor bewilderingly objects to the Motion and the appointment of a trustee on the grounds that the Debtor has not committed fraud. *See* Opposition at ¶¶ 25-33. Nowhere in the Motion does the Committee allege fraud constituting cause for the appointment of a chapter

11 trustee under Bankruptcy Code section 1104(a)(1). Although fraud may constitute cause under section 1104(a)(1), and the Committee may find that the Debtor has committed such acts after further investigation, the Motion instead sets forth the Debtor's dishonesty, incompetence, gross mismanagement of the Debtor's affairs, inadequate record-keeping and reporting, inappropriate relations between the Debtor and his wholly-owned businesses, conflicts of interest and breaches of fiduciary duty as the bases of cause for the appointment of a chapter 11 trustee. *See* Motion at ¶¶ 37-70.

19.    Ironically, the Debtor's argument that he has not committed fraud actually *supports* the Committee's argument that cause exists here to appoint a chapter 11 trustee as a result of the Debtor's incompetence. For example, the Debtor boasts that he has complied with his obligations under the Bankruptcy Rules by filing the Rule 2015.3 Report. Opposition at ¶¶ 28-29. However, the Debtor conveniently forgets to address his conflicting disclosures in his *Schedule A/B*, in which he includes only three wholly-owned entities. *See* Motion at ¶ 50.

20.    In fact, the Debtor's argument raises more questions than answers—he claims that, except for GC, all his wholly-owned businesses are "essentially dormant." Opposition at ¶ 29. The Committee struggles to understand how a business can be "essentially" dormant. A business either operates or it does not. Furthermore, Giuliani Partners certainly cannot be characterized as dormant, "essentially" or otherwise, as the MORs consistently show unauthorized payments made by the Debtor on behalf of Giuliani Partners, presumably for business expenses. *See* Decl. in Support, Ex. E, Ex. F; February MOR [Docket No. 199-2]; March MOR [Docket No. 203-2].

21.    Moreover, the Opposition states that:

> The mere fact that at the conclusion of most months, the gross revenue received does not exceed the expenses [of his businesses] – and hence no personal income to the Debtor – is not, as portrayed by the committee, a scheme to defraud creditors.

*Id*. at ¶ 30.  Again, the Committee has not alleged that the Debtor's seemingly poor business acumen is "a scheme to defraud creditors."  In fact, the Committee cannot yet determine whether the Debtor and his non-Debtor businesses are engaging in a scheme to defraud creditors because he and the businesses have brazenly ignored this Court's 2004 Order.  Without the provision of information that is required, the Committee's investigative efforts have been hamstrung.

22.      Strangely, the Debtor all but admits his own incompetence in no uncertain terms—"[m]aybe the Committee also has a suggestion on who would employ an 80 year old disbarred attorney."  *Id*. at ¶ 33.  By painting himself as an elderly, dishonest and unemployable individual, the Debtor himself has proven to the Court why a trustee must be appointed without delay.  If the Debtor is in no position to find and hold a job, then surely he is in no position to manage his estate as a debtor in possession.

23.      In addition to mischaracterizing the crux of the Committee's argument, the Debtor also mischaracterizes the benefits of a chapter 11 trustee and what would happen should the Court appoint a trustee.  The Debtor claims that the Committee has not explained how the appointment of a trustee will benefit the creditors.  *See id*. at ¶ 32.  This is false.  The Committee explained in detail how the benefits derived from the appointment of a trustee far exceed the costs of such an appointment.  *See* Motion at ¶ 81-83.  Importantly, a trustee can take control of all of the Debtor's books and records, the economic and corporate governance rights of the Debtor's wholly-owned companies, the sale of the Debtor's New York and Florida homes and the monetization of the Debtor's remaining non-exempt assets, while at the same time pursuing the recipients and/or beneficiaries of unauthorized postpetition payments and facilitating the return of estate assets that have been improperly diverted to non-Debtors.

24.     The Committee is not arguing that the Debtor should "work harder, more hours or longer hours." Opposition at ¶ 32. The Committee submits that the Debtor's estate should benefit from the work he actually does, not his girlfriend, his girlfriend's daughter or any other third party.

**2.     The Debtor's Contribution of Exempt Funds to the Estate Does Not Address the Committee's Numerous Arguments Regarding "Cause" for the Appointment of a Trustee.**

25.     Throughout the Opposition, the Debtor repeatedly references the fact that he has used exempt funds to pay his expenses during the chapter 11 case. *See* Opposition at ¶¶ 7, 15, 31, 38-40, p. 14. Yet, this fact is completely irrelevant to whether cause exists to appoint a trustee under Bankruptcy Code section 1104(a)(1) or whether appointment of a trustee is in the interests of creditors and the estate under Bankruptcy Code section 1104(a)(2).

26.     Notably, despite not missing a single opportunity to emphasize his use of exempt funds in this case, the Debtor has refused to commit for any particular time period to continue using exempt assets for non-exempt purposes. He even refused to engage in discussions with the Committee on this point in the context of agreeing to a reasonable budget. Likewise, at the April 4 Hearing, when asked by the Court whether the Debtor would commit to using exempt assets to pay the expenses associated with his Florida condominium for a certain period of time, Debtor's counsel replied, "I'm not in a position to make that commitment as I stand here." April 4 Hearing Tr. at 47:12-13. The Debtor is under no obligation to continue using exempt assets to fund his expenses, he has no source of new exempt cash and he is the sole reason why his non-exempt assets have yet to be monetized. Plainly, the Debtor's overwrought recitation regarding his use of exempt funds is a red herring, as using exempt assets for certain purposes does not relieve him of his utter failure to comply with Court orders, provide accurate record-keeping, act in a manner to maximize value and reduce liabilities or otherwise act in accord with his fiduciary duties. Indeed, the Debtor is using exempt assets for his own interests, specifically to support his Florida condo-

related expenses, because he continues to be under the mistaken belief that he will be able to retain

ownership of that non-exempt asset upon the conclusion of this case.  He is sorely mistaken in that

regard.

27.    Moreover, it appears that the reason the Debtor gives so much airtime in the

Opposition to his use of exempt assets is to somehow attempt to make up for (or at least divert

attention from) transactions with which the Committee takes issue in the Motion, as the Debtor

addressed these transactions in a section of the Opposition titled "The Debtor Has Contributed at

Least $206,000.00 of Exempt Funds to the Estate."  The Committee will respond to each of the

Debtor's arguments in respect of these transactions.

- *Nursing Home Payments* – The Debtor states that, in the Motion, the Committee alleges he improperly paid $28,000 for his ex-mother-in-law's nursing home.  Opposition at ¶ 35.  The Debtor misconstrues the Committee's argument.  The Committee solely cited the Debtor's conflicting testimony on the genesis of the payment of his former mother-in-law's nursing home expenses as one of many examples of the Debtor providing conflicting testimony, which provides support for the relief requested in the Motion as it reflects the Debtor's incompetence and/or dishonesty.  Contrary to what the Debtor alleges in the Opposition, the Motion does not discuss the merits of such payments or whether such were authorized or not.

- *Palm Beach Yacht Club Membership* – Here, the Debtor himself offers another example of his conflicting testimony, when he admits that, despite contrary testimony at the 341 Meeting, he is in fact a member of the Palm Beach Yacht Club.  *See* 341 Meeting Tr. at 92:10-93:2.  Likewise, the Debtor's schedules estimate $0 in monthly expenses for entertainment, clubs, recreation, newspapers, magazines and books.  *See Schedule J: Your Expenses*.  The Debtor places blame on his "imperfect memory," but at some point, the Debtor—who is required to attest to the accuracy of his filings and testimony—must take responsibility for the veracity of what he puts into the record under oath.  Opposition at ¶ 37.  And taking responsibility, as an honest debtor would, includes filing amendments to correct false financial disclosures.  The Debtor has not done so, and the time for him to do so has long passed.

- *Payments Made on Behalf of the Debtor's Businesses* – The Debtor states that payments he made on account of his businesses' expenses were "done out of habit – not fraudulent intent."  Opposition at ¶ 38.  But the Debtor's intent is irrelevant; the Committee is concerned with his incompetence and gross mismanagement of the estate.  The Debtor himself concedes that he "has in the

past frequently paid business expenses from his personal account but understands he can not [sic] continue to do so. But the Debtor is striving to adhere to the guidelines." *Id.* Since the Debtor has chosen to avail himself of the protections of the Bankruptcy Code, merely striving to adhere to its burdens is not enough. The Debtor, "who had a storied career as a U.S. Attorney for the Southern District of New York" should know better.[4] Opposition at ¶ 12.

28.    In sum, the Debtor's use of exempt funds to advance his own interests does not alleviate the Committee's concerns raised in the Motion or the fact that the appointment of a chapter 11 trustee is clearly warranted in this case.

### 3.    The Committee's Reply to the Debtor's Legal Argument.

### i.    The Debtor Is Not Entitled to an Evidentiary Hearing.

29.    In one paragraph, the Debtor attempts to make the argument that he is entitled to an evidentiary hearing on the Motion if the Court is inclined to grant the Committee's requested relief. In support of this argument, he cites two cases: *Wilmington Trust Co. v. AMR Corp. (In re AMR Corp.)* and *Powers v. American Honda Finance Corp.* Both cases, neither of which involves a motion to appoint a trustee, support the Committee's position that the Debtor is not entitled to an evidentiary hearing on the Motion.

30.    In *In re AMR Corp.*, a collateral trustee and an indenture trustee for certain secured notes issued and guaranteed by debtors appealed a bankruptcy court order denying their motion for adequate protection or, in the alternative, for relief from the automatic stay. 490 B.R. 470, 472 (S.D.N.Y. 2013). The collateral trustee and indenture trustee argued, among other things, that the bankruptcy court erred in failing to hold an evidentiary hearing on their motion. *Id.* at 479. The

---

[4]    Equally absurd is that the Debtor effectively congratulates himself for the fact that the Committee's schedule of unauthorized payments in the Motion "includes payments mostly from January and a few from March," which the Debtor believes is a "positive improvement." Opposition at ¶ 39. This is an admission that the Debtor, despite being aware of the issue, persists in making unauthorized payments. Moreover, although the Committee also identified questionable payments to "B&H Photo" in the April MOR, which appear to be business expenses, the Debtor conveniently failed to address these payments in the Opposition.

district court rejected that argument, explaining that it is unnecessary to conduct an evidentiary hearing on a contested matter where "the core facts are not disputed." *Id.* (citation omitted). In such case, the bankruptcy court is authorized to determine the contested matters on the pleadings and arguments of the parties, drawing necessary inferences from the record. *Id.*

31.    Similarly, in *Powers v. American Honda Finance Corp.*, the district court rejected an appellant's argument that the bankruptcy court erred by not holding an evidentiary hearing before granting the appellee's motion for relief from the automatic stay in the debtor's chapter 7 case. 216 B.R. 95, 97 (S.D.N.Y. 1997). In this case, the chapter 7 debtor's president and sole shareholder ("Powers") sought to reinstate the automatic stay and a stay pending appeal of the order granting various secured creditors relief from the stay. *Id.* at 97. In turn, an appellee moved for sanctions against Powers for his failure to attend a re-scheduled deposition. *Id.* The district court imposed sanctions and affirmed the bankruptcy court's order modifying the stay. *Id.* at 97, 98. The district court explained that an evidentiary hearing was not required because the evidence and allegations before the bankruptcy court were not disputed. *Id.* at 97.

32.    As previously discussed, the Committee and the Debtor actually agree on myriad points. However, the Debtor makes a conclusory statement that "there exist disputed issues of material fact" but never actually identifies those disputed issues of material fact. Indeed, other than unsupported conclusory statements contradicted by the record, the Opposition does not actually dispute any of the facts in the Motion. Instead, the Debtor only disputes allegations of fraud, which were not included in the Motion and do not form the basis for the relief requested by the Motion.

33.    Accordingly, pursuant to the Debtor's own case law, he is not entitled to an evidentiary hearing, and this conclusion is further supported by relevant case law considering this

question in the context of a motion to appoint a trustee. *See, e.g.*, *In re Sillerman*, 605 B.R. 631, 641 (Bankr. S.D.N.Y. 2019) (announcing that "bankruptcy courts have wide discretion in considering the relevant facts and are not required to conduct a full evidentiary hearing in considering a motion for the appointment of a chapter 11 trustee"); *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990) (recognizing that "in considering a motion for the appointment of a trustee, a bankruptcy court is not required to conduct a full evidentiary hearing").

### ii.     The Committee Has Met its Burden for the Appointment of a Chapter 11 Trustee.

34.     There can be no real dispute that the Committee clearly has met its burden for the appointment of a chapter 11 trustee in this case. Despite the Debtor's protestations to the contrary, the Motion does not contain "conclusory allegations of wrongdoing . . . intended to mask the specific allegations necessary for the appointment of a trustee" that "fall well short of clear and convincing evidence." Opposition at p. 12. Rather, the Motion contains twenty-five pages applying the law to actual, undisputed facts. Among the clear and convincing evidence supporting the appointment of a chapter 11 trustee are the following uncontroverted facts:[5]

- Following the Petition Date, the Debtor paid Maria Ryan's and the Debtor's wholly-owned business's credit card bills for months. *See* January MOR; Decl. in Support, Ex. F.

- Every single monthly operating report filed by the Debtor is inaccurate. *See, e.g.*, December MOR at p. 2; January MOR at p. 2 (December "Cash balance end of month" and January "Cash balance beginning of month" do not match).

- Except for the April operating report, the Debtor has filed every monthly operating report late. *See* December MOR (filed seven days late); January MOR (filed two days late); February MOR (filed 42 days late); March MOR (filed 14 days late).

---

[5] The Supreme Court has described the "clear and convincing evidence" standard as requiring the factfinder to determine that the truth of the factual contentions are "highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984). The facts set forth in the Motion (i) are undisputed; (ii) based on the Debtor's sworn testimony, filings signed under penalty of perjury or other filings and letters signed by his counsel; and/or (iii) are supported by court order; thus, the facts relied upon by the Committee are "highly probable."

- The Debtor's financial disclosures include conflicting information about his material assets. *Compare Schedule A/B*, Part 4, Question 19 (listing three wholly-owned entities) *with* Rule 2015.3 Report (listing six wholly-owned entities).

- The Debtor's financial disclosures fail to comply with the instructions promulgated by the U.S. Trustee. *See, e.g.*, *Schedule A/B*, Part 2, Question 12 (failing to separately describe and list individual items worth more than $500).

- The Debtor has limited knowledge of his material assets. Dep. of R. Guiliani Tr. at 23:1-25; 27:2-5; 27:17-19; 32:1-2.

- Throughout the bankruptcy case, the Debtor has not been forthcoming with disclosures related to his assets and finances. *See* Decl. in Support, Ex. C, Ex. D, Ex. G.

- All of the Debtor's known income is funneled to his "alter ego" non-Debtor wholly-owned business. *See* Decl. in Support, Ex. G.

- The Debtor provides false and conflicting sworn testimony. *Compare* 341 Meeting Tr. at 23:2-10 *with* Dep. of R. Giuliani Tr. at 36:12-13; *compare* 341 Meeting Tr. at 92:10-12, 93:3-4, 8-10 *with* April MOR at p. 13.

- For months, the Debtor's schedules and statement have required further amendment and disclosures, but no such amendments and disclosures have been filed. *See* Docket No. 133, Recitals; Docket No. 222, Recitals; May 14 Hearing Tr. at 62:24-63:1.

- The Debtor refuses to take steps to monetize his non-exempt assets, preferring instead to pay tens of thousands of dollars in fees and maintenance expenses for those non-exempt assets. *See* Docket No. 155 ¶¶ 16-18.

- The Debtor and his wholly-owned businesses failed to comply with this Court's 2004 Order. Motion ¶ 31.

- The Debtor has a prepetition history of "willful[ly] shirking [] his discovery obligations in anticipation of and during this litigation, including the failure to preserve potentially relevant evidence." *Freeman et al. v. Giuliani*, No. 1:21-cv-03354-BAH [Docket No. 94, at 5].

- The Debtor flouted the Freeman Judgment and, following the Petition Date, continued to defame the Freeman Plaintiffs, which led to an emergency adversary proceeding, the wasteful expenditure of estate resources, the issuance of an injunction against the Debtor and the creation of unnecessary administrative expense claims. *See generally Freeman et al. v. Giuliani*, Adv. Pro. No. 24-01355 (SHL) [Docket No. 1]; *Freeman et al. v. Giuliani*, No. 21-3754-BAH [Docket No. 16]; Claim Nos. 8, 9.

35.     And, in the Opposition, the Debtor added additional clear and convincing evidence
that supports the relief requested by the Motion:

- The Debtor operates "through an alter ego LLC."  Opposition at ¶ 5.

- The Debtor's "gross income for his services are [*sic*] deposited into" GC. "From the revenue received[,] he pays his staff . . . and other business expenses, with any excess paid to him as personal income for payment of his personal expenses."  Opposition at ¶ 15.

- "The Debtor may be struggling with some of the administrative aspects [of chapter 11]."  Opposition at ¶ 16.

- Any plan the Debtor is prepared to propose would be "virtually meaningless." Opposition at ¶ 20.

- The Debtor "concedes he needs to improve his adherence to the administrative guidelines which is essential to the proper administration of the case." Opposition at ¶ 24.

- The Debtor "has always used the income he generates to pay business expenses and then use any remainder to cover his personal expenses."  Opposition at ¶ 30.

- "The Debtor concedes his compliance with operating guidelines was not up to par."  Opposition at ¶ 38.

The Debtor, through his prepetition and postpetition conduct and the additional statements against
interest contained in the Opposition, provides more than enough evidence to show that the
Committee has satisfied its burden under Bankruptcy Code section 1104(a) that a chapter 11
trustee must be appointed.

### iii.     Cause Exists Requiring the Appointment of a Chapter 11 Trustee Pursuant to Section 1104(a)(1).

36.     The Debtor begins this portion of his "legal argument" by citing to case law about
corporate debtors and their "management" and dishonestly reducing the serious issues plaguing
the Debtor and his case to "financial problems," "insolven[cy]" and "imprudent business
decisions."  Opposition at p. 13.  He continues his campaign by falsely stating that "all of his
financial assets have been laid bare before" the Committee, which is particularly galling in light

of his and his wholly-owned businesses' failure to comply with this Court's 2004 Order and his acknowledgment that his financial reporting to date has been incomplete and inaccurate.

37.     Then, instead of attempting to refute the Committee's allegations of cause one by one, the Debtor puts forth an argument of five paragraphs and therein mischaracterizes three cases cited by the Committee and blatantly seeks to mislead this Court about facts that cannot be refuted.

38.     First, the Debtor flags *In re Sillerman* and states that the Committee "relies on the decision . . . as if the facts of that case are the same as the instant action." Opposition at p. 14. However, the facts of *In re Sillerman* that the Debtor highlights for distinction are the same facts that do exist here. He states that the facts in that case are "replete with examples of the Debtor's failure to comply with the Bankruptcy Code and his obligations thereunder." Opposition at p. 14. The Debtor has failed to comply with the Bankruptcy Code and his obligations thereunder, from his inaccurate and incomplete schedules and statement, to his late-filed inaccurate and incomplete monthly operating reports, to his unauthorized payment of his reported girlfriend's credit card bills and his wholly-owned business's credit card bills, to his flagrant violation of the 2004 Order, to the diversion of his income from the estate and to his wholly-owned business.

39.     Then, the Debtor characterizes *In re Sillerman* as involving a motion to appoint a trustee where the debtor "flagrantly defied the court." Opposition at p. 14. Again, by failing to comply with the 2004 Order, the Debtor and his wholly-owned businesses have done just that: flagrantly defied this Court.

40.     What the Debtor claims next is truly astonishing, as it lacks any tether to reality. "The debtor in *Sillerman* was making unauthorized transactions with non-debtor affiliated entities. Mr. Giuliani is doing no such thing." Opposition at p. 14. In nearly every monthly operating report, the Debtor relies upon his non-Debtor, wholly-owned businesses' credit card statements as

supporting documentation for his disbursements.  *See* Decl. in Support, Ex. E, Ex. F; February MOR, March MOR.  That means, nearly every month, the Debtor is "making unauthorized transactions with non-debtor affiliated entities."  The Debtor's attempt to distinguish the facts of *In re Sillerman*, where the court ordered the appointment of a trustee, from the facts of this case fails miserably and further displays the Debtor's lack of candor, which supports ordering the appointment of a trustee.

41.     Second, the Debtor turns to *In re Ashley River Consulting, LLC* and puts forth an incoherent argument that seems to emphasize irrelevant points from that opinion.  The court in that case concludes cause exists to appoint a chapter 11 trustee based on the Debtor's current management's prepetition and postpetition conduct.  2015 Bankr. LEXIS 1008 at *30 (Bankr. S.D.N.Y. Mar. 31, 2015).  It is unclear what point the Debtor is trying to make by referencing the *Ashley River Consulting, LLC* debtors' principal's prepetition fraud, gross, wanton and willful misconduct and being found to be an alter ego of one of the debtors.  Opposition at p. 15.  The Debtor here was found to have engaged in gross, wanton and willful prepetition misconduct and admits to operating through an "alter ego LLC" in the Opposition.  *See, e.g.*, *Freeman et al. v. Giuliani*, No. 21-3354 (BAH) [Docket No. 138]; Opposition at ¶ 5.

42.     Next, the Debtor, in bold type, inexplicably states:  "the fact that the debtor's prior management might have been guilty of fraud, dishonesty, incompetence, or gross mismanagement does not necessarily provide grounds for the appointment of a trustee under § 1104(a)(1)" but fails to explain why that matters.  Opposition at p. 15.  There is no "prior management" here for the Debtor.  We just have the Debtor who continues to run his wholly-owned non-Debtor business as his alter ego and continually fails to comply with his obligations under the Bankruptcy Code, the Bankruptcy Rules and this Court's orders.  The court there explains that the "focus in its analysis

pursuant to § 1104(a)(1) is on a debtor's current management, not the misdeeds of past management." 2015 Bankr. LEXIS 1008 at *29. Applied here, that means the focus should be on the Debtor, and consistent with that guidance, the Committee's analysis in the Motion is focused on the Debtor and his prepetition and postpetition misconduct.

43.    Third, the Debtor completely mischaracterizes *In re Denrose Diamond* alleging that the facts are "inapposite" because "the decision therein was based on a motion to convert a chapter 11 bankruptcy case to a chapter 7 bankruptcy case and not an application for the appointment of a trustee." Opposition at p. 15. In that case, the court ordered the appointment of a chapter 11 trustee based on creditors' motion for an order converting the case to chapter 7 or, in the alternative, appointing a chapter 11 trustee. 49 B.R. 754, 755, 759-60 (Bankr. S.D.N.Y. 1985). That case is particularly relevant because, in its ruling, the court emphasized facts that also exist here: (i) "the Debtor's monthly statement of operations that were submitted fail to comply even minimally with the guidelines"; (ii) the debtor's "unwillingness to comply with the disclosure required of all Chapter 11 debtors demands rectification"; (iii) "the Debtor's failure to comply with the guidelines has had the immediate consequence of keeping its creditors in the dark as to its financial performance while at the same time raising several disturbing issues of concern to its creditors and anyone who would attempt to understand its prospects"; and (iv) "this is a case where the financial statements that have been filed raise significant questions and the Debtor failed to file any further financial statements . . . . [s]uch conduct demands the appointment of a trustee to cure the debtor's incompetence" . . . and is in the best interest of creditors." *Id*. at 758, 759.

44.    Accordingly, the Debtor's attempt to refute the Committee's establishment of cause requiring the appointment of a trustee falls flat. In short, he has failed to refute any of the bases

upon which the Committee seeks the appointment of a chapter 11 trustee.  In fact, the Debtor's

wanton disregard for the facts, the law and this Court's rulings mandate such an appointment.

###### iv.    The Appointment of a Trustee Is in the Interest of Creditors and the Estate.

45.    The Debtor argues that the appointment of a trustee is not in the best interests of

the creditors as required under Bankruptcy Code section 1104(a)(2).  Unsurprisingly, as has been

his modus operandi in previous filings, the Debtor barely responds to the Committee's thirteen

paragraphs addressing this factor, which painstakingly lay out the standard for appointing a

chapter 11 trustee under section 1104(a)(2) and apply the case law to the facts of the present case.

*See* Opposition at pp. 15-16; Motion at ¶¶ 71-83.  Furthermore, the one case the Debtor cites in

support of the proposition that the costs of appointing a trustee outweigh the benefits to the estate

is inapposite to the facts here.

46.    The Debtor cites to *In re General Oil Distributors, Inc*. to support its argument that

the appointment of a trustee is not in the best interests of the creditors.  42 B.R. 402 (Bankr.

E.D.N.Y. 1984).  However, the use of that case is wildly misleading as the facts of *In re General*

*Oil Distributors, Inc*. are vastly different from those here.  In determining to deny a motion to

appoint a trustee, the court there explicitly highlighted certain facts:  (i) the debtor's attorneys had

diligently been working towards confirmation of a plan of reorganization, (ii) a creditor's

committee opposed the trustee motion, (iii) the corporate debtor had shown significant profits

under the present management and (iv) there was no evidence of postpetition wrongdoing by the

present management.  *Id*. at 410-11.  None of the aforementioned factors are present here.  Indeed,

the opposite of each is true.  As such, this case does not provide support for the Debtor's position.

47.    Additionally, the Debtor comically points to "delay" as a cost outweighing the

benefits of a trustee.  However, the Committee does not need to remind this Court that throughout

the case, all the Debtor has done is engage in delay tactics to fulfill his only goal for this case: appealing the Freeman Judgment. The Opposition is just one more transparent attempt to further delay progress in this case and focus on an appeal that the Debtor has no authority to pursue. *See Order Denying Debtor's Motion for an Order Modifying the Automatic Stay for the Limited Purpose of Allowing the Debtor to Proceed with Prosecuting and Perfecting the Freeman Appeal Before the D.C. Circuit* [Docket No. 230]. Moreover, attaching a preliminary appellate brief as an exhibit to the Opposition is nonsensical, completely irrelevant to the issue of whether a trustee should be appointed and risks waiving the Debtor's privileges. And, attaching the brief itself says absolutely nothing about the relative merits and chances of success of the arguments therein. In sum, using the Opposition as a back door to reargue issues for which this Court has slammed the front door has no relevance to the relief requested in the Motion.

48.     Oddly, the Debtor argues that the "delay" associated with the need to familiarize any trustee with the Debtor's own assets and liabilities should preclude the appointment of a trustee. Opposition at p. 16. However, as set forth in the Motion and is clear from the Debtor's own testimony, the Debtor does not understand his own assets and liabilities. *See* Motion ¶ 50.

49.     Rounding out the Debtor's paltry argument, the Debtor asserts that the Committee's "strongest argument" for the appointment of a trustee is the Debtor's prepetition behavior in the Freeman Litigation. *Id.* However, as everyone knows, the Debtor's appalling behavior continued postpetition and led to an emergency adversary proceeding, the issuance of an injunction against the Debtor and the filing of two administrative expense claims. *See Freeman et al. v. Giuliani*, Adv. Pro. No. 24-01355 (SHL) [Docket No. 1]; *Freeman et al. v. Giuliani*, No. 21-3754-BAH [Docket No. 16]; Claim Nos. 8, 9.

50.     The Debtor argues that the Court cannot "punish" the Debtor for "conduct that allegedly took place prior to filing for bankruptcy protection."  Opposition at p. 16.  First, the Committee is perplexed as to why the Debtor has characterized this behavior as "alleged" when the behavior in question is detailed in a reasoned opinion by the D.C. District Court.  *See Freeman et al. v. Giuliani*, No. 1:21-cv-03354-BAH [Docket No. 94].  Second, this proposition is false.  As discussed more fully in the Motion, a Court may account for a debtor's prepetition misconduct that continues postpetition when determining whether to appoint a trustee.  *See In re Ashley River Consulting, LLC*, 2015 Bankr. LEXIS 1008, at *25.  And the Debtor's history of ignoring court orders and flouting discovery obligations lives on in this case through his blatant disregard of this Court's 2004 Order.  As such, the Court can and should consider both the Debtor's prepetition and postpetition misconduct when deciding whether to appoint a chapter 11 trustee.

51.     Accordingly, the Debtor fails to put forth any arguments in the Opposition that militate against the appointment of a trustee.  Instead, the Opposition serves to demonstrate why a chapter 11 trustee is necessary in this case.

**B.      The Committee's Reply to the UST Statement.**

52.     In the UST Statement, the U.S. Trustee declines to take a position with respect to the Committee's request for the appointment of a trustee but asserts that, if the Court directs the appointment of a trustee, certain provisions in the Proposed Order should not be adopted.  UST Statement at p. 3.  Specifically, the UST Statement raises concerns with paragraphs two, four and five of the Proposed Order.  The Committee addresses each of these concerns in turn.

**1.      Proposed Order, Paragraph Two.**

53.     With respect to paragraph two of the Proposed Order, the U.S. Trustee asserts that this Court should not impose consultation duties upon the U.S. Trustee "that stray from the specific

provisions of the Code." *Id.* The Committee disagrees with the U.S. Trustee's contention that the proposed terms diverge from the provisions of the Bankruptcy Code.

54.    Paragraph two of the Proposed Order states, "[t]he U.S. Trustee, after consultation with the Committee, is directed to immediately appoint, subject to Court approval, one disinterested person as a chapter 11 trustee for the Debtor." *Id.* Meanwhile, the Bankruptcy Code provides that "[i]f the court orders the appointment of a trustee . . ., then the United States trustee, after consultation with parties in interest, shall appoint, subject to the court's approval, one disinterested person other than the United States trustee to serve as trustee . . . ." 11 U.S.C. § 1104(d). The Proposed Order does not say that the U.S. Trustee must consult **solely** with the Committee. Accordingly, under the terms of the Proposed Order, the U.S. Trustee is not foreclosed from consulting with whichever parties he chooses.[6]

55.    Not only does paragraph two of the Proposed Order comport with Bankruptcy Code section 1104(b), but also it finds support in the U.S. Trustee Program Manual and Policies ("UST Program Manual"). *See* U.S. Dep't of Justice, UST Program Manual § 3-6.3.2 (Dec. 2022). Specifically, the UST Program Manual directs the U.S. Trustee to "solicit the views of 'parties in interest' as section 1104(d) requires," noting that "[a]lthough the Bankruptcy Code does not specify the parties the United States Trustee should consult, at a minimum, the United States Trustee should confer with the debtor, any official committees. . . and any key creditors . . . who

---

[6]    The UST Statement also misquotes the Proposed Order, stating that the Proposed Order provides that the U.S. Trustee must immediately appoint a trustee "**upon** consultation with the Committee." UST Statement at p. 3 (emphasis added). This typographical error implies that the Proposed Order requires appointment of a trustee immediately following, and as a direct result of, discussions with the Committee, yet this is not how the Proposed Order is drafted. The Proposed Order was drafted carefully to require, *after* consultation with the Committee— but not as an immediate consequence of such consultation and not to the exclusion of consultation with other parties—the U.S. Trustee's immediate appointment of a chapter 11 trustee.

are expected to play an active role in the chapter 11 case." *Id.* The Committee merely intended to ensure it was one such party in interest with whom the U.S. Trustee will consult.

56.     The second issue that the U.S. Trustee raises with respect to paragraph 2 of the Proposed Order is that the Proposed Order requires the "immediate" appointment of a chapter 11 trustee. The U.S. Trustee notes that Bankruptcy Code section 1104(d) does not impose a timeline for the U.S. Trustee's appointment of a chapter 11 trustee, and the Committee does not disagree. Nevertheless, the UST Program Manual again supports the terms of the Proposed Order, stating that "[t]he process of selecting a trustee or examiner should occur as promptly as possible once the court has ordered that a trustee or examiner be appointed" and that "[i]n some larger and more complex cases, and when expediency may require it, the United States Trustee should begin identifying candidates even before entry of the order directing the appointment if it is reasonably certain an appointment will be ordered." UST Program Manual § 3-6.3.1. The UST Program Manual goes on to explain that, even though an order directing the appointment of a trustee creates a 30-day window within which parties may request a creditors' meeting to be held to elect a trustee, "the United States Trustee is not required to—and should not—wait before appointing a trustee because of the prospect of an election." *Id.* As a result, the U.S. Trustee's own guidelines underscore the haste with which a chapter 11 trustee should be appointed, and the terms of the Proposed Order do not conflict with this guidance.

### 2.    Proposed Order, Paragraph Four.

57.     Next, the U.S. Trustee argues that paragraphs four and five of the Proposed Order "seek[] to vitiate the independent business judgment of the chapter 11 trustee by mandating—even before the trustee has an opportunity to conduct even the most cursory of investigations—that" the trustee take control of the Debtor's wholly-owned businesses. UST Statement at p. 4. The Committee strenuously disagrees with the U.S. Trustee's characterization of the intentions of the

Proposed Order and with the U.S. Trustee's arguments about the effect it would have on a trustee's ability to exercise his or her business judgment.

