UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re:                                                                        Chapter 11

RUDOLPH W. GIULIANI                                           Case No: 23-12055
a/k/a Rudolph William Giuliani,

                                              Debtor.
-------------------------------------------------------X

**DEBTOR'S RENEWED MOTION FOR AN ORDER MODIFYING THE AUTOMATIC
STAY FOR THE LIMITED PURPOSE OF ALLOWING THE DEBTOR TO PROCEED
WITH PROSECUTING AND PERFECTING THE FREEMAN APPEAL BEFORE THE
D.C. CIRCUIT**

TO:    THE HONORABLE SEAN H. LANE
       UNITED STATES BANKRUPTCY JUDGE

      Rudolph W. Giuliani, the Debtor and Debtor-in-Possession herein (the "Debtor"), by and

through his attorneys, Berger, Fischoff, Shumer, Wexler & Goodman, LLP, as and for their

renewed motion for an order pursuant to Section 362(d) of the Bankruptcy Code, modifying the

automatic stay for the limited purpose of allowing the Debtor to take the steps necessary, in the

case of *Freeman et al. v. Giuliani*, Case No. 1:21-cv-03354-BAH (United States District Court

for the District of Columbia) (the "Freeman Case"), to prosecute and perfect his appeal to the

United States Court of Appeals for the D.C. Circuit, represents as follows:

      1.     On December 21, 2023 (the "Petition Date"), the Debtor filed his voluntary

petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy

Code").

      2.     The Debtor continues to be in possession and management of his assets and is

managing as a debtor and debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

## JURISDICTION AND VENUE

3.        This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this

proceeding and this Motion are proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.        The statutory basis for the relief sought in this Motion is 11 U.S.C. §§ 105, 362,

and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

5.        On December 15, 2023, a jury verdict was entered against Debtor in the Freeman

Case in excess of $148 million, which subsequently led Debtor to commence this bankruptcy

case.

6.        By Order dated February 20, 2024, ECF 124, this Court modified the automatic

stay in this case solely (a) to allow the Debtor and the plaintiffs in the Freeman case to litigate

post-trial motions in the district court in the Freeman case, and (b) to allow the Debtor to file a

Notice of Appeal with respect to the Appeal. The Appeal otherwise remains stayed.

7.        On March 20, 2024, the Debtor filed a renewed motion for judgment as a matter

of law in the Freeman Case.

8.        On April 15, 2024, the District Court in the Freeman Case entered a

Memorandum Opinion and an Order denying the Debtor's post-trial motions (the "Post-trial

Denial Order").

## THE PRIOR
## APPLICATION FOR THIS RELIEF

9.        On April 26, 2024, the Debtor filed his motion, ECF 195, to lift the automatic

stay, so that the Debtor can perfect and prosecute the appeal from the final judgment in the

Freeman case to the United States Court of Appeals for the District of Columbia Circuit (the

"Appeal").

10.     The Court denied that motion, "without prejudice to renewal in light of changed

circumstances." ECF 230 ¶ 1.  Since then, the Debtor respectfully submits, circumstances have

changed in two respects, as follows:

a.     *First*, this renewed motion assumes that the Court has held, or will hold,

that (a) the Judgment in *Freeman v. Giuliani* is entitled to collateral estoppel effect in this case,

and therefore (b) the debt embodied in the Freeman Judgment is not dischargeable.  The Debtor

respectfully submits that such holdings constitute changed circumstances.  As shown below in

connection with the Debtor's arguments regarding the *Sonnax* factors, these holdings—in

particular, the grant of collateral estoppel—open the door to the Appeal.

b.     *Second*, the Debtor has made a showing that the Appeal has merit.  The

Creditors Committee and the Freeman Parties opposed the prior motion on the ground, among

others, that the Appeal would be a waste of time and dilatory in that the Appeal lacked merit.

The Court itself asked questions regarding the merits of the Appeal.  The Debtor has now

provided the Court with a preliminary appellant's brief, which, the Debtor respectfully submits,

shows that the Appeal has merit and provides a changed circumstance.  *See* Exhibit A (previously

filed at ECF 250-1).

