**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **RUDOLPH W. GIULIANI** | : | **Case No. 23-12055 (SHL)** |
| **a/k/a RUDOLPH WILLIAM GIULIANI,** | : | |
| | : | |
| Debtor. | : | |

-------------------------------------------------------------x

### DECLARATION OF DAVID F. HILL, IV IN SUPPORT OF THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER: (I) COMPELLING THE DEBTOR AND CERTAIN RELATED PARTIES TO PRODUCE DOCUMENTS IN RESPONSE TO THE COMMITTEE'S REQUESTS FOR THE PRODUCTION OF DOCUMENTS, (II) HOLDING THEM IN CONTEMPT AND (III) GRANTING SANCTIONS, AND AFFIRMATION OF GOOD FAITH PURSUANT TO LOCAL BANKRUPTCY RULE 7007-1

Under 28 U.S.C. § 1746, I, David F. Hill, IV, declare as follows under the penalty of perjury:

1.      I am an attorney admitted to practice in the State of New York and in the United States District Court for the Southern District of New York.

2.      I am a counsel at the firm of Akin Gump Strauss Hauer & Feld LLP ("Akin").  Akin maintains offices at, among other places, One Bryant Park, New York, New York 10036.  There are no disciplinary proceedings pending against me.

3.      I am duly authorized to make this declaration on behalf of the Official Committee of Unsecured Creditors (the "Committee") in support of the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order: (I) Compelling the Debtor and Certain Related Parties to Produce Documents in Response to the Committee's Requests for the Production of Documents, (II) Holding Them in Contempt and (III) Granting Sanctions* (the "Motion"), filed contemporaneously herewith.

4.     I affirm that, in accordance with Local Bankruptcy Rule 7007-1, the Committee has made numerous good faith attempts to resolve the issues raised by the Motion by conferring with the Debtor, the Debtor Related Entities[1] and Maria Ryan ("Ryan") (collectively, the "Non-Producing Parties"), including through telephone calls, emails and the discovery conference held by this Court on June 17, 2024 (the "Discovery Conference").  I am familiar with the facts set forth herein, which are based on my personal knowledge or information provided to me by other attorneys at Akin, and are true and correct to the best of my knowledge,

5.     On March 7, 2024, the Committee filed the *Motion of the Official Committee of Unsecured Creditors for the Entry of an Order Pursuant to Bankruptcy Code Section 105 and Federal Rule of Bankruptcy Procedure 2004 Authorizing Discovery of the Debtor and Third Parties* [Docket No. 140] (the "Rule 2004 Motion").  Following the April 4, 2024 hearing on the Rule 2004 Motion, I spoke with the Debtor's counsel, Gary Fischoff and Heath Berger, of Berger, Fischoff, Shumer, Wexler & Goodman, LLP ("BFS"), on April 8, 2024 concerning the proposed order granting the Rule 2004 Motion.  During that call, the Debtor's counsel requested that the deadline for the Debtor and Debtor Related Entities be extended to May 24, 2024 and agreed to accept service of the Committee's forthcoming Rule 2004 requests.  The Committee agreed to the Debtor's request, as memorialized by email correspondence attached hereto as **Exhibit 1**.  The Court subsequently entered the *Order Granting Motion of the Official Committee of Unsecured Creditors for the Entry of an Order Pursuant to Bankruptcy Code Section 105 and Federal Rule of Bankruptcy Procedure 2004 Authorizing Discovery of the Debtor and Third Parties* [Docket No. 164] (the "Rule 2004 Order").

---

[1]     "Debtor Related Entities" means Giuliani Partners, LLC; Giuliani Communications, LLC; Giuliani Security & Safety, LLC; Giuliani Group, LLC; Giuliani & Company, LLC and WorldCapital Payroll Corporation.

6.       Pursuant to the Rule 2004 Order, on April 19, 2024, the Committee issued and served various *Requests for the Production of Documents* upon the Debtor and Debtor Related Entities.  The Debtor was served through his counsel, and the Debtor Related Entities were duly served via subpoena and process.

7.       Attached hereto as **Exhibit 2** is a true and correct copy of an April 19, 2024 email from Jeff Latov, a counsel at Akin, to Gary Fischoff and Heath Berger of BFS.  Attached hereto as **Exhibit 3** is a true and correct copy of the *Notice of the Official Committee of Unsecured Creditors' Bankruptcy Rule 2004 Examination of Rudolph W. Giuliani* attached to Mr. Latov's April 19, 2024 email.

8.       Attached hereto as **Exhibit 4** is a true and correct copy of the *Subpoena for Rule 2004 Examination* and the attached *Requests for the Production of Documents*, dated April 19, 2024*,* issued by the Committee for Giuliani Communications, LLC.  Attached hereto as **Exhibit 5** is a true and correct copy of the Affidavit of Service, dated April 19, 2024, confirming service of the *Subpoena for Rule 2004 Examination* and the attached *Requests for the Production of Documents* upon Giuliani Communications, LLC.

9.       Attached hereto as **Exhibit 6** is a true and correct copy of the *Subpoena for Rule 2004 Examination* and the attached *Requests for the Production of Documents*, dated April 19, 2024*,* issued by the Committee for Giuliani & Company, LLC.  Attached hereto as **Exhibit 7** is a true and correct copy of the Affidavit of Service, dated April 19, 2024, confirming service of the *Subpoena for Rule 2004 Examination* and the attached *Requests for the Production of Documents* upon Giuliani & Company, LLC.

10.      Attached hereto as **Exhibit 8** is a true and correct copy of the *Subpoena for Rule 2004 Examination* and the attached *Requests for the Production of Documents*, dated April 19,

2024, issued by the Committee for Giuliani Group, LLC.  Attached hereto as **Exhibit 9** is a true and correct copy of the Affidavit of Service, dated April 19, 2024, confirming service of the *Subpoena for Rule 2004 Examination* and the attached *Requests for the Production of Documents* upon Giuliani Group, LLC.

11.      Attached hereto as **Exhibit 10** is a true and correct copy of the *Subpoena for Rule 2004 Examination* and the attached *Requests for the Production of Documents*, dated April 19, 2024, issued by the Committee for Giuliani Partners, LLC.  Attached hereto as **Exhibit 11** is a true and correct copy of the Affidavit of Service, dated April 19, 2024, confirming service of the *Subpoena for Rule 2004 Examination* and the attached *Requests for the Production of Documents* upon Giuliani Partners, LLC.

12.      Attached hereto as **Exhibit 12** is a true and correct copy of the *Subpoena for Rule 2004 Examination* and the attached *Requests for the Production of Documents*, dated April 19, 2024, issued by the Committee for Giuliani Security & Safety, LLC.  Attached hereto as **Exhibit 13** is a true and correct copy of the Affidavit of Service, dated April 19, 2024, confirming service of the *Subpoena for Rule 2004 Examination* and the attached *Requests for the Production of Documents* upon Giuliani Security & Safety, LLC.

13.      Attached hereto as **Exhibit 14** is a true and correct copy of the *Subpoena for Rule 2004 Examination* and the *Requests for the Production of Documents*, dated April 19, 2024, issued by the Committee for WorldCapital Payroll Corporation.  Attached hereto as **Exhibit 15** is a true and correct copy of the of the Affidavit of Service, dated April 19, 2024, confirming service of the *Subpoena for Rule 2004 Examination* and the attached *Requests for the Production of Documents* upon WorldCapital Payroll Corporation.

14.     Pursuant to the Rule 2004 Order, on May 10, 2024, the Committee issued *Requests for the Production of Documents* to Ryan.  Attached hereto as **Exhibit 16** is a true and correct copy of the *Subpoena for Rule 2004 Examination* and the attached *Requests for the Production of Documents*, dated May 10, 2024, issued by the Committee for Ryan.

15.     On May 14, 2024, the Committee served the *Requests for the Production of Documents* upon Ryan via subpoena and process.  She was directed by the terms of the Rule 2004 Order to respond to the requests and to complete her document production within 21 calendar days of service.  Because Ryan was served on May 14, 2024, her deadline to provide any response or objection to the requests was June 4, 2024.  Attached hereto as **Exhibit 17** is a true and correct copy of the Affidavit of Service, dated May 17, 2024, confirming service of the *Subpoena for Rule 2004 Examination* and the attached *Requests for the Production of Documents* upon Ryan.

16.     In addition to the affidavit of service, the process server, Evan Balash, provided a photograph that he took of Ryan, which is attached hereto as **Exhibit 18**.  Attached hereto as **Exhibit 19** is a screen capture of Ryan from a May 12, 2024 episode of the Debtor's *Uncovering the Truth* show on YouTube.  *See* Rudy W. Giuliani, *Uncovering the Truth*, YouTube (May 12, 2024) *https://www.youtube.com/watch?v=YrgvVoULqz4* (last viewed June 28, 2024).

17.     The deadline for the Debtor and Debtor Related Entities' production, as agreed by the Debtor and ordered by the Court, was May 24, 2024.  On April 30, 2024, as a result of concerns from the Committee that the Debtor and Debtor Related Entities had not yet produced any documents despite an agreement to begin production of priority requests, I emailed the Debtor's counsel to reiterate the May 24, 2024 production deadline.  Following this, the Debtor made two limited productions, totaling 15 documents, on May 6 and May 8, 2024, respectively.  The Debtor related entities made no productions.  On June 6, 2024, after the Debtor and Debtor Related Entity

production deadline had passed, I attempted to meet and confer with Gary Fischoff and Heath Berger of BFS again in an effort to obtain the Debtor's belated compliance with the Rule 2004 Order.  Receiving no response, on June 10, 2024, I contacted the Court's Chambers to schedule the Discovery Conference, which was held on June 17, 2024.  This request also received no response from Debtor's counsel.  Following the Discovery Conference, having still heard nothing from Debtor's counsel regarding the Debtor's and Debtor Related Entities' intent to comply with their respective discovery obligations, I emailed the Debtor's counsel on June 21, 2024 noting (i) the Committee's intention to file the Motion and (ii) that the Court will hold a hearing on the Motion on July 10, 2024.  Attached hereto as **Exhibit 20** is a true and correct copy of email correspondence from April 30, 2024 through June 21, 2024 between Akin and BFS.  As of the filing of the Motion, I have still not received a response from Debtor's counsel.

18.     On June 5, 2024, I emailed Ryan, noting that she failed to respond to the Committee's subpoena prior to the June 4, 2024 deadline and requesting that she respond immediately to discuss compliance with the subpoena.  Receiving no response, I followed up again on June 7, 2024.  On the morning of the Discovery Conference, June 17, 2024, Ryan responded and denied having been served.  Ryan subsequently failed to attend the Discovery Conference, despite having received notice.  On June 21, 2024, the Committee contacted Ryan noting (i) the Committee's intention to file this Motion on June 28, 2024 and (ii) that the Court will hold a hearing on the Motion on July 10, 2024.  Attached hereto as **Exhibit 21** is a true and correct copy of email correspondence from June 5, 2024 through to June 21, 2024 between Akin and Ryan.

19.     Immediately prior to the Discovery Conference on June 17, 2024, the Debtor provided the Committee with a contract between the Debtor and Frankspeech, Inc., dated June 8, 2024, which lists Ryan and Giuliani Communications, LLC, as contractors.  Attached hereto as

**<u>Exhibit 22</u>** is a true and correct copy of the contract between the Debtor and Frankspeech, Inc., dated June 8, 2024.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on June 28, 2024, in New York, New York.


Respectfully submitted,

*/s/ David F. Hill, IV*
David F. Hill, IV

## **<u>EXHIBIT 1</u>**

**April 8, 2024 through April 9, 2024**
**Email Correspondence Between Akin and BFS**

## Hill, David

| | |
|---|---|
| **From:** | Hill, David |
| **Sent:** | Tuesday, April 9, 2024 3:08 PM |
| **To:** | Gary Fischoff; Heath Berger |
| **Cc:** | Qureshi, Abid; Biblo Block, Rachel; Danovitch, Amelia; Latov, Jeff |
| **Subject:** | RE: RWG - Rule 2004 Order |
| **Attachments:** | RWG - Revised Proposed 2004 Order.docx |

Heath and Gary,

Thanks for the call.  Confirming that Monday 4/15 at 10 am EST will work on our end for the Debtor's initial deposition.  We will make the necessary arrangements and revert.  With respect to the order, we have changed the initial deposition date to 4/15 and changed the document completion date as requested to 5/24.  We will get the order on file shortly.

David

**David F. Hill IV**

**Akin**

Direct: +1 212.872.1039 | Internal: 31039
Pronouns: he/him/his (What's this?)

---

**From:** Hill, David
**Sent:** Tuesday, April 9, 2024 9:58 AM
**To:** 'Gary Fischoff' <gfischoff@bfslawfirm.com>; 'Heath Berger' <hberger@bfslawfirm.com>
**Cc:** Qureshi, Abid <aqureshi@AkinGump.com>; Biblo Block, Rachel <rbibloblock@akingump.com>; Danovitch, Amelia <adanovitch@akingump.com>; Latov, Jeff <jlatov@akingump.com>
**Subject:** RE: RWG - Rule 2004 Order

Heath and Gary,

Following up on our call yesterday, I understand that you will be getting back to us this afternoon on the order and dates.  With respect to the Debtor's initial deposition, we had discussed the afternoon of either 4/15 or 4/16.  If both of those dates are still available, our preference would be the afternoon of 4/15 but can make 4/16 work if not.

Thanks,
        David

**David F. Hill IV**

**Akin**

Direct: +1 212.872.1039 | Internal: 31039
Pronouns: he/him/his (What's this?)

---

**From:** Hill, David
**Sent:** Monday, April 8, 2024 12:08 AM
**To:** Gary Fischoff <gfischoff@bfslawfirm.com>; 'Heath Berger' <hberger@bfslawfirm.com>
**Cc:** Qureshi, Abid <aqureshi@AkinGump.com>; Biblo Block, Rachel <rbibloblock@akingump.com>; Danovitch, Amelia

<[adanovitch@akingump.com](mailto:adanovitch@akingump.com)>; Latov, Jeff <[jlatov@akingump.com](mailto:jlatov@akingump.com)>
**Subject:** RWG - Rule 2004 Order

Gary and Heath,

As suggested by the Court at the hearing, please find attached a revised Rule 2004 order and a redline to our prior version. Please let us know if you would like to discuss before we submit it early this week.

Thanks,

David

**David F. Hill IV**
**Akin**

One Bryant Park | New York, NY 10036-6745 | USA | Direct: +1 212.872.1039 | Internal: 31039
Fax: +1 212.872.1002 | [dhill@akingump.com](mailto:dhill@akingump.com) | akingump.com | Bio
Pronouns: he/him/his (What's this?)

## **EXHIBIT 2**

**April 19, 2024 Email from Akin to BFS**

## Hill, David

| | |
|---|---|
| **From:** | Latov, Jeff |
| **Sent:** | Friday, April 19, 2024 3:43 PM |
| **To:** | hberger@bfslawfirm.com; gfischoff@bfslawfirm.com |
| **Cc:** | Qureshi, Abid; Dublin, Philip; Biblo Block, Rachel; Hill, David; Danovitch, Amelia |
| **Subject:** | RWG - Rule 2004 Requests |
| **Attachments:** | RWG - 2004 Requests - Debtor.pdf |

Gary and Heath,

Please see attached for the Committee's Rule 2004 requests for documents from the Debtor.

Regards,
Jeff

**Jeff Latov**
**Akin**
One Bryant Park **|** New York, NY 10036-6745 **|** USA **|** Direct: +1 212.872.8088 **|** Internal: 38088
Fax: +1 212.872.1002 **|** jlatov@akingump.com **|** akingump.com **|** Bio

**EXHIBIT 3**

**Notice of the Committee's Rule 2004 Examination of the Debtor,
attaching Requests for the Production of Documents, dated April 19, 2024**

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 872-1000
Facsimile: (214) 969-1002

*Counsel to the Official Committee of*
*Unsecured Creditors of Rudolph W. Giuliani*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **RUDOLPH W. GIULIANI** | : | **Case No. 23-12055 (SHL)** |
| **a/k/a RUDOLPH WILLIAM GIULIANI,** | : | |
| | : | |
| **Debtor.** | : | |

-------------------------------------------------------------x

### NOTICE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' BANKRUPTCY RULE 2004 EXAMINATION OF RUDOLPH W. GIULIANI

Please take notice that, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of Rudolph W. Giuliani a/k/a Rudolph William Giuliani ("Giuliani" or the "Debtor") submits the following requests for the production of documents (the "Requests," and each individually a "Request") (attached hereto as **Exhibit A**) to Giuliani.  The Committee requests that Giuliani respond to these Requests by producing documents and electronic information immediately, and on a rolling basis until complete, delivering all such responsive materials to the

undersigned counsel.  The production of all responsive materials shall be completed by May 24,

2024.  The Committee reserves the right to serve additional requests at a later time.

Dated:  April 19, 2024                    Respectfully submitted,
        New York, NY

                                          By: *Abid Qureshi*_____

                                          **AKIN GUMP STRAUSS HAUER & FELD LLP**
                                          Ira S. Dizengoff
                                          Philip C. Dublin
                                          Abid Qureshi
                                          One Bryant Park
                                          New York, New York 10036
                                          Tel:    (212) 872-1000
                                          Fax:    (212) 872-1002
                                          Email:  idizengoff@akingump.com
                                                  pdublin@akingump.com
                                                  aqureshi@akingump.com

                                          *- and -*

                                          Rachel Biblo Block (admitted *pro hac vice*)
                                          2300 N. Field St., Suite 1800
                                          Dallas, Texas 75201
                                          Tel:    (214) 969-2800
                                          Fax:    (214) 969-4343
                                          Email:  rbibloblock@akingump.com

                                          *Counsel to the Official Committee of*
                                          *Unsecured Creditors of Rudolph W. Giuliani*

## EXHIBIT A

## DEFINITIONS

The following Requests incorporate by reference the definitions and rules of construction set forth in Local Civil Rule 26.3 of the Southern District of New York, as incorporated by Local Rule 2004-1 of the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and any other applicable law or rules.  For the purposes of these Requests, the following definitions shall apply whether or not such term is capitalized.  Unless otherwise defined herein, all words and phrases shall be accorded their usual meaning and shall be interpreted broadly to encompass all facts and information that could otherwise be construed to fall outside their scope.

1.      The term "*Account*" shall mean any arrangement or agreement by which one or more Persons accepts one or more Persons' Assets to hold on behalf of that Person, including but not limited to savings accounts, checking accounts, money market accounts, Certificate of Deposit accounts, brokerage accounts, currency accounts, Cryptocurrency accounts, commodities, commodities futures accounts, trust accounts, bailments, custodial agreements, safe deposit boxes, arrangements or agreements by which Assets are stored and any other accounts held with a financial institution.  For the avoidance of doubt, this includes, but is not limited, to any Accounts or other repositories of Assets, including storage units identified on any of the Schedules and Statements.

2.      The term "*ACH Documentation*" shall mean any authorization of or consent to Payment that permits a Person to transfer financial assets from another Person's Account.

3.      The term "*Affiliate*" or "*Affiliates*" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

4.      The term "*Agent*" shall mean any Person or entity and their Professionals acting for or on behalf of another Person or entity.

5.       The terms "*all*," "*any*" and "*each*" shall each be construed as encompassing any and all of these terms.

6.       The term "*America's Mayor Live*" shall mean Giuliani's video livestream that is owned by Giuliani Communications, LLC, and distributed on platforms including, but not limited to, YouTube, Gettr, Facebook and Instagram.

7.       The connectives "*and*" and "*or*" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents, Communications or responses that might otherwise be construed to be outside of its scope.

8.       The term "*Assets*" shall mean both real assets and intangible assets, including Real Property (whether owned or leased), fixtures, facilities, businesses, business lines, intellectual property, goodwill, contracts, rights to recover under any insurance policy, causes of action, inventory, cash, Cryptocurrency, Cryptocurrency Wallets, cash equivalents, commodities, commodities futures, precious metals, jewelry, watches, furniture, wine, art, firearms, Domain Names, oil and gas leases, mineral rights, automobiles, watercraft, boats, helicopters and any other thing of value.

9.       The term "*Biden Litigation*" shall refer to *Biden v. Giuliani*, United States District Court for the District of Columbia, No. 2:23-cv-08032, the suit filed by Robert Hunter Biden against You, Giuliani Partners, Giuliani Group, Giuliani Security & Safety and Your counsel Robert J. Costello for violations of federal and state computer fraud and abuse statutes and for unfair competition via their alleged unauthorized access to and dissemination of Biden's private digital data.

10.    The term "*Common Sense*" shall mean Your audio podcast that is owned by Giuliani Communications, LLC and distributed on platforms including, but not limited to, YouTube, Rumble and Spike.

11.    The term "*Communication*" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, email messages, text messages, Bloomberg messages, chat messages, Instant Bloomberg chat messages, Social Media messages or other messaging platforms, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, video tapes, photographs, microfilm, microfiche, magnetic disks or other media of any kind.

12.    The term "*concerning*" shall mean relating to (however remotely), referring to, describing, evidencing or constituting.

13.    The term "*Corporate Records*" shall include articles of association, company bylaws, articles of incorporation, founding documents, partnership agreements, limited liability company agreements, management agreements, meeting minutes, board presentations, policies and resolutions, records of material transactions, approvals of material contracts, records of sale, purchase of real estate, annual reports, trust agreements, accounting and any other Document concerning an entity's organization or material activities.

14.    The term "*Credit Documents*" shall mean any Documents concerning any application or request for an extension of credit of any kind including, but not limited to, mortgages, personal loans, lines of credit and credit cards.  For the avoidance of doubt, this includes, but is not limited to, the following types of Documents:  (a) W-2 forms; (b) pay stubs;

(c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) residential rental Payment histories; (i) other Tax Documents; and (j) any other Document submitted in connection with an application for an extension of credit.

15.     The term "***Cryptocurrency***" shall mean any digital or virtual currency or medium of exchange secured by or otherwise utilizing cryptography.

16.     The term "***Cryptocurrency Wallet***" shall mean any device, physical medium, program, app, service, software or anything similar that stores private keys for Cryptocurrency or Cryptocurrency transactions, whether encrypted or otherwise.

17.     The terms "***Debtor***" or "***Giuliani***" shall mean the Person who filed a petition for chapter 11 relief in the case of *In re Rudolph W. Giuliani*, No. 23-12055 (Bankr. S.D.N.Y.) and who goes by the name of Rudolph W. Giuliani, Rudolph William Giuliani, Rudolph Giuliani, Rudy Giuliani or any other variation of the Debtor's name, including any alter egos, Persons who have apparent authority over the Debtor, Agents of the Debtor and Professionals of the Debtor.

18.     The term "***Debtor Related Entity***" shall refer to and include the following Persons, each as defined herein, and including without limitation any trade names, assumed names or previously registered names:

- Giuliani Partners, LLC

- Giuliani Communications, LLC

- Giuliani Security & Safety, LLC

- Giuliani Group, LLC

- Giuliani & Company, LLC

- Rudolph W. Giuliani, PLLC

- WorldCapital Payroll Corporation

- Giuliani Media, LLC

19.    The term "***Debtor Related Person***" shall refer to and include the following Persons,

each as defined herein:

- Andrew Giuliani

- James Menges

- Joseph Ricci

- Michael Ragusa

- Robert Kiger

- Ryan Medrano

- Ted Goodman

- Lisa Osofsky

- Robert Costello

- John Huvane

20.    The term "***Deposit Ticket***" shall mean any Document evidencing a deposit of

financial assets to a bank or financial institution with information including, *inter alia*, the date,

the name of the depositor, the depositor's Account number and the value of the assets being

deposited.

21.    The term "***Document***" is defined to be synonymous in meaning and equal in scope

to the usage of the term "documents or electronically stored information" in Federal Rule of Civil

Procedure 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts,

photographs, sound recordings, images, electronically stored information and other data or data

compilations.  This includes documents stored in any medium from which information can be

obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including but not limited to emails, texts, chats, spreadsheets and PowerPoint presentations.  A draft or non-identical copy is a separate document within the meaning of this term.

22.     The term "*Domain Name*" shall mean any sequence of alphanumeric characters that forms all or part of the corresponding internet addresses.

23.     The term "*Dominion Litigation*" shall refer to *US Dominion, Inc., et al. v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-00213-CJN, the suit filed against You by Dominion Voting Systems, who seeks $1.3 billion in damages for harm caused by Your statements about the 2020 presidential election.

24.     The term "*Dunphy Litigation*" shall refer to *Dunphy vs. Giuliani, et al.*, New York Supreme Court, Index No. 650033 / 2023, the suit filed against You, Giuliani Partners, Giuliani Group and Giuliani Security & Safety by Your former employee, Noelle Dunphy, who seeks $10 million in damages for unpaid wages and sexual harassment experienced in her course of employment.

25.     The term "*Financial Records*" shall include any Document or Communication that contains or summarizes information about any Person's or entity's financial activities or condition of the Debtor including, but not limited to, information about the Assets, balance sheets, budgets, cash flow, earnings, revenue, Gifts, Payments, Transfers in Assets or interests, Tax Documents, Credit Documents, Mortgage Documents, QuickBooks files and books and records containing any of the above maintained in the ordinary course of business.

26.     The term "*Freeman Litigation*" shall refer to *Freeman v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-03354-BAH, the defamation trial

regarding Your defamatory statements about two Georgia 2020 election workers that led U.S. District Judge Beryl A. Howell of the District of Columbia to enter a $148 million default judgment against You.

27.     The term "***Gift***" shall mean any voluntary or involuntary Transfer of an Asset ***not*** made in exchange for any promise, service, product or other Asset.  For the avoidance of doubt, "Gift" shall be construed to encompass any engagement rings, other jewelry and things of value exchanged between you and any Person in connection with any marriage proposal.

28.     The term "***Giuliani Defense Fund***" shall refer to and include The Rudy Giuliani Freedom Fund Legal Defense Trust Fund, Giuliani Defense or any other entity paying, subsidizing or reimbursing legal costs, expenses, judgments, sanctions, monetary awards or penalties incurred or issued in connection with any civil, criminal or bankruptcy proceeding involving You, including, without limitation, the Freeman Litigation, the Biden Litigation, the Dunphy Litigation and the Dominion Litigation.

29.     The term "***including***" shall mean "including, but not limited to."

30.     The term "***Media Outlet***" or "***Media Outlets***" means any person, group or entity purporting to provide information via any distribution channel, including, but not limited to, cable television, radio, podcasts and YouTube.

31.     The term "***Money Order***" shall mean any prepaid Negotiable Instrument or certificate issued by a government or financial institution that requires the issuer to pay a certain sum of money on demand to a Person.

32.     The term "***Mortgage Documents***" shall include any Documents concerning any application or request for a line of credit secured by a mortgage on any residential or commercial Real Property, including but not limited to:  (a) W-2 forms; (b) pay stubs; (c) income tax returns;

(d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) copies of the purchase and sale agreement; (i) deeds of trust; (j) residential rental Payment histories; (k) other Tax Documents; and (l) any other Document submitted in connection with the above.

33.     The term "*Negotiable Instrument*" shall include any unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it (a) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (b) is payable on demand or at a definite time; and (c) does not state any other undertaking or instruction by the person promising or ordering Payment to do any act in addition to the Payment of money, and any similar instrument.

34.     The term "*Paycheck Protection Program*" shall refer to the business loan program established by the United States government in 2020 through the Coronavirus Aid, Relief and Economic Security Act to assist certain businesses with continuing to pay their employees.

35.     The term "*Payment*" shall mean any voluntary or involuntary Transfer in exchange for any service, product or other Asset, whether previously provided, provided contemporaneously with the Transfer or to be provided in the future, and whether or not such service, product or other Asset was or will be provided to the Person making or causing the Payment to be made.

36.     The term "*Person*" shall mean any natural person or any legal entity, unincorporated association or group of individuals or legal entities, whether formally or informally established, and their Affiliates and Professionals, including, without limitation, any business or governmental entity or association.

37.     The term "*Petition Date*" shall mean December 21, 2023.

38.     The term "*Professional*" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation, any attorneys, accountants, consultants (including independent consultants), independent contractors, advisors and testifying or non-testifying experts.

39.     The term "*Real Property*" shall have the meaning ascribed to the term in section 102 of the New York Real Property Tax Law.

40.     The term "*Schedules and Statements*" shall mean any and all schedules and statements filed by the Debtor, including, without limitation, Schedule A/B; Schedule C; Schedule D; Schedule G; Schedule I, Schedule J, Summary of Assets and Liabilities; Schedule of Executory Contracts and Statement of Financial Affairs and any amendments or supplements to any of the foregoing.

41.     The term "*Social Media*" shall mean any forum, website, application, or other platform on which persons can create, transmit, share, communicate, or comment upon any information, ideas, or opinions, or otherwise engage in social networking, including but not limited to: Twitter, Rumble, Gab, MeWe, Periscope, Facebook, Discord, Reddit, Imgur, SnapChat, Instagram, Google+, 4chan, 8chan, Tumblr, Youtube, LinkedIn, Flikr, Reddit, Quora, Disquis, Slack, Whisper, Yik Yak, Medium, WordPress, WeChat and instant messaging services such as Signal, WhatsApp, Facebook Messenger, Hangouts, Skype, Line, KakaoTalk, Telegram and CyberDust. Without limiting the foregoing in any manner, and by way of example only, the following are Social Media activity: uploading, posting, commenting, reacting (e.g., "liking" a post), sharing and communicating on comment sections of Social Media.

42.     The term "*Tax Documents*" shall mean any tax return, tax form, tax schedule, declaration, report, claim for refund, assessment or information return, statement or other Document relating to taxes, including any schedules or form or attachment thereto, whether

prepared by the taxpayer, in the taxpayer's individual capacity or the taxpayer's capacity as an employer or employee, a tax preparer, a bank or financial institution, the Internal Revenue Service or any other governmental authority.

43.     The term "***The Biden Crime Family: The Blueprint for Their Prosecution***" shall mean the book for sale authored by You, published by War Room Books and expected to release in June 2024 through various distribution platforms.

