AKIN GUMP STRAUSS HAUER & FELD LLP
Ira S. Dizengoff
Philip C. Dublin
Abid Qureshi
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

Rachel Biblo Block (admitted *pro hac vice*)
2300 N. Field St., Suite 1800
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

*Counsel to the Official Committee of*
*Unsecured Creditors of Rudolph W. Giuliani*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re:                                                            :      **Chapter 11**
                                                                  :
**RUDOLPH W. GIULIANI**                                           :      **Case No. 23-12055 (SHL)**
**a/k/a RUDOLPH WILLIAM GIULIANI,**                               :
                                                                  :
            **Debtor.**                                           :
-------------------------------------------------------------------x

**OBJECTION OF THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS TO**
**DEBTOR'S APPLICATION TO CONVERT CHAPTER 11 TO CHAPTER 7**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the

chapter 11 case of Rudolph W. Giuliani a/k/a Rudolph William Giuliani (the "Debtor" or

"Giuliani"), by and through its undersigned counsel, hereby files this objection (the "Objection")

to the Debtor's *Application to Convert Chapter 11 to Chapter 7* [Docket No. 277] (the "Conversion

Application"). In support of this Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Since day one, Giuliani has regarded this case and the bankruptcy process as a joke, hiding behind the façade of an elderly, doddering man who cannot even remember the address for his second multimillion dollar home[1] and claims impending homelessness if he must sell that second multimillion dollar home.  In reality, Giuliani has treated this Court, the bankruptcy process and the Committee the same way he treated the D.C. District Court[2] and the Freeman Plaintiffs in the Freeman Litigation, with utter disrespect and without accountability.  Giuliani is playing the delay game.  He played games with the D.C. District Court in continually agreeing to comply with court orders and then failing to do so, and he has been doing the same thing in this chapter 11 case.  Now, in order to try to avoid the appointment of a chapter 11 trustee, avoid complying with discovery obligations under this Court's 2004 Order and avoid the Committee successfully investigating the true extent of Giuliani's duplicitous conduct, he, not his retained counsel, filed a two-paragraph application devoid of legal support and analysis to convert this chapter 11 case to one under chapter 7.  Giuliani's goal is to continue to avoid responsibility for his malfeasance with the hope that a chapter 7 trustee will not act with the same resolve as the Committee to hold Giuliani accountable for his conduct.  In short, by the Conversion Application, Giuliani is trying to use a one-pager to bring about further delay by purporting to initiate a fundamental change in the trajectory of this case and to the parties involved therein.

2.      This action begs the question—why now?  Why did he seek to convert his chapter 11 case to a chapter 7 case (x) just two weeks after he asked this Court for an extension of

---

[1]     *See* 341 Meeting Tr. at p. 9:5-13 (Giuliani requested from his counsel a document listing the address for his Florida condominium because he "just want[ed] to be sure of the address," and then, once he receives that document, confirms "[t]here it is" and proceeds to read an incorrect address into the record.)

[2]     Terms not otherwise defined in this Preliminary Statement shall have the meanings ascribed to them in this Objection.

his exclusive periods to file and solicit votes on a plan of reorganization and (y) about two weeks after Maria Ryan, an employee of Giuliani's "alter ego" business who supposedly "do[es] all the business deals" for that company and on whom, for reasons unknown, Giuliani's bankruptcy counsel supposedly relies "to gather information for the [individual Debtor's] monthly reports," submitted a letter to this Court hyping Giuliani's efforts to progress toward a successful reorganization?[3]  In the Second Exclusivity Motion, Giuliani claims to be "moving forward with purpose and direction" and likewise touts the "progress" he has made in the chapter 11 case.  *See* Docket No. 261-1, ¶ 27.  What happened to all that purpose, direction and progress in two weeks?  Beyond the real (and likely) possibility that false representations were made to this Court in those pleadings, the Committee has some other ideas.

3.      Hours after Giuliani filed the Second Exclusivity Motion, this Court held a hearing on the Committee's Trustee Motion.  That hearing, however, ended ominously for Giuliani, with the Court concluding that "there are reasons to be very concerned here."[4]  With a decision on the Trustee Motion looming and the Committee having filed a motion to compel Giuliani and his "alter ego" businesses to comply with the 2004 Order, Giuliani may have seen the writing on the wall and come to the conclusion that if he is going to be ousted as a debtor in possession, then he might as well get rid of the Committee and its investigation on his way out and, among other things, get the benefit of further delaying disclosure of his and his businesses' financial records.

4.      To that point, in April, Giuliani agreed to the Committee's Bankruptcy Rule 2004 discovery motion.  Giuliani signed off on the deadline by when he and his wholly-owned companies would produce documents.  Then, Giuliani went dark, ignored the deadline, flouted this

---

[3]      *See* Docket No. 264, pp. 1, 2.

[4]      June 17 Hearing Tr. at 119:7.

Court's 2004 Order and dared the Committee to chase him. The Committee, more motivated than ever and acting as a fiduciary should, chased him, and, on June 28, 2024, filed a motion seeking to compel Giuliani's compliance with this Court's 2004 Order and the imposition of sanctions. The very next business day, Giuliani filed the Conversion Application, which, again, if granted, would solve his problem of the Committee and its investigation and sanctions motion, and dare a new party, a chapter 7 trustee, to start the chase all over again.

5.      Given Giuliani's disgraceful behavior in this bankruptcy case, preceded by his disgraceful behavior in the Freeman Litigation, it comes as no surprise that Giuliani was recently disbarred in New York. The New York Supreme Court's decision on Giuliani's disbarment just as easily could have been written about Giuliani and this bankruptcy case. This chicanery is what he does and who he is.[5]

- The New York Supreme Court wrote: "[T]here is nothing on the record before us that would permit the conclusion that respondent lacked knowledge of the falsehood of the numerous statements that he made, and that he had a good faith basis to believe them to be true."[6] The same conclusion applies here with respect to Giuliani's false, misleading and deficient financial disclosures made throughout his bankruptcy case and false and misleading statements included in his pleadings on this Court's docket.

- The New York Supreme Court wrote: "The seriousness of respondent's misconduct cannot be overstated."[7] The same conclusion applies here with respect to Giuliani's behavior throughout the bankruptcy case and as detailed further herein, in the Trustee Motion and the Committee's reply in support of the Trustee Motion.

- The New York Supreme Court wrote: "[The] respondent repeatedly and intentionally made false statements."[8] The same conclusion applies here with respect to Giuliani's monthly operating reports, schedules of assets and liabilities and statement of financial affairs. He has known about errors and deficiencies therein for months and done nothing to address them.

---

[5]  *See In the Matter of Rudolph W. Giuliani, a Suspended Att'y*, No. 2021-00506 (N.Y. App. Div. July 2, 2024).

[6]  *Id.* at p. 28.

