| | |
|---|---|
| Rachel C. Strickland | Von A. DuBose (*pro hac vice* forthcoming) |
| Aaron E. Nathan | DUBOSE MILLER LLC |
| James H. Burbage | 75 14th Street NE |
| WILLKIE FARR & GALLAGHER LLP | Suite 2110 |
| 787 Seventh Avenue | Atlanta, GA 30309 |
| New York, NY 10019 | Telephone: (404) 720-8111 |
| Telephone: (212) 728-8000 | dubose@dubosemiller.com |
| Facsimile: (212) 728-8111 | |
| rstrickland@willkie.com | |
| anathan@willkie.com | |
| jburbage@willkie.com | |
| | John Langford |
| Michael J. Gottlieb (*pro hac vice* pending) | Rachel Goodman |
| Meryl Governski (*pro hac vice* pending) | UNITED TO PROTECT DEMOCRACY |
| WILLKIE FARR & GALLAGHER LLP | 82 Nassau Street, #601 |
| 1875 K Street NW | New York, NY 10038 |
| Washington, DC 20006 | Telephone: (202) 579-4582 |
| mgottlieb@willkie.com | john.langford@protectdemocracy.org |
| mgovernski@willkie.com | rachel.goodman@protectdemocracy.org |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>RUDOLPH W. GIULIANI<br>a/k/a RUDOLPH WILLIAM GIULIANI<br><br>                              Debtor. | Chapter 11<br><br>Case No. 23-12055 (SHL) |

**OBJECTION OF RUBY FREEMAN AND WANDREA' ARSHAYE MOSS**
**TO DEBTOR'S APPLICATION TO CONVERT CHAPTER 11 TO CHAPTER 7**

Ms. Ruby Freeman and Ms. Wandrea' ArShaye "Shaye" Moss (together, the "Freeman Plaintiffs"), as creditors and parties-in-interest of Mr. Rudolph W. Giuliani a/k/a Rudolph William Giuliani (the "Debtor"), by and through their undersigned counsel, respectfully submit this objection (the "Objection") to the Debtor's *Application to Convert Chapter 11 to Chapter 7* [Docket No. 277] (the "Conversion Motion"). In support hereof, the Freeman Plaintiffs respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. While the Freeman Plaintiffs previously joined the Committee's request for the appointment of a chapter 11 trustee, Rudolph Giuliani's bad faith now warrants dismissal of this case. For over six months, the Freeman Plaintiffs have waited patiently as Mr. Giuliani has abused the chapter 11 process by pursuing a self-serving, delay-oriented strategy. By now, the Court is familiar with the examples of Mr. Giuliani's bad faith conduct towards his creditors: the late, inaccurate, and incomplete financial disclosures; the refusal to cooperate with the Committee's discovery requests; the unending, wasteful, and abusive efforts to appeal the Freeman Judgment; the post-petition statements about the Freeman Plaintiffs giving rise to administrative expense claims; the unauthorized payments to friends and non-debtor businesses; the use of (and sometimes payments to) professionals that have not been retained in the chapter 11 case; the failure to report post-petition income; and the complete lack of progress after six months in bankruptcy.[1] Now there is a new addition to that list: the Conversion Motion.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the *Motion of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani for Entry of an Order Directing the Immediate Appointment of a Trustee Pursuant to 11 U.S.C. § 1104* [Docket No. 233] (the "Trustee Appointment Motion").

2. Even by Mr. Giuliani's standards, the Conversion Motion is a brazen pleading. Ten days ago, Mr. Giuliani was moving to extend his exclusive period for filing a chapter 11 plan and asking the Court to deny the Committee's request to have a chapter 11 trustee appointed. Now—without explanation and, once again, without any discussion with parties in interest—Mr. Giuliani is seeking the opposite in asking for the appointment of a chapter 7 trustee. The best explanation for this sudden about-face is litigation gamesmanship. Successfully converting this case would result in the dissolution of the Committee, end the Committee's growing investigation into Mr. Giuliani's assets, and the related near-term threat of discovery sanctions. A chapter 7 trustee will not be up to speed compared to the Committee and its advisors, who have now spent months getting familiar with the facts of this case. As such, conversion would merely reward atrocious behavior.

