**UNITED STATES BANKRUPTCY COURT**  **FOR PUBLICATION**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re:                                                          Chapter 11

RUDOLPH W. GIULIANI                                             Case No. 23-12055 (SHL)
a/k/a RUDOLPH WILLIAM GIULIANI,

                        Debtor.
----------------------------------------------------------------x

<u>**MEMORANDUM OF DECISION**</u>

**A P P E A R A N C E S :**

**BERGER, FISCHOFF, SHUMER, WEXLER & GOODMAN LLP**
*Attorneys for Rudolph W. Giuliani*
6301 Jericho Turnpike, Suite 230
Syosset, New York 11791
By:    Heath S. Berger, Esq.
       Gary C. Fischoff, Esq.
       Joan A. Keely, Esq.

**AKIN GUMP STRAUSS HAUER & FELD LLP**
*Attorneys for the Official Committee of Unsecured Creditors*
One Bryant Park
New York, New York 10036
By:    Ira S. Dizengoff, Esq.
       Philp C. Dublin, Esq.
       Abid Qureshi, Esq.

-and-

2300 N. Field Street, Suite 1800
Dallas, Texas 75201
By:    Rachel Biblo Block, Esq.

**WILLKIE FARR & GALLAGHER LLP**
*Attorneys for Ruby Freeman and Wandrea' ArShaye Moss*
787 Seventh Avenue
New York, New York 10019
By:    Rachel C. Strickland, Esq.
       Aaron E. Nathan, Esq.
       James H. Burbage, Esq.

-and-

1875 K Street NW
Washington, DC 20006
By:    Michael J. Gottlieb, Esq.
       Meryl Governski, Esq.

**UNITED TO PROTECT DEMOCRACY**
*Attorneys for Ruby Freeman and Wandrea' ArShaye Moss*
82 Nassau Street, #601
New York, New York 10038
By:    John Langford, Esq.
       Rachel Goodman, Esq.

**DUBOSE MILLER LLC**
*Attorneys for Ruby Freeman and Wandrea' ArShaye Moss*
75 14th Street NE. Suite 2110
Atlanta, Georgia 30309
By:    Von A. DuBose, Esq.

**WILLIAM K. HARRINGTON**
*United States Trustee*
Office of the United States Trustee
Alexander Hamilton Custom House
One Bowling Green, Suite 515
New York, New York 10004
By:    Andrea B. Schwartz, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are two motions, both of which would end Rudolph W. Giuliani's ability

to run his Chapter 11 case as a debtor in possession but in different ways.  The first is the motion

of the Official Committee of Unsecured Creditors (the "Committee") for the appointment of a

Chapter 11 trustee.  *See* ECF No. 233 (the "Trustee Motion").[1]  The Trustee Motion was joined

by creditors in this case known as the Freeman Plaintiffs,[2] but it was opposed by Mr. Giuliani.

---

[1]      Unless otherwise specified, references to the Case Management/Electronic Case Filing ("ECF") docket are
to Case No. 23-12055.

[2]      The term "Freeman Plaintiffs" refers to Ruby Freeman and Wandrea' Arshaye Moss, the Plaintiffs in
*Freeman v. Giuliani*, Case No. 21-cv-3354, the defamation action brought against Mr. Giuliani in the United States
District Court for the District of Columbia (the "District Court") that resulted in a judgment of approximately $148
million against Mr. Giuliani.  *See Freeman v. Giuliani*, 691 F. Supp. 3d 32 (D.D.C. 2023), *judgment entered,* 2023

*See* Joinder of Ruby Freeman and Wandrea' Arshaye Moss to the Trustee Motion [ECF No. 254];

Debtor's Opposition to the Trustee Motion [ECF No. 250] (the "Trustee Opp."). The Trustee

Motion was filed in late May 2024 and argued before this Court on June 17, 2024.

The second motion, which was filed only after the Trustee Motion was fully briefed and

argued, is the Debtor's one page Application to Convert this Chapter 11 Case to Chapter 7 [ECF

No. 277] (the "Conversion Motion"). The Conversion Motion was signed by Mr. Giuliani rather

than his counsel and did not explain the basis for the proposed conversion. Both the Freeman

Plaintiffs and the Committee oppose conversion. *See* Objection of Ruby Freeman and Wandrea'

Arshaye Moss [ECF No. 282] (the "Freeman Opp."); Objection of the Committee [ECF No.

281]. While both the Committee and the Freeman Plaintiffs objected to the Conversion Motion,

their objections take different views on the appropriate outcome here. The Committee continues

to assert that appointment of a Chapter 11 trustee is in the best interests of creditors while the

Freeman Plaintiffs argue that dismissal is more appropriate. *See generally id.*

The Court held a hearing on the Conversion Motion on July 10, 2024. Approximately an

hour before the hearing on the Conversion Motion, Mr. Giuliani filed a Notice of the Debtor's

Consent to Dismissal, together with a proposed form of order. *See* ECF No. 285 (the "Consent

Notice"). The Consent Notice indicates that Mr. Giuliani consents to the dismissal of the case or,

in the alternative, seeks conversion to Chapter 7. The proposed form of order attached to the

Consent Notice provides that the dismissal would be with prejudice, with Mr. Giuliani being

prohibited from voluntarily filing for relief under any chapter of the Bankruptcy Code for a

period of one year from the dismissal of this case. At the hearing, the Court heard argument on

the best course forward for the case given the shifting landscape. For the reasons that will be

---

WL 9783148 (D.D.C. Dec. 18, 2023). The Court will refer to the proceedings associated with this case as the
"Freeman Litigation".

discussed, the Court finds that dismissal of this bankruptcy case with a one year bar to refiling is in the best interests of creditors.

