1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - -x

5

6  In the Matter of:

7  RUDOLPH W. GIULIANI,                    Main Case No.

8         Debtor.                          23-12055-shl

9

10  - - - - - - - - - - - - - - - - - - - -x

11

12               United States Bankruptcy Court

13               One Bowling Green

14               New York, New York

15

16               July 10, 2024

17               11:07 AM

18

19

20

21  B E F O R E:

22  HON. SEAN H. LANE

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  A. VARGAS

2

1

2  Case Management Status Conference.

3

4  Doc. #277, Debtor's Motion to Convert Chapter 11 Case to

5  Chapter 7.

6

7  Doc. #281, Objection of the Official Committee of Unsecured

8  Creditors to Debtor's Automatic stay to Convert Chapter 11 to

9  Chapter 7.

10

11  Doc. #282, Objection of Ruby Freeman and Wandrea Arshaye to

12  Debtor's Automatic stay to Convert Chapter 11 to Chapter 7.

13

14  Scheduling Conference Re Doc. #241, Motion of the Official

15  Committee of Unsecured creditors For the Entry of an Order

16  Establishing The Procedures for Interim Compensation And

17  Reimbursement of Expenses Of Committee Professionals.

18

19

20  Transcribed by:  Sharona Shapiro

21  eScribers, LLC

22  7227 North 16th Street, Suite #207

23  Phoenix, AZ 85020

24  (800) 257-0885

25  operations@escribers.net

3

```
 1
 2
 3    A P P E A R A N C E S:
 4    BERGER, FISCHOFF, SHUMER, WEXLER & GOODMAN, LLP
 5         Attorneys for Debtor
 6         6901 Jericho Turnpike
 7         Suite 230
 8         Syosset, NY 11791
 9
10    BY:   HEATH S. BERGER, ESQ.
11          GARY C. FISCHOFF, ESQ.
12
13
14    WILLKIE FARR & GALLAGHER LLP
15         Attorneys for Freeman plaintiffs
16         and Ms. Wandrea ArShaye Moss
17         787 Seventh Avenue
18         New York, NY 10019
19
20    BY:   RACHEL C. STRICKLAND, ESQ.
21          ALISON R. AMBEAULT, ESQ.
22          JAMES BURBAGE, ESQ. (Via Zoom)
23          AARON E. NATHAN, ESQ. (Via Zoom)
24          MARINE LOISON, ESQ. (Via Zoom)
25
```

4

1

2    WILLKIE FARR & GALLAGHER LLP

3          Attorneys for Freeman plaintiffs

4          and Ms. Wandrea ArShaye Moss

5          1875 K Street, N.W.

6          Washington, D.C.

7

8    BY:   MAGGIE MACCURDY, ESQ. (Via Zoom)

9

10

11   CAIN & SKARNULIS PLLC

12         Attorneys for Eric Coomer

13         303 Colorado Street

14         Suite 2850

15         Austin, TX 78701

16

17   BY:   CHARLES J. CAIN, ESQ. (Via Zoom)

18         RYAN E. CHAPPLE, ESQ. (Via Zoom)

19         BRAD A. KLOEWER, ESQ. (Via Zoom)

20

21

22

23

24

25

5

1

2   AKIN GUMP STRAUSS HAUER & FELD LLP

3        Attorneys for Official Committee of Unsecured Creditors

4        2300 North Field Street

5        Suite 1800

6        Dallas, TX 75201

7

8   BY:   RACHEL BIBLO BLOCK, ESQ.

9        SAM BAHAM, ESQ.

10

11

12   AKIN GUMP STRAUSS HAUER & FELD LLP

13        Attorneys for Official Committee of Unsecured Creditors

14        One Bryant Park

15        New York, NY 10036

16

17   BY:   PHILIP DUBLIN, ESQ.

18        AMELIA DANOVITCH, ESQ.

19        ABID QURESHI, ESQ.

20        DAVID F. HILL, IV, ESQ.

21        SHANT K. EULMESSEKIAN, ESQ. (Via Zoom)

22

23

24

25

6

DAVIDOFF HUTCHER & CITRON LLP

      Attorneys for Davidoff Hutcher & Citron LLP

      605 Third Avenue

      New York, NY 10158

BY:  JAMES B. GLUCKSMAN, ESQ. (Via Zoom)

      ROBERT L. RATTET, ESQ. (Via Zoom)


BUCHALTER, A PROFESSIONAL CORPORATION

      Attorneys for US Dominion, Inc.

      1000 Wilshire Blvd.

      Suite 1500

      Los Angeles, CA 90017

BY:  JOEL G. SAMUELS, ESQ. (Via Zoom)

7

OFFICE OF THE NYS ATTORNEY GENERAL

     Attorneys for NYS Department of Taxation and Finance

     28 Liberty Street

     New York, NY 10005

BY:  LEO V. GAGION, ESQ. (Via Zoom)

     ENID NAGLER STUART, ESQ. (Via Zoom)

U.S. DEPARTMENT OF JUSTICE

     Attorneys for the Office of the U.S. Trustee

     One Bowling Green

     New York, NY 10004

BY:  ANDREA B. SCHWARTZ, ESQ. (Via Zoom)

     DANIEL RUDEWICZ, ESQ. (Via Zoom)

ALSO PRESENT:

     RUDOLPH W. GIULIANI, Debtor (Via Zoom)

     NOELLE DUNPHY (Via Zoom)

**RUDOLPH W. GIULIANI**

8

1                P R O C E E D I N G S

2       THE COURT:  We are here for an 11 o'clock hearing in the

3 Chapter 11 case of Rudolph W. Giuliani.

4         The case is being argued here in person.  It's good to

5 see all of you in person.  But there may be folks who are

6 following it on Zoom, which is perfectly fine, since we're

7 fully hybrid for anything that does not involve witnesses

8 taking the stand.

9         So we'll start this hearing, as we always do, by

10 getting appearances.  So let me start with debtor's counsel.

11         MR. BERGER:  Good morning, Your Honor.  Heath Berger,

12 Berger, Fischoff, Shumer, Wexler & Goodman.  And my partner,

13 Gary Fischoff, to my right.

14         THE COURT:  All right.  Good morning.

15         And on behalf of the official committee of unsecured

16 creditors?

17         MR. DUBLIN:  Good morning, Your Honor.  Phil Dublin,

18 Akin Gump Strauss Hauer & Feld.  And with me today are Rachel

19 Biblo Block, Abed Qureshi, and Amelia Danovitch.

20         THE COURT:  All right.  Good morning.

21         And on behalf of what we've been referring to as the

22 Freeman plaintiffs.

23         MS. STRICKLAND:  Good morning, Your Honor.  Rachel

24 Strickland, Willkie Farr & Gallagher.  I'm joined by James

25 Burbage and Aaron Nathan.

9

1          THE COURT:  All right.  Good morning.

2          And on behalf of the United States Trustee's office.

3          MS. SCHWARTZ:  Good morning, Your Honor.  Andrea

4    Schwartz for the United States Trustee, William Harrington.

5          THE COURT:  All right.  Good morning.

6          Any other appearances for folks who are in the

7    courtroom?

8          All right.  Seeing no one else, is there anybody who

9    needs to make an appearance who is remote?

10          MR. GLUCKSMAN:  Yes.  James Glucksman, Davidoff

11   Hutcher & Citron, for Davidoff Hutcher & Citron.

12          THE COURT:  All right.  Good morning.

13          Anyone else?

14          All right.  So let me just level set as to why we're

15   here.  A while back, there was a motion to appoint a Chapter 11

16   trustee in this case.

17          MR. GIULIANI:  Rudolph Giuliani.

18          THE COURT:  All right.  I believe I just heard

19   something from a source that's identified as Rudy's phone.  It

20   might be the debtor.

21          MR. GIULIANI:  Rudolph Giuliani.

22          THE COURT:  All right.  Good morning.  Good to have

23   you here.

24          MR. GIULIANI:  Good morning.

25          THE COURT:  Good morning.  And we had a hearing on

**RUDOLPH W. GIULIANI**

1    that motion to appoint a Chapter 11 trustee.  And after that

2    hearing -- I forget the exact number of days -- there was a

3    filing by the debtor that expressed a desire to convert the

4    case to Chapter 7.  That's at docket 277.  That was on July

5    1st.

6            And in light of that, I held a status conference, as I

7    tend to do in cases where I want to make sure we're proceeding

8    in an efficient way.  And with the help of counsel to sort of

9    sort it out, we decided that that application be treated as a

10   motion, and folks would file responses, and we'd tee it up for

11   a hearing, and that is today's hearing.  So that's what's on

12   for the Court.

13           And in response to that one-page application, I have

14   the objection of the official committee of unsecured creditors,

15   at docket 281, as well as the objection of Ruby Freeman and

16   Wandrea Moss to the application; that's at docket 282.  And so

17   I have taken a look at all of that.

18           And then just before coming out here today, I saw

19   another filing that hit the docket, at docket 285, which is a

20   notice of debtor's consent to dismissal and proposed form of

21   order.  I have reviewed it briefly, but I confess I haven't

22   studied it in any in-depth way.

23           So that's level setting where we are, and what's in

24   front of me, and what I'm aware of, at least.  I'm not aware of

25   any other filings since that one.  So until I received that

1  pleading, my way of proceeding was going to hear from the

2  debtor first, find out what the debtor's response was to the

3  various pleadings that have been filed in response to the

4  application, and then hear from any other party after that.

5        This seems to change the calculus a little bit,

6  because it might affect what the committee and the Freeman

7  plaintiffs, what their views are and where they think we are.

8        So I don't know if the parties have gotten a chance to

9  chat and have a proposed order of proceeding today.  Again,

10  it's the debtor's motion, but it seems to have -- it has

11  changed.  It keeps changing.  So I welcome suggestions from the

12  floor.  I don't have a monopoly on wisdom.

13        So Ms. Strickland?

14        MS. STRICKLAND:  Thank you, Your Honor.  For the

15  record, Rachel Strickland, Willkie Farr & Gallagher.

16        We have had an opportunity to speak.  I believe the

17  proposal is that the debtors go first, followed by the Freeman

18  plaintiffs, and then the committee.

19        THE COURT:  All right.  That's fine.

20        MS. STRICKLAND:  And the U.S. Trustee.

21        THE COURT:  All right.

22        MR. DUBLIN:  Your Honor.  Phil Dublin for the

23  committee.

24        The only thing I don't know is what the U.S. Trustee's

25  position is, because they didn't file any papers.  And when I

**RUDOLPH W. GIULIANI**

12

1   requested their position before the hearing, I was told I would

2   find out during the hearing.  Not very constructive, but we are

3   where we are.  But that may impact the order of operations.

4        So if the U.S. Trustee is supporting dismissal or

5   conversion, as opposed to the appointment of a Chapter 11

6   trustee, where the committee is, then we believe the U.S.

7   Trustee should go before I go, so that I can address all of

8   those positions at the same time.

9        THE COURT:  All right.  That sounds sensible.  And

10  order of operations is actually one of the things I have on my

11  notes here, in terms of all the things that are out there.

12  It's a big question and, sort of, an appropriate framing.  So

13  with that, we'll proceed, and let me hear from debtor's counsel

14  first.

15       And consistent with our prior conversations and

16  hearings, feel free to speak from the podium, from the table,

17  just as long as everyone can hear you in the courtroom and on

18  Zoom.  And again, these microphones that are -- the square ones

19  are the ones that broadcast to Zoom.  But I don't think we've

20  ever had any issues with those.

21       So Counsel, proceed.

22       MR. FISCHOFF:  Good morning, Your Honor.  Gary

23  Fischoff for the debtor.

24       So.  We're faced with three options today, conversion

25  to a Chapter 7, which initiated this whole proceeding when the

13

1   debtor opted to file a notice to convert to Chapter 7.  There's

2   the committee's motion to appoint a Chapter 11 operating

3   trustee.  And then finally, as a result of discussions that

4   were spurred by the filing by the Freeman plaintiffs, at 4

5   o'clock on Monday, where they had requested dismissal, we

6   engaged in discussions with the Freeman plaintiff's counsel and

7   concluded that we would be in favor of a dismissal of the case

8   or, in the alternative, to a conversion to Chapter 7.

9           So in connection with dismissal, we think that would

10  not prejudice the creditors, and we believe it's in the best

11  interest of the debtors.  When considering the factors for

12  conversion or dismissal, I think the fact is, as outlined in

13  detail in the Freeman plaintiff's papers, beginning at page 9,

14  indicate that all the factors really lean in favor of dismissal

15  as opposed to conversion.

16          But I'd like to also, at the same time, address the

17  potential conversion, which would then become a liquidation of

18  the debtor's assets.  Now, a Chapter 7 --

19          THE COURT:  Well, let me back up for a second and make

20  sure I understand your, sort of, basic level position.  So the

21  pleading that was filed says it's a consent to dismissal.  So

22  what I understand that means is that -- or am I understanding

23  this correctly -- that I can read your motion then as -- in

24  connection with this paper, your application to be we're

25  willing to do either of those two options, and that you are

**RUDOLPH W. GIULIANI**

14

1  still opposed to the appointment of a Chapter 11 trustee, but

2  you're not opposed to dismissal on the terms set forth in that

3  attached order?

4          MR. FISCHOFF:  Yes, Judge.  And that attached order

5  agrees to a twelve-month bar from the date of dismissal by any

6  filing, any voluntary filing by the debtor in the next twelve

7  months.  I mean, the debtor's intention is -- and really has

8  always been -- to get an appellate determination on that

9  Freeman judgment.  That has not been happening here in the

10 bankruptcy for various reasons.  And we have a large record of

11 what's previous to today, so I don't need to belabor it.

12         So we believe that the debtor's best chance of getting

13 an appellate determination would be a dismissal.  The creditors

14 are not really prejudiced because there's only -- there's

15 really three types of creditors.  There's the Freeman

16 creditors, which actually have a judgment.  There are some

17 general unsecured creditors, some credit cards.  There is a

18 lawsuit by the Davidoff firm for unpaid legal fees.

19         And then there's the third category, where there are

20 people who have filed lawsuits, or asserted claims against the

21 debtor for various behavior, but none of those have been

22 liquidated or turned into judgment.  And those creditors, if

23 the case is dismissed, are free to pursue their state law

24 remedies as are the Freeman plaintiffs.

25         THE COURT:  Let me back up for one second --

 1              MR. FISCHOFF:  Sure.

 2              THE COURT:  -- just to make sure I'm framing the legal

 3    issue correctly in terms of how you see it and how I see it.

 4    So I assume then, where the conversation is, in choosing among

 5    these options, that I need to choose among these options in

 6    terms of the best interests of creditors and the estate,

 7    consistent with Section 1112(b).

 8              MR. FISCHOFF:  Correct.

 9              THE COURT:  Is that correct?  Do you agree?

10              MR. FISCHOFF:  Yes.

11              THE COURT:  It's a proper framing of the issue.  All

12    right.  All right.  Continue, please.

13              MR. FISCHOFF:  And what I was discussing is how it's

14    in the best interest of creditors, because each creditor, their

15    own class, has their state law remedies which they can

16    exercise.  There have been, so far, no allegations that the

17    debtor has made any pre-petition transfers that would be

18    subject to avoidance in a bankruptcy and not in state court.

19              And when you go through all of the factors, as I said,

20    which were listed in their papers, I think it weighs in favor

21    of dismissal.  There's no loss of rights.  All the parties are

22    returned to their positions that they were in prior to the

23    filing of the petition, albeit six months down the road.

24              THE COURT:  And you're referring to the discussion in

25    the Freeman plaintiff's pleadings starting, I guess, on page 8,

 1  paragraph 17.

 2          MR. FISCHOFF:  Yeah.

 3          THE COURT:  I think it is paragraph 17.  It's the

 4  identification of various factors and then their analysis of

 5  those factors.

 6          MR. FISCHOFF:  Right, which starts on page 9 and goes

 7  to page 11.  And I can go through each factor if the Court

 8  likes.  But it does have it; it is filed.

 9          And I think that the debtor's purposes of this case

10  have run its course.  So that's why the debtor is in favor of

11  dismissal.  And again, I think it's in the debtor's best

12  interest.  I think there's no harm to the creditors.  It's in

13  their best interest.

14          Because if the case were converted to a Chapter 7,

15  which is the other option the debtor would select, versus the

16  third option of a Chapter 11 trustee, the administrative

17  expenses of a Chapter 7 trustee and the Chapter 7

18  professionals -- and it could even be that the proposed Chapter

19  7 trustee might even select to form a creditors' committee

20  counsel as his counsel to pick up where they left off.

21          The point is, though, the administrative expenses are

22  going to consume, if not 100 percent, a substantial portion of

23  the assets.  We know what the assets consist of.  There's the

24  nonexempt assets that don't count, his Social Security and his

25  IRA.  And then he has two pieces of real estate and some

**RUDOLPH W. GIULIANI**

17

1    jewelry, perhaps.

2           And that doesn't change in whatever form of

3    administration, whether it's dismissed, it's available to

4    creditors under their state court rights.  If it's a Chapter 7

5    trustee, a Chapter 7 trustee could liquidate it, or a Chapter

6    11 operating trustee could liquidate it.

7           Of course, a Chapter 11 operating trustee, there is no

8    business to operate, because the only income is generated from

9    personal services income by an eighty-year-old disbarred

10   attorney, who may choose not to continue working for the

11   benefit of a Chapter 11 trustee.  I don't know for sure.  So

12   there's really nothing to operate in a Chapter 11.  So a

13   Chapter 11 trustee would really just be a liquidating trustee,

14   which can best be done by a Chapter 7 trustee, without the

15   added administration of a so-called operating trustee.

