1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -x

In the Matter of:

RUDOLPH W. GIULIANI,                    Main Case No.

      Debtor.                           23-12055-shl

- - - - - - - - - - - - - - - - - - - -x

         United States Bankruptcy Court

         One Bowling Green

         New York, New York

         July 17, 2024

         11:38 AM

B E F O R E:

HON. SEAN H. LANE

U.S. BANKRUPTCY JUDGE

ECRO:  ART

2

1

2   Doc. #296 Notice Of Status Conference

3

4   Status Conference Re: Doc. #290 Notice Of Presentment Of Order

5   Of Dismissal

6

7   Status Conference Re: Doc. #294 Notice Of Presentment Of

8   Counter Order Of Dismissal

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:  River Wolfe

21   eScribers, LLC

22   7227 North 16th Street, Suite #207

23   Phoenix, AZ 85020

24   (800) 257-0885

25   operations@escribers.net

3

1

2   A P P E A R A N C E S (All present by video or telephone):

3   BERGER, FISCHOFF, SHUMER, WEXLER & GOODMAN, LLP

4          Attorneys for Debtor

5          6901 Jericho Turnpike

6          Suite 230

7          Syosset, NY 11791

8

9   BY:   HEATH S. BERGER, ESQ.

10          GARY C. FISCHOFF, ESQ.

11

12

13   KENNETH CARUSO LAW LLC

14          Attorneys for Debtor

15          15 West 72nd Street

16          New York, NY 10023

17

18   BY:   KENNETH A. CARUSO, ESQ.

19

20

21

22

23

24

25

4

1

2   WILLKIE FARR & GALLAGHER LLP

3        Attorneys for Ruby Freeman and Wandrea ArShaye Moss

4        787 Seventh Avenue

5        New York, NY 10019

6

7   BY:   CAROLINE BARTOLOTTA, ESQ.

8        JAMES BURBAGE, ESQ.

9        JESSICA GRABER, ESQ.

10        MARINE LOISON, ESQ.

11        AARON E. NATHAN, ESQ.

12        RACHEL C. STRICKLAND, ESQ.

13

14

15   AKIN GUMP STRAUSS HAUER & FELD LLP

16        Attorneys for Official Committee of Unsecured Creditors

17        2300 North Field Street

18        Suite 1800

19        Dallas, TX 75201

20

21   BY:   RACHEL L. BIBLO BLOCK, ESQ.

22

23

24

25

5

1

2    AKIN GUMP STRAUSS HAUER & FELD LLP

3         Attorneys for Official Committee of Unsecured Creditors

4         One Bryant Park

5         New York, NY 10036

6

7    BY:   AMELIA E. DANOVITCH, ESQ.

8          PHILIP C. DUBLIN, ESQ.

9          SHANT K. EULMESSEKIAN, ESQ.

10

11

12   U.S. DEPARTMENT OF JUSTICE

13        Attorneys for Office of the U.S. Trustee

14        One Bowling Green

15        New York, NY 10004

16

17   BY:   ANDREA B. SCHWARTZ, ESQ.

18         DANIEL RUDEWICZ, ESQ.

19

20

21

22

23

24

25

6

1

2   OFFICE OF THE NYS ATTORNEY GENERAL

3        Attorneys for NYS Department of Taxation and Finance

4        28 Liberty Street

5        New York, NY 10005

6

7   BY:   LEO V. GAGION, ESQ.

8        ENID NAGLER STUART, ESQ.

9

10

11  CAIN & SKARNULIS PLLC

12       Attorneys for Dr. Eric Coomer

13       303 Colorado Street

14       Suite 2850

15       Austin, TX 78701

16

17  BY:   CHARLIE J. CAIN, ESQ.

18       RYAN E. CHAPPLE, ESQ.

19       BRADLEY A. KLOEWER, ESQ.

20

21

22

23

24

25

7

```
1
2   BUCHALTER, A PROFESSIONAL CORPORATION
3         Attorneys for US Dominion, Inc.
4         1000 Wilshire Boulevard
5         Suite 1500
6         Los Angeles, CA 90017
7
8   BY:   JOEL G. SAMUELS, ESQ.
9
10
11  WINSTON & STRAWN LLP
12        Attorneys for Interested Party
13        1901 L Street, Northwest
14        Washington, DC 20036
15
16  BY:   KENNETH L. PERKINS, ESQ.
17
18
19  DAVIDOFF HUTCHER & CITRON LLP
20        Attorneys for Davidoff Hutcher & Citron LLP
21        605 Third Avenue
22        New York, NY 10158
23
24  BY:   JAMES B. GLUCKSMAN, ESQ.
25
```

8

1

2  LABKOWSKI LAW, P.A.

3          250 95th Street

4          Suite 547233

5          Surfside, FL 33154

6

7  BY:   DAVID LABKOWSKI, ESQ.

8

9

10  ALSO PRESENT:

11          RICK ARCHER, Law360

12          AVA-JOYE BURNETT, Scripps News

13          NOELLE DUNPHY

14          ELIZABETH DYE

15          BRIAN EBERT, Global Data Risk

16          CLARA ELLEN GEOGHEGAN, Law360

17          UDAY GORREPATI, ABI Project

18          TAYLOR HARRISON, ION Group

19          DIETRICH KNAUTH, Reuters

20          DANIEL LATHROP, Scripps News

21          ERIK LAYKIN, Global Data Risk

22          ELLA LEE, The Hill

23          MATTHEW NAHAM, Law&Crime Network

24          ERIC ORDEN, Politico

25          KATELYN POLANTZ, CNN

9

1

2   ALSO PRESENT (Cont'd):

3          KELLY RISSMAN, The Independent

4          ZACHARY SCHONFELD, The Hill

5          VINCE SULLIVAN, Law360

6          MICHAEL TOMBACK, Reorg

7          ALEX WOLF, Bloomberg

8          BECKY YERAK, Wall Street Journal

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

10

```
 1                    P R O C E E D I N G S
 2           THE COURT:  Good morning.  This is Judge Sean Lane in
 3   the United States Bankruptcy Court for the Southern District of
 4   New York.  And we're here for the case of Rudolph W. Giuliani,
 5   a Chapter 11 case, 23-12055, and more particularly, to talk
 6   about the proposed dismissal order on the heels of the Court's
 7   decision issued on Friday that the case should be dismissed.
 8   There are no shortage of variety of orders that have been
 9   provided to the Court, and we'll talk about that all this
10   morning.
11           So let's start with appearances.  First, on behalf of
12   the debtor.
13           MR. BERGER:  Yeah.  Yeah.  Good morning, Your Honor.
14   Heath Berger of Berger, Fischoff, Shumer, Wexler & Goodman,
15   attorneys for the debtor.  And my partner Gary Fischoff is also
16   on the line.
17           THE COURT:  All right.  Good morning.
18           MR. FISCHOFF:  Good morning, Your Honor.
19           THE COURT:  And on behalf of the official committee.
20           MR. DUBLIN:  Morning, Your Honor.  Phil Dublin and
21   Amelia Danovich, Akin Gump Strauss Hauer & Feld, for the
22   committee.
23           THE COURT:  Good morning.
24           On behalf of the Freeman plaintiffs.
25           MS. STRICKLAND:  Good morning, Your Honor.  Rachel
```

**RUDOLPH W. GIULIANI**

11

1    Strickland and James Burbage on behalf of the Freeman

2    plaintiffs.  Willkie Farr & Gallagher.

3            THE COURT:  Good morning.

4            On behalf of the United States Trustee's office.

5            MS. SCHWARTZ:  Good morning, Your Honor.  Andrea

6    Schwartz for the United States Trustee.  I'm joined by my

7    colleague Daniel Rudewicz.

8            THE COURT:  Good morning.

9            And I do also believe I see Mr. Glucksman, so let me

10   get his appearance as well.

11           MR. GLUCKSMAN:  Yes, observing.  Counsel for creditor

12   Davidoff Hutcher Citron.

13           THE COURT:  All right.  Good morning.

14           All right.  Anyone else who needs to make an

15   appearance?

16           All right.  So before we start, there's a couple of

17   stray housekeeping issues that I wanted to address.

18           I think there is a motion of Global Data Risk LLC for

19   leave to redact and file under seal certain confidential

20   information relating to its fee applications, which clearly are

21   contemplated by the discussions we're having.  They filed a

22   certificate of no objection.  And since I'm getting all of you

23   nice people together here today, I thought I would just throw

24   it out there to make sure that no one has any views about that

25   request to seal that particular information.  And obviously,

1    the sealed information will be available to any party-in-

2    interest who believes it's necessary for them to form an

3    appropriate view on the fee application, or at least to the

4    professionals.

5         So anybody wish to be heard on this request?

6         MS. SCHWARTZ:  Your Honor, Andrea Schwartz for the

7    United States Trustee.  The proposed order that was sent into

8    the Court was modified after discussions that we had with

9    counsel for the committee.  The redacted information is

10   strictly limited to the names of five employees of GDR, and we

11   have no objection to that.

12        THE COURT:  All right.  So I will take it that there

13   will be a revised order submitted on that, and I will look for

14   that in my inbox.  And just do me a favor.  When you submit it,

15   just make it clear in the email that this is the revised order

16   that's been agreed to by the parties, so I can take care of

17   that matter and get that all squared away.  Let me just, in an

18   abundance of caution --

19        MS. DANOVITCH:  Your Honor.

20        THE COURT:  Yeah, I was --

21        MS. DANOVITCH:  If I may, Amelia Danovich, Akin Gump

22   Strauss Hauer & Feld, on behalf of the committee.  We did file

23   a revised proposed order with the certificate of no objection,

24   which should be at docket number 298.

25        THE COURT:  All right.  You're way ahead of me.  Thank

**RUDOLPH W. GIULIANI**

13

1  you very much.  I appreciate it.  I'll get that entered today

2  right after we're done here.

3       So in keeping with the practical matters that need to

4  be addressed other than the disputed issue today, we had

5  originally scheduled the hearing tomorrow as to the adversary

6  proceeding in the summary judgment motion.  I would think, in

7  light of all the events, it's pretty clear that that's

8  canceled.  But again, since I have the benefit of you all being

9  here today, I wanted to confirm that's everybody's

10  understanding.

11       And I would think that consistent with the dismissal

12  that that adversary proceeding is no longer something that's

13  going to move forward and would be dismissed.  That's the

14  general rule.  It's not without exception, but the exceptions

15  wouldn't seem to apply here.  But since I have the benefit of

16  you all being here, I just wanted to make sure we were all on

17  the same page.

18       So Ms. Strickland, any thoughts from you?

19       MS. STRICKLAND:  I agree, Your Honor.

20       THE COURT:  All right.  Thank you very much.

21       And so with that, I can't think of any other

22  preliminary matters before we turn to the question of the

23  dismissal order and the related question of fees.  But if

24  anybody does have such a preliminary matter, let me know now.

25       All right.  So I thought it only fair to give you a

1   sense of where I am on this particular question.  And obviously

2   I'm happy to hear from anybody.  But I did a little independent

3   research, as judges are want to do, so that I make sure I have

4   my ducks in a row and well informed.

5          So to just start with the pretty clear notion that

6   bankruptcy courts retain jurisdiction to deal with ancillary

7   matters after dismissal, such as an application for an award of

8   attorney's fees or other applications.  So it's pretty clear I

9   have jurisdiction in this case to address the fee application

10  of the committee's professionals.  I think everybody was

11  operating under that assumption.  But again, it's always good

12  to have case authority and just sort of level set what we're

13  doing and what we're not doing.  That's all discussed in a

14  decision by Judge Glenn called Parklex Associates, 435 B.R.

15  195.  It's a case from 2010.  There's also a Sixth Circuit

16  decision called 5900 Associates from 2006, 468 F.3d 326.

17         So just to be clear, I have authority to do that.  And

18  I mentioned that because that's clear.  What other authority I

19  have or whatever jurisdiction I have beyond that after

20  dismissal is less clear.  And so I think that that's an

21  important framing of the issues today because the orders vary

22  greatly on what they provide beyond a garden-variety dismissal.

23         And so I was struck by the notion in one of the orders

24  about a liquidating trustee.  So let me be clear, I think a

25  trustee is what we were fighting about.  We were fighting about

1    dismissal, Chapter 7 trustee, and a Chapter 11 trustee.  And

2    you all came in.  Gave arguments.  We had very helpful

3    conversations.  I appreciate everybody's input.  And after that

4    issued a decision.  And that's happened.  We're not going to

5    unring that bell.  So what's done is done.

6           So it is not clear to me, and indeed, I'm inclined to

7    think it is inappropriate for me to provide for a liquidating

8    trustee in a dismissal order.  There's no authority provided

9    for me for that proposition, and the cases I've seen don't go

10   there.  And I've been sitting on the bench for fourteen years.

11   I haven't run into such a request.

12          And so putting aside what people may agree to, and

13   there was some notion in, I believe it was, Mr. Fischoff's

14   letter of July 15th about what the debtor would be willing to

15   do in terms of placing a lien.  That's one thing where it

16   affects particular parties that maybe we can have a

17   conversation about.  But again, I think liquidating the two

18   apartments is that's what a Chapter 7 trustee would do or a

19   Chapter 11 trustee would do.  I don't really know of any

20   authority that I have to do that.

21          And again, I only thought it was fair, before you all

22   argued, for me to let you know where my thinking is.  I'm not

23   trying to surprise anybody.  And I'm happy to give you all a

24   chance to talk about your views.  So with that I thought, let

25   me hear from you all.  So I thought, whether the committee or

**RUDOLPH W. GIULIANI**

16

1   the Freeman plaintiffs -- maybe we'll start with the Freeman

2   plaintiff, since I think I had requested in the order that they

3   provide an order.  So it seems only fair to have them start

4   off.

