**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

In re:                                                          Chapter 11

RUDOLPH W. GIULIANI                                             Case No. 23-12055 (SHL)
a/k/a RUDOLPH WILLIAM GIULIANI,

          Debtor.
-------------------------------------------------------------------x

## ORDER REGARDING FUTURE PROCEEDINGS

By Memorandum of Decision, dated July 12, 2024, this Court concluded that dismissal of

the Chapter 11 case filed by Debtor Rudolph W. Giuliani was in the best interest of creditors and

the estate. *See In re Giuliani*, 2024 WL 3384185 (Bankr. S.D.N.Y. July 12, 2024). The

Decision found cause to dismiss this case based on the Debtor's repeated failure to honor his

obligations of financial disclosure and transparency under the Bankruptcy Code and held that

dismissal was a more appropriate remedy than conversion to a Chapter 7 liquidation or

appointment of a Chapter 11 trustee to supervise the Debtor's affairs.

Since that Decision, however, an order dismissing the case has not been entered due to a

dispute regarding the payment of administrative expenses incurred during the case—namely,

whether and how the Debtor will pay such expenses. The administrative expenses in question

are the fees for the financial advisors retained by the Official Committee of Unsecured Creditors

(the "Committee").[1] The Committee and the Freeman Plaintiffs[2] argue that a dismissal order

must provide for the payment of such fees consistent with well-established law. *See* Notice of

---

[1]     While the lawyers who represent the Committee have agreed to work on a *pro bono* basis, the Committee's financial advisors have not and are entitled to payment under the Bankruptcy Code for their services.

[2]     The term "Freeman Plaintiffs" refers to Ruby Freeman and Wandrea Arshaye Moss, the plaintiffs in *Freeman v. Giuliani*, Case No. 21-cv-3354, the defamation action brought against Mr. Giuliani in the United States District Court for the District of Columbia. While the Committee represents the interest of all unsecured creditors consistent with Section 1102 of the Bankruptcy Code, the Freeman Plaintiffs are creditors who possess a prepetition judgment of some $146 million and are represented by separate counsel.

Presentment of Order of Dismissal [ECF No. 290] (proposed dismissal order providing for the

payment of administrative expenses through the sale of the Debtor's property controlled by

counsel to the Committee).  But the Debtor's proposed dismissal order does not provide for the

payment of such fees.  *See* Notice of Presentment of Counter Order of Dismissal [ECF No. 294].

Instead, the Debtor is only willing to provide a lien on a New York apartment owned by Mr.

Giuliani, so that such fees would be in line to be paid only if and when the New York apartment

is sold.[3]  *See id.* ¶ 7.

The Debtor contends that he does not have the ability to pay such fees on dismissal.  *See*

Hr'g Tr. 48:11-12 (July 10, 2024) [ECF No. 292] (statement of Debtor's counsel that the Debtor

did not have sufficient funds to pay the administrative expenses); Notice of Debtor's Consent to

Dismissal [ECF No. 285].  But as the Committee and Freeman Plaintiffs correctly point out, the

Debtor has failed to provide transparency into his financial affairs and, therefore, it is unclear

what funds he has available to pay these administrative costs.  *See, e.g.,* Hr'g Tr. 18:13-14 (July

17, 2024) [ECF No. 304] (statement of the Freeman Plaintiffs' counsel that parties do not have

an understanding as to what cash is available to pay administrative expenses because "this is not

a debtor that's remotely forthcoming").  Instead, the Debtor has simply refused to pay these

expenses, despite having advocated for the dismissal that precipitated this dispute regarding the

unpaid costs for administration of the bankruptcy case.

