UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re:                                          :     Chapter 11
                                                :
RUDOLPH W. GIULIANI                             :     Case No. 23-12055 (SHL)
a/k/a RUDOLPH WILLIAM GIULIANI,                 :
                                                :
                    Debtor.                     :
------------------------------------------------------------x

**SUPPLEMENTAL DECLARATION OF ERIK LAYKIN IN SUPPORT OF THE FINAL FEE APPLICATION OF GLOBAL DATA RISK LLC, SPECIALIZED FORENSIC FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE PERIOD FROM FEBRUARY 9, 2024 THROUGH JULY 11, 2024**

I, Erik Laykin, under penalty of perjury, declare as follows:

1.  I am the chief executive officer of Global Data Risk LLC ("GDR"). GDR's business address is 14 Wall Street, 20th Floor, New York, NY 10005.

2.  I am duly authorized to make this supplemental declaration (the "Supplemental Declaration") on behalf of GDR in support of the *Final Fee Application of Global Data Risk LLC, Specialized Forensic Financial Advisor to the Official Committee of Unsecured Creditors for the Period from February 9, 2024 through July 11, 2024* [Docket No. 310] (the "Application").[1]

3.  On August 19, 2024, the Committee filed the Application, together with, among other things, the *Declaration of Erik Laykin in Support of the Final Fee Application of Global Data Risk LLC, Specialized Forensic Financial Advisor to the Official Committee of Unsecured Creditors for the Period from February 9, 2024 through July 11, 2024* (the "Initial Declaration"), which was attached to the Application as Exhibit A and is incorporated herein by reference.

4.  I submit this Supplemental Declaration in further support of the Application. Except as otherwise noted, all facts in this Supplemental Declaration are based on my personal

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

knowledge of the matters set forth herein, information gathered from my review of relevant documents and information supplied to me by my colleagues at GDR.

**A.    The GDR Team**

5.    In order to accomplish the Committee's objectives, GDR assigned 13 non-administrative employees to provide services to the Committee in the chapter 11 case. As set forth in the *Application of the Official Committee of Unsecured Creditors of Rudolph W. Giuliani to Retain and Employ Global Data Risk LLC as Specialized Forensic Financial Advisor, Effective as of February 9, 2024* [Docket No. 150] (the "Retention Application"), these employees have varying levels of seniority and different areas of expertise, including, but not limited to:

- Asset tracing investigations;
- Forensic accounting;
- Fraud and corruption investigations;
- Money laundering investigations; and
- Transnational financial crimes.

Therefore, each GDR team member brought diverse talents that were necessary to execute successfully the services for which GDR was retained by the Committee.

6.    In addition to the unique specialties that each GDR team member possesses based on their past career experiences, the GDR team included individuals with a range of titles from Junior Analyst to CEO/Managing Director. As such, each GDR team member's day-to-day responsibilities varied commensurate with his or her respective seniority.

**B.    Intra-Office Conferences and GDR Team Meetings**

7.    Exhibit E to the Application details certain intra-office conferences and team meetings in which multiple GDR team members participated. These conferences and meetings were necessary to coordinate the efforts of numerous different GDR team members with respect to various ongoing workstreams, such as GDR's forensic financial accounting, investigative and

2

asset tracing services. Frequently throughout the chapter 11 case, there were new and rapidly evolving issues that required GDR to respond quickly and efficiently, and weekly team meetings ensured that GDR team members were kept up to speed on developments in the case and were aligned on next steps. Each GDR team member who attended these conferences and meetings was a necessary participant due to his or her varying specialties, familiarity with different aspects of the chapter 11 case and assigned role on this matter.

### C.    GDR and Akin Team Meetings

8.    Moreover, <u>Exhibit E</u> to the Application details certain conferences and meetings that GDR team members had with Akin as counsel to the Committee. It was necessary to regularly confer and meet with Akin so that Akin and GDR were coordinated in responding to developments in the case and addressing the objectives, questions and concerns of the Committee. Akin and GDR used these weekly calls to provide each other with updates on ongoing workstreams, strategize about next steps and prepare for presentations to the Committee at weekly Committee meetings.

9.    Each GDR team member who attended conferences and meetings with Akin was a necessary participant since each team member managed, and had comprehensive knowledge of, different workstreams. Specifically, Mr. Bass and I together shared the responsibility of managing the assignment, Mr. Ebert coordinated the day-to-day project management of the matter and oversaw all workstreams, Ms. Snow was responsible for all forensic accounting services and Ms. Looney, a Junior Analyst, was primarily responsible for internal GDR coordination and carrying out many of the organizational tasks related to the assignment. Team calls were the most efficient way to share information, get coordinated and plan next steps in the fast-paced bankruptcy case.

3

**D.    Committee Meetings and Court Hearings**

10.    Furthermore, as indicated in <u>Exhibit E</u> to the Application, GDR purposefully ensured that the minimum number of GDR team members that was necessary attended the weekly meetings with the Committee and the hearings throughout the chapter 11 case. Specifically with respect to weekly meetings with the Committee, those calls were used to provide the Committee with updates and discuss action items and case strategy. Committee members used these calls to ask questions of their advisors, and GDR ensured that the number of GDR team members who attended these meetings was appropriate in order to adequately address Committee members' inquiries. Moreover, Committee meetings frequently resulted in follow up tasks for GDR, so it was important that the GDR team members overseeing the matter were in attendance to plan how best to address these follow ups.

11.    More generally, each GDR team member who attended Committee meetings and hearings was a necessary participant given each team member's distinct role and area of expertise. It was particularly important to the successful execution of its representation that senior GDR team members (i) participate in Committee meetings so that GDR could apprise the Committee of any new developments, advise the Committee regarding GDR's go-forward investigative strategy and answer the Committee's questions regarding the foregoing and (ii) attend hearings so that GDR could remain informed of the status of the chapter 11 case, coordinate with Akin regarding hearing presentations and next steps and, therefore, provide appropriate and beneficial services to the Committee, consistent with GDR's mandate.

Dated:  September 19, 2024

By: */s/ Erik Laykin*
Erik Laykin
CEO
Global Data Risk LLC

*Specialized Forensic Financial Advisor to the Official Committee of Unsecured Creditor of Rudolph W. Giuliani*

5