58.     Bankruptcy Code section 541 provides that the commencement of a chapter 11 case creates a bankruptcy estate comprised of, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In addition, Bankruptcy Code section 1108 provides that "the trustee may operate the debtor's business." 11 U.S.C. § 1108. Moreover, several cases that have considered whether a trustee has the right to control a debtor's wholly-owned entity where the shares of the entity are property of the estate have held that a chapter 11 trustee, standing in the shoes of a debtor, "possesses both the economic and governance rights to participate in the management of [the wholly-owned entity] that the [d]ebtor himself enjoyed prior to his bankruptcy filing." *In re Modanlo*, 412 B.R. 715, 731 (Bankr. Md. 2006); *see also In re Albright*, 291 B.R. 538, 541 (Bankr. D. Colo. 2003) (holding that, upon debtor's bankruptcy filing, trustee became sole member of debtor's wholly-owned limited liability company, so trustee consequently "controls, directly or indirectly, all governance of that entity"); *In re Kwok*, No. 22-50073 (JAM) [Docket No. 717] (Bankr. D. Conn. Aug. 10, 2022) (order confirming chapter 11 trustee holds all economic and governance rights, for the benefit of the estate, with respect to all corporate entities owned and/or controlled by debtor).[7]

59.     Here, using GC as an example, the Debtor's ownership interest in GC constitutes property of the estate.[8] *See* N.Y. Limited Liab. Comp. Law § 601 ("A membership interest in the limited liability company is personal property."). If a chapter 11 trustee were to be appointed, then

---

[7]   The order entered at Docket No. 717 in *In re Kwok*, an excerpt of the transcript of the first related hearing at Docket No. 714 and the transcript of the second related hearing at Docket No. 746 are attached hereto as **Exhibits A**, **B** and **C**, respectively.

[8]   The Debtor himself reported these ownership interests as assets of the estate in his Schedules. *See* Further Amended Schedules, *Schedule A/B: Property*, Part 4, Question 19; *see also* Rule 2015.3 Report (noting that the Debtor holds 100% of the interests in each of his businesses).

the trustee would step into the shoes of the Debtor and have all rights that the Debtor previously had with respect to the Debtor's ownership interests in GC, including the right to control the management of GC. *See In re Albright*, 291 B.R. at 541. As a result, through paragraph four of the Proposed Order, the Committee seeks to obtain confirmation that a chapter 11 trustee has the right to control the management of the Debtor's wholly-owned businesses through the trustee's control of the ownership interests.

60.    Finally, like in *In re Kwok*, it is critical that a chapter 11 trustee have clarity with respect to his or her managerial control of the Debtor's wholly-owned businesses without delay, because any delay here could hinder a trustee's ability to identify and recover property of the estate. *See In re Kwok*, No. 22-50073 (JAM) [Docket No. 598] (Bankr. D. Conn. July 23, 2022) at ¶ 18. To date, the Debtor's wholly-owned businesses have flouted their Bankruptcy Rule 2004 discovery obligations and are a key piece of the puzzle with respect to the Debtor's financial situation, so a trustee should have clarity immediately upon appointment that he or she can control the management of the Debtor's businesses and effectively investigate their finances and operations. As a result, contrary to the U.S. Trustee's contention, paragraph four of the Proposed Order does nothing to curtail a trustee's independent business judgment; any decision that a trustee may make with respect to the management or investigation of the Debtor's wholly-owned businesses would be a clear exercise of such independent business judgment.

61.    In addition, the U.S. Trustee argues against a trustee's taking control of the Debtor's wholly-owned businesses based on the Bankruptcy Code's requirement that a chapter 11 trustee post a bond in favor of the United States. *See* 11 U.S.C. § 322(a). The U.S. Trustee asserts that, should the Proposed Order be entered, a chapter 11 trustee may be subjected to potential liabilities

(i) without the benefit of an opportunity to investigate the wholly-owned businesses and

(ii) without having obtained a bond.  UST Statement at p. 5.  This is incorrect.

62.     The bonding requirement should operate no differently in this case than any other

case in which a bankruptcy estate includes a debtor's ownership interests in a limited liability

company.   Bankruptcy Code section 322(b)(2) provides that the United States trustee shall

determine the amount of a bond required to be posted by the trustee and the sufficiency of the

surety on such bond.  11 U.S.C. § 322(b)(2).  The UST Program Manual instructs:

> The United States [sic] should evaluate the assets of the estate when
> initially fixing the amount of the bond and should review those
> assets periodically to determine whether the amount of the bond
> continues to be appropriate.  The bond should be set at a level
> sufficient to ensure the confidence of the parties, taking into account
> the fact that the estate will bear the cost of the bond premium.
>
> If the cost of the bond appears prohibitive, the United States Trustee
> should explore the possibility of establishing joint signature
> accounts with the trustee.  This can provide additional security for
> the estate while resulting in a smaller bond requirement and lower
> premiums.

UST Program Manual § 7-2.2.4.

63.     In sum, the U.S. Trustee should evaluate the assets in the Debtor's estate, which

include the ownership interests in his wholly-owned businesses, in the same manner that the U.S.

Trustee would in any other case.  The ownership interests compose part of the Debtor's estate

whether a chapter 11 trustee controls the management of the applicable entities or not.

### 3.     Proposed Order, Paragraph Five.

64.     The U.S. Trustee also takes issue with the language in paragraph 5 of the Proposed

Order that directs the Debtor and any other individual or entity in possession of the Debtor's

records and property of the estate to immediately turn over to the chapter 11 trustee all such records

and property in their possession or control.  UST Statement at pp. 5-6.  Similar to the U.S. Trustee's

argument with respect to paragraph four, the U.S. Trustee asserts that this provision interferes with the trustee's independent business and professional judgment.[9]

65.     The U.S. Trustee cites no legal authority for the proposition that non-Debtor individuals and entities may retain estate property.  In fact, any suggestion that non-Debtor individuals and entities should be permitted to retain estate property appears antithetical to Bankruptcy Code section 542, which expressly mandates delivery to the trustee of any property that the trustee may use, sell or lease.  *See* 11 U.S.C. § 542(a).  Likewise, it is unclear why Bankruptcy Code section 542(e) does not govern with respect to the Debtor's records.  Any party claiming an entitlement to estate property or asserting privilege with respect to particular records could come to this Court and make such an argument.

66.     The Committee maintains that the terms of paragraphs two, four and five of the Proposed Order do not conflict with the Bankruptcy Code, comport with the U.S. Trustee's own guidelines and should not be controversial.

---

[9]     The U.S. Trustee argues that "the chapter 11 trustee should have an opportunity to determine in the exercise of his or her independent business and professional judgment what documents may be of value to the chapter 11 trustee."  UST Statement at p. 5.  The Committee cannot understand how a trustee will know what documents will be "of value" without actually having and reviewing such documents.

## **CONCLUSION**

67.     For all the foregoing reasons and the reasons set forth in the Motion, the Committee

respectfully requests that the Court (i) overrule the Opposition, (ii) grant the relief requested in the

Motion, (iii) enter the Proposed Order and (iv) grant such other and further relief as is just, proper

and equitable.

Dated: June 13, 2024
      New York, New York

*/s/ Philip C. Dublin*

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Tel:    (212) 872-1000
Fax:    (212) 872-1002
Email:  idizengoff@akingump.com
         pdublin@akingump.com
         aqureshi@akingump.com

- and -

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Tel:    (214) 969-2800
Fax:    (214) 969-4343
Email:  rbibloblock@akingump.com

*Counsel to the Official Committee of*
*Unsecured Creditors of Rudolph W. Giuliani*

## **EXHIBIT A**

*In re Kwok*, No. 22-50073 (JAM) [Docket No. 717]

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

```
-----------------------------------------------------x
                                        :
In re:                                  :    Chapter 11
                                        :
HO WAN KWOK,                            :    Case No. 22-50073 (JAM)
                                        :
          Debtor.                       :
                                        :
-----------------------------------------------------x
```

**ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 363, 521, 541, 1108, AND 1505, (A) CONFIRMING THAT CHAPTER 11 TRUSTEE HOLDS ALL OF DEBTOR'S ECONOMIC AND CORPORATE GOVERNANCE RIGHTS IN DEBTOR-CONTROLLED ENTITIES, (B) AUTHORIZING CHAPTER 11 TRUSTEE TO ACT IN ANY FOREIGN COUNTRY ON BEHALF OF ESTATE, AND (C) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of Mr. Luc A. Despins, in his capacity as the chapter 11 trustee (the "Trustee") appointed in the chapter 11 case of Ho Wan Kwok (the "Debtor"), for the entry of an order (this "Order"), pursuant to sections 363, 541, 1108, and 1505 of title 11 of the United States Code (the "Bankruptcy Code"), (a) confirming that the Trustee holds all of the Debtor's economic and corporate governance rights in all corporate entities owned and/or controlled by the Debtor (the "Debtor-Controlled Entities"), including, without limitation, Genever Holdings Corporation ("Genever (BVI)") and granting related relief, (b) authorizing the Trustee to act in any foreign country on behalf of the Debtor's estate (the "Estate"), and (c) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference* from the United States District Court for the District of Connecticut (as amended); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in

the Motion is in the best interest of the Estate, its creditors, and all parties in interest; and due

and sufficient notice of the Motion having been given under the particular circumstances; and it

appearing that no other or further notice need be given; and upon all of the proceedings had

before this Court; and any objections to the relief requested herein having been withdrawn or

overruled on the merits; and after due deliberation and sufficient cause appearing therefor; and

for the reasons stated on the record at the hearings held on August 1, 2022 and August 4, 2022

with respect to the Motion and the additional relief sought through, among other things, the filing

of the revised proposed orders filed on July 31, 2022 [ECF No. 645], August 2, 2022 [ECF No.

671], and August 4, 2022 [ECF No. 681], it is hereby ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Effective as of entry of the order, dated July 8, 2022, granting the appointment of

Luc A. Despins as the Trustee in the Chapter 11 Case [ECF No. 523], the Trustee holds all of the

Debtor's economic and governance rights, for the benefit of the Estate, with respect to all

Debtor-Controlled Entities, including, without limitation, Genever (BVI).  For the avoidance of

doubt, the foregoing rights include the Trustee's asserted authority to replace any existing

officer, director, manager, or similar person of the Debtor-Controlled Entities.  As part of the

foregoing, to the extent necessary, the Trustee is authorized to act, in his capacity as the chapter

11 trustee in this Chapter 11 Case, as any such officer, director, manager, or similar person who

has been removed.

3.      In accordance with sections 521(a)(3) and 521(a)(4) of the Bankruptcy Code, the

Debtor is hereby directed to, respectively, (a) cooperate with the Trustee as necessary to enable

the Trustee to perform his duties, including, without limitation, the Trustee's investigation into

the assets of the Debtor, and (b) surrender to the Trustee all property of the estate and any

recorded information, including, without limitation, books, documents, records, and papers

relating to property of the estate (including, without limitation, his shares in Genever (BVI) and

all related corporate governance documents).  In furtherance of the Debtor's duties under

sections 521(a)(3) and 521(a)(4) of the Bankruptcy Code, the Debtor is hereby directed to:

(a)    fill in all missing information and execute each of (i) the share transfer

instrument, (ii) the director's resolution with respect to the Debtor's shares in

Genever (BVI), and (iii) the director's resolution related to the restoration of the

Genever (BVI), submission of the transfer-in pack, and appointment of a new

registered agent, in each case in the forms attached hereto as **Exhibit A** (leaving

such documents in undated form) and deliver, within two business days after

entry of this Order, such completed and executed documents to the Trustee (who

will then submit such documents to the new registered agent for Genever (BVI) in

the British Virgin Islands ("BVI")) as well as provide the Trustee with the

information necessary for the Trustee to complete the transfer-in pack of Harneys

Fiduciary, in the form included in **Exhibit A** hereto, within two business days

after entry of this Order (who will then submit the transfer-in pack to the new

registered agent for Genever (BVI) in the BVI); and

(b)    deliver, no later than five business days after entry of this Order, a copy of the

letter in the form attached hereto as **Exhibit B** (the "Letter to UK Counsel") to the

law firm of Harcus Parker Limited, former counsel to the Debtor in the litigation

styled *Kwok Ho Wan, Ace Decade Holdings Limited, and Dawn State Limited v.

UBS AG (London Branch)*, Case No. CL-2020-000345, pending in the High Court

3

of Justice, Business and Property Courts of England and Wales, Queen's Bench

Division, Commercial Court (the "UBS Litigation"), with a copy of such letter to

be delivered concurrently to the Trustee. For the avoidance of doubt, the Trustee

shall be deemed, for all purposes, to be the owner of the Debtor's claims asserted

in the UBS Litigation.

4.      To the extent the Trustee's exercise of economic and governance rights with

respect to the Debtor-Controlled Entities is deemed to be outside the ordinary course of business,

such exercise by the Trustee of economic and governance rights is hereby approved, as there is

sound business justification for the exercise of such rights, including because the Trustee holds

all of the Debtor's economic and governance rights with respect to such entities for the benefit of

the Estate. Notwithstanding the applicability of any of Bankruptcy Rule 6004(h) or any other

provisions of the Bankruptcy Rules or the Local Rules of Bankruptcy Practice and Procedure for

the United States Bankruptcy Court for the District of Connecticut to the contrary, the terms and

conditions of this Order shall be immediately effective and enforceable upon its entry, and any

applicable stay of the effectiveness and enforceability of this Order is hereby waived. For the

avoidance of doubt, nothing in this Order authorizes the Trustee to sell, otherwise dispose of,

lease, or encumber any equity in Debtor-Controlled Entities or other assets of the Debtor.

5.      Pursuant to section 1505 of the Bankruptcy Code, the Trustee is hereby

authorized to act, as the Estate's foreign representative, in any foreign country on behalf of the

Estate in any way permitted by applicable foreign law for the purpose of (a) investigating,

collecting, and recovering assets of the Debtor located in foreign countries, including relief in

foreign courts in furtherance thereof, as necessary or appropriate, (b) exercising control over the

Debtor-Controlled Entities, including seeking relief in foreign courts in furtherance thereof, as

necessary or appropriate, and (c) requesting and obtaining corporate documents from appropriate foreign corporate registries (or similar entities) holding such documents with respect to the Debtor-Controlled Entities. Without limiting the foregoing, the Trustee is authorized, pursuant to section 1505 of the Bankruptcy Court, to request and obtain the corporate documents related to Genever (BVI) from the appropriate BVI entity holding such corporate documents.

6. The Debtor shall not interfere with, hinder, or delay the Trustee's exercise of the authority under this Order, including any action taken or to be taken by the Trustee in a foreign court on behalf of the Estate in furtherance of such authority. To the extent the Debtor opposes the Trustee's exercise of such authority, the Debtor shall be limited to seeking relief from this Court (and not the relevant foreign court or other foreign entity, as the case may be) on notice to parties in interest, to the extent the Debtor can show that he has standing to do so.

7. In furtherance of the Trustee's exercise of the authority under this Order, the Court respectfully requests the assistance of the foreign courts with respect to the Trustee's exercise of corporate control over the Debtor-Controlled Entities, including, without limitation, Genever (BVI).

8. Nothing in this Order shall be deemed to authorize any particular action with respect to Genever Holdings LLC ("Genever (US)") in its chapter 11 case pending before the United States Bankruptcy Court for the Southern District of New York (the "Genever Court"). The Trustee shall appear before, and seek guidance from, the Genever Court to the extent the Trustee's exercise of corporate governance rights with respect to Genever (US) would impact its chapter 11 case.

9. Nothing in this Order shall constitute a ruling or determination regarding the validity or enforceability of the alleged trust agreement, purportedly dated February 17, 2015 and

executed by the Debtor, Genever (US), Genever (BVI), and Bravo Luck Limited (the "Alleged Trust Agreement"), or regarding any challenges to the Alleged Trust Agreement, and all rights of all parties in respect thereto are preserved.

10.     The Trustee is authorized and empowered to take all actions necessary to effectuate the relief granted in this Order.

11.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


Dated at Bridgeport, Connecticut this 10th day of August, 2022.

Julie A. Manning
United States Bankruptcy Judge
District of Connecticut

## Exhibit A

**Share Transfer Form and Director's Resolution**

# GENEVER HOLDINGS CORPORATION

**incorporated in the British Virgin Islands**
**Company No. 1862840**
(the *Company*)

---

### SHARE TRANSFER INSTRUMENT

---

I, **Ho Wan Kwok**, of [*insert address*] (the *Transferor*) DO HEREBY transfer to **Luc A. Despins, solely in his capacity as trustee in the chapter 11 case of Ho Wan Kwok**, of 200 Park Avenue, New York, New York 10166 (the *Transferee*), the 1000 shares of US$0.001 par value standing in my name in the share register of the Company.

This share transfer instrument is governed by British Virgin Islands law.

As witness the hand of the Transferor this _____ day of August, 2022.

Executed by ) _____
**Ho Wan Kwok** )
)

This share transfer instrument is not subject to stamp duty in the British Virgin Islands unless the Company or its direct or indirect subsidiaries holds real property within the British Virgin Islands. The Company will not treat the Transferee as the registered holder of any shares until the name of the Transferee has been entered in the share register of the Company.

**GENEVER HOLDINGS CORPORATION**
Incorporated in the British Virgin Islands
Company No. 1862840
(the ***Company***)

WRITTEN RESOLUTIONS OF THE SOLE DIRECTOR OF THE COMPANY

WHEREAS the Company has received a share transfer dated August _____, 2022 relating to the transfer of 1000 shares in the capital of the Company (the ***Shares***) executed by Ho Wan Kwok in favour of Luc A. Despins, solely in his capacity as trustee in the chapter 11 case of Ho Wan Kwok, of 200 Park Avenue, New York, New York 10166 (the ***Transferee***), together with a certificate representing the Shares (the ***Certificate***).

I, the undersigned, being the sole director of the Company, DO HEREBY ADOPT the following resolutions:

1.      the transfer of the Shares be and is hereby approved;

2.      the Certificate be and is hereby cancelled;

3.      a new certificate relating to the Shares and signed by the director of the Company be issued under the common seal of the Company to the Transferee;

4.      the registered agent of the Company be and is hereby authorised and directed to update the Company's share register; and

5.      any of the foregoing which have been done on or before the date hereof be and are hereby adopted, ratified, confirmed and approved.

Ho Wan Kwok hereby confirms that he is the Transferor and therefore has an interest in and connection with the transactions contemplated by these resolutions.

I have executed this director's resolution this ……. day of August 2022.


_____

Ho Wan Kwok – Director

*Transfer-In Pack – BVI Business Company*



| **PART A - COMPANY** | |
|---|---|
| **Name of the Company**<br>*(Note: Type the name underline{exactly} as listed on the Certificate of Incorporation/Registration)* | |
| **Former Name(s) (if applicable)** | |
| **Company Type** | |
| **Current Registered Agent** | Name of Registered Agent<br>Contact Person |
| **Contact Details** | Telephone Number / Email Address |
| **Method of Change of registered office and agent** | ☐ I will arrange for the outgoing agent to file the transfer<br>☐ I would like to arrange a 'forced transfer' by Harneys legal team |
| **Reason for change of registered office and agent** | |
| **Director's Resolution** | Please click here for a template resolution to change the Company's registered agent. |
| **Is the Company operating a non-profit/charity within the British Virgin Islands?** | ☐ Yes ☐ No |
| **Is the Company regulated by or registered with the Financial Services Commission?** | ☐ Yes ☐ No |
| **Purpose of Company**<br>*(Note: Please be specific "holding Company" or "investment fund" is insufficient)* | |
| | |
| **Intended nature of Company's business** | |
| Does the Company: | |

| | | |
|---|---|---|
| 1. | receive more than 20% of its revenue in the form of cash or equivalents? | ☐ Yes ☐ No |
| Is the company involved in: | | |
| 2. | the arms, defence, military or nuclear industries? | ☐ Yes ☐ No |
| 3. | trading oil and gas, precious metals, gems, jewels, fine art, real estate or other collectors' items? | ☐ Yes ☐ No |
| 4. | the creation or provision of any one of the following: | ☐ Yes ☐ No |

*Transfer-In Pack – BVI Business Company*



|  | | |
|---|---|---|
| | • blockchain technology <br> • the creation or issuance of virtual assets or tokens <br> • any one of the following: the offering of an exchange between virtual assets and fiat currencies, the offering an exchange between one or more forms of virtual assets, the provision of services relating to the transfer of virtual assets, the provision of virtual asset custody services or the participation in, and provision of, financial services related to a virtual asset issuance or the sale of a virtual asset? | |
| 5. | the production or trading of substances or products? | ☐ Yes ☐ No |
| 6. | gambling or the adult entertainment industry? | ☐ Yes ☐ No |
| 7. | activities that may have a major environmental impact (e.g. forestry, oil and gas, deep sea mining, quarrying or power generation)? | ☐ Yes ☐ No |

| Collective Investment | | |
|---|---|---|
| 8. | Is this vehicle being used to pool investor capital to generate capital or income returns? | ☐ Yes ☐ No |

| Structure | | |
|---|---|---|
| 9. | If this entity will form part of a group (including holdings of minority interests), please provide a chart indicating the position this entity will take in the structure. The chart should include all entities holding, directly or indirectly, an interest of 10% or more in this entity and any subsidiaries of the entity. If the structure has 3 layers or less then copies of the Register of Members of each entity through to the ultimate parent maybe provided as an alternative to a structure chart. | |

If you have answered **YES** to any of the questions above, please provide details.

|  |
|---|
| |

If the intended nature of the Company's business is not identified above, please provide details.

|  |
|---|
| |

**Country(ies) of intended business activities**
*(Note: Please include location of customers, distributors and bank accounts.)*

|  |
|---|
| |

**Source of funds**
*(Note: Please provide details of the source of funding for the initial activities of the Company. You may be asked to provide supporting documentation.)*

|  |
|---|
| |

## PART B - ECONOMIC SUBSTANCE

The Company may be required to have adequate substance' in the BVI.

*Please click here to review Harneys guidance on economic substance requirements. If you have any queries please liaise with your usual Harneys contact.*

**Economic Substance Financial Reporting Period**

*Transfer-In Pack – BVI Business Company*



Default reporting periods depend on the date of incorporation. If you have elected to use an economic substance reporting period end that is not your default date please tick here, and confirm the date of your reporting period end:

| ☐ | We have formally notified the ITA of a change to our economic substance reporting period, our current reporting period end is: | [dd/mm/yyyy to dd/mm/yyyy] |
|---|---|---|
| ☐ | We would like to apply to make a change to our default reporting period. Harneys is able to arrange this notification – we will contact you to discuss what is possible to achieve and provide a quote. | |

If no box is ticked, the default reporting period will apply.

**Does Company conduct:**

| 1. | banking business? | ☐ Yes ☐ No |
|---|---|---|
| 2. | distribution and service centre business? | ☐ Yes ☐ No |
| 3. | financing and leasing business? | ☐ Yes ☐ No |
| 4. | fund management business? | ☐ Yes ☐ No |
| 5. | headquarters business? | ☐ Yes ☐ No |
| 6. | holding company business? | ☐ Yes ☐ No |
| | Please specify the types of asset(s) that the Company is intending to hold. | |
| | Please provide details of any other legal entities in which the Company will hold interests (e.g. shares, partnership interests, etc.) | |
| 7. | insurance business? | ☐ Yes ☐ No |
| 8. | intellectual property business? | ☐ Yes ☐ No |
| 9. | shipping business? | ☐ Yes ☐ No |

If you have answered **YES** to any of the questions above, please provide details.

*(Note: The activities above may be 'relevant activities' for economic substance purposes. Please include as much detail as possible on the exact scope of any relevant activity.)*

| | |
|---|---|
| Please confirm the entity's country(ies) of tax residence. | |

**PART C - SHAREHOLDERS**

*(Note: Details of additional shareholders can be entered in Part I.)*

| **Name of Shareholder** | Name | |
|---|---|---|
| **Contact Details** | Telephone Number | Email Address |

| | |
|---|---|
| **Name of Shareholder** | Name |

*Transfer-In Pack – BVI Business Company*



| Contact Details | Telephone Number | Email Address |
|---|---|---|
| | | |
| **Name of Shareholder** | Name | |
| Contact Details | Telephone Number | Email Address |
| | | |
| **Name of Shareholder** | Name | |
| Contact Details | Telephone Number | Email Address |

## PART D - BENEFICIAL OWNER(S)

*Note: Under the Beneficial Ownership Secure Search System Act, 2017 (**BOSS Act**), unless the Company is exempt, it is required to identify its beneficial owners and registrable legal entities and to notify its registered agent of the prescribed particulars of such persons. **The registered agent is then obliged to establish and maintain a database with such particulars which may be made available for searching by the International Tax Authority**. A beneficial owner under the BOSS Act is a natural person who: (i) ultimately owns or controls 25% or more of the shares or voting rights of the Company; or (ii) otherwise exercises control over the management of the Company. Any such person is referred to below as a "BOSS Act Beneficial Owner".*

Please provide:

(i)  details of all beneficial owners of the Company who are interested in 10% or more of the Company (indicating which, if any, hold 25% or more or otherwise qualify as a BOSS Act Beneficial Owner); and

(ii)  details of all registrable legal entities of the Company.

### Beneficial Owner Particulars - Natural Persons

*Note: A beneficial owner under the Anti-Money Laundering Terrorist Financing Code of Practice, 2008 (AML Code) is a natural person who ultimately owns or controls 10% or more of the shares or voting rights of the Company.*

| First Name | Middle Name | Surname | Residential Address | |
|---|---|---|---|---|
| | | | Address 1 | |
| **Nationality** | **Date of Birth (DD/MM/YYYY)** | | Address 2 | |
| | | | City | State |
| **BOSS Act Beneficial Owner** | ☐ Yes  ☐ No | | Country | Post/Zip Code |
| | | | | |
| First Name | Middle Name | Surname | Residential Address | |
| | | | Address 1 | |
| **Nationality** | **Date of Birth (DD/MM/YYYY)** | | Address 2 | |
| | | | City | State |
| **BOSS Act Beneficial Owner** | ☐ Yes  ☐ No | | Country | Post/Zip Code |

## Transfer-In Pack – BVI Business Company



| First Name | Middle Name | Surname | Residential Address | |
|---|---|---|---|---|
| | | | Address 1 | |
| **Nationality** | **Date of Birth (DD/MM/YYYY)** | | Address 2 | |
| | | | City | State |
| **BOSS Act Beneficial Owner** | ☐ Yes   ☐ No | | Country | Post/Zip Code |

| First Name | Middle Name | Surname | Residential Address | |
|---|---|---|---|---|
| | | | Address 1 | |
| **Nationality** | **Date of Birth (DD/MM/YYYY)** | | Address 2 | |
| | | | City | State |
| **BOSS Act Beneficial Owner** | ☐ Yes   ☐ No | | Country | Post/Zip Code |

**Beneficial Owner Particulars - Registrable Legal Entities**

*Note: A registrable legal entity is a legal entity which would be a beneficial owner if it were a natural person and falls into one of the following categories: (a) its securities are listed on a recognised stock exchange or a subsidiary of an entity the securities of which are so listed; (b) it is a BVI regulated investment fund or a subsidiary of such a fund; (c) it is a BVI regulated person or a foreign regulated person; or (d) it is a sovereign state or a wholly owned subsidiary of a sovereign state. Additional information may be requested.*

| Full Legal Name | Registered Address | |
|---|---|---|
| | Address 1 | |
| **Alternative Name(s)** *(if applicable)* | Address 2 | |
| | City | City |
| | Country | Country |
| **Country of Registration** | | |
| **Registration Number** | | |
| **Date of incorporation** | (DD/MM/YYYY) | |
| **Name of Stock Exchange** *(if applicable)* | | |
| **Name of Regulator** *(if applicable)* | | |
| **Location of Beneficial Ownership Database** | Address | |
| **Beneficial Ownership Database** | Address 1 | |

*Transfer-In Pack – BVI Business Company*



| | Address 2 | |
|---|---|---|
| | City | City |
| | Country | Country |
| **Contact Details** | Telephone Number | Email Address |

| **Beneficial Owner - Exemption** | |
|---|---|
| Will the company be an exempt person under the BOSS Act? | ☐ Yes ☐ No |
| If **YES**, on what basis? | |
| | |

## PART E - DIRECTOR(S)

Each director must sign and complete the relevant section in our Compliance Pack ([Individuals](#) or [Companies](#) or [Others](#)) together with a Consent to Act Form signed at their original date of appointment – if you need to reproduce this document please use this template ([Individual Directors](#) or [Non-Individual Directors](#)).

*Please refer to our Additional Services section for more information about our director services.*

*(Note: Details of additional directors can be entered in Part I.)*

| **Name of Director** | Name | |
|---|---|---|
| **Contact Details** | Telephone Number | Email Address |
| | | |
| **Name of Director** | Name | |
| **Contact Details** | Telephone Number | Email Address |
| | | |
| **Name of Director** | Name | |
| **Contact Details** | Telephone Number | Email Address |

## PART F - OFFICER(S)

*(Note: Details of additional officers can be entered in Part I.)*

| **Name of Officer** | Name | |
|---|---|---|
| **Contact Details** | Telephone Number | Email Address |
| | | |
| **Name of Officer** | Name | |
| **Contact Details** | Telephone Number | Email Address |

## PART G - COMPLIANCE QUESTIONNAIRE

Any natural person or corporate entity which is listed in one of the following sections must complete a Compliance Questionnaire:



☐ Shareholders in Part C

☐ Beneficial Owners in Part D

☐ Registrable legal entities listed in Part D

☐ Directors listed in Part E

Please refer to our Compliance Pack (Individuals or Companies or Others).

### PART H - LOCATION OF ORIGINAL CORPORATE RECORDS

*Note: It is a mandatory requirement for the Company to keep either: (i) the original; or (ii) a copy of the corporate records listed below at the office of its registered agent. The company must inform the registered agent if original corporate documents will be kept at an alternative address and update the registered agent within 14 days of any change in location of the original records.*

| Corporate Record | Harneys | Alternative Address | |
|---|---|---|---|
| **Register of Members** | ☐ | Address 1 | |
| | | Address 2 | |
| | | City | State |
| | | Country | Post/Zip Code |
| **Contact Details** | Telephone Number | | Email Address |
| Corporate Record | Harneys | Alternative Address | |
| **Register of Directors** | ☐ | Address 1 | |
| | | Address 2 | |
| | | City | State |
| | | Country | Post/Zip Code |
| **Contact Details** | Telephone Number | | Email Address |
| Corporate Record | Harneys | Alternative Address | |
| **Minutes and Resolutions of Directors and Members** | ☐ | Address 1 | |
| | | Address 2 | |
| | | City | State |
| | | Country | Post/Zip Code |
| **Contact Details** | Telephone Number | | Email Address |
| Corporate Record | Harneys | Alternative Address | |
| **Register of Charges** | ☐ | Address 1 | |
| | | Address 2 | |



| Transfer-In Pack – BVI Business Company | |

| | | City | State |
| | | Country | Post/Zip Code |
| **Contact Details** | | Telephone Number | Email Address |

*Note: Additional fees will be incurred annually by the Company which must be paid in advance if Harneys are required to maintain the original financial records.*

| Corporate Record | Harneys | Alternative Address | |
|---|---|---|---|
| **Financial records and underlying documentation** | ☐ | Name of record keeper | |
| | | Address 1 / Address 2 | |
| | | City | State |
| | | Country | Post/Zip Code |
| **Contact Details** | | Telephone Number | Email Address |

| Harneys can also provide specialised Bookkeeping and Financial Statement preparation services. Would you like us to contact you with more information? | ☐ Yes  ☐ No |
|---|---|

## PART I - ADDITIONAL INFORMATION

*Note: Please use this space to provide us with any special instructions or additional information. Any work which is not within the scope of our services may be referred to our affiliate law firm, Harneys Westwood & Riegels LP, who will contact you directly.*

## PART J - PAYMENT INSTRUCTIONS AND BILLING

If you have not received a quote in relation to our services please contact our New Business Team.

**Method of payment:** We accept payments via wire transfer and credit card. Please click here for our payment instructions and use the reference 'New Business' and the proposed name of the Company provided in Part A.

| **Instructing Agent/Client** | |
|---|---|
| **Please indicate your method of payment** | ☐ Credit Card   ☐ Wire |
| **Billing Address** | Address 1 |
| | Address 2 |
| | City |  City |
| | Country |  Country |
| **Billing Email** *(Note: We only send invoices by email.)* | |

## PART K - DECLARATION AND UNDERTAKING



## *Transfer-In Pack – BVI Business Company*

I declare that I have read the <u>Terms and Conditions</u> and request that Harneys Fiduciary proceed with the Transfer-In of the Company according to the details provided in this Pack and I am authorised by each data subject to provide their personal data to Harneys Fiduciary. I certify that the information provided in this Pack is true and correct to the best of my knowledge, and I undertake to inform Harneys Fiduciary promptly should any of the provided details change. I further confirm that no situation has occurred where I have reason to believe that there may be legal or tax issues in connection with this structure and the laws and institutions of any jurisdiction.

| | |
|---|---|
| **Full Name** | |
| **Name of corporate entity (if applicable)** | |
| **Position with corporate entity (if applicable)** | |
| **Signature** | |
| **Date** | |



## ADDITIONAL SERVICES

### Company Secretarial Services

Our company administration teams provide secretarial and administrative support including acting as company secretary throughout the life of a business or project. This includes maintenance of company records.