### THE *SONNAX* FACTORS
### WARRANT A LIFTING OF THE STAY
### TO ALLOW THE DEBTOR TO PROSECUTE THE APPEAL

11.     Bankruptcy Code Section 362(d) sets forth the general standard for obtaining

relief from the automatic stay. This provision provides, "on request of a party in interest and after

notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of

this section, such as by terminating, annulling, modifying, or conditioning such stay...for

cause...."

12.    11 U.S.C. § 362(d)(1) provides, in pertinent part, that the Court "shall grant relief

from the [automatic] stay . . . "for cause[.]"  When determining whether "cause" exists, courts in

this Circuit examine the twelve *Sonnax* factors, set forth and analyzed below.  *See Sonnax*

*Industries, Inc. v. Tri Component Products Corp.*, 907 F.2d 1280, 1286 (2d Cir. 1990).  "Not all

of the *Sonnax* factors are relevant in every case," *In re Sterling*, 2018 WL 313085, at *5 (Bankr.

S.D.N.Y. Jan. 5, 2018) (Lane, J.), and they do not carry equal weight.  *See, e.g., In re Lyondell*

*Chem. Co.*, 402 B.R. 596, 609 (Bankr. S.D.N.Y. 2009).  "[C]ause is a broad and flexible concept

that must be determined on a case-by-case basis." *In re Sterling*, 2018 WL 313085, at *5.

13.    The moving party—here, the Debtor—has the initial burden of showing "cause."

Upon such a *prima facie* showing, the burden shifts to the non-moving parties—here, the

Freeman Plaintiffs and the Creditors Committee—to establish their need for continued stay

protection. *Sonnax Industries, Inc.*, 907 F.2d at 1285.

14.    Here, upon examination of the *Sonnax* factors, the Court should lift the stay and

allow the Debtor to prosecute the Appeal.  Thus:

**Factor 1—Whether relief would result in a partial or complete resolution of the issues**:

15.    This factor weighs heavily in favor of lifting the stay.  The massive Freeman

Judgment caused the Debtor to file this case in the first place.  Reversal of that judgment would

provide a complete resolution, or at a minimum, a partial resolution, of the issues.

16.    On the Appeal, the Debtor has strong arguments for reversal.  The Debtor

provides two examples here:

17.     <u>First example</u>: The Freeman Parties did not establish "actual malice" by clear and convincing evidence, as was their burden.  A holding that the Freeman Parties failed to establish actual malice, by clear and convincing evidence, would result in the dismissal of the Freeman action, and would therefore achieve complete resolution of the issues for *Sonnax* purposes.  *See* Exhibit A at 5-13; 14-16.

18.     <u>Second example</u>: The Freeman Parties did not make the showing required to win *any* punitive damages.  District of Columbia law required the Freeman Parties to prove, by clear and convincing evidence, that the Debtor published defamatory statements with "common-law malice," defined as spite, ill will or the like, toward the Freeman Parties.  At trial, however, the Freeman Parties utterly failed to prove such common-law malice.  On the contrary, as Plaintiff Moss testified at trial, the Debtor "didn't know me from a hole in the wall."  Such testimony deals a fatal blow to the claim for punitive damages.  *See* Exhibit A at 25-31.  Reversal on this ground would eliminate liability for $75 million in punitive damages, and would therefore achieve partial resolution of the issues for *Sonnax* purposes.

19.     The Creditors Committee and the Freeman Parties previously opposed the lifting of the stay, arguing that the Appeal "seems unlikely to be successful (given the proceedings before the D.C. District Court[;])" ECF 205 at 11; *id.* at 15 ("questionable merits"); *id.* at 15-16 (contending that "the Debtor has offered no evidence that the D.C. Circuit would . . . render a ruling favorable to the Debtor or impactful or [sic; on?] his other creditors[]"); *id.* at 16 ("unlikely to succeed").

20.     Since that filing, however, the Debtor has submitted to the Court a preliminary appellant's brief (*see* Exhibit A), which shows that the Debtor has numerous, meritorious arguments on appeal, and that the Freeman district court committed numerous reversible errors.

Indeed, the Freeman district court did not even articulate the correct test for actual malice, [Exhibit A at 6], much less correctly apply it. The court did not even instruct the jury on the substantive law of punitive damages or the clear-and-convincing standard of proof. *See* Exhibit A at 25-31. To the extent that this Court, when deciding the current Application, will examine the merits of Appeal, the Debtor respectfully directs the Court to the preliminary appellant's brief. Exhibit A.