44.     The term "***The Rudy Giuliani Show***" shall mean Your audio podcast that is owned by Giuliani Communications, LLC, and distributed on platforms including, but not limited to, 77 WABC Radio, Apple Podcasts and Spotify.

45.     The term "***Transfer***" shall have the meaning ascribed in 11 U.S.C. § 101(54)(A)– (D), inclusive.

46.     The term "***TrustPoint One***" shall refer to the integrated legal services provider that houses a dataset containing data collected by the Federal Bureau of Investigation from Your seized devices.

47.     The term "***Uncovering the Truth***" shall mean Your audio podcast that is owned by Giuliani Communications, LLC, co-hosted with Maria Ryan and distributed on platforms including, but not limited to, Apple Podcasts, 77 WABC Radio and Amazon Music.

48.     The term "***Wire Transfer***" shall mean any electronic Transfer of financial assets from one Account to another Account.

49.     The term "***Withdrawal Slips***" shall mean any Document prepared in order to withdraw financial assets from any Account with information including, *inter alia*, the date, the name of the withdrawer, the withdrawer's Account number and the value of the assets being withdrawn.

50.     The terms "*You*," "*Your*" or "*Yours*" shall refer to Rudolph W. Giuliani.

51.     The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

52.     Any references to a Person shall be deemed to include such Person's Agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, managers, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, trustees, fiduciaries, settlors, donors, beneficiaries or any other individual or entity acting or purporting to act on behalf of such Person.  In addition, the reference to any trust shall include any current or former trustees, or other fiduciaries, settlors, donors and beneficiaries.

53.     The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

54.     The use of the present tense includes the past tense, the use of the past tense shall include the present tense, and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

55.     Words and phrases not defined shall have their ordinary and plain meaning within the context of the Federal Rules of Civil Procedure and in accordance with the generally accepted meaning accorded such words and phrases in everyday use in the English language.

## <u>INSTRUCTIONS</u>

1.      These instructions incorporate by reference the requirements and duties of the Federal Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York.

2.      Each Request is continuing in nature.  If at any time additional Documents responsive to the Requests come into Your possession, custody or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

3.      You are requested to produce all Documents, Communications and information requested herein that are within Your possession, custody or control or in the possession, custody or control of Your current and former officers, directors, Agents, employees, representatives, Affiliates, Professionals, members, managers, trustees or any other Person or entity acting or purporting to act on Your behalf.

4.      You are requested to produce Documents, Communications and information requested herein on a rolling basis.

5.      If You cannot fully respond to one or more of the Requests after exercising due diligence to secure the information requested thereby, please so state, and specify:  (a) the portion of each Request that cannot be responded to fully and completely; (b) what efforts were made to obtain the requested information; (c) the facts relied upon that support Your contention that the Request(s) cannot be answered fully and completely; and (d) any knowledge, information or belief You have concerning the unanswered portion of any such Request(s).

6.      All Documents shall be produced with metadata in TIFF format with OCR images, provided, however, that documents in Excel format shall be provided in native format.  ***All Documents shall be produced with metadata, including but not limited to the date and time***

***created/sent, author, recipients, cc-copies, bcc-blind copies, family member information, MD-5***

***hash, subject line and title and whether the document contains redactions***.

7.      If the response to any Request consists, in whole or in part, of an objection on the basis of or including undue burdensomeness, then provide those documents that can be produced without undue burden.  For such documents that are too unduly burdensome to produce, describe the process or method required to obtain said documents, the quantity and location of the documents involved and the estimated costs of the search.

8.      If You intend to withhold any responsive Document, Communication or other information on the basis of a claim of attorney-client privilege, work product protection or any other ground of non-disclosure, You shall identify such Document, Communication or information in writing by date of the Document's creation, title/file name/"re line"/subject, addressee/to/cc/bcc, addressor/from, Document type and topic covered and listed with a statement of the grounds alleged for withholding such Document, Communication or other information, including any privilege claimed.

9.      If Your response to any Request is any other objection, You must indicate if Documents are being withheld based on the objection(s), provide all Documents not covered by the objection and state the specific basis of the objection.

10.     If any Document responsive to these Requests has been destroyed, lost or discarded, state when the Document was destroyed, lost or discarded; identify the Person who destroyed, lost or discarded the Document; and, in the event the Document was destroyed or discarded, identify the Person who directed that it be destroyed or discarded.  Additionally, detail the reasons for the destruction, loss or discarding; describe the nature of the Document; identify the Persons who

created, sent, received or reviewed the Document; and state in as much detail as possible the contents of the Document.

11.    Subject to Instruction No. 6 above, Documents should be produced in the manner they are kept in the ordinary course of business.  In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

12.    All Documents shall be produced in such fashion as to identify the custodian or department in whose possession the Document was found and the business address of each Document's custodian(s).

13.    The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

14.    Unless otherwise specified, the Requests call for the production of Documents and Communications created, drafted, copied or otherwise obtained from January 1, 2019, to the present.

15.    By serving these Requests, the Committee reserves all rights, does not waive any of its rights, and expressly reserves the right to amend, to modify or otherwise to supplement these Requests.

## REQUESTS FOR PRODUCTION

1.      Documents and Communications sufficient to show Your total revenue, yearly revenue and monthly revenue, including, but not limited to, revenue received from *Common Sense, Uncovering the Truth*, *The Rudy Giuliani Show*, *America's Mayor Live*, Your appearances on any Media Outlets and from Your provision or facilitation of security, legal or consulting services.

2.      Documents and Communications sufficient to show all contracts You have entered into, whether oral or written, formal or informal, relating to business dealings, advertisements, endorsements or any other sources of income, including, but not limited to, (i) contracts between You and any Media Outlets and (ii) contracts pertaining to your forthcoming book, *The Biden Crime Family: The Blueprint for Their Prosecution*, currently scheduled for public release in June 2024.

3.      All Financial Records for or otherwise concerning You or any Debtor Related Entity.

4.      All Documents and Communications concerning any Accounts belonging to You or for which You have or have ever had a legal, equitable, possessory, contingent, beneficiary or pecuniary interest, including:

     a.   all monthly Account statements, with itemized transaction-level information;

     b.   all yearly Account statements;

     c.   any Deposit Tickets;

     d.   any Withdrawal Slips, including any Documents and Communications concerning the substance of any withdrawals from any Account;

     e.   all negotiated checks or cancelled checks including checks written against or deposited into the Account and any bank checks (including certified checks,

cashier's checks, official checks or teller's checks) funded in whole or in part by the Account, including images of the front and back;

f.  all documents and communications sufficient to identify any deposits or withdrawals of all income listed in the Schedules and Statements;

g.  any Money Orders;

h.  any Wire Transfers into, out of, or by any Account, including information concerning the origins, destinations, Account numbers, financial institutions and any other Wire Transfer information or ACH Documentation;

i.  any Negotiable Instruments; and

j.  any Cryptocurrency Wallets.

5.  Documents and Communications sufficient to show the nature of Your interests in and/or affiliation with any entities You own, operate, manage or benefit from (directly or indirectly), or any entities that are owned or operated by any employees, associates, or Professionals of You and which are related to You (directly or indirectly), including the Debtor Related Entities and Giuliani Defense Funds.

6.  Documents and Communications sufficient to show the nature of the relationship between You and (i) each Debtor Related Person, (ii) any Debtor Related Entity and (iii) any Giuliani Defense Fund.

7.  Documents and Communications sufficient to show the extent to which any Debtor Related Persons had, or continues to have, any role in managing, overseeing or providing advice and other services regarding (i) Your Accounts, Assets or Financial Records, (ii) any Debtor Related Entity or (iii) the preparation for Your bankruptcy petition and related materials.

8.      Documents and Communications sufficient to show the value of any bond, mutual fund or publicly traded stock listed as an Asset in the Schedules and Statements, including the value of Your reported Uber shares.

9.      Documents and Communications concerning Your ownership, whether direct or indirect, of equity in any business or entity that You, any Debtor Related Person, or any Debtor Related Entity was previously retained by, including without limitation any private company that produces medical devices.

10.     All Documents and Communications concerning any contracts, agreements, Payments, Transfers, Gifts or distributions of any Assets between You and (i) any Debtor Related Entity, (ii) any other entity that You own, operate, manage or benefit from (directly or indirectly), (iii) any entity that is owned, operated or managed by any employees, associates or Professionals of You and which is related to You (directly or indirectly), (iv) any Giuliani Defense Fund or (v) any Debtor Related Person.

11.     All articles of incorporation, LLC agreements, founding Documents, organization Documents, organization charts or other Corporate Records of any Debtor Related Entity.

12.     All audited and unaudited balance sheets, income statements, consolidating schedules, cash flow statements, profit and loss statements, statements of changes in equity, statements of retained earnings and other financial statements or accounting reports, along with drafts, trial balances and internal accounting work papers for any Debtor Related Entity.

13.     All Documents and Communications concerning the bases, evidence and work product made in connection with any claims or causes of action that are asserted or assertable by You, including, but not limited to, (i) any claims for unpaid legal fees against Donald J. Trump, his campaign or the Republican National Committee, (ii) any defamation actions against Joseph

R. Biden, (iii) any unliquidated and/or contingent claims and causes of action listed in Your
Schedules and Statements and (iv) counterclaims that have been or may be asserted in connection
with any pending litigation against You, including, without limitation, the Freeman Litigation, the
Biden Litigation, the Dunphy Litigation or the Dominion Litigation.

14.    Documents and Communications sufficient to identify the nature of any legal
services that You have performed, or continue to perform, for Donald J. Trump.

15.    All Documents and Communications between You or any other Person concerning
any Asset planning or estate planning with respect to, or in consideration of, any creditor's ability
to reach any Assets in which You, directly or indirectly through any third party, including any
Debtor Related Entity, have a legal, possessory, beneficial, equitable, pecuniary or disputed
interest.

16.    All Documents and Communications concerning the Giuliani Defense Funds,
including Documents and Communications sufficient to show (i) the sources and uses of funds
originating from the Giuliani Defense Funds, (ii) any relationship between You and the donors of
Giuliani Defense Funds, (iii) how decisions are made by the Giuliani Defense Funds to disburse
funds and to whom and (iv) any connection between Assets held or disbursed from the Giuliani
Defense Funds and Assets of You or any other Debtor Related Entity.

17.    All Documents and Communications concerning any offers of employment,
endorsement or financial backing or support from any Person.

18.    All Documents and Communications sufficient to show (i) the identity of all
creditors to whom You made Payments, Transfers, Gifts or distributions of any Assets prior to the
Petition Date, and (ii) the nature and value of such Payments, Transfers, Gifts or distributions of
any Assets.

19.     Documents and Communications sufficient to show itemized valuations—or estimated values—and pictures of all personal property listed or referenced in the Schedules and Statement that are valued at or above $250, including, but not limited to, an inventory and pictures of all electronics, household goods and furnishings, sports memorabilia, jewelry and clothes.

20.     Documents and Communications sufficient to identify a list of all Assets belonging to You or otherwise within Your possession, custody or control, including without limitation any electronic devices such as cell phones, laptops, desktop computers and tablets, and including any Assets residing in any Real Property, home, apartment or storage unit that is owned, leased, or otherwise belongs to You.

21.     Documents and Communications sufficient to identify the sources and purposes of all monthly expenses listed in the Schedules and Statements.

22.     Documents and Communications sufficient to identify any expenses being paid on Your behalf that You are actively reimbursing, including, but not limited to, expenses listed in the Schedules and Statements.

23.     Documents sufficient to identify any Person(s) who handle any of Your personal finances, including accountants, tax advisors, other finance Professionals, personal assistants, secretaries, household assistants or other Professionals, including any Person(s) who assisted in the preparation of Your Schedules and Statements.

24.     Documents and Communications sufficient to identify the disposition of any of Your past or present Assets, property or Accounts as a result of any divorce settlement to which You were a party, including without limitation any ongoing disputes over marital Assets.

25.     Documents and Communications sufficient to show the job titles, roles, employment contracts and organizational charts relating to any employee, including without

limitation any of the Debtor Related Persons, who work for, or have worked for, You or any of the Debtor Related Entities.

26.     Documents and Communications sufficient to identify all Your data collected by the Federal Bureau of Investigation from Your devices and held for preservation by entities including, but not limited to, a special master or TrustPoint One.

27.     All Documents and Communications concerning any actual or potential application (whether or not submitted) for a private loan, including, but not limited to, funds offered through the Paycheck Protection Program, by or on behalf of the Debtor or any Debtor Related Entity.

28.     All Documents and Communications concerning the issuance and substance of any search warrants or affidavits executed by the United States Department of Justice for the purpose of gathering information for investigations pertaining to You, any Debtor Related Entity or any Debtor Related Person.

## **<u>EXHIBIT 4</u>**

**Subpoena for Committee's Rule 2004 Examination of Giuliani Communications, LLC, attaching Requests for the Production of Documents, dated April 19, 2024**

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ Southern _____ District of _New York_____

In re   Rudolph W. Giuliani a/k/a Rudolph William Giuliani _____        Case No.   23-12055 (SHL)_____

Debtor

Chapter   11_____

## SUBPOENA FOR RULE 2004 EXAMINATION

To:   Giuliani Communications, LLC _____

*(Name of person to whom the subpoena is directed)*

☐ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure.  A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>New York, NY 10036<br>aqureshi@akingump.com | May 24, 2024 |

The examination will be recorded by this method: _____

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Ex. A _____

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  04/19/2024_____

CLERK OF COURT

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Official Committee of Unsecured Creditors  , who issues or requests this subpoena, are:

Abid Qureshi, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, aqureshi@akingump.com  Tel. (212) 872-1000

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date:  _____


                                                    _____
                                                                    *Server's signature*

                                                    _____
                                                                    *Printed name and title*

                                                    _____
                                                                    *Server's address*


Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A

## DEFINITIONS

The following Requests incorporate by reference the definitions and rules of construction set forth in Local Civil Rule 26.3 of the Southern District of New York, as incorporated by Local Rule 2004-1 of the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and any other applicable law or rules. For the purposes of these Requests, the following definitions shall apply whether or not such term is capitalized. Unless otherwise defined herein, all words and phrases shall be accorded their usual meaning and shall be interpreted broadly to encompass all facts and information that could otherwise be construed to fall outside their scope.

1.      The term "*Account*" shall mean any arrangement or agreement by which one or more Persons accepts one or more Persons' Assets to hold on behalf of that Person, including but not limited to savings accounts, checking accounts, money market accounts, Certificate of Deposit accounts, brokerage accounts, currency accounts, Cryptocurrency accounts, commodities, commodities futures accounts, trust accounts, bailments, custodial agreements, safe deposit boxes, arrangements or agreements by which Assets are stored and any other accounts held with a financial institution.  For the avoidance of doubt, this includes, but is not limited, to any Accounts or other repositories of Assets, including storage units identified on any of the Schedules and Statements.

2.      The term "*ACH Documentation*" shall mean any authorization of or consent to Payment that permits a Person to transfer financial assets from another Person's Account.

3.      The term "*Affiliate*" or "*Affiliates*" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

4.      The term "*Agent*" shall mean any Person or entity and their Professionals acting for or on behalf of another Person or entity.

1

5.      The terms "*all*," "*any*" and "*each*" shall each be construed as encompassing any and all of these terms.

6.      The term "*America's Mayor Live*" shall mean Giuliani's video livestream that is owned by Giuliani Communications, LLC, and distributed on platforms including, but not limited to, YouTube, Gettr, Facebook and Instagram.

7.      The connectives "*and*" and "*or*" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents, Communications or responses that might otherwise be construed to be outside of its scope.

8.      The term "*Assets*" shall mean both real assets and intangible assets, including Real Property (whether owned or leased), fixtures, facilities, businesses, business lines, intellectual property, goodwill, contracts, rights to recover under any insurance policy, causes of action, inventory, cash, Cryptocurrency, Cryptocurrency Wallets, cash equivalents, commodities, commodities futures, precious metals, jewelry, watches, furniture, wine, art, firearms, Domain Names, oil and gas leases, mineral rights, automobiles, watercraft, boats, helicopters and any other thing of value.

9.      The term "*Biden Litigation*" shall refer to *Biden v. Giuliani*, United States District Court for the District of Columbia, No. 2:23-cv-08032, the suit filed by Robert Hunter Biden against Giuliani, Giuliani Partners, Giuliani Group, Giuliani Security & Safety and Giuliani's counsel Robert J. Costello for violations of federal and state computer fraud and abuse statutes and for unfair competition via their alleged unauthorized access to and dissemination of Biden's private digital data.

10.     The term "*Certificate of Deposit*" shall mean any savings product offered by a bank or financial institution that earns interest on a fixed sum for a fixed period of time.

11.    The term "*Common Sense*" shall mean Giuliani's audio podcast that is owned by Giuliani Communications, LLC and distributed on platforms including, but not limited to, YouTube, Rumble and Spike.

12.    The term "*Communication*" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, email messages, text messages, Bloomberg messages, chat messages, Instant Bloomberg chat messages, Social Media messages or other messaging platforms, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, video tapes, photographs, microfilm, microfiche, magnetic disks or other media of any kind.

13.    The term "*concerning*" shall mean relating to (however remotely), referring to, describing, evidencing or constituting.

14.    The term "*Corporate Records*" shall include articles of association, company bylaws, articles of incorporation, founding documents, partnership agreements, limited liability company agreements, management agreements, meeting minutes, board presentations, policies and resolutions, records of material transactions, approvals of material contracts, records of sale, purchase of real estate, annual reports, trust agreements, accounting and any other Document concerning an entity's organization or material activities.

15.    The term "*Credit Documents*" shall mean any Documents concerning any application or request for an extension of credit of any kind including, but not limited to, mortgages, personal loans, lines of credit and credit cards.  For the avoidance of doubt, this includes, but is not limited to, the following types of Documents:  (a) W-2 forms; (b) pay stubs;

(c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) residential rental Payment histories; (i) other Tax Documents; and (j) any other Document submitted in connection with an application for an extension of credit.

16.    The term "*Cryptocurrency*" shall mean any digital or virtual currency or medium of exchange secured by or otherwise utilizing cryptography.

17.    The term "*Cryptocurrency Wallet*" shall mean any device, physical medium, program, app, service, software or anything similar that stores private keys for Cryptocurrency or Cryptocurrency transactions, whether encrypted or otherwise.

18.    The terms "*Debtor*" or "*Giuliani*" shall mean the Person who filed a petition for chapter 11 relief in the case of *In re Rudolph W. Giuliani*, No. 23-12055 (Bankr. S.D.N.Y.) and who goes by the name of Rudolph W. Giuliani, Rudolph William Giuliani, Rudolph Giuliani, Rudy Giuliani or any other variation of the Debtor's name, including any alter egos, Persons who have apparent authority over the Debtor, Agents of the Debtor and Professionals of the Debtor.

19.    The term "*Debtor Related Entity*" shall refer to and include the following Persons, each as defined herein, and including without limitation any trade names, assumed names or previously registered names:

- Giuliani Partners, LLC

- Giuliani Security & Safety, LLC

- Giuliani Group, LLC

- Giuliani & Company, LLC

- Rudolph W. Giuliani, PLLC

- WorldCapital Payroll Corporation

- Giuliani Media, LLC

20.     The term "***Debtor Related Person***" shall refer to and include the following Persons, each as defined herein:

- Andrew Giuliani

- James Menges

- Joseph Ricci

- Maria Ryan

- Michael Ragusa

- Robert Kiger

- Ryan Medrano

- Ted Goodman

- Lisa Osofsky

- Robert Costello

- John Huvane

21.     The term "***Deposit Ticket***" shall mean any Document evidencing a deposit of financial assets to a bank or financial institution with information including, *inter alia*, the date, the name of the depositor, the depositor's Account number and the value of the assets being deposited.

22.     The term "***Document***" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information and other data or data compilations.  This includes documents stored in any medium from which information can be

obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including but not limited to emails, texts, chats, spreadsheets and PowerPoint presentations.  A draft or non-identical copy is a separate document within the meaning of this term.

23.    The term "***Domain Name***" shall mean any sequence of alphanumeric characters that forms all or part of the corresponding internet addresses.

24.    The term "***Dominion Litigation***" shall refer to *US Dominion, Inc., et al. v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-00213 CJN, the suit filed against Giuliani by Dominion Voting Systems, who seeks $1.3 billion in damages for harm caused by Giuliani's statements about the 2020 presidential election.

25.    The term "***Dunphy Litigation***" shall refer to *Dunphy vs. Giuliani, et al.*, New York Supreme Court, Index No. 650033 / 2023, the suit filed against Giuliani, Giuliani Partners, Giuliani Group and Giuliani Security & Safety by Giuliani's former employee, Noelle Dunphy, who seeks $10 million in damages for unpaid wages and sexual harassment experienced in her course of employment.

26.    The term "***Financial Records***" shall include any Document or Communication that contains or summarizes information about any Person's or entity's financial activities or condition of the Debtor including, but not limited to, information about the Assets, balance sheets, budgets, cash flow, earnings, revenue, Gifts, Payments, Transfers in Assets or interests, Tax Documents, Credit Documents, Mortgage Documents, QuickBooks files and books and records containing any of the above maintained in the ordinary course of business.

27.    The term "***Freeman Litigation***" shall refer to *Freeman v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-03354-BAH, the defamation trial

regarding Giuliani's defamatory statements about two Georgia 2020 election workers that led U.S. District Judge Beryl A. Howell of the District of Columbia to enter a $148 million default judgment against Giuliani.

28.     The term "*Gift*" shall mean any voluntary or involuntary Transfer of an Asset ***not*** made in exchange for any promise, service, product, or other Asset.  For the avoidance of doubt, "Gift" shall be construed to encompass any engagement rings, other jewelry and things of value exchanged between the Debtor and any Person in connection with any marriage proposal.

29.     The term "*Giuliani Defense Fund*" shall refer to and include The Rudy Giuliani Freedom Fund Legal Defense Trust Fund, Giuliani Defense or any other entity paying, subsidizing or reimbursing legal costs, expenses, judgments, sanctions, monetary awards or penalties incurred or issued in connection with any civil, criminal or bankruptcy proceeding involving Giuliani, including, without limitation, the Freeman Litigation, the Biden Litigation, the Dunphy Litigation and the Dominion Litigation.

30.     The term "*including*" shall mean "including, but not limited to."

31.     The term "*Media Outlet*" or "*Media Outlets*" means any person, group or entity purporting to provide information via any distribution channel, including, but not limited to, cable television, radio, podcasts and YouTube.

32.     The term "*Money Order*" shall mean any prepaid Negotiable Instrument or certificate issued by a government or financial institution that requires the issuer to pay a certain sum of money on demand to a Person.

33.     The term "*Mortgage Documents*" shall include any Documents concerning any application or re-quest for a line of credit secured by a mortgage on any residential or commercial Real Property, including but not limited to:  (a) W-2 forms; (b) pay stubs; (c) income tax returns;

(d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) copies of the purchase and sale agreement; (i) deeds of trust; (j) residential rental Payment histories; (k) other Tax Documents; and (l) any other Document submitted in connection with the above.

34.     The term "*Negotiable Instrument*" shall include any unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it (a) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (b) is payable on demand or at a definite time; and (c) does not state any other undertaking or instruction by the person promising or ordering Payment to do any act in addition to the Payment of money, and any similar instrument.

35.     The term "*Paycheck Protection Program*" shall refer to the business loan program established by the United States government in 2020 through the Coronavirus Aid, Relief and Economic Security Act to assist certain businesses with continuing to pay their employees.

36.     The term "*Payment*" shall mean any voluntary or involuntary Transfer in exchange for any service, product or other Asset, whether previously provided, provided contemporaneously with the Transfer or to be provided in the future, and whether or not such service, product or other Asset was or will be provided to the Person making or causing the Payment to be made.

37.     The term "*Person*" shall mean any natural person or any legal entity, unincorporated association or group of individuals or legal entities, whether formally or informally established, and their Affiliates and Professionals, including, without limitation, any business or governmental entity or association.

38.     The term "*Petition Date*" shall mean December 21, 2023.

39.    The term "*Professional*" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation, any attorneys, accountants, consultants (including independent consultants), independent contractors, advisors and testifying or non-testifying experts.

40.    The term "*Real Property*" shall have the meaning ascribed to the term in section 102 of the New York Real Property Tax Law.

41.    The term "*Schedules and Statements*" shall mean any and all schedules and statements filed by the Debtor, including, without limitation, Schedule A/B; Schedule C; Schedule D; Schedule G; Schedule I, Schedule J, Summary of Assets and Liabilities; Schedule of Executory Contracts and Statement of Financial Affairs and any amendments or supplements to any of the foregoing.

42.    The term "*Social Media*" shall mean any forum, website, application, or other platform on which persons can create, transmit, share, communicate, or comment upon any information, ideas, or opinions, or otherwise engage in social networking, including but not limited to: Twitter, Rumble, Gab, MeWe, Periscope, Facebook, Discord, Reddit, Imgur, SnapChat, Instagram, Google+, 4chan, 8chan, Tumblr, Youtube, LinkedIn, Flikr, Reddit, Quora, Disquis, Slack, Whisper, Yik Yak, Medium, WordPress, WeChat and instant messaging services such as Signal, WhatsApp, Facebook Messenger, Hangouts, Skype, Line, KakaoTalk, Telegram and CyberDust. Without limiting the foregoing in any manner, and by way of example only, the following are Social Media activity: uploading, posting, commenting, reacting (e.g., "liking" a post), sharing and communicating on comment sections of Social Media.

43.    The term "*Tax Documents*" shall mean any tax return, tax form, tax schedule, declaration, report, claim for refund, assessment or information return, statement or other Document relating to taxes, including any schedules or form or attachment thereto, whether

prepared by the taxpayer, in the taxpayer's individual capacity or the taxpayer's capacity as an employer or employee, a tax preparer, a bank or financial institution, the Internal Revenue Service or any other governmental authority.

44.    The term "***The Rudy Giuliani Show***" shall mean Giuliani's audio podcast that is owned by Giuliani Communications, LLC, and distributed on platforms including, but not limited to, 77 WABC Radio, Apple Podcasts and Spotify.

45.    The term "***Transfer***" shall have the meaning ascribed in 11 U.S.C. § 101(54)(A)–(D), inclusive.

46.    The term "***Uncovering the Truth***" shall mean Giuliani's audio podcast that is owned by Giuliani Communications, LLC, co-hosted with Maria Ryan and distributed on platforms including, but not limited to, Apple Podcasts, 77 WABC Radio and Amazon Music.

47.    The term "***Wire Transfer***" shall mean any electronic Transfer of financial assets from one Account to another Account.

48.    The term "***Withdrawal Slips***" shall mean any Document prepared in order to withdraw financial assets from any Account with information including, *inter alia*, the date, the name of the withdrawer, the withdrawer's Account number and the value of the assets being withdrawn.

49.    The terms "***You***," "***Your***" or "***Yours***" shall refer to Giuliani Communications, whether known under the name Giuliani Communications, LLC, Giuliani Media, LLC or any other name, including, but not limited to, any trade names, assumed names or previously registered names.

50.    The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

51.     Any references to a Person shall be deemed to include such Person's Agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, managers, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, trustees, fiduciaries, settlors, donors, beneficiaries or any other individual or entity acting or purporting to act on behalf of such Person.  In addition, the reference to any trust shall include any current or former trustees, or other fiduciaries, settlors, donors and beneficiaries.

52.     The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

53.     The use of the present tense includes the past tense, the use of the past tense shall include the present tense and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

54.     Words and phrases not defined shall have their ordinary and plain meaning within the context of the Federal Rules of Civil Procedure and in accordance with the generally accepted meaning accorded such words and phrases in everyday use in the English language.

## <u>INSTRUCTIONS</u>

1.      These instructions incorporate by reference the requirements and duties of the Federal Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York.

2.      Each Request is continuing in nature.  If at any time additional Documents responsive to the Requests come into Your possession, custody or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

3.      You are requested to produce all Documents, Communications and information requested herein that are within Your possession, custody or control or in the possession, custody or control of Your current and former officers, directors, Agents, employees, representatives, Affiliates, Professionals, members, managers, trustees or any other Person or entity acting or purporting to act on Your behalf.

4.      You are requested to produce Documents, Communications and information requested herein on a rolling basis.

5.      If You cannot fully respond to one or more of the Requests after exercising due diligence to secure the information requested thereby, please so state, and specify:  (a) the portion of each Request that cannot be responded to fully and completely; (b) what efforts were made to obtain the requested information; (c) the facts relied upon that support Your contention that the Request(s) cannot be answered fully and completely; and (d) any knowledge, information or belief You have concerning the unanswered portion of any such Request(s).

6.      All Documents shall be produced with metadata in TIFF format with OCR images, provided, however, that documents in Excel format shall be provided in native format.  ***All Documents shall be produced with metadata, including but not limited to the date and time***

***created/sent, author, recipients, cc-copies, bcc-blind copies, family member information, MD-5
hash, subject line and title and whether the document contains redactions***.

7.      If the response to any Request consists, in whole or in part, of an objection on the

basis of or including undue burdensomeness, then provide those documents that can be produced

without undue burden.  For such documents that are too unduly burdensome to produce, describe

the process or method required to obtain said documents, the quantity and location of the

documents involved and the estimated costs of the search.

8.      If You intend to withhold any responsive Document, Communication or other

information on the basis of a claim of attorney-client privilege, work product protection or any

other ground of non-disclosure, You shall identify such Document, Communication or information

in writing by date of the Document's creation, title/file name/"re line"/subject, addressee/to/cc/bcc,

addressor/from, Document type and topic covered and listed with a statement of the grounds

alleged for withholding such Document, Communication or other information, including any

privilege claimed.

9.      If Your response to any Request is any other objection, You must indicate if

Documents are being withheld based on the objection(s), provide all Documents not covered by

the objection and state the specific basis of the objection.