[7]  *Id.*

[8]  *Id.*

- The New York Supreme Court wrote: "[R]espondent's disruptive and disrespectful behavior during the hearing[] significantly outweighs the mitigation."[9] The same conclusion applies here with respect to Giuliani's disruptive and disrespectful behavior through his bankruptcy case, except there is no mitigation. Giuliani's gamesmanship has been on full display throughout the chapter 11 case, as he agrees to deadlines, blows those deadlines, makes up his own deadlines, blows his made-up deadlines, ignores this Court's orders, rulings and guidance, manufactures endless emergencies and requests the same relief three times in six months without even trying to address any of the Court's concerns in its previous rulings denying such relief.

6.     The New York Supreme Court disbarred Giuliani to protect the public. This Court needs to appoint a chapter 11 trustee and keep the Committee in existence to protect Giuliani's creditors and the integrity of the bankruptcy process. Giuliani has shown us who he is, and now it is time to put a chapter 11 trustee in place who can show us his actual financial records, work collaboratively with the Committee on its ongoing investigations, move this case forward and give creditors the long-awaited distributions they deserve. Simply, the Conversion Application is a farce, and Giuliani's attempted gamesmanship cannot be countenanced by this Court.

## BACKGROUND

**A.     General Background and the Committee's Trustee Motion**

7.     On December 21, 2023, Giuliani filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). For the time being, Giuliani has continued in possession of his property and is managing his affairs as a debtor and debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

8.     On January 12, 2024, the Committee was appointed by the United States Trustee for the Southern District of New York [Docket No. 46]. On January 16, 2024, the Committee selected Akin Gump Strauss Hauer & Feld LLP as its counsel. On February 9, 2024, the Committee selected Global Data Risk LLC as its specialized forensic financial advisor.

---

[9]    *Id.* at p. 29.

9.     As has been discussed at length, although this bankruptcy case has been pending for almost seven months, Giuliani has done virtually nothing to advance this case, despite the Court's patience and in spite of the Committee's efforts.  The Debtor's actions, however, have not merely been neutral, and among the most reprehensible of them are his (i) flouting of this Court's 2004 Order;[10] (ii) complete disregard for his reporting and disclosure obligations as a debtor in possession; (iii) continued defamation of the Freeman Plaintiffs;[11] and (iv) repeated deployment of transparent delay tactics to pursue his own self-serving ends, such as filing three motions for relief from the stay in less than six months without even trying to meet the stepping stones that this Court established in order to warrant such relief.[12]

10.     In light of the Debtor's continuing bad conduct, on May 28, 2024, the Committee filed the *Motion of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani for Entry of an Order Directing the Immediate Appointment of a Trustee Pursuant to 11 U.S.C. § 1104* [Docket No. 233] (the "Trustee Motion"), which seeks entry of an order immediately appointing a chapter 11 trustee for the Debtor's estate.

11.     A hearing on the Trustee Motion was held on June 17, 2024 (the "June 17 Hearing").  At the hearing, the Court echoed many of the Committee's concerns regarding the Debtor's progress in this chapter 11 case:

- ***On the Debtor's unauthorized payment of business expenses***:  "And so we all have the experience of giving people a certain amount of time to . . . figure out that bankruptcy requires something different perhaps than what they're used to doing.  But we've been here too

---

[10]   The "2004 Order" means the order granting the Committee's Bankruptcy Rule 2004 motion [Docket No. 164].

[11]   The "Freeman Plaintiffs" means Ms. Ruby Freeman and Ms. Wandrea' ArShaye Moss, who the Debtor repeatedly publicly defamed leading to an approximately $148 million in compensatory and punitive damages against the Debtor (such judgment, the "Freeman Judgment" and the related lawsuit, the "Freeman Litigation").

[12]   With respect to item (iv), the reason for the litany of lift stay motions is clear:  Giuliani knows that he will not win an appeal of the Freeman Judgment; instead, his efforts to lift the stay further his primary objectives of delay and avoidance of accountability.  Just like he is doing with the Conversion Application.

long to be having that discussion." June 17 Hearing Tr. at 69:25-70:4.

- **On the Debtor's inaction with respect to selling the Florida Condo**: "So no one has sort of taken any hints or any action to deal with that." *Id.* at 74:21-22.

- **On the general lack of progress**: "I'm not sure there's been any significant progress since the time we heard that [second] motion to lift stay." *Id.* at 74:24-75:1.

- **On the Debtor's inability to comply with his administrative obligations**: "I do think that the failure to retain a bookkeeper, an accountant is a troubling fact." *Id.* at 76:19-21.

As of the filing of this Objection, the Court has not ruled on the Trustee Motion.

**B.    The Debtor's May Monthly Operating Report**

12.    After the June 17 Hearing, Giuliani filed his monthly operating report for the period from May 1, 2024 through May 31, 2024 [Docket No. 267] (the "May MOR" and collectively with all of the monthly operating reports filed in this case, the "MORs") on June 25, 2024. Predictably, and despite his counsel's insinuation at the June 17 Hearing that the May MOR would be filed timely,[13] Giuliani filed the May MOR after the filing deadline, consistent with his general approach towards deadlines in this case and cavalier attitude with respect his obligations as a debtor in possession. While the May MOR included more supporting documentation than previously filed MORs, in this instance, quantity did not equal quality.

13.    Indeed, the May MOR, like all prior MORs, is riddled with inaccuracies and inconsistencies with the Debtor's prior MORs, statement of financial affairs and schedules, directly contradicts statements Giuliani has made in other pleadings under penalty of perjury and suggests that the Debtor has made several purchases on behalf of his wholly-owned, non-Debtor business, Giuliani Communications, LLC ("GC"). The May MOR raises more questions than answers,

---

[13]    "[T]he May report should be done in the next day or so." June 17 Hearing Tr. at 96:16.

firmly reinforces Giuliani's inability and/or unwillingness to provide accurate and timely financial reporting and underscores his view that he somehow has immunity from the burdens and obligations that apply to all chapter 11 debtors.

## C.    The Debtor's Recent Pleadings

14.    In addition to his deficient May MOR, Giuliani has filed multiple third-rate pleadings in the recent weeks that are impossible to reconcile with the Conversion Application. These recent pleadings clearly evidence an intention to exit chapter 11 after over six months of enjoying its benefits and ignoring its burdens with minimal damage to his brand and businesses and reckless disregard for his creditors.  And, consistent therewith, Ted Goodman, who purportedly is an employee or consultant for GC or Giuliani himself, his title and role dependent on the day that you ask, inexplicably issued a statement on Giuliani's abrupt change in course by calling the bankruptcy case—a case that Giuliani voluntarily commenced—"an entirely partisan and politically motivated proceeding."[14]

15.    First, inconsistent with the Conversion Application, on June 17, 2024, the Debtor filed the *Debtor's Application for an Order Further Extending Debtor's Exclusive Periods During Which Debtor May File a Plan and Solicit Acceptances Thereof Pursuant to 11 U.S.C. § 1121* [Docket No. 261] (the "Second Exclusivity Motion").  By the Second Exclusivity Motion, the Debtor sought a second extension of his exclusive periods to file a chapter 11 plan and solicit votes thereon despite the fact that no progress has been made in the chapter 11 case.