3. In their objection to the Conversion Motion, the Committee describes Mr. Giuliani's regard for this process as a "joke" and a "delay game." The Freeman Plaintiffs agree. This time, with the added benefit of the automatic stay, Mr. Giuliani is undermining another civil proceeding using the same bad faith tactics implemented during the Freeman Litigation. And while there is no dispute between the Freeman Plaintiffs and the Committee that the status quo can no longer continue, the Freeman Plaintiffs now believe that dismissal is warranted. Enough is enough. Mr. Giuliani should no longer benefit from the protections of the Bankruptcy Code solely to thwart the Freeman Plaintiffs. The Court should dismiss this chapter 11 case outright.

4. Bankruptcy Code section 1112(a) does not provide Mr. Giuliani with an absolute right to convert his chapter 11 reorganization into a chapter 7 liquidation. Instead, conversion requests require the Court to evaluate whether alternative remedies are in the best interest of creditors and the estate. The Court should conclude that Mr. Giuliani cannot abuse the civil justice

system any longer. Under these circumstances, and for the reasons set forth herein, the Conversion Motion should be denied and the chapter 11 case should be dismissed.

## OBJECTION

### I. MR. GIULIANI'S MOTION TO CONVERT IS GOVERNED BY BANKRUPTCY CODE SECTIONS 1112(B)(1) AND 1112(F)

5. Supreme Court precedent and the plain meaning of section 1112 make clear that a motion to convert under section 1112(a) is limited by both section 1112(f) (i.e., where a debtor would not qualify as a chapter 7 debtor) and section 1112(b)(1) (i.e., where conversion is not in the best interests of creditors and the estate).

6. In *Marrama v. Citizens Bank of Massachusetts*, the Supreme Court held that section 706 did ***not*** provide the debtor with an "unqualified right of conversion" where the debtor exhibited bad faith and therefore could not be "a debtor under such chapter." *Marrama*, 549 U.S. 365, 371–74 (2007). In reaching that conclusion, the Supreme Court relied on the interplay between sections 706(a) and 706(d). That analysis is directly applicable here because the same interplay exists between sections 1112(a) and 1112(f) (which matches section 706(d) word for word). Section 706(d) provides "[n]otwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." In other words, section 706(d) expressly conditions a debtor's "right to convert on his ability to qualify as a 'debtor' under" the chapter to which he seeks to convert. *Marrama*, 549 U.S. at 371. Under *Marrama*, it follows that the same analysis holds true for section 1112(a), which is limited by identical language in section 1112(f). *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) ("[T]he normal rule of statutory interpretation [is] that identical words used in different parts of the same statute are generally presumed to have the same meaning."). In short, *Marrama* forecloses any

- 3 -

credible argument that section 1112(a) provides Mr. Giuliani with an unqualified right of conversion due to his bad faith.

7. Section 1112(b)(1) also separately applies to conversion motions made under section 1112(a) and provides that "on request of a party in interest [including the debtor] . . . the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause unless the court determines that [appointment of a chapter 11 trustee] is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1); *see also* 11 U.S.C. § 1109(b). Read together, those provisions set up a clear framework: a debtor may request to convert his case to chapter 7, but, if after notice and a hearing, the Court finds cause for dismissal, the Court "shall . . . dismiss" the case, unless the Court also finds that appointment of a chapter 11 trustee is in the best interests of creditors and the estate.