## I.    Background

Mr. Giuliani filed a voluntary petition under Chapter 11 of the Bankruptcy Code in late December 2023.  *See* ECF No. 1.  Mr. Giuliani has operated as a debtor in possession since the filing of the petition.  Mr. Giuliani explained that the bankruptcy filing was precipitated by the entry of a judgment against Mr. Giuliani in the Freeman Litigation.  *See* Affidavit Pursuant to Rule 1007-4 ¶ 5 [ECF No. 5].  The Freeman Litigation involved a claim brought by two individuals who had worked as election workers in Georgia during the 2020 federal election.  *See* Amended Complaint [Case No. 21-cv-3354, ECF No. 22] (the "Freeman Complaint").  The Freeman Complaint alleges that Mr. Giuliani defamed the Freeman Plaintiffs by falsely alleging that they committed election fraud.  *Id.*  The Freeman Complaint further asserts that Mr. Giuliani made these statements over a period of more than eighteen months despite knowing that the statements were false, resulting in significant harm to the Freeman Plaintiffs including loss of employment, threats to their physical safety, and ongoing emotional and physical distress.  *Id.* Approximately a year and a half after the commencement of the Freeman Litigation, the District Court issued an opinion entering a default judgment against Mr. Giuliani in the case as a discovery sanction, finding that Mr. Giuliani "refused to comply with his discovery obligations and thwarted plaintiffs Ruby Freeman and Wandrea' ArShaye Moss's procedural rights to obtain any meaningful discovery in this case."  *See Freeman v. Giuliani*, 691 F. Supp. at 38.   The District Court detailed the ways in which Mr. Giuliani—and his related entities—had failed to comply with his discovery obligations.  *See generally id.*  In deciding to impose the most severe discovery sanction, the District Court found that Mr. Giuliani had made "crystal clear" his choice

not to comply with his discovery obligations. *Id.* at 53. With the imposition of the default

judgment, Mr. Giuliani was found to be civilly liable for the Freeman Plaintiffs' claims of

defamation, intentional infliction of emotional distress, civil conspiracy, and punitive damages.

*Id.* at 41. The Freeman Litigation then proceeded to trial for a determination of damages. *See*

*generally id.* After trial, the jury awarded the Freeman Plaintiffs some $148 million in damages,

which included $75 million in punitive damages. *See* Verdict Form [Case No. 21-cv-3354, ECF

No. 135]. Shortly after, a judgment was entered against Mr. Giuliani declaring, among other

things, that Mr. Giuliani "engaged in extreme and outrageous conduct which . . . intentionally

and maliciously . . . caused the [Freeman Plaintiffs] to suffer severe emotional distress."

*Freeman v. Giuliani*, 2023 WL 9783148, at *1 (D.D.C. Dec. 18, 2023). Less than a week later,

Mr. Giuliani filed this bankruptcy case. *See* ECF No. 1. Approximately three weeks after the

case was commenced, the Committee was appointed. *See* Notice of Appointment of Official

Committee of Unsecured Creditors [ECF No. 46].

Shortly after the commencement of the bankruptcy case, Mr. Giuliani filed a number of

motions focused on the Freeman Litigation, including a motion to lift the stay to permit Mr.

Giuliani to file post-trial motions and a notice of appeal of the judgment in the Freeman

Litigation. *See* Debtor's Motion for an Order Modifying the Stay [ECF No. 25]; *see also*

Debtor's Application for Retention and Employment of Camara & Sibley, LLP as Special

Litigation Counsel [ECF No. 40] (seeking to retain special counsel to represent Mr. Giuliani in

the Freeman Litigation). Though the Committee and the Freeman Plaintiffs initially opposed the

motion to lift the stay, the parties ultimately agreed to a consensual order lifting the stay for the

limited purpose of allowing Mr. Giuliani to file post-trial motions with the District Court and a

notice of appeal. *See* Order Granting Limited Relief from the Automatic Stay to Preserve