16          On the other hand, a dismissal will allow those assets

17   to be available to all the creditors in their state court

18   rights.  And --

19          THE COURT:  So I think I understand your view about

20   dismissal versus Chapter 7.  I think, on this side of the room,

21   there's really no stomach for the idea of a Chapter 7 trustee.

22   So I think that the options from the other parties who have

23   been actively involved is dismissal or a Chapter 11 trustee.

24   And maybe you have the same kind of remarks in connection with

25   that.  But what's your view about that in assessing what's in

1   the best interest of creditors and the estate?

2          MR. FISCHOFF:  Okay.  I'm sorry I got interrupted.

3          THE COURT:  That's fine.  My --

4          MR. FISCHOFF:  I didn't hear the beginning of the

5   Court's --

6          THE COURT:  No.  Yeah.  My question is, what's your

7   take on what's in the best interest of creditors and the estate

8   when comparing the option of dismissal versus a Chapter 11

9   trustee?

10         MR. FISCHOFF:  Okay.  So I believe the dismissal would

11  still be in the best interest of the creditors and the estate,

12  because it still leaves available assets for those creditors to

13  pursue in state court.  In an operating trustee situation --

14  again, I'm not sure what business he'll be operating, but

15  liquidating the available assets, I believe, will consume a

16  substantial portion of those assets available with

17  administrative expenses, if not all of it.

18         We know the assets consist of two apartments.  Perhaps

19  one is worth three or four million.  Perhaps the other one's

20  worth, I don't know, four or five million.  It is listed for

21  5.7 million, I believe.  I know there's been limited interest,

22  but there has been some interest in that property being

23  marketed by the broker.

24         But all in all, if the two apartments and the jewelry

25  are liquidated and it yields -- and I'm just kind of picking a

19

1   number -- eight million dollars, it's easy for that to be

2   consumed by professional fees prior to it reaching any

3   creditors.  So I don't think that's in the benefit of creditors

4   to have the assets go to pay professional fees.

5           At least in a dismissal, there is the best interest of

6   creditors because they have their state court remedies.  Some

7   creditors may be a little further along in that process than

8   others, but at least the administrative fees are not going to

9   take a leg up on everyone else and consume all of the assets.

10  So there's a greater likelihood that creditors will recover

11  something outside of bankruptcy than within the bankruptcy.

12          THE COURT:  All right.  Thank you very much.  Anything

13  else, Counsel?

14          MR. FISCHOFF:  No, but I just wanted to point out the

15  notice of the alternative relief requested today in that

16  proposed order was a result of lengthy discussions with the

17  Freeman plaintiffs, since yesterday, through right up until

18  9:30 this morning when we filed that document.  So the

19  dismissal idea was suggested by them, and the debtor seized

20  upon it.  And we believe we have their full support on that.

21          THE COURT:  All right.  I think, at this point, it

22  probably makes sense to hear from the United States Trustee's

23  office for any views.  I don't have any papers from them, but I

24  know they have been participating in the case and have views.

25          UNIDENTIFIED SPEAKER:  You need to --

1              MS. SCHWARTZ:  Do I touch the square?

2              UNIDENTIFIED SPEAKER:  Here.

3              MS. SCHWARTZ:  Oh, okay.  This is new to me, Judge.

4              THE COURT:  I don't know that you need to bring it,

5    but it can't hurt.

6              MS. SCHWARTZ:  All right.

7              THE COURT:  I understand that it's sort of wired for

8    sound, and I've just asked people who are on Zoom that, to the

9    extent they have any issues being heard, that they signal to

10   us.  And so I think we've managed to do that.  But apparently

11   the court is long enough so you're all set either way.

12             MS. SCHWARTZ:  Thank you, Your Honor.  Andrea

13   Schwartz, for the United States Trustee, William Harrington.

14             Judge, the position of the United States trustee has

15   not really changed since we were last here before the Court.

16   It's clear that there can be no question that cause exists to

17   remove this debtor, Mr. Giuliani, from possession of his

18   assets.

19             The only question, really, for today, is what is in

20   the best interest of creditors?  And given the fact that the

21   creditors in this case have been fully engaged and very well

22   represented, we believe that we'll leave it to the creditors to

23   argue to the Court as to what's in their best interests.

24             With respect to the proposal that happened today, we,

25   like Your Honor, were not involved in any discussions.  We

1   didn't know anything about it until 10:30 this morning.  So if

2   the Court were to rule for a dismissal, we'd like the

3   opportunity to review the proposed order and comment on it.

4   That's our position, Your Honor.

5        THE COURT:  Thank you very much.  All right.  The only

6   thing I will say, and I think it was already said, is the first

7   question I had when I was looking at the order was whether

8   there was a filing bar, and there is, in proposed paragraph 2,

9   in the period of one year.  So just in case the U.S. Trustee's

10  office didn't get a chance to catch that.

11       So I think at this point, let me hear from the Freeman

12  plaintiffs.

13       MS. STRICKLAND:  Thank you, Your Honor.  For the

14  record, Rachel Strickland, Willkie Farr & Gallagher, on behalf

15  of the Freeman plaintiffs.

16       As Your Honor knows well, at our very first hearing,

17  January 19th, debtor's counsel told the Court that Mr. Giuliani

18  filed this case because of Ruby Freeman and Shaye Moss.  Before

19  Giuliani could even say hello, he was asking for stay relief to

20  challenge the Freeman judgment.  When he didn't get what he was

21  wanting on the first go around, he took a second bite of the

22  apple and then a third.

23       And on that same January 19th hearing, I predicted for

24  Your Honor that, if he was not able to unilaterally move on a

25  one-sided fashion to appeal, while everybody else was stayed,

1    he would move to dismiss the case.  And today that came true.

2         So they have this laser-like focus on us.  And I would

3    submit, as a result of that, we are the parties-in-interest

4    that are most impacted by today's decision.  We have been in

5    bankruptcy for well over six months and so far have been very,

6    very patient.  No orders have been requested on a nonconsensual

7    basis.

8         Today is going to be a tough one, but we're asking

9    Your Honor, even though it is contested, to decide it, and if

10   you are able, to decide it today.  The beginning, middle and

11   end of this case have been about my clients and their judgment.

12   The filing was a bad-faith litigation tactic.  Mr. Giuliani

13   hasn't even pretended to comply with the duties and

14   responsibilities as a debtor-in-possession.  He regards this

15   Court as a pause button on his woes while he continues to live

16   his life unbothered by creditors.  The case should be

17   dismissed.

18        The bankruptcy case was undoubtedly filed to thwart my

19   clients, but I don't want to minimize the importance of other

20   creditors getting justice.  I would submit that this isn't the

21   right place for that to happen either.

22        Mr. Fischoff just said into the microphone that, if a

23   trustee were appointed, all of a sudden his client reverts back

24   to the eighty-year-old man who can't work, and he doesn't see

25   any scenario where Mr. Giuliani would be working for the

1   benefit of a trustee.

2          Well, when Mr. Giuliani is working for himself, and

3   were he not under the protection of bankruptcy with someone

4   else in control of his finances, I suspect he'll be hustling

5   for Rudy Coffee, and the podcasts, and all of the rest of his

6   moneymaking endeavors, just like he has, since pre-petition and

7   throughout these cases, albeit funneling all of the dollars

8   into LLCs that he submits are outside of the reach of this

9   estate.  That is one reason this shouldn't be here.

10         Trustees are not superhuman.  With a noncompliant

11  debtor like this one, these cases are going to turn into a

12  garage sale where two apartments are sold.  We all know that

13  the candor and cooperation of Mr. Giuliani will not improve,

14  and Your Honor will be left to police yet another party's

15  justifiable outrage at his flouting of the rules.  He doesn't

16  get any creditor the guilty verdicts they want or the

17  compensation they deserve.

18         This Court has seen many a complex case with difficult

19  claims, but I would submit that the claims against Mr. Giuliani

20  do not belong here.  The contingent unliquidated claims against

21  Mr. Giuliani are for hostile work environment, sexual

22  harassment, false arrest, civil rights conspiracy, and more.

23  The pleadings literally cite his Viagra usage.  This is not

24  what Your Honor wants here.

25         The complaint of Noelle Dunphy is explicit and painful

24

1   to read.  These are not claims the bankruptcy court is well

2   equipped to litigate, nor are they the types of claims that

3   should receive three cents from a trustee, who has both hands

4   tied behind his or her back, while the debtor ignores document

5   requests.

6          It is in the interest of creditors, who are the

7   victims of this man, to have their claims heard in the forums

8   of their choosing, which are better positioned than the

9   bankruptcy court to hear and decide these claims.  If the

10  opposite occurs and we stay in Chapter 11, the costs of this

11  process will just continue to pile up, to the extent there is

12  any distributable value.

13         In light of the administrative expenses, including the

14  administrative expense claims of my clients, and the priority

15  claims, all unsecured creditors will be frustrated, and

16  unsecured creditors will likely get nothing.  That is a win for

17  one man, and he doesn't deserve to be handed that win.  If the

18  case is dismissed, creditors will be able to hold America's

19  mayor accountable for the harms he has caused.

20         As you heard from debtor's counsel, once Mr. Giuliani

21  understood he wasn't going to be allowed to party, on page 6,

22  while we wait, he agreed to dismiss.  It's true that dismissal

23  is not the committee's preferred path forward.  However, I

24  would note that their objection to the conversion motion

25  acknowledges that grounds exist here to dismiss the bankruptcy

1   case.

2          So while the three main parties are not unanimous as

3   to the agreed path forward, at a high level, there is

4   recognition among the parties that dismissal is at least

5   justified under these circumstances.

6          Of course, Your Honor will need to determine what path

7   forward this case will take.  So I want to focus you on the

8   questions that will help narrow your choices.  So even though

9   Mr. Giuliani's counsel is no longer arguing that conversion is

10  a matter of unqualified right, it's important to go back to the

11  Supreme Court case, Marrama, that we cited for the proposition

12  that 1112(a) does not give him an unqualified conversion right.

13         And the reason for that is because, what the Supreme

14  Court held in that case, is that a debtor was not able to

15  convert to any other chapter because they were not an eligible

16  debtor under that chapter, looking at the text of 706(d).  And

17  because of the bad faith of that debtor, in that case, they

18  said he wasn't entitled, it may not be converted.

19         Well, 706(d) is mirrored verbatim in 1112(f).  So I

20  would submit that option three, the Chapter 7 conversion, isn't

21  even an option available to this debtor.  As all have

22  effectively stipulated to the bad faith of this debtor, and

23  Your Honor himself has observed it, under the Supreme Court

24  ruling, he is not eligible for conversion to Chapter 7 as a

25  bad-faith debtor.  If he couldn't file it that way, he can't

**RUDOLPH W. GIULIANI**

26

1   get it.  So I would say that option is off the table and we're

2   down to two.

3         But even if the Supreme Court had not spoken on that

4   issue, 1112(b)(1) provides, on the request of a party-in-

5   interest, after notice and hearing, you can only do it if it's

6   in the best interests of creditors and the estate.  Mr.

7   Giuliani is a party-in-interest.  Under the Code, it was

8   required to be noticed under 2002.  We're doing that here

9   today.

10        So now we get to what's best.  It is in Chapter 7.

11  That doesn't help anyone.  And we would submit, under 1112(f),

12  he's not entitled to that relief.  So he clearly favors

13  dismissing the case as do we.

14        We think converting the case would be terrible as a

15  result for creditors.  It would reward Mr. Giuliani's bad-faith

16  approach to the case and would be a result contrary to what the

17  law requires.

18        We've gone through all of the various factors in our

19  objection, and the Court can consider whether or not dismissal

20  or conversion makes sense.  They include whether the debtor's

21  conduct suggests that the filing was made in bad faith, whether

22  creditors will lose important rights as a result of the

23  dismissal -- I submit they would gain them, not lose them --

24  and whether one path maximizes the value of the estate.  I

25  submit that dismissal does, because we all suspect what

```
 1   debtor's counsel suggested this morning, which is that, if a

 2   trustee is appointed, Mr. Giuliani is going to sit on his duff.

 3   Whether the remaining issues are better resolved outside the

 4   bankruptcy; when Your Honor considers the nature of the other

 5   claims, it is a clear and easy conclusion that those belong

 6   somewhere else.  And whether the creditors need the protections

 7   of the trustee.

 8        I would submit that, unless you have a trustee

 9   different from any we've seen before, the powers of the trustee

10   are not going to be enough.  And what will end up at the end of

11   that road is that, due to a failure to comply with the trustee

12   and a lack of candor, instead, parties-in-interest would be

13   coming to you under Title 18 of the bankruptcy crimes.  And

14   when we do that, it won't be for fines, because Mr. Giuliani

15   doesn't care about claims; it will be for prison.  These

16   factors are all set forth in Hampton Hotel Investors, L.P., 270

17   B.R. 346.

18        While we don't believe this is the right place to take

19   him to task, without a committee, all you're doing is giving

20   Mr. Giuliani a hall pass from the ongoing investigation

21   performed by highly-competent professionals.

22        UNIDENTIFIED SPEAKER:  Would you get them on the phone

23   and tell them --

24        THE COURT:  All right.  Somebody's got a live

25   microphone, and that's not a good situation.  So --
```

1          UNIDENTIFIED SPEAKER:  We're working on it.  Yeah.

2          THE COURT:  All right.  Continue, please.

3          MS. STRICKLAND:  Thank you, Your Honor.  Without a

4   committee, all you're doing is giving Mr. Giuliani a hall pass

5   from the ongoing investigation performed by highly-competent

6   professionals at Akin Gump and GDR, and near-term sanctions.

7   What would otherwise be a forensic exercise into his LLCs and

8   income streams will become two quickie real estate sales, with

9   an extra commission layered in.

10          Once the apartments are sold, which undoubtedly will

11   happen in short order, no one will be paid.  We will all be

12   stayed, while the trustee and this Court wades through the

13   morass of sexual assault and other allegations, while Mr.

14   Giuliani continues to play golf and games with nondebtor LLCs

15   and refusals to cooperate.

16          And when that happens, I predict Your Honor will

17   swiftly be in Title 18, ruling that he knowingly and

18   fraudulently concealed things from a trustee.  Again, then

19   we'll be in bankruptcy crimes territory.  So unless, Your Honor

20   wants to entertain putting America's mayor in prison under

21   152(d), I suggest you throw the case out.

22          Your Honor, I can address the backup plan, or I can

23   sit and have --

24          MR. GIULIANI:  We --

25          MS. STRICKLAND:  -- Mr. Dublin --

**RUDOLPH W. GIULIANI**

29

1        THE COURT:  All right.  We keep having that same cell

2    phone pop up.  Let me ask in court if we can make sure to have

3    that muted, please.

4        MR. GIULIANI:  Your Honor, this is the Rudolph

5    Giuliani.

6        THE COURT:  All right.  Well, sir, I have an order of

7    presentation.  And so --

8        MR. GIULIANI:  Well, that's --

9        THE COURT:  -- what I would encourage you --

10        MR. GIULIANI:  It's entirely defamatory --

11        THE COURT:  What I would encourage you --

12        MR. GIULIANI:  It's entirely defamatory, Your Honor.

13        THE COURT:  All right.  So I'm going to ask you to

14    listen to me.  And if you don't, I'm going to have to cut you

15    off.  So you have counsel here.  Counsel's made a presentation.

16    If at some point you would like a break to confer with them,

17    and for them to make any other comments, or you to figure

18    out --

19        MR. GIULIANI:  I would, Your Honor.

20        THE COURT:  All right.

21        MR. GIULIANI:  I would like a break.

22        THE COURT:  But now is not the time for that because

23    another party is in the middle of their presentation.  I'm

24    going to let their presentation reach its conclusion.  Then I'm

25    going to hear from the committee, and then I'm going to --

1          MR. GIULIANI:  Including all of the defamatory

2   remarks?  Unnecessary --

3          THE COURT:  All right.  Sir, everybody gets a chance

4   to be heard.  But what you can't do is interrupt somebody else

5   while they're being heard.  So I really do not want to be

6   forced to have to cut your line off, but I'm telling you how

7   it's going to be in terms of an order of presentation.  And

8   again, I'm happy to take a break so you can confer with

9   counsel.  So I'm going to ask Ms. Strickland to continue.

10          Ms. Strickland.

11          MS. STRICKLAND:  Thank you, Your Honor.  The position

12   of the Freeman plaintiffs is that dismissal is far and away the

13   best option, and not just for the Freeman plaintiffs, but for

14   all creditors, because in any proceeding before Your Honor,

15   it's going to be extremely time-consuming, everyone's claims

16   are going to be stayed, and the Freeman plaintiffs have

17   material administrative claims that come first.  They happen to

18   be temporally outside of court, as the debtor's recognize the

19   only ones with a judgment at this point.  That is what it is.

20          But waiting, and going through, whether it be a

21   lengthy Chapter 7 or Chapter 11 process, we'll have

22   administrative fees, an uncooperative debtor, who may very well

23   choose not to work and sit around, like the eighty-year-old

24   that his counsel suggests that he is, unable to work and

25   contribute financially.  And at that point, the only parties

1   that will be getting paid are professionals and U.S. Trustee

2   fees, and claims will not be liquidated, and they won't be

3   liquidated in the right place.