5        So let me hear from you, Ms. Strickland.

6        MS. STRICKLAND:  Thank, Your Honor.  For the record,

7   Rachel Strickland, Willkie Farr & Gallagher.

8        So we agree, the last issue is how Mr. Giuliani is

9   going to pay the administrative freight for the case that he

10  commenced.  And the discussion that Your Honor had with

11  debtor's counsel on Wednesday, it was clear that there is

12  plenty of law that the administrative claims must indeed be

13  paid.  We agree that Your Honor has jurisdiction, and you can

14  condition the dismissal on whatever you want.  The

15  interesting --

16       THE COURT:  Well, I would just quibble with whatever I

17  want because I don't think, in life, I get whatever I want, and

18  this job is no exception.  But let me throw this out to sort of

19  see if it fits in with your comments.

20       We rarely see this kind of an issue because, frankly,

21  bankruptcy professionals are very good at trying to figure out

22  how the numbers can add up, should add up where there's

23  questions about administrative insolvency.  And the normal path

24  is that people say, here's the amount of money that is

25  available for payment.  Maybe a secured creditor has all the

17

1   value in whatever asset's being sold.  And then people will

2   say, well, here's the amount of money that's available, and

3   here are the haircuts the professionals take.  I'm not familiar

4   with the current state of play of what's available or not from

5   Mr. Giuliani.  But I just throw that out there as the thing

6   that we most commonly see here in the court.

7           MS. STRICKLAND:  So that's where I was going to start,

8   Your Honor.  The very first difference between the form of

9   order that we have proposed and supported by the committee and

10  what Mr. Giuliani proposed is you will recall that when

11  estimates were thrown around on last Wednesday, debtor's

12  counsel said he doesn't have that much money.  So we weren't

13  quibbling with the concept of getting blood from a stone.

14  Instead, we proposed that we look at his bank accounts, the

15  ones that are property of the estate as of July 11th, and say

16  whatever dollars are in there, in the first instance, those

17  dollars should be applied to the administrative expenses.

18          Giuliani, not surprisingly, came back in an order that

19  said, no, no, no, no, no.  I'd much rather do an IOU on the New

20  York City apartment, offering no liquid assets.  So we know

21  that there are liquid assets in the estate.  We are not trying

22  to negotiate with a party that's not interested in negotiating

23  in good faith back with us.  So we just provided, whatever it

24  is in cash, that should come right off the top and be used to

25  pay the admin.  So that's, I think, our first point of

1  departure and is very normal and customary in cases where there

2  is a dismissal.

3        As Your Honor notes, I mean, in the dismissals that I

4  see, you don't ever get to this issue because there is

5  sufficient cash to pay the admin.  And that's a feature of the

6  structured dismissals that I'm familiar with.  What I would --

7        THE COURT:  So let me ask what was --

8        MS. STRICKLAND:  -- also point out to Your Honor --

9        THE COURT:  Let me just ask what your understanding

10  was of the cash that was available.  Again, I'm not in the room

11  where these conversations happen, so I appreciate your

12  understanding on that.

13        MS. STRICKLAND:  I don't have an understanding because

14  this is not a debtor that's remotely forthcoming.  So what we

15  were proposing was statements don't lie.  Pull it up, and show

16  us what the bank balance was as of July 11th on the checking

17  and savings, which are property of the estate.  We're not

18  trying to overstep our bounds and go into the other exempt

19  accounts, even though I think they are dubious.  But again,

20  we're trying to stay within the four walls of what is clearly

21  estate property here.

22        And so whatever it is, it is.  The bank account will

23  show what the balance was.  If he took a bunch of money out

24  following the hearing, it would fly in the face of my final

25  remark in the hearing on the 10th and what Your Honor and

1   debtor's counsel said, oh, no, no, no, we're not going to move

2   anything.  Of course we understand the rules that apply.  So if

3   that's the case, show us the bank statements.  What's ever in

4   the debtor's accounts as of that date, that should be used to

5   pay the admin.  And then we only have the remainder.

6          So I think the dispute starts with should the debtor

7   have to use fair game assets of the estate, the cash, to pay

8   it.  And then to the extent that we have a remainder, how is

9   the IOU dealt with.  And one of the things that I would point

10  Your Honor to is the Sinker case, which is 113 B.R. 34, 1990.

11  It was a very similar case to the one that we are looking at.

12  It was a dismissal.  There were administrative expenses that

13  were outstanding.  And what the court ordered in that case was

14  the appointment of a trustee to liquidate just a sufficient

15  amount of the nonexempt unencumbered property to pay

16  administrative expenses.

17         And so we were asking for the exact same relief here.

18  Akin Gump and Mr. Dublin agreed to do it pro bono, which is a

19  huge benefit.  And we aren't looking to, outside of bankruptcy,

20  conduct a liquidation of Mr. Giuliani's assets.  We would note

21  that he himself has offered up the New York apartment.  The New

22  York apartment has been on and off the market for a year.  So

23  what we were proposing as a variation of that is whatever sells

24  first at reasonable value and as prudent, this limited

25  administrative trustee, which Your Honor does have the

**RUDOLPH W. GIULIANI**

20

```
 1  authority to appoint could, in fact, liquidate that.  The
 2  moment the admin is paid, there is no basis for that
 3  appointment to continue.  It would then conclude, and creditors
 4  would do whatever creditors are going to do.
 5          So that was our suggestion.  But at the very least, it
 6  is confusing to us why the cash, which is property of the
 7  estate, is not being ordered to be used to pay administrative
 8  expense claims, which were incurred by a voluntary petition
 9  filed by the mayor himself.  So I would break it into those two
10  pieces.  Look, ultimately what the Freeman claimants want is
11  dismissal, full stop.  So we don't --
12          THE COURT:  Well, and again, we're not unringing the
13  bell.
14          MS. STRICKLAND:  Yeah.
15          THE COURT:  Just not just to be very clear, it's not a
16  negotiation.  That's already been ordered.  But there are, as
17  you say, consequences and appropriate ways to handle things in
18  light of the dismissal.
19          MS. STRICKLAND:  Sure.  So what I would say is we've
20  got the very lowest hanging fruit, which is cash in the bank
21  accounts, which you heard a representation from debtor's
22  counsel should not be moved, which should be used to pay the
23  admin.  The amount is what it is.  And those records, based on
24  my experience with banking, exist.  So I don't know what the
25  number is --
```

**RUDOLPH W. GIULIANI**

21

1          THE COURT:  Okay.

2          MS. STRICKLAND:  -- but it is a notable quantum.

3          THE COURT:  All right.  Fair enough.  That's all very

4   helpful.  Anything else, Ms. Strickland, before I continue to

5   circle the virtual room?

6          MS. STRICKLAND:  Nope, Your Honor.  Thanks.

7          THE COURT:  All right.  Thank you.

8          All right.  So Mr. Dublin, let me hear -- I should

9   assume it's you.  Let me hear from the committee.  Let me say

10  it that way.

11         MR. DUBLIN:  Thank you, Your Honor.  Phil Dublin, Akin

12  Gump Strauss Hauer & Feld, for the committee.  Your Honor, I

13  would echo every one of Ms. Strickland's statements.  We

14  believe it is incumbent upon the debtor to satisfy the

15  administrative expenses that have incurred in connection with

16  the Chapter 11 case.  Those really were down to the GDR fees,

17  once allowed, as well as the U.S. Trustee fees.

18         And while we are just like Ms. Strickland, uncertain

19  of the amount of cash that is currently in the estate for the

20  reasons that Ms. Strickland referenced, we do know, all of us

21  know, that there are sufficient nonexempt unencumbered property

22  that is available to satisfy all the administrative expenses.

23  And we need to ensure, or we should ensure, that those

24  administrative expenses are paid and that we're not looking at

25  an ultimate race to the courthouse in various states -- and I

1    would appreciate if Ms. Schwartz wouldn't roll her eyes -- with

2    respect to the satisfaction of those obligations.

3         I think it's noteworthy, at a minimum, in connection

4    with the U.S. Trustee's proposed form of order, that it seeks

5    to satisfy the U.S. Trustee fees within ten days of entry of

6    the order but leaves Global Data Risk unaccounted for with

7    respect to ensuring their payments.

8         So we're about fairness here, Your Honor, in ensuring

9    that the professionals that provided services to the estate,

10   which were recognized in pleadings filed by the debtor when

11   they were looking to progress -- when the debtor was looking to

12   progress the Chapter 11 cases as providing benefits to the

13   estate, and reasons for, among other things, at the time, the

14   requested extension of exclusivity be satisfied.  And we know,

15   again, that there are sufficient assets to satisfy those

16   obligations.

17        THE COURT:  All right.  And what I thought I would do

18   at this point is hear from the U.S. Trustee's office and then

19   let the debtor respond to everything on the table.

20        So let me hear from the UST.

21        MS. SCHWARTZ:  Thank you, Your Honor.  Andrea Schwartz

22   for the United States Trustee.  In preparing my comments for

23   today, they've been greatly shortened by Your Honor's giving us

24   a level set of where he is, including that the bell has rung.

25        At the time we were before the Court for the argument

1   on these motions, the Court had three options before it,

2   whether to convert the case to a Chapter 7 and have a

3   liquidating trustee dismiss the case, or appoint a Chapter 11

4   trustee.  Right before the hearing, we learned that the debtor

5   agreed to dismiss the case.  Your Honor had full argument on

6   both of those issues.  And our position was that it was cause

7   to dismiss or convert, but the Court needed to decide what was

8   in the best interest of creditors, which on July 12th, Your

9   Honor issued the memorandum of decision, deciding that it was

10  in the best interest of creditors was to dismiss the case.

11        When Your Honor gave his precatory comments today

12  saying that you were struck by the fact that there was a

13  liquidating trustee and in the most recent version of the

14  proposed order, it's now called the liquidating agent, you can

15  imagine we were as well.  There is no --

16        THE COURT:  But let me ask you, how do we get the --

17  the point is that if you had a normal process here, you would

18  say you're going to pay the administrative expenses,

19  especially, and you want dismissal.  Right.  That's sort of

20  part and parcel.  And if everybody said, well, there aren't

21  enough assets, then people talk about what to do, but there

22  clearly are significant unencumbered assets.  So happily, this

23  is a problem that we don't normally have in this courthouse.

24  But we have --

25        MS. SCHWARTZ:  Your Honor.

1          THE COURT:  -- in this case.  So what's the U.S.

2     trustee's office view about how to deal with that problem?

3          MS. SCHWARTZ:  Right, Your Honor.  And first of all,

4     certainly, we agree that the Court retains jurisdiction to hear

5     the fee application and decide and on notice, and everybody can

6     comment on that and so forth.  What we would think would be

7     appropriate in this case, and it seems that the debtor is

8     willing to do certain things, is that in the precatory language

9     of an order, it can say the debtor agrees to, I don't know,

10    give a lien on -- they've already offered to give a lien on the

11    proceeds of the assets of the sale.  Not that the Court orders

12    it because the case is dismissed, but the debtor can certainly

13    agree to that.  And that could certainly be part of an order

14    that the judge -- that Your Honor enters.  I just don't

15    think --

16         THE COURT:  And so is the notion -- is the notion that

17    I am granting the dismissal on this basis in light of that

18    agreement?  Because I think the concern is that that agreement

19    would otherwise not be enforceable.  Right.  So because --

20         MS. SCHWARTZ:  Well, there is another play --

21         THE COURT:  -- the idea is to say -- otherwise, the

22    Court would say, we've got to find a mechanism to deal with the

23    payment of these administrative expenses.  And so that

24    agreement has to be enforceable in some way, shape, or form, or

25    it's --

1          MS. SCHWARTZ:  That's right.

2          THE COURT:  Right, or people are left holding the bag.

3          MS. SCHWARTZ:  So another way, Your Honor --

4    certainly, we've thought about this because we agree that when

5    you have a bankruptcy case, admin is supposed to be paid as

6    part of the bankruptcy case.  And in this case, it's even a

7    lesser expense to the debtor because you've got committee

8    counsel that agreed to do the case pro bono.

9          THE COURT:  Yeah.  No, I think --

10         MS. SCHWARTZ:  So the debtor can certainly --

11         THE COURT:  Wait.  Let me stop because that's an

12   important point.  I know there was a notion or there was a

13   reaction in court to the size of estimated fees, fee

14   application, but so was the estimated fees, and there was a

15   reaction to that that seemed to indicate the debtor thought it

16   was a large amount.  It's certainly not a small amount.  On the

17   other hand, the committee attorneys have been doing this pro

18   bono, and there no doubt has been a lot of work for the

19   financial advisers to the committee in trying to deal with

20   situation where, as the decision lays forth in detail, there

21   has not been the appropriate level of transparency.

22         So I know that bill is not going to be small, but it

23   could be far higher in this case if it weren't for the fact

24   that various people are serving pro bono.  So that's an

25   important point to get out there because people may misperceive

1   what's going on here.

2         MS. SCHWARTZ:  Oh, agree, Your Honor.

3         THE COURT:  But Ms. Schwartz, go ahead with the rest

4   of your point.

5         MS. SCHWARTZ:  I have another -- I have another

6   suggestion, Your Honor.  And that is the parties can enter into

7   a stipulation and then the Court can so order that.  Then they

8   can put all the provisions that they want between themselves,

9   whether it's the debtor agrees to give statements of the last

10  account, et cetera, et cetera.  They can agree between

11  themselves.  The only problem, Judge, is that on the 12th, the

12  Freeman plaintiffs argued to you, dismiss the case and --

13        THE COURT:  No, no.  And they're not backing away from

14  that.

15        MS. SCHWARTZ:  Oh, and what I want to add to that -- I

16  just want to add --

17        THE COURT:  Again, as I understand it, they're looking

18  for, consistent with the committee, an enforceable way to deal

19  with this, the fees that should be paid.  And I get that.

20        MS. SCHWARTZ:  I understand that, Judge.  But I just

21  want to also say, the order included all these other forms of

22  relief that weren't argued before the Court.  So we're kind of,

23  like the Court, trying to see, while we understand the whole

24  concern, at least the concern is that a state-retained

25  professional gets paid for the services that are allowed by the

1   Court.  It's not to punish the debtor.  It's not to exercise

2   other controls over the debtor once a case is dismissed.  It's

3   just the problem or the situation of you've got a retained

4   professional and how do you get that retained professional fees

5   determined and paid for.