What little we know about the Debtor's financial situation makes his stance here more

troubling.  Even assuming that the Debtor does not have the funds on hand to immediately pay

---

[3]    If the case is dismissed, there are no guarantees as to if or when a sale of the New York apartment would
take place.  Even if the property is sold, it is impossible to know where the lien suggested by the Debtor would stand
when compared with the rights of other creditors at the time of such sale.  While the Committee and the Freeman
Plaintiffs seek to address that problem by appointing a liquidating trustee to supervise a sale as part of this
bankruptcy case, that step is opposed by the Debtor and by the Office of the United States Trustee, which has raised
questions about the Court's authority to supervise such activities after dismissal of the case.

these bankruptcy expenses, he certainly has considerable assets upon which he can draw to pay

such expenses. It is undisputed that he owns two apartments of considerable value. The

Debtor's apartment in New York is worth approximately $5.6 million and the condominium he

owns in Florida is worth approximately $3.5 million; neither property is significantly

encumbered, as the only secured debt listed is a lien for approximately $17,000 on the Florida

property. *See* ECF Nos. 100, 129. In that sense, this case is far different from Chapter 11

bankruptcy cases that suffer from "administrative insolvency," where there are insufficient assets

to pay the costs of bankruptcy administration. *See Pan Am Corp. v. Delta Air Lines, Inc.,* 175

B.R. 438, 481 (S.D.N.Y. 1994) (defining administrative insolvency as having insufficient assets

to satisfy the costs of the administration of the bankruptcy case). Notably, the Debtor has never

suggested that this case is administratively insolvent. Nor has he cited any authority to suggest

that payment of these administrative expenses here is inappropriate or at odds with established

law, which provides that the costs of administering a Chapter 11 case must be paid by the estate.

*See* 11 U.S.C. § 503. Indeed, it is well established that a debtor must pay the administrative

expenses associated with his bankruptcy as a condition of dismissal. *See In re New York Hand &*

*Physical Therapy PLLC*, 2023 WL 2962204 (Bankr. S.D.N.Y. Apr. 14, 2023) (finding

conditional dismissal permissible and conditioning dismissal on payment of the Subchapter V

trustee's fees); *see also In re Hunts Point Enterprises LLC,* 2021 WL 1536389, at *4 (Bankr.

E.D.N.Y. Mar. 25, 2021); *In re Slidebelts, Inc*., 2020 WL 3816290, at *3 (Bankr. E.D. Cal. July

6, 2020).

In the vast majority of cases facing dismissal, this issue is resolved without Court

intervention. But with no resolution on the horizon here, the Court must take an active role in

determining how to provide for payment of these administrative expenses if dismissal is to occur.

The most obvious path forward is to initiate proceedings to assess the details of the Debtor's

current financial circumstances with the ultimate goal of crafting a detailed dismissal order that

ensures the payment of the estate's administrative expenses.  Such a route will inevitably include

disclosure of documents and might include testimony under oath by the Debtor.  Of course, this

path might mirror in some ways the unsuccessful efforts at financial transparency that have

plagued the case to date.  *See In re Giuliani*, 2024 WL 3384185, at *4-*5.  Nonetheless, the

Court's intention would be to complete such a task expeditiously and efficiently, with the most

direct course likely being an evidentiary hearing before the Court.

The Court and the parties might also need to reconsider whether dismissal is the most

appropriate course of action in this case.  While the Court previously announced its intention not

to waiver on dismissal of the case, there may come a point when dismissal is no longer an option

because the Debtor is unwilling to pay these administrative expenses, a necessary requirement

under the law for dismissal of the case.  Under such circumstances, the Court may be forced to

reevaluate the alternative of a Chapter 11 trustee to supervise the administration of the Debtor's

financial affairs and to promptly liquidate assets such as the New York apartment as appropriate.

In determining the path forward, it is appropriate to canvas the Committee and the Freeman

Plaintiffs—and any other creditor who wishes to be heard—for their views on what course of

action is in the best interest of creditors and the estate.  It is therefore

**ORDERED**, that the Committee, the Freeman Plaintiffs, the Debtor, and any other

interested party shall each file on the Court's docket a submission of no more than five (5) pages

in length, by no later than July 31, 2024 at 12:00 p.m., so as to provide their views on the most

appropriate path forward.  After reviewing these submissions, the Court will enter an appropriate

order setting forth the next steps in this case, which may include a status conference or the

scheduling of an evidentiary hearing.

Dated: White Plains, New York
       July 25, 2024

                                    */s/ Sean H. Lane*
                                    UNITED STATES BANKRUPTCY JUDGE