### Nominee Shareholder Services & Trust Services

We provide nominee shareholder services. For clients interested in succession planning involving their BVI business company shares we would invite you to consider the use of our trust services. Our experienced team of private wealth practitioners can advise you on this process. One of the key benefits of succession planning through trusts is avoiding the time, cost and publicity associated with a BVI probate application.

### Director Services

Harneys Fiduciary offers both corporate directors and qualified professionals who may be appointed to serve as directors of a BVI Company. Provision of director services is considered on a case by case basis, however, taking into consideration the type of company and its activities.

### Bank Accounts

We work closely with numerous financial institutions in the BVI and internationally and can help you open a bank account for your new company quickly and efficiently. We can provide authorised signatories for bank accounts and maintain and keep your financial records.

### Accounting Services

Harneys Fiduciary has its own in-house accounting team specialising in the provision of bookkeeping and accounting services to meet the needs of companies, limited partnerships and trusts.

Our accounting services include maintenance of financial records, preparation of monthly, quarterly, or annual management accounts, preparation of annual financial statements and liaising with external auditors and advisors as required.

We can also provide access to auditors and other specialists outside our firm if this is necessary to meet your particular needs. Our connections both locally in the BVI and internationally are numerous and well established.

### Other Services

Harneys Fiduciary also provides other services including liquidation services, authorised representative services, safe custody, escrow and a wide range of corporate secretarial services provided on an ad-hoc basis.

If you have any questions or would like more information on any of the above services please contact us.

**GENEVER HOLDINGS CORPORATION**
Incorporated in the British Virgin Islands
Company No. 1862840
(the *Company*)

WRITTEN RESOLUTIONS OF THE SOLE DIRECTOR OF THE COMPANY

WHEREAS the Company's registered agent has resigned, and the Company is currently struck-off of the Registry of Corporate Affairs (the *Registry*) pursuant to s.213(1) of the BVI Business Companies Act 2004.

WHEREAS the Company intends to rectify the status of the Company and place it back in good standing and in order to do so desires to appoint Harneys Corporate Services Limited of Craigmuir Chambers, P.O. Box 71, Road Town, Tortola, VG 1110, British Virgin Islands as its registered agent.

I, the undersigned, being the sole director of the Company, DO HEREBY ADOPT the following resolutions:

1. the Company change its registered agent to Harneys Corporate Services Limited of Craigmuir Chambers, P.O. Box 71, Road Town, Tortola, VG 1110, British Virgin Islands;

2. the Company change its registered office to Craigmuir Chambers, Road Town, Tortola, VG 1110, British Virgin Islands;

3. a notice, in the approved form, of the change of registered agent and registered office of the Company, be filed with the BVI Registry of Corporate Affairs; and

4. the sole director, any employee of Harneys Corporate Services Limited or any employee of Harney Westwood & Riegels LP, be and is hereby authorised to:

   a. pay any outstanding fees due to the Registry;

   b. execute or submit any document to the Registry; and

   c. to take any and all other actions necessary to bring the Company into good standing and to give full effect to the change of registered agent and registered office; and

5. the terms and conditions of Harneys Corporate Services Limited for the provision of registered office and registered agent services (as amended or supplemented from to time) be and are approved, and the completion and execution of the Harneys Corporate Services Limited 'transfer-in pack' for and on behalf of the Company by the sole director be and is hereby approved.

Ho Wan Kwok hereby confirms that he has no conflict of interest in connection with the transactions contemplated by these resolutions.

I have executed this director's resolution this ……. day of August 2022.

_____

Ho Wan Kwok – Director

## **Exhibit B**

**Letter to Harcus Parker Limited**

Ho Wan Kwok
[*insert address*]

August [___], 2022

**VIA EMAIL**

Harcus Parker Limited
7th Floor
Melbourne House
44 - 46 Aldwych
London, WC2B 4LL
Attn:   Jennifer Morrissey
Email: JMorrissey@harcusparker.co.uk

**Re:**   ***Kwok Ho Wan, Ace Decade Holdings Limited, and Dawn State Limited v. UBS AG
(London Branch)**, Case No. CL-2020-000345 – Appointment of Trustee in Chapter
11 Case of Ho Wan Kwok*

Dear Ms. Morrissey:

This is to confirm to you that Luc A. Despins has been appointed as the trustee (the "Trustee") in
my chapter 11 case, pending before the United States District Court for the District of
Connecticut (the "U.S. Bankruptcy Court").  All of my interests in the litigation against UBS AG
(London Branch) pending in  the High Court of Justice, Business and Property Courts of England
and Wales, Queen's Bench Division, Commercial Court (the "UBS Litigation") is property of
my bankruptcy estate as a matter of United States bankruptcy law.

Upon Mr. Despins' appointment as the Trustee, he exercises control over all property of the
bankruptcy estate, including my claim in the  UBS Litigation, so that he now has authority and
standing to apply to be recognized as the appropriate party to prosecute my claim in the UBS
Litigation.  As a matter of United States bankruptcy law, I have no authority or standing at this
time to prosecute the UBS Litigation.

In furtherance of the foregoing, and for the avoidance of doubt, I hereby expressly authorize you
to have full and complete discussions on my behalf with Mr. Despins regarding the UBS
Litigation, the merits thereof, any related settlement discussions, and any other topics related to
the prosecution of the UBS Litigation and to take instructions from him in relation to my claim
in the UBS Litigation regardless of any attorney-client privilege, work product, or other privilege
which belongs to me.  Any waiver of privilege is limited to the provision of this information to
the Trustee.  My consent is limited to giving access to the Trustee to the extent that I am entitled
and contains no wider waiver of privilege and is not consent by me to the Trustee to waive my
privilege.

Among other things, and as detailed in the order of the U.S. Bankruptcy Court (a copy of which is enclosed as <u>Exhibit 1</u>), I instruct you to (i) as soon as is practicable deliver to and share with the Trustee all memoranda, advice, and other communications by you to me regarding the UBS Litigation, any other information (whether in written form or not) regarding the merits of the UBS Litigation, and any settlement offers received or made by me or you in connection with such litigation, and (ii) as soon as is practicable provide the Trustee will full access to the parts of your case file in the UBS Litigation to which I am entitled as well as all pleadings and other court documents filed in the UBS Litigation.

Sincerely,

_____

Ho Wan Kwok


cc: Luc A. Despins, in his capacity as trustee in the chapter 11 case of Ho Wan Kwok

Enclosure

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0205–5 | User: admin | Date Created: 8/10/2022 |
| Case: 22–50073 | Form ID: pdfdoc2 | Total: 66 |

**Recipients submitted to the BNC (Bankruptcy Noticing Center) without an address:**

| | |
|---|---|
| 20 | Pacific Alliance Asia Opportunity Fund L.P. |
| cr | Zheng Wu |
| 20 | Rui Ma |
| 20 | Weican Meng |
| intp | Golden Spring (New York) LTD |
| crcm | Official Committee of Unsecured Creditors |
| intp | HK International Funds Investments (USA) Limited, LLC |
| intp | Mei Guo |
| cr | Baosheng Guo |
| cr | Yan Zhao |
| cr | Ning Ye |
| cr | Chong Shen Raphanella |
| cr | Xiaodan Wang |
| cr | Rong Zhang |
| aty | Michael S. Weinstein |

TOTAL: 15

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| ust | U. S. Trustee | USTPRegion02.NH.ECF@USDOJ.GOV |
| tr | Luc A. Despins | lucdespins@paulhastings.com |
| aty | Aaron Romney | aromney@zeislaw.com |
| aty | Aaron A Mitchell | aaron@lmesq.com |
| aty | Annecca H. Smith | asmith@rc.com |
| aty | Avram Emmanuel Luft | aviluft@paulhastings.com |
| aty | Carollynn H.G. Callari | ccallari@callaripartners.com |
| aty | David S. Forsh | dforsh@callaripartners.com |
| aty | David V. Harbach, II | dharbach@omm.com |
| aty | Douglas S. Skalka | dskalka@npmlaw.com |
| aty | Douglass E. Barron | douglassbarron@paulhastings.com |
| aty | Eric A. Henzy | ehenzy@zeislaw.com |
| aty | G. Alexander Bongartz | alexbongartz@paulhastings.com |
| aty | Holley L. Claiborn | holley.l.claiborn@usdoj.gov |
| aty | Irve J. Goldman | igoldman@pullcom.com |
| aty | James C. Graham | jgraham@npmlaw.com |
| aty | James M. Moriarty | jmoriarty@zeislaw.com |
| aty | Jay Marshall Wolman | jmw@randazza.com |
| aty | John L. Cesaroni | jcesaroni@zeislaw.com |
| aty | Jonathan Kaplan | jkaplan@pullcom.com |
| aty | Kristin B. Mayhew | kmayhew@mdmc–law.com |
| aty | Laura Aronsson | laronsson@omm.com |
| aty | Luc A. Despins | lucdespins@paulhastings.com |
| aty | Lucas Bennett Rocklin | lrocklin@npmlaw.com |
| aty | Mia N. Gonzalez | mgonzalez@omm.com |
| aty | Michael S. Weinstein | mweinstein@golenbock.com |
| aty | Nicholas A. Bassett | nicholasbassett@paulhastings.com |
| aty | Patrick M. Birney | pbirney@rc.com |
| aty | Patrick R. Linsey | plinsey@npmlaw.com |
| aty | Peter Friedman | pfriedman@omm.com |
| aty | Peter J. Zarella | pzarella@mdmc–law.com |
| aty | Sara Pahlavan | spahlavan@omm.com |
| aty | Scott D. Rosen | srosen@cb–shea.com |
| aty | Stephen M. Kindseth | skindseth@zeislaw.com |
| aty | Stuart M. Sarnoff | ssarnoff@omm.com |
| aty | Thomas J. Sansone | tsansone@carmodylaw.com |
| aty | Timothy D. Miltenberger | Tmiltenberger@cbshealaw.com |
| aty | William R. Baldiga | wbaldiga@brownrudnick.com |

TOTAL: 38

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | | | |
|---|---|---|---|---|---|
| db | Ho Wan Kwok | 373 Taconic Road | Greenwich, CT 06831 | | |
| cr | Logan Cheng | c/o Randazza Legal Group, PLLC | 100 Pearl Street | 14th Floor | Hartford, CT 06103 |
| ca | Stretto | 410 Exchange, Suite 100 | Irvine, CA 92602 | | |
| dbaty | Brown Rudnick LLP | One Financial Center | Boston, MA 02111 | | |
| crcm | Pullman & Comley, LLC | 850 Main Street | Bridgeport, CT 06601 | | |
| 20 | Huizhen Wang | c/o TroyGould PC | 1801 Century Park East, 16th Floor | Attn: Christopher A. Lilly | Los Angeles, CA 90067–2367 |

| cr | Chao–Chih Chiu | c/o TroyGould PC | 1801 Century Park East, 16th Floor | Attn: Christopher A. |
| | Lilly | Los Angeles, CA 90067–2367 | | |
| cr | Yunxia Wu | c/o TroyGould PC | 1801 Century Park East, 16th Floor | Attn: Christopher A. |
| | Lilly | Los Angeles, CA 90067 | | |
| cr | Keyi Zilkie | c/o TroyGould PC | 1801 Century Park East, 16th Floor | Attn: Christopher A. |
| | Lilly | Los Angeles, CA 90067 | | |
| intp | Yongbing Zhang | 223 West Jackson Bl;vd. #1012 | Chicago, IL 60606 | |
| cr | Brown Rudnick LLP | One Financial Center | Boston, MA 02111 | |
| aty | Luc A. Despins | Paul Hastings LLP | 200 Park Avenue | New York, NY 10166 |
| aty | Steven E. Mackey | Office of the U.S. Trustee | The Giaimo Federal Building | 150 Court Street, Room |
| | 302 | New Haven, CT 06510 | | |

TOTAL: 13

## EXHIBIT B

*In re Kwok*, No. 22-50073 (JAM) [Docket No. 714]

**August 1, 2022 Hearing Transcript Excerpt**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

In Re                          *    Case No. 22-50073(JAM)
                               *
      HO WAN KWOK,             *    Bridgeport, Connecticut
                               *    August 1, 2022
            Debtor.            *
                               *
* * * * * * * * * * * * * * * *


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:                AARON ROMNEY, ESQ.
                               ERIC A. HENZY, ESQ.
                               STEPHEN M. KINDSETH, ESQ.
                               Zeisler & Zeisler, P.C.
                               10 Middle Street, 15th Floor
                               Bridgeport, CT  06604

                               WILLIAM BALDIGA, ESQ.
                               Brown Rudnick, LLP
                               Seven Times Square
                               New York, NY  10036


For the Creditor, Pacific      PETER FRIEDMAN, ESQ.
 Alliance Asia Opportunity     STUART M. SARNOFF, ESQ.
 Fund L.P.:                    O'Melveny & Myers LLP
                               Times Square Tower
                               7 Times Square
                               New York, NY  10036

                               PATRICK BIRNEY, ESQ.
                               Robinson & Cole
                               28 Trumbull Street
                               Hartford, CT  06103


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

APPEARANCES Cont'd:

For the Creditors Committee:        IRVE GOLDMAN, ESQ.
                                    Pullman & Comley
                                    850 Main Street
                                    Bridgeport, CT  06601

For the Creditors, Rui Ma,         KRISTEN MAYHEW, ESQ.
 Weican Meng and Zheng Wu:         McElroy Deutsch
                                    225 Liberty Street
                                    36th Floor
                                    New York, NY  10281

For the U.S. Trustee:              HOLLEY L. CLAIBORN, ESQ.
                                    Office of the United States
                                       Trustee
                                    The Giaimo Federal Building
                                    150 Court Street, Room 302
                                    New Haven, CT  06510

For HK International and            STEPHEN M. KINDSETH. ESQ.
 Mei Guo:                          Zeisler & Zeisler, P.C.
                                    10 Middle Street, 15th Floor
                                    Bridgeport, CT  06604

Chapter 11 Trustee:                LUC A. DESPINS, ESQ.
                                    Paul Hastings LLP
                                    200 Park Avenue
                                    New York, NY  10166

Proposed Counsel for the           DOUGLAS SKALKA, ESQ.
 Chapter 11 Trustee:               Neubert, Pepe & Monteith
                                    195 Church Street
                                    New Haven, CT  06510

1    demonstrated that they are disinterested and that no one

2    else has any objection to the application.  Neubert, Pepe

3    and Monteith has stated that they will submit a new proposed

4    order with the qualifications set forth on the record by the

5    United States Trustee's Office and that were in the order

6    approving the application to employ Paul Hastings.

7            So for all those reasons the application to employ

8    Neubert, Pepe and Monteith is granted and the proposed order

9    -- Attorney Skalka, how much time do you need to submit that

10   proposed order?

11           MR. SKALKA:  I think I'll have it by tomorrow,

12   Your Honor.

13           THE COURT:  Okay.  Well, I'll give you -- so it's

14   easier for the clerk's office I'll say till August 3rd.

15   How's that?  That's Wednesday.

16           MR. SKALKA:  That's fine.

17           THE COURT:  Okay.  Thank you.

18           MR. SKALKA:  Thank you, Your Honor.

19           THE COURT:  If everyone could just give me one

20   moment, please.

21       (Pause.)

22           Okay.  So that application is granted.

23           Then just so we're clear on what's on the calendar

24   today, then -- I already said that the motion to quash is

25   moot due to the denial of the Rule 60 motion.

1          So then we just have left on the calendar the

2     motion for order confirming that the Chapter 11 trustee

3     holds all the debtor's economic and corporate governance

4     rights and debtor controlled entities and authorizing the

5     trustee to act in a foreign country.

6          So Mr. Despins, would you like to be heard on

7     that?

8               MR. DESPINS:  Yes, Your Honor.

9               THE COURT:  Please.  Go right ahead.

10              MR. DESPINS:  And also remember that we have

11    housekeeping matters.

12              THE COURT:  Yes.

13              MR. DESPINS:  Okay.  So the corporate governance

14    motion is basically to confirm that we step into the shoes

15    of the debtor.  And I'm glad we filed the motion because the

16    debtor's response made clear that it's unclear to the extent

17    they will cooperate with us.

18         So basically they raised issues regarding BVI --

19    sorry.  Genever BVI.  Remember, that's the parent holding

20    company in BVI that holds the interest in the Chapter 11

21    debtor that's in front of Judge Garrity.

22         And to address their concern about what would

23    happen there we actually provided yesterday, last night

24    fairly late, we filed an amended proposed order that says

25    okay, this is what we need from the debtor.

1          We look at this, to be kind of colloquial about

2     it, the debtor has a car.  We want the keys to the car. Or

3     the debtor has stock.  We want the debtor to endorse the

4     stock essentially to give it to us.

5          So the way to do that under BVI law is that he

6     needs to sign certain documents, which we have attached

7     drafts thereof, which our BVI counsel has drafted, and

8     basically the order says Mr. Kwok will within I guess two

9     business days sign these documents, assigning his rights to

10    those share to the trustee.

11         And there's a lot of text, but that's really what

12    it is.

13         In addition to that, because of an issue that was

14    unresolved with the UK lawyers that I mentioned that

15    represent Mr. Kwok in the litigation against UBS, basically,

16    I reached out to them a long time ago, I think two days or

17    three days after being appointed, and they called Mr. Henzy

18    -- actually it would have been later because Mr. Henzy was

19    not appointed til Friday the 14th or something like that.

20         In any event, they reached out to Mr. Henzy saying

21    this guy, meaning the trustee, is calling us.  Should we

22    talk to him.

23         Mr. Henzy, to his credit, wrote a very nice email

24    to them saying the trustee owns all the rights in the

25    litigation.  Mr. Kwok doesn't control any of this.  Talk to

1      him.

2            So we got on the phone with them and they said

3      well, that may be the U.S. view of the law, but that's not

4      the U.K. view.  You may have to file a motion to be

5      recognized as a foreign -- and I said, no. I need to do that

6      if I want to start a foreign insolvency proceeding against

7      someone. But if I just want to be substituted as a plaintiff

8      I don't need to do that.

9            Not to make the story too long, Your Honor, they

10     said well, actually, what we need is a letter from Mr. Kwok,

11     because they're afraid of getting sued for -- they haven't

12     used those terms getting sued but it's clear from the body

13     language that they don't want to do anything with a letter

14     from Mr. Kwok.

15           So that's the same analogy here. I need the keys

16     to the car and the keys to the car, Mr. Kwok has it.  He

17     just needs to send a letter to them. It's basically --

18     parrots what Mr. Henzy has written to them already but it

19     would be under the debtor's signature that says this

20     litigation is owned by the Chapter 11 Trustee now.  He has

21     all the rights.  You should tell him everything, privileged

22     or not.  You should communicate everything with him.

23           So that's really what we're doing with this

24     motion. The criticism we've received is by the debtors that

25     -- first of all there's a standing issue and the debtor be

1    heard on these issues.  They raised the rights of others

2    like Bravo Luck, although we gave notice to Bravo Luck.  We

3    served Bravo Luck's counsel.  So that's not an issue.

4         But the debtor's standing on this is questionable.

5    But putting aside the standing yes, we're seeking broad

6    relief, Your Honor.  Why, because cost.  We don't want to

7    come back to the court saying hey, could you authorize this

8    for Australia, please?  Could you authorize this for Canada?

9    I'm making those up. And come back to court all the time.

10        So, yes, we're asking for something that's broad.

11   The idea is that the trustee will use his discretion to do

12   this in a way that makes sense and if not, you're going to

13   get me basically.  You're going to tell me that I shouldn't

14   have done these things.

15        But I think that it is standard, and we cited

16   cases to that effect, to have the trustee's authority to act

17   from a corporate governance point of view recognized.

18        For example, we need to see Judge Garrity in the

19   Genever case. I don't want to be in a situation where Bravo

20   Luck, which is the son's alleged company, shows up to say

21   he's not authorized to speak.  He didn't get the shares from

22   BVI, et cetera.  We can't deal with that.

23        And that's what this accomplishes.  Basically, it

24   makes it very clear that we hold all these rights and that's

25   why we would ask Your Honor to enter the order.

1          But I'm happy to answer any questions, Your Honor,

2     or respond to any remaining criticism by the debtor.

3          THE COURT:  I just have a question about this --

4     again, the order was filed yesterday. So I looked at it I

5     would say not as intently as I might otherwise.  But that's

6     fine. I've looked at it.

7          I would assume, but I shouldn't assume, but I

8     won't assume.  What -- if this order enters and Mr. Kwok

9     doesn't sign these documents, then what's the next step?

10          MR. DESPINS:  You're getting to a point that we'll

11     get to in this case eventually, which is contempt.

12          THE COURT:  So we need to have another hearing.

13          MR. DESPINS:  Well, there'll be a motion to hold

14     them in contempt.

15          THE COURT:  Right.

16          MR. DESPINS:  Yes.

17          THE COURT:  Okay.  So that's -- I mean, that's my

18     read of it but, again, as I'm saying to you, I read it not

19     as thoroughly as I might have otherwise because I just had a

20     little bit of time this morning to look at it, but that's

21     fine.

22          I understand the terms and conditions of it in

23     general and I understand that you are asking the court to

24     enter an order under specific sections of the bankruptcy

25     code, including the sections that --

1        MR. DESPINS:  521.

2        THE COURT:  The debtor's duties under the code,

3   whether the debtor's in possession or not.  And that you

4   need this for different -- not only in the United States but

5   for different matters that are pending and were pending at

6   the time that Mr. Kwok filed his Chapter 11 case here in

7   Connecticut.

8        So I have no further questions. I just was asking

9   about that issue.

10       MR. DESPINS:  Thank you, Your Honor.

11       THE COURT:  Thank you.  Mr. Henzy?

12       MR. HENZY:  So, Your Honor --

13       THE COURT:  So you wish to be heard on this?

14       MR. HENZY:  I do, Your Honor.

15       THE COURT:  Okay.  Go ahead.

16       MR. HENZY:  On the two what I'm going to call new

17   pieces of relief that are now being sought, they were not in

18   the motion.

19       THE COURT:  You mean the letters?

20       MR. HENZY:  So the letter that he's asking you to

21   order Mr. Kwok to sign that would be sent to the Harcus

22   Parker law firm in the U.K., that was not addressed in the

23   motion in any way, shape or form.

24       So I don't know how Mr. Despins gets that relief

25   today.  That's new.

1          With respect to the substance there, Mr. Despins

2    is right. I tried to get out front on that because the

3    Harcus Parker people were trying to contact me and my

4    position was I don't want to talk to you because Mr. Kwok is

5    no longer party in that action.  You need to talk to Mr.

6    Despins.

7          And I copied him on the email that I sent him and

8    I have not been part of any communication between them and

9    him since I sent that email.

10         I don't know what the law is in the U.K.  I don't

11   know what requirements there are for a court over there. I

12   don't know what privilege issues they live under.

13         I do know -- I mean, I don't represent these

14   people but Mr. Kwok is being asked to sign a letter that may

15   impact other people's rights. I don't know -- the Harcus

16   Parker firm I believe represents other people in that action

17   as well.

18         So I'm in a position where Mr. Despins is adding

19   relief to what was in the motion and I don't know what --

20   and the relief -- with respect to this anyway would direct

21   Mr. Kwok to do something and I have no idea whether -- what

22   Mr. Kwok is being directed to do is appropriate in the facts

23   and circumstances.

24              THE COURT:  Well, let me ask you a question.

25              MR. HENZY:  Sure.

125

```
 1              THE COURT:  You are objecting to Mr. Kwok even

 2     signing the share transfer instrument of the Genever

 3     Holdings Corporation?

 4              MR. HENZY:  Well, let me get to that.

 5              THE COURT:  That's my question.  Are you objecting

 6     to that.

 7              MR. HENZY:  So that was not part of the relief

 8     sought either.

 9              THE COURT:  Let me just ask the question.

10              You now have come in and you articulated very

11     clearly that Mr. Kwok is no longer a debtor in possession.

12              MR. HENZY:  That's right.

13              THE COURT:  Okay.  So he still has obligations

14     under the bankruptcy code and Mr. Despins has asked him to

15     provide information to him, including turning over the

16     shares of Genever Holdings Corporation, correct?

17              Didn't you say you got a letter -- Mr. Despins

18     sent you a letter or sent Mr. Kwok a letter saying he wanted

19     all the information?

20              MR. HENZY:  I don't --

21              MR. DESPINS:  Your Honor, we sent a letter to Mr.

22     Baldiga before he was terminated.  We sent a letter to Mr.

23     Mitchell?  And then we copied -- when they were appointed we

24     copied saying we need all this.  And it asked for all the

25     corporate governance documents regarding BVI.
```

1          THE COURT:  Right.  So wait a minute. So my

2     question to you is why would Mr. Kwok not sign over the

3     shares of a company that he owns to this trustee?

4          MR. HENZY:  I didn't know if you were done, Your

5     Honor.

6          THE COURT:  I am, actually.  So go right ahead.

7          MR. HENZY:  Okay.  So the background is that

8     there's this apartment in New York at the Sherry Netherland

9     Hotel.  That's owned by an entity that is in a Chapter 11

10    before Judge Garrity.

11         THE COURT:  I understand.

12         MR. HENZY:  Okay.  And my understanding, okay,

13    because I haven't spent a bunch of time looking at

14    everything that's gone in that case is that the ownership of

15    then the BVI parent is -- has been disputed.

16         And actually, Judge Garrity -- there was a

17    settlement -- an order, a settlement type of order I guess

18    I'll call it, by Judge Garrity where he -- it basically

19    provides for the sale of the apartment and it's to be

20    overseen by Melanie Cyganowski.

21         And as I understand it the debtor in the Chapter

22    11 case really signed away almost most of its -- or maybe

23    all of its ability to control that sale.

24         So everybody agreed the apartment's going to get

25    sold and we're going to put it in Melanie Cyganowski's hands

1    to do that.

2           So that -- the apartment's not going anywhere.

3    It's going to get sold.  And I assume the money is going to

4    be in a DIP account in that case and nothing bad is going to

5    happen.

6           But again, the ownership of the parent is in

7    dispute.  The allegation is that a trust owns the parent and

8    Mr. Kwok holds the shares as trustee.

9           Your Honor, I want to be clear, that's the

10   allegation that has been made, again, in the Chapter 11 case

11   in front of Judge Garrity. I haven't spent any time on it.

12          My concern is that Mr. Kwok with -- this is -- I

13   saw these documents for the first time -- actually I think I

14   saw them this morning when I woke up because they were filed

15   at 10:09 last night and, frankly, I turned my phone off

16   probably not long before that.

17          So Mr. Kwok -- Mr. Despins has asked you to enter

18   an order directing Mr. Kwok to sign these documents. I have

19   no idea, Your Honor, whether these documents are the

20   appropriate documents. I have no idea how this impacts

21   what's going on in Judge Garrity's case.  How it impacts

22   anything.  I have no idea.

23          I'm not a BVI lawyer. I don't know if these are

24   the correct documents. I don't know what BVI law says. I've

25   never seen the trust agreement that allegedly exists that

128

1    would control anybody's rights here.

2          So if Mr. Despins wants to get an order from the

3    court directing Mr. Kwok to sign specific documents and here

4    -- these specific documents, my argument is that he should

5    have to file a motion and that -- I should have some time to

6    review the motion and to review these documents and try to

7    get an understanding about whether or not these documents

8    are appropriate documents.

9          Again, these documents were not attached to the

10   motion that was filed with the court, Your Honor.  This is

11   new relief that is being sought.

12         All that was sought -- what was sought with

13   respect to the corporate governance was just this

14   confirmation that the trustee has all of the economic and

15   governance rights of the debtor.  It wasn't -- there was

16   nothing in the motion that said please give me an order that

17   directs the order to sign specific documents.

18              THE COURT:  Okay.  Mr. Despins?

19              MR. DESPINS:  Yes, Your Honor.

20         The history there, as you relate is, is that we've

21   been asking for documents since July 14th.  They have not

22   produced one single document, and the document on corporate

23   governance of this entity.

24         So when we filed this motion they said oh, we're

25   not sure this works under BVI law, I said fine.  We'll make

1    it work.  That's why the order actually provides what it

2    provides.

3         And it's true that it's on short notice, but 1021

4    says that -- I'm sorry.  Which section says after notice and

5    a hearing --

6         THE COURT:  1021

7         MR. DESPINS:  1021.  It is whatever notice is

8    appropriate under the particular circumstances.

9         So if Your Honor wanted to -- and I think you have

10   -- Tuesday are bad days for you, right?  You have a full

11   calendar or -- I don't know -- or Wednesday morning, so he

12   can respond but I want before we close on this to provide an

13   exhibit to, Your Honor, if I may approach.

14        THE COURT:  Is it something in the record already?

15        MR. DESPINS:  No.  It's something in the record of

16   the New York court where Mr. Kwok --

17        THE COURT:  Judge Garrity's case?

18        MR. DESPINS:  No.  It's in the New York *Ostrager*

19   case.  Where Mr. Kwok swore that he's the only owner of the

20   shares.  So may --

21        THE COURT:  Yes, you could approach the courtroom

22   deputy, please.  Thank you.

23        MR. HENZY:  Your Honor, I'm not -- I'm going to

24   object to the admission here.  This is an affidavit by --

25        MR. DESPINS:  It's more than that.  It's a

130

1   compilation of documents, but in the first affidavit you'll

2   see it's highlighted.  And it says Mr. -- this is an

3   affidavit by and entity that is related to Mr. Kwok.  And it

4   says Mr. Kwok is a sole shareholder of BVI.

5          But let's assume that doesn't exist.  Let's

6   continue flipping the pages.  Then we get to Defendant

7   Kwok's responses and objections to plaintiff Pacific

8   Alliance set of interrogatories.

9          Then you go to a page, page 6, responses to

10  interrogatories.  Subject to general, dah, dah, dah, I

11  respond that I am the legal owner of the issued shares of

12  Genever Holdings Corporation.

13         And then if you go to the end of that document

14  it's signed by Kwok Ho Wan, December 4th, 2020.

15         THE COURT:  And actually, he says it again on page

16  9 in response to interrogatory number 5.

17         MR. DESPINS:  So yes, there's this issue of --

18  okay, I'm not trying to be cute here.  There is an issue of

19  a trust agreement that would render the son the beneficial

20  owner of the apartment.

21         But that does not -- that does not affect the fact

22  that Kwok is the sole shareholder of the BVI holding entity.

23  And, in fact, the fact that he has -- him, not his son, has

24  continued to exercise control over the debtor entity.  For

25  example, when the debtor in front of Judge Garrity enters

1    into an agreement, it's signed by Mr. Kwok on behalf of the

2    debtor entity.

3           So the only thing we're asking is to have the same

4    rights at BVI and at the debtor entity level so that we can

5    be recognized by Judge Garrity in that case.

6           So -- and I've said this before. We're not trying

7    to stop the sale.  But there are things I will address

8    during the housekeeping issues that are fundamental issues

9    that we need to address in that case that makes this a time

10   sensitive issue.

11          MR. HENZY:  I'm not clear.  Are we having a trial,

12   Your Honor, on the issues -- the ownership issues on this

13   that have been in front of Judge Garrity and that I think

14   the order he entered contemplates that are going to get

15   resolved in litigation someplace else, that's not -- none of

16   this is before the court.  None of this was in the motion

17   that was filed by Mr. Despins.  He asked for a broad

18   confirmation of whatever governance and economic rights he

19   has.  And this is -- none of this is in that motion.

20          MR. FRIEDMAN:  Your Honor?

21          THE COURT:  Yes.

22          MR. FRIEDMAN:  It's Peter Friedman. I just want to

23   be heard for two seconds on this.

24          THE COURT:  Yes.

25          MR. FRIEDMAN: I just think, again, there's a lot

1    of etch-a-sketch and just to go back to one of the issues we

2    talked about a moment ago, if you look at -- I think it's

3    docket no. 107, I think it's paragraph 16, just to be clear

4    and I think you should take into this account the etch-a-

5    sketch nature of everything that happens from that side.

6             Mr. Kwok actually says under oath in that

7    declaration that he knew in May, 2021 about Steve Wynn,

8    right?  And now you hear he didn't know until May, 2022.

9             I just think you need to be really careful with

10   everything you hear connected to Mr. Kwok.  And that goes to

11   who owns the Genever shares.

12            The one thing I wanted to add is that one of the

13   thing we won in addition to the contempt order, in addition

14   to the judgment, was a turnover the shares from Justice

15   Ostrager who said that Mr. Kwok was actually required to

16   turn over the shares of Genever BVI to PAX.