21.     The Creditors Committee and the Freeman Parties also opposed the lifting of the stay, arguing that the Court should not allow the Debtor "to re-litigate the Freeman Judgment[.]" ECF 205 at 15; *see also id.* at 11 ("reopening and relitigating issues in the Freeman litigation"); *id.* ("re-litigating the Freeman litigation"). This contention, however, betrays a fundamental misunderstanding of the applicable law, especially in a First Amendment case.

22.     An appeal is not a "re-litigation." It is, rather, a proceeding in a new, higher court, which decides whether the lower court correctly decided the case. "Appellate review plays a central role in assuring the accuracy of decisions." *Gelb v. Royal Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986).

23.     In a First Amendment case, moreover, the appellate court applies a robust and searching standard of review—a standard even more robust and searching than the usual *de novo* standard: The appellate court "has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984) (cleaned up). When making that examination, the Court "will reexamine the evidentiary basis on which th[e] conclusions [of the lower court] are founded[.]" *Id.* at 509-10 (cleaned up).[1]

---

[1] The creditors previously [ECF 205 at 10-11] cited *In re Residential Capital, LLC*, arguing that reversal on appeal

**Factor 2—Lack of any connection with or interference with the bankruptcy case:**

24.     This factor weighs heavily in favor of lifting the stay.  Assuming that the Court

holds that the debt embodied in the Freeman Judgment is not dischargeable, the Appeal would

not interfere with this bankruptcy case.  That debt will no longer be capable of resolution in this

bankruptcy case.  The Freeman parties will have the right to seek enforcement outside the

bankruptcy case.  The Debtor, therefore, should have the right to take steps to stave off such

enforcement, by appealing.  The Debtor does not, and will not, seek a stay of this case pending

resolution of the appeal.  This proceeding would continue unimpeded, while the appeal occurs.

25.     *McDowell v. Stein*, 415 B.R. 584 (S.D. Fla. 2009), is instructive.  There, a New

York trial court entered judgment against a defendant, who filed appeals in New York and then

filed a Chapter 11 case in Florida.  The bankruptcy court gave collateral estoppel effect to

determinations made by the New York trial court.  The bankruptcy court also held that the debt

embodied in the trial-court judgment was not dischargeable.

26.     On appeal, the district court affirmed and then remanded to the bankruptcy court,

stating: "I encourage the Bankruptcy Court to allow the New York Appeals to move forward by

lifting the automatic stay."  *Id.* at 600.  Similarly, here, once the Court grants collateral estoppel,

and holds the Freemen debt non-dischargeable, the Court should lift the stay to allow the Appeal,

which would not interfere with the bankruptcy case.

27.     *In re Residential Capital, LLC*, 2012 WL 3555584 (Bankr. S.D.N.Y. Aug. 12,

2012), cited by the creditors, (ECF 205 at 11), is not remotely on point.  That case involved a

---

would not be immediate.  2012 WL 3249641, at *4 (Bankr. S.D.N.Y. August 7, 2012).  There, however, the cases
outside the bankruptcy court were "in their initial stages, with little or no discovery having taken place. . . . There
has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims,
counterclaims or defenses.  Discovery, trial preparation and, absent a settlement, trial all remain to be done." *Id.*
Here, by contrast, the trial-court proceedings are finished, leaving only an appeal, which the Debtor can, and will,
seek to expedite.

creditor who sought stay relief to litigate a damages action against the debtor. The court, not

surprisingly, denied that relief, which would have allowed the movant to "jump to the head of the

line" and "could [have] open[ed] the flood gates for" other creditors to seek the same. *Id.* at *1-

3. Here, by contrast, the Debtor (not a creditor) seeks relief to eliminate or reduce a claim

against the estate (not to establish a claim against the Debtor). And the "floodgates" concern

does not arise.

### Factor 3—whether the other proceeding involves the debtor as a fiduciary:

28.     This factor does not apply in this case. The Court should give it no weight, one

way or the other.

### Factor 4—whether a specialized tribunal with the necessary expertise<br>has been established to hear the cause of action.