10.      If any Document responsive to these Requests has been destroyed, lost or discarded,

state when the Document was destroyed, lost or discarded; identify the Person who destroyed, lost

or discarded the Document; and, in the event the Document was destroyed or discarded, identify

the Person who directed that it be destroyed or discarded.  Additionally, detail the reasons for the

destruction, loss or discarding; describe the nature of the Document; identify the Persons who

created, sent, received or reviewed the Document; and state in as much detail as possible the contents of the Document.

11.     Subject to Instruction No. 6 above, Documents should be produced in the manner they are kept in the ordinary course of business.  In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

12.     All Documents shall be produced in such fashion as to identify the custodian or department in whose possession the Document was found and the business address of each Document's custodian(s).

13.     The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

14.     Unless otherwise specified, the Requests call for the production of Documents and Communications created, drafted, copied or otherwise obtained from January 1, 2019, to the present.

15.     By serving these Requests, the Committee reserves all rights, does not waive any of its rights, and expressly reserves the right to amend, to modify or otherwise to supplement these Requests.

## REQUESTS FOR PRODUCTION

1.      Documents and Communications sufficient to show the nature of any relationship between You and (i) the Debtor, (ii) any Debtor Related Entity or (iii) any Giuliani Defense Fund.

2.      All Documents and Communications concerning the formation, creation, purpose or corporate structure of Giuliani Communications, including without limitation any articles of incorporation, LLC agreements, founding Documents, organization Documents, organization charts or other Corporate Records.

3.      All Financial Records for or otherwise concerning Giuliani Communications.

4.      All audited and unaudited balance sheets, income statements, consolidating schedules, cash flow statements, profit and loss statements, statements of changes in equity, statements of retained earnings and other financial statements or accounting reports, along with drafts, trial balances and internal accounting work papers of Giuliani Communications.

5.      Documents and Communications sufficient to identify Your cash management system, including without limitation information pertaining to cash flow from operating activities, cash received from accounts receivable, cash paid for accounts payable, free cash flow to equity and working capital.

6.      All Documents and Communications sufficient to show Your total revenue, yearly revenue and monthly revenue, including, but not limited to, revenue received or derived from (i) Your business dealings and services, including, but not limited to, the management or facilitation of the Debtor's appearances on Social Media, Media Outlets, *Common Sense, Uncovering the Truth*, *The Rudy Giuliani Show* or *America's Mayor Live*, (ii) any of the Debtor Related Entities, (iii) the Debtor's appearances on any Media Outlets and (iv) the Debtor's facilitation or provision of consulting, legal or security services.

7.     All Documents and Communications concerning any contracts, agreements, Payments, Transfers, Gifts or distributions of any Assets between You and (i) the Debtor, (ii) any Debtor Related Entity, (iii) any other entity that the Debtor owns, operates, manages or benefits from (directly or indirectly), (iv) any Giuliani Defense Fund, (v) any Debtor Related Person or (vi) any employees, associates or Professionals of the Debtor, any Debtor Related Entity or any Giuliani Defense Fund.

8.     Documents and Communications sufficient to show all contracts You have entered into, whether oral or written, formal or informal, relating to business dealings, Gifts or Payments, or any other sources of income, including, but not limited to, contracts between You and the Debtor, any family members or associates of the Debtor or any Debtor Related Entity.

9.     Documents and Communications sufficient to show the job titles, roles, salaries, wages, employment contracts and organizational charts relating to any employee, including, but not limited to, any of the Debtor Related Persons who work for, or have worked for, You in any capacity.

10.     Documents and Communications sufficient to identify any Professionals engaged, consulted or retained by You.

11.     Documents and Communications sufficient to show the extent to which the Debtor or any Debtor Related Persons had, or continues to have, any role in managing, overseeing or providing advice and other services regarding Your business dealings, Accounts, Assets or Financial Records.

12.     All Documents and Communications concerning any actual or potential application (whether or not submitted) for a private loan, including without limitation for funds offered through the Paycheck Protection Program, by You, on Your behalf or for Your benefit.

13.    Documents and Communications sufficient to identify a list of all Assets belonging to You, including without limitation Assets residing in any property or storage unit that is owned, leased or otherwise belongs to You or the Debtor.

14.    All Documents and Communications concerning any Accounts belonging to You or for which You have or have ever had a legal, equitable, possessory, contingent, beneficiary or pecuniary interest, including:

    a.  all monthly Account statements, with itemized transaction-level information;

    b.  all yearly Account statements;

    c.  any Deposit Tickets;

    d.  any Withdrawal Slips, including any Documents and Communications concerning the substance of any withdrawals from any Account;

    e.  all negotiated checks or cancelled checks including checks written against or deposited into the Account and any bank checks (including certified checks, cashier's checks, official checks or teller's checks) funded in whole or in part by the Account, including images of the front and back;

    f.  all documents and communications sufficient to identify any deposits or withdrawals of all income listed in the Schedules and Statements;

    g.  any Money Orders;

    h.  any Wire Transfers into, out of, or by any Account, including information concerning the origins, destinations, Account numbers, financial institutions and any other Wire Transfer information or ACH Documentation;

    i.  any Negotiable Instruments; and

    j.  any Cryptocurrency Wallets.

## <u>EXHIBIT 5</u>

**Affidavit of Service, dated April 19, 2024, confirming service of
the Subpoena for Committee's Rule 2004 Examination and attached
Requests for the Production of Documents upon Giuliani Communications, LLC**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
In re Rudolph W. Giuliani a/k/a Rudolph William Guiliani

CASE NO. : 23-12055 (SHL)
CHAPTER 11

*Debtor*

# AFFIDAVIT OF SERVICE

State of New York }
County of New York }   ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in Rye Brook, New York

That on **4/19/2024** at **2:31 PM** at **10 Bank Street, Suite 560, White Plains, NY 10606**

deponent served a(n) **Notice of Intent to Serve a Subpoena, Subpoena For Rule 2004 Examination, Exhibit A**

on **Giuliani Communications, LLC c/o United Corporate Services, Inc.**, Registered Agent,

by delivering thereat a true copy to **Alex Sen** personally, authorized to accept service thereof.

Description of Person Served:
Gender: Male
Skin: Brown
Hair: Dark Brown
Age: 36 - 50 Yrs.
Height: 5' 9" - 6' 0"
Weight: 161-200 Lbs.
Other: Glasses

Sworn to before me this
19th day of April, 2024

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2027

Nicholas Frank DiCanio

## EXHIBIT 6

**Subpoena for Committee's Rule 2004 Examination of Giuliani & Company, LLC, attaching Requests for the Production of Documents, dated April 19, 2024**

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ Southern _____ District of _New York_____

In re   Rudolph W. Giuliani a/k/a Rudolph William Giuliani

Debtor

Case No.   23-12055 (SHL)

Chapter   11

## SUBPOENA FOR RULE 2004 EXAMINATION

To:   Giuliani & Company, LLC   _____

*(Name of person to whom the subpoena is directed)*

☐ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure.  A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>New York, NY 10036<br>aqureshi@akingump.com | May 24, 2024 |

The examination will be recorded by this method:  _____

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Ex. A

_____

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   04/19/2024

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Official Committee of Unsecured Creditors , who issues or requests this subpoena, are:

Abid Qureshi, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, aqureshi@akingump.com  Tel. (212) 872-1000

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**<u>EXHIBIT A</u>**

**<u>DEFINITIONS</u>**

The following Requests incorporate by reference the definitions and rules of construction set forth in Local Civil Rule 26.3 of the Southern District of New York, as incorporated by Local Rule 2004-1 of the U.S. Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>"), and any other applicable law or rules. For the purposes of these Requests, the following definitions shall apply whether or not such term is capitalized. Unless otherwise defined herein, all words and phrases shall be accorded their usual meaning and shall be interpreted broadly to encompass all facts and information that could otherwise be construed to fall outside their scope.

1.      The term "***Account***" shall mean any arrangement or agreement by which one or more Persons accepts one or more Persons' Assets to hold on behalf of that Person, including but not limited to savings accounts, checking accounts, money market accounts, Certificate of Deposit accounts, brokerage accounts, currency accounts, Cryptocurrency accounts, commodities, commodities futures accounts, trust accounts, bailments, custodial agreements, safe deposit boxes, arrangements or agreements by which Assets are stored and any other accounts held with a financial institution.  For the avoidance of doubt, this includes, but is not limited, to any Accounts or other repositories of Assets, including storage units identified on any of the Schedules and Statements.

2.      The term "***ACH Documentation***" shall mean any authorization of or consent to Payment that permits a Person to transfer financial assets from another Person's Account.

3.      The term "***Affiliate***" or "***Affiliates***" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

4.      The term "***Agent***" shall mean any Person or entity and their Professionals acting for or on behalf of another Person or entity.

1

5.     The terms "*all*," "*any*" and "*each*" shall each be construed as encompassing any and all of these terms.

6.     The connectives "*and*" and "*or*" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents, Communications or responses that might otherwise be construed to be outside of its scope.

7.     The term "*Assets*" shall mean both real assets and intangible assets, including Real Property (whether owned or leased), fixtures, facilities, businesses, business lines, intellectual property, goodwill, contracts, rights to recover under any insurance policy, causes of action, inventory, cash, Cryptocurrency, Cryptocurrency Wallets, cash equivalents, commodities, commodities futures, precious metals, jewelry, watches, furniture, wine, art, firearms, Domain Names, oil and gas leases, mineral rights, automobiles, watercraft, boats, helicopters and any other thing of value.

8.     The term "*Biden Litigation*" shall refer to *Biden v. Giuliani*, United States District Court for the District of Columbia, No. 2:23-cv-08032, the suit filed by Robert Hunter Biden against Giuliani, Giuliani Partners, Giuliani Group, Giuliani Security & Safety and Giuliani's counsel Robert J. Costello for violations of federal and state computer fraud and abuse statutes and for unfair competition via their alleged unauthorized access to and dissemination of Biden's private digital data.

9.     The term "*Certificate of Deposit*" shall mean any savings product offered by a bank or financial institution that earns interest on a fixed sum for a fixed period of time.

10.     The term "*Communication*" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings,

discussions, conversations, telephone calls, email messages, text messages, Bloomberg messages, chat messages, Instant Bloomberg chat messages, Social Media messages or other messaging platforms, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, video tapes, photographs, microfilm, microfiche, magnetic disks or other media of any kind.

11.    The term "*concerning*" shall mean relating to (however remotely), referring to, describing, evidencing or constituting.

12.    The term "*Corporate Records*" shall include articles of association, company bylaws, articles of incorporation, founding documents, partnership agreements, limited liability company agreements, management agreements, meeting minutes, board presentations, policies and resolutions, records of material transactions, approvals of material contracts, records of sale, purchase of real estate, annual reports, trust agreements, accounting and any other Document concerning an entity's organization or material activities.

13.    The term "*Credit Documents*" shall mean any Documents concerning any application or request for an extension of credit of any kind including, but not limited to, mortgages, personal loans, lines of credit and credit cards.  For the avoidance of doubt, this includes, but is not limited to, the following types of Documents:  (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) residential rental Payment histories; (i) other Tax Documents; and (j) any other Document submitted in connection with an application for an extension of credit.

14.    The term "*Cryptocurrency*" shall mean any digital or virtual currency or medium of exchange secured by or otherwise utilizing cryptography.

15.     The term "*Cryptocurrency Wallet*" shall mean any device, physical medium, program, app, service, software or anything similar that stores private keys for Cryptocurrency or Cryptocurrency transactions, whether encrypted or otherwise.

16.     The terms "*Debtor*" or "*Giuliani*" shall mean the Person who filed a petition for chapter 11 relief in the case of *In re Rudolph W. Giuliani*, No. 23-12055 (Bankr. S.D.N.Y.) and who goes by the name of Rudolph W. Giuliani, Rudolph William Giuliani, Rudolph Giuliani, Rudy Giuliani or any other variation of the Debtor's name, including any alter egos, Persons who have apparent authority over the Debtor, Agents of the Debtor and Professionals of the Debtor.

17.     The term "*Debtor Related Entity*" shall refer to and include the following Persons, each as defined herein, and including without limitation any trade names, assumed names or previously registered names:

- Giuliani Partners, LLC

- Giuliani Communications, LLC

- Giuliani Security & Safety, LLC

- Giuliani Group, LLC

- Rudolph W. Giuliani, PLLC

- WorldCapital Payroll Corporation

- Giuliani Media, LLC

18.     The term "*Debtor Related Person*" shall refer to and include the following Persons, each as defined herein:

- Andrew Giuliani

- James Menges

- Joseph Ricci

4

- Maria Ryan

- Michael Ragusa

- Robert Kiger

- Ryan Medrano

- Ted Goodman

- Lisa Osofsky

- Robert Costello

- John Huvane

19.     The term "***Deposit Ticket***" shall mean any Document evidencing a deposit of financial assets to a bank or financial institution with information including, *inter alia*, the date, the name of the depositor, the depositor's Account number and the value of the assets being deposited.

20.     The term "***Document***" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information and other data or data compilations.  This includes documents stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including but not limited to emails, texts, chats, spreadsheets and PowerPoint presentations.  A draft or non-identical copy is a separate document within the meaning of this term.

21.     The term "***Domain Name***" shall mean any sequence of alphanumeric characters that forms all or part of the corresponding internet addresses.

22.     The term "***Dominion Litigation***" shall refer to *US Dominion, Inc., et al. v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-00213 CJN, the suit filed against Giuliani by Dominion Voting Systems, who seeks $1.3 billion in damages for harm caused by Giuliani's statements about the 2020 presidential election.

23.     The term "***Dunphy Litigation***" shall refer to *Dunphy vs. Giuliani, et al.*, New York Supreme Court, Index No. 650033 / 2023, the suit filed against Giuliani, Giuliani Partners, Giuliani Group and Giuliani Security & Safety by Giuliani's former employee, Noelle Dunphy, who seeks $10 million in damages for unpaid wages and sexual harassment experienced in her course of employment.

24.     The term "***Financial Records***" shall include any Document or Communication that contains or summarizes information about any Person's or entity's financial activities or condition of the Debtor including, but not limited to, information about the Assets, balance sheets, budgets, cash flow, earnings, revenue, Gifts, Payments, Transfers in Assets or interests, Tax Documents, Credit Documents, Mortgage Documents, QuickBooks files and books and records containing any of the above maintained in the ordinary course of business.

25.     The term "***Freeman Litigation***" shall refer to *Freeman v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-03354-BAH, the defamation trial regarding Giuliani's defamatory statements about two Georgia 2020 election workers that led U.S. District Judge Beryl A. Howell of the District of Columbia to enter a $148 million default judgment against Giuliani.

26.     The term "***Gift***" shall mean any voluntary or involuntary Transfer of an Asset ***not*** made in exchange for any promise, service, product, or other Asset.

27.    The term "*Giuliani Defense Fund*" shall refer to and include The Rudy Giuliani Freedom Fund Legal Defense Trust Fund, Giuliani Defense or any other entity paying, subsidizing or reimbursing legal costs, expenses, judgments, sanctions, monetary awards or penalties incurred or issued in connection with any civil, criminal or bankruptcy proceeding involving Giuliani, including, without limitation, the Freeman Litigation, the Biden Litigation, the Dunphy Litigation and the Dominion Litigation.

28.    The term "*including*" shall mean "including, but not limited to."

29.    The term "*Media Outlet*" or "*Media Outlets*" means any person, group or entity purporting to provide information via any distribution channel, including, but not limited to, cable television, radio, podcasts and YouTube.

30.    The term "*Money Order*" shall mean any prepaid Negotiable Instrument or certificate issued by a government or financial institution that requires the issuer to pay a certain sum of money on demand to a Person.

31.    The term "*Mortgage Documents*" shall include any Documents concerning any application or re-quest for a line of credit secured by a mortgage on any residential or commercial Real Property, including but not limited to:  (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) copies of the purchase and sale agreement; (i) deeds of trust; (j) residential rental Payment histories; (k) other Tax Documents; and (l) any other Document submitted in connection with the above.

32.    The term "*Negotiable Instrument*" shall include any unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it (a) is payable to bearer or to order at the time it is issued or first comes into

possession of a holder; (b) is payable on demand or at a definite time; and (c) does not state any other undertaking or instruction by the person promising or ordering Payment to do any act in addition to the Payment of money, and any similar instrument.

33.     The term "*Paycheck Protection Program"* shall refer to the business loan program established by the United States government in 2020 through the Coronavirus Aid, Relief and Economic Security Act to assist certain businesses with continuing to pay their employees.

34.     The term "*Payment*" shall mean any voluntary or involuntary Transfer in exchange for any service, product or other Asset, whether previously provided, provided contemporaneously with the Transfer or to be provided in the future, and whether or not such service, product or other Asset was or will be provided to the Person making or causing the Payment to be made.

35.     The term "*Person*" shall mean any natural person or any legal entity, unincorporated association or group of individuals or legal entities, whether formally or informally established, and their Affiliates and Professionals, including, without limitation, any business or governmental entity or association.

36.     The term "*Professional*" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation, any attorneys, accountants, consultants (including independent consultants), independent contractors, advisors and testifying or non-testifying experts.

37.     The term "*Real Property*" shall have the meaning ascribed to the term in section 102 of the New York Real Property Tax Law.

38.     The term "*Schedules and Statements*" shall mean any and all schedules and statements filed by the Debtor, including, without limitation, Schedule A/B; Schedule C; Schedule D; Schedule G; Schedule I, Schedule J, Summary of Assets and Liabilities; Schedule of Executory

Contracts and Statement of Financial Affairs and any amendments or supplements to any of the foregoing.

39.      The term "*Social Media*" shall mean any forum, website, application, or other platform on which persons can create, transmit, share, communicate, or comment upon any information, ideas, or opinions, or otherwise engage in social networking, including but not limited to: Twitter, Rumble, Gab, MeWe, Periscope, Facebook, Discord, Reddit, Imgur, SnapChat, Instagram, Google+, 4chan, 8chan, Tumblr, Youtube, LinkedIn, Flikr, Reddit, Quora, Disquis, Slack, Whisper, Yik Yak, Medium, WordPress, WeChat and instant messaging services such as Signal, WhatsApp, Facebook Messenger, Hangouts, Skype, Line, KakaoTalk, Telegram and CyberDust. Without limiting the foregoing in any manner, and by way of example only, the following are Social Media activity: uploading, posting, commenting, reacting (e.g., "liking" a post), sharing and communicating on comment sections of Social Media.

40.      The term "*Tax Documents*" shall mean any tax return, tax form, tax schedule, declaration, report, claim for refund, assessment or information return, statement or other Document relating to taxes, including any schedules or form or attachment thereto, whether prepared by the taxpayer, in the taxpayer's individual capacity or the taxpayer's capacity as an employer or employee, a tax preparer, a bank or financial institution, the Internal Revenue Service or any other governmental authority.

41.      The term "*Transfer*" shall have the meaning ascribed in 11 U.S.C. § 101(54)(A)–(D), inclusive.

42.      The term "*Wire Transfer*" shall mean any electronic Transfer of financial assets from one Account to another Account.

43.      The term "*Withdrawal Slips*" shall mean any Document prepared in order to withdraw financial assets from any Account with information including, *inter alia*, the date, the

9

name of the withdrawer, the withdrawer's Account number and the value of the assets being withdrawn.

44. The terms "*You*," "*Your*" or "*Yours*" shall refer to Giuliani & Company, whether known under the name Giuliani & Company, LLC or any other name, including, but not limited to, any trade names, assumed names or previously registered names.

45. The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

46. Any references to a Person shall be deemed to include such Person's Agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, managers, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, trustees, fiduciaries, settlors, donors, beneficiaries or any other individual or entity acting or purporting to act on behalf of such Person. In addition, the reference to any trust shall include any current or former trustees, or other fiduciaries, settlors, donors and beneficiaries.

47. The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

48. The use of the present tense includes the past tense, the use of the past tense shall include the present tense and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

49. Words and phrases not defined shall have their ordinary and plain meaning within the context of the Federal Rules of Civil Procedure and in accordance with the generally accepted meaning accorded such words and phrases in everyday use in the English language.

## <u>INSTRUCTIONS</u>

1.      These instructions incorporate by reference the requirements and duties of the Federal Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York.

2.      Each Request is continuing in nature.  If at any time additional Documents responsive to the Requests come into Your possession, custody or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

3.      You are requested to produce all Documents, Communications and information requested herein that are within Your possession, custody or control or in the possession, custody or control of Your current and former officers, directors, Agents, employees, representatives, Affiliates, Professionals, members, managers, trustees or any other Person or entity acting or purporting to act on Your behalf.

4.      You are requested to produce Documents, Communications and information requested herein on a rolling basis.

5.      If You cannot fully respond to one or more of the Requests after exercising due diligence to secure the information requested thereby, please so state, and specify:  (a) the portion of each Request that cannot be responded to fully and completely; (b) what efforts were made to obtain the requested information; (c) the facts relied upon that support Your contention that the Request(s) cannot be answered fully and completely; and (d) any knowledge, information or belief You have concerning the unanswered portion of any such Request(s).

6.      All Documents shall be produced with metadata in TIFF format with OCR images, provided, however, that documents in Excel format shall be provided in native format.  ***All Documents shall be produced with metadata, including but not limited to the date and time***

*created/sent, author, recipients, cc-copies, bcc-blind copies, family member information, MD-5*

*hash, subject line and title and whether the document contains redactions*.

7.      If the response to any Request consists, in whole or in part, of an objection on the basis of or including undue burdensomeness, then provide those documents that can be produced without undue burden.  For such documents that are too unduly burdensome to produce, describe the process or method required to obtain said documents, the quantity and location of the documents involved and the estimated costs of the search.

8.      If You intend to withhold any responsive Document, Communication or other information on the basis of a claim of attorney-client privilege, work product protection or any other ground of non-disclosure, You shall identify such Document, Communication or information in writing by date of the Document's creation, title/file name/"re line"/subject, addressee/to/cc/bcc, addressor/from, Document type and topic covered and listed with a statement of the grounds alleged for withholding such Document, Communication or other information, including any privilege claimed.

9.      If Your response to any Request is any other objection, You must indicate if Documents are being withheld based on the objection(s), provide all Documents not covered by the objection and state the specific basis of the objection.

10.      If any Document responsive to these Requests has been destroyed, lost or discarded, state when the Document was destroyed, lost or discarded; identify the Person who destroyed, lost or discarded the Document; and, in the event the Document was destroyed or discarded, identify the Person who directed that it be destroyed or discarded.  Additionally, detail the reasons for the destruction, loss or discarding; describe the nature of the Document; identify the Persons who

created, sent, received or reviewed the Document; and state in as much detail as possible the contents of the Document.

11.     Subject to Instruction No. 6 above, Documents should be produced in the manner they are kept in the ordinary course of business.  In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

12.     All Documents shall be produced in such fashion as to identify the custodian or department in whose possession the Document was found and the business address of each Document's custodian(s).

13.     The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

14.     Unless otherwise specified, the Requests call for the production of Documents and Communications created, drafted, copied or otherwise obtained from January 1, 2019, to the present.

15.     By serving these Requests, the Committee reserves all rights, does not waive any of its rights, and expressly reserves the right to amend, to modify or otherwise to supplement these Requests.

## REQUESTS FOR PRODUCTION

1.      Documents and Communications sufficient to show the nature of any relationship between You and (i) the Debtor, (ii) any Debtor Related Entity or (iii) any Giuliani Defense Fund.

2.      All Documents and Communications concerning the formation, creation, purpose or corporate structure of Giuliani & Company, including without limitation any articles of incorporation, LLC agreements, founding Documents, organization Documents, organization charts or other Corporate Records.

3.      All Financial Records for or otherwise concerning Giuliani & Company.

4.      All audited and unaudited balance sheets, income statements, consolidating schedules, cash flow statements, profit and loss statements, statements of changes in equity, statements of retained earnings and other financial statements or accounting reports, along with drafts, trial balances and internal accounting work papers of Giuliani & Company.

5.      Documents and Communications sufficient to identify Your cash management system, including without limitation information pertaining to cash flow from operating activities, cash received from accounts receivable, cash paid for accounts payable, free cash flow to equity and working capital.

6.      All Documents and Communications sufficient to show Your total revenue, yearly revenue and monthly revenue, including, but not limited to, revenue received or derived from (i) Your business dealings and services, including, but not limited to, the provision of services or operations as a holding company, (ii) any of the Debtor Related Entities, (iii) the Debtor's appearances on any Media Outlets and (iv) the Debtor's facilitation or provision of consulting, legal or security services.

14

7.      All Documents and Communications concerning any contracts, agreements, Payments, Transfers, Gifts, or distributions of any Assets between You and (i) the Debtor, (ii) any Debtor Related Entity, (iii) any other entity that the Debtor owns, operates, manages or benefits from (directly or indirectly), (iv) any Giuliani Defense Fund, (v) any Debtor Related Person or (vi) any employees, associates or Professionals of the Debtor, any Debtor Related Entity or any Giuliani Defense Fund.

8.      Documents and Communications sufficient to show all contracts You have entered into, whether oral or written, formal or informal, relating to business dealings, Gifts or Payments, or any other sources of income, including, but not limited to, contracts between You and the Debtor, any family members or associates of the Debtor or any Debtor Related Entity.

9.      Documents and Communications sufficient to show the job titles, roles, salaries, wages, employment contracts and organizational charts relating to any employee, including, but not limited to, any of the Debtor Related Persons who work for, or have worked for, You in any capacity.

10.     Documents and Communications sufficient to identify Professionals engaged, consulted or retained by You.

11.     Documents and Communications sufficient to show the extent to which the Debtor or any Debtor Related Persons had, or continues to have, any role in managing, overseeing or providing advice and other services regarding Your business dealings, Accounts, Assets or Financial Records.

12.     All Documents and Communications concerning any actual or potential application (whether or not submitted) for a private loan, including without limitation for funds offered through the Paycheck Protection Program, by You, on Your behalf or for Your benefit.

15

13.     Documents and Communications sufficient to identify a list of all Assets belonging to You, including without limitation Assets residing in any property or storage unit that is owned, leased or otherwise belongs to You or the Debtor.

14.     All Documents and Communications concerning any Accounts belonging to You or for which You have or have ever had a legal, equitable, possessory, contingent, beneficiary or pecuniary interest, including:

    a.  all monthly Account statements, with itemized transaction-level information;

    b.  all yearly Account statements;

    c.  any Deposit Tickets;

    d.  any Withdrawal Slips, including any Documents and Communications concerning the substance of any withdrawals from any Account;

    e.  all negotiated checks or cancelled checks including checks written against or deposited into the Account and any bank checks (including certified checks, cashier's checks, official checks or teller's checks) funded in whole or in part by the Account, including images of the front and back;

    f.  all documents and communications sufficient to identify any deposits or withdrawals of all income listed in the Schedules and Statements;

    g.  any Money Orders;

    h.  any Wire Transfers into, out of, or by any Account, including information concerning the origins, destinations, Account numbers, financial institutions and any other Wire Transfer information or ACH Documentation;

    i.  any Negotiable Instruments; and

    j.  any Cryptocurrency Wallets.

## EXHIBIT 7

**Affidavit of Service, dated April 19, 2024, confirming service of
the Subpoena for Committee's Rule 2004 Examination and attached
Requests for the Production of Documents upon Giuliani & Company, LLC**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re Rudolph W. Giuliani a/k/a Rudolph William Guiliani** | CASE NO. : 23-12055 (SHL) CHAPTER 11 |

*Debtor*

# AFFIDAVIT OF SERVICE

State of Delaware }
County of New Castle } ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in the state of Delaware,

That on **04/19/2024** at **2:40 PM** at **1209 Orange Street, Wilmington, DE 19801**

deponent served a(n) **Notice of Intent to Serve a Subpoena, Subpoena for Rule 2004 Examination, Exhibit A**

on **Giuliani & Company, LLC c/o National Registered Agents, Inc.**, Registered Agent,

by delivering thereat a true copy to **Robin Hutt-Banks** personally, authorized to accept service thereof.

Description of Person Served:
Gender: Female
Skin:  Black
Hair: Black
Age: 51 - 65 Yrs.
Height: 5' 4" - 5' 8"
Weight:131-160 Lbs.
Other:

Sworn to before me this
22ND  day of April, 2024

----------------------------
NOTARY PUBLIC

KEVIN DUNN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires on July 26, 2026

----------------------------
Gilbert Del Valle

## <u>EXHIBIT 8</u>

**Subpoena for Committee's Rule 2004 Examination of Giuliani Group,
LLC, attaching Requests for the Production of Documents, dated April 19, 2024**

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____Southern_____ District of __New York_____

In re __Rudolph W. Giuliani a/k/a Rudolph William Giuliani__

Debtor

Case No. ___23-12055 (SHL)_____

Chapter ___11_____

## SUBPOENA FOR RULE 2004 EXAMINATION

To: __Giuliani Group, LLC__

_____

*(Name of person to whom the subpoena is directed)*

☐ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>New York, NY 10036<br>aqureshi@akingump.com | May 24, 2024 |

The examination will be recorded by this method: _____

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Ex. A

_____

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __04/19/2024___

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Official Committee of Unsecured Creditors , who issues or requests this subpoena, are:

Abid Qureshi, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, aqureshi@akingump.com  Tel. (212) 872-1000

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date: _____


                                                _____
                                                            *Server's signature*


                                                _____
                                                            *Printed name and title*


                                                _____
                                                            *Server's address*


Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A

## DEFINITIONS

The following Requests incorporate by reference the definitions and rules of construction set forth in Local Civil Rule 26.3 of the Southern District of New York, as incorporated by Local Rule 2004-1 of the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and any other applicable law or rules. For the purposes of these Requests, the following definitions shall apply whether or not such term is capitalized. Unless otherwise defined herein, all words and phrases shall be accorded their usual meaning and shall be interpreted broadly to encompass all facts and information that could otherwise be construed to fall outside their scope.

1.      The term "**Account**" shall mean any arrangement or agreement by which one or more Persons accepts one or more Persons' Assets to hold on behalf of that Person, including but not limited to savings accounts, checking accounts, money market accounts, Certificate of Deposit accounts, brokerage accounts, currency accounts, Cryptocurrency accounts, commodities, commodities futures accounts, trust accounts, bailments, custodial agreements, safe deposit boxes, arrangements or agreements by which Assets are stored and any other accounts held with a financial institution.  For the avoidance of doubt, this includes, but is not limited, to any Accounts or other repositories of Assets, including storage units identified on any of the Schedules and Statements.