16.    Then, again inconsistent with the Conversion Application, on June 25, 2024, the Debtor filed the *Debtor's Renewed Motion for an Order Modifying the Automatic Stay for the Limited Purpose of Allowing the Debtor to Proceed with Prosecuting and Perfecting the Freeman*

---

[14]    *See* Evan Ochsner, *Giuliani Moves to Liquidate Assets to Pay $148 Million Debt (1)*, BLOOMBERG L. (July 8, 2024), https://news.bloomberglaw.com/bankruptcy-law/giuliani-moves-to-liquidate-his-assets-to-pay-creditors.

*Appeal Before the D.C. Circuit* [Docket No. 269-1] (the "Third Stay Relief Motion").  Incredibly, by the Third Stay Relief Motion, the Debtor directly spurned this Court's warnings[15] and requested for the third time in less than six months that the automatic stay be lifted so that he could pursue an appeal of the Freeman Judgment.

17.    Finally, on July 1, 2024, just two weeks after the filing of the Second Exclusivity Motion and the June 17 Hearing, less than one week after the filing of the Third Stay Relief Motion, and before either of the foregoing motions could be heard, the Debtor filed the Conversion Application.  Coincidentally, or perhaps not coincidentally, the Conversion Application was filed one business day after the Committee's Motion to Compel Production.[16]

18.    These successive filings are completely incongruous and evidence the actions of a frantic debtor who knows the jig is almost up.  Spurred by the June 17 Hearing, the possibility of an appointment of a chapter 11 trustee and the Committee's Motion to Compel Production, Giuliani has adopted an erratic case strategy of throwing *everything* at the wall and seeing what sticks with no regard for the merits of such actions, his fiduciary duties, principles of judicial economy, general bankruptcy law or the interests of his creditors and estate.

---

[15]    The Court noted at the June 17 Hearing that, when denying the Second Stay Relief Motion, he was "clear that the reason for the denial, among other things, was [his] concern that the debtor viewed the case as solely about an appeal of [the Freeman] litigation.  And that progress had been exceedingly slow is one way of putting it."  June 17 Hearing Tr. at 74:8-12.  The Court further opined on the lack of progress in the chapter 11 case noting that "there hasn't been progress on a whole host of other things.  In fact, I'm not sure there's been any significant progress since the time we heard that [second] motion to lift stay."  June 17 Hearing Tr. at 74:23-75:1.

[16]    As a result of the Debtor's blatant disregard for this Court's 2004 Order, the Committee filed the *Motion of the Official Committee of Unsecured Creditors for an Order: (I) Compelling the Debtor and Certain Related Parties to Produce Documents in Response to the Committee's Requests for the Production of Documents, (II) Holding Them in Contempt and (III) Granting Sanctions* [Docket No. 275] (the "Motion to Compel Production") on June, 28, 2024.

## **OBJECTION**

**A.    The Debtor Does Not Have an Absolute Right to Convert His Chapter 11 Case to a Case Under Chapter 7**

19.    The few sentences composing the entirety of the Conversion Application include the Debtor's "wish" to convert his chapter 11 case to a case under chapter 7.  Unfortunately for the Debtor, this bankruptcy case is not a Disney movie, and the Debtor's wish is not this Court's command.  Courts in this District have definitively ruled that a debtor does not have an absolute right to convert a chapter 11 case to a case under chapter 7.  *See In re Adler*, 329 B.R. 406, 411 (Bankr. S.D.N.Y. 2005).

20.    In *In re Adler*, Judge Lifland faced a similar—but less extreme—situation, where a debtor filed a motion to convert his chapter 11 case to a case under chapter 7 to avoid having his case dismissed with prejudice pursuant to a pending dismissal motion filed by the United States Trustee.  *Id.* at 408, 410 (finding that "it is apparent the sole motive for the Debor's conversion motion is to avoid the possibility of dismissal with prejudice.").  That debtor argued that "his right to convert is absolute."  *Id.* at 408.  While the Conversion Application contains no argument whatsoever, the Debtor's counsel, who notably did not sign the Conversion Application, made a similar statement at the status conference on July 3, 2024.  But, in *In re Adler*, Judge Lifland, in no uncertain terms, rejected that argument for three primary reasons:   (i) the language of Bankruptcy Code section 1112(a) states the debtor "may" convert his case but not that the court "shall" honor the debtor's request; (ii) the fact that the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")[17] require a debtor to provide specific *notice* to creditors of the *hearing*

---

[17]    Bankruptcy Rule 2002(a) provides, "the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of: . . . (4) in a chapter 7 liquidation, a chapter 11 reorganization case, or a chapter 12 family farmer debt adjustment case, the hearing on the dismissal of the case or the conversion of the case to another chapter."  Moreover, Bankruptcy Rule 1017(f)(2) provides, "[c]onversion or dismissal under §§ 706(a), 1112(a), 1208(b), or 1307(b) shall be on motion filed and served as required by [Bankruptcy] Rule 9013."  Bankruptcy Rule 9013 provides, "[a] request for an order . . . shall be by

on a motion to convert pursuant to Bankruptcy Code section 1112(a) evidences a court's continuing authority to determine that motion and the lack of an automatic right to conversion; and (iii) other courts have recognized that conversion may be inappropriate in situations involving "extreme circumstances" or otherwise engaged in an equitable analysis of the facts. *Id.* at 408-09.

21.    With respect to "extreme circumstances" and the equitable analysis, such require a determination as to the existence of atypical circumstances such as bad faith, abuse of process or other gross inequity, "usually involv[ing] egregious conduct on the part of the debtor, who is seeking to use the bankruptcy process abusively and selfishly rather than for its intended purpose." *Id.* at 409.  As is clear from even a cursory review of the docket in this case and as detailed in the Trustee Motion, the Committee's related reply and herein, Giuliani checks all of those boxes (and more)—bad faith (check), abuse of process (check), gross inequity (check) and using the bankruptcy process abusively and selfishly (check and check).

22.    Moreover, as was made clear in *In re Adler*, the Conversion Application does not cut off the Court's right to hear and determine another pending motion, like the Trustee Motion. *Id.* at 411 (ruling that "the Debtor's inferred position that once he moves to convert the case, the court is bereft of any ability to hear and determine a pending motion . . . ***is plainly incorrect***." (emphasis added)).  And other courts have taken this view.  Another bankruptcy court, confronted with a pending motion to appoint a chapter 11 trustee and a later-filed motion by the debtor to convert his chapter 11 case to a case under chapter 7, ordered the appointment of a chapter 11 trustee, which ruling was affirmed by the district court.  *See Rajysan, Inc. v. Off. Comm. of*

---

written motion, unless made during a hearing.  The motion shall state with particularity the grounds therefor, and shall set forth the relief or order sought."  The Debtor's two-paragraph document clearly fails to "state with particularity the grounds" for the relief requested in the Conversion Application.