8. Both before and after *Marrama*, bankruptcy courts in this district and elsewhere have rejected the argument that a debtor has an absolute right to convert from chapter 11 to chapter 7. *See In re Kearney*, 625 B.R. 83, 86 (B.A.P. 10th Cir. 2021) ("Section 1112(a) does not give debtors an absolute right to convert. The right to convert granted by § 1112(a) is cabined by § 1112(f)'s reference to qualifying as a debtor under the chapter to which the debtor seeks conversion."); *In re Johnson*, 546 B.R. 83, 167 (Bankr. S.D. Ohio 2016) ("Chapter 11 debtors do not have an absolute right to convert their cases to chapter 7 merely because they meet the prerequisites listed in § 1112(a)."); *In re New Meatco Provisions, LLC*, No. 2:13–BK–22155–PC, 2014 WL 917335, at *4 (Bankr. C.D. Cal. Mar. 10, 2014) (same); *Monroe Bank & Tr. v. Pinnock*, 349 B.R. 493, 497 (E.D. Mich. 2006) (same); *In re Adler*, 329 B.R. 406, 409 (Bankr. S.D.N.Y. 2005) (same). As Judge Lifland observed in *In re Adler*, the Bankruptcy Rules require notice and

- 4 -

a hearing on a debtor's application to convert from chapter 7 to chapter 11—a nonsensical requirement if the right to convert was unconditional. 329 B.R. at 409; *see also In re New Meatco Provisions*, 2014 WL 917335, at *4 (same, collecting cases).

## II. MR. GIULIANI'S CONVERSION MOTION SHOULD BE DENIED

9. Mr. Giuliani does not have an unqualified right to convert his case to chapter 7 under Bankruptcy Code section 1112(a). To the contrary, the Court must evaluate the Conversion Motion under the entirety of section 1112, not just section 1112(a).

### a. The Conversion Motion Should Be Denied Because Dismissal of Mr. Giuliani's Case is in the Best Interests of Creditors and the Estate.

10. Section 1112(b)(1) sets forth a two-step analysis to determine whether the Conversion Motion should be granted. First, the Court must determine whether "cause" is present. Second, if cause exists, then the Court must evaluate what path forward is in the best interests of creditors and the estate: conversion, dismissal, or the appointment of a chapter 11 trustee. As discussed below, "cause" is present and dismissal of Mr. Giuliani's chapter 11 case is in the best interest of creditors and the estate.

#### i. "Cause" Exists to Dismiss the Case Under Section 1112(b)(4) of the Bankruptcy Code.

11. By filing the Conversion Motion, Mr. Giuliani has conceded that some form of "cause" exists to support his requested relief. However, in typical Giuliani fashion, the Conversion Motion—which is two paragraphs long—does not articulate what facts here constitute cause. Unlike other omissions from Mr. Giuliani, this failure is not particularly problematic: based on Mr. Giuliani's conduct to date, many of the enumerated grounds for "cause" are easily satisfied.

12. First, section 1112(b)(4)(A) provides the term cause includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." This example of cause is easily satisfied as a result of Mr. Giuliani's postpetition

- 5 -

comments about the Freeman Plaintiffs that gave rise to administrative expense claims and have substantially eroded distributable value for unsecured creditors. *See* Claim Nos. 8, 9. Moreover, Mr. Giuliani's refusal to negotiate a reasonable budget and his endless efforts to appeal the Freeman Judgment, in lieu of any efforts to reorganize for the benefit of stakeholders, further demonstrate continuing diminishment of the estate and the increasing unlikelihood of rehabilitation. *See* Trustee Appointment Motion ¶ 27; *see also* Docket No. 25 (the "First Stay Relief Motion"); Docket No. 195 (the "Second Stay Relief Motion"); Docket No. 269 (the "Third Stay Relief Motion").