Certain Post-Trial Rights [ECF No. 124]. After the District Court denied Mr. Giuliani's post-trial motions, Mr. Giuilani then filed a second motion seeking to lift the automatic stay to allow him to proceed with the appeal of the Freeman Litigation, as well as a retention application seeking to retain new counsel for the Freeman Litigation. *See* Debtor's Motion for an Order Modifying the Automatic Stay for the Limited Purpose of Allowing the Debtor to Proceed with Prosecuting and Perfecting the *Freeman* Appeal Before the D.C. Circuit [ECF No. 195] (the "Second Lift Stay Motion"); *see also* Debtor's Application for Retention and Employment of Kenneth Caruso Law LLC as Special Litigation Counsel Effective March 20, 2024 [ECF No. 169]. This Second Lift Stay Motion was filed about four months after the bankruptcy case was filed. The Committee and the Freeman Plaintiffs objected to both the Second Lift Stay Motion as well as the retention application. *See* ECF Nos. 200, 201, 205, 207. The Court denied the Second Lift Stay Motion given the lack of progress in the bankruptcy case and concern that the appeal "would distract [Mr. Giuliani] from reorganizing and will . . . serve as . . . an excuse for further delay in taking critical steps." Hr'g Tr. 57:23-25 (May 14, 2024) [ECF No. 231]; *see also* Order Denying Debtor's Motion for an Order Modifying the Automatic Stay for the Limited Purpose of Allowing the Debtor to Proceed with Prosecuting and Perfecting the *Freeman* Appeal Before the D.C. Circuit [ECF No. 230].

While Mr. Giuliani's attention was directed at the Freeman Litigation, the Committee pursued information about Mr. Giuliani's financial situation that would be needed for the bankruptcy to move forward. In March 2024, for example, the Committee filed a motion pursuant to Fed. R. Bankr. P. 2004 for authorization to seek discovery from Mr. Giuliani and other third parties, including business entities wholly owned by Mr. Giuliani. *See* Motion of the Official Committee of Unsecured Creditors for the Entry of an Order Pursuant to Bankruptcy

Code Section 105 and Federal Rule of Bankruptcy Procedure 2004 Authorizing Discovery of The Debtor and Third Parties [ECF No. 140]. Mr. Giuliani did not object to the motion, and the Court granted the motion in early April 2024. *See* Order Granting Motion of the Official Committee of Unsecured Creditors for Entry of an Order Pursuant to Bankruptcy Code Section 105 and Federal Rule of Bankruptcy Procedure 2004 Authorizing Discovery of The Debtor and Third Parties [ECF No. 164] (the "Rule 2004 Order"). Pursuant to the Rule 2004 Order, the Committee began serving subpoenas on a number of different parties and sought an examination of Mr. Giuliani. *See* ECF Nos. 171-85; 187-88; 190-93. The parties from whom the Committee sought discovery included Mr. Giuliani's wholly owned businesses; these entities include Giuliani Partners, LLC; Giuliani Group, LLC; Giuliani & Company, LLC; Giuliani Security & Safety, LLC; World Capital Payroll Corp.; Giuliani Communications, LLC. *See generally* Rule 2004 Order; *see also* Periodic Report Regarding Value, Operations, and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest [ECF No. 81] (the "2015.3 Report"). Mr. Giuliani owns 100% of each of these entities. *See id.*

The Committee also sought to compel Mr. Giuliani to sell the condominium that he owns in Florida. *See* Motion of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani to Compel the Debtor to (I) Sell his Florida Condominium and (II) Obtain Homeowners Insurance for his Florida Condominium and New York City Apartment [ECF No. 148] (the "Florida Condo Motion"). In that motion, the Committee argued that maintaining the condominium in Florida is a drain on estate resources and that "the Debtor appears to have no interest in monetizing this asset, contrary to his fiduciary duty to maximize the value of the estate for the benefit of his creditors." Florida Condo Motion ¶ 23. The Committee made clear that the Florida Condo Motion was filed as an "intermediary step to give the Debtor the opportunity to

discharge his duties to creditors and act as a fiduciary before the Committee is required to take

additional steps to protect the remaining value of the Debtor's estate, including filing a motion to

appoint a [C]hapter 11 trustee . . . ."  Reply in Support of the Motion of the Official Committee

of Unsecured Creditors of Rudolph W. Giuliani to Compel the Debtor to (I) Sell His Florida

Condominium and (II) Obtain Homeowners Insurance for his Florida Condominium and New

York City Apartment [ECF No. 157] ¶ 10 n. 8.  At the hearing on the Florida Condo Motion, the

Court perceived it as a "shot across the bow" at the Debtor by the Committee and a preview for

more aggressive steps that the Committee might take to move the case forward.  *See* Hr'g Tr.

56:4-25 (April 4, 2024) [ECF No. 166] (noting more extreme steps might include opposing an

extension of Mr. Giuliani's exclusive right to file a plan or filing a motion to appoint a trustee).

In late April 2024, the Committee targeted the Debtor's failure to comply with his

financial disclosure obligations in bankruptcy.  *See* Motion of the Official Committee of

Unsecured Creditors of Rudolph W. Giuliani to Compel the Debtor to (I) File Delinquent

Monthly Operating Reports and (II) File Timely Future Monthly Operating Reports [ECF No.