4          So while I represent the Freeman plaintiffs, I think

5   it's safe to say it's in the best interests of all.  And far

6   and away, our second choice, albeit a distant one, would be a

7   Chapter 11 trustee to allow the investigation to continue by

8   competent professionals.  Thank you, Your Honor.

9          THE COURT:  All right.  Thank you very much.

10         So at this point, I'm going to hear from the official

11  committee of unsecured creditors.

12         MR. DUBLIN:  Good morning, Your Honor.  Again, for the

13  record, Phil Dublin, of Akin Gump Strauss Hauer & Feld, on

14  behalf of the committee.  We do represent all of the unsecured

15  creditors and not any individual unsecured creditor.

16         Your Honor, we're finally at a hearing where we are

17  all in agreement that something important is going to happen

18  today.  We are either going to have a Chapter 11 trustee, which

19  is what the committee seeks, we'll have conversion, though the

20  potential to have conversion, though, it seems that most

21  parties have moved away from that.  Or we will have dismissal,

22  which now we understand the debtor joins the Freeman plaintiffs

23  in.

24         Weighing these three options, we think it is clear,

25  without a doubt, that the appointment of a Chapter 11 trustee

1    is the most equitable outcome, and it is in the best interest

2    of creditors as a whole.  And that is as contemplated by

3    1112(b)(1) of the Bankruptcy Code, for Your Honor to make the

4    ultimate determination whether cause exists for conversion,

5    dismissal, or such appointment.

6              As Your Honor knows, we spent a lot of time papering

7    and arguing with respect to the appointment of a Chapter 11

8    trustee, starting with the motion that we filed on May 28th at

9    docket 233, our reply to the debtor's objection to the trustee

10   motion at docket 256, and the hearing held before Your Honor on

11   June 17th, at which time you took the matter under advisement.

12             Since June 17th, nothing has happened in this case to

13   take away from the fact that a Chapter 11 trustee is warranted

14   and in the best interest of creditors and the estate.  We have

15   supplemented additional facts supporting the appointment of a

16   Chapter 11 trustee in our objection to the debtor's conversion

17   application at docket 281, which we filed on July 8th.  And we

18   included with our objection a revised form of order for the

19   appointment of a Chapter 11 trustee, taking into account

20   comments from the Court at the hearing on the 17th of June.

21             We believe that debtor's latest tactic, seeking

22   conversion of the case, and now, as we've heard this morning,

23   stipulating to dismissal, is more of the same that we have seen

24   from Mr. Giuliani since the beginning of this case.

25             THE COURT:  Well, I certainly understand that response

1  to the request to convert to Chapter 7.  And the creditors are

2  unanimous in their -- at least every creditor I've heard from

3  is unanimous in their view that they don't think that's in

4  their best interest.

5        The question, in my mind, is between dismissal and

6  appointment of a Chapter 11 trustee.  And the point has been

7  made that, given the problems in this case that have been cited

8  for appointment of a Chapter 11 trustee, they have to do with

9  financial transparency that is crucial to an effective case.

10  And my concern is -- or the concern that I've heard, that I

11  think is a fair point -- is that that's not going to magically

12  change if you continue the case in an 11 with a trustee.

13        The committee has been diligent in its duties, and

14  pursuing various information and rights, as the Freeman

15  plaintiffs.  But nonetheless, we are where we are at this

16  point.  So what I'm hearing from the Freeman plaintiffs is that

17  they have no reason to believe that that's going to change, and

18  that the costs of administration, which always can be

19  significant in any event, will no doubt be high by virtue of

20  that, and that you might not have much success, frankly.

21  That's what I'm hearing.  So what's your response to that

22  concern?

23        MR. DUBLIN:  So first off, on the cost, Your Honor

24  notwithstanding the activity that has happened in this case

25  thus far, the administrative expenses have been relatively

1    minimal.  Two primary reasons for that.

2          One, debtor's counsel is being compensated out of the

3    fund or multiple funds that are outside the estate.

4          Two, Aiken is doing this case pro bono.  We will

5    continue to do this case pro bono and advocate for the

6    interests of unsecured creditors and to maximize unsecured

7    creditor recoveries.

8          If there is a Chapter 11 trustee appointed, we believe

9    that that trustee would be able to efficiently take control of

10   the debtor's assets, the two apartments, the other nonexempt

11   assets that were in the schedules.

12         THE COURT:  I understand that for the apartments.  I

13   don't think the apartments are the concern.  I think it's

14   everything other than the apartments, right?  So it's the

15   question about Mr. Giuliani's work situation, which continues

16   to evolve and is often revealed in real time at a court

17   hearing.

18         And I'm trying to assess how that pattern, which has

19   existed since the beginning of the case, would change with the

20   appointment of a Chapter 11 trustee.  I don't really have any

21   reason to believe it would.

22         MR. DUBLIN:  It may or may not change, Your Honor.

23   The Chapter 11 trustee would take ownership interest control

24   over those LLCs.  It would take management control over those

25   LLCs.

1          THE COURT:  Well, but if those LLCs made widgets, it

2    would be a different situation.  But they don't.  They are

3    companies that are integrally associated with the debtor as a

4    person.  And so the point has been made about personal

5    services, that that's the business.  And what does that do to

6    the calculus here for purposes of thinking about an operating

7    11?  That's certainly an uncomfortable situation for parties

8    and the Court to be in.

9          MR. DUBLIN:  Right.  Well, it's not uncommon, Your

10   Honor, for a Chapter 11 case to be filed as a liquidating 11,

11   where a debtor-in-possession's objective is to maximize the

12   value of his assets or the company's assets.

13          With respect to this situation, even if Mr. Giuliani

14   said, I'm eighty years old, I'm retiring, I'm not going to do

15   this anymore, we still have all of the assets that we currently

16   know exist, which includes the apartments and the other

17   nonexempt assets.  We have investigations that should have been

18   moving forward, but Mr. Giuliani and his wholly-owned companies

19   refused to comply with this Court's 2004 order, where we

20   believe there will be investigations that can bring additional

21   value, including, among other things, potentially, millions of

22   dollars from Trump or from RNC, based on statements that Mr.

23   Giuliani made at the 341 meeting.

24          THE COURT:  But there, again, I think you get back to

25   the concern that Ms. Strickland raised, that those

36

1    investigations will go as smoothly and as quickly, that will be

2    a reflection of the amount of cooperation you get.  And so

3    that's the concern that's been raised, that that is likely not

4    going to be handled in a way that would be efficient or happen

5    in a timely way.  And that's the concern, when you weigh the

6    automatic stay, that exists for the debtor as against those

7    that creditors will end up having to wait an extensive amount

8    of time for a process that it's not clear how successful it's

9    going to be.

10           MR. DUBLIN:  Well, I don't think creditors will have

11   to wait nearly as long as the debtor or Ms. Strickland have

12   averred today.  Upon the appointment of a Chapter 11 trustee,

13   exclusivity is terminated.

14           The creditors' committee, I believe, would be prepared

15   to move forward rather quickly with a liquidating Chapter 11

16   plan, in coordination with the Chapter 11 trustee, to provide

17   for the monetization of the assets, appointment of a

18   liquidating trustee to investigate those potential causes of

19   action -- which there are plenty of times where a trust will

20   stay open for years on end in investigations in pursuit of

21   assets and situations where there are fraud and the like, which

22   again, our firm, if selected as counsel to a liquidating trust,

23   would be prepared to do on the same terms we're doing now.

24           And if it takes time to bring justice and try to

25   correct the wrongs that have happened by Mr. Giuliani against,

1  not just the Freeman plaintiffs, but all of the other dozens of

2  people that have filed claims in this case, those people are

3  entitled to get what they can from this estate.

4        If we were to pursue the path that the Freeman

5  plaintiffs would want, that Mr. Giuliani wants with respect to

6  dismissal, we end up with a race to the courthouse.  And while

7  we have nothing but respect and sympathy for Ms. Freeman and

8  Ms. Moss, and the ordeal that they have experienced, they are,

9  by far, a significant creditor here, but they are not the only

10  one.  If we were to dismiss the case --

11        THE COURT:  Well, I understand that, but at the same

12  time, I don't have any -- so we've had the Chapter 11 trustee

13  motion, and we've had this motion teed up.  And one of the

14  reasons for a status conference is to ring the bell in the town

15  square to let people know what we're going to have a

16  conversation about.  And we've done that.

17        And I'm not hearing from any creditor that -- and

18  again, I understand that the request for dismissal came about

19  this morning.  But people, sort of, are aware of the different

20  options in bankruptcy.  And so I'm a little concerned that

21  we're dealing with more theoretical concerns than actual

22  concerns.

23        And again, folks can chime in, and I understand the

24  committee is supposed to do that, and I don't begrudge the

25  committee.  But there are lots of folks who have various rights

1    in various stages, and certainly have claims that, to the

2    extent they involve jury trial rights, wouldn't be here in any

3    event.  And so I guess this is a long-handed way of saying that

4    there are significant hurdles to the administration of a case,

5    even with a Chapter 11 trustee, that I'm concerned about.

6            MR. DUBLIN:  I've been doing this for a long time,

7    Your Honor, representing dozens of committees over my career.

8    I would say, in the substantial majority of them, the only

9    creditor constituency that a court hears from, whether it's a

10   ten-million-dollar case, a hundred-million-dollar case, or a

11   twenty-billion-dollar case, is the creditors' committee.  The

12   creditors' committee has the job --

13           THE COURT:  Well, I confess I've had a different

14   experience.  I've heard from lots of creditors.

15           MR. DUBLIN:  I'm not saying --

16           THE COURT:  Again, I don't begrudge --

17           MR. DUBLIN:  But --

18           THE COURT:  I don't begrudge the committee.  That's

19   your job, and you're doing your job, and you've been very

20   diligent in the case.  I get it.

21           My point is more to the challenges of administration

22   than anything else.  And again, if those claims are, as I

23   understand them, where a lot of them have jury trial rights

24   that can't be addressed here, or will have to wait as they are

25   addressed elsewhere and then come back here, the idea of

1   wrapping things up promptly doesn't seem to be a realistic

2   expectation.

3          MR. DUBLIN:  I think, Your Honor, that with the

4   appointment of a trustee, and with the termination of

5   exclusivity, with the creditors' committee's active

6   involvement, we'd be able to reach settlements with quite a

7   number, if not all, of the types of creditors that we're

8   talking about, in order to save money, save expense, save

9   aggravation, save having to relive experiences that were very

10  uncomfortable for the people that have brought these claims,

11  and that the committee, together with the trustee, would be

12  prepared to evaluate the veracity of the claims that have been

13  asserted and resolve those very quickly, which, of course, can

14  be done under a Chapter 11 plan.

15         So I think that the creditors, as a whole, outside of

16  one significant group of creditors and the Freeman plaintiffs,

17  that already have a judgment, should be given that opportunity

18  to see if they can share in the value that exists here, which

19  may not be significant, but would be something, because absent

20  that, then we are going to have a situation where the debtor,

21  after dismissal, would not be able to bond his appeal.  That

22  action will go forward without bonding.  The Freeman plaintiffs

23  will be able to perfect their judgment, attach, foreclose, and

24  they will be the only ones that get a recovery.

25         Whereas, if the case remains in Chapter 11, with the

1  oversight of Your Honor, the trustee, and the committee, we can

2  do everything we possibly can to assure that there's an

3  equitable distribution of that value to the people that have

4  been aggrieved by this debtor, whether a credit card company,

5  or whether an individual like Ms. Dunphy, who has suffered,

6  pursuant to her complaint, significant physical and emotional

7  distress at the hands of the debtor.

8          THE COURT:  All right.

9          MR. DUBLIN:  Your Honor, I don't think I -- I mean, I

10 can, but I don't think I need to go through all of the grounds

11 for cause, as set forth in our trustee motion, as set forth in

12 our reply.

13         THE COURT:  Well, I think we've spent time on that at

14 the hearing on June 17th on those issues.  And I did ask the

15 debtor's counsel, in terms of framing the issues, if we're

16 really in 1112(b), in terms of thinking about the statute that

17 directs us how to think about it.  And that is talking about

18 granting relief where you have cause.  So I think we'd say that

19 ship has sailed, but I think we sort of all know where we are

20 on that front.

21         MR. DUBLIN:  Thank you, Your Honor.  Your Honor, we've

22 highlighted in our objection to the conversion motion -- I

23 probably don't need to repeat it again here -- but the May

24 operating report provides further support for a trustee.  It

25 actually shows that there may be additional assets available to

1    satisfy creditor claims.

2         We have potentially a new IRA that has popped up.  Mr.

3    Giuliani actually appears to have received some compensation

4    from the LLCs, though understanding why it would happen with

5    respect to the May operating report, and not others, is

6    uncertain, given the level of revenue that appears to have been

7    generated from his work, did not exceed the prior reported

8    costs for Giuliani Communications.  But of course, it would be

9    something that we would want to look into.

10        THE COURT:  So getting back to the interests of

11   creditors, Ms. Strickland pointed out the reason for the

12   filing, or her clients.  Is that of any significance in my

13   consideration of the appropriate remedy here?

14        MR. DUBLIN:  Well, clearly, he filed at the time that

15   he did based on the judgment that was obtained by the Freeman

16   plaintiffs.  But once the opportunity, or once a debtor takes

17   advantage of the bankruptcy laws, whether he did it in good

18   faith or not, and that establishes the priority scheme for

19   other creditors, it does not seem fair or equitable to the

20   creditors' committee that other creditors, who were then put in

21   the position of being in a pari passu class with the Freeman

22   plaintiffs as unsecured creditors, should then fall behind,

23   again, from a debtor that did not act in good faith during the

24   pendency of the Chapter 11 case.

25        If the debtor had been acting in good faith and

1    following through with all of his obligations in connection

2    with the Chapter 11 case, those creditors would stand to

3    recover here.  Again, we don't know what the extent of those

4    recoveries would be, but because of his immoral conduct, his

5    failure to comply with the reporting obligations, his failure

6    to comply with court orders, they shouldn't have to then step

7    back behind the Freeman plaintiffs, once again, when they were

8    at a pari passu level.

9         And there are plenty of cases that have been reported

10   that say, when faced with an opportunity for conversion or

11   dismissal, that the fair and equitable distribution of an

12   estate's value for creditors is the path that a court should

13   pursue when it's available.

14        THE COURT:  All right.  Anything else, Counsel?

15        MR. DUBLIN:  The one thing I would note, Your Honor,

16   is, if we do end up with a Chapter 11 trustee, which, again, is

17   where we hope we end up, it's going to be important that the

18   creditors have a say in who that trustee is and that the Court

19   follow the lead of the Team Systems International case, where

20   Judge Shannon implemented a process to be able to determine

21   allowance, at least for purposes of selecting a permanent

22   trustee, even though claims were disputed, so that the trustee

23   that's been put in place is not one that's just handpicked by

24   the U.S. Trustee, but one that the fate of the creditors is

25   taken into account.

1           THE COURT:  All right.  Thank you.

2           MR. DUBLIN:  Thank you, Your Honor.

3           MS. STRICKLAND:  Your Honor, I have three quick points

4   on that matter.

5           THE COURT:  Sure.  So I'm trying to figure out the

6   order of operations here.  There clearly is a debtor who wishes

7   to speak with his counsel at some point, so I'm trying to

8   figure out when the appropriate time to do that is.

9           MR. FISCHOFF:  I'm sorry, Your Honor.  I have spoken

10  to the debtor already.  I walked out before.

11          THE COURT:  All right.

12          MR. FISCHOFF:  We're okay.

13          THE COURT:  All right.  So with that, I thought it

14  made sense to hear from anybody who wishes to be heard, other

15  than the debtor, and then to return to the debtor for, sort of,

16  final comments, if that makes sense.

17          MR. FISCHOFF:  Well, I just want to say one thing for

18  the record.  There were some statements that the debtor is

19  going to commit bankruptcy crimes.  So I would like to state on

20  the record that Mr. Giuliani, that the debtor, would not be

21  committing any bankruptcy crimes.  And the potential of those

22  statements that say what his intention or what will happen in

23  the future, we vehemently --

24          THE COURT:  I understand.  I take that to be a concern

25  that was raised by parties, based on the way the cases

1 unfolded, in terms of transparency questions.  And so it's not

2 evidence of anything; it's argument.

3          MR. FISCHOFF:  I just thought I'd clarify that on the

4 record.

5          THE COURT:  All right.

6          MR. FISCHOFF:  Thank you, Your Honor.

7          THE COURT:  Thank you.

8          All right.  So Ms. Strickland?

9          MS. STRICKLAND:  Your Honor, I just wanted to

10 address -- for the record, Rachel Strickland, Willkie Farr &

11 Gallagher.

12          I just wanted to address a couple of Mr. Dublin's

13 points.  First, it's all well and good to get to a liquidating

14 plan ASAP on the two apartments.  I think it's really

15 everything else, both in terms of how does one liquidate and

16 fix the contingent unliquidated claims.  Your Honor has

17 observed that most of those things would require a jury trial

18 and are not the type of action, we would submit, that should be

19 heard here.  That could be time-consuming.  Mr. Dublin's

20 comment that those things could be quickly settled is pure

21 speculation.

22          With respect to dismissal, and who has come forward,

23 Your Honor, we were not shy about putting that on the table

24 very early and publicly.  I, myself, have said it at the podium

25 twice, including before our papers were filed.  So it's not as

**RUDOLPH W. GIULIANI**

45

1    if folks had to be looking at the docket at 9 a.m. this morning

2    to know that that was on the table.  That has been on the table

3    for some time.