6         THE COURT:  Yeah.  I get it.  I don't think there's

7   any difference of opinion on that.  I think Ms. Strickland's

8   comments were pretty on the mark that way.  So I think it's a

9   question about the appropriate way to have provisions

10  consistent with my appropriate authority, but have provisions

11  that meaningfully will result in the payment.  And that can be

12  enforced if they're not handled the way that's being

13  represented.  So that's trust but verify, a common situation

14  here in the court.

15        MS. SCHWARTZ:  Well, I think there's a way to resolve

16  all the parties' concerns.  Obviously, Your Honor mentioned

17  that he's been on the bench for fourteen years.  You're well

18  aware of the U.S. Trustee's position on structured dismissals.

19  We don't believe it was requested, and we don't believe it's

20  warranted.

21        However, if the debtor wants to agree with the Freeman

22  plaintiffs and the committee enter into a stipulation, I think

23  they're willing to do that, Your Honor.  I know you'll hear

24  from the debtor, but they're willing to do that.  And then they

25  get held to it by having an order that -- having that

**RUDOLPH W. GIULIANI**

28

1   stipulation ordered by the Court.  Then they have remedies if

2   the debtor does not comply with their agreement.  It doesn't

3   sound unreasonable to me, Your Honor, that the Freeman

4   plaintiffs and the committee would like to know what are the

5   assets that are available and --

6           THE COURT:  Look, no, I think I got it.

7           MS. SCHWARTZ:  Okay.

8           THE COURT:  All right.  Anything else, Ms. Schwartz?

9           MS. STRICKLAND:  Your Honor, may I be heard for one

10  more minute?

11          THE COURT:  Sure.  Well, let me ask -- let me make

12  sure.

13          Ms. Schwartz, are you done with your comments?

14          MS. SCHWARTZ:  I think so, Your Honor.  I think you

15  said you got it, and I think I got it out there.

16          THE COURT:  All right.  Yes, Ms. Strickland.

17          MS. STRICKLAND:  Thank you, Your Honor.  I think the

18  part where we depart from Ms. Schwartz is the case is not

19  dismissed.  We are not living in the aftermath of a Chapter 11.

20  Sitting here today, dismissal --

21          THE COURT:  Yeah, but again, you had me at hello about

22  what you're trying to do and your initial comments.  The

23  problem is that the order reads like a Chapter 7 trustee.

24  We're talking about a liquidating trustee over not only the New

25  York apartment, but the Florida apartment.  Those are the two

1   assets in the case.  I mean, it reads like a Chapter 7 case.

2           Again, I understand what you're trying to accomplish.

3   But as I say in a lot of cases, I don't have a magic equity

4   wand.  I have to be able handle these things in a way

5   consistent with my jurisdiction and hear the facts on the

6   ground are a dismissal.  And so that's what I'm trying to

7   navigate.  I understand everybody's operating in -- I

8   understand you're operating in good faith, the U.S. Trustee's

9   operating in good faith, and try to figure out what that looks

10  like, but that is the challenge.

11          MS. STRICKLAND:   Understood.  Your Honor, the only

12  point I wanted to make and the fact that we are sitting in

13  Chapter 11 at this moment until the entry of the order is that

14  there is no doubt that Your Honor has jurisdiction over the

15  assets of the estate.  The assets of the estate include cash

16  and two apartments.  So I guess I would quibble with the notion

17  that if this is not done with the consent of the debtor for a

18  stipulation that Your Honor does not have the authority to do

19  this, I believe you very much do and in fact cited a case where

20  this exact thing was done as a basis for -- as a mechanism for

21  dealing with the admin.

22          THE COURT:  I haven't had a chance to look at that

23  case.  I don't think anybody cited me any cases in the

24  submissions that I got.  But I understand and appreciate your

25  recitation --

1           MS. STRICKLAND:  Certainly.

2           THE COURT:  -- what's in there.

3           MS. STRICKLAND:  And the only reason we didn't argue

4   it is because as Your Honor knows, this issue came up at the

5   very end of the hearing, and we were directed to work it out

6   offline, which we all endeavored to do.

7           THE COURT:  Yeah.

8           MS. STRICKLAND:  And the purpose of today was in fact

9   to argue this point.

10          THE COURT:  Yeah.

11          MS. STRICKLAND:  So we didn't spring it on anyone.  We

12  followed the procedure.  Thank you, Your Honor.

13          THE COURT:  I understand it.  I mean, I understand.

14  Life doesn't cooperate sometimes with our best laid plans.  So

15  it's fine.  That's my day job is to deal with that.  So I don't

16  begrudge anybody being here to get this resolved.

17          So I'm not sure if it's Mr. Berger or Mr. Fischhoff.

18  Let me hear from you.

19          MR. FISCHOFF:  Yes, Judge.  Gary Fischhoff on behalf

20  of the debtor.  So there was an effort made by the debtor and

21  the Freeman parties as well as the creditors committee to

22  resolve this.  And although was caught off guard by the size of

23  the number announced in court on the 12th or the 10th, the

24  debtor recognizes that that's a number that has to be paid once

25  the fee application is filed and it's established the basis for

1  that.  So that's not the issue today.

2        The issue is the committee and the Freeman plaintiffs

3  want to denude the debtor of every liquid asset or cash on hand

4  that the debtor needs to operate going forward.  The debtor

5  had --

6        THE COURT:  So let me frame the issue this way.  The

7  to the extent that you and your client feel restricted and you

8  feel like somebody is trying to do something inappropriate, you

9  hold the keys to solving this problem.  Right.  So I don't

10  know, and it sounds like people don't know, what amount is in

11  the accounts and what is liquid.  That's something everybody,

12  frankly, should know at this point in this case.

13        And if you're trying to pay the administrative

14  expenses, if there is a way to do that and you present it to

15  me, then that's what signed in the order.  What I understand

16  this to be is the default mechanism because people can't get to

17  that point.  And so it's --

18        MR. FISCHOFF:  Well --

19        THE COURT:  -- further than the U.S. Trustee wants to

20  go because I think if I appoint a liquidating trustee, it's

21  hard to imagine that that person isn't sort of under the

22  supervision of that order, and there's the rub.  But it's a

23  solvable problem.  And so the question is what are the terms

24  under which you want to solve it.

25        MR. FISCHOFF:  Well, I thought the debtor's

1   willingness to have Global or the creditors committee, I'm not

2   sure, have a lien on the proceeds from the sale of the New York

3   apartment, which is actively being marketed.  I don't know what

4   took place a year ago, but Sotheby's was recently approved in

5   the bankruptcy.  And they want to continue with the listing.  I

6   understand there's been a little action.  No result yet.  Maybe

7   there's maybe the debtor and Sotheby's have to consult about a

8   little bit of a price reduction in order to get --

9          THE COURT:  But why should people have to --

10         MR. FISCHOFF:  -- more (indiscernible) --

11         THE COURT:  But wait a minute.  Why should people have

12   to wait if they are, in fact, liquid assets in an account

13   somewhere?  So --

14         MR. FISCHOFF:  Well --

15         THE COURT:  -- if the thought is Judge, we don't want

16   people to go mucking around in that, you can do what folks in

17   bankruptcy court do all the time, which is essentially make an

18   offer.  We'll pay this much in cash, and we'll do this like --

19   that's the conversation that I'd hoped was going to occur.

20         MR. FISCHOFF:  There were negotiations.  There were

21   negotiations.

22         THE COURT:  So yeah, but I mean, if you don't reach a

23   conclusion, then I don't know how -- I don't have to muck

24   around in the details because the idea that the liquid assets

25   that are available to pay the administrative expenses, which

1   could be much higher, are why there wouldn't be paid for to pay

2   the whatever the approved fees would be.  I mean, that's the

3   regular way of doing this.  So I'm trying to really stick to

4   the regular way of wrapping up a Chapter 11 case that's being

5   dismissed.  So that's my goal.  So if the debtor has certain

6   issues and certain ways it wants things to unfold, it's a very

7   much help-me-to-help-you situation, where, again, I don't know

8   that there's any justification for not paying liquid assets

9   that are available.

10          And so maybe you say, well, the debtor needs a certain

11  amount to live or whatever.  That's fine.  But right now, the

12  only thing that I understand that's been presented to me is the

13  offer of a lien on the property, which someday will be sold.  I

14  don't know when that's going to be.  I have this case that

15  people want to dismiss today.  And so I don't know that a wait

16  forever to pay an administrative expense in this case that

17  everybody wants to dismiss today is sort of consistent with the

18  regular practice.

19          MR. FISCHOFF:  Well, Judge, so there was discussions

20  about a payment as well as the balance to be paid from the

21  proceeds.  Unfortunately, I mean, I can't --

22          THE COURT:  No, I know you didn't reach a conclusion.

23  I don't know what --

24          MR. FISCHOFF:  We didn't reach the conclusion, but --

25          THE COURT:  I don't want to know what the negotiations

**RUDOLPH W. GIULIANI**

34

1   are but --

2          MR. FISCHOFF:  But the (indiscernible) --

3          THE COURT:  But wait.  But I would urge you and your

4   client to think very clearly about what the alternative is,

5   which is we're going to spend more time and money trying to

6   figure this out.  And so the only thing I have in front of me

7   is Judge, we're going to deal with that in a lien someday when

8   the apartment's sold.  In any case, that would strike me as,

9   well, that seems odd, and why are we doing that.  Aren't there

10  other alternatives?  That just does -- now, again, the devil's

11  in the details, but that seems to me something's not answering

12  the mail.

13         So it's twenty after 12.  I'm happy to give you all a

14  chance to have a conversation in light of what we talked about

15  today but that focuses on what the liquid assets are that can

16  be paid right now and then whatever else people can agree to.

17  It is in everyone's best interest to get to yes, but it'll get

18  paid eventually someday, whenever that apartment is sold, which

19  I have no control over.  And so that seems inappropriate

20  because the case is going to be dismissed now.  So I have to

21  deal with the administrative expenses now.  And so I have to do

22  that to the best of my ability.

23         So I would suggest that people think about what the

24  alternatives are that are far less preferable.  And because

25  then we're going to have to figure out what the assets are to

1   pay the administrative expenses.  So I would strongly suggest

2   to do what parties do well here, what attorneys are

3   particularly good at in bankruptcy, is to have a discussion and

4   try to reach a sensible solution.

5         So I don't think I can give you the Zoom because I

6   think the Zoom may have other people on it.  You can all set up

7   your own Zoom and have a conversation.  But I can keep this

8   open and come back in, say, fifteen minutes and see where you

9   are.  But again, I'm trying to --

10         MR. FISCHOFF:  How about an hour, Judge?

11         THE COURT:  What's that?

12         MR. FISCHOFF:  How about an hour?  I need to reach my

13   client.  I don't know if he's available immediately.  Can we

14   make it an hour?

15         THE COURT:  Well, I can do an hour, if that works for

16   other folks.

17         MS. STRICKLAND:  Your Honor, it works for us as well.

18   I guess the question I would ask, since we did have a lot of

19   conversations about quantum, is can debtor's counsel represent

20   how much cash is in the -- are in the debtor accounts?

21         THE COURT:  Well, I think --

22         MR. FISCHOFF:  I can't (indiscernible).

23         THE COURT:  -- that -- I think that's one way to go.

24   The other is to make it an offer that's good enough for people

25   to say, I can live with that.  And whatever else I might ask

**RUDOLPH W. GIULIANI**

36

1  you to say, again, I'm not going to -- I don't want to get in

2  anybody's kitchen in terms of trying to figure out what the

3  negotiations are, but there's lots of ways to skin a cat.

4       But again, the alternative is to make this my problem,

5  to figure this out.  And so the U.S. Trustee's office has

6  concern about a liquidating trustee.  I do as well.  I haven't

7  read that case.  I'm happy to read it in the break.  But if you

8  don't go that route, you go the route of, well, the judge is

9  going to figure it out now.

10       And so I don't know.  The way to do that is to say

11  what are the assets.  So what are you -- how are you going to

12  pay this.  And so we're going to spend a lot of time and money

13  on that, money that can be better spent, frankly, paying the

14  administrative expenses to get the case dismissed, which is the

15  result that your client, the debtor, wants.  That's the result

16  other parties want as well, but it is what the debtor wants.

17       So I'm happy to give an hour.  We can round it to

18  1:30, and we can hop back on the Zoom.  But again, just be

19  practical.  Think about what the alternatives are.  The

20  alternatives are a lot of time -- the whole point of dismissal,

21  as I understand it and is sort of clearly, I think, reflected

22  in the decision is, is what I understood from you all is we

23  need to move on, Judge.

24       And so if we can't resolve this issue, we can't move

25  on.  And so then the dismissal is a Pyrrhic victory.  And so I

1    strongly urge people to think about what the alternatives are,

2    and they're not good.

3           So I'll give you an hour, and I will log back on at

4    1:30.  And I appreciate your efforts.  And in the meantime, I

5    shall read the case that's been cited.

6           So anything else before we take a break?

7           MR. FISCHOFF:  Just one question.  It's going to be

8    the same password to log back in at 1:30?

9           THE COURT:  Same Zoom session.

10          MR. FISCHOFF:  Okay.

11          THE COURT:  Okay.  Fair question.

12          Anybody else?

13          All right.  Thank you all very much.  Sorry to further

14   impose on your time this afternoon, but hopefully this will be

15   productive.  Thank you very much.  See you soon.

16          MS. STRICKLAND:  Thank you, Your Honor.

17      (Recess from 12:18 p.m., until 1:38 p.m.)

18          THE COURT:  (Audio begins midsentence) -- Lane in the

19   United States Bankruptcy Court for the Southern District of New

20   York and to continue this morning's hearing in the Rudolph

21   Giuliani case.  And I think I see all the same individuals on

22   the Zoom line as were here this morning.  So I think we can

23   proceed by getting sort of an update.  I'm not sure who the

24   right person to ask for that update is.

25          MS. STRICKLAND:  I'm happy to, Your Honor.

1          THE COURT:  Please.

2          MS. STRICKLAND:  So Your Honor, we haven't made really

3     any progress because the moment we hung up, we said, can you

4     tell us how much cash we're dealing with.