17            So this is just another -- as we see it as this is

18   another attempt to frustrate legitimate creditor access to

19   the shares of valuable entities.  And we think it should

20   stop and we think that the shares should be ordered to be

21   turned -- that the shares have already been ordered to be

22   turned over and that should be effectuated by the relief

23   sought today.

24            And it's just -- it's just a continued pattern of

25   really trying to thwart every effort of creditors to recover

1    assets.  And that's just so important from PAX's perspective

2    that that not be delayed any further.  Thank you, Your

3    Honor.

4              THE COURT:  Thank you.  Mr. Henzy?

5              MR. HENZY:  I never said that Mr. Kwok didn't know

6    about Mr. Wynn prior to the case being filed.  What I said

7    was that a lot of the facts came out after the case was

8    filed, when the DOJ filed it's complaint.

9              And so I think that to keep going back to that,

10   it's twisting I think what I said.  I said when I stood up,

11   Your Honor, that it may be that signing these documents,

12   that there's no objection.

13             What there's an objection to is that the --

14   there's nothing in the motion that asks for this relief.

15   The first --

16             THE COURT:  Well, it asks for it generally. I

17   understand your point.  There were --

18             MR. HENZY:  The --

19             THE COURT:  I understand your point.  There

20   weren't two letters attached to the motion for Mr. Kwok to

21   sign. I understand that.

22             MR. HENZY:  That would be egregious, Your Honor.

23   To say that the relief sought in that motion translates to -

24   - and you have to sign these specific documents --

25             THE COURT:  Well, I don't know if it's egregious

134

1    though.  I don't know if I agree with you completely, okay,

2    insofar as there's been a trustee in place since July 8th.

3    It's August 1st.  The debtor has obligations.  The debtor

4    stated in prior documents in different cases that he owns

5    certain things.

6           There's a share certificate that has been

7    produced.  There's -- this isn't anything new. It may be new

8    to you, but it's not new.  And looking at what Mr. Friedman

9    just pointed out to me again the declaration of Mr. Kwok

10    that was entered on March 20, 2022, where he references the

11    article -- and article about Steve Wynn facing Justice

12    Department action.

13           You know, there comes a point where the arguments

14    start to not be credible.  And the problem is Mr. Kwok

15    thought his case was going to get dismissed.  I don't know

16    why he thought that, but he thought that.

17           After -- you know, when there was a potential --

18    two other things happening.  Appointment of Chapter 11

19    trustee or conversion to Chapter 7.

20           He has obligations.  He doesn't -- he hasn't met

21    those obligations.  With regard to your argument --

22           MR. HENZY:  In what way?  In what way?

23           THE COURT:  Hold on a second.

24           MR. HENZY:  In what way, Your Honor, has he not

25    met -- since the --

1             THE COURT:  He hasn't turned over to Mr. Despins

2    what Mr. Despins' asked him to turn over.

3             MR. HENZY:  Mr. Despins sent a letter --

4             THE COURT:  Hold on.  Wait a minute.  Wait a

5    minute. Now you're not answering my question.

6             MR. HENZY:  Well, what's your --   I don't --

7             THE COURT:  He hasn't turned over to Mr. Despins

8    what Mr. Despins rightfully under the Bankruptcy Code told

9    him to turn over.

10            MR. HENZY:  Okay. I don't have the letter in front

11    of me and I -- and what I don't want --

12            THE COURT:  Well, your client should have provided

13    it to you.

14            MR. HENZY:  What I don't -- no, I've seen the

15    letter, Your Honor.  And what I don't want is for Mr.

16    Friedman to jump up and say -- and twist my words and say I

17    said something I didn't say, okay?

18            But I don't have the letter in front of me.  I

19    don't --

20            THE COURT:  Well, no, but --

21            MR. HENZY:  I don't have the letter in front of

22    me, Your Honor.

23            THE COURT:  Yeah.

24            MR. HENZY:  I think what Mr. Despins asked for in

25    the letter, and Mr. Despins has the letter out and he's

1    going to tell you if I'm wrong, is it was a very broad -- we

2    want to see a whole bunch of information about specific

3    entities, okay?

4            So I don't remember right now, was there a

5    demanding that letter that these documents, okay, but --

6    which I don't know if these documents even exist.

7            I don't remember there being a demand in that

8    letter that said anything other than we want you to turn

9    over a whole bunch of stuff to us, which I will tell you,

10   Your Honor, the debtor -- we are working on that.  We are

11   trying to collect those documents to send them to Mr.

12   Despins.  We are doing that, okay?

13           I have no doubt that Mr. Despins and maybe Your

14   Honor thinks that that should go faster and fine.  But we

15   are working on that.

16           But I don't remember in that letter a document

17   that said -- okay. Mr. Kindseth is telling me, and I think

18   he has a better knowledge of that letter than I do, that

19   there was no such request, okay?

20           So I'm not --

21           THE COURT:  No specific letter or with regard to

22   Genever? I mean, that's a different -- you're parsing things

23   differently.

24           MR. HENZY:  I'm not parsing things.  There was a

25   letter that Mr. Despins sent that appropriately -- okay,

1    there's no push back -- said you've got to send me this

2    stuff, okay?  That hasn't happened yet. I admit that.

3            The debtor -- we're working on that.

4            THE COURT:  Okay.

5            MR. HENZY:  Should it go more quickly?  Maybe it

6    should.

7            THE COURT:  But let me just say why your argument

8    is failing, okay?

9            Mr. Kwok submitted an affidavit in this court on

10   May -- March 20, ECF 107, paragraph -- I'll tell you what

11   page.  Page 16 or 108.  Cooperative shares in the Sherry

12   Netherland apartment are held by Genever Holdings, LLC. The

13   membership interests in Genever U.S. are in turn held by

14   Genever Holdings Corporation, Genever BVI. I hold all of the

15   equity of Genever BVI.  That's Mr. Kwok.

16           MR. HENZY:  But you have to keep going. I think --

17   I would suggest --

18           THE COURT:  No, I don't.

19           MR. HENZY:  However --

20           THE COURT:  No, I really don't.  Not when it

21   matters with regard to Genever BVI and that's what the

22   trustee's asking about.

23           MR. HENZY:  However, pursuant to a declaration of

24   trustee agreement dated February 17, 2015 I hold such equity

25   in trust for Bravo Luck Limited.  My son owns the equity of

1      the apartment owner.

2              THE COURT:  Well, guess what?  You don't get to

3      Bravo Luck, Limited till you get to Genever BVI.  You can't

4      -- all you have to do is look at the chain.  You don't get

5      to Bravo Luck Limited until you get to Genever BVI because

6      he holds all the equity but then he holds it in a trust.  I

7      mean, it's going to be very difficult.

8              We can do a chart.  We can make a nice little

9      chart.  We can draw the lines from entity to entity.  But

10     this --

11             MR. HENZY:  What this -- I apologize, Your Honor.

12             THE COURT:  This is what he said.  And he said it

13     also bears noting that any interest I have in Genever BVI

14     has been ordered by Justice Ostrager to be turned over to

15     PAX, provided that such a turnover does not interfere with

16     pending litigation in the British Virgin Islands or Genever

17     U.S. bankruptcy.  Okay?

18             So Mr. Kwok said this on March 20.  It's August

19     1st.  For him to be -- I'm not saying I'm not going to give

20     you an opportunity to respond, because I am going to give

21     you one, okay?  It's not going to be long.

22             And the point is this -- to make an argument that

23     you don't -- not that you, not about you.  That counsel for

24     Mr. Kwok doesn't know whether this will have an impact and

25     other parties, worried about other third parties, that's all

1  irrelevant because Mr. Kwok already swore to this court that

2  he holds all the equity of Genever BVI.

3          MR. HENZY:  I think that you and I are reading

4  this differently, Your Honor.  I'm sorry.

5          THE COURT:  Okay.  Then we're reading it

6  differently.  But then guess what?  Then you'll have -- I'm

7  going to rule that he has to do this ultimately.  This is

8  what he said.  This is what he said.  My son owns -- the

9  apartment owner.

10          However, pursuant to a declaration of trust, I

11  hold such equity in trust for Bravo Limited.

12          MR. DESPINS:  He still holds it.

13          MR. HENZY:  He holds it in --

14          THE COURT:  He's still --

15          MR. HENZY:  He holds it in trust for Bravo

16  Limited.

17          THE COURT:  Okay.

18          MR. HENZY:  Look, I --

19          THE COURT:  And how did Bravo Limited pay for that

20  apartment?  Are we just going to go through all the -- this

21  is what -- we're going to follow the money, right?  Is that

22  what we're going to do?  Isn't that what we're doing?

23          MR. HENZY:  I have no idea.

24          THE COURT:  That's what we're doing.  That's why

25  there was a Chapter 11 trustee appointed.  That's what we're

1    doing.

2              What's happened here is --

3          MR. HENZY:  There's a bunch of things here that

4    seem to me like they're not connected, Your Honor.

5          THE COURT:  Well, how can they not be connected?

6    He said they're connected.  He wrote it in his own

7    declaration.  This is what he -- he is saying.  So --

8          MR. HENZY:  He says he holds it in trust for

9    someone else.  And look, again, I haven't had -- I have not

10   had time to analyze this because this was --

11         THE COURT:  Okay.  Let's look at the certificate.

12   Let's look at the certificate that was in the New York State

13   action, which is dated some time in -- February 13, 2015.

14   He holds the -- it says "I certify that I am the registered

15   holder of 1,000 share of U.S. dollar, one penny par value,

16   each being fully paid in the above company subject to the

17   memorandum and article association of the company."

18             So that's February 13, 2015.  This trust was dated

19   four days later.  So then he took his equity.  So then maybe

20   it's a fraudulent transfer.

21         MR. HENZY:  It might be. It might, Judge.

22         THE COURT:  It might be.

23         MR. HENZY:  Okay.  But we're not -- I don't think

24   we can resolve that on essentially 14 hours notice.

25         THE COURT:  I just told you I'm going to give you

141

1    time to respond.

2            MR. HENZY:  Okay.

3            THE COURT:  I'm going to give you time to respond.

4            MR. HENZY:  To circle all the way back here, I

5    said, Your Honor, it may be completely appropriate, the

6    debtor may have no objection to signing these documents, but

7    I don't know because this was filed at 10:09 last night.

8    And it wasn't in the motion that had previously been filed.

9            THE COURT:  Okay.  Well, I'm going to give you an

10   opportunity to ask your client if he's going to sign the

11   documents, okay?

12           MR. HENZY:  Thank you, Your Honor.

13           THE COURT:  Okay.

14           MR. HENZY:  Can I have enough time to do the

15   diligence?  Because I have -- I would like to find out --

16   for me to advise my client I think I need to do some

17   diligence and understand this, okay?  So I'm hoping I'm

18   going to get more than 24 or 36 hours. I heard Mr. Despins

19   say Wednesday morning.  Nothing is happening here, Your

20   Honor.  The apartment --

21           THE COURT:  That's the point. Nothing is happening

22   here.

23           MR. HENZY:  No, no, no, no.  On the apartment --

24   and everybody --

25           THE COURT:  And we've got to get some stuff to

1    move forward.

2            MR. HENZY:  I don't know what I said that was

3    funny. I'm generally not viewed as being a funny guy, but

4    the apartment is going to get sold under a process that's

5    being supervised by Melanie Cyganowski.  The apartment, the

6    money, it's all going to be property of that bankruptcy

7    estate in the Southern District under Judge Garrity's

8    supervision.  It's not going anywhere.

9            I don't know -- is the idea that Mr. Kwok is going

10   to somehow abscond with the apartment, he's going to take

11   the Sherry Netherland apartment and go away with it or he's

12   going to take the money from the apartment and go away with

13   it.  That's not going to happen.

14           So I think it's fair given the complexity here.

15   And you and I do read this paragraph differently. I think

16   that -- I don't know, Your Honor, what the structure is

17   here. I do know that property that's held in trust for

18   another is not property of a bankruptcy estate, depending on

19   --

20           THE COURT:  I'm not so sure about that.

21           MR. HENZY:  Depending on facts and circumstances.

22           THE COURT:  I'm not so sure about that.

23           MR. HENZY:  So maybe sometimes it is.  I think

24   often times it is not.  So I don't know what all of the

25   facts are here because as I said, this was not part of a

1    motion that had been filed.  This was in an order that was

2    filed at 10:09 last night.

3            THE COURT:  I understand.

4            MR. DESPINS:  And, Your Honor, I'll provide Mr.

5    Henzy more documents.  Actually, there's one which is --

6            MR. HENZY:  Don't hand -- I don't want you to hand

7    me documents. We're in court.

8            MR. DESPINS:  Okay.

9            MR. HENZY:  You can get me documents.

10           MR. DESPINS:  Okay.  But the point, Your Honor, is

11   that Mr. Kwok is exercising control over that entity.  So

12   ti's not his son.

13           So, for example, when the Genever U.S. wanted to

14   file for bankruptcy the authorization is signed by Mr. Kwok.

15   It's not signed by the son or Bravo Luck. It's signed by Mr.

16   Kwok.

17           So I guess, Your Honor, we're talking about

18   scheduling since --

19           THE COURT:  Yes, we are.  We're talking about

20   scheduling. I'm going to give Mr. Henzy some time to look at

21   this and file a response.

22           I'm looking at -- hold on one second, okay?  I

23   just need to look at the calendar.

24       (Pause.)

25           All right.  With regard to the motion filed by the

1    trustee, the motion for order confirming that the Chapter 11

2    trustee holds all the debtor's economic and corporate

3    governance rights, ECF 598, and the order -- revised

4    proposed order with regard to that motion that appears at

5    ECF 645, for the reasons stated on the record that matter

6    will -- this matter will be continued to Thursday, August

7    4th at 1:00 p.m.

8         Now with regard to the -- so that I think takes

9    care of all of our matters, other than the housekeeping

10   matters, Trustee Despins, which includes the proof of claim

11   bar date order.

12        MR. HENZY:  Can I have one point or question, Your

13   Honor?

14        THE COURT:  Yes.

15        MR. HENZY:  Okay.  On the letter to the Harcus

16   Parker firm, I'm not talking to Harcus Parker without Mr.

17   Despins being on the phone because I think I'm going to get

18   -- probably I'm going to get accused of saying something I

19   shouldn't have said or my words are going to get twisted.

20        THE COURT:  Well, you and Mr. Despins work that

21   out. I'm not ordering that you be on the phone.

22        MR. HENZY:  I don't know what their availability

23   is. I don't know -- you know, so I don't know if that can

24   happen by August 4 at 1 o'clock.  That's all.

25        I certainly will make myself available and use

145

```
1    best efforts, but we're talking about talking to lawyers in
2    London and I don't know what -- how much time that's going
3    to take.
4              THE COURT:  I don't think anybody's talking about
5    talking to lawyers in London other than you.
6              MR. HENZY:  We have to.
7              THE COURT:  Then that's your issue. You can figure
8    it out. We're having a hearing on Thursday at 1:00 p.m.
9              MR. HENZY:  Okay.  So I don't know how I figure it
10   out if I --
11             THE COURT:  Well, you'll try.  You can figure it
12   out.  You'll try to.
13             MR. DESPINS:  Your Honor, Thursday at 1:00 is that
14   in person or a Zoom?
15             THE COURT:  Well, what do you -- do you have a
16   conflict with Thursday?  Is that what you're telling me?
17             MR. DESPINS:  Yes, I'm out of the country.
18             THE COURT:  Oh, you're out of the country.  Well,
19   that's --
20             MR. DESPINS:  But I can do Zoom.
21             THE COURT:  Okay.  Well, then we can -- I guess --
22   when are you going to be back?  Are you out for a long time?
23             MR. DESPINS:  Yes.
24             THE COURT:  Okay.  All right.  So then we'll do it
25   by Zoom then.
```

1          MR. DESPINS:  Thank you, Your Honor.

2          THE COURT:  We'll do it by Zoom.

3          MR. DESPINS:  So now I would go into the

4    housekeeping matters, but --

5          THE COURT:  Last point and I'll be quiet, Your

6    Honor.  I promise. I just want to be clear.

7          There's other relief sought in that motion that

8    the debtor objected to.  So I don't want the court to think

9    that -- and I'm fine if that goes to --

10         THE COURT:  I don't know -- we're going to talk

11   all about that on Thursday.

12         MR. HENZY:  So everything is getting carried to --

13         THE COURT:  I will tell you, I -- my initial

14   review, subject to further argument on Thursday, is I don't

15   know what the basis for the objection of the debtor would be

16   to any other relief set forth in that motion.

17         MR. HENZY:  Okay.  Understood, Your Honor.

18         THE COURT:  Okay.

19         MR. DESPINS:  So, Your Honor, we've been at it for

20   three hours and 45 minutes.  I don't know if you want to

21   take a break before we go into the -- because there's a good

22   20 --

23         THE COURT:  Well, I'll ask the courtroom staff.

24   Would you like to take a break?  I'm sure they would,

25   actually.  Would you like to take a few minute break?  Okay.

1    Thank you.

2            So it's 3:40.  What, do you want to come back at

3    3:50 or you want longer than that?

4            MR. DESPINS:  No, that's fine, Your Honor.

5            THE COURT:  Does that work for you -- all of us?

6    I mean, it works for me.

7            So court will be in recess until 3:50.

8        (Recess from 3:37 p.m. until 3:50 p.m.)

9            THE COURTROOM DEPUTY:  We're still on case no. 22-

10   50073, Ho Wan Kwok.

11           THE COURT:  Okay.  Mr. Despins.  Before the recess

12   we were going to talk about a few --

13           MR. DESPINS:  Housekeeping.

14           THE COURT:  -- housekeeping matters, so go right

15   ahead.

16           MR. DESPINS:  The first one, Your Honor, was the

17   request to have the status conference every ten days or so.

18   And the trustee would have an obligation to file an agenda

19   24 hours before.

20           I may be that sometimes we'll say no need for the

21   status conference, but I think it's really important,

22   especially in the first few months of the case, to stay in

23   touch with the court and so, therefore, we would ask that we

24   could just --

25           THE COURT:  That's fine.  That's absolutely fine.

1    Do you have proposed dates in mind or --

2            MR. DESPINS:  Not yet.  I'll discuss this with Mr.

3    Skalka and we'll come back to Your Honor but I just want to

4    --

5            THE COURT:  Certainly.

6            MR. DESPINS:  Okay.

7            The next item -- this is more complicated.  And I

8    know last time we talked about the bar date and I said we

9    would mark it up and we did.

10           But I started looking deeper into this and

11   realized that there's a fundamental problem here and it is

12   as follows.

13           You've go the Genever U.S. case that was filed

14   before this case --

15           THE COURT:  Yes.

16           MR. DESPINS:  -- and what's at state there is who

17   owns the Sherry Netherland.  And there was a bar date set in

18   that case, but notice was not given -- first of all, there

19   was no publication notice and there was no notice given to

20   potential creditors of Mr. Kwok.  It was given to a few

21   people and Mr. Friedman and his colleagues, of course, were

22   around the hoop because they were already involved.

23           And God bless them from their point of view.  They

24   did file a claim of PAX against Genever there but my

25   position vis-a-vis that entity is I'm an equity holder

1   because I'm -- I own the shares.

2          Well, I own the shares not personally, but this

3   estate owns the share.  And that doesn't work because the

4   bar date has passed in that case.  My Goldman's clients were

5   never on notice of this because he didn't exist then because

6   there was no case here.

7          So there is a need -- a pretty important need to

8   coordinate these two cases, not only because of that issue,

9   because there are many ways of fixing that issue. One would

10  be expand the bar date in that case, reopen it to allow Mr.

11  Goldman's clients to file claims. I'm not saying that's a

12  preferred course, but that's one.

13         Another one would be for us to file a piercing the

14  veil or alter ego claim in that case, et cetera, et cetera.

15         But the point is there's a need for coordination

16  because right now that case is going on its merry way.  The

17  sale is not an issue.  That's not a problem.

18         It's going on its merry way where at the end of

19  the day assuming the best thing, which is the Sherry

20  Netherland is owned by Mr. Kwok, that money would be shared

21  with those creditors around the hoop there only and that's

22  PAX and the Sherry Netherland, the hotel itself and very few

23  other people.  Well, that's -- a fiduciary to the creditors

24  in this case to me that can't work.

25         So -- and there's a second thing that's

1    fundamental.  We should not have two courts, two separate

2    courts, deciding the issue of the Sherry Netherland -- the

3    ownership of the Sherry Netherland and the issue of who owns

4    the yacht.  And you might say well, the yacht is different

5    than the hotel, yes.

6         But at the end of the day, one is the daughter,

7    one is the son.  It's all the same issues.  Yes, there'll be

8    different timing issues, but at the end of the day the

9    arguments will all be the same.

10        To have two separate courts decide that issue

11   would be a huge waste of judicial resources and professional

12   fees.  So you might say well, that's a lot to process and to

13   digest and I've been struggling with this.  And I've talked

14   to the committee and to PAX about this and they're

15   proceeding it too.

16        But I think what needs to happen is there should be -

17   - because I would appear in front of Judge Garrity and tell him

18   the same things.  But I think you and him need to either -- I

19   don't know how you feel about that, have a conversation about

20   this or have a joint status conference, which is very unusual,

21   but it's been done.

22        But that issue needs to be tackled in one way or

23   another in the next month or so because it is unfair to the

24   people who have claims against Mr. Kwok to have missed out on

25   the bar date in that case because they have no greater or worse

151

1     right than PAX had.  PAX claim against Genever is a piercing

2     the veil, an alter ego claim.

3             And, again, I'm not criticizing them.  They're doing

4     their job.  They're not a fiduciary for anyone and for some

5     reason the debtor -- well, the debtor was controlled by Mr.

6     Kwok so obviously not interested in publicizing -- having

7     publication notice et cetera, et cetera, and that's why I told

8     you the bar date, even though we marked it up an all that.

9             I think until that issue is resolved we should park

10    it because what I don't want to do is do two publication notice

11    and we need to resolve this issue one way or another and my job

12    is to propose a path forward which I'm not ready to do without

13    talking again to the committee and to PAX and to debtor's

14    counsel in the Genever case.

15            And I want to be clear, this does not affect the

16    sale. I'm not trying to say oh, we're not going to sell the --

17    that's not the case.

18            But there's a nee for coordination and I wanted to

19    put that in front of Your Honor. I don't expect you to have a

20    response on the spot because there's a lot of moving pieces to

21    this but I think that -- and I know you have a full docket, so

22    I'm not trying to put another case on your plate.  I understand

23    that.

24            Judge Garrity is also very busy so that's why I think

25    there needs to be either a call between the two of you or a

1   joint status conference but I think that makes sense to happen

2   once we have a path forward to recommend.

3           THE COURT:  Well, so what I think you're saying is

4   you think that both of the cases should be in front of the same

5   judge.  So isn't there a way to do that by filing a motion?

6           MR. DESPINS:  Yeah, there is.  But I --

7           THE COURT:  Because I don't know that a judge should

8   have a conversation with another judge about -- I mean, I --

9           THE COURT:  Well, especially do you want to -- one of

10  the reasons I would be not inclined to do that is I don't want

11  to open up any allegations that there was something improper or

12  --

13          MR. DESPINS:  Yeah.

14          THE COURT:  I mean, what -- you know, but if you

15  think that's appropriate, then you can file -- anyone can file

16  a motion.

17          MR. DESPINS:  Well, but to be clear, that motion

18  would have to be filed in front of Judge Garrity, because he's

19  the first to file.

20          THE COURT:  I understand.  And so this case may go

21  there is what you're saying.

22          MR. DESPINS:  What I'm saying is that, first of all,

23  I would never file that motion without talking to you first

24  because you might say what did you just do?  And so I'm

25  socializing the issue with you.  You should think about it and

1       we will come back to the court probably at our next status

2       conference on this.

3              But I want to make sure that is something that you're

4       thinking about because it needs to be resolved in one way or

5       another.  So that's really the issue regarding the bar date in

6       Genever.

7              The next thing I wanted to mention very briefly the

8       Lady May inspection.  Mr. Kindseth last time described the fact

9       that they were very -- well, I won't say very minor, but fairly

10      discreet issues that need to be resolved.

11             It turns out that that's not the case.  As Your Honor

12      will remember even though I'm not a party to the stipulation,

13      they allowed me visiting rights or inspection right and it

14      turns out that there are more issues.

15             But the parties are talking and we're hopeful that

16      that will be resolved.  But I wanted to make sure that you knew

17      that that dialogue was ongoing.  We had a call I think last

18      week about this with the Zeisler firm and with PAX's counsel.

19             Your Honor, you will recall that we hired Paul

20      Derektor as an expert to assist us with that, $2,500.  And it's

21      a request for Your Honor, and I know the rules and the U.S.

22      Trustee will probably scream about this, but would it be okay

23      if we just expensed it.

24             What I mean by that is not file a motion to retain

25      him as an expert?  We can do that but it's going to cost more

1    than the $2,500 and my point is -- expensive meaning right now

2    there are no assets.  So I mean we're paying for it.

3    Eventually we hope that there'll be money to be paid but we

4    would put that as a line item expense rather than filing a

5    motion to retain Mr. Derektor in the case as an expert.  But I

6    don't feel strongly. It's just from a cost savings point of

7    view I think it would make sense.

8         THE COURT:  Well, I think you should talk to the

9    parties about that too.  I mean, if people don't have an

10   objection, then it's likely to be fine.

11        MR. DESPINS:  Okay.  We'll table that. You're

12   absolutely right, Your Honor.

13        Lady May we talked about.  Just housekeeping, the

14   debtors are still -- their monthly operating reports from May

15   and June still haven't been filed.  The debtor still is under

16   obligation to file that so I want to remind everyone of that

17   and that's all I have from a housekeeping point of view, Your

18   Honor.

19        THE COURT:  Okay.

20        MR. DESPINS:  Thank you.

21        THE COURT:  Let me just take one look for a second

22   and see if there's anything else that I think I had any

23   questions about.

24        (Pause.)

25        So with regard to the bar date motion and the

1    proposed order then, we're just going to continue those to a

2    future status conference?  Is that what you're thinking?

3           MR. DESPINS:  That's correct, Your Honor.

4           THE COURT:  Okay.  So to a date to be determined

5    essentially.

6           MR. DESPINS:  Yes, Your Honor.

7        (Pause.)

8           THE COURT:  Mr. Kindseth?

9           MR. KINDSETH:  Yes, Your Honor.  In the interest of

10   just basically updating Your Honor and the other parties with

11   respect to the Lady May, Your Honor, for HK International, no

12   one is more interested in expediting the satisfaction of the

13   requirements set forth in the stipulation with respect to the

14   Lady May more than my client.  We've been working very

15   diligently to satisfy those obligations.

16          Your Honor made reference to the certification.  My

17   client is unable to file the certification until the other

18   elements are satisfied, one of which is this court's

19   establishment of the repair reserve. The repair reserve

20   requires my client to provide proposals with respect to the

21   repairs that need to be done for the Lady May to be returned in

22   good working order.

23          There's been some delay with respect to finding and

24   getting proposals from entities just because they're very busy

25   right now.

1          As we've received proposals we've circulated them

2     with the trustee, creditors committee counsel and PAX counsel.

3          With respect to the actual repairs that need to be

4     performed, unbeknownst to me at the time before Your Honor last

5     there was an additional repair that needs to be performed.

6          Apparently when the fuel pump failed, which I did

7     disclose to the court, it caused the gears, some gears to

8     basically get stripped.  And so there are tiny shards of metal

9     that you can see from the gears -- and, again, this was

10    produced to everybody -- that were circulated in the oil system

11    within the engine.

12         So the oil needs to be cleaned out.  The shards need

13    to be reduced.  We's just talking about little pieces but

14    obviously it needs to be repaired and we received a quote for

15    that.

16         And so we're in communications with the trustee and

17    counsel for the creditors committee and counsel for PAX to try

18    to come up with an agreed up number for the repair reserve

19    which would then enable us, once this court orders the repair

20    reserve, to file the certification.  Thank you, Your Honor.

21         THE COURT:  Thank you.

22         Does anyone else wish to be heard?

23         MR. HENZY:  Not on the Lady Mae, Your Honor, but am I

24    to file a replay before Thursday at 1 o'clock on the --

25         THE COURT:  Yes. Yes.

1       MR. HENZY:  And I didn't write it down --

2       THE COURT:  I didn't give you a time frame, but I can

3   give you till Thursday morning at 9 o'clock, if you'd like.

4   But I can't give you any longer than that. I've got to be able

5   to read it before the hearing or there's no point in the

6   hearing.

7       MR. HENZY:  I'll get it -- thank you, Your Honor.  I

8   expect I'll get it filed before then but thank you.

9       THE COURT:  Okay.  Anyone else wish to be heard?

10      (No audible response.)

11      THE COURT:  Okay. I think that takes care of all the

12  matters today then in this case and we will reconvene on

13  Thursday, via Zoom at 1:00 p.m.  And the debtor has until 9:00

14  a.m. on Thursday morning to file the response to the corporate

15  governance motion, okay?

16      That takes care of all the matters on the calendar so

17  court is adjourned.

18      (Proceedings adjourned at 4:05 p.m.)

19

20

21

22

23

24

1

2          I, CHRISTINE FIORE, court-approved transcriber and

3    certified electronic reporter and transcriber, certify that the

4    foregoing is a correct transcript from the official electronic

5    sound recording of the proceedings in the above-entitled

6    matter.

7

8    *Christine Fiore*

9    _____          August 9, 2022

10      Christine Fiore, CERT

11      Transcriber

12

13

14

15

16

17

18

19

20

21

22

23

24

Form ntcflgtrbk

## UNITED STATES BANKRUPTCY COURT
## District of Connecticut

| | |
|---|---|
| In | Ho Wan Kwok |
| Re: | Debtor(s) |

Case No.: 22–50073

### NOTICE OF FILING OF TRANSCRIPT
### AND OF DEADLINES TO RESTRICTIONS AND REDACTION

A transcript of the proceeding held on August 1, 2022 was filed on August 10, 2022. The following deadlines apply:

The parties have until seven (7) calendar days from the date of filing of the transcript to file with the court a *Notice of Intent to Request Redaction* of this transcript. The deadline for filing a *request for redaction* is 21 days from the date of filing of the transcript.

If a request for redaction is filed, the redacted transcript is due 31 days from the date of filing of the transcript.

If no such notice is filed, the transcript may be made available for remote electronic access upon expiration of the restriction period, which is 90 calendar days from the date of filing of the transcript unless extended by court order.

To review the transcript for redaction purposes, you may purchase a copy from the transcriber or you may view the document at the clerk's office public terminal.