29.     This factor weighs heavily in favor of lifting the stay. An appellate court, like the

D.C. Circuit, is a specialized tribunal. It decides only one type of case—appeals—and it

indisputably has expertise in appellate decision-making. *See, e.g., In re Horizon Women's Care*

*Prof. LLC*, 506 B.R. 553, 559 (Bankr. D. Colo. 2014) ("The Colorado Court of Appeals is a

specialized tribunal").

30.     The D.C. Circuit, furthermore, sitting in diversity, is the proper court in which to

decide issues of defamation, and compensatory and punitive damages, arising under D.C. law.

*See e.g., Sterling*, 2018 WL 313085, at *5 ("The state court clearly has the expertise to address

the foreclosure issues[]"); *In re HBL SNF, LLC*, 635 B.R. 725, 735 (Bankr. S.D.N.Y. 2022)

(similar holding; Lane, J.); *In re Lyondell Chem. Co.*, 402 B.R. 596, 609 (Bankr. S.D.N.Y. 2009)

("New Jersey's appellate courts have an expertise in New Jersey law under which the underlying

judgment was entered, even if they don't have the very specialized expertise that an

administrative agency would[]"); *In re Birmingham Cosmetic Surgery, P.L.L.C.*, 2015 WL

1038801, at *3 (Bankr. E.D. Mich. March 5, 2015) (allowing debtor's appeal; applying *Sonnax*

factors; "Michigan Court of Appeals is a tribunal experienced in the resolution of medical

malpractice actions.")

**Factor 5—whether the Debtor's insurer has assumed full responsibility for defending it**:

31.     This factor, applied by analogy here, weighs heavily in favor of lifting the stay.

The Giuliani Defense fund will pay special counsel's fees and expenses on the Appeal.  That

fund, therefore, while technically not an insurance company, functions like one for *Sonnax*

purposes, holding the Debtor's estate harmless.  *In re Birmingham;* 2015 WL 1038801, at *3

(allowing debtor to pursue an appeal of pre-petition judgment where "insurer will pay the appeal

costs[;]" applying *Sonnax* factors).  Accordingly, there is no merit to the creditors' objection that

the Appeal "will drain the Debtor's limited resources and deplete his assets available for

distribution to creditors."  ECF 205 at 10.

**Factor 6—whether the action primarily involves third-parties**.

32.     This factor weighs against lifting the stay.  The Court, however, should give it

little weight where, as here, the Court has held, or will hold, the Freeman debt non-

dischargeable.  In due course, the Freeman Parties will pursue enforcement of their judgment, as

the functional equivalents of third-parties, without regard to their status as parties-in-interest.

**Factor 7—whether litigation in another forum would prejudice
the interests of other creditors**:

33.     This factor weighs heavily in favor of lifting the stay.  The interests of the

creditors—other than the Freeman Parties—would be served, rather than prejudiced, by the

Appeal.  It is perfectly obvious that the other creditors would benefit from appellate dismissal of

the Freeman action, or from an appellate decision that decreases the Freeman Parties' claim

(even though the Creditors' Committee, in its thinly-veiled zeal to punish and impoverish the

Debtor, refuses to acknowledge the obvious). *In re Metz*, 165 B.R. 769, 772 (Bankr. E.D.N.Y. 1994) ("the benefit will be a reduction of [a party's] claim such that it will be eliminated if debtor prevails upon appeal[]"); *In re Bogdanovich*, 2000 WL 1708163, at *5 (S.D.N.Y. Nov. 14, 2000) (affirming order lifting stay; "[t]he result of [debtors'] appeal could even be a judgment finding no liability against the debtors, in which event . . . relief may be foreclosed to the plaintiffs.") The benefit to the other creditors is especially obvious where, as here, special counsel will prosecute the appeal without depleting assets of the estate; special counsel will be paid by the Giuliani Defense fund.

34.    To date, the Creditors Committee and the Freeman Parties have found common interests in attacking the Debtor for alleged administrative flaws, such as late or incomplete monthly operating reports, insufficient disclosures, etc. *See, e.g.,* ECF 205 at 3 & n.2 ("leaves his creditors and this Court largely in the dark[]"). The Appeal, however, exposes the conflicting interests here. When it comes down to the recovery of money, how can the Creditors Committee credibly object to the prosecution of the Appeal where, as here, the Appeal will or may eliminate or drastically reduce the largest claim against the estate? That question deserves an answer.