2.      The term "**ACH Documentation**" shall mean any authorization of or consent to Payment that permits a Person to transfer financial assets from another Person's Account.

3.      The term "**Affiliate**" or "**Affiliates**" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

4.      The term "**Agent**" shall mean any Person or entity and their Professionals acting for or on behalf of another Person or entity.

5.      The terms "*all*," "*any*" and "*each*" shall each be construed as encompassing any and all of these terms.

6.      The connectives "*and*" and "*or*" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents, Communications or responses that might otherwise be construed to be outside of its scope.

7.      The term "*Assets*" shall mean both real assets and intangible assets, including Real Property (whether owned or leased), fixtures, facilities, businesses, business lines, intellectual property, goodwill, contracts, rights to recover under any insurance policy, causes of action, inventory, cash, Cryptocurrency, Cryptocurrency Wallets, cash equivalents, commodities, commodities futures, precious metals, jewelry, watches, furniture, wine, art, firearms, Domain Names, oil and gas leases, mineral rights, automobiles, watercraft, boats, helicopters and any other thing of value.

8.      The term "*Biden Litigation*" shall refer to *Biden v. Giuliani*, United States District Court for the District of Columbia, No. 2:23-cv-08032, the suit filed by Robert Hunter Biden against You, Giuliani, Giuliani Partners, Giuliani Security and Giuliani's counsel Robert J. Costello for violations of federal and state computer fraud and abuse statutes and for unfair competition via their alleged unauthorized access to and dissemination of Biden's private digital data.

9.      The term "*Certificate of Deposit*" shall mean any savings product offered by a bank or financial institution that earns interest on a fixed sum for a fixed period of time.

10.     The term "*Communication*" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings,

discussions, conversations, telephone calls, email messages, text messages, Bloomberg messages, chat messages, Instant Bloomberg chat messages, Social Media messages or other messaging platforms, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, video tapes, photographs, microfilm, microfiche, magnetic disks or other media of any kind.

11.　　The term "*concerning*" shall mean relating to (however remotely), referring to, describing, evidencing or constituting.

12.　　The term "*Corporate Records*" shall include articles of association, company bylaws, articles of incorporation, founding documents, partnership agreements, limited liability company agreements, management agreements, meeting minutes, board presentations, policies and resolutions, records of material transactions, approvals of material contracts, records of sale, purchase of real estate, annual reports, trust agreements, accounting and any other Document concerning an entity's organization or material activities.

13.　　The term "*Credit Documents*" shall mean any Documents concerning any application or request for an extension of credit of any kind including, but not limited to, mortgages, personal loans, lines of credit and credit cards.  For the avoidance of doubt, this includes, but is not limited to, the following types of Documents:  (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) residential rental Payment histories; (i) other Tax Documents; and (j) any other Document submitted in connection with an application for an extension of credit.

14.　　The term "*Cryptocurrency*" shall mean any digital or virtual currency or medium of exchange secured by or otherwise utilizing cryptography.

15.      The term "*Cryptocurrency Wallet*" shall mean any device, physical medium, program, app, service, software or anything similar that stores private keys for Cryptocurrency or Cryptocurrency transactions, whether encrypted or otherwise.

16.      The terms "*Debtor*" or "*Giuliani*" shall mean the Person who filed a petition for chapter 11 relief in the case of *In re Rudolph W. Giuliani*, No. 23-12055 (Bankr. S.D.N.Y.) and who goes by the name of Rudolph W. Giuliani, Rudolph William Giuliani, Rudolph Giuliani, Rudy Giuliani or any other variation of the Debtor's name, including any alter egos, Persons who have apparent authority over the Debtor, Agents of the Debtor and Professionals of the Debtor.

17.      The term "*Debtor Related Entity*" shall refer to and include the following Persons, each as defined herein, and including without limitation any trade names, assumed names or previously registered names:

• Giuliani Partners, LLC

• Giuliani Communications, LLC

• Giuliani Security & Safety, LLC

• Giuliani & Company, LLC

• Rudolph W. Giuliani, PLLC

• WorldCapital Payroll Corporation

• Giuliani Media, LLC

18.      The term "*Debtor Related Person*" shall refer to and include the following Persons, each as defined herein:

• Andrew Giuliani

• James Menges

• Joseph Ricci

4

- Maria Ryan

- Michael Ragusa

- Robert Kiger

- Ryan Medrano

- Ted Goodman

- Lisa Osofsky

- Robert Costello

- John Huvane

19.    The term "***Deposit Ticket***" shall mean any Document evidencing a deposit of financial assets to a bank or financial institution with information including, *inter alia*, the date, the name of the depositor, the depositor's Account number and the value of the assets being deposited.

20.    The term "***Document***" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information and other data or data compilations.  This includes documents stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including but not limited to emails, texts, chats, spreadsheets and PowerPoint presentations.  A draft or non-identical copy is a separate document within the meaning of this term.

21.    The term "***Domain Name***" shall mean any sequence of alphanumeric characters that forms all or part of the corresponding internet addresses.

5

22.     The term "***Dominion Litigation***" shall refer to *US Dominion, Inc., et al. v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-00213 CJN, the suit filed against Giuliani by Dominion Voting Systems, who seeks $1.3 billion in damages for harm caused by Giuliani's statements about the 2020 presidential election.

23.     The term "***Dunphy Litigation***" shall refer to *Dunphy vs. Giuliani, et al.*, New York Supreme Court, Index No. 650033 / 2023, the suit filed against You, Giuliani, Giuliani Partners and Giuliani Security & Safety by Giuliani's former employee, Noelle Dunphy, who seeks $10 million in damages for unpaid wages and sexual harassment experienced in her course of employment.

24.     The term "***Financial Records***" shall include any Document or Communication that contains or summarizes information about any Person's or entity's financial activities or condition of the Debtor including, but not limited to, information about the Assets, balance sheets, budgets, cash flow, earnings, revenue, Gifts, Payments, Transfers in Assets or interests, Tax Documents, Credit Documents, Mortgage Documents, QuickBooks files and books and records containing any of the above maintained in the ordinary course of business.

25.     The term "***Freeman Litigation***" shall refer to *Freeman v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-03354-BAH, the defamation trial regarding Giuliani's defamatory statements about two Georgia 2020 election workers that led U.S. District Judge Beryl A. Howell of the District of Columbia to enter a $148 million default judgment against Giuliani.

26.     The term "***Gift***" shall mean any voluntary or involuntary Transfer of an Asset ***not*** made in exchange for any promise, service, product, or other Asset.

27.     The term "***Giuliani Defense Fund***" shall refer to and include The Rudy Giuliani Freedom Fund Legal Defense Trust Fund, Giuliani Defense or any other entity paying, subsidizing or reimbursing legal costs, expenses, judgments, sanctions, monetary awards or penalties incurred or issued in connection with any civil, criminal or bankruptcy proceeding involving Giuliani, including, without limitation, the Freeman Litigation, the Biden Litigation, the Dunphy Litigation and the Dominion Litigation.

28.     The term "***including***" shall mean "including, but not limited to."

29.     The term "***Money Order***" shall mean any prepaid Negotiable Instrument or certificate issued by a government or financial institution that requires the issuer to pay a certain sum of money on demand to a Person.

30.     The term "***Mortgage Documents***" shall include any Documents concerning any application or re-quest for a line of credit secured by a mortgage on any residential or commercial Real Property, including but not limited to:  (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) copies of the purchase and sale agreement; (i) deeds of trust; (j) residential rental Payment histories; (k) other Tax Documents; and (l) any other Document submitted in connection with the above.

31.     The term "***Negotiable Instrument***" shall include any unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it (a) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (b) is payable on demand or at a definite time; and (c) does not state any other undertaking or instruction by the person promising or ordering Payment to do any act in addition to the Payment of money, and any similar instrument.

32.     The term "*Paycheck Protection Program*" shall refer to the business loan program established by the United States government in 2020 through the Coronavirus Aid, Relief and Economic Security Act to assist certain businesses with continuing to pay their employees.

33.     The term "*Payment*" shall mean any voluntary or involuntary Transfer in exchange for any service, product or other Asset, whether previously provided, provided contemporaneously with the Transfer or to be provided in the future, and whether or not such service, product or other Asset was or will be provided to the Person making or causing the Payment to be made.

34.     The term "*Person*" shall mean any natural person or any legal entity, unincorporated association or group of individuals or legal entities, whether formally or informally established, and their Affiliates and Professionals, including, without limitation, any business or governmental entity or association.

35.     The term "*Professional*" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation, any attorneys, accountants, consultants (including independent consultants), independent contractors, advisors and testifying or non-testifying experts.

36.     The term "*Real Property*" shall have the meaning ascribed to the term in section 102 of the New York Real Property Tax Law.

37.     The term "*Schedules and Statements*" shall mean any and all schedules and statements filed by the Debtor, including, without limitation, Schedule A/B; Schedule C; Schedule D; Schedule G; Schedule I, Schedule J, Summary of Assets and Liabilities; Schedule of Executory Contracts and Statement of Financial Affairs and any amendments or supplements to any of the foregoing.

38.     The term "*Social Media*" shall mean any forum, website, application, or other platform on which persons can create, transmit, share, communicate, or comment upon any

information, ideas, or opinions, or otherwise engage in social networking, including but not limited to: Twitter, Rumble, Gab, MeWe, Periscope, Facebook, Discord, Reddit, Imgur, SnapChat, Instagram, Google+, 4chan, 8chan, Tumblr, Youtube, LinkedIn, Flikr, Reddit, Quora, Disquis, Slack, Whisper, Yik Yak, Medium, WordPress, WeChat and instant messaging services such as Signal, WhatsApp, Facebook Messenger, Hangouts, Skype, Line, KakaoTalk, Telegram and CyberDust. Without limiting the foregoing in any manner, and by way of example only, the following are Social Media activity: uploading, posting, commenting, reacting (e.g., "liking" a post), sharing and communicating on comment sections of Social Media.

39.    The term "*Tax Documents*" shall mean any tax return, tax form, tax schedule, declaration, report, claim for refund, assessment or information return, statement or other Document relating to taxes, including any schedules or form or attachment thereto, whether prepared by the taxpayer, in the taxpayer's individual capacity or the taxpayer's capacity as an employer or employee, a tax preparer, a bank or financial institution, the Internal Revenue Service or any other governmental authority.

40.    The term "*Transfer*" shall have the meaning ascribed in 11 U.S.C. § 101(54)(A)–(D), inclusive.

41.    The term "*Wire Transfer*" shall mean any electronic Transfer of financial assets from one Account to another Account.

42.    The term "*Withdrawal Slips*" shall mean any Document prepared in order to withdraw financial assets from any Account with information including, *inter alia*, the date, the name of the withdrawer, the withdrawer's Account number and the value of the assets being withdrawn.

43.     The terms "*You*," "*Your*" or "*Yours*" shall refer to Giuliani Group, whether known under the name Giuliani Group, LLC or any other name, including, but not limited to, any trade names, assumed names or previously registered names.

44.     The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

45.     Any references to a Person shall be deemed to include such Person's Agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, managers, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, trustees, fiduciaries, settlors, donors, beneficiaries or any other individual or entity acting or purporting to act on behalf of such Person.  In addition, the reference to any trust shall include any current or former trustees, or other fiduciaries, settlors, donors and beneficiaries.

46.     The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

47.     The use of the present tense includes the past tense, the use of the past tense shall include the present tense and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

48.     Words and phrases not defined shall have their ordinary and plain meaning within the context of the Federal Rules of Civil Procedure and in accordance with the generally accepted meaning accorded such words and phrases in everyday use in the English language.

## <u>INSTRUCTIONS</u>

1.      These instructions incorporate by reference the requirements and duties of the Federal Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York.

2.      Each Request is continuing in nature.  If at any time additional Documents responsive to the Requests come into Your possession, custody or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

3.      You are requested to produce all Documents, Communications and information requested herein that are within Your possession, custody or control or in the possession, custody or control of Your current and former officers, directors, Agents, employees, representatives, Affiliates, Professionals, members, managers, trustees or any other Person or entity acting or purporting to act on Your behalf.

4.      You are requested to produce Documents, Communications and information requested herein on a rolling basis.

5.      If You cannot fully respond to one or more of the Requests after exercising due diligence to secure the information requested thereby, please so state, and specify:  (a) the portion of each Request that cannot be responded to fully and completely; (b) what efforts were made to obtain the requested information; (c) the facts relied upon that support Your contention that the Request(s) cannot be answered fully and completely; and (d) any knowledge, information or belief You have concerning the unanswered portion of any such Request(s).

6.      All Documents shall be produced with metadata in TIFF format with OCR images, provided, however, that documents in Excel format shall be provided in native format.  ***All Documents shall be produced with metadata, including but not limited to the date and time***

*created/sent, author, recipients, cc-copies, bcc-blind copies, family member information, MD-5*

*hash, subject line and title and whether the document contains redactions*.

7.      If the response to any Request consists, in whole or in part, of an objection on the

basis of or including undue burdensomeness, then provide those documents that can be produced

without undue burden.  For such documents that are too unduly burdensome to produce, describe

the process or method required to obtain said documents, the quantity and location of the

documents involved and the estimated costs of the search.

8.      If You intend to withhold any responsive Document, Communication or other

information on the basis of a claim of attorney-client privilege, work product protection or any

other ground of non-disclosure, You shall identify such Document, Communication or information

in writing by date of the Document's creation, title/file name/"re line"/subject, addressee/to/cc/bcc,

addressor/from, Document type and topic covered and listed with a statement of the grounds

alleged for withholding such Document, Communication or other information, including any

privilege claimed.

9.      If Your response to any Request is any other objection, You must indicate if

Documents are being withheld based on the objection(s), provide all Documents not covered by

the objection and state the specific basis of the objection.

10.      If any Document responsive to these Requests has been destroyed, lost or discarded,

state when the Document was destroyed, lost or discarded; identify the Person who destroyed, lost

or discarded the Document; and, in the event the Document was destroyed or discarded, identify

the Person who directed that it be destroyed or discarded.  Additionally, detail the reasons for the

destruction, loss or discarding; describe the nature of the Document; identify the Persons who

created, sent, received or reviewed the Document; and state in as much detail as possible the contents of the Document.

11.     Subject to Instruction No. 6 above, Documents should be produced in the manner they are kept in the ordinary course of business.  In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

12.     All Documents shall be produced in such fashion as to identify the custodian or department in whose possession the Document was found and the business address of each Document's custodian(s).

13.     The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

14.     Unless otherwise specified, the Requests call for the production of Documents and Communications created, drafted, copied or otherwise obtained from January 1, 2019, to the present.

15.     By serving these Requests, the Committee reserves all rights, does not waive any of its rights, and expressly reserves the right to amend, to modify or otherwise to supplement these Requests.

## REQUESTS FOR PRODUCTION

1.      Documents and Communications sufficient to show the nature of any relationship between You and (i) the Debtor, (ii) any Debtor Related Entity or (iii) any Giuliani Defense Fund.

2.      All Documents and Communications concerning the formation, creation, purpose or corporate structure of Giuliani Group, including without limitation any articles of incorporation, LLC agreements, founding Documents, organization Documents, organization charts or other Corporate Records.

3.      All Financial Records for or otherwise concerning Giuliani Group.

4.      All audited and unaudited balance sheets, income statements, consolidating schedules, cash flow statements, profit and loss statements, statements of changes in equity, statements of retained earnings and other financial statements or accounting reports, along with drafts, trial balances and internal accounting work papers of Giuliani Group.

5.      Documents and Communications sufficient to identify Your cash management system, including without limitation information pertaining to cash flow from operating activities, cash received from accounts receivable, cash paid for accounts payable, free cash flow to equity and working capital.

6.      All Documents and Communications sufficient to show Your total revenue, yearly revenue and monthly revenue, including, but not limited to, revenue received or derived from (i) Your business dealings and services, (ii) any of the Debtor Related Entities, (iii) the Debtor's appearances on any Media Outlets and (iv) the Debtor's facilitation or provision of consulting, legal or security services.

7.      All Documents and Communications concerning any contracts, agreements, Payments, Transfers, Gifts, or distributions of any Assets between You and (i) the Debtor, (ii) any

Debtor Related Entity, (iii) any other entity that the Debtor owns, operates, manages or benefits from (directly or indirectly), (iv) any Giuliani Defense Fund, (v) any Debtor Related Person or (vi) any employees, associates or Professionals of the Debtor, any Debtor Related Entity or any Giuliani Defense Fund.

8.      Documents and Communications sufficient to show all contracts You have entered into, whether oral or written, formal or informal, relating to business dealings, Gifts or Payments, or any other sources of income, including, but not limited to, contracts between You and the Debtor, any family members or associates of the Debtor or any Debtor Related Entity.

9.      Documents and Communications sufficient to show the job titles, roles, salaries, wages, employment contracts and organizational charts relating to any employee, including, but not limited to, any of the Debtor Related Persons who work for, or have worked for, You in any capacity.

10.     Documents and Communications sufficient to identify any Professionals engaged, consulted or retained by You.

11.     Documents and Communications sufficient to show the extent to which the Debtor or any Debtor Related Persons had, or continues to have, any role in managing, overseeing or providing advice and other services regarding Your business dealings, Accounts, Assets or Financial Records.

12.     All Documents and Communications concerning any actual or potential application (whether or not submitted) for a private loan, including without limitation for funds offered through the Paycheck Protection Program, by You, on Your behalf or for Your benefit.

13.    Documents and Communications sufficient to identify a list of all Assets belonging to You, including without limitation Assets residing in any property or storage unit that is owned, leased or otherwise belongs to You or the Debtor.

14.    All Documents and Communications concerning any Accounts belonging to You or for which You have or have ever had a legal, equitable, possessory, contingent, beneficiary or pecuniary interest, including:

    a.  all monthly Account statements, with itemized transaction-level information;

    b.  all yearly Account statements;

    c.  any Deposit Tickets;

    d.  any Withdrawal Slips, including any Documents and Communications concerning the substance of any withdrawals from any Account;

    e.  all negotiated checks or cancelled checks including checks written against or deposited into the Account and any bank checks (including certified checks, cashier's checks, official checks or teller's checks) funded in whole or in part by the Account, including images of the front and back;

    f.  all documents and communications sufficient to identify any deposits or withdrawals of all income listed in the Schedules and Statements;

    g.  any Money Orders;

    h.  any Wire Transfers into, out of, or by any Account, including information concerning the origins, destinations, Account numbers, financial institutions and any other Wire Transfer information or ACH Documentation;

    i.  any Negotiable Instruments; and

    j.  any Cryptocurrency Wallets.

## **EXHIBIT 9**

**Affidavit of Service, dated April 19, 2024, confirming service of
the Subpoena for Committee's Rule 2004 Examination and attached
Requests for the Production of Documents upon Giuliani Group, LLC**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re Rudolph W. Giuliani a/k/a Rudolph William Guiliani | CASE NO. : 23-12055 (SHL) CHAPTER 11 |
| --- | --- |

*Debtor*

## AFFIDAVIT OF SERVICE

State of Delaware }
County of New Castle } ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in the state of Delaware,

That on **04/19/2024** at **2:40 PM** at **1209 Orange Street, Wilmington, DE 19801**

deponent served a(n) **Notice of Intent to Serve a Subpoena, Subpoena for Rule 2004 Examination, Exhibit A**

on **Giuliani Group, LLC c/o National Registered Agents, Inc.**, Registered Agent,

by delivering thereat a true copy to **Robin Hutt-Banks** personally, authorized to accept service thereof.

Description of Person Served:
Gender: Female
Skin:  Black
Hair: Black
Age: 51 - 65 Yrs.
Height: 5' 4" - 5' 8"
Weight:131-160 Lbs.
Other:

Sworn to before me this
22ND day of April, 2024

_____
NOTARY PUBLIC

KEVIN DUNN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires on July 26, 2026

_____
Gilbert Del Valle

## <u>EXHIBIT 10</u>

**Subpoena for Committee's Rule 2004 Examination of Giuliani Partners,
LLC, attaching Requests for the Production of Documents, dated April 19, 2024**

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ Southern _____ District of _New York_____

In re   Rudolph W. Giuliani a/k/a Rudolph William Giuliani

Debtor

Case No.   23-12055 (SHL)

Chapter   11

## SUBPOENA FOR RULE 2004 EXAMINATION

To:   Giuliani Partners, LLC _____

*(Name of person to whom the subpoena is directed)*

☐ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure.  A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>New York, NY 10036<br>aqureshi@akingump.com | May 24, 2024 |

The examination will be recorded by this method: _____

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

    See Ex. A
_____

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   04/19/2024_____

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Official Committee of Unsecured Creditors  , who issues or requests this subpoena, are:

Abid Qureshi, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, aqureshi@akingump.com  Tel. (212) 872-1000

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

 My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date:  _____


                                                  _____
                                                                *Server's signature*

                                                  _____
                                                                *Printed name and title*

                                                  _____
                                                                *Server's address*


Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A

## DEFINITIONS

The following Requests incorporate by reference the definitions and rules of construction set forth in Local Civil Rule 26.3 of the Southern District of New York, as incorporated by Local Rule 2004-1 of the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and any other applicable law or rules. For the purposes of these Requests, the following definitions shall apply whether or not such term is capitalized. Unless otherwise defined herein, all words and phrases shall be accorded their usual meaning and shall be interpreted broadly to encompass all facts and information that could otherwise be construed to fall outside their scope.

1.    The term "*Account*" shall mean any arrangement or agreement by which one or more Persons accepts one or more Persons' Assets to hold on behalf of that Person, including but not limited to savings accounts, checking accounts, money market accounts, Certificate of Deposit accounts, brokerage accounts, currency accounts, Cryptocurrency accounts, commodities, commodities futures accounts, trust accounts, bailments, custodial agreements, safe deposit boxes, arrangements or agreements by which Assets are stored and any other accounts held with a financial institution.  For the avoidance of doubt, this includes, but is not limited, to any Accounts or other repositories of Assets, including storage units identified on any of the Schedules and Statements.

2.    The term "*ACH Documentation*" shall mean any authorization of or consent to Payment that permits a Person to transfer financial assets from another Person's Account.

3.    The term "*Affiliate*" or "*Affiliates*" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

4.    The term "*Agent*" shall mean any Person or entity and their Professionals acting for or on behalf of another Person or entity.

1

5.      The terms "*all*," "*any*" and "*each*" shall each be construed as encompassing any and all of these terms.

6.      The connectives "*and*" and "*or*" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents, Communications or responses that might otherwise be construed to be outside of its scope.

7.      The term "*Assets*" shall mean both real assets and intangible assets, including Real Property (whether owned or leased), fixtures, facilities, businesses, business lines, intellectual property, goodwill, contracts, rights to recover under any insurance policy, causes of action, inventory, cash, Cryptocurrency, Cryptocurrency Wallets, cash equivalents, commodities, commodities futures, precious metals, jewelry, watches, furniture, wine, art, firearms, Domain Names, oil and gas leases, mineral rights, automobiles, watercraft, boats, helicopters and any other thing of value.

8.      The term "*Biden Litigation*" shall refer to *Biden v. Giuliani*, United States District Court for the District of Columbia, No. 2:23-cv-08032, the suit filed by Robert Hunter Biden against You, Giuliani, Giuliani Group, Giuliani Security & Safety and Giuliani's counsel Robert J. Costello for violations of federal and state computer fraud and abuse statutes and for unfair competition via their alleged unauthorized access to and dissemination of Biden's private digital data.

9.      The term "*Certificate of Deposit*" shall mean any savings product offered by a bank or financial institution that earns interest on a fixed sum for a fixed period of time.

10.     The term "*Communication*" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings,

discussions, conversations, telephone calls, email messages, text messages, Bloomberg messages, chat messages, Instant Bloomberg chat messages, Social Media messages or other messaging platforms, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, video tapes, photographs, microfilm, microfiche, magnetic disks or other media of any kind.

11.    The term "*concerning*" shall mean relating to (however remotely), referring to, describing, evidencing or constituting.

12.    The term "*Corporate Records*" shall include articles of association, company bylaws, articles of incorporation, founding documents, partnership agreements, limited liability company agreements, management agreements, meeting minutes, board presentations, policies and resolutions, records of material transactions, approvals of material contracts, records of sale, purchase of real estate, annual reports, trust agreements, accounting and any other Document concerning an entity's organization or material activities.

13.    The term "*Credit Documents*" shall mean any Documents concerning any application or request for an extension of credit of any kind including, but not limited to, mortgages, personal loans, lines of credit and credit cards.  For the avoidance of doubt, this includes, but is not limited to, the following types of Documents:  (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) residential rental Payment histories; (i) other Tax Documents; and (j) any other Document submitted in connection with an application for an extension of credit.

14.    The term "*Cryptocurrency*" shall mean any digital or virtual currency or medium of exchange secured by or otherwise utilizing cryptography.

3

15.    The term "*Cryptocurrency Wallet*" shall mean any device, physical medium, program, app, service, software or anything similar that stores private keys for Cryptocurrency or Cryptocurrency transactions, whether encrypted or otherwise.

16.    The terms "*Debtor*" or "*Giuliani*" shall mean the Person who filed a petition for chapter 11 relief in the case of *In re Rudolph W. Giuliani*, No. 23-12055 (Bankr. S.D.N.Y.) and who goes by the name of Rudolph W. Giuliani, Rudolph William Giuliani, Rudolph Giuliani, Rudy Giuliani or any other variation of the Debtor's name, including any alter egos, Persons who have apparent authority over the Debtor, Agents of the Debtor and Professionals of the Debtor.

17.    The term "*Debtor Related Entity*" shall refer to and include the following Persons, each as defined herein, and including without limitation any trade names, assumed names or previously registered names:

- Giuliani Communications, LLC

- Giuliani Security & Safety, LLC

- Giuliani Group, LLC

- Giuliani & Company, LLC

- Rudolph W. Giuliani, PLLC

- WorldCapital Payroll Corporation

- Giuliani Media, LLC

18.    The term "*Debtor Related Person*" shall refer to and include the following Persons, each as defined herein:

- Andrew Giuliani

- James Menges

- Joseph Ricci

- Maria Ryan

- Michael Ragusa

- Robert Kiger

- Ryan Medrano

- Ted Goodman

- Lisa Osofsky

- Robert Costello

- John Huvane

19.     The term "***Deposit Ticket***" shall mean any Document evidencing a deposit of financial assets to a bank or financial institution with information including, *inter alia*, the date, the name of the depositor, the depositor's Account number and the value of the assets being deposited.

20.     The term "***Document***" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information and other data or data compilations.  This includes documents stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including but not limited to emails, texts, chats, spreadsheets and PowerPoint presentations.  A draft or non-identical copy is a separate document within the meaning of this term.

21.     The term "***Domain Name***" shall mean any sequence of alphanumeric characters that forms all or part of the corresponding internet addresses.

5

22.     The term "***Dominion Litigation***" shall refer to *US Dominion, Inc., et al. v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-00213 CJN, the suit filed against Giuliani by Dominion Voting Systems, who seeks $1.3 billion in damages for harm caused by Giuliani's statements about the 2020 presidential election.

23.     The term "***Dunphy Litigation***" shall refer to *Dunphy vs. Giuliani, et al.*, New York Supreme Court, Index No. 650033 / 2023, the suit filed against You, Giuliani, Giuliani Group and Giuliani Security & Safety by Giuliani's former employee, Noelle Dunphy, who seeks $10 million in damages for unpaid wages and sexual harassment experienced in her course of employment.

24.     The term "***Financial Records***" shall include any Document or Communication that contains or summarizes information about any Person's or entity's financial activities or condition of the Debtor including, but not limited to, information about the Assets, balance sheets, budgets, cash flow, earnings, revenue, Gifts, Payments, Transfers in Assets or interests, Tax Documents, Credit Documents, Mortgage Documents, QuickBooks files and books and records containing any of the above maintained in the ordinary course of business.

25.     The term "***Freeman Litigation***" shall refer to *Freeman v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-03354-BAH, the defamation trial regarding Giuliani's defamatory statements about two Georgia 2020 election workers that led U.S. District Judge Beryl A. Howell of the District of Columbia to enter a $148 million default judgment against Giuliani.

26.     The term "***Gift***" shall mean any voluntary or involuntary Transfer of an Asset ***not*** made in exchange for any promise, service, product, or other Asset.

27.     The term "***Giuliani Defense Fund***" shall refer to and include The Rudy Giuliani Freedom Fund Legal Defense Trust Fund, Giuliani Defense or any other entity paying, subsidizing

or reimbursing legal costs, expenses, judgments, sanctions, monetary awards or penalties incurred or issued in connection with any civil, criminal or bankruptcy proceeding involving Giuliani, including, without limitation, the Freeman Litigation, the Biden Litigation, the Dunphy Litigation and the Dominion Litigation.

28.     The term "***including***" shall mean "including, but not limited to."

29.     The term "***Media Outlet***" or "***Media Outlets***" means any person, group or entity purporting to provide information via any distribution channel, including, but not limited to, cable television, radio, podcasts and YouTube.

30.     The term "***Money Order***" shall mean any prepaid Negotiable Instrument or certificate issued by a government or financial institution that requires the issuer to pay a certain sum of money on demand to a Person.

31.     The term "***Mortgage Documents***" shall include any Documents concerning any application or re-quest for a line of credit secured by a mortgage on any residential or commercial Real Property, including but not limited to:  (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) copies of the purchase and sale agreement; (i) deeds of trust; (j) residential rental Payment histories; (k) other Tax Documents; and (l) any other Document submitted in connection with the above.

32.     The term "***Negotiable Instrument***" shall include any unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it (a) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (b) is payable on demand or at a definite time; and (c) does not state any

other undertaking or instruction by the person promising or ordering Payment to do any act in addition to the Payment of money, and any similar instrument.