*Unsecured Creditors (In re Rajysan, Inc.)*, No. 19-4325 PA, 2019 U.S. Dist. LEXIS 247214, at \*5-6 (C.D. Cal. Oct. 11, 2019).  There, the bankruptcy court explained:

> Because of this unusual situation where I do have two motions pending, the Chapter 11 trustee motion was pending first and then this motion by the debtor was filed . . . .  I'm also going to say that I believe a Chapter 11 trustee is a better option and I'm exercising my discretion to rule on the trustee motion and grant the trustee motion, which renders the other motion that was on the table today, the debtor's motion to convert, moot.

*In re Rajysan, Inc.*, No. 17-11363, Apr. 30, 2019 Hearing Tr. at 56:22-25-57:1-5.  And that is precisely what the Court should do here:  grant the pending Trustee Motion rendering the Conversion Application moot.

23.    Notably, in the Conversion Application, the Debtor did not cite to one case contradicting the holding in *In re Adler* or a court's ability to control its own docket and sequence the order in which motions filed thereon are heard.  In fact, in the Conversion Application, the Debtor did not cite to any cases at all.

24.    Additionally, the Court's decision in *In re Adler* is further supported by, and completely aligns with, the Supreme Court's ruling in *Marrama v. Citizens Bank of Massachusetts*.  In that case, the Supreme Court was confronted with a voluntary chapter 7 debtor who misrepresented his assets and the value thereof in his schedules of assets and made a number of misleading or inaccurate statements therein.  549 U.S. 365, 368 (2007).  At the debtor's meeting of creditors, the trustee advised the debtor's counsel that he intended to recover certain property as an asset of the estate.  *Id.* at 368.  Thereafter, the debtor filed a notice, treated as a motion, to convert his case to a case under chapter 13.  *Id.* at 368-69.  The trustee argued that the debtor's request to convert was made in bad faith and would constitute an abuse of the bankruptcy process.  *Id.* at 369.

25.     The bankruptcy court denied the conversion request, rejected the debtor's argument that the errors in his schedules were attributable to "scrivener's error," ruled there is no "Oops" defense to the concealment of assets and concluded the debtor's case was a "bad faith" case. *Id.* at 369-70.  Before the bankruptcy appellate panel, the debtor argued he had an absolute right to convert his case, which was rejected, and that argument was rejected again by the Court of Appeals for the First Circuit. *Id.* at 370.

26.     The Supreme Court affirmed and focused on two Bankruptcy Code provisions: sections 706(a) and (d). *Id.* at 370, 374.  Those provisions include the same pertinent language as the sections at issue here, sections 1112(a) and (f).

| 11 U.S.C. § 706(a) | 11 U.S.C. § 1112(a) |
|---|---|
| **The debtor may convert a case under this chapter to a case under** chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title.  Any waiver of the right to convert a case under this subsection is unenforceable. | **The debtor may convert a case under this chapter to a case under** chapter 7 of this title unless— (1) the debtor is not a debtor in possession; (2) the case originally was commenced as an involuntary case under this chapter; or (3) the case was converted to a case under this chapter other than on the debtor's request. |
| **11 U.S.C. § 706(d)** | **11 U.S.C. § 1112(f)** |
| **Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.** | **Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.** |

The Supreme Court ruled that a "broad description of the right [to convert] as 'absolute' fails to give full effect to the express limitation in subsection (d)." *Id.* at 372.  Where a debtor engages in bad-faith conduct, that debtor "is not a member of the class of 'honest but unfortunate debtor[s]' that the bankruptcy laws were enacted to protect," and such debtor, in essence does not qualify to be a debtor under another chapter of the Bankruptcy Code pursuant to section 706(d) (or,

applicable here, section 1112(f)), and any such motion to convert should be denied.[18]  *Id.* at 373-

74; *see also Kearney v. Unsecured Creditors Comm. (In re Kearney)*, 625 B.R. 83, 86 (10th Cir.

2021) (relying on the Supreme Court's *Marrama* in affirming a bankruptcy court decision denying

a debtor's motion to convert his chapter 11 case to chapter 7 as "[s]ection 1112(a) does not give

debtors an absolute right to convert").

27.    Moreover, the Supreme Court underscored "the broad authority granted to

bankruptcy judges to take any action that is necessary and appropriate "to prevent an abuse of

process," which authority "is surely adequate to authorize an immediate denial of a motion to

convert . . . that may provide a debtor with an opportunity to take action prejudicial to creditors."

*Marrama*, 549 U.S. at 375.  Similarly, the Supreme Court recognized that every federal court has

"inherent power . . . to sanction 'abusive litigation practices.'"  *Id.* at 376.

28.    Here, the Debtor has no qualms about using every possible opportunity to take

action prejudicial to his creditors and/or that constitutes abusive litigation practices, whether that

be (i) filing knowingly inaccurate, misleading and false information about his assets, liabilities and

finances and leaving that bad information on the docket for months and counting; (ii) flouting this

Court's Rule 2004 Order, an order to which he expressly agreed; (iii) creating unnecessary

administrative expense claims by continuing his outrageous prepetition behavior against the

Freeman Plaintiffs; (iv) taking positions on which parties rely and then taking diametrically

opposite positions without explanation days later; (v) filing pleadings that are so deficient that they

---

[18]    In particular, the Supreme Court looked to Bankruptcy Code section 1307(c), which provides that a chapter 13
case may be dismissed or converted to a case under chapter 7 "for cause" and concluded that a finding of cause
is "tantamount to a ruling that the individual does not qualify as a debtor under [c]hapter 13."  *See id.* at 373-74.
Relevant here, Bankruptcy Code section 707(a) provides that a chapter 7 case may be dismissed "for cause."  As
set forth below, the Committee appreciates that cause exists for dismissal (whether that cause is considered under
section 707 or section 1112); however, the Committee remains steadfast in its view that Bankruptcy Code
section 1104 mandates the appointment of a chapter 11 trustee in light of the Committee's showing in the Trustee
Motion (i) of cause and (ii) that such appointment is undoubtedly in the best interests of the Debtor's estate and
creditors.

can only be described as disrespectful to this Court and even his own counsel will not sign them; (vi) funneling compensation and income-producing opportunities to his wholly-owned "alter ego"; and (vii) knowingly making and continuing to make unauthorized payments for the benefit of, or directly to, his wholly-owned businesses and their employees, reported girlfriend and unretained professionals.

29.      This Debtor continues to show the Committee and this Court that he is not constrained by rules, process, integrity or the truth and will continue to take action that is prejudicial to his creditors and constitutes abusive litigation practices.