13. Gross mismanagement can also constitute cause. *See* 11 U.S.C. § 1112(b)(4)(B). Courts analyze this example as covering a broad range of postpetition activity affecting an estate's assets, income, expenses, and reporting. *See Grego v. United States Tr.*, BAP No. EC-14-1067-KuPaJu, 2015 WL 3451559, at *5 (B.A.P. 9th Cir. May 29, 2015). This chapter 11 case is replete with examples of Mr. Giuliani's gross mismanagement, including (a) his suspension from WABC for comments about the 2020 presidential election,[2] (b) his consistent failure to file timely and accurate monthly operating reports (collectively, "MORs"),[3] (c) his refusal to comply with the Court's order authorizing the Committee' 2004 discovery requests (the "2004 Order"),[4] (d) unauthorized payments made by Mr. Giuliani on Maria Ryan's credit card, to professionals not

---

[2] *See* Trustee Appointment Motion ¶¶ 57, 67, 76.

[3] *See id.* ¶¶ 51–54.

[4] *See Order Granting Motion Of The Official Committee Of Unsecured Creditors For The Entry Of An Order Pursuant To Bankruptcy Code Section 105 And Federal Rule Of Bankruptcy Procedure 2004 Authorizing Discovery Of The Debtor And Third Parties, In re Giuliani*, No 23-12055 (Bankr. S.D.N.Y. Apr. 11, 2024) [Docket No. 164].

retained by the estate, and on behalf of his wholly-owned business,[5] and (e) his repeated failure to further amend his incomplete schedules of assets and liabilities and statement of financial affairs, despite stipulating in May 2024 that "further amendments and disclosures" were required.[6]

14.     Third, failure to comply with the "spirit of court orders" constitutes "an independent ground for dismissal under [section] 1112(b)(4)(E)." *Paradigm Elizabeth, LLC v. Empire TFI Jersey Holdings, LLC.*, 560 B.R. 238, 242 fn. 4 (D. N.J. 2016). Even under the most charitable reading of the 2004 Order, it is undeniable that Mr. Giuliani has failed to comply. To date, Mr. Giuliani has made only one production before the Court-ordered deadline, primarily of his bank and credit card statements and income tax returns for 2021 and 2022. *See* Trustee Appointment Motion ¶ 31. Further, Mr. Giuliani has failed to produce any documents on behalf of his businesses as also required under the 2004 Order. *Id.* Mr. Giuliani's actions with respect to the 2004 Order—which are right out of his playbook from the Freeman Litigation—undoubtedly constitute "cause," further underscoring, as this Court has stated, his "troubling attitude vis-à-vis the law and the court system." Hr'g Tr. at 32:13–25; 33:1–17, *In re Giuliani*, No. 23-12055 (Bankr. S.D.N.Y. May 14, 2024).

15.     Fourth, Mr. Giuliani's repeated failure to file timely and accurate MORs each month constitutes cause. *See* 11 U.S.C. § 1112(b)(4)(F) ("unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter"). Mr. Giuliani filed his February MOR six weeks late, his March MOR two weeks

---

[5] *See* Trustee Appointment Motion ¶ 21; *see also In re Carrington*, No. 23CV6430ATRWL 2023 U.S. Dist. LEXIS 231974 (S.D.N.Y. Oct. 16, 2023) (finding debtor's unauthorized use of estate funds to constitute "gross mismanagement" under section 1112(b)(4)(B)).

[6] *See Stipulation Concerning a Second Extension of the Deadline for Creditors to Challenge Dischargeability of Debts*, at p. 2–3, *In re Giuliani*, No. 23-12055 (Bankr. S.D.N.Y. May 15, 2023) [Docket No. 222].

late, and his May MOR four days late. *See* Docket Nos. 197, 203, 267. Moreover, once filed, Mr. Giuliani's MORs have been riddled with unauthorized postpetition payments and misleading, inaccurate information. *See* Trustee Appointment Motion ¶¶ 21–22. On multiple occasions, Mr. Giuliani has thrown his unretained accountant under the bus for these late filings, as if that excuses the problem. *See* Hr'g Tr. at 47:12–18, *In re Giuliani*, No. 23-12055 (Bankr. S.D.N.Y. Feb. 4, 2024); Hr'g Tr. at 18:14–25, *Id.* (Bankr. S.D.N.Y. May 14, 2024). Put simply, Mr. Giuliani's failure to file timely and accurate monthly operating reports further establishes "cause" exists here.