197] (the "MOR Motion").  In the MOR Motion, the Committee noted that neither the monthly

operating report for February 2024 nor March 2024 had been filed and that even the monthly

operating reports that had been filed contained only limited supporting documentation, with that

documentation revealing more gaps in disclosure.  *See* MOR Motion ¶¶ 1-2.  At the hearing on

the MOR Motion, the Committee did note that while the missing monthly operating reports had

been filed, there were still deficiencies.  *See* Hr'g Tr. 65:19-22 (May 14, 2024).

In late May 2024, the Committee filed the Trustee Motion seeking the appointment of a

Chapter 11 Trustee under Section 1104(c) of the Bankruptcy Code.  The Trustee Motion

highlighted numerous significant and undisputed deficiencies in the Debtor's financial disclosure

obligations, ranging from failure to comply with Rule 2004 discovery demands to incomplete and inaccurate schedules of assets and liabilities.  After the Trustee Motion was fully briefed, the Court heard oral argument and took the matter under advisement.  Approximately two weeks after the hearing on the Trustee Motion, Mr. Giuliani filed the Conversion Motion.

## II.    Discussion

### A.    Right to Convert from Chapter 11 to Chapter 7

As a threshold matter, the Court considers whether Mr. Giuliani has an absolute right to convert his case from one under Chapter 11 of the Bankruptcy Code to a liquidation case under Chapter 7 of the Bankruptcy Code.  The Conversion Motion does not discuss whether the case should be converted as a matter of right.  In fact, it says very little about the legal justification for conversion.  But at a status conference on the Conversion Motion, Mr. Giuliani's counsel intimated that Mr. Giuliani could convert his case as a matter of right.

Consistent with prior decisions in this district, however, the Court finds that a debtor does not have an absolute right to convert a case from Chapter 11 to Chapter 7.  *See In re Adler*, 329 B.R. 406 (Bankr. S.D.N.Y. 2005).  In reaching this conclusion, the *Adler* court noted that the statutory language providing for conversion is permissive, not mandatory, stating that a debtor "may" convert his case.  *Id*. at 409.  The *Adler* court went on to note that the bankruptcy rules require that a motion to convert from Chapter 11 to Chapter 7 must be made on 20 days' notice to creditors, rather than simply by filing a notice of conversion; such notice would not be required unless parties had a chance to object and a court was required to rule on the request. *See id.*  In reaching this conclusion, the *Adler* court noted that other courts found that debtors could be prevented from converting their case due to the existence of "extreme circumstances" constituting bad faith.  *Id.* (citing *In re Marrama*, 313 B.R. 525 (1st Cir. BAP 2004)).  Courts

9

outside of this district have similarly concluded that debtors do not possess an absolute right to convert their cases from Chapter 11 to Chapter 7. *See Kearney v. Unsecured Creditors Comm. (In re Kearney)*, 625 B.R. 83, 86 (10th Cir. 2021); *In re Johnson*, 546 B.R. 83, 167 (Bankr. S.D. Ohio 2016); *Monroe Bank & Tr. v. Pinnock*, 349 B.R. 493, 497 (E.D. Mich. 2006). Indeed, Mr. Giuliani has not cited to any decision holding that a debtor's right to convert is absolute. This Court's conclusion is also supported by the Supreme Court's decision in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007). In *Marrama*, the Supreme Court held that a debtor does not have an absolute right to convert a case from a Chapter 7 to a Chapter 13. Notably, the Supreme Court in *Marrama* was construing statutory language in Section 706(d) of the Bankruptcy Code that is essentially identical to the applicable language here in Section 1112(f). *See* 549 U.S. at 371; *compare* 11 U.S.C. § 706(d) *with* 11 U.S.C. §1112(f).

B. *1112(b) Standard*

Having determined that Mr. Giuliani does not have an absolute right to convert, the Court must determine the appropriate path here given the competing requests for relief. In assessing that question, the Court turns to Section 1112(b), which sets out the relevant standard. That section provides in relevant part:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this [C]hapter to a case under [C]hapter 7 or dismiss a case under this Chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under [S]ection 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1). Taking our cue from the statute, the Court turns first to whether cause exists under the statute.

1. Cause

Section 1112(b)(4) provides a list of 16 items that constitute "cause." These include:

- gross mismanagement of the estate;

- substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;

- failure to comply with an order of the court; and

- unexcused failure to satisfy timely any filing or reporting requirement established by the Bankruptcy Code or by any rule applicable to a case under Chapter 11.

*See* 11 U.S.C. § 1112(b)(4).  The list contained in this subsection is not exhaustive, however, and courts are free to consider other factors.  *See In re FRGR Managing Member LLC*, 419 B.R. 576, 580 (Bankr. S.D.N.Y. 2009); *see also In re Tornheim,* 181 B.R. 161, 163 (Bankr. S.D.N.Y. 1995) ("The factors listed in section 1112(b) are not exhaustive, and the Bankruptcy Code affords a bankruptcy court wide discretion to determine if cause exists.  The bankruptcy court can consider other factors that may arise, and use its equitable powers to reach a proper result.") (internal citations omitted).  The burden is on the movant to establish cause for conversion or dismissal. *See In re AdBrite Corp.*, 290 B.R. 209, 214 (Bankr. S.D.N.Y. 2003) (citing *Loop Corp. v. United States Trustee*, 290 B.R. 108, 112 (D. Minn. 2003)).