4          Last, I wanted to address the race to the courthouse.

5    If we're talking about the apartments, it's somewhere in the

6    ballpark of ten million dollars in the aggregate.  The

7    administrative claims that my clients have, as a result of

8    continued defamation, post-petition, under the Code, are

9    satisfied first.

10         The way a jury in the District court established

11   damages, based on defamatory comments, were about, in part, how

12   those comments were disseminated and what it would take to cure

13   that widespread dissemination.

14         As Your Honor noted, just one of those comments done

15   on Twitter, now known as X, includes Giuliani's 1.7 million

16   followers.  And that's before you get to the retweeting of

17   those comments.  So the administrative claims, if these cases

18   continue, are going to be extraordinary, and even before you

19   get to the administrative expenses of the estate, may very well

20   eat the corpus, if this is done as a pure garage sale.

21         So I just don't think that the whole notion that

22   dismissal is only good for one party, and staying in Chapter 11

23   is good for everybody, is accurate, because the absolute

24   priority rule is what it is.  And I do think that there's going

25   to be significant challenges of administration and less coming

**RUDOLPH W. GIULIANI**

46

1  in.

2      The question here is always going to be the cat and

3  mouse game of what dollars can be funneled outside of the

4  estate.  Out in the real world, outside of bankruptcy, all

5  dollars are fair game for everyone, and Mr. Giuliani has to

6  continue to live and do whatever it is he is able to do with

7  his name, likeness, and commentary, in order to make a living.

8      So I would submit that Chapter 11, Chapter 7, Chapter

9  anything, is not going to do anything for any creditors.  And

10  it's time for Mr. Giuliani to go back to the real world, where

11  he can't use Chapter 11 as a sword and a shield and a

12  litigation tactic, which he has since the beginning.

13      We are the singular focus of this case.  We are 148

14  million dollars of fixed claims.  And the whole notion that Mr.

15  Giuliani wants to appeal this, outside of bankruptcy, he can he

16  can do whatever he wants.  So thank you, Your Honor.

17      THE COURT:  Thank you.

18      MR. DUBLIN:  Your Honor, again, just quickly, Phil

19  Dublin for the committee.

20      Ms. Strickland says that conjecture, or the like, with

21  respect to whether we'll be able to reach quick settlements

22  with creditors, quantify claims, turn that back around for the

23  extent of any administrative claims and the like.

24      I would like to note that, to the extent the Court is

25  inclined to dismiss, we do need to ensure that there is an

**RUDOLPH W. GIULIANI**

47

1  appropriate reserve for the fees and expenses of the

2  professionals that have been retained by the Court, and that is

3  the forensic advisor for the creditors' committee.  We

4  understand that the debtor's advisor is being paid by a fund.

5  There is no such third-party fund for Global Data Risk, which

6  is our financial advisor.  And there needs to be an appropriate

7  reserve set aside prior to any dismissal taking place.

8          THE COURT:  All right.  Thank you very much.

9          MS. STRICKLAND:  Your Honor, if I may, on that last

10  point.  We had proposed a form of order to the debtor that

11  provided that GDR notify the parties how much they are owed and

12  that an escrow be set up, prior to dismissal, to handle that.

13  It wasn't in the form of order that was filed with Your Honor.

14  But we wholeheartedly agree that that would be an important

15  step pre-dismissal.

16          THE COURT:  All right.  Anything from debtor's counsel

17  on that point?

18          MR. FISCHOFF:  One, we don't know the number; I've

19  asked.  And two is, the debtor's assets are -- the debtor's

20  cash assets are limited.  And so we did not agree to anything

21  like that.  But obviously it's up to the Court.  But we --

22          THE COURT:  Well --

23          MR. FISCHOFF:  -- don't know the number.  And --

24          THE COURT:  And I'm sure we can solve the number

25  problem quickly.  If your client wants dismissal, right,

1  there's conditions for dismissal.  So I'm sure somebody could

2  get that number.

3       MR. FISCHOFF:  Do you know --

4       THE COURT:  I'm sure somebody could figure that out

5  fairly quickly.

6       MR. DUBLIN:  The dollar amount is approximately

7  400,000 dollars, Your Honor.

8       THE COURT:  The other thing that can be done is money

9  to be put in escrow.  And if there's a dispute about what the

10  compensation should be, it is what it is.

11       MR. FISCHOFF:  The debtor doesn't have 400,000 dollars

12  to put in escrow.  I mean, here we were talking about the

13  administrative costs of a Chapter 11 operating, or even a

14  Chapter 7 trustee, and we're at 400,000 dollars for their --

15       THE COURT:  Well, I don't have any application in

16  front of me.  And so I don't know what it is.  I know the

17  number that's just been identified.  But there certainly are --

18  there's no costs that have been incurred by the committee,

19  because the committee's pro bono.  And so I don't think anybody

20  thought that the case would be something that wouldn't incur

21  administrative expenses.

22       So again, that's a conversation that needs to happen.

23  And if you want to reserve the rights, if you want to make an

24  argument about what the number should be, that's fine.  But for

25  services that are appropriate for purposes of the case on

**RUDOLPH W. GIULIANI**

49

1   behalf of the committee, they are what they are.  Again, the

2   number is, frankly, less of a focus for me than the principle.

3        MR. FISCHOFF:  Well, I understand the principle.  I'm

4   a little aghast at the number, so --

5        THE COURT:  Well, the number is something -- again,

6   there can be an application made.  People can address what the

7   number is.  And that's something we do here in court all the

8   time.  And that's fine.

9        So let me ask if there's any other party that wishes

10   to be heard on the pending application to convert the case to

11   Chapter 7, which has now, I think, safe to say, turned into

12   really a request for dismissal.

13        MS. SCHWARTZ:  Your Honor, just one point.  Andrea

14   Schwartz for the United States Trustee.

15        Again, if the Court, based on the best interests of

16   the creditors, decides to dismiss the case, we want an

17   opportunity to review the order.

18        THE COURT:  Yes.

19        MS. SCHWARTZ:  Secondly, if the Court decides that

20   it's in the best interest of creditors to appoint the Chapter

21   11 trustee, I just want to make it clear, as we did in our

22   papers with respect to the motion for the Chapter 11 trustee,

23   that the United States Trustee takes his responsibilities very

24   seriously, and he vigorously exercises his responsibilities and

25   duties as set forth in the Code.  There were some comments that

1  maybe would perhaps indicate otherwise, but he --

2       THE COURT:  I don't think it was an indication or a

3  reflection on the U.S. Trustee's office.  I think it was an

4  indication of the committee wanting to be involved.  So I don't

5  think those two, while they bump into each other, I don't think

6  it was a comment on your office, but rather a comment on their

7  desire to be involved.

8       MS. SCHWARTZ:  Right.  And as we stated in our papers,

9  we absolutely would consult with all parties-in-interest if the

10  Court directed such a form of relief.  Thank you, Your Honor.

11       THE COURT:  Thank you very much.

12       All right.  So I think for the -- let me see if I can

13  level set as to where we are in an ever-changing landscape.  I

14  don't see conversion to Chapter 7 as an option here, just to be

15  clear.  I don't think it's in the best interest of the

16  creditors.

17       I think the creditors have spoken on that point,

18  unanimously, in their papers.  And I think that a Chapter 11

19  trustee offers benefits over a Chapter 7 trustee, given where

20  we are and the way the case is.  So I think we can safely

21  remove that option.

22       The options we're left with is dismissal versus

23  appointment of a Chapter 11 trustee.  I intend on providing a

24  bench ruling on this promptly.  I can tell folks where I'm

25  leaning.  I'm leaning towards dismissal, frankly, because I am

1   concerned that the past is prologue.  That is that the

2   difficulties that we've encountered during this case, in terms

3   of transparency, will continue and will dog the case, and that

4   other problems that we've encountered in this case, that are

5   somewhat unique, such as the defamation questions, and the

6   adversary proceeding relating to that, and the injunction or

7   the order that was entered here, and that was then entered in

8   the District Court in D.C., where the defamation case is

9   pending, adds a another challenge to the high-wire act of

10  making this bankruptcy case work for the benefit of creditors

11  as opposed to dismissal.

12          So I do think that the parties want and are entitled

13  to a more fulsome discussion.  But I at least wanted to let you

14  know.  My intent is to have a ruling by the end of the week.

15  If I can do it earlier than that, early on Friday, I'll do it

16  earlier on Friday.  But what I can do is certainly set aside a

17  time for Friday afternoon for a bench ruling, say 2 o'clock.

18  And we can do it then if I can't do it before then.

19          So let me just -- actually, I will check on my

20  calendar just to make sure I give you a time that's bankable.

21  I haven't done that.  So 2 o'clock is off the top of my head.

22  Give me one minute.

23          So if I can amend the time for Friday to 1 o'clock, if

24  that would work for the parties?

25              MR. FISCHOFF:  Can we Zoom?

52

1          THE COURT:  That absolutely can be Zoom.

2          All right.  So I would, between now and then, like to

3    get a little more clarity as to the issue of the payment of the

4    professional fees that were being discussed.  Again, I think

5    I've signaled my approach, which is that they're the

6    committee's professionals, they're entitled to make an

7    application.  It would seem appropriate that those fees be

8    paid, whatever the appropriate approved fees are, and that the

9    debtor and any party-in-interest has a right to challenge what

10   those fees are.

11         So I would expect or I would hope that the parties

12   would have a discussion about that in terms of putting language

13   in the order.  And I would hope that you'd be able to have

14   conversations and figure out where you are in the next couple

15   of days, so that you could let me know by the end of the day on

16   Thursday.

17         So let me ask debtor's counsel if that timetable works

18   for you.

19         MR. FISCHOFF:  Yes.  And in a few minutes, I have an

20   idea that, hopefully, after we're done here, I can discuss with

21   the parties.  We may have a realistic, reasonable solution to

22   the issue.

23         THE COURT:  All right.  So what I can do --

24         MR. FISCHOFF:  By Thursday afternoon.

25         THE COURT:  Well, in order to foster those

1   communications, I'm happy to, when we end the hearing, give you

2   the room, and you can chat.  If you need to call people, just

3   do it in this room, because if you wander the hallways of this

4   courthouse on the phone, the marshals will want to chat with

5   you.  So I give you dispensation for having those conversations

6   here in this courtroom.  So I encourage you to have --

7   everybody's together; there's no time like the present for

8   having these discussions.

9          MR. FISCHOFF:  Okay.

10         THE COURT:  So I'll give you the room.

11         MS. STRICKLAND:  Your Honor, Rachel Strickland,

12   Willkie Farr & Gallagher.

13         I just wanted to note one other thing, which is, in

14   the form of proposed order, there is a provision that says,

15   pending any effectiveness of the dismissal order, that the

16   debtor shall not use, transfer, or dispose of any assets,

17   property, records, and that all of the assets have to remain

18   within the estate.

19         And I just wanted to state that for the record and put

20   that on everybody's radar, since it ain't over till it's over.

21   And we want to make sure that all of the dollars that are

22   available to pay the professionals are handled appropriately

23   while this case is --

24         THE COURT:  Yeah.  Well, the case is still the case,

25   and all the regular rules apply until I make a ruling.  I

1  confess that, one of the reasons I want a chance to go through

2  things, is I've given you where I'm likely headed, but I

3  haven't done all the work yet to get there, so I think that's a

4  wise comment.

5       Counsel?

6       MR. FISCHOFF:  The case is still pending.

7       THE COURT:  Yes.

8       MR. FISCHOFF:  All the --

9       THE COURT:  All the rules apply for a Chapter 11

10  debtor while the case is pending.

11      MR. FISCHOFF:  Okay.

12      THE COURT:  All right.  Was there anything else?

13  Since you mentioned the order was there -- we've now discussed

14  one or two issues in the order.  Was there anything else as to

15  the order that people thought would be worth discussing at this

16  time?

17      MR. DUBLIN:  Your Honor, Phil Dublin for the

18  committee.

19      We haven't had time to look at the order.  We'll do

20  so, and if we have issues we'll work through with the parties.

21      THE COURT:  All right.  Maybe that's the thing to do

22  while you're in the room before you head off.

23      MR. DUBLIN:  Yes.

24      THE COURT:  And I'm happy to hand you my copy, if that

25  would be helpful, so you don't have to read it on your phone.

**RUDOLPH W. GIULIANI**

55

1          All right.  Anything else from the debtor?

2          MR. FISCHOFF:  No, Your Honor.

3          THE COURT:  All right.  Anything else from the

4    committee?

5          MR. DUBLIN:  No.  Thank you, Your Honor.

6          THE COURT:  All right.  Anything else from the Freeman

7    plaintiffs?

8          MS. STRICKLAND:  No, Your Honor.

9          THE COURT:  Anything else in the UST?

10         MS. SCHWARTZ:  No, Your Honor.

11         THE COURT:  All right.  Anything else from anybody on

12   the telephone, or the Zoom, as I should call it?

13         All right.  Hearing nothing, 1 o'clock on Friday.

14   I'll await word as to the issue that we just left open.  And if

15   anything develops between now and then, as seems to happen in

16   this case on a regular basis, feel free to reach out and we'll

17   get together before Friday.

18         Thank you very much.  Appreciate it.  The Court is

19   adjourned.

20         IN UNISON:  Thank you, Your Honor.

21       (Whereupon these proceedings were concluded at 12:20 PM)

22

23

24

25

56

1

2                      C E R T I F I C A T I O N

3

4   I, Sharona Shapiro, certify that the foregoing transcript is a

5   true and accurate record of the proceedings.

6

7

8   *Sharona Shapiro*

9   _____

10  Sharona Shapiro (CET-492)

11  AAERT Certified Electronic Transcriber

12

13  eScribers

14  7227 North 16th Street, Suite #207

15  Phoenix, AZ 85020

16

17  Date:  July 11, 2024

18

19

20

21

22

23

24

25

**eScribers, LLC**

## A

**Aaron (1)**
8:25
**Abed (1)**
8:19
**ABID (1)**
5:19
**able (12)**
21:24;22:10;24:18;
25:14;34:9;39:6,21,
23;42:20;46:6,21;
52:13
**absent (1)**
39:19
**absolute (1)**
45:23
**absolutely (2)**
50:9;52:1
**account (2)**
32:19;42:25
**accountable (1)**
24:19
**accurate (1)**
45:23
**acknowledges (1)**
24:25
**act (2)**
41:23;51:9
**acting (1)**
41:25
**action (3)**
36:19;39:22;44:18
**active (1)**
39:5
**actively (1)**
17:23
**activity (1)**
33:24
**actual (1)**
37:21
**actually (5)**
12:10;14:16;40:25;
41:3;51:19
**added (1)**
17:15
**additional (3)**
32:15;35:20;40:25
**address (7)**
12:7;13:16;28:22;
44:10,12;45:4;49:6
**addressed (2)**
38:24,25
**adds (1)**
51:9
**adjourned (1)**
55:19
**administration (6)**
17:3,15;33:18;38:4,
21;45:25
**administrative (15)**
16:16,21;18:17;

19:8;24:13,14;30:17,
22;33:25;45:7,17,19;
46:23;48:13,21
**advantage (1)**
41:17
**adversary (1)**
51:6
**advisement (1)**
32:11
**advisor (3)**
47:3,4,6
**advocate (1)**
34:5
**affect (1)**
11:6
**afternoon (2)**
51:17;52:24
**Again (24)**
11:9;12:18;16:11;
18:14;28:18;30:8;
31:12;35:24;36:22;
37:18,23;38:16,22;
40:23;41:23;42:3,7,
16;46:18;48:22;49:1,
5,15;52:4
**against (5)**
14:20;23:19,20;
36:6,25
**aggravation (1)**
39:9
**aggregate (1)**
45:6
**aggrieved (1)**
40:4
**aghast (1)**
49:4
**agree (3)**
15:9;47:14,20
**agreed (2)**
24:22;25:3
**agreement (1)**
31:17
**agrees (1)**
14:5
**Aiken (1)**
34:4
**ain't (1)**
53:20
**AKIN (5)**
5:2,12;8:18;28:6;
31:13
**albeit (3)**
15:23;23:7;31:6
**allegations (2)**
15:16;28:13
**allow (2)**
17:16;31:7
**allowance (1)**
42:21
**allowed (1)**
24:21
**along (1)**
19:7

**alternative (2)**
13:8;19:15
**always (4)**
8:9;14:8;33:18;
46:2
**AMELIA (2)**
5:18;8:19
**amend (1)**
51:23
**America's (2)**
24:18;28:20
**among (4)**
15:4,5;25:4;35:21
**amount (3)**
36:2,7;48:6
**analysis (1)**
16:4
**ANDREA (4)**
7:16;9:3;20:12;
49:13
**Angeles (1)**
6:15
**anymore (1)**
35:15
**apartments (11)**
18:18,24;23:12;
28:10;34:10,12,13,14;
35:16;44:14;45:5
**apparently (1)**
20:10
**appeal (3)**
21:25;39:21;46:15
**appearance (1)**
9:9
**appearances (2)**
8:10;9:6
**appears (2)**
41:3,6
**appellate (2)**
14:8,13
**apple (1)**
21:22
**application (10)**
10:9,13,16;11:4;
13:24;32:17;48:15;
49:6,10;52:7
**apply (2)**
53:25;54:9
**appoint (4)**
9:15;10:1;13:2;
49:20
**appointed (3)**
22:23;27:2;34:8
**appointment (14)**
12:5;14:1;31:25;
32:5,7,15,19;33:6,8;
34:20;36:12,17;39:4;
50:23
**Appreciate (1)**
55:18
**approach (2)**
26:16;52:5
**appropriate (8)**