5          The debtor, I think, three minutes ago sent us one

6     statement for a bank account, which showed that since the

7     discussion we had with Your Honor, an account went from

8     approximately 60,000 dollars in cash to about half that much.

9     The New York expenses for the condo of 14,000 dollars went out

10    on -- that check was cashed on July 12th.  A 25,000 dollar

11    Florida fees paid also since that time.  There are expenses

12    from Milwaukee where the RNC convention is.  That the wire

13    transfer of the 25,000 to the Southlake Condo Association was

14    made by wire on July 15th.  And then there are a variety of

15    other marketing firm expenses, Amazon, Apple, you name it, all

16    relatively small charges.  But about half of the debtor's cash

17    in this one account alone has been dissipated since we were

18    last before you on Wednesday the 10th.

19          And on top of that, we requested all of the other bank

20    accounts.  And while debtor's counsel characterized the amounts

21    as "small", through no fault of debtor's counsel, they don't

22    have the information either.

23          So I think that is why, at least as far as our

24    proposal on behalf of the Freeman plaintiffs, we suggest that

25    Your Honor order that what was in the accounts as of July 11th,

1    that amount be required to be paid to GDR.  And then Your

2    Honor, on behalf of my clients, we would just accept dismissal

3    effective immediately.  And we'll go about our business as

4    other applicable law permits.  But the debtor, I think, is up

5    to up to Giuliani shenanigans yet again.

6              THE COURT:  All right.  Mr. Dublin.

7              MR. DUBLIN:  Well, Your Honor just heard from Ms.

8    Strickland is actually worse than I think than the debtor had

9    originally proposed, which was giving a lien on the shares of

10   the New York apartment.  We don't need to rehash all the

11   arguments that were made.  Ms. Strickland has obviously changed

12   her position.  Obviously, it suits the pecuniary interests of

13   her client, which we've already talked about the respect and

14   admiration we have for her clients.

15             But this is an issue of satisfying the administrative

16   expenses and the benefits that were obtained by the estate for

17   the services provided by the committee's professionals, which

18   we believe appropriate provisions in a dismissal order need to

19   be included to ensure that those amounts are satisfied.  And

20   unfortunately, we've had no discussions with debtor's counsel

21   since we hung up with Your Honor following this morning's

22   session, and we find ourselves in the same spot we were in.

23             THE COURT:  All right.  Ms. Schwartz, anything from

24   the U.S. Trustee's office before I hear from the debtor?

25             MS. SCHWARTZ:  Nobody contacted us, Judge.  But we're

1  hearing it live here now, so these are the same --

2          THE COURT:  All right.

3          MS. SCHWARTZ:  It's the same -- we're at the same

4  place, Your Honor, as we were --

5          THE COURT:  Got it.

6          MS. SCHWARTZ:  -- when Your Honor gave the parties a

7  chance to try to find a resolution.

8          THE COURT:  All right.  Let me hear from debtor's

9  counsel.

10         MR. BERGER:  Yeah, Your Honor.  Heath Berger.  Your

11 Honor, we got off.  We got in touch with the debtor as quick as

12 we could.  Not always sometimes the easiest thing to get in

13 touch with the debtor.  We did.  We were able to get the one

14 bank statement, which is his main checking account, which we

15 did.  As soon as we got it, I reached out to Ms. Strickland.

16 We sent it out to her.

17         The only issue I have with Ms. Strickland's proposal

18 is some of the money out of that account since the filing was

19 used to maintain the Florida condo, which is obviously an asset

20 I'm sure Ms. Strickland would like to be maintained going on

21 down the road but --

22         THE COURT:  Well, that's nice, but it won't --

23         MR. FISCHOFF:  Yeah.

24         THE COURT:  -- be an asset maintained in the

25 bankruptcy.

**RUDOLPH W. GIULIANI**

1          MR. DUBLIN:  I understand.

2          THE COURT:  So here's the problem.  Everyone knew this

3   issue was going to come up today.  Right.  So this notion that

4   nobody has a fallback position or has thought about what the

5   next steps are is frankly unbelievable and uniquely unhelpful.

6          And so I understand, Ms. Strickland, in the interest

7   of her client, is interested, as she should be, in getting a

8   dismissal right away, regardless of other considerations

9   because that's frankly the right thing to do for our clients.

10  I understand also Mr. Dublin's not there, particularly because

11  these are professionals that were retained by the committee.

12  And so I understand that.

13         And frankly, I'm a patient man, but there are several

14  ways to do this.  And I've been trying to really be reasonable

15  and trying to encourage and appropriately prompt an efficient

16  way to do this.  But there are ways to do this include

17  requiring your client to come and sit in that witness box over

18  there and have a discussion about the available liquid assets

19  that can be used to pay these professionals.

20         So does your client want to do that?

21         MR. FISCHOFF:  Your Honor, no.  Your Honor, we kind of

22  indicated that we would turn over.  And if Your Honor ends up

23  with whatever the Court awards, we're still okay with them

24  putting the lien --

25         THE COURT:  But I don't know what to order to turn

1 over because nobody's told me what there is.

2        MR. FISCHOFF:  We will provide to Ms. Strickland --

3        THE COURT:  So I mean, listen, it's the same song over

4 and over again that was laid out in the decision.  But again,

5 even a dismissal, which your client wants, you can't get out of

6 your own way.  So this can go -- I have a jurisdictional basis

7 for requiring transparency into the assets as to getting this

8 dismissal appropriately effectuated.

9        So if your client persists in this course of action,

10 which is essentially to stick his head in the sand, there are a

11 lot of bad things that can happen, or a lot -- let me rephrase

12 it.  There are a lot of things that your client doesn't want to

13 happen will happen.  But again, your client holds the key.  So

14 none of this is a surprise.  So I don't want to hear he's hard

15 to get in touch with.  I don't want to hear any of this is a

16 surprise.  People have been trying to get all this kind of

17 information for many months.

18        So I'm going to ponder what I'm going to do, and you

19 should ponder what you're going to do.  And so you're going to

20 give me an update, tomorrow, twenty-four hours.  Actually,

21 we'll make it at high noon.  That's appropriately theatrical.

22 And you're going to give me an update.  And then I'm going to

23 decide what order I want to enter and what that looks like.

24 And I still have jurisdiction.  I can dismiss the case.  I can

25 retain jurisdiction as it pertains to finding out what the

1  assets are that are available to pay the administrative

2  expenses in the case.  And I can even decide that there will be

3  a dismissal, but that's all conditioned upon this and that we

4  need to figure that out.

5      There's a lot of ways for this to go.  And a lot of

6  them are the exact things that your client doesn't want to have

7  to do, and that's why your client wants a dismissal.  But this

8  isn't complicated nor is it unexpected nor is it unusual.  So

9  I'm really at a loss.  So I strongly, strongly urge you and

10  your client to sit down and figure out what you really want the

11  end game to look like here so --

12      MR. FISCHOFF:  Understood, Your Honor.

13      THE COURT:  All right.  So I have lots of different

14  versions of different orders.  I think I have everybody's view.

15  And we'll see where we end up.

16      So I would like -- first of all, I'm going to direct

17  that by no later than 11 o'clock tomorrow that there is an

18  update provided to the other interested parties by debtor's

19  counsel, and that includes the Freeman plaintiffs, the

20  committee, and the U.S. Trustee's office.  You can do it by

21  email.  You can do it -- I mean, in a perfect world, people

22  would be talking.  We obviously don't live in a perfect world.

23      And then by noon, I want an update.  It can be filed

24  on the docket.  And then I'll ponder what the appropriate steps

25  forward are.

44

1        So with that, is there anything further from the

2   Freeman plaintiffs?

3        MS. STRICKLAND:  Your Honor, I just want a

4   clarification in terms of are we having a -- is this being

5   adjourned, and we're having a hearing at noon tomorrow.  We are

6   available if that is what Your Honor is --

7        THE COURT:  No, no.  I'm not requiring anybody to be

8   available for hearing tomorrow.  I, frankly, don't know what

9   the appropriate next steps are.  Like you all are doing, I'm

10  considering my options.  And so chambers will reach out if

11  there's a need for an additional hearing.

12        So I suppose there potentially could be, depending on

13  what update I'm given tomorrow, but I'm not requiring anybody

14  to be available tomorrow afternoon.  I'm just requiring the

15  update.  So I appreciate the question.  It's understandable.

16  But no, don't change your plans for me.  And I will, certainly,

17  and chambers, we'll figure out -- we'll figure out next steps

18  and then figure out if that includes getting together but --

19        MS. STRICKLAND:  Thank you.

20        THE COURT:  Mr. Dublin, anything from the committee?

21        MR. DUBLIN:  Nothing further, Your Honor.  Thank you

22  for your time today.

23        THE COURT:  All right.  And from the U.S. Trustee's

24  office?

25        MS. SCHWARTZ:  No, thank you, Your Honor.

45

1          THE COURT:  All right.  And from the debtor?

2          MR. FISCHOFF:  No, Your Honor.  Thank you.

3          THE COURT:  All right.  Thank you very much.  Have a

4      good afternoon.

5      (Whereupon these proceedings were concluded at 1:49 PM)

46

I N D E X

| RULINGS: | PAGE | LINE |
|---|---|---|
| Global Data Risk LLC's motion to | 13 | 1 |
| redact and file under seal certain | | |
| confidential information is granted | | |

47

1

2                   C E R T I F I C A T I O N

3

4    I, River Wolfe, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6

7

8

9    _____

10   River Wolfe (CDLT-265)

11   TTA-Certified Digital Legal Transcriber

12

13   eScribers

14   7227 North 16th Street, Suite #207

15   Phoenix, AZ 85020

16

17   Date:  July 19, 2024

18

19

20

21

22

23

24

25

23-12055-shl    Doc 304    Filed 07/19/24    Entered 07/19/24 16:49:23    Main Document
In the Matter of RUDOLPH W. GIULIANI            Pg 48 of 57

July 17, 2024

## A

**AARON (1)**
4:11
**ABI (1)**
8:17
**ability (1)**
34:22
**able (2)**
29:4;40:13
**abundance (1)**
12:18
**accept (1)**
39:2
**accomplish (1)**
29:2
**account (8)**
18:22;26:10;32:12;
38:6,7,17;40:14,18
**accounts (8)**
17:14;18:19;19:4;
20:21;31:11;35:20;
38:20,25
**action (2)**
32:6;42:9
**actively (1)**
32:3
**actually (2)**
39:8;42:20
**add (4)**
16:22,22;26:15,16
**additional (1)**
44:11
**address (2)**
11:17;14:9
**addressed (1)**
13:4
**adjourned (1)**
44:5
**admin (7)**
17:25;18:5;19:5;
20:2,23;25:5;29:21
**administrative (21)**
16:9,12,23;17:17;
19:12,16,25;20:7;
21:15,22,24;23:18;
24:23;31:13;32:25;
33:16;34:21;35:1;
36:14;39:15;43:1
**admiration (1)**
39:14
**adversary (2)**
13:5,12
**advisers (1)**
25:19
**affects (1)**
15:16
**aftermath (1)**
28:19
**afternoon (3)**
37:14;44:14;45:4
**again (21)**

13:8;14:11;15:17,
21;18:10,19;20:12;
22:15;26:17;28:21;
29:2;33:7;34:10;35:9;
36:1,4,18;39:5;42:4,4,
13
**agent (1)**
23:14
**ago (2)**
32:4;38:5
**agree (11)**
13:19;15:12;16:8,
13;24:4,13;25:4;26:2,
10;27:21;34:16
**agreed (4)**
12:16;19:18;23:5;
25:8
**agreement (4)**
24:18,18,24;28:2
**agrees (2)**
24:9;26:9
**ahead (1)**
12:25;26:3
**AKIN (6)**
4:15;5:2;10:21;
12:21;19:18;21:11
**ALEX (1)**
9:7
**allowed (2)**
21:17;26:25
**alone (1)**
38:17
**alternative (2)**
34:4;36:4
**alternatives (5)**
34:10,24;36:19,20;
37:1
**although (1)**
30:22
**always (2)**
14:11;40:12
**Amazon (1)**
38:15
**AMELIA (3)**
5:7;10:21;12:21
**among (1)**
22:13
**amount (10)**
16:24;17:2;19:15;
20:23;21:19;25:16,
16;31:10;33:11;39:1
**amounts (2)**
38:20;39:19
**ancillary (1)**
14:6
**ANDREA (4)**
5:17;11:5;12:6;
22:21
**Angeles (1)**
7:6
**announced (1)**
30:23
**apartment (8)**

17:20;19:21,22;
28:25,25;32:3;34:18;
39:10
**apartments (2)**
15:18;29:16
**apartment's (1)**
34:8
**appearance (2)**
11:10,15
**appearances (1)**
10:11
**Apple (1)**
38:15
**applicable (1)**
39:4
**application (6)**
12:3;14:7,9;24:5;
25:14;30:25
**applications (2)**
11:20;14:8
**applied (1)**
17:17
**apply (2)**
13:15;19:2
**appoint (3)**
20:1;23:3;31:20
**appointment (2)**
19:14;20:3
**appreciate (7)**
13:1;15:3;18:11;
22:1;29:24;37:4;
44:15
**appropriate (9)**
12:3;20:17;24:7;
25:21;27:9,10;39:18;
43:24;44:9
**appropriately (3)**
41:15;42:8,21
**approved (2)**
32:4;33:2
**approximately (1)**
38:8
**ARCHER (1)**
8:11
**argue (2)**
30:3,9
**argued (3)**
15:22;26:12,22
**argument (2)**
22:25;23:5
**arguments (2)**
15:2;39:11
**around (3)**
17:11;32:16,24
**ArShaye (1)**
4:3
**aside (1)**
15:12
**asset (3)**
31:3;40:19,24
**assets (21)**
17:20,21;19:7,20;
22:15;23:21,22;