Dated: August 10, 2022

Pietro Cicolini
Clerk of Court

| | |
|---|---|
| United States Bankruptcy Court | Tel. (203) 579–5808 |
| District of Connecticut | VCIS* (866) 222–8029 |
| 915 Lafayette Boulevard | * Voice Case Information System |
| Bridgeport, CT 06604 | http://www.ctb.uscourts.gov |
| | Form ntctrbk |

# Notice Recipients

District/Off: 0205–5     User: admin     Date Created: 8/10/2022

Case: 22–50073     Form ID: ntctrbk     Total: 66

**Recipients submitted to the BNC (Bankruptcy Noticing Center) without an address:**

| | | |
|---|---|---|
| 20 | Pacific Alliance Asia Opportunity Fund L.P. | |
| cr | Zheng Wu | |
| 20 | Rui Ma | |
| 20 | Weican Meng | |
| intp | Golden Spring (New York) LTD | |
| crcm | Official Committee of Unsecured Creditors | |
| intp | HK International Funds Investments (USA) Limited, LLC | |
| intp | Mei Guo | |
| cr | Baosheng Guo | |
| cr | Yan Zhao | |
| cr | Ning Ye | |
| cr | Chong Shen Raphanella | |
| cr | Xiaodan Wang | |
| cr | Rong Zhang | |
| aty | Michael S. Weinstein | |

TOTAL: 15

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| ust | U. S. Trustee | USTPRegion02.NH.ECF@USDOJ.GOV |
| tr | Luc A. Despins | lucdespins@paulhastings.com |
| aty | Aaron Romney | aromney@zeislaw.com |
| aty | Aaron A Mitchell | aaron@lmesq.com |
| aty | Annecca H. Smith | asmith@rc.com |
| aty | Avram Emmanuel Luft | aviluft@paulhastings.com |
| aty | Carollynn H.G. Callari | ccallari@callaripartners.com |
| aty | David S. Forsh | dforsh@callaripartners.com |
| aty | David V. Harbach, II | dharbach@omm.com |
| aty | Douglas S. Skalka | dskalka@npmlaw.com |
| aty | Douglass E. Barron | douglassbarron@paulhastings.com |
| aty | Eric A. Henzy | ehenzy@zeislaw.com |
| aty | G. Alexander Bongartz | alexbongartz@paulhastings.com |
| aty | Holley L. Claiborn | holley.l.claiborn@usdoj.gov |
| aty | Irve J. Goldman | igoldman@pullcom.com |
| aty | James C. Graham | jgraham@npmlaw.com |
| aty | James M. Moriarty | jmoriarty@zeislaw.com |
| aty | Jay Marshall Wolman | jmw@randazza.com |
| aty | John L. Cesaroni | jcesaroni@zeislaw.com |
| aty | Jonathan Kaplan | jkaplan@pullcom.com |
| aty | Kristin B. Mayhew | kmayhew@mdmc–law.com |
| aty | Laura Aronsson | laronsson@omm.com |
| aty | Luc A. Despins | lucdespins@paulhastings.com |
| aty | Lucas Bennett Rocklin | lrocklin@npmlaw.com |
| aty | Mia N. Gonzalez | mgonzalez@omm.com |
| aty | Michael S. Weinstein | mweinstein@golenbock.com |
| aty | Nicholas A. Bassett | nicholasbassett@paulhastings.com |
| aty | Patrick M. Birney | pbirney@rc.com |
| aty | Patrick R. Linsey | plinsey@npmlaw.com |
| aty | Peter Friedman | pfriedman@omm.com |
| aty | Peter J. Zarella | pzarella@mdmc–law.com |
| aty | Sara Pahlavan | spahlavan@omm.com |
| aty | Scott D. Rosen | srosen@cb–shea.com |
| aty | Stephen M. Kindseth | skindseth@zeislaw.com |
| aty | Stuart M. Sarnoff | ssarnoff@omm.com |
| aty | Thomas J. Sansone | tsansone@carmodylaw.com |
| aty | Timothy D. Miltenberger | Tmiltenberger@cbshealaw.com |
| aty | William R. Baldiga | wbaldiga@brownrudnick.com |

TOTAL: 38

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | | | |
|---|---|---|---|---|---|
| db | Ho Wan Kwok | 373 Taconic Road | Greenwich, CT 06831 | | |
| cr | Logan Cheng | c/o Randazza Legal Group, PLLC | 100 Pearl Street | 14th Floor | Hartford, CT 06103 |
| ca | Stretto | 410 Exchange, Suite 100 | Irvine, CA 92602 | | |
| dbaty | Brown Rudnick LLP | One Financial Center | Boston, MA 02111 | | |
| crcm | Pullman & Comley, LLC | 850 Main Street | Bridgeport, CT 06601 | | |
| 20 | Huizhen Wang | c/o TroyGould PC | 1801 Century Park East, 16th Floor | Attn: Christopher A. Lilly | Los Angeles, CA 90067–2367 |

| | | | | |
|---|---|---|---|---|
| cr | Chao–Chih Chiu | c/o TroyGould PC | 1801 Century Park East, 16th Floor | Attn: Christopher A. Lilly |
| | | Los Angeles, CA 90067–2367 | | |
| cr | Yunxia Wu | c/o TroyGould PC | 1801 Century Park East, 16th Floor | Attn: Christopher A. Lilly |
| | | Los Angeles, CA 90067 | | |
| cr | Keyi Zilkie | c/o TroyGould PC | 1801 Century Park East, 16th Floor | Attn: Christopher A. Lilly |
| | | Los Angeles, CA 90067 | | |
| intp | Yongbing Zhang | 223 West Jackson Bl;vd. #1012 | Chicago, IL 60606 | |
| cr | Brown Rudnick LLP | One Financial Center | Boston, MA 02111 | |
| aty | Luc A. Despins | Paul Hastings LLP | 200 Park Avenue | New York, NY 10166 |
| aty | Steven E. Mackey | Office of the U.S. Trustee | The Giaimo Federal Building | 150 Court Street, Room 302 |
| | | New Haven, CT 06510 | | |

TOTAL: 13

## **EXHIBIT C**

***In re Kwok***, **No. 22-50073 (JAM) [Docket No. 746]**

**August 4, 2022 Hearing Transcript**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In Re | * | Case No. 22-50073 (JAM) |
| | * | |
| HO WAN KWOK, | * | Bridgeport, Connecticut |
| | * | August 4, 2022 |
| Debtor. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JULIE A. MANNING
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | ERIC A. HENZY, ESQ.<br>Zeisler & Zeisler, P.C.<br>10 Middle Street, 15th Floor<br>Bridgeport, CT  06604 |
| For the Creditor, Pacific<br> Alliance Asia Opportunity<br> Fund L.P.: | PETER FRIEDMAN, ESQ.<br>STUART M. SARNOFF, ESQ.<br>O'Melveny & Myers LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY  10036 |
| | PATRICK BIRNEY, ESQ.<br>Robinson & Cole<br>28 Trumbull Street<br>Hartford, CT  06103 |
| For the Creditors Committee: | IRVE GOLDMAN, ESQ.<br>Pullman & Comley<br>850 Main Street<br>Bridgeport, CT  06601 |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

2

APPEARANCES:  (Cont'd)

For the Creditors, Rui Ma,      KRISTEN MAYHEW, ESQ.
 Weican Meng and Zheng Wu:      McElroy Deutsch
                                225 Liberty Street
                                36th Floor
                                New York, NY  10281

For the U.S. Trustee:           HOLLEY L. CLAIBORN, ESQ.
                                Office of the United States
                                   Trustee
                                The Giaimo Federal Building
                                150 Court Street, Room 302
                                New Haven, CT  06510

Chapter 11 Trustee:             LUC A. DESPINS, ESQ.
                                Paul Hastings LLP
                                200 Park Avenue
                                New York, NY  10166

Counsel for the                 G. ALEXANDER BONGARTZ, ESQ.
 Chapter 11 Trustee:            Paul Hastings LLP
                                200 Park Avenue
                                New York, NY  10166

                                PATRICK R. LINSEY, ESQ.
                                Neubert, Pepe & Monteith, P.C.
                                195 Church Street, 13th Floor
                                New Haven, CT  06510

For Creditor Logan Cheng:       JAY M. WOLMAN, ESQ.
                                Randazza Legal Group, PLLC
                                100 Pearl Street, 14th Floor
                                Hartford, CT  06103

1        (Proceedings commenced at 1:05 p.m.)

2             THE COURTROOM DEPUTY:  Case No. 22-50073, Ho Wan

3    Kwok.

4             THE COURT:  Thank you.

5             If we could have appearances for the record,

6    starting with the Chapter 11 trustee, please.

7             MR. DESPINS:  Good afternoon, Your Honor.  Luc

8    Despins, Chapter 11 Trustee.  And I'm here with my counsel

9    from Paul Hastings, Alex Bongartz, and Mr. Linsey, local

10   counsel to the trustee.

11            THE COURT:  Good afternoon.

12            And then if we could have counsel for the

13   committee, please.

14            MR. GOLDMAN:  Good afternoon, Your Honor.  Irve

15   Goldman, Pullman & Comley, representing the creditors

16   committee.

17            THE COURT:  Good afternoon.

18            And counsel for the creditor PAX.

19            MR. BIRNEY:  Good afternoon, Your Honor.  Patrick

20   Birney, Robinson & Cole, on behalf of PAX.  With me this

21   afternoon is Stuart Sarnoff from O'Melveny & Myers.

22            THE COURT:  Good afternoon.

23            Who am I missing?

24            Counsel --

25            MR. BIRNEY:  Your Honor, Mr. Friedman has just

Ho Wan Kwok - August 4, 2022                                    4

1    joined as well.

2              THE COURT:  Okay.  Thank you.

3              Counsel for the creditors Rui Ma and related

4    creditors.

5              MS. MAYHEW:  Yes.  Good afternoon, Your Honor.

6    Kristen Mayhew, McElroy Deutsch Mulvaney & Carpenter, on

7    behalf of Rui Ma, Zheng Wu and Weican Meng.

8              THE COURT:  Good afternoon.

9              Counsel for the debtor.

10             MR. HENZY:  Good afternoon, Your Honor.  Eric

11   Henzy, of Zeisler & Zeisler, for the debtor.

12             THE COURT:  Good afternoon.

13             Counsel for the U.S. Trustee, please.

14             MS. CLAIBORN:  Good afternoon, Your Honor.  Holley

15   Claiborn for the U.S. Trustee.

16             THE COURT:  And I think Mr. Wolman.  And that's

17   the only person I'm missing at this point, is that right?

18             THE COURTROOM DEPUTY:  I believe so, Your Honor.

19             MR. WOLMAN:  Good afternoon, Your Honor.  Jay

20   Wolman, of Randazza Legal Group, for creditor Logan Chang.

21             THE COURT:  Good afternoon.

22             Okay.  I think everyone's appearances have been

23   noted for the record.

24             As I stated before, that there are two matters on

25   the calendar.

1          I did not see any objection or response to the

2     Chapter 11 trustee's motion for extension of time with

3     regard to the removal of civil actions.  The motion looks

4     fine to me, as does the proposed order.

5          Does anyone wish to be heard on the trustee's

6     motion to extend the deadline for removal of civil actions?

7       (No audible response)

8               THE COURT:  Okay.  Hearing no response --

9               MR. LINSEY:  Your Honor.

10              THE COURT:  Yes.

11              MR. LINSEY:  Yeah.  I won't say much if the motion

12    looks fine to you.

13              THE COURTROOM DEPUTY:  Attorney Linsey --

14              MR. LINSEY:  This is Patrick Linsey for the

15    trustee.  Just note --

16              THE COURTROOM DEPUTY:  Excuse me.  Attorney

17    Linsey, if you could just state your name.

18              MR. LINSEY:  This is Patrick Linsey for the

19    trustee.

20              THE COURTROOM DEPUTY:  Thank you.

21              THE COURT:  Go right ahead.

22              MR. LINSEY:  I won't -- I won't say much

23    considering Your Honor said the motion looks acceptable.

24         I will just note there was a prior motion that had

25    been filed by the debtor that I do not believe there were

1    any objections to that's not been acted upon.  And presuming

2    the Court enters the order that we filed with our motion

3    will then be causing the debtor's motion to be withdrawn.

4              THE COURT:  Yes.  That was noted in your motion.

5    So thank you.

6              And when this order enters, that -- the proposed

7    order that was submitted with the motion, as appears at

8    pages 10 and 11 of ECF 672,and when that order enters, then

9    the prior motion of the debtor will be withdrawn is on the

10   record now withdrawn by the trustee.

11             MR. LINSEY:  Thank you, Your Honor.

12             THE COURT:  Okay.  Thank you.

13             So that motion is granted and the proposed order

14   can enter.  So that takes care of the first matter on

15   today's calendar.

16             The second matter obviously is the -- was

17   continued from Monday, the 1st, to today, and it is the

18   trustee's motion for an order confirming that the trustee

19   holds all the debtor's economic and corporate governance

20   rights.

21             And this was continued to today to give the debtor

22   an opportunity to file a response, which the debtor did this

23   morning.  And I also -- the debtor objected and then the

24   Chapter 11 Trustee filed a reply to the objection.

25             So I understand in the papers, or at least I've

1    seen some mention in the papers, and I'll turn to you, Mr.

2    Despins, first, that there's been some discussions.

3         And I see that there's been a redline version of

4    an order that appears to show there's been some I guess I

5    would call progress with counsel in London about the issues

6    that we discussed on Monday, but I'd like to hear from you

7    on where things stand, please.

8         MR. DESPINS:  Yes, Your Honor.

9         So there are two aspects to the motions.  Well,

10   there are many aspects, but there are two that are contested

11   I think.  The focus is on UBS, which is you just raised.

12   And then the other one is what's happening with the BVI

13   shares, et cetera.

14        So since you started with UBS, let me launch into

15   that.

16        There were a lot of back and forth between me and

17   counsel for -- or counsel for the debtor in that UBS action.

18   And basically, you know, they raised several issues.

19        And at the end of the day, I said, look, why don't

20   you just draft a letter that you would be comfortable

21   receiving from Mr. Kwok that would allow you to, you know,

22   give me an update on the merits of the claims, any

23   settlement proposals, basically what a client would receive.

24   And eventually she did that.  And the -- and we said that in

25   the reply.  There are parts of this that I have swallow hard

1   to accept in the sense that, you know, you know, to say

2   that, you know, that the Court's jurisdiction is a U.S.

3   issue only.  I mean, as you know in the U.S. we view you,

4   Your Honor, as having worldwide jurisdiction over all assets

5   of the debtor.

6           But putting that aside I figure let's not have a,

7   you know, US/UK debate over jurisdiction.

8           And so we took her letter with some minor changes

9   and basically that's the letter that we're now asking the

10  Court to direct the debtor to send to her that basically

11  says give him full access.

12          But the debtor, per her -- U.K. counsel's request

13  is saying that his consent, and this is in the letter, does

14  not extend to me waiving a privilege.

15          And that's not an issue meaning, I didn't intend

16  to do that anyways.  But I thought it's always my privilege

17  to waive.  But my point is let's not get into those issues.

18          The important thing is to get access to the files

19  and understand the case, to get a full briefing.  And based

20  on the letter I think, although they were very careful about

21  saying we cannot guarantee that this letter will bind us,

22  and we said fine, but I think that based on that letter we

23  should have full access to the files.  And that's the goal.

24          And, therefore, you know, we're going to look the

25  other way on the issues of limiting the Court's jurisdiction

1    and all that.  So that's where we are on that.

2           So from my point of view, vis-a-vis U.K. counsel,

3    I think we're done.  But I don't know where the debtor is at

4    on that issue.

5           THE COURT:  Attorney Henzy?

6           MR. HENZY:  We're not done on that issue.  A

7    couple of points, Your Honor.

8           First, Mr. Despins referred to U.K. counsel, which

9    the person that he and I both have been communicating with

10   is Jenny Morrissey of the Harcus Parker firm.

11          As debtor's counsel, I just want to be clear.  I'm

12   not sure that that is correct.  I'll be honest with you,

13   Your Honor.  The convergence of U.S. and U.K. law is a

14   little bit unclear to me.

15          I know that under the bankruptcy code that upon

16   his appointment Mr. Despins was automatically substituted as

17   the plaintiff in that U.K. action.

18          What I've heard from Attorney Morrissey is that

19   what the bankruptcy code says, that's not her view anyway.

20   And I'm not -- I don't -- I know zero about U.K. law, so

21   she's right, she's wrong, but that -- that is her view.

22          I believe it's also her view that Mr. Despins is

23   not yet a party in that action.  There are some steps that

24   have to be taken under U.K. law.  Again, I don't opine as to

25   that.  I'm reporting to you what Attorney Morrissey

1    indicated to me.

2             So I don't think she's the debtor's lawyer.  I

3    don't think she's Mr. Despins' lawyer.  I frankly am not

4    sure where that leaves the status of whoever is the

5    plaintiff in that action in the U.K.

6             I'm not sure where the letter stands.  The last

7    iteration of the letter that I saw was from Paul Hastings to

8    Harcus Parker.  I think Mr. Despins said this on the last

9    day Harcus Parker is being very, very careful here, so I

10   don't know if the last iteration that Paul Hastings sent to

11   Harcus Parker would be acceptable to Harcus Parker or not.

12            Even assuming that it is, I believe that it is

13   simply beyond question that the Court, with all due respect

14   to the Court, may not compel Mr. Kwok to waive his attorney-

15   client privilege.

16            Now, I --

17            THE COURT:  The letter doesn't say that he is

18   waiving his privilege.  In fact, it says that any waiver of

19   the privilege is limited to the provision of this

20   information to the trustee.  That's what it says.

21            MR. HENZY:  That the waiver is -- that the waiver

22   is privileged, Your Honor.

23            So there's -- I want to make a distinction here.

24   There are two -- and, Your Honor, we're dealing with cross-

25   border issues here.  So the privilege here I think anyway is

1    not under U.S. law.  It's under U.K. law.

2            And as I understand my communications from

3    Attorney Morrissey, there may be items that -- I think this

4    is true under U.S. law too, a trustee is appointed and

5    there's different standards between a corporate debtor and

6    an actual person.  An actual person may maintain certain

7    privilege even after the appointment of a trustee.  And as I

8    understand it, it is similar in the U.K.

9            So there may be items that are in the possession

10   of Harcus Parker that Mr. Kwok personally still has a

11   privilege with respect to, as opposed to items that under

12   U.K. law he doesn't.

13           And I -- again, I don't know U.K. law.  I don't

14   think Mr. Despins knows U.K. law.  What's what I do not

15   know.

16           There's a right way to do this, Your Honor, I

17   think.  Mr. Despins needs to take steps to have himself

18   recognized as a party in the U.K. action and that privilege

19   issue then I think needs to be worked through.

20           I don't know how the debtor -- I don't know how

21   Mr. Kwok can say I'm going to grant a waiver of any

22   privilege rights I have.  Again, it's any privilege rights

23   that he has.

24           Your Honor, I don't know.  Attorney Morrissey may

25   make a judgment that he doesn't have any privilege rights.

1   She may make a judgment that he has a lot of privilege

2   rights with respect to what's in her possession.

3          I don't know how he can fairly be asked to waive

4   any privilege that he still has when he doesn't know what

5   he's waiving it with respect to.

6          So I don't know what documents Attorney Morrissey

7   would say would come under an umbrella of things that Mr.

8   Kwok under U.K. law still has a privilege in.

9          Again, I think there is a way to work through

10  this.  It may be that Attorney Morrissey would identify some

11  discrete number of documents that she would say these are

12  documents that Mr. Kwok has privilege in and possibly

13  subject to me reviewing and they're completely innocuous --

14  and that's great -- but there has to be a process gone

15  through.

16         Mr. Kwok cannot make a knowing and voluntary

17  waiver when he doesn't know what he's waiving.  He can't do

18  that.  And he's not going to do that.

19         And, again, with all due respect, I don't believe

20  you can compel him to do that.  I do not believe that you

21  can compel him by signing this letter to waive his --

22  whatever his attorney/client privilege is under U.K. law.

23         MR. DESPINS:  Your Honor, if I may?

24         THE COURT:  Yes.

25         MR. DESPINS:  You know, there's an attempt to

1    muddy the waters here.  If the letter doesn't work for

2    counsel in the U.K., I'll deal with that.  So let's put that

3    aside for now.

4            I think it will work because she marked up our

5    letter and she sent us this letter.  We made some very minor

6    nonsense kind of changes, so that's number one.

7            And that letter basically, that she marked up,

8    says that if she gets that letter she will share the

9    privilege as to -- or she will give me privileged

10   information.  As to what?  As to the merits of the

11   litigation.

12           That's an asset of the debtor.  Mr. Henzy made a

13   big deal about his 475 million or whatever sum.  That's an

14   asset of the debtor.

15           The only way -- this is like a car.  In order to

16   access the car, I need the key.  The key is the letter.

17   Because otherwise they won't talk to me because, you know,

18   either U.K. rules or their concern about being sued.

19   They've never actually articulated that, but that's the

20   subtext here.  It's pretty clear.  So the letter I think

21   works.

22           There's not an unknown or unlimited waiver of the

23   privilege.  It's regarding the merits of that litigation.

24   That's what she's going to share with me.  Because Mr. Henzy

25   has -- you must remember -- had very nicely sent an email to

1    them a long time ago that said I own the claims basically

2    dealing with Mr. Despins.  Mr. Kwok is completely out of

3    this -- out of that claim.  He did say that.

4             So what would be the point of me being, you know,

5    having the claim if I cannot be briefed by the lawyers about

6    the merits of the claim?  Again, it's the key that gets me

7    the car.  And I absolutely need that.

8             And case law is clear, Your Honor, that the

9    trustee can have access to privileged information of the

10   debtor with respect to assets of the debtor.

11            Here there's not even a dispute.  This is not like

12   the yacht or the Sherry-Netherland apartment where he says,

13   oh, I don't own it.  He says -- he filed a claim.  He said I

14   own this.  It's clear that the trustee owns the claim now.

15   And clearly I have the right to have access to that.

16        There's not an unknown or unlimited waiver.  And so,

17   therefore, we believe the Court can compel.  This is

18   521(a)(3),(a)(4).  The Court can absolutely do that because

19   this is equal to the debtor saying, yeah, here's the car,

20   but I'm not giving you the key.

21            Without the briefing on the merits of the claim or

22   knowing whether there has been any settlement, I cannot

23   drive the car.  I cannot sell the car.  You know, that's the

24   analogy.  And we need access to that.

25            Thank you, Your Honor.

1          MR. HENZY:  Your Honor, if I may?

2          THE COURT:  Yes.

3          MR. HENZY:  One point I want to be clear on, that

4    Attorney Morrissey's clear with me on, is that there's two

5    other plaintiffs here and the privilege is joint.

6          And Attorney Morrissey's been clear that Mr. Kwok

7    cannot raise the privilege with respect to information that

8    is the joint information of -- along with those other

9    parties.  So she's been very, very clear that the only thing

10   that in theory Mr. Kwok could raise with respect to -- with

11   the property that as I understand it he is the sole owner

12   of.

13         So, again, what the -- the universe of information

14   here is that Harcus Parker would ever say that they're going

15   to release is that, you know, I don't know.

16         But I want to give you two cites that were not in

17   my objection.  I did have a relatively short time to get the

18   objection done, Your Honor.  I did cite one case where the

19   Second Circuit says that you cannot compel a person to waive

20   their attorney/client privilege.

21         And, again, I want to be clear here, Your Honor,

22   to the extent that Mr. Kwok no longer owns the privilege,

23   under -- I think it's under U.K. law -- not under U.S. law

24   -- whether -- what the attorney-client privilege is in the

25   U.K. and what -- to what extent the privilege belongs to him

1    versus belongs Mr. Despins, that's what's -- that's a matter

2    of U.K. law.  It's not U.S. law.

3            But two other Second Circuit Court of Appeals

4    cases.  One is *Highland Capital Management vs. United*

5    *States.*  It's at 626 F. App'x -- I never know how to

6    pronounce that thing, 324.  It's a 2015 decision.

7            If I could quote, Your Honor.  "Compelled

8    disclosure of privileged attorney/client communications

9    absent waiver or acceptable exception is contrary to well-

10   established precedent.  When parties disagree whether a

11   privilege applies, courts often review the contested

12   material in camera.  In contrast, requiring a litigant to

13   turn over documents subject to claims of attorney/client

14   privilege to opposing counsel without a judicial ruling on

15   the merits of the claim will undermine the attorney/client

16   privilege and it's, therefore, impermissible."

17           So, again, what privilege Mr. Kwok has here and

18   what privilege he doesn't have may well be subject to

19   dispute.  Plus you can't order him to waive privilege

20   without working through that dispute.

21           And I'll say again, Your Honor, there's a right

22   way to do this.  If Mr. Despins, rather than trying to

23   bulldoze through an order here, would work with U.K. counsel

24   and me to try to identify what potentially is the universe

25   of documents that even are at issue here she may go through

1    her documents, Your Honor, and say I can't give you anything

2    because these other people have privilege and I'm not going

3    to -- I'm not going to give you anything.

4            She may say there's five pieces of paper that Mr.

5    Kwok is the sole owner of that I could ever release to you.

6    And the five pieces of paper are pictures of his kids.  And

7    no one -- and no one's going to care about that -- to tell

8    us any number of things.  But there's a -- there's a process

9    that has to be worked through.

10           The Second Circuit says that you cannot order this

11   kind of blanket waiver without making findings with respect

12   to specific documents.

13           THE COURT:  Where does it say that in the *Highland*

14   case?  I'm looking at it.

15           And the *Highland* case is not a bankruptcy case.

16   It's a third-party subpoena with regard to an IRS issue.

17           So where does it say that?  Where does it say that

18   a court cannot compel a debtor out of possession to waive a

19   privilege with regard to an asset that the debtor has stated

20   under penalty of perjury is an asset of his estate?

21           MR. HENZY:  Your Honor, this is -- you're right.

22   This is not a debtor case.

23           But I don't think -- I don't -- I'm not aware of

24   any case.  And I will say this, Your Honor.  I'm not aware

25   of any case that says that.

1          Because what the Second Circuit says is that after

2     an applicable exception.  And I think the typical exception

3     that comes up in cases is where a party -- in criminal cases

4     where a party says it had ineffective assistance of counsel.

5          And the rule is that you can't say you haven't had

6     effective assistance counsel unless you're going to be

7     willing to waive relevant communications with counsel.

8          I'm not aware of any case that says that a -- that

9     there's an applicable exception for a debtor.

10         But I'm going to push back to one of the other

11    points I've made here.  I don't think it's up to the debtor

12    that's here to prove the negative.  Not by motion.  But by

13    submitting a proposed order Mr. Despins is seeking relief

14    from it.  He is seeking to have you compel the debtor --

15         THE COURT:  Not yet.

16         MR. HENZY:  -- to waive his privilege.

17         THE COURT:  Not yet.  If the debtor doesn't sign

18    the document, then -- I asked that question of Mr. Despins

19    the other day, and then he will file a motion.

20         The problem is your case law says compel

21    disclosure of privileged attorney/client communications

22    absent waiver or applicable exceptions contrary to well-

23    established precedent.

24         Well, this is -- this is -- Mr. Kwok has stated

25    under penalty of perjury in his schedules -- and you've

1    reached out to the lawyer in the U.K. saying that Mr.

2    Despins is the party, and you've acknowledged that Mr.

3    Despins steps into the shoes of Mr. Kwok in the action in

4    the U.K.  And so you can't then argue that Mr. Kwok -- the

5    lawyers who represented Mr. Kwok can't turn over that

6    information to Mr. Despins for his review.  I mean, you can

7    make that argument, but it's not persuasive.

8                You're having --

9                MR. HENZY:  Okay.  There's nothing --

10               THE COURT:  Excuse me.  Let me -- let me just

11   finish.

12               You are coming to this court.  Your client

13   voluntarily came to this court and put his assets in

14   question for creditors of this estate and has stated that

15   this cause of action is his cause of action and an asset of

16   the estate.

17               The minute the Chapter 11 trustee was appointed,

18   the Chapter 11 trustee steps into the shoes of Mr. Kwok.  So

19   the Chapter 11 trustee has the privilege of Mr. Kwok in that

20   lawsuit.

21               And so your arguments are not persuasive.  So

22   let's move onto the next issue about whether -- because that

23   order --

24               MR. HENZY:  Your Honor, can I -- can I -- may I --

25               THE COURT:  Excuse me.  I'm not finished.

1          MR. HENZY:  Okay.

2          THE COURT:  That letter -- Mr. Despins has just

3     stated he's a -- he is subject to Rule 11 sanctions if he's

4     incorrect, Mr. Henzy.  That he got this letter from the

5     lawyers in -- from the barristers or solicitors in London.

6     They're willing to sign it.  They marked it up.  That's

7     what's going to happen.  That's what's going to happen.

8          So let's go to the next issue which has to do with

9     the Genever issue and the fact that you've argued that Mr.

10    Kwok, you know, doesn't have any control over Genever.

11         But when you look at the trustee's reply to your

12    objection this morning, there are exhibits attached to it

13    where Mr. Kwok admits -- it's an admission of a party, that

14    he owns the shares of the cooperative that owns the

15    apartment.

16         So what's your response to that?

17         MR. HENZY:  Your Honor, just if I could go back

18    for a second.  For the record, you're not going to hear any

19    further arguments from me on the privilege issue.

20         THE COURT:  That is correct.

21         MR. HENZY:  I just want to make --

22         THE COURT:  I've decided the issue.

23         MR. HENZY:  I want to make a record.

24         THE COURT:  I've decided the issue.  That is

25    correct.  Your arguments about the privilege are not

1    persuasive.

2              Mr. Despins stepped into the shoes of the debtor

3    when he became the Chapter 11 trustee.  There's well settled

4    case law on that, Attorney Henzy.

5              The cases that you've cited are not applicable.

6    They're not involving a Chapter 11 trustee who steps into

7    the shoes of a debtor who has been taken out of possession.

8    And so, therefore, your case law does not support your

9    argument.

10             And I will -- and we can move on to the next issue

11   now about the Genever Holdings matter and the Sherry-

12   Netherlands apartment.

13             MR. HENZY:  Thank you, Your Honor.

14             On the Genever BVI issue, my first -- because I

15   got this not that long ago, but the documents that are

16   attached to the reply are not in evidence, Your Honor.  I

17   think we can all agree on that.  And I -- I'm not -- I do

18   not --

19             THE COURT:  Well, I'm not sure that's true.  First

20   of all, some of them are from the bankruptcy court in New

21   York.  And this court can take judicial notice of those

22   documents and their reliability based upon the fact that

23   they were filed in a -- in the Chapter 11 case of Genever

24   Holdings in New York.

25             So when you say they're not in evidence, well,

1    then I can make them in evidence.  I can say that they are

2    now evidence in connection with the trustee's motion because

3    they were all filed, many of them -- and we can go through

4    each one -- in the -- in the bankruptcy case of Genever

5    Holdings.  And the Court can take judicial notice under the

6    federal rules of evidence of that because the reliability of

7    that is obvious.

8            So to say that they're not in evidence, well,

9    okay, I'm going to now rule that they are in evidence. That

10   the exhibits attached to the trustee's reply that was filed

11   today in response to your objection, Exhibits A through G,

12   are in evidence and they will be marked as exhibits.  So

13   that if you want to appeal you can -- these exhibits will be

14   in evidence.

15           (Exhibits A through G attached to Trustee's motion

16   for an order received into evidence as Trustee Exhibits A

17   through G.)

18           MR. HENZY:  Thank you, Your Honor.

19           Just for the record, so I make my record, I do

20   object to their admission.

21           THE COURT:  Understood.

22           MR. HENZY:  And in addition to -- I'm in a

23   difficult position to give you specific objections as I'm

24   required to do under the rules of evidence as I've -- as

25   that I've had almost no time to go through these documents

1    individually.  So that is an issue for me.  And that kind

2    puts, you know, pushes me to a different issue which --

3            THE COURT:  Well, let's go through them right now.

4    We'll pull up Exhibit A.

5            MR. HENZY:  That's unfair, Your Honor.  Because if

6    I --

7            THE COURT:  No, it's not unfair, counsel.

8            MR. HENZY:  It is.

9            THE COURT:  Because these are all exhibits that

10   your client signed or you should have as his counsel.  You

11   don't get to come in and stall things.  And I'm not saying

12   -- you don't get to come in and say the trustee, who's been

13   appointed since July 8th, can't do his job because I'm new

14   counsel and I haven't had a chance to look at all this.  You

15   don't get that opportunity.

16           MR. HENZY:  No.

17           THE COURT:  It doesn't happen that way.

18           MR. DESPINS:  Your Honor.

19           MR. HENZY:  The point -- the point I was going to

20   make, Your Honor, is that you're admitting exhibits in

21   connection with relief sought by the trustee that is not in

22   the motion that he filed and on a hearing that as far as I

23   know was not scheduled as a trial, but an evidentiary

24   hearing.  I have no ability to try to rebut what is in these

25   documents.  That this is just -- it is fundamentally unfair.

1          THE COURT:  Okay.

2          MR. HENZY:  I have no notice --

3          THE COURT:  How would you rebut the -- your

4     client's answers to interrogatories that were filed in the

5     New York State Court, which is Exhibit A and which he

6     signed?  How would you rebut that?  What could you possibly

7     put forth that could rebut that -- those interrogatory

8     answers that your client signed in an action in New York

9     that has been pending for years?

10         MR. HENZY:  I'm going to try to answer that

11    specifically, Your Honor, but I think -- and actually I'm

12    going to try to answer your question.  Okay.

13         The first -- I don't know.  I'm not -- I don't --

14    I do not practice trial law in New York State so I don't

15    know if interrogatories are filed.  They're not filed, for

16    example, in federal court or state court in Connecticut.  So

17    maybe they are and maybe they aren't.  I don't know that.

18    So that if they're not, I don't think you could take

19    judicial notice.  That's one issue.

20         THE COURT:  Well, there's a file stamp on the top

21    of it from New York filed New York County Clerk 4/28/2021,

22    10:54 p.m.  That states that on the top of the document.

23         MR. HENZY:  Sorry.  I don't -- again, Your Honor,

24    I'm not -- I don't practice trial law in New York so I don't

25    know what the procedure is.

1          I will point out, Your Honor, if you go to page 3,

2     the definition of interest.

3          THE COURT:  Page 3 of Exhibit A?  Is that what

4     you're saying?

5          MR. HENZY:  Of what I -- what I'm understanding is

6     now you've admitted this as Exhibit A.

7          THE COURT:  That is correct.

8          MR. HENZY:  Okay.  And just to be clear, I do

9     object to that, Your Honor.  I understand you're overruling

10    my objection, but the -- on page 3, definition 2 -- I might

11    -- I might be getting this wrong, Your Honor -- again, I

12    have not -- I understand Your Honor.

13         I'm not telling you that I don't have a

14    responsibility to have gone through things, but there is a

15    lot that was put on in connection with this this morning.

16         But the definition of interest is very, very

17    broadly defined there.  The term interest means any direct,

18    indirect interest, whether partial, whole or potential, et

19    cetera.  So it's a very, very broad definition of interest.