**Factor 8—Whether the judgment claim arising from
the other action is subject to equitable subordination**:

35.    This factor does not apply in this case. The Court should give it no weight, one way or the other.

**Factor 9—Whether movant's success in the other proceeding
would result in a judicial lien avoidable by the debtor**:

36.    This factor does not apply in this case, as the creditors previously conceded. *See* ECF 205 at 13. The Court should give it no weight, one way or the other.

### Factor 10—the interests of judicial economy and
### the expeditious and economical resolution of litigation:

37.     This factor weighs heavily in favor of lifting the stay. Courts, including this

Court, recognize a simple reality: A bankruptcy court's interest in judicial economy is served

when some other court decides disputed issues. *See, e.g., In re Sterling*, 2018 WL 313085, at *5;

*In re HBL SNF LLC*, 635 B.R. 725, 735 (Bankr. S.D.N.Y. 2022) ("judicial economy weighs in

favor of granting stay relief because the state court is an appropriate forum for the foreclosure to

be litigated.") (Lane, J.) That is especially so where, as here, resolution of the case in another

court may result in dismissal of the Freeman Parties' claim and therefore "may alleviate the need

for any further proceedings" in this Court regarding those claims. *In re Sterling*, 2018 WL

313085, at *5 (cleaned up).

38.     The Appeal, furthermore, will be economical; the Debtor will not deplete estate

assets to prosecute it. The Debtor, finally, will do what he can to expedite the Appeal; he will

move in the D.C. Circuit to expedite the Appeal, and he already has a major head-start on the

time needed for brief-writing.

39.     The creditors' prior objection based on delay carries little weight now that Court

has held, or will hold, that the Freeman debt is not dischargeable. The Freeman Parties can, and

no doubt will, pursue the Debtor, to collect on the Judgment, after the completion of this Chapter

11 case. The Appeal therefore may just as well start now, while the Chapter 11 case proceeds

simultaneously. *In re Birmingham,* 2015 WL 1038801, at *3 (allowing debtor to pursue appeal

of pre-petition judgment; applying *Sonnax* factors; "the appeal will not delay the bankruptcy

cases and promotes judicial efficiency: Debtors' jointly administered cases will proceed

concurrently with the appeal.") As a logical matter, neither delays the other. As a practical

matter, the Court can be sure that the creditors will continue their dogged policing of the Debtor's "delays."

40.    This leaves the creditors' prior objection, sprinkled throughout the prior filing, ECF 205, that the Appeal will "distract" the Debtor from his Chapter 11 activities. This superficial contention, however, ignores reality. The appellate work will be done by special counsel, not the Debtor personally or his Chapter 11 counsel, who will remain free to work on the Chapter 11 issues. Indeed, one of the very purposes of a special counsel is to undertake a specific activity precisely so that a debtor and his Chapter 11 counsel need not devote time and attention to that activity.

41.    In short, have no fear: The Debtor will not be spending time in a law library or combing the trial record in search of errors.

**Factor 11—Whether the parties are ready for trial in the other proceeding**:

42.    Reading "trial" as "appeal," this factor weighs heavily in favor of lifting the stay. The Debtor is ready for the Appeal. Indeed, proposed special counsel has already researched and drafted a preliminary brief, which counsel can and will finalize in short order. *Cf. In re Kemble*, 776 F.2d 802, 807 (9th Cir. 1985) (holding that "prior extensive preparation" for a trial "made proceeding with that trial efficient. The decision to lift the stay could be upheld on this ground alone.")

**Factor 12—Impact of the stay on the parties and the balance of harms**:

43.    This factor weighs heavily in favor of lifting the stay. The stay has thus far had a major adverse impact on the Debtor—and a major, favorable impact on the Freeman Parties. The Court should balance the scales.

44.    It was the Freeman Judgment that drove the Debtor to file for bankruptcy in the

first place. Since that filing, the stay has prohibited the Debtor from exercising his statutory right

to appeal. Thus, the harm imposed by the massive—but deeply flawed—Freeman Judgment

remains in place, and the stay prevents the Debtor from seeking vindication, despite his

meritorious arguments for reversal.