33.    The term "*Paycheck Protection Program*" shall refer to the business loan program established by the United States government in 2020 through the Coronavirus Aid, Relief and Economic Security Act to assist certain businesses with continuing to pay their employees.

34.    The term "*Payment*" shall mean any voluntary or involuntary Transfer in exchange for any service, product or other Asset, whether previously provided, provided contemporaneously with the Transfer or to be provided in the future, and whether or not such service, product or other Asset was or will be provided to the Person making or causing the Payment to be made.

35.    The term "*Person*" shall mean any natural person or any legal entity, unincorporated association or group of individuals or legal entities, whether formally or informally established, and their Affiliates and Professionals, including, without limitation, any business or governmental entity or association.

36.    The term "*Professional*" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation, any attorneys, accountants, consultants (including independent consultants), independent contractors, advisors and testifying or non-testifying experts.

37.    The term "*Real Property*" shall have the meaning ascribed to the term in section 102 of the New York Real Property Tax Law.

38.    The term "*Schedules and Statements*" shall mean any and all schedules and statements filed by the Debtor, including, without limitation, Schedule A/B; Schedule C; Schedule D; Schedule G; Schedule I, Schedule J, Summary of Assets and Liabilities; Schedule of Executory Contracts and Statement of Financial Affairs and any amendments or supplements to any of the foregoing.

39.    The term "*Social Media*" shall mean any forum, website, application, or other platform on which persons can create, transmit, share, communicate, or comment upon any information, ideas, or opinions, or otherwise engage in social networking, including but not limited to: Twitter, Rumble, Gab, MeWe, Periscope, Facebook, Discord, Reddit, Imgur, SnapChat, Instagram, Google+, 4chan, 8chan, Tumblr, Youtube, LinkedIn, Flikr, Reddit, Quora, Disquis, Slack, Whisper, Yik Yak, Medium, WordPress, WeChat and instant messaging services such as Signal, WhatsApp, Facebook Messenger, Hangouts, Skype, Line, KakaoTalk, Telegram and CyberDust. Without limiting the foregoing in any manner, and by way of example only, the following are Social Media activity: uploading, posting, commenting, reacting (e.g., "liking" a post), sharing and communicating on comment sections of Social Media.

40.    The term "*Tax Documents*" shall mean any tax return, tax form, tax schedule, declaration, report, claim for refund, assessment or information return, statement or other Document relating to taxes, including any schedules or form or attachment thereto, whether prepared by the taxpayer, in the taxpayer's individual capacity or the taxpayer's capacity as an employer or employee, a tax preparer, a bank or financial institution, the Internal Revenue Service or any other governmental authority.

41.    The term "*Transfer*" shall have the meaning ascribed in 11 U.S.C. § 101(54)(A)–(D), inclusive.

42.    The term "*Wire Transfer*" shall mean any electronic Transfer of financial assets from one Account to another Account.

43.    The term "*Withdrawal Slips*" shall mean any Document prepared in order to withdraw financial assets from any Account with information including, *inter alia*, the date, the

name of the withdrawer, the withdrawer's Account number and the value of the assets being withdrawn.

44.    The terms "*You*," "*Your*" or "*Yours*" shall refer to Giuliani Partners, whether known under the name Giuliani Partners, LLC or any other name, including, but not limited to, any trade names, assumed names or previously registered names.

45.    The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

46.    Any references to a Person shall be deemed to include such Person's Agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, managers, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, trustees, fiduciaries, settlors, donors, beneficiaries or any other individual or entity acting or purporting to act on behalf of such Person.  In addition, the reference to any trust shall include any current or former trustees, or other fiduciaries, settlors, donors and beneficiaries.

47.    The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

48.    The use of the present tense includes the past tense, the use of the past tense shall include the present tense and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

49.    Words and phrases not defined shall have their ordinary and plain meaning within the context of the Federal Rules of Civil Procedure and in accordance with the generally accepted meaning accorded such words and phrases in everyday use in the English language.

## <u>INSTRUCTIONS</u>

1.      These instructions incorporate by reference the requirements and duties of the Federal Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York.

2.      Each Request is continuing in nature.  If at any time additional Documents responsive to the Requests come into Your possession, custody or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

3.      You are requested to produce all Documents, Communications and information requested herein that are within Your possession, custody or control or in the possession, custody or control of Your current and former officers, directors, Agents, employees, representatives, Affiliates, Professionals, members, managers, trustees or any other Person or entity acting or purporting to act on Your behalf.

4.      You are requested to produce Documents, Communications and information requested herein on a rolling basis.

5.      If You cannot fully respond to one or more of the Requests after exercising due diligence to secure the information requested thereby, please so state, and specify:  (a) the portion of each Request that cannot be responded to fully and completely; (b) what efforts were made to obtain the requested information; (c) the facts relied upon that support Your contention that the Request(s) cannot be answered fully and completely; and (d) any knowledge, information or belief You have concerning the unanswered portion of any such Request(s).

6.      All Documents shall be produced with metadata in TIFF format with OCR images, provided, however, that documents in Excel format shall be provided in native format.  ***All Documents shall be produced with metadata, including but not limited to the date and time***

*created/sent, author, recipients, cc-copies, bcc-blind copies, family member information, MD-5 hash, subject line and title and whether the document contains redactions*.

7.      If the response to any Request consists, in whole or in part, of an objection on the basis of or including undue burdensomeness, then provide those documents that can be produced without undue burden.  For such documents that are too unduly burdensome to produce, describe the process or method required to obtain said documents, the quantity and location of the documents involved and the estimated costs of the search.

8.      If You intend to withhold any responsive Document, Communication or other information on the basis of a claim of attorney-client privilege, work product protection or any other ground of non-disclosure, You shall identify such Document, Communication or information in writing by date of the Document's creation, title/file name/"re line"/subject, addressee/to/cc/bcc, addressor/from, Document type and topic covered and listed with a statement of the grounds alleged for withholding such Document, Communication or other information, including any privilege claimed.

9.      If Your response to any Request is any other objection, You must indicate if Documents are being withheld based on the objection(s), provide all Documents not covered by the objection and state the specific basis of the objection.

10.     If any Document responsive to these Requests has been destroyed, lost or discarded, state when the Document was destroyed, lost or discarded; identify the Person who destroyed, lost or discarded the Document; and, in the event the Document was destroyed or discarded, identify the Person who directed that it be destroyed or discarded.  Additionally, detail the reasons for the destruction, loss or discarding; describe the nature of the Document; identify the Persons who

created, sent, received or reviewed the Document; and state in as much detail as possible the contents of the Document.

11.     Subject to Instruction No. 6 above, Documents should be produced in the manner they are kept in the ordinary course of business.  In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

12.     All Documents shall be produced in such fashion as to identify the custodian or department in whose possession the Document was found and the business address of each Document's custodian(s).

13.     The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

14.     Unless otherwise specified, the Requests call for the production of Documents and Communications created, drafted, copied or otherwise obtained from January 1, 2019, to the present.

15.     By serving these Requests, the Committee reserves all rights, does not waive any of its rights, and expressly reserves the right to amend, to modify or otherwise to supplement these Requests.

## REQUESTS FOR PRODUCTION

1.      Documents and Communications sufficient to show the nature of the relationship between You and (i) the Debtor, (ii) any Debtor Related Entity or (iii) any Giuliani Defense Fund.

2.      All Documents and Communications concerning the formation, creation, purpose or corporate structure of Giuliani Partners, including without limitation any articles of incorporation, LLC agreements, founding Documents, organization Documents, organization charts or other Corporate Records.

3.      All Financial Records for or otherwise concerning Giuliani Partners.

4.      All audited and unaudited balance sheets, income statements, consolidating schedules, cash flow statements, profit and loss statements, statements of changes in equity, statements of retained earnings and other financial statements or accounting reports, along with drafts, trial balances and internal accounting work papers of Giuliani Partners.

5.      Documents and Communications sufficient to identify Your cash management system, including without limitation information pertaining to cash flow from operating activities, cash received from accounts receivable, cash paid for accounts payable, free cash flow to equity and working capital.

6.      All Documents and Communications sufficient to show Your total revenue, yearly revenue and monthly revenue, including, but not limited to, revenue received or derived from (i) Your business dealings and services, including, but not limited to, the provision of consulting services, (ii) any of the Debtor Related Entities, (iii) the Debtor's appearances on any Media Outlets and (iv) the Debtor's facilitation or provision of consulting, legal or security services.

7.      All Documents and Communications concerning any contracts, agreements, Payments, Transfers, Gifts, or distributions of any Assets between You and (i) the Debtor, (ii) any Debtor Related Entity, (iii) any other entity that the Debtor owns, operates, manages or benefits from (directly or indirectly), (iv) any Giuliani Defense Fund, (v) any Debtor Related Person or (vi) any employees, associates or Professionals of the Debtor, any Debtor Related Entity or any Giuliani Defense Fund.

8.      Documents and Communications sufficient to show all contracts You have entered into, whether oral or written, formal or informal, relating to business dealings, Gifts or Payments, or any other sources of income, including, but not limited to, contracts between You and the Debtor, any family members or associates of the Debtor or any Debtor Related Entity.

9.      Documents and Communications sufficient to show the job titles, roles, salaries, wages, employment contracts and organizational charts relating to any employee, including, but not limited to, any of the Debtor Related Persons who work for, or have worked for, You in any capacity.

10.     Documents and Communications sufficient to identify any Professionals engaged, consulted or retained by You.

11.     Documents and Communications sufficient to show the extent to which the Debtor or any Debtor Related Persons had, or continues to have, any role in managing, overseeing or providing advice and other services regarding Your business dealings, Accounts, Assets or Financial Records.

12.     All Documents and Communications concerning any actual or potential application (whether or not submitted) for a private loan, including without limitation for funds offered through the Paycheck Protection Program, by You, on Your behalf or for Your benefit.

13.     Documents and Communications sufficient to identify a list of all Assets belonging to You, including without limitation Assets residing in any property or storage unit that is owned, leased or otherwise belongs to You or the Debtor.

14.     All Documents and Communications concerning any Accounts belonging to You or for which You have or have ever had a legal, equitable, possessory, contingent, beneficiary or pecuniary interest, including:

    a.  all monthly Account statements, with itemized transaction-level information;

    b.  all yearly Account statements;

    c.  any Deposit Tickets;

    d.  any Withdrawal Slips, including any Documents and Communications concerning the substance of any withdrawals from any Account;

    e.  all negotiated checks or cancelled checks including checks written against or deposited into the Account and any bank checks (including certified checks, cashier's checks, official checks or teller's checks) funded in whole or in part by the Account, including images of the front and back;

    f.  all documents and communications sufficient to identify any deposits or withdrawals of all income listed in the Schedules and Statements;

    g.  any Money Orders;

    h.  any Wire Transfers into, out of, or by any Account, including information concerning the origins, destinations, Account numbers, financial institutions and any other Wire Transfer information or ACH Documentation;

    i.  any Negotiable Instruments; and

    j.  any Cryptocurrency Wallets.

16

## **EXHIBIT 11**

**Affidavit of Service, dated April 19, 2024, confirming service of
the Subpoena for Committee's Rule 2004 Examination and attached
Requests for the Production of Documents upon Giuliani Partners, LLC**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**In re Rudolph W. Giuliani a/k/a Rudolph William Guiliani**

CASE NO. : 23-12055 (SHL)
CHAPTER 11

*Debtor*

# AFFIDAVIT OF SERVICE

State of Delaware  }
County of New Castle }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in the state of Delaware,

That on **04/19/2024** at **2:40 PM** at **1209 Orange Street, Wilmington, DE 19801**

deponent served a(n) **Notice of Intent to Serve a Subpoena, Subpoena for Rule 2004 Examination, Exhibit A**

on **Giuliani Partners, LLC c/o National Registered Agents, Inc.**, Registered Agent,

by delivering thereat a true copy to **Robin Hutt-Banks** personally, authorized to accept service thereof.

Description of Person Served:
Gender: Female
Skin:  Black
Hair: Black
Age: 51 - 65 Yrs.
Height: 5' 4" - 5' 8"
Weight:131-160 Lbs.
Other:

Sworn to before me this
22ND day of April, 2024

------------------------------
NOTARY PUBLIC

KEVIN DUNN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires on July 26, 2026

------------------------------
Gilbert Del Valle

## <u>EXHIBIT 12</u>

**Subpoena for Committee's Rule 2004 Examination of Giuliani Security
& Safety, LLC, attaching Requests for the Production of Documents, dated April 19, 2024**

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

<u>Southern</u> District of <u>New York</u>

In re <u>Rudolph W. Giuliani a/k/a Rudolph William Giuliani</u>

Debtor

Case No. <u>23-12055 (SHL)</u>

Chapter <u>11</u>

## SUBPOENA FOR RULE 2004 EXAMINATION

To: <u>Giuliani Security & Safety, LLC</u>

*(Name of person to whom the subpoena is directed)*

☐ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE<br>Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>New York, NY 10036<br>aqureshi@akingump.com | DATE AND TIME<br>May 24, 2024 |
|---|---|

The examination will be recorded by this method: _____

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Ex. A

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: <u>04/19/2024</u>

CLERK OF COURT

_____     OR     _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* <u>Official Committee of Unsecured Creditors</u> , who issues or requests this subpoena, are:

Abid Qureshi, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, aqureshi@akingump.com Tel. (212) 872-1000

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

   My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date:  _____


                                                            _____
                                                                            *Server's signature*

                                                            _____
                                                                          *Printed name and title*

                                                            _____
                                                                             *Server's address*


Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A

## DEFINITIONS

The following Requests incorporate by reference the definitions and rules of construction set forth in Local Civil Rule 26.3 of the Southern District of New York, as incorporated by Local Rule 2004-1 of the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and any other applicable law or rules. For the purposes of these Requests, the following definitions shall apply whether or not such term is capitalized. Unless otherwise defined herein, all words and phrases shall be accorded their usual meaning and shall be interpreted broadly to encompass all facts and information that could otherwise be construed to fall outside their scope.

1.      The term "*Account*" shall mean any arrangement or agreement by which one or more Persons accepts one or more Persons' Assets to hold on behalf of that Person, including but not limited to savings accounts, checking accounts, money market accounts, Certificate of Deposit accounts, brokerage accounts, currency accounts, Cryptocurrency accounts, commodities, commodities futures accounts, trust accounts, bailments, custodial agreements, safe deposit boxes, arrangements or agreements by which Assets are stored and any other accounts held with a financial institution.  For the avoidance of doubt, this includes, but is not limited, to any Accounts or other repositories of Assets, including storage units identified on any of the Schedules and Statements.

2.      The term "*ACH Documentation*" shall mean any authorization of or consent to Payment that permits a Person to transfer financial assets from another Person's Account.

3.      The term "*Affiliate*" or "*Affiliates*" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

4.      The term "*Agent*" shall mean any Person or entity and their Professionals acting for or on behalf of another Person or entity.

1

5.      The terms "*all*," "*any*" and "*each*" shall each be construed as encompassing any and all of these terms.

6.      The connectives "*and*" and "*or*" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents, Communications or responses that might otherwise be construed to be outside of its scope.

7.      The term "*Assets*" shall mean both real assets and intangible assets, including Real Property (whether owned or leased), fixtures, facilities, businesses, business lines, intellectual property, goodwill, contracts, rights to recover under any insurance policy, causes of action, inventory, cash, Cryptocurrency, Cryptocurrency Wallets, cash equivalents, commodities, commodities futures, precious metals, jewelry, watches, furniture, wine, art, firearms, Domain Names, oil and gas leases, mineral rights, automobiles, watercraft, boats, helicopters and any other thing of value.

8.      The term "*Biden Litigation*" shall refer to *Biden v. Giuliani*, United States District Court for the District of Columbia, No. 2:23-cv-08032, the suit filed by Robert Hunter Biden against You, Giuliani, Giuliani Partners, Giuliani Group and Giuliani's counsel Robert J. Costello for violations of federal and state computer fraud and abuse statutes and for unfair competition via their alleged unauthorized access to and dissemination of Biden's private digital data.

9.      The term "*Certificate of Deposit*" shall mean any savings product offered by a bank or financial institution that earns interest on a fixed sum for a fixed period of time.

10.     The term "*Communication*" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, email messages, text messages, Bloomberg messages,

chat messages, Instant Bloomberg chat messages, Social Media messages or other messaging platforms, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, video tapes, photographs, microfilm, microfiche, magnetic disks or other media of any kind.

11.     The term "*concerning*" shall mean relating to (however remotely), referring to, describing, evidencing or constituting.

12.     The term "*Corporate Records*" shall include articles of association, company bylaws, articles of incorporation, founding documents, partnership agreements, limited liability company agreements, management agreements, meeting minutes, board presentations, policies and resolutions, records of material transactions, approvals of material contracts, records of sale, purchase of real estate, annual reports, trust agreements, accounting and any other Document concerning an entity's organization or material activities.

13.     The term "*Credit Documents*" shall mean any Documents concerning any application or request for an extension of credit of any kind including, but not limited to, mortgages, personal loans, lines of credit and credit cards.  For the avoidance of doubt, this includes, but is not limited to, the following types of Documents:  (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) residential rental Payment histories; (i) other Tax Documents; and (j) any other Document submitted in connection with an application for an extension of credit.

14.     The term "*Cryptocurrency*" shall mean any digital or virtual currency or medium of exchange secured by or otherwise utilizing cryptography.

15.     The term "*Cryptocurrency Wallet*" shall mean any device, physical medium, program, app, service, software or anything similar that stores private keys for Cryptocurrency or Cryptocurrency transactions, whether encrypted or otherwise.

16.     The terms "*Debtor*" or "*Giuliani*" shall mean the Person who filed a petition for chapter 11 relief in the case of *In re Rudolph W. Giuliani*, No. 23-12055 (Bankr. S.D.N.Y.) and who goes by the name of Rudolph W. Giuliani, Rudolph William Giuliani, Rudolph Giuliani, Rudy Giuliani or any other variation of the Debtor's name, including any alter egos, Persons who have apparent authority over the Debtor, Agents of the Debtor and Professionals of the Debtor.

17.     The term "*Debtor Related Entity*" shall refer to and include the following Persons, each as defined herein, and including without limitation any trade names, assumed names or previously registered names:

- Giuliani Partners, LLC

- Giuliani Communications, LLC

- Giuliani Group, LLC

- Giuliani & Company, LLC

- Rudolph W. Giuliani, PLLC

- WorldCapital Payroll Corporation

- Giuliani Media, LLC

18.     The term "*Debtor Related Person*" shall refer to and include the following Persons, each as defined herein:

- Andrew Giuliani

- James Menges

- Joseph Ricci

- Maria Ryan

- Michael Ragusa

- Robert Kiger

- Ryan Medrano

- Ted Goodman

- Lisa Osofsky

- Robert Costello

- John Huvane

19.    The term "***Deposit Ticket***" shall mean any Document evidencing a deposit of financial assets to a bank or financial institution with information including, *inter alia*, the date, the name of the depositor, the depositor's Account number and the value of the assets being deposited.

20.    The term "***Document***" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information and other data or data compilations.  This includes documents stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including but not limited to emails, texts, chats, spreadsheets and PowerPoint presentations.  A draft or non-identical copy is a separate document within the meaning of this term.

21.    The term "***Domain Name***" shall mean any sequence of alphanumeric characters that forms all or part of the corresponding internet addresses.

22.     The term "***Dominion Litigation***" shall refer to *US Dominion, Inc., et al. v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-00213 CJN, the suit filed against Giuliani by Dominion Voting Systems, who seeks $1.3 billion in damages for harm caused by Giuliani's statements about the 2020 presidential election.

23.     The term "***Dunphy Litigation***" shall refer to *Dunphy vs. Giuliani, et al.*, New York Supreme Court, Index No. 650033 / 2023, the suit filed against You, Giuliani, Giuliani Partners and Giuliani Group by Giuliani's former employee, Noelle Dunphy, who seeks $10 million in damages for unpaid wages and sexual harassment experienced in her course of employment.

24.     The term "***Financial Records***" shall include any Document or Communication that contains or summarizes information about any Person's or entity's financial activities or condition of the Debtor including, but not limited to, information about the Assets, balance sheets, budgets, cash flow, earnings, revenue, Gifts, Payments, Transfers in Assets or interests, Tax Documents, Credit Documents, Mortgage Documents, QuickBooks files and books and records containing any of the above maintained in the ordinary course of business.

25.     The term "***Freeman Litigation***" shall refer to *Freeman v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-03354-BAH, the defamation trial regarding Giuliani's defamatory statements about two Georgia 2020 election workers that led U.S. District Judge Beryl A. Howell of the District of Columbia to enter a $148 million default judgment against Giuliani.

26.     The term "***Gift***" shall mean any voluntary or involuntary Transfer of an Asset ***not*** made in exchange for any promise, service, product, or other Asset.

27.     The term "***Giuliani Defense Fund***" shall refer to and include The Rudy Giuliani Freedom Fund Legal Defense Trust Fund, Giuliani Defense or any other entity paying, subsidizing

or reimbursing legal costs, expenses, judgments, sanctions, monetary awards or penalties incurred or issued in connection with any civil, criminal or bankruptcy proceeding involving Giuliani, including, without limitation, the Freeman Litigation, the Biden Litigation, the Dunphy Litigation and the Dominion Litigation.

28.     The term "***including***" shall mean "including, but not limited to."

29.     The term "***Money Order***" shall mean any prepaid Negotiable Instrument or certificate issued by a government or financial institution that requires the issuer to pay a certain sum of money on demand to a Person.

30.     The term "***Mortgage Documents***" shall include any Documents concerning any application or re-quest for a line of credit secured by a mortgage on any residential or commercial Real Property, including but not limited to: (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) copies of the purchase and sale agreement; (i) deeds of trust; (j) residential rental Payment histories; (k) other Tax Documents; and (l) any other Document submitted in connection with the above.

31.     The term "***Negotiable Instrument***" shall include any unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it (a) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (b) is payable on demand or at a definite time; and (c) does not state any other undertaking or instruction by the person promising or ordering Payment to do any act in addition to the Payment of money, and any similar instrument.

32.     The term "*Paycheck Protection Program*" shall refer to the business loan program established by the United States government in 2020 through the Coronavirus Aid, Relief and Economic Security Act to assist certain businesses with continuing to pay their employees.

33.     The term "*Payment*" shall mean any voluntary or involuntary Transfer in exchange for any service, product or other Asset, whether previously provided, provided contemporaneously with the Transfer or to be provided in the future, and whether or not such service, product or other Asset was or will be provided to the Person making or causing the Payment to be made.

34.     The term "*Person*" shall mean any natural person or any legal entity, unincorporated association or group of individuals or legal entities, whether formally or informally established, and their Affiliates and Professionals, including, without limitation, any business or governmental entity or association.

35.     The term "*Professional*" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation, any attorneys, accountants, consultants (including independent consultants), independent contractors, advisors and testifying or non-testifying experts.

36.     The term "*Real Property*" shall have the meaning ascribed to the term in section 102 of the New York Real Property Tax Law.

37.     The term "*Schedules and Statements*" shall mean any and all schedules and statements filed by the Debtor, including, without limitation, Schedule A/B; Schedule C; Schedule D; Schedule G; Schedule I, Schedule J, Summary of Assets and Liabilities; Schedule of Executory Contracts and Statement of Financial Affairs and any amendments or supplements to any of the foregoing.

38.     The term "*Social Media*" shall mean any forum, website, application, or other platform on which persons can create, transmit, share, communicate, or comment upon any

information, ideas, or opinions, or otherwise engage in social networking, including but not limited to: Twitter, Rumble, Gab, MeWe, Periscope, Facebook, Discord, Reddit, Imgur, SnapChat, Instagram, Google+, 4chan, 8chan, Tumblr, Youtube, LinkedIn, Flikr, Reddit, Quora, Disquis, Slack, Whisper, Yik Yak, Medium, WordPress, WeChat and instant messaging services such as Signal, WhatsApp, Facebook Messenger, Hangouts, Skype, Line, KakaoTalk, Telegram and CyberDust. Without limiting the foregoing in any manner, and by way of example only, the following are Social Media activity: uploading, posting, commenting, reacting (e.g., "liking" a post), sharing and communicating on comment sections of Social Media.

39. The term "*Tax Documents*" shall mean any tax return, tax form, tax schedule, declaration, report, claim for refund, assessment or information return, statement or other Document relating to taxes, including any schedules or form or attachment thereto, whether prepared by the taxpayer, in the taxpayer's individual capacity or the taxpayer's capacity as an employer or employee, a tax preparer, a bank or financial institution, the Internal Revenue Service or any other governmental authority.

40. The term "*Transfer*" shall have the meaning ascribed in 11 U.S.C. § 101(54)(A)–(D), inclusive.

41. The term "*Wire Transfer*" shall mean any electronic Transfer of financial assets from one Account to another Account.

42. The term "*Withdrawal Slips*" shall mean any Document prepared in order to withdraw financial assets from any Account with information including, *inter alia*, the date, the name of the withdrawer, the withdrawer's Account number and the value of the assets being withdrawn.

43.     The terms "*You*," "*Your*" or "*Yours*" shall refer to Giuliani Security, whether known under the name Giuliani Security & Safety, LLC or any other name, including, but not limited to, any trade names, assumed names or previously registered names.

44.     The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

45.     Any references to a Person shall be deemed to include such Person's Agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, managers, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, trustees, fiduciaries, settlors, donors, beneficiaries or any other individual or entity acting or purporting to act on behalf of such Person.  In addition, the reference to any trust shall include any current or former trustees, or other fiduciaries, settlors, donors and beneficiaries.

46.     The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

47.     The use of the present tense includes the past tense, the use of the past tense shall include the present tense and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

48.     Words and phrases not defined shall have their ordinary and plain meaning within the context of the Federal Rules of Civil Procedure and in accordance with the generally accepted meaning accorded such words and phrases in everyday use in the English language.

## <u>INSTRUCTIONS</u>

1.      These instructions incorporate by reference the requirements and duties of the Federal Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York.

2.      Each Request is continuing in nature.  If at any time additional Documents responsive to the Requests come into Your possession, custody or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

3.      You are requested to produce all Documents, Communications and information requested herein that are within Your possession, custody or control or in the possession, custody or control of Your current and former officers, directors, Agents, employees, representatives, Affiliates, Professionals, members, managers, trustees or any other Person or entity acting or purporting to act on Your behalf.

4.      You are requested to produce Documents, Communications and information requested herein on a rolling basis.

5.      If You cannot fully respond to one or more of the Requests after exercising due diligence to secure the information requested thereby, please so state, and specify:  (a) the portion of each Request that cannot be responded to fully and completely; (b) what efforts were made to obtain the requested information; (c) the facts relied upon that support Your contention that the Request(s) cannot be answered fully and completely; and (d) any knowledge, information or belief You have concerning the unanswered portion of any such Request(s).

6.      All Documents shall be produced with metadata in TIFF format with OCR images, provided, however, that documents in Excel format shall be provided in native format.  ***All Documents shall be produced with metadata, including but not limited to the date and time***

***created/sent, author, recipients, cc-copies, bcc-blind copies, family member information, MD-5 hash, subject line and title and whether the document contains redactions***.

7.      If the response to any Request consists, in whole or in part, of an objection on the basis of or including undue burdensomeness, then provide those documents that can be produced without undue burden.  For such documents that are too unduly burdensome to produce, describe the process or method required to obtain said documents, the quantity and location of the documents involved and the estimated costs of the search.

8.      If You intend to withhold any responsive Document, Communication or other information on the basis of a claim of attorney-client privilege, work product protection or any other ground of non-disclosure, You shall identify such Document, Communication or information in writing by date of the Document's creation, title/file name/"re line"/subject, addressee/to/cc/bcc, addressor/from, Document type and topic covered and listed with a statement of the grounds alleged for withholding such Document, Communication or other information, including any privilege claimed.

9.      If Your response to any Request is any other objection, You must indicate if Documents are being withheld based on the objection(s), provide all Documents not covered by the objection and state the specific basis of the objection.

10.     If any Document responsive to these Requests has been destroyed, lost or discarded, state when the Document was destroyed, lost or discarded; identify the Person who destroyed, lost or discarded the Document; and, in the event the Document was destroyed or discarded, identify the Person who directed that it be destroyed or discarded.  Additionally, detail the reasons for the destruction, loss or discarding; describe the nature of the Document; identify the Persons who

created, sent, received or reviewed the Document; and state in as much detail as possible the contents of the Document.

11.     Subject to Instruction No. 6 above, Documents should be produced in the manner they are kept in the ordinary course of business.  In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

12.     All Documents shall be produced in such fashion as to identify the custodian or department in whose possession the Document was found and the business address of each Document's custodian(s).

13.     The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

14.     Unless otherwise specified, the Requests call for the production of Documents and Communications created, drafted, copied or otherwise obtained from January 1, 2019, to the present.

15.     By serving these Requests, the Committee reserves all rights, does not waive any of its rights, and expressly reserves the right to amend, to modify or otherwise to supplement these Requests.

## REQUESTS FOR PRODUCTION

1.      Documents and Communications sufficient to show the nature of any relationship between You and (i) the Debtor, (ii) any Debtor Related Entity or (iii) any Giuliani Defense Fund.

2.      All Documents and Communications concerning the formation, creation, purpose or corporate structure of Giuliani Security, including without limitation any articles of incorporation, LLC agreements, founding Documents, organization Documents, organization charts or other Corporate Records.

3.      All Financial Records for or otherwise concerning Giuliani Security.

4.      All audited and unaudited balance sheets, income statements, consolidating schedules, cash flow statements, profit and loss statements, statements of changes in equity, statements of retained earnings and other financial statements or accounting reports, along with drafts, trial balances and internal accounting work papers of Giuliani Security.

5.      Documents and Communications sufficient to identify Your cash management system, including without limitation information pertaining to cash flow from operating activities, cash received from accounts receivable, cash paid for accounts payable, free cash flow to equity and working capital.