**B.      A Chapter 11 Trustee Should Be Appointed**

30.      As argued in Trustee Motion and at the June 17 Hearing by the Committee, the appointment of a chapter 11 trustee in this case is warranted pursuant to both Bankruptcy Code sections 1104(a)(1) and 1104(a)(2).  *See* Trustee Motion at ¶¶ 37-83.  The facts have not changed since the June 17 Hearing.  Indeed, the Debtor's actions since this Court heard the Trustee Motion underscore the dire need for a chapter 11 trustee to step in to (i) curb the Debtor's efforts to derail the resolution of this case and blatantly skirt the Court's orders, (ii) supplement and work with the Committee on its ongoing investigation of potential sources of value rightfully belonging to the estate and (iii) expeditiously bring order to this case so that an equitable conclusion can be reached.

1.      **Giuliani's May MOR Further Evidences His Dishonesty, Untrustworthiness, Gross Mismanagement and Incurable Conflicts of Interest**

31.      As discussed above, Giuliani filed his May MOR four days after the filing deadline. Although he has had over six months to wrap his head around the disclosure requirements in chapter 11, and despite the fact that the Committee has painstakingly identified the inaccuracies,

inconsistencies and other problematic points in his previously filed MORs,[19] Giuliani's May MOR

contained the same and more errors and deficiencies, particularly:

- The beginning of month cash balance for May ($64,751) does not match the end of month cash balance for the preceding month ($14,658). *See* May MOR at p. 2; April MOR[20] at p. 2.

- The total disbursements ($32,961) do not match the total expenses for the reporting period ($32,936). *See* May MOR at pp. 2, 9. It is not clear whether this is the result of a single $25 discrepancy or a multitude of undisclosed transactions that netted to a $25 difference.

- The May MOR sets forth that no payments were made outside the ordinary course of business without court approval or made to or on behalf of insiders. *See id*. at p. 8. However, supporting documentation shows that Giuliani appears to have made several Amazon purchases on behalf of GC, for the purpose of his podcast and livestream, including, for example, a NEEWER 73.6" Horizontal Tripod. *See* May MOR [Docket No. 267-4] at p. 18.[21]

- The May MOR is the first MOR in which Giuliani has reported income from salary and wages. *See* May MOR at p. 9. However, in the Trustee Opposition,[22] Giuliani stated that he deposits any income received for his services into GC. This income is then used to pay GC's expenses, including the salaries of GC's two full-time employees and three part-time employees and other business expenses. According to the Trustee Opposition, Giuliani only receives a salary if GC's revenue exceeds its expenses. *See* Trustee Opposition at ¶ 15. However, the May MOR shows that GC's inflows that month were insufficient to cover expenses and the two payments aggregating to $45,000 that Giuliani received, suggesting that the determination of whether Giuliani receives a salary, and the amount of such salary, is completely arbitrary. *See* May MOR [Docket No. 267-3] at p. 28. Furthermore, his "salary" payments do not go through ADP Payroll,

---

[19]   *See generally Motion of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani to Compel the Debtor to (I) File Delinquent Monthly Operating Reports and (II) File Timely Future Monthly Operating Reports* [Docket No. 197]; *see also* Trustee Motion at ¶¶ 19-25, 51-54, 62-63.

[20]   The "April MOR" means the Debtor's monthly operating report for the period from April 1, 2024 through April 30, 2024 [Docket No. 224].

[21]   Once again, the Debtor cannot help himself from continuing these prepetition commingling practices, despite the Court's remonstrance that such practices are unacceptable in a bankruptcy case. In response to the Debtor's assertion that "bad habits die slowly" and that the Debtor was "still engaged in some of that pre-petition activity where he'd pay [a business expense]," the Court noted that "bankruptcy requires something different perhaps than what [the Debtor is] used to doing" and that "we've been here too long to be having that discussion." June 17 Hearing Tr. at 69:12, 69: 15-16, 70: 2-4.

[22]   The "Trustee Opposition" means the *Debtor's Opposition to the Motion of the Official Committee of Unsecured Creditors Rudolph W. Giuliani for Entry of an Order Directing the Immediate Appointment of a Trustee Pursuant to 11 U.S.C. § 1104* [Docket No. 250].

which suggests these payments are not actually on account of salary and Giuliani is not actually an employee of GC. *See id.* at p. 29.

- The May MOR shows that Giuliani is not timely paying his postpetition bills, specifically, his domestic support obligations. *See* May MOR at p. 9.

- Exhibit 10 to the May MOR attaches a savings account bank statement for an account ending in 820, but there is no account ending in 820 in the list or chart of Giuliani's accounts in the May MOR. *Compare* May MOR [Docket No. 267-3] at p. 24 *with* May MOR [Docket No. 267-1] at pp. 1, 3.

- Giuliani's Amended Schedule A/B [Docket No. 129] lists only one checking account and one savings account. *See* Amended Schedule A/B at p. 4. However, the May MOR discloses three checking accounts and one (or possibly two based on the preceding paragraph) savings account(s). *See* May MOR [Docket No. 267-1] at pp. 1, 3.

- The May MOR discloses a $12,000 payment for charges related to Giuliani's apartment in New York City. *See* May MOR [Docket No. 267-4] at p. 15. However, this amount does not match the amount due as stated in the property listing[23] ($10,933) or the amount disclosed in the Debtor's Schedule J [Docket No. 70] ($10,934). *See* Schedule J at p. 13.

- The May MOR reveals a "Rollover IRA" balance for 2022 of $2,463,314.14. *See* May MOR [Docket No. 267-2] at p. 33. However, it is unclear whether this IRA is a separate IRA from the two IRAs disclosed in his Amended Schedule A/B, both of which are listed with much lower balances than $2,463,314.14. *See* Amended Schedule A/B at p. 5. Additionally, Giuliani discloses just one IRA in the May MOR. *See* May MOR [Docket No. 267-1] at p. 1.

  o The May MOR discloses a $837,000 IRA distribution from 2022 that is not disclosed in his Amended Statement of Financial Affairs [Docket No. 99]. *Compare* May MOR [Docket No. 267-2] at p. 33 *with* Amended Statement of Financial Affairs at p. 2.

  o The May MOR discloses IRA distributions totaling $962,408.59 for 2023 that are not disclosed in his Amended Statement of Financial Affairs. *Compare* May MOR [Docket No. 267-2] at p. 33 *with* Amended Statement of Financial Affairs at p. 2.

  o The May MOR discloses two IRA distributions from April 2024 that are not disclosed as receipts (or income) in the Debtor's April MOR. *Compare* May MOR [Docket No. 267-2] at p. 33 *with* April MOR at p. 2.

---

[23]   *45 E 66th St APT 10W, New York, NY 10065*, ZILLOW, https://www.zillow.com/homedetails/45-E-66th-St-APT-10W-New-York-NY-10065/244903133_zpid/ (last visited July 8, 2024).

o The May MOR discloses a $100,000 IRA distribution from December 1, 2023; however, the Debtor's December MOR[24] discloses a postpetition $100,000 IRA distribution on December *22*, 2023. *Compare* May MOR [Docket No. 267-2] at p. 33 *with* December MOR [Docket No. 80-1] at p. 1.