        **ii.    *Dismissal of the Chapter 11 Case is in the Best Interests of Creditors and the Estate.***

16.    Having established that "cause" under section 1112(b)(1) exists, the Court must decide whether dismissal, conversion, or appointment of a chapter 11 trustee is in the "best interests of creditors and the estate." Which of these options is the appropriate path forward is a totality of the circumstances analysis. *See In re Hampton Hotel Invs., L.P.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001). Where the facts are indicative of a bad faith filing, courts can conclude that dismissal is more appropriate than conversion. *See, e.g., Results Sys. Corp. v. MQVP, Inc.*, 395 B.R. 1, 5 (E.D. Mich. 2008). Mr. Giuliani's conduct prior to and during this chapter 11 case demonstrates that he filed this case in bad faith. Indeed, Mr. Giuliani's continued laser-like focus on appealing the Freeman Judgment demonstrates that this entire case was a thinly-veiled litigation tactic. The Conversion Motion is just the latest bad faith tactic that seeks to create delay and further frustrate creditors. Accordingly, the Conversion Motion should be denied and the Court should instead dismiss this case.

17.    In addition, when selecting between remedies under section 1111(b), courts in this district may also consider any of the following factors:

(1) whether some creditors received preferential payments, and whether equality of

distribution would be better served by conversion rather than dismissal;

(2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted;

(3) whether the debtor would simply file a further case upon dismissal;

(4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors;

(5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise;

(6) whether any remaining issues would be better resolved outside the bankruptcy forum,

(7) whether the estate consists of a "single asset"; and

(8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests.

*See In re Hampton Hotel Invs., L.P.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001). While these factors are often used to analyze a choice between conversion and dismissal, they provide a helpful framework for analyzing the choice between dismissal and chapter 11 trustee. As shown below, each of the applicable factors cuts in favor of dismissing this case.

- *Factor 1: Preferential Payments / Equality of Distribution*. The Freeman Plaintiffs are not aware of any creditors having received preferential payments that would justify the continuation of Mr. Giuliani's bankruptcy case. Moreover, continuing the bankruptcy case at this stage will not promote equality of distributions. If the case is converted to chapter 7, Mr. Giuliani's creditors will still face a long and circuitous path to obtaining distributions. Dismissing this case would actually improve the distribution prospects for all creditors who will be free to litigate their claims in the venue of their choice.

- *Factor 2: Loss of Rights*. If the bankruptcy case was dismissed, creditors would gain critical rights. While the Committee is investigating Mr. Giuliani's assets, individual creditors would have similar rights to examine Mr. Giuliani's assets and any fraudulent conveyances outside of bankruptcy, similar to what the Freeman Plaintiffs were doing prior to the Petition Date. Accordingly, this factor cuts in favor of dismissal.

- *Factor 3: Further Case Upon Dismissal*. Any concerns about how long Mr. Giuliani will wait to file a subsequent chapter 11 case could be addressed by a temporal limitation placed in

- 9 -

the order dismissing the case. *See* 11 U.S.C. § 109(g) (allowing court to impose 180-day prohibition on debtor re-filing for bankruptcy where dismissal was caused by the willful failure of the debtor to abide by the orders of the court). Accordingly, this factor cuts in favor of dismissal.

- *Factor 4: Ability of Trustee to Reach Assets*. While a chapter 11 trustee will have the ability to bring estate claims for the benefit of creditors, the value of any such claims is presently unclear.

- *Factor 5: Whether Dismissal or Conversion Would Maximize Estate Value as an Economic Enterprise*. The Debtor is an 80-year old attorney who (a) was recently disbarred in New York state, (b) is facing criminal charges in Georgia and Arizona, and (c) derives his current income from political commentary and licensing deals that he funnels to non-debtor LLCs. There is no reason to believe that the decision between conversion and dismissal will have any impact on the value of the estate, which is mostly comprised of Mr. Giuliani's two properties. Accordingly, this factor does not cut in favor of conversion.