The Court finds that cause exists to convert or dismiss the case.  The record in this case reflects Mr. Giuliani's continued failure to meet his reporting obligations and provide the financial transparency required of a debtor in possession.  These failures are set forth in extensive detail in the Trustee Motion and the objection to the Conversion Motion.  For purposes of brevity, the Court will only highlight a few here.

First, Mr. Giuliani has failed to respond to the Rule 2004 Order.  Most significantly, none of Mr. Giuliani's business entities have made any production at all despite being required to do so by the Rule 2004 Order.  *See* Trustee Motion ¶¶ 30-31.  The Rule 2004 Order clearly allows the Committee to serve discovery demands on Mr. Giuliani as well as affiliated corporate

entities, including Giuliani Partners, LLC and Giuliani Communications, LLC. *See* Rule 2004

Order. The Committee propounded discovery on those entities and Mr. Giuliani. *See, e.g.*, ECF

No. 172 (notice of intent to serve subpoena on Mr. Giuliani); ECF No. 174 (notice of intent to

serve subpoena on Giuliani Communications, LLC). However, Mr. Giuliani has only made one

production in response to the Rule 2004 Order containing fifteen documents consisting of Mr.

Giuliani's bank statements, credit card statements, and income tax returns for 2021 and 2022.

*See* Trustee Motion ¶ 31; Reply of the Official Committee of Unsecured Creditors to (I) The

Debtor's Opposition to, and (II) The United States Trustee's Statement Concerning, the Motion

of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani for Entry of an Order

Directing the Immediate Appointment of a Trustee Pursuant to 11 U.S.C. § 1104 [ECF No. 256]

¶ 3. Mr. Giuliani's businesses have made no production whatsoever. *See id.* Nor has Mr.

Giuliani or his entities identified any legitimate reason why the requested information should not

or cannot be produced. This failure to provide even basic disclosure about these assets is

sufficient in and of itself for a finding of cause.

Second, Mr. Giuliani has not fully met his obligation to file certain schedules and lists

detailing his financial condition, including a list of creditors, a schedule of assets and liabilities, a

statement of current income and current expenditures, and a statement of financial affairs. *See*

11 U.S.C. § 521(a). These documents are to be filed at or near the start of a case. The accuracy

of these documents is vital to a bankruptcy proceeding because they

> provide a recent financial history of the debtor as well as a list of its assets, liabilities and
> contractual obligations. **These forms are the debtor's representations of its own
> financial condition at the start of the case. They are signed under penalty of
> perjury. They are critically important and must be accurate, since the information
> will be relied upon by all parties and form the basis for discussions regarding a plan.**

1 Collier Trustees & Debtors in Possession ¶ 20.05(23) (2023) (emphasis in original).  In early March 2024, Mr. Giuliani signed a stipulation acknowledging that, despite previous amendments to his schedules of assets and liabilities and statement of financial affairs, "further amendments and disclosures are necessary."  *See* ECF No. 133.  However, since the execution of that stipulation, no amended schedules or statements have been filed and the promised information remains outstanding.

Moreover, there are deficiencies in the information that Mr. Giuliani has provided.  For example, while Mr. Giuliani's initial schedules list no executory contracts, Mr. Giuliani in fact has a contract for an upcoming book; this information was only belatedly included in the schedules in February 2024. *Compare* ECF No. 1 *with* ECF No. 129.  Shortly before the Trustee Motion was filed, the Committee learned through media reports that Mr. Giuliani was promoting a coffee brand, a fact about which Mr. Giuliani's counsel was purportedly unaware.  *See* Trustee Motion ¶ 43; *see also* Declaration of Rachel Biblo Block in Support of the Motion of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani for Entry of an Order Directing the Immediate Appointment of a Trustee pursuant to 11 U.S.C. § 1104 [ECF No. 235], Ex. A.

Third, Mr. Giuliani has failed to fulfill his obligations to file accurate, complete monthly operating reports.  A debtor in possession is obligated to file monthly operating reports that include information about the case and certain financial transactions and "keep a record of receipts and the disposition of money and property received".  28 C.F.R. § 58.8; Fed. R. Bankr. P. 2015.  As part of a debtor's continuing obligations during a case, monthly operating reports are required to be filed by "the 21st day of the month immediately following the reporting period covered by the [monthly operating report]."  28 C.F.R. § 58.8(e).  Every single monthly operating report filed by Mr. Giuliani has been untimely.  For example, his monthly operating

report for February 2024 was not filed until May 2, 2024, approximately six weeks late. *See* ECF No. 199. In fact, Mr. Giuliani would often promise to file monthly operating reports by a certain date, only to miss those deadlines. Perhaps even more troubling, the information in the monthly operating reports has been incomplete or inaccurate. For example, the monthly operating report for February 2024 attaches bank statements for the wrong year, February 2023. *See* ECF No. 199. This monthly operating report has not been amended or supplemented. Despite listing three bank accounts on his amended schedule A/B, the December 2023 monthly operating report only attaches a statement for one bank account. *See* ECF No. 80. And the monthly operating report for May 2024 attaches a bank account statement for an account with an account number ending in 8958; however, no information regarding this bank account had previously been provided in any of the prior monthly operating reports. The monthly operating reports also appear to contain errors as none of the end of month cash balances match the opening cash balance for the following month. *Compare* monthly operating report for February 2024 (reporting an ending cash balance of $57,856) *with* monthly operating report for March 2024 [ECF No. 203] (reporting a beginning cash balance of $52,947).