12:12;41:13;43:8;
47:1,6;48:25;52:7,8
**appropriately (1)**
53:22
**approved (1)**
52:8
**approximately (1)**
48:6
**argue (1)**
20:23
**argued (1)**
8:4
**arguing (2)**
25:9;32:7
**argument (2)**
44:2;48:24
**around (3)**
21:21;30:23;46:22
**arrest (1)**
23:22
**ArShaye (1)**
4:4
**ASAP (1)**
44:14
**aside (2)**
47:7;51:16
**assault (1)**
28:13
**asserted (2)**
14:20;39:13
**assess (1)**
34:18
**assessing (1)**
17:25
**assets (25)**
13:18;16:23,23,24;
17:16;18:12,15,16,18;
19:4,9;20:18;34:10,
11;35:12,12,15,17;
36:17,21;40:25;
47:19,20;53:16,17
**associated (1)**
35:3
**assume (1)**
15:4
**assure (1)**
40:2
**attach (1)**
39:23
**attached (2)**
14:3,4
**ATTORNEY (2)**
7:2;17:10
**Attorneys (8)**
4:3,12;5:3,13;6:3,
12;7:3,12
**Austin (1)**
4:15
**automatic (1)**
36:6
**available (9)**
17:3,17;18:12,15,
16;25:21;40:25;

42:13;53:22
**Avenue (1)**
6:4
**averred (1)**
36:12
**avoidance (1)**
15:18
**await (1)**
55:14
**aware (3)**
10:24,24;37:19
**away (3)**
30:12;31:6,21;
32:13

## B

**back (12)**
9:15;13:19;14:25;
22:23;24:4;25:10;
35:24;38:25;41:10;
42:7;46:10,22
**backup (1)**
28:22
**bad (3)**
25:17,22;26:21
**bad-faith (3)**
22:12;25:25;26:15
**BAHAM (1)**
5:9
**ballpark (1)**
45:6
**bankable (1)**
51:20
**bankruptcy (21)**
14:10;15:18;19:11,
11;22:5,18;23:3;24:1,
9,25;27:4,13;28:19;
32:3;37:20;41:17;
43:19,21;46:4,15;
51:10
**bar (2)**
14:5;21:8
**based (5)**
35:22;41:15;43:25;
45:11;49:15
**basic (1)**
13:20
**basis (2)**
22:7;55:16
**become (2)**
13:17;28:8
**beginning (6)**
13:13;18:4;22:10;
32:24;34:19;46:12
**begrudge (3)**
37:24;38:16,18
**behalf (6)**
8:15,21;9:2;21:14;
31:14;49:1
**behavior (1)**
14:21
**behind (3)**

24:4;41:22;42:7
**belabor (1)**
14:11
**bell (1)**
37:14
**belong (2)**
23:20;27:5
**bench (2)**
50:24;51:17
**benefit (4)**
17:11;19:3;23:1;
51:10
**benefits (1)**
50:19
**BERGER (3)**
8:11,11,12
**best (23)**
13:10;14:12;15:6,
14;16:11,13;17:14;
18:1,7,11;19:5;20:20,
23;26:6,10;30:13;
31:5;32:1,14;33:4;
49:15,20;50:15
**better (2)**
24:8;27:3
**BIBLO (2)**
5:8;8:19
**big (1)**
12:12
**bit (1)**
11:5
**bite (1)**
21:21
**BLOCK (2)**
5:8;8:19
**Blvd (1)**
6:13
**bond (1)**
39:21
**bonding (1)**
39:22
**bono (3)**
34:4,5;48:19
**both (2)**
24:3;44:15
**Bowling (1)**
7:13
**BR (1)**
27:17
**BRAD (1)**
4:19
**break (3)**
29:16,21;30:8
**briefly (1)**
10:21
**bring (1)**
20:4;35:20;36:24
**broadcast (1)**
12:19
**broker (1)**
18:23
**brought (1)**
39:10

**Bryant (1)**
5:14
**BUCHALTER (1)**
6:11
**bump (1)**
50:5
**Burbage (1)**
8:25
**business (3)**
17:8;18:14;35:5
**button (1)**
22:15

**C**

**CA (1)**
6:15
**CAIN (2)**
4:11,17
**calculus (2)**
11:5;35:6
**calendar (1)**
51:20
**call (2)**
53:2;55:12
**came (2)**
22:1;37:18
**can (41)**
12:7,17;13:23;
15:15;16:7;17:14;
20:16;26:5,19;28:22,
22;29:2;30:8;33:18;
35:20;37:3,23;39:13,
18;40:1,2,10;46:3,15,
16;47:24;48:8;49:6,6;
50:12,20,24;51:15,16,
18,23,25;52:1,20,23;
53:2
**candor (2)**
23:13;27:12
**card (1)**
40:4
**cards (1)**
14:17
**care (1)**
27:15
**career (1)**
38:7
**case (66)**
8:3,4;9:16;10:4;
13:7;14:23;16:9,14;
19:24;20:21;21:9,18;
22:1,11,16,18;23:18;
24:18;25:1,7,11,14,
17;26:13,14,16;
28:21;32:12,22,24;
33:7,9,12,24;34:4,5,
19;35:10;37:2,10;
38:4,10,10,11,20;
39:25;41:24;42:2,19;
46:13;48:20,25;
49:10,16;50:20;51:2,
3,4,8,10;53:23,24,24;

54:6,10;55:16
**cases (6)**
10:7;23:7,11;42:9;
43:25;45:17
**cash (1)**
47:20
**cat (1)**
46:2
**catch (1)**
21:10
**category (1)**
14:19
**cause (4)**
20:16;32:4;40:11,
18
**caused (1)**
24:19
**causes (1)**
36:18
**cell (1)**
29:1
**cents (1)**
24:3
**certainly (5)**
32:25;35:7;38:1;
48:17;51:16
**challenge (3)**
21:20;51:9;52:9
**challenges (2)**
38:21;45:25
**chance (5)**
11:8;14:12;21:10;
30:3;54:1
**change (6)**
11:5;17:2;33:12,17;
34:19,22
**changed (2)**
11:11;20:15
**changing (1)**
11:11
**CHAPPLE (1)**
4:18
**Chapter (75)**
8:3;9:15;10:1,4;
12:5,25;13:1,2,8,18;
14:1;16:14,16,17,17,
18;17:4,5,5,7,11,12,
13,14,20,21,23;18:8;
24:10;25:15,16,20,24;
26:10;30:21,21;31:7,
18,25;32:7,13,16,19;
33:1,6,8;34:8,20,23;
35:10;36:12,15,16;
37:12;38:5;39:14,25;
41:24;42:2,16;45:22;
46:8,8,8,11;48:13,14;
49:11,20,22;50:14,18,
19,23;54:9
**CHARLES (1)**
4:17
**chat (3)**
11:9;53:2,4
**check (1)**

51:19
**chime (1)**
37:23
**choice (1)**
31:6
**choices (1)**
25:8
**choose (3)**
15:5;17:10;30:23
**choosing (2)**
15:4;24:8
**circumstances (1)**
25:5
**cite (1)**
23:23
**cited (2)**
25:11;33:7
**CITRON (4)**
6:2,3;9:11,11
**civil (1)**
23:22
**claims (28)**
14:20;23:19,19,20;
24:1,2,7,9,14,15;27:5,
15;30:15,17;31:2;
37:2;38:1,22;39:10,
12;41:1;42:22;44:16;
45:7,17;46:14,22,23
**clarify (1)**
44:3
**clarity (1)**
52:3
**class (2)**
15:15;41:21
**clear (6)**
20:16;27:5;31:24;
36:8;49:21;50:15
**clearly (3)**
26:12;41:14;43:6
**client (2)**
22:23;47:25
**clients (5)**
22:11,19;24:14;
41:12;45:7
**Code (4)**
26:7;32:3;45:8;
49:25
**Coffee (1)**
23:5
**Colorado (1)**
4:13
**coming (3)**
10:18;27:13;45:25
**comment (5)**
21:3;44:20;50:6,6;
54:4
**commentary (1)**
46:7
**comments (8)**
29:17;32:20;43:16;
45:11,12,14,17;49:25
**commission (1)**
28:9

**commit (1)**
43:19
**Committee (32)**
5:3,13;8:15;10:14;
11:6,18,23;12:6;
16:19;27:19;28:4;
29:25;31:11,14,19;
33:13;36:14;37:24,
25;38:11,12,18;
39:11;40:1;41:20;
46:19;47:3;48:18;
49:1;50:4;54:18;55:4
**committees (1)**
38:7
**committee's (5)**
13:2;24:23;39:5;
48:19;52:6
**committing (1)**
43:21
**Communications (2)**
41:8;53:1
**companies (2)**
35:3,18
**company (1)**
40:4
**company's (1)**
35:12
**comparing (1)**
18:8
**compensated (1)**
34:2
**compensation (3)**
23:17;41:3;48:10
**competent (1)**
31:8
**complaint (2)**
23:25;40:6
**complex (1)**
23:18
**comply (5)**
22:13;27:11;35:19;
42:5,6
**concealed (1)**
28:18
**concern (8)**
33:10,10,22;34:13;
35:25;36:3,5;43:24
**concerned (3)**
37:20;38:5;51:1
**concerns (2)**
37:21,22
**concluded (2)**
13:7;55:21
**conclusion (2)**
27:5;29:24
**conditions (1)**
48:1
**conduct (2)**
26:21;42:4
**confer (2)**
29:16;30:8
**conference (2)**
10:6;37:14

**confess (3)**
10:21;38:13;54:1
**conjecture (1)**
46:20
**connection (4)**
13:9,24;17:24;42:1
**consent (2)**
10:20;13:21
**consider (1)**
26:19
**consideration (1)**
41:13
**considering (1)**
13:11
**considers (1)**
27:4
**consist (2)**
16:23;18:18
**consistent (2)**
12:15;15:7
**conspiracy (1)**
23:22
**constituency (1)**
38:9
**constructive (1)**
12:2
**consult (1)**
50:9
**consume (3)**
16:22;18:15;19:9
**consumed (1)**
19:2
**contemplated (1)**
32:2
**contested (1)**
22:9
**contingent (2)**
23:20;44:16
**Continue (11)**
15:12;17:10;24:11;
28:2;30:9;31:7;33:12;
34:5;45:18;46:6;51:3
**continued (1)**
45:8
**continues (3)**
22:15;28:14;34:15
**contrary (1)**
26:16
**contribute (1)**
30:25
**control (4)**
23:4;34:9,23,24
**conversation (3)**
15:4;37:16;48:22
**conversations (3)**
12:15;52:14;53:5
**conversion (20)**
12:5,24;13:8,12,15,
17;24:24;25:9,12,20,
24;26:20;31:19,20;
32:4,16,22;40:22;
42:10;50:14
**convert (5)**

10:3;13:1;25:15;
33:1;49:10
**converted (2)**
16:14;25:18
**converting (1)**
26:14
**Coomer (1)**
4:12
**cooperate (1)**
28:15
**cooperation (2)**
23:13;36:2
**coordination (1)**
36:16
**copy (1)**
54:24
**CORPORATION (1)**
6:11
**corpus (1)**
45:20
**correctly (2)**
13:23;15:3
**cost (1)**
33:23
**costs (5)**
24:10;33:18;41:8;
48:13,18
**counsel (23)**
8:10;10:8;12:13,21;
13:6;16:20,20;19:13;
21:17;24:20;25:9;
27:1;29:15;30:9,24;
34:2;36:22;40:15;
42:14;43:7;47:16;
52:17;54:5
**Counsel's (1)**
29:15
**count (1)**
16:24
**couple (2)**
44:12;52:14
**course (5)**
16:10;17:7;25:6;
39:13;41:8
**COURT (124)**
8:2,14,20;9:1,5,12,
18,22,25;10:12;11:19,
21;12:9;13:19;14:25;
15:2,9,11,18,24;16:3,
7;17:4,17,19;18:3,6,
13;19:6,12,21;20:4,7,
11,15,23;21:2,5,17;
22:15;23:18;24:1,9;
25:11,14,23;26:3,19;
27:24;28:2,12;29:1,2,
6,9,11,13,20,22;30:3,
18;31:9;32:20,25;
34:12,16;35:1,8,24;
37:11;38:9,13,16,18;
40:8,13;41:10;42:6,
12,14,18;43:1,5,11,
13,24;44:5,7;45:10;
46:17,24;47:2,8,16,

21,22,24;48:4,8,15;
49:5,7,15,18,19;50:2,
10,11;51:8;52:1,23,
25;53:10,24;54:7,9,
12,21,24;55:3,6,9,11,
18
**courthouse (3)**
37:6;45:4;53:4
**courtroom (3)**
9:7;12:17;53:6
**Court's (2)**
18:5;35:19
**credit (2)**
14:17;40:4
**creditor (9)**
15:14;23:16;31:15;
33:2;34:7;37:9,17;
38:9;41:1
**Creditors (65)**
5:3,13;8:16;10:14;
13:10;14:13,15,16,17,
22;15:6,14;16:12;
17:4,17;18:1,7,11,12;
19:3,3,6,7,10;20:20,
21,22;22:16,20;24:6,
15,16,18,26,6,15,22;
27:6;30:14;31:11,15;
32:2,14;33:1;34:6;
36:7,10;38:14;39:7,
15,16;41:11,19,20,22;
42:2,12,18,24;46:9,
22;49:16,20;50:16,
17;51:10
**creditors' (7)**
16:19;36:14;38:11,
12;39:5;41:20;47:3
**crimes (4)**
27:13;28:19;43:19,
21
**crucial (1)**
33:9
**cure (1)**
45:12
**currently (1)**
35:15
**cut (2)**
29:14;30:6

**D**

**Dallas (1)**
5:6
**damages (1)**
45:11
**DANIEL (1)**
7:17
**DANOVITCH (2)**
5:18;8:19
**Data (1)**
47:5
**date (1)**
14:5
**DAVID (1)**

5:20
**DAVIDOFF (5)**
6:2,3;9:10,11;14:18
**day (1)**
52:15
**days (2)**
10:2;52:15
**DC (2)**
4:6;51:8
**dealing (1)**
37:21
**Debtor (44)**
7:21;9:20;10:3;
11:2;12:23;13:1;14:6,
21;15:17;16:10,15;
19:19;20:17;23:11;
24:4;25:14,16,17,21,
22,25;30:22;31:22;
35:3;36:6,11;39:20;
40:4,7;41:16,23,25;
43:6,10,15,15,18,20;
47:10;48:11;52:9;
53:16;54:10;55:1
**debtor-in-possession (1)**
22:14
**debtor-in-possession's (1)**
35:11
**debtors (2)**
11:17;13:11
**debtor's (26)**
8:10;10:20;11:2,10;
12:13;13:18;14:7,12;
16:9,11;21:17;24:20;
26:20;27:1;30:18;
32:9,16,21;34:2,10;
40:15;47:4,16,19,19;
52:17
**decide (3)**
22:9,10;24:9
**decided (1)**
10:9
**decides (2)**
49:16,19
**decision (1)**
22:4
**defamation (3)**
45:8;51:5,8
**defamatory (4)**
29:10;12;30:1;
45:11
**Department (2)**
7:3,11
**deserve (2)**
23:17;24:17
**desire (2)**
10:3;50:7
**detail (1)**
13:13
**determination (3)**
14:8,13;32:4
**determine (2)**
25:6;42:20
**develops (1)**

55:15
**different (4)**
27:9;35:2;37:19;
38:13
**difficult (1)**
23:18
**difficulties (1)**
51:2
**diligent (2)**
33:13;38:20
**directed (1)**
50:10
**directs (1)**
40:17
**disbarred (1)**
17:9
**discuss (1)**
52:20
**discussed (2)**
52:4;54:13
**discussing (2)**
15:13;54:15
**discussion (3)**
15:24;51:13;52:12
**discussions (5)**
13:3,6;19:16;20:25;
53:8
**dismiss (6)**
22:1;24:22,25;
37:10;46:25;49:16
**dismissal (46)**
10:20;12:4;13:5,7,
9,12,14,21;14:2,5,13;
15:21;16:11;17:16,
20,23;18:8,10;19:5,
19;21:2;24:22;25:4;
26:19,23,25;30:12;
31:21;32:5,23;33:5;
37:6,18;39:21;42:11;
44:22;45:22;47:7,12,
25;48:1;49:12;50:22,
25;51:11;53:15
**dismissed (4)**
14:23;17:3;22:17;
24:18
**dismissing (1)**
26:13
**dispensation (1)**
53:5
**dispose (1)**
53:16
**dispute (1)**
48:9
**disputed (1)**
42:22
**disseminated (1)**
45:12
**dissemination (1)**
45:13
**distant (1)**
31:6
**distress (1)**
40:7