24:11;28:5;29:1,15,
15;32:12,24;33:8;
34:15,25;36:11;
41:18;42:7;43:1
**asset's (1)**
17:1
**Associates (2)**
14:14,16
**Association (1)**
38:13
**assume (1)**
21:9
**assumption (1)**
14:11
**ATTORNEY (1)**
6:2
**Attorneys (12)**
4:3,16;5:3,13;6:3,
12;7:3,12,20;10:15;
25:17;35:2
**attorney's (1)**
14:8
**Audio (1)**
37:18
**Austin (1)**
6:15
**authority (8)**
14:12,17,18;15:8,
20;20:1;27:10;29:18
**available (15)**
12:1;16:25;17:2,4;
18:10;21:22;28:5;
32:25;33:9;35:13;
41:18;43:1;44:6,8,14
**AVA-JOYE (1)**
8:12
**Avenue (2)**
4:4;7:21
**award (1)**
14:7
**awards (1)**
41:23
**aware (1)**
27:18
**away (3)**
12:17;26:13;41:8

## B

**back (6)**
17:18,23;35:8;
36:18;37:3,8
**backing (1)**
26:13
**bad (1)**
42:11
**bag (1)**
25:2
**balance (3)**
18:16,23;33:20
**bank (8)**
17:14;18:16,22;
19:3;20:20;38:6,19;

40:14
**banking (1)**
20:24
**Bankruptcy (11)**
10:3;14:6;16:21;
19:19;25:5,6,23;5,17;
35:3;37:19;40:25
**BARTOLOTTA (1)**
4:7
**based (1)**
20:23
**basis (5)**
20:2;24:17;29:20;
30:25;42:6
**BECKY (1)**
9:8
**begins (1)**
37:18
**begrudge (1)**
30:16
**behalf (9)**
10:11,19,24;11:1,4;
12:22;30:19;38:24;
39:2
**believes (1)**
12:2
**bell (3)**
15:5;20:13;22:24
**bench (2)**
15:10;27:17
**benefit (3)**
13:8,15;19:19
**benefits (2)**
22:12;39:16
**BERGER (6)**
10:13,14,14;30:17;
40:10,10
**best (5)**
23:8,10;30:14;
34:17,22
**better (1)**
36:13
**beyond (2)**
14:19,22
**BIBLO (1)**
4:21
**bill (1)**
25:22
**bit (1)**
32:8
**BLOCK (1)**
4:21
**blood (1)**
17:13
**Bloomberg (1)**
9:7
**bono (4)**
19:18;25:8,18,24
**both (1)**
23:6
**Boulevard (1)**
7:4
**bounds (1)**

23-12055-shl    Doc 304    Filed 07/19/24    Entered 07/19/24 16:49:23    Main Document
In the Matter of RUDOLPH W. GIULIANI         Pg 49 of 57

July 17, 2024

18:18
**Bowling (1)**
  5:14
**box (1)**
  41:17
**BR (2)**
  14:14;19:10
**BRADLEY (1)**
  6:19
**break (3)**
  20:9;36:7;37:6
**BRIAN (1)**
  8:15
**Bryant (1)**
  5:4
**BUCHALTER (1)**
  7:2
**bunch (1)**
  18:23
**BURBAGE (2)**
  4:8;11:1
**BURNETT (1)**
  8:12
**business (1)**
  39:3

### C

**CA (1)**
  7:6
**CAIN (2)**
  6:11,17
**called (3)**
  14:14,16;23:14
**came (3)**
  15:2;17:18;30:4
**can (38)**
  12:16;15:16;16:13,
  22;23:14;24:5,9,12;
  25:10;26:6,7,8,10;
  27:11;32:16;34:15,
  16;35:5,6,7,13,15,19,
  25;36:13,17,18;
  37:22;38:3;41:19;
  42:6,11,24,24;43:2,
  20,21,23
**canceled (1)**
  13:8
**care (1)**
  12:16
**CAROLINE (1)**
  4:7
**case (43)**
  10:4,5,7;14:9,12,
  15;16:9;19:3,10,11,
  13;21:16;23:2,3,5,10;
  24:1,7,12;25:5,6,6,8,
  23;26:12;27:2;28:18;
  29:1,1,19,23;31:12;
  33:4,14,16;34:8,20;
  36:7,14;37:5,21;
  42:24;43:2
**cases (5)**

15:9;18:1;22:12;
  29:3,23
**cash (14)**
  17:24;18:5,10;19:7;
  20:6,20;21:19;29:15;
  31:3;32:18;35:20;
  38:4,8,16
**cashed (1)**
  38:10
**cat (1)**
  36:3
**caught (1)**
  30:22
**cause (1)**
  23:6
**caution (1)**
  12:18
**certain (5)**
  11:19;24:8;33:5,6,
  10
**certainly (8)**
  24:4,12,13;25:4,10,
  16;30:1;44:16
**certificate (2)**
  11:22;12:23
**cetera (2)**
  26:10,10
**challenge (1)**
  29:10
**chambers (2)**
  44:10,17
**chance (4)**
  15:24;29:22;34:14;
  40:7
**change (1)**
  44:16
**changed (1)**
  39:11
**CHAPPLE (1)**
  6:18
**Chapter (14)**
  10:5;15:1,1,18,19;
  21:16;22:12;23:2,3;
  28:19,23;29:1,13;
  33:4
**characterized (1)**
  38:20
**charges (1)**
  38:16
**CHARLIE (1)**
  6:17
**check (1)**
  38:10
**checking (2)**
  18:16;40:14
**circle (1)**
  21:5
**Circuit (1)**
  14:15
**cited (3)**
  29:19,23;37:5
**CITRON (3)**
  7:19,20;11:12

**City (1)**
  17:20
**claimants (1)**
  20:10
**claims (2)**
  16:12;20:8
**CLARA (1)**
  8:16
**clarification (1)**
  44:4
**clear (11)**
  12:15;13:7;14:5,8,
  17,18,20,24;15:6;
  16:11;20:15
**clearly (5)**
  11:20;18:20;23:22;
  34:4;36:21
**client (15)**
  31:7;34:4;35:13;
  36:15;39:13;41:7,17,
  20;42:5,9,12,13;43:6,
  7,10
**clients (3)**
  39:2,14;41:9
**CNN (1)**
  8:25
**colleague (1)**
  11:7
**Colorado (1)**
  6:13
**commenced (1)**
  16:10
**comment (1)**
  24:6
**comments (6)**
  16:19;22:22;23:11;
  27:8;28:13,22
**Committee (22)**
  4:16;5:3;10:19,22;
  12:9,22;15:25;17:9;
  21:9,12;25:7,17,19;
  26:18;27:22;28:4;
  30:21;31:2;32:1;
  41:11;43:20;44:20
**committee's (2)**
  14:10;39:17
**common (1)**
  27:13
**commonly (1)**
  17:6
**complicated (1)**
  43:8
**comply (1)**
  28:2
**concept (1)**
  17:13
**concern (4)**
  24:18;26:24,24;
  36:6
**concerns (1)**
  27:16
**conclude (1)**
  20:3

**concluded (1)**
  45:5
**conclusion (3)**
  32:23;33:22,24
**condition (1)**
  16:14
**conditioned (1)**
  43:3
**condo (3)**
  38:9,13;40:19
**conduct (1)**
  19:20
**confidential (1)**
  11:19
**confirm (1)**
  13:9
**confusing (1)**
  20:6
**connection (2)**
  21:15;22:3
**consent (1)**
  29:17
**consequences (1)**
  20:17
**considerations (1)**
  41:8
**considering (1)**
  44:10
**consistent (5)**
  13:11;26:18;27:10;
  29:5;33:17
**consult (1)**
  32:7
**contacted (1)**
  39:25
**Cont'd (1)**
  9:2
**contemplated (1)**
  11:21
**continue (4)**
  20:3;21:4;32:5;
  37:20
**control (1)**
  34:19
**controls (1)**
  27:2
**convention (1)**
  38:12
**conversation (4)**
  15:17;32:19;34:14;
  35:7
**conversations (3)**
  15:3;18:11;35:19
**convert (2)**
  23:2,7
**Coomer (1)**
  6:12
**cooperate (1)**
  30:14
**CORPORATION (1)**
  7:2
**Counsel (13)**
  11:11;12:9;16:11;

17:12;19:1;20:22;
  25:8;35:19;38:20,21;
  39:20;40:9;43:19
**couple (1)**
  11:16
**course (2)**
  19:2;42:9
**COURT (96)**
  10:2,3,9,17,19,23;
  11:3,8,13;12:8,12,20,
  25;13:20;16:16;17:6;
  18:7,9;19:13;20:12,
  15;21:1,3,7;22:17,25;
  23:1,7,16;24:1,4,11,
  16,21,22;25:2,9,11,
  13;26:3,7,13,17,22,
  23;27:1,6,14;28:1,6,8,
  11,16,21;29:22;30:2,
  7,10,13,23;31:6,19;
  32:9,11,15,17,22;
  33:22,25;34:3;35:11,
  15,21,23;37:9,11,18,
  19;38:1;39:6,23;40:2,
  5,8,22,24;41:2,23,25;
  42:3;43:13;44:7,20,
  23;45:1,3
**courthouse (2)**
  21:25;23:23
**courts (1)**
  14:6
**Court's (1)**
  10:6
**creditor (2)**
  11:11;16:25
**Creditors (8)**
  4:16;5:3;20:3,4;
  23:8,10;30:21;32:1
**current (1)**
  17:4
**currently (1)**
  21:19
**customary (1)**
  18:1

### D

**Dallas (1)**
  4:19
**DANIEL (3)**
  5:18;8:20;11:7
**Danovich (2)**
  10:21;12:21
**DANOVITCH (3)**
  5:7;12:19,21
**Data (4)**
  8:15,21;11:18;22:6
**date (1)**
  19:4
**DAVID (1)**
  8:7
**DAVIDOFF (3)**
  7:19,20;11:12
**day (1)**

23-12055-shl    Doc 304    Filed 07/19/24    Entered 07/19/24 16:49:23    Main Document
In the Matter of RUDOLPH W. GIULIANI        Pg 50 of 57

July 17, 2024

30:15

**days (1)**
22:5

**DC (1)**
7:14

**deal (8)**
14:6;24:2,22;25:19;
26:18;30:15;34:7,21

**dealing (1)**
29:21;38:4

**dealt (1)**
19:9

**debtor (42)**
10:12,15;15:14;
18:14;19:6;21:14;
22:10,11,19;23:4;
24:7,9,12;25:7,10,15;
26:9;27:1,2,21,24;
28:2;29:17;30:20,20,
24;31:3,4,4;32:7;
33:5,10;35:20;36:15,
16;38:5;39:4,8,24;
40:11,13;45:1

**debtor's (13)**
16:11;17:11;19:1,4;
20:21;31:25;35:19;
38:16,20,21;39:20;
40:8;43:18

**decide (4)**
23:7;24:5;42:23;
43:2

**deciding (1)**
23:9

**decision (8)**
10:7;14:14,16;15:4;
23:9;25:20;36:22;
42:4

**default (1)**
31:16

**denude (1)**
31:3

**depart (1)**
28:18

**DEPARTMENT (2)**
5:12;6:3

**departure (1)**
18:1

**depending (1)**
44:12

**detail (1)**
25:20

**details (2)**
32:24;34:11

**determined (1)**
27:5

**devil's (1)**
34:10

**DIETRICH (1)**
8:19

**difference (2)**
17:8;27:7

**different (2)**
43:13,14

**direct (1)**
43:16

**directed (1)**
30:5

**discussed (1)**
14:13

**discussion (4)**
16:10;35:3;38:7;
41:18

**discussions (4)**
11:21;12:8;33:19;
39:20

**dismiss (8)**
23:3,5,7,10;26:12;
33:15,17;42:24

**dismissal (26)**
10:6;13:11,23;14:7,
20,22;15:1,8;16:14;
18:2;19:12;20:11,18;
23:19;24:17;28:20;
29:6;36:20,25;39:2,
18;41:8;42:5,8;43:3,7