20         Again, if I go to response interrogatory number

21    one, where, among other things, there's a little box that

22    says admission of ownership -- and I don't, Your Honor,

23    where that came from.  I don't -- I don't know if that was

24    part of what was filed with the New York State Court. I'm

25    going to doubt it, as opposed to this is somehow

1    constructive for your purposes or someone else's purposes.

2    I don't know.  I just wasn't -- I did -- I don't know the

3    answer to that.  That -- I think that should not be before

4    Your Honor.

5           But his answer is I am the legal owner of the

6    issued shares of Genever Holdings Corporation.  And if you

7    go back to definition of interest -- again, it's a very,

8    very broad definition, it makes the distinction between

9    legal and equitable.

10          And if I jump to response interrogatory number 5,

11   on page 9, again, I am the legal owner of the issued shares

12   of Genever Holdings Corporation.  That statement is

13   consistent with the statements that Mr. Kwok made in the

14   declaration he filed in this case and also consistent with

15   the global notes to the statement of financial affairs that

16   he filed in this case.  That is, that he is the legal owner

17   of the issued shares of Genever Holdings Corporation, which

18   will be referred to as Genever VBI.

19          And what he's said there -- in the declaration

20   filed in this case and in the global notes filed in this

21   case -- is that he holds those shares, he holds legal title

22   to those shares as trustee under a trust.  And the

23   beneficiary of that trust is Bravo Luck.

24          So I -- we can debate -- and I know Mr. Sarnoff

25   really wants to debate -- about what this says.  But my

1    point is I'm -- I am not able to put on evidence, Your

2    Honor, to explain this and to explain what's in the

3    declaration and to explain what's in the global notes.  And

4    that's not -- that's fundamentally unfair.

5              This was not scheduled to have an evidentiary

6    trial.  I have -- this is not even -- what the relief sought

7    here -- as I pointed out in my objection, Your Honor, it is

8    not even relief that's sought in the motion that was

9    actually filed.

10             This is -- this is new relief.  And we're now

11   having, as I understand it, a trial on almost no notice on

12   new relief where I have absolutely no ability to meet the

13   claim that is now being made.  And that is -- again, I think

14   that's fundamentally unfair and I absolutely object to it.

15             MR. SARNOFF:  Judge Manning, this is Stuart

16   Sarnoff.  May I be very, very briefly heard, because I might

17   be able to help the Court on an issue relating to this?

18             THE COURT:  Go right ahead.

19             MR. SARNOFF:  So I -- Judge Manning, I've been the

20   lead counsel for PAX in the state court litigation.  I filed

21   the complaint on its behalf.

22             All I want to do, Your Honor, is to point out that

23   PAX filed and won a turnover motion with respect to Genever

24   BVI shares as a post judgment enforcement action.

25             And I would just raise that never proffered before

1    the Court was the alleged deed of trust.  But in any event,

2    the judge -- on September 22nd, 2021, Judge Ostrager,

3    Justice Ostrager, in his ruling on the record, and then

4    confirmed in an order dated that day, ordered the turnover

5    to PAX of Mr. Kwok's Genever BVI share ownership because he

6    said, quote, on page 16 of the September 22nd, 2021

7    transcript, "Mr. Kwok identified his ownership interest in

8    Genever Holdings BVI as his only asset worth more than

9    $10,000 in response to PAX's post-judgment interrogatories,"

10   which is the document at number 756 in this case at page 9.

11   The ownership shares -- and then he goes on to say the

12   ownership -- so he's admitted that this is his one asset.

13          And because PAX ha a judgment of 130-something

14   million dollars at that time, $126,000 million, they're

15   entitled to get turnover.

16          We had to bring a subsequent contempt motion which

17   was pending when Mr. Kwok filed for bankruptcy because of

18   course Mr. Kwok didn't do what he was supposed to do, vis-a-

19   vis, the turning over.

20          But there is -- you know, there's a judicial

21   ruling that the shares belong to Mr. Kwok for purposes of

22   being able to turn them over or for, in this case, for Mr.

23   Despins to step into those shoes to have that same bundle of

24   rights.

25          And I would also note, Your Honor, that Mr. Kwok

1    did not appeal that ruling.

2            You know, it should be collaterally estopped.  You

3    know, whatever it is. This has been litigated whether or not

4    the shares are sufficiently his for purposes of turnover or

5    for Mr. Despins to step into his shoes.

6            And in a ruling on September 22nd, 2021 --

7            MR. HENZY:  Your Honor.

8            MR. SARNOFF:  -- Justice Ostrager ruled on that.

9            MR. HENZY:  I want to be clear.  Is Mr. -- are you

10   taking this as Mr. Sarnoff's testimony?  Because if you are,

11   I would like him to be sworn.

12           THE COURT:  I'm not taking it as Mr. Sarnoff's

13   testimony, Attorney Henzy.

14           MR. HENZY:  Thank you, Your Honor.

15           Mr. Despins?

16           MR. DESPINS:  Your Honor, if I may very briefly?

17           You are not -- we're not asking you today to find

18   that the trust agreement isn't valid or doesn't exist.  We

19   added -- in what we filed today at 681, docket 681, we added

20   a safety valve.  So I thought that Mr. Henzy would jump at

21   that.

22           But basically it says the Court is not finding --

23   making any findings regarding the validity or invalidity of

24   the trust agreement.  Any challenges to the trust agreement

25   are preserved.

Fiore Reporting and Transcription Service, Inc.

1          However, what cannot be controverted is that he's

2     the legal owner of these shares and now we are entitled to

3     get those shares.

4          And the issue of the validity of that trust -- by

5     the way, we have craved out over it -- you know, that trust,

6     the allegation that there's a trust was never raised in

7     state court for four years, so that gives you a sense of how

8     -- you know, that's let not editorialize over that.

9          But the point is that there's a safety valve in

10    the order and, therefore, the order should enter. And then

11    Mr. Henzy also complained about the lack of notice in these

12    documents.

13         Your Honor, on August 1st, you may remember -- I

14    don't know if you saw this, but I offered Mr. Henzy more

15    documents.  These were these documents and he threw them to

16    the floor.  A little temper tantrum there.  I don't know if

17    you saw that.

18         But the point is that if he hadn't done that he

19    would have all these exhibits, that these were the exhibits

20    I was giving him at the time, which are, as you said, are

21    exhibits, for example, in the Genever Chapter 11 case, which

22    nobody can dispute.

23         And those are to the effect that Mr. Kwok is

24    exercising, and I've exercised, all corporate governance

25    rights with respect to Genever Holdings, Genever USA, and --

1          And so regardless of the trust agreement, there's

2     never a -- in all these signature pages, you never see a

3     countersign or approved by Bravo Luck or anything like that.

4     It's Mr. Kwok signing.

5          And so, therefore, that tells you that these are

6     the rights we should have.  And those include the rights to

7     direct the Chapter 11 case of Genever Holdings subject to

8     the jurisdiction of Judge Garrity.

9          And there's also a safety valve in the order that

10    says you're not ordering me or allowing me to do anything in

11    that case without his approval.  So that's all covered.

12         But I think it's important to stick to the facts

13    here.  And it's a limited relief.  And it's basically

14    getting the shares in my name so I can exercise all the

15    corporate governance rights of that entity.

16         Thank you, Your Honor.

17         MR. HENZY:  Your Honor, just so I could be clear,

18    I assume that that was -- you're not taking Mr. Despins'

19    statements as testimony either?

20         THE COURT:  I'm not taking anyone's statements,

21    including yours, as testimony either.

22         MR. HENZY:  Oh, I know you're not taking or I

23    think I know you're not taking mine.

24         Your Honor, I probably did have a little, very

25    brief temper tantrum on Monday.

1          But this is a trial by ambush, Your Honor, and I

2     think the rules do need -- there does need to rules.  There

3     needs to be order in proceedings.  And I don't -- I don't

4     think that that is happening here.

5          I've tried -- I don't know if Your Honor has more

6     questions of me.  I would like to make further points,

7     again, just to make my record, you know.

8          I believe there is a dispute.  I understand that

9     Mr. Despins doubts it.  I understand that Mr. Despins and

10    Mr. Sarnoff have formed a version of facts to, you know, to

11    the Court that, again, I'm not in a position to rebut.  I

12    don't have a witness here.  I don't -- I didn't know this

13    was going to be a trial.

14         I will point out, Your Honor, that this dispute is

15    the subject of a settlement agreement in the Genever U.S.

16    case that was approved by Judge Garrity, that as I

17    understand it contemplates that this ownership issue is to

18    be litigated in the BVI.  Again, that is my --

19         THE COURT:  So do you -- so you're asking for your

20    exhibits then to become part of the record as well in

21    evidence because now you're relying on exhibits that you

22    attached to your objection to make the statement that you

23    just made?

24         MR. HENZY:  You know, Your Honor, I am relying on

25    that --

1          THE COURT:  Okay.  Then they'll be admitted into

2     evidence as well.

3          MR. HENZY:  -- to try to make an argument, to try

4     to respond.

5          THE COURT:  Okay.  Well, then your exhibits are

6     admitted into evidence as well.

7          (Exhibits attached to Debtor's objection to

8     Trustee's motion for an order received into evidence.)

9          I mean, what else do you -- why else would you

10    have filed an exhibit -- and the same reason that Mr.

11    Despins did -- so the Court could review them in connection

12    with your positions?

13         MR. HENZY:  In connection with --

14         THE COURT:  And so to argue that this is now an

15    evidentiary hearing and that you're being -- you're not

16    given fair opportunity -- but you want to make your argument

17    based upon the exhibits that you attached to your motion,

18    your reply.

19         So I think you need to be a little bit more -- we

20    need to be -- treat this the same on both sides of these --

21    of the equation.

22         You can't argue that Mr. Despins is now making

23    this an evidentiary hearing because he's submitted exhibits

24    and attached to his reply, but you can persuade the Court

25    with regard to the exhibits you've attached to your -- to

1    your objection and that's -- that's not part of an

2    evidentiary hearing.

3            Well, of course it is.  It's either -- it's all in

4    evidence or it's not, Mr. Henzy.  It's part of the record of

5    this case.  You made it part of the record when you

6    submitted your objection with those exhibits.  That's the

7    record of this case, ss are the exhibits that Mr. Despins

8    submitted.  Then you made the argument, well, they're not in

9    evidence.

10           Well, I don't agree with you because they're part

11   of the record of the case.  But we'll just put them all in

12   evidence.  So there's no --

13           MR. HENZY:  Well, Your --

14           THE COURT:  -- there's nothing unfair about that,

15   Mr. Henzy.  That's how it works.

16           MR. HENZY:  Oh, I think there is something unfair

17   about it, Your Honor, but I understand your ruling.

18           THE COURT:  I know you do.

19           MR. HENZY:  I understand --

20           THE COURT:  But you haven't been able to

21   articulate or point to any case law or statute that supports

22   your argument.

23           MR. HENZY:  Your Honor, you're taking evidence.

24   And I understand I attached a document to my memo.  Okay.

25   And that's for the purposes of argument.  I was not

1   contemplating anything was going to be admitted into

2   evidence.  You're taking evidence.  You're holding a trial

3   right now as I understand it.

4            THE COURT:  No, I'm not holding a trial, Mr.

5   Henzy.

6            You're the one that said that Mr. Despins couldn't

7   argue about the exhibits attached to his reply because they

8   weren't in evidence.  And I said to you, okay, well, then

9   let's put them in evidence because they are part --

10            MR. HENZY:  And I --

11            THE COURT:  -- of the record of this case.

12            And then you just said -- you just said -- you

13   weren't relying on those exhibits to make findings but, yes,

14   you are.  You exactly just said the settlement agreement

15   that's been approved by Judge Garrity is what controls

16   Genever Holdings.

17            And so it's either part of the record or it's not.

18   If you're -- then nothing you've said -- you don't have any

19   -- anything to support your argument because you don't want

20   it to be part of the record.  So fine.  If you don't want it

21   to be part of the record, that's fine.  And if you don't --

22   but you already made it part of the record because you

23   submitted it with your pleading.

24            MR. HENZY:  I'm not going to dispute, Your Honor,

25   that you can take judicial notice for what it's worth of a

1   document that's been filed in the Genever bankruptcy case.

2   I'm not going to -- I'm not going to dispute that.

3       THE COURT:  Yeah.  But you have to do that under

4   the federal rules of evidence, Attorney Henzy.  I don't just

5   say I take judicial notice.  I have to do that under the --

6   the applicable rule of evidence regarding judicial notice.

7   So it's evidence, as is the documents you've submitted with

8   regard to the settlement agreement.

9       MR. HENZY:  Yeah.  I understand, Your Honor.  I

10  understand your ruling.

11      But there is a dispute, Your Honor, as to the

12  ownership.  Now, Mr. Despins did file -- and that dispute I

13  believe under applicable law has to be resolved by an

14  adversary proceeding.  And I've cited lots and lots of cases

15  that say that.

16      THE COURT:  Mr. Henzy, let me stop you right there

17  on the adversary proceeding issue.

18      I think you have a problem with the language in

19  7004 -- 7001(a) that you didn't -- you stopped the sentence.

20  I mean, I looked back at it three times this morning because

21  I thought that you were -- that was not an accurate

22  statement.  And it says -- (a)(1) says a proceeding to

23  recover money or property other than a proceeding to compel

24  the debtor to deliver property to the trustee.

25      How do you -- do you not see that language?  How

1    do you interpret that language in any other way that that

2    still requires Trustee Despins to file an adversary

3    proceeding?  How do -- I don't understand that.

4              MR. HENZY:  So, Your Honor, just as with the cases

5    that -- Judge Trancredi case that I cited that dealt with a

6    363 motion, I don't -- I understand he can file a motion for

7    turnover but, Your Honor, he hasn't filed a motion for

8    turnover.

9              THE COURT:  He doesn't have to.  Your client is

10   obligated to cooperate with him under the debtor's duties

11   when he voluntarily came to this court and sought this

12   court's protection.

13             And then -- and to say that your client's being

14   ambushed, this issue of the trustee has been pending since

15   the middle of February.  The trustee was appointed on July

16   8th.  It's August 4th.  And your client hasn't cooperated

17   with the trustee.

18             I mean, you can continue to make the argument, but

19   your argument is not persuasive.

20             MR. HENZY:  May I speak, Your Honor?

21             THE COURT:  Yes.

22             MR. HENZY:  I don't agree that Mr. Kwok has not

23   cooperated with the trustee.  So that's one.

24             I understand this case was filed in February.  The

25   trustee was not appointed until July 8th, Your Honor.  I

1    understand a trustee was appointed.

2          I have tried to familiarize myself with as much of

3    the record in this case as I could.  I don't understand that

4    Your Honor has ever made findings regarding the debtor's

5    lack of cooperation, regarding the debtor being a bad

6    person.

7          My understanding of your ruling granting the

8    motion was really -- that it was focused on best interest of

9    creditors.  You said that there may be assets -- just a

10   centralized form. So really the best interest of creditors

11   type of matters.

12         I've read your decision and I don't see anything

13   regarding misconduct.  I believe that Mr. Kwok's consent

14   that there was cause was based on best interest of

15   creditors.  There was no admission by him as to malfeasance

16   or any kind of bad conduct.

17         So in the -- I guess it's three or four weeks

18   since Mr. Despins -- and I'll say, Your Honor, I don't -- I

19   don't believe that because a person files Chapter 11 that

20   they then waive any and all of their rights if and when a

21   trustee is appointed.

22         THE COURT:  Okay.  But you didn't answer my

23   question, Mr. Henzy, about 7001(a) and how you could

24   interpret it in any way other than the language in the rule?

25         MR. HENZY:  So, Your Honor, 542 -- 7001(a)(1) --

Ho Wan Kwok - August 4, 2022    39

1    I'm sorry -- 7001(1) applies -- I recognize it applies to a

2    proceeding to compel the debtor to deliver property to the

3    trustee.  But where -- I think that is with respect to

4    property where there's no dispute that the property is

5    property of the estate.  And here there is a dispute.

6            It's the same as with the 363 motion, Your Honor.

7    The courts have held, including Judge Tancredi, that you

8    can't grant a 363 motion until you've decided whether the

9    property that's sought to be sold is property of the

10   bankruptcy estate.  And that requires an adversary

11   proceeding.

12           THE COURT:  We're not selling property at this

13   time.  Number one.

14           And number two, it is being sold subject to the

15   New York Bankruptcy Court's order selling the property.  So

16   that's already been done, number one.

17           And then your client admits that it is his asset

18   in some way, shape or form, Mr. Henzy.  I don't have to find

19   whether he -- it's a legal interest, an equitable interest,

20   a beneficial interest.  I don't have to find any of that.

21   Your client has already admitted it, that it's his asset.

22           So I don't -- so I don't --  you still haven't

23   answered the question of how 7001(a) requires Mr. Despins to

24   bring an adversary proceeding.

25           MR. HENZY:  Well, Your Honor, I think there is no

1    7001(a).  It's 7001(1), which does provide --

2              THE COURT:  Okay.  Sorry, 7001(1).

3              MR. HENZY:  -- a carve -- it carves out --

4              THE COURT:  Sorry.

5              MR. HENZY:  -- it carves out turnover.  But,

6    again, that's for property of the estate.  There has to be a

7    determination that that, in fact, is property of the estate.

8    And that --

9              THE COURT:  Your client has already said it is

10   property of the estate in the declaration.  Even if he says

11   he's holding it in trust, he still owns the shares.  He says

12   that in the declaration 107 that we talked about the other

13   day.  So he's already said that.

14             MR. HENZY:  What he said is that he has -- he has

15   legal title as --

16             THE COURT:  Okay.  And guess what, as you know,

17   the definition of property of the estate includes all

18   interests, legal, beneficial, equitable, that you have in

19   any property that you have.  And so he has.

20             MR. HENZY:  But, Your --

21             THE COURT:  It's property of the estate.

22             MR. HENZY:  Your Honor, Mr. Despins filed the --

23   the third revised proposed order, I think, nine -- or nine

24   and a half minutes before the hearing.  I did not have a

25   chance to look at it.  If there are appropriate protections

1   in there, then it may well be that the debtor won't object

2   to the entry of that order, but I would like an opportunity,

3   and not in the middle of this hearing, to review that order.

4          THE COURT:  Okay.  Would you like to take a recess

5   for an hour and you can go read the order?  I mean, that's

6   fine if that's what you'd like to do.

7          But Mr. Despins just explained how he did put in

8   safeguards in that order.

9          MR. HENZY:  I don't know what safeguards he put in

10  and I don't know if they're sufficient.

11         The issue, Your Honor, the problem, is that what

12  Mr. Despins put in front of you would appear to be a --

13  require a transfer of the shares in full.  Okay.  That's the

14  way I understood it.  Okay.  Where he said these shares get

15  transferred to him solely in his capacity as Chapter 11

16  trustee.

17         Well, if Mr. Kwok is the mere legal owner, as

18  trustee, and these are now being transferred to Mr. Despins,

19  I think Mr. Despins is becoming the trustee of that trust.

20  If there's a valid -- if there's a valid trust, there has to

21  be a trustee.  And if Mr. Despins is now the legal owner of

22  the shares, I think he's owning them as trustee of that

23  trust.  So, again, if we're all clear that that is the case,

24  then maybe we don't have a problem.

25         I'm not sure Mr. Despins really wants to be a

1    trustee of that trust with all that that might bring in

2    terms of duties to the beneficiary of the trust, but you

3    can't have it both ways.

4           As Your Honor has said multiple times, you take

5    the debtor as -- in this case -- he comes.  And the argument

6    is that with respect to this asset the way he came was as

7    the legal owner, as trustee of a trust, for the benefit of a

8    third party.

9           So if -- if the -- all that he has is that legal

10   ownership interest as trustee is what's being transferred,

11   and it's being transferred to Mr. Despins as trustee of that

12   trust, then maybe that's okay.

13          MR. DESPINS:  Your Honor.

14          THE COURT:  Yes.  Go ahead.

15          MR. DESPINS:  That argument is preserved.  We're

16   not asking you to go all the way and find that the trust is

17   not valid.  We're preserving that issue for another date.

18   But he cannot have an advisory opinion saying that a trust

19   is valid.

20          As you pointed out in the interrogatories, it's

21   not question whether they've been filed or not in New York

22   State.  They're signed under penalty of perjury by Mr. Kwok.

23   And he never mentioned the trust, the trust that existed

24   five years or four years before.

25          So that's the state of the law.  That's how we

1    take our debtor.  The debtor said nothing about that trust.

2    And I'm -- I think we're being kind.

3          We're preserving their argument that there's a

4    trust for a later date, meaning it would be unfair to ask

5    you to rule that the trust is not valid.  We have serious

6    issues about it, but that's for another day.  That's what

7    the order provides.  It leaves that issue open for another

8    day.

9          THE COURT:  All right.  So, Mr. Henzy, did you --

10         MR. SARNOFF:  Your Honor, it's Stuart Sarnoff.

11         THE COURT:  Okay.  Hold on one second.

12         MR. SARNOFF:  Your Honor, I was just going --

13         THE COURT:  Go ahead, Mr. Sarnoff.  Go ahead.

14         MR. SARNOFF:  Your Honor, I was merely going to

15   point out that the Court's decision and -- decision and

16   order on motion with respect to PAX's motion for turnover,

17   not the transcript, but the written decision and order, was

18   filed.

19         We filed it in this court's docket on March 1st,

20   2022 as I believe docket number 57-2.  If I have my --

21   forgive me if my information is incorrect.  We were

22   scrambling.  But I think that's the correct information.

23         It's a Supreme Court in the State of New York

24   decision and order, and that would be the court's -- Justice

25   Ostrager's ruling on our motion for a turnover.  The

44

1   predicate of which was it was his asset that he needed to

2   turn over to PAX.

3           THE COURT:  You think it's at ECF what?  What

4   page?  57 at what page?

5           MR. SARNOFF:  Dash 2, Your Honor.

6           THE COURT:  It's just taking a minute to open.

7   I'm trying to see.

8           MR. DESPINS:  And, Your Honor, with your

9   permission, could we show on the Zoom -- I don't know --

10          THE COURT:  Yes.

11          MR. DESPINS:  -- my colleague -- put up the --

12          THE COURT:  Yes, we can.  What would you like to

13  show?

14          MR. DESPINS:  Show the paragraph that we've added

15  to the order so Mr. -- so they can see that.  It's a very

16  short paragraph.

17          THE COURT:  So we need to pull up ECF 681.  And

18  you want to go to the black lined version or the plain

19  version?

20          MR. DESPINS:  My colleague -- my colleague, Mr.

21  Bongartz, can tell us exactly where we have to go.

22          MR. BONGARTZ:  It's page 35 at 40.

23          THE COURT:  Okay.  We'll just need a minute, and

24  the clerk will pull it up so we can all read it.

25          MR. DESPINS:  Thank you, Your Honor.

1          (Pause)

2          MR. BONGARTZ:  And, Your Honor, while he's doing

3     that, I do have a page reference.  I guess -- I guess 57-2

4     is an exhibit.  I believe it's page 131 of the exhibit, 1-3-

5     1 of the exhibit.  Sorry.

6          THE COURT:  Thank you.

7          (Pause)

8          THE COURT:  We're just waiting on 681, right, to

9     be pulled up?  And go to page 35 of 40 on that, please.  I'm

10    looking at a hard copy of it, but I can -- I'm sure we can

11    pull it up in a second.

12         THE COURTROOM DEPUTY:  Yes.

13         (Pause)

14         THE COURT:  If you're having difficulty, I can

15    share my screen and show it.  Right?

16         THE COURTROOM DEPUTY:  Yes.

17         THE COURT:  Is there a --

18         THE COURTROOM DEPUTY:  (Indiscernible) problem

19    there.  Yes, she's having a problem.

20         THE COURT:  All right.  So then you need me to --

21    you need to let me share then.

22         THE COURTROOM DEPUTY:  Okay.  You can share.

23         THE COURT:  Okay.

24         THE COURTROOM DEPUTY:  You have ability.

25         (Pause)

1          THE COURT:  Is it showing?

2          THE COURTROOM DEPUTY:  Yes.

3          THE COURT:  I can't see because I can't know that

4     I'm sharing.

5          All right.  So this is the paragraph, Mr. Despins,

6     paragraph 9?

7          MR. DESPINS:  Yes.  Correct, Your Honor.

8          THE COURT:  Yeah.  Can everyone see that?

9        (No audible response)

10         THE COURT:  Okay.  Everyone can at least view

11    that?

12         Attorney Henzy, do you see that?  I'm not

13    suggesting that you can't have a recess to look at the whole

14    order.  I'm just asking do you see paragraph 9?

15         MR. HENZY:  I see it, Your Honor.

16         THE COURT:  Okay.  Thank you.  All right.  So,

17    Attorney Henzy, are you -- are you asking the Court for a

18    recess so that you can review this matter, or what are you

19    asking the Court to do at this point?

20         MR. HENZY:  I don't think I was asking the Court

21    to do anything, Your Honor.  If the Court would like, I'm

22    happy to take a recess and review this carefully.  I don't

23    know if it will take an hour.  I don't know if it will

24    require discussions with Mr. Despins or anyone else.

25         I will though -- I want to be clear, Your Honor,

1    that I am pressing my objection that this was not in the

2    motion that was filed.  And under Rule 9013 and relevant

3    case law, I think it's not properly before the Court.

4            So principally my argument is that you should not

5    rule on this and that you should tell Mr. Despins to file a

6    motion so that this can be done in an orderly way, as

7    opposed to this was first filed and raised at 10:09 on

8    Sunday night, Your Honor.  Okay.

9            So, again, this is -- this is not fair.  There's

10   not sufficient notice.  His support for the relief he's

11   seeking is not stated with particularity anywhere.

12   Certainly it's not in the motion.  And I don't think it's --

13   the revised proposed order that he has, it does not speak

14   for itself.

15           MR. DESPINS:  Your Honor, we filed a very broad

16   motion seeking all corporate governance rights and we

17   mention BVI specifically.

18           Mr. Henzy responded saying BVI, it's too late.

19   There's no -- you can't just -- you can't give an open-ended

20   order like that with respect to BVI.

21           We responded by saying, okay, we'll be very

22   precise.  That's exactly what we need from BVI.  That's

23   subsumed in the relief sought.  So I don't understand the --

24   but he got it Sunday.

25           The relief, again, this is very simple.  There's a

1   car, we need the key.  If we're to get the keys to Genever,

2   we need the debtor to sign all these documents so that the

3   transfer is processed.  That's very consistent with the

4   motion.  It didn't have to be more specific than that, but

5   now it's very, very specific and it's been very specific

6   since Sunday.

7            MR. HENZY:  I disagree, Your Honor.  I think it's

8   not -- it was not -- the relief that's sought now was not

9   part of the motion that was -- that was produced and filed.

10  So I'm going to -- I'm going to press that objection.

11           Again, if the Court or the parties think it makes

12  sense for us to take an hour recess so I can look at the

13  order and potentially talk to my client at least, I'm happy

14  to do that.

15           But I don't -- I don't want there to be a surprise

16  if I come back and I say something like irrespective of

17  what's in this order I'm objecting to the relief being

18  entered.

19           THE COURT:  Does anyone else wish to be heard?

20           MR. HENZY:  Your Honor, this doesn't need to

21  happen this way.  But the status in the Genever U.S. case is

22  the property is being sold under the supervision of Melanie

23  Cyganowski.  As I understand it the debtor there has

24  essentially handed control of that process over to Melanie

25  Cyganowski.

1          As I understand it, I don't think the debtor can

2     do anything to impede that process.  So nothing here is

3     going anywhere.

4          There's going to be a sale process.  The sale

5     proceeds I believe will be property of that bankruptcy

6     estate and I believe won't be distributed except pursuant to

7     court order, a court order entered by Judge Garrity.  So

8     there's no -- I don't think there's any rush here.

9          And, again, as with the discovery, the U.K.

10    discovery issue, Your Honor, if it's done the right way,

11    this might be a lot easier.

12         I don't think -- I don't think I'm creating the

13    agita here.  I think the trustee is creating the agita by

14    the way that he's choosing to do this, which is really just

15    to try to push them through on essentially no notice.

16         MR. DESPINS:  Your Honor, the reason for the

17    emergency is that we need to appear in the Genever case for

18    reasons I explained about of last year.  There are time-

19    sensitive issues.  We need to resolve them as soon as

20    possible.

21         And I don't want to go to that court and have

22    someone like Bravo Luck say, well, he doesn't have the right

23    to be here because he doesn't hold the shares.  I don't want

24    to be in that position, Your Honor.  That's why we're doing

25    this now.

1          Thank you.

2          MR. FRIEDMAN:  Your Honor, it's Peter Friedman.

3    If I may be heard for just a moment?

4          We strongly agree with that.  There's a plan on

5    file in that case which PAX has objected to.  But, you know,

6    it has all sorts of provisions that we think unfairly favor

7    certain parties that are aligned with Mr. Kwok.

8          And obviously the debtor as a -- we don't think

9    he's actually acted as a fiduciary in the context of that

10   plan proposal and we believe that it would be much more

11   appropriate to have Mr. Despins in whatever capacity dealing

12   with the debtor in an even handed manner that benefits Mr.

13   Kwok's legitimate creditors and so there actually is time

14   sensitivity.

15         I think there's a disclosure statement here -- and

16   at least currently scheduled for August 16th.  And the shape

17   of the river of that case could be substantially changed if

18   Mr. Despins' ability to participate in that case is made

19   clear.

20         THE COURT:  Right.

21         MR. GOLDMAN:  Your Honor, Irve Goldman for the

22   committee.  May I be heard briefly?

23         THE COURT:  Yes.

24         MR. GOLDMAN:  Your Honor, I think a distinction

25   has to be drawn between the equitable ownership of share

1    interests and the legal ownership of share interests which

2    carry with it corporate governance rights.

3            And I think it's unquestionable that the debtor

4    has acknowledged he's the legal owner of the shares and he

5    has exercised that legal ownership to control the

6    administration of the Genever USA Chapter 11 case. So that

7    is the subject of the motion.

8            And the trustee has acknowledged by paragraph 9 of

9    the order that the equitable interest by virtue of the trust

10   agreement cannot be determined at this point.  So I'm not

11   sure what the argument is about.

12           Secondly, even under the case law that Attorney

13   Henzy cited regarding Rule 9013 and the need to be

14   particular about the relief granted, this is simply

15   incidental to the principal form of the relief that was

16   sought in the first instance.  It just got more -- the

17   relief got more particular at the request of the debtor.

18           So we support completely what the trustee has

19   presented in the form of the proposed order.

20           I just want to go back for a minute to the

21   proposed letter to Attorney Morrissey before we break.  And

22   these are -- these comments are really pro estate comments.

23           I think that the way the letter is drafted, the

24   revised letter, could suggest that the attorney/client

25   privilege belongs to the debtor.  It does not.

1          I agree fully with the trustee that the trustee

2     holds the debtor's attorney/client privilege particularly

3     when it relates to a matter that seeks to augment the

4     estate.

5          Now, this letter states that -- in part the black

6     lined version states -- and to take instructions from him,

7     meaning the trustee, in relation to my claim in the UBS

8     litigation regardless of any attorney/client privilege, work

9     product, or other privilege which belongs to me.

10         I would suggest that the word may be inserted,

11    which may belong to me, and then the following sentence.

12    Any waiver of privilege is limited to the provision of this

13    information to the trustee.  My consent is limited to giving

14    full access to the trustee and is not a consent by me to

15    allow the trustee to waive the privilege.

16         I don't want that sentence to be taken to mean

17    that we need Mr. Kwok's allowance to the trustee to waive

18    the privilege.  The privilege belongs to the trustee in the

19    first instance.

20         So I would suggest if it wouldn't upset the

21    agreement that the trustee reached, or apparent agreement

22    the trustee reached with the U.K. firm that these provisions

23    be massaged somewhat to -- not be taken to concede that it's

24    the trustee that has the privilege.

25         MR. HENZY:  Your Honor, may I be heard?

1              THE COURT:  Yes.

2              MR. HENZY:  Thank you.

3              Mr. Goldman can hope, we can all,  but I will tell

4      you that that letter I'm aware has gone through several

5      iterations between U.K. counsel and Mr. Despins' firm.  And

6      I think the U.K. counsel is taking a pretty careful approach

7      and they're -- they are very concerned about their own

8      professional obligations.

9              In response to something that Mr. Goldman said,

10     the trustee holds the privilege.  We're talking about

11     privilege under U.K. law, Your Honor.  We're not talking

12     about attorney/client privilege under U.S. law.

13             There's new litigation pending in the U.K.  Mr.

14     Goldman may have some expertise on privilege under U.K. law.

15     I'll admit I have none.  I'm relying on what U.K. counsel

16     has stated to me.

17             So I don't think it's as simple as this is what

18     the bankruptcy code says when a trustee is appointed vis-a-

19     vis privilege.

20             There's a -- how the privilege works in the U.K.

21     is how it works in the U.K.  So I don't think -- I don't

22     know that anybody on this hearing can with any authority

23     speak on that, on how the privilege works in the U.K.