45.    The Freeman Parties, furthermore, sought—and for purposes of this renewed

Application, the Debtor assumes that the Freeman Parties won, or will win—an order that the

debt owed to them is non-dischargeable. The Freeman Parties invoked this Court's equity

powers, contending that the Debtor is collaterally estopped from relitigating here the issues

decided against him in the District of Columbia. *CBF Industria de Gusa S/A/ v. AMCI*

*Holdings, Inc.*, 850 F.3d 58, 77-78 (2d Cir. 2017) (collateral estoppel is an "equitable

doctrine[]"). The Freeman Parties thereby opened the door to the Appeal; the Court should apply

collateral estoppel equitably—on condition that the Debtor may exercise his right to appeal.

46.    Collateral estoppel and appeal go hand in hand. "The doctrine of collateral

estoppel represents a choice between the competing values of correctness, uniformity, and

repose. . . . Appellate review plays a central role in assuring the accuracy of decisions. Thus,

although failure to appeal does not prevent preclusion, [citations omitted], *inability to obtain*

*appellate review*, or the lack of such review once an appeal is taken, *does prevent preclusion*."

*Gelb v. Royal Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986) (emphasis added).

47.    Here, because of the bankruptcy stay, the Debtor has an inability to obtain

appellate review of the Freeman Judgment. Accordingly, when the Court applies collateral

estoppel in favor of the Freeman parties, the Court should also lift the stay to allow the Debtor to

appeal. *Cf. Overall v. Estate of Klotz*, 52 F.3d 398, 404 (2d Cir. 1995) (a party "who seeks equity

must do equity"). The Court should not allow the Freeman Parties to have it both ways—
enjoying the benefits of collateral estoppel, and the resulting non-dischargeability, without its
burdens—an appellate test of the Judgment, to "assur[e] the accuracy of" that Judgment. *Gelb*,
798 F.2d at 44.

48.      Prosecution of the Appeal, furthermore, would impose no harm on the Freeman
Parties—or at least, no legally-cognizable harm.  The stay has thus far had a major impact on the
Freeman Parties—in their favor, protecting them from an appellate test of their case.  The
Freeman Plaintiffs hold an enormous judgment against the Debtor.  They will have won non-
dischargeability, and with that, the ability to pursue the Debtor long after this case terminates.
Viewing the situation objectively, and balancing the impact of the stay, the harms and the
equities, it is not asking too much to require the Freeman Parties to defend their Judgment in the
D.C. Circuit.  "To deny relief from stay would leave the [Freeman v. Giuliani] issues unresolved
because this Court cannot deal with them . . . .  There can be no benefit to any party to have this
last issue in the [D.C.] litigation continue to be unresolved."  *In re Horizon*, 506 B.R. at 559.

49.      Finally, the creditors previously argued that the Appeal would prejudice the
Freeman Parties "because the Debtor would be authorized to appeal without posting the security
required by the Federal Rules of Civil Procedure."  ECF 205 at 13; *see also id*. at 15 (referring to
"bond requirements").  This contention is nonsense.  Nothing in the Rules "require[s]" the
posting of security; an appellant is perfectly free to appeal without posting security.

50.      To be sure, under Rule 62(b), the posting of security works a stay of enforcement,
pending appeal.  An appellant, however, may also obtain such a stay by court order.  *See* Rule
62(g); Fed. R. App. P 8(a).  A Court of Appeals would likely grant a stay where, as here, the

appellant shows the likelihood of success on the merits of the appeal and irreparable injury arising from the forced sale of real property. *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

51.   **Conclusion**: For the foregoing reasons, in light of the *Sonnax* factors, the Court should find that "cause" exists for lifting the stay. At the very least, the Debtor carried his initial, prima facie burden. The creditors must therefore show that they require continued stay protection.

## RELIEF REQUESTED

52.   Pursuant to Section 362(c) of the Bankruptcy Code, the Debtor requests an order modifying the automatic stay for the limited purpose of allowing the Debtor to prosecute and perfect the Appeal.

## CONCLUSION

53.   Based upon the foregoing, the Debtor respectfully requests that this Court enter an order modifying the automatic stay solely authorizing the relief requested above with respect to the Appeal.

Dated: Syosset, New York
June 26, 2024

BERGER, FISCHOFF, SHUMER,
WEXLER & GOODMAN, LLP
*Attorneys for the Debtor*


 */s/ Gary C. Fischoff*
Gary C. Fischoff, Esq.
6901 Jericho Turnpike, Suite 230
Syosset, New York 11791