6.      All Documents and Communications sufficient to show Your total revenue, yearly revenue and monthly revenue, including, but not limited to, revenue received or derived from (i) Your business dealings and services, including, but not limited to, the provision or facilitation of security, crisis management or other consulting services, (ii) any of the Debtor Related Entities, (iii) the Debtor's appearances on any Media Outlets and (iv) the Debtor's facilitation or provision of consulting, legal or security services.

7.      All Documents and Communications concerning any contracts, agreements, Payments, Transfers, Gifts, or distributions of any Assets between You and (i) the Debtor, (ii) any Debtor Related Entity, (iii) any other entity that the Debtor owns, operates, manages or benefits from (directly or indirectly), (iv) any Giuliani Defense Fund, (v) any Debtor Related Person or (vi) any employees, associates or Professionals of the Debtor, any Debtor Related Entity or any Giuliani Defense Fund.

8.      Documents and Communications sufficient to show all contracts You have entered into, whether oral or written, formal or informal, relating to business dealings, Gifts or Payments, or any other sources of income, including, but not limited to, contracts between You and the Debtor, any family members or associates of the Debtor, any Debtor Related Entity or any foreign government or authority.

9.      Documents and Communications sufficient to show the job titles, roles, salaries, wages, employment contracts and organizational charts relating to any employee, including, but not limited to, any of the Debtor Related Persons who work for, or have worked for, You in any capacity.

10.     Documents and Communications sufficient to identify any Professionals engaged, consulted or retained by You.

11.     Documents and Communications sufficient to show the extent to which the Debtor or any Debtor Related Persons had, or continues to have, any role in managing, overseeing or providing advice and other services regarding Your business dealings, Accounts, Assets or Financial Records.

12.     All Documents and Communications concerning any actual or potential application (whether or not submitted) for a private loan, including without limitation for funds offered through the Paycheck Protection Program, by You, on Your behalf or for Your benefit.

13.     Documents and Communications sufficient to identify a list of all Assets belonging to You, including without limitation Assets residing in any property or storage unit that is owned, leased or otherwise belongs to You or the Debtor.

14.     All Documents and Communications concerning any Accounts belonging to You or for which You have or have ever had a legal, equitable, possessory, contingent, beneficiary or pecuniary interest, including:

    a.  all monthly Account statements, with itemized transaction-level information;

    b.  all yearly Account statements;

    c.  any Deposit Tickets;

    d.  any Withdrawal Slips, including any Documents and Communications concerning the substance of any withdrawals from any Account;

    e.  all negotiated checks or cancelled checks including checks written against or deposited into the Account and any bank checks (including certified checks, cashier's checks, official checks or teller's checks) funded in whole or in part by the Account, including images of the front and back;

    f.  all documents and communications sufficient to identify any deposits or withdrawals of all income listed in the Schedules and Statements;

    g.  any Money Orders;

h.  any Wire Transfers into, out of, or by any Account, including information concerning the origins, destinations, Account numbers, financial institutions and any other Wire Transfer information or ACH Documentation;

i.  any Negotiable Instruments; and

j.  any Cryptocurrency Wallets.

**EXHIBIT 13**

**Affidavit of Service, dated April 19, 2024, confirming service of
the Subpoena for Committee's Rule 2004 Examination and attached
Requests for the Production of Documents upon Giuliani Security & Safety, LLC**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re Rudolph W. Giuliani a/k/a Rudolph William Guiliani | CASE NO. : 23-12055 (SHL) |
|---|---|
| | CHAPTER 11 |

<em>Debtor</em>

## AFFIDAVIT OF SERVICE

State of Delaware  }
County of New Castle } ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in the state of Delaware,

That on **04/19/2024** at **2:40 PM** at **1209 Orange Street, Wilmington, DE 19801**

deponent served a(n) **Notice of Intent to Serve a Subpoena, Subpoena for Rule 2004 Examination, Exhibit A**

on **Giuliani Security & Safety, LLC c/o The Corporation Trust Company,** Registered Agent,

by delivering thereat a true copy to **Robin Hutt-Banks** personally, authorized to accept service thereof.

Description of Person Served:
Gender: Female
Skin:  Black
Hair: Black
Age: 51 - 65 Yrs.
Height: 5' 4" - 5' 8"
Weight:131-160 Lbs.
Other:

Sworn to before me this
22ND day of April, 2024

_____
NOTARY PUBLIC

KEVIN DUNN
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires on July 26, 2026

_____
Gilbert Del Valle

## EXHIBIT 14

**Subpoena for Committee's Rule 2004 Examination of WorldCapital Payroll
Corporation, attaching Requests for the Production of Documents, dated April 19, 2024**

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____Southern_____ District of _New York_____

In re  Rudolph W. Giuliani a/k/a Rudolph William Giuliani

Debtor

Case No. ___23-12055 (SHL)___

Chapter ___11___

## SUBPOENA FOR RULE 2004 EXAMINATION

To:  WorldCapital Payroll Corporation _____

*(Name of person to whom the subpoena is directed)*

☐ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>New York, NY 10036<br>aqureshi@akingump.com | May 24, 2024 |

The examination will be recorded by this method: _____

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Ex. A

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: ___04/19/2024___

CLERK OF COURT

_____  OR  _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Official Committee of Unsecured Creditors , who issues or requests this subpoena, are:

Abid Qureshi, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, aqureshi@akingump.com  Tel. (212) 872-1000

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because:  _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

  My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


        I declare under penalty of perjury that this information is true and correct.

Date:  _____


                                                            _____
                                                                            *Server's signature*


                                                            _____
                                                                            *Printed name and title*


                                                            _____
                                                                            *Server's address*


Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A

## DEFINITIONS

The following Requests incorporate by reference the definitions and rules of construction set forth in Local Civil Rule 26.3 of the Southern District of New York, as incorporated by Local Rule 2004-1 of the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and any other applicable law or rules. For the purposes of these Requests, the following definitions shall apply whether or not such term is capitalized. Unless otherwise defined herein, all words and phrases shall be accorded their usual meaning and shall be interpreted broadly to encompass all facts and information that could otherwise be construed to fall outside their scope.

1.      The term "*Account*" shall mean any arrangement or agreement by which one or more Persons accepts one or more Persons' Assets to hold on behalf of that Person, including but not limited to savings accounts, checking accounts, money market accounts, Certificate of Deposit accounts, brokerage accounts, currency accounts, Cryptocurrency accounts, commodities, commodities futures accounts, trust accounts, bailments, custodial agreements, safe deposit boxes, arrangements or agreements by which Assets are stored and any other accounts held with a financial institution.  For the avoidance of doubt, this includes, but is not limited, to any Accounts or other repositories of Assets, including storage units identified on any of the Schedules and Statements.

2.      The term "*ACH Documentation*" shall mean any authorization of or consent to Payment that permits a Person to transfer financial assets from another Person's Account.

3.      The term "*Affiliate*" or "*Affiliates*" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

4.      The term "*Agent*" shall mean any Person or entity and their Professionals acting for or on behalf of another Person or entity.

1

5.      The terms "*all*," "*any*" and "*each*" shall each be construed as encompassing any and all of these terms.

6.      The connectives "*and*" and "*or*" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents, Communications or responses that might otherwise be construed to be outside of its scope.

7.      The term "*Assets*" shall mean both real assets and intangible assets, including Real Property (whether owned or leased), fixtures, facilities, businesses, business lines, intellectual property, goodwill, contracts, rights to recover under any insurance policy, causes of action, inventory, cash, Cryptocurrency, Cryptocurrency Wallets, cash equivalents, commodities, commodities futures, precious metals, jewelry, watches, furniture, wine, art, firearms, Domain Names, oil and gas leases, mineral rights, automobiles, watercraft, boats, helicopters and any other thing of value.

8.      The term "*Biden Litigation*" shall refer to *Biden v. Giuliani*, United States District Court for the District of Columbia, No. 2:23-cv-08032, the suit filed by Robert Hunter Biden against Giuliani, Giuliani Partners, Giuliani Group, Giuliani Security & Safety and Giuliani's counsel Robert J. Costello for violations of federal and state computer fraud and abuse statutes and for unfair competition via their alleged unauthorized access to and dissemination of Biden's private digital data.

9.      The term "*Certificate of Deposit*" shall mean any savings product offered by a bank or financial institution that earns interest on a fixed sum for a fixed period of time.

10.     The term "*Communication*" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings,

discussions, conversations, telephone calls, email messages, text messages, Bloomberg messages, chat messages, Instant Bloomberg chat messages, Social Media messages or other messaging platforms, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, video tapes, photographs, microfilm, microfiche, magnetic disks or other media of any kind.

11.     The term "*concerning*" shall mean relating to (however remotely), referring to, describing, evidencing or constituting.

12.     The term "*Corporate Records*" shall include articles of association, company bylaws, articles of incorporation, founding documents, partnership agreements, limited liability company agreements, management agreements, meeting minutes, board presentations, policies and resolutions, records of material transactions, approvals of material contracts, records of sale, purchase of real estate, annual reports, trust agreements, accounting and any other Document concerning an entity's organization or material activities.

13.     The term "*Credit Documents*" shall mean any Documents concerning any application or request for an extension of credit of any kind including, but not limited to, mortgages, personal loans, lines of credit and credit cards.  For the avoidance of doubt, this includes, but is not limited to, the following types of Documents:  (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) residential rental Payment histories; (i) other Tax Documents; and (j) any other Document submitted in connection with an application for an extension of credit.

14.     The term "*Cryptocurrency*" shall mean any digital or virtual currency or medium of exchange secured by or otherwise utilizing cryptography.

3

15.     The term "*Cryptocurrency Wallet*" shall mean any device, physical medium, program, app, service, software or anything similar that stores private keys for Cryptocurrency or Cryptocurrency transactions, whether encrypted or otherwise.

16.     The terms "*Debtor*" or "*Giuliani*" shall mean the Person who filed a petition for chapter 11 relief in the case of *In re Rudolph W. Giuliani*, No. 23-12055 (Bankr. S.D.N.Y.) and who goes by the name of Rudolph W. Giuliani, Rudolph William Giuliani, Rudolph Giuliani, Rudy Giuliani or any other variation of the Debtor's name, including any alter egos, Persons who have apparent authority over the Debtor, Agents of the Debtor and Professionals of the Debtor.

17.     The term "*Debtor Related Entity*" shall refer to and include the following Persons, each as defined herein, and including without limitation any trade names, assumed names or previously registered names:

- Giuliani Partners, LLC

- Giuliani Communications, LLC

- Giuliani Security & Safety, LLC

- Giuliani Group, LLC

- Giuliani & Company, LLC

- Rudolph W. Giuliani, PLLC

- Giuliani Media, LLC

18.     The term "*Debtor Related Person*" shall refer to and include the following Persons, each as defined herein:

- Andrew Giuliani

- James Menges

- Joseph Ricci

4

- Maria Ryan

- Michael Ragusa

- Robert Kiger

- Ryan Medrano

- Ted Goodman

- Lisa Osofsky

- Robert Costello

- John Huvane

19.     The term "***Deposit Ticket***" shall mean any Document evidencing a deposit of financial assets to a bank or financial institution with information including, *inter alia*, the date, the name of the depositor, the depositor's Account number and the value of the assets being deposited.

20.     The term "***Document***" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information and other data or data compilations.  This includes documents stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including but not limited to emails, texts, chats, spreadsheets and PowerPoint presentations.  A draft or non-identical copy is a separate document within the meaning of this term.

21.     The term "***Domain Name***" shall mean any sequence of alphanumeric characters that forms all or part of the corresponding internet addresses.

22.     The term "***Dominion Litigation***" shall refer to *US Dominion, Inc., et al. v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-00213 CJN, the suit filed against Giuliani by Dominion Voting Systems, who seeks $1.3 billion in damages for harm caused by Giuliani's statements about the 2020 presidential election.

23.     The term "***Dunphy Litigation***" shall refer to *Dunphy vs. Giuliani, et al.*, New York Supreme Court, Index No. 650033 / 2023, the suit filed against Giuliani, Giuliani Partners, Giuliani Group and Giuliani Security & Safety by Giuliani's former employee, Noelle Dunphy, who seeks $10 million in damages for unpaid wages and sexual harassment experienced in her course of employment.

24.     The term "***Financial Records***" shall include any Document or Communication that contains or summarizes information about any Person's or entity's financial activities or condition of the Debtor including, but not limited to, information about the Assets, balance sheets, budgets, cash flow, earnings, revenue, Gifts, Payments, Transfers in Assets or interests, Tax Documents, Credit Documents, Mortgage Documents, QuickBooks files and books and records containing any of the above maintained in the ordinary course of business.

25.     The term "***Freeman Litigation***" shall refer to *Freeman v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-03354-BAH, the defamation trial regarding Giuliani's defamatory statements about two Georgia 2020 election workers that led U.S. District Judge Beryl A. Howell of the District of Columbia to enter a $148 million default judgment against Giuliani.

26.     The term "***Gift***" shall mean any voluntary or involuntary Transfer of an Asset ***not*** made in exchange for any promise, service, product, or other Asset.

27.    The term "***Giuliani Defense Fund***" shall refer to and include The Rudy Giuliani Freedom Fund Legal Defense Trust Fund, Giuliani Defense or any other entity paying, subsidizing or reimbursing legal costs, expenses, judgments, sanctions, monetary awards or penalties incurred or issued in connection with any civil, criminal or bankruptcy proceeding involving Giuliani, including, without limitation, the Freeman Litigation, the Biden Litigation, the Dunphy Litigation and the Dominion Litigation.

28.    The term "***including***" shall mean "including, but not limited to."

29.    The term "***Money Order***" shall mean any prepaid Negotiable Instrument or certificate issued by a government or financial institution that requires the issuer to pay a certain sum of money on demand to a Person.

30.    The term "***Mortgage Documents***" shall include any Documents concerning any application or re-quest for a line of credit secured by a mortgage on any residential or commercial Real Property, including but not limited to: (a) W-2 forms; (b) pay stubs; (c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) copies of the purchase and sale agreement; (i) deeds of trust; (j) residential rental Payment histories; (k) other Tax Documents; and (l) any other Document submitted in connection with the above.

31.    The term "***Negotiable Instrument***" shall include any unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it (a) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (b) is payable on demand or at a definite time; and (c) does not state any other undertaking or instruction by the person promising or ordering Payment to do any act in addition to the Payment of money, and any similar instrument.

32.     The term "*Paycheck Protection Program*" shall refer to the business loan program established by the United States government in 2020 through the Coronavirus Aid, Relief and Economic Security Act to assist certain businesses with continuing to pay their employees.

33.     The term "*Payment*" shall mean any voluntary or involuntary Transfer in exchange for any service, product or other Asset, whether previously provided, provided contemporaneously with the Transfer or to be provided in the future, and whether or not such service, product or other Asset was or will be provided to the Person making or causing the Payment to be made.

34.     The term "*Person*" shall mean any natural person or any legal entity, unincorporated association or group of individuals or legal entities, whether formally or informally established, and their Affiliates and Professionals, including, without limitation, any business or governmental entity or association.

35.     The term "*Professional*" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation, any attorneys, accountants, consultants (including independent consultants), independent contractors, advisors and testifying or non-testifying experts.

36.     The term "*Real Property*" shall have the meaning ascribed to the term in section 102 of the New York Real Property Tax Law.

37.     The term "*Schedules and Statements*" shall mean any and all schedules and statements filed by the Debtor, including, without limitation, Schedule A/B; Schedule C; Schedule D; Schedule G; Schedule I, Schedule J, Summary of Assets and Liabilities; Schedule of Executory Contracts and Statement of Financial Affairs and any amendments or supplements to any of the foregoing.

38.     The term "*Social Media*" shall mean any forum, website, application, or other platform on which persons can create, transmit, share, communicate, or comment upon any

information, ideas, or opinions, or otherwise engage in social networking, including but not limited to: Twitter, Rumble, Gab, MeWe, Periscope, Facebook, Discord, Reddit, Imgur, SnapChat, Instagram, Google+, 4chan, 8chan, Tumblr, Youtube, LinkedIn, Flikr, Reddit, Quora, Disquis, Slack, Whisper, Yik Yak, Medium, WordPress, WeChat and instant messaging services such as Signal, WhatsApp, Facebook Messenger, Hangouts, Skype, Line, KakaoTalk, Telegram and CyberDust. Without limiting the foregoing in any manner, and by way of example only, the following are Social Media activity: uploading, posting, commenting, reacting (e.g., "liking" a post), sharing and communicating on comment sections of Social Media.

39.     The term "*Tax Documents*" shall mean any tax return, tax form, tax schedule, declaration, report, claim for refund, assessment or information return, statement or other Document relating to taxes, including any schedules or form or attachment thereto, whether prepared by the taxpayer, in the taxpayer's individual capacity or the taxpayer's capacity as an employer or employee, a tax preparer, a bank or financial institution, the Internal Revenue Service or any other governmental authority.

40.     The term "*Transfer*" shall have the meaning ascribed in 11 U.S.C. § 101(54)(A)–(D), inclusive.

41.     The term "*Wire Transfer*" shall mean any electronic Transfer of financial assets from one Account to another Account.

42.     The term "*Withdrawal Slips*" shall mean any Document prepared in order to withdraw financial assets from any Account with information including, *inter alia*, the date, the name of the withdrawer, the withdrawer's Account number and the value of the assets being withdrawn.

43.    The terms "*You*," "*Your*" or "*Yours*" shall refer to WorldCapital, whether known under the name WorldCapital Payroll Corporation or any other name, including, but not limited to, any trade names, assumed names or previously registered names.

44.    The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

45.    Any references to a Person shall be deemed to include such Person's Agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, managers, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, trustees, fiduciaries, settlors, donors, beneficiaries or any other individual or entity acting or purporting to act on behalf of such Person.  In addition, the reference to any trust shall include any current or former trustees, or other fiduciaries, settlors, donors and beneficiaries.

46.    The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

47.    The use of the present tense includes the past tense, the use of the past tense shall include the present tense and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

48.    Words and phrases not defined shall have their ordinary and plain meaning within the context of the Federal Rules of Civil Procedure and in accordance with the generally accepted meaning accorded such words and phrases in everyday use in the English language.

## <u>INSTRUCTIONS</u>

1.      These instructions incorporate by reference the requirements and duties of the Federal Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York.

2.      Each Request is continuing in nature.  If at any time additional Documents responsive to the Requests come into Your possession, custody or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

3.      You are requested to produce all Documents, Communications and information requested herein that are within Your possession, custody or control or in the possession, custody or control of Your current and former officers, directors, Agents, employees, representatives, Affiliates, Professionals, members, managers, trustees or any other Person or entity acting or purporting to act on Your behalf.

4.      You are requested to produce Documents, Communications and information requested herein on a rolling basis.

5.      If You cannot fully respond to one or more of the Requests after exercising due diligence to secure the information requested thereby, please so state, and specify:  (a) the portion of each Request that cannot be responded to fully and completely; (b) what efforts were made to obtain the requested information; (c) the facts relied upon that support Your contention that the Request(s) cannot be answered fully and completely; and (d) any knowledge, information or belief You have concerning the unanswered portion of any such Request(s).

6.      All Documents shall be produced with metadata in TIFF format with OCR images, provided, however, that documents in Excel format shall be provided in native format.  ***All Documents shall be produced with metadata, including but not limited to the date and time***

***created/sent, author, recipients, cc-copies, bcc-blind copies, family member information, MD-5
hash, subject line and title and whether the document contains redactions***.

7.      If the response to any Request consists, in whole or in part, of an objection on the
basis of or including undue burdensomeness, then provide those documents that can be produced
without undue burden.  For such documents that are too unduly burdensome to produce, describe
the process or method required to obtain said documents, the quantity and location of the
documents involved and the estimated costs of the search.

8.      If You intend to withhold any responsive Document, Communication or other
information on the basis of a claim of attorney-client privilege, work product protection or any
other ground of non-disclosure, You shall identify such Document, Communication or information
in writing by date of the Document's creation, title/file name/"re line"/subject, addressee/to/cc/bcc,
addressor/from, Document type and topic covered and listed with a statement of the grounds
alleged for withholding such Document, Communication or other information, including any
privilege claimed.

9.      If Your response to any Request is any other objection, You must indicate if
Documents are being withheld based on the objection(s), provide all Documents not covered by
the objection and state the specific basis of the objection.

10.      If any Document responsive to these Requests has been destroyed, lost or discarded,
state when the Document was destroyed, lost or discarded; identify the Person who destroyed, lost
or discarded the Document; and, in the event the Document was destroyed or discarded, identify
the Person who directed that it be destroyed or discarded.  Additionally, detail the reasons for the
destruction, loss or discarding; describe the nature of the Document; identify the Persons who

created, sent, received or reviewed the Document; and state in as much detail as possible the contents of the Document.

11.     Subject to Instruction No. 6 above, Documents should be produced in the manner they are kept in the ordinary course of business. In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

12.     All Documents shall be produced in such fashion as to identify the custodian or department in whose possession the Document was found and the business address of each Document's custodian(s).

13.     The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

14.     Unless otherwise specified, the Requests call for the production of Documents and Communications created, drafted, copied or otherwise obtained from January 1, 2019, to the present.

15.     By serving these Requests, the Committee reserves all rights, does not waive any of its rights, and expressly reserves the right to amend, to modify or otherwise to supplement these Requests.

## REQUESTS FOR PRODUCTION

1.      Documents and Communications sufficient to show the nature of any relationship between You and (i) the Debtor, (ii) any Debtor Related Entity or (iii) any Giuliani Defense Fund.

2.      All Documents and Communications concerning the formation, creation, purpose or corporate structure of WorldCapital, including without limitation any articles of incorporation, founding Documents, organization Documents, organization charts or other Corporate Records.

3.      All Financial Records for or otherwise concerning WorldCapital.

4.      All audited and unaudited balance sheets, income statements, consolidating schedules, cash flow statements, profit and loss statements, statements of changes in equity, statements of retained earnings and other financial statements or accounting reports, along with drafts, trial balances and internal accounting work papers of WorldCapital.

5.      Documents and Communications sufficient to identify Your cash management system, including without limitation information pertaining to cash flow from operating activities, cash received from accounts receivable, cash paid for accounts payable, free cash flow to equity and working capital.

6.      All Documents and Communications sufficient to show Your total revenue, yearly revenue and monthly revenue, including, but not limited to, revenue received or derived from (i) Your business dealings and services, including, but not limited to, the provision of payroll services, (ii) any of the Debtor Related Entities, (iii) the Debtor's appearances on any Media Outlets and (iv) the Debtor's facilitation or provision of consulting, legal or security services.

7.      All Documents and Communications concerning any contracts, agreements, Payments, Transfers, Gifts, or distributions of any Assets between You and (i) the Debtor, (ii) any Debtor Related Entity, (iii) any other entity that the Debtor owns, operates, manages or benefits

from (directly or indirectly), (iv) any Giuliani Defense Fund, (v) any Debtor Related Person or (vi) any employees, associates or Professionals of the Debtor, any Debtor Related Entity or any Giuliani Defense Fund.

8.      Documents and Communications sufficient to show all contracts You have entered into, whether oral or written, formal or informal, relating to business dealings, Gifts or Payments, or any other sources of income, including, but not limited to, contracts between You and the Debtor, any family members or associates of the Debtor or any Debtor Related Entity.

9.      Documents and Communications sufficient to show the job titles, roles, salaries, wages, employment contracts and organizational charts relating to any employee, including, but not limited to, any of the Debtor Related Persons who work for, or have worked for, You in any capacity.

10.     Documents and Communications sufficient to identify any Professionals engaged, consulted or retained by You.

11.     Documents and Communications sufficient to show the extent to which the Debtor or any Debtor Related Persons had, or continues to have, any role in managing, overseeing or providing advice and other services regarding Your business dealings, Accounts, Assets or Financial Records.

12.     All Documents and Communications concerning any actual or potential application (whether or not submitted) for a private loan, including without limitation for funds offered through the Paycheck Protection Program, by You, on Your behalf or for Your benefit.

13.     Documents and Communications sufficient to identify a list of all Assets belonging to You, including without limitation Assets residing in any property or storage unit that is owned, leased or otherwise belongs to You or the Debtor.

14.     All Documents and Communications concerning any Accounts belonging to You or for which You have or have ever had a legal, equitable, possessory, contingent, beneficiary or pecuniary interest, including:

a.  all monthly Account statements, with itemized transaction-level information;

b.  all yearly Account statements;

c.  any Deposit Tickets;

d.  any Withdrawal Slips, including any Documents and Communications concerning the substance of any withdrawals from any Account;

e.  all negotiated checks or cancelled checks including checks written against or deposited into the Account and any bank checks (including certified checks, cashier's checks, official checks or teller's checks) funded in whole or in part by the Account, including images of the front and back;

f.  all documents and communications sufficient to identify any deposits or withdrawals of all income listed in the Schedules and Statements;

g.  any Money Orders;

h.  any Wire Transfers into, out of, or by any Account, including information concerning the origins, destinations, Account numbers, financial institutions and any other Wire Transfer information or ACH Documentation;

i.  any Negotiable Instruments; and

j.  any Cryptocurrency Wallets.

## **EXHIBIT 15**

**Affidavit of Service, dated April 19, 2024, confirming service of the
Subpoena for Committee's Rule 2004 Examination and attached Requests
for the Production of Documents upon WorldCapital Payroll Corporation**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re Rudolph W. Giuliani a/k/a Rudolph William Guiliani

CASE NO. : 23-12055 (SHL)
CHAPTER 11

*Debtor*

# AFFIDAVIT OF SERVICE

State of Delaware }
County of Kent }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in the state of Delaware,

That on **04/19/2024** at **3:11 PM** at **800 North State Street, Suite 304, Dover, DE 19901**

deponent served a(n) **Notice of Intent to Serve a Subpoena, Subpoena For Rule 2004 Examination, Exhibit A**

on **WorldCapital Payroll Corporation c/o United Corporate Services, Inc.**, Registered Agent,

by delivering thereat a true copy to **Jane Lane** personally, authorized to accept service thereof.

Description of Person Served:
Gender: Female
Skin:  White
Hair:  Brown
Age: 36 - 50 Yrs.
Height: 5' 4" - 5' 8"
Weight:Over 200 Lbs.
Other:

Sworn to before me this
22ⁿᵈ day of April, 2024

------------------------------
NOTARY PUBLIC
**LORI ANN MILLAR**
**Notary Public State of Delaware**
**Kent County**
**Commission Expires: August 19 2027**
**Commission No. 20230818000020**

------------------------------
Tina Irizarry

## **EXHIBIT 16**

**Subpoena for Committee's Rule 2004 Examination of Maria Ryan,
attaching Requests for the Production of Documents, dated April 19, 2024**

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____Southern_____ District of _New York_____

In re   Rudolph W. Giuliani a/k/a Rudolph William Giuliani

Debtor

Case No.   23-12055 (SHL)

Chapter   11

## SUBPOENA FOR RULE 2004 EXAMINATION

To:   Maria Ryan

_____

*(Name of person to whom the subpoena is directed)*

☐ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure. A copy of the court order authorizing the examination is attached.

| PLACE | DATE AND TIME |
|---|---|
| Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>New York, NY 10036<br>aqureshi@akingump.com | May 31, 2024 |

The examination will be recorded by this method: _____

☒ *Production:* You, or your representatives, must also bring with you to the examination the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

See Ex. A

_____

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   05/10/2024

CLERK OF COURT

_____          OR          _____
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* Official Committee of Unsecured Creditors   , who issues or requests this subpoena, are:

Abid Qureshi, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, aqureshi@akingump.com  Tel. (212) 872-1000

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

  My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


    I declare under penalty of perjury that this information is true and correct.

Date:  _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*


Additional information concerning attempted service, etc.:

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (Page 3)

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT A

## DEFINITIONS

The following Requests incorporate by reference the definitions and rules of construction set forth in Local Civil Rule 26.3 of the Southern District of New York, as incorporated by Local Rule 2004-1 of the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and any other applicable law or rules. For the purposes of these Requests, the following definitions shall apply whether or not such term is capitalized. Unless otherwise defined herein, all words and phrases shall be accorded their usual meaning and shall be interpreted broadly to encompass all facts and information that could otherwise be construed to fall outside their scope.

1.      The term "*Account*" shall mean any arrangement or agreement by which one or more Persons accepts one or more Persons' Assets to hold on behalf of that Person, including but not limited to savings accounts, checking accounts, money market accounts, Certificate of Deposit accounts, brokerage accounts, currency accounts, Cryptocurrency accounts, commodities, commodities futures accounts, trust accounts, bailments, custodial agreements, safe deposit boxes, arrangements or agreements by which Assets are stored and any other accounts held with a financial institution.  For the avoidance of doubt, this includes, but is not limited, to any Accounts or other repositories of Assets, including storage units identified on any of the Schedules and Statements.

2.      The term "*ACH Documentation*" shall mean any authorization of or consent to Payment that permits a Person to transfer financial assets from another Person's Account.

3.      The term "*Affiliate*" or "*Affiliates*" shall have the meaning ascribed to the term "Affiliate" under 11 U.S.C. § 101(2).

4.      The term "*Agent*" shall mean any Person or entity and their Professionals acting for or on behalf of another Person or entity.

1

5.      The terms "*all*," "*any*" and "*each*" shall each be construed as encompassing any and all of these terms.

6.      The term "*America's Mayor Live*" shall mean Giuliani's video livestream that is owned by Giuliani Communications, LLC, and distributed on platforms including, but not limited to, YouTube, Gettr, Facebook and Instagram.

7.      The connectives "*and*" and "*or*" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all Documents, Communications or responses that might otherwise be construed to be outside of its scope.

8.      The term "*Assets*" shall mean both real assets and intangible assets, including Real Property (whether owned or leased), fixtures, facilities, businesses, business lines, intellectual property, goodwill, contracts, rights to recover under any insurance policy, causes of action, inventory, cash, Cryptocurrency, Cryptocurrency Wallets, cash equivalents, commodities, commodities futures, precious metals, jewelry, watches, furniture, wine, art, firearms, Domain Names, oil and gas leases, mineral rights, automobiles, watercraft, boats, helicopters and any other thing of value.