• The May MOR states that GC "has and has had" only two employees, Maria R. Ryan and Vanessa D. Fenderson. *See* May MOR [Docket No. 267-1] at p. 2. However, in the Trustee Opposition, Giuliani states that he is an employee of GC and, in addition, GC has two full-time employees and three part-time employees. *See* Trustee Opposition at ¶ 15.

Although the Committee is not surprised by the lack of clarity and conflicting disclosures contained in the May MOR, such is par for the course for Giuliani, it is truly unbelievable that a former prosecutor and "America's Mayor" has such a "troubling attitude vis-a-vis the law and the court system."[25]

32.     But Giuliani's lack of respect for this Court, the bankruptcy process and all of the parties involved therein goes further.  Giuliani deliberately misrepresents his intentions to this Court as a way to stave off unfavorable rulings that could hold him accountable for his transgressions.[26]  Such behavior cannot, and should not be rewarded by effectively absolving Giuliani of any and all responsibility to his creditors, the majority of which are litigation creditors who have been irreparably harmed by Giuliani's malicious and intentional actions, and accountability to this Court and the bankruptcy process.

33.     In sum, the Debtor's May MOR provides further evidence of his dishonesty, untrustworthiness, gross mismanagement of his affairs and his incurable conflicts of interest with

---

[24]   The "December MOR" means the Debtor's monthly operating report for the period from December 21, 2023 through December 31, 2023 [Docket No. 80].

[25]   *In re Giuliani*, No. 23-12055 (SHL) (Bankr. S.D.N.Y. May 14, 2024), May 14 Hearing Tr. at 32:15.

[26]   At the June 17 Hearing, Debtor's counsel noted that "[t]he Debtor will – I mean, if the Court says we want reporting, we'll get reporting on [GC]."  June 17 Hearing Tr. at 78:17-19.  However, the disclosures regarding GC's finances in the May MOR were cursory and incomprehensible at best and directly contradicted the Debtor's other disclosures throughout the chapter 11 case.

respect to his non-Debtor, wholly-owned businesses and emphasizes the critical need for the appointment of a chapter 11 trustee. *See In re Ashley River Consulting, LLC*, No. 14-13406 (MG), 2015 Bankr. LEXIS 1008, at *28-29 (Bankr. S.D.N.Y. Mar. 31, 2015); *see also In re Denrose Diamond*, 49 B.R. 754, 759-60 (Bank. S.D.N.Y. 1985). Either Giuliani completely lacks the ability and mental aptitude to sufficiently execute his disclosure obligations, or he is intentionally misleading the Court and the Committee by filing MORs so insufficient to be useless. Although the Committee is inclined to believe the latter based on Giuliani's actions throughout the case, either option constitute grounds for the mandatory appointment of a chapter 11 trustee.[27]

### 2. Giuliani's Transparent Case Strategy Reveals His Duplicitous Motives and Further Shows His Dishonesty

34. Apart from the subpar May MOR, Giuliani made three major, self-serving moves in a mere two weeks. Within the span of just fourteen days, Giuliani filed the Second Exclusivity Motion, the Third Stay Relief Motion and the Conversion Application. The Conversion Application was a bolt from the blue. Without any warning to the Committee, Giuliani filed a one-page document with no supporting facts or law and the wrong case number in the caption, in an effort to fundamentally alter this case, his creditors' involvement therein and his own obligations. *See generally* Conversion Application.

35. Within the time between the filing of the Third Stay Relief Motion and the Conversion Application, seven documents were filed on the docket of this chapter 11 case: (i) a letter from the Freeman Plaintiffs in support of their motion for summary judgment with respect to the nondischargeability of their claim; (ii) an affidavit of service for the Third Stay Relief

---

[27] The Court recognized this reality at the June 17 Hearing noting that "if there's gross mismanagement, there can be plenty of things that are – don't involve bad intent but are a reflection of the facts on the ground to say this – these are the obligations. They're not happening. And therefore, they satisfy one or more of the tests that are identified." June 17 Hearing at 72:1-6.

Motion; (iii) three notices to produce documents pursuant to the Court's 2004 Order filed by the Committee; and (iv) the Motion to Compel Production and a declaration in support thereof.

36.     Giuliani, having been served with the Motion to Compel Production on a Friday, scrambled to file the Conversion Application the following Monday without any explanation as to the requested relief, without noticing the document and without setting it for hearing.  With the relief requested in the Motion to Compel Production and the potential appointment of a chapter 11 trustee looming, Giuliani clearly felt the walls closing in on him and defaulted to his factory setting—distract, delay and avoid obligations at all costs.

37.     The Conversion Application was not filed out of a genuine desire to quickly liquidate the Debtor's assets for equitable distribution to his creditors.  It is one last thinly-veiled attempt to game the system and is further support that the Debtor is dishonest, not trustworthy and has no respect for this Court or his creditors.  In light of the foregoing, it is clearer than ever that a chapter 11 trustee must be appointed, the Committee must remain in place to continue its investigation and the Debtor must finally be held accountable.

> **3.     Appointment of a Chapter 11 Trustee, Rather than Conversion, Is in the Best Interests of the Creditors**

38.     The facts and circumstances of this case support one unequivocal conclusion—the appointment of a chapter 11 trustee, rather than conversion to chapter 7, is in the best interests of all the Debtor's creditors and estate.  For all the reasons stated above and in the Trustee Motion, the Debtor is unable to carry out his fiduciary duties to his estate and creditors.  As such, an independent fiduciary must be appointed.  Here, a chapter 11 trustee, supported by the Committee's institutional knowledge, goodwill and arsenal of resources, is better equipped to deal with the

serious investigations that are required of the Debtor,[28] the idiosyncrasies of this case and the games that the Debtor will surely try to continue to play.

39.    Moreover, equity demands the appointment of a chapter 11 trustee rather than conversion.  Many of the Debtors' creditors have been waiting years for their day in court with the Debtor and have put in significant time and effort to progress this chapter 11 case.  By the Conversion Application, the Debtor seeks to wrest any influence his creditors have in this case and all negotiating power and input they have with respect to their recovery away from them.  The Conversion Application is a blatant attempt to get rid of the Committee.  Given the Debtor's pre and postpetition history of eluding and misleading his creditors, the fact that the Debtor might escape accountability commensurate with his deplorable actions simply because he filed a farcical pleading before the Court had the opportunity to appoint a chapter 11 trustee seems particularly inequitable.

40.    For all the foregoing reasons, the Court should immediately appoint a chapter 11 trustee.  After the chapter 11 trustee is appointed, he or she can undergo an analysis and determine whether proceeding in chapter 11, converting to chapter 7 or another alternative is in the best interest of the creditors.