- *Factor 6: Remaining Issues Better Resolved Outside of Bankruptcy Court*. The key remaining issue in this case is liquidating unliquidated and disputed litigation claims. Dismissing the case would send creditors back to their prepetition proceedings, which are better positioned than the Bankruptcy Court to liquidate these claims. In the case of the Freeman Plaintiffs, dismissal would allow Mr. Giuliani to pursue his appeal. Accordingly, this factor cuts in favor of dismissal.

- *Factor 7: Single Asset Case*. This factor is not applicable and, therefore, does not cut in favor of conversion.

- *Factor 8: Misconduct of the Debtor & Need for Chapter 7 Trustee.* As discussed above, throughout this chapter 11 case, the Debtor has consistently been dishonest and demonstrated both incompetence and gross mismanagement. His conduct to date militates in favor of dismissal and there is no reason why he should continue to enjoy the benefits of the bankruptcy laws, including the automatic stay. This is particularly true because creditors do not need a chapter 7 trustee to protect their interests in this case. Similar to the efforts being undertaken by the Freeman Plaintiffs prior to the Petition Date, creditors can independently pursue their rights against Mr. Giuliani and obtain information about his assets and potentially fraudulent transfers. Moreover, as noted above, dismissal is likely to expedite distributions to non-Freeman Plaintiff creditors who will be free to liquidate their claims outside of the chapter 11 process.

- 10 -

18. Finally, other factors considered by courts also favor dismissal. First, courts evaluate the preference of creditors when determining whether dismissal or conversion is appropriate. *See, e.g., Loop Corp. v. United States Tr.*, 379 F.3d 511, 518 (8th Cir. 2004) (creditors preferred conversion); *In re Babayoff*, 445 B.R. 64, 82 (Bankr. E.D.N.Y. 2011). Here, the Freeman Plaintiffs are by far the largest unsecured creditors with a judgment of approximately $148 million against Mr. Giuliani. As this case was commenced solely to hinder their claims, their views on what is in the best interests of creditors and the estate should be given substantial deference.

### b. The Conversion Motion Should Separately Be Denied Because Mr. Giuliani Should Be Considered a Bad Faith Filer Under Chapter 7.

19. If the Court is inclined to grant the Conversion Motion after undertaking its section 1112(b) analysis (which it should not), then the Court should still deny the Conversion Motion as a result of section 1112(f). Before approving conversion, section 1112(f) requires the Court to evaluate whether Mr. Giuliani could qualify as a chapter 7 debtor. That analysis, in turn, requires analyzing Mr. Giuliani's conduct in light of the dismissal provisions set forth in section 707(a) of the Bankruptcy Code. *See Marrama*, 549 U.S. at 373. Stated differently, the Court must evaluate whether Mr. Giuliani is seeking to access chapter 7 in good faith, or is making the equivalent of a bad faith filing. *See id.* at 373–74. This analysis is driven by both Mr. Giuliani's prepetition conduct and postpetition conduct. *See In re Adler*, 329 B.R. at 410; *In re Johnson*, 546 B.R. at 160 ("[P]repetition conduct remains relevant to the good-faith analysis when a debtor begins in another chapter and seeks to convert to Chapter 7.").