The lack of financial transparency is particularly troubling given concerns that Mr. Giuliani has engaged in self-dealing and that he has potential conflicts of interest that would hamper the administration of his bankruptcy case. The income that Mr. Giuliani earns for his individual labors is funneled to his corporate entities. *See* Trustee Motion ¶¶ 56-60. Mr. Giuliani's choice to route income into his businesses is concerning given that his monthly operating reports reflect that Mr. Giuliani receives no income from these corporate entities; indeed, he purportedly received no income other than his social security benefits even though he receives compensation of at least $15,000 per month for hosting a radio show on WABC and

between $100,000 and $150,000 from his work hosting a podcast called America's Mayor Live.[3]
*See* Trustee Motion ¶¶ 56-57 (citing monthly operating reports). Moreover, Mr. Giuliani's own
disclosures demonstrate that he uses personal funds to pay expenses associated with his
businesses without Court approval. *See, e.g.*, February Monthly Operating Report (showing
$1990.90 in payments made on behalf of Giuliani Partners). Mr. Giuliani argues that operating
through an alter ego limited liability company is "customary" and not nefarious. *See* Trustee
Opp. ¶¶ 5, 15. But it is impossible to determine the appropriateness of these financial
arrangements when Mr. Giuliani has completely failed to provide information about them. While
Mr. Giuliani asserts that the revenue from his business was insufficient to cover expenses (thus
purportedly explaining his lack of income from his work), *see* Trustee Opp. ¶ 15, he has not
produced any documentation to substantiate that claim, a point repeatedly emphasized by the
Committee. *See, e.g.*, Hr'g Tr. 25:5-11 (June 17, 2024). In fact, the Committee contends that the
business entities have expenses that are significantly less than the income deposited into those
entities. *See* Trustee Motion ¶ 60 (citing 2015.3 Report). In the end, the only information we
have are statements from Mr. Giuliani's counsel that counsel had "been advised" that the income
deposited with the business entity did not exceed expenses, and that the situation "may change"
due to a new contract, but he was "not in a position to say." Hr'g Tr. 78:24-79:3 (June 17, 2024).
This lack of transparency—apparently even to Mr. Giuliani's own counsel—raises significant
concerns about Mr. Giuliani's ability and willingness to manage the bankruptcy estate in the best
interest of his creditors.

  Mr. Giuliani does not contest the fact that he has not complied with his disclosure
obligations. In fact, Mr. Giuliani concedes that his "compliance with the operating guidelines

---

[3]  Mr. Giuliani's WABC radio show appears to have been cancelled in May 2024. *See* Trustee Motion ¶ 57,
n. 31.

was not up to par," though he is "striving to adhere to the guidelines."  Trustee Opp. ¶ 38.  Mr.

Giuliani states that his difficulty with financial reporting is due to the fact that his longtime

personal accountant has declined to assist with the preparation of reports and he cannot find

another professional to become involved in the case.  *See id.* ¶ 41.  Mr. Giuliani argues that

inaccurate record keeping is "not the fundamental equivalent of fraud" and therefore Mr.

Giuliani's reporting failures do not constitute cause for appointment of a trustee.  *Id.* ¶¶ 17, 30.

But the Court is not convinced.  Notably, in the three weeks between the time the Committee

filed the Trustee Motion and when the Court heard argument on the Trustee Motion, Mr. Giuliani

did not provide any additional financial disclosures or take any steps to correct reporting that the

Committee has identified as inaccurate.  Nor has he taken any since.  In fact, Mr. Giuliani's

counsel conceded that there are "not yet" records regarding how money flows between Mr.

Giuliani and his wholly owned corporate entities.  *See* Hr'g Tr. 70:8-17 (June 17, 2024).  Mr.

Giuliani's counsel also stated that Mr. Giuliani has not been able to retain any bookkeeper or

accountant to work on his behalf.  *See id.* at 76:13-23.  In the Court's experience, such a fact is

highly unusual and troubling given that the bankruptcy case has been pending for more than six

months.  When confronted with complaints about a failure to satisfy the Bankruptcy Code's

obligations as to financial transparency, most debtors will respond by curing at least some—if

not all—of the defects.  By contrast, Mr. Giuliani has done nothing.[4]

       2.   Best Interest of Creditors and the Estate

Having found that cause exists, the decision as to whether to dismiss, convert, or appoint

a Chapter 11 trustee is within the discretion of the court.  *FRGR Managing Member*, 419 B.R. at

580; *see also In re BH S & B Holdings, LLC*, 439 B.R. 342, 347 (Bankr. S.D.N.Y. 2010) ("case

---

[4]    Indeed, Mr. Giuliani does not appear to seriously contest the existence of cause given that he has requested conversion or dismissal.  *See generally* Consent Notice.

law makes clear that the court still has discretion in deciding whether to grant or deny the

motion, and should carefully examine all facts when deciding a motion to convert.") (internal

citation omitted).