**distributable (1)**
24:12
**distribution (2)**
40:3;42:11
**District (2)**
45:10;51:8
**docket (9)**
10:4,15,16,19,19;
32:9,10,17;45:1
**document (2)**
19:18;24:4
**dog (1)**
51:3
**dollar (1)**
48:6
**dollars (11)**
19:1;23:7;35:22;
45:6;46:3,5,14;48:7,
11,14;53:21
**Dominion (1)**
6:12
**done (9)**
17:14;37:16;39:14;
45:14,20;48:8;51:21;
52:20;54:3
**doubt (2)**
31:25;33:19
**down (2)**
15:23;26:2
**dozens (2)**
37:1;38:7
**DUBLIN (28)**
5:17;8:17,17;11:22,
22;28:25;31:12,13;
33:23;34:22;35:9;
36:10;38:6,15,17;
39:3;40:9,21;41:14;
42:15;43:2;46:18,19;
48:6;54:17,17,23;
55:5
**Dublin's (2)**
44:12,19
**due (1)**
27:11
**duff (1)**
27:2
**DUNPHY (3)**
7:22;23:25;40:5
**during (3)**
12:2;41:23;51:2
**duties (3)**
22:13;33:13;49:25

**E**

**earlier (2)**
51:15,16
**early (2)**
44:24;51:15
**easy (2)**
19:1;27:5
**eat (1)**
45:20

**effective (1)**
33:9
**effectively (1)**
25:22
**effectiveness (1)**
53:15
**efficient (2)**
10:8;36:4
**efficiently (1)**
34:9
**eight (1)**
19:1
**eighty (1)**
35:14
**eighty-year-old (3)**
17:9;22:24;30:23
**either (4)**
13:25;20:11;22:21;
31:18
**eligible (2)**
25:15,24
**else (18)**
9:8,13;19:9,13;
21:25;23:4;27:6;30:4;
38:22;42:14;44:15;
54:12,14;55:1,3,6,9,
11
**elsewhere (1)**
38:25
**emotional (1)**
40:6
**encountered (2)**
51:2,4
**encourage (3)**
29:9,11;53:6
**end (11)**
22:11;27:10,10;
36:7,20;37:6;42:16,
17;51:14;52:15;53:1
**endeavors (1)**
23:6
**engaged (2)**
13:6;20:21
**ENID (1)**
7:8
**enough (2)**
20:11;27:10
**ensure (1)**
46:25
**entered (2)**
51:7,7
**entertain (1)**
28:20
**entirely (2)**
29:10,12
**entitled (5)**
25:18;26:12;37:3;
51:12;52:6
**environment (1)**
23:21
**equipped (1)**
24:2
**equitable (4)**

32:1;40:3;41:19;
42:11
**Eric (1)**
4:12
**escrow (3)**
47:12;48:9,12
**ESQ (18)**
4:8,17,18,19;5:8,9,
17,18,19,20,21;6:7,8,
17;7:7,8,16,17
**established (1)**
45:10
**establishes (1)**
41:18
**estate (15)**
15:6;16:25;18:1,7,
11;23:9;26:6,24;28:8;
32:14;34:3;37:3;
45:19;46:4;53:18
**estate's (1)**
42:12
**EULMESSEKIAN (1)**
5:21
**evaluate (1)**
39:12
**even (13)**
16:18,19;21:19;
22:9,13;25:8,21;26:3;
35:13;38:5;42:22;
45:18;48:13
**event (2)**
33:19;38:3
**ever-changing (1)**
50:13
**everybody (3)**
21:25;30:3;45:23
**everybody's (2)**
53:7,20
**everyone (3)**
12:17;19:9;46:5
**everyone's (1)**
30:15
**evidence (1)**
44:2
**evolve (1)**
34:16
**exact (1)**
10:2
**exceed (1)**
41:7
**exclusivity (2)**
36:13;39:5
**exercise (2)**
15:16;28:7
**exercises (1)**
49:24
**exist (2)**
24:25;35:16
**existed (1)**
34:19
**exists (4)**
20:16;32:4;36:6;
39:18

**expect (1)**
52:11
**expectation (1)**
39:2
**expense (2)**
24:14;39:8
**expenses (8)**
16:17,21;18:17;
24:13;33:25;45:19;
47:1;48:21
**experience (1)**
38:14
**experienced (1)**
37:8
**experiences (1)**
39:9
**explicit (1)**
23:25
**expressed (1)**
10:3
**extensive (1)**
36:7
**extent (5)**
20:9;24:11;38:2;
42:3;46:23,24
**extra (1)**
28:9
**extraordinary (1)**
45:18
**extremely (1)**
30:15

**F**

**faced (2)**
12:24;42:10
**fact (3)**
13:12;20:20;32:13
**factor (1)**
16:7
**factors (7)**
13:11,14;15:19;
16:4,5;26:18;27:16
**facts (1)**
32:15
**failure (3)**
27:11;42:5,5
**fair (4)**
33:11;41:19;42:11;
46:5
**fairly (1)**
48:5
**faith (6)**
25:17,22;26:21;
41:18,23,25
**fall (1)**
41:22
**false (1)**
23:22
**far (6)**
15:16;22:5;30:12;
31:5;33:25;37:9
**FARR (6)**

4:2;8:24;11:15;
21:14;44:10;53:12
**fashion (1)**
21:25
**fate (1)**
42:24
**favor (4)**
13:7,14;15:20;
16:10
**favors (1)**
26:12
**feel (2)**
12:16;55:16
**fees (11)**
14:18;19:2,4,8;
30:22;31:2;47:1;52:4,
7,8,10
**FELD (4)**
5:2,12;8:18;31:13
**few (1)**
52:19
**Field (1)**
5:4
**figure (5)**
29:17;43:5,8;48:4;
52:14
**file (4)**
10:10;11:25;13:1;
25:25
**filed (14)**
11:3;13:21;14:20;
16:8;19:18;21:18;
22:18;32:8,17;35:10;
37:2;41:14;44:25;
47:13
**filing (10)**
10:3,19;13:4;14:6,
6;15:23;21:8;22:12;
26:21;41:12
**filings (1)**
10:25
**final (1)**
43:16
**finally (2)**
13:3;31:16
**Finance (1)**
7:3
**finances (1)**
23:4
**financial (2)**
33:9;47:6
**financially (1)**
30:25
**find (2)**
11:2;12:2
**fine (5)**
8:6;11:19;18:3;
48:24;49:8
**fines (1)**
27:14
**firm (2)**
14:18;36:22
**first (10)**

11:2,17;12:14;21:6,
16,21;30:17;33:23;
44:13;45:9
**Fischoff (34)**
8:12,13;12:22,23;
14:4;15:1,8,10,13;
16:2,6;18:2,4,10;
19:14;22:22;43:9,12,
17;44:3,6;47:18,23;
48:3,11;49:3;51:25;
52:19,24;53:9;54:6,8,
11;55:2
**five (1)**
18:20
**fix (1)**
44:16
**fixed (1)**
46:14
**floor (1)**
11:12
**flouting (1)**
23:15
**focus (4)**
22:2;25:7;46:13;
49:2
**folks (7)**
8:5;9:6;10:10;
37:23,25;45:1;50:24
**follow (1)**
42:19
**followed (1)**
11:17
**followers (1)**
45:16
**following (2)**
8:6;42:1
**forced (1)**
30:6
**foreclose (1)**
39:23
**forensic (2)**
28:7;47:3
**forget (1)**
10:2
**form (8)**
10:20;16:19;17:2;
32:18;47:10,13;
50:10;53:14
**forth (5)**
14:2;27:16;40:11,
11;49:25
**forums (1)**
24:7
**forward (7)**
24:23;25:3,7;35:18;
36:15;39:22;44:22
**foster (1)**
52:25
**four (2)**
18:19,20
**framing (4)**
12:12;15:2,11;
40:15

**frankly (3)**
33:20;49:2;50:25
**fraud (1)**
36:21
**fraudulently (1)**
28:18
**free (3)**
12:16;14:23;55:16
**Freeman (33)**
4:3;8:22;10:15;
11:6,17;13:4,6,13;
14:9,15,24;15:25;
19:17;21:11,15,18,20;
30:12,13,16;31:4,22;
33:14,16;37:1,4,7;
39:16,22;41:15,21;
42:7;55:6
**Friday (6)**
51:15,16,17,23;
55:13,17
**front (3)**
10:24;40:20;48:16
**frustrated (1)**
24:15
**full (1)**
19:20
**fully (2)**
8:7;20:21
**fulsome (1)**
51:13
**fund (3)**
34:3;47:4,5
**funds (1)**
34:3
**funneled (1)**
46:3
**funneling (1)**
23:7
**further (2)**
19:7;40:24
**future (1)**
43:23

**G**

**GAGION (1)**
7:7
**gain (1)**
26:23
**GALLAGHER (6)**
4:2;8:24;11:15;
21:14;44:11;53:12
**game (2)**
46:3,5
**games (1)**
28:14
**garage (2)**
23:12;45:20
**Gary (2)**
8:13;12:22
**GDR (2)**
28:6;47:11
**GENERAL (2)**

7:2;14:17
**generated (2)**
17:8;41:7
**gets (1)**
30:3
**GIULIANI (44)**
7:21;8:3;9:17,17,
21,21,24;20:17;21:17,
19;22:12,25;23:2,13,
19,21;24:20;26:7;
27:2,14,20;28:4,14,
24;29:4,5,8,10,12,19,
21;30:1;32:24;35:13,
18,23;36:25;37:5;
41:3,8;43:20;46:5,10,
15
**Giuliani's (4)**
25:9;26:15;34:15;
45:15
**given (6)**
20:20;33:7;39:17;
41:6;50:19;54:2
**giving (2)**
27:19;28:4
**Global (1)**
47:5
**GLUCKSMAN (3)**
6:7;9:10,10
**goes (1)**
16:6
**golf (1)**
28:14
**good (23)**
8:4,11,14,17,20,23;
9:1,3,5,12,22,22,24,
25;12:22;27:25;
31:12;41:17,23,25;
44:13;45:22,23
**Goodman (1)**
8:12
**granting (1)**
40:18
**greater (1)**
19:10
**Green (1)**
7:13
**grounds (2)**
24:25;40:10
**group (1)**
39:16
**guess (2)**
15:25;38:3
**guilty (1)**
23:16
**GUMP (5)**
5:2,12;8:18;28:6;
31:13

**H**

**hall (2)**
27:20;28:4
**hallways (1)**

53:3
**Hampton (1)**
27:16
**hand (2)**
17:16;54:24
**handed (1)**
24:17
**handle (1)**
47:12
**handled (2)**
36:4;53:22
**handpicked (1)**
42:23
**hands (2)**
24:3;40:7
**happen (9)**
22:21;28:11;30:17;
31:17;36:4;41:4;
43:22;48:22;55:15
**happened (4)**
20:24;32:12;33:24;
36:25
**happening (1)**
14:9
**happens (1)**
28:16
**happy (3)**
30:8;53:1;54:24
**harassment (1)**
23:22
**harm (1)**
16:12
**harms (1)**
24:19
**Harrington (2)**
9:4;20:13
**HAUER (4)**
5:2,12;8:18;31:13
**head (2)**
51:21;54:22
**headed (1)**
54:2
**hear (11)**
11:1,4;12:13,17;
18:4;19:22;21:11;
24:9;29:25;31:10;
43:14
**heard (13)**
9:18;20:9;24:7,20;
30:4,5;32:22;33:2,10;
38:14;43:14;44:19;
49:10
**hearing (21)**
8:2,9,9;25:10;2,11,
11;12:1,2;21:16,23;
26:5;31:16;32:10,20;
33:16,21;34:17;
37:17;40:14;53:1;
55:13
**hearings (1)**
12:16
**hears (1)**
38:9

**Heath (1)**
8:11
**held (3)**
10:6;25:14;32:10
**hello (1)**
21:19
**help (3)**
10:8;25:8;26:11
**helpful (1)**
54:25
**high (2)**
25:3;33:19
**highlighted (1)**
40:22
**highly-competent (2)**
27:21;28:5
**high-wire (1)**
51:9
**HILL (1)**
5:20
**himself (2)**
23:2;25:23
**hit (1)**
10:19
**hold (1)**
24:18
**Honor (66)**
8:11,17,23;9:3;
11:14,22;12:22;
20:12,25;21:4,13,16,
24;22:9;23:14,24;
25:6,23;27:4;28:3,16,
19,22;29:4,12,19;
30:11,14;31:8,12,16;
32:3,6,10;33:23;
34:22;35:10;38:7;
39:3;40:1,9,21,21;
42:15;43:2,3,9;44:6,9,
16,23;45:14;46:16,
18;47:9,13;48:7;
49:13;50:10;53:11;
54:17;55:2,5,8,10,20
**hope (3)**
42:17;52:11,13
**hopefully (1)**
52:20
**hostile (1)**
23:21
**Hotel (1)**
27:16
**hundred-million-dollar (1)**
38:10
**hurdles (1)**
38:4
**hurt (1)**
20:5
**hustling (1)**
23:4
**HUTCHER (4)**
6:2,3;9:11,11
**hybrid (1)**
8:7

23-12055-shl    Doc 292    Filed 07/11/24    Entered 07/15/24 09:16:25    Main Document
In the Matter of: Rudolph W. Giuliani                    Pg 62 of 68

July 10, 2024

## I

**idea (4)**
17:21;19:19;38:25;
52:20
**identification (1)**
16:4
**identified (2)**
9:19;48:17
**ignores (1)**
24:4
**immoral (1)**
42:4
**impact (1)**
12:3
**impacted (1)**
22:4
**implemented (1)**
42:20
**importance (1)**
22:19
**important (5)**
25:10;26:22;31:17;
42:17;47:14
**improve (1)**
23:13
**Inc (1)**
6:12
**inclined (1)**
46:25
**include (1)**
26:20
**included (1)**
32:18
**includes (2)**
35:16;45:15
**including (4)**
24:13;30:1;35:21;
44:25
**income (3)**
17:8,9;28:8
**incur (1)**
48:20
**incurred (1)**
48:18
**in-depth (1)**
10:22
**indicate (2)**
13:14;50:1
**indication (2)**
50:2,4
**individual (2)**
31:15;40:5
**information (1)**
33:14
**initiated (1)**
12:25
**injunction (1)**
51:6
**instead (1)**
27:12
**integrally (1)**

35:3
**intend (1)**
50:23
**intent (1)**
51:14
**intention (2)**
14:7;43:22
**interest (19)**
13:11;15:14;16:12,
13;18:1,7,11,21,22;
19:5;20:20;24:6;26:5;
32:1,14;33:4;34:23;
49:20;50:15
**interests (7)**
15:6;20:23;26:6;
31:5;34:6;41:10;
49:15
**International (1)**
42:19
**interrupt (1)**
30:4
**interrupted (1)**
18:2
**into (10)**
14:22;22:22;23:8,
11;28:7;32:19;41:9;
42:25;49:11;50:5
**investigate (1)**
36:18
**investigation (3)**
27:20;28:5;31:7
**investigations (4)**
35:17,20;36:1,20
**Investors (1)**
27:16
**involve (2)**
8:7;38:2
**involved (4)**
17:23;20:25;50:4,7
**involvement (1)**
39:6
**IRA (2)**
16:25;41:2
**issue (6)**
15:3,11;26:4;52:3,
22;55:14
**issues (7)**
12:20;20:9;27:3;
40:14,15;54:14,20
**IV (1)**
5:20

## J

**JAMES (3)**
6:7;8:24;9:10
**January (2)**
21:17,23
**jewelry (2)**
17:1;18:24
**job (3)**
38:12,19,19
**JOEL (1)**

6:17
**joined (1)**
8:24
**joins (1)**
31:22
**Judge (4)**
14:4;20:3,14;42:20
**judgment (9)**
14:9,16,22;21:20;
22:11;30:19;39:17,
23;41:15
**July (2)**
10:4;32:17
**June (4)**
32:11,12,20;40:14
**jury (4)**
38:2,23;44:17;
45:10
**JUSTICE (3)**
7:11;22:20;36:24
**justifiable (1)**
23:15
**justified (1)**
25:5

## K

**keep (1)**
29:1
**keeps (1)**
11:11
**kind (2)**
17:24;18:25
**KLOEWER (1)**
4:19
**knowingly (1)**
28:17
**known (1)**
45:15
**knows (2)**
21:16;32:6

## L

**lack (1)**
27:12
**landscape (1)**
50:13
**language (1)**
52:12
**large (1)**
14:10
**laser-like (1)**
22:2
**last (3)**
20:15;45:4;47:9
**latest (1)**
32:21
**law (3)**
14:23;15:15;26:17
**laws (1)**
41:17
**lawsuit (1)**

14:18
**lawsuits (1)**
14:20
**layered (1)**
28:9
**lead (1)**
42:19
**lean (1)**
13:14
**leaning (2)**
50:25,25
**least (7)**
10:24;19:5,8;25:4;
33:2;42:21;51:13
**leave (1)**
20:22
**leaves (1)**
18:12
**left (4)**
16:20;23:14;50:22;
55:14
**leg (1)**
19:9
**legal (2)**
14:18;15:2
**lengthy (2)**
19:16;30:21
**LEO (1)**
7:7
**less (2)**
45:25;49:2
**level (7)**
9:14;10:23;13:20;
25:3;41:6;42:8;50:13
**Liberty (1)**
7:4
**life (1)**
22:16
**light (2)**
10:6;24:13
**likelihood (1)**
19:10
**likely (3)**
24:16;36:3;54:2
**likeness (1)**
46:7
**likes (1)**
16:8
**limited (2)**
18:21;47:20
**line (1)**
30:6
**liquidate (3)**
17:5,6;44:15
**liquidated (4)**
14:22;18:25;31:2,3
**liquidating (7)**
17:13;18:15;35:10;
36:15,18,22;44:13
**liquidation (1)**
13:17
**listed (2)**
15:20;18:20