**dismissals (3)**
18:3,6;27:18

**dismissed (8)**
10:7;13:13;24:12;
27:2;28:19;33:5;
34:20;36:14

**dispute (1)**
19:6

**disputed (1)**
13:4

**dissipated (1)**
38:17

**District (2)**
10:3;37:19

**docket (2)**
12:24;43:24

**dollar (1)**
38:10

**dollars (4)**
17:16,17;38:8,9

**Dominion (1)**
7:3

**done (6)**
13:2;15:5,5;28:13;
29:17,20

**doubt (2)**
25:18;29:14

**down (3)**
21:16;40:21;43:10

**Dr (1)**
6:12

**dubious (1)**
18:19

**DUBLIN (12)**
5:8;10:20,20;19:18;
21:8,11,11;39:6,7;
41:1;44:20,21

**Dublin's (1)**
41:10

**ducks (1)**
14:4

**DUNPHY (1)**
8:13

**DYE (1)**
8:14

**E**

**easiest (1)**
40:12

**EBERT (1)**
8:15

**echo (1)**
21:13

**effective (1)**
39:3

**effectuated (1)**
42:8

**efficient (1)**
41:15

**effort (1)**
30:20

**efforts (1)**
37:4

**either (1)**
38:22

**ELIZABETH (1)**
8:14

**ELLA (1)**
8:22

**ELLEN (1)**
8:16

**else (7)**
11:14;21:4;28:8;
34:16;35:25;37:6,12

**email (2)**
12:15;43:21

**employees (1)**
12:10

**encourage (1)**
41:15

**end (3)**
30:5;43:11,15

**endeavored (1)**
30:6

**ends (1)**
41:22

**enforceable (3)**
24:19,24;26:18

**enforced (1)**
27:12

**ENID (1)**
6:8

**enough (3)**
21:3;23:21;35:24

**ensure (3)**
21:23,23;39:19

**ensuring (2)**
22:7,8

**enter (3)**
26:6;27:22;42:23

**entered (1)**
13:1

**enters (1)**

24:14

**entry (2)**
22:5;29:13

**equity (1)**
29:3

**Eric (2)**
6:12;8:24

**ERIK (1)**
8:21

**especially (1)**
23:19

**ESQ (21)**
4:7,8,9,10,11,12,21;
5:7,8,9,17,18;6:7,8,
17,18,19;7:8,16,24;
8:7

**essentially (2)**
32:17;42:10

**established (1)**
30:25

**estate (12)**
17:15,21;18:17,21;
19:7;20:7;21:19;22:9,
13;29:15,15;39:16

**estimated (2)**
25:13,14

**estimates (1)**
17:11

**et (2)**
26:10,10

**EULMESSEKIAN (1)**
5:9

**even (4)**
18:19;25:6;42:5;
43:2

**events (1)**
13:7

**eventually (1)**
34:18

**everybody (5)**
14:10;23:20;24:5;
31:11;33:17

**everybody's (4)**
13:9;15:3;29:7;
43:14

**Everyone (1)**
41:2

**everyone's (1)**
34:17

**exact (3)**
19:17;29:20;43:6

**exception (2)**
13:14;16:18

**exceptions (1)**
13:14

**exclusivity (1)**
22:14

**exempt (1)**
18:18

**exercise (1)**
27:1

**exist (1)**
20:24

**expense (3)**
20:8;25:7;33:16

**expenses (18)**
17:17;19:12,16;
21:15,22,24;23:18;
24:23;31:14;32:25;
34:21;35:1;36:14;
38:9,11,15;39:16;
43:2

**experience (1)**
20:24

**extension (1)**
22:14

**extent (2)**
19:8;31:7

**eyes (1)**
22:1

**F**

**F3d (1)**
14:16

**face (1)**
18:24

**fact (7)**
20:1;23:12;25:23;
29:12,19;30:8;32:12

**facts (1)**
29:5

**fair (6)**
13:25;15:21;16:3;
19:7;21:3;37:11

**fairness (1)**
22:8

**faith (3)**
17:23;29:8,9

**fallback (1)**
41:4

**familiar (2)**
17:3;18:6

**far (3)**
25:23;34:24;38:23

**FARR (3)**
4:2;11:2;16:7

**fault (1)**
38:21

**favor (1)**
12:14

**feature (1)**
18:5

**fee (6)**
11:20;12:3;14:9;
24:5;25:13;30:25

**feel (2)**
31:7,8

**fees (11)**
13:23;14:8;21:16,
17;22:5;25:13,14;
26:19;27:4;33:2;
38:11

**FELD (5)**
4:15;5:2;10:21;
12:22;21:12

23-12055-shl    Doc 304    Filed 07/19/24    Entered 07/19/24 16:49:23    Main Document
In the Matter of RUDOLPH W. GIULIANI          Pg 51 of 57

July 17, 2024

**Field (1)**
4:17
**fifteen (1)**
35:8
**fighting (2)**
14:25,25
**figure (12)**
16:21;29:9;34:6,25;
36:2,5,9;43:4,10;
44:17,17,18
**file (2)**
11:19;12:22
**filed (5)**
11:21;20:9;22:10;
30:25;43:23
**filing (1)**
40:18
**final (1)**
18:24
**Finance (1)**
6:3
**financial (1)**
25:19
**find (3)**
24:22;39:22;40:7
**finding (1)**
42:25
**fine (2)**
30:15;33:11
**firm (1)**
38:15
**First (7)**
10:11;17:8,16,25;
19:24;24:3;43:16
**Fischhoff (2)**
30:17,19
**Fischoff (22)**
10:14,15,18;30:19;
31:18,25;32:10,14,20;
33:19,24;34:2;35:10,
12,22;37:7,10;40:23;
41:21;42:2;43:12;
45:2
**Fischoff's (1)**
15:13
**fits (1)**
16:19
**five (1)**
12:10
**FL (1)**
8:5
**Florida (3)**
28:25;38:11;40:19
**fly (1)**
18:24
**focuses (1)**
34:15
**folks (2)**
32:16;35:16
**followed (1)**
30:12
**following (2)**
18:24;39:21

**forever (1)**
33:16
**form (4)**
12:2;17:8;22:4;
24:24
**forms (1)**
26:21
**forth (2)**
24:6;25:20
**forthcoming (1)**
18:14
**forward (3)**
13:13;31:4;43:25
**four (1)**
18:20
**fourteen (2)**
15:10;27:17
**frame (1)**
31:6
**framing (1)**
14:21
**frankly (7)**
16:20;31:12;36:13;
41:5,9,13;44:8
**Freeman (14)**
4:3;10:24;11:1;
16:1,1;20:10;26:12;
27:21;28:3;30:21;
31:2;38:24;43:19;
44:2
**freight (1)**
16:9
**Friday (1)**
10:7
**front (1)**
34:6
**fruit (1)**
20:20
**full (2)**
20:11;23:5
**further (4)**
31:19;37:13;44:1,
21

**G**

**GAGION (1)**
6:7
**GALLAGHER (3)**
4:2;11:2;16:7
**game (2)**
19:7;43:11
**garden-variety (1)**
14:22
**Gary (2)**
10:15;30:19
**Gave (3)**
15:2;23:11;40:6
**GDR (3)**
12:10;21:16;39:1
**GENERAL (2)**
6:2;13:14
**GEOGHEGAN (1)**

8:16
**gets (1)**
26:25
**Giuliani (7)**
10:4;16:8;17:5,10,
18;37:21;39:5
**Giuliani's (1)**
19:20
**given (1)**
44:13
**giving (1)**
22:23;39:9
**Glenn (1)**
14:14
**Global (5)**
8:15,21;11:18;22:6;
32:1
**GLUCKSMAN (3)**
7:24;11:9,11
**goal (1)**
33:5
**Good (19)**
10:2,13,17,18,23,
25;11:3,5,8,13;14:11;
16:21;17:23;29:8,9;
35:3,24;37:2;45:4
**Goodman (1)**
10:14
**GORREPATI (1)**
8:17
**GRABER (1)**
4:9
**granting (1)**
24:17
**greatly (2)**
14:22;22:23
**Green (1)**
5:14
**ground (1)**
29:6
**Group (1)**
8:18
**guard (1)**
30:22
**guess (2)**
29:16;35:18
**GUMP (6)**
4:15;5:2;10:21;
12:21;19:18;21:12

**H**

**haircuts (1)**
17:3
**half (2)**
38:8,16
**hand (2)**
25:17;31:3
**handle (2)**
20:17;29:4
**handled (1)**
27:12
**hanging (1)**

20:20
**happen (4)**
18:11;42:11,13,13
**happened (1)**
15:4
**happily (1)**
23:22
**happy (6)**
14:2;15:23;34:13;
36:7,17;37:25
**hard (2)**
31:21;42:14
**HARRISON (1)**
8:18
**HAUER (5)**
4:15;5:2;10:21;
12:22;21:12
**head (1)**
42:10
**hear (15)**
14:2;15:25;16:5;
21:8,9;22:18,20;24:4;
27:23;29:5;30:18;
39:24;40:8;42:14,15
**heard (4)**
12:5;20:21;28:9;
39:7
**hearing (10)**
13:5;18:24,25;23:4;
30:5;37:20;40:1;44:5,
8,11
**Heath (2)**
10:14;40:10
**heels (1)**
10:6
**held (1)**
27:25
**hello (1)**
28:21
**helpful (2)**
15:2;21:4
**help-me-to-help-you (1)**
33:7
**here's (1)**
16:24;17:2;41:2
**high (1)**
42:21
**higher (2)**
25:23;33:1
**Hill (2)**
8:22;9:4
**himself (2)**
19:21;20:9
**hold (1)**
31:9
**holding (1)**
25:2
**holds (1)**
42:13
**Honor (64)**
10:13,18,20,25;
11:5;12:6,19;13:19;
16:6,10,13;17:8;18:3,

8,25;19:10,25;21:6,
11,12;22:8,21;23:5,9,
11,25;24:3,14;25:3;
26:2,6;27:16,23;28:3,
9,14,17;29:11,14,18;
30:4,12;35:17;37:16,
25;38:2,7,25;39:2,7,
21;40:4,6,10,11;
41:21,21,22;43:12;
44:3,6,21,25;45:2
**Honor's (1)**
22:23
**hop (1)**
36:18
**hoped (1)**
32:19
**hopefully (1)**
37:14
**hour (6)**
35:10,12,14,15;
36:17;37:3
**hours (1)**
42:20
**housekeeping (1)**
11:17
**huge (1)**
19:19
**hung (2)**
38:3;39:21
**HUTCHER (3)**
7:19,20;11:12

**I**

**idea (2)**
24:21;32:24
**imagine (2)**
23:15;31:21
**immediately (2)**
35:13;39:3
**important (3)**
14:21;25:12,25
**impose (1)**
37:14
**inappropriate (3)**
15:7;31:8;34:19
**inbox (1)**
12:14
**Inc (1)**
7:3
**inclined (1)**
15:6
**include (2)**
29:15;41:16
**included (2)**
26:21;39:19
**includes (1)**
43:19;44:18
**including (1)**
22:24
**incumbent (1)**
21:14
**incurred (2)**

23-12055-shl    Doc 304    Filed 07/19/24    Entered 07/19/24 16:49:23    Main Document
In the Matter of RUDOLPH W. GIULIANI        Pg 52 of 57

July 17, 2024

20:8;21:15
**indeed (2)**
    15:6;16:12
**Independent (2)**
    9:3;14:2
**indicate (1)**
    25:15
**indicated (1)**
    41:22
**indiscernible (3)**
    32:10;34:2;35:22
**individuals (1)**
    37:21
**information (6)**
    11:20,25;12:1,9;
    38:22;42:17
**informed (1)**
    14:4
**initial (1)**
    28:22
**input (1)**
    15:3
**insolvency (1)**
    16:23
**instance (1)**
    17:16
**Instead (1)**
    17:14
**interest (5)**
    12:2;23:8,10;34:17;
    41:6
**Interested (4)**
    7:12;17:22;41:7;
    43:18
**interesting (1)**
    16:15
**interests (1)**
    39:12
**into (7)**
    12:7;15:11;18:18;
    20:9;26:6;27:22;42:7
**ION (1)**
    8:18
**IOU (2)**
    17:19;19:9
**issue (12)**
    13:4;16:8,20;18:4;
    30:4;31:1,2,6;36:24;
    39:15;40:17;41:3
**issued (3)**
    10:7;15:4;23:9
**issues (4)**
    11:17;14:21;23:6;
    33:6

**J**

**JAMES (3)**
    4:8;7:24;11:1
**JESSICA (1)**
    4:9
**job (2)**
    16:18;30:15

**JOEL (1)**
    7:8
**joined (1)**
    11:6
**Journal (1)**
    9:8
**Judge (13)**
    10:2;14:14;24:14;
    26:11,20;30:19;
    32:15;33:19;34:7;
    35:10;36:8,23;39:25
**judges (1)**
    14:3
**judgment (1)**
    13:6
**July (7)**
    15:14;17:15;18:16;
    23:8;38:10,14,25
**jurisdiction (9)**
    14:6,9,19;16:13;
    24:4;29:5,14;42:24,
    25
**jurisdictional (1)**
    42:6
**JUSTICE (1)**
    5:12
**justification (1)**
    33:8

**K**

**KATELYN (1)**
    8:25
**keep (1)**
    35:7
**keeping (1)**
    13:3
**KELLY (1)**
    9:3
**KENNETH (1)**
    7:16
**key (1)**
    42:13
**keys (1)**
    31:9
**kind (4)**
    16:20;26:22;41:21;
    42:16
**kitchen (1)**
    36:2
**KLOEWER (1)**
    6:19
**KNAUTH (1)**
    8:19
**knew (1)**
    41:2
**knows (1)**
    30:4

**L**

**LABKOWSKI (2)**
    8:2,7

**laid (2)**
    30:14;42:4
**Lane (2)**
    10:2;37:18
**language (1)**
    24:8
**large (1)**
    25:16
**last (4)**
    16:8;17:11;26:9;
    38:18
**later (1)**
    43:17
**LATHROP (1)**
    8:20
**LAW (3)**
    8:2;16:12;39:4
**Law&Crime (1)**
    8:23
**Law360 (3)**
    8:11,16;9:5
**LAYKIN (1)**
    8:21
**lays (1)**
    25:20
**learned (1)**
    23:4
**least (4)**
    12:3;20:5;26:24;
    38:23
**leave (1)**
    11:19
**leaves (1)**
    22:6
**LEE (1)**
    8:22
**left (1)**
    25:2
**LEO (1)**
    6:7
**less (2)**
    14:20;34:24
**lesser (1)**
    25:7
**letter (1)**
    15:14
**level (3)**
    14:12;22:24;25:21
**Liberty (1)**
    6:4
**lie (1)**
    18:15
**lien (8)**
    15:15;24:10,10;
    32:3;33:13;34:7;39:9;
    41:24
**life (2)**
    16:17;30:14
**light (4)**
    13:7;20:18;24:17;
    34:14
**limited (2)**
    12:10;19:24

**line (2)**
    10:16;37:22
**liquid (9)**
    17:20,21;31:3,11;
    32:12,24;33:8;34:15;
    41:18
**liquidate (2)**
    19:14;20:1
**liquidating (9)**
    14:24;15:7,17;23:3,
    13,14;28:24;31:20;
    36:6
**liquidation (1)**
    19:20
**listen (1)**
    42:3
**listing (1)**
    32:5
**little (3)**
    14:2;32:6,8
**live (4)**
    33:11;35:25;40:1;
    43:22
**living (1)**
    28:19
**LLC (1)**
    11:18
**LLP (6)**
    4:2,15;5:2;7:11,19,
    20
**log (2)**
    37:3,8
**LOISON (1)**
    4:10
**longer (1)**
    13:12
**look (6)**
    12:13;17:14;20:10;
    28:6;29:22;43:11
**looking (6)**
    19:11,19;21:24;
    22:11,11;26:17
**looks (2)**
    29:9;42:23
**Los (1)**
    7:6
**loss (1)**
    43:9
**lot (10)**
    25:18;29:3;35:18;
    36:12,20;42:11,11,12;
    43:5,5
**lots (2)**
    36:3;43:13
**lowest (1)**
    20:20