24             So I think -- I think it's dangerous to -- to be

25     -- I'm trying to wordsmith -- when we frankly don't know

1    that we really know we're talking about.

2              MR. DESPINS:  Your Honor, if I may?

3              I totally feel Mr. Goldman's pain.  I feel the

4    same pain.  He is correct.  Except that here, you know, this

5    is -- I think this could turn out to be a fool's errand,

6    meaning that they could play a game where the letter is sent

7    and they say, oh, we're not going to share anything with you

8    because he hasn't waived the privilege or anything like

9    that.  Of course, we'll be back to Your Honor.

10             The important thing is Your Honor or the trustee

11   are not taking the position.  The letter is being sent by or

12   is supposed to be sent by Mr. Kwok to counsel and that's his

13   letter.

14             We're not -- the trustee is not taking the

15   position that that's the correct view under U.S. law.  It is

16   my price of admission apparently to see what's behind the

17   curtain.  And if it's there's nothing behind the curtain,

18   I'll be back to Your Honor.  I hope that I will see what's

19   behind the curtain.

20             And I think the same thing as Your Honor.  But

21   because you're directed to send the letter doesn't mean that

22   you agree that I don't have access to the privilege.  It's a

23   -- it's a practical solution.  And I am -- this will be rare

24   event.

25             I would be aligned with Mr. Henzy on this.  I

1   would not try to wordsmith the letter today on this if we

2   can.  And I am not naive.  I know this -- this could be a

3   setup where, in fact, there's nothing behind the curtain and

4   I'll be back before Your Honor.

5          Your Honor is not ruling that the privilege does

6   not belong to me.  It's just directing the debtor to send

7   that letter.  So I want to be --

8          So, Mr. Goldman, I understand his point

9   completely, but I would urge the Court not at this stage to

10  play with the language.

11         Thank you.

12         THE COURT:  Thank you.

13         MR. GOLDMAN:  Your Honor, I think with that, with

14  that caveat, you know, I think I would be fine as long as we

15  recognize that no ruling here -- there's no ruling on

16  whether the trustee holds a privilege and -- or whether it's

17  Mr. Kwok.

18         I think there is an issue, given that this is an

19  asset of a bankruptcy estate in the U.S., whether, you know,

20  it's U.S. or U.K. law that governs a privilege -- but we --

21  I agree with Mr. Despins that it's not necessary to make

22  that determination today.

23         THE COURT:  And the motion doesn't ask --

24         MR. HENZY:  I think it's really not necessary

25  because --

1          THE COURT:  The motion doesn't ask for --

2          MR. HENZY:  -- as I said --

3          THE COURT:  Hold on a second, Attorney Henzy.

4          And the motion doesn't ask for that determination

5     to be made.  So I'm not making that determination.

6          Sorry, Attorney Henzy.  Go ahead.

7          MR. HENZY:  Well, Your Honor, actually the motion

8     doesn't address the Harcus Parker issue at all in any way,

9     shape or form.

10          We can argue about whether the action on BVI is

11     incidental to the motion that was filed, and I think it

12     wasn't, but I don't think there really is an argument that

13     the Harcus Parker issue is part of that motion.  It's just

14     not there, Your Honor.

15          And I'll say again I think that the right way to

16     do this where, you know, it may be that we can get to

17     (indiscernible) place, and this -- this is not it.

18          In terms of talking about the contents of the

19     letter, Mr. Kwok is not going to waive, voluntarily waive,

20     attorney-client privilege.  He's not going to do it.  And as

21     I said I'm not going to compel him to do it.  So it may be

22     that if you're going to enter an order we're going to get to

23     -- we're going to get to a contempt, but he's not going to

24     do it.

25          So I don't know how much time we need to spend on

1      the language of that, of that letter.

2              THE COURT:  Well, I'm going to take a recess until

3      3:30.  And then we'll come back and see if you've had any

4      discussions.  And if not, we'll go from there.

5              MR. HENZY:  Right.  Thank you, Your Honor.

6              THE COURT:  All right.  Court is in recess until

7      3:30.

8              (Recess from 2:25 p.m. until 3:31 p.m.)

9              THE COURTROOM DEPUTY:  The United States

10     Bankruptcy Court in the District of Connecticut is now in

11     session after recess.  We remain on case number 2022-50073,

12     Ho Wan Kwok.

13             THE COURT:  Okay.  Good afternoon.  We're back

14     after recess.

15             When we took a recess, the parties were going to

16     attempt to talk and look at a proposed order that was filed

17     on the docket today by the Chapter 11 trustee.

18             So, Mr. Despins, where do things stand after a

19     recess?

20             MR. DESPINS:  I'll let Mr. Henzy provide more

21     detail because it's really the ball is in his camp.  But we

22     -- we did talk about one aspect -- well, we talked about all

23     aspects, but one might be resolved, so maybe Mr. Henzy can

24     address the Court on this.

25             THE COURT:  Okay.  Thank you.

1           Mr. Henzy?

2           MR. HENZY:  Sure.  So, Your Honor, with that

3    additional paragraph 9, you know, the Court -- the Court

4    enters an order directing Mr. Kwok to sign these -- the BVI

5    share transfer document and the resolution and the -- the

6    so-called transfer impact of (indiscernible) fiduciary, that

7    Mr. Kwok is going to do that.

8           Just for the record, I believe that, you know, the

9    trust agreement itself does prohibit Mr. Kwok from

10   transferring the shares, but he is not doing so voluntarily.

11   He's being forced to by a court.  Whatever flows from that

12   flows from that I believe.

13          And whatever other rights any party has as a

14   result of Mr. Despins becoming the -- whatever he's

15   becoming, the legal owner, trustee under a trust, et cetera,

16   whatever he is, flow from that, I just -- the debtor is not,

17   you know, certainly not opining on what may flow from it.

18   And I don't think I want the debtor to be accused of having

19   failed to fully inform people or anything like that.

20          But all that being said, with that paragraph 9,

21   the debtor is not going to object to the entry of that

22   portion of the order.

23          THE COURT:  Okay.  Thank you.

24          MR. DESPINS:  Your Honor, just two seconds on

25   this.

1          The transfer occurred on July 8th when I was

2     appointed.  The bankruptcy code made that transfer happen.

3     What we're doing here is we're documenting the transfer.

4     Again, you own the car.  The car became the trustee's car,

5     not personally, but in a trustee capacity, and now we're

6     dealing with the registration to make sure it's endorsed and

7     all that.

8          The transfer occurred on July 8th by operation of

9     law.  I think that's very important to -- to understand

10    that.  But, you know, it is what it is.  So we're -- I think

11    we're happy that this aspect of it was resolved.

12         MR. HENZY:  And just for the record, I hear Mr.

13    Despins' position.  I don't agree with it.  But, again, this

14    aspect of it is resolved because Mr. Kwok, upon being

15    ordered to do so, is going to sign these documents.

16         THE COURT:  Okay.  Then what is left is the issue

17    of the letter to counsel in -- to the firm in London.  Is

18    that the remaining issue?

19         MR. HENZY:  So, Your Honor, just to be clear, I

20    had filed -- after the motion itself was filed, but before

21    the revised proposed order was filed, I filed an objection

22    raising other objections and I have not waived those

23    objections.

24         I know at the last hearing you told me that -- and

25    I can't remember your exact words, you were inclined or you

1    had -- to overrule those objections.  But I want to be clear

2    that I am not waiving those objections.  That I'm pressing

3    those objections.  And I'm happy to be --

4            THE COURT:  Well, let's make the record clear then

5    because --

6            MR. HENZY:  I would like to be --

7            THE COURT:  -- I need to know what you're

8    objecting to.

9            MR. HENZY:  Thank you, Your Honor.

10           THE COURT:  You're objecting to the fact that Mr.

11   -- that Mr. Despins didn't file an adversary proceeding to

12   have the property turned over to him?

13           MR. HENZY:  Your Honor, I think that issue is

14   resolved.

15           THE COURT:  Well, I need to know that.  When you

16   say you think that issue is resolved, if it's not, I'm going

17   to rule on it, so you need to tell me whether it's resolved.

18           MR. HENZY:  Now, Judge, I'm sorry.  I think I was

19   being unclear.

20           The argument that this needs to be done by

21   adversary proceeding, that argument has gone away because

22   that related to this share transfer that we just told you is

23   resolved and going to happen.

24           So when I'm referring to my other objections, if

25   dial back to the motion as originally filed -- give me one

1    second, Your Honor --

2              THE COURT:  Sure.

3              MR. HENZY:  -- the motion as originally filed,

4    which is document 598 --

5              THE COURT:  ECF 598.  Right.  And you're saying

6    you still want to preserve your objection that the trustee

7    didn't specifically reference section 521 of the code?

8              MR. HENZY:  No.  So, Your Honor, on July 29, I

9    filed an objection.  It's document number 643.

10             THE COURT:  Yes.  I understand.

11             MR. HENZY:  Okay.  Okay.  And I raised objections

12   to the relief that was originally sought in the motion that

13   has nothing to do with Harcus Parkus -- I keep saying Harcus

14   Parkus, which sounds terrible -- but Harcus Parker and then

15   the share issue that we resolved.  I raised other objections

16   that we haven't talked about at all today.

17             THE COURT:  Okay.  Well, go ahead then.

18             MR. HENZY:  And, again --

19             THE COURT:  I want to know what it is specifically

20   you are still objecting to.

21             MR. HENZY:  Okay.  And maybe, Your Honor, the --

22   to try to be -- to try and like to be clear, I am objecting

23   to -- give me one -- I'm sorry, Your Honor.  Give me one

24   second.

25             THE COURT:  That's fine.

1      (Pause)

2            MR. HENZY:  I'm sorry. I'm getting all these

3      orders straight.

4            So in the objection that I filed on July 29, if I

5      -- if I look at the -- the easiest way to organize it might

6      be the order that was filed this afternoon just before the

7      hearing, which is document no. 681.

8            THE COURT:  Yes.  Go ahead.  I'm listening.  I'm

9      not sure where you're going.  I thought we were going to --

10           MR. HENZY:  Okay.  I just want --

11           THE COURT:  -- talk about what you're --

12           MR. HENZY:  I want -- Judge, I'm sorry.  I just

13     wanted to try to tie back to the objection I filed on July

14     29.

15           THE COURT:  Okay.

16           MR. HENZY:  Okay.  It's paragraph 2 -- and this is

17     -- this is -- putting aside --

18           THE COURT:  Paragraph 2 of what, the order or your

19     objection?

20           MR. HENZY:  Of the order.

21           THE COURT:  Paragraph 2 of ECF 681.

22           MR. HENZY:  Correct.

23           THE COURT:  You're objecting to what?

24           MR. HENZY:  Okay.  I'm objecting to paragraph 2,

25     although, again, we've dealt with the BVI issue.

1        But this, the relief sought here asks for very

2   broad relief with respect to entities that are not

3   specified, the authority to replace any existing officer,

4   director, manager or similar person.

5        So Mr. Despins is seeking this court to give him

6   authority over entities that are not specified without

7   regard to those particular entities, what applicable law,

8   non-bankruptcy law governs those entities and what the

9   organization documents of those entities might provide.

10        I don't think, Your Honor, that this works.  I

11   think that this type of authority -- with Mr. Despins, I

12   think he has the authority that he has, and this goes -- and

13   I'm not disputing any particular authority he has with

14   respect to any entities because I don't know what entities

15   we're talking about.  But what this provision would do is

16   give him authority that may not be provided for under

17   applicable non-bankruptcy law and the governing documents of

18   particular entities.

19        THE COURT:  Can't that just be --

20        MR. HENZY:  And the cases that Mr. --

21        THE COURT:  Can't that just -- can't we just fix

22   that problem by saying that -- you're talking about for the

23   avoidance of doubt language, that sentence?

24        For the avoidance of doubt, that foregoing rights

25   include the trustee's asserted authority.  He's asserting he

1   has the authority.  If he doesn't and he does something

2   wrong, then you can sue him.

3       MR. HENZY:  Actually, Your Honor, I mean, I think

4   I put this in my response, which is, if this paragraph had

5   just been made -- made subject to applicable non-bankruptcy

6   law and the governing documents of these entities, then I --

7   then I would have no objection to this provision.

8       Again, I'm not trying -- I'm not trying to create

9   an issue here.  I really am not.  But I think that that is

10  the correct statement of law.  He has whatever authority he

11  has as trustee, but with respect to any particular entity,

12  it is subject to applicable non-bankruptcy law and the

13  governing documents of that entity.  That's all.

14      MR. DESPINS:  Your Honor, if we do, we do.  If we

15  don't, we don't.  But I don't want to open satellite

16  litigation over these issues with the debtor because that's

17  how the fees are going to be -- you know, going to get out

18  of control in this case.

19      The reason we asked for blanket authority is

20  because we will not exercise that right unless we believe

21  through due diligence we have the power to do it.  And if

22  we're doubtful, we'll come back to the Court.

23      But we cannot be in a position where there's a

24  satellite litigation open whether -- what state law

25  provides, what foreign law provides, because that's a --

1      that's going to be another case basically.

2              MR. HENZY:  Judge, the last thing that Mr. Kwok

3      wants to do is engage in litigation over how these entities

4      are going to be governed.

5              But if Mr. Despins is saying to you he -- after

6      doing his diligence, that he would only do what he has the

7      power to do, then I don't know -- all I want is to say that

8      in this order, but I think that's not what this order says.

9              THE COURT:  Well, I think that a --

10             MR. HENZY:  It goes -- it goes beyond that.

11             THE COURT:  -- I think my suggestion works.  For

12     the avoidance of doubt, the foregoing rights include the

13     trustee's asserted authority to replace any existing

14     officer, director, manager or similar person of the debtor-

15     control entities.  And then the next sentence says as part

16     of the foregoing.

17             So the point is he's asserting he has this

18     authority.  He's acting as a trustee.  So that's what he's

19     asserting.  And that's what I'm going to -- I'm going to add

20     the word assert.  And that's all I'm going to change in

21     paragraph 2.

22             MR. HENZY:  Thank you, Your Honor.

23             Just to be clear, I'm not -- I am not -- I am

24     pressing my objection to that, that language.

25             THE COURT:  Understood.  That objection's

1    overruled.

2              So what's your next objection?

3              MR. HENZY:  Okay.  Again, I'm trying to simplify

4    here, Your Honor.  Is I have no objection on -- to the first

5    decreedal paragraph of paragraph 3.

6              And then now with this resolution on BVI that we

7    had just told you about, to that -- then that -- as you go

8    over to page 3, that little (a), I have no objection to that

9    paragraph.  Then that's been resolved.

10             The next paragraph down on that page, paragraph

11   (b), we've discussed that at length, the -- on the U.K.

12   issue, the UK/UBS litigation issue and I maintain my

13   objection on that issue.

14             On paragraph --

15             THE COURT:  Hold on.  Just wait a minute.  I'm

16   just writing this down.

17             So what else are we going to discuss about (b)?  I

18   think the arguments have been made, correct?

19             MR. HENZY:  I think the arguments have been made,

20   Your Honor.  I don't want to belabor anything.

21             THE COURT:  Okay.

22             MR. DESPINS:  But, Your Honor, I just want to add

23   briefly to that the only privilege information we're seeking

24   is with respect to the merits of the affirmative claims of

25   Mr. Kwok against UBS.  No other issues.

1          So, for example, crazy example, Mr. Kwok, in the

2     context of that representation, said, oh, by the way, I've

3     transferred an interest in a private jet to my daughter.

4     I'm not -- I'm not seeking that. That's not part of the

5     affirmative claim of Mr. Kwok against UBS.

6          So that privilege that the -- that Your Honor is

7     directing him to send a letter about is the privilege

8     regarding that litigation, that affirmative litigation,

9     only. I want to make sure the record is clear about that.

10         MR. HENZY: And, Your Honor, I'd like to be clear.

11    I understand Mr. Despins' position. I'd like to be clear

12    that I believe Mr. Despins owns whatever -- I assume, again,

13    I don't know U.K. law -- he owns whatever privilege he owns

14    and Mr. Kwok has whatever privilege he has, if any.

15         And Mr. Kwok is -- to the extent he has any

16    privilege, he is not going to waive it. But, again, I think

17    we've made -- I've made the argument that I have to make on

18    that. I think.

19         THE COURT: Okay. The objection to the language

20    in paragraph (b) on page 3 of the proposed order is

21    overruled.

22         MR. HENZY: Thank you, Your Honor.

23         THE COURT: So what's your next objection?

24         MR. HENZY: On paragraph 4, on page 4, Your Honor,

25    that essentially is a blanket authorization to the trustee

68

1    to act outside of the ordinary course of business with

2    respect to so-called debtor controlled entities.  And I

3    object to that.  Frankly, I've never heard of or seen that.

4           My understanding of bankruptcy code Section 353 is

5    that when a debtor trustee -- debtor out of possession

6    trustees wants to act out of the ordinary course of

7    business, they need to notice a hearing, come and ask for

8    the Court's authority to do that.  And this would make it so

9    that there doesn't have to be notice and a hearing.

10          And, again, this is a blanket authority.  And I

11   think that is not provided for in the code.  I think that is

12   just extraordinary relief and I don't think it's

13   appropriate.

14          MR. DESPINS:  Your Honor, on that point, it's the

15   same argument as to applicable law.  We don't want to be in

16   a position where later it is argued that we acted outside of

17   the ordinary course of business.

18          And the safe valve -- the safety valve, is at the

19   end of paragraph 4 where it says for the avoidance of doubt

20   nothing in this order authorizes the trustee to sell,

21   otherwise dispose of, lease or encumber any equities that

22   are controlled entities or other assets of the debtor.

23          So, yes, the language is broad, but then it's

24   completely narrowed at the end to avoid the type of concern

25   that have been raised.

1              The reason we need the opening language is we

2    don't to be in a position where we're litigating over, well,

3    you know, you terminated or you removed a director, an

4    officer.  You shouldn't have done that.  That's not --

5    that's not in the ordinary course of business, and we have

6    all these satellite litigation over whether we acted within

7    -- with (indiscernible).

8              We believe that we should get both reliefs as long

9    as the safety valve is in there which protects the estate,

10   no sale, no lease of property without a court order.

11             Thank you.

12             THE COURT:  Does anyone else --

13             MR. HENZY:  I see -- I see the limitation, Your

14   Honor, but I still think -- I don't think there's any such

15   thing as blanket authorization to act out of the ordinary

16   course under 353.

17             MR. DESPINS:  That solely to exercise corporate

18   governance rights, Your Honor.  Nothing else.

19             MR. FRIEDMAN:  Your Honor, may I be heard -- it's

20   Peter Friedman -- for just a moment?

21             The order that was originally proposed did not

22   include that language that Mr. Despins put in and we thought

23   it was extremely important.

24             And, you know, I think had that language not been

25   in there, as creditors, we would have objected.  But we

1    found that that addition to be -- to represent I think an

2    extremely good faith move by the trustee in balancing the

3    economic interests of creditors, which I think has to be

4    paramount, with efficiency.

5           So we strongly support the inclusion of that

6    particular paragraph with the protective language that was

7    added at our request.

8           THE COURT:  Thank you.

9           Does anyone else wish to be heard on paragraph 4?

10   (No audible response)

11          THE COURT:  Okay.  I'm just reading the language

12   again.

13          (Pause)

14          THE COURT:  Okay.  Anything further from anyone on

15   paragraph 4?

16   (No audible response)

17          THE COURT:  While I understand the objection,

18   Attorney Henzy, I'm overruling it because I think that the

19   language -- it is specific to the economic and governance

20   rights with respect to the debtor-controlled entities.  And,

21   you know, if litigation ensues about that, then it can

22   ensue.  But we're not going to -- it is -- it is qualified

23   by the last sentence and I think it's protective enough of

24   the debtor.

25          MR. HENZY:  Thank you, Your Honor.

71

1          THE COURT:  So what is your next objection?

2          MR. HENZY:  And, Your Honor, great news, I have no

3    objection to paragraph 5.

4          THE COURT:  Okay.  Thank you.

5          MR. HENZY:  On paragraph 6, the -- so paragraph 6

6    provides debtor shall not interfere with, hinder or delay

7    trustee's exercise of authority on this order.

8          I have no objection to the first sentence of

9    paragraph 6.  However, the second sentence would restrict

10   the debtor's ability to seek relief and it would restrict it

11   to seek relief from this court.

12         And I don't -- I don't know that the debtor ever

13   would seek relief.  But because particularly for the fact

14   this paragraph 4 and the broad authority that Mr. Despins is

15   being granted there, I don't know what might occur here.

16         I don't know what rights, if any, the debtor would

17   have to do anything.  But I don't think the debtor -- to the

18   extent that the debtor otherwise would have a right to seek

19   relief, I don't think it should be restricted by this order.

20         So I would ask that the second sentence of

21   paragraph 6 be struck from the order.

22         MR. DESPINS:  Your Honor, same issue.  The debtor

23   is before this court.  He has worldwide assets.  From your

24   perspective you have exclusive jurisdiction over that.  We

25   cannot have the debtor running in foreign courts to assert

1    claims.

2            It may be that he comes, Your Honor, but, you know

3    what, there's a real important twist on the U.K. law

4    regarding issue XYZ there.  And you might decide, yeah,

5    you're right, go for it or something like that.  But

6    everything needs to be centralized in this court by this

7    debtor.  He cannot have satellite litigation elsewhere.  And

8    they have the ability to come to this court for relief.  So

9    that's a very important position, Your Honor.

10           MR. HENZY:  Your Honor, the way this order is set

11   up, Mr. Despins can run to other courts including courts in

12   foreign countries.

13           MR. DESPINS:  That's correct.

14           MR. HENZY:  So the way that this would now be set

15   up is Mr. Despins decides he's going to go to a court in

16   this country or a foreign country and the debtor, even

17   assuming under the law of that foreign country, the debtor

18   has a right to appear and do whatever a debtor is going to

19   do. This order says the debtor can't do that.

20           And it says the debtor I guess would have to come

21   back to you and say to you Mr. Despins is doing this thing

22   in a foreign court and I'm in front of you telling you he

23   shouldn't be doing it because I've been told I can't go to a

24   foreign court to make the argument that under the foreign

25   court law I'm entitled to make.  And that doesn't -- that

does not make any sense to me.

MR. DESPINS: Your Honor --

MR. HENZY: If Mr. Despins is going to have the ability without seeking court authority to go to other courts, then -- again, Your Honor, you said it, you take the debtor as he comes. The debtor should be able to go do whatever the debtor has a right to do under the foreign law.

THE COURT: Well, the problem is --

MR. DESPINS: Your Honor --

THE COURT: -- Mr. Despins is the debtor and so he already has the rights. He doesn't need authority from this court to do what he's doing in the actions that are already pending in which the debtor is a party.

So your argument, while I understand it to an extent, the problem is what right would Mr. Kwok have to do anything in any of those foreign courts if Mr. Despins has now become Mr. Kwok?

MR. HENZY: Well, Mr. Despins is not --

THE COURT: Which you've admitted in your papers that as soon as the filing of -- as soon as the order appointing the trustee was approved, that Mr. Despins became Mr. Kwok. So what possible rights would Mr. Kwok have?

MR. HENZY: Well, Your Honor --

THE COURT: Mr. Despins has stepped into all of those rights.

1        MR. HENZY:  I think I agree.  I didn't -- I don't

2   think I said Mr. Despins became Mr. Kwok.  And I'm going to

3   guess Mr. Despins doesn't want to be Mr. Kwok, but he

4   absolutely is substituted for Mr. Kwok in any pending

5   litigation.

6        But I don't think that the way this order is set

7   up it's not just pending litigation, Mr. Despins can

8   commence new litigation that the debtor might or might not

9   even be a party to.

10       Now, what rights in particular in a foreign

11  jurisdiction Mr. Kwok might have as a debtor out of

12  possession?  Your Honor, I don't know.  He may or may not

13  have any.  He may not have any rights.  So I don't know

14  because I don't know what jurisdiction we're talking about.

15  I don't know what entity we're talking about.  I don't know

16  what action it is that Mr. Despins would be taking.

17       So I'm perfectly -- look, the way, again, this is

18  set up is Mr. Despins can go do whatever he's going to do,

19  only to the extent that under some applicable foreign law

20  Mr. Kwok would have a right to show up and do something --

21  and he might not, he might not, Your Honor, he should be

22  able to do that.  I don't -- I don't think he should have to

23  come back to this court to find out whether or not he has a

24  right to show up in another court under non-bankruptcy --

25  applicable non-bankruptcy law.

1        MR. FRIEDMAN:  Your Honor, may I be heard for a

2   moment on this issue?  It's Peter Friedman.

3        I think it is really important because I think the

4   issue is, you know, in any premise, Mr. Kwok's going to have

5   to determine if he has standing given the insolvency of his

6   estate.

7        So I think it's actually critical, given that he

8   said he has $3,850, that before he goes to another court and

9   be permitted to litigate, that he actually would show that

10  he would have permission to interfere with the trustee's use

11  of debtor property given his economic -- where the economics

12  of this exist.  I think that's an issue that really has to

13  be made to determine with reference to U.S. bankruptcy law

14  and his rights.

15       So I actually think what Mr. Despins as proposed

16  is extremely appropriate.  It certainly is a prudent measure

17  and when the (indiscernible) bankruptcy determination as to

18  whether he even has standing to have standing to be heard.

19       MR. HENZY:  Your Honor, just to pose a

20  hypothetical.

21       Let's say Mr. Despins goes to a foreign court and

22  in the foreign court seeks to compel Mr. Kwok to do the kind

23  of things that he sought to do with this order.  He seeks to

24  compel him to execute a document, let's say a corporate

25  document.  Then I don't -- I mean, would anyone say that Mr.

1    Kwok wouldn't have standing in that foreign court to tell

2    the judge in the foreign court, well, I shouldn't have to

3    execute this document for whatever reason.

4            And the judge may say, you're wrong, you have to

5    execute the document.  The judge is going to say whatever

6    the judge is going to say.  But how could Mr. Kwok not have

7    the right to show up in that foreign court -- and it's

8    before a judge -- before a judge can say to Mr. Kwok I don't

9    believe you have standing for whatever reason.  And Mr.

10   Despins can tell the judge, the foreign judge, Mr. Kwok

11   doesn't have standing.

12           So how can Mr. -- in my hypothetical, how can Mr.

13   Kwok not have the ability to show up in court and

14   potentially defend his rights to the extent that he has any?

15           MR. FRIEDMAN:  Your Honor, I won't speak for Mr.

16   Despins, but I don't understand the order as depriving Mr.

17   Kwok of the ability to defend himself if there's a matter in

18   a different court.

19           But if he's seeking to initiate litigation, I

20   think he would certainly have to come to this court.

21           MR. HENZY:  Well, that's not what the order says.

22           MR. DESPINS:  In any event, Your Honor, the point

23   is that the Court has exclusive jurisdiction over Mr. Kwok.

24   He needs to come back to this court.  And, in fact, if there

25   are compelling circumstances, you will authorize him to go

1    to Australia, for example, to defend some action to see that

2    (indiscernible).

3           The point is that he should not be roaming around

4    and having the ability to disrupt what we're doing around

5    the world without coming to Your Honor to say this is what

6    I'm doing.  I have (indiscernible) particularized injury

7    that somehow I'm able to assert even though I'm out of

8    possession.  Well, that argument should only be made to Your

9    Honor.

10          And then if you find it compelling, you'll send --

11   you'll authorize him to do whatever he wants abroad.  But

12   you cannot have him running around in this.  It's just

13   fundamental, Your Honor.

14          MR. HENZY:  But, Your Honor, arguably what this

15   order is doing though you are giving up a certain degree of

16   jurisdiction to Mr. Despins, meaning you're telling him that

17   he can act out of the ordinary course of business without

18   coming and asking permission from you.

19          But then what Mr. Despins and Mr. Friedman are

20   essentially arguing is but you -- but you hang on with

21   respect -- let's say to the same matter, you hang on to

22   jurisdiction with respect to the debtor.

23          So Mr. Despins can do whatever he wants to do, but

24   Mr. Kwok can't respond to that.  And that seems it should be

25   one way or the other.

1            If Mr. Despins wants to come back and make a

2    motion to act out of the ordinary course of business and the

3    debtor has to respond to that in bankruptcy court, that's

4    okay.  But if he's going to not have to do that, then I

5    think the debtor should be able to show up wherever he's

6    doing things and respond to the extent that he has a right

7    to do so.

8            MR. DESPINS:  Your Honor, the debtor and the

9    trustee are not on equal footing.  This concept that somehow

10   because we have the right to do it they should.  That's not

11   the way it works.

12           THE COURT:  Well, I was going to make that point.

13   The point is Mr. Despins is an independent third party who's

14   been appointed to run the -- administer the estate of Mr.

15   Kwok.

16           It's the language says in the second sentence to

17   the extent the debtor opposes the trustee's exercise of

18   authority, okay, the debtor shall be limited to seeking

19   relief from this court on notice to parties in interest to

20   the extent the debtor can show he has standing to do so.

21           And, unfortunately, given wherefor the debtor --

22   given what he's stated in all of his filings, and as we've

23   talked before, there is no evidence before this court, and

24   nothing in the record -- in fact, the only things in the

25   record support that the debtor will have no interest in this

1    estate because there won't be any -- a full payment to

2    creditors in this case.  And so there will not be any

3    surplus to which the debtor would have standing to raise

4    such arguments.

5            And if Mr. Despins does something outside of his

6    authority, then the debtor still has the right to make that

7    argument.  But he has to make it here in this court subject

8    to this court's authority over this estate.  And that's one

9    of the, you know, results of the appointment of a Chapter 11

10   trustee.

11           So, again, while I understand your argument, it

12   doesn't foreclose the debtor from opposing the trustee's

13   exercise of authority, but he has to do it in this court.

14           And so I'm going to overrule your objection to

15   paragraph 6.

16           MR. HENZY:  Thank you, Your Honor.

17           Just as an aside, just saying, the damage claim in

18   the UBS litigation in the U.K. is $500 million.  I have no

19   knowledge of the strength --

20           THE COURT:  That claim wasn't listed as an asset

21   of this estate, Mr. Henzy.

22           MR. HENZY:  Oh, no, it was.

23           THE COURT:  No.  It actually wasn't originally.

24           MR. HENZY:  I believe it was.

25           THE COURT:  No.  I think it was not.

1          MR. HENZY:  Okay.  I'll go -- I'll go back and

2     check, but I thought that it was.

3          But in any event, I don't -- I don't think the

4     debtor would dispute at all that to the extent that it

5     wasn't in the schedules, Your Honor, it should have been.

6     And I think the debtor absolutely --

7          THE COURT:  Well, maybe it was.  So let me just --

8     let me go back in the global notes which aren't really notes

9     -- which, again, there's no authority for any debtor, that

10    I'm aware of under the bankruptcy code, under case law,

11    under statute, under local rules, under the federal rules,

12    to file global notes to your -- to your schedules to disavow

13    what you say in your schedules under penalty of perjury.

14    I've never seen or heard of such a thing, but I understand

15    that's now becoming something that people do.

16         But that doesn't -- that doesn't mean that the

17    global notes have any bearing on whether or not Mr. Kwok

18    accurately completed his schedules.

19         All that being said, even if he did list it, it's

20    a $500 million claim with two other plaintiffs, correct?

21         MR. HENZY:  Yes, but --

22         THE COURT:   So it would be split three ways,

23    correct?

24         MR. HENZY:  Under --

25         THE COURT:  And the claim of -- the claim of PAX

1    that your client did put in his schedules, actually on a

2    schedule, is -- he listed it as not less than $254 million,

3    I believe, maybe it's 53.  I haven't looked at it recently.

4              But in any event, the solvency of your debtor, of

5    your client, is still very much at issue in this case.

6              MR. HENZY:  I don't -- I don't disagree with that

7    at all, Your Honor.

8              THE COURT:  Okay.

9              MR. HENZY:  I'm just pointing out that you're not

10   -- I have no idea of what the strength or weakness of the

11   claim in the U.K. is and what percentage --

12             THE COURT:  I understand.

13             MR. HENZY:  -- if that's so.

14             THE COURT:  But he'll have -- he'll have to come

15   back here and explain why he opposes the trustee's exercise

16   of authority.  And he'll be heard.

17             MR. HENZY:  Okay.  Understood.  My objection on --

18   I understood.

19             THE COURT:  Maybe.

20             MR. HENZY:  That objection's overruled.

21             THE COURT:  Depending upon if he has standing,

22   okay, at that point in time.

23             MR. HENZY:  Understood, Your Honor.

24             THE COURT:  So that -- so that, I overruled your

25   objection to paragraph 6, the language in paragraph 6 we

1    just discussed on the record.

2              MR. HENZY:  Thank you, Your Honor.

3              THE COURT:  So what is your next objection?

4              MR. HENZY:  The last objection is on paragraph 7.

5              THE COURT:  Okay.

6              MR. HENZY:  So this asks for an order where --

7    that provides that you request the assistance of foreign

8    courts, including the assistance of the BVI court regarding

9    any request of the trustee for relief with respect to the

10   trustee exercising corporate control over Genever BVI.