9.      The term "*Biden Litigation*" shall refer to *Biden v. Giuliani*, United States District Court for the District of Columbia, No. 2:23-cv-08032, the suit filed by Robert Hunter Biden against Giuliani, Giuliani Partners, Giuliani Group, Giuliani Security & Safety and Giuliani's counsel Robert J. Costello for violations of federal and state computer fraud and abuse statutes and for unfair competition via their alleged unauthorized access to and dissemination of Biden's private digital data.

10.    The term "***Common Sense***" shall mean Giuliani's audio podcast that is owned by Giuliani Communications, LLC and distributed on platforms including, but not limited to, YouTube, Rumble and Spike.

11.    The term "***Communication***" shall mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  For the avoidance of doubt, this may encompass any oral, written, or electronic transmission of information without limitation, including meetings, discussions, conversations, telephone calls, email messages, text messages, Bloomberg messages, chat messages, Instant Bloomberg chat messages, Social Media messages or other messaging platforms, memoranda, letters, analyst reports, telecopies, telefaxes, telexes, conferences, seminars, messages, notes, video tapes, photographs, microfilm, microfiche, magnetic disks or other media of any kind.

12.    The term "***concerning***" shall mean relating to (however remotely), referring to, describing, evidencing or constituting.

13.    The term "***Corporate Records***" shall include articles of association, company bylaws, articles of incorporation, founding documents, partnership agreements, limited liability company agreements, management agreements, meeting minutes, board presentations, policies and resolutions, records of material transactions, approvals of material contracts, records of sale, purchase of real estate, annual reports, trust agreements, accounting and any other Document concerning an entity's organization or material activities.

14.    The term "***Credit Documents***" shall mean any Documents concerning any application or request for an extension of credit of any kind including, but not limited to, mortgages, personal loans, lines of credit and credit cards.  For the avoidance of doubt, this includes, but is not limited to, the following types of Documents:  (a) W-2 forms; (b) pay stubs;

(c) income tax returns; (d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) residential rental Payment histories; (i) other Tax Documents; and (j) any other Document submitted in connection with an application for an extension of credit.

15.    The term "*Cryptocurrency*" shall mean any digital or virtual currency or medium of exchange secured by or otherwise utilizing cryptography.

16.    The term "*Cryptocurrency Wallet*" shall mean any device, physical medium, program, app, service, software or anything similar that stores private keys for Cryptocurrency or Cryptocurrency transactions, whether encrypted or otherwise.

17.    The terms "*Debtor*" or "*Giuliani*" shall mean the Person who filed a petition for chapter 11 relief in the case of *In re Rudolph W. Giuliani*, No. 23-12055 (Bankr. S.D.N.Y.) and who goes by the name of Rudolph W. Giuliani, Rudolph William Giuliani, Rudolph Giuliani, Rudy Giuliani or any other variation of the Debtor's name, including any alter egos, Persons who have apparent authority over the Debtor, Agents of the Debtor and Professionals of the Debtor.

18.    The term "*Debtor Related Entity*" shall refer to and include the following Persons, each as defined herein, and including without limitation any trade names, assumed names or previously registered names:

- Giuliani Partners, LLC

- Giuliani Communications, LLC

- Giuliani Security & Safety, LLC

- Giuliani Group, LLC

- Giuliani & Company, LLC

- Rudolph W. Giuliani, PLLC

4

- WorldCapital Payroll Corporation

- Giuliani Media, LLC

19.    The term "***Debtor Related Person***" shall refer to and include the following Persons, each as defined herein:

- Andrew Giuliani

- James Menges

- Joseph Ricci

- Michael Ragusa

- Robert Kiger

- Ryan Medrano

- Ted Goodman

- Lisa Osofsky

- Robert Costello

- John Huvane

20.    The term "***Deposit Ticket***" shall mean any Document evidencing a deposit of financial assets to a bank or financial institution with information including, *inter alia*, the date, the name of the depositor, the depositor's Account number and the value of the assets being deposited.

21.    The term "***Document***" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A), including but not limited to all writings, drawings, graphs, charts, photographs, sound recordings, images, electronically stored information and other data or data compilations.  This includes documents stored in any medium from which information can be

5

obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, including but not limited to emails, texts, chats, spreadsheets and PowerPoint presentations. A draft or non-identical copy is a separate document within the meaning of this term.

22.     The term "*Domain Name*" shall mean any sequence of alphanumeric characters that forms all or part of the corresponding internet addresses.

23.     The term "*Dominion Litigation*" shall refer to *US Dominion, Inc., et al. v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-00213 CJN, the suit filed against Giuliani by Dominion Voting Systems, who seeks $1.3 billion in damages for harm caused by Giuliani's statements about the 2020 presidential election.

24.     The term "*Dunphy Litigation*" shall refer to *Dunphy vs. Giuliani, et al.*, New York Supreme Court, Index No. 650033 / 2023, the suit filed against Giuliani, Giuliani Partners, Giuliani Group and Giuliani Security & Safety by Giuliani's former employee, Noelle Dunphy, who seeks $10 million in damages for unpaid wages and sexual harassment experienced in her course of employment.

25.     The term "*Financial Records*" shall include any Document or Communication that contains or summarizes information about any Person's or entity's financial activities or condition of the Debtor including, but not limited to, information about the Assets, balance sheets, budgets, cash flow, earnings, revenue, Gifts, Payments, Transfers in Assets or interests, Tax Documents, Credit Documents, Mortgage Documents, QuickBooks files and books and records containing any of the above maintained in the ordinary course of business.

26.     The term "*Freeman Litigation*" shall refer to *Freeman v. Giuliani*, United States District Court for the District of Columbia, No. 1:21-cv-03354-BAH, the defamation trial

regarding Giuliani's defamatory statements about two Georgia 2020 election workers that led U.S. District Judge Beryl A. Howell of the District of Columbia to enter a $148 million default judgment against Giuliani.

27.     The term "*Gift*" shall mean any voluntary or involuntary Transfer of an Asset ***not*** made in exchange for any promise, service, product, or other Asset.  For the avoidance of doubt, "Gift" shall be construed to encompass any engagement rings, other jewelry and things of value exchanged between the Debtor and any Person in connection with any marriage proposal.

28.     The term "*Giuliani Defense Fund*" shall refer to and include The Rudy Giuliani Freedom Fund Legal Defense Trust Fund, Giuliani Defense or any other entity paying, subsidizing or reimbursing legal costs, expenses, judgments, sanctions, monetary awards or penalties incurred or issued in connection with any civil, criminal or bankruptcy proceeding involving Giuliani, including, without limitation, the Freeman Litigation, the Biden Litigation, the Dunphy Litigation and the Dominion Litigation.

29.     The term "*including*" shall mean "including, but not limited to."

30.     The term "*Media Outlet*" or "*Media Outlets*" means any person, group or entity purporting to provide information via any distribution channel, including, but not limited to, cable television, radio, podcasts and YouTube.

31.     The term "*Money Order*" shall mean any prepaid Negotiable Instrument or certificate issued by a government or financial institution that requires the issuer to pay a certain sum of money on demand to a Person.

32.     The term "*Mortgage Documents*" shall include any Documents concerning any application or re-quest for a line of credit secured by a mortgage on any residential or commercial Real Property, including but not limited to:  (a) W-2 forms; (b) pay stubs; (c) income tax returns;

(d) bank Account statements; (e) retirement and investment Account statements; (f) Gift letters; (g) Documents verifying creditworthiness; (h) copies of the purchase and sale agreement; (i) deeds of trust; (j) residential rental Payment histories; (k) other Tax Documents; and (l) any other Document submitted in connection with the above.

33.     The term "*Negotiable Instrument*" shall include any unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it (a) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (b) is payable on demand or at a definite time; and (c) does not state any other undertaking or instruction by the person promising or ordering Payment to do any act in addition to the Payment of money, and any similar instrument.

34.     The term "*Paycheck Protection Program*" shall refer to the business loan program established by the United States government in 2020 through the Coronavirus Aid, Relief and Economic Security Act to assist certain businesses with continuing to pay their employees.

35.     The term "*Payment*" shall mean any voluntary or involuntary Transfer in exchange for any service, product or other Asset, whether previously provided, provided contemporaneously with the Transfer or to be provided in the future, and whether or not such service, product or other Asset was or will be provided to the Person making or causing the Payment to be made.

36.     The term "*Person*" shall mean any natural person or any legal entity, unincorporated association or group of individuals or legal entities, whether formally or informally established, and their Affiliates and Professionals, including, without limitation, any business or governmental entity or association.

37.     The term "*Professional*" shall mean any Person or entity engaged to provide or involved in providing professional services of any kind at any time, including without limitation,

any attorneys, accountants, consultants (including independent consultants), independent contractors, advisors and testifying or non-testifying experts.

38.     The term "***Real Property***" shall have the meaning ascribed to the term in section 102 of the New York Real Property Tax Law.

39.     The term "***Schedules and Statements***" shall mean any and all schedules and statements filed by the Debtor, including, without limitation, Schedule A/B; Schedule C; Schedule D; Schedule G; Schedule I, Schedule J, Summary of Assets and Liabilities; Schedule of Executory Contracts and Statement of Financial Affairs and any amendments or supplements to any of the foregoing.

40.     The term "***Social Media***" shall mean any forum, website, application, or other platform on which persons can create, transmit, share, communicate, or comment upon any information, ideas, or opinions, or otherwise engage in social networking, including but not limited to: Twitter, Rumble, Gab, MeWe, Periscope, Facebook, Discord, Reddit, Imgur, SnapChat, Instagram, Google+, 4chan, 8chan, Tumblr, Youtube, LinkedIn, Flikr, Reddit, Quora, Disquis, Slack, Whisper, Yik Yak, Medium, WordPress, WeChat and instant messaging services such as Signal, WhatsApp, Facebook Messenger, Hangouts, Skype, Line, KakaoTalk, Telegram and CyberDust. Without limiting the foregoing in any manner, and by way of example only, the following are Social Media activity: uploading, posting, commenting, reacting (e.g., "liking" a post), sharing and communicating on comment sections of Social Media.

41.     The term "***Tax Documents***" shall mean any tax return, tax form, tax schedule, declaration, report, claim for refund, assessment or information return, statement or other Document relating to taxes, including any schedules or form or attachment thereto, whether prepared by the taxpayer, in the taxpayer's individual capacity or the taxpayer's capacity as an

employer or employee, a tax preparer, a bank or financial institution, the Internal Revenue Service or any other governmental authority.

42.     The term "***The Rudy Giuliani Show***" shall mean Giuliani's audio podcast that is owned by Giuliani Communications, LLC, and distributed on platforms including, but not limited to, 77 WABC Radio, Apple Podcasts and Spotify.

43.     The term "***Transfer***" shall have the meaning ascribed in 11 U.S.C. § 101(54)(A)–(D), inclusive.

44.     The term "***Uncovering the Truth***" shall mean Giuliani's audio podcast that is owned by Giuliani Communications, LLC, co-hosted with Maria Ryan and distributed on platforms including, but not limited to, Apple Podcasts, 77 WABC Radio and Amazon Music.

45.     The term "***Wire Transfer***" shall mean any electronic Transfer of financial assets from one Account to another Account.

46.     The term "***Withdrawal Slips***" shall mean any Document prepared in order to withdraw financial assets from any Account with information including, *inter alia*, the date, the name of the withdrawer, the withdrawer's Account number and the value of the assets being withdrawn.

47.     The terms "***You***," "***Your***" or "***Yours***" shall refer to Maria Ryan.

48.     The definitions described above shall apply regardless of whether such term is capitalized or not capitalized.

49.     Any references to a Person shall be deemed to include such Person's Agents, accountants, advisors, employees, attorneys and other Professionals, officers, directors, direct or indirect shareholders, members, managers, representatives, Affiliates, subsidiaries, predecessors, successors, assigns, trustees, fiduciaries, settlors, donors, beneficiaries or any other individual or

10

entity acting or purporting to act on behalf of such Person.  In addition, the reference to any trust shall include any current or former trustees, or other fiduciaries, settlors, donors and beneficiaries.

50.     The use of any singular noun shall be construed to include the plural, and vice versa, and a verb in any tense shall be construed as the use of the verb in all other tenses.

51.     The use of the present tense includes the past tense, the use of the past tense shall include the present tense and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

52.     Words and phrases not defined shall have their ordinary and plain meaning within the context of the Federal Rules of Civil Procedure and in accordance with the generally accepted meaning accorded such words and phrases in everyday use in the English language.

## <u>INSTRUCTIONS</u>

1.      These instructions incorporate by reference the requirements and duties of the Federal Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of New York.

2.      Each Request is continuing in nature.  If at any time additional Documents responsive to the Requests come into Your possession, custody or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

3.      You are requested to produce all Documents, Communications and information requested herein that are within Your possession, custody or control or in the possession, custody or control of Your current and former officers, directors, Agents, employees, representatives, Affiliates, Professionals, members, managers, trustees or any other Person or entity acting or purporting to act on Your behalf.

4.      You are requested to produce Documents, Communications and information requested herein on a rolling basis.

5.      If You cannot fully respond to one or more of the Requests after exercising due diligence to secure the information requested thereby, please so state, and specify:  (a) the portion of each Request that cannot be responded to fully and completely; (b) what efforts were made to obtain the requested information; (c) the facts relied upon that support Your contention that the Request(s) cannot be answered fully and completely; and (d) any knowledge, information or belief You have concerning the unanswered portion of any such Request(s).

6.      All Documents shall be produced with metadata in TIFF format with OCR images, provided, however, that documents in Excel format shall be provided in native format.  ***All Documents shall be produced with metadata, including but not limited to the date and time***

*created/sent, author, recipients, cc-copies, bcc-blind copies, family member information, MD-5*

*hash, subject line and title and whether the document contains redactions*.

7.      If the response to any Request consists, in whole or in part, of an objection on the basis of or including undue burdensomeness, then provide those documents that can be produced without undue burden.  For such documents that are too unduly burdensome to produce, describe the process or method required to obtain said documents, the quantity and location of the documents involved and the estimated costs of the search.

8.      If You intend to withhold any responsive Document, Communication or other information on the basis of a claim of attorney-client privilege, work product protection or any other ground of non-disclosure, You shall identify such Document, Communication or information in writing by date of the Document's creation, title/file name/"re line"/subject, addressee/to/cc/bcc, addressor/from, Document type and topic covered and listed with a statement of the grounds alleged for withholding such Document, Communication or other information, including any privilege claimed.

9.      If Your response to any Request is any other objection, You must indicate if Documents are being withheld based on the objection(s), provide all Documents not covered by the objection and state the specific basis of the objection.

10.      If any Document responsive to these Requests has been destroyed, lost or discarded, state when the Document was destroyed, lost or discarded; identify the Person who destroyed, lost or discarded the Document; and, in the event the Document was destroyed or discarded, identify the Person who directed that it be destroyed or discarded.  Additionally, detail the reasons for the destruction, loss or discarding; describe the nature of the Document; identify the Persons who

created, sent, received or reviewed the Document; and state in as much detail as possible the contents of the Document.

11.     Subject to Instruction No. 6 above, Documents should be produced in the manner they are kept in the ordinary course of business.  In producing Documents, all Documents that are physically attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

12.     All Documents shall be produced in such fashion as to identify the custodian or department in whose possession the Document was found and the business address of each Document's custodian(s).

13.     The fact that a Document is produced by another party does not relieve You of the obligation to produce Your copy of the same Document, even if the two Documents are identical.

14.     Unless otherwise specified, the Requests call for the production of Documents and Communications created, drafted, copied or otherwise obtained from January 1, 2019, to the present.

15.     By serving these Requests, the Committee reserves all rights, does not waive any of its rights, and expressly reserves the right to amend, to modify or otherwise to supplement these Requests.

## REQUESTS FOR PRODUCTION

1.      Documents and Communications sufficient to show the nature of any relationship between You and (i) the Debtor, (ii) any Debtor Related Entity or (iii) any Giuliani Defense Fund.

2.      All Documents and Communications regarding Your role with respect to *Common Sense, Uncovering the Truth*, *The Rudy Giuliani Show*, *America's Mayor Live* or any appearances by the Debtor on any Media Outlets.

3.      All Documents and Communications regarding the total revenue, yearly revenue and monthly revenue received by any of the Debtor Related Entities, including, but not limited to, revenue received from *Common Sense, Uncovering the Truth*, *The Rudy Giuliani Show*, *America's Mayor* Live, the Debtor's appearances on any Media Outlets and from the provision or facilitation of security, legal or consulting services.

4.      All Documents and Communications regarding any contracts each of the Debtor Related Entities has entered into, whether oral or written, formal or informal, relating to business dealings, advertisements, endorsements or any other sources of income.

5.      All Documents and Communications concerning the Debtor's filing of his chapter 11 petition, including all Documents and Communications concerning the planning of the filing of his chapter 11 petition.

6.      All Documents and Communications regarding any of the actual, potential, or contemplated liabilities enumerated by the Debtor in the Schedules and Statements, including without limitation all Documents and Communications concerning expenses, fees or other amounts owed to the Debtor, any Debtor Related Entity or any Giuliani Defense Fund by Donald J. Trump, his campaign or the Republican National Committee.

15

7.      All Documents and Communications regarding any Assets in which the Debtor, directly or indirectly through any third party, including any Debtor Related Entity, has a legal, possessory, beneficial, equitable, pecuniary or disputed interest.

8.      All Documents and Communications between You and the Debtor or any other Person concerning any Asset planning or estate planning with respect to, or in consideration of, any creditor's ability to reach any Assets in which the Debtor, directly or indirectly through any third party, including any Debtor Related Entity, has a legal, possessory, beneficial, equitable, pecuniary or disputed interest.

9.      All Documents and Communications concerning any contracts, agreements, Payments, Transfers, Gifts, or distributions of any Assets between You and (i) the Debtor, (ii) any Debtor Related Entity, (iii) any other entity that the Debtor owns, operates, manages or benefits from (directly or indirectly), (iv) any Giuliani Defense Fund, (v) any Debtor Related Person or (vi) any employees, associates or Professionals of the Debtor, any Debtor Related Entity or any Giuliani Defense Fund.

10.     All Documents and Communications concerning the formation, creation, purpose or corporate structure of any Debtor Related Entity or Giuliani Defense Fund, including without limitation any articles of incorporation, LLC agreements, founding Documents, organization Documents, organization charts or other Corporate Records.

11.     All Financial Records for or otherwise concerning any Debtor Related Entity.

12.     Documents and Communications sufficient to show the extent to which You or any Debtor Related Persons had, or continues to have, any role in managing, overseeing or providing advice and other services regarding the Accounts, Assets or Financial Records of the Debtor or any Debtor Related Entity.

16

13.     All Documents and Communications concerning any Accounts belonging to the Debtor or any of the Debtor Related Entities or for which the Debtor or any Debtor Related Entities has or has ever had a legal, equitable, possessory, contingent, beneficiary or pecuniary interest, including:

a.   all monthly Account statements, with itemized transaction-level information;

b.   all yearly Account statements;

c.   any Deposit Tickets;

d.   any Withdrawal Slips, including any Documents and Communications concerning the substance of any withdrawals from any Account;

e.   all negotiated checks or cancelled checks including checks written against or deposited into the Account and any bank checks (including certified checks, cashier's checks, official checks or teller's checks) funded in whole or in part by the Account, including images of the front and back;

f.   all documents and communications sufficient to identify any deposits or withdrawals of all income listed in the Schedules and Statements;

g.   any Money Orders;

h.   any Wire Transfers into, out of, or by any Account, including information concerning the origins, destinations, Account numbers, financial institutions and any other Wire Transfer information or ACH Documentation;

i.   any Negotiable Instruments; and

j.   any Cryptocurrency Wallets.

14.     All audited and unaudited balance sheets, income statements, consolidating schedules, cash flow statements, profit and loss statements, statements of changes in equity,

statements of retained earnings and other financial statements or accounting reports, along with drafts, trial balances and internal accounting work papers of any of the Debtor Related Entities.

15.    All Documents and Communications concerning any actual or potential application (whether or not submitted) for a private loan, including, but not limited to, funds offered through the Paycheck Protection Program, by or on behalf of the Debtor or any Debtor Related Entity.

16.    All Documents and Communications regarding the cash management system of any Debtor Related Entity, including without limitation information pertaining to cash flow from operating activities, cash received from accounts receivable, cash paid for accounts payable, free cash flow to equity and working capital.

17.    All Documents and Communications concerning any fundraising efforts conducted by, on behalf of, or for the benefit of the Debtor or any of the Giuliani Defense Funds, including without limitation any Documents or Communications related to Your participation in those efforts.

## **EXHIBIT 17**

**Affidavit of Service, dated April 19, 2024, confirming service of
the Subpoena for Committee's Rule 2004 Examination and attached
Requests for the Production of Documents upon Maria Ryan**

## **AFFIDAVIT OF SERVICE**

### UNITED STATES BANKRUPTCY COURT
### Southern District of New York

Index Number: 23-12055 (SHL)                                   Date Filed: _____

Debtor: **IN RE: RUDOLPH W. GIULIANI a/k/a RUDOLPH WILLIAM GIULIANI**

For:
ABID OURESHI
AKIN GUMP STRAUSS HAUER & FELD LLP
ONE BRYANT PARK
NEW YORK, NY 10036

Received by **SERVING BY IRVING, INC.**      on the 13th day of May, 2024 at 10:22 am to be served on **MARIA RYAN, 315 SOUTH LAKE DRIVE, APT 5D, PALM BEACH, FL 33480**

I, Evan Balash, being duly sworn, depose and say that on the **14th day of May, 2024** at **12:15 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **Notice of Intent to Serve a Subpoena with Exhibit A SUBPOENA** with the date and hour of service endorsed thereon by me, to: **MARIA RYAN** at the address of: **315 SOUTH LAKE DRIVE, APT 5D, PALM BEACH, FL 33480**, and informed said person of the contents therein, in compliance with state statutes.

**Military Status:** The person served with said documents refused to state whether or not the Defendant is in the Military Service of the United States of America.

**Additional Information pertaining to this Service:**
5/13/2024  2:05 pm  1:50pm to 2:05 (.2Hr) - PS spoke to GUSTAVO, Security/Concierge at front entrance of Subject's building.  Gustavo said with a shake of his head, that subject MARIA RYAN was not there.  However, PS detected some hesitation on Gustavo's part.  PS observed unit and no movement was noted at this time.
5/14/2024  12:25 pm  9:00am to 12:25pm (3.4Hrs) - PS proceeded to subject address and upon arrival, no activity report.  Only that there were 3 personal vehicles in the front parking area (Toyota, Tag 972QMH, Pickup, Tag #Y71YHF and Mercedes, Tag N.H. Tag #3641866) and 2 work vehicles (Mail Van and a Painting Truck).

9:25am - A white female walked out of front entrance of building, who was not the subject.

9:28am - A white male road a bicycle out of the Service/Tenant parking area.  At this time, PS also noted that the same Pickup Truck was parked near the S/T park area (Tag #Z47GBW).

9:51am - Gold Lincoln, Tag #06CEXH, pulled into S/T parking area.  Windows are very dark and PS cannot see inside at this time.  Shortly thereafter (9:54am) the Gold Lincoln exits the S/T park exit and PS does not see any sign of Subject as it exits.

9:55am - A black SUV (unidentified), pulled into the front parking area, but then continued out the other side without stopping.

10:00am - Other than foot traffic and noted activity, no sign of subject has been seen yet.
5/14/2024  12:25 pm  9:00am to 12:25pm (CONT) - 10:01am - PS continues to maintain surveillance.

10:04am - A white male, along with a black male (in a Chef's uniform) entered the S/T park area entrance by foot.

10:10am - A Silver Range Rover, Tag #Z51EQV exits the S/T park area exit, with a blonde Female driver.  No other passengers noted.

10:19am - A Silver Nissan, Tag #Y77MYP pulled into the front parking area.  No sign of subject.

10:42am - Blue Mercedes, Tag #Z44ECH, pulled into the S/T parking area entrance.

## AFFIDAVIT OF SERVICE For 23-12055 (SHL)

10:43am - Black Mercedes, Tag #FIROCK (Prev. ID) pulled into the S/T park area entrance.  Shortly thereafter, the vehicle is moved to the front parking area.  No sign of subject at this time.  PS notes, that the S/T park entrance leads to a back area, where people could possibly be dropping people off or picking people up.  PS is not able to see that back area and advises that it would take a 2-man team to do so.  Back area is not easily accessible and appears to have separate security as well.

10:58am - A White Female exits the front entrance of the building by foot and fits the description of the Subject.  However, based on the initial picture provided, this female appears older.  PS will request additional confirmation, from picture obtained of female.

11:00am - Other than activity reported, and the possibility that the one female walking from building, could be Subject, no other activity to report.
5/14/2024  12:25 pm  9:00am to 12:25pm (CONT) - 11:01am - PS continues to maintain surveillance.

11:04am - An unidentified Silver SUV exited the S/T parking area and headed east on Brazilian Ave.  No sign of subject.

11:21am - Black Mercedes, Tag #FIROCK, pulled from the S/T park area and into the front circular drive area.  An older White Female exited the vehicle (not the subject).  The Concierge helps her put some things in the truck and then leaves.

11:44am - Burgundy Toyota SUV, Tag #EKZK95 entered the front circular area and dropped off a White Male, who goes inside.  Vehicle leaves.

11:58am - PS prepares to go inside building to make attempt of service at the door.  PS clears through Security/Conierge, who at first had an issue with PS entrance.  She was new on the job and PS explained his ID to her.

12:02pm - PS approaches Subject's unit, waiting, listening and looking for any movement.  PS notes that the Blinds have wide spaces in between them, so PS concentrates on those spaces.

12:05pm - Within a few minutes, PS notes movement in the spaces of the blinds.  PS is able to ID the same White Female seen exiting the building earlier, with the same outfit on.  Subject had taken off her glasses and PS was able to Positively ID her as the subject, with additional Pictures provided of the subject.

12:10pm - PS knocked on the Subject's door several times, but no one responded.  PS did see the blinds next to the door move up approximately 1 to 1.5 inches, as if the Subject was looking out the blinds.

12:15pm - PS then called out to Subject to respond to the door and that she had been Identified.  Subject still refused to respond.  PS then boisterously announced that service and advised the Subject that she had been legally served.

12:18pm - Subject served via Identification and Notification. Papers were then secured to the Subject's front door and PS advised Subject of that fact as well. Digital evidence of these activities were obtained and submitted with report.

**Description** of Person Served: Age: 57, Sex: F, Race/Skin Color: White, Height: 5'6", Weight: 140, Hair: Brunette, Glasses: N

## AFFIDAVIT OF SERVICE For 23-12055 (SHL)

Under penalty of perjury, I do hereby certify that I am not a party to the above captioned case and have no interest in the above action, that I am over the age of eighteen, that I have read the foregoing and that the facts stated in it are true, and that I am a **Certified Process Server** in good standing in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida.  Pursuant to F.S. 92.525(2) NO NOTARY IS REQUIRED..

**Dated: May 17, 2024**

_____

**Evan Balash**
CPS #PBC 101

**Serving By Irving, Inc. | 18 East 41st Street, Suite 1600 | New York, NY 10017**
**New York City Dept. of Consumer Affairs License No. 0761160**

**<u>EXHIBIT 18</u>**

**Photo of Maria Ryan, provided in connection with Affidavit of Service confirming service of the Subpoena for Rule 2004 Examination and attached Requests for the Production of Documents upon Maria Ryan**



**<u>EXHIBIT 19</u>**

**May 12, 2024 Screen Capture of Maria Ryan from *Uncovering the Truth***



## **EXHIBIT 20**

**April 30, 2024 through June 21, 2024**
**Email Correspondence between Akin and BFS**

**Brown, Brandon**

---

| | |
|---|---|
| **From:** | Hill, David |
| **Sent:** | Friday, June 21, 2024 1:21 PM |
| **To:** | Gary Fischoff; Heath Berger |
| **Cc:** | Dublin, Philip; Qureshi, Abid; Biblo Block, Rachel; Danovitch, Amelia; Latov, Jeff; Mouhot, Dara |
| **Subject:** | RE: RWG - Rule 2004 Discovery |

Gary and Heath,

Consistent with the Court's instructions at the hearing on Monday, the Committee intends to file its motion to compel and request for sanctions on June 28, 2024, with the Debtor and Debtor Related Entity's response(s) due on July 7, 2024 per Local Bankruptcy Rule 9006-1(a) and the July 10 hearing date.

Sincerely,

**David F. Hill IV**
**Akin**
Direct: +1 212.872.1039 | Internal: 31039
Pronouns: he/him/his (What's this?)

---

**From:** Hill, David
**Sent:** Thursday, June 6, 2024 4:27 PM
**To:** 'Gary Fischoff' <gfischoff@bfslawfirm.com>; 'Heath Berger' <hberger@bfslawfirm.com>
**Cc:** Dublin, Philip <pdublin@AkinGump.com>; Qureshi, Abid <aqureshi@AkinGump.com>; Biblo Block, Rachel <rbibloblock@akingump.com>; Danovitch, Amelia <adanovitch@akingump.com>; Latov, Jeff <jlatov@akingump.com>; Mouhot, Dara <dmouhot@akingump.com>
**Subject:** RE: RWG - Rule 2004 Discovery

Gary and Heath,

As noted below, the Debtor and his entities were explicitly required to complete their document production by May 24, 2024 pursuant to the Bankruptcy Court's April 11, 2024 order.  The Committee has received two productions from the Debtor, via FedEx, on May 6, 2024 and May 8, 2024.  Combined, those productions comprised 15 documents (totaling 477 pages) of various account statements going back no further than January 2023.  The Debtor has not made another production in nearly a month, nor has the Debtor provided any explanation for his failure to comply with the Bankruptcy Court's deadlines.  Moreover, none of the Debtor's entities produced a single document, much less the financial records that are crucial for the Committee's investigation.  Accordingly, absent the Debtor's agreement to immediately complete both his and his entities production, we intend to raise this issue by appropriate motion with the Bankruptcy Court at the June 17, 2024 hearing.