**C.    The Committee Appreciates that Grounds Exists for Dismissal of the Bankruptcy Case**

41.    Although the Committee has maintained—and continues to maintain—that the appointment of chapter 11 trustee is in the best interests of the creditors and the appropriate path forward given the history of this case and the Debtor's actions, the Committee appreciates that

---

[28]    This includes investigations related to the assets listed on the Debtor's schedules that could yield additional recoveries for creditors, such as the Debtor's claim for fees for the provision of services to Donald Trump.  *See* Schedule A/B at p. 6.  Under oath, the Debtor estimated that he is owed "about two million dollars" for those services.  341 Meeting Tr. at 61:15-16.

there is meaningful overlap between the factors considered when evaluating whether to appoint a chapter 11 trustee and the factors considered when determining whether to dismiss a chapter 11 case. *Compare* 11 U.S.C. §§ 1112(b)(1), 1112(b)(4) *with* 11 U.S.C. § 1104(a). Particularly, when evaluating the merits of dismissal and if such dismissal is in the best interests of the creditors, courts consider, among other things, the gross mismanagement of the debtor's estate, the failure to comply with court orders and the unexcused failure to timely file sufficient required reports. *See* 11 U.S.C. § 1112(b)(4). As analyzed in more detail above in the context of the vital need for a chapter 11 trustee, these factors are pervasive in this chapter 11 case and constitute grounds for dismissal. However, the Committee contends that the appointment of a chapter 11 trustee under Bankruptcy Code section 1104(a), which will allow the Committee to remain in place and have another independent fiduciary administer the Debtor's estate, is in the best interests of the creditors and the estate and is therefore the appropriate path forward to progress this case to resolution.[29]

D. **In the Event the Court Determines to Convert the Case, the Court Should Resolve Disputed Claims in Connection with the Election Process to Allow for Creditors with Claims Strong Enough to be on the Committee, and Similar Creditors, to Vote on a Permanent Trustee**

42. In the event the Court determines to convert the Debtor's case to a case under chapter 7, the Court should take all efforts to ensure that the Debtor's abuse of his general unsecured creditors ends with that conversion, given the Committee will contemporaneously dissolve and no longer have the ability to serve as a watchdog for, and protector of, general unsecured creditors. In furtherance thereof, the Court should follow the general principles espoused by the bankruptcy court in *In re Team Systems International, LLC* to ensure that as many

---

[29] Bankruptcy Code section 1112(b)(1) provides that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause *unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.*"

creditors as possible are eligible to call for a vote, and actually vote, on a permanent chapter 7 trustee.

43.     Like Giuliani, the debtor in *In re Team Systems International, LLC* had a number of creditors holding litigation-based claims.  No. 22-10066 (CTG), 2022 WL 2792006, at *1 (Bankr. D. Del. July 15, 2022).  Certain of those creditors filed proofs of claim, to which the interim chapter 7 trustee objected immediately before the meeting of creditors.  *Id.* at *2.  At the meeting, two of those creditors requested an election of a permanent trustee.  *Id.*  The interim trustee and the debtor objected to those creditors' right to vote on, among other grounds, their claims were disputed[30] based solely on the fact that the interim trustee filed an objection thereto.  *Id.* at *3-4.  Ultimately, the bankruptcy court concluded that it has the discretion to (i) resolve disputed elections by resolving underlying claim disputes and (ii) determine the winner of an election based on the resolution of the claim disputes.  *Id.* at *5.

44.     Given the months of bad behavior Giuliani's creditors have been forced to endure during this chapter 11 case, which was preceded by years of Giuliani's prepetition bad behavior, it is of the utmost importance that if the case is converted and thus, the Committee disbanded, then Giuliani's creditors maintain a powerful voice in the chapter 7 case and elect the person taking on

---

[30]   Bankruptcy Code section 702 provides, in relevant part:

(a)   A creditor may vote for a candidate for trustee only if such creditor—(1) holds an allowable, undisputed, fixed, liquidated, unsecured claim of a kind entitled to distribution under section 726(a)(2), 726(a)(3), 726(a)(4), 752(a), 766(h), or 766(i) of this title; (2) does not have an interest materially adverse, other than an equity interest that is not substantial in relation to such creditor's interest as a creditor, to the interest of creditors entitled to such distribution; and (3) is not an insider.

(b)   At the meeting of creditors held under section 341 of this title, creditors may elect one person to serve as trustee in the case if election of a trustee is requested by creditors that may vote under subsection (a) of this section, and that hold at least 20 percent in amount of the claims specified in subsection (a)(1) of this section that are held by creditors that may vote under subsection (a) of this section.

the fiduciary duties that Giuliani has completely ignored.  The ability to elect a permanent trustee is how the creditors will achieve the protections to which they are entitled[31] and how this case, if converted, will best progress in a manner that leaves the stain of Giuliani's ignominy in the past.

## RESERVATION OF RIGHTS

45.      This Objection is submitted without prejudice to, and with a full reservation of, the Committee's rights, claims, defenses and remedies, including the right to amend, modify or supplement this Objection, including based on the results of discovery and to introduce evidence at any hearing relating to the Conversion Application and without in any way limiting any other rights of the Committee to further object to the Conversion Application, on any grounds, as may be appropriate.

---

[31]   If the Trustee Motion is granted, then the Court should use its discretion to permit as many of Giuliani's creditors as possible to participate in a chapter 11 trustee election pursuant to Bankruptcy Code section 1104(b), consistent with the principles set forth in *In re Team Systems International, LLC*.  2022 WL 2792006, at *3-5.  Bankruptcy Code section 1104(b) provides, in relevant part, that "[t]he election of a [chapter 11] trustee shall be conducted in the manner provided in subsections (a), (b), and (c) of section 702 of this title."  To that point, courts have recognized that the legislative history for Bankruptcy Code section 1104(b) shows that Congress intended for a chapter 11 trustee election process to conform to the chapter 7 trustee election process.  *See, e.g.*, *In re Aspen Marine Grp.*, 189 B.R. 859, 861-62 (Bankr. S.D. Fl. 1995) (reviewing the legislative history of Bankruptcy Code section 1104(b) and noting that "pursuant to the express requirements of 11 U.S.C. § 1104(b), Chapter 11 elections shall be conducted in the manner provided in subsections (a), (b), and (c) of 11 U.S.C. § 702").  Accordingly, an election for a chapter 11 trustee should facilitate robust creditor participation to the same extent permitted and encouraged in the chapter 7 trustee context.

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court (i) appoint a chapter 11 trustee,[32] (ii) deny the relief requested in the Conversion Application and (iii) grant such other relief as is just, proper and equitable.

Dated: July 8, 2024                    */s/ Philip C. Dublin*
     New York, New York          **AKIN GUMP STRAUSS HAUER & FELD LLP**
                             Ira S. Dizengoff
                             Philip C. Dublin
                             Abid Qureshi
                             One Bryant Park
                             New York, New York 10036
                             Tel:      (212) 872-1000
                             Fax:     (212) 872-1002
                             Email:  idizengoff@akingump.com
                                          pdublin@akingump.com
                                        aqureshi@akingump.com

                           - and -

                           Rachel Biblo Block (admitted *pro hac vice*)
                           2300 N. Field St., Suite 1800
                           Dallas, Texas 75201
                           Tel:      (214) 969-2800
                           Fax:     (214) 969-4343
                           Email:  rbibloblock@akingump.com

                           *Counsel to the Official Committee of*
                           *Unsecured Creditors of Rudolph W. Giuliani*

---

[32] A revised proposed order granting the Trustee Motion (the "Revised Proposed Order") is attached hereto as **Exhibit A**. A redline of the Revised Proposed Order against the proposed order filed with the Trustee Motion is attached hereto as **Exhibit B**.