20. Prior to the Petition Date, Mr. Giuliani's months of "willful discovery misconduct" led to a default judgment in the Freeman Litigation. *Freeman v. Giuliani*, 691 F. Supp. 3d 32, 40

- 11 -

(D.D.C. 2023) (the "Freeman Judgment").[7]  The Court has now learned all too well that Mr. Giuliani's discovery misconduct was not a fluke.  Instead, as demonstrated by Mr. Giuliani's continued evasion of the Committee's valid discovery requests, intentional defiance of the judicial system is Mr. Giuliani's chosen strategy.  Indeed, Mr. Giuliani's response to the Freeman Plaintiffs' discovery requests and the D.C. District Court's orders then, and his approach to the Committee's similar discovery requests now, could hardly be more similar.

| Freeman Litigation | Chapter 11 Case |
|---|---|
| • When the Freeman Plaintiffs requested "routine financial documents relevant to [their] claims for punitive damages," Mr. Giuliani "exploited" every opportunity to delay and, ultimately, failed to produce "any meaningful discovery[.]" *Freeman*, 691 F. Supp. 3d at 40.<br><br>• The Freeman Plaintiffs sought relevant materials from third-party sources, including Giuliani Communications LLC and Giuliani Partners LLC. *Freeman Litigation, Revised Pls'. Mot. to Compel Giuliani Partners and Giuliani Communications*, at 9, Freeman Litigation [Docket No. 70]. Neither Giuliani Communications LLC nor Giuliani Partners LLC ever responded to the Freeman Plaintiffs' subpoenas. They produced no documents at all, and did not even designate representatives for Rule 30(b)(6) depositions. | • The Committee filed a discovery motion for this exact information from both Mr. Giuliani and his businesses. *See* Docket No. 140 (the "2004 Discovery Motion").<br><br>• To date, Mr. Giuliani, Giuliani Communications LLC, and Giuliani Partners LLC have not complied with the request sought in the 2004 Discovery Motion. |
| • Mr. Giuliani persistently made excuses for his noncompliance that did not pass the smell test, blaming third parties for the inaccessibility of documents from one source that Mr. Giuliani obviously could have accessed from another source under | • At the June 17 hearing, Mr. Giuliani's counsel noted that Mr. Giuliani "is working on trying to get all the documents that he can" and "understands his responsibility," but is "being pulled in a number of different directions with a |

---

[7] The details of that misconduct have been put before this Court in the *Freeman v. Giuliani* adversary proceeding, 24-01320-shl (Bankr. S.D.N.Y) (the "Non-Dischargeability Proceeding"). *See*, *e.g.*, Non-Dischargeability Proceeding ¶¶ 4, 64–83; 7 at 10–12; 9 at ¶¶ 7–57 [Docket No. 1].

| | |
|---|---|
| his control. *Freeman*, 691 F. Supp. 3d at 42. | number of different actions that are going" on. Hr'g Tr. 110:4–16, *In re Giuliani*, No 23-12055 (Bankr. S.D.N.Y. June 17, 2024). |
| | • While Mr. Giuliani's counsel noted on the record over three weeks ago that Giuliani "will do a yeoman's job" to produce the 2004 discovery, the Committee has yet to receive additional discovery productions. *Id.* |
| • Ultimately, the Freeman Plaintiffs moved to compel production of information from Mr. Giuliani, Giuliani Communications LLC, and Giuliani Partners LLC. Freeman Litigation, May 19, 2023 Minute Order. The Court granted the motion and repeatedly ordered the Giuliani entities to comply. The entities and Mr. Giuliani simply ignored the orders. | • Because Mr. Giuliani and those same entities have persisted in their failure to comply with valid discovery requests, the Committee has filed a motion to compel their compliance. *See* Docket No. 275 (the "Motion to Compel 2004 Discovery"). |

21. As summarized above, prepetition, Mr. Giuliani made a choice to ignore valid discovery requests and court orders, and caused his wholly owned entities to do the same. His strategy for defending the Freeman Litigation was to intentionally ignore and defy court orders, displaying utter contempt for the judicial system as a whole. Unsurprisingly, Mr. Giuliani's approach to the 2004 discovery requests—and creditor information rights in general—have essentially mirrored his strategy in the Freeman Litigation.