As a threshold matter, the Court finds that Mr. Giuliani's case should not be converted to

a Chapter 7 liquidation proceeding.  Interestingly, his request to convert the case to Chapter 7 is

completely inconsistent with his recent prior statements about the case.  Just two weeks prior to

filing the Conversion Motion, Mr. Giuliani filed a motion seeking to extend his exclusive time to

file a Chapter 11 plan of reorganization, arguing that the exclusive period should be extended

because Mr. Giuliani's bankruptcy case is "complex, there exist unresolved contingencies which

may have a substantial effect on a plan, and [Mr. Giuliani] is proceeding in good faith towards

resolving those issues."  *See* Debtor's Application for an Order Further Extending Debtor's

Exclusive Periods [ECF No. 261] ¶ 22.  In any event, conversion to a Chapter 7 is not in the best

interest of creditors.  Conversion is vigorously opposed by the Committee and by the Freeman

Plaintiffs, both of whom correctly view it as a substantial step backwards.  A newly appointed

Chapter 7 trustee would need to learn the bankruptcy case from scratch, without the assistance of

the Committee that would be disbanded in any Chapter 7.  Moreover, a Chapter 7 liquidation

proceeding is ill equipped to maximize any value from Mr. Giuliani's ongoing business ventures.

Having determined that conversion to a Chapter 7 case is not appropriate, the Court turns

to the remaining two options: dismissal or appointment of a Chapter 11 trustee.  While the

Committee argues strongly for the appointment of a Chapter 11 trustee, the Freeman Plaintiffs

argue that dismissal is in the best interests of creditors and the estate.  When considering whether

dismissal or appointment of a Chapter 11 trustee is in the best interests of creditors and the

estate, the Court can look at a number of factors, including:

1. whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal;

2. whether there would be a loss of rights granted in the case if it were dismissed rather than converted;

3. whether the debtor would simply file a further case upon dismissal;

4. the ability of the trustee in a Chapter 7 case to reach assets for the benefit of creditors;

5. in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise;

6. whether any remaining issues would be better resolved outside the bankruptcy forum;

7. whether the estate consists of a single asset; and

8. whether the debtor had engaged in misconduct and whether creditors are in need of a Chapter 7 case to protect their interests.

*In re Hampton Hotel Invs., L.P.*, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001) (citing 7 Collier on Bankruptcy ¶ 1112.04[6] (15th ed. Rev. 2000)).  But while these factors provide guidance, the Court examines all of the facts of the case to assess the best interests of creditors.  Those facts support dismissal for many reasons.

First, there is legitimate concern that remaining in Chapter 11 will result in administrative expenses that would erode much, if not all, of the value of the estate.  In reaching this conclusion, the Court is mindful that "what's past is prologue."  Said another way, there is little reason to conclude that the Mr. Giuliani's uncooperative conduct will change after the appointment of a Chapter 11 trustee.  Mr. Giuliani has failed to provide an accurate and complete picture of his financial affairs in the six months that this case has been pending.  Transparency into Mr. Giuliani's finances has proven to be an elusive goal despite the continued diligence and extensive efforts of the Committee and the Freeman Plaintiffs.  The Court sees no evidence that this will change going forward with a Chapter 11 trustee.  The Debtor has not even retained an

accountant, which is the most rudimentary of steps.  Such a failure is a clear red flag, as has been previously noted by the Court months ago.  The continued lack of financial transparency would severely hamper the administration of this case by a Chapter 11 trustee, who would be required to incur extensive expense to seek compliance from this recalcitrant debtor.  Counsel to the Committee argues that it is appearing *pro bono* and thus expense should be less of a concern.  But there is no expectation—nor should there be—that a Chapter 11 trustee would do so.  And the Court cannot appoint a Chapter 11 trustee without then supporting that trustee's efforts with appropriate resources, such as accountants and financial advisors as necessary.  This is exactly what the Committee has done, retaining a financial advisor that has billed approximately $400,000 to date for its work.

Second and relatedly, the stay in Chapter 11 with a Chapter 11 trustee would be lengthy.  In addition to unraveling Mr. Giuliani's financial circumstances, a Chapter 11 trustee would need to pursue the investigations already identified by the Committee against the Republican National Committee and Donald Trump, both of which promise to be complex matters with uncertain outcomes.  Moreover, a Chapter 11 trustee would not be able to make any distributions to creditors until liquidating the claims of the rest of the creditors other than the Freeman Plaintiffs.  Mr. Giuliani's schedules reflect at least nine outstanding lawsuits, including the Freeman Litigation.  *See* ECF No. 100.  Other than the Freeman Litigation, none of the lawsuits have been reduced to judgment.  The plaintiffs in many of these matters have a right to a jury trial, making these cases better resolved outside the bankruptcy forum.  As those parties receive their day in court—to which they are entitled—this Chapter 11 case would remain pending with all creditors left waiting.