**listen (1)**
29:14
**literally (1)**
23:23
**litigate (1)**
24:2
**litigation (2)**
22:12;46:12
**little (5)**
11:5;19:7;37:20;
49:4;52:3
**live (3)**
22:15;27:24;46:6
**living (1)**
46:7
**LLCs (7)**
23:8;28:7,14;34:24,
25;35:1;41:4
**LLP (5)**
4:2;5:2,12;6:2,3
**long (4)**
12:17;20:11;36:11;
38:6
**longer (1)**
25:9
**long-handed (1)**
38:3
**look (3)**
10:17;41:9;54:19
**looking (3)**
21:7;25:16;45:1
**Los (1)**
6:15
**lose (2)**
26:22,23
**loss (1)**
15:21
**lot (2)**
32:6;38:23
**lots (2)**
37:25;38:14
**LP (1)**
27:16

## M

**MACCURDY (1)**
4:8
**MAGGIE (1)**
4:8
**magically (1)**
33:11
**main (1)**
25:2
**majority (1)**
38:8
**makes (3)**
19:22;26:20;43:16
**making (1)**
51:10
**man (3)**
22:24;24:7,17
**managed (1)**

20:10
**management (1)**
34:24
**many (1)**
23:18
**marketed (1)**
18:23
**Marrama (1)**
25:11
**marshals (1)**
53:4
**material (1)**
30:17
**matter (3)**
25:10;32:11;43:4
**maximize (2)**
34:6;35:11
**maximizes (1)**
26:24
**may (16)**
8:5;12:3;17:10;
19:7;25:18;30:22;
32:8;34:22,22;39:19;
40:23,25;41:5;45:19;
47:9;52:21
**maybe (3)**
17:24;50:1;54:21
**mayor (2)**
24:19;28:20
**mean (3)**
14:7;40:9;48:12
**means (1)**
13:22
**meeting (1)**
35:23
**mentioned (1)**
54:13
**microphone (2)**
22:22;27:25
**microphones (1)**
12:18
**middle (2)**
22:10;29:23
**might (4)**
9:20;11:6;16:19;
33:20
**million (7)**
18:19,20,21;19:1;
45:6,15;46:14
**millions (1)**
35:21
**mind (1)**
33:5
**minimal (1)**
34:1
**minimize (1)**
22:19
**minute (1)**
51:22
**minutes (1)**
52:19
**mirrored (1)**
25:19

**Monday (1)**
13:5
**monetization (1)**
36:17
**money (2)**
39:8;48:8
**moneymaking (1)**
23:6
**monopoly (1)**
11:12
**months (3)**
14:7;15:23;22:5
**morass (1)**
28:13
**more (6)**
23:22;32:23;37:21;
38:21;51:13;52:3
**morning (20)**
8:11,14,17,20,23;
9:1,3,5,12,22,24,25;
12:22;19:18;21:1;
27:1;31:12;32:22;
37:19;45:1
**Moss (4)**
4:4;10:16;21:18;
37:8
**most (4)**
22:4;31:20;32:1;
44:17
**motion (14)**
9:15;10:1,10;11:10;
13:2,23;24:24;32:8,
10;37:13,13;40:11,
22;49:22
**mouse (1)**
46:3
**move (3)**
21:24;22:1;36:15
**moved (1)**
31:21
**moving (1)**
35:18
**much (8)**
19:12;21:5;31:9;
33:20;47:8,11;50:11;
55:18
**multiple (1)**
34:3
**muted (1)**
29:3
**myself (1)**
44:24

**N**

**NAGLER (1)**
7:8
**name (1)**
46:7
**narrow (1)**
25:8
**Nathan (1)**
8:25

**nature (1)**
27:4
**nearly (1)**
36:11
**near-term (1)**
28:6
**need (10)**
14:11;15:5;19:25;
20:4;25:6;27:6;40:10,
23;46:25;53:2
**needs (3)**
9:9;47:6;48:22
**New (6)**
5:15;6:5;7:5,14;
20:3;41:2
**next (2)**
14:6;52:14
**NOELLE (2)**
7:22;23:25
**noncompliant (1)**
23:10
**nonconsensual (1)**
22:6
**nondebtor (1)**
28:14
**none (1)**
14:21
**nonetheless (1)**
33:15
**nonexempt (3)**
16:24;34:10;35:17
**nor (1)**
24:2
**North (1)**
5:4
**note (4)**
24:24;42:15;46:24;
53:13
**noted (1)**
45:14
**notes (1)**
12:11
**notice (4)**
10:20;13:1;19:15;
26:5
**noticed (1)**
26:8
**notify (1)**
47:11
**notion (2)**
45:21;46:14
**notwithstanding (1)**
33:24
**number (13)**
10:2;19:1;39:7;
47:18,23,24;48:2,17,
24;49:2,4,5,7
**NW (1)**
4:5
**NY (4)**
5:15;6:5;7:5,14
**NYS (2)**
7:2,3

**O**

**objection (8)**
10:14,15;24:24;
26:19;32:9,16,18;
40:22
**objective (1)**
35:11
**obligations (2)**
42:1,5
**observed (2)**
25:23;44:17
**obtained (1)**
41:15
**obviously (1)**
47:21
**occurs (1)**
24:10
**o'clock (6)**
8:2;13:5;51:17,21,
23;55:13
**off (7)**
16:20;26:1;29:15;
30:6;33:23;51:21;
54:22
**offers (1)**
50:19
**OFFICE (7)**
7:2,12;9:2;19:23;
21:10;50:3,6
**Official (5)**
5:3,13;8:15;10:14;
31:10
**often (1)**
34:16
**old (1)**
35:14
**once (5)**
24:20;28:10;41:16,
16;42:7
**One (32)**
5:14;7:13;9:8;
10:25;12:10;14:25;
18:19;21:9;22:8;23:9,
11;24:17;26:24;
28:11;31:6;34:2;
37:10,13;39:16;
42:15,23,24;43:17;
44:15;45:14,22;
47:18;49:13;51:22;
53:13;54:1,14
**one-page (1)**
10:13
**ones (4)**
12:18,19;30:19;
39:24
**one's (1)**
18:19
**one-sided (1)**
21:25
**ongoing (2)**
27:20;28:5

**only (12)**
11:24;14:14;17:8;
20:19;21:5;26:5;
30:19,25;37:9;38:8;
39:24;45:22
**open (2)**
36:20;55:14
**operate (2)**
17:8,12
**operating (10)**
13:2;17:6,7,15;
18:13,14;35:6;40:24;
41:5;48:13
**operations (3)**
12:3,10;43:6
**opportunity (6)**
11:16;21:3;39:17;
41:16;42:10;49:17
**opposed (5)**
12:5;13:15;14:1,2;
51:11
**opposite (1)**
24:10
**opted (1)**
13:1
**option (9)**
16:15,16;18:8;
25:20,21;26:1;30:13;
50:14,21
**options (8)**
12:24;13:25;15:5,5;
17:22;31:24;37:20;
50:22
**ordeal (1)**
37:8
**order (29)**
10:21;11:9;12:3,10;
14:3,4;19:16;21:3,7;
28:11;29:6;30:7;
32:18;35:19;39:8;
43:6;46:7;47:10,13;
49:17;51:7;52:13,25;
53:14,15;54:13,14,15,
23
**orders (2)**
22:6;42:6
**others (2)**
19:8;41:5
**otherwise (2)**
28:7;50:1
**out (17)**
10:9,18;11:2;12:2,
11;19:14;28:21;
29:18;34:2;41:11;
43:5,8,10;46:4;48:4;
52:14;55:16
**outcome (1)**
32:1
**outlined (1)**
13:12
**outrage (1)**
23:15
**outside (9)**

23-12055-shl    Doc 292    Filed 07/11/24    Entered 07/15/24 09:16:25    Main Document
In the Matter of: Rudolph W. Giuliani
Pg 64 of 68

July 10, 2024

19:11;23:8;27:3;
30:18;34:3;39:15;
46:3,4,15
**over (7)**
22:5;34:24,24;38:7;
50:19;53:20,20
**oversight (1)**
40:1
**owed (1)**
47:11
**own (1)**
15:15
**ownership (1)**
34:23

## P

**page (5)**
13:13;15:25;16:6,7;
24:21
**paid (4)**
28:11;31:1;47:4;
52:8
**painful (1)**
23:25
**paper (1)**
13:24
**papering (1)**
32:6
**papers (8)**
11:25;13:13;15:20;
19:23;44:25;49:22;
50:8,18
**paragraph (3)**
16:1,3;21:8
**pari (2)**
41:21;42:8
**Park (1)**
5:14
**part (1)**
45:11
**participating (1)**
19:24
**parties (15)**
11:8;15:21;17:22;
25:2,4;30:25;31:21;
35:7;43:25;47:11;
51:12,24;52:11,21;
54:20
**parties-in-interest (3)**
22:3;27:12;50:9
**partner (1)**
8:12
**party (5)**
11:4;24:21;29:23;
45:22;49:9
**party-in- (1)**
26:4
**party-in-interest (2)**
26:7;52:9
**party's (1)**
23:14
**pass (2)**

27:20;28:4
**passu (2)**
41:21;42:8
**past (1)**
51:1
**path (6)**
24:23;25:3,6;26:24;
37:4;42:12
**patient (1)**
22:6
**pattern (1)**
34:18
**pause (1)**
22:15
**pay (2)**
19:4;53:22
**payment (1)**
52:3
**pendency (1)**
41:24
**pending (5)**
49:10;51:9;53:15;
54:6,10
**people (11)**
14:20;20:8;37:2,2,
15,19;39:10;40:3;
49:6;53:2;54:15
**percent (1)**
16:22
**perfect (1)**
39:23
**perfectly (1)**
8:6
**performed (2)**
27:21;28:5
**perhaps (4)**
17:1;18:18,19;50:1
**period (1)**
21:9
**permanent (1)**
42:21
**person (3)**
8:4,5;35:4
**personal (2)**
17:9;35:4
**petition (1)**
15:23
**Phil (5)**
8:17;11:22;31:13;
46:18;54:17
**PHILIP (1)**
5:17
**phone (5)**
9:19;27:22;29:2;
53:4;54:25
**physical (1)**
40:6
**pick (1)**
16:20
**picking (1)**
18:25
**pieces (1)**
16:25

**pile (1)**
24:11
**place (5)**
22:21;27:18;31:3;
42:23;47:7
**plaintiffs (24)**
4:3;8:22;11:7,18;
13:4;14:24;19:17;
21:12,15;30:12,13,16;
31:4,22;33:15,16;
37:1,5;39:16,22;
41:16,22;42:7;55:7
**plaintiff's (3)**
13:6,13;15:25
**plan (4)**
28:22;36:16;39:14;
44:14
**play (1)**
28:14
**pleading (2)**
11:1;13:21
**pleadings (3)**
11:3;15:25;23:23
**please (3)**
15:12;28:2;29:3
**plenty (2)**
36:19;42:9
**PLLC (1)**
4:11
**PM (1)**
55:21
**podcasts (1)**
23:5
**podium (2)**
12:16;44:24
**point (18)**
16:21;19:14,21;
21:11;29:16;30:19,
25;31:10;33:6,11,16;
35:4;38:21;43:7;
47:10,17;49:13;50:17
**pointed (1)**
41:11
**points (2)**
43:3;44:13
**police (1)**
23:14
**pop (1)**
29:2
**popped (1)**
41:2
**portion (2)**
16:22;18:16
**position (7)**
11:25;12:1;13:20;
20:14;21:4;30:11;
41:21
**positioned (1)**
24:8
**positions (2)**
12:8;15:22
**possession (1)**
20:17

**possibly (1)**
40:2
**post-petition (1)**
45:8
**potential (4)**
13:17;31:20;36:18;
43:21
**potentially (2)**
35:21;41:2
**powers (1)**
27:9
**predict (1)**
28:16
**predicted (1)**
21:23
**pre-dismissal (1)**
47:15
**preferred (1)**
24:23
**prejudice (1)**
13:10
**prejudiced (1)**
14:14
**prepared (3)**
36:14,23;39:12
**pre-petition (2)**
15:17;23:6
**PRESENT (2)**
7:20;53:7
**presentation (5)**
29:7,15,23,24;30:7
**pretended (1)**
22:13
**previous (1)**
14:11
**primary (1)**
34:1
**principle (2)**
49:2,3
**prior (6)**
12:15;15:22;19:2;
41:7;47:7,12
**priority (3)**
24:14;41:18;45:24
**prison (2)**
27:15;28:20
**pro (3)**
34:4,5;48:19
**probably (2)**
19:22;40:23
**problem (1)**
47:25
**problems (2)**
33:7;51:4
**proceed (2)**
12:13,21
**proceeding (6)**
10:7;11:1,9;12:25;
30:14;51:6
**proceedings (1)**
55:21
**process (5)**
19:7;24:11;30:21;

36:8;42:20
**PROFESSIONAL (4)**
6:11;19:2,4;52:4
**professionals (8)**
16:18;27:21;28:6;
31:1,8;47:2;52:6;
53:22
**prologue (1)**
51:1
**promptly (2)**
39:1;50:24
**proper (1)**
15:11
**property (2)**
18:22;53:17
**proposal (2)**
11:17;20:24
**proposed (8)**
10:20;11:9;16:18;
19:16;21:3,8;47:10;
53:14
**proposition (1)**
25:11
**protection (1)**
23:3
**protections (1)**
27:6
**provide (1)**
36:16
**provided (1)**
47:11
**provides (2)**
26:4;40:24
**providing (1)**
50:23
**provision (1)**
53:14
**publicly (1)**
44:24
**pure (1)**
44:20;45:20
**purposes (4)**
16:9;35:6;42:21;
48:25
**pursuant (1)**
40:6
**pursue (4)**
14:23;18:13;37:4;
42:13
**pursuing (1)**
33:14
**pursuit (1)**
36:20
**put (5)**
41:20;42:23;48:9,
12;53:19
**putting (3)**
28:20;44:23;52:12

## Q

**quantify (1)**
46:22

quick (2)
43:3;46:21
quickie (1)
28:8
quickly (7)
36:1,15;39:13;
44:20;46:18;47:25;
48:5
quite (1)
39:6
QURESHI (2)
5:19;8:19

**R**

race (2)
37:6;45:4
RACHEL (7)
5:8;8:18,23;11:15;
21:14;44:10;53:11
radar (1)
53:20
raised (3)
35:25;36:3;43:25
rather (2)
36:15;50:6
RATTET (1)
6:8
reach (5)
23:8;29:24;39:6;
46:21;55:16
reaching (1)
19:2
read (3)
13:23;24:1;54:25
real (5)
16:25;28:8;34:16;
46:4,10
realistic (2)
39:1;52:21
really (14)
13:14;14:7,14,15;
17:12,13,21;20:15,19;
30:5;34:20;40:16;
44:14;49:12
reason (5)
23:9;25:13;33:17;
34:21;41:11
reasonable (1)
52:21
reasons (4)
14:10;34:1;37:14;
54:1
receive (1)
24:3
received (2)
10:25;41:3
recognition (1)
25:4
recognize (1)
30:18
record (9)
11:15;14:10;21:14;

31:13;43:18,20;44:4,
10;53:19
records (1)
53:17
recover (2)
19:10;42:3
recoveries (2)
34:7;42:4
recovery (1)
39:24
referring (2)
8:21;15:24
reflection (2)
36:2;50:3
refusals (1)
28:15
refused (1)
35:19
regards (1)
22:14
regular (2)
53:25;55:16
relating (1)
51:6
relatively (1)
33:25
relief (5)
19:15;21:19;26:12;
40:18;50:10
relive (1)
39:9
remain (1)
53:17
remaining (1)
27:3
remains (1)
39:25
remarks (2)
17:24;30:2
remedies (3)
14:24;15:15;19:6
remedy (1)
41:13
remote (1)
9:9
remove (2)
20:17;50:21
repeat (1)
40:23
reply (2)
32:9;40:12
report (2)
40:24;41:5
reported (2)
41:7;42:9
reporting (1)
42:5
represent (2)
31:4,14
represented (1)
20:22
representing (1)
38:7

request (4)
26:4;33:1;37:18;
49:12
requested (4)
12:1;13:5;19:15;
22:6
requests (1)
24:5
require (1)
44:17
required (1)
26:8
requires (1)
26:17
reserve (3)
47:1,7;48:23
resolve (1)
39:13
resolved (1)
27:3
respect (9)
20:24;32:7;35:13;
37:5,7;41:5;44:22;
46:21;49:22
response (5)
10:13;11:2,3;32:25;
33:21
responses (1)
10:10
responsibilities (3)
22:14;49:23,24
rest (1)
23:5
result (7)
13:3;19:16;22:3;
26:15,16,22;45:7
retained (1)
47:2
retiring (1)
35:14
return (1)
43:15
returned (1)
15:22
retweeting (1)
45:16
revealed (1)
34:16
revenue (1)
41:6
reverts (1)
22:23
review (2)
21:3;49:17
reviewed (1)
10:21
revised (1)
32:18
reward (1)
26:15
right (58)
8:13,14,20;9:1,5,8,
12,14,18,22;11:19,21;