**M**

**magic (1)**
    29:3
**mail (1)**
    34:12

**main (1)**
    40:14
**maintain (1)**
    40:19
**maintained (2)**
    40:20,24
**man (1)**
    41:13
**many (1)**
    42:17
**MARINE (1)**
    4:10
**mark (1)**
    27:8
**market (1)**
    19:22
**marketed (1)**
    32:3
**marketing (1)**
    38:15
**matter (2)**
    12:17;13:24
**matters (1)**
    13:3,22;14:7
**MATTHEW (1)**
    8:23
**may (5)**
    12:21;15:12;25:25;
    28:9;35:6
**maybe (6)**
    15:16;16:1,25;32:6,
    7;33:10
**mayor (1)**
    20:9
**mean (8)**
    18:3;29:1;30:13;
    32:22;33:2,2,21;42:3;
    43:21
**meaningfully (1)**
    27:11
**meantime (1)**
    37:4
**mechanism (3)**
    24:22;29:20;31:16
**memorandum (1)**
    23:9
**mentioned (2)**
    14:18;27:16
**MICHAEL (1)**
    9:6
**midsentence (1)**
    37:18
**might (1)**
    35:25
**Milwaukee (1)**
    38:12
**minimum (1)**
    22:3
**minute (2)**
    28:10;32:11
**minutes (2)**
    35:8;38:5
**misperceive (1)**

23-12055-shl    Doc 304    Filed 07/19/24    Entered 07/19/24 16:49:23    Main Document
In the Matter of RUDOLPH W. GIULIANI            Pg 53 of 57

July 17, 2024

25:25
**modified (1)**
12:8
**moment (3)**
20:2;29:13;38:3
**money (8)**
16:24;17:2,12;
18:23;34:5;36:12,13;
40:18
**months (1)**
42:17
**more (4)**
10:5;28:10;32:10;
34:5
**morning (13)**
10:2,10,13,17,18,
20,23,25;11:3,5,8,13;
37:22
**morning's (2)**
37:20;39:21
**Moss (1)**
4:3
**most (2)**
17:6;23:13
**motion (2)**
11:18;13:6
**motions (1)**
23:1
**move (4)**
13:13;19:1;36:23,
24
**moved (1)**
20:22
**much (14)**
13:1,20;17:12,19;
29:19;32:18;33:1,7;
35:20;37:13,15;38:4,
8;45:3
**muck (1)**
32:23
**mucking (1)**
32:16
**must (1)**
16:12

**N**

**NAGLER (1)**
6:8
**NAHAM (1)**
8:23
**name (1)**
38:15
**names (1)**
12:10
**NATHAN (1)**
4:11
**navigate (1)**
29:7
**necessary (1)**
12:2
**need (8)**
13:3;21:23;35:12;

36:23;39:10,18;43:4;
44:11
**needed (1)**
23:7
**needs (3)**
11:14;31:4;33:10
**negotiate (1)**
17:22
**negotiating (1)**
17:22
**negotiation (1)**
20:16
**negotiations (4)**
32:20,21;33:25;
36:3
**Network (1)**
8:23
**New (14)**
4:5;5:5,15;6:5;
7:22;10:4;17:19;
19:21,21;28:24;32:2;
37:19;38:9;39:10
**News (2)**
8:12,20
**next (3)**
41:5;44:9,17
**nice (2)**
11:23;40:22
**Nobody (1)**
39:25;41:4
**nobody's (1)**
42:1
**NOELLE (1)**
8:13
**none (1)**
42:14
**nonexempt (2)**
19:15;21:21
**noon (3)**
42:21;43:23;44:5
**Nope (1)**
21:6
**nor (2)**
43:8,8
**normal (3)**
16:23;18:1;23:17
**normally (1)**
23:23
**North (1)**
4:17
**Northwest (1)**
7:13
**notable (1)**
21:2
**note (1)**
19:20
**notes (1)**
18:3
**noteworthy (1)**
22:3
**notice (1)**
24:5
**notion (8)**

14:5,23;15:13;
24:16,16;25:12;
29:16;41:3
**number (4)**
12:24;20:25;30:23,
24
**numbers (1)**
16:22
**NY (5)**
4:5;5:5,15;6:5;7:22
**NYS (2)**
6:2,3

**O**

**objection (3)**
11:22;12:11,23
**obligations (2)**
22:2,16
**observing (1)**
11:11
**obtained (1)**
39:16
**obviously (7)**
11:25;14:1;27:16;
39:11,12;40:19;43:22
**occur (1)**
32:19
**o'clock (1)**
43:17
**odd (1)**
34:9
**off (5)**
16:4;17:24;19:22;
30:22;40:11
**offer (3)**
32:18;33:13;35:24
**offered (2)**
19:21;24:10
**offering (1)**
17:20
**Office (9)**
5:13;6:2;11:4;
22:18;24:2;36:5;
39:24;43:20;44:24
**Official (3)**
4:16;5:3;10:19
**offline (1)**
30:6
**once (3)**
21:17;27:2;30:24
**One (14)**
5:4,14;11:24;14:23;
15:15;19:9,11;21:13;
28:9;35:23;37:7;38:5,
17;40:13
**ones (1)**
17:15
**only (11)**
13:25;15:21;16:3;
19:5;26:11;28:24;
29:11;30:3;33:12;
34:6;40:17

**open (1)**
35:8
**operate (1)**
31:4
**operating (4)**
14:11;29:7,8,9
**opinion (1)**
27:7
**options (2)**
23:1;44:10
**ORDEN (1)**
8:24
**order (28)**
10:6;12:7,13,15,23;
13:23;15:8;16:2,3;
17:9,18;22:4,6;23:14;
24:9,13;26:7,21;
27:25;28:23;29:13;
31:15,22;32:8;38:25;
39:18;41:25;42:23
**ordered (4)**
19:13;20:7,16;28:1
**orders (5)**
10:8;14:21,23;
24:11;43:14
**originally (2)**
13:5;39:9
**otherwise (2)**
24:19,21
**ourselves (1)**
39:22
**out (28)**
11:24;16:18,21;
17:5;18:8,23;25:25;
28:15;29:9;30:5;34:6,
25;36:2,5,9;38:9;
40:15,16,18;42:4,5,
25;43:4,10;44:10,17,
17,18
**outside (1)**
19:19
**outstanding (1)**
19:13
**over (9)**
27:2;28:24;29:14;
34:19;41:17,22;42:1,
3,4
**overstep (1)**
18:18
**own (2)**
35:7;42:6

**P**

**PA (1)**
8:2
**page (1)**
13:17
**paid (14)**
16:13;20:2;21:24;
25:5;26:19,25;27:5;
30:24;33:1,20;34:16,
18;38:11;39:1

**parcel (1)**
23:20
**Park (1)**
5:4
**Parklex (1)**
14:14
**part (4)**
23:20;24:13;25:6;
28:18
**particular (3)**
11:25;14:1;15:16
**particularly (3)**
10:5;35:3;41:10
**parties (8)**
12:16;15:16;26:6;
30:21;35:2;36:16;
40:6;43:18
**parties' (1)**
27:16
**partner (2)**
10:15
**Party (2)**
7:12;17:22
**party-in- (1)**
12:1
**password (1)**
37:8
**path (1)**
16:23
**patient (1)**
41:13
**pay (18)**
16:9;17:25;18:5;
19:5,7,15;20:7,22;
23:18;31:13;32:18,
25;33:1,16;35:1;
36:12;41:19;43:1
**paying (2)**
33:8;36:13
**payment (4)**
16:25;24:23;27:11;
33:20
**payments (1)**
22:7
**pecuniary (1)**
39:12
**people (21)**
11:23;15:12;16:24;
17:1;23:21;25:2,24,
25;31:10,16;32:9,11,
16;33:15;34:16,23;
35:6,24;37:1;42:16;
43:21
**perfect (2)**
43:21,22
**PERKINS (1)**
7:16
**permits (1)**
39:4
**persists (1)**
42:9
**person (2)**
31:21;37:24

23-12055-shl    Doc 304    Filed 07/19/24    Entered 07/19/24 16:49:23    Main Document
In the Matter of RUDOLPH W. GIULIANI          Pg 54 of 57

July 17, 2024

**pertains (1)**
  42:25
**petition (1)**
  20:8
**Phil (2)**
  10:20;21:11
**PHILIP (1)**
  5:8
**pieces (1)**
  20:10
**place (2)**
  32:4;40:4
**placing (1)**
  15:15
**plaintiff (1)**
  16:2
**plaintiffs (10)**
  10:24;11:2;16:1;
  26:12;27:22;28:4;
  31:2;38:24;43:19;
  44:2
**plans (2)**
  30:14;44:16
**play (2)**
  17:4;24:20
**pleadings (1)**
  22:10
**Please (1)**
  38:1
**plenty (1)**
  16:12
**PLLC (1)**
  6:11
**pm (3)**
  37:17,17;45:5
**point (13)**
  17:25;18:8;19:9;
  22:18;23:17;25:12,
  25;26:4;29:12;30:9;
  31:12,17;36:20
**POLANTZ (1)**
  8:25
**Politico (1)**
  8:24
**ponder (3)**
  42:18,19;43:24
**position (4)**
  23:6;27:18;39:12;
  41:4
**potentially (1)**
  44:12
**practical (2)**
  13:3;36:19
**practice (1)**
  33:18
**precatory (2)**
  23:11;24:8
**preferable (1)**
  34:24
**preliminary (2)**
  13:22,24
**preparing (1)**
  22:22

**PRESENT (3)**
  8:10;9:2;31:14
**presented (1)**
  33:12
**pretty (4)**
  13:7;14:5,8;27:8
**price (1)**
  32:8
**pro (4)**
  19:18;25:8,17,24
**problem (9)**
  23:23;24:2;26:11;
  27:3;28:23;31:9,23;
  36:4;41:2
**procedure (1)**
  30:12
**proceed (1)**
  37:23
**proceeding (2)**
  13:6,12
**proceedings (1)**
  45:5
**proceeds (3)**
  24:11;32:2;33:21
**process (1)**
  23:17
**productive (1)**
  37:15
**PROFESSIONAL (4)**
  7:2;26:25;27:4,4
**professionals (8)**
  12:4;14:10;16:21;
  17:3;22:9;39:17;
  41:11,19
**progress (3)**
  22:11,12;38:3
**Project (1)**
  8:17
**prompt (1)**
  41:15
**property (7)**
  17:15;18:17,21;
  19:15;20:6;21:21;
  33:13
**proposal (2)**
  38:24;40:17
**proposed (9)**
  10:6;12:7,23;17:9,
  10,14;22:4;23:14;
  39:9
**proposing (2)**
  18:15;19:23
**proposition (1)**
  15:9
**provide (4)**
  14:22;15:7;16:3;
  42:2
**provided (6)**
  10:9;15:8;17:23;
  22:9;39:17;43:18
**providing (1)**
  22:12
**provisions (4)**

26:8;27:9,10;39:18
**prudent (1)**
  19:24
**Pull (1)**
  18:15
**punish (1)**
  27:1
**purpose (1)**
  30:8
**put (1)**
  26:8
**putting (2)**
  15:12;41:24
**Pyrrhic (1)**
  36:25

**Q**

**quantum (2)**
  21:2;35:19
**quibble (2)**
  16:16;29:16
**quibbling (1)**
  17:13
**quick (1)**
  40:11

**R**

**race (1)**
  21:25
**RACHEL (4)**
  4:12,21;10:25;16:7
**rarely (1)**
  16:20
**rather (1)**
  17:19
**reach (6)**
  32:22;33:22,24;
  35:4,12;44:10
**reached (1)**
  40:15
**reaction (2)**
  25:13,15
**read (3)**
  36:7,7;37:5
**reads (2)**
  28:23;29:1
**really (7)**
  15:19;21:16;33:3;
  38:2;41:14;43:9,10
**reason (1)**
  30:3
**reasonable (2)**
  19:24;41:14
**reasons (2)**
  21:20;22:13
**recall (1)**
  17:10
**recent (1)**
  23:13
**recently (1)**
  32:4

**Recess (1)**
  37:17
**recitation (1)**
  29:25
**recognized (1)**
  22:10
**recognizes (1)**
  30:24
**record (1)**
  16:6
**records (1)**
  20:23
**redact (1)**
  11:19
**redacted (1)**
  12:9
**reduction (1)**
  32:8
**referenced (1)**
  21:20
**reflected (1)**
  36:21
**regardless (1)**
  41:8
**regular (3)**
  33:3,4,18
**rehash (1)**
  39:10
**related (1)**
  13:23
**relating (1)**
  11:20
**relatively (1)**
  38:16
**relief (2)**
  19:17;26:22
**remainder (2)**
  19:5,8
**remark (1)**
  18:25
**remedies (1)**
  28:1
**remotely (1)**
  18:14
**Reorg (1)**
  9:6
**rephrase (1)**
  42:11
**represent (1)**
  35:19
**representation (1)**
  20:21
**represented (1)**
  27:13
**request (3)**
  11:25;12:5;15:11
**requested (4)**
  16:2;22:14;27:19;
  38:19
**required (1)**
  39:1
**requiring (5)**
  41:17;42:7;44:7,13,

14
**research (1)**
  14:3
**resolution (1)**
  40:7
**resolve (3)**
  27:15;30:22;36:24
**resolved (1)**
  30:16
**respect (3)**
  22:2,7;39:13
**respond (1)**
  22:19
**rest (1)**
  26:3
**restricted (1)**
  31:7
**result (4)**
  27:11;32:6;36:15,
  15
**retain (2)**
  14:6;42:25
**retained (3)**
  27:3,4;41:11
**retains (1)**
  24:4
**Reuters (1)**
  8:19
**revised (3)**
  12:13,15,23
**RICK (1)**
  8:11
**right (38)**
  10:17;11:13,14,16;
  12:12,25;13:2,20,25;
  17:24;21:3,7,8;22:17;
  23:4,19;24:3,19;25:1,
  2;28:8,16;31:9;33:11;
  34:16;37:13,24;39:6,
  23;40:2,8;41:3,8,9;
  43:13;44:23;45:1,3
**Risk (4)**
  8:15,21;11:18;22:6
**RISSMAN (1)**
  9:3
**RNC (1)**
  38:12
**road (1)**
  40:21
**roll (1)**
  22:1
**room (2)**
  18:10;21:5
**round (1)**
  36:17
**route (2)**
  36:8,8
**row (1)**
  14:4
**rub (1)**
  31:22
**Ruby (1)**
  4:3