11             I would -- I'm absolutely not going to tell the

12   Court what it ought to be telling other judges, but I just

13   -- I think that is very, very broad.

14             And the way I read this is it would sort of give

15   Mr. Despins this court's impromatur to go in front of

16   another judge and say please give this to me -- and Judge

17   Manning tells you that you ought to give it to me, even if

18   you, Your Honor, don't know that -- what it is that he's

19   telling another judge that it is that he wants.

20             THE COURT:  Okay.

21             MR. DESPINS:  So, Your Honor, this type of

22   language is often used in the foreign, you know, foreign

23   representative context.

24             I'm happy -- obviously, you don't know me and you

25   may not be comfortable giving me a blank check and I don't

1    think this is a blank check -- but it's really an indication

2    to foreign courts that it may not be (indiscernible) as U.S.

3    courts that this court is requesting their assistance not to

4    do something illegal or inappropriate, but in requesting

5    their assistance.

6           That's kind of run of the mill language, but I was

7    always told never raise section 105 in front of Judge

8    Manning, so I'm not going to raise it.

9           But it's something along those lines.  So if you

10   -- I'm happy with it or without it.  I'd rather have it in,

11   but I'm not going to -- I don't want to put you in a

12   position where you don't feel 100 percent comfortable with

13   that.

14          THE COURT:  Well, I mean, I think that the section

15   in Chapter 15 -- you know, the whole purpose of Congress

16   making Chapter 15 part of the code in 2005 was to

17   acknowledge, you know, cross border cases and try to have

18   cooperation between the foreign courts and foreign

19   representatives.  Okay?

20          So I think we could -- we could say in furtherance

21   of the trustee's exercise of authority of this order, the

22   Court respectfully requests the assistance of foreign courts

23   with respect to the trustee's exercise of corporate control

24   over debtor entities, including Genever BVI.  I don't think

25   there's --

1          MR. DESPINS:  Absolutely.  Good point.

2          THE COURT:  -- any problem with that.  I mean.

3   And I think that it -- I mean, I think in the -- there have

4   been cases in this district where an order like that has

5   entered with regard to proceedings in other -- outside of

6   the United States.

7          So I don't -- I think I could change -- Mr.

8   Despins, do you have any problem -- I didn't write down

9   exactly what I just said --

10         MR. DESPINS:  No.

11         THE COURT:  -- but would the -- with the change

12  that I described?

13         MR. DESPINS:  We'll make that change, Your Honor,

14  if you want.

15         THE COURT:  Okay.

16         MR. DESPINS:  Or it's up to you.

17         MR. HENZY:  And, Your Honor, just for the record,

18  I am -- if the Court's comfortable with the language, I'm

19  not going to press an objection on that issue.

20         THE COURT:  All it's --

21         MR. HENZY:  Again, that --

22         THE COURT:  All it's asking for, and I believe is

23  appropriate, is that because Congress decided to make

24  Chapter 15 a separate and distinct chapter in the code that

25  they're trying to recognize the cooperation between courts

1    that might be necessary for a case in one jurisdiction to be

2    carried out with respect to related proceedings in another

3    jurisdiction outside of this country.

4            So I don't have a problem with it, with the

5    changes as I've just described them.

6            MR. HENZY:  Understood, Your Honor.

7            THE COURT:  Okay.

8            MR. DESPINS:  We'll make the change, Your Honor.

9            THE COURT:  Thank you.

10           MR. HENZY:  Last issue, Your Honor -- and I'm not

11   trying to go back and argue the --

12           MR. DESPINS:  I thought it was the -- that was the

13   last issue.

14           MR. HENZY:  There's one more.  I'm not -- I'm not

15   trying to go back.  On paragraph 3, so back on page 3, this

16   is the Harcus Parker letter, what this says is that the

17   debtor is directed to deliver no later than two business

18   days after the entry of this order.  Well, there's a couple

19   of issues with that, Your Honor.

20           The copy of the letter and the form attached as to

21   Exhibit B to what's in front of you has -- as I understand

22   it, that has not been agreed to by Harcus Parker.  So you're

23   kind of in some sense --

24           THE COURT:  I just have a question about that

25   though because Trustee Despins said that this is the letter

1    he got back from them, so how would they not agree to it?

2          MR. DESPINS:  It's a letter.  What I said is the

3    letter we got back from them with some minor changes that we

4    made.  But in the event, I'll deal with that, meaning if

5    they -- if they say -- I think the changes we made are --

6    and by the way, we did send them earlier today a -- the

7    changes we made, so they've seen them.  We haven't heard

8    back from them.

9          But if it's an issue, we'll fix it, meaning,

10   that's not Mr. Kwok's issue, meaning, we have the letter as

11   we submitted it to Your Honor and we'll see what they say.

12   And if it needs to be modified, we'll just file a

13   supplement.  It would be very, very -- a very minor change

14   really.

15         MR. HENZY:  I guess -- so I'm not clear if -- so

16   he's going to be -- Mr. Kwok's going to be ordered to sign a

17   letter that U.K. counsel may tell us is not acceptable.

18         I don't want to be in a situation where Mr.

19   Despins is negotiating for three days with the U.K. counsel

20   on what a letter might say and this says he has to sign --

21         THE COURT:  So I think what you're saying,

22   Attorney Henzy, is you just don't want the Court to enter

23   the order until you see the final version of the letter.  Is

24   that what you're saying?

25         MR. HENZY:  Or at least until there -- yes, until

1    there is a final version.  Yes, until there is -- right now,

2    as I understand it, there is no final version.

3            But then the second point is -- as I said earlier,

4    Mr. Kwok is not going to sign this letter.  This provides

5    that he must do so within two business days of whenever the

6    letter is actually finalized and complete.

7            And I just -- you know, I -- we will be filing an

8    appeal.  We will seek a state pending appeal.

9            I just -- I don't want Mr. Kwok to be in contempt

10   because he has not -- he has not signed this order.  I just

11   want -- so I just wanted to alert the Court.

12           I would -- I guess I don't know why there's a rush

13   of two business days.  I don't know what's going to happen

14   in two business days, you know, and why there couldn't be a

15   little longer period of time so that Mr. Kwok can get his

16   appeal filed and file whatever motion for stay pending

17   appeal he's going to file.

18           I just don't want to have an unnecessary fire

19   drill, Your Honor.  If the order ends up not being stayed

20   and he -- and he's not signing it, then whatever

21   consequences from that will flow from that.

22           But I don't -- I don't know how realistic it is

23   going to be that we're going to be able to get in front of

24   Your Honor within two business days on a motion for a stay

25   pending appeal.  That's all.

1          And, again, I don't -- I would ask that this be a

2     longer period than two days.

3          MR. DESPINS:  So, Your Honor, we -- I understand

4     your concern and I share your concern to be sure that the

5     changes we made were stylistic only.

6          But, you know, given where this is heading, we

7     should have precision.  So what we should do is -- I'm just

8     kind of thinking out loud here what's the best way to handle

9     this -- I mean, there will be a letter.  There should be a

10    final letter.

11         And maybe the order can provide that we will

12    provide the letter in the final form within X days and the

13    debtor will have Y days to -- to do it.  Y number of days to

14    do it.  And the letter will be substantially in the form

15    attached.  So we can submit an order that will address that

16    issue, that exact issue, Your Honor.

17         And understand that precision -- we shouldn't --

18    we should be careful about this and have more precision

19    rather than that.  I understand your point, Your Honor.

20         THE COURT:  Do you have any objection to extending

21    the two days to a longer period of time for the debtor?

22    He's not going to sign it, but I guess what he's saying is

23    he wants the -- he's going to be filing an appeal so -- I

24    don't --

25         MR. DESPINS:  Sure.

1          THE COURT:  I don't have an opinion either way.  I

2     was just asking you the question.

3          MR. DESPINS:  Your Honor -- and the answer is of

4     course.  I mean, whatever you, Your Honor, feels is a better

5     period of time we'll obviously go with that.

6          Generally we want to get the show on the road

7     regarding that claim, but two versus four days is not going

8     to, you know, break the bank.

9          THE COURT:  Mr. Henzy?

10          MR. HENZY:  I'd ask for five business days.  That

11     I don't -- I don't know when exactly this is all going to

12     happen.  I don't know what will be going on in my life.  I

13     don't know what will be going on with the Court.  I don't --

14     I don't think a day or two one way or another --

15          MR. DESPINS:  You know, five business days is

16     fine, Your Honor.  Thank you.

17          MR. HENZY:  I just --

18          THE COURT:  Five days did you say, Mr. Despins?

19     That's fine?

20          MR. DESPINS:  Yes, Your Honor.

21          THE COURT:  Okay.  Then there you go.  You've got

22     five days, Attorney Henzy.

23          MR. HENZY:  And, Your Honor, again, I -- because I

24     don't want to have parties, you know, pointing at me or

25     pointing at Mr. Kwok, I think this is going to be a mess,

1    okay, in terms of getting this letter done.

2          The Harcus Parker lawyer told me that a

3    prerequisite to her ever agreeing to do anything is that any

4    waiver by Mr. Kwok would have to be voluntary.  And this is

5    not going to be voluntary.

6          I'm not telling her what position she should take

7    based on that.  Mr. Kwok is not communicating with her.  So

8    I don't -- what her response to Mr. Kwok being ordered over

9    the objection to sending this letter, I, you know, that's

10   not my -- that's not my thing.  That's not Mr. Kwok's thing.

11   The U.K. lawyer is going to react however -- they going to

12   react however they react.  Okay?

13         MR. DESPINS:  I understand that, Your Honor.  And

14   the point is that there's a certain limit to what we're

15   going to allow these folks to dictate.

16         If they get a letter from someone regardless of

17   whether a court orders them to do it or not -- and by the

18   way, this is moot because he's saying he's not going to sign

19   the letter.  So, you know, we're arguing -- we're --

20         THE COURT:  Right.  He's not going to sign it

21   anyway.  Right.

22         MR. HENZY:  Well, but the -- there just may never

23   be a letter.  That's all.  I mean, at some point, I

24   understand --

25         THE COURT:  Oh, no.  I think there'll be a letter.

1    The point is your client's already stating he's not going to

2    sign it.  He's not.  He's already stating through you that

3    he's not going to comply with this court order.

4              MR. HENZY:  And, Your Honor --

5              THE COURT:  And it hasn't even entered yet, but

6    he's not going to comply with it.

7              MR. HENZY:  He's not going to voluntarily waive

8    his privilege, Your Honor, to the extent he has any.

9              But I think -- the point I'm trying to make is a

10   letter, I understand Mr. Despins at some point is going to

11   put a letter in front of you and that letter may not be

12   agreed to by the Harcus Parker firm.  That's all.  Because

13   the Harcus Parker --

14             THE COURT:  He's not going to put a letter in

15   front of me that's not agreed to by that firm.  They're the

16   ones that have prepared it.

17             MR. HENZY:  No, they haven't.

18             THE COURT:  They're the ones who have made the

19   final comments to it.

20             MR. HENZY:  Your Honor, I don't know what they're

21   going to do.  If they understand that the debtor is not

22   voluntarily waiving, they make take the position we're not

23   -- we're just not doing it.  Okay.  I don't know that, Your

24   Honor.

25             THE COURT:  Well, then, Mr. Despins will have to

1    deal with that.

2              MR. HENZY:  Okay.

3              THE COURT:  If he doesn't have a letter, then

4    there isn't any five days to worry about.  If he doesn't get

5    a letter from them, then you -- there's nothing -- then your

6    client won't be in violation of a court order because there

7    wouldn't be a letter --

8              MR. HENZY:  Okay.

9              THE COURT:  -- for him to have to sign to deliver

10   to them.

11             MR. DESPINS:  No.  Actually, Your Honor, I think

12   -- at one point we will need a letter from the debtor,

13   because otherwise these lawyers would just keep us in limbo.

14             What's going to happen is that if the debtor

15   refuses to sign the letter, we'll have a court order.  We'll

16   go to U.K. court.  It will cost a lot of money and all that,

17   but we'll go to the U.K. courts and seek relief from the

18   U.K. courts against these lawyers who are refusing to give

19   us access even if there's a letter from the debtor that says

20   you need to give them access.

21             But, again, I -- you know, we're arguing over a

22   letter that the debtor says we'll never -- they will never

23   sign anyway, so, you know, I think that's -- let's get to

24   that point first.

25             MR. HENZY:  I'm comfortable with the Court saying

1    if there's no -- if there's no letter the firm is agreeing

2    to there's nothing for the debtor to do.

3            MR. DESPINS:  No.  Your Honor, because that's

4    (indiscernible) --

5            THE COURT:  Well, that's not what I said.  I said

6    then the five days doesn't matter.

7            MR. HENZY:  Okay.

8            THE COURT:  If there's no letter, than the five

9    days doesn't matter.  That's what I said.  You asked for

10   more time.

11           MR. HENZY:  Yeah.  Yeah.

12           THE COURT:  He's agreed to more time.  Then you've

13   now said, what you've also said on many times during the --

14   during this day that your client's not going to sign the

15   letter.

16           MR. HENZY:  Yes.

17           THE COURT:  So I said if he's not going to sign

18   the letter, then he's going to be in violation of the court

19   order.

20           MR. HENZY:  I'm positing a situation where there

21   is not a letter that the firm in the U.K. has agreed to.

22   That's all.

23           MR. DESPINS:  And the firm in the U.K. cannot be

24   the ultimate arbiter of what happens in this case.  We've

25   given them a lot of leeway.

1           And Your Honor is not going to give a U.K. lawyer

2      control over privilege in this case.

3           So we're willing to work with them.  And we're

4      doing that.  But, you know, Mr. Henzy cannot use their

5      ability to derail the process as a defense for him, his

6      client, not signing the letter.

7           MR. HENZY:  I'm not using anything to derail the

8      process here, Your Honor.

9           Your Honor, if you -- I understand that if there

10     is a letter and you order -- whether the U.K. firm has

11     agreed to the letter or not, and you order Mr. Kwok to sign

12     that letter that his five days will start to run.  I

13     understand that.

14          MR. DESPINS:  That's all I'm asking.

15          And, Your Honor, we would propose to revise the

16     order to deal with the letter and all that.  So we will do

17     that if Your Honor will authorize us because we need to fix

18     the order.  You suggested better language elsewhere so we

19     need to do that and we will do that with your permission.

20          THE COURT:  Yes.  You have my permission to do

21     that.  And do you think you will get that order to the Court

22     tomorrow?

23          MR. DESPINS:  Yes, Your Honor.

24          THE COURT:  Okay.  Or Monday?

25          MR. DESPINS:  From our point of view, yes.  We

1   will do our best to do that, yes.

2              THE COURT:  Or Monday.

3              MR. HENZY:  Can I have some time -- I would like

4   some time just to review the order, Your Honor.

5              MR. DESPINS:  Yes.

6              MR. HENZY:  Okay.

7              THE COURT:  Well, we've just gone through what the

8   order is going to say.  We've gone through every paragraph

9   including every one of your objections, which were

10  overruled.  I've stated all the rulings on the record.

11             MR. HENZY:  I would like to just put eyes on the

12  order, Your Honor, just -- I'm not -- I completely trust Mr.

13  Despins, that he's going to accurately make the changes that

14  we talked about, but I just am in the practice of wanting to

15  see the final order.  That's all.  I'm not saying I'm going

16  to object to it or anything like that.

17             THE COURT:  But then if you disagree, we're going

18  to have another hearing.  That's what -- that's what you're

19  trying -- that's what you're saying.  You're saying you --

20  if something -- if something doesn't comport with what you

21  think it is, then we're going to have another hearing.

22  That's what you're saying.

23             MR. HENZY:  Yes.  But that's all because --

24             THE COURT:  Well, I'm not going to have another

25  hearing.  I've ruled.  I've ruled what the order's -- what

1    the order needs to say.  We've gone through it.

2            You just spent the time.  You said to me -- this

3    is what you said -- I asked you what your objections were to

4    the relief.  And I went back and I started with so you're

5    objecting about the fact that Mr. Despins didn't cite to

6    521.  And you said, no, no.  Let's go -- let's go through

7    the order.  Let's go through my original objections and

8    let's go through the order.  So that's what we just did.

9            We're not coming back to court on this.  This is

10   what we just did.

11           MR. HENZY:  So, Your Honor, what if -- what if --

12   what if the order that's submitted -- again, I am not

13   telling -- saying I think Mr. Despins is going to do this --

14   what if the order that's submitted is not consistent with

15   what's been on the record today?

16           THE COURT:  Then I'm not going to enter it.  I'm

17   going to read the order.

18           MR. HENZY:  I'm sorry, Your Honor.  I think it's

19   customary for all counsel to have an opportunity to review

20   an order before it's entered.  But I understand.

21           THE COURT:  But that's what we just did.  We just

22   spent the time that you would spend going over an order.

23           MR. HENZY:  I understand what the Court's saying.

24           THE COURT:  We just spent a substantial amount of

25   time, as a matter of fact, going through every paragraph in

1    the order.

2             MR. HENZY:  Your Honor, if you're ruling I'm not

3    going to have an opportunity to review the final order --

4             THE COURT:  Mr. Despins --

5             MR. HENZY:  -- then I understand the Court's --

6             THE COURT:  You know, I'm --

7             Mr. Despins, is your firm going to have --

8             This is what I would want everyone to do.  This is

9    how it's going to work out because we are not doing this on

10   a regular basis.

11            Mr. Despins, would you please send an email to the

12   courtroom deputy box, your firm will know and Mr. Linsey can

13   help you if necessary, with the order CC'ing all the

14   parties.

15            I'm not going to enter that order for some period

16   of time -- I don't know what -- but several hours probably.

17   Okay?  And then I'm going to enter the order.

18            I'm not going to have another hearing going

19   through the language of the order.  We just did that.

20            The only reason that that order will not enter is

21   if Mr. Despins wrote something like the Court has allowed me

22   to live in the courtroom.  Then I wouldn't enter that order.

23   Okay?  For many reasons.  It wouldn't be comfortable for him

24   anyway.

25            But that's the point.  We're not going to do this.

98

1    We've had -- this is the second hearing on this issue.  This

2    motion was filed on July 23rd.  It's August 4th.

3          Your client is no longer a debtor in possession.

4    Someone has to come to that realization.  Okay?  The trustee

5    has that authority to do what he's doing as I have just

6    ruled.

7          And that's -- we've gone through every paragraph

8    of the order and I have made rulings on those paragraphs.

9    And there are changes that will be made.  And so that's what

10   we're going to do.

11         Mr. Despins, your office or through Mr. Linsey

12   will send --

13         MR. DESPINS:  Yes.

14         THE COURT:  -- an email to the courtroom deputy

15   box in Bridgeport and indicate that the order -- this is the

16   order that has been prepared after the hearing on August 4th

17   with all the changes discussed on the record.  And you will

18   CC all the parties, including Mr. Henzy.

19         And then I will enter that order in due course

20   after some period of time.   But I am not having a further

21   hearing.  This hearing is concluded.

22         MR. DESPINS:  Understood, Your Honor.

23         THE COURT:  I have ruled.  Okay?

24         MR. DESPINS:  Your Honor, two housekeeping

25   matters.

1              THE COURT:  Yes.  Go right ahead.

2              MR. DESPINS:   Five minutes.  Okay.

3              First, we have suggested dates, but of course

4    subject to Your Honor's schedule for status conferences.

5              THE COURT:  Did you submit them to someone yet?

6              MR. DESPINS:  Actually, we have not.

7              THE COURT:  Okay.

8              MR. DESPINS:  So you're absolutely right.  That's

9    tabled.  Let's table.  We were going to post them.  I don't

10   know if my colleague has the ability to put that up on Zoom,

11   the potential suggested dates.

12             Or you know what, Your Honor, let's circulate.

13   We'll table that.  Let's circulate those dates.  We'll come

14   back to Your Honor about that.

15             THE COURT:  Okay.

16             MR. DESPINS:  Apologies.  You're absolutely right.

17   We should --

18             THE COURT:  And you can communicate to the

19   courtroom deputy about those suggested dates through the

20   email box and CC everybody so everybody knows this is what

21   you're suggesting.

22             MR. DESPINS:  Will do.

23             THE COURT:  Okay?

24             MR. DESPINS:  Will do, Your Honor.

25             Next item I want to raise is we've had a meet and

1    confer with the debtor's counsel regarding the Rule 2004

2    discovery on the issue of discovery of professionals, like

3    lawyers. And that issue is going to be a problem in the

4    sense that they -- their view is that we don't have access

5    to the -- at least the way it was articulated to me, that we

6    don't have access to the privilege documents when the debtor

7    -- with respect to assets of the debtor or assets we think

8    should be the debtor's such as the Lady May or Sherry-

9    Netherland because the debtor believes they're not assets

10    and, therefore, they would be invading his privilege to go

11    after these documents.

12        So the reason I'm telling you this -- I'm not --

13    because I'm not asking you to rule on this, but we need to

14    tee that up sooner rather than later because they want to

15    tee it up 30 days after they receive the subpoena which

16    would get us into September/October.

17        There's a clear issue here which is an issue of

18    what privilege the trustee succeeds to.  And I think the

19    case law is clear that when dealing with assets of the

20    estate, either assets that are already in the estate or

21    assets that there is a claim they belong to the estate, such

22    as the Lady May and the Sherry-Netherland, that the trustee

23    have access to privileged communications regarding these

24    assets, or with respect to administration of the case, for

25    example, preparation of schedules by Brown Rudnick.

1        I'm not asking you to rule, but we need to tee

2    that up.  And we're not going to do that now, but we want to

3    tell you we're going to ask for a date earlier than 30 days

4    after the service of subpoena because that could bring us to

5    September or October.

6            So that's an issue that's out there.

7            The last issue, Your Honor, is, you know, you've

8    asked us, you raised this issue of conflict before and we

9    left it the other day.  And you said, hey, people need to be

10   attuned to this.

11           But this meet and confer just made us or my

12   partners realize that the issue is not a Zeisler issue.  The

13   issue is that a target of the trustee's investigation, which

14   is his son, the debtor's son, is paying for the fees of

15   counsel.

16           It's impossible for counsel to be adverse or to

17   think in any way adverse to somebody paying their fees.

18   It's theoretically possible, but I wouldn't hold anyone to

19   that standard.

20           So we're not asking -- there's no punch line here

21   where we're saying we're asking you to disqualify Zeisler.

22   I don't think it's Zeisler issue.

23           I think that it is very difficult for any firm

24   that represents the debtor, that has duties to the estate,

25   to be paid by the targets of the trustee's claims.  And the

1   harm here, that's the Sherry-Netherland, Bravo Luck, et

2   cetera.

3           And so, you know, again, I don't have a punch

4   line.  We're still thinking about it, but I wanted to -- we

5   have a duty to relay the issue to the Court.

6           I don't want somebody weeks from now to say you

7   sat on this.  Really, that's the issue, is the payment of

8   fees by a target of the investigation to debtor's counsel.

9   That is all, Your Honor.

10          THE COURT:  Okay.  Thank you.

11          MR. DESPINS:  That's all we have.

12          MR. HENZY:  May I be heard, Your Honor?

13          THE COURT:  Yes.

14          MR. HENZY:  Thank you.

15          On the 2004, I don't know why that's coming up

16  now.  We're talking about 2004 versus having been entered.

17          As to the objection date to the 2004 motions that

18  were filed hasn't even come up.  It's tomorrow.  So we're

19  talking about 2004 orders that haven't entered and subpoenas

20  that haven't issued.  I don't know how that's going to play

21  out, but right now it's interesting to preview it I suppose,

22  but I have no idea how that's going to play out.

23          On my firm's conflict issue, if Mr. Despins wants

24  to file a motion disqualifying my firm, he should do that.

25  Any party wants to file a motion to disqualify my firm, they

1    should do that.

2            If the Court believes my firm should be

3    disqualified, then the Court should take whatever action the

4    Court deems necessary.

5            But other than that, I'm not going to -- I'm not

6    going to think about it and I'm not going to talk about it.

7    I'm going to represent my client.

8            All the facts are out there.  If somebody thinks

9    there's a problem, they should -- they should do that.

10           I said this at the hearing the other day.  This

11   should not being used as  (indiscernible) sword against my

12   firm or against Mr. Kwok.  So either file your motion or

13   just leave it alone.

14           THE COURT:  All right.  Anything further from

15   anyone this afternoon?

16           MR. DESPINS:  No, Your Honor.  Thank you.

17           THE COURT:  Okay.  Thank you.

18           Then the -- so that the record is clear, the

19   trustee's motion for order extending deadline to file

20   notices of removal is granted and the proposed order will

21   enter.

22           The motion for order confirming that the Chapter

23   11 Trustee holds all of the debtor's economic and corporate

24   governance rights in debtor controlled entities authorizing

25   Chapter 11 trustee to act in any foreign country on behalf

1    of the estate and granting related relief is granted for the

2    reasons stated on the record with an order to be submitted

3    by trustee's counsel on notice to all other parties who will

4    be -- receive a copy of that when it's submitted to the

5    Court.  And then the Court will review it and enter it after

6    the fact.

7              Okay?  All right.  Thank you, all.  This is the

8    last matter on the calendar, so court is adjourned.

9              ALL COUNSEL:  Thank you, Your Honor.

10        (Proceedings concluded at 4:35 p.m.)

11

12

13             I, CHRISTINE FIORE, court-approved transcriber and

14   certified electronic reporter and transcriber, certify that

15   the foregoing is a correct transcript from the official

16   electronic sound recording of the proceedings in the above-

17   entitled matter.

18

19             *Christine Fiore*

20   _____        August 12, 2022

21        Christine Fiore, CERT

22        Transcriber

23

24

25

1                              INDEX

2


3    TRUSTEE EXHIBITS:                                    PAGE

4    A-G          Attachments to Trustee's motion        33

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Form ntcflgtrbk

# UNITED STATES BANKRUPTCY COURT
## District of Connecticut

In    Ho Wan Kwok
Re:   Debtor(s)

Case No.: 22–50073

### NOTICE OF FILING OF TRANSCRIPT
### AND OF DEADLINES TO RESTRICTIONS AND REDACTION

A transcript of the proceeding held on August 4, 2022 was filed on August 12, 2022. The following deadlines apply:

The parties have until seven (7) calendar days from the date of filing of the transcript to file with the court a *Notice of Intent to Request Redaction* of this transcript. The deadline for filing a *request for redaction* is 21 days from the date of filing of the transcript.

If a request for redaction is filed, the redacted transcript is due 31 days from the date of filing of the transcript.

If no such notice is filed, the transcript may be made available for remote electronic access upon expiration of the restriction period, which is 90 calendar days from the date of filing of the transcript unless extended by court order.

To review the transcript for redaction purposes, you may purchase a copy from the transcriber or you may view the document at the clerk's office public terminal.

Dated: August 15, 2022

Pietro Cicolini
Clerk of Court

United States Bankruptcy Court
District of Connecticut
915 Lafayette Boulevard
Bridgeport, CT 06604

Tel. (203) 579–5808
VCIS* (866) 222–8029
* Voice Case Information System
http://www.ctb.uscourts.gov
Form ntctrbk

# Notice Recipients

| | | |
|---|---|---|
| District/Off: 0205–5 | User: admin | Date Created: 8/15/2022 |
| Case: 22–50073 | Form ID: ntctrbk | Total: 69 |

**Recipients submitted to the BNC (Bankruptcy Noticing Center) without an address:**

| | |
|---|---|
| 20 | Pacific Alliance Asia Opportunity Fund L.P. |
| cr | Zheng Wu |
| 20 | Rui Ma |
| 20 | Weican Meng |
| intp | Golden Spring (New York) LTD |
| crcm | Official Committee of Unsecured Creditors |
| intp | HK International Funds Investments (USA) Limited, LLC |
| intp | Mei Guo |
| cr | Baosheng Guo |
| cr | Yan Zhao |
| cr | Ning Ye |
| cr | Chong Shen Raphanella |
| cr | Xiaodan Wang |
| cr | Rong Zhang |
| aty | Michael S. Weinstein |
| aty | Cohn Birnbaum & Shea, P.C. |

TOTAL: 16

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| ust | U. S. Trustee | USTPRegion02.NH.ECF@USDOJ.GOV |
| tr | Luc A. Despins | lucdespins@paulhastings.com |
| aty | Aaron Romney | aromney@zeislaw.com |
| aty | Aaron A Mitchell | aaron@lmesq.com |
| aty | Annecca H. Smith | asmith@rc.com |
| aty | Avram Emmanuel Luft | aviluft@paulhastings.com |
| aty | Carollynn H.G. Callari | ccallari@callaripartners.com |
| aty | David S. Forsh | dforsh@callaripartners.com |
| aty | David V. Harbach, II | dharbach@omm.com |
| aty | Douglas S. Skalka | dskalka@npmlaw.com |
| aty | Douglass E. Barron | douglassbarron@paulhastings.com |
| aty | Eric A. Henzy | ehenzy@zeislaw.com |
| aty | G. Alexander Bongartz | alexbongartz@paulhastings.com |
| aty | Holley L. Claiborn | holley.l.claiborn@usdoj.gov |
| aty | Irve J. Goldman | igoldman@pullcom.com |
| aty | James C. Graham | jgraham@npmlaw.com |
| aty | James M. Moriarty | jmoriarty@zeislaw.com |
| aty | Jay Marshall Wolman | jmw@randazza.com |
| aty | John L. Cesaroni | jcesaroni@zeislaw.com |
| aty | Jonathan Kaplan | jkaplan@pullcom.com |
| aty | Kristin B. Mayhew | kmayhew@mdmc–law.com |
| aty | Laura Aronsson | laronsson@omm.com |
| aty | Luc A. Despins | lucdespins@paulhastings.com |
| aty | Lucas Bennett Rocklin | lrocklin@npmlaw.com |
| aty | Mia N. Gonzalez | mgonzalez@omm.com |
| aty | Michael S. Weinstein | mweinstein@golenbock.com |
| aty | Nicholas A. Bassett | nicholasbassett@paulhastings.com |
| aty | Patrick M. Birney | pbirney@rc.com |
| aty | Patrick R. Linsey | plinsey@npmlaw.com |
| aty | Peter Friedman | pfriedman@omm.com |
| aty | Peter J. Zarella | pzarella@mdmc–law.com |
| aty | Sara Pahlavan | spahlavan@omm.com |
| aty | Scott D. Rosen | srosen@cb–shea.com |
| aty | Stephen M. Kindseth | skindseth@zeislaw.com |
| aty | Stuart M. Sarnoff | ssarnoff@omm.com |
| aty | Thomas J. Sansone | tsansone@carmodylaw.com |
| aty | Timothy D. Miltenberger | Tmiltenberger@cbshealaw.com |
| aty | Tristan G. Axelrod | taxelrod@brownrudnick.com |
| aty | William R. Baldiga | wbaldiga@brownrudnick.com |

TOTAL: 39

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | | | |
|---|---|---|---|---|---|
| db | Ho Wan Kwok | 373 Taconic Road | Greenwich, CT 06831 | | |
| cr | Logan Cheng | c/o Randazza Legal Group, PLLC | 100 Pearl Street | 14th Floor | Hartford, CT 06103 |
| ca | Stretto | 410 Exchange, Suite 100 | Irvine, CA 92602 | | |
| dbaty | Brown Rudnick LLP | One Financial Center | Boston, MA 02111 | | |
| crcm | Pullman & Comley, LLC | 850 Main Street | Bridgeport, CT 06601 | | |

| | | | |
|---|---|---|---|
| 20 | Huizhen Wang     c/o TroyGould PC     1801 Century Park East, 16th Floor     Attn: Christopher A. Lilly     Los Angeles, CA 90067–2367 | | |
| cr | Chao–Chih Chiu     c/o TroyGould PC     1801 Century Park East, 16th Floor     Attn: Christopher A. Lilly     Los Angeles, CA 90067–2367 | | |
| cr | Yunxia Wu     c/o TroyGould PC     1801 Century Park East, 16th Floor     Attn: Christopher A. Lilly     Los Angeles, CA 90067 | | |
| cr | Keyi Zilkie     c/o TroyGould PC     1801 Century Park East, 16th Floor     Attn: Christopher A. Lilly     Los Angeles, CA 90067 | | |
| intp | Yongbing Zhang     223 West Jackson Bl;vd. #1012     Chicago, IL 60606 | | |
| cr | Brown Rudnick LLP     One Financial Center     Boston, MA 02111 | | |
| cr | Verdolino & Lowey, P.C.     124 Washington Street     Foxborough, MA 02035 | | |
| aty | Luc A. Despins     Paul Hastings LLP     200 Park Avenue     New York, NY 10166 | | |
| aty | Steven E. Mackey     Office of the U.S. Trustee     The Giaimo Federal Building     150 Court Street, Room 302     New Haven, CT 06510 | | |

TOTAL: 14