Sincerely,

David

**David F. Hill IV**
**Akin**
Direct: +1 212.872.1039 | Internal: 31039
Pronouns: he/him/his (What's this?)

**From:** Hill, David
**Sent:** Tuesday, April 30, 2024 5:31 PM
**To:** 'Gary Fischoff' <gfischoff@bfslawfirm.com>; 'Heath Berger' <hberger@bfslawfirm.com>
**Cc:** Dublin, Philip <pdublin@AkinGump.com>; Qureshi, Abid <aqureshi@AkinGump.com>; Biblo Block, Rachel <rbibloblock@akingump.com>; Danovitch, Amelia <adanovitch@akingump.com>; Latov, Jeff <jlatov@akingump.com>
**Subject:** RWG - Rule 2004 Discovery

Heath and Gary,

On March 7, 2024, the Committee filed its Rule 2004 motion, which included the document requests that were ultimately issued pursuant to the Bankruptcy Court's April 11, 2024 Rule 2004 discovery order.  As early as March 14, 2024, and memorialized in my March 22, 2024 email, the Committee identified priority documents necessary for its investigation into the Debtor's estate, which you agreed to collect and produce. These included basic financial and account records, all of which would be easily accessible online or by request to the relevant financial institutions.  For more than a month, you have assured us that the documents would be forthcoming but the Committee has yet to receive any. We must therefore insist that the Debtor commence his production immediately of the first priority documents, repeated below for convenience, and complete his production of documents by May 24, 2024, per the Court's Rule 2004 discovery order.  Given the delay in producing easily accessible information, and the deadline established by the Court, I want to make clear that we intend to immediately seek enforcement or other appropriate relief from the Bankruptcy Court in the event that production is not completed by that date.

Sincerely,

David

**FIRST PRIORITY DOCUMENTS**

- Personal Financial Records  (Jan 1, 2023 - Present)
  - Monthly statements for all checking and savings accounts
  - Monthly statements for all credit cards owned or paid by Giuliani
  - Monthly statements for any cryptocurrency accounts
  - Annual Tax Documents
  - Investment account records sufficient to show monthly balances, contributions and withdrawals
  - Retirement account records sufficient to show monthly balances, contributions and withdrawals

- Records of Payments, Gifts, and Other Transfers (Jan 1, 2023 – Present)
  - By Giuliani to or for the benefit of family members, employees, and other closely-affiliated persons, including Maria Ryan
  - Between Giuliani and Giuliani-owned entities
  - Between Giuliani-owned entities and other Giuliani-owned entities

- Family-Related Documents
  - All records and agreements relating to the divorce settlement between Rudy Giuliani and Judith Giuliani
  - Records of alimony payments
  - Records of any court-ordered payments, including to Giuliani's mother-in-law

**David F. Hill IV**
**Akin**

One Bryant Park | New York, NY 10036-6745 | USA | Direct: +1 212.872.1039 | Internal: 31039
Fax: +1 212.872.1002 | dhill@akingump.com | akingump.com | Bio
Pronouns: he/him/his (What's this?)

**<u>EXHIBIT 21</u>**

**June 5, 2024 through June 21, 2024**
**Email Correspondence between Akin and Maria Ryan**

**Brown, Brandon**

---

| | |
|---|---|
| **From:** | Hill, David |
| **Sent:** | Friday, June 21, 2024 1:15 PM |
| **To:** | Maria Ryan |
| **Cc:** | Qureshi, Abid; Biblo Block, Rachel; Danovitch, Amelia; Latov, Jeff; Mouhot, Dara; Brown, Brandon |
| **Subject:** | RE: In re Giuliani - Committee Subpoena |

Dear Ms. Ryan,

As noted below, the Bankruptcy Court will hold a hearing on the Committee's forthcoming motion to compel and for sanctions on July 10, 2024. The Committee will file its motion on June 28, 2024 and, pursuant to Local Bankruptcy Rule 9006-1(a), any response you may wish to file is due on July 7, 2024.

Sincerely,

**David F. Hill IV**
**Akin**
Direct: +1 212.872.1039 | Internal: 31039
Pronouns: he/him/his (What's this?)

---

**From:** Maria Ryan <Maria.Ryan@giulianipartners.com>
**Sent:** Tuesday, June 18, 2024 7:52 AM
**To:** Hill, David <DHill@akingump.com>
**Cc:** Qureshi, Abid <aqureshi@AkinGump.com>; Biblo Block, Rachel <rbibloblock@akingump.com>; Danovitch, Amelia <adanovitch@akingump.com>; Latov, Jeff <jlatov@akingump.com>; Mouhot, Dara <dmouhot@akingump.com>; Brown, Brandon <bbrown@akingump.com>
**Subject:** Re: In re Giuliani - Committee Subpoena

I think you've been duped! If you paid money for this service I would get your money back!

Sent from my iPhone

> On Jun 17, 2024, at 7:52 PM, Hill, David <DHill@akingump.com> wrote:
>
> Dear Ms. Ryan,
>                 Please find attached the affidavit of service from May 14, 2024.  As you are aware, the Bankruptcy Court held a discovery conference today regarding your non-compliance with the Committee's subpoena and set a July 10, 2024 hearing date for the Committee's anticipated motion to compel and request for sanctions.  Please let us know immediately if you will comply with the Committee's subpoena.
>
> Sincerely,
>
> **David F. Hill IV**
> **Akin**

Direct: <u>+1 212.872.1039</u> | Internal: <u>31039</u>
Pronouns: he/him/his (<u>What's this?</u>)

---

**From:** Maria Ryan <<u>Maria.Ryan@giulianipartners.com</u>>
**Sent:** Monday, June 17, 2024 6:58 AM
**To:** Hill, David <<u>DHill@akingump.com</u>>
**Subject:** Re: In re Giuliani - Committee Subpoena

**\*\*EXTERNAL Email\*\***

Dear Sir,

I hope this email finds you well.
I am afraid you are mistaken. I have NEVER received a subpoena.

In God we trust,

Dr Maria
Sent from my iPhone


On Jun 7, 2024, at 1:51 PM, Hill, David <<u>DHill@akingump.com</u>> wrote:

Dear Ms. Ryan,

Further to my email below, the Committee has still not heard from you and you have not complied with the Committee's subpoena.  Absent your immediate response, and agreement to comply with the subpoena, we intend to file a motion in the Bankruptcy Court to compel your compliance early next week.

Sincerely,

David Hill

**David F. Hill IV**
**Akin**
Direct: <u>+1 212.872.1039</u> | Internal: <u>31039</u>
Pronouns: he/him/his (<u>What's this?</u>)

---

**From:** Hill, David
**Sent:** Wednesday, June 5, 2024 7:13 PM
**To:** 'maria.ryan@giulianipartners.com' <<u>maria.ryan@giulianipartners.com</u>>
**Cc:** Qureshi, Abid <<u>aqureshi@AkinGump.com</u>>; Biblo Block, Rachel <<u>rbibloblock@akingump.com</u>>; Latov, Jeff <<u>jlatov@akingump.com</u>>
**Subject:** In re Giuliani - Committee Subpoena

Dear Ms. Ryan,

We represent the Official Committee of Unsecured Creditors (the "Committee") in *In re Rudolph W. Giuliani*, 23-12055 (SHL) (Bankr. S.D.N.Y.).  On May 14, 2024, you were served with a subpoena issued by the Committee pursuant to an order of the United States Bankruptcy Court for the Southern District of New York.  That subpoena required you to produce documents to Committee counsel (Akin) by June 4, 2024.  You made no such production, and we have not heard from you.  If you have counsel, then please respond as soon as possible with your counsel's contact information.  If you do not have counsel, then please contact me immediately to discuss your compliance with the subpoena.

Sincerely,

**David F. Hill IV**
**Akin**

One Bryant Park | New York, NY 10036-6745 | USA | Direct: +1 212.872.1039 | Internal: 31039
Fax: +1 212.872.1002 | dhill@akingump.com | akingump.com | Bio
Pronouns: he/him/his (What's this?)

This email message was sent from Akin Gump Strauss Hauer & Feld LLP. The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message

This email message was sent from Akin Gump Strauss Hauer & Feld LLP. The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message

<Maria Ryan - Affidavit of Service.pdf>

# **EXHIBIT 22**

**Contract between Frankspeech, Inc.
and the Debtor, dated June 8, 2024**

## TALENT SERVICES AGREEMENT

This Talent Services Agreement ("Agreement"), dated as of the date fully executed below, is entered into by and between Frankspeech, Inc. ("Company") and Rudy Giuliani, Giuliani Communications LLC ("Contractor" or "Talent"). Company and Contractor may be individually referred to as a "Party" and collectively as the "Parties."

## RECITALS

**WHEREAS**, Company is the owner and operator of a Television News Network providing programming via Satellite, Cable, Roku, Apple TV, Amazon Firestick, BEK, MVPD and OTT Platforms;

**WHEREAS**, Company desires to contract with Contractor in order to render on-air services on the Network, pursuant to the terms and conditions set forth in this Agreement; and

**NOW THEREFORE**, in consideration of the promises and the mutual covenants contained herein, the adequacy and sufficiency of where is hereby acknowledged, the Parties understand and agree as follows:

**1. Services.**

Talent shall provide professional services as an on-air talent for the Company on FrankSpeech TV1, in accordance with the terms and conditions set forth herein. Talent shall faithfully and diligently perform, the following duties (collectively, the "On-Air Duties") to the best of Talent's ability:

(i) Serve as anchor of one-hour show on Frankspeech TV1 (the "Program") to air five days per week, Monday through Friday from 7 p.m. to 8 p.m.; and

(ii) Prepare, present, and deliver programming including live and recorded news and/or talk, promos and other programming elements for the Company on FrankSpeech TV1, and all associated analog, digital and on-line streams of programming, multicast and splits, in and for all media and all broadcast or transmission platforms, including all terrestrial, satellite, electronic and digital simulcasts of the Network or any other broadcasts via the Internet, mobile applications, podcasting, radio, or any other methods or platforms now existing or hereinafter invented ("Network").

**2. Term.**

a. <u>Term</u>. The term of this Agreement shall commence on June 17, 2024 ("Effective Date"), and shall continue, unless sooner terminated as provided herein, for a term ending on the 365th day following the Effective Date (the "Term").

**3. Contract Fee.**

During the Term and conditioned upon Contractor's full performance of all obligations hereunder, as full compensation for performance by Contractor of all obligations hereunder, Company shall pay Contractor in bi-weekly or monthly installments an Annual Contract Fee of $180,000 per year.

**4. Other Compensation.**

a. <u>Commissions</u>. During the Term and conditioned upon Contractor's full performance of all obligations hereunder, Contractor shall receive commissions equal to the following:

    i. Two percent on all Genesis Gold sales linked to Contractor's unique promo code and resulting from Contractor's active reads of Genesis Gold advertisements on the Program;

    ii. One percent of the proportion of advertiser sales revenue attributable to the Program, from all advertisers whose advertisements are read on the Program (not including Genesis Gold sales, and not including advertisers covered by paragraph 4.a.iii or 4.a.iv); the proportion of advertising revenues from any given advertiser attributable to the Program shall be determined based on the Program's viewership compared to overall viewership of all programs including the advertiser's advertisements during the same period;

    iii. Forty percent on all advertiser revenue brought to the Network by Contractor resulting from advertising on the Program, provided that the advertiser is approved by the Company; and

    iv. In the event that an advertiser brought to the Network by Contractor advertises across the Network or on Network programs other than Contractor's Program, five percent of the revenues from that advertiser resulting from advertisements on programs other than Contractor's Program.

b. In addition, during the Term and conditioned upon Contractor's full performance of all obligations hereunder, Contractor will be eligible for quarterly bonuses, should such bonuses be made available by the Company, beginning after the Company goes public (and no earlier than in the third quarter of 2024). Bonus metrics shall be set by the Company at its

discretion during beginning portion of the relevant quarter, and bonuses, if any, will be paid out in the second month of the following quarter.

**6. Termination.**

a. For Cause. Company may terminate this Agreement for Cause (as defined below), with or without notice, at any time. If Company exercises its right to terminate for Cause, its obligations under this Agreement shall cease immediately and Company shall thereafter be released and discharged of any from any further obligations hereunder, except for payment of any monies previously due and owing to Contractor and as yet unpaid. Contractor shall not be entitled to any separation payment, severance payment or other payment whatsoever. For purposes of this Agreement the term "Cause" means: (i) willful, habitual or substantial neglect of duties by Contractor; or Talent; (ii) any material breach of this Agreement; (iii) theft; (iv) use or possession of, or being under the influence of, illegal drugs during working hours; (v) negligence in the performance of duties likely to cause or actually causing personal injury or property damage; (vi) failure to comply with Company rules or regulation on a consistent basis; (vii) any violation of FCC rules and regulations, including, without limitation, rules relating to indecency, payola and/or plugola; (viii) sexual or other unlawful harassment; (ix) excessive absenteeism or tardiness and (x) Talent's failure or refusal to perform the services required under this Agreement for a period of three (3) or more days for reasons other than vacation, illness, accident, injury, incapacity or authorized leave of absence.

b. Without Cause.

i. Company or Contractor may terminate this Agreement and Talent's services without cause, effective upon 60 days' written notice.

ii. If the Company terminates for any reason other than cause, Contractor shall be entitled to receive a contract termination payment pay equal to the portion of his then-current Annual Contract Fee covering the period equal to the remainder of the Term.

iii. Prior to the payment of any amount pursuant to

Section 5.b.ii, Contractor shall execute and deliver a general release in favor of Company and its affiliated entities in a form satisfactory to Company and Contractor.

c. Incapacity. If due to a physical or mental disability, including without limitation, impairment of Contractor's voice, Contractor becomes unable to perform all of the essential On Air Duties set forth in Section I above, as well as the other services to be provided pursuant to this Agreement, even with a reasonable accommodation of such disability, Company may suspend or terminate this Agreement at its sole discretion, without any further obligation to Contractor under this Agreement.

## 7. Representations and Warranties.

Contractor represents and warrants to Company that Contractor: (i) is competent, of legal age, and otherwise able and free to enter into this Agreement; (ii) is entering into this Agreement voluntarily and that Contractor's services hereunder and compliance with the terms and conditions hereof will not conflict with or result in Contractor's breach of any agreement to which Contractor is a party or by which Contractor may be bound; (iii) has no outstanding business or personal commitments inconsistent with any of the terms of this Agreement or the services to be rendered hereunder or that would expose the Company to litigation, injury or ridicule; (iv) and has not and shall not enter into any agreements that in any way interfere or conflict with his obligations, promises, or warranties hereunder.

### 8. Indemnification.

a. Contractor's Indemnity. Contractor will at all times (notwithstanding the expiration or termination of this Agreement) indemnify and hold harmless Company and its affiliated entities, including, without limitations, any networks, systems or platforms over which the Program is broadcast or distributed, their licensees, sponsors and sponsors' advertising agencies, and all of their respective officers, directors, agents, representatives and employees, and all of their successors and assigns, from and against any and all claims, damages, liabilities, costs and expenses, including, without limitation, reasonable attorneys' fees and expenses, arising out of or resulting from: (i) the use of any materials furnished by

perpetuity ("Property Rights"). Contractor agrees and

... first class, postage prepaid, by registered or

Contractor hereunder; or (ii) any breach by Contractor of any representation, warranty, covenant or agreement made by Contractor herein. Company shall promptly notify Contractor of any litigation or claim to which an indemnity hereunder may apply. Contractor shall fully cooperate with Company in connection with the defense of any claim or litigation.

b. **Company's Indemnity**. Company will at all times (notwithstanding the expiration or termination of this Agreement) indemnify and hold harmless Contractor from and against any and all claims, damages, liabilities, costs and expenses, including, without limitation, reasonable attorneys' fees and expenses, arising out of or resulting from: (i) the use of any materials furnished by Company in connection with the production, rehearsal, or broadcast of any Program or any social media content; and (ii) any breach by Company of any representation, warranty, covenant or agreement made by Company herein; or (iii) any act or omission of Company prior to the date of this Agreement. Contractor shall promptly notify Company, of any litigation or claim to which an indemnity hereunder may apply. Contractor shall fully cooperate with Company in connection with the defense of any claim or litigation.

**2. Public Morals.**

If Talent shall commit any act or become involved in any situation or occurrence which, in Company's reasonable opinion, will bring Contractor, Company and/or Network into public disrepute, contempt, scandal or ridicule, will provoke, insult or offend the community or will reflect unfavorably upon Contractor, Company and/or Network or any of the Company's advertisers or sponsors, Company shall have the right to terminate this Agreement for Cause. The foregoing shall not limit Company's right to terminate for any other reason or cause.

**10. Proprietary Rights/ Grant of Rights.**

a. **Intellectual Property**. The Program and all of its components created by the Contractor for the Company, at any time during the Term or any extension thereof, shall be the exclusive property of Company and throughout the Universe in perpetuity ("Property Rights"). Contractor agrees and

acknowledges that: (i) as between Contractor and Company, Company shall be the sole and exclusive OWNER of the Program, including all its contents thereof, every format, idea, story board, lay out, theme, logo, slogan, and script (ii) all rights, title, and interest in the Program belongs to the Company in perpetuity; and (iii) Contractor shall claim no right, title, interest, power, privilege, control or property right over the Program.

b. Limitations. Notwithstanding the foregoing, Contractor shall not be restricted from using Contractor's own real or professional names or nicknames, or from portraying herself. The Parties recognize that Contractor's personal social media accounts shall remain the personal property of Contractor and that Contractor has the right to engage in personal social media activities.

c. Use of the Program. Company and its licensees shall have the unilateral right, without limitation, to use, exploit, license, distribute, display, broadcast and rebroadcast the Program in whole or in part, as edited or re-edited, in any media, now known or hereafter developed, throughout the Universe, in perpetuity. Neither Company nor any third party shall be liable for payment of additional compensation to Contractor for any use of the Programs, the Rights, and/or the Intellectual Property permitted herein, and the compensation contained in Sections 3 and 4 of this Agreement will constitute full consideration for all such use.

d. Use After Term. Upon expiration or termination of this Agreement, Company shall retain the right to sell, syndicate, distribute, broadcast or license for broadcast the Program(s) which the Contractor has created and hosted for the Company. It is understood and agreed that the rights granted to Company by this Agreement include the broadest possible right to cut, edit, change, modify, dub, add to or subtract from the Program hereunder.

11. Name and Likeness.

a. During the Term, Contractor hereby grants to Company as well as Company's affiliates, licensees and distributors, a royalty-free and irrevocable license throughout the Universe to use, simulate and portray in any and all media Talent's name and likeness in connection with the Program; in connection with the Company's internet and social-networking platforms; and in connection with advertising, publicizing and otherwise

14. Dispute Resolution.

exploiting the Program or promoting Company's businesses generally. All use of Talent's name and likeness under this section shall be done in consultation with Contractor.

b. <u>Limitations</u>. Notwithstanding the foregoing, Contractor shall not be restricted from using Contractor's own real or professional names or nicknames, or from portraying himself. The Parties recognize that Contractor's personal social media accounts shall remain the personal property of Contractor, and that Contractor has the right to engage in personal social media activities.

### 12. Force Majeure.

If the regular operations of the Company and/or Network are suspended because of an act of God; act of war or terrorist action; fire; lockout, strike or other labor dispute: riot or civil commotion; act of public enemy; enactment, rule, order or act of government or governmental instrumentalities (whether federal, state, local or foreign); failure of technical facilities; failure or delay of transportation facilities or other cause of similar or different nature beyond Company's control, Company may suspend the performance of Contractor's services and the payment of compensation hereunder during the continuation of such suspension of operations. If any such suspension of operations without payment to Contractor shall continue for a period of six (6) consecutive weeks, then either party may terminate the Agreement with no further liability hereunder. No such suspension of Company or Network's operations or Contractor's services shall operate to extend the Term.

### 13. Confidentiality.

Contractor agrees and acknowledges that in the course of rendering services to Company and Company's clients, sponsors, advertisers and customers, Contractor has acquired and will acquire access to and become acquainted with confidential information about the professional business, financial, personal, and family affairs of Company, its parent, subsidiaries and affiliates, executives, on-air talent and other employees, that is non-public, confidential or proprietary in nature. Both during and at all times after the Term, Contractor shall keep secret all non-public information, matters and materials of Company, including, but not limited to: know-how, trade secrets, mail order and customer lists, programming strategies, formats, pricing policies, operational methods, any information relating to the Company's programming, products or product development, processes, artwork, designs, graphics, services, budgets, business, contests, promotions and financial plans, marketing and sales plans and techniques, employee lists and other business, financial, commercial and technical information presently owned, or at any time in the future developed by Company or its agents, or consultants, or obtained from third parties under an agreement of confidentiality (collectively, "Confidential Information"), to which Contractor has had or may have access.

Contractor recognizes that in order to safeguard Company's legitimate interests, it is necessary for Company to protect and shield from disclosure all confidential information. Contractor shall not use or disclose the Confidential Information to any person other than: (i) Company, its authorized employees and such other persons to whom Contractor has been instructed to make disclosure by Company, in each case only to the extent required in the course of Contractor's service to Company or as otherwise expressly required in connection with court process; (ii) as may be required by law and then only after consultation with Company to the extent possible, or (iii) Contractor's personal advisors for purposes of enforcing or interpreting this Agreement, or to a court for the purpose of enforcing or interpreting this Agreement, and who in each case shall be informed as to the confidential nature of such Confidential Information and, as to advisors, their obligation to keep such Confidential Information confidential.

## 14. Dispute Resolution.

a. Mediation. The Parties agree that, prior to the initiation of any action or proceeding seeking to enforce any provision of, or based on any right arising out of this Agreement, the Patties shall first be obligated to mediate in good faith. Unless expressly agreed in a signed writing, the mediation is to occur within sixty (60) days of the demanding party's provision of a written demand. In the event that a full settlement is not achieved during mediation, the Parties agree that any dispute, action or proceeding seeking to enforce any provision of, or based on any right arising out of this Agreement, shall then be settled exclusively by arbitration as set forth hereunder and the Parties hereby each waive the right to a jury trial before any court of competent jurisdiction.

b. JURY TRIAL WAIVER. THE PARTIES SHALL AND HEREBY DO WAIVE A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTER-CLAIM BROUGHT OR ASSERTED BY EITHER OF THE PARTIES HERETO AGAINST THE OTHER ON ANY MATTERS WHATSOEVER RELATING TO OR ARISING OUT OF THE FORMATION, PERFORMANCE, COMPLIANCE WITH, ENFORCEMENT AND/OR INTERPRETATION OF THIS AGREEMENT.

c. Requirement. All claims, controversies, disputes and other matters in question arising out of, or relating to this Agreement, the breach hereof or the rights, privileges, responsibilities or duties between or among the Patties, shall be decided by confidential arbitration in Denver, Colorado, in accordance with the Commercial Arbitration Rules of the American Arbitration Association ("AAA") then existing unless all of the Parties to such claim, controversy or dispute or other matter in question unanimously agree to the contrary. The provisions contained in this Paragraph shall be specifically enforceable under the prevailing arbitration law.

d. Procedure. The arbitrator or arbitrators for any proceeding conducted hereunder shall be a person with experience in the entertainment business that is selected in accordance with the AAA's Commercial Arbitration Rules, then in effect. The remedial authority of the arbitrator or arbitrators will be the same as, but no greater than, would be

the remedial power of a court having jurisdiction over the Parties and their dispute. The arbitrator or arbitrators will render a written opinion based on Colorado law, and an award, which will be final and binding upon the Parties.

e. **Equitable Remedies.** Notwithstanding anything to the contrary contained in this Paragraph, Company (but not Contractor) may apply for and obtain specific performance, temporary or preliminary injunctive relief from a court of competent jurisdiction pending completion of an arbitration of a disputed matter pursuant to this Agreement, and such application shall not be deemed incompatible with the Parties' agreement to arbitrate such disputed matter or a waiver of Company's right to arbitrate the disputed matter.

f. **Enforcement.** Any judgment upon the award rendered by the arbitrator may be entered in any state or federal court located in New York County, New York, having jurisdiction of the matter. The arbitrator or arbitrators will have the authority to grant any equitable and legal remedies that would be available in any judicial proceeding instituted to resolve a disputed matter, subject to any waivers of such remedies made by any Party in this Agreement. The Parties agree to submit to the *in personam* jurisdiction of the state or federal courts located in New York County, New York, for purposes of confirming any such award and entering judgment thereon. The Parties waive any and all objections that they may have as to jurisdiction or venue in any of the above courts.

g. **Costs.** If either party brings an arbitration proceeding to enforce its rights under this Agreement, the substantially prevailing patty (as determined by the arbitrator) shall be entitled to recover from the other party all expenses incurred by it in preparing for and in trying the case, including, but not limited to, investigative costs, court costs and reasonable attorneys' fees.

**15. Third-Party Litigation and Related Proceedings.**

Contractor agrees to cooperate with reasonable requests by Company and its attorneys, both during and after the Term, in connection with any litigation or other proceeding arising out of or relating to matters in which Contractor is involved or was involved during the Term. Contractor's cooperation shall include, without limitation, providing assistance to Company's counsel, experts and consultants, and providing truthful testimony in pretrial and trial or other related proceedings. In the event that Contractor's cooperation is requested after the termination of this Agreement, Company will seek to minimize interruption to Contractor's schedule to the extent reasonably possible.

16. Miscellaneous.

a. Independent Contractor. Contractor's relationship with the Company is that of an independent contractor, and nothing in this Agreement is intended to, or should be construed to, create a partnership, agency, joint venture, or employment relationship.

b. Conformity to Law. If any one or more provisions of this Agreement should be determined to be illegal, invalid, or otherwise unenforceable by a court/arbitrator of competent jurisdiction or be invalid or invalidated or unenforceable by reason of any law or statute, then to the extent and within the jurisdiction invalid or unenforceable, it shall be limited, construed or severed and deleted therefrom, and the remaining portions of this Agreement shall survive, remain in full force and effect, and continue to be binding and shall not be affected and shall be interpreted to give effect to the intention of the parties insofar as that is possible.

c. Headings. The headings used in this Agreement are for the convenience of the Parties and for reference purposes only and shall not form a part of or affect the interpretation of this Agreement.

d. Construction. This Agreement shall be construed without regard to any presumption or other rule requiring construction against the Party causing this Agreement to be drafted, since the attorneys for the respective Parties have submitted revisions to the text hereof.

e. Representation By Counsel. Each Party acknowledges and agrees that it either: (i) has engaged its own legal counsel to advise it with regard to the provisions of this Agreement, and the effect of such provisions on the legal rights of such Party; or (ii) having had the opportunity to engage such separate legal counsel, has freely, voluntarily and knowingly elected not to do so.

f. Notice. Any notice or other communications hereunder shall be in writing and shall be deemed to have been duly given: (i) when delivered personally, (ii) one day after delivery to an overnight delivery courier (i.e., Federal Express), or (iii) on the fifth day following the date of deposit in the United

States mail if sent first class, postage prepaid, by registered or certified mail. The addresses for such notices shall be as follows (or any other such address as one party may specify by notice to the other): _____

If to Company: _____

Frankspeech Inc.
Attn: Katelyn Gamlin
1550 Audubon Rd.
Chaska, MN 55318
katelyn@lindellmanagement.com

With courtesy copies to (which shall not constitute notice):

Doug Wardlow, Esq.
Jeremiah Pilon, Esq.
1550 Audubon Rd.
Chaska, MN 55318
doug@lindellmanagement.com

jpilon@lindellmanagement.com

If to Contractor:

_____

_____

_____

_____

_____

g. <u>Entire Agreement</u>. This Agreement shall constitute the entire agreement concerning the subject matter hereof between the Patties, superseding all previous agreements, letter agreements, letters or memoranda of understanding, negotiations, and representations made prior to the effective elate of this Agreement.

h. <u>Amendment; Waiver</u>. This Agreement may be amended, modified, superseded, canceled, renewed or extended, and the terms hereof may be waived, only by a written instrument executed by the Patties or, in the case of a waiver, by the Patty waiving compliance. The failure of either Party at any time or times to require performance of any provision hereof shall in no manner affect the right at a later time to enforce the same. No waiver by either Party of the breach of any term or covenant contained in this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be, or construed as, a further or continuing

waiver of any such breach, or a waiver of the breach of any other term or covenant contained in this Agreement.

i. <u>Successors and Assigns</u>. This Agreement shall inure to the benefit of the Company's successors and assigns. Company may assign its rights under this Agreement, in whole or in part; provided however, that such assignment shall not reduce or otherwise affect Contractor's rights and interests hereunder. Contractor may not assign, hypothecate, encumber or otherwise grant any rights or interests in this Agreement to any third party, except that Contractor may assign his rights to receive payments by pledge, creation of a security interest, or another document reasonably accepted to Company. The provisions of this Section notwithstanding, Talent shall have the right to provide services through a loan out company, subject to execution of a mutually agreeable loan out agreement between Company and Talent's loan out company.

j. <u>Further Assurances</u>. Each Party hereto covenants and agrees promptly to execute, deliver, file or record such agreements, contracts, instruments, registrations, certificates and other documents and to perform such other and further acts as the other Party hereto may reasonably request or as may otherwise be necessary or proper to consummate and perfect the transactions contemplated hereby.

k. <u>Counterparts; Facsimile or PDF Signatures</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Any signed copy of this Agreement delivered by facsimile transmission or by e-mail in portable document format (PDF), shall for all purposes be treated as if it were delivered containing an original manual signature of whose signature appears in the facsimile or e-mail, and shall be binding upon such Party in the same manner as though an originally signed copy had been delivered.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the day and year first written above.

THE COMPANY

Frankspeech Inc.

Dated: 6/11/2024

By: _____

Its: ToDD Carter

CTO

**CONTRACTOR**

Giuliani Communications LLC

Dated: June 8, 2024

Rudy Giuliani

Its:

2

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed as of the day and year first written above.

**THE COMPANY**

Frankspeech Inc.

Dated: 6/11/2024

By: _____
Its: ToDD Carter
     CTO

**CONTRACTOR**

Dated: 6-8-24

Dr. Maria Ryan, individually

11