**<u>Exhibit A</u>**

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re:                                                  : Chapter 11
                                                        :
**RUDOLPH W. GIULIANI**                                 : **Case No. 23-12055 (SHL)**
**a/k/a RUDOLPH WILLIAM GIULIANI,**                     :
                                                        :
                     Debtor.                            :
-----------------------------------------------------------------x

### ORDER DIRECTING THE IMMEDIATE
### APPOINTMENT OF A TRUSTEE PURSUANT TO 11 U.S.C. § 1104

Upon the motion (the "Motion")[1] of the Committee for entry of an order appointing a

chapter 11 trustee for the Debtor's estate; all as set forth more fully in the Motion; and the Court

having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the Southern District of New York entered February 1, 2012; and this Court having found

that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a

final order consistent with Article III of the United States Constitution; and this Court having found

that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and due and proper notice of the Motion having been provided; and the relief requested

being in the best interests of the Debtor and his estate and creditors; and this Court having reviewed

the Motion and having heard the statements in support of the relief requested therein at the hearings

before this Court on June 17, 2024 and July 10, 2024 (the "Hearings"); and the Court having

determined that the legal and factual bases set forth in the Motion and at the Hearings establish

just cause for the relief granted herein; and upon all of the proceedings had before the Court and

after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1.      The Motion is GRANTED as set forth herein, and the Debtor's *Application to Convert Chapter 11 to Chapter 7* [Docket No. 277] is DENIED as moot.

2.      The U.S. Trustee, after consultation with the Committee and any other party in interest, is directed to immediately appoint, subject to Court approval, one disinterested person as a chapter 11 trustee for the Debtor.

3.      Pursuant to Bankruptcy Code section 1121(d), the Debtor's exclusive periods during which to file a chapter 11 plan and solicit votes therefor are hereby terminated.

4.      The chapter 11 trustee shall (i) be appointed as the sole manager, member, director and officer, as applicable, of each of the companies in which the Debtor holds a controlling ownership interest (the "Debtor-Owned Companies"); and (ii) succeed to the powers of the current managers, members, directors, officers and any such other governing bodies of the Debtor-Owned Companies, including, without limitation, any positions held by the Debtor in any capacity.

5.      The Debtor and any other individual or entity in possession of the Debtor's records and property, including, without limitation, the employees of the Debtor-Owned Companies, shall (i) cooperate with the chapter 11 trustee in all respects, including, without limitation, in furtherance of paragraph 4 of this Order and (ii) immediately turn over to the chapter 11 trustee all records and property of the estate in their possession or control as directed by the chapter 11 trustee.

6.      This Order shall be immediately effective and enforceable upon its entry.

7.      This Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

Dated: _____, 2024
New York, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Redline**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x
In re:                                                    : Chapter 11
                                                          :
**RUDOLPH W. GIULIANI**                                   : Case No. 23-12055 (SHL)
**a/k/a RUDOLPH WILLIAM GIULIANI,**                       :
                                                          :
                              Debtor.                     :
------------------------------------------------------------- x

### ORDER DIRECTING THE IMMEDIATE
### APPOINTMENT OF A TRUSTEE PURSUANT TO 11 U.S.C. § 1104

Upon the motion (the "Motion")[1] of the Committee for entry of an order appointing a

chapter 11 trustee for the Debtor's estate; all as set forth more fully in the Motion; and the Court

having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C.

§§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District

Court for the Southern District of New York entered February 1, 2012; and this Court having

found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may

enter a final order consistent with Article III of the United States Constitution; and this Court

having found that venue of this proceeding and the Motion in this district is proper pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and

the relief requested being in the best interests of the Debtor and his estate and creditors; and this

Court having reviewed the Motion and having heard the statements in support of the relief

requested therein at ~~a hearing~~the hearings before this Court on June 17, 2024 and July 10, 2024

(the "~~Hearing~~Hearings"); and the Court having determined that the legal and factual bases set

forth in the Motion and at the ~~Hearing~~Hearings establish just cause for the relief granted herein;

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion is GRANTED as set forth herein, and the Debtor's *Application to Convert Chapter 11 to Chapter 7* [Docket No. 277] is DENIED as moot.

2.    The U.S. Trustee, after consultation with the Committee and any other party in interest, is directed to immediately appoint, subject to Court approval, one disinterested person as a chapter 11 trustee for the Debtor.

3.    Pursuant to Bankruptcy Code section 1121(d), the Debtor's exclusive periods during which to file a chapter 11 plan and solicit votes therefor are hereby terminated.

4.    The chapter 11 trustee shall (i) ~~take control of the companies in which the Debtor holds a controlling ownership interest (the "Debtor-Owned Companies"); (ii)~~ be appointed as the sole manager, member, director and officer, as applicable, of each of the companies in which the Debtor holds a controlling ownership interest (the "Debtor-Owned Companies"); and (~~iii~~ii) succeed to the powers of the current managers, members, directors, officers and any such other governing bodies of the Debtor-Owned Companies, including, without limitation, any positions held by the Debtor in any capacity~~, which powers and authority shall include, without limitation: (a) managing and overseeing all day-to-day operations of the Debtor-Owned Companies, (b) managing all ongoing financial obligations of the Debtor-Owned Companies and (c) performing such other actions as may be necessary or required of the chapter 11 trustee in order to fulfill his or her obligations under the Bankruptcy Code and the Bankruptcy Rules.~~.

5.    The Debtor and any other individual or entity in possession of the Debtor's records and property, including, without limitation, the employees of the Debtor-Owned Companies, shall (i) cooperate with the chapter 11 trustee in all respects, including, without

limitation, in furtherance of paragraph 4 of this Order and (ii) immediately turn over to the chapter 11 trustee all records and property of the estate in their possession or control as directed by the chapter 11 trustee.

6.      This Order shall be immediately effective and enforceable upon its entry.

7.      This Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

Dated: _____, 2024
New York, New York

_____
THE HONORABLE SEAN H. LANE
UNITED STATES BANKRUPTCY JUDGE

| Summary report: Litera Compare for Word 11.7.0.54 Document comparison done on 7/8/2024 3:29:40 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** nd://4856-3250-3758/1/RWG - Revised Proposed Order - Motion to Appoint Chapter 11 Trustee.docx | |
| **Modified DMS:** nd://4856-3250-3758/2/RWG - Revised Proposed Order - Motion to Appoint Chapter 11 Trustee.docx | |
| **Changes:** | |
| Add | 9 |
| Delete | 7 |
| Move From | 1 |
| Move To | 1 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 18 |