- *Mr. Giuliani's Schedules and Statement*. As detailed in the Trustee Appointment Motion, Mr. Giuliani has had to file multiple sets of his schedules of assets and liabilities and statement of financial affairs. *See* Trustee Appointment Motion ¶¶15–18. These amendments have resulted in Mr. Giuliani disclosing additional assets not previously disclosed, such as 925,186 shares of Decision Sciences LLP and an upcoming book contract. *Id.* However, creditors still have significant doubts about the accuracy of these filings generally given the egregiously low values to his assets, including Yankee World Series rings. *See id.* ¶ 42.

- *Mr. Giuliani's Monthly Operating Reports*. As detailed in the Trustee Appointment Motion, the Debtor's MORs have been a source of significant concern through this chapter 11 case. *Id.* ¶¶19–25. In addition to consistently being filed late, the Debtor's MORs have revealed unauthorized payments, including the payments of Maria Ryan's and Giuliani

- 13 -

Partners' credit cards which the Debtor has taken no steps to recuperate. *See id.* In response to Mr. Giuliani's tactics, the Committee has been forced to file a motion to compel the filing of monthly operating reports. *See* Docket No. 197 (the "Motion to Compel MORs"). When asked to address the untimely MORs, Mr. Giuliani has pointed fingers at everyone but himself. At the February 4, 2024 hearing before this Court, Mr. Giuliani's counsel blamed the delayed MOR filings on the "back and forth with his accountant," who refused to continue working for Mr. Giuliani. *See* Hr'g Tr. at 47:12–18, *In re Giuliani*, No. 23-12055 (Bankr. S.D.N.Y. Feb. 4, 2024). Three months later when asked *again* about his failure to produce timely MORs, Mr. Giuliani reiterated similar woes, noting "issue[s] with the accountant" as the continued source of delay. Hr'g Tr. at 18:14–25, *Id.* (S.D.N.Y. May 14, 2024).

- **Failure to Report Income**. As detailed in the Committee's June 10 letter to the Court in connection with the Motion to Compel MORs [Docket No. 248], prior to the May MOR, Mr. Giuliani never reported income despite previously having a radio show and his continuing podcast business. *See* Docket No. 248, at p. 2.

22. In summary, Mr. Giuliani's prepetition and postpetition conduct has consistently demonstrated that he is not a debtor engaging this process in good faith. This is a debtor with an established, adjudicated track record of ignoring and defying valid discovery requests and repeated court orders. He is running the same playbook again, and it has to stop. Mr. Giuliani's Conversion Motion is just another attempt to obtain delay and further frustrate his creditors' recovery efforts, particularly the Freeman Plaintiffs, who remain the principal targets of Mr. Giuliani's litigation misconduct. Congress designed the Bankruptcy Code to ensure that bad faith debtors like Mr. Giuliani cannot successfully hop between various chapters to stay one step ahead of creditors. Accordingly, the Court should deny the Motion to Convert as a result of section 1112(f) and prevent Mr. Giuliani from converting this case to chapter 7.

## CONCLUSION

23. For all of the foregoing reasons, the Freeman Plaintiffs respectfully request that the Court deny the Conversion Motion and, instead, dismiss the chapter 11 case with prejudice.

Dated: July 8, 2024

By: */s/ Rachel Strickland*

Rachel C. Strickland
Aaron E. Nathan
James H. Burbage
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
rstrickland@willkie.com
anathan@willkie.com
jburbage@willkie.com

Von A. DuBose (*pro hac vice* forthcoming)
DUBOSE MILLER LLC
75 14th Street NE
Suite 2110
Atlanta, GA 30309
Telephone: (404) 720-8111
dubose@dubosemiller.com

Michael J. Gottlieb (*pro hac vice* pending)
Meryl C. Governski (*pro hac vice* pending)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
mgottlieb@willkie.com
mgovernski@willkie.com

John Langford
Rachel Goodman
UNITED TO PROTECT DEMOCRACY
82 Nassau Street, #601
New York, NY 10038
Telephone: (202) 579-4582
john.langford@protectdemocracy.org
rachel.goodman@protectdemocracy.org