Third, an extended stay in bankruptcy may be value destructive in another way.  In the case to date, the Freeman Plaintiffs have stated their intent to assert administrative claims based on Mr. Giuliani's conduct—after the filing of the bankruptcy—in repeating the same defamatory statements against the Freeman Plaintiffs that were the subject of the defamation case in the District Court.  *See* Hr'g Tr. 77:20-24 (May 14, 2024) (counsel to the Freeman Plaintiffs stating that Mr. Giuliani's post-petition conduct has given rise to administrative expense claims);  *see also* Complaint for Injunctive Relief [Adv. Pro. No. 24-1355, ECF No. 1] (complaint seeking to enjoin Mr. Giuliani from continuing to make defamatory statements against the Freeman Plaintiffs).  Such statements expose the estate to liability that severely threatens the recovery of any unsecured creditors, who can only recover after the Freeman Plaintiffs would receive payment on any such allowed administrative claim.  There is a serious risk of such continued conduct by Mr. Giuliani—with the attendant administrative expense—given the history in this case and the Freeman Litigation in the District Court.  *See* Hr'g Tr. 61:2-20 (June 17, 2024) (counsel for the Freeman Plaintiffs noting that on June 3, 2024—after the injunction prohibiting new defamatory statements against the Freeman Plaintiffs was issued—Mr. Giuliani published a statement on the X platform that allegedly violated the injunction).  When this risk is considered together with the cost of administration going forward, there is a real prospect of unsecured creditors receiving little to nothing in bankruptcy notwithstanding a lengthy delay during which they are prevented from pursuing their rights.

Fourth, there is also a credible risk—acknowledged by Mr. Giuliani's counsel during argument—that Mr. Giuliani would decide to cease any income producing activity if a Chapter 11 trustee were appointed.  The threat of such an outcome supports dismissal under factors four

and five.  Under such circumstances, the only viable plan of reorganization would be a liquidating plan, with a limited asset pool that would be eroded by administrative expenses.

Fifth, Mr. Giuliani has agreed to a one year filing bar following the dismissal of this case, alleviating concerns that Mr. Giuliani would simply file another bankruptcy as soon as this case is dismissed.  *See* Consent Notice.  The year-long bar will provide time for creditors to pursue any rights, including executing on existing judgments or pursuing unresolved litigation. Accordingly, factor three favors dismissal.

Other factors also favor dismissal.  As the Freeman Plaintiffs noted, there is no evidence of any creditors receiving preferential payments whose recovery could only be pursued in bankruptcy court.  *See* Freeman Opp. ¶ 17 (citing factor one).  Nor is there a need for the appointment of a trustee to protect the interests of creditors given that the Freeman Plaintiffs and other litigation claimants have able counsel representing their interests, a consideration under factor eight.

Finally, the Freeman Plaintiffs argue that courts evaluate the preference of creditors when determining the disposition of a case, and that the view of the Freeman Plaintiffs should be given substantial deference as the largest unsecured creditors with a fully liquidated judgment.  *See* Freeman Opp. ¶ 18 (citing *Loop Corp. v. United States Tr.*, 379 F.3d 511, 518 (8th Cir. 2004)).  On the other hand, the Committee is legitimately concerned that dismissal would effectively create a race to the courthouse for unsecured creditors with unliquidated claims who would otherwise be treated equally during a bankruptcy with the Freeman Plaintiffs, who already possess a judgment.  Given that any distribution to unsecured creditors is very far from certain, however, the Court finds the Committee's concern is outweighed by the benefits to the creditors from dismissal.   Forcing creditors to wait years while they are prevented from pursuing their rights for, at best, a modest distribution seems inequitable and ill-advised.  Considering the totality of circumstances and

weighing all the facts, therefore, the interests of creditors and the estate are better served by

dismissal.

### III.    Conclusion

For the reasons set forth above, the case is dismissed.  Counsel to the Freeman Plaintiffs

should settle an order on three days' notice.  The proposed order should  be submitted by filing a

notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy

of the proposed order attached as an exhibit to the notice.  A copy of the notice and proposed

order shall also be served upon the Mr. Giuliani's counsel, the Committee, and the Office of the

United States Trustee.[5]

Dated: White Plains, New York
      July 12, 2024


                                                      */s/ Sean H. Lane*
                                        UNITED STATES BANKRUPTCY JUDGE

---

[5]       The parties disagree on whether the fees of the Committee's financial advisors must be paid as part of any dismissal.  *See* Letter to the Court from Gary C. Fischoff, dated July 11, 2024 [ECF No. 286].  As no fee application is before the Court, it is premature for the Court to determine what fees should be paid as part of dismissal.  All parties reserve their rights on this issue, which can be addressed after the proposed order and any responses are filed on the docket.