12:9;15:12,12;16:6;
19:12,17,21;20:6;
21:5;22:21;25:10,12;
27:18,24;28:2;29:1,6,
13,20;30:3;31:3,9;
34:14;35:9;40:8;
42:14;43:1,11,13;
44:5,8;47:8,16,25;
50:8,12;52:2,9,23;
54:12,21;55:1,3,6,11,
13
rights (10)
15:21;17:4,18;
23:22;26:22;33:14;
37:25;38:2,23;48:23
ring (1)
37:14
Risk (1)
47:5
RNC (1)
35:22
road (2)
15:23;27:11
ROBERT (1)
6:8
room (5)
17:20;53:2,3,10;
54:22
Ruby (2)
10:15;21:18
RUDEWICZ (1)
7:17
RUDOLPH (5)
7:21;8:3;9:17,21;
29:4
Rudy (1)
23:5
Rudy's (1)
9:19
rule (2)
21:2;45:24
rules (3)
23:15;53:25;54:9
ruling (6)
25:24;28:17;50:24;
51:14,17;53:25
run (1)
16:10
RYAN (1)
4:18

**S**

safe (2)
31:5;49:11
safely (1)
50:20
sailed (1)
40:19
sale (2)
23:12;45:20
sales (1)
28:8

SAM (1)
5:9
same (8)
12:8;13:16;17:24;
21:23;29:1;32:23;
36:23;37:11
SAMUELS (1)
6:17
sanctions (1)
28:6
satisfied (1)
45:9
satisfy (1)
41:1
save (4)
39:8,8,8,9
saw (1)
10:18
saying (2)
38:3,15
scenario (1)
22:25
schedules (1)
34:11
scheme (1)
41:18
SCHWARTZ (13)
7:16;9:3,4;20:1,3,6,
12,13;49:13,14,19;
50:8;55:10
second (4)
13:19;14:25;21:21;
31:6
Secondly (1)
49:19
Section (1)
15:7
Security (1)
16:24
Seeing (1)
9:8
seeking (1)
32:21
seeks (1)
31:19
seem (3)
39:1;41:19;52:7
seems (4)
11:5,10;31:20;
55:15
seized (1)
19:19
select (2)
16:15,19
selected (1)
36:22
selecting (1)
42:21
sense (4)
19:22;26:20;43:14,
16
sensible (1)
12:9

**seriously (1)**
49:24
**services (3)**
17:9;35:5;48:25
**set (11)**
9:14;14:2;20:11;
27:16;40:11,11;47:7,
12;49:25;50:13;51:16
**setting (1)**
10:23
**settled (1)**
44:20
**settlements (2)**
39:6;46:21
**sexual (2)**
23:21;28:13
**shall (1)**
53:16
**Shannon (1)**
42:20
**SHANT (1)**
5:21
**share (1)**
39:18
**Shaye (1)**
21:18
**shield (1)**
46:11
**ship (1)**
40:19
**short (1)**
28:11
**shows (1)**
40:25
**Shumer (1)**
8:12
**shy (1)**
44:23
**side (1)**
17:20
**signal (1)**
20:9
**signaled (1)**
52:5
**significance (1)**
41:12
**significant (7)**
33:19;37:9;38:4;
39:16,19;40:6;45:25
**singular (1)**
46:13
**sit (3)**
27:2;28:23;30:23
**situation (7)**
18:13;27:25;34:15;
35:2,7,13;39:20
**situations (1)**
36:21
**six (2)**
15:23;22:5
**SKARNULIS (1)**
4:11
**smoothly (1)**

36:1
**so-called (1)**
17:15
**Social (1)**
16:24
**sold (2)**
23:12;28:10
**solution (1)**
52:21
**solve (1)**
47:24
**somebody (3)**
30:4;48:1,4
**Somebody's (1)**
27:24
**someone (1)**
23:3
**somewhat (1)**
51:5
**somewhere (2)**
27:6;45:5
**sorry (2)**
18:2;43:9
**sort (8)**
10:8;9;12:12;13:20;
20:7;37:19;40:19;
43:15
**sound (1)**
20:8
**sounds (1)**
12:9
**source (1)**
9:19
**speak (3)**
11:16;12:16;43:7
**SPEAKER (4)**
19:25;20:2;27:22;
28:1
**speculation (1)**
44:21
**spent (2)**
32:6;40:13
**spoken (3)**
26:3;43:9;50:17
**spurred (1)**
13:4
**square (3)**
12:18;20:1;37:15
**stages (1)**
38:1
**stand (2)**
8:8;42:2
**start (2)**
8:9,10
**starting (2)**
15:25;32:8
**starts (1)**
16:6
**state (9)**
14:23;15:15,18;
17:4,17;18:13;19:6;
43:19;53:19
**stated (1)**

50:8
**statements (3)**
35:22;43:18,22
**States (7)**
9:2,4;19:22;20:13,
14;49:14,23
**status (2)**
10:6;37:14
**statute (1)**
40:16
**stay (4)**
21:19;24:10;36:6,
20
**stayed (3)**
21:25;28:12;30:16
**staying (1)**
45:22
**step (2)**
42:6;47:15
**still (6)**
14:1;18:11,12;
35:15;53:24;54:6
**stipulated (1)**
25:22
**stipulating (1)**
32:23
**stomach (1)**
17:21
**STRAUSS (4)**
5:2,12;8:18;31:13
**streams (1)**
28:8
**Street (4)**
4:5,13;5:4;7:4
**STRICKLAND (25)**
8:23,24;11:13,14,
15,20;21:13,14;28:3,
25;30:9,10,11;35:25;
36:11;41:11;43:3;
44:8,9,10;46:20;47:9;
53:11,11;55:8
**STUART (1)**
7:8
**studied (1)**
10:22
**subject (1)**
15:18
**submit (10)**
22:3,20;23:19;
25:20;26:11,23,25;
27:8;44:18;46:8
**submits (1)**
23:8
**substantial (3)**
16:22;18:16;38:8
**success (1)**
33:20
**successful (1)**
36:8
**sudden (1)**
22:23
**suffered (1)**
40:5

**suggest (1)**
28:21
**suggested (2)**
19:19;27:1
**suggestions (1)**
11:11
**suggests (2)**
26:21;30:24
**Suite (3)**
4:14;5:5;6:14
**superhuman (1)**
23:10
**supplemented (1)**
32:15
**support (2)**
19:20;40:24
**supporting (2)**
12:4;32:15
**supposed (1)**
37:24
**Supreme (4)**
25:11,13,23;26:3
**sure (13)**
10:7;13:20;15:1,2;
17:11;18:14;29:2;
43:5;47:24;48:1,4;
51:20;53:21
**suspect (2)**
23:4;26:25
**swiftly (1)**
28:17
**sword (1)**
46:11
**sympathy (1)**
37:7
**Systems (1)**
42:19

### T

**table (5)**
12:16;26:1;44:23;
45:2,2
**tactic (3)**
22:12;32:21;46:12
**talking (4)**
39:8;40:17;45:5;
48:12
**task (1)**
27:19
**Taxation (1)**
7:3
**Team (1)**
42:19
**tee (1)**
10:10
**teed (1)**
37:13
**telephone (1)**
55:12
**telling (1)**
30:6
**temporally (1)**

30:18
**ten (1)**
45:6
**tend (1)**
10:7
**ten-million-dollar (1)**
38:10
**terminated (1)**
36:13
**termination (1)**
39:4
**terms (12)**
12:11;14:2;15:3,6;
30:7;36:23;40:15,16;
44:1,15;51:2;52:12
**terrible (1)**
26:14
**territory (1)**
28:19
**theoretical (1)**
37:21
**thinking (2)**
35:6;40:16
**Third (4)**
6:4;14:19;16:16;
21:22
**third-party (1)**
47:5
**though (7)**
16:21;22:9;25:8;
31:19,20;41:4;42:22
**thought (4)**
43:13;44:3;48:20;
54:15
**three (8)**
12:24;14:15;18:19;
24:3;25:2,20;31:24;
43:3
**throughout (1)**
23:7
**throw (1)**
28:21
**Thursday (2)**
52:16,24
**thus (1)**
33:25
**thwart (1)**
22:18
**tied (1)**
24:4
**till (1)**
53:20
**time-consuming (2)**
30:15;44:19
**timely (1)**
36:5
**times (1)**
36:19
**timetable (1)**
52:17
**Title (2)**
27:13;28:17
**today (14)**

8:18;10:18;11:9;
12:24;14:11;19:15;
20:19,24;22:1,8,10;
26:9;31:18;36:12
**today's (2)**
10:11;22:4
**together (3)**
39:11;53:7;55:17
**told (2)**
12:1;21:17
**took (2)**
21:21;32:11
**top (1)**
51:21
**touch (1)**
20:1
**tough (1)**
22:8
**towards (1)**
50:25
**town (1)**
37:14
**transfer (1)**
53:16
**transfers (1)**
15:17
**transparency (3)**
33:9;44:1;51:3
**treated (1)**
10:9
**trial (3)**
38:2,23;44:17
**true (2)**
22:1;24:22
**Trump (1)**
35:22
**trust (2)**
36:19,22
**Trustee (77)**
7:12;9:4,16;10:1;
11:20;12:4,6,7;13:3;
14:1;16:16,17,19;
17:5,5,6,7,11,13,13,
14,15,21,23;18:9,13;
20:13,14;22:23;23:1;
24:3;27:2,7,8,9,11;
28:12,18;31:1,7,18,
25;32:8,9,13,16,19;
33:6,8,12;34:8,9,20,
23;36:12,16,18;
37:12;38:5;39:4,11;
40:1,11,24;42:16,18,
22,22,24;48:14;49:14,
21,22,23;50:19,19,23
**Trustees (1)**
23:10
**Trustee's (5)**
9:2;11:24;19:22;
21:9;50:3
**try (1)**
36:24
**trying (3)**
34:18;43:5,7

**turn (2)**
23:11;46:22
**turned (2)**
14:22;49:11
**twelve (1)**
14:6
**twelve-month (1)**
14:5
**twenty-billion-dollar (1)**
38:11
**twice (1)**
44:25
**Twitter (1)**
45:15
**two (14)**
13:25;16:25;18:18,
24;23:12;26:2;28:8;
34:1,4,10;44:14;
47:19;50:5;54:14
**TX (2)**
4:15;5:6
**type (1)**
44:18
**types (3)**
14:15;24:2;39:7

## U

**ultimate (1)**
32:4
**unable (1)**
30:24
**unanimous (3)**
25:2;33:2,3
**unanimously (1)**
50:18
**unbothered (1)**
22:16
**uncertain (1)**
41:6
**uncomfortable (2)**
35:7;39:10
**uncommon (1)**
35:9
**uncooperative (1)**
30:22
**under (13)**
17:4;23:3;25:5,16,
23;26:7,8,11;27:13;
28:20;32:11;39:14;
45:8
**understood (1)**
24:21
**undoubtedly (2)**
22:18;28:10
**unfolded (1)**
44:1
**UNIDENTIFIED (4)**
19:25;20:2;27:22;
28:1
**unilaterally (1)**
21:24
**unique (1)**

51:5
**UNISON (1)**
55:20
**United (7)**
9:2,4;19:22;20:13,
14;49:14,23
**unless (2)**
27:8;28:19
**unliquidated (2)**
23:20;44:16
**Unnecessary (1)**
30:2
**unpaid (1)**
14:18
**unqualified (2)**
25:10,12
**Unsecured (13)**
5:3,13;8:15;10:14;
14:17;24:15,16;
31:11,14,15;34:6,6;
41:22
**up (18)**
10:10;13:19;14:25;
16:20;19:9,17;24:11;
27:10;29:2;36:7;37:6,
13;39:1;41:2;42:16,
17;47:12,21
**upon (2)**
19:20;36:12
**usage (1)**
23:23
**use (2)**
46:11;53:16
**UST (1)**
55:9

## V

**value (7)**
24:12;26:24;35:12,
21;39:18;40:3;42:12
**various (8)**
11:3;14:10,21;16:4;
26:18;33:14;37:25;
38:1
**vehemently (1)**
43:23
**veracity (1)**
39:12
**verbatim (1)**
25:19
**verdicts (1)**
23:16
**versus (4)**
16:15;17:20;18:8;
50:22
**Via (14)**
4:8,17,18,19;5:21;
6:7,8,17;7:7,8,16,17,
21,22
**Viagra (1)**
23:23
**victims (1)**

24:7
**view (3)**
17:19,25;33:3
**views (3)**
11:7;19:23,24
**vigorously (1)**
49:24
**virtue (1)**
33:19
**voluntary (1)**
14:6

## W

**wades (1)**
28:12
**wait (4)**
24:22;36:7,11;
38:24
**waiting (1)**
30:20
**walked (1)**
43:10
**wander (1)**
53:3
**Wandrea (2)**
4:4;10:16
**wants (6)**
23:24;28:20;37:5;
46:15,16;47:25
**warranted (1)**
32:13
**Washington (1)**
4:6
**way (11)**
10:8,22;11:1;20:11;
25:25;36:4,5;38:3;
43:25;45:10;50:20
**week (1)**
51:14
**weigh (1)**
36:5
**Weighing (1)**
31:24
**weighs (1)**
15:20
**welcome (1)**
11:11
**Wexler (1)**
8:12
**what's (10)**
10:11,23;14:11;
17:25,25;18:6,7;
20:23;26:10;33:21
**Whereas (1)**
39:25
**Whereupon (1)**
55:21
**whole (5)**
12:25;32:2;39:15;
45:21;46:14
**wholeheartedly (1)**
47:14

**wholly-owned (1)**
35:18
**widespread (1)**
45:13
**widgets (1)**
35:1
**William (2)**
9:4;20:13
**willing (1)**
13:25
**WILLKIE (6)**
4:2;8:24;11:15;
21:14;44:10;53:12
**Wilshire (1)**
6:13
**win (2)**
24:16,17
**wired (1)**
20:7
**wisdom (1)**
11:12
**wise (1)**
54:4
**wishes (3)**
43:6,14;49:9
**within (2)**
19:11;53:18
**without (5)**
17:14;27:19;28:3;
31:25;39:22
**witnesses (1)**
8:7
**woes (1)**
22:15
**word (1)**
55:14
**work (10)**
22:24;23:21;30:23,
24;34:15;41:7;51:10,
24;54:3,20
**working (4)**
17:10;22:25;23:2;
28:1
**works (1)**
52:17
**world (2)**
46:4,10
**worth (3)**
18:19,20;54:15
**wrapping (1)**
39:1
**wrongs (1)**
36:25

## Y

**year (1)**
21:9
**years (2)**
35:14;36:20
**yesterday (1)**
19:17
**yields (1)**

23-12055-shl   Doc 292   Filed 07/11/24   Entered 07/15/24 09:16:25   Main Document
In the Matter of: Rudolph W. Giuliani          Pg 68 of 68

July 10, 2024

18:25
**York (4)**
  5:15;6:5;7:5,14

## Z

**Zoom (21)**
  4:8,17,18,19;5:21;
  6:7,8,17;7:7,8,16,17,
  21,22;8:6;12:18,19;
  20:8;51:25;52:1;
  55:12

## 1

**1 (2)**
  51:23;55:13
**1.7 (1)**
  45:15
**10:30 (1)**
  21:1
**100 (1)**
  16:22
**1000 (1)**
  6:13
**10004 (1)**
  7:14
**10005 (1)**
  7:5
**10036 (1)**
  5:15
**10158 (1)**
  6:5
**11 (53)**
  8:2,3;9:15;10:1;
  12:5;13:2;14:1;16:7,
  16;17:6,7,11,12,13,
  23;18:8;24:10;30:21;
  31:7,18,25;32:7,13,
  16,19;33:6,8,12;34:8,
  20,23;35:7,10,10;
  36:12,15,16;37:12;
  38:5;39:14,25;41:24;
  42:2,16;45:22;46:8,
  11;48:13;49:21,22;
  50:18,23;54:9
**1112a (1)**
  25:12
**1112b (2)**
  15:7;40:16
**1112b1 (2)**
  26:4;32:3
**1112f (2)**
  25:19;26:11
**12:20 (1)**
  55:21
**148 (1)**
  46:13
**1500 (1)**
  6:14
**152d (1)**
  28:21
**17 (2)**

16:1,3
**17th (4)**
  32:11,12,20;40:14
**18 (2)**
  27:13;28:17
**1800 (1)**
  5:5
**1875 (1)**
  4:5
**19th (2)**
  21:17,23
**1st (1)**
  10:5

## 2

**2 (3)**
  21:8;51:17,21
**2002 (1)**
  26:8
**2004 (1)**
  35:19
**2300 (1)**
  5:4
**233 (1)**
  32:9
**256 (1)**
  32:10
**270 (1)**
  27:16
**277 (1)**
  10:4
**28 (1)**
  7:4
**281 (2)**
  10:15;32:17
**282 (1)**
  10:16
**285 (1)**
  10:19
**2850 (1)**
  4:14
**28th (1)**
  32:8

## 3

**303 (1)**
  4:13
**341 (1)**
  35:23
**346 (1)**
  27:17

## 4

**4 (1)**
  13:4
**400,000 (3)**
  48:7,11,14

## 5

**5.7 (1)**
  18:21

## 6

**6 (1)**
  24:21
**605 (1)**
  6:4

## 7

**7 (24)**
  10:4;12:25;13:1,8,
  18;16:14,17,17,19;
  17:4,5,14,20,21;
  25:20,24;26:10;
  30:21;33:1;46:8;
  48:14;49:11;50:14,19
**706d (2)**
  25:16,19
**75201 (1)**
  5:6
**78701 (1)**
  4:15

## 8

**8 (1)**
  15:25
**8th (1)**
  32:17

## 9

**9 (3)**
  13:13;16:6;45:1
**9:30 (1)**
  19:18
**90017 (1)**
  6:15