23-12055-shl    Doc 304    Filed 07/19/24    Entered 07/19/24 16:49:23    Main Document
In the Matter of RUDOLPH W. GIULIANI                          Pg 55 of 57

July 17, 2024

**RUDEWICZ (2)**
5:18;11:7
**Rudolph (2)**
10:4;37:20
**rule (1)**
13:14
**rules (1)**
19:2
**run (1)**
15:11
**rung (1)**
22:24
**RYAN (1)**
6:18

**S**

**sale (2)**
24:11;32:2
**same (10)**
13:17;19:17;37:8,9,
21;39:22;40:1,3,3;
42:3
**SAMUELS (1)**
7:8
**sand (1)**
42:10
**satisfaction (1)**
22:2
**satisfied (2)**
22:14;39:19
**satisfy (4)**
21:14,22;22:5,15
**satisfying (1)**
39:15
**savings (1)**
18:17
**saying (1)**
23:12
**scheduled (1)**
13:5
**SCHONFELD (1)**
9:4
**SCHWARTZ (30)**
5:17;11:5,6;12:6,6;
22:1,21,21;23:25;
24:3,20;25:1,3,10;
26:2,3,5,15,20;27:15;
28:7,8,13,14,18;
39:23,25;40:3,6;
44:25
**Scripps (2)**
8:12,20
**seal (2)**
11:19,25
**sealed (1)**
12:1
**Sean (1)**
10:2
**secured (1)**
16:25
**seeks (1)**
22:4

**seem (1)**
13:15
**seemed (1)**
25:15
**seems (5)**
16:3;24:7;34:9,11,
19
**sells (1)**
19:23
**sense (1)**
14:1
**sensible (1)**
35:4
**sent (3)**
12:7;38:5;40:16
**services (3)**
22:9;26:25;39:17
**serving (1)**
25:24
**session (2)**
37:9;39:22
**set (3)**
14:12;22:24;35:6
**Seventh (1)**
4:4
**several (1)**
41:13
**shall (1)**
37:5
**SHANT (1)**
5:9
**shape (1)**
24:24
**shares (1)**
39:9
**shenanigans (1)**
39:5
**shortage (1)**
10:8
**shortened (1)**
22:23
**show (3)**
18:15,23;19:3
**showed (1)**
38:6
**Shumer (1)**
10:14
**signed (1)**
31:15
**significant (1)**
23:22
**similar (1)**
19:11
**Sinker (1)**
19:10
**sit (2)**
41:17;43:10
**sitting (3)**
15:10;28:20;29:12
**situation (4)**
25:20;27:3,13;33:7
**Sixth (1)**
14:15

**size (2)**
25:13;30:22
**SKARNULIS (1)**
6:11
**skin (1)**
36:3
**small (4)**
25:16,22;38:16,21
**sold (4)**
17:1;33:13;34:8,18
**solution (1)**
35:4
**solvable (1)**
31:23
**solve (1)**
31:24
**solving (1)**
31:9
**somebody (1)**
31:8
**someday (3)**
33:13;34:7,18
**something's (1)**
34:11
**sometimes (2)**
30:14;40:12
**somewhere (1)**
32:13
**song (1)**
42:3
**soon (2)**
37:15;40:15
**Sorry (1)**
37:13
**sort (7)**
14:12;16:18;23:19;
31:21;33:17;36:21;
37:23
**Sotheby's (2)**
32:4,7
**sound (1)**
28:3
**sounds (1)**
31:10
**Southern (2)**
10:3;37:19
**Southlake (1)**
38:13
**spend (2)**
34:5;36:12
**spent (1)**
36:13
**spot (1)**
39:22
**spring (1)**
30:11
**squared (1)**
12:17
**start (6)**
10:11;11:16;14:5;
16:1,3;17:7
**starts (1)**
19:6

**state (1)**
17:4
**statement (2)**
38:6;40:14
**statements (4)**
18:15;19:3;21:13;
26:9
**state-retained (1)**
26:24
**States (7)**
10:3;11:4,6;12:7;
21:25;22:22;37:19
**stay (1)**
18:20
**steps (4)**
41:5;43:24;44:9,17
**stick (2)**
33:3;42:10
**still (2)**
41:23;42:24
**stipulation (4)**
26:7;27:22;28:1;
29:18
**stone (1)**
17:13
**stop (2)**
20:11;25:11
**STRAUSS (5)**
4:15;5:2;10:21;
12:22;21:12
**STRAWN (1)**
7:11
**stray (1)**
11:17
**Street (6)**
4:17;6:4,13;7:13;
8:3;9:8
**STRICKLAND (38)**
4:12;10:25;11:1;
13:18,19;16:5,6,7;
17:7;18:8,13;20:14,
19;21:2,4,6,18,20;
28:9,16,17;29:11;
30:1,3,8,11;35:17;
37:16,25;38:2;39:8,
11;40:15,20,41:6;
42:2;44:3,19
**Strickland's (3)**
21:13;27:7;40:17
**strictly (1)**
12:10
**strike (1)**
34:8
**strongly (4)**
35:1;37:1;43:9,9
**struck (2)**
14:23;23:12
**structured (2)**
18:6;27:18
**STUART (1)**
6:8
**submissions (1)**
29:24

**submit (1)**
12:14
**submitted (1)**
12:13
**sufficient (4)**
18:5;19:14;21:21;
22:15
**suggest (3)**
34:23;35:1;38:24
**suggestion (2)**
20:5;26:6
**Suite (4)**
4:18;6:14;7:5;8:4
**suits (1)**
39:12
**SULLIVAN (1)**
9:5
**summary (1)**
13:6
**supervision (1)**
31:22
**supported (1)**
17:9
**suppose (1)**
44:12
**supposed (1)**
25:5
**sure (10)**
11:24;13:16;14:3;
20:19;28:11,12;
30:17;32:2;37:23;
40:20
**Surfside (1)**
8:5
**surprise (3)**
15:23;42:14,16
**surprisingly (1)**
17:18

**T**

**table (1)**
22:19
**talk (4)**
10:5,9;15:24;23:21
**talked (2)**
34:14;39:13
**talking (2)**
28:24;43:22
**Taxation (1)**
6:3
**TAYLOR (1)**
8:18
**ten (1)**
22:5
**terms (2)**
15:15;31:23;36:2;
44:4
**Thanks (1)**
21:6
**theatrical (1)**
42:21
**thinking (1)**

23-12055-shl    Doc 304    Filed 07/19/24    Entered 07/19/24 16:49:23    Main Document
In the Matter of RUDOLPH W. GIULIANI
Pg 56 of 57

July 17, 2024

15:22
**Third (1)**
7:21
**though (1)**
18:19
**thought (11)**
11:23;13:25;15:21,
24,25;22:17;25:4,15;
31:25;32:15;41:4
**thoughts (1)**
13:18
**three (2)**
23:1;38:5
**throw (3)**
11:23;16:18;17:5
**thrown (1)**
17:11
**today (15)**
11:23;13:1,4,9;
14:21;22:23;23:11;
28:20;30:8;31:1;
33:15,17;34:15;41:3;
44:22
**together (2)**
11:23;44:18
**told (1)**
42:1
**TOMBACK (1)**
9:6
**tomorrow (7)**
13:5;42:20;43:17;
44:5,8,13,14
**took (2)**
18:23;32:4
**top (2)**
17:24;38:19
**touch (3)**
40:11,13;42:15
**transfer (1)**
38:13
**transparency (2)**
25:21;42:7
**trust (1)**
27:13
**Trustee (23)**
5:13;11:6;12:7;
14:24,25;15:1,1,8,18,
19;19:14,25;21:17;
22:5,22;23:3,4,13;
28:23,24;31:19,20;
36:6
**Trustee's (10)**
11:4;22:4,18;24:2;
27:18;29:8;36:5;
39:24;43:20;44:23
**try (3)**
29:9;35:4;40:7
**trying (19)**
15:23;16:21;17:21;
18:18,20;25:19;
26:23;28:22;29:2,6;
31:8,13;33:3;34:5;
35:9;36:2;41:14,15;

42:16
**turn (3)**
13:22;41:22,25
**twenty (1)**
34:13
**twenty-four (1)**
42:20
**two (4)**
15:17;20:9;28:25;
29:16
**TX (2)**
4:19;6:15

## U

**UDAY (1)**
8:17
**ultimate (1)**
21:25
**ultimately (1)**
20:10
**unaccounted (1)**
22:6
**unbelievable (1)**
41:5
**uncertain (1)**
21:18
**under (4)**
11:19;14:11;31:21,
24
**understandable (1)**
44:15
**Understood (3)**
29:11;36:22;43:12
**unencumbered (3)**
19:15;21:21;23:22
**unexpected (1)**
43:8
**unfold (1)**
33:6
**Unfortunately (2)**
33:21;39:20
**unhelpful (1)**
41:5
**uniquely (1)**
41:5
**United (6)**
10:3;11:4,6;12:7;
22:22;37:19
**unreasonable (1)**
28:3
**unring (1)**
15:5
**unringing (1)**
20:12
**Unsecured (2)**
4:16;5:3
**unusual (1)**
43:8
**up (14)**
16:22,22;18:15;
19:21;30:4;33:4;35:6;
38:3;39:4,5,21;41:3,

22;43:15
**update (8)**
37:23,24;42:20,22;
43:18,23;44:13,15
**upon (2)**
21:14;43:3
**urge (3)**
34:3;37:1;43:9
**use (1)**
19:7
**used (2)**
17:24;19:4;20:7,22;
40:19;41:19
**UST (1)**
22:20

## V

**value (2)**
17:1;19:24
**variation (1)**
19:23
**variety (2)**
10:8;38:14
**various (2)**
21:25;25:24
**vary (1)**
14:21
**verify (1)**
27:13
**version (1)**
23:13
**versions (1)**
43:14
**victory (1)**
36:25
**view (3)**
12:3;24:2;43:14
**views (2)**
11:24;15:24
**VINCE (1)**
9:5
**virtual (1)**
21:5
**voluntary (1)**
20:8

## W

**Wait (5)**
25:11;32:11,12;
33:15;34:3
**Wall (1)**
9:8
**walls (1)**
18:20
**wand (1)**
29:4
**Wandrea (1)**
4:3
**wants (8)**
27:21;31:19;33:6,
17;36:15,16;42:5;

43:7
**warranted (1)**
27:20
**Washington (1)**
7:14
**way (18)**
12:25;21:10;24:24;
25:3;26:18;27:8,9,12,
15;29:4;31:6,14;33:3,
4;35:23;36:10;41:16;
42:6
**ways (6)**
20:17;33:6;36:3;
41:14,16;43:5
**Wednesday (3)**
16:11;17:11;38:18
**weren't (3)**
17:12;25:23;26:22
**Wexler (1)**
10:14
**what's (7)**
15:5;17:4;19:3;
24:1;26:1;30:2;35:11
**whenever (1)**
34:18
**Whereupon (1)**
45:5
**whole (2)**
26:23;36:20
**willing (4)**
15:14;24:8;27:23,
24
**willingness (1)**
32:1
**WILLKIE (3)**
4:2;11:2;16:7
**Wilshire (1)**
7:4
**WINSTON (1)**
7:11
**wire (2)**
38:12,14
**wish (1)**
12:5
**within (2)**
18:20;22:5
**without (1)**
13:14
**witness (1)**
41:17
**WOLF (1)**
9:7
**work (2)**
25:18;30:5
**works (2)**
35:15,17
**world (2)**
43:21,22
**worse (1)**
39:8
**wrapping (1)**
33:4

## Y

**year (2)**
19:22;32:4
**years (2)**
15:10;27:17
**YERAK (1)**
9:8
**York (14)**
4:5;5:5,15;6:5;
7:22;10:4;17:20;
19:21,22;28:25;32:2;
37:20;38:9;39:10

## Z

**ZACHARY (1)**
9:4
**Zoom (6)**
35:5,6,7;36:18;
37:9,22

## 1

**1:30 (3)**
36:18;37:4,8
**1:38 (1)**
37:17
**1:49 (1)**
45:5
**1000 (1)**
7:4
**10004 (1)**
5:15
**10005 (1)**
6:5
**10019 (1)**
4:5
**10036 (1)**
5:5
**10158 (1)**
7:22
**10th (3)**
18:25;30:23;38:18
**11 (10)**
10:5;15:1,19;21:16;
22:12;23:3;28:19;
29:13;33:4;43:17
**113 (1)**
19:10
**11th (3)**
17:15;18:16;38:25
**12 (1)**
34:13
**12:18 (1)**
37:17
**12th (4)**
23:8;26:11;30:23;
38:10
**14,000 (1)**
38:9
**1500 (1)**

7:5
**15th (2)**
   15:14;38:14
**1800 (1)**
   4:18
**1901 (1)**
   7:13
**195 (1)**
   14:15
**1990 (1)**
   19:10

**2**

**20036 (1)**
   7:14
**2006 (1)**
   14:16
**2010 (1)**
   14:15
**2300 (1)**
   4:17
**23-12055 (1)**
   10:5
**25,000 (2)**
   38:10,13
**250 (1)**
   8:3
**28 (1)**
   6:4
**2850 (1)**
   6:14
**298 (1)**
   12:24

**3**

**303 (1)**
   6:13
**326 (1)**
   14:16
**33154 (1)**
   8:5
**34 (1)**
   19:10

**4**

**435 (1)**
   14:14
**468 (1)**
   14:16

**5**

**547233 (1)**
   8:4
**5900 (1)**
   14:16

**6**

**60,000 (1)**

38:8
**605 (1)**
   7:21

**7**

**7 (5)**
   15:1,18;23:2;28:23;
   29:1
**75201 (1)**
   4:19
**787 (1)**
   4:4
**78701 (1)**
   6:15

**9**

**90017 (1)**
   7:6
**95th (1)**
   8:3